# EXHIBIT A

# EXHIBIT A
### *In re: National Security Agency Telecommunications Records Litigation*
### MDL-06-1791

## I.  CHRONOLOGY OF TRANSFERS.

**August 9, 2006:**  The Judicial Panel on Multidistrict Litigation ("Panel") issued an Initial Transfer Order ("ITO") transferring to this Court seventeen actions previously pending outside the Northern District of California.

**August 17, 2006:**  The Panel modified the ITO to remove one case (*Potter v. Bellsouth Corp.*), which had been dismissed.  All of the other 16 ITO actions except *Mayer v. Verizon Commc'ns, Inc.*, No. 1:06-3650 (S.D.N.Y.), have been received and docketed by this Court.

**August 31, 2006:**  The Panel issued a Conditional Transfer Order ("CTO-1"), conditionally transferring to this Court 21 "tag-along" actions that the Panel determined have "questions of fact common to the actions previously transferred" to this Court.  (Dkt. 37).  The plaintiffs in four of the 21 actions subject to CTO-1 opposed transfer and have filed motions to vacate.  Those actions are:  *Mink v. AT&T Commc'ns, et al.*, C.A. 4:06-1113 (E.D. Mo.), *Shubert, et al. v. Bush, et al.*, C.A. 1:06-2282 (E.D.N.Y.), *Center for Constitutional Rights, et al. v. Bush, et al.*, C.A. 1:06-313 (S.D.N.Y.), and *Al-Haramain Islamic Foundation, Inc., et al. v. Bush, et al.*, 3:06-274 (D. Or.).  (A fifth case, *Tyler v. AT&T, Inc., et al.*, was removed from CTO-1, as it was dismissed by the United States District Court for the District of Nebraska.)  *Shubert, CCR* and *Al-Haramain* are cases brought directly against the United States to which the telecommunications carriers are not parties; only *Mink* involves AT&T.  Defendants' responses to the motions to vacate are due between October 17 and 22, 2006.  The remaining 16 actions were transferred on September 25, 2006; five have been received and docketed by this Court.

**September 11, 2006:**  The Panel issued a Second Conditional Transfer Order ("CTO-2") conditionally transferring to this Court one tag-along action.  The plaintiffs in that action, *Bready, et al. v. Verizon Maryland, Inc.*, C.A. 1:06-2185, did not oppose the CTO.  CTO-2 was filed with this Court on October 4, 2006 (Dkt. 41).

**September 25, 2006:**  Actions covered by CTO-1 in which plaintiffs did not oppose transfer and which were not dismissed (16 of 21 actions) were transferred to this Court.  Receipt and docketing in this Court remain pending for 11 of the 16 actions transferred.

**September 28, 2006:**  The Panel issued a Third Conditional Transfer Order ("CTO-3") conditionally transferring to this Court five additional actions:  *United States v. Palermino, et al.*, C.A. 3:06-1405 (D. Conn.); *United States v. Adams, et al.*, C.A. 1:06-97 (Me); *United States v. Gaw, et al.*, C.A. 4:06-1132 (E.D Mo); *Clayton, et al. v. AT&T Commc'ns of the Southwest, Inc., et al.*, C.A. 2:06-4177 (W.D. Mo.); *United States v. Farber*, 3:06-2683 (D. N.J.).  These actions involve a different category of claims from those previously transferred:  with the exception of *Clayton*, which is a subpoena enforcement action brought by two Commissioners of the Missouri Public Utilities Commission against AT&T, the remaining cases listed in CTO-3 involve lawsuits brought by the United States against state agencies or officials who are seeking

700545798v2

to conduct investigations of alleged carrier cooperation with federal intelligence activities. Oppositions to CTO-3 are due by October 13, 2006.

**October 3, 2006:** AT&T filed a tag-along notice in a newly-filed action, *United States v. Volz, et al.*, C.A. 2:06-00188 (filed Oct. 2, 2006). That case is awaiting a CTO.

**October 4, 2006:** CTO-2 was filed with the Court.

**October 13, 2006:** Oppositions (if any) to CTO-3 are due.

**October 17-22, 2006:** Dates for Defendants to file oppositions to motions to vacate transfer of four cases covered by CTO-1 in which plaintiffs oppose transfer.

## II. CASE-BY-CASE CHART OF TAGGED AND TRANSFERRED CASES.

| Case Name | Transferring Court Case Number | N.D. Cal. Case Number | Transfer Status |
|---|---|---|---|
| *Al-Haramain Islamic Foundation, Inc., et al. v. George W. Bush, et al.* | C.A. No. 3:06-274 (D. Or.) | | Part of CTO-1; **Plaintiffs have opposed transfer; Defendants' responses due on 10/22/2006** |
| *Sean Basinski, et al. v. Verizon Communications, Inc.* | C.A. No.1:06-4169 (S.D.N.Y.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Charles F. Bissit, et al. v. Verizon Communications, Inc., et al.* | C.A. No. 1:06-220 (D.R.I.) | 3:06-cv-05066-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 10) |
| *Bready, et al. v. Verizon Maryland, Inc.* | C.A. No. 1:06-2185 (D. Md.) | | Transferred on 10/4/2006 (CTO-2); **N.D. Cal. has not received and/or docketed the case from the transferring court.** |

| Case Name | Transferring Court Case Number | N.D. Cal. Case Number | Transfer Status |
|---|---|---|---|
| *Campbell, et al. v. AT&T Communications of California, et al.* | C.A. No. 06-3596 (N.D. Cal.) | 3:06-cv-03596-VRW | Consolidated into MDL on 8/14/2006 |
| *Center for Constitutional Rights, et al. v. George W. Bush, et. al.* | C.A. No. 1:06-313 (S.D.N.Y.) | | Part of CTO-1; **Plaintiffs have opposed transfer; Defendants' responses due on 10/22/2006** |
| *Glen Chulsky, et al. v. Cellco Partnership, et al.* | C.A. No. 2:06-2530 (D.N.J.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Clayton, et al. v. AT&T, et al.* | C.A. No. 2:06-4177 (W.D. Mo.) | | Part of CTO-3; **Plaintiffs have until 10/13/2006 to oppose transfer** |
| *Greg Conner, et al. v. AT&T Corp., et al.* | C.A. No. 1:06-632 (E.D. Cal.) | 3:06-cv-05576-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 32) |
| *Charmaine Crockett, et al. v. Verizon Wireless, et al.* | C.A. No. 1:06-345 (D. Haw.) | 3:06-cv-06254-VRW | Transferred on 9/25/2006 (CTO-1); case received by N.D. Cal. (Dkt. 40) |
| *Travis Cross, et al. v. AT&T Communications, Inc., et al.* | C.A. No. 1:06-847 (S.D. Ind.) | 3:06-cv-06222-VRW | Transferred on 9/25/2006 (CTO-1); case received by N.D. Cal. (Dkt. 38) |
| *Travis Cross, et al. v. AT&T Communications, Inc., et al.* | C.A. No. 1:06-932 (S.D. Ind.) | 3:06-cv-06224-VRW | Transferred on 9/25/2006 (CTO-1); case received by N.D. Cal. (Dkt. 38) |
| *Heather Derosier v. Cingular Wireless, LLC, et al.* | C.A. No. 2:06-917 (W.D. Wash.) | 3:06-cv-06253-VRW | Transferred on 9/25/2006 (CTO-1); case received by N.D. Cal. (Dkt. 40) |

| Case Name | Transferring Court Case Number | N.D. Cal. Case Number | Transfer Status |
|---|---|---|---|
| *Steve Dolberg v. AT&T Corp., et al.* | C.A. No. 9:06-78 (D. Mont.) | 3:06-cv-05269-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 12). |
| *Joan Dubois, et al. v. AT&T Corp., et al.* | C.A. No. 5:06-85 (W.D. Mich.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Electron Tubes Inc. v. Verizon Communications, Inc. et al.* | C.A. No. 1:06-4048 (S.D.N.Y.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Theresa Fortnash v. AT&T Corp.* | C.A. No. 6:06-828 (S.D. Fla.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Rhea Fuller v. Verizon Communications, Inc., et al.* | C.A. No. 9:06-77 (D. Mt.) | 3:06-cv-05267-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 12). |
| *Mark E. Guzzi v. George W. Bush, et al.* | C.A. No. 1:06-136 (N.D. Ga.) | 3:06-cv-06225-VRW | Transferred on 9/25/2006 (CTO-1); case received by N.D. Cal. (Dkt. 38). |
| *D. Clive Hardy v. AT&T Corp.* | C.A. No. 2:06-2853 (E.D. La.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |

| Case Name | Transferring Court Case Number | N.D. Cal. Case Number | Transfer Status |
|---|---|---|---|
| *James C. Harrington, et al. v. AT&T Inc.* | C.A. No. 1:06-374 (W.D. Tex.) | 3:06-cv-05452-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 26). |
| *Tash Hepting, et al. v. AT&T Corp., et al.* | C.A. No. 3:06-0672 (N.D. Cal.) | 3:06-cv-00672-VRW | Transferred on 8/14/2006 (ITO) |
| *Tina Herron, et al. v. Verizon Global Networks, Inc., et al.* | C.A. No. 2:06-2491 (E.D. La.) | 3:06-cv-05343-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 16). |
| *Darryl Hines v. Verizon Northwest, Inc.* | C.A. No. 3:06-694 (D. Or.) | 3:06-cv-05341-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 16). |
| *James Joll, et al. v. AT&T Corp., et al.* (formerly *Schwarz*) | C.A. No. 1:06-2680 (N.D. Ill.) | 3:06-cv-05458-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 27). |
| *Rabbi Steven Lebow, et al. v. BellSouth Corp., et al.* | C.A. No. 1:06-1289 (N.D. Ga.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Pamela A. Mahoney v. AT&T Communications, Inc.* | C.A. No. 1:06-223 (D.R.I.) | 3:06-cv-05065-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 10) |
| *Pamela A. Mahoney v. Verizon Communications, Inc.* | C.A. No. 1:06-224 (D.R.I.) | 3:06-cv-05064-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 10) |
| *Edward Marck, et al. v. Verizon Communications, Inc.* | C.A. No. 2:06-2455 (E.D.N.Y.) | 3:06-cv-05063-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 10) |

| Case Name | Transferring Court Case Number | N.D. Cal. Case Number | Transfer Status |
|---|---|---|---|
| *Carl J. Mayer, et al. v. Verizon Communications, Inc., et al.* | C.A. No. 1:06-3650 (S.D.N.Y.) | | Transferred on 8/14/2006 (ITO); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Claudia Mink v. AT&T Communications of the Southwest, Inc., et al.* | C.A. No. 4:06-1113 (E.D. Mo.) | | Part of CTO-1; **Plaintiffs have opposed transfer; Defendants' responses due on 10/17/2006** |
| *Roslyn Payne v. Verizon Communications, Inc.* | C.A. No. 1:06-4193 (S.D.N.Y.) | | Transferred on 9/25/2006 (CTO); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Riordan, et al. v. Verizon Communications, Inc. et al.* | C.A. No. 3:06-3574 (N.D. Cal.) | 3:06-cv-03574-VRW | Consolidated into MDL on 8/14/2006 |
| *Roe, et al. v. AT&T Corp.* | C.A. No. 3:06-3467 (N.D. Cal.) | 3:06-cv-03467-VRW | Consolidated into MDL on 8/14/2006 |
| *Virginia Shubert, et al. v. George W. Bush, et al.* | C.A. No. 1:06-2282 (E.D.N.Y.) | | Part of CTO-1; **Plaintiffs have opposed transfer; Defendants' responses due on 10/18/2006** |
| *Mark P. Solomon v. Verizon Communications, Inc.* | C.A. No. 2:06-2193 (E.D. Pa.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |

AT&T Response to Dkt. 39, Ex. A, page 6

| Case Name | Transferring Court Case Number | N.D. Cal. Case Number | Transfer Status |
|---|---|---|---|
| *Shelly D. Souder v. AT&T Corp. et al.* | C.A. No. 3:06-1058 (S.D. Cal.) | 3:06-cv-05067-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 10) |
| *Spielfogel-Landis v. MCI, LLC* | C.A. No. 3:06-4221 (N.D. Cal.) | 3:06-cv-04221-VRW | Consolidated into MDL on 8/14/2006 |
| *Richard D. Suchanek, III v. Sprint Nextel Corp.* | C.A. No. 1:06-71 (W.D. Ky.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |
| *Studs Terkel, et al. v. AT&T Inc.* | C.A. No. 1:06-2837 (N.D. Ill.) | 3:06-cv-05340-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 16). |
| *Mary J. Trevino, et al. v. AT&T Corp., et al.* | C.A. No. 2:06-209 (S.D. Tx.) | 3:06-cv-05268-VRW | Transferred on 8/14/2006 (ITO); case received by N.D. Cal. (Dkt. 12). |
| *United States v. Adams, et al.* | C.A. No. 1:06-00097 (D. Me.) | | Part of CTO-3**; Plaintiffs have until 10/13/2006 to oppose the CTO** |
| *United States v. Gaw, et al.* | C.A. No. 4:06-01132 (E.D. Mo.) | | Part of CTO-3**; Plaintiffs have until 10/13/2006 to oppose the CTO** |
| *United States v. Farber, et al.* | C.A. No. 3:06-02683 (D.N.J.) | | Part of CTO-3**; Plaintiffs have until 10/13/2006 to oppose the CTO** |
| *United States v. Palermino, et. al.* | C.A. No. 3:06-01405 (D. Conn.) | | Part of CTO-3**; Plaintiffs have until 10/13/2006 to oppose the CTO** |
| *United States v. Volz, et. al.* | C.A. No. 2:06-00188 (D. Vt.) | | Tag-along notice filed on 10/3/2006 |

| Case Name | Transferring Court Case Number | N.D. Cal. Case Number | Transfer Status |
|---|---|---|---|
| *Herbert Waxman v. AT&T Corp.* | C.A. No. 1:06-2900 (N.D. Ill.) | | Transferred on 9/25/2006 (CTO-1); **N.D. Cal. has not received and/or docketed the case from the transferring court** |

# EXHIBIT B

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

AL-HARAMAIN ISLAMIC                    )
FOUNDATION, INC., *et al.*,            )
                                       )
    Plaintiffs/Respondents,            )
                                       )
        v.                             )    No. 06-_____ (9th Cir.)
                                       )
GEORGE W. BUSH, President of the       )    D. Ct. Civ. No.
United States, *et al.*,               )    06-274-KI  (D. Or.)
                                       )
    Defendants/Petitioners.            )

PETITION BY DEFENDANTS FOR
INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

PETER D. KEISLER
Assistant Attorney General

DOUGLAS LETTER
Terrorism Litigation Counsel

THOMAS M. BONDY
ANTHONY A. YANG
Attorneys

*Civil Division, Appellate Staff
Department of Justice, Room 7513
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001
202-514-3602*

## INTRODUCTION AND SUMMARY

Defendants hereby petition this Court for permission to appeal the district court's September 7, 2006 order denying the Government's motion to dismiss. Recognizing the importance and controversial nature of its order, the district court *sua sponte* certified the order for an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

As described below, this case warrants interlocutory appeal because the district court has denied the Government's motion to dismiss this case on state secrets grounds, and thereby placed at risk particularly sensitive national security interests. The district court has further erred by allowing this litigation to move to the next phase in which the plaintiffs will in sealed filings attempt to demonstrate standing, even though we have shown that, because of the state secrets privilege, standing cannot be established and the case cannot proceed to judgment. Under such circumstances, dismissal is plainly appropriate. Rather than apply the state secrets privilege as precedent requires, the district court is wrongly attempting to create some form of secret adversarial proceedings, and, in doing so, is raising a serious danger of disclosure of important national security information.

District Judge Walker and all parties in *Hepting v. AT&T*, Nos. 06-80109, 06-80110 (9th Cir.), which also concerns the Terrorist Surveillance Program and many of the same questions presented here, recognized that these issues warranted

immediate appeal under § 1292(b). The Government filed its § 1292(b) petition in *Hepting* nearly two months ago, the *Hepting* plaintiffs' response consented to our request for immediate review, and both the Government and the plaintiffs have requested expedited briefing and argument in *Hepting*. This Court will presumably act upon the *Hepting* petition before deciding the petition here since the appellate proceedings in *Hepting* are at a more advanced stage. Accordingly, because the key issues in our petition in *Hepting* substantially overlap the issues here, it would serve the interests of judicial economy for the Court to hold this petition while the Court resolves the issues raised in *Hepting*, which may govern this matter or, at the very minimum, be highly relevant to the disposition of this petition.

The plaintiffs in this suit are the Al-Haramain Islamic Foundation – an organization designated as a global terrorist by the Secretary of the Treasury under an Executive Order program designed to identify and interrupt the activities of entities providing financial support and services for international terrorists – and two attorneys who allege "business and other relationships" with Al-Haramain. Plaintiffs claim that defendants violated various constitutional and statutory provisions by allegedly intercepting plaintiffs' communications under the Terrorist Surveillance Program, which was implemented by the National Security Agency (NSA) at the direction of the President. The Government asserted the state secrets privilege, and

moved to dismiss because this case cannot proceed without forcing revelation of highly confidential national security information.

Despite supporting declarations filed by the Director of National Intelligence and the Director of the NSA, the district court rejected the Government's motion to dismiss based on the officials' assertion of the state secrets privilege. While concluding that whether the plaintiffs were in fact subject to surveillance properly remains a state secret, the district court ruled that the subject matter of this action was no longer a secret as applied to plaintiffs under their theory of the case, because they claim to have viewed a highly classified Government document that allegedly shows that they were subject to such surveillance. The court accordingly denied the Government's motion to dismiss, initiated a discovery conference, and ruled that the plaintiffs may file *in camera* affidavits based on their recollection of the classified contents of the document in order to establish the factual foundation for their standing. Recognizing the importance and controversial nature of its ruling, the district court *sua sponte* certified its denial of the Government's motion to dismiss for interlocutory appeal.

The district court was clearly correct in certifying this matter for appeal. By denying the Government's motion to dismiss, the court directly contradicted the judgment of the Director of National Intelligence and the head of the NSA on a national security matter. Moreover, the court has done so in a case in which, because

of the contours of the state secrets privilege as applied to this case, this litigation cannot proceed to judgment. Any further steps would be futile, while creating a serious risk that sensitive classified information would be disclosed.

## QUESTION PRESENTED FOR APPEAL

Whether the district court erred in denying the Government's motion to dismiss based on the assertion of the state secrets privilege by the Director of National Intelligence.

## BACKGROUND

**1.** After various media stories appeared concerning asserted post-9/11 foreign intelligence activities carried out by the NSA, plaintiffs filed this action in the District of Oregon against the President, the NSA, and other federal agencies and officials. Plaintiffs allege that they were subject to electronic surveillance under the Terrorist Surveillance Program, and that such surveillance violated various constitutional provisions. Plaintiffs additionally contend that the alleged surveillance violated the Foreign Intelligence Surveillance Act and the International Convention for the Suppression of the Financing of Terrorism.

Plaintiffs' allegations arose in part from the President's December 2005 public revelation of the Terrorist Surveillance Program. The President explained that he had assigned the NSA to intercept international communications of persons with known links to al Qaeda and related terrorist organizations. See D. Ct. Op. at 11. The

- 4 -

President took this step pursuant to his Commander-in-Chief powers, as well as under the Authorization for Use of Military Force, passed by Congress shortly after 9/11, giving the President authority to use all necessary and appropriate force against those responsible for 9/11, and to prevent further attacks in the future. See Pub. L. No. 107-40, 115 Stat. 224 (2001).

The Attorney General subsequently confirmed publicly that, under the Terrorist Surveillance Program, the NSA intercepts the contents of foreign communications to and from the United States when the Government has a reasonable basis to conclude that one party to the communication is a member or agent of al Qaeda or an affiliated terrorist organization. D. Ct. Op. at. 12.

**2.** The Government asserted the state secrets privilege, as well as statutory privileges covering the NSA, and moved for dismissal or summary judgment. We argued that the case could not be litigated in light of the state secrets assertion. The invocation of that privilege was supported by public and classified declarations from the Director of National Intelligence and the NSA Director. At our suggestion, the district judge reviewed the classified *ex parte/in camera* declarations from both of these officials, which explained the privilege assertions. D. Ct. Op. at 7.

We filed both public and *ex parte/in camera* briefs in support of our motion to dismiss, arguing that the state secrets privilege had been properly asserted, and that litigation over plaintiffs' claims threatened disclosure of important intelligence

information, sources, and methods. We further asserted that dismissal of the complaint was required because the subject matter of the case is a state secret, that state secrets are necessary for plaintiffs to litigate their claims (including their ability to establish their standing), and that the Government could not defend itself without disclosure of state secrets. In so arguing, we made clear that the Government could neither confirm nor deny whether plaintiffs were subject to the foreign intelligence gathering activities alleged in the complaint. We contended that these arguments covered both plaintiffs' statutory and constitutional claims. Finally, we showed that adjudication of whether the surveillance alleged by plaintiffs had been conducted lawfully would require disclosure of state secrets as well.

**3.** By order of September 7, 2006 (a copy of which is attached to this petition), the district court denied our motion to dismiss. (The opinion is published at 2006 WL 2583425.) Critical to the court's ruling is its conclusion that the very subject matter of this litigation is not a secret to plaintiffs because plaintiffs have reviewed a classified document that they claim shows that they were subject to surveillance under the Terrorist Surveillance Program. D. Ct. Op. at 15-19. The court did so by concluding – erroneously – that the plaintiffs could proffer evidence regarding their recollection of the contents of the classified document in order to prove their standing to sue and the merits of a *prima facie* case.

- 6 -

The district court initially concluded that the unauthorized release of a highly classified Government document to plaintiffs "did not waive [the] state secrets privilege" or declassify the content of the document, which the court recognized "remains secret." *Id.* at 14, 24. The court thus found that "whether plaintiffs were subject to surveillance" is a factual matter that "remains secret." *Id.* at 14.

However, the district court reasoned that "it is not a secret to plaintiffs whether [or not] their communications have been intercepted" if one accepts plaintiffs' contention that the classified document they reviewed shows that such surveillance of plaintiffs has occurred. *Id.* at 13-14. Because the plaintiffs "know what information the Sealed Document contains," the court reasoned, "no harm to the national security would occur if plaintiffs are able to prove the general point that they were subject to surveillance as revealed in the Sealed Document." *Id.* at 13, 16.

In rejecting the determinations of the Director of National Intelligence and Director of the NSA that further litigation on this issue could cause grave harm to national security, the district court focused on its view that further proceedings would not further harm national security because the plaintiffs themselves have already reviewed the contents of the classified document. *Id.* at 15-16. The court did so without addressing the determination by the head of the intelligence community and the NSA that an official Government (or court) confirmation or denial of such surveillance to the *public at large* would harm national security. The district court

- 7 -

nevertheless ruled that there would be "no reasonable danger that the national security would be harmed if it is confirmed or denied that plaintiffs were subject to surveillance" to the extent that a "surveillance event or events [are] disclosed in the Sealed Document." *Id.* at 17.

This determination led the court to conclude that the "very subject matter of this litigation" – that is, whether the NSA conducted surveillance of plaintiffs under the Terrorist Surveillance Program – is not a state secret that would require dismissal if plaintiffs can prove that "the Sealed Document demonstrates that they were under surveillance." *Id.* at 17-19. The court further ruled that "plaintiffs should have an opportunity to establish standing and make a *prima facie* case" by submitting *in camera* affidavits "attesting to the contents of the document from their memories." *Id.* at 21, 25-26. The district court accordingly denied the Government's motion to dismiss, and directed the parties to proceed to the discovery phase of this case. *Id.* at 32. In so ruling, the court declined to decide whether it would be futile to conduct further proceedings because, as the Government argued, the state secrets assertion not only precludes use of evidence needed by plaintiffs to establish standing and make a *prima facie* case, but also precludes the use of evidence needed by the Government to defend this case. D. Ct. Op. at 20-22.

At the end of its opinion, the district court *sua sponte* certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). *Ibid.* The court explained that it

"recognized, as did Judge Walker in *Hepting*," that its decision involved "'a controlling question of law' about which there is 'substantial ground for difference of opinion,'" and that interlocutory appeal was warranted because such an appeal "'may materially advance the ultimate termination of this litigation.'" *Ibid.*

## REASONS FOR GRANTING PERMISSION TO APPEAL

Interlocutory appeal by the United States pursuant to Section 1292(b) is warranted when the Court finds "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The district court rightly determined that the standards for Section 1292(b) have been met here. The issues in this case are of undeniable importance and great public interest. They involve the question of whether the assertion by the Director of National Intelligence of the state secrets privilege required dismissal because the very subject matter of this action involves a state secret (namely, whether plaintiffs were subject to surveillance under the Terrorism Surveillance Program), and because this case cannot be litigated to judgment in any event.

### A. The State Secrets Privilege and its Effect on this Litigation.

The ability of the Executive to protect military or state secrets from disclosure has been recognized from the earliest days of the Republic. See *Totten v. United*

*States*, 92 U.S. 105 (1875); *United States v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807); *United States v. Reynolds*, 345 U.S. 1, 6-7 (1953). The state secrets privilege derives from the President's Article II powers to conduct foreign affairs and provide for the national defense. *United States v. Nixon*, 418 U.S. 683, 710 (1974). For the privilege to apply, "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by the officer." *Reynolds*, 345 U.S. at 7-8.

The privilege protects a broad range of state secrets, including information that would result in "impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign Governments." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983), *cert. denied*, 465 U.S. 1038 (1984).

Significantly for this case, this Court has made clear that the state secrets privilege protects information that may appear innocuous on its face, but which in a larger context could reveal sensitive classified information. *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir.), *cert denied*, 525 U.S. 967 (1998).

> It requires little reflection to understand that the business of foreign intelligence gathering in this age of computer technology is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair. Thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate.

- 10 -

*Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978) (*Halkin I*). "Accordingly, if seemingly innocuous information is part of a classified mosaic, the state secrets privilege may be invoked to bar its disclosure and the court cannot order the Government to disentangle this information from other classified information." *Kasza*, 133 F.3d at 1166.

This Court has emphasized that an assertion of the state secrets privilege "must be accorded the 'utmost deference' and the court's review of the claim of privilege is narrow." *Kasza*, 133 F.3d at 1166. Aside from ensuring that the privilege has been properly invoked as a procedural matter, the sole determination for the reviewing court is whether, "under the particular circumstances of the case, 'there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" *Id.* at 1166 (quoting *Reynolds*, 345 U.S. at 10).

Thus, in assessing whether to uphold a claim of privilege, the court does not balance the respective needs of the parties for the information. Rather, "[o]nce the privilege is properly invoked and the court is satisfied that there is a reasonable danger that national security would be harmed by the disclosure of state secrets, the privilege is absolute[.]" *Kasza*, 133 F.3d at 1166. Further, "the Government need not demonstrate that injury to the national interest will inevitably result from disclosure." *Ellsberg*, 709 F.2d at 58.

- 11 -

The state secrets privilege does not simply require that sensitive information be removed from a case; if, as here, "the 'very subject matter of the action' is a state secret, then the court should dismiss the plaintiff's action based solely on the invocation of the state secrets privilege." *Kasza*, 133 F.3d at 1166 (citing *Reynolds*, 345 U.S. at 11 n. 26).

## B. The District Court Improperly Overrode the Government's Assertion of the State Secrets Privilege With Regard to Plaintiffs' Allegation that They Were Subject to Surveillance.

As noted above, we submitted to the district court public and classified declarations from the Director of National Intelligence and the NSA Director. Based on those declarations, we showed that adjudicating each of plaintiffs' claims would, among other things, require confirmation or denial of whether plaintiffs have been the targets of alleged intelligence activities. The declarations made clear that such information cannot be confirmed or denied *to the public* without causing exceptionally grave damage to national security. Because the most basic factual allegation necessary for plaintiffs' case – whether they have been subjected to surveillance under the Terrorist Surveillance Program – can neither be officially confirmed nor denied by either the Government or a court decision adjudicating plaintiffs' claims, the very subject matter of this litigation is a state secret.

Indeed, every step in this case – for plaintiffs to demonstrate their standing by showing that they were subject to surveillance, for plaintiffs to prove their claim that

- 12 -

such surveillance was unlawful, or for the Government to defend against such contentions – would immediately require privileged information. And any judicial resolution of these issues would necessarily reveal publicly the basic fact or non-fact of the alleged surveillance that is the very subject matter of this action. As a result, it would vitiate the privilege to permit this action to proceed further.

Much of the district court's decision confirms that dismissal was warranted. The court correctly ruled that both the Government document upon which plaintiffs rely and the highly classified contents of that document remain protected by the Government's invocation of the state secrets privilege. D. Ct. Op. at 14, 24; see also *id.* at 26 (ordering plaintiffs to return "all copies" of the document). It likewise correctly held that, "whether the plaintiffs were subject to surveillance" remains secret, "even if," as the plaintiffs claim, "plaintiffs know they were" subject to such surveillance. *Id.* at 14.

However, the district court seriously erred by overstepping its proper role concerning review of the National Intelligence Director's claim of state secrets privilege. Without addressing the Director's conclusion that national security would be harmed with any *public* confirmation or denial of the fact of plaintiffs' alleged surveillance, the court ruled that the "very subject matter of this case" is "not a state secret" as to these particular plaintiffs if, as plaintiffs claim, they can prove that the classified document "demonstrates that they were under surveillance." *Id.* at 19. In

- 13 -

addition, the court took the highly unusual step of concluding that plaintiffs should be afforded the opportunity to prove their case with *in camera* evidence based on their "memory" of the classified "contents of the document." *Id.* at 25.

This conclusion is plainly inconsistent with the approach taken by the Supreme Court and other courts in similar contexts. The Supreme Court recently reaffirmed that, "'where the very subject matter of the action'" is "'a matter of state secret,'" the action should be dismissed at the pleading stage because, in such circumstances, it is "'obvious that the action should never prevail over the privilege.'" *Tenet v. Doe*, 544 U.S. 1, 9 (2005) (quoting discussion of *Totten* rule in *Reynolds*, 345 U.S. at 11 n.26). Indeed, the Court made clear that the "use of *in camera* judicial proceedings simply cannot provide the absolute protection [it] found necessary in enunciating the *Totten* rule" for cases where the very subject matter of the action is a state secret. *Id.* at 11. The risk of revealing the state secrets at the heart of the case – a risk inherent in conducting further judicial proceedings, even proceedings where precautions are taken to protect secrets from disclosure – is "unacceptable" as a matter of public policy. *Ibid.*

That logic directly applies here. The district court recognized that the key question whether plaintiffs were subject to surveillance under the Terrorist Surveillance Program remains a state secret, yet the court declined to dismiss the case and, instead, contemplated further proceedings in which plaintiffs will submit *in*

- 14 -

*camera* declarations to attempt to establish factually their allegations regarding that state secret. This approach is plainly inconsistent with the Supreme Court's decisions in *Totten* and *Tenet*, where the plaintiffs undoubtedly knew of and could have testified from personal knowledge regarding their claim to have entered into espionage agreements with the United States. Both cases were dismissed notwithstanding such personal knowledge concerning a state secret. Moreover, the classified document upon which plaintiffs base their case here cannot be used as an evidentiary foundation. Even though the district court has authority to review the document, the document and its contents are, as the district court found, properly classified state secrets protected by the Government's privilege.

At every step in this case, the fundamental and key factual issue is a state secret: whether plaintiffs were subject to surveillance through the Terrorist Surveillance Program. Litigation under the district court's erroneous ruling permits plaintiffs to submit evidence concerning highly classified matters; forces the Government to defend itself by addressing the substance of plaintiffs' allegations regarding classified information; and, ultimately, may permit the district court to rule on claims premised upon a state secret. Any ruling on standing, the plaintiffs' prima facie case, or a final judgment would very likely confirm or deny whether plaintiffs were subject to surveillance, a fact that even the district court concludes is a state secret (except as to plaintiffs). In fact, if plaintiffs were surveilled as they allege and

the district court were to rule for plaintiffs, such a ruling would necessarily confirm the existence of foreign intelligence activities concerning plaintiffs, and cause grave harm to national security. In short, the very subject matter of this action is a state secret requiring dismissal.

Further, the district court's order appears to contemplate that this case might be litigated between the parties in secret. Such a proceeding in these circumstances would be extraordinary and inconsistent with state secrets privilege precedent. In analogous circumstances, other cases have been dismissed in light of state secrets privilege claims. In *Halkin I*, for example, individuals and organizations alleged that they were subject to unlawful surveillance by the NSA and the CIA due to their opposition to the Vietnam War. See 598 F.2d at 3. The D.C. Circuit upheld an assertion of the state secrets privilege, concluding that the "mere fact of interception" was a state secret that would warrant dismissal even though there were significant public disclosures about the surveillance activities at issue. *Id.* at 8, 10.

In *Halkin II*, the D.C. Circuit further held that the plaintiffs were incapable of demonstrating their standing to challenge the alleged surveillance, ruling that the fact of such surveillance could not be proven even if the plaintiffs could establish (with evidence not covered by the Government's state secrets assertion) that the CIA had requested the NSA to intercept plaintiffs' communications by including their names

on a "watchlist" sent to the NSA. See *Halkin v. Helms*, 690 F.2d 977, 991, 997, 999-1001 (D.C. Cir. 1982) (*Halkin II*).[1]

Similarly, in *Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983), a group of individuals filed suit after learning during the course of the "Pentagon Papers" criminal proceedings that one or more of them had been subject to warrantless electronic surveillance. Although two such wiretaps were admitted, the Attorney General asserted the state secrets privilege, refusing to disclose to the plaintiffs whether any other such surveillance occurred. See *id.* at 53–54. As a result of the privilege assertion, the D.C. Circuit upheld the district court's dismissal of the claims brought by the plaintiffs that the Government had not admitted surveilling, because those plaintiffs could not prove actual injury. See *id.* at 65.

The same result was required here. Moreover, interlocutory appeal is necessary so that, before the confidentiality of highly sensitive foreign intelligence gathering information is placed at further risk, this Court has an opportunity to consider the validity of the Government's invocation of the state secrets privilege. As the Fourth Circuit has observed in upholding dismissal of a case in light of the state secrets privilege: "Courts are not required to play with fire and chance further disclosure

---

[1] Because the CIA conceded that nine plaintiffs had been subjected to certain types of non-NSA surveillance, the D.C. Circuit held that those plaintiffs had demonstrated an injury-in-fact. See *Halkin II*, 690 F.2d at 1003.

—inadvertent, mistaken, or even intentional – that would defeat the very purpose for which the privilege exists." *Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1052 (2006).

### C. This Court Should Defer Action on this Petition Until It Enters a Final Order in *Hepting v. AT&T*, Nos. 06-80109, 06-80110 (9th Cir.).

As we have explained, interlocutory appeal is plainly appropriate here. However, this Court already has before it the Government's unopposed petition for interlocutory appeal in *Hepting v. AT&T*, which involves state secret issues that substantially overlap those presented here. The *Hepting* parties have agreed to expedited briefing and argument, and, as we explain below, the Court's resolution of the issues in *Hepting* may govern or, at a minimum, significantly impact the state secrets issues in this petition. The Court therefore should hold the present petition pending a final ruling in *Hepting*, and then dispose of this case on an expedited basis.

In *Hepting*, the plaintiffs filed suit against AT&T and others, alleging, among other things, that AT&T unlawfully collaborated with the NSA by intercepting and disclosing the plaintiffs' international communications to the NSA under the Terrorist Surveillance Program. The United States intervened, asserted the state secrets privilege, and moved to dismiss the action. The *Hepting* district court, like the district court here, denied that motion and allowed the case to proceed to limited discovery on the ground that "'the very subject matter of the action'" was not a state

secret requiring dismissal. See *Hepting v. AT&T*, 439 F. Supp. 2d 974, 993-94 (N.D. Cal. 2006). In so doing, the court, erroneously in our view, declined to credit the contrary public and *ex parte/in camera* declarations of the Director of National Intelligence, ruling instead that it was not a state secret whether AT&T assisted the NSA under the Terrorist Surveillance Program. See *ibid.*

The state secrets issues already presented in our unopposed petition in *Hepting* largely parallel the issues presented here. Both petitions turn on the proper application of the principle that dismissal is required when the very subject matter of a court action is a state secret. Both likewise concern the proper approach that a court must follow in evaluating the determination of the head of the intelligence community that a suit involves highly sensitive foreign intelligence information whose disclosure in litigation would cause grave harm to national security. Accordingly, the interests of judicial economy would be furthered by holding this petition pending the Court's disposition in *Hepting*.

## CONCLUSION

For the foregoing reasons, as the district court itself recognized, the standards for an appeal under Section 1292(b) are fully satisfied here. The district court's order certainly involves controlling questions of law; if our arguments are accepted on appeal, such a ruling will materially advance the ultimate termination of the litigation because dismissal will be required. As described above, the United States moved to

dismiss this case because the state secrets privilege prevents the litigation from going forward. The district court itself recognized that there is a substantial ground for difference of opinion on its state secrets ruling. However, because the petition in *Hepting* raises state secrets issues that substantially overlap with the issues here, we request that the Court hold this petition until it enters a final order in *Hepting*.

Respectfully submitted,

PETER KEISLER
*Assistant Attorney General*

DOUGLAS LETTER
*Terrorism Litigation Counsel*

THOMAS M. BONDY
ANTHONY A. YANG
*Attorneys*

*Civil Division, Appellate Staff*
*Department of Justice, Room 7513*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530-0001*
*202-514-3602*

September 20, 2006

Attachment

Order Denying Motion to Dismiss

# EXHIBIT C

Nos. 06-2095/2140

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL )
LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES )
UNION OF MICHIGAN; COUNCIL ON AMERICAN- ISLAMIC )
RELATIONS; COUNCIL ON AMERICAN-ISLAMIC RELATIONS )
OF MICHIGAN; GREENPEACE, INCORPORATED; NATIONAL )
ASSOCIATION OF CRIMINAL DEFENSE LAWYERS; JAMES )
BAMFORD; LARRY DIAMOND; CHRISTOPHER HITCHENS; )
TARA McKELVEY; BARNETT R. RUBIN, )
                                                            )
                    Plaintiffs - Appellees  (No. 06-2095)   )
                    Cross - Appellants (No. 06-2140)        )
v.                                                          )          O R D E R
                                                            )
NATIONAL SECURITY AGENCY/CENTRAL SECURITY                   )
SERVICE; KEITH B. ALEXANDER, General, in his official capacity )
as Director of the National Security Agency and Chief of the Central )
Security Service,                                           )
                                                            )
                    Defendants - Appellants  (No. 06-2095)  )
                    Cross - Appellees (No. 06-2140)         )

BEFORE:     BATCHELDER, GILMAN, and GIBBONS, Circuit Judges

        The government moves for a stay pending appeal of the district court's order holding the

Terrorist Surveillance Program unconstitutional and permanently enjoining the Government from

utilizing the Program "in any way, including, but not limited to, conducting warrantless wiretaps of

telephone and internet communications, in contravention of [FISA and Title III]."

        In considering whether a stay pending appeal should issue, we balance the traditional factors

governing injunctive relief: (1) whether the applicant has demonstrated a substantial likelihood of

success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

issuance of the stay will substantially injure the other interested parties; and (4) where the public

interest lies. *Baker v. Adams County/Ohio Valley Sch. Bd.,* 310 F.3d 927, 928 (6th Cir. 2002);

*Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). This court, in *Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001), noted that

> *Michigan Coalition* said that the success on the merits which must be demonstrated is inversely proportional to the harm. More than a possibility of success must be shown, and "even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the nonmoving party if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" (edits and citations omitted).

After careful review, we conclude that this standard has been met in this case. Accordingly, the motion for a stay pending appeal is **GRANTED**.

ENTERED BY ORDER OF THE COURT

Leonard Green, Clerk