1    [THE NAMES, ADDRESSES AND
     TELEPHONE NUMBERS OF ALL
2    COUNSEL WHO HAVE SIGNED
     THIS JOINT STATEMENT ARE
3    LISTED ON THE SIGNATURE PAGES.]

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11                                                   MDL Dkt. No. 06-1791-VRW

     In re:
12                                                   **JOINT CASE MANAGEMENT
     NATIONAL SECURITY AGENCY                        STATEMENT**
13   TELECOMMUNICATIONS RECORDS
     LITIGATION
14                                                   Date:       November 17, 2006
15   This Document Relates To:                       Time:       10:30 a.m.
                                                     Courtroom: 6, 17th Floor
16   ALL ACTIONS                                     Judge:      Hon. Vaughn R. Walker

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I. PARTIES JOINING THIS STATEMENT. ............................................................1

    A.    The Plaintiffs. ....................................................................................1

    B.    The Defendants. ..................................................................................2

    C.    The Government. .................................................................................3

II. INTRODUCTION. ............................................................................................3

    A.    The Plaintiffs' introduction. ...............................................................3

    B.    The Government's introduction. .........................................................6

    C.    The Carriers' introduction. .................................................................9

III. THE STATUS OF THE APPEALS AND THE PROCEEDINGS BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION. ....................10

    A.    The status of the interlocutory appeals to the Ninth Circuit (Order ¶ 3(d)). ............................................................................................10

    B.    The status of the cases in which a party has opposed transfer to MDL 1791 (Order ¶ 3(d)). .........................................................................11

    C.    The status of cases removed from state court. ...................................13

IV. THE CRITICAL FACTUAL AND LEGAL ISSUES IN DISPUTE. ................14

    A.    The Plaintiffs' position. ....................................................................14

    B.    The Government's position. ...............................................................15

    C.    The Carriers' position. ......................................................................16

V. PENDING AND CONTEMPLATED MOTIONS. ..........................................16

    A.    The Plaintiffs' position. ....................................................................16

        1.    Pending motions. ...................................................................16

            a.    Motions for remand. ..................................................16

            b.    Preliminary Injunction in *Hepting*. ..........................20

            c.    AT&T Inc. Motion to Dismiss in *Hepting*. .............20

            d.    Media Motions to Intervene and Plaintiffs' Motion to Unseal ..................................................................20

| | | | | |
|---|---|---|---|---|
| | | e. | The Government's Motion to Dismiss in *Guzzi*. | 20 |
| | 2. | | Contemplated motions. | 20 |
| | | a. | Motions to dismiss. | 20 |
| | | b. | Motion for class certification. | 22 |
| B. | | | The Government's position. | 22 |
| C. | | | The Carriers' position. | 23 |
| VI. | THE SUBJECTS IDENTIFIED IN THE ORDER. | | | 26 |
| A. | | | Does the government intend to assert the state secrets privilege in all of the cases transferred pursuant to MDL 1791?  (Order ¶ 2(a)). | 26 |
| | 1. | | The Government's Position. | 26 |
| | 2. | | The Plaintiffs' Position. | 26 |
| B. | | | Do plaintiffs intend to file consolidated complaints?  (Order ¶ 2(b)). | 27 |
| | 1. | | The Plaintiffs' position. | 27 |
| | | a. | The EFF/ACLU Group. | 27 |
| | | b. | The Payne Group. | 30 |
| | 2. | | The Government's and the Carriers' position. | 30 |
| | | a. | Master Complaint. | 30 |
| | | b. | *Hepting* Answer. | 31 |
| | | c. | Section 1806(f). | 32 |
| C. | | | What issues in these cases may be resolved without implicating the state secrets privilege, if asserted?  (Order ¶ 2(c)). | 33 |
| | 1. | | The Plaintiffs' position. | 33 |
| | 2. | | The Government's position. | 34 |
| | | a. | Motion to dismiss. | 34 |
| | | b. | Federal-state actions. | 34 |
| | | c. | Preliminary injunction motion. | 35 |
| | | d. | Class certification. | 36 |
| | 3. | | The Carriers' position. | 36 |

D.   What discovery may proceed and how should it be coordinated?
     (Order ¶ 2(d))...................................................................................37

     1.   The Plaintiffs' position. ......................................................37

          a.   Already issued discovery...................................................38

          b.   Rules applicable to all discovery.........................................39

          c.   Specific discovery that can proceed immediately. ...............40

     2.   The Government's position. .................................................43

     3.   The Carriers' position.........................................................45

E.   Appointment of lead counsel or a steering committee for
     representation of parties with similar interests (Order ¶ 5(a)).....................46

     1.   The Plaintiffs' position. ......................................................46

     2.   The Government's position. .................................................46

     3.   The Carriers' position.........................................................46

F.   Appointment of a technical advisor to assist the court in assessing
     evidence related to national security (Order ¶ 5(b)). ...................................47

     1.   The Plaintiffs' position. ......................................................47

     2.   The Government's position. .................................................49

     3.   The Carriers' position.........................................................51

G.   What other issues should be addressed to facilitate the just and timely
     resolution of this litigation?  (Order ¶ 2(e))...................................51

     1.   Service and personal jurisdiction.......................................51

     2.   Joinder. ...............................................................................52

     3.   Electronic Case Filing (ECF). ............................................52

     4.   Filings under seal...............................................................52

          a.   The Plaintiffs' statement.................................................52

          b.   The Government's statement............................................53

          c.   The Carriers'  statement. ...............................................53

     5.   Assignment to magistrate judge. ........................................53

     6.   Alternative dispute resolution.............................................53

7.  Initial disclosures (Fed. R. Civ. P. 26(a)). ..........................................54

8.  Pretrial deadlines and trial schedule. .................................................54

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Pursuant to the Court's Order of October 16, 2006 (Dkt. 49) ("Order"), the parties

2    listed below submit this Joint Case Management Statement in advance of the Case

3    Management Conference set for November 17, 2006.

4    **I.      PARTIES JOINING THIS STATEMENT.[1]**

5    **A.      The Plaintiffs.**

6    *Plaintiffs:*  The plaintiffs joining in this statement include all plaintiffs except those

7    noted immediately below.  The plaintiffs have formed several groups, as follows:

8    •  The EFF/ACLU plaintiffs' group, led by the counsel in *Hepting et al v.*

9         *AT&T* and in *Terkel et al v. AT&T,* represents many of the plaintiffs in this

10        proceeding.  The EFF/ACLU plaintiffs' group does not represent the

11        plaintiffs in *Fortnash v. AT&T Corp., Guzzi v. George W. Bush, et al.,*

12        *Marck, et al. v. Verizon Communications, Inc., Payne v. Verizon*

13        *Communications, Inc.*, and *Roche v. AT&T Corp.*, nor do they represent any

14        of the state government entities involved in this proceeding or any of the

15        plaintiffs who are contesting or opposing transfer.  *See* chart at Part III.B.,

16        pp. 12-13, *infra.*

17   •  The Payne Group consists of Plaintiff Payne, whose case was originally filed

18        in the Southern District of New York:  *Payne v. Verizon Communications,*

19        *Inc.,* 3:06-cv-6435.

20   •  The plaintiffs in *Riordan v. Verizon Com. Inc.,* No. C-06-3574 VRW;

21        *Campbell v. AT&T, et al.,* No. C-06-3596 VRW; *Chulsky v. Cellco*

22        *Partnership* (D.N.J.) No. 06-cv-2530; and *Bready v. Verizon Maryland, Inc.*,

23        No. C-06-6313 VRW (the "Removed Plaintiffs") join in this Case

24        Management Statement for the purpose of proposing the procedure for

25        addressing their pending remand motions.  *See* part V.A.1.a, pp. 16-20,

---

27   [1]    A chart listing all cases that have been consolidated, transferred or conditionally
          transferred to MDL-06-1791 to date is attached as Attachment A to this Statement.

1    *infra.*

2    **B.    The Defendants.**

3    The defendants joining in this statement include all defendants except Comcast and

4    TDS.[2]  The defendants fall generally into the following categories:

5    • AT&T Defendants (collectively referred to as "AT&T" except where there is

6    a need to distinguish among them).[3]

7    • Verizon Defendants (collectively referred to as "Verizon" except where

8    there is a need to distinguish among them).[4]

9    • BellSouth Defendants (collectively referred to as "BellSouth" except where

10   there is a need to distinguish among them).[5]

11   • Sprint Nextel Corporation Defendants (collectively referred to as "Sprint"

12   except where there is a need to distinguish among them).[6]

13   • Other telecommunications company defendants.[7]

14   ─────────────────────

15   [2]    Comcast supports a stay pending resolution of the *Hepting* appeal.  TDS does not
wish to join in this statement at this time.

16   [3]    Current AT&T defendants are: AT&T Inc, AT&T Corp, AT&T Operations, Inc.,

17   SBC Long Distance LLC, Pac Bell Telephone Co., AT&T Communications of California,
AT&T Teleholdings, AT&T Communications, SBC Communications, Indiana Bell and

18   Illinois Bell.  The Cingular entities (Cingular Wireless LLC, New Cingular Wireless
Services, Inc. and Cingular Wireless Corporation) are affiliated with AT&T (and with

19   BellSouth).

     [4]    Current Verizon defendants are: Verizon Communications Inc., Verizon Global

20   Networks, Inc., Verizon Northwest Inc., Verizon Maryland Inc., MCI, LLC, and MCI
Communications Services, Inc.  In addition, Cellco Partnership, Verizon Wireless (VAW)

21   LLC, and Verizon Wireless Services LLC, are affiliated with Verizon.  Several cases
purport to name Verizon Wireless, LLC and/or MCI WorldCom Advance Networks, LLC

22   as a defendant, but no such entities exist.

     [5]    Current BellSouth defendants are:  BellSouth Corp., BellSouth

23   Telecommunications, Inc., and BellSouth Communication Systems, LLC.  The Cingular
entities (New Cingular Wireless Services, Cingular Wireless) are affiliated with

24   BellSouth (and with AT&T).

     [6]    Current Sprint defendants are:  Sprint Nextel Corporation, Nextel West Corp.,

25   Sprint Communications Company L.P. and Sprint Spectrum L.P.  Sprint has not been
served in the *Electron Tubes* action but has been served in the other actions in which it

26   has been named.

27   [7]    Bright House Networks, LLC, TransWorld Network Corp, Charter
Communications, LLC, Comcast Telecommunications, Inc., TDS Communications

28                                                                                    (continued…)

1    These defendants sometimes are collectively referred to as the "Carriers."

2    **C.    The Government.**

3    "The Government" refers to the federal defendants sued in their official capacities in

4    these actions and the federal intervenor-defendants (United States of America, National

5    Security Agency, President George W. Bush).

6    **II.    INTRODUCTION.**

7    **A.    The Plaintiffs' introduction.**

8    This MDL proceeding involves cases brought on behalf of customers and

9    subscribers of defendants AT&T, Verizon, MCI, BellSouth, Sprint and their associated

10    entities and subsidiaries, as well as numerous other telecommunications company

11    defendants.[8]

12    Plaintiffs' claims generally fall into two categories:  (1) Claims that defendants,

13    acting on behalf of the government, have unlawfully intercepted the content of domestic

14    and international communications of millions of Americans, including plaintiffs, and (2)

15    claims that the defendants have unlawfully disclosed to the government detailed

16    communications records about millions of their customers, again including plaintiffs.

17    Plaintiffs contend that defendants have received no court order or other judicial

18    authorization, and no executive branch authorization that comports with any

19    congressionally established procedure, allowing such interceptions and disclosures.

20    The majority of the cases allege that defendants' actions violate federal

21    constitutional and/or statutory provisions.  Some also include state law claims.  Five of the

22

---

23    (…continued)
Solutions, Inc., and Hawaiian Telcom Inc.  T-Mobile was named in the two *Cross* cases

24    but was dismissed from them.  Pursuant to an agreement with the Plaintiffs in the *Dubois*
case, Defendant Trans World Network Corp. has not responded to the complaint in

25    *Dubois*, and counsel for Trans World has not entered an appearance in that case or in this
proceeding.

26    [8]    Plaintiffs note that the MDL panel will hear argument on Nov. 30, 2006, on whether
cases against the U.S. government and its agencies should be transferred to this MDL

27    proceeding.  It is therefore premature to address issues that would be raised should those
cases be transferred.

28

1  cases -- all of which were removed from state court and are the subject of motions to

2  remand -- are based solely on state law.

3      Plaintiffs seek remedies that include declaratory and corresponding injunctive relief,

4  as well as statutory damages, punitive damages, restitution, and disgorgement. The

5  particular remedies sought vary from case to case.

6      The United States has intervened in many of the cases in this proceeding to assert

7  that the state secrets privilege requires that the cases be dismissed.  Rulings have been

8  issued in two cases.

9      In *Hepting et al. v. AT&T*, 439 F.Supp.2d 974 (N.D. Cal. 2006) ("*Hepting*"), this

10 Court on July 20, 2006, rejected motions to dismiss brought by both the United States and

11 defendant AT&T and ruled that:

12  • the state secrets privilege does not categorically bar the action because the

13   subject-matter of the action was not a state secret;

14  • the state secrets privilege does not prevent AT&T from disclosing whether it

15   received a certification authorizing its assistance to the United States as a

16   defense;

17  • statutory privileges and the *Totten* doctrine asserted by the United States did not

18   bar the action;

19  • the *Hepting* plaintiffs have standing to maintain the action;

20  • immunity defenses asserted by AT&T did not warrant dismissal of the action;

21   and

22  • plaintiffs can request that the Court revisit the issue of discovery regarding the

23   alleged communications records program.

24      This Court certified its rulings on the state secrets privilege for interlocutory appeal.

25 (*Hepting* Dkt. 308.)  Both the United States and defendant AT&T have petitioned for

26 permission to appeal under 28 U.S.C. § 1292(b).  The Ninth Circuit granted these petitions

27 on November 7, 2006; the Ninth Circuit's order is attached as Attachment B.

28      In *Terkel et al. v. AT&T,* 441 F.Supp.2d 899 (N.D. Il. 2006) ("*Terkel*"), the *Terkel*

1   plaintiffs filed their complaint in the Federal District Court for the Northern District of

2   Illinois against AT&T Corporation on behalf of a putative class of Illinois subscribers and

3   customers alleging a violation of the Electronic Communications Privacy Act, 18 U.S.C.

4   § 2702(a)(3) based upon the disclosure of records by AT&T to the federal government

5   ("records claim").  The *Terkel* plaintiffs sought only declaratory and injunctive relief.

6   Plaintiffs also filed a motion for a preliminary injunction, a motion for class certification,

7   and a motion for leave to take expedited discovery.

8       On July 25, 2006, the district court denied the motion to dismiss filed by defendant

9   AT&T, but granted the motion to dismiss, with leave to amend, filed by the intervenor

10  United States.  *See Terkel*, 441 F.Supp.2d at 920.  The court held that the government's

11  assertion of the state secrets privilege was a bar to the plaintiffs obtaining the discovery

12  they required to prove standing for prospective injunctive relief on their records claim.  *Id.*

13  at 901.

14      On July 31, 2006, the *Terkel* plaintiffs filed their Second Amended Complaint

15  which added a claim alleging the interception and disclosure of the contents of telephone

16  calls in violation of 18 U.S.C. § 2511(1)(a)(1)(c) and (3)(a) of the Act ("content claim").

17  The *Terkel* plaintiffs also added a demand for damages.

18      Also on July 31, 2006, *Terkel* plaintiffs filed a Motion for Reconsideration or

19  Clarification, arguing *inter alia*, that the Court should clarify that the dismissal of the

20  records claim was without prejudice.  On August 3, 2006, the district court granted the

21  *Terkel* plaintiffs motion for clarification, advising that the dismissal was without prejudice

22  and that the Court was going to allow *Terkel* plaintiffs to continue to include their records

23  claim in their Second Amended Complaint.

24      In the remainder of plaintiffs' response, plaintiffs propose that the Court order the

25  following litigation steps to go forward:

26      • For state cases that have been removed, all pending and contemplated remand

27  motions should proceed;

28      • For defendants other than AT&T, plaintiffs should file and serve separate

consolidated complaints by defendant category: MCI, Verizon, Bellsouth, Sprint/Nextel, and Miscellaneous, as explained further below;

- In all cases, discovery that does not implicate the state secrets privilege should proceed, and for all other discovery, the Court should use creative techniques (screened interrogatories, screened deposition topics, 1806(f), technical advisor, etc.) to allow discovery to proceed cautiously in view of the government's concerns about the disclosure of state secrets;

- AT&T should be ordered to file its Answer to the *Hepting* complaint;

- The Court should order all defendants other than AT&T to file and serve any pleadings in response to plaintiffs' consolidated complaints, and order briefing to proceed on plaintiffs' proposed schedule for the briefing of responsive motions. Plaintiffs are willing, however, to agree to a schedule that staggers the response deadlines for the other defendants, putting the response by MCI first and allowing the others to await the outcome of those motions;

- Once discovery has been completed, the *Hepting* plaintiffs should be permitted to amend their preliminary injunction motion papers against AT&T, and the motion should be calendared for hearing.

**B.    The Government's introduction.**

The very subject matter of the civil actions transferred to MDL-1791 implicates state secrets that the United States Government cannot confirm, deny, acknowledge, or otherwise disclose. This proceeding puts directly at issue facts concerning alleged intelligence activities conducted by the National Security Agency. These actions challenge the lawfulness of alleged NSA activities—in most cases the lawfulness of the alleged participation in alleged NSA activities by the defendant telecommunication carriers and, in some cases, the lawfulness of the Government's alleged actions. The very subject matter of these allegations, and the very proof necessary to decide the plaintiffs' claims, constitute state secrets. As the plaintiffs note, the United States has already asserted the state secrets privilege in two of the transferred actions (*Hepting* and *Terkel*) to protect against the

1    disclosure of information that might tend to confirm or deny allegations about sensitive

2    national security activities (including the alleged warrantless interception of

3    communications and the alleged collection of call records information) and thereby harm

4    the national security of the United States.

5        The United States intervened in *Hepting*, moved to dismiss that action on state

6    secrets grounds and, upon this Court's *sua sponte* certification, petitioned the Court of

7    Appeals for interlocutory review of this Court's decision to deny dismissal.  In *Terkel*, the

8    district court granted the Government's motion to dismiss, holding that the state secrets

9    privilege barred AT&T from confirming or denying the core allegations necessary for

10   plaintiffs to prove their standing (*i.e.,* whether or not AT&T had disclosed plaintiffs'

11   telephone records to the NSA).  Although the district court granted the *Terkel* plaintiffs

12   leave to amend their complaint to add new claims, the law of the case bars the *Terkel*

13   plaintiffs from reasserting their telephone records claim for declaratory or injunctive relief.[9]

14       The transferred cases raise allegations similar to those raised in *Hepting* and *Terkel*

15   concerning the interception of communications and the production of call record

16   information and, accordingly, implicate the disclosure of state secrets concerning alleged

17   NSA activities.  Because the Court of Appeals presently has before it the threshold issue,

18   applicable in all cases, of whether these cases can proceed without risking the disclosure of

19   state secrets, further proceedings here should await the Ninth Circuit's guidance on that

20   privilege issue; indeed, a decision in the *Hepting* appeal may dispose of all claims related to

21   NSA surveillance activities and, hence, the pending cases.  Any effort to proceed otherwise

22   will ultimately run into the central state secrets privilege issues raised in *Hepting*.

23       Despite this, the plaintiffs propose a panoply of litigation steps—as if this were a

---

9    Contrary to Plaintiffs' suggestion above, the district court in *Terkel* did not rule that
25   the *Terkel* plaintiffs may reassert in their Second Amended Complaint the very same
     claim that the court had just dismissed.  Rather, the district court deferred any ruling on
26   that issue or any other issue pending the decision of the JPML regarding transfer.  The
     district court's clarification that its dismissal of the telephone records claim was without
27   prejudice merely confirmed that it was not a decision on the merits (indeed, the state
     secrets privilege barred any adjudication of the merits).

1  normal case and not one involving alleged classified activities and as if the *Hepting* appeal

2  were not even pending.  First, Plaintiffs demand an Answer to the *Hepting* Complaint,

3  which alleges that AT&T assisted NSA in its activities.  There is no point to either AT&T

4  or the Government being put to the task of submitting a redacted Answer when the

5  Government has already asserted privilege over the central allegations in *Hepting* and has

6  provided the Court, *ex parte*, *in camera,* with a description of the state secrets at issue, and

7  the process of answering would risk the disclosure of privileged information.

8      Second, Plaintiffs propose to proceed with a wide range of discovery (indeed, before

9  the Carriers and United States have even responded to the allegations in the transferred

10  actions).  All of that discovery is directed at proving plaintiffs' allegations about alleged

11  classified activities, and several areas of discovery proposed by plaintiffs quite specifically

12  demand the disclosure of classified information plainly covered by the Government's

13  privilege assertion (such as whether or not carriers received certifications from the

14  Government to assist the NSA).

15      Third, Plaintiffs (in *Hepting* at least) seek a preliminary injunction that, again quite

16  obviously, puts directly at issue the merits of allegations as to the NSA's and the carrier's

17  actions.  Indeed, it is disingenuous for Plaintiffs to suggest that a preliminary injunction

18  motion does not implicate the state secrets privilege, where that very motion repeatedly puts

19  at issue the alleged involvement of AT&T with NSA activities, and where its very purpose

20  is to enjoin AT&T from assisting NSA in alleged activities.

21      This Court has considered the Government's state secrets privilege assertion in

22  *Hepting*, and its denial of the Government's motion to dismiss is now subject to appellate

23  review.  The further proceedings proposed by plaintiffs—particularly their discovery

24  demands—will inevitably lead to an assertion of the state secrets privilege again because

25  the Government must protect against the disclosure of pieces of information that might tend

26  to reveal national security information.  And even if some limited steps might be

27  undertaken that would not, in isolation, require a state secrets privilege assertion, there is no

28  point to any further proceedings where their ultimate object is to litigate the lawfulness of

1    alleged secret intelligence activities and where the central factual issues essential to

2    proceeding could not be developed.  For these reasons, discussed further below as to

3    specific issues raised in this statement, the Government submits that the most appropriate

4    course would be for the Court to enter a stay of proceedings pending disposition of the

5    *Hepting* interlocutory appeal before the Ninth Circuit.

6    **C.    The Carriers' introduction.**

7         The JPML transferred or conditionally transferred 44 cases to this Court for pre-trial

8    purposes because it found they shared common "factual and legal questions" and that

9    proceeding in a piecemeal fashion would waste the resources of the judiciary and the

10   parties.  In the Carriers' view "the just and efficient conduct of this litigation" requires that

11   the litigation be handled in logical stages, not in a manner that will produce only disarray

12   and confusion and needlessly waste party and judicial resources.

13        The critical threshold issue in these cases is the application of the state-secrets

14   privilege.  In the Carriers' view, that issue is dispositive and requires dismissal.  But even if

15   it is not dispositive, the privilege clearly will shape the conduct of the litigation and define

16   the parameters in which such litigation may take place.  As a result, the most efficient

17   course is to stay all cases before this Court pending the outcome of the appeal in *Hepting*.

18   Even if the outcome of that appeal does not dispose of these cases in their entirety, it clearly

19   will set forth basic principles that will guide the application of the state-secrets privilege in

20   all the cases.

21        Plaintiffs nevertheless invite the Court to launch immediately into a wide range of

22   litigation activities, all of which implicate issues concerning the state secrets privilege that

23   certain of the plaintiffs, defendants and the Government have placed before the Ninth

24   Circuit for interlocutory review.  They suggest that the parties should engage in extensive

25   written discovery and depositions, litigate preliminary injunction and other motions, file

26   responsive pleadings, begin the class certification process, and other activities, all

27   essentially simultaneously.  Plaintiffs would undercut the very purpose of MDL

28   coordination by trying to take these steps against some defendants or in some cases but not

1    others in an effort to "test" new theories or arguments on a selective basis.  They do not

2    explain how doing so could possibly be efficient, especially when the Government's and

3    the Carriers' challenges to the scope of permissible discovery are on interlocutory appeal.

4    The plaintiffs cannot identify anything whatsoever that they believe should await appeal.

5    The plaintiffs' suggested course is a recipe for chaos that would be inappropriate for any

6    MDL proceeding and is even more so in a case implicating serious national security

7    concerns.

8    **III.     THE STATUS OF THE APPEALS AND THE PROCEEDINGS BEFORE**

9    **THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION.**

10   **A.     The status of the interlocutory appeals to the Ninth Circuit (Order ¶ 3(d)).**

11        *Joint Statement*:  On July 20, 2006, the Court denied the Government's and AT&T

12   Corp.'s motions to dismiss one of the cases in this litigation, *Hepting, et al v. AT&T, et al*.

13   *Hepting* (Dkt. 308).  In its Order denying the motions, the Court certified the decision for

14   interlocutory appeal under 28 U.S.C. § 1292(b).  *Id.*  On July 31, 2006, the Government and

15   AT&T Corp. filed separate petitions for appeal in the Ninth Circuit on the grounds that,

16   *inter alia*, the existence of state secrets in the *Hepting* case prevents the plaintiffs there from

17   demonstrating standing and that this issue presents a controlling question of law as to which

18   there is a substantial ground for difference of opinion, the resolution of which could

19   terminate the litigation.  *See* Nos. 06-80109, 06-80110 (9th Cir.)  On August 9, 2006, the

20   *Hepting* plaintiffs filed an opposition to AT&T Corp.'s petition (they did not oppose the

21   Government's) and a cross-petition seeking permission to appeal this Court's ruling that the

22   state secrets privilege prevented them from conducting discovery regarding AT&T's

23   alleged provision of call record data to the Government.  *Id.*  On November 7, 2006, the

24   Ninth Circuit entered this order:  "The petitions for permission to appeal pursuant to 28

25   U.S.C. § 1292(b) are granted.  The cross-petition for permission to appeal is denied as

26   unnecessary.  Within 10 days of this order, petitions shall perfect the appeals pursuant to

27   Federal Rule of Appellate Procedure 5(d)."  *See* Attachment B hereto.

28

1    **B.      The status of the cases in which a party has opposed transfer to MDL 1791**

2            **(Order ¶ 3(d)).**

3            *Joint Statement*:  The Judicial Panel on Multidistrict Litigation ("Panel") issued its

4    Initial Transfer Order ("ITO") on August 9, 2006, transferring 17 cases.[10]  (Dkt. 1).  Since

5    that time, the Panel has issued five Conditional Transfer Orders, conditionally transferring

6    an additional 29 cases to this Court.  Parties in nine of the conditionally transferred cases

7    have objected to transfer.  Specifically:

8            On August 31, 2006, the Panel issued a Conditional Transfer Order ("CTO-1"),

9    conditionally transferring 21 "tag-along" actions.  (Dkt. 37).  The plaintiffs in four of the 21

10   actions subject to CTO-1 opposed transfer and have filed motions to vacate.  Those actions

11   are:  *Mink v. AT&T Commc'ns*, No. C.A. 4:06-1113 (E.D. Mo.), *Shubert v. Bush*, No. C.A.

12   1:06-2282 (E.D.N.Y.), *Center for Constitutional Rights v. Bush*, No. C.A. 1:06-313

13   (S.D.N.Y.), and *Al-Haramain Islamic Foundation, Inc., et al. v. Bush*, No. 3:06-274 (D.

14   Or.).  (A fifth case, *Tyler v. AT&T, Inc.*, was removed from CTO-1, as it was dismissed by

15   the United States District Court for the District of Nebraska.)  With the exception of *Mink*,

16   the cases subject to CTO-1 in which oppositions have been filed all involve actions brought

17   directly against the United States, its agencies, instrumentalities or employees.  The Panel

18   will hear the objections to transfer "without oral argument" on November 30, 2006.  *See*

19   Panel's Notice of Hearing Session (Oct. 17, 2006).  The remaining 16 actions were

20   transferred on September 25, 2006.

21          On September 11, 2006, the Panel issued its Second Conditional Transfer Order

22   ("CTO-2") conditionally transferring to this Court one tag-along action.  The parties in that

23   action, *Bready v. Verizon Maryland, Inc.*, No. C.A. 1:06-2185, did not oppose CTO-2, and

24   the case was transferred on October 4, 2006 (Dkt. 41).

25          On September 28, 2006, the Panel issued its Third Conditional Transfer Order

26   _____

27   [10]      On August 17, 2006, the Panel vacated its ITO regarding one case, *Potter v.
     *BellSouth Corp.,* after it was dismissed by the United States District Court for the Middle
28   District of Tennessee.

("CTO-3") conditionally transferring to this Court five additional actions: *United States v. Palermino*, No. C.A. 3:06-1405 (D. Conn.); *United States v. Adams*, No. C.A. 1:06-97 (D. Me.); *United States v. Gaw*, No. C.A. 4:06-1132 (E.D. Mo.); *Clayton v. AT&T Commc'ns of the Southwest, Inc.*, No. C.A. 2:06-4177 (W.D. Mo.); *United States v. Farber*, No. 3:06-2683 (D.N.J.). With the exception of *Clayton*, which is a subpoena enforcement action brought by two Commissioners of the Missouri Public Utilities Commission against AT&T, these actions involve lawsuits brought by the United States against state agencies or officials who are seeking to conduct investigations of alleged carrier cooperation with federal intelligence activities. Various Carriers are also defendants in these actions. The state agencies have filed motions to vacate CTO-3, and the oppositions to those motions are due on November 20.

On October 11, 2006, the Panel issued its Fourth Conditional Transfer Order ("CTO-4") conditionally transferring to this Court one more tag-along action, *United States v. Volz,* No. C.A. 2:06-00188 (D. Vt.) (filed Oct. 2, 2006). Defendants filed a notice of opposition to transfer on November 3, with their motion and brief in opposition due November 20.

On November 3, 2006, the Panel issued its Fifth Conditional Transfer Order ("CTO-5") conditionally transferring to this Court one more tag-along action, *Roche v. AT&T Corp.* No. C.A. No. C.A. 0:06-4252 (D. Minn.). Notice of opposition to transfer is due by November 20.

The status of the cases where plaintiffs have objected to transfer is as follows:

| Case Name | Transferring Court Case Number | Date Of CTO | Status of Objections/Transfer |
|---|---|---|---|
| *Al-Haramain Islamic Foundation, Inc. v. George W. Bush* | No. C.A. 3:06-274 (D. Or.) | 8/31/2006 (CTO-1) | There will be a hearing "without oral argument" in the JPML on the objections to transfer on November 30, 2006 |
| *Center for Constitutional Rights v. George W. Bush* | No. C.A. 1:06-313 (S.D.N.Y.) | 8/31/2006 (CTO-1) | There will be a hearing "without oral argument" in the JPML on the objections to transfer on November 30, 2006 |

| Case Name | Transferring Court Case Number | Date Of CTO | Status of Objections/Transfer |
|---|---|---|---|
| *Clayton. v. AT&T* | No. C.A. 2:06-4177 (W.D. Mo.) | 9/28/2006 (CTO-3) | Motion to vacate filed on October 30, 2006; responses due by November 20, 2006 |
| *Claudia Mink v. AT&T Communications of the Southwest, Inc.* | No. C.A. 4:06-1113 (E.D. Mo.) | 8/31/2006 (CTO-1) | There will be a hearing "without oral argument" in the JPML on the objections to transfer on November 30, 2006 |
| *Roche v. AT&T Corp.* | No. C.A. 0:06-4252 (D. Minn.) | | Part of CTO-5; notice of opposition to transfer due November 20, 2006 |
| *Virginia Shubert v. George W. Bush* | No. C.A. 1:06-2282 (E.D.N.Y.) | 8/31/2006 (CTO-1) | There will be a hearing "without oral argument" in the JPML on the objections to transfer on November 30, 2006 |
| *United States v. Adams* | No. C.A. 1:06-00097 (D. Me.) | 9/28/2006 (CTO-3) | Motion to vacate filed on October 25, 2006; responses due by November 20, 2006 |
| *United States v. Gaw* | No. C.A. 4:06-01132 (E.D. Mo.) | 9/28/2006 (CTO-3) | Motion to vacate filed on October 30, 2006; responses due by November 20, 2006 |
| *United States v. Farber* | No. C.A. 3:06-02683 (D.N.J.) | 9/28/2006 (CTO-3) | Motion to vacate filed on October 30, 2006; responses due by November 20, 2006 |
| *United States v. Palermino* | No. C.A. 3:06-01405 (D. Conn.) | 9/28/2006 (CTO-3) | Motion to vacate filed on October 30, 2006; responses due by November 20, 2006 |
| *United States v. Volz* | No. C.A. 2:06-188 (D. Vt.) | 10/19/2006 (CTO-4) | Defendants filed notice of objection to CTO-4 on November 3, 2006; motion to vacate due November 20 |

**C.** **The status of cases removed from state court.**

*Joint statement*: The following cases were removed from state court. Plaintiffs in some cases seek remand; in others, they do not seek remand:

| Case Name | Transfer Status | Remand Status |
|---|---|---|
| *Riordan v. Verizon Com. Inc.* No. C-06-3574 VRW (N.D. Cal.) | NA (filed in N.D. Cal.) | Motion fully briefed |
| *Campbell v. AT&T,* No. C-06-3596 VRW (N.D. Cal.) | NA (filed in N.D. Cal.) | Motion fully briefed |
| *Chulsky v. Cellco Partnership* (D.N.J.) No. 06-cv-2530 | CTO-1 – Transfer pending, not opposed | Motion filed – case stayed before opposition due |
| *Bready v. Verizon Maryland, Inc.* No. C-06-6313 VRW (D. Md.) | Transfer complete | Motion filed – case stayed before opposition due |
| *Mink v. AT&T Com. of the SW, et al.* (E.D. Mo.) No. 4:06-cv-1113 | CTO-1 – opposing transfer | Will seek remand upon transfer if ordered |
| *Cross v. AT&T,* No. C-06-6224 VRW (S.D. Ind.) | Transfer complete | Not seeking remand |
| *Conner v. AT&T,* C-06-5576 VRW (E.D. Cal.) | Transfer complete | Not seeking remand |
| *Clayton v. AT&T Com. of the Southwest,* No. 2:06-4177 (W.D. Mo.) | CTO-3 – opposing transfer | Motion for remand already denied by district court (W.D. Mo.) |

**IV.     THE CRITICAL FACTUAL AND LEGAL ISSUES IN DISPUTE.**

**A.     The Plaintiffs' position.**

Defendants have not answered any of the complaints in this MDL proceeding and accordingly have not yet stated whether they dispute any factual issues raised by any of the plaintiffs. As explained below in Part VI.B.1., plaintiffs believe that defendant AT&T should now be ordered to answer the *Hepting* complaint.

The principal legal issues in dispute at this time are the legality of the carriers' conduct and the applicability and effects of the state secrets privilege asserted by the United States on the ability of the parties to litigate the claims at issue.

The Government and the defendants present no new arguments in favor of their argument that a stay should be applied here. As they did in August, they object to plaintiffs' proposals for proceeding in this litigation based mainly on their position that the

1  state secrets privilege bars or significantly inhibits any litigation activities. Once again,

2  however, they fail to give due weight to the fact that this Court has already found that the

3  state secrets privilege does not require dismissal of the *Hepting* complaint.

4      If the Court is correct, litigation should proceed. The cessation of pre-trial activity

5  urged by the Government and the defendants would instead result in unnecessary delay.

6  Discovery and other pre-trial activities should proceed so that when the merits are reached,

7  the parties can litigate *expeditiously* as well as thoroughly and thoughtfully.

8  **B.      The Government's position.**

9      The critical threshold issue in this action is whether proceedings should be stayed

10  pending the *Hepting* appeal. This MDL proceeding presents the same state secrets privilege

11  issues that previously have been raised by the United States in the *Hepting* and *Terkel*

12  actions. It makes little sense to proceed on any front where the Court of Appeals has

13  decided to review this Court's decision with respect to the Government's state secrets

14  privilege assertion in *Hepting* —including whether the very subject matter of that action,

15  and proof necessary to decide standing or the merits of the claims, constitute state secrets.

16  In particular, the Government has asserted in *Hepting* that any information that tends to

17  reveal whether a telecommunications carrier has assisted the Government in a classified

18  intelligence activity cannot be confirmed or denied. The Government has also asserted

19  privilege as to any information that might confirm or deny whether any plaintiff has been

20  subject to alleged NSA intelligence activities, without which plaintiffs could not establish

21  their standing, and has also asserted privilege with respect to information concerning the

22  interception of communications under the Terrorist Surveillance Program, evidence that

23  would be needed to adjudicate claims on the merits. In addition, other alleged NSA

24  activities, such as the alleged collection of call records information, likewise cannot be

25  confirmed or denied. All of these facts would be unavailable under the Government's

26  privilege assertion as to any claim, including alleged statutory violations by the carriers or

27  alleged violations of the First and Fourth Amendments to the Constitution.

28

1        Plaintiffs' assertion above—that "the Court has already found that the state secrets

2    privilege does not require dismissal of the *Hepting* complaint" and *"[i]f the Court is*

3    *correct*, litigation should proceed"—simply disregards the pending appeal, which will

4    assess precisely *whether* the Court is correct.

5    **C.      The Carriers' position.**

6        The critical threshold issue in these cases is the applicability of the state secrets

7    privilege and whether the privilege requires that the cases be dismissed.  Because the Ninth

8    Circuit has now granted the section 1292(b) petitions in *Hepting* for interlocutory review of

9    that issue (*see* Attachment B), the cases should be stayed pending appeal.  The Carriers

10   accordingly support the Government's forthcoming motion for a stay of this litigation.

11       Even assuming that the outcome of the appeal does not dispose of these cases

12   entirely, the appeal will elucidate the fundamental issues and determine the scope of the

13   privileges afforded to the Government.  Accordingly, it is difficult at this juncture to

14   identify the other "critical" legal and factual issues because the Government has asserted, or

15   has expressed its intention to assert, the state secrets privilege with respect to the alleged

16   central facts of all of the cases.  Such issues, however, may include, among others,

17   jurisdictional issues (discussed further below), standing, how the state secrets privilege

18   applies in the cases other than *Hepting*, preemption of state laws, whether the conduct

19   alleged falls within the ambit of the various causes of action asserted by the plaintiffs and

20   the potential applicability of various statutory or common law authorizations, immunities

21   and defenses to those causes of action.

22   **V.      PENDING AND CONTEMPLATED MOTIONS.**

23   **A.      The Plaintiffs' position.**

24   **1.      Pending motions.**

25       In some of the cases, there are pending motions that should be heard.

26   **a.      Motions for remand.**

27       Remand motions are either pending, or will be filed once the transfer process is

28   complete, in *Riordan*, *Campbell*, *Bready*, *Chulsky.* and *Mink* (if *Mink* is transferred). Those

1  cases, their transfer status, and the status of the briefing on the remand motions, is shown in

2  the chart in Part III.C. above.[11]

3      Of the five cases in which remand is an issue, *Mink* is the only case in which

4  transfer is being contested.  Because the remand motions go directly to the issue of the

5  Court's subject matter jurisdiction, the Removed Plaintiffs request that the motions in the

6  cases already before the Court, or in the process of being transferred without opposition in

7  the case of *Chulsky*, be decided without delay and without awaiting the outcome of the

8  transfer decision in the *Mink* or other subsequently tagged cases.[12]

9      The issues presented on remand are independent of the other issues related to these

10  MDL proceedings.  Moreover, until the remand motions are decided, these plaintiffs'

11  claims will remain in suspended animation, unnecessarily prejudicing these plaintiffs by

12  impeding their ability to pursue their claims in state court, if remand is proper, and

13  precluding their active participation in this forum otherwise.  For example, plaintiffs

14  contemplate the filing of consolidated complaints within 30 days of the issuance of a case

15  management order by the Court, with responsive pleadings to be filed by Defendants 30

16  days later.  While amended consolidated complaints could be filed promptly as to the state

17  law claims, this process cannot be finalized until the remand motions have been decided, at

18  which time it will be known if the state court claims will be included in this MDL.  The

19  Removed Plaintiffs also believe that they could suffer substantial prejudice if other case

20  planning and activities go forward before a ruling on the remand motions but these removed

21  _____

22  [11]      Counsel for plaintiffs in two of the removed cases (*Conner, et al. v. AT&T Corp., et al*,. Case No. C-06-5576 VRW and *Cross, et al.  v. AT&T Inc, et al*, Case No. C-06- No.

23  C-06-6224 VRW) have informed the Removed Plaintiffs that they do not intend to file remand motions.

24  [12]      The Judicial Panel on Multi-District Litigation will not consider the *Mink* motion to

25  vacate the conditional transfer order until its November 30, 2006 calendar.  Should the Panel order the transfer of the case, it is unrealistic to expect the transfer process to be

26  completed in *Mink* until some time in January or February.  Counsel for Plaintiff in *Mink* has authorized us to inform the Court that the *Mink* plaintiff does not oppose this

27  scheduling proposal but reserves the right to file her own motion to remand on the issues not already addressed by the other remand motions if her case is in fact transferred to this

28  Court.

1    cases end up in this MDL.

2         Defendants, themselves, concede that the majority of the issues raised by Plaintiffs'

3    remand motions can be determined without reference to state secrets, and argue that at least

4    two grounds exist to deny remand without visiting state secrets at all.  *See* p. 24,

5    *infra*. While Plaintiffs strongly disagree with Defendants' analysis of whether removal was

6    proper, the Court should resolve those questions immediately so that, if Plaintiffs are to

7    remain in federal court, they can proceed accordingly.

8         Defendants also argue that a third basis for removal—whether there is jurisdiction

9    under the "acting under" the direction of a federal officer provision of 28 U.S.C. section

10   1442(a)(1)—cannot be decided without implicating state secrets.   Plaintiffs again strongly

11   disagree. The Court can determine whether or not this issue necessarily implicates state

12   secrets only after having the benefit of the full briefing on the remand motions that is

13   already before the Court.  The question cannot be decided in the context of a few sentences

14   in a case management statement.

15        Likewise, there is no reason to refuse a hearing on pending remand motions while

16   awaiting potential transfer of cases initiated by the federal government against state

17   regulators.  Even the transfer process for those cases will take several more months:  the

18   *Volz* case is not even set for hearing on the November JPMDL calendar, and so will be

19   considered for transfer at the earliest in late January. *See* chart on pp. 12-13, *supra*.

20   Moreover, if those cases were transferred, there is no dispute over the existence of federal

21   jurisdiction as to suits brought by the U.S. government.   While those cases may eventually

22   present issues of whether or not various state laws are preempted, defendants neglect the

23   fact that a preemption defense would not confer federal jurisdiction.  *See Caterpillar, Inc. v.*

24   *Williams*, 482 U.S. 383, 393 (1987, 481 U.S. 58, 63-64 (1987); *In re Miles*, 430 F.3d 1083,

25   1095-96 (9th Cir. 2005) (Berzon, J., concurring in part and concurring in the results) (even

26   if there were an "ironclad" preemption defense in state court, that "does not mean that [the

27   state law claim] is 'completely preempted' in the choice-of-law sense that governs removal

28

1    jurisdiction").[13]

2        Thus, the motions to remand should be set for hearing promptly, with the Court to

3    decide, in the context of full briefing, whether the cases should be remanded and whether

4    the state secrets privilege has any impact on that determination.  To this end, the Removed

5    Plaintiffs urge the Court to adopt the briefing schedule set out below.  To minimize

6    duplicative briefing, they propose that the Court order that the thorough briefing by

7    plaintiffs, defendants, and the government in the *Riordan* and *Campbell* cases on the

8    common issues of federal question jurisdiction and jurisdiction under 28 U.S.C. section

9    1442(a)(1) ("acting under" the direction of a federal officer) be adopted as the briefing on

10   those issues in *Chulsky* and *Bready*.  Thus, the defendants' additional opposition, any

11   additional statement of interest in opposition filed by the government, and plaintiffs' reply

12   thereto will be limited to addressing issues that turn on the particulars of the state law

13   governing the plaintiffs' claims in *Chulsky* and *Bready* and to questions of diversity

14   jurisdiction (which are at issue in *Chulsky* and *Bready* but not at issue in *Campbell* and

15   *Riordan*).  To further minimize the number of briefs, they suggest that defendants file a

16   single opposition brief addressing the relevant issues in *Chulsky* and *Bready*, and that if the

17   government wishes to file a statement of interest, it file a single statement addressed to both

18   cases.  Similarly, plaintiffs in *Chulsky* and *Bready*, will file a joint reply.  Briefing should

19   proceed as follows:

20       •   Defendants' joint opposition to the motions to remand and any statement of

21           interest by the United States to be filed within 7 days of notice of transfer of the

22           *Chulsky* case to this Court;

23       •   Plaintiff's joint reply to be filed 14 days later; and

24           Argument on the motions to remand in all cases to be set for 14 days after the date

25   

26   [13]   Similarly, plaintiffs strongly disagree with defendants' arguments that the
         government's desire to intervene would render remand "futile."  In all events, that subject
27       is already fully briefed and due to be considered at the hearing on the motions to remand,
         not resolved through a CMC statement.

28

1    for filing of the last reply brief.

2    **b.      Preliminary Injunction in *Hepting*.**

3          The *Hepting* plaintiffs filed a preliminary injunction motion seeking interim relief

4    on their claims on March 31, 2006. (Hepting Dkt. 16). The motion remains pending.

5    **c.      AT&T Inc. Motion to Dismiss in *Hepting*.**

6          AT&T Inc. (Hepting Dkt. 79) moved to dismiss on April 28, 2006, asserting that

7    this Court lacks jurisdiction over AT&T Inc.  This motion was heard on June 23, 2006, but

8    has not been decided.

9    **d.      Media Motions to Intervene and Plaintiffs' Motion to Unseal**

10         The media intervenors' motions to intervene and unseal documents in *Hepting*

11   (Hepting Dkts. 133 and 139) and the *Hepting* plaintiffs' motion to unseal the exhibits to the

12   Marcus Declaration that are already available on the Internet (Hepting Dkt. 278), which

13   have already been filed, can be heard without implicating the state secrets privilege,

14   because the United States has already admitted that these documents fall outside the

15   privilege.

16   **e.      The Government's Motion to Dismiss in *Guzzi*.**

17         In *Guzzi v. Bush, et al.  Civil Action No. 06-136 (JEC)*, the Government filed a

18   Motion to Dismiss the action on July 18, 2006 (Guzzi Dkt. 8).  This motion has yet to be

19   heard or decided.

20   **2.      Contemplated motions.**

21   **a.      Motions to dismiss.**

22         As described below, the EFF/ACLU plaintiffs intend to file either separate

23   consolidated complaints organized by defendant group for each defendant except AT&T,

24   while the *Payne* plaintiffs prefer a single consolidated complaint.  *See* Part VI.B.1.

25   (addressing the Court's question about whether plaintiffs intend to file consolidated

26   complaints).

27         Plaintiffs believe that the other defendants should be compelled to answer or file

28   and serve responsive pleadings to the consolidated complaints on the plaintiffs' proposed

1   schedule. *Id.*[14] Plaintiffs are, however, willing to agree to a schedule that staggers the

2   response deadlines for the other defendants, putting the response by MCI first and having

3   the others decided thereafter.

4       In approaching the anticipated motions to dismiss, most of the Court's rulings in

5   *Hepting* appear to be directly applicable to the other telecommunications carrier-

6   defendants,[15] and plaintiffs are willing to enter into appropriate stipulations with defendants

7   to avoid unnecessary relitigation of those issues (without waiver of the parties' respective

8   appellate rights).

9       However, the issue of whether or not the alleged turnover of telecommunications

10   records is or remains a legitimate state secret must be decided on a defendant-by-defendant

11   basis. For instance, Verizon has tacitly admitted that its recently-acquired subsidiary, MCI,

12   did provide its customers' telephone records to the NSA.[16] Accordingly, this important

13   issue must be litigated regardless of how the Ninth Circuit rules in *Hepting*, and any

14   _____

15 [14]   Plaintiffs propose that: their consolidated complaints be due to be filed within 30
days of the Court's issuance of its case management order; defendants and the
16 government, if applicable, be directed to file and serve any pleadings in response to such
complaints within 30 days thereafter; plaintiffs' oppositions to any dispositive motions
17 filed and served 30 days after service; and defendants' replies filed and served 14 days
after service of plaintiffs' responses. *See* Part VI.B.1.
18 [15]   Specifically, the Court's holdings that: (1) the "categorical *Totten/Tenet* bar" does
not apply, *Hepting*, 439 F.Supp.2d at 993; (2) "the very subject matter of this action is
19 hardly a secret"warranting dismissal based on the state secrets privilege, *id.* at 994; (3)
"plaintiffs have stated sufficient facts to allege injury-in-fact for all their claims"
20 establishing Article III standing, *id.* at 999 ; (4) "even if plaintiffs were required to plead
affirmatively that AT&T did not receive a certification authorizing its alleged actions," an
21 allegation that it acted "without judicial or other lawful authorization" is sufficient, *id.* at
1005 ; (5) "even if a common law immunity existed decades ago, applying it presently
22 would undermine the carefully crafted scheme of claims and defenses that Congress
established in subsequently enacted statutes," *id.* at 1005; and (6) "neither the history of
23 judicially created immunities for telecommunications carriers nor the purposes of qualified
immunity justify allowing AT&T to claim the benefit of the doctrine in this case," *id.* at
24 1009).
[16]   On May 16, 2006, Verizon issued a statement that "until just four months ago [i.e.,
25 prior to Verizon's acquisition of long distance carrier MCI], Verizon had three major
businesses," and that "Verizon was not asked to provide, nor did Verizon provide, customer
26 phone records from any of these businesses . . . ." *See id.* at 989. Later that day, the
Verizon spokesman identified in the statement clarified that its denial "was about Verizon,
27 not MCI." *See Verizon says it isn't giving call records to NSA*, USA Today (May 16, 2006)
(available at http://www.usatoday.com/news/washington/2006-05-16-verizon-nsa_x.htm).
28

1    motions to dismiss on this ground should go forward as soon as possible.

2        •    Thus Plaintiffs suggest that either all non-AT&T defendants be required to

3             respond to the consolidated complaints, or that only MCI be so required, so that

4             the specific facts concerning that company can be evaluated and decided first.

5    **b.    Motion for class certification.**

6        Class certification processes can be initiated, when appropriate, without implicating

7    the state secrets privilege. Plaintiffs may seek to file an amended consolidated complaint

8    against the AT&T defendants prior to seeking class certification.

9    **B.    The Government's position.**

10       As noted, the Government's position is that this MDL proceeding should be stayed

11   pending the *Hepting* appeal. Absent a stay, the Government would file a motion to dismiss

12   the transferred cases on state secrets privilege and other grounds. No discovery should

13   proceed until after those motions are resolved. The Government will not stipulate to be

14   bound by the *Hepting* decision in these consolidated actions. It makes little sense, however,

15   for the Government to prepare and file a motion or motions to dismiss, and to assert the

16   state secrets privilege as to the cases consolidated in this proceeding, since the *Hepting*

17   appeal may make such proceedings completely unnecessary and, at the very least, may have

18   a significant effect on the legal landscape. The Government respectfully submits that the

19   Court should not engage in an extensive, significant, and highly burdensome undertaking

20   that would largely replicate the state secrets issues raised in *Hepting*. If the Court does not

21   stay this proceeding, in light of the number of actions and the significance of the state

22   secrets privilege, the Government requests that its response to the complaint(s) be due 60

23   days after the plaintiffs file a master or otherwise consolidated complaint(s). In addition,

24   the Government does not agree that litigation concerning allegations as to the collection of

25   call records information should proceed or be addressed on a defendant-by-defendant basis.

26   These allegations were addressed by the Court in *Hepting* and the Court's decision as to the

27   matter is now subject to interlocutory review. If the case is not stayed, these allegations

28   should be subject to a motion to dismiss before any discovery proceedings.

1  Briefing on class certification issues is not possible since any issue of typicality or

2  commonality of alleged class claims would clearly be bound up in the underlying facts as to

3  what alleged injuries plaintiffs have suffered, and whether the actions alleged to have

4  caused those injuries by either NSA or the carriers could be confirmed on denied in light of

5  the Government's state secrets privilege assertion.

6  The Government does not agree to plaintiffs' proposed limits on its right to brief

7  remand issues in *Bready* and *Chulsky*.

8  **C.  The Carriers' position.**

9  Given the singular significance of state secrets to these actions, none of the pending

10  motions should proceed while this key issue is pending appellate review.  There is no

11  benefit to be gained from having the parties brief and this court decide motions when the

12  outcome of the appellate process could easily result in the outright dismissal of these cases

13  or, at the least, may well require further briefing and reconsideration of how the state

14  secrets privilege applies to the allegations and circumstances of the non-*Hepting* cases after

15  appellate guidance is received.  The plaintiffs' proposed course of unrestrained litigation of

16  these matters could effectively deny the Government its right to the appeal of the decision

17  to recognize its state secrets privilege only partially.

18  Moreover, the extent of discovery, if any, afforded to the plaintiffs in support of

19  their motion for a preliminary injunction depends heavily on the appellate resolution of the

20  state secrets issue.  Equally important, the ability of the carriers to articulate their defenses

21  to such a motion would also depend centrally on the appellate resolution of the state secrets

22  issue.  Briefing of the preliminary injunction at this juncture would deny the carriers any

23  ability to offer an effective factual defense.  Moreover, plaintiffs' suggestion that briefing

24  on a preliminary injunction motion (or any other of their suggested motions) could occur

25  only in *Hepting* or any other single case is inappropriate:  all the cases against all the carrier

26  defendants have been sent to this Court for coordination and consolidation, and attempting

27  to decide the relevant legal issues in the context of only one case against one of the

28  defendants would be neither fair nor efficient.

1    The Court also could not efficiently decide the jurisdictional issues regarding

2    pending motions to remand prior to the appellate resolution of the state secrets issues.  To

3    be sure, the Court could deny remand on the ground that the state law claims implicate

4    significant federal issues under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,

5    125 S. Ct. 2363 (2005).  In *Clayton* v. *AT&T*, C.A. 2:06-4177 (W.D. Mo. Oct. 13, 2006)

6    (denying plaintiffs' motion for remand on *Grable* grounds), a federal district court has

7    already denied remand in light of the obvious federal issues central to this case, and this

8    Court could follow that path.  Removal of these actions, however, also was based on the

9    allegations that carriers took actions as federal officers.  The factual predicate for this

10   ground for removal – whether the carriers acted at the behest of the federal government – is

11   directly controlled by the appellate resolution of the state secrets issue.  The remand issue

12   thus could not be resolved *against* the carriers without addressing whether federal officer

13   removal—which is one the principal grounds for removal in each case—is available to

14   them because the appropriateness of federal officer removal directly implicates the alleged

15   relationship between the carriers and the Government which is the subject of the

16   Government's state secrets privilege.

17       Should the Court not deny the remand motions on *Grable* grounds or stay these

18   proceedings pending the Ninth Circuit's guidance on state secrets in *Hepting*, it would need

19   to address the further ground for denial of the remand motions, namely whether federal

20   statutory and common law completely preempt state law.  Efficiency suggests, however,

21   that the Court not rule on the preemption issue in the remand cases until the transfer process

22   is complete and the Court knows whether it will have before it the federal-state cases

23   conditionally transferred to this Court in CTO-3 and CTO-4.  In those cases, where the

24   Government has brought suit against state agencies and officials to enjoin their actions,

25   dispositive motions will need to be resolved concerning the appropriate role, if any, that

26   state law plays in these disputes.  Thus, the Court will need to consider the issue of

27   preemption across these sets of cases, and its views on preemption in the federal-state cases

28   could prove dispositive of the remand question in all of the cases should the Court agree

1    that federal statutory or common law completely preempts state law in this context.  And

2    remand in these cases would in any event be entirely futile, as the Government indicated in

3    the *Clayton* remand, because the Government could intervene and re-remove any action to

4    re-establish federal jurisdiction, even if remand were granted.

5         Regarding the pending motions to dismiss AT&T Inc. based on personal

6    jurisdiction, there is no reason for the Court to move forward on this motion at this point,

7    although it could likely do so unless jurisdiction based on specific conduct at issue is

8    invoked.  (If plaintiffs do intend to argue specific jurisdiction, that would implicate the

9    subject matter jurisdiction issues raised by the *Totten* bar and state secrets privilege.)  Given

10   the fundamental issue regarding subject matter jurisdiction implicated by the state secrets

11   issue on appeal, there is no need for the Court to address prematurely issues of personal

12   jurisdiction over discrete entities.

13        The class certification process cannot be initiated without implicating state secrets

14   issues.  One foundational requirement of class establishment is the typicality of injury

15   requirement, and this inquiry is intimately bound up with facts concerning the plaintiffs'

16   purported injury and the relation of that injury to the injury of the remainder of the

17   purported classes.  In these cases, neither the representative plaintiffs nor the purported

18   classes have any concrete or competent evidence about their alleged injuries because of the

19   state secrets privilege.  Accordingly, this issue cannot be resolved without the resolution of

20   the appeal of the state secrets privilege.  If standing cannot be litigated pending the outcome

21   of the appeal, then *a fortiori* the Court cannot make any necessary findings on typicality or

22   certification.  Even were particular individuals to assert standing on specific facts, the

23   typicality of their alleged injuries to the remaining plaintiffs could still not be assessed

24   without confronting state secrets issues.

25        In any event, there is no reason to require the expedited briefing schedules

26   suggested by the plaintiffs for any of these motions or the limits they propose for briefing of

27   the remand issues in *Bready* and *Chulsky*.  Plaintiffs have failed to demonstrate any special

28   urgency to resolving these motions that should put the parties and the court to the extra

1    burden of deviating from standard briefing schedules.  Further, plaintiffs' suggestion that

2    the schedule be staggered in some way so that certain defendants such as MCI can be

3    required to respond to plaintiffs' consolidated complaint first makes no sense and would

4    undercut the purpose of MDL coordination.  The plaintiffs' purported rationale for this

5    suggestion—that Verizon has "tacitly admitted" that MCI provided customer records to the

6    NSA—is contrary to fact.  Indeed, the very statement that plaintiffs quote expressly stated

7    that "Verizon cannot and will not confirm or deny whether it has any relationship" to the

8    alleged NSA program.

9    **VI.     THE SUBJECTS IDENTIFIED IN THE ORDER.**

10   **A.      Does the government intend to assert the state secrets privilege in all of the**

11           **cases transferred pursuant to MDL 1791?  (Order ¶ 2(a)).**

12   **1.      The Government's Position.**

13           The Government's position is that further proceedings in this action should be

14   stayed pending resolution of the petition for interlocutory review in *Hepting*.  If not stayed,

15   the Government expects to assert the state secrets privilege in all the cases currently

16   transferred (*see* part VI.C.2.b, p. 34, *infra*), but also expects to raise other applicable

17   grounds for dismissing these actions, including plaintiffs' inability to establish standing,

18   which may not require consideration of state secrets privilege in every case or as to every

19   claim.[17]

20   **2.      The Plaintiffs' Position.**

21           The government has only intervened in these cases for purposes of raising the state

22   secrets privilege.  It has no standing to raise other issues based on the limited nature of its

23   intervention and should not be allowed to do so.

24   _____

25   [17]    Plaintiffs' position that the Government cannot raise any issues other than the state
       secrets privilege is baseless.  Where the Government has intervened in these cases, it has
       done so for the purpose of seeking dismissal, not just to assert the state secrets privilege.

26   Indeed, in both *Hepting* and *Terkel*, the Government raised additional grounds for
       dismissal, such as standing, the *Totten* bar, and statutory privileges.  Moreover, the

27   Government is itself a party to some of the transferred cases; obviously, its participation
       in those cases also is not limited to the state secrets privilege.

28

1    **B.    Do plaintiffs intend to file consolidated complaints?  (Order ¶ 2(b)).**

2    **1.    The Plaintiffs' position.**

3        The Court asked whether plaintiffs intend to file consolidated complaints.  The

4    Court also noted that it is considering the appointment of lead counsel or a steering

5    committee for representation of "parties with similar interests."  Order, ¶ 5(b).

6    **a.    The EFF/ACLU Group.**

7        As described more fully in the EFF Group's proposed Joint and Agreed

8    Organization Plan (filed separately by plaintiffs today), plaintiffs propose a litigation

9    structure organized by major defendant category.  The structure has two main components:

10   (1) an executive committee composed of interim class counsel for each of the major

11   defendants and their affiliated entities (AT&T, Verizon, MCI, BellSouth, Sprint) and for a

12   category of "other defendants"; and (2) co-lead coordinating counsel to maintain overall

13   coordination of the litigation, consisting of the Electronic Frontier Foundation, lead counsel

14   in *Hepting*, and the ACLU of Illinois, lead counsel in *Terkel*.

15   *Non-AT&T Defendants:*

16       The EFF Plaintiffs therefore contemplate the filing of separate consolidated

17   complaints for each of the major defendants MCI, Verizon, BellSouth, Sprint (and their

18   affiliated entities) and for the category of other defendants.[18]  As noted above at Part

19   V.A.2., the EFF Plaintiffs believe that the issue of whether or not the alleged turnover of

20   telecommunications records is or remains a legitimate state secret must be decided on a

21   defendant-by-defendant basis.

22       The EFF Plaintiffs request that the consolidated complaints described above be due

23   to be filed within 30 days of the Court's issuance of its case management order.  The EFF

24   _____

25   [18]    Plaintiffs will likely need to amend these consolidated complaints if new cases
     raising different claims are transferred into this proceeding by the MDL panel, or if the

26   cases seeking remand, discussed at Part V.A.1., which raise state law claims, are not
     remanded. Additional operative complaints might need to be utilized if the MDL panel

27   transfers cases brought by the United States against various state public utility
     commissions.

28

1   Plaintiffs request that defendants (and the government, if it chooses to respond) be directed

2   to file and serve any pleadings to plaintiffs' consolidated complaints within 30 days

3   thereafter, with plaintiffs' responses to any dispositive motions filed and served 30 days

4   after service, and defendants' replies filed and served 14 days after service of plaintiffs'

5   responses.  As noted above, plaintiffs would agree to an alternate arrangement where only

6   MCI was required to respond to the consolidated complaint at this time, with the responses

7   of other defendants delayed until further Order of the Court, after a determination of the

8   anticipated motions to dismiss the case against MCI from the defendants and the

9   government.

10  *AT&T Defendants:*

11      The EFF Plaintiffs do not, however, intend to file a consolidated complaint against

12  defendant AT&T at this time, and instead ask that *Hepting* be considered the lead case for

13  those defendants.  *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, Sec. 10.123 (Federal

14  Judicial Center 2004) ("Another coordination method is to designate a "lead" case in the

15  litigation; rulings in the lead case would presumptively apply to the other coordinated cases,

16  and the judges in those cases may stay pretrial proceedings in those cases pending

17  resolution of the lead case.").

18      Plaintiffs believe that it would cause unnecessary delay and possibly undermine the

19  appeal to file a consolidated complaint against AT&T because: a) the Court has already

20  decided the sufficiency of the complaint against AT&T in *Hepting*; b) the parties have

21  sought appeal of the state secrets privilege issues based on the First Amended Complaint; c)

22  *Hepting* involves both interception and stored communications records claims; d) the

23  *Hepting* plaintiffs' motion for preliminary injunction, supported by record evidence, is

24  currently pending for decision by the Court.

25      The EFF Plaintiffs believe the more appropriate course would be to treat the

26  *Hepting* amended complaint as the controlling complaint with regard to AT&T, at least

27  until the appeal is complete, and to narrowly focus activities in all other cases against

28  AT&T pending completion of appeal of the state secrets privilege issue. Such activities in

1    the AT&T cases should include discovery (as discussed below), proceedings relating to the

2    preliminary injunction motion, and motions to remand.  The AT&T defendants' time to

3    respond to all complaints other than *Hepting* shall be extended until further order of the

4    Court, likely after determination of the Ninth Circuit appeal in *Hepting*.

5        The EFF Plaintiffs also believe that AT&T should be compelled to file its Answer to

6    the *Hepting* complaint. This Court has already held that information about a certification

7    concerning the interception of communications "would be revealed only at the same level

8    of generality as the government's public disclosures, [and that] permitting this discovery

9    should not reveal any new information on the NSA's activities or its intelligence sources or

10   methods, assuming that the government has been truthful," *Hepting*, 439 F.Supp.2d at 997.

11   It has also said that "the very subject matter of this action is not a 'secret.' " *Id.* at 994.

12       AT&T's claims that it cannot provide any portion of its Answer without violating

13   state secrets are unwarranted.  *Id.* at 996-997 ("[t]he court envisions that AT & T could

14   confirm or deny the existence of a certification authorizing monitoring of communication

15   content through a combination of responses to interrogatories and *in camera* review by the

16   court").

17       Accordingly, the EFF Plaintiffs believe that even if some portions of the Answer

18   might raise state secrets concerns, the correct response is to follow the Congressionally

19   created processes for handling claims of national security in such cases, provided in Section

20   1806(f) of the Foreign Intelligence Surveillance Act. *See* 50 U.S.C. § 1806(f); *see also*

21   *Halpern v. U.S.*, 258 F.2d 36, 43 (2nd Cir. 1958); *Loral Corp. v. McDonnell Douglas*

22   *Corp.*, 558 F.2d 1130 (2nd Cir. 1977); *Spock v. U.S.*, 464 F. Supp. 510, 520 (S.D.N.Y.

23   1978) (endorsing creative solutions to manage state secrets privilege issues).

24       Section 1806(f) provides for *in camera* and *ex parte* review of "materials relating to

25   the surveillance as may be necessary to determine whether the surveillance of the aggrieved

26   person was lawfully authorized and conducted."  *See generally* Plaintiffs' Opp. to Gov't

27   Motion to Dismiss, pp. 21-24 (*Hepting* Dkt. 181).  AT&T can file its complete Answer

28   directly in chambers, and can serve and file those portions that do not implicate disputed

1    material on the public record.[19]  AT&T's renewed claim below, that 50 U.S.C. §1806 only

2    applies to situations in which the surveillance is to be used in a criminal case, has been

3    briefed at length by the parties already, and was discussed at length at the hearing on the

4    motions to dismiss in June.  Plaintiffs are of course willing to address that issue again

5    should the Court seek additional briefing, but will not do so as part of this already lengthy

6    joint Case Management Conference Statement.

7    **b.      The Payne Group.**

8           Plaintiff Payne, whose action was recently transferred from the Southern District of

9    New York, believes it is appropriate to file a single consolidated complaint against all

10   Defendants for the claims that the defendants have unlawfully disclosed to the government

11   detailed communications records of their customers.  Plaintiff Payne has submitted a

12   proposed organizational plan submitted herewith as Attachment C.

13   **2.      The Government's and the Carriers' position.**

14   **a.      Master Complaint.**

15          The Government and the Carriers believe that if the Court does not stay proceedings

16   in their entirety, it should require plaintiffs to file a single master complaint.  The filing of a

17   single complaint would streamline the litigation and be a more efficient and practical way

18   of presenting the relevant issues that would be addressed by the Government's invocation

19   of the state secrets privilege, both for the Court and for the many parties involved.  It is also

20   manifestly feasible given that many of the complaints in cases transferred to this MDL

21   assert claims against multiple carrier defendants.  Further, regardless of the number of

22   complaints that the plaintiffs file, any further motions or other proceedings should occur, if

23   at all, on a consolidated basis, not in a piecemeal fashion in *Hepting* or in any other case.  If

24   the Court does not stay this proceeding, the Government and the Carriers request that their

25   

26   [19]     Since the state secrets privilege belongs to the government, AT&T may need some
         guidance determining which paragraphs to redact.  It would seem appropriate for the
27       government to file papers identifying which specific paragraphs of the Complaint it
         would object to AT&T answering publicly pending the interlocutory appeal.

28

1    respective responses to the complaints be due 60 days after the plaintiffs file a master or

2    otherwise consolidated complaint(s).

3    **b.    *Hepting* Answer.**

4         No benefit would be served by requiring AT&T to file an answer in *Hepting*.  The

5    allegations in the *Hepting* Complaint go to whether AT&T assisted NSA in carrying out

6    certain alleged intelligence activities, and these allegations are at the heart of the

7    Government's state secrets assertion.  The Government has already made clear that these

8    allegations implicate state secrets.  Moreover, AT&T will be unable to tender affirmative

9    defenses supported by an adequate evidentiary foundation, much less decide which ones are

10   potentially applicable, prior to the resolution of the state secrets issue.

11        Accordingly, putting AT&T and the Government to the task of redacting facts from

12   the answer is not only pointless but risky.  The Government has already provided the Court,

13   *ex parte, in camera*, with a description of the state secrets at issue in the Complaint, and

14   answering the Complaint is not necessary to apprise the Court of the underlying privileged

15   facts at stake.  Moreover, the process of redaction presents potential risks, since the

16   identification of specific allegations that are—and are not—subject to the state secrets

17   privilege might tend to reveal the underlying privileged information not only in *Hepting* but

18   also, by comparison, in other cases where similar information may or may not be confirmed

19   or denied.

20        In particular, as should be obvious from the Government's prior privilege assertion,

21   any effort to require any of the carriers to address the issue of whether a certification exists,

22   in whatever form, lies at the heart of the state secrets privilege assertion and the pending

23   appeal in *Hepting*.  Indeed, one of the key issues currently subject to appellate review is

24   whether AT&T or any carrier could reveal such a certification at any level of generality.

25   Attempting to do so would not only moot a significant aspect of the appeal but would

26   present the very risks to national security that the Government seeks to prevent through its

27   privilege assertion.

28

1      **c.      Section 1806(f).**

2           Plaintiffs' suggestion that 50 U.S.C. § 1806(f) could be applied in the process of

3      answering the Complaint is meritless.  As the Government has already explained, 50 U.S.C.

4      § 1806(f) is not applicable in this action.  *See* United States' Reply in Support of the

5      Assertion of the Military and State Secrets Privilege and Motion to Dismiss Or, in the

6      Alternative, for Summary Judgment by the United States (Dkt. 245) at 18-23.  In sum,

7      Section 1806(f) was enacted to enable the Government to protect classified intelligence

8      information in a challenge to alleged unlawful surveillance under the Foreign Intelligence

9      Surveillance Act ("FISA") that has already been made known.  Section 1806(f) is not a

10     means to discover whether surveillance has occurred in the first place, as plaintiffs are

11     attempting to do here.  *See ACLU Foundation v. Barr*, 952 F.2d 457, 468-69 & n.13 (D.C.

12     Cir. 1991) ("The government makes this point, with which we agree, that under FISA it has

13     no duty to reveal ongoing foreign intelligence surveillance.") (citing S. Rep. 95-604, Pt. 1,

14     95th Cong., 1st Sess., at 59 (1977), reprinted in 1978 U.S.C.C.A.N. 3904, 3960-61); *In re*

15     *Grand Jury Investigation*, 431 F. Supp. 2d 584, 591-92 (E.D. Va. 2006) (finding that, in

16     grand jury proceedings, neither the non-target witness nor the potential target was entitled

17     to notice under the FISA of whether there was any warrantless NSA electronic surveillance

18     of the potential target).  In this case, the very threshold question of whether or not plaintiffs

19     have been subject to surveillance is a state secret, and plaintiffs cannot use FISA to attempt

20     to confirm their belief that they have been subject to surveillance.  *See ACLU Foundation v.*

21     *Barr*, 952 F.2d at 468-69 & n.13.  Furthermore, this statutory provision cannot and does not

22     purport to preempt the constitutionally-based state secrets privilege.[20]  If the Court wishes,

23     the Government will brief this issue further.

24     _____

       [20]     Plaintiffs' reliance on *Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958) is
25     misplaced as subsequent Second Circuit make clear.  In *Clift v. United States*, 597 F.2d
       826, 829 (2d Cir.1979), the Second Circuit revisited *Halpern* and rejected the notion that
26     statutory law superseded the state secrets privilege and that *in camera* proceedings
       involving the Government's state secrets privilege assertion could proceed.  *See also Clift*
27     *v. United States,* 808 F. Supp. 101, 109-111 (D. Conn. 1991) (*Halpern* does not stand for
       proposition that statutory *in camera* process may supersede state secrets privilege).

28

1    In its Order of June 6, 2006 (Dkt. No. 171), the Court did not resolve whether

2    Section 1806(f) is applicable here, *see id.* at 6, and this provision need not be invoked or

3    utilized for purposes of an Answer.  If the Court wishes to have an Answer, one could be

4    submitted which states, where applicable, that a response to a particular paragraph would

5    implicate the Government's state secrets privilege assertion.  Because of the risk of

6    inadvertent disclosure, the Government would necessarily take a broad view as to such

7    information.

8    **C.    What issues in these cases may be resolved without implicating the state secrets**

9    **privilege, if asserted?  (Order ¶ 2(c)).**

10   **1.    The Plaintiffs' position.**

11   As noted above, plaintiffs believe that the Court can resolve the legality of AT&T's

12   conduct by permitting plaintiffs to pursue their preliminary injunction motion against

13   AT&T[21], and whether the cases removed from state court should be remanded.  In addition,

14   when the Court permits dispositive motions as to plaintiffs' intended consolidated

15   complaints against non-AT&T defendants, the Court can decide whether or not the alleged

16   turnover or disclosure of communication records is or remains a legitimate state secret.

17   Plaintiffs also believe that:

18   The media intervenors' motions to intervene and unseal documents in *Hepting*

19   (*Hepting* Dkts. 133 and 139) and the *Hepting* plaintiffs' motion to unseal the exhibits to the

20   Marcus Declaration that are already available on the Internet (Hepting Dkt. 278), which

21   have already been filed, can be heard without implicating the state secrets privilege,

22   because the United States has already admitted that these documents fall outside the

23   privilege.

24   Class certification processes can be initiated, when appropriate, without implicating

25   _____

26   [21]    Although the preliminary injunction motion against AT&T has already been briefed, plaintiffs believe that the Court should permit plaintiffs to amend their motion papers after completion of their proposed discovery given the likelihood that additional relevant

27   facts will be established and the existence of facts publicly disclosed after the plaintiffs' motion papers were filed.

28

1 the state secrets privilege.  Plaintiffs may seek to file an amended consolidated complaint

2 against the AT&T defendants prior to seeking class certification.

3      In the conditionally transferred actions where state government authorities are

4 investigating defendants' activities under state law, it is premature for this Court to address

5 whether the states have authority to engage in such investigation.  Instead, if those actions

6 are ultimately transferred, the proper first step is to determine whether the cases brought by

7 the United States should be dismissed, if the state government entities seek dismissal.

8      The question of whether a spoliation order should be put in place can be addressed

9 immediately.

10      Once discovery is complete, it may be appropriate for the Court to entertain motions

11 regarding the legal implications of any certification or certifications received by defendants.

12 **2.      The Government's position.**

13 **a.      Motion to dismiss.**

14      If further proceedings are not stayed pending the *Hepting* appeal and, thus, it

15 becomes necessary for the Government to move to dismiss the transferred cases based on

16 the state secrets privilege, then the Government also expects to raise other applicable

17 grounds for dismissing these actions, including plaintiffs' inability to establish standing,

18 which may not require consideration of state secrets privilege in every case or as to every

19 claim.  For example, plaintiffs in many of the transferred cases allege that the NSA has

20 intercepted the content of their communications without a warrant, but such plaintiffs do

21 not claim that they are in contact with members or agents of al Qaeda or affiliated terrorist

22 organizations—the communications that fall within the Terrorist Surveillance Program.  As

23 a result, such plaintiffs clearly lack standing on the face of their allegations to raise content

24 collection claims.  Similarly, any allegations of injury that rely on a subjective chilling

25 effect are foreclosed by *Laird v. Tatum*, 408 U.S. 1 (1972).

26 **b.      Federal-state actions.**

27      In addition, some of the actions conditionally transferred to this Court concern

28 whether state government entities have authority to investigate the alleged assistance of

1 telecommunications carriers in alleged NSA surveillance activities, and this issue of

2 federal-state authority can be addressed without the need to assert the state secrets

3 privilege.[22]

4 **c.    Preliminary injunction motion.**

5 The *Hepting* plaintiffs' contention that their motion for a preliminary injunction

6 could be litigated without implicating the Government's assertion of the state secrets

7 privilege is specious. A cursory review of that motion reveals that it puts directly at issue

8 whether AT&T has assisted the Government in alleged NSA intelligence activities and the

9 merits of the lawfulness of those activities—matters that squarely implicate the state secrets

10 privilege now subject to appellate review. For example, the "Statement of Facts" in

11 plaintiffs' motion puts directly at issue facts concerning the Government's alleged

12 warrantless domestic surveillance program. *See* Plaintiffs' Amended Notice of Motion and

13 Motion for Preliminary Injunction; Plaintiffs' Memorandum of Points and Authorities in

14 Support of Motion for Preliminary Injunction (*Hepting* Dkt. No. 229) at 3. In that section,

15 Plaintiffs put at issue facts concerning:

16     • AT&T's alleged collaboration with the Government program, *see id.* at 5, and

17     • The alleged creation of a secure room to facilitate the Government's program.

18         *See id.* at 6.

19 Further, a threshold issue that must be considered before any injunction could issue

20 is whether the Plaintiffs could even establish their standing to obtain any relief. Here again,

21 the facts necessary to adjudicate whether these plaintiffs have in fact been injured by NSA's

22 alleged actions or are likely to be injured in the future implicate the state secrets privilege;

23 indeed, by itself this warrants dismissal of this case regardless of AT&T's alleged role.

24 In addition, a preliminary injunction motion, by definition, involves an inquiry into

25

---

26 [22]     *See United States v. Adams, et al.* (C.A. 06-00097 D. Me.)*; United States v. Gaw, et al.* (C.A. 06-01132 W.D. Mo.); *United States v. Farber, et al.* (C.A. 06-02683 D. N.J.);

27 *United States v. Palermino, et. al.* (C.A. 06-01405; and *United States v. Volz et al.* (C.A. 06-00188 D. Vt.); *Clayton et al. v. AT&T et al.,* C.A. 06-4177 (W.D. Mo.).

28

1    whether plaintiffs have a likelihood of success on the merits.  Addressing the merits not

2    only requires a threshold factual determination as to whether AT&T collaborated with

3    NSA, but also requires the facts needed to adjudicate the legality of the alleged actions

4    under the Constitution and statutory law, including any potential defenses.  Plaintiffs

5    repeatedly allege collaboration between AT&T and the Government on the alleged

6    surveillance.  *See, e.g. id.* at 17, 18, 19, 22 (alleging arrangement between the Government

7    and AT&T).  And the *Hepting* preliminary injunction motion specifically puts at issue

8    whether certifications were provided to AT&T, *see id.* at 21, again implicating a core state

9    secrets issue.  Beyond this, the specific facts concerning the alleged classified activities

10   would be essential to deciding the statutory and constitutional claims.  Finally, the *relief*

11   sought also implicates the state secrets privilege at issue, because plaintiffs seek to halt

12   AT&T's alleged involvement with NSA activities.  In sum, it is mystifying how plaintiffs

13   could assert that their preliminary injunction motion could be adjudicated without

14   implicating the state secrets issues now raised for appeal in *Hepting*.

15   **d.      Class certification.**

16          As noted, the Government's position is that briefing on class certification issues is

17   not possible since any issue of typicality or commonality of alleged class claims would

18   clearly be bound up in the underlying facts as to what alleged injuries Plaintiffs have

19   suffered and whether the actions alleged to have caused those injuries by either NSA or the

20   carriers could be confirmed or denied in light of the Government's state secrets privilege

21   assertion.

22   **3.      The Carriers' position.**

23          While the overarching issue of the state secrets privilege remains on appeal to the

24   Ninth Circuit, consideration or resolution of other issues would merely waste judicial and

25   party resources.  Should the Court nonetheless decide to address certain preliminary issues

26   prior to the Ninth Circuit's ruling, it should do so only to organize and define the scope of

27   the proceeding, which obviously no longer consists of just the *Hepting* case.  Such an

28   approach would be the requisite first step in coordinating the cases to fulfill the purposes of

1    the MDL process rather than proceeding in the helter-skelter fashion the plaintiffs propose

2    in which isolated cases would move forward, while others would not.  In particular, the

3    Court could require appointment of a plaintiffs' steering committee and the filing of a

4    consolidated Master Complaint.  The Court also could resolve the issue of personal

5    jurisdiction regarding certain corporate defendants, and motions regarding sealing or

6    intervention, as well as potentially the pending motions to remand (though, as discussed in

7    part V.C above, the Court may be unable to fully resolve the remand motions without

8    implicating the state secretes privilege).[23]  Resolution of any of these issues, however,

9    could well be rendered moot by the appeal.  And most certainly, contrary to the plaintiffs'

10   position, the discovery and factual issues raised by the preliminary injunction motion, or

11   even an answer to any complaint, would implicate the state secrets issues on appeal, as

12   discussed above.

13   **D.      What discovery may proceed and how should it be coordinated?  (Order**

14   **          ¶ 2(d)).**

15   **1.      The Plaintiffs' position.**

16           No discovery has yet occurred in this proceeding.  Plaintiffs and defendants

17   participated in a F.R.C.P. 26(f) conference on Oct. 30, 2006, and discussed some issues

18   regarding discovery.

19           The Court has already indicated its willingness to adopt creative approaches to the

20   litigation of this case, as expressly contemplated by precedent.  *E.g., Ellsberg v. Mitchell*,

21   709 F.2d 51, 64 (D.C. Cir. 1983) (recognizing that the trial judge had discretion to develop

22   procedural innovations to ensure that the government justifies its privilege).  For instance,

23   _____

[23]       Defendants Bright House Networks, LLC ("BHN") and Charter Communications,
24   LLC, ("Charter") whom plaintiffs have included in the classification "other defendants,"
     agree that all further proceedings in these cases should be stayed pending the resolution of
25   the state secrets privilege.  However, should the Court decide to address other preliminary
     issues, these defendants would ask the Court to dismiss the claims against them for, *inter*
26   *alia*, failure to state claims for relief against them.  Neither BHN nor Charter were named
     in the press reports upon which plaintiffs based their claims, and plaintiffs have failed to
27   allege any particular conduct by either BHN or Charter to suggest that plaintiffs have any
     basis for naming either company in these cases.

28

1   with respect to the purported certifications at issue in *Hepting*, the Court held that discovery

2   could proceed "through a combination of responses to interrogatories and *in camera* review

3   by the court." *Hepting*, 439 F.Supp.2d at 997.

4   **a.      Already issued discovery.**

5          1.      Some of the plaintiffs in this proceeding have served discovery requests that

6   have not been answered.  *E.g., Hepting et al. v. AT&T*, 2006 WL 1581965 (N.D. Cal.), *1

7   ("discovery cannot commence until the court examines the classified documents to assess

8   whether and to what extent the state secrets privilege applies").

9          a.      The *Hepting* plaintiffs have a pending motion for preliminary injunction

10  addressing only communication content claims against AT&T filed on March 31, 2006,

11  nearly six months ago (Hepting Dkt. 16), which the Court has not scheduled for hearing. In

12  connection with that motion, the *Hepting* plaintiffs served a Rule 30(b)(6) deposition notice

13  and an associated document request on defendant AT&T Corp. tailored to address only

14  issues raised by the preliminary injunction motion, which seeks production of

15  "certifications or purported certifications." (Hepting Dkt 95).  Defendant refused to comply

16  with the 30(b)(6) notice, but did not move for a protective order.  The Court has not yet

17  permitted discovery to proceed, but has ruled that the state secrets privilege does not

18  prevent AT&T from asserting a certification-based defense.  *Hepting*, 439 F.Supp.2d at

19  996-997.

20          Plaintiffs seek to move forward with their pending preliminary injunction motion as

21  quickly as possible, and propose: First, plaintiffs' previously noticed discovery should go

22  forward.  To the extent that this discovery implicates the government's state secrets

23  concerns, it should proceed under the procedures outlined by the Court in its July 20, 2006

24  Order, including appointment of an expert pursuant to FRE 706 or a technical advisor as

25  discussed during the August 8, 2006 hearing and the processes outlined in 50 U.S.C.

26  §1806(f).  To the extent that plaintiffs seek information that does not implicate state secret

27  concerns (e.g., public statements by AT&T), discovery related to the injunction should go

28  forward as it would in any other case.

1      Second, the Court should set a briefing schedule and early hearing date for

2  plaintiffs' preliminary injunction motion.  This briefing schedule should accommodate the

3  discovery that plaintiffs seek in support of their motion and the filing of an answer by the

4  AT&T defendants.

5      The United States may assert that the above discovery will implicate the state

6  secrets privilege.  In light of the Court's Order of July 20, 2006, however, plaintiffs at a

7  minimum request that they be allowed to submit targeted interrogatories and requests for

8  admissions to defendants, and that defendants be required to produce any certifications or

9  other authorizations purporting to allow them to intercept the communications of their

10  customers, as the Court has already anticipated. *Hepting*, 439 F.Supp.2d at 996-997.[24]

11      The *Terkel* plaintiffs filed, simultaneously with their complaint, a motion for leave

12  to take limited expedited discovery.  The motion referenced seven attached interrogatories

13  directed at identifying whether AT&T had disclosed phone records to the federal

14  government on statutorily approved grounds (including pursuant to "certification") or

15  whether such grounds were absent.  In view of the *Terkel* court's ruling on the motion to

16  dismiss, it did not reach the motion for discovery.

17  **b.     Rules applicable to all discovery.**

18      2.     With respect to all discovery, plaintiffs believe that a combination of

19  "screened" discovery and *in camera* review under the procedures of 50 U.S.C. § 1806(f),

20  discussed above, will appropriately address all potential state secrets privilege concerns.

21  Plaintiffs therefore suggest that it may be appropriate for the Court to screen some of the

22  interrogatories and other written discovery requests, as well as deposition topics, to protect

23  any state secrets that may be at issue.

24      3.     Given the nature and magnitude of this case, plaintiffs should be excused

25

_____

26  [24]     The government argues that it will "assert the state secrets privilege again as to any
information related to any alleged certification to AT&T or to any carrier for that matter."
27  Part VI.D.2.  Plaintiffs suggest that the filing of state-secrets privilege objections in the
context of specific discovery is likely to promote the efficient conduct of the litigation.

28

1    from the F.R.Civ.P. limits on the number of depositions, interrogatories and other

2    discovery. Plaintiffs believe that the Court should instead set reasonable limits on

3    discovery. If the Court accepts plaintiffs' suggestion that discovery that may implicate state

4    secrets be screened, it will be in a central position to monitor and manage the discovery

5    process. Fact discovery should be completed within 180 days from the entry of an

6    appropriate order. The parties should then have an additional, 90 days for expert discovery.

7    Once discovery is completed, the parties should have a reasonable time in which to prepare

8    and bring dispositive motions.

9        4.    Plaintiffs believe that the Court should immediately apply the proposed

10   Federal Rules amendments governing electronic discovery, which are expected to go into

11   effect on Dec. 1, 2006, to this proceeding. Plaintiffs are presently concerned with issues

12   regarding defendants' preservation of relevant electronic evidence, including access logs

13   and audit trails relating to defendants' databases. "Failure to address preservation issues

14   early in the litigation increases uncertainty and raises a risk of disputes."  Summary of the

15   Report of the Judicial Conference Committee on Rules of Practice and Procedure 32 (Sept.

16   2005), http://www.uscourts.gov/rules/Reports/ST09-2005.pdf ("Summary Report"); id. at

17   31 ("important for counsel to become familiar with [client information technology] systems

18   before the conference . . . . [to] develop a discovery plan . . . . identification of, and early

19   discovery from, individuals with special knowledge of a party's computer systems may be

20   helpful.").

21   **c.    Specific discovery that can proceed immediately.**

22       5.    Finally, Plaintiffs further believe that significant discovery in this case can

23   be conducted without any implications for state secrets and should proceed immediately.

24       6.    With respect to all defendants, the following discovery, at a minimum,

25   would be appropriate:

26   a.    Discovery raised by any defenses raised in defendants' Answers that do not

27        implicate the Government's state secrets claims, including production of any

28        documents that defendants assert are relevant to a certification-based defense

1       against plaintiffs' communications content claims.

2   b.  Discovery into public statements by the United States, government officials, or

3       their spokespersons or agents regarding any warrantless interceptions of

4       communications or disclosure of calling or data records held or maintained by

5       any telecommunications carrier or their agents, including the statements

6       themselves as well as all non-privileged internal documents concerning those

7       statements.

8   c.  Discovery into public statements issued by defendants or made by their officers,

9       spokespersons or agents regarding any warrantless interceptions of

10      communications traveling over its networks or disclosure of calling or data

11      records held or maintained by defendants or their agents, including the

12      statements themselves as well as all non-privileged documents concerning those

13      statements.

14  d.  Third-party discovery to other telecommunications carriers concerning public

15      statements issued by them or statements made by their officers, spokespersons

16      or agents regarding any warrantless interceptions of communications traveling

17      over their networks or disclosure of calling or data records held or maintained

18      by those carriers or their agents, including the statements themselves as well as

19      all non-privileged documents concerning those statements.

20  e.  Defendants' responses to the investigations undertaken by public utility

21      commissions nationwide, as well as the responses of other telecommunications

22      providers, and any non-privileged drafts or preparatory materials.

23  f.  Any statements by defendants or other telecommunications carriers or their

24      agents to the Securities and Exchange Commission regarding warrantless

25      interceptions of communications or disclosure of calling or data records, and any

26      non-privileged drafts or preparatory materials.

27  g.  Any waivers or other correspondence from the Director of National Intelligence

28      or his agents in reliance on the authority granted by the President in FR Doc. 06-

1          4538, 71 Fed. Reg. 27943 (May 12, 2006) and sent to private

2          telecommunications companies exempting them from SEC reporting

3          requirements.

4    h.     Responses by defendants and third-party telecommunications providers or their

5          agents to congressional letters concerning warrantless interceptions of

6          communications or disclosure of calling or data records, and any non-privileged

7          drafts or preparatory materials.

8    i.     Discovery as to how information is routed by defendants and third-party

9          telecommunications providers or their agents, which networks are shared by the

10         defendants and third-party telecommunications providers or their agents, and

11         what information is sent over these networks.

12    j.     Discovery into which defendants, if any, have or had access to other defendants'

13          calling or data records, and which non-party companies have or had access to

14          defendants' calling or data records for purposes of providing billing, customer

15          management or other services to defendants.

16    k.     Written discovery as to the proper entities to be named as defendants.

17      7.     With respect to AT&T:

18    l.     The recent testimony of AT&T's Chief Executive Officer Edward Whiteacre on

19          or about June 22, 2006, before the Senate Judiciary Committee and any non-

20          privileged preparatory materials.

21    m.    Discovery into the AT&T network aimed at confirming which communications

22          travel through the San Francisco facility as well as similar facilities referenced

23          in Mr. Klein's declaration and supporting materials and communications, and in

24          the media.  *See, e.g.,* Kim Zetter, *Is the NSA spying on U.S. Internet traffic?*,

25          Salon.com (available at

26          http://www.salon.com/news/feature/2006/06/21/att_nsa/print.html).

27    n.     Any contracts between AT&T and the company that provided the sophisticated

28          machinery referenced in Mr. Klein's declaration, plus all supporting materials

1      and communications.

2    o.      All documents regarding the San Francisco facility (and similar facilities)

3          referenced in Mr. Klein's declaration and supporting materials and

4          communications provided to AT&T Inc. during the due diligence portion of the

5          merger between AT&T Corp. and AT&T Inc.

6    p.      All versions and drafts of the documents provided by Mr. Klein.

7    q.      If necessary, jurisdictional discovery regarding AT&T Inc. As the Court is

8          aware, if it grants AT&T Inc.'s motion to dismiss, plaintiffs have sought leave to

9          conduct jurisdictional discovery.

10 **2.      The Government's position.**

11      Because any discovery would be aimed at proving allegations and claims that

12 inherently require the disclosure of state secrets to adjudicate, and because the Ninth Circuit

13 will soon consider these very issues of privilege, the Court should grant a stay without

14 further discovery at this time.

15      The Government has set forth above why plaintiffs' motion for a preliminary

16 injunction obviously implicates the state secrets privilege issue pending in the *Hepting*

17 appeal, and any discovery directed toward adjudicating this motion would directly implicate

18 the Government's privilege assertion. We have also set forth above why Section 1806(f)

19 would not apply to proceedings in this case, including discovery proceedings. We focus

20 here on the specific discovery topics Plaintiffs have identified.

21      First, any discovery as to alleged certifications between the Government and AT&T

22 would clearly implicate the central state secrets privilege question raised in *Hepting* and

23 now subject to appellate review. Plaintiffs' observation that the Court has ruled that the

24 state secrets privilege does not bar a certification-based defense is plainly beside the point,

25 since this very issue is not on appeal. If discovery proceeds, the Government will assert the

26 state secrets privilege again as to any information related to any alleged certifications to

27 AT&T or any carrier for that matter. The Court would then be in the same position as it

28 was in reviewing this privilege assertion in connection with the Government's motion to

1    dismiss in *Hepting*.  There is no apparent point to repeating this process while an appeal is

2    pending.  The discovery sought by the *Terkel* plaintiffs also specifically demands that

3    AT&T admit or deny whether it disclosed call records information to the National Security

4    Agency, including pursuant to a certification or some other authority.  That, of course, is

5    the central allegation that the Court in *Terkel* dismissed pursuant to the Government's state

6    secrets privilege assertion.  Such discovery obviously should not proceed in light of the

7    *Terkel* decision and, at the least, should await the Court of Appeals' decision in *Hepting* on

8    the Government's state secrets privilege assertion.

9         Second, plaintiffs' suggestion of a Rule 30(b)(6) deposition of an AT&T official

10   "tailored to address only issues raised by the *Hepting* preliminary injunction motion" will

11   again lead to a state secrets privilege assertion.  As noted above, the preliminary injunction

12   motion raises most of the merits issues presented by these cases and, thus, the state secrets

13   issue implicated by these cases.  Even if somehow limited, such a deposition is fraught with

14   the risk of disclosures that might tend to confirm or deny information that would implicate

15   the Government's state secrets privilege assertion.  The Government would have to object

16   to any testimony that might tend to reveal information that cannot be confirmed or denied,

17   and thus such a deposition will inevitably lead to another assertion of privilege—needlessly

18   replicating what has already occurred in *Hepting*, and risking the disclosure of privileged

19   information in the process.

20        Beyond this, the discovery plaintiffs seek is directed at proving the merits of claims

21   that inherently implicate alleged classified intelligence activities.  Any information, even if

22   seemingly innocuous, supposedly non-privileged information, could tend to reveal small

23   details that might tend to confirm or deny information implicated by the state secrets

24   privilege and, thus, could potentially cause serious harm to national security interests of

25   which the plaintiffs are simply not aware.  For example, Plaintiffs seek to obtain discovery

26   of statements from telecommunication carriers concerning their alleged involvement in

27   NSA activities.  *See, e.g.,* Plaintiffs' Discovery Items c-f, h.  All such discovery is intended

28   to prove the underlying claim of the carriers' alleged collaboration with NSA and, thus, all

1    of it implicates the state secrets privilege assertion on appeal. Plaintiffs' clear intention

2    here is to compare and contrast such statements, attempt to draw inferences from them, and

3    thereby attempt to undercut the Government's state secrets privilege assertion that the

4    involvement of such carriers in NSA activities cannot be confirmed or denied. The

5    Government's state secrets privilege assertion turns on whether the Government has set

6    forth a reasonable basis that national security would be harmed if certain information is

7    disclosed, confirmed, or denied. Plaintiffs are not privy to the facts at issue, nor to the

8    specific national security interests at stake. This is an extremely serious matter, and any

9    discovery directed at trying to undermine an assertion of the state secrets privilege could

10   lead to unknown serious consequences and should not be permitted. There is little reason to

11   embark on such a course where the central issue of privilege is pending on appeal. For this

12   reason, the Government will object on state secrets grounds to any discovery that may

13   undermine its assertion of privilege.

14        In addition, other discovery sought by plaintiffs clearly seeks to probe into core state

15   secrets issues. Notably, plaintiffs seek discovery into AT&T's network and equipment

16   referenced in the Klein Declaration. *See* Plaintiffs' Discovery Topics m-p. The very

17   purpose of the testimony provided by plaintiffs' declarants is to confirm whether classified

18   intelligence NSA activities are occurring through AT&T, and further discovery into these

19   topics inherently implicates the Government's state secrets privilege assertion. The mere

20   fact that a document about AT&T's network was not classified does not mean that any

21   inquiry into what AT&T does or does not do with its network does not present national

22   security issues. The Government will assert the state secrets privilege as to this area of

23   discovery to protect its privilege assertion.

24   **3.      The Carriers' position.**

25        In light of the Government's invocation of the state secrets privilege, no discovery

26   should proceed at this time. Further, in no event should discovery occur in any case until

27   threshold motions to dismiss are resolved in the consolidated cases. Each of the defendants

28   is entitled to seek dismissal of the claims against it, and proceeding forward with discovery

1    before such motions are resolved would be inefficient and potentially unnecessary.

2    Moreover, permitting discovery before the Ninth Circuit addresses the state secrets issues in

3    *Hepting* inevitably would cause wide-ranging discovery battles and would create the need

4    for repeated motions and possibly appeals as plaintiffs propound discovery requests to

5    which the carriers cannot respond without fear of violating felony criminal provisions of the

6    United States Code.  Even seemingly innocuous discovery, such as carriers' prior public

7    statements, would be wasteful and inefficient at this stage, particularly given that the

8    relevance of those statements to the state-secrets privilege is one of the issues implicated by

9    the *Hepting* appeal.

10    **E.**    **Appointment of lead counsel or a steering committee for representation of**

11          **parties with similar interests (Order ¶ 5(a)).**

12    **1.**    **The Plaintiffs' position.**

13    Plaintiff Payne's Position is set forth in Attachment C.  The EFF Plaintiffs' position

14    is set out fully in their proposed Joint and Agreed Organization Plan, filed separately.

15    The Carriers have not yet indicated whether they intend to appoint a lead counsel or

16    a steering committee for representation of parties with similar interests.  Given the number

17    of Carriers involved, Plaintiffs believe that such appointments would create efficiencies in

18    the litigation.

19    **2.**    **The Government's position.**

20    Since the Government has not seen the EFF Plaintiffs' organization plan, we cannot

21    comment on it, and reserve the right to file supplemental views on this topic.

22    **3.**    **The Carriers' position.**

23    The Carriers object that certain of the plaintiffs have chosen to withhold their

24    proposal for a steering committee from the Carriers during the process of developing this

25    document, in contravention of the Court's direction to meet and confer regarding this topic.

26    Filing such a document separately does not relieve the plaintiffs of their meet-and-confer

27    obligation.  The Carriers reserve the right to file a supplemental response.

28    The Carriers suggest that this Court design a process for the selection of the

1    plaintiffs' steering committee that is transparent, protects the rights of all of the parties in

2    all of the cases, and does not allow certain of the plaintiffs to exclude others from the

3    committee.  This may involve submissions of applications for court appointment to

4    committee that includes references of the adequacy of the counsel, such as prior experience,

5    ability to staff and finance the litigation, and consideration of prior public comments on the

6    litigation that may prejudice the ability of particular plaintiffs to represent the plaintiffs as a

7    whole.  *See Manual for Complex Litigation* (Fourth) § 10.224 (discussing the factors the

8    Court should consider in appointment of plaintiffs' counsel including whether "counsel

9    fairly represent the various interests in the litigation.").

10   **F.      Appointment of a technical advisor to assist the court in assessing evidence**

11   **related to national security (Order ¶ 5(b)).**

12   **1.      The Plaintiffs' position.**

13   The Court has indicated its intention to consider appointing a technical advisor to

14   assist the Court in assessing evidence related to national security.  The *Hepting* plaintiffs

15   have previously expressed their views as to the Court's proposed appointment of an FRE

16   706 expert or technical advisor.  (Hepting Dkt. 317).

17   Plaintiffs here reiterate their preference for an FRE 706 expert, primarily because

18   FRE 706 contains a built-in procedural framework that aims to ensure accountability and

19   guard against undue *ex parte* expert influence by providing all parties with some degree of

20   access to the expert.  Plaintiffs believe that such procedures are necessary and appropriate

21   given the inherent tension between the state secrets privilege and traditional adversary

22   procedures.  Nevertheless, plaintiffs also reiterate that appointment of a non-FRE 706

23   technical advisor would be appropriate if the Court establishes rules and procedures for

24   ensuring accountability and procedural fairness similar to those available for an FRE 706

25   expert.[25]

26   _____

27   [25]    Plaintiffs believe that another viable way to help address this problem is by
         appointing two experts, one from a list provided by plaintiffs and one from a list provided
28                                                                              (continued…)

1    Plaintiffs also reiterate their agreement with the *Hepting* plaintiffs' suggested

2    candidates for FRE 706 expert or technical advisor:  Mr. Kenneth Bass, Mr. Michael

3    Jacobs, and Mr. Louis Fisher.  Plaintiffs believe that these candidates would be more

4    appropriate than Judge Laurence Silberman (suggested by the United States) or James

5    Woolsey (suggested by the Court during the Aug. 8 hearing).

6        It is crucial that any expert or technical advisor appointed by the Court be

7    independent of any potential bias in favor of the government's position in this litigation,

8    where the playing field already tilts in the government's favor.  The government knows or

9    has access to any and all information related to the surveillance programs at issue here, and

10   can selectively present those facts to the Court *ex parte* and *in camera*.  The government

11   also has access to numerous persons who can provide opinions regarding the nature and

12   importance of the surveillance at issue here, and the consequences of disclosure of any

13   specific item of information about the surveillance.  The government can put the opinions

14   of such witnesses before the Court *ex parte* and in secret.

15       Plaintiffs, by contrast, have no ability to learn the opinions of the government's

16   witnesses or the basis for those opinions, much less to challenge the soundness of those

17   opinions with contrary expert opinion or factual evidence.  Thus, it is vital that any expert

18   appointed by the Court be truly independent and capable of critically assessing the

19   government's arguments, and not become a secret rubber-stamp for the government's

20   positions.  Further exacerbating the difficulty of choosing a truly independent expert is the

21   fact that most of the qualified experts, by virtue of having a security clearance, will be ex-

22   government employees and in many cases will have maintained continuing ties with the

23   government, and with intelligence agencies in particular, as consultants, employees of

24   defense contractors, or otherwise.

25       With respect to Judge Silberman, plaintiffs believe that it is not appropriate for one

26   Article III judge to play the role of "expert" or technical advisor to another Article III

_____

27   (…continued)
       by the government.

28

1  judge. Only confusion and embarrassment would result from such an unauthorized

2  arrangement.  The judicial power to adjudicate issues in this litigation is vested in the first

3  instance in this Court, with appellate review by the Ninth Circuit.  There is no proper role

4  for an appellate judge of the U.S. Court of Appeals for the District of Columbia Circuit to

5  advise this Court on the issues in dispute in this litigation, and it would be error to create

6  such an arrangement.  Nor, with all due respect, does Judge Silberman bring any expertise

7  that this Court either does not already have or is not capable of readily acquiring.

8          Plaintiffs also believe that it would be inappropriate for Mr. Woolsey to advise the

9  Court.  Mr. Woolsey is a vice president of Booz Allen Hamilton, a prominent national

10  security contractor that does work for the National Security Agency.  In particular, Booz

11  Allen Hamilton is a contractor on Project Trailblazer, a billion-dollar project to overhaul the

12  NSA's electronic surveillance data-mining capabilities, capabilities that are at issue in this

13  litigation.  Moreover, Mr. Woolsey has publicly stated that "the inherent authority of the

14  president under Article II, under these circumstances, permits the types of intercepts that

15  are being undertaken."  Statement of James Woolsey, before the U.S. Senate, Committee on

16  the Judiciary, "Wartime Executive Power and the NSA's Surveillance Authority II," (Feb.

17  28, 2006) available at http://judiciary.senate.gov/testimony.cfm?id=1770&wit_id=5227.

18  While Mr. Woolsey's business interests and opinions on the ultimate legal issues in this

19  proceeding may not be immediately relevant to the technical expertise that the Court seeks,

20  in combination they are highly likely to create the perception or appearance of bias or

21  impropriety that should be avoided.

22  **2.      The Government's position.**

23          The Government continues to oppose appointment of a technical advisor[26] for the

24  reasons set forth in the Response of the United States to the Order to Show Cause, filed

25  _____

26  [26]      We assume herein that the "technical advisor" would not be an expert appointed
          under FRE 706 and would not testify or be subject to discovery, but would consult solely

27          with the Court.  If that assumption is not correct, the Government would of course object
          to any such discovery or testimony.

28

1    with the Court on July 31, 2006 in the *Hepting* case (Dkt. No. 351) and stated by the

2    Government at the hearing in *Hepting* on August 8, 2006.

3    In sum, while appellate review of the Court's Order in *Hepting* is pending, the

4    Government urges the Court to defer consideration of the appointment of a technical

5    advisor to assist the Court on state secrets matters. Nonetheless, if the Court elects to

6    address the issue now, the Government opposes such an appointment.[27] The authority to

7    grant access to classified material belongs to the President, through his Executive branch

8    designees. It would be improper for this Court to appoint a technical advisor to assist it in

9    the course of further proceedings with the review of classified information to assess the

10   state secrets privilege, its implications for this case, and whether there is a reasonable

11   danger that disclosure of certain information would harm national security. For further

12   points and authority on the matter, *see* Defendants' Response to the Order to Show Cause at

13   Dkt. 351.

14   In response to the points plaintiffs raise above on this topic, the Government

15   specifically objects to the procedure proposed by plaintiffs whereby a second expert would

16   be appointed from a list provided by plaintiffs. The Government expresses no opinion as to

17   any of the individuals identified by the plaintiffs or the Court because we oppose the

18   appointment of any expert. The Government's position should not be construed as an

19   explicit or implicit acceptance of any of these individuals. If the Court continues to believe

20   that it might be appropriate to appoint a technical advisor, the Government requests the

21   opportunity to litigate the matter by motion and may, in that context, identify specific

22   objections to any individual appointed. The Government does not consent to granting

23   anyone the necessary security clearances to serve in this role, and this issue should be

24   adjudicated separately.

25

---

26   [27]   If the Court does intend to appoint a technical advisor, the United States requests
     that the matter first be litigated by motion and, apart from any independent ground for
27   review, that the Court certify any order appointing a technical advisor for immediate
     appellate review under 28 U.S.C. § 1292(b).
28

1    While the Government opposes the appointment of any technical advisor, we note

2    that plaintiffs' criticism of Judge Silberman's credentials to serve in this role is without

3    merit.  Since any expert would confer solely with the Court, there is no potential for

4    confusion or embarrassment from this arrangement.  In addition, Judge Silberman would

5    not be serving in a role as a D.C. Circuit Court Judge reviewing this Court's decisions, but

6    merely advising the Court.  Judge Silberman has had substantial experience with classified

7    intelligence matters through his service on as Co-Chairman of the Commission on the

8    Intelligence Capabilities of the United States Regarding Weapons of Mass Destruction, and

9    on the Foreign Intelligence Surveillance Court of Review.

10   **3.     The Carriers' position.**

11         The Carriers oppose appointment of a technical advisor for the reasons set forth in

12   AT&T Corp.'s  Response to July 20, 2006 Order to Show Cause Regarding Appointment of

13   Expert, filed with the Court on July 31, 2006 in the *Hepting* case.  *Hepting* Dkt. 326.

14   Moreover, even if the Court does not reject the appointment of a technical advisor at this

15   point, it should at the very least defer further consideration of such an appointment until the

16   Ninth Circuit rules in *Hepting.*

17   **G.     What other issues should be addressed to facilitate the just and timely**

18   **resolution of this litigation?  (Order ¶ 2(e)).**

19   **1.     Service and personal jurisdiction.**

20         *Joint statement:*  Sprint has not been served in the *Electron Tubes* action.  Plaintiffs

21   claim that Sprint will either be served or dismissed in this action prior to the November 17

22   conference.  The Verizon defendants have not been served in *Conner*, *Electron Tubes*,

23   *Mahoney* and *Marck*.  MCI Communications Services, Inc. has not been served in the *Cross*

24   cases.  The AT&T defendants have not been served in *Conner*.  The BellSouth defendants

25   have not been served in *Conner* or *Mayer*.  All currently named parties have been served in

26   the remaining cases.

27         AT&T Inc. has challenged personal jurisdiction over it in *Hepting*; the issue has

28   been briefed and argued.  Other Carriers also are of the view that certain corporate

1   defendants are improperly named and not subject to personal jurisdiction.  The parties agree

2   that, in the event the cases are not stayed, they will confer in an effort to resolve the

3   objections based on personal jurisdiction.

4   **2.      Joinder.**

5         Plaintiffs do not at this time intend to join additional parties not already named in

6   some case that is pending in this MDL, but may seek to do so after discovery on these

7   issues or if investigation reveals facts supporting joinder, including clarification of the

8   corporate structures of the defendants.

9         Plaintiffs and the Carriers may discuss whether some defendants are superfluous.

10  **3.      Electronic Case Filing (ECF).**

11        *Joint statement:*  The Court should require all parties to adhere to procedures that

12  maximize electronic filing. This case uses the Electronic Case Filing ("ECF") system on

13  PACER, found at https://ecf.cand.uscourts.gov/cand/index.html, which allows for the

14  electronic filing of documents.  The Court has already ordered use of ECF filings in this

15  MDL proceeding.  Dkt. 15. ("All pleadings and submissions in these actions shall be e-

16  filed; no paper copies will be necessary.").  Plaintiffs propose that all counsel should be

17  required to register immediately for ECF filing, that ECF filing on PACER in MDL No.

18  1791 shall be deemed sufficient service on all parties for all documents able to be publicly

19  filed, and that parties are excused from any duty under General Order 45, part (IX)(C)(2) to

20  serve paper copies of any filing in these proceedings,[28] with the exception of filings made

21  under seal.

22  **4.      Filings under seal.**

23  **a.      The Plaintiffs' statement.**

24        In addition to electronic filings, there will likely be a number of filings that must be

25  filed under seal due to potentially confidential material.  Plaintiffs propose that Defendants

---

26

[28]        Currently, the number of parties receiving service of hard-copy documents filed on
27      PACER is approximately 63.  This number of copies is extremely burdensome and
        unnecessary.

28

1  be required to serve one copy of any pleading, motion, or other document that is filed under

2  seal on each of Co-Lead Coordinating Counsel, Interim Class Litigation Counsel, and

3  Liaison Counsel (and, in the case of a pleading, motion, or other document relating to an

4  individual constituent action, on Plaintiffs' counsel in that individual action). Given the

5  large number of defendants in this case, Plaintiffs request that they should be required to

6  serve only one liaison counsel for each of the five categories of defendants when filing

7  under seal.  These defense liaison counsel could then implement a procedure for

8  notification of filings and distribution of papers to the remaining counsel. Service on the

9  opposing party of moving papers, briefs and exhibits shall be completed on the same day

10  that papers are filed with the Court.  Where practicable, service of exhibits shall also be

11  served on the same day as filing with the Court, or if not practicable, by overnight delivery.

12  **b.      The Government's statement.**

13        The process for filing sealed documents proposed by plaintiffs does not apply to any

14  information designated by the Government as classified national security information,

15  including any information filed by the Government in connection with its state secrets

16  privilege assertion or for any other reason.

17  **c.      The Carriers'  statement.**

18        The Carriers are not able to evaluate this specific proposal because we have not

19  been provided a copy of the proposed organizational structure for the plaintiffs that may

20  define the terms used in this section.  In principle, there is no opposition to a streamlined

21  process for service of documents referring to sealed material.

22  **5.      Assignment to magistrate judge.**

23        *Joint statement:*  No parties consent to assignment of this case to a magistrate judge.

24  **6.      Alternative dispute resolution.**

25        *Joint statement:*  The parties have not filed a Stipulation and Proposed Order

26  Selecting an ADR process in this MDL proceeding. On May 11, 2006, the *Hepting*

27  plaintiffs and defendant AT&T addressed ADR in a telephone conference with the ADR

28  coordinator, who concluded that ADR was premature in *Hepting*.

1        No party believes that ADR is appropriate for any of the cases in this MDL.  The

2    parties request that the Court vacate all ADR notices and requirements for all actions

3    involved in this MDL.

4    **7.**      **Initial disclosures (Fed. R. Civ. P. 26(a)).**

5        Plaintiffs are willing to provide disclosures, but only if disclosures are mutual by all

6    parties.

7        The Government and the Carriers do not believe that this case lends itself to initial

8    disclosures; in any event, the Carriers could not consider such disclosures until the Ninth

9    Circuit rules on the merits of the interlocutory appeal.

10    **8.**      **Pretrial deadlines and trial schedule.**

11        Plaintiffs believe that the case can be brought to trial within 18 months if discovery

12    commences according to the normal rules of this Court.

13        The Government and the Carriers believe that setting any deadlines or schedule

14    would be premature until the issues now before the Ninth Circuit in *Hepting* are

15    conclusively resolved.  Only then will the Court and the parties have any sense of whether

16    the cases can proceed at all and, if so, how.

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | Dated: November 7, 2006. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |

Dated: November 7, 2006.

PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ANDREW H. TANNENBAUM
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Room 6102
Washington, DC 20001
Telephone: (202) 514-4782
Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

By _____/s/ Anthony J. Coppolino_____
Anthony J. Coppolino
Attorneys for United States of America, National Security
Agency, President George W. Bush

## DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B

I, BRUCE A. ERICSON, hereby declare pursuant to General Order 45, § X.B, that I have obtained the concurrence in the filing of this document from the other signatories listed above and below.

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed on November 7, 2006, at San Francisco, California.

_____/s/ Bruce A. Ericson_____
Bruce A. Ericson

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
MARC H. AXELBAUM
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

SIDLEY AUSTIN LLP
DAVID W. CARPENTER
DAVID L. LAWSON
BRADFORD A. BERENSON
EDWARD R. McNICHOLAS
1501 K Street, N.W.
Washington, D.C. 20005

By _____ */s/ Bruce A. Ericson* _____
            Bruce A. Ericson
Attorneys for the AT&T Defendants and the Cingular
Defendants

ELECTRONIC FRONTIER FOUNDATION
CINDY COHN (145997)
LEE TIEN (148216)
KURT OPSAHL (191303)
KEVIN S. BANKSTON (217026)
CORYNNE MCSHERRY (221504)
JAMES S. TYRE (083117)
454 Shotwell Street
San Francisco, CA 94110
Telephone: 415/436-9333
415/436-9993 (fax)

By _____ */s/ Cindy Cohn* _____
            Cindy Cohn
Attorneys for the *Hepting* Plaintiffs on behalf of the
EFF/ACLU plaintiffs' group

JOHNSON & PERKINSON
JACOB B. PERKINSON
jperkinson@jpclasslaw.com
P.O. Box 2305
1690 Williston Road
South Burlington, Vermont 05407
TEL: (802) 862-0030
FAX: (802) 862-0060

By _____ */s/ Jacob B. Perkinson* _____
            Jacob B. Perkinson

Attorneys for Plaintiff Payne and the Putative Class
WILMER, CUTLER, PICKERING, HALE AND DORR
LLP
JOHN A. ROGOVIN
RANDOLPH D. MOSS
SAMIR C. JAIN
BRIAN BOYNTON
BENJAMIN C. MIZER
1875 Pennsylvania Ave, NW
Washington, DC 20006
202-663-6083
Fax: 202-663-6363


By _____ */s/ John Rogovin*_____
                    John Rogovin
Attorneys for the Verizon Defendants

FARELLA BRAUN & MARTEL
DOUGLAS R. YOUNG
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94109
(415) 954-4438

ALSTON & BIRD LLP
MICHAEL P. KENNY
WILLIAM H. JORDAN
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000


By _____ */s/ William H. Jordan*_____
                    William H. Jordan
Attorneys for the BellSouth Defendants

BRENDAN V. SULLIVAN, JR.
JOHN G. KESTER
DANIEL D. WILLIAMS
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone:  202-434-5000
Email: jkester@wc.com; ddwilliams@wc.com


By _____ */s/ John G. Kester*_____
                    John G. Kester
Attorneys for the Sprint Defendants