PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov
RENÉE S. ORLEANS
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8470
*Attorneys for Federal Defendants in their Official Capacities
and Federal Intervenor-Defendants (United States of America,
National Security Agency, President George W. Bush)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS | **No. M:06-cv-01791-VRW** <br><br> **MOTION OF UNITED STATES FOR A STAY PENDING DISPOSITION OF INTERLOCUTORY APPEAL IN** *HEPTING v. AT&T CORP.* <br><br> Judge:      Hon. Vaughn R. Walker <br> Date:       January 11, 2006 <br> Time:       2:00 p.m. <br> Courtroom:  6, 17th Floor |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.       The *Hepting* Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.       The Consolidated Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    SERIOUS ISSUES OF PRIVILEGE ARE RAISED BY THE *HEPTING*
    APPEAL AND HAVE A DIRECT BEARING ON ALL CASES IN THIS
    MDL PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.    FURTHER PROCEEDINGS IN THIS MDL ACTION WILL ALSO RISK
    SERIOUS HARM TO THE GOVERNMENT'S NATIONAL SECURITY
    INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    A.       *Hepting* Answer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    B.       Discovery/Preliminary Injunction Motion . . . . . . . . . . . . . . . . . . . . . . 19

III.    THE PUBLIC INTEREST ALSO FAVORS A STAY PENDING APPEAL . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Cases**

*ACLU v. NSA,*
438 F. Supp. 2d 754 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Britton v. Co-op Banking Group,*
916 F.2d 1405 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Center for National Security Studies v. U.S. Dep't of Justice,*
217 F. Supp. 2d 58 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of Los Angeles v. Santa Monica Baykeeper,*
254 F.3d 882 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ellsberg v. Mitchell,*
70 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fitzgerald v. Penthouse Int'l, Ltd.,*
776 F.2d 1236 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Haig v. Agee,*
453 U.S. 280 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Halkin v. Helms ("Halkin I"),*
598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Halkin v. Helms ("Halkin II"),*
690 F. 2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Hepting v. AT&T Corp.,*
439 F. Supp. 2d 974 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Hepting v. United States,*
Nos. 06-80109, 06-80110 (9th Cir. Nov. 7, 2006) (order granting interlocutory appeal) . . . . 1

*In re National Security Agency Telecommunications Records Litigation,*
444 F. Supp. 2d 1332 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kasza v. Browner,*
133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 14, 15, 17, 22

*Landis v. North American Co.,*
299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Levya v. Certified Growers of California, Ltd.,*
593 F.2d 857 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lockyer v. Mirant Corp.,*
398 F.3d 1098 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.,*
    708 F.2d 1458 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Providence Journal Company v. FBI,*
    595 F.2d 889 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sterling v. Tenet,*
    416 F.3d 338 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tenet v. Doe,*
    544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*Terkel v. AT&T Corp.,*
    441 F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

*Totten v. United States,*
    92 U.S. 105 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*United States v. Griffin,*
    440 F.3d 1138 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Reynolds,*
    345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

*Weinberger v. Catholic Action of Haw./Peace Ed. Project,*
    454 U.S. 139 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**<u>Statutes</u>**

18 U.S.C. § 2511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

47 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

50 U.S.C. § 1809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**<u>Other Authorities</u>**

Manual for Complex Litigation (4th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS PENDING APPEAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, January 11, 2006, at 2:00 p.m. (or any earlier date set by the Court), before the Honorable Vaughn R. Walker, in Courtroom 6, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants United States of America, National Security Agency and George W. Bush (hereafter the "United States") will move and hereby do move the Court to enter a stay in this MDL proceeding pending resolution of the appeal of this Court's Opinion and Order of July 20, 2006, denying motions to dismiss in *Hepting v. AT&T Corp.,* 439 F. Supp. 2d 974 (N.D. Cal. 2006) (the "Order"). On November 7, 2006, the United States Court of Appeals for the Ninth Circuit granted the Government's petition for interlocutory review of the Order. *See Hepting v. United States*, Nos. 06-80109, 06-80110 (9th Cir.) (order granting appeal) (attached hereto as Exhibit A).

A stay of this MDL proceeding is warranted because the outcome of the *Hepting* appeal will have a direct bearing on the issues presented in the transferred cases and will provide guidance as to how the cases involved in this proceeding should be addressed. This motion is based on this notice of motion and motion, the memorandum that follows, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this motion.

**ISSUE TO BE DECIDED**

Should this Court enter a stay of the MDL proceeding pending resolution of the interlocutory appeal of the Court's Order in *Hepting*?

## INTRODUCTION

The Federal Defendants respectfully request that this Court stay proceedings in *In re National Security Agency Telecommunications Records Litigation* (MDL Docket No. 1791) ("MDL") pending interlocutory review by the Court of Appeals of this Court's decision denying motions to dismiss in *Hepting v. AT&T Corp.,* No. C-06-0672-VRW.

This MDL proceeding gathers together more than 30 actions, all of which share "factual and legal questions regarding alleged Government surveillance of telecommunications activity and the participation in (or cooperation with) that surveillance by individual telecommunications companies." *In re National Security Agency Telecommunications Records Litigation,* 444 F. Supp. 2d 1332 (J.P.M.L. 2006). The cases consolidated in this proceeding challenge the lawfulness of alleged intelligence activities conducted by the National Security Agency (NSA), including the lawfulness of alleged assistance in those activities by the defendant telecommunication carriers. The two central allegations addressed in the *Hepting* Order are again presented in these consolidated cases: (i) whether the NSA intercepted the content of the plaintiffs' communications without a warrant, *see Hepting,* 439 F. Supp. 2d at 996; and (ii) whether the NSA was provided with records concerning the plaintiffs' communications, *see id.* at 997.

The very subject matter of the claims raised by the cases in this MDL proceeding is a state secret. The state secrets privilege—which has already been asserted in the *Hepting* and *Terkel*[1] cases transferred to this proceeding—prohibits the adjudication of cases where the existence of alleged intelligence sources and methods would be confirmed or denied, or where information concerning the alleged activities that would be necessary to litigate these allegations cannot be disclosed without harm to national security. All of the cases now pending in this MDL proceeding thus present the threshold question, already presented in *Hepting,* of whether the claims can proceed at all. *See Kasza v. Browner,* 133 F.3d 1159, 1166 (9th Cir. 1998) ("[I]f the

---

[1] *See Terkel v. AT&T Corp.,* 441 F. Supp. 2d 899 (N.D. Ill. 2006).

'very subject matter of the action' is a state secret, then the court should dismiss the plaintiff's action based solely on the invocation of the state secrets privilege." (quoting *United States v. Reynolds*, 345 U.S. 1, 11 n.26 (1953)).

Although this Court disagreed with the United States that *Hepting* must be dismissed because of the United States' assertion of the state secrets privilege, the Court certified its decision for interlocutory review, and the Court of Appeals has now granted the Government's petition for review. The Ninth Circuit therefore will resolve a number of issues relevant to all of the cases in this MDL proceeding, and the most appropriate and efficient course is to await the Ninth Circuit's guidance on those issues. Indeed, in certifying the *Hepting* Order for interlocutory appeal, the Court found that "the state secrets issues resolved herein represent controlling questions of law as to which there is a substantial ground for difference of opinion and that an *immediate appeal may materially advance ultimate termination of the litigation*." *See Hepting*, 439 F. Supp. 2d at 1011 (emphasis added). That appeal (which deprives this Court of jurisdiction to proceed on the key issues in *Hepting*) may dispose of all cases in this proceeding. At the very least, the appeal should provide significant guidance concerning the application of the state secrets privilege to all of the cases presently before this Court. Any effort to proceed before the appeal is decided will run quickly into the same state secret privilege issues that are now before the Court of Appeals in *Hepting*, and without the benefit of the Ninth Circuit's decision.

## BACKGROUND

### A.    The *Hepting* Case

As this Court is aware, plaintiffs in *Hepting* allege that AT&T Corp. and AT&T Inc. (hereafter "AT&T") assisted the NSA in the warrantless interception of communications and the collection of records about communications. *See Hepting*, 439 F. Supp. 2d at 978. The *Hepting* plaintiffs claim that these alleged actions violated several federal statutory provisions, including, *inter alia,* the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1809; the Electronic

Communications Privacy Act of 1986 (ECPA), 18 U.S.C. § 2511; the Stored Communications Act, 18 U.S.C. § 2702; and the Communications Act of 1934, 47 U.S.C. § 605. *See id.* at 979. The *Hepting* plaintiffs also allege that the NSA and AT&T violated their rights under the First and Fourth Amendments to the United States Constitution. *See id.*

On May 13, 2006, the United States moved to intervene in *Hepting* and filed a motion to dismiss or, alternatively, for summary judgment, based on an assertion of the military and state secrets privilege. *See Hepting*, 439 F. Supp. 2d at 979. The United States filed public declarations from the Director of National Intelligence, John D. Negroponte (Negroponte Decl.) and the Director of the NSA, Lt. Gen. Keith B. Alexander (Alexander Decl.), along with classified declarations by these officials for the Court's *ex parte, in camera* review. In their public declarations, Director Negroponte and Lt. Gen. Alexander described in general terms the information subject to the Government's claim of privilege, including information about the Terrorist Surveillance Program and information that might confirm or deny AT&T's alleged assistance to the NSA on intelligence matters. Director Negroponte and Lt. Gen. Alexander expressly concluded that any confirmation or denial of the existence, scope, or potential targets of alleged intelligence activities, as well as AT&T's purported involvement in such activities, would cause exceptionally grave damage to national security. *See* Public Negroponte Decl. ¶¶ 11-12; Public Alexander Decl. ¶¶ 7-8.

On July 20, 2006, this Court issued an Opinion and Order in *Hepting* denying the Government's motion to dismiss on state secrets grounds, reserving judgment on the Government's motion for summary judgment, and certifying its decision for immediate interlocutory review under 28 U.S.C. § 1292(b). On July 31, 2006, the Government filed a petition for interlocutory review in *Hepting*, which was granted by the Court of Appeals on November 7, 2006.

The Court decided a number of issues in the *Hepting* Opinion that are directly relevant to the other cases in this proceeding, and that will now be reviewed on appeal. First, because an

alleged covert relationship between the Government and a telecommunications carrier is at issue, the Court considered whether to apply the categorical bar to suit established by the Supreme Court in *Totten v. United States*, 92 U.S. 105 (1876), and in *Tenet v. Doe*, 544 U.S. 1 (2005). *See Hepting*, 439 F. Supp. 2d at 991-92. The Court found that *Totten* and *Tenet* are "not on point to the extent they hold that former spies cannot enforce agreements with the government because the parties implicitly agreed that such suits would be barred," and that this implicit notion of equitable estoppel is not present here since "AT&T, the alleged spy, is not the plaintiff" and the actual plaintiffs made no secrecy agreement with the Government. *See id.* at 991.

The Court then found *Totten and Tenet* to be inapplicable because "AT&T and the government have for all practical purposes already disclosed that AT&T assists the government in monitoring communication content." *Hepting* at 991-92. The Court cited public statements by the Government acknowledging the existence of the Terrorist Surveillance Program to target certain one-end foreign communications where the Government has a reasonable basis to conclude that one party to the communication is a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda, or working in support of al Qaeda. *Id.* at 992. The Court concluded that "it is inconceivable that this program could exist without the acquiescence and cooperation of some telecommunications provider." *Id.* The Court observed that "[c]onsidering the ubiquity of AT&T telecommunications services, it is unclear whether this program could even exist without AT&T's acquiescence and cooperation." *Id.* Citing the *Hepting* plaintiffs' Complaint, the Court noted "AT&T's history of cooperating with the government" on classified contracts and that "thousands of its employees hold government security clearances." *Id.* (citing First Amended Complaint in *Hepting* ¶ 29). The Court also took judicial notice of the fact that AT&T spokespersons stated recently, in response to reports on the alleged NSA programs, that it has "'an obligation to assist law enforcement and other government agencies responsible for protecting the public welfare, whether it be an individual or the security interests of the entire nation.'" *Id.* (citing an AT&T Press Releases). The Court

then concluded that the *Totten/Tenet* doctrine does not apply because "the government has disclosed the general contours of the 'terrorist surveillance program,' which requires the assistance of a telecommunications provider, and AT&T claims that it lawfully and dutifully assists the government in classified matters when asked." *Id.* at 993.

The Court turned next to whether the "very subject matter of this action" is a state secret and whether, for this reason, further proceedings would harm national security. *See Hepting*, 439 F. Supp. 2d at 993 (*citing Kasza*, 133 F.3d at 1170). The Court sought to distinguish this action from other cases that had been dismissed because the very subject matter was a state secret, *see id.* at 993-94, and concluded that, in contrast to these cases, "the very subject matter of this action is hardly a secret" because "public disclosures by the government and AT&T indicate that AT&T is assisting the government to implement some kind of surveillance program," *id.* at 994.

Next, the Court declined to decide whether *Hepting* should be dismissed on the ground that the state secrets assertion will preclude evidence necessary for the *Hepting* plaintiffs to establish a *prima facie* case or for the defendants to raise a valid defense to the claims, finding that plaintiffs would be entitled to some discovery. *See id.* at 994. In drawing this conclusion, the Court stated that it was following the approach of the courts in *Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) ("Halkin I"), *Halkin v. Helms*, 690 F. 2d 977 (D.C. Cir. 1982) ("*Halkin II"*), and *Ellsberg v. Mitchell*, 70 F.2d 51 (D.C. Cir. 1983), which the Court read to allow discovery to proceed, at least at the outset of the case. *See Hepting*, 494 F. Supp. 2d at 994.

The Court then assessed separately the question of whether AT&T's receipt or non-receipt of a certification authorizing its alleged assistance to the government is a state secret. *See id.* at 995. In discussing this point, the Court distinguished the particular claims at stake in *Hepting*. *See id.* at 996 (and chart). With respect to the alleged interception of the content of communications, the Court stated that it "cannot conclude that the existence of a certification regarding the 'communication content' program is a state secret." *Id.* The Court again based

this conclusion on the fact that the Government had publicly disclosed whose communications it monitors (members of agents of al Qaeda) and where those communicating parties are located (one party is outside the United States). Because of this acknowledgment, the Court held that "the state secrets privilege will not prevent AT&T from asserting a certification-based defense, as appropriate, regarding allegations that it assisted the government in monitoring communication content." *Id.* The Court envisioned that AT&T could "confirm or deny the existence of a certification authorizing monitoring of communication content through a combination of responses to interrogatories and in camera review by the court" and that, "[u]nder this approach, AT&T could reveal information at the level of generality at which the government has publicly confirmed or denied its monitoring of communication content." *Id.* at 997.

Turning to the alleged disclosure of communications records, the Court noted that neither the Government nor AT&T has confirmed or denied this alleged activity, but nonetheless declined to dismiss this claim on the ground that the Government or telecommunication carriers "might disclose, either deliberately or accidentally, other pertinent information about the communication records program as this litigation proceeds," and that "such disclosures might make this program's existence or non-existence no longer a secret." *Id.* at 997-98. The Court stated that it would not require AT&T to disclose what relationship, if any, it has with this alleged program, and also declined to permit discovery into the alleged communications records program, but indicated that the plaintiffs can revisit this issue in the future. *Id.*

The Court also rejected dismissal of the case on the ground that plaintiffs lacked standing, which the Government asserted could not be demonstrated because the state secrets privilege prevents plaintiffs from establishing actual injury and because plaintiffs had pleaded themselves out of the scope of the Terrorist Surveillance Program. *See id.* at 1001. The Court ruled that the privilege would not bar plaintiffs from receiving evidence tending to establish AT&T's alleged participation in communication content monitoring. *Id.*

Finally, the Court held that "the state secrets issues resolved [in its opinion] represent controlling questions of law as to which there is a substantial ground for difference of opinion and that an immediate appeal may materially advance ultimate termination of the litigation," and certified its Order for immediate appellate review under 28 U.S.C. § 1292(b). *Id.* at 1011. The United States filed its petition for interlocutory review on July 31, 2006, challenging the Court's determinations, *inter alia*, that this case is not foreclosed by the *Totten* doctrine, that the very subject matter of this action is not a state secret, that plaintiffs' allegations were sufficient to challenge content collection, that the state secrets privilege did not foreclose plaintiffs' ability to establish their standing, and that the state secrets privilege did not preclude discovery into whether AT&T received a certification from the Government as to the alleged activities. The defendants in *Hepting,* AT&T Corp. and AT&T Inc., filed their own petition for interlocutory review. The plaintiffs in *Hepting* did not oppose the United States' petition for review and cross-petitioned for review of the Court's decision with respect to the alleged collection of communication records. On November 7, 2006, the Ninth Circuit granted the United States' and AT&T's petition, and denied plaintiffs' cross-petition as "unnecessary."

**B.    The Consolidated Cases**

The cases consolidated in this MDL proceeding make the very same kinds of claims, and thus present the very same state secrets issues, as the *Hepting* case. The consolidated cases challenge either the alleged collection of call records information and/or the alleged interception of the content of communications, or both.[2] Most of these cases are class actions with putative

_____

[2]    *See, e.g. Bissitt v. Verizon* (06-cv-220) (D.R.I.) (Compl. ¶ 1, 29, 39, 45, 47, challenging alleged disclosure to NSA of the "contents of their communications and/or records pertaining to their communications"); *Campbell v. AT&T Communications of California,* 06-cv-3596) (N.D. Cal.) (Compl. ¶¶ 19-23, challenging alleged disclosure to NSA of the calling records); *Bready v. Verizon,* (06-cv-2185) (D. Md.) (Compl. ¶¶ 13, 40, 46, challenging alleged program to monitor and or intercept the telephone and or internet communications, and or records of those communications of defendants' subscribers); *Crockett v. Verizon Wireless et al.,* (06-cv-345) (D. Hawaii) (Compl. ¶ 19, challenging alleged programs to intercept content of communications and to provide NSA access to customer records); *Cross v. AT&T Communications, Inc. et al.* (06-cv-847) (D. Ind.) (Compl. ¶ 35, challenging alleged programs to

classes that overlap substantially with the putative classes in other cases, including *Hepting.* Indeed, some Complaints appear to have taken language and claims verbatim from the *Hepting* Complaint.[3] Thus, there can be no dispute that the consolidated cases present the same issues that are now subject to appellate review in *Hepting.*

## ARGUMENT

It is well-established that a district court has the discretionary power to stay proceedings in its own court. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). In particular, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Growers of California, Ltd.,* 593 F.2d 857, 863 (9th Cir. 1979); *see also Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir. 1983).

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the

---

intercept content of communications and to provide NSA access to customer records); *Harrington v. AT&T Inc.* (1:06-374) (W.D. Tex.) (Compl. ¶¶ 3, 4, challenging alleged provision of customer communication records); *Herron v. Verizon Global Networks Inc. et al.,* 06-cv-2491) (E.D. La.) (Compl. ¶ 4, challenging alleged disclosure of phone call information to NSA); *Joll v. AT&T Corp. et al.* (06-cv-2680) (N.D. Ill.) (Compl. ¶ 26, challenging alleged disclosure by defendants to NSA of communications and/or record or other customer information); *Terkel v. AT&T Corp. et al.* C 2837) (N.D. Ill.) (2d Am. Compl. ¶¶ 21-25, challenging alleged provision of telephone call contents and records to NSA); *Trevino v. AT&T Corp. et al.* (2:06-cv-209) (S.D. Texas) (Compl. ¶ 4, challenging alleged disclosure by AT&T to NSA of the contents of its customer communications as well as detailed communications records); *Waxman v. AT&T Corp.* (06-cv-2900) (N.D. Ill.) (Compl. ¶¶ 10-11, 13, challenging AT&T's alleged disclosure to NSA of call records information).

[3] *See, e.g., Derosier v. Cingular Wireless et al.,* (06-cv-917) (W.D. Wash.) (Compl. ¶ 4, alleging that the "Government did not act – and is not acting – alone" and making identical allegations as to the interception and analysis of telephone and internet communications and class allegations); *Dolberg v. AT&T Corp. et al.* (9:06-78) (D.Mont.) (same); *Fuller v. Verizon Communications et al.,* (06-cv-77) (D. Mont.) (same); *Mahoney v. Verizon Communications, Inc.* (06-244) (D. RI) (identical allegations and language) )(same).

1 simplifying or complicating of issues, proof, and questions of law which could be
expected to result from a stay.

2 *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2004) (citing *CMAX, Inc. v. Hall*, 300

3 F.2d 265 (9th Cir. 1962)).

4 The United States respectfully submits that the most appropriate course at this time is to

5 stay this MDL proceeding pending disposition of the *Hepting* appeal. The United States has

6 sought appellate review regarding, *inter alia*, critical and threshold issues that are directly

7 applicable in all the consolidated cases, and which ultimately go to the question of whether claims

8 challenging alleged classified NSA intelligence activities can proceed at all without risking the

9 disclosure of state secrets and thereby harming national security. It is beyond doubt that the

10 privilege issues raised by the *Hepting* appeal are directly relevant to the claims raised in these

11 consolidated cases; any argument to the contrary would lack credibility. The outcome of the

12 *Hepting* appeal may result either in the dismissal of the pending cases or, at the least, may provide

13 key guidance to the resolution of the identical state secrets privilege issues, and it clearly would

14 be inefficient to proceed in this matter given the potential impact of that appeal.

15 Any different course—that is, further district court proceedings while the *Hepting* appeal

16 is pending—would require the same assertion of privilege and would risk disclosure of the very

17 privileged information whose protection is now at issue before the Court of Appeals. The

18 plaintiffs seek to proceed immediately on multiple fronts that will inevitably require the

19 Government to assert precisely the same privilege claim raised by the *Hepting* appeal. Such

20 proceedings would not only be pointless in light of the *Hepting* appeal, but would risk disclosures

21 of the very privileged information at stake while appellate review is pending.[4]

22

23    [4] Although the Government does not seek a stay of any order or injunction pending
appeal, the Government would also satisfy the balancing test utilized by the Ninth Circuit for
24 such a stay if those standards were applicable. In staying an order pending appeal, the Court
would weigh certain factors along "a single continuum": at one end of the continuum, the
25 moving party is required to demonstrate probable success on the merits and the possibility of
irreparable harm, and at the other end, the party is required to show that serious questions have
26 been raised and the balance of hardships tips sharply in the moving party's favor. *Artukovic v.*

27 **Motion of the United States**
**for Stay Pending Interlocutory Appeal**
28 **MDL No. 06-1791-VRW**

Indeed, because the Court of Appeals has granted interlocutory review of the Court's Order in *Hepting*, this Court is divested of jurisdiction in *Hepting* over the issues involved in that appeal. *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) (holding that the "issuance of an order by a court of appeals permitting an appellant to bring an interlocutory appeal" "divests the district court of jurisdiction over the particular issues involved in that appeal"); *accord Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990) ("[A]n appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal."); Manual for Complex Litigation § 15.12 (4th ed. 2004). Since all of the claims in *Hepting* put at issue AT&T's alleged collaboration with the NSA, thereby directly implicating the Government's state secrets privilege assertion and related threshold issues (which are all issues on appeal), the key steps in the *Hepting* action cannot proceed at all now that an appeal has been taken. Because the subject matter of the remaining consolidated cases are identical to the issues raised in *Hepting*—indeed, even plaintiffs have indicated that *Hepting* should be designated as the lead action—there is little point to proceeding with claims in other cases until those key threshold questions are decided by the Court of Appeals.

## I. SERIOUS ISSUES OF PRIVILEGE ARE RAISED BY THE *HEPTING* APPEAL AND HAVE A DIRECT BEARING ON ALL CASES IN THIS MDL PROCEEDING.

As this Court recognized in certifying its July 20 Order in *Hepting* for appeal, that Order—and thus the appeal from it—raises serious and substantial issues that will have a direct

---

*Rison*, 784 F.2d 1354, 1355 (9th Cir. 1986); *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir.), *rev'd in part on other grounds*, 463 U.S. 1328 (1983). The "relative hardship to the parties" is the "critical element" in deciding at which point along the continuum a stay is justified. *Lopez*, 713 F.2d at 1435 (internal quotation marks omitted). The public interest is an additional factor. *Artukovic*, 784 F.2d at 1355. As set forth herein, deeply serious questions presented by the *Hepting* appeal are applicable here, and the Government faces serious and irreparable harm to its interests because further proceedings risk the disclosure of information that should be protected for national security reasons. Indeed, the Sixth Circuit recently granted the United States a stay, pending appeal, of a district court's order enjoining the Terrorist Surveillance Program. *See ACLU v. NSA,* Nos. 06-2095, 06-2140, 2006 WL 2827166 (6th Cir. Oct. 4, 2006).

Motion of the United States
for Stay Pending Interlocutory Appeal
MDL No. 06-1791-VRW

11

bearing on the state secrets issues presented in the consolidated cases. In *Hepting*, the United States submitted to this Court public and classified declarations from the Director of National Intelligence and the NSA Director which demonstrated that adjudicating each of plaintiffs' claims would require confirmation or denial of the existence, scope, and potential targets of alleged intelligence activities, as well as AT&T's purported involvement in such activities. The declarations made clear that such information cannot be confirmed or denied without causing exceptionally grave damage to national security; indeed, the most basic factual allegation necessary for plaintiffs' case—whether AT&T has engaged in certain conduct at the behest of the NSA—can neither be confirmed nor denied by AT&T or the United States. Accordingly, every key step in *Hepting*—for plaintiffs to demonstrate their standing by establishing that AT&T engaged in conduct that injured them, for plaintiffs to prove their claims, for AT&T to defend against them, or for the United States to represent its interests—would immediately confront privileged information.

The United States respectfully believes the Court erred in its review of the National Intelligence Director's claim of state secrets privilege, including in particular with regard to whether or not AT&T had provided to the NSA communications content under the Terrorist Surveillance Program. The Court started with the fact that the President has announced the existence and rough contours of the Terrorist Surveillance Program. The Court then hypothesized, with no support in the record, that this program could not be undertaken without cooperation by members of the communications industry. The Court next noted that AT&T is a large industry participant, cooperates with the Government when requested to do so through lawful means, and has stated that it engages in classified contracts. The Court then put these points together in its own fashion, overrode the national security judgment of the Director of National Intelligence, and concluded that it should not be a state secret for AT&T to confirm through this litigation that, if true, it is indeed assisting the NSA in carrying out the Terrorist Surveillance Program. The Court reached these conclusions, moreover, even though the *Hepting*

plaintiffs' allegations were facially insufficient to support their standing to challenge the TSP, because they did not claim to communicate with members or agents of al Qaeda or affiliated terrorist organizations. And the Court directed that discovery from AT&T might follow.

The central issue on appeal in *Hepting* is whether the Court improperly overrode the judgment of the Executive as to the protection of national security information, and thereby erred in failing to dismiss the *Hepting* complaint. In particular, nearly everything in the Court's July 20 Opinion flowed from the Court's step (which the United States respectfully submits was improper) of drawing speculative inferences from the public record in a manner inconsistent with the assertion of the state secrets privilege. Thus, for example, the Court rejected the argument that the complaint must be dismissed because plaintiffs will not be able to demonstrate standing. But in analogous circumstances, other cases have been dismissed in light of state secrets privilege claims. In *Halkin I*, for example, the D.C. Circuit upheld an assertion of the state secrets privilege regarding the identities of individuals subject to NSA surveillance, despite significant public disclosures about the surveillance activities at issue. *See* 598 F.2d at 8, 10. And a similar state secrets assertion with respect to the identities of individuals subject to CIA surveillance was upheld in *Halkin II*, 690 F.2d at 991 (D.C. Cir. 1982). As a result of the state secrets privilege, the D.C. Circuit held in both *Halkin I* and *Halkin II* that the plaintiffs were incapable of demonstrating that they had standing to challenge the alleged surveillance. *See id.* at 997; *see also id.* at 999-1000 ("[T]he absence of proof of actual acquisition of appellants' communications is fatal" to their claims).[5]

---

[5] The Court's suggestion that *Halkin* supports the proposition that proceeding to discovery is appropriate before dismissal on state secret grounds is not accurate. In *Halkin I*, the Government opposed discovery by the plaintiffs and, in response to inquiries from the court, asserted the state secrets privilege to bar disclosure of whether plaintiffs were subject to surveillance. That privilege assertion was *upheld* in its entirety without further proceedings. *See* 598 F.2d at 6-7, 8-11. Indeed, the court in *Halkin I* stated that "[n]o amount of ingenuity of counsel in putting questions on discovery can outflank the government's objection that disclosure of this fact is protected by privilege," and thus, that "affording additional discovery for the government to parry plaintiffs' requests would be fruitless." *Halkin I*, 598 F.2d at 6-7. As noted, this finding in *Halkin I* led to dismissal on precisely the same grounds in *Halkin II*. *See*

Thus, a key issue on appeal is whether the plaintiffs could even establish standing without the disclosure of state secrets. This is not just an issue of whether plaintiffs have pled a sufficient injury but, as in *Halkin*, concerns whether facts needed to decide whether plaintiffs actually have standing are available. It is irrelevant that plaintiffs in *Hepting* allege that their communications are encompassed within a "dragnet" of surveillance; the threshold state secrets issue is whether the facts needed to establish that plaintiffs have had (or are likely to have) their communications intercepted cannot be disclosed. This critical standing question is presented in all of the cases consolidated in this MDL proceeding, and thus the *Hepting* appeal will resolve, or at least be highly relevant to, litigation of plaintiffs' standing in these actions.

Another serious question raised in the *Hepting* appeal is whether the Court erred to the extent it believed that the doctrine in *Totten v. United States*, 92 U.S. 105 (1875), is limited to situations involving adjudication of alleged espionage agreements between the parties. *Totten* establishes that "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated." *Totten*, 92 U.S. at 107; *Tenet v. Doe*, 544 U.S. 1 (2005). This rule has been applied well beyond the limited context posited by the Court. *See Weinberger v. Catholic Action of Haw./Peace Ed. Project*, 454 U.S. 139, 146-47 (1981) (citing *Totten* in holding that "whether or not the Navy has complied with [NEPA] 'to the fullest extent possible' is beyond judicial scrutiny in this case," where, "[d]ue to national security reasons," the Navy could "neither admit nor deny" the fact that was central to the suit, *i.e.*, "that it propose[d] to store nuclear weapons" at a facility); *see also Kasza*, 133 F.3d at 1170 (relying in part on *Totten* to dismiss even though a classified espionage relationship was not at issue). This issue is of obvious significance in this MDL proceeding, where dozens of the consolidated actions are brought against telecommunication providers

690 F.2d at 997. Moreover, the discovery which occurred in *Halkin II* as to the defunct surveillance program at issue was pointless since the protection of state secrets ultimately precluded the establishment of standing in that case.

alleged to be assisting the NSA in intelligence activities.

An additional issue raised by the *Hepting* appeal is whether the Court misapplied the standard for determining whether the very subject matter of a case is a state secret. The United States will contend on appeal that this question is resolved not by looking to whether certain information about the general subject of the lawsuit is public or whether a particular program has been confirmed, but rather to whether the evidence needed to decide the specific claims inherently risks the disclosure of state secrets. *See Kasza,* 133 F.3d at 1170 (finding the very subject matter of the case to be a state secret by examining whether the evidence needed for plaintiffs to establish a prima facie case and any further proceeding, including trial, would jeopardize national security); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1237 (4th Cir. 1985) ("due to the nature of the question presented in this action and the proof required by the parties to establish or refute the claim, the very subject of this litigation is itself a state secret") (emphasis added). The claims raised in the consolidated cases (including *Hepting*) directly put at issue whether or not there is a classified relationship between the NSA and telecommunication carriers and, beyond that, other potential classified facts about the operation of alleged intelligence programs. Again, review of this question by the Court of Appeals will have a direct bearing on all the consolidated cases in this MDL proceeding.

A further issue on appeal is whether the Court erred in declining to decide whether the evidence needed for plaintiffs to establish their *prima facie* case, or for defendants to present a defense, implicates state secrets. As noted above, an assertion of the state secrets privilege requires the Court to assess first whether disclosure of the information reasonably could cause harm to national security, and then to look ahead to whether the privileged information would be needed to either prove or defend against the claims on the merits. If state secrets are needed by either plaintiffs or defendants, the case cannot proceed. This inquiry must be made at the threshold, before any discovery, by examining the state secrets privilege *ex parte, in camera*, and the elements of proof for the claims. In *Hepting*, as well as in all of the other cases in this MDL

proceeding, litigation of the plaintiffs' claims would require confirmation or denial of whether the alleged NSA and carrier activities are occurring, whether they apply to plaintiffs, and if so, *how* they might have occurred to determine if the particular statutory or constitutional requirements have been violated. The *Hepting* appeal will thus bear directly on this issue (common to all cases transferred here) as well.

Lastly, the Court's treatment in *Hepting* of allegations concerning the alleged collection of call records is also an issue before the Court of Appeals. The United States is not aware of any case in which a Court agreed that allegations implicated state secrets that could not be confirmed or denied but, nonetheless, declined to dismiss a claim because more information might get disclosed in the future (indeed, perhaps *accidentally*). The only other district court to have ruled in a case challenging alleged assistance by a telecommunications carrier in providing communications records to the NSA dismissed those claims on state secrets grounds. In *Terkel v. AT&T Corp.*, 441 F. Supp. 899 (N.D. Ill. 2006)—a case that has been transferred to this MDL proceeding—the district court was "persuaded that requiring AT&T to confirm or deny whether it has disclosed large quantities of telephone records to the federal government could give adversaries of this country valuable insight into the government's intelligence activities. Because requiring such disclosures would therefore adversely affect our national security, such disclosures are barred by the state secrets privilege." *Id.* at 917.[6] We believe the same result was required here, and will urge the Court of Appeals to hold that the communications records claims should have been dismissed. That issue is also presented in most (if not all) cases in this proceeding, and the outcome of the appeal will thus have a substantial effect on those cases. Indeed, the *Hepting* plaintiffs have argued that appellate review of the Court's ruling regarding their call records claims would materially advance termination of the lawsuit and that state secrets issues should not be considered piecemeal. *See Hepting* Plaintiffs' 1292(b) Cross Petition at 9.

---

[6] *See also ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006) (upholding state secrets privilege as to alleged call records collection and granting the Government's motion for summary judgment with respect to this claim) (appeal pending).

* * *

All of the foregoing issues present serious questions of law that the Court of Appeals will consider as part of the *Hepting* appeal, and all of those issues are presented in the various cases transferred to this MDL proceeding. The United States respectfully submits that it would be inefficient and burdensome to proceed in this Court, with over 30 different actions, while an appeal on the very threshold questions at issue in these cases is now pending before the Court of Appeals.

Indeed, further proceedings in these consolidated actions will immediately require precisely the same privilege assertion raised in *Hepting*. Most obviously, if these cases are not stayed, the United States would be required to intervene (where it is not a party) and move to dismiss these consolidated actions on state secrets grounds, precisely as it did in *Hepting*. It would make little sense to require the United States to take those steps when the outcome of the appeal may make them unnecessary—or at the very least will provide substantial guidance regarding the applicable legal framework.

## II. FURTHER PROCEEDINGS IN THIS MDL ACTION WILL ALSO RISK SERIOUS HARM TO THE GOVERNMENT'S NATIONAL SECURITY INTERESTS.

The need for a stay is underscored further by plaintiffs' demands to proceed on multiple tracks that will unquestionably implicate the privilege issues raised by the *Hepting* appeal and risk the disclosure of privileged information. Plaintiffs propose a panoply of litigation steps—as if this case did not involve alleged classified activities, and as if the *Hepting* appeal were not even pending. But in any matter of privilege, particularly one involving the state secrets privilege to which the "utmost deference" is due, *Kasza*, 133 F.3d at 1166, a stay is required to avoid "disclosure of the very thing the privilege is designed to protect," *Reynolds*, 345 U.S. at 8. Courts are "not required to play with fire and chance further disclosure—inadvertent, mistaken, or even intentional—that would defeat the very purpose for which the privilege exists." *Sterling v. Tenet,* 416 F.3d 338, 344 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1052 (2006). Neither, of course,

should the Government be required to take such a chance. The law is clear, moreover, that where the very issue on appeal is whether information should be protected, further proceedings that might disclose that information should not be conducted. Where a movant has "raised 'specific privilege claims,'" such as here, "and there exists a 'real possibility . . . that privileged information would be irreparably leaked' . . . if it turns out that the district court erred," the movant has "shown a 'real possibility' that he will be irreparably harmed by the disclosure . . . pursuant to the district court's order." *United States v. Griffin*, 440 F.3d 1138, 1142 (9th Cir. 2006).[7] Here, plaintiffs propose to proceed on a number of fronts that will implicate and risk the disclosure of the very information subject to the state secrets privilege assertion now being reviewed in *Hepting*.

A. *Hepting* **Answer**

First, plaintiffs demand an Answer to the *Hepting* Complaint, which alleges that AT&T assisted the NSA in the alleged activities. But putting AT&T and the Government to the task of redacting facts from the Complaint is pointless, since the appeal may make an Answer unnecessary. Moreover, the Government has already provided the Court, *ex parte, in camera*, with a description of the state secrets at issue in the Complaint, and answering the Complaint is not necessary to apprise the Court of the underlying privileged facts at stake. Such a course is also risky. The process of redaction presents potential risks, since the identification of specific allegations that are and are not subject to the state secrets privilege might tend to reveal the underlying privileged information not only in *Hepting* but also, by comparison, in other cases in this MDL proceeding, where similar information may or may not be confirmed or denied. Rather than forcing the Government and AT&T to publicly choose among a list of allegations in a long

---

[7] *See also Center for National Security Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (finding that "disclosure of the names of the detainees and their lawyers" pursuant to the Freedom of Information Act "would effectively moot any appeal," and therefore granting a stay pending appeal); *Providence Journal Company v. FBI*, 595 F.2d 889 (1st Cir. 1979) (granting stay pending appeal to preserve status quo of not disclosing information at issue in FOIA case).

Complaint, the state secrets privilege assertion already lodged is the safest and most efficient way for the Government to identify state secrets for the Court.

**B.      Discovery/Preliminary Injunction Motion**

Plaintiffs in these consolidated actions propose to proceed with a wide range of discovery directed at proving their allegations about classified activities, and several areas of discovery proposed by plaintiffs quite specifically demand the disclosure of classified information covered by the Government's privilege assertion (such as whether or not carriers received certifications from the Government to assist the NSA). Indeed, the very purpose of such discovery is to prove facts over which the United States has asserted the state secrets privilege.

*Hepting Preliminary Injunction Motion*: First, plaintiffs (in *Hepting* at least) seek discovery in connection with a preliminary injunction motion that quite obviously puts directly at issue whether AT&T has assisted the Government in alleged NSA intelligence activities and the merits of the lawfulness of those activities—matters that squarely implicate the state secrets privilege assertion now subject to appellate review. *See* Plaintiffs' Amended Notice of Motion and Motion for Preliminary Injunction; Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction (Dkt. No. 149) at 3, 5; *see also id.* at 17, 18, 19, 22 (repeatedly alleging collaboration between AT&T and the Government). In particular, the *Hepting* plaintiffs' motion specifically puts at issue whether certifications were provided to AT&T, *see id.* at 21, and the alleged creation of a secure room to facilitate the alleged activities, *see id.* at 6—again implicating the Government's state secrets privilege assertion. Because the *Hepting* preliminary injunction motion requires an assessment of plaintiffs' likelihood of success on the merits, the facts needed to address a range of issues in this case—from plaintiffs' standing to the legality of alleged wiretapping under the Constitution and statutory law—are all implicated by the motion and discovery related thereto. Finally, the relief sought by the *Hepting* motion most definitely implicates state secrets, since it seeks to halt AT&T's alleged involvement with NSA activities. For all these reasons, discovery related to the *Hepting* motion, and litigation of

the motion itself, unquestionably would implicate state secrets and would risk disclosure of the privileged information.

*Rule 30(b)(6) Deposition*: Plaintiffs seek a Rule 30(b)(6) deposition of an AT&T official which they contend would be tailored to address only issues raised by the *Hepting* preliminary injunction motion. But such a deposition would plainly implicate the state secrets privilege issues on appeal. As noted, the preliminary injunction motion raises most of the merits issues presented by these cases. Even if somehow limited to purportedly non-privileged issues, any deposition is fraught with the risk of disclosures, directly or inadvertently or by implication, that might tend to confirm or deny information subject to the state secrets privilege. The United States would again have to assert privilege in order to protect information at issue in the *Hepting* appeal and thereby replicate a process that has already occurred.

*Carrier Certifications*: Plaintiffs also wish to seek discovery as to alleged certifications between the United States and carriers, again implicating a key state secrets privilege question raised in *Hepting* and now subject to appellate review. If such discovery proceeds, the United States would again be required to assert the state secrets privilege as to any information related to any alleged certifications. The Court would then be in the same position as it was in reviewing this privilege assertion in connection with the United States' motion to dismiss in *Hepting*. There is no point to repeating this process during the appeal. While the Court in *Hepting* found that "the state secrets privilege will not prevent AT&T from asserting a certification-based defense, as appropriate, regarding allegations that it assisted the government in monitoring communication content," and envisioned that AT&T could confirm or deny the existence of a certification authorizing monitoring of communication "at the level of generality at which the government has publicly confirmed or denied its monitoring of communication content," *Hepting* 439 F. Supp. 2d at 997, the United States respectfully disagrees with this assessment and believes that any attempt to go down this road would risk disclosing information subject to the state secrets privilege. Even if some purportedly non-confirmatory statements could be developed at some "level of

generality," the risk is great that proceeding as the Court envisions would nonetheless indirectly confirm or deny classified facts and cause harm to the national security.

*Network Information*: Other specific discovery sought by plaintiffs clearly seeks to probe into core state secrets issues. For example, plaintiffs state that they seek discovery into AT&T's network and equipment referenced in the Klein Declaration in *Hepting*. The very purpose of the testimony provided by plaintiffs' declarants is to confirm whether classified intelligence NSA activities are occurring through AT&T, and further discovery into these topics inherently implicates the Government's state secrets privilege assertion. The Government would again be required to assert the state secrets privilege as to this area of discovery to protect its privilege assertion.

*Statements of Carriers and Government*: Plaintiffs also seek discovery of statements from telecommunication carriers concerning their alleged involvement in NSA activities. *See, e.g.,* Joint Case Management Statement (MDL Dkt. No. 61) at 40-42. All such discovery is intended to prove the underlying claim of the carriers' alleged collaboration with the NSA and, thus, all of it implicates the state secrets privilege assertion on appeal. Even if such statements appeared innocuous, any discovery intent on probing into the underlying issues in this case could lead to serious consequences and should not be permitted. Moreover, the carriers cannot waive the state secrets privilege; therefore any statements the carriers may have made cannot undercut the privilege assertion and would thus be useless to plaintiffs. In any event, the relevance of such statements to the state secrets analysis is an issue on appeal in *Hepting*, and the Court should not embark on any such discovery until the appeal is decided.

* * *

For the foregoing reasons, the preliminary injunction motion and discovery proceedings proposed by the plaintiffs would not only be unnecessarily burdensome while the *Hepting* appeal is pending, but would threaten to expose the very type of privileged information at issue in the

**Motion of the United States**
**for Stay Pending Interlocutory Appeal**
**MDL No. 06-1791-VRW**

*Hepting* appeal.[8] In order to avoid unwarranted litigation, and preserve the significant issue of privilege on appeal, a stay of these proceedings is the most appropriate course.

## III.    THE PUBLIC INTEREST ALSO FAVORS A STAY PENDING APPEAL.

Finally, the public interest weighs in favor of a stay of these proceedings pending the *Hepting* appeal.  At issue is nothing less than the disclosure of information that might cause exceptionally grave harm to the national security.  While the Court and plaintiffs may disagree with that assessment, it remains the matter in dispute on appeal in *Hepting*.  "[N]o governmental interest is more compelling than the security of the nation," *Haig v. Agee,* 453 U.S. 280, 307 (1981), and that is what is at issue here.  Where courts have found that, upon an assertion of the state secrets privilege, the "greater public good" may lie in dismissal of the case, *see Kasza*, 133 F.3d at 1167, the public interest is best served by staying further proceedings until the Court of Appeals decides that very question.

## CONCLUSION

For these reasons, the Court should enter a stay of all aspects of the MDL litigation pending resolution of the *Hepting* appeal.

Dated: November 8, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

---

[8]  In addition, plaintiffs also propose briefing on their motions for class certification.  But this too is not possible pending the *Hepting* appeal, since any issue of typicality or commonality of alleged class claims would clearly be bound up in the underlying facts as to what, if any, alleged injuries plaintiffs have actually suffered—allegations that cannot be confirmed or denied in light of the Government's state secrets privilege assertion.

**Motion of the United States**
**for Stay Pending Interlocutory Appeal**
**MDL No. 06-1791-VRW**

_s/ Anthony J. Coppolino_
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

RENÉE S. ORLEANS
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8470

_Attorneys for Federal Defendants in their Official
Capacities and Federal Intervenor-Defendants (United
States of America, National Security Agency, President
George W. Bush)_