PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
DANIEL J. RICHERT #232208
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
EDWARD R. MCNICHOLAS (admitted *pro hac vice*)
ERIC A. SHUMSKY #206164
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for the AT&T Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL Dkt. No. 06-1791-VRW<br><br>**JOINDER IN UNITED STATES' MOTION TO STAY PROCEEDINGS PENDING DISPOSITION OF INTERLOCUTORY APPEALS IN *HEPTING v. AT&T CORP.*; MEMORANDUM OF LAW**<br><br>Date: February 9, 2007<br>Time: 2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker |

**TABLE OF CONTENTS**

JOINDER ........................................................................................................................1

MEMORANDUM OF LAW ..........................................................................................1

ISSUE TO BE DECIDED ...............................................................................................1

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................3

I.  DURING THE PENDENCY OF AN APPEAL, A DISTRICT COURT HAS NO JURISDICTION TO TAKE ANY ACTION CONCERNING THE MATTERS INVOLVED IN THE APPEAL. ..................................................................3

II. THIS COURT LACKS JURISDICTION TO TAKE ANY ACTION IN *HEPTING* THAT MIGHT RISK DISCLOSURE OF INFORMATION COVERED BY THE *TOTTEN* BAR OR THE GOVERNMENT'S ASSERTION OF THE STATE SECRETS PRIVILEGE. .........................................5

III. THIS COURT SHOULD STAY THE MDL PROCEEDINGS PENDING RESOLUTION OF THE *HEPTING* APPEALS. .......................................................10

CONCLUSION ..............................................................................................................14

**TABLE OF AUTHORITIES**

**CASES**

ACLU v. NSA,
438 F. Supp. 2d 754 (E.D. Mich. 2006) ...................................................................................11

Admiral Ins. Co. v. U.S. Dist. Court,
881 F.2d 1486 (9th Cir. 1988) ..................................................................................................4

Agster v. Maricopa County,
422 F.3d 836 (9th Cir.), cert. denied, 126 S. Ct. 473 (2005) ...................................................4

Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.),
460 F.3d 1217 (9th Cir. 2006) ..........................................................................................12, 13

Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity,
950 F.2d 1401 (9th Cir. 1991) ..................................................................................................7

Bittaker v. Woodford,
331 F.3d 715 (9th Cir. 2003) ....................................................................................................4

Boyle v. United Techs. Corp.,
487 U.S. 500 (1988) .................................................................................................................8

CIA v. Sims,
471 U.S. 159 (1985) ...............................................................................................................13

City of Los Angeles v. Santa Monica Baykeeper,
254 F.3d 882 (9th Cir. 2001) ....................................................................................................3

In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,
293 F.3d 289 (6th Cir. 2002) ..................................................................................................13

Coopers & Lybrand v. Livesay,
437 U.S. 463 (1978) .................................................................................................................9

Doe v. Tenet,
No. 2:99-cv-01597-RSL (W.D. Wash. Mar. 14, 2001) ..........................................................10

Gentex Corp. v. United States,
58 Fed. Cl. 634 (Fed. Cl. 2003) ..............................................................................................13

Griggs v. Provident Consumer Disc. Co.,
459 U.S. 56 (1982) ...................................................................................................................3

Halkin v. Helms,
598 F.2d 1 (D.C. Cir. 1978) ......................................................................................................4

Hepting v. AT&T Corp.,
439 F. Supp. 2d 974 (N.D. Cal. 2006) ............................................................................7, 9, 11

Kasza v. Browner,
133 F.3d 1159 (9th Cir. 1998) ............................................................................................4, 13

| | | |
|---|---|---|
| 1 | Landis v. N. Am. Co.,<br>299 U.S. 248 (1936) | 14 |
| 2 | | |
| 3 | Levya v. Certified Growers of Cal., Ltd.,<br>593 F.2d 857 (9th Cir. 1979) | 12 |
| 4 | Medhekar v. U.S. Dist. Court,<br>99 F.3d 325 (9th Cir. 1996) | 4 |
| 5 | | |
| 6 | Nader v. Butz,<br>60 F.R.D. 381 (D.D.C. 1973) | 12 |
| 7 | In re NSA Telecommc'ns Records Litig.,<br>444 F. Supp. 2d 1332 (J.P.M.L. 2006) | 12 |
| 8 | | |
| 9 | Natural Res. Def. Council v. Sw. Marine Inc.,<br>242 F.3d 1163 (9th Cir. 2001) | 1, 3 |
| 10 | Northrop Corp. v. McDonnell Douglas Corp.,<br>751 F.2d 395 (D.C. Cir. 1984) | 11 |
| 11 | | |
| 12 | In re Pac. Gas & Elec. Co.,<br>No. C-02-1550 VRW, 2002 WL 32071634, 2002 U.S. Dist. LEXIS 27549<br>(N.D. Cal. Nov. 14, 2002) | 10 |
| 13 | SG Cowen Secs. Corp. v. U.S. Dist. Court,<br>189 F.3d 909 (9th Cir. 1999) | 4 |
| 14 | | |
| 15 | Tenet v. Doe,<br>544 U.S. 1 (2005) | 4, 10 |
| 16 | | |
| 17 | Terkel v. AT&T Corp.,<br>441 F. Supp. 2d 899 (N.D. Ill. 2006) | 11 |
| 18 | In re United States,<br>872 F.2d 472 (D.C. Cir. 1989) | 11 |
| 19 | | |
| 20 | United States v. Fei Ye,<br>436 F.3d 1117 (9th Cir. 2006) | 4 |
| 21 | United States v. Griffin,<br>440 F.3d 1138 (9th Cir.), cert. denied, 127 S. Ct. 259 (2006) | 4 |
| 22 | | |
| 23 | United States v. Reynolds,<br>345 U.S. 1 (1953) | 13 |
| 24 | United States v. Thorp,<br>655 F.2d 997 (9th Cir. 1981) | 3 |
| 25 | | |
| 26 | Wayte v. United States,<br>470 U.S. 598 (1985) | 13 |
| 27 | Winkler v. Eli Lilly & Co.,<br>101 F.3d 1196 (7th Cir. 1996) | 13 |
| 28 | | |

Wittman v. Saenz,
No. C-02-02893 SI, 2006 WL 279358, 2006 U.S. Dist. LEXIS 36045
(N.D. Cal. Feb. 6, 2006) ...................................................................................................... 7

Yamaha Motor Corp. v. Calhoun,
516 U.S. 199 (1996) ............................................................................................................ 3

**STATUTES AND RULES**

18 U.S.C. § 2520(d) ................................................................................................................ 8
18 U.S.C. § 2707(e) ................................................................................................................ 8

Fed. R. Civ. P. 11(b)(3) ........................................................................................................... 8
Fed. R. Civ. P. 23(a) ............................................................................................................... 9

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 15.12 (2004) ................................................. 3, 12

1 J. Moore et al., Moore's Federal Practice § 9.03[3] (3d ed. 2006) .................................... 8

5 Charles Alan Wright et al., Federal Practice & Procedure § 1202 (3d ed. 2006) ............ 8

16A Charles Alan Wright et al., Federal Practice and Procedure § 3949.1
(3d ed. 2006) ........................................................................................................................ 3

# JOINDER

The United States has moved this Court to stay proceedings in *In re National Security Agency Telecommunications Records Litigation*, No. M:06-cv-01791-VRW ("the MDL") pending disposition of the government's and AT&T's appeals in *Hepting v. AT&T Corp.* See MDL Dkt. 67. Defendant AT&T Corp. ("AT&T")[1] hereby joins the United States' motion in its entirety and submits this brief to address more fully the jurisdictional implications of the *Hepting* appeals.

# MEMORANDUM OF LAW

## ISSUE TO BE DECIDED

Whether to stay proceedings in this MDL pending resolution of the United States' and AT&T's pending appeals in *Hepting*.

## INTRODUCTION

The filing of an appeal divests a district court of jurisdiction over any issue that is a subject of the order being appealed. *See Natural Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The United States has asserted that the *Totten* bar and the state secrets privilege preclude the disclosure of any information about the existence, sources, targets, or operations of the surveillance programs alleged by plaintiffs, or about AT&T's claimed participation in them, and the Ninth Circuit is currently reviewing those assertions. This Court is thus without power to take any action in *Hepting* that could moot those asserted privileges by requiring disclosure of such information.

At a minimum, this means that there can be no meaningful discovery while the appeals are pending; no litigation of plaintiffs' motion for a preliminary injunction; no order directing AT&T to present statutory certification defenses at any level of generality; no preparation or filing of a meaningful answer by AT&T; and no class certification proceedings. The Court's remaining jurisdiction to proceed in *Hepting* is minimal.

---

[1] Defendant AT&T Inc. has moved to dismiss the complaint on the ground that personal jurisdiction is lacking.

1   This Court should stay all proceedings in the MDL until the *Hepting* appeals are
2   resolved because of these jurisdictional limitations in *Hepting*. Were the Court to proceed
3   otherwise in the MDL, it could moot the appeals—for instance, by ordering the disclosure
4   of information covered by the government's privilege assertions that are directly at issue in
5   the appeals. Such action would thwart the jurisdiction of the reviewing court in *Hepting*.[2]
6   At the very least, this Court should take no step in any MDL case that it could not take in
7   *Hepting* while the appeals are pending.
8         In addition to such jurisdictional limitations, practicality and prudence also suggest
9   that further MDL proceedings should be stayed pending appellate review of the common
10  threshold state secrets and other legal issues presented by those appeals. Should the Court
11  of Appeals reverse this Court's decision, dismissal of all cases will likely be appropriate.
12  Even if the Court of Appeals affirms or modifies this Court's ruling, its decision should
13  nonetheless provide significant guidance concerning the appropriate legal standards and
14  procedures to employ on remand. Given these circumstances, litigation of even minor
15  issues in the MDL pending resolution of the appeals risks considerable unfairness to
16  AT&T, would waste judicial and party resources, and poses unnecessary risks to national
17  security.
18        For all these reasons, as well as the other reasons given by the United States, the
19  Court should stay all MDL proceedings while the *Hepting* appeals remain pending.

---

[2] It would also be futile. Any ruling by this Court implicating *Totten* or state secrets would invariably trigger further assertions of privilege by the United States and further appeals. The issues will not be meaningfully advanced in the process, and the parties will remain in the same position in which they already find themselves: waiting for the Ninth Circuit's direction about whether and how this litigation can proceed.

**ARGUMENT**

**I. DURING THE PENDENCY OF AN APPEAL, A DISTRICT COURT HAS NO JURISDICTION TO TAKE ANY ACTION CONCERNING THE MATTERS INVOLVED IN THE APPEAL.**

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of jurisdiction of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *accord City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *Natural Res. Def. Council*, 242 F.3d at 1166; *United States v. Thorp*, 655 F.2d 997, 998 (9th Cir. 1981). Indeed, "[s]o complete is the transfer of jurisdiction that any orders of the district court touching upon the substance of the matter on appeal are considered null and void if entered subsequent to the timely filing of the notice of appeal." 16A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3949.1 (3d ed. 2006).

The rule is the same for interlocutory appeals—an appeal divests the district court of jurisdiction over the "matters involved in the appeal." *Thorp*, 655 F.2d at 998. While the "matters involved" in an appeal from a final order typically involve the entire case, the "matters involved" in an interlocutory appeal are typically more limited. Accordingly, an interlocutory appeal divests the court of jurisdiction over the issues encompassed within the order on appeal. *See City of Los Angeles*, 254 F.3d at 885-86 ("the filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal"); *see also Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996); *Manual for Complex Litigation (Fourth)* § 15.12 (2004).

Where, as here, the interlocutory appeal concerns a privilege issue, the district court is jurisdictionally foreclosed from requiring disclosure of the information that is subject to the claim of privilege. *See Thorp*, 655 F.2d at 999. Disclosure risks mooting the appeal. Once privileged information has been disclosed, its confidentiality cannot be restored. *See*

1 *United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006); *SG Cowen Secs. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 914 (9th Cir. 1999).[3]

This jurisdictional bar is even more critical in an appeal concerning claimed state secrets, because "the privilege to protect state secrets must head the list [of privileges]. The state secrets privilege is absolute." *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978). The purpose of the state secrets doctrine and the *Totten* bar is to protect the nation's most sensitive and valuable security information, including military secrets and intelligence sources, targets, and methods. *See Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) ("It would be inconsistent with the unique and categorical nature of the *Totten* bar—a rule designed not merely to defeat the asserted claims, but to preclude judicial inquiry—to first allow discovery or other proceedings in order to resolve the jurisdictional question."); *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) (once the state secrets privilege has been invoked as to "particular evidence, the evidence is completely removed from the case"). Thus, appeals of these issues divest the district court of jurisdiction over any aspect of a case that concerns information that may be protected from disclosure.

---

[3] The Ninth Circuit has recognized this principle—the need to preserve privileged information, through interlocutory appeals, if necessary—in the context of a variety of privileges. *See, e.g., United States v. Griffin*, 440 F.3d 1138, 1142 (9th Cir.) (interlocutory appeal of marital privilege claim), *cert. denied*, 127 S. Ct. 259 (2006); *Agster v. Maricopa County*, 422 F.3d 836 (9th Cir.) (interlocutory review of federal peer-review privilege claim), *cert. denied*, 126 S. Ct. 473 (2005); *Bittaker v. Woodford*, 331 F.3d 715, 717-18 (9th Cir. 2003) (en banc) (interlocutory review of protective order defining scope of attorney-client privilege waiver). Indeed, the need to keep privileges intact is sufficiently important that it gives rise to a court of appeals' extraordinary mandamus jurisdiction. *See, e.g., United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006) (trade secrets); *SG Cowen Secs. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 913-14 (9th Cir. 1999); *Medhekar v. U.S. Dist. Court*, 99 F.3d 325, 326-27 (9th Cir. 1996) (statutory stay of discovery in PSLRA securities litigation); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1988) (collecting cases).

## II. THIS COURT LACKS JURISDICTION TO TAKE ANY ACTION IN *HEPTING* THAT MIGHT RISK DISCLOSURE OF INFORMATION COVERED BY THE *TOTTEN* BAR OR THE GOVERNMENT'S ASSERTION OF THE STATE SECRETS PRIVILEGE.

Applying these principles, this Court lacks jurisdiction to take any action in *Hepting* that might risk the disclosure of information that the United States has argued, and the Ninth Circuit could conclude, is protected from disclosure by federal national security privileges. As the United States has explained, the privilege assertions now on appeal embrace every material fact of relevance to the *Hepting* plaintiffs' claims:

> [W]e showed that adjudicating each of plaintiffs' claims would require confirmation or denial of the existence, scope, and potential targets of alleged intelligence activities, as well as AT&T's purported involvement in such activities. The declarations made clear that such information cannot be confirmed or denied without causing exceptionally grave damage to national security; indeed, the most basic factual allegation necessary for plaintiffs' case—whether AT&T has engaged in certain conduct at the behest of the NSA—can neither be confirmed nor denied by AT&T or the United States.

U.S. § 1292(b) Petition (Ex. A) at 13. The nation's most senior intelligence officials, in asserting the state secrets privilege, have expressly confirmed that "[t]he United States can neither confirm nor deny allegations concerning intelligence activities, sources, methods, relationships, or targets. . . . [A]ny further elaboration on the public record concerning these matters would reveal information that could cause the very harms my assertion of the state secrets privilege is intended to prevent." Decl. of John D. Negroponte, Director of Nat'l Intelligence ("DNI"), *Hepting* Dkt. 124-2 ¶ 12.

Plaintiffs nonetheless propose that litigation in *Hepting* should proceed apace while the Ninth Circuit considers the appeal. The vast majority of what plaintiffs propose – including everything of any value to the litigation – is outside the scope of this Court's jurisdiction over *Hepting*.

*First*, discovery cannot be had into materials that might tend to confirm or deny AT&T's alleged involvement in NSA programs. Plaintiffs have sought numerous categories of discovery that could have such an effect. For example, plaintiffs contend that the Court can proceed "immediately" with discovery of the following information:

- "any documents that defendants assert are relevant to a certification-based defense against plaintiffs' communications content claims," see Jt. Case Mgmt. Stmt., MDL Dkt. 61-1 ¶ 6a, at 40-41;

- "[a]ny waivers or other correspondence from the Director of National Intelligence or his agents . . . and sent to private telecommunications companies exempting them from SEC reporting requirements," id. ¶ 6g, at 41-42;

- "[d]iscovery into the AT&T network aimed at confirming which communications travel through the San Francisco facility as well as similar facilities referenced in Mr. Klein's declaration and supporting materials and communications, and in the media," id. ¶ 6m, at 42;

- "[a]ny contracts between AT&T and the company that provided the sophisticated machinery referenced in Mr. Klein's declaration, plus all supporting materials and communications," id. ¶ 6n, at 42-43; and

- "[a]ll documents regarding the San Francisco facility (and similar facilities) referenced in Mr. Klein's declaration and supporting materials and communications provided to AT&T Inc. during the due diligence portion of the merger between AT&T Corp. and AT&T Inc.," id. ¶ 6o, at 43.

Plaintiffs cannot take this discovery – or any other truly relevant discovery – while the Ninth Circuit is considering whether and how the state secrets privilege and the *Totten* bar apply. Plaintiffs' requests are transparently aimed at discovering "the most basic factual allegation necessary for plaintiffs' case—whether AT&T has engaged in certain conduct at the behest of the NSA," U.S. § 1292(b) Petition (Ex. A) at 13, which the United States has asserted is a protected state secret. To respond to any such discovery threatens to cause precisely the harm that the United States has intervened—and appealed to the Ninth Circuit—to avoid.

*Second*, the pending appeals deprive this Court of jurisdiction over plaintiffs' motion for a preliminary injunction. The very premise of the motion is that AT&T has assisted the NSA in the alleged surveillance programs and has thereby committed the various violations of law alleged in the *Hepting* Complaint. *See* Pls.' Mem. of P's & A's in Support of Mot. for Prelim. Inj., *Hepting* Dkt. 149-1, at 11. Any adjudication of whether plaintiffs have a "likelihood of success" on their claims would necessitate disclosure of not only AT&T's participation or non-participation in the alleged surveillance, but also the scope of its supposed involvement. Indeed, in order to pursue this motion, plaintiffs seek a Rule 30(b)(6) deposition and related document discovery, including "any certifications or

other authorizations purporting to allow [AT&T] to intercept the communications of their customers." Jt. Case Mgmt. Stmt. at 39.

The United States has asserted that any certifications, if they exist, are protected by the state secrets privilege. As plaintiffs acknowledge, *see id.*, this Court ruled on that issue in the order that is now before the Ninth Circuit. *See Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 995-96 (N.D. Cal. 2006). In fact, this Court has recognized that "uncovering whether and to what extent a certification exists might reveal information about AT&T's assistance to the government that has not been publicly disclosed." *Id.* at 995. A preliminary injunction motion cannot be litigated without revealing precisely the information that is subject to the state secrets assertion now before the Ninth Circuit or requiring another assertion of the same state secrets privilege already on appeal.

Moreover, the question of plaintiffs' standing to proceed with their case is without doubt central to AT&T's appeal of the issue whether the assertion of the state secrets privilege precludes plaintiffs from establishing their standing. Adjudicating any claim seeking preliminary injunctive relief before standing has been established would be improper. *See Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1405 (9th Cir. 1991) (court must determine party's standing before a motion for preliminary injunction "because a 'threshold question in every federal case' is 'whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Article III'"); *Wittman v. Saenz*, No. C-02-02893 SI, 2006 WL 279358, at *11, 2006 U.S. Dist. LEXIS 36045, at *32-33 (N.D. Cal. Feb. 6, 2006) (denying motion for preliminary injunction as moot because plaintiff failed to establish standing to seek injunctive relief).

*Third*, AT&T cannot file a meaningful answer because AT&T's ability to do so depends upon the application and scope of the state secrets privilege and the *Totten* doctrine. The allegations in the *Hepting* Complaint speak directly to whether AT&T assisted the NSA in carrying out certain alleged intelligence activities. Responding to the Complaint inevitably would require AT&T to confirm or deny factual allegations that are at

the heart of the privilege claims on appeal (or again require the United States' assertion of the same state secrets privilege already on appeal).

It is no answer to suggest, as plaintiffs have done, that this can be solved through "creative solutions"—such as plaintiffs' suggestion that AT&T should file an answer, perhaps *in camera* and *ex parte*, or perhaps redacted with the "guidance" of the government. Jt. Case Mgmt. Stmt. at 29-30 & n.19. Plaintiffs' proposals could not produce a meaningful answer. "The purpose of the defendant's answer is to apprise the plaintiff and any other opposing parties of which allegations in the complaint are contested and which allegations are admitted and will not be at issue in the trial." 1 J. Moore *et al.*, *Moore's Federal Practice* § 9.03[3] (3d ed. 2006); *see also* 5 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1202 (3d ed. 2006) (pleadings, such as an answer, serve the functions of "giving notice of the nature of a . . . defense," "stating the facts [a] party believes to exist," and "narrowing the issues that must be litigated"). Plaintiffs' proposal could not result in an answer that fulfills these purposes, as AT&T could not confirm or deny any but the most innocuous factual allegations. Filing an answer would therefore be an exercise in futility that would not tell the Court or the parties anything.

AT&T also could not assert any affirmative defenses, because doing so would be a representation that such defenses "have evidentiary support," Fed. R. Civ. P. 11(b)(3), and to do so in any manner other than an indiscriminate laundry list would therefore require AT&T to suggest a view of underlying facts whose privileged nature is now under review by the Court of Appeals. As a hypothetical example, if AT&T wished to assert government contractor immunity, *see Boyle v. United Techs. Corp.*, 487 U.S. 500, 504-13 (1988), how could it do so without divulging whether it participated in the alleged programs, whether it did so under contract, or whether the contract in question required conduct alleged by the plaintiffs? Similarly, if (again, hypothetically) AT&T wished to raise statutory good faith defenses, *see* 18 U.S.C. §§ 2520(d), 2707(e), how could it do so without divulging whether the alleged programs exist, whether it participated in them, and whether it had some specific basis for believing its participation was lawful?

Indeed, because AT&T cannot confirm or deny any participation in any alleged NSA program, the state secrets assertion by the United States prevents AT&T from asserting any defense based on statutory certifications (if, hypothetically, such certifications existed), even though this Court has opined that such a defense "protects a telecommunications provider from suit," *Hepting*, 439 F. Supp. 2d at 1005, not merely from liability. Such defenses, if applicable, would suggest that the next logical step would be a further motion to dismiss the case or motion for judgment based on any certifications that may exist—even if the United States' state secrets assertion were rejected on final appeal. For these reasons, the Court is without jurisdiction to require AT&T to answer the plaintiffs' factual allegations or to make any of its own while the Ninth Circuit is considering the appeals.

*Fourth*, the Court lacks jurisdiction to proceed with class certification. Before a class can be certified, plaintiffs must establish commonality and typicality. Fed. R. Civ. P. 23(a). Those inquiries depend on a fact-intensive examination of the nature of plaintiffs' claims; the existence and nature of their alleged injuries; and the relationship between their claimed injuries and those of the other putative class members. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (class certification is "enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). But, as AT&T and the United States will argue to the Ninth Circuit, plaintiffs cannot establish the fact of actual injury without invading state secrets. Neither the government nor AT&T has confirmed or denied AT&T's alleged participation in any NSA surveillance program at any level of generality, nor have they ever confirmed or denied whether any of the *Hepting* plaintiffs were ever targeted or encompassed within any such program. Plaintiffs cannot, in a manner consistent with state secrets, establish standing to pursue their own claims, much less purport at this stage to represent others with supposedly similar claims.

1  **III.  THIS COURT SHOULD STAY THE MDL PROCEEDINGS PENDING
       RESOLUTION OF THE *HEPTING* APPEALS.**
2
3       AT&T agrees with the United States that the Court should as a prudential matter
4  stay the MDL in its entirety.
5       The procedural history of *Tenet v. Doe*, 544 U.S. 1 (2005), aptly demonstrates the
6  wisdom of staying proceedings pending appeal in a situation like this one.  Although the
7  district court in *Tenet* concluded that *Totten* did not require the dismissal of the plaintiffs'
8  claims, it stayed all proceedings pending interlocutory appeal, precisely because the
9  possibility that the Ninth Circuit's decision would end the case rendered any such
10 proceedings wasteful: "The Court finds that it would be an inefficient use of judicial and
11 attorney resources to allow discovery to continue, because the Ninth Circuit's decision in
12 this case could negate the need for discovery.  This case is stayed pending a decision from
13 the Ninth Circuit on the interlocutory appeal of this Court's Orders." *Doe v. Tenet*, No.
14 2:99-cv-01597-RSL, slip op. at 4 (W.D. Wash. Mar. 14, 2001) (Ex. B).  Ultimately, of
15 course, the wisdom of the district court's stay order was confirmed: the Supreme Court
16 ordered that the case be dismissed.  *Tenet*, 544 U.S. at 6, 8.
17      The reasons for entering a stay here are even more powerful than they were in
18 *Tenet*.  The assertedly privileged information is the same in each MDL case; if this Court
19 required any carrier to divulge information concerning the alleged NSA programs or their
20 alleged participation therein, it would risk mooting the *Hepting* appeals and destroying the
21 state secrets privilege.  "[T]he quintessential form of prejudice justifying a stay" exists
22 when it "is apparent that absent a stay pending appeal . . . the appeal will be rendered
23 moot."  *In re Pac. Gas & Elec. Co.*, No. C-02-1550 VRW, 2002 WL 32071634, at *2, 2002
24 U.S. Dist. LEXIS 27549, at *8 (N.D. Cal. Nov. 14, 2002) (internal quotations omitted).  To
25 avoid that risk, the Court should take no step in any MDL case that it may not take in
26 *Hepting* while the appeals are pending.
27      Although in *Hepting* this Court did not agree that the privilege warranted dismissal
28

-10-                    AT&T JOINDER IN U.S. STAY MOTION
                                                MDL No. 06-1791-VRW

of claims concerning the Terrorist Surveillance Program ("TSP"), that is a different issue than how the relevant harms should be balanced in considering whether further proceedings should be stayed pending appellate review of that ruling. The state secrets doctrine itself furnishes the answer: "[T]he 'balance has already been struck' in favor of protecting secrets of state over the interests of a particular litigant." *In re United States*, 872 F.2d 472, 476 (D.C. Cir. 1989) (quoting *Halkin v. Helms*, 690 F.2d 977, 990 (D.C. Cir. 1982)); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) (national security interests protected by the state secrets privilege "cannot be compromised by any showing of need on the part of the party seeking the information."). If that is true for application of the state secrets privilege, *a fortiori* it must be true when the applicability of the privilege is under appellate review.

Even if the private harms asserted by the plaintiffs could appropriately be weighed, those harms would be insufficient to overcome the public safety and mootness risks that would attend continued litigation. Plaintiffs' private harms consist entirely of alleged violations of privacy rights. All such alleged violations arise either from the TSP or the alleged call records program. Yet each of the three courts to consider the call records program, including this Court, have concluded that it is not a proper subject for continued litigation, at least at the present time. *See ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006); *Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 916-17 (N.D. Ill. 2006); *Hepting*, 439 F. Supp. 2d at 997-98. And the United States District Court for the Eastern District of Michigan has already opined that the TSP is unconstitutional. *See ACLU*, 438 F. Supp. 2d at 782. That ruling is currently on appeal to the Sixth Circuit. Thus, there is no reason to believe that the harms allegedly arising from the call records program can be reviewed or remedied by the courts, and the substantive lawfulness of the TSP is already under review in a sister circuit. There is, in short, no reason to rush forward with efforts to litigate the MDL cases while the threshold state secrets issues common to all of them are on appeal in two different Courts of Appeals.

Conducting further proceedings while *Hepting* is on appeal would be wasteful and ill-advised. The MDL was established primarily because these actions share common threshold issues that raise sensitive national security concerns—the precise issues now before the Ninth Circuit in *Hepting*. *See In re NSA Telecommc'ns Records Litig.*, 444 F. Supp. 2d 1332, 1334 (J.P.M.L. 2006). An MDL is designed to promote a "just and efficient" outcome in the cases that comprise it; the MDL court is accordingly given "discretion to manage them that is commensurate with the task." *Allen v. Bayer Corp.* (*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*), 460 F.3d 1217, 1230-31 (9th Cir. 2006). As the Ninth Circuit has observed, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Growers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). A stay is even more appropriate where the proceedings that bear upon the case are not independent, but rather part of the same MDL. *See Manual for Complex Litigation (Fourth)* § 15.12 (2004) (explaining that "depending on the nature of the issue before the appellate court, it may be appropriate for the trial judge to suspend some portion of the proceedings or alter the sequence in which further activities in the litigation are conducted"). When an appeal of such a common issue "may be of valuable assistance to the court in resolving" similar claims in other, related cases, a stay of those other cases may appropriately be entered even in circumstances—unlike those here—when "the issues in such proceedings [would not] necessarily [be] controlling of the action before the court." *Levya*, 593 F.2d at 863-64; *see also Nader v. Butz*, 60 F.R.D. 381, 386 (D.D.C. 1973) (staying order requiring *in camera* disclosure of documents subject to a claim of executive privilege due to pendency of separate litigation regarding executive privilege).

Regardless of how the appeal ultimately is decided, the Ninth Circuit's ruling in *Hepting* will have a substantial impact on the manner in which the other actions in the MDL are litigated. If the Ninth Circuit reverses this Court's state secrets ruling, it will likely result in the dismissal of most of the cases in the MDL. If the Ninth Circuit should instead

-12-	AT&T JOINDER IN U.S. STAY MOTION
MDL No. 06-1791-VRW

affirm or modify this Court's ruling, its decision likely will have important implications for how the litigation in the MDL should proceed.  Assuming the MDL survives at all, it would be far better to brief the state secrets issues in all the non-*Hepting* cases once, with the benefit of the Ninth Circuit's ruling, than do to so twice—once while *Hepting* is on appeal and then again after the Ninth Circuit's decision.

Entering a stay under these circumstances would be consistent with the "express purpose of consolidating multidistrict litigation for discovery . . . to conserve judicial resources by avoiding duplicative rulings." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996); *accord In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d at 1229-30; *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 292 n.3 (6th Cir. 2002) (noting that the district court, pursuant to the All Writs Act, stayed all MDL actions and remaining state court actions pending an appeal regarding attorney-client privilege and work product waiver issues).

A stay of all MDL proceedings would help guard the national security interests at stake in this MDL.  By definition, the privilege exists to protect information that, if disclosed, could threaten the safety and security of the nation.[4]  *See, e.g.*, *United States v. Reynolds*, 345 U.S. 1 (1953); *Kasza*, 133 F.3d 1159.  This is a paramount public interest, which must be afforded great weight in any stay analysis.  *See, e.g., Wayte v. United States*, 470 U.S. 598, 611 (1985) ("Few interests can be more compelling than a nation's need to ensure its own security.").  When faced with "national defense concerns" where "vital interests are at stake," courts accordingly have an obligation to "err on the side of caution." *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 655 (Fed. Cl. 2003).

---

[4] These harms can also arise from requiring disclosure of "seemingly innocuous information" that could be "part of a classified mosaic." *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).  "[W]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *CIA v. Sims*, 471 U.S. 159, 178 (1985) (alteration omitted).

1         Both the DNI and the Director of the NSA have attested that "the risk is great that further litigation will risk the disclosure of information harmful to the national security of the United States." Negroponte Decl. ¶ 3; *accord* Decl. of Keith B. Alexander, *Hepting* Dkt. 124-3 ¶ 5 ("it is my judgment that any attempt to proceed in the case will substantially risk disclosure of the privileged information and will cause exceptionally grave damage to the national security of the United States"). The government's continuing efforts to prevent attacks against civilians, here and abroad, could be compromised by further litigation of plaintiffs' claims. "Especially in cases of extraordinary public moment," as the Supreme Court explained in *Landis v. North American Co.*, 299 U.S. 248, 256 (1936), "the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."

## **CONCLUSION**

For the reasons set forth above, this Court should stay all MDL proceedings pending disposition of the appeals in *Hepting v. AT&T Corp.*

Dated: December 22, 2006.

| PILLSBURY WINTHROP<br>  SHAW PITTMAN LLP<br>BRUCE A. ERICSON<br>DAVID L. ANDERSON<br>JACOB R. SORENSEN<br>MARC H. AXELBAUM<br>DANIEL J. RICHERT<br>50 Fremont Street<br>Post Office Box 7880<br>San Francisco, CA 94120-7880 | SIDLEY AUSTIN LLP<br>DAVID W. CARPENTER\*<br>BRADFORD A. BERENSON\*<br>DAVID L. LAWSON\*<br>EDWARD R. MCNICHOLAS\*<br>ERIC A. SHUMSKY<br>1501 K Street, N.W.<br>Washington, DC 20005<br><br>\* admitted *pro hac vice* |
|---|---|
| By   /s/ Bruce A. Ericson<br>    Bruce A. Ericson | By   /s/ Bradford A. Berenson<br>    Bradford A. Berenson |

*Attorneys for the AT&T Defendants*