Lycos, Inc. v. Verizon Communications, Inc.

Dockets.Justia.com

Doc. 121

R. James George, Jr.
Texas Bar No. 07810000
Douglas Brothers
Texas Bar No. 03084500
**GEORGE & BROTHERS, L.L.P.**
1100 Norwood Tower
114 W. 7th Street
Austin, Texas 78701
Telephone: (512) 495-1400
Facsimile: (512) 499-0094
rjgeorge@georgeandbrothers.com
ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| IN RE NATIONAL SECURITY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL CASES BROUGHT AGAINST DEFENDANTS AT&T MOBILITY LLC (f/k/a CINGULAR WIRELESS LLC), CINGULAR WIRELESS CORP., AND NEW CINGULAR WIRELESS SERVICES, INC. | MDL Docket No. 06-1791 (VRW)<br><br>MASTER CONSOLIDATED COMPLAINT AGAINST DEFENDANTS AT&T MOBILITY LLC (f/k/a CINGULAR WIRELESS LLC), CINGULAR WIRELESS CORP., AND NEW CINGULAR WIRELESS SERVICES, INC. FOR DAMAGES, DECLARATORY AND EQUITABLE RELIEF<br>**CLASS ACTION**<br><br>JUDGE: Hon. Vaughn R. Walker<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by their attorneys, for their Master Consolidated Complaint against **Defendants AT&T Mobility LLC (f/k/a Cingular Wireless, L.L.C.), Cingular Wireless Corp., and New Cingular Wireless Services, Inc.,** allege, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This Master Consolidated Complaint Against Defendants AT&T Mobility LLC (f/k/a Cingular Wireless, L.L.C.), Cingular Wireless Corp., and New Cingular Wireless Services,

Inc., ("Cingular Master Complaint" or "Complaint") is filed pursuant to the Order of this Court and presents all claims brought against Defendants AT&T Mobility LLC (f/k/a Cingular Wireless, LLC), Cingular Wireless Corp., and New Cingular Wireless Services, Inc., (collectively "Defendants" or "Cingular") in the separate cases transferred by the Panel on Multidistrict Litigation in this matter in its orders dated August 14, 2006, and September 25, 2006 ("transferred cases"). Unless otherwise ordered by this Court, all claims presented in any case against Defendants AT&T Mobility LLC (f/k/a Cingular Wireless, LLC), Cingular Wireless Corp., and New Cingular Wireless Services, Inc., subsequently transferred to this Court by the Panel on Multidistrict Litigation in this matter shall be deemed to be included in this Cingular Master Complaint.

2. This Cingular Master Complaint is filed solely as an administrative device to promote judicial efficiency and economy in the adjudication and resolution of pretrial matters and is not intended to effect consolidation for trial of the transferred cases. Neither is this Cingular Master Complaint intended to cause, nor to change the rights of the parties, nor to make those who are parties in one transferred case parties in another.

3. This case challenges the legality of Defendants' participation in a secret and illegal government program to intercept and analyze vast quantities of Americans' telephone communications and records, surveillance done without any statutorily authorized permission, customers' knowledge or consent, or the authorization of a court, and in violation of federal electronic surveillance and telecommunications statutes, as well as the First and Fourth Amendments to the United States Constitution. In addition, Plaintiffs challenge Defendants' conduct under state law.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(d), 18 U.S.C. § 2707, and 47 U.S.C. § 605. Supplemental jurisdiction over state law claims is founded on 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to the order of the Panel on Multidistrict Litigation.

## PARTIES

6. Plaintiff Heather Derosier is an individual residing in Seattle, Washington. Plaintiff is and has been a subscriber and user of Cingular's telephone service since at least 2004.

7. Plaintiff Sam Goldstein Insurance Agency, Inc. is a domestic corporation doing business in Indianapolis, Indiana, and was formerly a subscriber and user of Cingular's cellular services, and used Cingular to make wireless telephone calls.

8. Plaintiff Rabbi Steven Lebow, an individual residing in Marietta, Georgia, has been a subscriber and user of Cingular's cell phone service. Rabbi Lebow has used such electronic communications services to place domestic and international telephone calls and for Internet and e-mail services. Many of Rabbi Lebow's communications with his congregant are privileged pursuant to the clergyman-congregant privilege recognized under Federal Rule of Evidence 501.

9. Plaintiffs Steven and Cathy Bruning, individuals residing in Marietta, Georgia, have been subscribers to and users of Cingular cell phone services. The Brunings have used such electronic communications services to place domestic and international telephone calls.

10. Plaintiff Brian Bradley, an individual residing in Atlanta, Georgia, is and has been a subscriber and user of Cingular's cellular phone service, and has used such electronic communications services to place domestic and international telephone calls.

11. Plaintiff Anakalia Kaluna, is an individual residing in Honolulu, Hawaii, and has been a subscriber and user of Cingular's cellular phone service, and bas used it to make wireless telephone calls.

12. Plaintiff Kim Coco Iwamoto is an individual residing in Honolulu, Hawaii, and has been a subscriber and user of Cingular's cellular phone service, and has used it to make wireless telephone calls. Iwamoto has a special interest in this action because she is an attorney legally obligated to protect the confidentiality of communications with her clients.

13. Plaintiff Paul Robilotti is an individual residing in Englishtown, New Jersey. Robilotti has been a subscriber and user of Cingular's wireless telephone services for some time between September 11, 2001 and the present, and, has used them to make such local regional and long distance calls.

14. Plaintiff Alan Toly Sapoznik is an individual residing in Manalapan, New Jersey. Sapoznik has been a subscriber and user of Cingular's wireless telephone services since at least approximately January 2006, and for some period of time prior and subsequent thereto through the present, and, has used it to make local and regional long distance calls.

15. Plaintiff James C. Harrington is an individual residing in Travis County, Texas. He is an attorney licensed in the State of Texas. He has had an account for telecommunications services with Cingular during the last three years, and continues to have this account. As an attorney, Harrington uses his mobile phone to communicate with clients and co-counsel.

16. Plaintiff Richard A. Grigg is an individual residing in Travis County, Texas. He is an attorney licensed in the State of Texas. He has had an account for telecommunications services with Cingular during the last three years, and continues to have this account. As an attorney, Grigg uses his mobile phone and other telecommunications equipment and services to communicate with clients and co-counsel. Grigg has represented and continues to represent

individuals detained in Guantanamo and though he may not communicate with his clients over the phone, he used and uses his telecommunications equipment and services to communicate with other habeas attorneys concerning his clients and his clients' cases.

17. Plaintiff Louis Black is an individual residing in Travis County, Texas. He is a freelance reporter and editor of the *Austin Chronicle*. He has had an account for telecommunications services with Cingular during the last three years, and continues to have this account. He uses his Cingular telecommunications equipment and services to communicate with news sources and informants, some of who wish to remain confidential.

18. Plaintiff *Austin Chronicle* is a publication whose primary place of business and distributorship is Austin, Texas (Travis County). The *Austin Chronicle* has had an account for telecommunications services with Cingular during the last three years, and continues to have this account. *Austin Chronicle* contributors and staff use the Cingular equipment and services to communicate with news sources and informants, some of who wish to remain confidential.

19. Plaintiff Michael Kentor is an individual residing in Travis County, Texas. He is a financial advisor and founder of the Kentor Company, a financial firm. He has had an account for telecommunications services with Cingular during the last three years, and continues to have this account. He uses his Cingular telecommunications equipment and services to communicate with clients, family, friends, and colleagues.

20. Defendant AT&T Mobility LLC (formerly known as Cingular Wireless LLC) is a Delaware LLC. AT&T Mobility LLC is a "telecommunication carrier" within the meaning of the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.* and provides remote computing and electronic communications services to the public. On or about January 8, 2007, Cingular Wireless LLC changed its name to AT&T Mobility LLC. (For convenience, the newly-named "AT&T Mobility LLC" may be referred to using its prior name "Cingular Wireless LLC.")

21. Defendant Cingular Wireless Corp. is a Delaware corporation with its principal place of business in Atlanta Georgia. Defendant Cingular Wireless Corp., is a "telecommunication carrier" within the meaning of the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.* and provides remote computing and electronic communications services to the public.

22. Defendant New Cingular Wireless Services, Inc. is a for-profit corporation, incorporated in Delaware, with its principal place of business in Redmond, Washington. New Cingular Wireless Services, Inc. was formerly AT&T Wireless Services Inc. New Cingular Wireless Services, Inc. (under its current name or former name) is a "telecommunication carrier" within the meaning of the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.* and provides remote computing and electronic communications services to the public.

**FACTUAL ALLEGATIONS**

23. In Section 222 of the Communications Act of 1934 (47 U.S.C. § 222(c)(1)), Congress imposed upon telecommunication carriers, such as Defendants, a duty to protect sensitive, personal customer information from disclosure. This information includes "information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" and data concerning service customers' telephone calling histories (*i.e.*, date, time, duration, and telephone numbers of calls placed or received) or call-detail records, and such information constitutes "individually identifiable customer proprietary network information" within the meaning of Section 222 of the Communications Act of 1934.

24. Federal law prohibits telecommunications providers such as Defendants from disclosing customers' call-detail records to the government without a court order, subpoena, or

other lawful authorization.

25. In the aftermath of September 11, 2001, Defendants commenced their programs of providing the federal government with the telephone call contents and records of its customers and subscribers. Defendants continue to provide this information to the federal government.

26. On December 16, 2005, in an article entitled "Bush Lets U.S. Spy on Callers Without Courts," *The New York Times* reported on an NSA program of eavesdropping on the telephone conversations of Americans without court order as required by the Foreign Intelligence Surveillance Act.

27. In a December 17, 2005 radio address, President Bush admitted that "[i]n the weeks following the terrorist attacks on our nation, [he] authorized the National Security Agency, consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations." President Bush further stated that "the activities [he] authorized are reviewed approximately every 45 days"; that he had "reauthorized this program more than 30 times since the September the 11th attacks"; and that he intended to continue authorizing such activity "for as long as our nation faces a continuing threat from al Qaeda and related groups."

28. In a press briefing on December 19, 2005 by Attorney General Gonzales and General Michael Hayden, Principal Deputy Director for National Intelligence, the government claimed that the NSA Surveillance Program targets communications between a party outside the United States and a party inside the United States when one of the parties of the communication is believed to be "a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda, or working in support of al Qaeda."

29. In a press release on December 19, 2005, Attorney General Alberto Gonzales stated that the Program involved "intercepts of contents of communications . . . ." While the

Attorney General's description of the Program was limited to interception of communications with individuals "outside the United States," Attorney General Gonzales explained that his discussion was limited to those parameters of the program already disclosed by the President and that many other operational aspects of the program remained highly classified.

30. On December 24, 2005, *The New York Times* reported in an article entitled, "Spy Agency Mined Vast Data Trove, Officials Report," that:

> [t]he National Security Agency has traced and analyzed large volumes of telephone and Internet communications flowing into and out of the United States as part of the eavesdropping program that President Bush approved after the Sept. 11, 2001, attacks to hunt for evidence of terrorist activity, according to current and former government officials. The volume of information harvested from telecommunication data and voice networks, without court-approved warrants, is much larger than the White House has acknowledged, the officials said. It was collected by tapping directly into some of the American telecommunication system's main arteries, they said.

The officials said that as part of the program, "the N.S.A. has gained the cooperation of American telecommunications companies to obtain backdoor access to streams of domestic and international communications" and that the program is a "large data-mining operation" in which N.S.A. technicians have combed through large volumes of phone and Internet traffic in search of patterns that might point to terrorism suspects. In addition, the article reports, "[s]everal officials said that after President Bush's order authorizing the N.S.A. program, senior government officials arranged with officials of some of the nation's largest telecommunications companies to gain access to switches that act as gateways at the borders between the United States' communication networks and international networks."

31. In a January 3, 2006 article entitled, "Tinker, Tailor, Miner, Spy" (available at http://www.slae.com/toolbar.aspx?action=print&id=2133564), Slate.com reported, "[t]he agency [the NSA] used to search the transmissions it monitors for key words, such as names and phone numbers, which are supplied by other intelligence agencies that want to track certain individuals. But now the NSA appears to be vacuuming up all data, generally without a particular phone line,

name, or e-mail address as a target. Reportedly, the agency is analyzing the length of a call, the time it was placed, and the origin and destination of electronic transmissions."

32. In a January 17, 2006 article, "Spy Agency Data After Sept. 11 Led F.B.I. to Dead Ends," *The New York Times* stated that officials who were brief on the N.S.A. program said that "the agency collected much of the data passed on to the F.B.I. as tips by tracing phone numbers in the United States called by suspects overseas, and then by following the domestic numbers to other numbers called. In other cases, lists of phone numbers appeared to result from the agency's computerized scanning of communications coming into and going out of the country for names and keywords that might be of interest."

33. A January 20, 2006 article in the *National Journal*, "NSA spy program hinges on state-of-the-art technology," reported that "[o]fficials with some of the nation's leading telecommunications companies have said they gave the NSA access to their switches, the hubs through which enormous volumes of phone and e-mail traffic pass every day, to aid the agency's effort to determine exactly whom suspected Qaeda figures were calling in the United States and abroad and who else was calling those numbers. The NSA used the intercepts to construct webs of potentially interrelated persons."

34. In a January 21, 2006 article in the *Bloomberg News* entitled "Lawmaker Queries Microsoft, Other Companies on NSA Wiretaps," Daniel Berninger, a senior analyst at Tier 1 Research in Plymouth, Minnesota, said "[i]n the past, the NSA has gotten permission from phone companies to gain access to so-called switches, high-powered computer into which phone traffic flows and is redirected, at 600 locations across the nation. . . . From these corporate relationships, the NSA can get the content of calls and records on their date, time, length, origin and destination."

35. On January 25, 2006, an article appearing in the *Reporter-Times* entitled "NSA Data Mining is Legal, Necessary, Chertoff Says" stated that "while refusing to discuss how the highly classified program works (Department of Homeland Security Secretary) Chertoff made it pretty clear that it involves "data-mining" – collecting vast amounts of international communications data, running it through computers to spot key words and honing in on potential terrorists." In that same interview Secretary Chertoff is quoted as saying " . . . if you're trying to sift through an enormous amount of data very quickly, I think it (obtaining a FISA warrant) would be impractical", and that getting an ordinary FISA warrant is "a voluminous, time-consuming process" and "if you're culling through literally thousands of phone numbers . . . you could wind up with a huge problem managing the amount of paper you'd have to generate."

36. On February 5, 2006, an article appearing in the *Washington Post* entitled "Surveillance Net Yields Few Suspects" stated that officials said "[s]urveillance takes place in several stages . . . the earliest by machine. Computer-controlled systems collect and sift basic information about hundreds of thousands of faxes, e-mails and telephone calls into and out of the United States before selecting the ones for scrutiny by human eyes and hears. Successive stages of filtering grow more intrusive as artificial intelligence systems rank voice and data traffic in order of likeliest interest to human analysts." The article continues "[f]or years, including in public testimony by Hayden, the agency [the NSA] has acknowledged use of automated equipment to analyze the contents and guide analysts to the most important ones. According to one knowledgeable source, the warrantless program also uses those methods. That is significant . . . because this kind of filtering intrudes into content, and machines 'listen' to more Americans than humans do."

37. On February 6, 2006, in an article entitled "Telecoms let NSA spy on calls," the nationwide newspaper *USA Today* reported that "[t]he National Security Agency has secured the

cooperation of large telecommunications companies, including AT&T, MCI and Sprint, in its efforts to eavesdrop without warrants on international calls by suspected terrorists, according to seven telecommunications executives." The article acknowledged that *The New York Times* had previously reported that the telecommunications companies had been cooperating with the government but had not revealed the names of the companies involved. In addition, it stated that long-distance carriers AT&T, MCI, and Sprint "all own 'gateway' switches capable of routing calls to points around the globe, and that "[t]elecommunications executives say MCI, AT&T, and Sprint grant the access to their systems without warrants or court orders. Instead, they are cooperating on the basis of oral requests from senior government officials."

38. On May 11, 2006, in an article entitled "NSA has massive database of Americans' phone calls," *USA Today* reported that "[t]he National Security Agency has been secretly collecting the phone call records of tens of millions of Americans, using data provided by AT&T, Verizon and Bellsouth," according to multiple sources with "direct knowledge of the arrangement." One of the confidential sources for the article reported that the NSA's goal is "to create a database of every call ever made" within the United States. The confidential sources reported that AT&T and the other carriers are working "under contract" with the NSA, which launched the program in 2001 shortly after the September 11, 2001 terrorist attacks. At the U.S. Senate confirmation hearing on his nomination to become Director of the Central Intelligence Agency, General Michael Hayden, who was the Director of the NSA at the time, confirmed that the program was "launched" on October 6, 2001.

39. The *USA Today* story was confirmed by a U.S. intelligence official familiar with the program. The story reports that the NSA requested that AT&T, SBC, and the other carriers "turn over their 'call-detail records,' a complete listing of the calling histories of their millions of customers," and provide the NSA with "updates" of the call-detail records. The confidential

sources for the story reported that the NSA informed the carriers that it was willing to pay for the cooperation, and that both "AT&T, which at the time was headed by C. Michael Armstrong," and "SBC, headed by Ed Whitacre," agreed to provide the NSA with the requested information.

40. The *USA Today* story reported that the NSA requested that Qwest Communications, Inc. ("Qwest"), another telecommunications carrier, provide the NSA with its customers' call-detail records, but Qwest refused. Qwest requested that the NSA first obtain a court order, a letter of authorization from the U.S. Attorney General's office, or permission from a Court operating under the Foreign Intelligence Surveillance Act ("FISA"), but the NSA refused, because it was concerned that the FISA Court and the Attorney General would find the NSA's request unlawful.

41. As of the date of the filing of this Complaint, no part of the *USA Today* story has been publicly denied by any representative of the federal government, including the NSA.

42. On May 16, 2006, in an article entitled "BellSouth Denies NSA Contract," eWeek.com reported that BellSouth's vice president of corporate communications, Jeff Battcher, in an interview disputed the accuracy of information contained in the May 11, 2006 *USA Today* article but "note[d] that his company owns 40 percent of wireless carrier Cingular" and that he "[didn't] want to speak for Cingular".

43. Qwest's decision not to participate was also reported in an article from *The New York Times* on May 13, 2006 entitled, "Questions Raised for Phone Giants in Spy Data Furor." The article reported that Qwest's former CEO, Joseph Nacchio, "'made inquiry as to whether a warrant or other legal process had been secured in support of that request. When he learned that no such authority had been granted and that there was a disinclination on the part of the authorities to use any legal process,' Nacchio concluded that the requests violated federal privacy requirements 'and issued instructions to refuse to comply.'" According to the May 11, 2006 *USA*

*Today* article, "Nacchio's successor, Richard Notebaert, finally pulled the plug on the NSA talks in late 2004."

44. Senator Christopher "Kit" Bond (R-MO), who also has received access to information on warrantless surveillance operations, explained on May 11, 2006 on a PBS Online NewsHour program entitled "NSA Wire Tapping Program Revealed" that "[t]he president's program uses information collected from phone companies . . . what telephone number called what other telephone number."

45. On May 14, 2006, when Senate Majority Leader William Frist (R-TN) was asked on CNN Late Edition with Wolf Blitzer whether he was comfortable with the program described in the *USA Today* article, he stated "Absolutely. I am one of the people who are briefed . . . I've known about the program. I am absolutely convinced that you, your family, our families are safer because of this particular program."

46. Senator Pat Roberts (R-KS), the chair of Senate Intelligence Committee, described the program on "All Things Considered" on NPR on May 17, 2006. When asked about whether he had been briefed that the NSA had collected millions of phone records for domestic calls, Roberts stated: "Well, basically, if you want to get into that, we're talking about business records."

47. On May 29, 2006, Seymour Hersh reported in *The New Yorker* in an article entitled "Listening In" that a security consultant working with a major telecommunications carrier "told me that his client set up a top-secret high-speed circuit between its main computer complex and Quantico, Virginia, the site of a government-intelligence computer center. This link provided direct access to the carrier's network core – the critical area of its system, where all its data are stored. 'What the companies are doing is worse than turning over records,' the consultant said. 'They're providing total access to all the data.'"

48. A June 30, 2006 *USA Today* story reported that 19 Members of the intelligence oversight committees of the U.S. Senate and House of Representatives "who had been briefed on the program verified that the NSA has built a database that includes records of Americans' domestic phone calls," and that four of the committee Members confirmed that "MCI, the long-distance carrier that Verizon acquired in January, did provide call records to the government."

49. Defendants knowingly and intentionally provide the aforementioned telephone contents and records to the federal government.

50. As part of the Program, NSA's operational personnel identify particular individual targets and their communications, through a software data mining process that NSA runs against vast databases of the Defendants' stored electronic records of their customers' telephone communications, in search of particular names, numbers, words or phrases, and patterns of interest. Upon information and belief, NSA's operational personnel also identify communications of interest in real time through similar data-mining software functionality.

51. Besides actually eavesdropping on specific conversations, NSA personnel have intercepted large volumes of domestic and international telephone and Internet traffic in search of patterns of interest, in what has been described in press reports as a large "data mining" program.

52. As part of this data-mining program, the NSA intercepts millions of communications made or received by people inside the United States and uses powerful computers to scan their contents for particular names, numbers, words, or phrases.

53. Additionally, the NSA collects and analyzes a vast amount of communications traffic data to identify persons whose communications patterns the government believes may link them, even if indirectly, to investigatory targets.

54. The NSA has accomplished its massive surveillance operation by arranging with some of the nation's largest telecommunications companies to gain direct access to the telephone

and Internet communications transmitted via those companies' domestic telecommunications facilities, and to those companies' records pertaining to the communications they transmit.

55. Defendants have intercepted and continue to provide the government with direct access to all or a substantial number of the communications transmitted through its key domestic telecommunications facilities, including direct access to streams of domestic, international, and foreign telephone and Internet communications.

56. Since in or about October 2001, Defendants have disclosed and/or divulged the "call-detail records" of all or substantially all of their customers including Plaintiffs to the NSA, in violation of federal law, as more particularly set forth below.

57. Defendants have, since in or about October 2001, been disclosing to the NSA "individually identifiable customer proprietary network information" belonging to all or substantially all of their customers including Plaintiffs, in violation of federal law, as more particularly set forth below.

58. Defendants have disclosed and continue to disclose and/or provide the government with direct access to its databases of stored telephone records, which are updated with new information in real time or near-real time.

59. Defendants have provided at all relevant times and continue to provide computer or storage processing services to the public by means of wire, radio, electromagnetic, photo-optical, or photo-electronic facilities for the transmission of wire or electronic communications, and/or by means of computer facilities or related electronic equipment for the electronic storage of such communications.

60. Defendants have knowingly authorized, and continue to knowingly authorize, NSA and affiliated governmental agencies to install and use, or have assisted government agents in installing or using, interception devices and pen registers and/or trap and trace devices on the

Defendants' domestic telecommunications facilities in connection with the Program.

61. The interception devices and pen registers and/or trap and trace devices capture, record or decode the various information pertaining to individual class member communications including dialing, routing, addressing and/or signaling information ("DRAS information") for all or a substantial number of all wire or electronic communications transferred through the Defendants' domestic telecommunications facilities where those devices have been installed.

62. Using these devices, government agents have acquired and are acquiring wire or electronic communications content and DRAS information directly via remote or local control of the device, and/or the Defendants have disclosed and are disclosing those communications and information to the government after interception, capture, recording, or decoding.

63. Defendants have knowingly authorized, and continue to knowingly authorize, NSA and affiliated governmental agencies to directly access through the installed devices all wireless telephone communications transmitted through the Defendants' domestic telecommunications infrastructure and facilities for use in the Program.

64. Defendants intercept, divulge, and/or disclose to the federal government the aforementioned telephone communications contents and records without probable cause. Furthermore, Defendants have not received and/or are not acting within the scope of, in accord with, or in good faith reliance on, any statutory authorization, legislative authorization, subpoena, court order or warrant, nor any certification, request, or other lawful authorization under Chapter 119, 121, or 206 of Title 18 or Chapter 36 of Title 50, purporting to authorize the aforementioned conduct.

65. To the best of Plaintiffs' counsel's knowledge, information, and belief, formed after reasonable inquiry under the circumstances and likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Defendants' interception,

divulgence and/or disclosure to the of the aforementioned telephone communications content and records is willful, in bad faith, and done in collusion with the government, for purposes of direct or indirect commercial advantage or private financial gain, and a failure to cooperate might have jeopardized their ability to obtain lucrative government contracts.

66. Defendants did not disclose to its customers, including Plaintiffs, that it was providing the aforementioned telephone contents and records to the federal government. Thus, Defendants' customers, including Plaintiffs, had no opportunity to, and did not, consent to the disclosure of their telephone contents and records.

67. The telephone contents and records intercepted and/or disclosed and/or divulged by the Defendants to the federal government pursuant to the program challenged herein were not divulged (a) pursuant to a law enforcement investigation concerning telemarketing fraud; (b) as a necessary incident to the rendition of services to customers; (c) to protect the rights or property of the Defendants; (d) based on a reasonable and/or good faith belief that an emergency involving danger of death or serious physical injury required disclosure without delay; (e) to the National Center for Missing and Exploited Children; or (f) to a non-governmental person or entity.

68. According to the "Investor Relations" page of its website, "BellSouth's wireless business consists of a 40 percent interest in Cingular Wireless. Cingular Wireless is a joint venture that was formed by combining the former domestic wireless operations of BellSouth and AT&T (formerly SBC). Cingular Wireless is operated independently from both parents, currently with a six member Board of Directors comprised of three directors from each parent. *BellSouth and AT&T share control of Cingular Wireless.*" (emphasis added)

69. In a press release dated March 5, 2005 announcing plans for a merger between AT&T Inc. and BellSouth Corporation, the companies stated that "the merger would also give business and government customers, including military and *national security agencies*, a reliable

U.S.-based provider of integrated, secure, high-quality and competitively priced services to meet their needs anywhere in the world." (emphasis added).

## CLASS ACTION ALLEGATIONS

70. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of themselves and a Class, defined as:

> All individuals and entities located in the United States that have been subscribers or customers of Defendant's wireless, wire and/or electronic communication services at any time since October 6, 2001. Excluded from the Class are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this litigation.

71. Plaintiff also brings this action, pursuant to Rule 23, on behalf of distinct state subclasses, including: (a) a State of Georgia Subclass, (b) a State of Hawaii Subclass, (c) a State of Indiana Subclass, (d) a State of New Jersey Subclass, and (e) a State of Texas Subclass.

72. The State of Georgia Subclass is defined is defined as:

> All individuals and entities located in Georgia and that have been subscribers or customers of Defendant's wireless, wire and/or electronic communication services at any time since October 6, 2001. Excluded from the Subclasses are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this litigation.

73. The State of Hawaii Subclass is defined is defined as:

> All individuals and entities located in Hawaii and that have been subscribers or customers of Defendant's wireless, wire and/or electronic communication services at any time since October 6, 2001. Excluded from the Subclasses are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this

litigation.

74. The State of Indiana Subclass is defined is defined as:

All individuals and entities located in Indiana and that have been subscribers or customers of Defendant's wireless, wire and/or electronic communication services at any time since October 6, 2001. Excluded from the Subclasses are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this litigation.

75. The State of New Jersey Subclass is defined is defined as:

All individuals and entities located in New Jersey and that have been subscribers or customers of Defendant's wireless, wire and/or electronic communication services at any time since October 6, 2001. Excluded from the Subclasses are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this litigation.

76. The State of Texas Subclass is defined is defined as:

All individuals and entities located in Texas and that have been subscribers or customers of Defendant's wireless, wire and/or electronic communication services at any time since October 6, 2001. Excluded from the Subclasses are Defendant, Defendant's predecessors, affiliates, parents, subsidiaries, officers and directors; all federal, state, and local governmental entities; any and all judges and justices assigned to hear any aspect of this litigation, their court staffs, their spouses, any minor children residing in their households, and any persons within the third degree of relationship to any judge or justice assigned to hear any aspect of this litigation.

77. Plaintiffs seek certification of the Class and the Subclasses under Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

78. The Class and Subclasses number in the millions, so that joinder of all Members is impractical.

79. The claims of Plaintiffs are typical of the claims of the Class and the Subclasses. Plaintiffs will fairly and adequately protect the interests of the Class and the Subclasses. Plaintiffs have no conflicts with any other Class or Subclass member and have retained competent counsel experienced in class actions, consumer, telecommunications, and civil rights litigation.

80. Common questions of law and fact exist, including:

a) Whether Defendants intercepted its customers' wire and electronic communications;

b) Whether Defendants disclosed and/or divulged its customers' telephone records and content to the federal government;

c) Whether the Defendants violated federal law in disclosing and/or divulging its customers' telephone records and content to the federal government;

d) Whether Plaintiffs and Class Members are entitled to damages; and

e) Whether Plaintiffs and Class Members are entitled to equitable relief.

81. These and other questions of law and fact are common to the Class and the Subclasses and predominate over any questions affecting only individual Members.

82. A class action is a superior method for the fair and efficient adjudication of the controversy described herein. A class action provides an efficient and manageable method to enforce the rights of Plaintiff and member of the Class and the Subclasses.

83. The prosecution of separate actions by individual Members of the Class and Subclasses would create a risk on inconsistent or varying adjudication, establishing incompatible standards of conduct for Defendant.

84. Defendant has acted, and refused to act, on grounds generally applicable to the Class and Subclasses, thereby making appropriate relief with respect to the Class and Subclasses as a whole.

**NECESSITY OF INJUNCTIVE RELIEF**

85. The named Plaintiffs and the Members of the Class and Subclasses will continue

in the future to use their telephones.

86. Unless this Court enjoins the Defendants' program challenged herein, the Defendants will continue to engage in the program.

87. The named Plaintiffs and the Members of the Class and Subclasses will suffer irreparable harm as a result of the continuation of the Defendants' program, and they have no adequate remedy at law.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of 18 U.S.C. §§ 2702(a)(1) and/or (a)(2)

88. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

89. In relevant part, 18 U.S.C. § 2702 provides that:

a. Prohibitions. Except as provided in subsection (b) or (c) –

(1) a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and

(2) a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service;

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing. . . .

90. Defendants knowingly divulged to one or more persons or entities the contents of Plaintiffs' and Class Members' communications while in electronic storage by a Defendant electronic communication service, and/or while carried or maintained by a Defendant remote computing service, in violation of 18 U.S.C. §§ 2702(a)(1) and/or (a)(2).

91. On information and belief, Defendants knowingly divulged to one or more persons or entities the contents of Plaintiffs' and Class Members' communications while in electronic storage by a Defendant electronic communication service, and/or while carried or maintained by a Defendant remote computing service, in violation of 18 U.S.C. §§ 2702(a)(1) and/or (a)(2).

92. Defendants did not notify Plaintiffs or Class Members of the divulgence of their communications, nor did Plaintiffs or Class Members consent to such.

93. Neither the NSA nor any other governmental entity has obtained a warrant authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(A).

94. Neither the NSA nor any other governmental entity has obtained a court order authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(B) and (d).

95. Neither the NSA nor any other governmental entity has issued or obtained an administrative subpoena authorized by a federal or state statute authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

96. Neither the NSA nor any other governmental entity has issued or obtained a federal or state grand jury or trial subpoena authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

97. Defendants have not been provided with a certification in writing by a person specified in 18 U.S.C. § 2518(7) or by the Attorney General of the United States meeting the requirements of 18 U.S.C. § 2511(2)(a)(ii)(B), *i.e.*, a certification that no warrant or court order authorizing the disclosures is required by law, and that all statutory requirements have been met.

98. The disclosures were not and are not authorized by any statute or legislation.

99. Defendants' disclosures in violation of 18 U.S.C. § 2702(a)(3) were and are knowing, intentional, and willful.

100. There is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described divulgence of Plaintiffs' and Class Members' communications while in electronic storage by Defendants' electronic communication service(s), and/or while carried or maintained by Defendants' remote computing service(s), and that likelihood represents a credible threat of immediate future harm.

101. Plaintiffs and Class Members have been and are aggrieved by Defendants' above-described divulgence of the contents of their communications.

102. Pursuant to 18 U.S.C. § 2707, which provides a civil action for any person aggrieved by knowing or intentional violation of 18 U.S.C. § 2702, Plaintiffs and Class Members seek such preliminary and other equitable or declaratory relief as may be appropriate; statutory damages of no less than $1,000 for each aggrieved Plaintiff or Class Member; punitive damages as the Court considers just; and reasonable attorneys' fees and other litigation costs reasonably incurred.

**SECOND CLAIM FOR RELIEF**
**Violation of 18 U.S.C. § 2702(a)(3)**

103. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

104. In relevant part, 18 U.S.C. § 2702 provides that:

a. Prohibitions. Except as provided in subsection . . . (c)

> (3) a provider of . . . electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

105. Defendants' telephone services are "electronic communication service[s]," as that term is defined in 18 U.S.C. § 2510(15), provided to the public, including Plaintiffs and Class Members.

106. Defendants violated 18 U.S.C. § 2702(a)(3) by knowingly and intentionally divulging to the federal government records or other information pertaining to subscribers or customers of the Defendants' remote computing and electronic services.

107. Defendants' challenged program of disclosing telephone records to the federal government does not fall within any of the statutory exceptions or immunities set forth in 18 U.S.C. §§ 2702(c), 2703(c), or 2703(e).

108. Neither the NSA nor any other governmental entity has obtained a warrant authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(A).

109. Neither the NSA nor any other governmental entity has obtained a court order authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(B) and (d).

110. Neither the NSA nor any other governmental entity has issued or obtained an administrative subpoena authorized by a federal or state statute authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

111. Neither the NSA nor any other governmental entity has issued or obtained a federal or state grand jury or trial subpoena authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

112. Defendant has not been provided with a certification in writing by a person specified in 18 U.S.C. § 2518(7) or by the Attorney General of the United States meeting the requirements of 18 U.S.C. § 2511(2)(a)(ii)(B), *i.e.*, a certification that no warrant or court order authorizing the disclosures is required by law and that all statutory requirements have been met.

113. The disclosures were not and are not authorized by any statute or legislation.

114. Whether or how the NSA, or any other governmental entity, actually used the records after they were divulged is irrelevant to whether Defendants violated 18 U.S.C. § 2702(a)(3).

115. Plaintiffs and their Class are aggrieved by the Defendants' knowing and intentional past disclosure and/or imminent future disclosure of their records to the federal government. Accordingly, plaintiffs may challenge this violation of 18 U.S.C. § 2702(a)(3) pursuant to the cause of action created by 18 U.S.C. § 2707(a).

**THIRD CLAIM FOR RELIEF**
**Violation of 18 U.S.C. §§ 2511(1)(a), (1)(c), (1)(d), and (3)(a)**

116. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

117. In relevant part, 18 U.S.C. § 2511 provides that:

> (1) Except as otherwise specifically provided in this chapter, any person who – (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication. . . . (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; (d) intentionally uses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection. . . . (3)(a) Except as provided in paragraph (b) of this subsection, a

> person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

118. Defendants violated 18 U.S.C. §§ 2511(1)(a), (1)(c), (1)(d), and (3)(a) by intentionally intercepting and disclosing to the federal government the contents of telephone calls of the Defendants' customers.

119. Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using, or endeavoring to use, the contents of Plaintiffs' and Class Members' wire or electronic communications, while knowing or having reason to know that the information was obtained through the interception of wire or electronic communications.

120. Defendants' challenged program of intercepting and disclosing the contents of telephone calls to the federal government does not fall within any of the statutory exceptions or immunities set forth in 18 U.S.C. §§ 2511(2), 2511(3)(b), or 2520(d). Defendants acted on bad faith and/or acted without a facially valid court order or certification.

121. Plaintiffs and their Class are aggrieved by the Defendants' intentional past and/or imminent future interception and disclosure of telephone call contents to the federal government. Accordingly, Plaintiffs may challenge this violation of 18 U.S.C. §§ 2511(1)(a), (1)(c), (1)(d) and (3)(a) pursuant to the cause of action created by 18 U.S.C. § 2520(a).

## FOURTH CLAIM FOR RELIEF
## Violation of 47 U.S.C. § 605

122. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

123. In relevant part, 47 U.S.C. § 605 provides that:

> (a) Practices prohibited – Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence . . . thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.

124. Defendants received, assisted in receiving, transmitted, or assisted in transmitting, Plaintiff's and Class Members' interstate communications by wire or radio.

125. Defendants violated 47 U.S.C. § 605 by divulging or publishing the "existence" of Plaintiffs' and Class Members' communications to the federal government by means other than through authorized channels of transmission or reception. Defendants' disclosure and publication of the existence of Plaintiffs' and Class Members' communications was not authorized by any provision of 18 U.S.C. §§ 2510-2522.

126. Defendants' disclosure and publication of the existence of Plaintiffs' and Class Members' communications was willful and for purposes of direct or indirect commercial advantage or private financial gain as they were paid for their cooperation, and a failure to cooperate might have jeopardized their ability to obtain lucrative government contracts.

127. Defendants failed to notify Plaintiff or Class Members of Defendants' disclosure and/or publication of the existence of Plaintiffs' and Class Members' communications nor did Plaintiffs or Class Members consent to such disclosure and publication.

128. Pursuant to 47 U.S.C. § 605(e)(3), Plaintiffs and Class Members seek:

a. A declaration that the disclosures are in violation of 47 U.S.C. § 605(a);

b. A preliminary injunction restraining Defendants from continuing to make such unlawful disclosures;

c. A permanent injunction restraining Defendants from continuing to make such unlawful disclosures;

d. Statutory damages of not less than $1,000 or more than $10,000 for each violation, plus, in the Court's discretion, an increase in the statutory damages of up to $100,000 for each violation; and

e. Reasonable attorneys' fees and reasonable costs of this litigation.

**FIFTH CLAIM FOR RELIEF**
**Violation of 50 U.S.C. § 1809**

129. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

130. In relevant part, 50 U.S.C. §1809 provides that:

> (a) Prohibited activities – A person is guilty of an offense if he intentionally – (1) engages in electronic surveillance under color of law except as authorized by statute; or (2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by statute.

131. In relevant part 50 U.S.C. §1801 provides that:

> (f) "Electronic surveillance" means – (1) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire or radio communication sent by or intended to be received by a particular, known United States person who is in the United States, if the contents are acquired by intentionally targeting that United States person, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes; (2) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire communication to or from a person in the United States, without the consent of any party thereto, if such acquisition occurs in the United States, but does not include the acquisition of those communications of computer trespassers that would be permissible under section 2511 (2)(i) of Title 18; (3) the intentional acquisition by an electronic, mechanical, or other surveillance device of the contents of any radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, and if both the sender and all intended recipients are located within the United States; or (4) the installation or use of an electronic, mechanical, or other surveillance device in the United States for monitoring to acquire information, other than from a wire or radio communication,

> under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes.

132. Defendants have intentionally acquired by means of a surveillance device, the contents of one or more wire communications to or from Plaintiffs and Class Members, or other information in which Plaintiffs or Class Members have a reasonable expectation of privacy, without the consent of any party thereto, and such acquisition occurred in the United States.

133. By the acts alleged herein, Defendants have intentionally engaged in electronic surveillance (as defined by 50 U.S. C. §1801(f)) under color of law but which is not authorized by any statute, and the Defendants have intentionally subjected Plaintiffs and Class Members to such electronic surveillance, in violation of 50 U.S.C. § 1809.

134. Additionally, or in the alternative, by the acts alleged herein Defendants have intentionally disclosed or used information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by statute.

135. Defendants did not notify Plaintiffs or Class Members of the above-described electronic surveillance, disclosure, and/or use, nor did Plaintiffs or Class Members consent to such.

136. Defendants' challenged program of electronic surveillance does not fall within any of the statutory exceptions or immunities set forth in 50 U.S.C. § 1809(b).

137. There is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described electronic surveillance, disclosure, and/or use of Plaintiffs' and Class Members' wire communications described herein, and that likelihood represents a credible threat of immediate future harm.

138. Plaintiffs and Class Members have been and are aggrieved by the Defendants' electronic surveillance, disclosure, and/or use of their wire communications.

139. Pursuant to 50 U.S.C. § 1810, which provides a civil action for any person who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of 50 U.S.C. §1809, Plaintiffs and Class Members seek equitable and declaratory relief; statutory damages for each Plaintiff and Class Member of whichever is the greater of $100 a day for each day of violation or $1,000; punitive damages as appropriate; and reasonable attorneys' fees and other litigation costs reasonably incurred.

**SIXTH CLAIM FOR RELIEF**
**Violation of the First and Fourth**
**Amendments to the United States Constitution**

140. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

141. Plaintiffs and Class Members have a reasonable expectation of privacy in their communications, contents of communications, and/or records pertaining to their communications transmitted, collected, and/or stored by Defendants, which was violated by Defendants' above-described actions as agents of the government, which constitute a search and seizure of Plaintiffs' and Class Members' communications and records.

142. Plaintiffs and Class Members use the Defendants' services to speak or receive speech anonymously and to associate privately.

143. The above-described acts of interception, disclosure, divulgence and/or use of Plaintiffs' and Class Members' communications, contents of communications, and records pertaining to their communications occurred without judicial or other lawful authorization, probable cause, and/or individualized suspicion.

144. At all relevant times, the federal government instigated, directed, and/or tacitly approved all of the above-described acts of the Defendants.

145. At all relevant times, the federal government knew of and/or acquiesced in all of the above-described acts of the Defendants and failed to protect the First and Fourth Amendment rights of the Plaintiffs and Class Members by obtaining judicial authorization.

146. In performing the acts alleged herein, the Defendants had, at all relevant times, a primary or significant intent to assist or purpose of assisting the government in carrying out the Defendants' program and/or other government investigations, rather than to protect its own property or rights.

147. By the acts alleged herein, Defendants acted as instruments or agents of the government, and thereby violated Plaintiffs' and Class Members' reasonable expectations of privacy and denied Plaintiffs and Class Members their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States, and additionally violated Plaintiffs' and Class Members' rights to speak and receive speech anonymously and associate privately under the First Amendment.

148. By the acts alleged herein, Defendants' conduct proximately caused harm to Plaintiffs and Class Members.

149. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiffs' and Class Members' constitutional rights.

**SEVENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Rabbi Steven Lebow, Steven Bruning, Cathy Bruning, and Brian Bradley and the Georgia State Subclass)**
**Electronic Surveillance: Unlawful Eavesdropping or Surveillance:**
**Georgia Code 16-11-62, *et seq***

150. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

151. Plaintiffs Rabbi Steven Lebow, Steven Bruning, Cathy Bruning, and Brian Bradley ("Georgia Plaintiffs") and Georgia Subclass Members (collectively "Georgia Plaintiffs

and Subclass Members") are permitted to maintain a civil action against Defendants pursuant to Georgia Code § 16-11-62(4)(6)(7), which prohibits Defendants from intentionally and secretly intercepting Georgia Plaintiffs' and Subclass Members' private communications by the use of any device, instrument, or apparatus, and/or giving or distributing such communications, without legal authority, to any person or entity.

152. Defendants were not provided with any proper legal authority permitting Defendants to undertake the activities complained of above.

153. By the acts alleged herein, Defendants have intentionally and secretly intercepted Georgia Plaintiffs' and Subclass Members' private communications through the use of a surveillance device and/or have provided the contents of such communications to third parties without proper legal authority.

154. Defendants did not notify Georgia Plaintiffs or Subclass Members of either Defendants' interception of Georgia Plaintiffs' or Subclass Members' communications and/or Defendants' provision of the contents of such communications to third parties nor did Georgia Plaintiffs or Subclass Members consent to such.

155. On information and belief, there is a strong likelihood that Defendants are now engaging in, and will continue to intercept Georgia Plaintiffs' and Subclass Members' communications, and will continue to provide the contents of such communications to third parties and that likelihood represents a credible threat of immediate future harm.

156. Georgia Plaintiffs and Subclass Members have been and are aggrieved by Defendants' above-described interception of Georgia Plaintiffs' or Subclass Members' communications and/or Defendants' provision of the contents of such communications to third parties.

157. Pursuant to Georgia Code § 6-11-62, Georgia Plaintiffs and Subclass Members are entitled to obtain against Defendants damages and such relief as the Court considers just.

**EIGHTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Anakalia Kaluna and Kim Coco Iwamoto and the Hawaii State Subclass)**
**Violations of HRS § 803-48**

158. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

159. Plaintiffs Anakalia Kaluna and Kim Coco Iwamoto ("Hawaii Plaintiffs") and Hawaii Subclass Members (collectively "Hawaii Plaintiffs and Subclass Members") are permitted to maintain a civil action against Defendants pursuant to HRS 803-48 for Defendants' wrongful disclosure and/or intentional use of Hawaii Plaintiffs' and Subclass Members' wire and/or electronic communications.

160. Defendants were not provided with any signed court order, appropriate certification, or other proper legal authority to undertake the activities complained of above and Defendants nevertheless knowingly authorized the NSA to undertake such activities.

161. Defendants have intentionally and secretly intercepted Hawaii Plaintiffs' and Subclass Members' private communications through the use of a surveillance device and/or have provided the contents of such communications to third parties without proper legal authority.

162. Defendants did not notify Hawaii Plaintiffs or Subclass Members of either Defendants' interception of Hawaii Plaintiffs' or Subclass Members' communications and/or Defendants' provision of the contents of such communications to third parties nor did Hawaii Plaintiffs or Subclass Members consent to such.

163. There is a strong likelihood that Defendants are now engaging in, and will continue to intercept Hawaii Plaintiffs' and Subclass Members' communications, and will

continue to provide the contents of such communications to third parties and that likelihood represents a credible that of immediate future harm.

164. Hawaii Plaintiffs and Subclass Members have been and are aggrieved by Defendants' above-described interception of Hawaii Plaintiffs' or Subclass Members' communications and/or Defendants' provision of the contents of such communications to third parties.

165. Pursuant to HRS § 803-48, Hawaii Plaintiffs and Subclass Members are entitled to obtain against Defendants an injunction by a court of record prohibiting further eavesdropping, all actual damages against the person who eavesdrops or $100 per day for each day of violation or $10,000, reasonable attorneys' fees and other litigation costs, and punitive damages as determined by the court of by a jury.

**NINTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Anakalia Kaluna and Kim Coco Iwamoto and the Hawaii State Subclass)**
**Deceptive Acts and Practices by Defendants**

166. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

167. The subject matter of the transaction between the Hawaii Plaintiffs and Subclass Members and the Defendants meets the definition of "Commodity" as that term is defined in HRS § 408-2 as it includes, "but is not restricted to, goods, merchandise, produce, choses in action, and any other article of commerce. It also includes trade or business in service trades, transportation, insurance, banking, lending, advertising, bonding, and any other business."

168. Hawaii Plaintiffs and Subclass Members are consumers as that term is defined at HRS § 408-2.

169. Defendants were a "person" or "persons" as that term is defined at HRS § 408-2.

170. The actions of Defendants as described above were unfair and/or deceptive acts or practices as these terms are defined at HRS § 408-2.

171. The actions of Defendants harmed Hawaii Plaintiffs and Subclass Members in an amount not capable of determination as of the date of filing of this Complaint.

**TENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Anakalia Kaluna and Kim Coco Iwamoto and the Hawaii State Subclass)**
**The Constitution of the State of Hawaii, Article I, Section 6**

172. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

173. The Constitution of the State of Hawaii, Article I, Section 6 states "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest the legislature shall take affirmative steps to implement this right."

174. The actions of the Defendants violate Hawaii Plaintiffs' and Subclass Members' rights under this Section.

**ELEVENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiff Sam Goldstein Insurance Agency, Inc. and the Indiana State Subclass)**
**Wrongful Interception, Disclosure and/or Use of Plaintiffs' and Indiana Class Members' Wire and/or Electronic Communications**

175. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

176. Plaintiff Sam Goldstein Insurance Agency, Inc. ("Indiana Plaintiff") and Indiana Subclass Members (collectively "Indiana Plaintiff and Subclass Members") are permitted to maintain a civil action against Defendants pursuant to IC 35-33.5-5-4 *et seq* for Defendants' wrongful interception, disclosure and/or intentional use of Indiana Plaintiff's and Subclass Members' wire and/or electronic communications.

177. Defendants were not provided with any signed court order, appropriate certification, or other proper legal authority to undertake the activities complained of above and Defendants nevertheless knowingly authorized the NSA to undertake such activities.

178. By the acts alleged herein, Defendants have intentionally and secretly intercepted Indiana Plaintiff's and Subclass Members' private communications through the use of a surveillance device and/or have provided the contents of such communications to third parties without proper legal authority.

179. Defendants did not notify Indiana Plaintiff or Subclass Members of either Defendants' interception of Indiana Plaintiff's or Subclass Members' communications and/or Defendants' provision of the contents of such communications to third parties, nor did Indiana Plaintiff or Subclass Members consent to such.

180. There is a strong likelihood that Defendants are now engaging in, and will continue to intercept Indiana Plaintiff's and Subclass Members' communications, and will continue to provide the contents of such communications to third parties, and that likelihood represents a credible threat of immediate future harm.

181. Indiana Plaintiff and Subclass Members have been and are aggrieved by Defendants' above-described interception of Indiana Plaintiff's or Subclass Members' communications and/or Defendants' provision of the contents of such communications to third parties.

182. Pursuant to IC 35-33.5-5-4, Indiana Plaintiff and Subclass Members are entitled to obtain against Defendants damages which are the greater of: (a) actual damages; (b) liquidated damages computed at a rate of one hundred dollars ($100) each day for each day of violation; or (c) $1000.

183. Also pursuant to IC 35-33.5-5-4, Indiana Plaintiff and Class Members are entitled to court costs, punitive damages (when determined to be appropriate by the court) and reasonable attorneys' fees.

**TWELFTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Paul Robilotti and Alan Toly Sapoznik and the New Jersey State Subclass)**
**Violations of New Jersey Wiretap Act, N.J.S.A. 2A:156A-1 *et seq***

184. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

185. At all relevant times, Defendants purposefully intercepted, endeavored to intercept, and/or procured other persons to intercept or endeavor to intercept the wire, electronic, or oral communication of the Plaintiffs Paul Robilotti and Alan Toly Sapoznik ("New Jersey Plaintiffs") and New Jersey Subclass Members (collectively "New Jersey Plaintiffs and Subclass Members") contrary to N.J.S.A. 2A:156A-3(a).

186. At all relevant times, Defendants purposefully disclosed, and/or endeavored to disclose to other persons, the contents of the New Jersey Plaintiffs' and Subclass Members' wire, electronic or oral communication or evidence derived therefrom knowing, or having reason to know, that the information was obtained through the interception of a wire, electronic, or oral communication contrary to N.J.S.A. 2A: 156A-3(b).

187. At all relevant times, Defendants purposefully used, and/or endeavored to use, the contents of the New Jersey Plaintiffs' and Subclass Members' wire, electronic, or oral communication or evidence derived therefrom knowing, or having reason to know, that the information was obtained through the interception of a wire, electronic, or oral communication contrary to N.J.S.A. 2A:156A-3(c).

188. New Jersey Plaintiffs and Subclass Members are permitted to maintain a civil action against Defendants pursuant to N.J.S.A. 2A: 156A-24 for Defendants' unlawful interception, endeavor to intercept, procurement of any other person to intercept, or endeavor to intercept, disclosure, or endeavor to disclose, to any other person, use, or endeavor to use any wire, electronic, or oral, communication, or evidence derived therefrom and/or intentional use of New Jersey Plaintiffs' and Subclass Members' wire and/or electronic communications in violation of the aforesaid provisions of the New Jersey Wiretap Act.

189. The New Jersey Wiretap Act proscribes the intentional interception, disclosure, use and divulgence of New Jersey Plaintiffs' and Subclass Members' wire or electronic communications absent a signed order or warrant from a court of competent jurisdiction.

190. At all relevant times, Defendants were not provided with any signed court order or warrant to undertake the activities complained of above, and Defendants nevertheless knowingly authorized the NSA, its servants, agents, and/or employees to undertake such activities.

191. By the acts alleged herein, Defendants have intentionally divulged the contents of New Jersey Plaintiffs' and Subclass Members' wire or electronic communications to persons or entities other than the addressee or intended recipient, or the agents of same, or other providers of wire or electronic communication service, while those communications were in transmission on Defendants' electronic communications services, in violation of the New Jersey Wiretap Act.

192. Defendants did not notify New Jersey Plaintiffs or Subclass Members of the above-described intentional interception, disclosure, divulgence, and/or use of New Jersey Plaintiffs' or Subclass Members' wire or electronic communications, nor did New Jersey Plaintiffs or Subclass Members consent to such.

193. New Jersey Plaintiffs and Subclass Members have been, and are aggrieved by, Defendants' intentional interception, disclosure, divulgence, and/or use of their wire or electronic

communications in violation of all applicable provisions of the New Jersey Wiretap Act.

194. N.J.S.A. 2A:156A-27(a) prohibits the knowing access, without authorization, of a facility through which an electronic communication service is provided, or exceeds an authorization to access that facility, and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while that communication is in electronic storage.

195. At all relevant times and by their acts as alleged herein, the Defendants have violated N.J.S.A. 2A: 156A-27(a).

196. N.J.S.A. 2A:156A-27(b) prohibits a person or entity for the purpose of commercial gain from the knowing access, without authorization, or malicious destruction or damage of a facility through which an electronic communication service is provided, or exceeds an authorization to access that facility, and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while that communication is in electronic storage.

197. New Jersey Plaintiffs and Subclass Members are permitted to maintain a civil action against Defendants pursuant to N.J.S.A. 2A: 156A-32 for Defendants' knowing divulgence of the contents of New Jersey Plaintiffs and Subclass Members' communications while in electronic storage by Defendants and/or carried or maintained by Defendants in connection with their remote computing service, all in violation of N.J.S.A. 2A:156A-28.

198. New Jersey Plaintiffs and Subclass Members are permitted to maintain a civil action against Defendants pursuant to N.J.S.A. 2A:156A-32 for Defendants' violations of N.J.S.A. 2A:156A-27 as set forth herein.

199. At all relevant times herein, Defendants by their conduct as alleged herein have violated, and continue to violate, the relevant provisions of the New Jersey Wiretap Act including, but not limited to, all those referenced herein.

200. There is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described intentional interception, disclosure, divulgence, and/or use of New Jersey Plaintiffs' and Subclass Members' wire or electronic communications and that likelihood represents a credible threat of immediate future harm.

201. Pursuant to N.J.S.A. 2A:156A-24, New Jersey Plaintiffs and Subclass Members are entitled to obtain against Defendants actual damages, but not less than liquid damages, computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher; punitive damages; reasonable attorneys' fee and other litigation costs reasonably incurred.

202. Pursuant to N.J.S.A. 2A: 156A-32, New Jersey Plaintiffs and Subclass Members are entitled to obtain against Defendants preliminary and other equitable and declaratory relief as may be appropriate; actual damages suffered by the New Jersey Plaintiffs and Subclass Members and any profits made by the Defendants as a result of the violation, but not less than $1,000, reasonable attorneys' fees and other litigation costs reasonably incurred.

## THIRTEENTH CLAIM FOR RELIEF
## (On Behalf of Plaintiffs Paul Robilotti and Alan Toly Sapoznik and the New Jersey State Subclass)
## Violations of New Jersey Constitution

203. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

204. New Jersey Plaintiffs and Subclass Members are permitted to maintain a civil action against the Defendants for their wrongful interception, disclosure and use of New Jersey Plaintiffs and Subclass Members' wire and electronic communications and/or any other private/confidential information in violation of the New Jersey Constitution, including, but not limited to, Article I.

205. At all times relevant herein, Defendants were subject to and New Jersey Plaintiffs and Subclass Members were protected under the New Jersey Constitution.

206. More specifically, and not by way of limitation, New Jersey Plaintiffs and Subclass Members were guaranteed the following rights under the New Jersey Constitution:

a. the right to acquire, possess, and protect property;

b. the right to be secure from unreasonable searches and seizures; and,

c. the right to privacy.

207. At all relevant times herein, Defendants were not provided with any court order or warrant to undertake the activities complained of and Defendants nevertheless knowingly and voluntarily authorized, permitted, allowed, assisted, aided, and abetted the NSA to engage in such activities as set forth herein.

208. By their actions as set forth herein, the Defendants are liable in tort for their violations of the New Jersey Plaintiffs' and Subclass Members' aforesaid rights as guaranteed and protected by the New Jersey Constitution. .

**FOURTEENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Paul Robilotti and Alan Toly Sapoznik and the New Jersey State Subclass)**
**Malicious Misrepresentation**

209. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

210. At all times relevant herein, Defendants agreed to provide for a subscription fee, and New Jersey Plaintiffs and Subclass Members agreed to purchase from the Defendants various telecommunication and electronic communication services.

211. At all times relevant herein, Defendants acknowledged their duty under the law to protect the confidentiality of New Jersey Plaintiffs' and Subclass Members' telecommunications

service information, including, but not limited to, the type, technical arrangement, quantity, destination, and amount of use of telecommunication services. Despite Defendants' acknowledgment and continued false assurances, Defendants failed to comply with the terms and conditions of their subscriber agreements, notices, and the law in that Defendants knowingly, willfully, and voluntarily provided confidential, private, and protected information to unauthorized third parties as set forth herein.

212. At all relevant times, the New Jersey Plaintiffs and Subclass Members relied upon Defendants' misrepresentations of material facts that were made knowingly, without belief in its truth, or in reckless or careless disregard of the truth.

213. Defendants, upon information and belief, made these material misrepresentations with the purpose of inducing the New Jersey Plaintiffs and Subclass Members to rely upon and act upon the false representations.

214. By their actions as set forth herein, the Defendants are liable to the New Jersey Plaintiffs and Subclass Members for damages including, but not limited to, compensatory and punitive damages.

**FIFTEENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Paul Robilotti and Alan Toly Sapoznik and the New Jersey State Subclass)**
**Invasion of Privacy**

215. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

216. By their actions as set forth herein, Defendants invaded the privacy of the New Jersey Plaintiffs and Subclass Members.

217. As a result, Defendants are liable in tort to the New Jersey Plaintiffs and Subclass Members for compensatory and punitive damages.

**SIXTEENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Paul Robilotti and**
**Alan Toly Sapoznik and the New Jersey State Subclass)**
**Violations of the New Jersey Consumer Fraud Act**

218. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

219. Defendants have engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses, and/or misrepresentations, as specified above, in its interactions with New Jersey Plaintiffs and Subclass Members in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq* ("CFA").

220. Defendants knowingly and with intent concealed, suppressed, or omitted material facts, as specified above, in its interactions with New Jersey Plaintiffs and Subclass Members in violation of the CFA.

221. Defendant's violations of state and federal statues and regulations, as well as the New Jersey Constitutions and common law as set forth above, to New Jersey Plaintiffs and Subclass Members constitute misrepresentations, deceptive practices, and/or unconscionable business practices under the CFA.

222. Defendants violated the Federal Telecommunications Act by failing to safeguard the CPNI and other private/confidential information of New Jersey Plaintiffs and Subclass Members.

223. Defendants violated the Federal Telecommunications Act and other statutes and regulations by failing to provide proper notice and failing to obtain specific authorization from New Jersey Plaintiffs and Subclass Members prior to disclosing their CPNI to the NSA and/or other government entities.

224. The violations of the Federal Telecommunications Act and other statutes and

regulations, as well as the New Jersey Constitution and common law, constitute unconscionable commercial practices, deception, fraud, false promises, false pretenses, and/or misrepresentations in violation of the CFA.

225. New Jersey Plaintiffs and Subclass Members suffered an ascertainable loss as a result of Defendants' violations of the CFA,

226. As a result, New Jersey Plaintiffs and Subclass Members are entitled to the relief from Defendants as set forth in the CFA.

**SEVENTEENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Paul Robilotti and Alan Toly Sapoznik and the New Jersey State Subclass)**
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA)**

227. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

228. New Jersey Plaintiffs and Subclass Members fall within the definition of a consumer as defined in the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq.*

229. Defendants violated the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 11 56:12-14 *et seq.* Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written consumer warranty, notice or sign which included a provision that violated a clearly established right of New Jersey Plaintiffs and Subclass Members as established by state or federal law at the time the offer was made, the contract was signed, and the warranty was given.

230. Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written consumer warranty, notice or sign which included a provision that violated their clearly established responsibilities as established by state or federal law at the time the offer

was made, the contract was signed, and the warranty was given.

231. Defendants failed to provide notice and obtain authorizations to disclose the CPNI of New Jersey Plaintiffs and Subclass Members to the NSA and/or other governmental entities in violation of Defendants' clearly established responsibilities as established by State or Federal law.

232. Defendants' aforesaid failure to provide notice and obtain authorizations to disclose the CPNI and/or other private/confidential information of New Jersey Plaintiffs and Subclass Members in violation of Federal or State law is a direct violation of TCCWNA.

233. Defendants' violated of N.J.S.A. 2A:156A-27 and 28 which are clearly established rights of New Jersey Plaintiffs and Subclass Members.

234. Defendants' violations of N.J.S.A. 2A: 156A-27 and 28 -26C.2(a)3(1) are violations of TCCWNA.

235. Each of the aforesaid violations are individual and separate violations of the Truth-in-Consumer Contract, Warranty and Notice Act warranting a separate statutory award of damages for each violation and all other relief as permitted by law.

**EIGHTEENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Paul Robilotti and Alan Toly Sapoznik and the New Jersey State Subclass)**
**Violations of 2C:21-7 (Deceptive Business Practices) and 2C:21-17.3 (Prohibiting the Fraudulent Use and Distribution of Items Containing the Personal Information of Another)**

236. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

237. At all relevant times and by their actions as set forth herein, Defendants, through their promotional literature and/or written notices and/or other written material provided to the public and/or the New Jersey Plaintiffs and Subclass Members, represented that the personal, private and confidential records and information of the New Jersey Plaintiffs and Subclass Members as set forth herein would be protected from disclosure to and use by governmental

authorities without appropriate consent and/or authorization and/or legal authority while at all relevant times Defendants knew such representations to be false.

238. At all relevant times, the New Jersey Plaintiffs and Subclass Members subscribed to and continued to utilize Defendants' various telecommunications services unaware that the Defendants were acting contrary to Defendants' aforesaid representations.

239. At all relevant times and by their actions as set forth herein, Defendants violated one or more of the provisions of N.J.S.A. 2C:21-7 (Deceptive Business Practices) which prohibits, *inter alia*, a person from making a false or misleading statement in any advertisement addressed to the public or to a substantial segment thereof for the purpose of promoting the sale of property or services and/or from making any false or misleading written statement for the purpose of obtaining property.

240. At all relevant times and by their actions as set forth herein, Defendants violated one or more of the provisions of N.J.S.A. 2C:21-17.3 which prohibits, *inter alia*, the fraudulent use and/or distribution of items containing personal identifying information of another. Defendants knowingly used and/or distributed one or more items containing personal identifying information pertaining to the New Jersey Plaintiffs and Subclass Members to the NSA and/or its affiliates without the authorization of the New Jersey Plaintiffs and Subclass Members. With the Defendants' knowledge, Defendants were perpetrating a fraud upon the New Jersey Plaintiffs and Subclass Members who the Defendants knew were unaware of and unsuspecting of such illegal activities.

241. As a result of the Defendants' aforesaid violations of law, pursuant to N.J.S.A. 2C:21-17.4, Defendants are liable to the New Jersey Plaintiffs and Subclass Members for all damages and relief allowable by law including, but not necessarily limited to, appropriate legal and equitable relief, an award of damages in the amount of three times the value of all costs

incurred by the New Jersey Plaintiffs and Subclass Members, attorneys' fees, court costs and any out-of-pocket losses, all such damages in addition to, and not in lieu of any other action, injunctive relief or any other remedy available at law.

**NINETEENTH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs Paul Robilotti and**
**Alan Toly Sapoznik and the New Jersey State Subclass)**
**Civil Remedies Available Pursuant to N.J.S.A. 2C:41-4 (N.J. Civil RICO)**

242. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

243. At all relevant times herein and by their conduct as aforesaid, the Defendants each committed two or more predicate criminal acts against the New Jersey Plaintiffs and Subclass Members, to wit, by violating one or more provisions of N.J.S.A. 2C:21-7 and/or N.J.S.A. 2C:21-17.3, all in violation of N.J.S.A. 2C:41-2 (prohibited acts pursuant to N.J. RICO).

244. As a result of the Defendants' aforesaid violations of law, the Defendants are liable to the New Jersey Plaintiffs and Subclass Members for all damages and relief allowable pursuant to N.J.S.A. 2C:41-4 (NJ Civil RICO).

**TWENTIETH CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs James C. Harrington, Richard A. Grigg,**
**Louis Black, the *Austin Chronicle*, Michael Kentor and the Texas State Subclass)**
**Unauthorized Use of Pen Registers and Trap & Trace Devices**

245. Plaintiffs incorporate all of the allegations contained in the preceding paragraphs of this Complaint, as if set forth fully herein.

246. Section 16.03 of the Texas Penal Code makes it a crime if a person "knowingly installs or uses a pen register or trap and trace device to record or decode electronic or other impulses for the purpose of identifying telephone numbers dialed or otherwise transmitted on a telephone line." TEX. PENAL CODE § 16.03 (2005). Defendants and their agents violated this

provision by disclosing telephone numbers dialed and other call information to the Government.

247. Section 16(a) of Article 18.20 of the Texas Code of Criminal Procedure provides a private cause of action for customers aggrieved by a violation of Chapter 16 of the Penal Code. Plaintiffs James C. Harrington, Richard A. Grigg, Louis Black, the *Austin Chronicle*, and Michael Kentor ("Texas Plaintiffs") and Texas Subclass Members (collectively "Texas Plaintiffs and Subclass Members") seek damages or $100 per day per violation, punitive damages, and reasonable attorneys' fees and costs. TEX. CODE CRIM. PROC. art. 18.20, § 16(a) (2005).

248. Defendants' acts and practices are unlawful because, as described above, they violate 47 U.S.C. § 222, 18 U.S.C. §§ 2702(a)(1), (a)(2), and (a)(3), 18 U.S.C. §§ 2511(1)(a), (1)(c), (1)(d), and (3)(a), 40 U.S.C. § 1809, and 47 U.S.C. § 605.

249. Defendants' acts and practices are also unlawful because they violate 18 U.S.C. § 3121. In relevant part, 18 U.S.C. § 3121 provides that:

> In general – Except as provided in this section, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title or under the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 *et seq*).

250. As defined by 18 U.S.C. § 3127:

> (3) the term "pen register" means a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device or process used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business;
>
> (4) the term "trap and trace device" means a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a

> wire or electronic communication, provided, however, that such information shall not include the contents of any communication . . . .

251. Defendants have installed or used pen registers and/or trap and trace devices without first obtaining a valid court order under 18 U.S.C. § 3123 or a subpoena.

252. The pen registers and/or trap and trace devices installed and used by Defendants have captured, recorded, or decoded, and continue to capture, record or decode, dialing, routing, addressing or signaling information pertaining to Texas Plaintiffs' and Subclass Members' telephone communications.

253. Defendants did not notify Texas Plaintiffs and Subclass Members of the installation or use of pen registers and/or trap and trace devices. Texas Plaintiffs and Subclass Members have not consented to Defendant's installation or use of pen registers and/or trap and trace devices.

254. Defendants are telecommunications carriers that obtain and have obtained customer proprietary network information by virtue of its provision of telecommunications service.

255. Defendants used and/or disclosed to the NSA, a government entity, individually identifiable customer proprietary network information pertaining to Texas Plaintiffs and Subclass Members.

256. Defendants failed to notify Texas Plaintiffs and Subclass Members of the disclosure and/or divulgence of their personally identifiable customer proprietary network information to the NSA, nor did Texas Plaintiffs and Subclass Members consent to such.

**TWENTY-FIRST CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs James C. Harrington, Richard A. Grigg, Louis Black, the *Austin Chronicle*, Michael Kentor and the Texas State Subclass)**
**Invasion of Privacy**

257. Plaintiffs hereby reaffirm and reallege the allegations in the previous paragraphs.

258. Defendants intentionally intruded on Texas Plaintiffs' and Subclass Members' solitude, seclusion, or private affairs by disclosing call records to the Government. Such disclosure is highly offensive to a reasonable person and is an actionable invasion of privacy under Texas law. The intrusion is particularly egregious for Texas Plaintiffs James C. Harrington and Richard A. Grigg who are attorneys because it amounts to disclosure of facts pertaining to attorney-client communications and other communications in preparation of litigation or criminal trial. Similarly, the intrusion is particularly egregious for Texas Plaintiffs Louis Black and the *Austin Chronicle* because it infringes on these plaintiffs' confidential relationship with sources and informants. Texas Plaintiffs and Subclass Members thus seek damages and court costs.

**TWENTY-SECOND CLAIM FOR RELIEF**
**On Behalf of the Class Members for Violations of**
**Various State Privacy Statutes**

259. Plaintiffs incorporate by reference the paragraphs above and further state that Defendants violate various state privacy statutes as set out below by one or more of the following acts without justification: intercepting wire or oral communications; eavesdropping on communications; disclosing communications; recording conversations; wiretapping; using or installing a pen register; and/or using or installing a trap and trace device.

260. The acts and practices of Defendants directly, foreseeably, and proximately cause damages and injury to Plaintiffs and the Class.

261. The actions of Defendants are in violation of the following state statutes:

a. Ala. Code §§ 13A-11-30; 13A-11-31 (2006)
b. Alaska Stat. § 42.20.310 (2005)
c. Ariz. Rev. Stat. Ann. § 13-3005 (2006)
d. Ark. Code Ann. § 5-60-120 (2005)
e. Cal. Penal Code § 630 *et seq.* (2006)
f. Colo. Rev. Stat. §§ 18-9-301, 18-9-303 (2006)
g. Conn. Gen. Stat. § 52-570d (2006)
h. Del. Code Ann. Tit. 11 § 2402 (2005)
i. D.C. Code §§ 23-541, 23-542 (2006)
j. Fla. Stat. §§ 934.01 to .03 (2005)

k. Ga. Code Ann. §§ 16-11-62, 16-11-66 (2005)
l. Haw. Rev. Stat. § 803-42 (2005)
m. Idaho code Ann. § 18-6702 (2005)
n. 720 Ill. Comp. Stat. 5/14-1, -2 (2006)
o. Ind. Code § 35-33.5-1 *et seq.* (2005)
p. Iowa Code § 727.8 (2005)
q. Kan. Stat. Ann. §§ 21-4001, 21-4002 (2004)
r. Ky. Rev. Stat. Ann. §§ 526.010-.020 (2005)
s. La. Rev. Stat. Ann. § 15:1303 (2005)
t. Me. Rev. Stat. Ann. Tit. 15, §§ 709-710 (2006)
u. Md. Code Ann. Cts. & Jud. Proc. § 10-402 (2006)
v. Mass. Gen. Laws ch. 727, § 99 (2006)
w. Mich. Comp. Laws § 750.539c (2006)
x. Minn. Stat. §§ 626A.01, .02 (2005)
y. Miss. Code Ann. § 41-29-501 *et seq.* (2006)
z. Mo. Rev. Stat. § 542.402 (2006)
aa. Mont. Code Ann. § 45-8-213 (2006)
bb. Neb. Rev. Stat. § 86-290 (2006)
cc. Nev. Rev. Stat 200.610-.620 (2006)
dd. N.H. Rev. Stat. Ann. §§ 570-A:1, -A:2 (2005)
ee. N.J. Stat. Ann. § 2A:256A-1 *et seq.* (2006)
ff. N.M. Stat. § 30-12-1 (2006)
gg. N.Y. Penal Law §§ 250.00, .05 (2006)
hh. N.C. Gen. Stat. § 15A-287 (2006)
ii. N.D. Cent. Code § 12.1-15-02 (2006)
jj. Ohio Rev. Code Ann. § 2933.51 *et seq.* (2006)
kk. Okla. Stat. tit. 13, § 176.1 *et seq.* (2006)
ll. Or. Rev. Stat. §§ 165.540, .543 (2006)
mm. 18 Pa. Cons. Stat. § 5701 *et seq.* (2005)
nn. R.I. Gen. Laws § 11-35-21 (2005)
oo. S.C. Code Ann. §§ 17-30-20, -30 (2005)
pp. S.D. Codified Laws §§ 23A-35A-1, 23A-35A-20 (2006)
qq. Tenn. Code Ann. § 29-13-601 (2006)
rr. Tex. Penal Code Ann. § 16.02 (2005)
ss. Utah Code Ann. § 77-23a-1 *et seq.* (2005)
tt. Va. Code Ann. §§ 19.2-61, -62 (2006)
uu. Wash. Rev. Code § 9.73.030 (2006)
vv. W. Va. Code § 62-1D-1 *et seq.* (2006)
ww. Wis. Stat. §§ 968.27, .31 (2005)
xx. Wyo. Stat. Ann. §§ 7-3-701, -702 (2005).

## TWENTY-THIRD CLAIM FOR RELIEF
## On Behalf of the Class Members for Violations of Various State Consumer Protection Statutes

262. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

263. Plaintiffs further state that Defendants violate state consumer protection statutes by divulging records or other information pertaining to subscribers and customers to a governmental entity, specifically, the NSA, without Class Members' knowledge or consent.

264. The unfair and deceptive trade acts and practices of Defendants directly, foreseeably, and proximately cause damages and injury to Plaintiffs and the Class.

265. The actions and failures to act of Defendants, including the false and misleading representations and omissions of material facts regarding the protection and use of Class Members' private information, constitute an unfair method and unfair and/or deceptive acts in violation of the following state consumer protection statutes:

a. Ala. Code § 8-19-1 *et seq.*;
b. Alaska Stat. § 45.50.471 *et seq.*;
c. Ariz. Rev. Stat. § 44-1522 *et seq.*;
d. Ark. Code § 4-88-101 *et seq.*;
e. Cal. Bus. & Prof. Code § 17200 *et seq.*;
f. Colo. Rev. Stat. § 6-1-105 *et seq.*;
g. Conn. Gen. Stat. § 42-110b *et seq.*;
h. 6 Del. Code § 2511 *et seq.*;
i. D.C. Code Ann. § 28-3901 *et seq.*;
j. Fla. Stat. § 501.201 *et seq.*;
k. Ga. Stat. § 10-1-392 *et seq.*;
l. Haw. Rev. Stat. § 480 *et seq.*;
m. Idaho Code § 48-601 *et seq.*;
n. 815 Ill. Comp. Stat. § 505.1 *et seq.*;
o. Ind. Code § 24-5-0.5 *et seq.*;
p. Iowa Code § 714.16 *et seq.*;
q. Kan. Stat. Ann. § 50-623 *et seq.*;
r. Ky. Rev. Stat. § 367.1 10 *et seq.*;
s. La. Rev. Stat. § 51:1401 *et seq.*;
t. 5 Me. Rev. Stat. Ann. § 207 *et seq.*;
u. Massachusetts General Laws Ch. 93A *et seq.*;
v. Md. Com. Law Code § 13-101 *et seq.*
w. Mich. Stat. § 445.901 *et seq.*;
x. Minn. Stat. § 8.31 *et seq.*;
y. Miss. Code Ann. § 75-24-1 *et seq.*;
z. Mo. Ann. Stat. § 407.010 *et seq.*;
aa. Mont. Code § 30-14-101 *et seq.*;
bb. Neb. Rev. Stat. § 59-1601 *et seq.*;
cc. Nev. Rev. Stat. § 598.0903 *et seq.*;
dd. N.H. Rev. Stat. § 358-A:1 *et seq.*;

ee. N.J. Rev. Stat. § 56:8-1 *et seq.*;
ff. N.M. Stat. § 57-12-1 *et seq.*;
gg. N.Y. Gen. Bus. Law § 349 *et seq.*;
hh. N.C. Gen. Stat. §§ 75-1.1 *et seq.*;
ii. N.D. Cent. Code § 51-15-01 *et seq.*;
jj. Ohio Rev. Stat. § 1345.01 *et seq.*;
kk. Okla. Stat. 15 § 751 *et seq.*;
ll. Or. Rev. Stat. § 646.605 *et seq.*;
mm. 73 Pa. Stat. § 201-1 *et seq.*;
nn. R.I. Gen. Laws § 6-13.1-1 *et seq.*;
oo. S.C. Code Laws § 39-5-10 *et seq.*;
pp. S.D. Code Laws § 37-241 *et seq.*;
qq. Tenn. Code Ann. § 47-18-101 *et seq.*;
rr. Tex. Bus. & Com. Code § 17.41 *et seq.*;
ss. Utah Code § 13-11-1 *et seq.*;
tt. 9 Vt. Stat. § 2451 *et seq.*;
uu. Va. Code § 59.1-196 *et seq.*;
vv. Wash. Rev. Code § 19.86.010 *et seq.*;
ww. W. Va. Code § 46A-6-101 *et seq.*;
xx. Wis. Stat. § 100.18 *et seq.*; and
yy. Wyo. Stat. Ann. § 40-12-101 *et seq.*

266. This injury is of the type the state consumer protection and deceptive practices statutes were designed to prevent and directly results from Defendants' unlawful conduct.

**TWENTY-FOURTH CLAIM FOR RELIEF**
**On Behalf of the Class Members for Breach of Contract**

267. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

268. At all times relevant herein, Defendants agreed to provide for a subscription fee, and Plaintiffs and Class Members agreed to purchase from the Defendants various telecommunication and electronic communication services and/or devices.

269. At all times relevant herein, Defendants impliedly and expressly promised to protect the privacy and confidentiality of its customers' information, identity, records, subscription, use details, and communications, and, to abide by federal and state law.

270. Defendants by their conduct as alleged, breached their contract with the Plaintiffs and Class Members. (Defendants have also by their conduct as alleged breached the implied

covenant of good faith.)

271. As a result of Defendants' breach of contractual duties owed to the Plaintiffs and Class Members, Defendants are liable for damages including, but not limited to nominal and consequential damages.

**TWENTY-FIFTH CLAIM FOR RELIEF**
**On Behalf of the Class Members for Breach of Warranty**

272. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

273. At all times relevant herein, Defendants agreed to provide for a subscription fee, and Plaintiffs and Class Members agreed to purchase from the Defendants various telecommunication and electronic communication services and/or devices.

274. At all times relevant herein, Defendants impliedly and expressly warranted or otherwise represented to Plaintiffs and Class Members that Defendants would safeguard, protect, and maintain the privacy and confidentiality of its customers' information, identity, records, subscription, use details, and communications, and to abide by all applicable law.

275. Plaintiffs and Class Members relied upon these express and implied warranties and representations in entering into their subscriptions with Defendants.

276. At all times relevant, Defendants by their conduct as alleged, breached these warranties and representations.

277. As a direct and proximate result of Defendants' breaches of warranty as detailed herein, Plaintiffs and Class Members have suffered damages including, but not limited to, nominal and consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and for all others similarly situated, respectfully requests that the Court:

A. Declare that Defendants' conduct as alleged herein violates applicable law;

B. Award statutory damages to Plaintiffs and the Class;

C. Award punitive damages to Plaintiffs and the Class;

D. Award Plaintiffs' reasonable attorneys' fees and costs of suit;

E. Award restitution, damages, and all other relief allowed under State law claims;

F. Enjoin Defendants' continuing violations of applicable law; and

G. Grant such other and further relief as the Court deems just and proper.

Dated: January 16, 2007.

Respectfully submitted,

/s/ R. James George, Jr.

R. James George, Jr.
Texas Bar No. 07810000
Douglas Brothers
Texas Bar No. 03084500
**GEORGE & BROTHERS, L.L.P.**
1100 Norwood Tower
114 W. 7th Street
Austin, Texas 78701
Telephone: (512) 495-1400
Facsimile: (512) 499-0094

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2007, I electronically filed the foregoing **Master Complaint Against Cingular Wireless** with the Clerk of the court using the CM/ECF system which will send notification of such filing to the email addresses noted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants with addresses indicated on the attached manual list.

/s/ R. James George, Jr.
R. James George, Jr.

**M:06-cv-1791 Notice will be electronically mailed to:**

Timothy L. Alger timalger@quinnemanuel.com, albertvillamil@quinnemanuel.com

Sam Jonathan Alton salton@stoneleyton.com, usdc@stoneleyton.com

David L. Anderson ,

Marc H. Axelbaum marc.axelbaum@pillsburylaw.com

Kevin Stuart Bankston bankston@eff.org

Alexander E Barnett abarnett@masonlawdc.com, mdicocco@masonlawdc.com

Timothy M. Bechtold tim@rossbachlaw.com

Bradford Allan Berenson bberenson@sidley.com, vshort@sidley.com

E. Garth Black GBlack@cwclaw.com, cwadia@cwclaw.com; clee@cwclaw.com

John David Blair-Loy dblairloy@aclusandiego.org

Brian Matthew Boynton brian.boynton@wilmerhale.com

Ann Brick abrick@aclunc.org, lcerri@aclunc.org

James J. Brosnahan jbrosnahan@mofo.com, bkeaton@mofo.com

D. Douglas Brothers dbrothers@georgeandbrothers.com, receptionist@georgeandbrothers.com

Thomas R. Burke thomasburke@dwt.com, natashamajorko@dwt.com

Adam S. Caldwell adamcaldwell@dwt.com, tracyjohnson@dwt.com

David William Carpenter dcarpenter@sidley.com, efilingnotice@sidley.com

My ron Milton Cherry mcherry@cherry-law.com, jzolna@cherry-law.com

Cindy Ann Cohn cindy@eff.org, rebecca@eff.org

Anthony Joseph Coppolino tony.coppolino@usdoj.gov,

Elena Maria DiMuzio Elena.DiMuzio@hellerehrman.com

Elizabeth A. Drogula ldrogula@crblaw.com

Joseph Richard Dulle jdulle@stoneleyton.com, usdc@stoneleyton.com

Jon B. Eisenberg jon@eandhlaw.com

Peter Jay Eliasberg peliasberg@aclu-sc.org, ereyes@aclu-sc.org

Derek John Emge derek@inthelaw.com

Bruce A. Ericson bruce.ericson@pillsburylaw.com

Val Patrick Exnicios vpexnicios@exnicioslaw.com, bsergi@exnicioslaw.com

Eric B. Fastiff efastiff@lchb.com

James M. Finberg JFinberg@altshulerberzon.com, smendez@altshulerberzon.com

Mark D. Flanagan mark.flanagan@wilmerhale.com

Amy Collins Fontenot afontenot@exnicioslaw.com

Robert D. Fram rfram@hewm.com, mawilliams@hewm.com; kim.sydorak@hellerehrman.com; audrey.michalski@hellerehrman.com

Jeff D Friedman JFried! man@lerachlaw.com

R. James George , Jr rjgeorge@georgeandbrothers.com, fjordan@georgeandbrothers.com

Jennifer Stisa Granick JENNIFER@LAW.STANFORD.EDU,

Terry Gross terry@grossbelsky.com, mara@grossbelsky.com

Harvey Michael Grossman hgrossman@aclu-il.org, rhughes@aclu-il.org

Alexander Kenneth Haas Alexander.Haas@usdoj.gov,

Robert Carl Hilliard bobh@hilliardandmunoz.com, dee@hilliardandmunoz.com

Barry R. Himmelstein bhimmelstein@lchb.com

Eric A. Isaacson erici@lerachlaw.com

Samir Chandra Jain samir.jain@wilmerhale.com, alicia.hunt@wilmerhale.com

Reed R. Kathrein reedk@lerachlaw.com, e_file_sf@lerachlaw.com; e_file_sd@lerachlaw.com

Michael P. Kenny mike.kenny@alston.com

John G. Kester jkester@wc.com, ggreenman@wc.com; idelawala@wc.com

Craig Allen Knot cknot@sidley.com, efilingnotice@sidley.com

Clinton Arthur Krislov clint@krislovlaw.com, ro@krislovlaw.com

Michael M. Markman mmarkman@hewm.com

Brian Martinez brianmartinez@mofo.com

Gary E. Mason gmason@masonlawdc.com

Edward Robert McNicholas emcnicholas@sidley.com, vshort@sidley.com

Corynne McSherry corynne@eff.org

Gerald E Meunier gmeunier@gainsben.com, jwoods@gainsben.com

Candace J. Morey cmorey@fenwick.com,

Maria V. Morris mariam@lerachlaw.com, e_file_sf@lerachlaw.com

Roger R. Myers roger.myers@hro.com, adam.brezine@hro.com; nancy.burnett@hro.com

Karl Olson ko@lrolaw.com, amw@lrolaw.com

Kurt Opsahl kurt@eff.org

Renee S. Orleans renee.orleans@usdoj.gov,

Nicole A. Ozer nozer@aclunc.org, mpham@aclunc.org

Clare Pastore cpastore@aclu-sc.org, jbradberg@aclu-sc.org

Jacob B. Perkinson jperkinson@jpclasslaw.com,

Laurence F. Pulgram lpulgram@fenwick.com, mburt@fenwick.com

Daniel John Richert daniel.richert@pillsburylaw.com, susan.hersom@pillsburylaw.com

Elizabeth I. Rogers elizabeth.rogers@wilmerhale.com, rebecca.mcnew@wilmerhale.com

John Andrew Rogovin john.rogovin@wilmerhale.com

Shana Eve Scarlett shanas@lerachlaw.com, e_file_sd@lerachlaw.com; e_file_sf@lerachlaw.com

Steven Edward Schwarz stevenschwarz23@yahoo.com

Eric Alan Shumsky eshumsky@sidley.com

W. Russell Sipes wrs@lgrslaw.com, sg@lgrslaw.com

Christopher Slater cslater@slaterross.com, mjross@slaterross.com

Michael W. Sobol msobol@lchb.com

Jacob R. Sorensen jake.sorensen@pillsburylaw.com

Christopher Leo Soriano csoriano@wolfblock.com

Michael Alan St. Pierre mikesp@rrsplaw.com

Lauren A Stern las@skchung.com

Andrew H Tannenbaum an! drew.tannenbaum@usdoj.gov

Tze Lee Tien tien@eff.org, jason@eff.org; vkhall@aol.com; eff-mdl@eff.org

Theresa M. Traber , Esq tmt@tvlegal.com,

James Samuel Tyre jstyre@jstyre.com, jstyre@eff.org

Marc Van Der Hout ndca@vblaw.com

William Joel Vander Vliet joel@krislovlaw.com, ecf@krislovlaw.com

Bert Voorhees bv@tvlegal.com

James P. Walsh budwalsh@dwt.com, pamelabaron@dwt.com; allanpatterson@dwt.com

Joshua Graeme Whitaker joshuawhitaker@griffinwhitaker.com, griffinwhitaker@griffinwhitaker.com

Richard Roy Wiebe wiebe@pacbell.net,

Martin Darren Woodward mwoodward@smi-law.com

Shira R Yoshor shira.yoshor@bakerbotts.com

Matthew J. Zevin mzevin@smi-law.com

**M:06-cv-1791 Notice will be delivered by other means to:**

Bruce Ira Afran
Bruce Afran, Attorney at Law
10 Braeburn Drive
Princeton, NJ 08540

Jessica Ashlee Albies
Law Office of J. Ashlee Albies
621 SW Alder Street
Suite 621
Portland, OR 97205

Ron Antosko
,

Stephen E. Arthur
Harrison & Moberly
135 North Pennylvania Street
Suite 2100
Indianapolis, IN 46204

Sidney M. Bach
Sidney M. Back, Attorney at Law
5917 Constance Street
New Orleans, LA 70115

Darrell Lee Barger
Hartline acus et all
800 N. Shoreline Blvd.
Suite 2000N
Corpus Christi, TX 78401

Todd C. Barnes
George & Sipes
156 East Market Street

Suite 600
Indianapolis, IN 46204

Raymond A . Basile
Harrison & Moberly
135 North Pennsylvania
Suite 2100
Indianapolis, IN 46204

Daniel J. Becka
Beigel Schy Lasky Rifkind Goldberg & Fertik Ltd
311 So Wacker Dr 65th Flr
Chicago, IL 60606

Marc Oliver Beem
Miller Shakman & Hamilton, LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601

John Beisner
O'Melveny & Myers LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004-1109

Matthew Phineas Bergman
Law Office of Matthew Bergman
705 2nd Avenue
Suite 1601
Seattle, WA 98104

Steven K. Blackhurst
Ater Wynne Hewitt Dodson & Skerritt
222 S.W. Columbia Ste 1800
Portland, OR 97201-6618

Ari Y. B! rown
Bergman &! Frockt
705 Second Avenue
Suite 1601
Seattle, WA 98104

James M. Carlson
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602

David R. Carpenter
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Edward Morgan Carstarphen , III
Ellis Carstearphen et all

5847 San Felipe
Suite 1900
Houston, TX 77057

Catherine J. Casey
DLA Piper rudnick Gray Cary US LLP
203 North LaSalle Street
#1900
Chicago, IL 60601

James E. Chadden, Sr

,

Kalea Seitz Clark
Wilmer Cutler Pickering Hale and Door LLC
1875 Pennsylvania Avenue NW
Washington, DC 20006

Amato A. DeLuca
DeLuca & Weizenbaum, Ltd.
19! 9 North Main Street
Providence, RI 02903

Nancy Scott Degan
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charle Avenue
Suite 3600
New Orleans, LA 70170

Michael D. Donovan
Law Offices of Michael D. Donovan
1608 Walnut Street
Suite 1400
Philadelphia, PA 19103

Emilie K. Edling
Stoel Rives, LLP
900 SW Fifth Avenue
Suite 2600
Portland, OR 97204

Tyrone C. Fahner
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606

Daniel Martin Feeney
Miller Shakman & Beem LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601

Sheila Marie Finnegan
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive

Chicago, IL 60606

Jodi W. Flowers
Motley Rice, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

F. Larkin Fore
Fore, Miller & Schwartz
200 S. Fifth Street
Suite 700N, First Trust Centre
Louisville, KY 40202-3204

Sarah M. Fore
Fore, Miller & Schwartz
200 S. Fifth Street
Suite 700N, First Trust Centre
Louisville, KY 40202-3204

Zachary J. Freeman
Miller Shakman & Beem LLP
180 N. La Salle Street
Suite 3600
Chicago, IL 60601

Susan A. Freiwald
USF School of LAW
2130 Fulton St
San Francisco, CA 94117

Albert L. Frevola , Jr.
Gordon Hargrove & James
2400 East Commercial Blvd.
Suite 1100
Fort Lauderdale, FL 33308-3092

Michael R. Fruehwald
Barnes & Thornburg
11 South Meridian Street
Indianapolis, IN 46204-3535

Jason L. Fulk
Hoover Hull LLP
111 Monument Circle
Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989

Andrea Marie Gacki
US Department of Justice
20 Massachusetts Avenue, NW
Room 7334
Washington, DC 20001

Daniel N. Gall
c/o Luna Innocations
2851 Commerce Street
Blacksburg, VA 24060

Linda S. George
Laudig George Rutherford & Sipes
156 East Market Street
Suite 600
Indianapolis, IN 46204

John Richard Gillespie
Broad & Cassel
100 SE 3rd Avenue
Suite 2700
One Financial Plaza
Fort Lauderdale, FL 33394

Cary Neal Goldberg
Law Offices of Cary N. Goldberg
30 North LaSalle Street
Suite 2300
Chicago, IL 60602

Steven Goldberg
American Bank Building
621 S.W. Morrison
Suite 1450
Portland, OR 97205

M. Norman Goldberger
Wolf Block Schorr and Solis-Cohen, LLP
1650 Arch Street
22nd Floor
Philadelphia, PA 19103

Edward Nelson Griffin
Griffin Whitaker LLP
8730 Georgia Avenue
Suite LL100
Silver Spring, MD 20910

Mark E. Guzzi
271 Providence Oaks Circle
Alpharetta, GA 30004

Zaha S. Hassan
Attorney at Law
14614 NW Seward Rd
Vancouver, WA 98685

F. Thomas Hecht
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602

William J. Heller
McCarter & English, LLP
Four Gateway Center
100 ! Mulberry Street
P.O. Box 652
Newark, NJ 07102-0652

Amanda J. Hettinger
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101

Charles F. Hinkle
Stoel Rives, LLP
900 SW Fifth Avenue
Suite 2600
Portland, OR 97204

Andrew W. Hull
Hoover Hull LLP
111 Monument Circle
Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989

Anthony D. Irpino
Irpino Law Firm
365 Canal Street
22nd Floor
New Orleans, LA 70130

Lisa Robin Jaskol
Horvitz & Levy LLP
15760 Ventura Blvd 18FL
Encino, CA 91436

Joseph G. Jevic , III
St. Martin & Williams
4084 Highway 311
P.O. Box 2017
Houma, LA 70361-2017

Philip J. John, Jr.
Baker & Botts
One Shell Plaza
910 Louisiana Street
Houston, TX 77002

C. J. Johnson
Kalkstein Law Firm
P.O. Box 8568
Missoula, MT 59807

Kelly Overstreet Johnson
215 S. Monroe Street
Suite 400
P.O. Box 11300
Tallahassee, FL 32302

Joshua Karsh
Gessler Hughes Piers Resnick & Dym Ltd.
Three First National Plaza

70 West Madison Street, Suite 4000
Chicago, IL 60602

Peter D. Keisler
United States Department of Justice
Assistant Attorney General
20 Massachusetts Avenue, NW
Room 7312
Washington, DC 20530

Andrew Kierstead
1001 S.W. Fifth Avenue
Suite 1100
Portland, OR 97204

Jonathan D. King
DLA Piper Rudnick Gray Cary US LLP
203 North LaSalle Street, #1900
Chicago, IL 60601-1293

Michael E. Kipling
Kipling Law Group PLLC
3601 Fremont Avenue N.
Suite 414
Seattle, WA 98103

Joseph R. Knight
Baker Botts LLP
98 San Jacinto Blvd.
Suite 1500
Austin, TX 78701-4039

Leondra Kruger
Wilmer Cutler Pickering Hale & Dorr LLP
1875 Pennsylvania NW Avenue
Washington, DC 20006-3642

Melanie G. Lagarde
St. Martin & Williams
4084 Highway 311
Houma, LA 70360

Stephen Laudig
2440 Campus Road, #429
Honolulu, HI 96822

David L. Lawson
Sidley Austin Brown & Wood
172 Eye Street, N.W.
Washington, DC 20006

Roger L. Mandel
Stanley Mandel & Iola LLP
3100 Mo! nticello ave
Suite 750

Dallas, TX 75205

Lori McAllister
Dykema Gossett PLLC
201 Townsend Street
Suite 900
Lansing, MI 48933

Howard A. Merten
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Donald A. Migliori
Motley Rice LLC
321 South Main Street
Providence, RI 02940

Benjamin C. Mizer
1875 Pennsylvania Ave., N.W.
Washington, DC 20006

Alice McKenzie Morical
Hoover Hull LLP
111 Monument Circle
Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989

Randolph D. Moss
Wilmer, Cutler, Pickering, Hale & Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

Thomas H. Nelson
Thomas H. Nelson & Associates
825 NE Multnomah
Suite 925
Portland, OR 97232

Michael C. O'Malley
Siben & Siben, LLP
90 East Main Street
BayShore, NY 11706

Michele L. Odorizzi
Mayer Brown Rowe & Maw
190 South LaSalle Street
Chicago, IL 60603

Wendy Sangbee Park
Roger Baldwin Foundation of ACLU, Inc.
180 North Michigan Avenue
Suite 2300
Chicago, IL 60601

Robert J. Patterson
Watts Law Firm LLP
555 N. Carancahua Street
Twr II Bldg 14th Floor
Corpus Christi, TX 78401

Paul Lee Peyronnin
Baker donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Ave.
Suite 3600
New Orleans, LA 70170

Michael James Philippi
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602

Jason S. Ritchie
Holland & Hart
P.O. Box 639
Billings, MT 59103

Harry Rosenberg
Phelps Dunbar, LLP
Canal Place
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Michael J. Ross
Slater Ross
1850 Benjamin Franklin Plaza
1 S.W. Columbia Street
Portland, OR 97258

William A. Rossbach
Rossbach & Whiston
401 North Washington Street
P.O. Box 8988
Missoula, MT 59807-8988

Alan Norris Salpeter
Mayer, Brown, Rowe & Maw
190 South LaSalle Street
Chicago, IL 60603

Ronald P. Schiller
DLA Piper Rudnick Gray Cary US LLP
One Liberty Place
Suite 4900
1650 Market Street
Philadelphia, PA 19103

Mark Schlosberg
American Civil Liberties Union Fndt.
1663 Mission Street, Suite 460
San Francisco, CA 94103

Eric Schneider
1730 South Federal Hwy. #104
Delray Beach, FL 33483

Adam D. Schwartz
Roger BaldwinFoundation of ACLU, Inc.
180 North Michigan Avenue
Suite 2300
Chicago, IL 60601-7401

John D. Seiver
Cole Raywid & Braverman, LLP
1919 Pennsylvania Ave., N.W.
Suite 200
Washington, DC 20006

Donald A. Statland
Attorney at Law
55 West Monroe St
Ste 1200
Chicago, IL 60603

David H. Sternlieb
Shapiro & Sternlieb, LLC
800 Tennent Road
Manalapan, NJ 07726

A. David Stippler
Bingham McHale, LLP
270! 0 Market Tower
10 West Market Street
Indianapolis, IN 4! 6204

Ted W. Stroud
Oade Stroud & Kleiman PC
200 Woodland Pass
P.O. Box 1296
East Lansing, MI 48826-1296

Brendan V. Sullivan
Williams & Connolly
725 12th St N.W.
Washington, DC 20005

Davis Wright Tremaine
Attorney at Law
101 California Street
Ste 3275
San Francisco, CA 94111

M. Stephen Turner
Broad & Cassel
215 South Monroe Street
Suite 400
P.O. Box 11300
Tallahassee, FL 32302

Marc Ver Der Hout
Ver Der Hout & Brigagliano

180 Sutter Street, 5th Floor
San Francisco, CA 94123

Nicholas Wagner
Law Offices of Wagner & Jones
1111 East Herndon, Suite 317
Fresno, CA 93720

Thomas P. Walsh
United States Attorney's Office NDIL
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Peter Wasylyk
Law Offices of Peter Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908

Mikal C. Watts
Watts Law Firm, LLP
Bank of America Plaza
300 Convent Street
Suite 100
San Antonio, TX 78205

Brian W. Welch
Bingham McHale, LLP
10 West Market Street
Market Tower, Suite 2700
Indianapolis, IN 46204

John C. Whitfield
Whitfield & Cox PSC
29 East Center Street
Madisonville, KY 42431

Conrad S.P. Williams , III
St. Martin, Williams & Bourque
P.O. Box 2017
Houma, LA 70361

Daniel D. Williams
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005!

Matthew A. Woolf
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Ave.
Suite 3600
New Orleans, LA 70170

Anthony J. Zarillo , Jr
Courter, Kobert & Cohen, PC

1001 Route 517
Hackettstown, NJ 07840

Jacie C. Zolna
Myron M. Cherry & Associates
30 North LaSalle Street
Suite 2300
Chicago, IL 60602