1

2

3

4

5

6

7

8

9                   IN THE UNITED STATES DISTRICT COURT

10                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

IN RE:                                MDL Docket No 06-1791 VRW
12   NATIONAL SECURITY AGENCY
     TELECOMMUNICATIONS RECORDS             ORDER
13   LITIGATION

14
     This Document Relates To:
15
     06-3574; 06-3596
16
     _____/
17

18          On May 26, 2006, plaintiffs brought suit against Verizon

19   Communications, Inc in San Francisco superior court to enjoin

20   Verizon's alleged disclosure to the National Security Agency (NSA)

21   of telephone calling records of its California residential

22   customers.  Doc #1, 06-3574.  Plaintiffs allege these disclosures

23   violate their privacy rights under (i) the California Constitution

24   and (ii) California Public Utilities Code § 2891.  Id.  A similar

25   suit was brought against AT&T Corporation in San Francisco superior

26   court on May 26, 2006.  Doc #1, 06-3596.

27   //

28   //

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Verizon and AT&T removed these actions to this court on

2    June 5 and 6, 2006, respectively, relying on 28 USC §§ 1441 and

3    1442.  Doc #1, 06-3574; Doc #1, 06-3596.  Plaintiffs in both

4    actions dispute the propriety of removal and have moved to remand

5    these actions to state court, asserting that none of defendants'

6    bases for removal creates jurisdiction in this court.  Doc #20, 06-

7    3574; Doc #14, 06-3596.  On August 4, 2006, the United States filed

8    a "statement of interest" in opposition to plaintiffs' motions to

9    remand.  Doc #44, 06-3574; Doc #46, 06-3596.  For reasons discussed

10   below, the court DENIES plaintiffs' motions to remand.

11

12                                    I

13        On a motion to remand to state court, a defendant bears

14   the burden of showing that a federal court would have jurisdiction

15   from the outset; in other words, that removal was proper.  Gaus v

16   Miles, Inc, 980 F2d 564, 566 (9th Cir 1992).  To meet this burden,

17   a defendant must overcome a "strong presumption" against removal.

18   Id.  Courts "strictly construe the removal statute against removal

19   jurisdiction[, and] federal jurisdiction must be rejected if there

20   is any doubt as to the right of removal in the first instance."

21   Id.  See also Plute v Roadway Package Sys, Inc, 141 F supp 2d 1005,

22   1008 (ND Cal 2001) ("any doubt is resolved in favor of remand").

23        Plaintiffs move to remand the case for lack of subject

24   matter jurisdiction.  See 28 USC § 1447(c) ("If at any time before

25   final judgment it appears that the district court lacks subject

26   matter jurisdiction, the case shall be remanded.").  In their

27   removal papers, defendants assert a number of bases for removal

28   including that (1) plaintiffs' claims are completely preempted by,

United States District Court

For the Northern District of California

1    inter alia, the Foreign Intelligence Surveillance Act, 50 USC §

2    1801 et seq, Title III of the Omnibus Crime Control and Safe

3    Streets Act of 1968 and the Electronic Communications Privacy Act,

4    codified as amended 18 USC § 2510 et seq, as well as federal common

5    law principles relating to national security affairs, see, e g,

6    Tenet v. Doe, 544 US 1, 7-11 (2005); (2) adjudication of

7    plaintiffs' claims will require resolution of substantial, disputed

8    issues of federal law, see, e g, Grable & Sons Metal Prods Inc v

9    Darue Eng'g and Mfg, 125 S Ct 2363, 2368 (2005); and (3) removal is

10   proper pursuant to 28 USC § 1442(a)(1).  Notice Removal (Doc #1).

11   Additionally, the government argues that remand would be futile

12   because it would intervene under state law and remove pursuant to §

13   1442(a)(1).  The court addresses these arguments in turn.

14

15                                  II

16                                  A

17        Federal jurisdiction is normally measured by the

18   yardstick of the well-pleaded complaint rule.  "Under this rule, 'a

19   cause of action arises under federal law only when the plaintiffs'

20   well-pleaded complaint raises issues of federal law.'  For removal

21   to be appropriate, a federal question must appear on the face of

22   the complaint."  Toumajian v Frailey, 135 F3d 648, 653 (9th Cir

23   1998) (quoting Metropolitan Life Ins Co v Taylor, 481 US 58, 63

24   (1987) and citing Franchise Tax Board v Construction Laborers

25   Vacation Trust, 463 US 1, 9-10 (1983)).  A corollary to the well-

26   pleaded complaint rule — one that gives content to "well-pleaded" —

27   is the doctrine of complete preemption.

28   //

**United States District Court**

For the Northern District of California

1     The jurisdictional doctrine of complete preemption

2 provides that, in some instances, "the preemptive force of [federal

3 statutes] is so strong that they completely preempt an area of

4 state law.  In such instances, any claim purportedly based on that

5 preempted state law is considered, from its inception, a federal

6 claim, and therefore arises under federal law." <u>Ansley v</u>

7 <u>Ameriquest Mortg Co</u>, 340 F3d 858, 862 (9th Cir 2003) (citing

8 <u>Balcorta v Twentieth Century-Fox Film Corp</u>, 208 F3d 1102, 1107 (9th

9 Cir 2000).  See also <u>Wayne v DHL Wordwide Express</u>, 294 F3d 1179,

10 1183 (9th Cir 2002).  Put simply, the test for complete preemption

11 "is whether Congress clearly manifested an intent to convert state

12 law claims into federal-question claims." <u>Ansley v Ameriquest</u>

13 <u>Mortg Co</u>, 340 F3d 858, 862 (9th Cir 2003) (citing <u>DHL Wordwide</u>

14 <u>Express</u>, 294 F3d at 1184).

15     Complete preemption arises only in "extraordinary"

16 situations.  <u>DHL Wordwide Express</u>, 294 F3d at 1184.  Indeed, the

17 Supreme Court presently has identified three federal statutes that

18 preempt state law completely:  (1) § 301 of the Labor-Management

19 Relations Act, 29 USC § 185; (2) § 502 of the Employee Retirement

20 Income Security Act of 1974, 29 USC § 1132; and (3) the usury

21 provisions of the National Bank Act, 12 USC §§ 85, 86.  <u>Beneficial</u>

22 <u>Nat'l Bank v Anderson</u>, 539 US 1, 7-8 (2003).

23     In its most recent treatment of the complete-preemption

24 doctrine, the Supreme Court concluded that two provisions of the

25 National Bank Act — those that (1) permitted national banks to

26 charge certain interest rates and (2) provided a cause of action

27 against banks that charge an interest rate greater than permitted

28 under the Act — completely preempted state-law claims challenging

**4**

the validity of interest rates charged by the defendant bank. <u>Beneficial Nat'l Bank</u>, 539 US at 9-11.  Although the statutory text did not expressly preclude the operation of state law, the Court concluded that the Act provided the "exclusive" cause of action for usury challenges.  See id at 11.

Defendants contend that federal law governing national security matters "leaves no room for plaintiffs' state-law privacy claims."  Doc #29 at 7, 06-3574.  Safeguarding national security is said to fall squarely within the federal government's "supreme sphere of action."  Id (citing <u>Murphy v Waterfront Comm'n of NY Harbor</u>, 378 US 52, 76 n16 (1964).  See also id ("The Founders recognized that among the 'principal purposes to be answered by [the] union' are '[t]he common defence of the members' and 'the preservation of the public peace, as well against internal convulsions as external attacks.'" (citing The Federalist No 23, at 126, Alexander Hamilton")).  But defendants' repeated invocation of the "sweeping authority of Congress and the Executive" to protect national security misses the mark.  Doc #29 at 7-9, 06-3574.  Under the doctrine of complete preemption, the question is not whether Congressional authority exists, it is instead whether that authority has been exercised to its fullest extent.

If a federal statute lacks express statutory exclusivity language, as here, the analysis focuses upon factors such as the "structure and purpose" of the relevant statutes; whether they contain "complex, detailed, and comprehensive provisions" that "create a whole system under federal control" and whether there exist "extensive federal remedies."  <u>In re Miles</u>, 430 F3d 1083, 1088 (9th Cir 2005) (internal citations omitted).

United States District Court

For the Northern District of California

To support complete preemption, defendants first cite the Stored Communications Act ("SCA"), 18 USC § 2701 et seq, which was enacted as part of the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub L No 99-508, 100 Stat 1848 (1986).  The SCA regulates disclosure of non-content "record[s] or other information pertaining to a subscriber."  18 USC § 2702(c).  The SCA specifies that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."  Id § 2708.

Plaintiffs dispute the import of § 2708, contending that it is the counterpart to 18 USC § 2518(10)(c), both of which were added to the ECPA for a limited purpose:  to prevent criminal defendants from suppressing evidence based on electronic communications or customer records obtained in violation of ECPA's provisions.  Doc #43 at 6, 06-3596.  To support this interpretation, plaintiffs first cite the legislative history of § 2518(10)(c).  See S REP No 99-541 at 23; H R REP No 99-647 at 75 (1986) ("The purpose of this provision is to underscore that * * * the Electronic Communications Privacy Act does not apply the statutory exclusionary rule contained in title III of the Omnibus Crime Control and Safe Streets Act of 1968 to the interception of electronic communications.").  Next, plaintiffs note that § 2708's legislative history adopts § 2518(10)(c)'s discussion by reference.  See H R REP No 99-647 at 75 (1986).  Doc #43 at 6, 06-3596.  In view of the similarity of the language between the two provisions, and given the House Report's express reference back to the discussion of § 2518(10)(c), the court agrees with plaintiffs' interpretation of the statute.  See also United States v Smith, 155

United States District Court

For the Northern District of California

F3d 1051, 1056 (9th Cir 1998) (finding that § 2708 precludes suppression as a remedy for violation of SCA).  Accordingly, the court concludes that the SCA does not completely preempt suits under state law.

Alternatively, defendants argue that the Foreign Intelligence Surveillance Act ("FISA") completely preempts plaintiffs' state law claims.  According to defendants, FISA constitutes a set of "complex, detailed, and comprehensive provisions" that "create a whole system under federal control."  Doc #23 at 8, 06-3596.  The court concurs with defendants that FISA regulates, at least in substantial part, many aspects of foreign intelligence surveillance, including electronic surveillance, 50 USC §§ 1801-1811, physical searches, id §§ 1821-1829, pen registers and trap and trace devices, id §§ 1841-1846, and access to business records, id §§ 1861-1862.  But neither a regulation's complexity nor its comprehensiveness is sufficient for complete preemption.  A cursory review of the United States Code reveals that to hold otherwise would override broad swaths of state law.

More damaging to defendants' theory is language in FISA that appears to contemplate state court litigation.  For example, § 1806(f), in pertinent part, provides procedures for consideration of the propriety of FISA orders "[w]henever * * * any motion or request is made by an aggrieved person pursuant to any other statute or rule of * * * any state before any court or other authority of * * * any state to discover or obtain applications or orders or other materials relating to electronic surveillance * * * ."  50 USC § 1806(f).  See also id §§ 1845(f), 1825(g).  The statutory exemption in § 1861(e) also implies the availability of

civil claims with respect to the production of records.  It provides that "[a] person who, in good faith, produces tangible things under an order pursuant to this section shall not be liable to any other person for such production."  50 USC § 1861(e).  FISA thus contemplates that, in the absence of a government order for business records under 50 USC § 1861(a)(1) (as alleged here), injured parties will have causes of action and remedies under other provisions of state and federal law.  Hence, the court finds that FISA does not completely preempt plaintiffs' state law claims.

        Finally, the court turns to the argument that the federal common law completely preempts plaintiffs' state law claims.  The Supreme Court has held that "a few areas, involving 'uniquely federal interests,' are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts — so-called 'federal common law.'"  <u>Boyle v United States Techs Corp</u>, 487 US 500, 504 (1988).  Absent congressional authorization, courts may only create new federal common law if the operation of state law governing the dispute would (1) "significant[ly] conflict" with (2) "uniquely federal interests."  See <u>Boyle</u>, 487 US at 504 (1988).  Cases justifying judicial creation of preemptive federal rules are extremely limited:  "'[w]hether latent federal power should be exercised to displace state law is primarily a decision for Congress,' not the federal courts."  <u>Atherton v FDIC</u>, 519 US 213, 218 (1997) (quoting <u>Wallis v Pan American Petroleum Corp</u>, 384 US 63, 68 (1966)).

//

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Plaintiffs contend that no conflict exists between plaintiffs' California privacy claims and any uniquely federal interest.  Displacing state law requires that a "significant conflict between some federal policy or interest and the use of state law * * * be specifically shown."  Atherton, 519 US at 218 (quoting Wallis, 384 US at 68).  A "significant conflict" occurs when the application of state law runs counter to a federal policy or would frustrate specific objectives of federal legislation.  See Boyle, 487 US at 507, 509 (duty of care under state tort law was "precisely contrary" to duty imposed by government contract).

Defendants cannot show the requisite "significant conflict" here because the California laws on which plaintiffs' claims are based do not make unlawful an act of defendants that federal law or policy deems lawful.  Under state and federal law, defendants may present as an affirmative defense any assertion that it acted pursuant to legal process, including a legal federal process.  See Cal Pub Util Code § 2894.  Moreover, in view of Congress's extensive legislation addressing surveillance via FISA, portions of Title III and the SCA, it would be anomalous for the court to supplant this detailed work with a set of federal common law rules.  Accordingly, the court concludes that the federal common law does not completely preempt plaintiffs' state law claims.

B

The court next considers the argument that plaintiffs' claims give rise to jurisdiction under the "embedded federal issue" doctrine described in Empire Healthchoice Assurance, Inc v McVeigh,

9

126 S Ct 2121 (2006) and <u>Grable & Sons Metal Prods, Inc v Darue Eng'g & Mfg</u>, 545 US 308 (2005).  State law claims confer federal jurisdiction under this doctrine if they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable</u>, 545 US at 314 (2005).  As the Court in <u>Grable</u> observed, this rule "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  Id at 311.

Applying this framework, the Court determined in <u>Grable</u> that a landowner's quiet title claim against a tax sale purchaser, which alleged that the Internal Revenue Service provided inadequate notice under federal law to the owner before the sale, involved "an important issue of federal law that sensibly belongs in a federal court."  Id at 315.  In evaluating the particular statute at issue in <u>Grable</u>, the Court emphasized that the case's outcome hinged on the meaning of the incorporated federal statute, that the federal government had a significant interest in the particular dispute and that only a limited number of quiet title cases will actually raise a contested matter of federal law.  Id at 314.

In a more recent case, the Supreme Court clarified <u>Grable</u>, remarking that the case covers a "special and small category" of federal question jurisdiction.  <u>Empire Healthchoice Assurance, Inc v McVeigh</u>, 126 S Ct 2121, 2136 (2006).  The Court

further observed that federal issues posing pure questions of law whose resolution "would be controlling in numerous other cases" are more likely to qualify as substantial federal issues for purposes of § 1331.  Id at 2137.  Conversely, "situation-specific" federal issues are less likely to provide a basis for exercising jurisdiction over a state law claim.  Id.

Notwithstanding the Supreme Court's recent guidance, the parties dispute the scope of the embedded federal issue doctrine.  According to plaintiffs, the well-pleaded complaint rule mandates that the federal issue in question be embedded within the affirmative elements of the state law claim itself, as opposed to an anticipated defense.  Defendants concede that a federal defense is insufficient to create federal jurisdiction, Doc #29 at 21, but assert that the state secrets privilege presents a threshold issue of justiciability that does not fall neatly into either category (cause of action or defense).

Defendants further insist that plaintiffs' focus on claim elements fails to hew to the standard promulgated in Grable.  The relevant inquiry, defendants contend, is whether state-law claims "implicate significant federal issues" or "raise a stated federal issue, actually disputed and substantial."  Doc #29 at 12-13 (citing Grable, 545 US at 313, 314).  To confine the court's inquiry to the elements of plaintiffs' claims would allegedly impose a "single, precise, all-embracing test" of the kind the Court eschewed in Grable.  Id at 314.  See also id at 313 (endorsing a "common-sense accommodation of judgment to [the] kaleidoscopic situations that present a federal issue").  To defendants, a "common-sense accommodation of judgment" warrants the

United States District Court

For the Northern District of California

conclusion that issues related to the state secrets privilege "implicate federal interests of the highest order that are sufficient to create federal jurisdiction."  Doc #29 at 22, 06-3574.

The court agrees with defendants that the state secrets privilege plays a unique role in the present cases.  Most significantly, under the _Totten_ bar, if the "'very subject matter of the action' is a state secret, then the court should dismiss the plaintiff's action based solely on the invocation of the state secrets privilege."  Id (quoting _Reynolds_, 345 US at 11 n26).  See also _Reynolds_, 345 US at 11 n26 (characterizing _Totten_ as a case "where the very subject matter of the action, a contract to perform espionage, was a matter of state secret.  The action was dismissed on the pleadings without ever reaching the question of evidence, since it was so obvious that the action should never prevail over the privilege."); _Tenet v Doe_, 544 US 1, 8 (2005) (concluding that "_Totten_ precludes judicial review in cases * * * where success depends upon the existence of a secret espionage relationship with the Government").  Even in cases whose "very subject matter" is not a state secret, the state secrets privilege nevertheless requires dismissal if national security concerns prevent plaintiffs from proving the _prima facie_ elements of their claim, and summary judgment in favor of the defendant if those concerns prevent the defendant from invoking a valid defense.  _Kasza v Browner_, 133 F3d 1159, 1166-67 (9th Cir 1998).

To be sure, as plaintiffs note, the state secrets privilege "belongs to the government and must be asserted by it."  _Reynolds_, 345 US at 7.  But the court expects the government to

12

assert the privilege in the present cases.  In an order setting the initial case management conference, the court asked whether "the government intend[s] to assert the state secrets privilege in all of the cases transferred pursuant to MDL 1791."  Doc #49, 06-1791. In response, during the case management conference, the government confirmed its intention to assert the privilege in all of the cases pending before the court pursuant to MDL 1791.

Plaintiffs contend that the court's order in Hepting, 06-762, renders the effect of the state secrets privilege undisputed in the present cases.  But this argument belies the court's certification of the Hepting order for appeal pursuant to 28 USC § 1292(b).  The court certified the order because the state secrets privilege is an issue for which "there is a substantial ground for difference of opinion."  See Doc #308 at 70, 06-672.  ("[G]iven that the state secrets issues resolved herein represent controlling questions of law as to which there is a substantial ground for difference of opinion and that an immediate appeal may materially advance ultimate termination of the litigation, the court certifies this order for the parties to apply for an immediate appeal pursuant to 28 USC § 1292(b).").  Therefore, the court's ruling in Hepting does not determine unequivocally the effect of the state secrets privilege, particularly with respect to the present cases.

Apart from being disputed, the application of the privilege also poses a "substantial" question of federal law.  As the DC Circuit observed, if privileges were ranked by importance, the "privilege to protect state secrets must head the list." Halkin, 598 F2d at 7.  In marked contrast to most privileges and affirmative defenses, the state secrets privilege, "[w]hen properly

13

**United States District Court**

For the Northern District of California

invoked, * * * is absolute" and "[n]o competing public or private interest can be advanced to compel disclosure of information found to be protected" by it.  <u>Ellsberg</u>, 709 F2d at 57; <u>Reynolds</u>, 345 US at 11 ("[E]ven the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.").

Finally, permitting these cases to proceed in federal, rather than state, court will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." <u>Grable</u>, 126 S Ct at 2368.  Plaintiffs have not demonstrated that Congress has mandated that state judicial officers be involved in litigation of this kind.  Nor would the court's recognition of the availability of a federal court to consider claims of state secrets result in a spate of cases being filed in federal court that properly belong in state courts.

To remand on the grounds that "evidentiary privileges" cannot form the basis for federal jurisdiction under the embedded federal issue doctrine would elevate form over substance.  As applied to the present cases, the state secrets privilege functions unlike a standard evidentiary privilege.  Here, the privilege is "not only a contested federal issue, but a substantial one," for which there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." <u>Grable</u> 545 US at 313.  Accordingly, the court finds that plaintiffs' claims give rise to federal jurisdiction under the "embedded federal issue" doctrine.

//

//

C

The court turns to defendants' contention that removal is proper under the federal officer removal statute, 28 USC § 1442(a)(1).  Removal jurisdiction is proper under § 1442(a)(1) when "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or or any agency thereof[] [is] sued * * * for any act under color of such office * * * ."  A defendant seeking removal under this provision must demonstrate that (1) "it is a 'person' within the meaning of the statute"; (2) "there is a causal nexus between [the defendant's] actions, taken pursuant to a federal officer's directions, and plaintiff's claims"; and (3) "it can assert a 'colorable federal defense.'"  Durham v Lockheed Martin Corp, 445 F3d 1247, 1251 (9th Cir 2006) (quoting Jefferson County v Acker, 527 US 423, 431 (1999)).  The availability of removal in these cases turns on the second of these three requirements.

In construing the "acting under" requirement, courts generally find that persons are "acting under" a federal officer if acts forming the basis of the state suit were performed pursuant to a federal officer's direct orders or comprehensive and detailed regulations.  By contrast, that the relevant acts occurred under the "general auspices of federal direction" is usually insufficient.  See, e g, Arness v Boeing North Am, 997 F Supp 1268, 1273 (CR Cal 1998);  Fung v Abex Corp, 816 F Supp 569 (ND Cal 1992).

In Camacho v Autoridad de Telefonos de Puerto Rico, 868 F2d 482 (1st Cir 1989), the First Circuit applied the federal officer removal statute to facts similar to those alleged in the

United States District Court
For the Northern District of California

present cases.   The court held that an action against quasi-public
telephone companies for participating in a wiretap of plaintiffs'
telephones in violation of Puerto Rican law was properly removed to
federal district court under the federal officer removal statute.
868 F2d at 489.   The reach of § 1442(a)(1) extended to private
persons because the carriers acted at the behest of federal
officers conducting the wiretap pursuant to the Omnibus Crime
Control and Safe Streets Act (18 USCA §§ 2510-2520).   Id.

        Yet, as plaintiffs note, Camacho's pertinence to the
present motions is undermined by one critical distinction:   the
defendant telephone companies in Camacho were sued for their role
in aiding federal agents in conducting a wiretap pursuant to a
federal court order issued under Title III.   Camacho, 868 F2d at
489.   Hence, the government's level of compulsion in Camacho was
clear.   Here, it is unknown whether the government compelled
defendants to disclose the records.   The government will likely
assert the state secrets privilege, rendering defendants unable to
admit or deny whether such an order from the government existed.
As a result, defendants must rely on plaintiffs' complaint to
demonstrate that they acted under the direction of a federal
officer.   Plaintiffs' allegations include the following:

> Beginning sometime after September 11, 2001, AT&T
> began providing the NSA on an ongoing basis with
> residential customer telephone calling records and
> access to other information about AT&T's customers
> and subscribers.
>
> * * *
>
> AT&T has made these telephone records available to
> the NSA on a voluntary basis.   They were not
> provided under the compulsion of any legal process
> such as a warrant, court order or subpoena.

Doc #1 (compl), ¶¶ 19, 23, 06-3596.

Plaintiffs contend that the allegations fail to demonstrate that defendants acted under the direction of a federal officer because they "do not assert detailed direction and control by the government." Doc #43 at 24, 06-3596. In support, plaintiffs cite Watson v Phillip Morris Companies, Inc, 420 F3d 852, 856-57 (8th Cir 2005), and Winters v Diamond Shamrock Chemical Company, 149 F3d 387 (5th Cir 1998), for the proposition that a federal officer must administer comprehensive control over a defendant to satisfy the standard. The court in Watson affirmed the removal of a class action suit alleging that a cigarette manufacturer violated the Arkansas Deceptive Trade Practices Act because the Federal Trade Commission exercised extensive control over cigarette advertising. Watson, 420 F3d at 856. In Winters, the court approved removal under § 1442(a)(1) of a products liability suit against a manufacturer of Agent Orange because the government specified the formula for Agent Orange, as well as the packaging, labeling and shipping requirements. Winters, 149 F3d at 399. The court in both cases emphasized the comprehensive and detailed control exercised by the government.

The court declines to impose the rigid standard from Watson and Winters for two reasons. First, a high level of specificity was necessary in Watson and Winters in order to establish a causal nexus between the conduct charged in plaintiffs' claims and the acts performed by defendants at the direction of official federal authority. For example, in Winters, the precise chemical formula used in Agent Orange was pertinent to the underlying claims for negligence and products liability. In the

17

United States District Court

For the Northern District of California

present cases, however, the exact procedures allegedly used to disclose the records are of little consequence to plaintiffs' legal theories.  For instance, under California Public Utilities Code § 2891, the particular methods defendants used to submit the customer calling records to the NSA would not matter; absent a statutory exemption, mere disclosure is enough.  Requiring excessive detail would run contrary to the nature of plaintiffs' claims in the present cases.

Second, although the defendants in <u>Watson</u> and <u>Winters</u> complied with strict federal regulation, they ultimately were advancing their own interests.  That is, defendants presumably contracted to produce Agent Orange and advertised for cigarettes for their own financial benefit.  Here, plaintiffs allege that the NSA uses the information "to create a massive database to search for patterns of social interaction that might warrant further investigation."  Doc #1 at 19, 06-3596.  Hence, based on the facts as alleged in plaintiffs' complaints, defendants voluntarily acted as agents for the NSA's purposes.  See Id, ¶ 23 ("AT&T has made these telephone records available to the NSA on a voluntary basis").  The fact that the disclosure advanced the interests of the NSA more than defendants also weighs in favor of finding jurisdiction under § 1442(a)(1).

In short, the court concludes that the level of specificity of the federal direction required under § 1442(a)(1) should correspond to both the nature of the underlying legal claims and the purpose of the relevant activities.  A less demanding specificity requirement is appropriate here because the mere act of disclosure triggers plaintiffs' claims (subject to various

defenses) and because defendants allegedly acted in furtherance of NSA's interests.  Accordingly, these allegations suffice to confer federal jurisdiction under the federal officer removal statute.

D

Finally, the court addresses the statement of interest filed by the United States.  Doc #44, 06-3574.  In its statement, the government argues that its intervention in these cases provides separate grounds for removal pursuant § 1442(a), thereby rendering remand futile.  Id.  Hence, the government avers that remand would serve only as a delay and a waste of resources for the parties and the federal and state courts.  Id at 4.

In Bell v City of Kellogg, 922 F2d 1418, 1424-25 (9th Cir 1991), the Ninth Circuit adopted a futility exception to the remand provisions of 28 USC § 1447.  After the district court held that plaintiffs lacked standing to challenge the federal aspects of the case, the district court dismissed the entire case, rather than remand certain pendant state claims.  The Ninth Circuit approved this procedure, holding that "[w]here the remand to state court would be futile, * * * the desire to have state courts resolve state law issues is lacking" and such remands would be inappropriate because "no comity concerns are involved."  922 F2d at 1424-25 (citing MAIN v Commissioner, Maine Dep't of Human Servs, 876 F2d 1051, 1054 (1st Cir 1989)).

Plaintiffs question the "continued vitality" of the futility exception, asserting that the Supreme Court undermined the exception four months later in International Primate Protection League v Administrators of Tulane Education Fund, 500 US 72 (1991).

19

Doc #53 at 4, 06-3596.  In that case, the Supreme Court declined to assess defendant's argument that his second attempt at removal would be successful pursuant to § 1442(a).  500 US at 89.  Whether defendant acted under a federal officer posed a "mixed question of law and fact [that] should not be resolved in the first instance by [the Supreme Court], least of all without an appropriate record."  Id.  These "uncertainties in the case * * * preclude[d] a finding that a remand would be futile."  Id.

The court disagrees with plaintiffs' reading of <u>Primate Protection League</u>.  To be sure, the Supreme Court confirmed the narrowness of the futility exception, but it did not sound the doctrine's death knell, at least not loud enough to overturn clear Ninth Circuit precedent.  Moreover, after <u>Primate Protection League</u>, the Ninth Circuit has reaffirmed the doctrine's vitality (in unpublished opinions that this court dare not cite).  See 9th Cir R 36-3(c).

Nonetheless, as this court observed in <u>Re-Con Bldg Prods v Guardian Ins Co</u>, 2000 WL 432830, at *1 (ND Cal 2000)), the standard to invoke the futility exception is exacting, as it requires the court to find that a state court action would inevitably be removed to federal court.  For example, in <u>Bell</u>, the Ninth Circuit dismissed the case after concluding it was "absolute[ly] certain[]" that plaintiff would not prevail in state court.  <u>Bell</u>, 922 F2d at 1425.  See also <u>Pacific Sound Resources v Burlington Northern & Santa Fe RR Co</u>, 2006 WL 1441983, at *1 & n1 (WD Wash 2006).

Here, the futility of remand hinges on two predicates: (1) California state law provides the government a right to

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

intervene and (2) the government's intervention would trigger
removal under § 1442(a).  With respect to the first predicate, the
government contends that California law provides an unconditional
right to intervene under California code of civil procedure
§ 387(b).  This section provides:

> [I]f the person seeking intervention claims an
> interest relating to the property or transaction
> which is the subject of the action and that person
> is so situated that the disposition of the action
> may as a practical matter impair or impede that
> person's ability to protect that interest, unless
> that person's interest is adequately represented by
> existing parties, the court shall, upon timely
> application, permit that person to intervene.

In the present actions, the government has a significant interest
that defendants cannot adequately represent because only the
government has the ability to assert the state secrets privilege.
See Reynolds, 345 US at 7-8 ("The privilege belongs to the
government and must be asserted by it; it can neither be claimed
nor waived by a private party" and must be "lodged by the head of
the department which has control over the matter, after actual
personal consideration by the officer.").  Hence, only the
government is capable of protecting against the disclosure of
information that it alleges would reasonably endanger national
security interests.

    Although the government's right of intervention is
straightforward, the parties dispute the second predicate — whether
intervention by the government would be grounds for removal under §
1442(a).  According to plaintiffs, the "plain language" of the
statute precludes removal by the government because plaintiffs have
not "commenced" an action "against the United States."  Doc #53 at

United States District Court

For the Northern District of California

4, 06-3596 (citing 28 USC § 1442(a)(1) ("commenced in a State court against * * * [t]he United States * * *").  See also <u>In Re Estate of Bobby Masters</u>, 361 F Supp 2d 1303, 1307 (ED Ok 2005) (federal government's intervention in state court probate proceeding did not support removal because state court matter not "commenced against" United States).

In response, defendants point out that plaintiffs' narrow construal of § 1442(a) belies the case law, as courts regularly permit third-party defendants to remove under § 1442(a)(1). See, e g, <u>IMFC Professional Services of Florida, Inc v Latin American Home Health, Inc</u>, 676 F2d 152, 156 (5th Cir 1982); <u>Johnson v Showers</u>, 747 F2d1228, 1229 (8th Cir 1984); <u>Nolan v Boeing Co</u>, 919 F2d 1058, 1066 (5th Cir 1990).  In <u>United States v Todd</u>, 245 F3d 691 (8th Cir 2001), for example, the Eighth Circuit rejected plaintiff's argument that "the removal of [the] case to federal court was improper because [he] did not sue any federal defendant or rely on any federal law in his complaint."  245 F3d at 693.  The <u>Todd</u> court concluded that the United States, having intervened in the action to raise a federal defense to the production of documents under the Federal Freedom of Information Act, had a right to remove the action under § 1442.  Id.  Defendants' interpretation is also underscored by the Ninth Circuit's determination that the ability of the United States to remove under § 1442 is not keyed to their status as "defendants," which is a statutory prerequisite of removal under § 1441.  <u>Ely Valley Mines, Inc v Hartford Acc and Indem Co</u>, 644 F2d 1310,1314 (9th Cir 1981) ("While [§] 1441 * * * provides for removal 'by the defendant or the defendants,' [§] 1442(a) uses the language * * * of removal 'by them'").

22

United States District Court

For the Northern District of California

1        Accordingly, the court finds that California state law

2    provides the government a right to intervene, which would trigger

3    removal rights under § 1442(a).  As a result, remand would be

4    futile, serving only as a delay and a waste of resources for the

5    parties and the federal and state courts.

6

7                      III

8        In sum, the court finds that plaintiffs' suits give rise

9    to jurisdiction under the "embedded federal issue" doctrine and

10   under the federal officer removal statute, 28 USC § 1442(a)(1).

11   The court also finds that remand would be futile because

12   intervention by the government in state court would render this

13   action removable pursuant to § 1442(a).  Accordingly, the court

14   DENIES plaintiffs' motions to remand.

15

16

17       IT IS SO ORDERED.

18

19   _____

20       VAUGHN R WALKER

21       United States District Chief Judge

22

23

24

25

26

27

28

23