PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
DANIEL J. RICHERT #232208
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
EDWARD R. MCNICHOLAS (admitted *pro hac vice*)
ERIC A. SHUMSKY #206164
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for the AT&T Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | MDL Dkt. No. 06-1791-VRW<br><br>**REPLY MEMORANDUM IN SUPPORT OF JOINDER IN UNITED STATES' MOTION TO STAY PROCEEDINGS PENDING DISPOSITION OF INTERLOCUTORY APPEALS IN *HEPTING v. AT&T CORP.*** |
| This Document Relates To:<br><br>ALL ACTIONS | Date: February 9, 2007<br>Time: 2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker |

**TABLE OF CONTENTS**


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THIS COURT LACKS JURISDICTION TO TAKE ANY ACTION CONCERNING THE MATTERS INVOLVED IN THE APPEAL. .......... 2

II. DISCLOSURE IS NOT AVAILABLE UNDER 50 U.S.C. § 1806(F) AND, IN ANY EVENT, WOULD UNJUSTIFIABLY IMPOSE AN EXCEPTIONAL BURDEN ON AT&T AND UNWARRANTED RISK TO NATIONAL SECURITY. .......... 5

A. Section 1806(f)'s *In Camera*, *Ex Parte* Procedures Do Not Apply Here .......... 5

B. *In Camera*, *Ex Parte* Disclosures Cannot Be Justified In Light Of The Substantial Risks And Burdens Created By Such A Process. .......... 7

III. PLAINTIFFS' REMAINING PROPOSALS ARE UNSOUND. .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## CASES

Al-Haramain Islamic Found., Inc. v. Bush,
451 F. Supp. 2d 1215 (D. Or. 2006),
appeal docketed, No. 06-36083 (9th Cir. Dec. 22, 2006) ..... 5

Britton v. Co-op Banking Group,
916 F.2d 1405 (9th Cir. 1990) ..... 2

Chiron Corp. v. Abbott Labs.,
No. C-93-4380 MHP, 1996 WL 15758, 1996 U.S. Dist. LEXIS 317
(N.D. Cal. Jan. 3, 1996) ..... 8

CIA v. Sims,
471 U.S. 159 (1985) ..... 11

City of Los Angeles v. Santa Monica Baykeeper,
254 F.3d 882 (9th Cir. 2001) ..... 2, 3, 4

Ellsberg v. Mitchell,
709 F.2d 51 (D.C. Cir. 1983) ..... 10

In re Grand Jury Proceedings of the Special April 2002 Grand Jury,
347 F.3d 197 (7th Cir. 2003) ..... 7

Halkin v. Helms,
598 F.2d 1 (D.C. Cir. 1978) ..... 6

Hepting v. AT&T Corp.,
No. 06-672-VRW, 2006 WL 1581965, 2006 U.S. Dist. LEXIS 41160
(N.D. Cal. June 6, 2006) ..... 11

Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,
536 F.2d 1268 (9th Cir. 1976) ..... 4

In re Nat'l Sec. Agency Telecommc'ns Records Litig.,
444 F. Supp. 2d 1332 (J.P.M.L. 2006) ..... 8

In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,
460 F.3d 1217 (9th Cir. 2006) ..... 8

Kasza v. Browner,
133 F.3d 1159 (9th Cir. 1998) ..... 11

Kotrous v. Goss-Jewett Co. of N. Cal.,
No. Civ. S021520, 2005 WL 2452606, 2005 U.S. Dist. LEXIS 43010
(E.D. Cal. Oct. 4, 2005) ..... 8

Landis v. N. Am. Co.,
299 U.S. 248 (1936) ..... 8

Levya v. Certified Grocers of Cal., Ltd.,
593 F2d 857 (9th Cir. 1979) .......... 8

Masalosalo by Masalosalo v. Stonewall Ins. Co.,
718 F.2d 955 (9th Cir. 1983) .......... 4

Sterling v. Tenet,
416 F.3d 338 (4th Cir. 2005),
cert. denied sub nom. Sterling v. Goss,
126 S. Ct. 1052 (2006) .......... 9

United States v. Falvey,
540 F. Supp. 1306 (E.D.N.Y. 1982) .......... 6

United States v. Ott,
827 F.2d 473 (9th Cir. 1987) .......... 6

United States v. Reynolds,
345 U.S. 1 (1953) .......... 9, 10

United States v. Thorp,
655 F.2d 997 (9th Cir. 1981) .......... 5

**STATUTES**

50 U.S.C. § 1801(k) .......... 5

50 U.S.C. § 1806(f) .......... passim

**LEGISLATIVE HISTORY**

H. Conf. Rep. 95-1720 (1978) .......... 6

## INTRODUCTION

As AT&T explained in its initial Joinder, this Court is jurisdictionally barred in *Hepting* from conducting any proceeding that relates to the state secrets and *Totten* issues that are currently pending before the Ninth Circuit. In their Opposition to Government Motion to Stay Proceedings (Dkt. 128) ("Opp'n"), Plaintiffs modify their previous positions to avoid the most obvious points of conflict with this principle. For example, they disavow certain prior requests, such as litigating their motion for a preliminary injunction or requiring AT&T or the government to produce to them discovery that would implicate state secrets. *Compare* Jt. Case Mgmt. Stmt. (Dkt. 61-1) at 33, 38-39 (requesting this), *with* Opp'n at 36 (disavowing this). And other prior requests, such as litigating class certification, are simply not mentioned.

Nonetheless, they continue to urge the Court to press as close to state secrets as possible while the *Hepting* appeal is pending through the use of a subsection of FISA that they appear to regard as a procedural panacea. Plaintiffs urge this Court, in effect, to litigate this matter *in camera* and *ex parte* using the procedures in 50 U.S.C. § 1806(f). But § 1806(f) by its own terms does not apply here. At most, it is a limited mechanism that permits a court to evaluate the legality of "electronic surveillance" if and when the existence of that surveillance already has been established. It does not provide authorization to require the production of "*any* information that the government asserts is secret," Opp'n at 22 (emphasis added); it does not contemplate or authorize the filing of Answers *ex parte* and *in camera*; and it does not permit discovery to confirm the existence of suspected but undisclosed and unconfirmed surveillance. A survey of the several dozen decisions nationwide in which the procedures of § 1806(f) have been employed reveals not one in which it has been used as Plaintiffs suggest.

As a practical matter, preparing the sort of submissions Plaintiffs seem to envision would (assuming there were in fact any underlying intelligence activity at issue) be a burdensome and logistically difficult undertaking that would pose significant risks to national security with little corresponding benefit to the litigation. These burdens and risks

are especially unjustified when the pending Ninth Circuit appeals will likely impact virtually every aspect of how this litigation can be conducted, if at all. To proceed in the manner proposed by Plaintiffs would risk mooting the appeal, would contravene important state secrets principles that require the utmost caution to be employed when litigation risks compromising national security secrets, and would betray this Court's "intention to proceed in a careful, step-by-step manner." Opp'n at 7.

Plaintiffs also seek to conduct various other forms of discovery that they claim do not implicate state secrets. But this discovery would not advance the litigation measurably; it too could be mooted by the Ninth Circuit appeal; and none of it would in any way affect the supposed "irreparable harm" that is the focus of Plaintiffs' Opposition. Because this Court is jurisdictionally disabled from proceeding with any litigation of substance, the *only* possible benefit to Plaintiffs is that *if* they prevail in the Ninth Circuit, the litigation *might* proceed marginally more quickly on remand. This game is hardly worth the candle. The appropriate course is to stay the MDL proceedings until the *Hepting* appeal has been resolved.

## ARGUMENT

### I. THIS COURT LACKS JURISDICTION TO TAKE ANY ACTION CONCERNING THE MATTERS INVOLVED IN THE APPEAL.

As explained in AT&T's joinder, "the filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular *issues* involved in that appeal." *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 886 (9th Cir. 2001) (emphasis added); *see* Mem. of Law in Support of Joinder in United States' Mot. to Stay Proceedings Pending Disposition of Interlocutory Appeals in *Hepting v. AT&T Corp.* (Dkt. 100) ("Joinder Mem."), at 3-4. The jurisdictional bar is not limited only to amending or rescinding the actual written *order* on appeal but rather to the substance of the *issues* involved in the appeal: the district court cannot act in a manner that might moot, and therefore render "obsolete," the appeal. *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir. 1990). Here, the *Hepting* appeal involves the scope of the Government's

state secrets privilege, including Plaintiffs' ability to establish their standing, and the applicability of the *Totten* bar. This Court lacks jurisdiction to take any action in *Hepting* that might risk disclosure of the information that the Ninth Circuit could conclude is protected. *See* Joinder Mem. 5-9.

Implicitly acknowledging this point, Plaintiffs no longer seek to litigate their motion for a preliminary injunction; to take discovery from any "governmental or AT&T officials involved in the wiretapping"; or even to receive the fruits of the discovery that they still argue should go forward. Instead, they suggest that discovery should be provided to the Court alone through an unprecedented form of wholesale *ex parte, in camera* litigation under § 1806(f). *See generally* Opp'n at 36; *id.* at 35 (same concession with regard to certifications); *id.* at 35-36 (same concession with respect to discovery regarding allegations in the Klein declaration); *see infra* at Part II (explaining why this procedure would be inappropriate).[1] They do not propose to receive the Answer that they would have Defendants file. *Id.* at 32-34. And they have abandoned any argument that the parties should litigate class certification, *cf.* Jt. Case Mgmt. Stmt. at 22, 33-34 (seeking same); their request to litigate motions regarding the legal implications of certifications, *see id.* at 34; and the appointment of an expert or technical advisor, *see id.* at 47.

Nonetheless, Plaintiffs seem to argue that this Court has jurisdiction to proceed with the *Hepting* litigation—even as to matters that would moot the appeal, or that are the subject of it—so long as the Court refrains from reconsidering, rescinding or modifying its July 20, 2006 order. Opp'n at 38-39 (discussing *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001)). This is wrong, as we have explained. *See* Joinder Mem. at 5-9. *City of Los Angeles* does not hold otherwise; indeed, it reaffirms the

[1] At times, Plaintiffs seem to suggest that the § 1806(f) process might permit the Court to disclose *to them* materials that have been designated as state secrets. For instance, they suggest that the Court may turn over to Plaintiffs information about the existence of certifications. Opp'n at 36. Even if § 1806(f) were an available procedure here—which it is not, *see infra* at Part II.A.—any such disclosure falls squarely within the scope of the government's state secrets assertion, and therefore is jurisdictionally barred pending resolution of the appeal. *See* Joinder Mem. at 7.

hornbook rule that once a court of appeals grants permission to file an interlocutory appeal, "jurisdiction is transferred from a district court to a court of appeals," thereby "divest[ing] the district court of jurisdiction over the particular issues in that appeal." 254 F.3d at 885-86.[2] Plaintiffs offer no justification for their proposed rule that a district court is forbidden from mooting an appeal by reconsidering, rescinding or modifying the order on appeal, but that it can do so any other way—including, as here, by ordering the disclosure of the very material that the government has designated as state secrets. Opp'n at 39. Such a rule would undermine the jurisdiction of the Court of Appeals, and contravenes the clear logic of the jurisdictional bar.

Plaintiffs also suggest that the "'rule of exclusive appellate jurisdiction is a creature of judicial prudence . . . and is not absolute.'" Opp'n at 38 (quoting *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983)). This does not mean, as Plaintiffs would have it, that a district court retains total flexibility to act as it sees fit pending the appeal. That proposed rule is inconsistent with the authority mandating that the district court has no jurisdiction to address the issues that are on appeal. *See* Joinder Mem. at 3. *Masalosalo* and its predecessors address the converse question—they mean that district courts may proceed with matters that will *not* moot the appeal, and that they retain the power to act when necessary to preserve the status quo. *See, e.g.*, *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) (holding that a district court could alter the terms of an injunction while an appeal was pending because, "as the days pass, new facts are created by the parties and the maintenance of the status quo requires new action"). This principle militates squarely in favor of a stay here, because permitting Plaintiffs to conduct discovery into matters asserted by the United States to include state secrets could *modify* the status quo by compromising such secrets, which is

---

[2] *City of Los Angeles* focused on what a district court has the power to do while a request for interlocutory appeal is pending in a court of appeals, *see* 254 F.3d at 886; it said nothing to limit the scope of the well-recognized jurisdictional bar that arises once an appeal is pending before the court of appeals.

indeed the point of the requested discovery. Consequently, when an issue of privilege is on appeal, the district court lacks jurisdiction to order disclosure or otherwise jeopardize the confidentiality of the assertedly privileged information. *See United States v. Thorp*, 655 F.2d 997, 999 (9th Cir. 1981); *see also* Joinder Mem. at 3-4 & n.3 (discussing same).

## II. DISCLOSURE IS NOT AVAILABLE UNDER 50 U.S.C. § 1806(f) AND, IN ANY EVENT, WOULD UNJUSTIFIABLY IMPOSE AN EXCEPTIONAL BURDEN ON AT&T AND UNWARRANTED RISK TO NATIONAL SECURITY.

For every piece of discovery that is jurisdictionally barred or protected by the state secrets privilege or *Totten*, Plaintiffs now suggest that AT&T should be required to submit responses *in camera* and *ex parte*, under the auspices of 50 U.S.C. § 1806(f). Opp'n at 18-22, 32-36. But § 1806(f) does not apply here. And, even if it did, Plaintiffs' proposal ignores the substantial risks and burdens that would be involved in the proceeding that they suggest—risks and burdens that cannot be justified at this juncture given the possibility that they will be rendered unnecessary by the *Hepting* appeal.

### A. Section 1806(f)'s *In Camera, Ex Parte* Procedures Do Not Apply Here.

Plaintiffs argue at length that 50 U.S.C. § 1806(f) makes available (and indeed, mandates the Court to require) the *in camera*, *ex parte* disclosure of discovery responses and an Answer to the *Hepting* complaint. Opp'n at 18-22. By its plain terms, however, § 1806(f) is not meant to be used as Plaintiffs suggest, as a device to facilitate civil litigation to confirm suspected but unconfirmed surveillance in allegedly ongoing intelligence programs. Section 1806(f)'s purpose is instead to permit one whose communications were electronically surveilled to have a court determine the legality of that surveillance. Thus, § 1806(f) may be invoked only by an "aggrieved person," *see Al-Haramain Islamic Found., Inc. v. Bush*, 451 F. Supp. 2d 1215, 1231 (D. Or. 2006), *appeal docketed*, No. 06-36083 (9th Cir. Dec. 22, 2006), which is defined as "a person who is the target of an electronic surveillance or any other person whose communications were subject to electronic surveillance," 50 U.S.C. § 1801(k). The § 1806(f) procedure is for the limited purpose of "determin[ing] whether the surveillance of the aggrieved person was lawfully

authorized and conducted." 50 U.S.C. § 1806(f); *accord* H. Conf. Rep. 95-1720, at 4060-61 (1978) (§ 1806 is an "in camera procedure for determining legality"; noting that "[t]he conferees agree that an in camera and ex parte proceeding is appropriate for determining the lawfulness of electronic surveillance in both criminal and civil cases"). In short, only one who was "the target of" or "subject to" electronic surveillance can invoke § 1806(f),[3] and only for the limited purpose of having the court determine the legality of that known surveillance. *See generally* U.S.' Reply in Support of the Assertion of the Military and State Secrets Privilege (*Hepting* Dkt. 245) ("U.S. Reply re Mot. to Dismiss") at 18-23. Plaintiffs' effort to invoke § 1806(f) therefore fails, for a series of reasons.

*First*, Plaintiffs have not shown that they are "aggrieved persons" who were subjected to electronic surveillance within the meaning of FISA, *see supra* note 3, and so at the threshold fall outside of § 1806(f). Nor will they ever be able to make this showing, given the extent to which the state secrets privilege protects the identity of surveillance targets from discovery, Negroponte Decl. ¶ 12 (*Hepting* Dkt. 124-1); Alexander Decl. ¶ 8 (*Hepting* Dkt. 124-2); *see Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978)—and they certainly cannot show this while the appeal is pending, given the centrality of this question to the state secrets assertion that is on appeal. Plaintiffs would expand § 1806(f) beyond its narrow, defined purpose, and treat it as authorizing wide-ranging intrusions into the state secrets privilege in order to identify government surveillance targets, based on nothing more than mere allegations of government surveillance activity. Nothing in the text or legislative history of § 1806(f) supports Plaintiffs' proposed use of § 1806(f). And Congress plainly could not have intended § 1806(f) to function this way: the pernicious

[3] *See United States v. Falvey*, 540 F. Supp. 1306, 1310 n.10 (E.D.N.Y. 1982) (noting that one of the defendants "is not an aggrieved person" because "there is no indication in the logs that [his] conversations were intercepted"); *see also United States v. Ott*, 827 F.2d 473, 475 n.1 (9th Cir. 1987) ("Because [the defendant's] communications were subject to surveillance, he is an aggrieved person with standing to bring a motion to suppress pursuant to section 1806(e).").

implications of providing a statutory mechanism for initiating civil lawsuits to determine the existence of suspected clandestine surveillance are too obvious to bear elaboration.

Plaintiffs have not pointed to a single case in which § 1806(f) procedures were used in the manner they propose. *Cf. In re Grand Jury Proceedings of the Special April 2002 Grand Jury*, 347 F.3d 197, 203 (7th Cir. 2003) (court could not find any case in which § 1806(f) *in camera* submissions were provided to the aggrieved person). A survey of the more than three dozen cases in which § 1806(f) has been cited in federal courts since the passage of FISA in 1978 reveals no such case. There is no basis whatsoever to conclude that § 1806(f) was meant to "narrow" the state secrets privilege in the radical and unprecedented manner proposed by Plaintiffs. Opp'n at 19. There is no indication, in the statute or its legislative history, that Congress intended such an extraordinary incursion into the constitutionally rooted authority of the executive branch to safeguard military and intelligence secrets. *See* U.S. Reply re Mot. to Dismiss (Dkt. 245) at 20-21.

*Second*, Plaintiffs erroneously suggest that the Court is *required* to conduct *in camera*, *ex parte* review now. *See* Opp'n at 19. The text of the statute points in precisely the opposite direction. The court "shall" conduct such review *only* "as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f). But here, no such review is "necessary" at the present time. On the contrary, there is no cause to conduct any such review, because even if Plaintiffs were "aggrieved persons" (and even if the Court determined that the alleged surveillance occurred and was not "lawfully authorized and conducted"), no such determination could be revealed (publicly or to Plaintiffs) while the Ninth Circuit is considering the scope of the state secrets assertion.

### B. *In Camera, Ex Parte* Disclosures Cannot Be Justified In Light Of The Substantial Risks And Burdens Created By Such A Process.

Even if the § 1806(f) procedure were available here, there are compelling reasons not to employ it in advance of a final determination of the proper scope and application of the state secrets privilege in this case. Plaintiffs ask that materials implicating state secrets

be produced to, and held by, the Court. This makes clear that even employing the § 1806(f) mechanism in the manner suggested by the Plaintiffs would not meaningfully advance the litigation, permit resolution of disputes concerning the privileged materials or information, or, therefore, alleviate or diminish the supposedly irreparable harm that Plaintiffs claim to be suffering while the appeal is pending. The thrust of Plaintiffs' claim is that the case should go forward because the balance of harms tips sharply in their favor.[4] Opp'n at 9-22. However, there is *no* possibility that Plaintiffs' claimed harm could be alleviated pending the appeal because, as Plaintiffs properly concede, there can be no litigation of a

---

[4] Plaintiffs are mistaken to argue that the rigid test that applies to a request for staying an injunction applies here. Opp'n at 5-7. Rather, the standard for a stay pending appeal is substantially more discretionary. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."); *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."); *see also Kotrous v. Goss-Jewett Co. of N. Cal.*, No. Civ. S021520, 2005 WL 2452606, at *5, 2005 U.S. Dist. LEXIS 43010 (E.D. Cal. Oct. 4, 2005) (granting stay pending interlocutory appeal: "'A district court has inherent discretion to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants.'"); *Chiron Corp. v. Abbott Labs.*, No. C-93-4380 MHP, 1996 WL 15758, at *1, 1996 U.S. Dist. LEXIS 317 (N.D. Cal. Jan. 3, 1996) (considering request for stay pending interlocutory appeal and citing *Landis*). This is for good reason. Whereas the standard for *staying* an injunction mirrors the standard for *granting* the injunction—both concern the same irreparable injury and balancing of harms—the decision whether to stay litigation pending an appeal raises a very different set of issues, specifically, the efficient management of the court's docket. Indeed, in the context of MDL proceedings like these, in which sensitive national security issues are at stake, a district court's discretion to manage its docket is at its height. *See In re Nat'l Sec. Agency Telecommc'ns Records Litig.*, 444 F. Supp. 2d 1332, 1334 (J.P.M.L. 2006) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (particularly with respect to matters involving national security), and conserve the resources of the parties, their counsel and the judiciary."); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) ("[M]ulitdistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceedings as a whole, which necessarily includes keeping the parts in line.").

preliminary injunction, much less an ultimate resolution of the merits. And the § 1806(f) process they propose would impose substantial burdens on the parties and risks to national security.

Plaintiffs ignore the considerable practical difficulties inherent in the procedures they propose. If one accepts (for the sake of argument only) Plaintiffs' assumption that one or more Defendants have participated in classified intelligence activities of the type they have alleged, then even the preparation of discovery responses or an Answer—which Plaintiffs treat as the simplest of tasks, *see* Opp'n at 32-36—would be immensely burdensome. For Plaintiffs' proposed procedure to work, defense counsel would need to have high-level security clearances. If such clearances were granted, counsel could review the relevant documents (if any) only in special secure facilities outside of their law offices, and *ex parte*, *in camera* submissions of the type Plaintiffs envision could be prepared only on secure computer systems in such facilities. Any communication about these materials—between lawyers and clients, or even between lawyers in a single office—could occur only in secure facilities, or using secure phone lines and specialized phone equipment not generally available within private law offices. Transmitting any classified materials—whether to the client, to the government for the review that Plaintiffs propose, *see* Opp'n at 33, or to the Court—would require access to secure government communication channels or hand-delivery by federal agents. Storage of the resulting materials, if any, would require access to Sensitive Compartmented Information Facilities (SCIFs). In short, the process that Plaintiffs propose would entail extraordinary burdens and is not, as they appear to believe, a matter of typing up drafts and emailing them around over the public Internet.

Even strict adherence to these security procedures could not remove the risk to national security posed by *in camera* review. As the Fourth Circuit recognized in *Sterling v. Tenet*, so-called creative solutions, "whatever they might be, still entail considerable risk. Inadvertent disclosure . . . even in camera [] is precisely the sort of risk that *Reynolds* attempts to avoid." 416 F.3d 338, 348 (4th Cir. 2005), *cert. denied sub nom. Sterling v. Goss*, 126 S. Ct. 1052 (2006); *see United States v. Reynolds*, 345 U.S. 1, 10 (1953) (when

the validity of the privilege is clear, "the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers"); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 n.31 (D.C. Cir. 1983) ("[*E*]*x parte, in camera* examination of the requested material by the trial judge [] is not entirely safe."). Put otherwise, even were it appropriate to balance the potential harms to the parties in determining whether to grant the stay, the procedure that Plaintiffs propose carries significant risks to national security and contravenes important principles regarding the extreme care with which state secrets issues are supposed to be handled by the courts. *See Reynolds*, 345 U.S. at 11 ("[E]ven the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.").

These risks to national security and burdens to litigants would result in no real, immediate benefit to the Plaintiffs. Filing an Answer *in camera*, for instance, serves no purpose: as we have explained, the whole point of filing an Answer is to "'apprise the plaintiff and any other opposing parties which of the allegations in the complaint are contested,'" Joinder Mem. at 8. In seeking to require AT&T to prepare an Answer, Plaintiffs simply dispute that the information that would appear would constitute state secrets. Opp'n at 32. This argument is foreclosed by the jurisdictional bar. Plaintiffs next seek to require production under § 1806(f), *id.* at 32-33, but § 1806 has nothing whatsoever to do with the filing of an answer. As noted above, its purpose is limited to certain disclosures to permit a court to adjudicate the lawfulness of known surveillance. Finally, Plaintiffs suggest a full "trial *in camera*," *id.* at 34, presumably with disclosure of any certifications to Plaintiffs. This unquestionably falls within the jurisdictional bar. And at the end of the day, this entire exercise would be for naught if the Ninth Circuit determines that the state secrets privilege applies. Under those circumstances, and given the burdens and risks that necessarily would attend the process that Plaintiffs propose, the prudent course is for this Court to stay proceedings.

## III. PLAINTIFFS' REMAINING PROPOSALS ARE UNSOUND.

Finally, Plaintiffs suggest other topics that, they claim, do not implicate state secrets at all. Opp'n at 27-31. They seek discovery, for instance, into certain public statements, *id.* at 28-30, and AT&T's "network architecture," *id.* at 30-31, among other things. Certain of these requests are obviously out of bounds. This Court is jurisdictionally foreclosed, for instance, from revealing to Plaintiffs the existence of certifications because that information falls within the scope of the government's state secrets assertion.[5] Other proposals, such as the discovery into network architecture, are transparently aimed at ascertaining information about whether AT&T participated in purported government surveillance activities. The claim that this discovery is necessary "to determine class membership" is a fig leaf; Plaintiffs do not even attempt to explain why network architecture is necessary to establish class membership, *see* Opp'n at 30-31, nor, even if it were, why such discovery is not protected by the state secrets assertion. *See CIA v. Sims*, 471 U.S. 159, 176 (1985) (recognizing that publicly available information cannot be disclosed if it could confirm or deny the identity of an intelligence source); *see also Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) ("if seemingly innocuous information is part of a classified mosaic, the state secrets privilege may be invoked to bar its disclosure"). Similarly, Plaintiffs' request for information about the alleged San Francisco facility "as well as similar facilities," *see* Opp'n at 31, is, if Plaintiffs' allegations were to be credited, in essence a direct request for information concerning sources and methods of intelligence-gathering by the NSA. In any event, given the likelihood that this discovery will be in vain, there can be no current justification for ordering the production of such closely held, proprietary information.

---

[5] *See* Opp'n at 35 (proposing discovery of certifications); *but cf. Hepting v. AT&T Corp.*, No. 06-672-VRW, 2006 WL 1581965, at *2, 2006 U.S. Dist. LEXIS 41160 (N.D. Cal. June 6, 2006) ("[T]he privilege as claimed prevents the disclosure of any certification. And because the 'legal process' could not require AT&T to disclose a certification if the state secrets privilege prevented such disclosure, discovery on the certification issue cannot proceed unless the court determines that the privilege does not apply with respect to that issue.").

As to the remainder of Plaintiffs' requests, there is no reason to proceed with this discovery at this time. Certain of the other requested discovery is unnecessary on any standard—for instance, the request that Defendants be put to the burden of producing publicly available regulatory filings to Plaintiffs. *See* Opp'n at 29 pts. 3, 4. And none of this discovery could meaningfully advance the litigation because of the jurisdictional bar raised by the pendency of the Ninth Circuit appeal. At most, it would represent expensive busy work, all with the potential to be rendered moot by the Ninth Circuit's decision. And even if the Ninth Circuit resolved the appeal in a fashion that permitted the litigation to continue, everything that Plaintiffs seek to do now could occur in short order after the Ninth Circuit renders judgment and provides guidance to the parties and this Court.

## CONCLUSION

For the reasons set forth above and in AT&T's Joinder Memorandum, this Court should stay all MDL proceedings pending disposition of the appeals in *Hepting v. AT&T Corp.*

Dated: February 1, 2007.


PILLSBURY WINTHROP
SHAW PITTMAN LLP
BRUCE A. ERICSON
DAVID L. ANDERSON
JACOB R. SORENSEN
MARC H. AXELBAUM
DANIEL J. RICHERT
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By /s/ Bruce A. Ericson
Bruce A. Ericson

SIDLEY AUSTIN LLP
DAVID W. CARPENTER*
BRADFORD A. BERENSON*
DAVID L. LAWSON*
EDWARD R. MCNICHOLAS*
ERIC A. SHUMSKY
1501 K Street, N.W.
Washington, DC 20005

* admitted *pro hac vice*

By /s/ Bradford A. Berenson
Bradford A. Berenson

*Attorneys for the AT&T Defendants*