PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov
ANDREW H. TANNENBAUM
andrew.tannenbaum@usdoj.gov
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 514-4263
Fax:     (202) 616-8470/(202) 616-8202

*Attorneys for Federal Defendants in their Official Capacities
and Federal Intervenor-Defendants (United States of America,
National Security Agency, President George W. Bush)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | **No. M:06-CV-01791-VRW**<br><br>**UNITED STATES' REPLY IN SUPPORT OF A STAY OF PROCEEDINGS**<br><br>Date:         February 9, 2007<br>Time:         2:00 p.m.<br>Courtroom:   6, 17th Floor<br>Judge:        Hon. Vaughn R. Walker |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     THE GOVERNMENT HAS SATISFIED THE PROPER LEGAL
       STANDARD FOR A STAY OF PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.     The Standards for Injunctive Relief Do Not Apply Here. . . . . . . . . . . . . . . . . . 2

       B.     The Non-*Hepting* Cases Should Be Stayed Pending the *Hepting* Appeal. . . . . . 3

II.    THE COURT LACKS JURISDICTION TO PROCEED IN *HEPTING*. . . . . . . . . . . . . 4

III.   A STAY PENDING THE *HEPTING* APPEAL IS APPROPRIATE IN
       *HEPTING* AND ALL CASES IN THIS MDL PROCEEDING. . . . . . . . . . . . . . . . . . . . 6

       A.     The Key Issues Raised in the *Hepting* Appeal Will Have A Direct
              Bearing on Further MDL Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       B.     The Balance of Harms Favors a Stay of Proceedings. . . . . . . . . . . . . . . . . . . . . 8

IV.    FISA SECTION 1806(f) IS INAPPLICABLE**.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

2

# TABLE OF AUTHORITIES

3

**CASES**                                                                          **PAGE(s)**

4

5

*Abassi v. Immigration and Naturalization Service*,
    143 F.3d 513 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6

*ACLU Foundation v. Barr*, 952 F.2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . passim

7

*ACLU v. NSA,* 439 F. Supp. 2d 974 (E.D. MI 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8

*Afshar v. Department of State*, 702 F.2d 1125 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 8

9

*Al-Haramain v. NSA*, 451 F. Supp. 2d 1215 (D. Ore. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

10

*Britton v. Co-Op Banking Group*, 916 F.2d 1405 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 4, 5

11

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

12

*City of Los Angeles Harbor Division v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13

*Flynt Distributing Co. v. Harvey*, 734 F. 2d 1389 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . 9

14

*Gomez v. Vernon*, 255 F. 3d 1118, 1129 (9th Cir.), *cert. denied*, 534 U.S. 1066 (2001) . . . . . . . 8

15

*Grauberger v. St. Francis Hospital*, 169 F. Supp. 2d 1172 (N.D. Cal. 2001) . . . . . . . . . . . . . . . 5

16

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) . . . . . . . . . . . . . . . . . . . . . . . 4

17

*Hepting et al. v. AT&T et al.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006): (I) . . . . . . . . . . . . . . passim

18

*In re Grand Jury Investigation*, 431 F. Supp.2d 584 (E.D.Va. 2006) . . . . . . . . . . . . . . . . . . . . . 13

19

*In re Grand Jury Proceedings of the Special April 2002*
    *Grand Jury*, 347 F.3d 1973 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20

*In re Grand Jury Proceedings*, 856 F.2d 685, 688 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 14

21

*In re: National Security Agency Telecommunications Record*
    *Litigation*, 444 F. Supp. 2d 1332 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22

*In re Sealed Case*, 310 F.3d 717 (For. Intel. Surv. Rev. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 14

23

*Jago v. United States District Court*, 570 F.2d 618 (6th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . 5

24

*Landis v. North American Co.*, 299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25

*Levya v. Certified Growers of California, Ltd.*, 593 F.2d 857 (9th Cir.)
    *cert. denied*, 444 U.S. 827 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26

27

28

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983) . . . . . . . . 3

*Norfolk Redevelopment and Housing Authority v. Chesapeake*
    *and Potomac Telephone Co. of Norfolk*, 464 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Silver Sage Partners Ltd. v. City of Desert Hot* Springs, 251 F.3d 814 (9th Cir. 2001) . . . . . . . . 8

*Smallwood v. National Can Company*, 583 F.2d 419 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . 8

*Sterling v. Tenet,* 416 F.3d 338 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1052 (2006) . . . . . . . . 8

*Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Totten v. United States*, 92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*United States v. Damrah*, 412 F. 3d 618 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Hammoud*,  381 F.3d 316 (4th Cir. 2004),
    *vacated and remanded on other grounds*, 543 U.S. 1097 (2005) . . . . . . . . . . . . . . . . . . . 12

*United States v. Johnson*, 952 F.2d 565 (1st Cir.)*, cert. denied*, 506 U.S. 816 (1992) . . . . . . . . 12

*United States v. Milligan*, 324 F. Supp. 2d 1062 (D. Ariz. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Ott*, 827 F.2d 473 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Sarkisasian*, 841 F.2d 959 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000),
    *cert. denied*, 532 U.S. 971 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Thorp*, 655 F.2d 997 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*WCI Cable, Inc. v. Alaska Railroad Corp.*, 285 B.R. 476 (D. Ore. 2002) . . . . . . . . . . . . . . . . . 3

## STATUTES

50 U.S.C. § 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## LEGISLATIVE MATERIAL

S. REP. 95-701,1978 U.S.C.C.A.N. 3973 1978 WL 8594 . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

H.R. Conf. Rep. No. 95-1740, 1978 U.S.C.C.A.N. 4048 (Oct. 5. 1978) . . . . . . . . . . . . . . . . . . 12

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 56   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Rule 12(b)(6)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

### <u>INTRODUCTION</u>

2      The cases in this multi-district litigation ("MDL") proceeding raise claims closely related

3 to those raised in the pending appeal in *Hepting et al. v. AT&T et al.*, 439 F. Supp. 2d 974 (N.D.

4 Cal. 2006), a case that challenges: (i) alleged warrantless surveillance of Plaintiffs conducted by

5 the National Security Agency with the alleged assistance of defendant telecommunication

6 carriers; and (ii) the alleged provision of telephone communications records to NSA by the

7 defendant carriers.  In that appeal, the Ninth Circuit will decide whether any such claims may

8 proceed or whether the state secrets privilege doctrine requires their dismissal, and will therefore

9 directly address a number of issues that arise in both *Hepting* and the remaining MDL cases—

10 including whether there should be further proceedings at all.  Rushing to decide the same claims

11 and state secrets privilege assertion in those other cases while the *Hepting* appeal is pending

12 would not only impose substantial and unnecessary burdens, but would also present the very

13 risks associated with protecting state secrets in litigation.  Plaintiffs' position, which includes

14 taking significant discovery that Plaintiffs concede would require reasserting precisely the same

15 state secrets privilege claim at issue in *Hepting*, is nothing more than an invitation to engage in

16 inefficient and potentially harmful proceedings that will not materially advance these cases.

17      Plaintiffs begin by framing the standard of review incorrectly and, as a consequence of

18 that error, proceed along several meritless tangents.  Plaintiffs first argue erroneously that, to

19 obtain a stay, the Government must satisfy the standards for obtaining an injunction.  But the

20 Government is not seeking injunctive relief, nor to stay any injunctive order of this Court.  The

21 standards that apply to injunctive relief play no role where a party seeks to stay district court

22 proceedings pending the outcome of a parallel proceeding that may resolve closely related

23 issues.

24      Proceeding from the wrong standards, Plaintiffs next contend that a stay cannot be

25 entered in the non-*Hepting* cases because the litigants there are not parties to the *Hepting* appeal

26 and, thus, cannot demonstrate that they are likely to prevail in that appeal.  This argument is

27 specious.  Neither logic nor case law forecloses the Government and non-*Hepting* defendants

28 from obtaining a stay of all the MDL cases based on the close correlation between the issues

they raise and the *Hepting* appeal, wholly apart from standards for injunctive relief.

The balance of Plaintiffs' opposition is devoted almost entirely to the *Hepting* case and proposes myriad discovery and other steps directed at AT&T, notwithstanding the pending appeal. As the United States has previously demonstrated, all of Plaintiffs' proposed activities implicate the key issues on appeal, including but not limited to whether the case must be dismissed at the outset under the *Totten* doctrine, *see Totten v. United States*, 92 U.S. 105 (1875), and state secrets privilege; whether Plaintiffs' standing can be established without state secrets confirming or denying whether they are subject to surveillance activities; and whether evidence needed to decide the claims on the merits implicates state secrets.

With respect to such activities in *Hepting* itself, the *Hepting* appeal has divested the Court of jurisdiction to proceed as Plaintiffs propose. And to the extent Plaintiffs propose such activities in cases other than *Hepting* (it is hardly clear from their brief that they do), the Government should not be put to the burdens and risks of re-asserting the state secrets privilege as to the very same issues now on appeal up to the point of actual disclosure of state secrets. The Court of Appeals is presently considering whether (and how) the state secrets at issue in these cases should be protected, and whether further proceedings to adjudicate the claims at issue are appropriate. The burdens and harms on the Government and carrier defendants of proceeding as Plaintiffs propose far outweigh Plaintiffs' speculative allegations of harm.[1] These cases should therefore be stayed pending the *Hepting* appeal.

## ARGUMENT

## I.   THE GOVERNMENT HAS SATISFIED THE PROPER LEGAL STANDARD FOR A STAY OF PROCEEDINGS.

### A.   The Standards for Injunctive Relief Do Not Apply Here.

Plaintiffs erroneously contend that the standard for obtaining injunctive relief applies whenever a party seeks a stay of proceedings pending resolution of related issues on appeal.

---

[1] As the Government recently notified the Court, any electronic surveillance that was occurring as part of the Terrorist Surveillance Program ("TSP") will now be conducted subject to the approval of the Foreign Intelligence Surveillance Court, and the President has decided not to reauthorize the TSP. *See* Notice by the United States of Attorney General's Letter to Congress (Dkt. No. 127, Jan. 17, 2007)).

1   They are wrong.  Those standards apply where a stay application seeks or would have the effect

2   of injunctive relief, such as when a party seeks to stay the injunctive effect of an order pending

3   appeal.  Where that circumstance is not present, a party seeking to stay proceedings pending the

4   outcome of a related appellate proceeding need not satisfy the standards for injunctive relief.

5   Instead, as the Supreme Court has observed, "[a] trial court may, with propriety, find it is

6   efficient for its own docket and the fairest course for the parties to enter a stay of an action

7   before it, pending resolution of independent proceedings which bear upon the case." *See Landis*

8   *v. North American Co.,* 299 U.S. 248, 254 (1936); *see also Levya v. Certified Growers of*

9   *California, Ltd.*, 593 F.2d 857, 863 (9th Cir.), *cert. denied*, 444 U.S. 827 (1979); *Mediterranean*

10  *Enterprises, Inc. v. Ssangyong Corp*., 708 F.2d 1458, 1465 (9th Cir. 1983).  While the parties

11  may dispute how the Court should weigh the competing considerations, the notion that injunctive

12  standards apply to the question is wrong.[2]

13  **B.      The Non-*Hepting* Cases Should Be Stayed Pending the *Hepting* Appeal.**

14          Plaintiffs next proffer an untenable theory as to why the non-*Hepting* cases should not be

15  stayed.  Plaintiffs contend that "because the non-AT&T cases are *not under appeal*, it is

16  impossible for the non-movants to meet the likelihood-of-success standard for a stay pending

17  appeal in those cases, since they obviously have no likelihood of a successful appeal where no

18  appeal is pending." *See* Pls. Opp.  at 8 (original emphasis).  This contention is clearly wrong.  A

19  movant need not be a party to a parallel appellate proceeding to obtain a stay of its own related

20  proceeding.  The Government and non-*Hepting* movants most surely can obtain a stay of the

21

22

23          [2] The cases on which Plaintiffs rely are inapposite.  In *Abassi v. Immigration and
    Naturalization Service*, 143 F.3d 513 (9th Cir. 1998), the party seeking a stay pending appeal
    sought to halt the operation of a deportation order—very clearly invoking the injunctive powers
    of the court.  Likewise, in *United States v. Milligan*, 324 F. Supp. 2d 1062 (D. Ariz. 2004), the
    party seeking a stay sought to halt enforcement of a subpoena—again clearly an issue of
    injunctive relief.  In *WCI Cable, Inc. v. Alaska Railroad Corp.*, 285 B.R. 476 (D. Ore. 2002),
    the district court declined to stay further proceedings in a bankruptcy dispute pending its own
    review of an appeal from the Bankruptcy Court concerning whether the defendants in that case
    had immunity.  But a key reason the court denied the stay motion was precisely because, if it
    ruled against defendants' immunity claim, district court proceedings would *then* be stayed
    pending appeal to the Ninth Circuit.

1    non-*Hepting* MDL cases on the ground that *Hepting* raises similar issues that may simplify

2    issues of fact or law in the MDL cases, and that further proceedings in the meantime may be

3    unduly burdensome, ultimately rendered unnecessary, or may harm the movant's interests.  *See*

4    *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2004) (citing *CMAX, Inc. v. Hall*, 300

5    F.2d 265 (9th Cir. 1962)).  Indeed, if Plaintiffs were correct, a party could never seek a stay

6    pending proceedings in another related matter—which is simply not the law.  Moreover, the very

7    purpose of MDL proceedings "is to prevent inconsistent pretrial rulings (particularly with

8    respect to matters involving national security), and conserve the resources of the parties, their

9    counsel and the judiciary."  *See In re: National Security Agency Telecommunications Record*

10   *Litigation*, 444 F. Supp. 2d 1332, 1334 (J. P. M. L. 2006).  The Court undoubtedly has authority

11   to grant the stay relief requested by the non-*Hepting* defendants.

12   **II.     THE COURT LACKS JURISDICTION TO PROCEED IN *HEPTING*.**

13           Not until the end of their opposition, after an extensive discussion of specific discovery

14   they believe should proceed in *Hepting*, do Plaintiffs address the threshold issue of whether the

15   Court even has jurisdiction to proceed in that case.[3]  As Plaintiffs must acknowledge, an

16   interlocutory appeal divests the district court of jurisdiction as to the particular issues involved in

17   the appeal.  *City of Los Angeles Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 885

18   (9th Cir. 2001) (citing *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982); *see*

19   *also Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1411 (9th Cir. 1990).  Thus, the question is

20   not whether the Court has lost jurisdiction in *Hepting* (it plainly has), but as to what issues.

21           Plaintiffs contend that the only jurisdictional bar on further proceedings in *Hepting* is that

22   the Court cannot reconsider its order denying the Government's motion to dismiss.  *See* Pls.

23   Opp. at 38-39.  Plaintiffs' analysis is again wrong.[4]  The Ninth Circuit held long ago, in the very

24   context of an interlocutory appeal as to privileged information, that a district court cannot

25

26          [3]  The Government does not contend that the Court has been divested of jurisdiction in
     the other MDL cases by virtue of the *Hepting* appeal.

27
28          [4]  To the extent Plaintiffs contend that the Court would be precluded from *upholding* any
     further state secrets privilege assertions in *Hepting* if the case proceeds, on the ground that this
     would "reconsider" its prior order, that obviously is specious.

proceed to consider substantially the same issue of privilege that is pending on appeal. *United States v. Thorp*, 655 F.2d 997, 999 (9th Cir. 1981) (district court cannot hold attorney in civil contempt for protecting attorney-client privileged information where interlocutory appeal pending as to whether same attorney protecting same information should be held in criminal contempt). The law is clear that a district court can proceed only as to "*independent issues presented in the underlying case.*" *Britton*, 916 F.2d at 1405 (emphasis added); *Jago v. United States District Court*, 570 F.2d 618, 622 (6th Cir. 1978) (matter proceeding in district "did not in any way relate to" matter pending on appeal); *Grauberger v. St. Francis Hospital*, 169 F. Supp. 2d 1172, 1175 n.2 (N.D. Cal. 2001) (further proceedings in district court "does not implicate" issues raised on interlocutory appeal). This well-established rule is an important jurisdictional doctrine intended to "prevent confusion and inefficiency that would result if both the district court and the court of appeals were adjudicating the same issues simultaneously." *Id.* (finding jurisdiction over Rule 11 motion for fees because it was "uniquely separable" from merits issues on appeal).

Yet proceeding in *Hepting* on the very same issues that are presently before the Court of Appeals is precisely what Plaintiffs propose. For example, Plaintiffs once again demand the right to obtain discovery as to AT&T's alleged participation in the alleged surveillance activities, including discovery into allegations about an AT&T facility. Plaintiffs also demand an answer to the *Hepting* Complaint, which repeatedly raises allegations as to AT&T's alleged assistance to NSA. Plaintiffs also contend that discovery can proceed with respect to any alleged certification that AT&T may have received from the Government. *See* Pls. Opp. at 32-35. But the propriety of taking these steps, rather than dismissing the case, is the ultimate issue on appeal, and thus it cannot reasonably be disputed that these are the "particular matters involved in the appeal," and are not "independent" or "uniquely separable" from those issues. And the mere fact that the Court would adjudicate but not actually order disclosure of privileged information does not somehow render the same privilege assertion distinct from the matters on appeal.

Further proceedings in *Hepting* would also be inappropriate because the threshold question of whether the *Hepting* Plaintiffs actually have standing has not been—and cannot

1  be—adjudicated without addressing the state secrets issues now on appeal.  *See* USG Stay Mem.

2  (Dkt. 67) at 13-14.  It would be wholly inappropriate to permit discovery in *Hepting* in the

3  meantime.

4  **III.    A STAY PENDING THE *HEPTING* APPEAL IS APPROPRIATE IN *HEPTING* AND ALL CASES IN THIS MDL PROCEEDING**.

5          Assuming, *arguendo*, that the Court has jurisdiction to undertake further proceedings in

6  *Hepting*, a stay pending appeal is warranted in that case as well as in the other MDL cases.  As

7  the United States has previously demonstrated, the issues of proof and questions of law would be

8  simplified by a stay, and the respective harms the parties may face by a stay or further

9  proceedings tips substantially in the United States' favor.  *See Lockyer*, 398 F.3d at 1110.

10  Indeed, this is essentially the course already chosen by the Ninth Circuit with respect to *Al-*

11  *Haramain v. NSA,* 451 F. Supp. 2d 1215 (D. Ore. 2006), in which the Ninth Circuit granted the

12  United States' 1292(b) petition but, recognizing the relevancy of *Hepting*, stayed briefing of the

13  *Al-Haramain* appeal.

14          **A.    The Key Issues Raised in the *Hepting* Appeal Will Have A Direct Bearing on Further MDL Proceedings.**

15

16          As the United States has already demonstrated, *see* USG Stay Mem (Dkt 67) at 11-16, the

17  *Hepting* appeal will address several issues critical to the resolution of the MDL cases, including:

18          *       Whether disclosure of any carrier-NSA relationship in connection
19                  with an intelligence matter is foreclosed by the *Totten* doctrine.

20          *       Whether the state secrets privilege precludes disclosure of
                    information pertaining to whether any plaintiff has been subject to
21                  NSA surveillance activities and, thus, forecloses them from
                    establishing their standing.
22
            *       Whether the evidence necessary to resolve the issues arising in
23                  these cases inherently risks the disclosure of state secrets,
                    warranting dismissal at the outset.
24
            *       Whether any relationship between a telecommunications carrier
25                  and the National Security Agency can be confirmed or denied
                    under the state secrets privilege.
26
            *       Whether the state secrets privilege turns on whether the
27                  Governments has set forth in its public and *in camera, ex parte*
                    submissions a reasonable basis that harm to national security
28                  would flow from disclosure of the information at issue.

*  Whether the state secrets privilege precludes disclosure of information concerning intelligence sources and methods necessary to resolve claims on the merits challenging alleged electronic surveillance and the alleged collection of call records information.

While the particular parties and circumstances of each MDL case may differ to some extent from *Hepting*, any one of the foregoing issues would be applicable to the similar issues raised in the MDL cases and could not only dispose of *Hepting* but each of the MDL cases. At the very least, resolution of these issues will likely simplify the various questions presented by the MDL cases. It makes little sense to "tee-up" these issues now in this Court, as Plaintiffs propose, since further proceedings may either be entirely unnecessary or fail to account for any decision by the Court of Appeals and, thus, not advance proceedings at all. As the Court has already found in certifying the *Hepting* Order for interlocutory appeal, "the state secrets issues resolved herein represent controlling questions of law as to which there is a substantial ground for difference of opinion, and [] an *immediate appeal may materially advance ultimate termination of the litigation*." *See Hepting*, 439 F. Supp. 2d at 1011 (emphasis added).[5]

---

[5] Plaintiffs discussion of recent decisions in related NSA litigation is inaccurate and does not warrant denying a stay. The court in *ACLU v. NSA*, 439 F. Supp. 2d 974 (E.D. MI 2006) (appeal pending), upheld the Government's state secrets privilege assertion but entered judgment for plaintiffs based on publicly available information about the TSP. The posture of that case supports a stay here, since another circuit court (which heard oral argument on January 31, 2007) will shortly opine on the proper disposition of the state secrets privilege in a case raising similar issues. The court's decision in *Al-Haramain v. NSA*, 451 F. Supp. 2d 1215 (D. Ore. 2006) (interlocutory appeal pending), was similar to this Court's decision in *Hepting*, in which the Government's motion to dismiss was denied, while a final ruling on disposition of the case under the state secrets privilege was reserved. As in *Hepting*, the court certified its decision for interlocutory review. A motion to stay further district court proceedings in *Al-Haramain* was fully briefed and pending at the time that case was transferred to this MDL proceeding. Now that an appeal has been taken in *Al-Haramain*, this Court would be divested of jurisdiction in that case to consider the subject of the district court's order there—whether the case should proceed in the face of a state secrets privilege assertion. (The Ninth Circuit itself has stayed briefing in *Al-Haramain* pending disposition of the *Hepting* appeal.) In *Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899 (N.D. Ill. 2006), the court upheld the Government's state secrets privilege assertion with respect to Plaintiffs' allegations that AT&T provided call records information to NSA, finding that the privilege precluded the Plaintiffs' ability to establish standing. This also supports a stay here, since the identical issue is presented by the *Hepting* appeal.

**B.**     **The Balance of Harms Favors a Stay of Proceedings.**

Plaintiffs' contention that the balance of hardships favors denial of a stay is without merit.  Plaintiffs' allegation that they currently face a "dragnet" of ongoing surveillance of virtually all domestic and international communications is of course highly speculative and unfounded.  To deny a stay pending appeal based on these mere allegations, where one of the very issues on appeal is whether these allegations can be adjudicated consistent with the state secrets privilege, would be unfounded.[6]

Beyond this, to the extent this asserted harm is based, at least in part, on the ongoing existence of warrantless surveillance under the Terrorist Surveillance Program, that aspect of their harm no longer exists since, as the Attorney General has indicated, any electronic surveillance that was occurring under the TSP is now occurring under orders of the Foreign Intelligence Surveillance Court.  *See* Notice, *supra* (Dkt 127).[7]  Moreover, to the extent Plaintiffs' allegation of harm turns on the alleged collection of telephone records information, the Court previously decided against discovery into that matter, *see Hepting*, 439 F. Supp. 2d at 997-98, and nothing warrants further proceedings now on the issue pending appeal.[8]  As to any

---

[6]  The authority on which Plaintiffs rely to argue that the violation of a statute or constitutional right establishes irreparable harm concerned actions that are known and violations that have been established.  *See, e.g.*, *Gomez v. Vernon*, 255 F. 3d 1118, 1129 (9th Cir.) (affirming injunctive where the record after a nineteen day trial demonstrated prison inmates had been subject to unconstitutional retaliation), *cert. denied*, 534 U.S. 1066 (2001); *Silver Sage Partners Ltd. v. City of Desert Hot* Springs, 251 F.3d 814, 827 (9th Cir. 2001) (where jury found violation of Fair Housing Act, irreparable harm established for a permanent injunction); *Smallwood v. National Can Company*, 583 F.2d 419, 420 (9th Cir. 1978) (permanent injunction issued in retaliation claim where district court found retaliatory intent).  A party does not show irreparable harm merely by alleging a statutory or constitutional right has been violated.

[7]  The Government's opening brief in the *Hepting* appeal is currently due on February 23, 2007, and will address the impact of the FISC orders on that case.  We defer further discussion of how those orders will impact further MDL proceedings until after our Court of Appeals' filing.

[8]  The Court also found that reliance on hearsay in media reports to decide the key issues here is inappropriate.  *See Hepting*, 439 F. Supp. 2d at 991.  Such media reports cannot and do not undermine the state secrets privilege assertion now on appeal.  Even when alleged facts have been the "subject of widespread media and public speculation" based on "[u]nofficial leaks and public surmise," those alleged facts are not actually established in the public domain.  *See Afshar*

1   alleged harms beyond these two claims, Plaintiffs have not proposed that their claims be

2   adjudicated to conclusion, only that some effort to be made to advance proceedings in the event

3   of a remand in *Hepting*. But there is no assurance that any proceedings will materially advance

4   the litigation, and, thus, resolution of Plaintiffs' remaining alleged harms, since the outcome of

5   the *Hepting* appeal is not known. Depending on how the Court of Appeals rules, further

6   proceedings may prove to be futile and fail to advance the process at all.

7       With respect to the countervailing harms faced by the Government and

8   telecommunication carrier defendants, Plaintiffs contend that no harm would arise from any

9   further proceedings because the Government may simply renews its state secrets privilege

10  assertion, either as to specific discovery demands in *Hepting* or through motions to dismiss and

11  discovery in the MDL cases. *See* Pls. Opp. at 17-18. But aside from the unnecessary burden of

12  repeating the state secrets privilege process in *Hepting* and the other MDL cases, Plaintiffs'

13  proposal would impose real and immediate harms, not conjectural ones. Plaintiffs propose an

14  array of activities in *Hepting* that would directly implicate the state secrets privilege including

15  answering a complaint that repeatedly alleges that AT&T assisted NSA in intelligence

16  activities;[9] discovery into allegations by Mr. Klein concerning NSA's alleged use of an AT&T

17

18  *v. Department of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983). To the contrary, where such
    public speculation is widespread, forcing an "official acknowledgment [or denial] by an

19  authoritative source" can "cause damage to the national security," which is not required. *Id*. This
    is true regardless of whether the statements come from a member of the legislative branch who

20  reportedly was provided with certain information or others. *See Terkel*, 441 F. Supp. 2d at 914

21  ("Treating confidential statements to Congressional representatives as public disclosures that
    make an otherwise secret activity a matter of public knowledge would undermine the state

22  secrets privilege by forcing the executive branch to give up the privilege whenever it discusses
    classified activities with members of Congress."). Authority permitting a party to use hearsay

23  evidence when it seeks emergency injunctive relief is plainly inapposite here. *See Flynt

24  Distributing Co. v. Harvey*, 734 F. 2d 1389, 1394 (9th Cir. 1984) (only when the urgency of
    obtaining preliminary injunction exists, where it is difficult to obtain timely affidavits from

25  persons who would be competent to testify at trial, may the trial court give inadmissible evidence

26  some weight for the purpose of preventing irreparable harm before trial). Indeed, a key issue on
    appeal in *Hepting* is *whether* evidence can be received on these issues.

27

28      [9] Plaintiffs' demand that AT&T provide an answer to the complaint, *see* Pls. Opp. at 32-
    33, is especially pointless, not only because the Court certified whether a motion to dismiss that
    very complaint should have been granted, but because no benefit would be served by an *ex parte,*

1  facility; discovery into whether AT&T (or any carrier) has received certifications to assist NSA

2  in intelligence matters; and so on. Such matters go to the core state secrets issues on appeal, and

3  if such discovery were permitted could moot all or a substantial part of the appeal.

4  As the Court is aware, the process involved in asserting the state secrets privilege

5  (whether in response to specific discovery requests or in connection with a dispositive motion) is

6  complex, extremely sensitive, and requires substantial care. Despite the closest adherence to

7  secure procedures, merely litigating disputes even before disclosure is finally ordered, or indeed

8  even if it is never ordered, can risk real harm. Any information in the parties' filings or judicial

9  opinions—even matters that seem innocuous to those unaware of the actual facts—could tend to

10 reveal details that might confirm or deny what is a state secret and thereby causing potentially

11 grave harm to national security. The broad attention that litigation of this nature draws heightens

12 the risk of proceeding by amplifying all that is said and done. The physical task of preparing,

13 securing, and transmitting files also poses risks of disclosure at different stages. It is not

14 conjectural that these risks will be incurred if these cases are permitted to proceed; opening the

15 door to such risks makes little sense while an appeal is pending that may close it (or substantially

16 limit any further inquiry). *See Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005), *cert. denied*,

17 126 S. Ct. 1052 (2006) (courts are "not required to play with fire and chance further

18 disclosure—inadvertent, mistaken, or even intentional—that would defeat the very purpose for

19 which the privilege exists.").

20 **IV.    FISA SECTION 1806(f) IS INAPPLICABLE HERE.**

21 Plaintiffs also argue (at inordinate length) that the availability of Section 106 of the

22 Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, codified at 50 U.S.C.

23 § 1806(f), weighs against a stay because this provision can be utilized to resolve disputes over

24 classified information in further proceedings. *See* Pls. Opp. at 18-22; 3, 9, 32-36. Since a short

25 reply does not permit a full response on this important question, the Court should receive

26

27

28 *in camera* answer where the Government has already apprised the Court of the underlying
   privileged facts at stake, and the process of redaction presents significant risks. *See* Case Joint
   Case Management Statement (Dkt. 61-1) at 31 (Government's Position on *Hepting* Answer).

1  separate briefing on the matter if further proceedings are not stayed.  For now, United States

2  briefly summarizes its position as to why Section 1806(f) does not apply in this case.

3  　　　　As the United States has previously demonstrated, viewed in its proper context, Section

4  1806(f) is part of a statutory scheme that provides a "procedural mechanism by which [FISA]

5  information may be used in formal proceedings."  Sen. R. No. 95-701, 95th Cong., 2d Sess., at 62

6  (1978), 1978 U.S.C.C. & A.N. 3973, 4031.  Section 1806(f) addresses cases in which the

7  Government intends to use FISA information against an "aggrieved person" and establishes a

8  procedure that may be invoked *by the Government* if a litigant seeks to suppress the fruits of

9  FISA collection or obtain disclosure of FISA applications, orders or other related information.

10  Contrary to Plaintiffs' characterization, Section 1806(f) is a grant of authority *to the Government*

11  enabling it to invoke special *ex parte, in camera* review procedures in defending against

12  challenges to the Government's use of evidence drawn from FISA surveillance.  This provision

13  applies in three circumstances: (i) when a governmental entity gives notice under

14  Section 1806(c) or (d) that it intends to use evidence obtained from such surveillance against the

15  aggrieved person; (ii) when the aggrieved person seeks to suppress that evidence under Section

16  1806(e); and/or (iii) when the aggrieved person moves or requests "to discover or obtain" FISA

17  "applications, orders or other materials" related to the surveillance or the evidence or information

18  derived from the surveillance.  *See* 50 U.S.C. § 1806(f).  Section 1806(f) may be invoked "if the

19  Attorney General files an affidavit under oath that disclosure or an adversary hearing would

20  harm the national security of the United States."  *See id.*  A district court would then consider, *in*

21  *camera* and *ex parte*, classified materials as may be necessary to determine whether the

22  surveillance of the aggrieved person was lawfully authorized and conducted. *See id.*

23  　　　　The threshold issue raised by Plaintiffs' reliance on Section 1806(f) is whether it may

24  even be applied in civil cases, such as *Hepting* and the pending MDL cases, where alleged

25  unlawful surveillance has never been confirmed or denied and, indeed, is subject to a state

26  secrets privilege assertion.  Plaintiffs take one phrase in section 1806(f) out of its statutory

27  context and argue that the provision provides independent authority to seek materials related to

28  electronic surveillance under FISA or otherwise through a motion in any civil proceeding.  *See*

1   Pls. Opp. at 21.  Nothing supports this reading.

2         In the first place, for Section 1806(f) to apply, a person must be "aggrieved" as defined

3   by FISA— that is, the person must be "the target of an electronic surveillance any other person

4   whose communications or activities were subject to surveillance."  50 U.S.C. § 1801(k).

5   Turning the statute on its head, Plaintiffs read Section 1806(f) to permit discovery into the very

6   issue of *whether* someone is an aggrieved person within the meaning of FISA.  Plaintiffs would

7   thus transform this provision into an engine for anyone to discover whether they have been

8   subject to surveillance by filing a suit and a motion to compel.  Plaintiffs do not cite a single case

9   in support of this radical theory.  All of the reported cases that we have found apply section

10  1806(f) where the United States or State government has sought to use evidence related to

11  electronic surveillance in judicial proceedings and is responding to a suppression motion, or has

12  invoked 1806(f) to protect against the unauthorized disclosure of FISA applications, orders and

13  related information.[10]  In addition, all of the courts addressing motions to disclose or suppress

14  FISA evidence reached a conclusion as to the legality of the surveillance based on an *in camera*

15  and *ex parte* review.[11]  Thus, Plaintiffs' suggestion that Section 1806(f) be use to grant *them*

16  access to classified materials is unfounded and contrary to established law barring such access.

17        In addition, the fact that Section 1806(f) applies to civil challenges to alleged unlawful

18  surveillance, *see* Pls. Opp. at 21-22 (citing H.R. Conf. Rep. No. 95-1740, 1978 U.S.C.C.A.N.

19  4048, 4061 (Oct. 5. 1978), does not mean the provision authorizes discovery of *whether* such

20

21

22

23        [10]   *See, e.g.*, *United States v. Damrah,* 412 F.3d 618, 622 (6th Cir. 2005); *United States v.*

24  *Hammoud*, 381 F.3d 316, 331-32 (4th Cir. 2004), *vacated and remanded on other grounds*, 543
    U.S. 1097 (2005); *United States v. Squillacote*, 221 F.3d 542, 552 (4th Cir. 2000), *cert. denied*,

25  532 U.S. 971 (2001); *United States v. Johnson\*, 952 F.2d 565, 571-73 (1st Cir.), *cert. denied*,
    506 U.S. 816 (1992); *United States v. Ott*, 827 F.2d 473, 474 (1987).

26

27        [11]   *See, e.g., Johnson*, 952 F.2d at 571-572; *Damrah*, 412 F.3d at 624; *In re Grand Jury*
    *Proceedings of the Special April 2002 Grand Jury*, 347 F.3d 197, 203 (7th Cir. 2003);

28  *Squillacote*, 221 F.3d at 553-554; *United States v. Sarkisian*, 841 F.2d 959, 965 (9th Cir.
    1988); *United States v. Ott,* 827 F.2d at 475.

1    surveillance has in fact occurred.[12]   The D.C. Circuit's decision in *ACLU Foundation v. Barr*,

2    952 F.2d 457 (D.C. Cir. 1991), is instructive on this issue, and Plaintiffs' attempt to distinguish

3    *Barr* is meritless.  Plaintiffs contend that *Barr* holds only "that the particular facts of the

4    individual case supported the conclusion that disclosure to the aggrieved person was not

5    necessary."  Pls. Opp. at 22.  That is not so.  The court in *Barr* held that the plaintiffs who

6    merely alleged ongoing surveillance were not entitled to use FISA procedures to discover

7    whether they were in fact subject to surveillance.  The case arose out of deportation proceedings

8    in which the United States had acknowledged that six individuals had been subject to FISA

9    surveillance.  *See id.* at 458-59.  The United States later petitioned the United States District

10   Court for Central District of California for a determination on the legality of the FISA

11   surveillance under Section 1806(f) and the district court upheld the lawfulness of the

12   surveillance under that provision.  *See United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990).

13   The six individuals who had been subject to the prior acknowledged surveillance,  and eight

14   others who alleged continuing surveillance, then filed suit in the District of Columbia.

15       Distinguishing between the two groups of plaintiffs, the D.C. Circuit  held that the six

16   individuals whose surveillance had been upheld in the California §1806(f) proceeding that had

17   been invoked by the Government were barred from raising statutory and constitutional claims

18   attacking the legality of the acknowledged surveillance.  With respect to those who alleged

19   ongoing surveillance that had not been acknowledged, the D.C. Circuit reversed dismissal of

20   their claims on the ground that the claims should have been resolved under Rule 56 summary

21   judgment proceedings, not under Rule 12(b)(6).  *See Barr*, 952 F.2d. at 469.

22       But the court in *Barr* agreed that FISA did not permit discovery into whether surveillance

23   had occurred, noting that "if the government is forced to admit or deny such allegations, in an

24   answer to the complaint or otherwise, it will have disclosed sensitive information that may

25   compromise critical foreign intelligence activities."  *Id.* at 469 & n.13 ("The government makes

26

27   ───────────────

28       [12]   Likewise, nothing supports the notion that Section 1806(f) applies generally to *any*
     proceeding in a civil case that might involve classified information, such as merely answering
     the complaint, as Plaintiffs' contend, *see* Pls. Opp. at 32-33.

1   the point, with which we agree, that under FISA it has no duty to reveal ongoing foreign

2   intelligence surveillance"). *See also In re Grand Jury Investigation,* 431 F. Supp.2d 584

3   (E.D.Va. 2006) (denying notice under FISA Section 1806(c) of whether grand jury witnesses had

4   been subject to the Terrorist Surveillance Program, as well as notice under 18 U.S.C. § 3502(a)

5   since witnesses had made no prima facie showing that they were an "aggrieved persons" under

6   that provision); *In re Sealed Case*, 310 F.3d 717, 741 (For. Intel. Surv. Rev. 2002) (FISA does

7   not require notice to a person whose communications were intercepted unless the government

8   "intends to enter into evidence or otherwise use or disclose" such communications in a trial or

9   other enumerated official proceedings;" otherwise "'the need to preserve secrecy for sensitive

10  counterintelligence sources and methods justifies elimination of the notice requirement.'")

11  (citing Senate Report 95-701, 95th Cong., 2d Sess., at 12 (1978), 1978 U.S.C.C.& A.N. 3973,

12  3980); *In re Grand Jury Proceedings*, 856 F.2d 685, 688 (4th Cir. 1988) (grand jury witness not

13  entitled to notice of alleged surveillance under FISA Section 1806(c)).[13]

14         In addition, nothing in Section 1806(f) or its legislative history demonstrates any

15  intention on the part of Congress to preclude the Government from asserting the state secrets

16  privilege to protect the disclosure of national security information, including information that

17  would confirm whether a particular individual was subject to electronic surveillance as defined

18  in FISA.  As the Supreme Court has instructed, "[i]t is a well-established principle of statutory

19  construction that '[t]he common law . . . ought not to be deemed repealed, unless the language of

20  a statute be clear and explicit for this purpose.'"  *Norfolk Redevelopment and Housing Authority*

21  *v. Chesapeake and Potomac Telephone Co. of Norfolk*, 464 U.S. 30, 35-36 (1983) (citation

23         [13]  Indeed, on the point that it reversed the district court, the D.C. Circuit in *Barr* held
24  that, in a Rule 56 summary judgment proceeding, "the government would need only assert that
    plaintiffs do not have sufficient evidence to carry their burden of proving ongoing surveillance
25  . . . ."  *Barr,* 952 F.2d at 469.  The court could not have reached this result if the Plaintiffs
    reading of Section 1806(f) were correct.  Rather, the court found that only if the plaintiffs could
26  *defeat* summary judgment might Section 1806(f) apply.  *See id.*  Among the issues raised by the
    Government in its motion for summary judgment in *Hepting* is that the fact of any surveillance
27  of Plaintiffs could not be confirmed or denied.  Under *Barr*, only if the state secrets privilege
    were rejected on summary judgment, and surveillance acknowledged, would Section 1806(f)
28  apply.

1    omitted).  Plaintiffs' contention that Section 1806(f) supercedes the state secrets privilege

2    because it applies "notwithstanding any other law" is specious.  That is hardly the kind of clear

3    expression required to abrogate a constitutionally-based power of the Executive.  Indeed, the

4    legislative history of the FISA does not indicate that the phrase "notwithstanding any other

5    provision of law" in Section 1806(f) was meant to supplant a long-standing, well known,

6    constitutionally-based privilege held by the Executive to protect national security information

7    whenever a motion is filed in any case to discover the existence of surveillance.  On the contrary,

8    Section 1806(f) is a shield that may be invoked by the Government, not a sword that can be used

9    by an "inventive litigant" to avoid Section 1806(f) by relying on "a new statute, rule or judicial

10   construction" or other sources of law when challenging the legality of surveillance.  *See* S. Rep.

11   No. 95-701, 95th Cong., 2d Session, at 64 (1978), 1978 U.S.C.C.A.N. 3973, 4033.

12       Accordingly, since a key issue in the *Hepting* appeal is whether the Government's state

13   secrets privilege assertion should be upheld, Section 1806(f) could not be utilized until after the

14   *Hepting* appeal is resolved in any event because that privilege assertion encompasses

15   information concerning whether any plaintiff in this MDL proceeding is actually subject to

16   surveillance and, thus, sufficiently aggrieved as defined in FISA to permit use of Section

17   1806(f).

18                                    **CONCLUSION**

19       Plaintiffs' opposition presents no basis in fact or law for undertaking further proceedings

20   in *Hepting* and the other cases in this MDL proceeding.  For the foregoing reasons, the United

21   States' motion to stay MDL proceedings should be granted.[14]

22

23

24

25   ─────────────────────

26      [14]  If transferred to this MDL proceeding, the United States does not oppose disposition
     of lawsuits initiated by the United States against state government entities regarding their
27   authority to investigate the alleged assistance of telecommunications carriers in alleged NSA
     activities.  *See* Case Joint Case Management Statement (Dkt. 61-1) at 34-35 & n.22
28   (Government's Position on Federal-state actions).  The Judicial Panel on Multi-district Litigation
     heard argument on transferring these actions on January 25, 2007, and is expected to rule shortly.

1    DATED: February 1, 2007                    Respectfully Submitted,

2                                               PETER D. KEISLER
                                                Assistant Attorney General, Civil Division
3
                                                CARL J. NICHOLS
4                                               Deputy Assistant Attorney General

5                                               DOUGLAS N. LETTER
                                                Terrorism Litigation Counsel
6
                                                JOSEPH H. HUNT
7                                               Director, Federal Programs Branch

8                                                 _s/ Anthony J. Coppolino_____
                                                ANTHONY J. COPPOLINO
9                                               Special Litigation Counsel

10                                                _s/ Andrew H. Tannenbaum_____
                                                ANDREW H. TANNENBAUM
11                                              Trial Attorney
                                                U.S. Department of Justice
12                                              Civil Division, Federal Programs Branch
                                                20 Massachusetts Avenue, NW
13                                              Washington, D.C. 20001
                                                Phone:  (202) 514-4782
14                                              Fax:     (202) 616-8470/(202) 616-8202
                                                Email:   tony.coppolino@usdoj.gov
15

16

17

18

19

20

21

22

23

24

25

26

27

28