BRENDAN V. SULLIVAN, JR.
JOHN G. KESTER
GILBERT O. GREENMAN
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
jkester@wc.com
ggreenman@wc.com

Attorneys for Sprint Nextel Corp., Sprint Communications Co. L.P., Sprint Spectrum L.P. and Nextel West Corp.

IN THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

-- San Francisco Division --

| | |
|---|---|
| In re:<br><br>NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This document relates to:<br><br>Nos. C-06-6222-VRW;<br>C-06-6224-VRW;<br>C-06-6254-VRW;<br>C-06-6295-VRW;<br>C-07-0464-VRW | MDL Dkt. No. 06-1791-VRW<br><br>RESPONSE TO ORDER TO SHOW CAUSE<br><br>Date: February 9, 2007<br>Time: 2:00 p.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker |



Dockets.Justia.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES....................ii

RESPONSE....................1

1. Due Process....................1

2. Different Facts....................5

3. Plaintiffs' Acknowledgments....................7

4. Conflict Between Hepting and Terkel....................7

5. Intervening Developments....................8

6. Uncertainty of Hepting Ruling....................9

CONCLUSION....................11

TABLE OF AUTHORITIES


Page

Cases:

In re Air Crash Disaster, 720 F. Supp. 1505 (D. Colo. 1989), rev'd sub nom. Johnson v. Continental Airlines Corp., 964 F.2d 1059 (10th Cir. 1992) .... 3

Al-Haramain Islamic Found., Inc. v. Bush, 451 F. Supp. 2d 1215 (D. Ore. 2006), appeal pending, Nos. 06-36083, 06-80134 (9th Cir.) .... 8

Arizona v. California, 460 U.S. 605 (1983) .... 4

Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313 (1971) .... 3

El-Masri v. Tenet, 437 F. Supp. 2d 530 (E.D. Va. 2006), appeal pending sub nom. El-Masri v. United States, No. 06-1667 (4th Cir.) .... 6

Hansberry v. Lee, 311 U.S. 32 (1940) .... 2

Harbor Ins. Co. v. Essman, 918 F.2d 734 (8th Cir. 1990) .... 4

Hardy v. Johns-Manville Sales Corp., 681 F.2d 334 (5th Cir. 1982) .... 2,3

Headwaters Inc. v. U.S. Forest Service, 399 F.3d 1047 (9th Cir. 2005) .... 2

Hepting v. AT&T Corp., No. 06-17132 (9th Cir.) .... 10

Hepting v. United States, No. 06-17137 (9th Cir.) .... 10

Johnson v. Manhattan Ry., 289 U.S. 479 (1933) .... 4

Kourtis v. Cameron, 419 F.3d 989 (9th Cir. 2005) .... 2,3

Marshak v. Treadwell, 240 F.3d 184 (3d Cir. 2001) .... 3

Martin v. Wilks, 490 U.S. 755 (1989) .... 2

Messenger v. Anderson, 225 U.S. 436 (1912) .... 3

Overseas Shipbuilding Group, Inc. v. Skinner, 767 F. Supp. 287 (D.D.C. 1991) .... 4

Richards v. Jefferson County, 517 U.S. 793 (1996) .... 2

Shaw v. Hahn, 56 F.3d 1128 (9th Cir.), cert. denied, 516 U.S. 964 (1995)..........................2

Society of Separationists, Inc. v. Herman, 939 F.2d 1207 (5th Cir. 1991), aff'd, 959 F.2d 1283 (5th Cir. 1992) (en banc).....................4

Terkel v. AT&T Corp., 441 F. Supp. 2d 899 (N.D. Ill. 2006).........................................7

Totten v. United States, 92 U.S. 105 (1876)....................6

United States v. Mendoza, 464 U.S. 154 (1984).................9

Constitutional Provisions:

United States Constitution, Article III......................1

Fifth Amendment...................2

Statutory Provisions:

28 U.S.C. § 1292..............................................8

By order filed November 22, 2006, this Court directed all parties to all the cases herein to show cause "why the Hepting order [entered July 20, 2006, Doc. 308 (in No. C-06-672-VRW), concerning application of the state secrets privilege in an action brought against AT&T] should not apply to all cases and claims to which the government asserts the state secrets privilege." Doc. 79 at 2.

The Sprint defendants[1/] are parties in five of these cases. At this juncture, the United States has not intervened or asserted the state secrets privilege in any of them, although there is reason to believe that it might well do so in some manner at an appropriate time. For now, as to these defendants, the question presented in the abstract by the order to show cause appears both contingent and premature, and not in a posture calling for an immediate answer by an Article III federal court.

Be that as it may, there are a number of independent reasons why this Court's July 20, 2006, order in a case against AT&T should not bind these defendants. To minimize repetition of submissions by others, we list here briefly several reasons why Hepting should not and does not apply, also incorporating by reference pertinent authorities submitted by the United States and the other defendants.

1. Due Process.

At the time of this Court's order in Hepting, July 20, 2006, the Sprint defendants were not parties before this Court. The actions against Sprint were not conditionally transferred here by the

---

1/ The Sprint defendants are Sprint Nextel Corp., Sprint Communications Co. L.P., Sprint Spectrum L.P. and Nextel West Corp.

MDL Panel until August 31, 2006, and not docketed in this Court until September 25, 2006, and January 25, 2007. Docs. 37, 133. "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Hansberry v. Lee, 311 U.S. 32, 40 (1940). "The right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution." Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 338 (5th Cir. 1982); see also Shaw v. Hahn, 56 F.3d 1128, 1131 (9th Cir.), cert. denied, 516 U.S. 964 (1995). The Sprint defendants have had no opportunity, much less a "full and fair opportunity," to be heard on either the facts or the law.

(a) Collateral Estoppel. -- Plainly collateral estoppel can have no application. These defendants were not and are not parties to Hepting, nor in privity with AT&T. And there was no final judgment. See Kourtis v. Cameron, 419 F.3d 989, 994 (9th Cir. 2005).

"We have in this nation a deep-rooted historic tradition that everyone should have his own day in court." Headwaters Inc. v. U.S. Forest Service, 399 F.3d 1047, 1050 (9th Cir. 2005) (internal quotation marks omitted). Therefore even after a final determination "[a] judgment or decree among parties to a lawsuit resolves issues as among them but it does not conclude the rights of strangers to those proceedings." Martin v. Wilks, 490 U.S. 755, 762 (1989); accord, e.g., Richards v. Jefferson County, 517 U.S. 793, 798 (1996); Kourtis v. Cameron, 419 F.3d at 995.

Although a prior final determination may bind someone in privity with a party, "parallel legal interests alone, identical or

otherwise, are not sufficient to establish privity. . . . Both identity of interests and adequate representation are necessary." Kourtis v. Cameron, 419 F.3d at 998 (emphasis in original; internal quotation marks omitted). No allegation has been made that the Sprint defendants controlled in any way AT&T's conduct of the Hepting litigation. See, e.g., Marshak v. Treadwell, 240 F.3d 184, 196 (3d Cir. 2001) (Alito, J.) (collateral estoppel inapplicable even though defendant had testified in prior case and "had an interest in the outcome"); Hardy, 681 F.2d at 339 (no collateral estoppel against asbestos defendants which had not participated in nor controlled prior litigation); In re Air Crash Disaster, 720 F. Supp. 1505, 1521 (D. Colo. 1989) (in multidistrict litigation, trial did not collaterally estop parties whose cases were transferred later), rev'd on other grounds sub nom. Johnson v. Continental Airlines Corp., 964 F.2d 1059 (10th Cir. 1992).

> "[L]itigants . . . who never appeared in a prior action -- may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."

Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 329 (1971).

(b) Law of the Case. -- "Law of the case" also has no bearing. Law of the case does not apply to someone else's case. "[T]he phrase, law of the case" refers "to the effect of previous orders . . . in the same case." Messenger v. Anderson, 225 U.S. 436, 444 (1912) (Holmes, J.) (emphasis supplied).

> "[L]aw of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."

Arizona v. California, 460 U.S. 605, 618 (1983) (emphasis supplied). By definition, law of the case applies "only during the pendency of . . . a single proceeding." Society of Separationists, Inc. v. Herman, 939 F.2d 1207, 1214 (5th Cir. 1991) (emphasis in original; internal quotation marks omitted), aff'd on another point, 959 F.2d 1283 (5th Cir. 1992) (en banc). When two cases are "altogether separate proceedings," then "the law of the case" does not apply to the second case even if issues decided in the prior case were identical. Id. See also, e.g., Harbor Ins. Co. v. Essman, 918 F.2d 734, 738 (8th Cir. 1990) ("Because the instant case is not the same case . . . the law of the case doctrine does not apply."); Overseas Shipbuilding Group, Inc. v. Skinner, 767 F. Supp. 287, 296 (D.D.C. 1991) ("it is hornbook law that the law of the case doctrine operates as a form of issue preclusion within the same case") (emphasis in original).

To be sure, all these cases were transferred to this Court to ensure consistent and efficient adjudication of similar issues, and what might turn out to be similar facts. But the five cases in which the Sprint defendants are parties remain separate causes of action, with different plaintiffs and defendants. "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan Ry., 289 U.S. 479, 496-97 (1933). Indeed, the plaintiffs themselves have

recognized that their complaint "is not intended to effect consolidation for trial of the transferred cases . . . nor to make those who are parties in one transferred case parties in another." Doc. 124 (Sprint Master Compl.), ¶ 2.

2. Different Facts.

Even if regarded simply as a relevant precedent, the ruling as to AT&T should not control or be automatically adopted. This Court's July ruling in Hepting focused intensely on facts unique to AT&T. This Court referred, for example, to AT&T's "well known" "history of cooperating with the government" on classified matters. Doc. 308 (in No. C-06-672-VRW) at 30. It cited that company's having "recently disclosed that it 'performs various classified contracts, and thousands of its employees hold government security clearances.'" Id. This Court noted that "in response to reports on the alleged NSA programs," AT&T had issued several statements that it had "an obligation to assist law enforcement and other government agencies responsible for protecting the public welfare, whether it be an individual or the security interests of the entire nation." Id. This Court took judicial notice and quoted such public statements at length. Id. at 30-31. It found significant that AT&T had stated that it "lawfully and dutifully assists the government in classified matters when asked," id. at 31, and that "AT&T at least presently believes that any such assistance would be legal if AT&T were simply a passive agent of the government or if AT&T received a government certification authorizing the assistance," id.

In light of such public statements by AT&T -- as well as "the ubiquity of AT&T telecommunications services," id. at 30 -- this Court concluded that "AT&T's assistance in national security

surveillance is hardly the kind of 'secret' that the Totten[2/] bar and the state secrets privilege were intended to protect or that a potential terrorist would fail to anticipate." Id. at 31. "[P]ublic disclosures by the government and AT&T indicate that AT&T is assisting the government to implement some kind of surveillance program." Id. at 34. "[S]ignificant amounts of information about . . . AT&T's intelligence relationship with the government are already nonclassified or in the public record." Id.[3/]

The record as to the Sprint defendants, however, is strikingly different. In the pertinent master complaint:

> -- There is no allegation that any of these defendants ever stated that it assists the government on classified matters, nor that any of them has an "intelligence relationship" with the government.
>
> -- There is no allegation that the United States made any specific disclosures referring to these defendants.
>
> -- There is no allegation that these defendants made statements or disclosures regarding involvement in any alleged communications-monitoring or call-records programs. In fact, the complaint filed in one of these cases explicitly alleges that "Sprint has declined to say whether [the] NSA has approached it or how it might have

---

2/ Totten v. United States, 92 U.S. 105 (1876).

3/ But see El-Masri v. Tenet, 437 F. Supp. 2d 530, 538 (E.D. Va. 2006) ("Nor is the strength of the government's [state secrets] privilege somehow diminished by . . . media, government or other reports . . . ."), appeal pending sub nom. El-Masri v. United States, No. 06-1667 (4th Cir.).

responded." Doc. 1 (in C-06-6295-VRW) ¶ 26; see also id. ¶ 24 (acknowledging that Sprint made "no official comment" in response to allegations in the press).[4/]

3. Plaintiffs' Acknowledgments.

Plaintiffs themselves have acknowledged what they call the "dramatically different" circumstances of the array of different defendants in these proceedings. Plaintiffs' counsel explained to this Court that "the factual issues for each of the defendants are actually quite different." Tr. Nov. 17, 2006, at 24. The different carriers, counsel stated, "had different interactions with the government." Id. "[T]he telecommunications companies have said different things about their involvement, some pretty dramatically different things." Id. at 26 (emphasis supplied). "[T]he story for each telecommunications company is likely to be dramatically different and they should be handled differently." Id. (emphasis supplied). See also id. at 25 (suggesting that "it's better to look at what each of these telcos did and said independently"); id. at 24 ("different network architectures" and "different structures as telecommunications companies"); cf. Plaintiffs' Opp. to Gov't Motion To Stay, Doc. 128, at 2 ("the facts relevant to the balancing test are different for different defendants").

4. Conflict Between Hepting and Terkel.

There are more than thirty cases transferred to this Court in these proceedings. Hepting v. AT&T Corp. is not the only one in which a motion to dismiss has been ruled upon. In Terkel v. AT&T

---

[4/] See also Terkel v. AT&T Corp., 441 F. Supp. 2d 899, 911-12, 915 (N.D. Ill. 2006), No C-06-5340-VRW (citing and quoting public statements of Verizon, BellSouth and Qwest).

Corp., 441 F. Supp. 2d 899 (N.D. Ill. 2006), now transferred to this Court as No. C-06-5340-VRW, the District Court held that the state secrets privilege does indeed apply to the alleged program, at least with respect to alleged disclosure of call records. "[T]he Court has . . . concluded that the state secrets privilege covers any disclosures that affirm or deny the activities alleged in the complaint." Id. at 918. The court granted the government's motion to dismiss, while allowing leave to amend.[5/]

Hepting has no more claim to govern all the other cases than does Terkel or, for that matter, Al-Haramain, No. C-07-0109-VRW.[6/] The conflicts in reasoning and result among those rulings confirm the inappropriateness of extending Hepting to other cases.

5. Intervening Developments.

This Court presciently observed last July, "The court . . . recognizes that legislative or other developments might alter the course of this litigation." Doc. 308 (in C-06-672-VRW) at 36. On January 17, 2007, the Attorney General announced that any electronic surveillance that had occurred previously under the Terrorist

---

5/ See also, e.g., 441 F. Supp. 2d at 916 (observing that Hepting "saw no need to dismiss the latter [content-monitoring] allegations at present. This Court does not necessarily agree . . . ."); id. at 917 ("such disclosures [concerning participation] are barred by the state secrets privilege").

6/ Not one but three of these cases arrive carrying lengthy and differing district court opinions that explore the state secrets privilege. In Al-Haramain Islamic Foundation, Inc. v. Bush, 451 F. Supp. 2d 1215 (D. Ore. 2006), No. C-07-0109-VRW, yet another district court offered its own analysis, denying a motion to compel discovery in the face of invocation of the state secrets privilege, and certifying its order for interlocutory appeal under 28 U.S.C. § 1292(b). The Ninth Circuit granted review, Nos. 06-36083, 06-80134 (9th Cir.), and stayed further action pending decision of Hepting, No. 06-86083 (9th Cir.) (order of Jan. 9, 2007).

Surveillance Program will now be conducted pursuant to orders issued by the Foreign Intelligence Surveillance Court. Doc. 127. Those orders, their terms and their scope have not been disclosed. Any future assertion of the privilege may be affected by such orders and any accompanying alterations in alleged activities.[7/]

Further, because the United States has not yet intervened nor asserted the state secrets privilege as to the Sprint defendants,[8/] the manner and scope of any such future assertion cannot be determined or addressed.[9/] This Court at such time will be able to consider the unique facts material to the Sprint defendants in the concrete context of a fact-specific invocation of the state secrets privilege, if and when the United States actually presents such an assertion.[10/]

6. Uncertainty of Hepting Ruling.

This Court's July ruling denying the motions in Hepting does not unquestionably resolve the legal issues, both by its own

---

7/ The government has continued to file documents ex parte and under seal to which these defendants are not privy. Whether any of those might affect the circumstances assumed in the Hepting ruling is not known.

8/ "[F]urther proceedings in these consolidated actions will immediately require precisely the same privilege assertion raised in Hepting." Motion of United States for Stay, Doc. 67-1, at 17.

9/ The Director of National Intelligence who executed the declaration supporting the government's motion to dismiss in Hepting has resigned. Whether his successor would submit a declaration different in any respect cannot be known.

10/ The United States were it to assert the privilege in those cases could not be collaterally estopped. United States v. Mendoza, 464 U.S. 154, 162-63 (1984). To hold the Sprint defendants but not the United States barred from contesting the July Hepting ruling would be anomalous.

terms and because it is on appeal. It is not an exposition of the law so free from doubt that contributions from new parties, elucidating the facts of their own cases and their own legal arguments, can appropriately be dismissed in advance of being made.

In the same opinion in which it denied the motions in Hepting, this Court candidly acknowledged that the

> "issues resolved herein represent controlling questions of law as to which there is a substantial ground for difference of opinion,"

Doc. 308 (in No. C-06-672-VRW) at 70, and certified its order for interlocutory appeal. And in its recent January 2007 ruling in two other cases,[11] this Court reiterated its own earlier acknowledgment, adding explicitly that

> "the court's ruling in Hepting does not determine unequivocally the effect of the state secrets privilege, particularly with respect to the present cases."

Doc. 130 at 13. Recognizing the same important legal doubt, the Court of Appeals granted leave to appeal, as it also did in Al-Haramain, and briefs are due this month. Nos. 06-17132, 06-17137 (9th Cir.). When a ruling recognizes such limitations and is under appellate review, that is all the more reason, both for practical reasons and out of fairness, not to hold parties in other cases automatically bound and cut off from any opportunity to add whatever perspectives they might bring.

Should the Court of Appeals reverse the ruling as to AT&T in Hepting and order dismissal, it is likely that dismissal of all actions against the Sprint defendants also would be required. Even

---

[11] Campbell v. AT&T Communications, No. C-06-3574-VRW, and Riordan v. Verizon Communications Inc., No. C-06-3596-VRW.

if the Court of Appeals were to affirm, its decision likely would provide significant guidance concerning the appropriate legal standards, procedures and analysis to be applied to any future assertion of the state secrets privilege with respect to defendants in other cases, superseding the law as stated in July in Hepting. The appellate decision whatever its holding surely will be relevant to any future proceedings. Last July this Court had no choice but to rule partly in the dark, without appellate guidance. There is no reason to extend such a ruling automatically and prematurely when illumination from the Court of Appeals is in the offing.

CONCLUSION

For the reasons stated, this Court should not apply the July 2006 Hepting ruling to the actions brought against the Sprint defendants.

Respectfully submitted,

/s/ *John G. Kester*

BRENDAN V. SULLIVAN, JR.
JOHN G. KESTER
GILBERT O. GREENMAN

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
jkester@wc.com
ggreenman@wc.com

Attorneys for Sprint Nextel Corp., Sprint Communications Co. L.P, Sprint Spectrum L.P. and Nextel West Corp.

February 1, 2007