Lycos, Inc. v. Verizon Communications, Inc. Doc. 154

PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov
ANDREW H. TANNENBAUM
Trial Attorney
andrew.tannenbaum@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/ (202) 514-4263
Fax: (202) 616-8470/ (202) 616-8202
*Attorneys for Federal Defendants in their Official Capacities and Federal Intervenor-Defendants (United States of America, National Security Agency, President George W. Bush)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | **No. M:06-cv-01791-VRW** |
| | **RESPONSE OF THE UNITED STATES TO ORDER TO SHOW CAUSE** |
| This Document Relates To: | Judge: Hon. Vaughn R. Walker |
| | Date: February 9, 2007 |
| ALL ACTIONS | Time: 2:00 p.m. |
| | Courtroom: 6, 17th Floor |



Dockets.Justia.com

## RESPONSE OF THE UNITED STATES TO ORDER TO SHOW CAUSE

Shortly after the initial case management conference held on November 16, 2006, the Court issued an order requiring all parties to show cause "why the *Hepting* order should not apply to all cases and claims to which the government asserts the state secrets privilege." Pretrial Order No. 1, Docket No. 79, at 2. The applicability of this Court's decision in *Hepting v. AT&T Corp.* will certainly be a central issue in the cases transferred to this MDL proceeding, should those cases proceed. It is not an issue, however, that can be decided at this stage of the litigation, in the abstract. Due process precludes applying *Hepting* to the other cases without a fresh adjudication, in light of the different defendants involved in those cases, as does the well-established principle that non-mutual collateral estoppel cannot be applied against the United States. As a practical matter, moreover, any effect of the state secrets privilege on cases other than *Hepting* cannot be determined until the privilege is actually asserted in those cases, after the Director of National Intelligence gives his personal consideration to each matter. Particularly in light of the *Hepting* appeal—which will have a direct bearing on how *Hepting* is applied to other cases—the most appropriate and prudent course would be to wait for the Ninth Circuit's decision and then to consider any subsequent and actual privilege assertions that may be made at that time. Motions to dismiss made in conjunction with any such privilege assertions will take into account *Hepting*'s applicability, and the Court will be in a much better position to assess that question after the Ninth Circuit issues its ruling. Any attempt to decide the effect of *Hepting* and the state secrets privilege in a particular case prior to an actual assertion of the privilege or resolution of the *Hepting* appeal would be premature at best.

## BACKGROUND

On July 20, 2006, the Court denied the Government's motion to dismiss in *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006), a purported class action in which the plaintiffs allege that AT&T is collaborating with the National Security Agency (NSA) in a surveillance program that tracks the domestic and international communications and communication records of millions of Americans. The United States moved to intervene in the

case and sought dismissal based on the Director of National Intelligence's assertion of the state secrets privilege and related statutory privileges. In denying the Government's motion, the Court held that adjudication was not precluded by the categorical bar established in *Totten v. United States*, 92 U.S. 105 (1876); that the very subject matter of the action was not a state secret; that it would be premature to decide whether the privilege assertion barred evidence necessary for plaintiffs' *prima facie* case or AT&T's defense; that the state secrets privilege will not prevent AT&T from asserting that it received a statutory certification under 18 U.S.C. § 2511(2)(a)(ii) as a defense to allegations that it assisted the Government in monitoring communication content; and that it would be premature to dismiss the case based on the asserted statutory privileges. *Id.* at 991-97. The Court declined, however, to permit any discovery into the alleged monitoring of communication records—including any discovery into a certification-based defense—because the Government has neither confirmed nor denied whether such a program exists. *See id.* at 997-98. The Court also denied AT&T's motion to dismiss, holding that plaintiffs' allegations were sufficient to establish standing for purposes of the pleading stage, and that dismissal on various immunity grounds was not appropriate at that stage. *See id.* at 999-1010.

Noting that the issues it had decided "represent controlling questions of law as to which there is a substantial ground for difference of opinion and that an immediate appeal may materially advance ultimate termination of the litigation," the Court certified its order for immediate appellate review pursuant to 28 U.S.C. § 1292(b). *Id.* at 1011. The United States and AT&T petitioned the Ninth Circuit for permission to appeal under § 1292(b), and plaintiffs filed a cross-petition. On November 7, 2006, the Ninth Circuit granted the appeal and subsequently issued a schedule that requires briefing to be complete by April 9, 2007.

On August 9, 2006, shortly after this Court issued its decision in *Hepting*, the Judicial Panel on Multidistrict Litigation transferred 17 related cases to this Court for coordinated or consolidated pretrial proceedings, and since then an additional 29 cases have been either transferred or conditionally transferred. On January 16, 2007, at the direction of the Court, the

plaintiffs in most of the transferred cases filed five master consolidated complaints (hereafter the "consolidated actions"), one against each of the following groups of telecommunication company defendants (defined generally for purposes here): (1) Verizon and MCI; (2) Sprint; (3) Cingular Wireless; (4) Transworld, Comcast, T-Mobile, and McLeod; and (5) BellSouth. The plaintiffs declined to file a consolidated complaint against AT&T, suggesting instead that the Court treat *Hepting* as the lead AT&T action, at least until the Ninth Circuit appeal is complete. *See* Joint Case Management Statement, Docket No. 61, at 28.

## I. THE COURT'S DECISION IN *HEPTING* CANNOT FORMALLY BIND THE PARTIES IN THE CONSOLIDATED ACTIONS

Although the Court's decision in *Hepting* is highly relevant to the consolidated actions, it is not, as a formal matter, binding in those cases. It is well established that collateral estoppel may preclude relitigation of an issue decided in a prior case only if, at a minimum: (1) the issue decided in the prior case is identical to the issue in the present case; (2) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; (3) the issue was actually litigated and was essential to the court's conclusive determination in the prior proceeding; and (4) the party sought to be precluded had a full and fair opportunity to be heard on the issue. *See, e.g., Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1244 (9th Cir. 2004); *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

These requirements are grounded in fundamental due process concerns. As the Supreme Court has held, it "is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979); *accord Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 (1971) ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."). Echoing this principle, the Ninth Circuit has

stated that "[w]e have in this nation a deep-rooted historic tradition that everyone should have his own day in court, and we accordingly presume that a judgment or decree among parties to a lawsuit . . . does not conclude the rights of strangers to those proceedings." *Kourtis v. Cameron*, 419 F.3d 989, 995 (9th Cir. 2005) (internal quotation marks and citation omitted).[1/]

Because the consolidated actions are brought against entities that were not parties in *Hepting*, the Court's decision in *Hepting* cannot be applied to those cases without first giving the new entities an opportunity to present argument.[2/] It would be fundamentally unfair, for instance, to rule that the plaintiffs in the action against Verizon have sufficiently alleged standing, or can ultimately establish standing without state secrets, without allowing Verizon to brief the issue. Likewise, it would violate due process to apply in the action against Sprint the Court's holding in *Hepting* regarding the interplay of the state secrets privilege and statutory certification defense without giving Sprint the opportunity to convince the Court to reach a different conclusion. Each party, as the Supreme Court has repeatedly held, is entitled to its own day in court. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 95 (1980).[3/]

In addition, the Court in *Hepting* obviously did not actually adjudicate the precise

---

[1] Collateral estoppel principles apply with equal force in MDL proceedings. *See, e.g., In re Air Crash at Stapleton Airport*, 720 F. Supp. 1505, 1521 (D. Colo. 1989), *rev'd on other grounds sub nom.*, 964 F.2d 1059 (10th Cir. 1992) ("Absent some relationship of actual control or privity, collateral estoppel violates due process if asserted to deny non-parties a full and fair opportunity to litigate the issues previously decided against their interest.").

[2] Given the narrow definition of privity applied in the collateral estoppel context, it cannot be said that the defendants in the consolidated actions were in privity with the AT&T entities in *Hepting* during the course of the *Hepting* proceedings at issue. *See, e.g., Kourtis*, 419 F.3d at 996 (privity "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved") (internal quotation marks and citation omitted).

[3] With respect to the AT&T entities that were parties in *Hepting*, collateral estoppel also cannot apply for other reasons discussed herein, including that the United States cannot be bound in a case involving different plaintiffs. *See infra*. Moreover, it would make little sense to consider *Hepting*'s applicability to a potential consolidated complaint against AT&T when plaintiffs have decided against filing such a complaint at this time, and the question of whether this Court's decision in *Hepting* should be applied to AT&T is the very question before the Ninth Circuit.

question of what effect a state secrets privilege assertion concerning a non-AT&T entity would have in a case against such an entity. To be sure, the issues raised in the consolidated actions are closely related to those addressed in the *Hepting* decision (thus rendering the Ninth Circuit appeal in *Hepting* highly relevant to the consolidated actions, which is one of the reasons the United States has sought to stay the consolidated actions pending that appeal), and some of the overlapping issues are even pure questions of law.[4] But the key state secrets questions require an application of legal principles to particular facts—namely, a specific privilege assertion. By simple virtue of the fact that the privilege assertion in *Hepting* concerned the harm of confirming or denying allegations about AT&T, it cannot be said that the Court actually adjudicated, for collateral estoppel purposes, the effect of the state secrets privilege in a case against any other entity.

The lack of an actual adjudication that would satisfy collateral estoppel requirements is particularly evident in the context of the state secrets privilege, which can only be asserted after the relevant agency head gives actual and personal consideration to the matter. *See United States v. Reynolds*, 345 U.S. 1, 7-8 (1953). Because the privilege has not yet been asserted in any of the consolidated actions, the precise contours of such an assertion, in either classified or unclassified terms, have not yet been presented. Deciding the effect of any forthcoming privilege assertion on a particular case, therefore, would necessarily require speculation. Attempting to reach such a hypothetical conclusion for any future state secrets assertion in this proceeding would not only be premature, it would also usurp the personal consideration that the Director of National Intelligence would have to give to the new matter in determining what information should be protected by the privilege. Indeed, any new state secrets assertion would presumably involve the consideration of the recent orders of the Foreign Intelligence Surveillance Court announced by the Attorney General and the President's decision not to

[4] Still, even with respect to purely legal questions, the Ninth Circuit affirmed as recently as last week that collateral estoppel "has never been applied to issues of law with the same rigor as to issues of fact." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, Nos. 04-16387, 04-16388, 04-16788, 2007 WL 177823, at *3 (9th Cir. Jan. 25, 2007).

reauthorize the Terrorist Surveillance Program—new and critical facts, implicating new classified information, that were not at issue in *Hepting*.[5]

Indeed, as the Court recently held in ruling on the remand issues in *Riordan v. Verizon* and *Campbell v. AT&T*, "the court's ruling in *Hepting* does not determine unequivocally the effect of the state secrets privilege, *particularly with respect to the present cases*." Order, Docket No. 130, at 13 (emphasis added). The Court's discussion in *Riordan* and *Campbell* confirms that *Hepting* cannot be formally binding in other cases. For that reason, and the others we have discussed, the Court should wait for the Ninth Circuit's decision in *Hepting* before deciding the effect of that case on others.

There is another fundamental reason why the Court's decision in *Hepting* cannot be formally binding in the new consolidated actions: the doctrine of non-mutual collateral estoppel does not operate against the United States. *See United States v. Mendoza*, 464 U.S. 154 (1984).[6] Thus, regardless of the issue, the United States cannot be formally bound by the *Hepting* ruling in any case involving non-*Hepting* plaintiffs. For this reason alone, every state secrets assertion made in a case other than *Hepting* is entitled to a full and fresh adjudication by this Court. Indeed, allowing such issues to be further developed and considered is especially important in cases like these involving matters of great public and constitutional importance. *See Mendoza*, 464 U.S. at 161 (noting the "panoply of important public issues raised in governmental litigation" as a major reason for the rule against applying non-mutual collateral estoppel to the

---

[5] None of this is to suggest that a future state secrets assertion relating to AT&T would necessarily look different from the assertion in *Hepting*, or that there are similarities or differences among the classified facts about any of the companies at issue. It is just to point out that it is the prerogative of the Director of National Intelligence to determine what information in any of these cases should be included in a state secrets privilege assertion, and that prerogative has not yet been exercised in the cases at issue.

[6] *See also National Medical Enterprises, Inc. v. Sullivan*, 916 F.2d 542, 545 (1990) (noting "the well-established rule that nonmutual offensive collateral estoppel cannot be asserted against the government"); *State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 714 (9th Cir. 2005) (applying *Mendoza* to hold that nonmutual collateral estoppel does not operate against a state government agency).

United States); *see also Montana v. United States*, 440 U.S. 147, 162 (1979) (warning against an "[u]nreflective invocation of collateral estoppel against parties with an ongoing interest in constitutional issues"); *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 690 (9th Cir. 2004) (declining to apply nonmutual collateral estoppel to state agency "[r]ather than risk that an important legal issue is inadequately considered").

In sum, while this Court's decision in *Hepting* is closely related to the consolidated actions, and must be taken into account (along with any appellate developments) in any future consideration of those cases, the similarity of the issues is not enough to apply the *Hepting* decision *pro forma*, without any further adjudication in those matters. Due process, the involvement of the United States, and the importance of the questions require otherwise.

## II. AS A PRACTICAL MATTER, THE APPLICABILITY OF *HEPTING* TO THE CONSOLIDATED ACTIONS CANNOT BE DECIDED NOW, IN THE ABSTRACT

Although the Court's decision in *Hepting* is not formally binding in the consolidated actions, the question of *Hepting*'s applicability will certainly be a central issue in those cases, if and when they proceed. As a practical and prudential matter, however, that issue cannot and should not be resolved now.

First and foremost, the United States has moved for a stay of this entire proceeding pending the Ninth Circuit's decision in *Hepting*. For the same reasons articulated in the Government's stay papers, the question of *Hepting*'s applicability to other cases should not be decided by this Court until the *Hepting* appeal is resolved. With respect, the Government submits that it would be a waste of the Court's and the parties' resources to adjudicate now how *Hepting* should affect the consolidated actions, when the Ninth Circuit's review of the *Hepting* decision will clearly have a direct bearing on that question.

Second, the applicability of *Hepting* to state secrets issues in the consolidated actions cannot be decided as a practical matter until the state secrets assertions are actually made in those cases. For reasons already discussed, it would be a hypothetical exercise for the Court to

consider the effect of its ruling on privilege assertions that have not yet been made. This is not just a collateral estoppel point, but an overarching one that bears repeating: the Court cannot evaluate in the abstract whether a future and unknown state secrets assertion will preclude a particular group of plaintiffs from proving certain claims or a specific defendant from asserting a defense.

There are also other practical considerations that must be taken into account. For instance, if the Court decides to apply *Hepting* to the state secrets issues in the consolidated actions without waiting for the privilege assertion to be made, a subsequent appeal in those actions could suffer from an incomplete record due to the lack of any actual privilege assertion. Such a result could lead to a further waste of time and resources, particularly if the case had to be remanded for development of that record. It is also possible that the Ninth Circuit's decision in *Hepting* will make it unnecessary for the United States to assert the state secrets privilege in the consolidated actions. For example, if the Ninth Circuit decided that the *Totten* doctrine required dismissal of *Hepting* on the face of the allegations, or that a plaintiff cannot establish standing if the Government has not confirmed or denied whether his specific communications have been monitored, the consolidated actions could then be disposed of on such grounds alone. Given that possibility, and the seriousness of the state secrets issues and process (including the individualized attention privilege assertions would require of the Director of National Intelligence and the inherent risk of inadvertent disclosure when handling classified information), it would not be prudent to reach out now to decide the privilege questions.

For all of these reasons, the most appropriate and efficient course would be to defer any decision on *Hepting*'s applicability until the Ninth Circuit decides whether *Hepting* was correctly decided. After that decision is issued, the state secrets privilege could then be asserted in the consolidated actions (if necessary and appropriate), along with motions to dismiss. Those motions would clearly take into account *Hepting*, including any new or different guidance provided by the Ninth Circuit, and whether and to what extent that case should apply to the consolidated actions. At that point, the Court will have the benefit of the Ninth Circuit's ruling,

any actual and updated privilege assertions, and the sharpening of the issues that will inevitably occur as a result.

## CONCLUSION

For the foregoing reasons, the Court should decline at this time to decide *Hepting*'s applicability to the consolidated actions, and instead wait for the Ninth Circuit's decision in *Hepting*, as well as any actual state secrets privilege assertions in the consolidated actions.

Dated: February 1, 2007

Respectfully submitted,


PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

*s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

*s/ Andrew H. Tannenbaum*
ANDREW H. TANNENBAUM
andrew.tannenbaum@usdoj.gov
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/ (202) 514-4263
Fax: (202) 616-8470/ (202) 616-8202

*Attorneys for Federal Defendants in their Official Capacities and Federal Intervenor-Defendants (United States of America, National Security Agency, President George W. Bush)*