WILLIAM L. VALLÉE JR.
Principal Attorney
Federal Bar No. ct02042
Ten Franklin Square
New Britain, CT 06051
(Tel) 860-827-2905
(Fax) 860-827-2929
william.vallee@ct.gov

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION, MDL No. 1791 | : : : : : : | Civil Action No.: **No. MDL:06-cv-01791-VRW**<br><br>April 5, 2007 |
| This Document Relates To:<br><br>USA v. Anthony J. Palermino, et al., Defendants | : : : : | Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker |

**DEFENDANT- INTERVENOR**
**THE STATE OF CONNECTICUT OFFICE OF CONSUMER COUNSEL**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction**

The Defendant State of Connecticut Department of Public Utility Control's (the "Department") Investigation pursuant to state law into possible illegal activity and breach of the public interest by the Local Exchange Carriers, which is within the regulatory jurisdiction of the department, is not preempted by federal law.

1

1    If the Court decides to reach the merits of the case, the Defendant-
Intervenor State of Connecticut Office of Consumer Counsel (the "OCC") respectfully requests that summary judgment be entered in favor of the position advocated by the Department. On the basis of the undisputed facts of the case, and indeed all parties have repeatedly agreed that no further discovery is necessary, the United States Government's claim of preemption fails as a matter of law.

**II.    Background**

It should be noted that the Department filed a draft decision on March 7, 2007 (Docket No. 06-05-13, *Application Of The American Civil Liberties Union Of CT (ACLU-CT) For Investigation Of AT&T And Verizon Regarding Disclosure Of CT Customers Information And Request For Rulemaking,* a copy of which is attached hereto as <u>Exhibit A</u>, currently scheduled to become final on April 25, 2007), declaring that it has jurisdiction to proceed with its Investigation and rulemaking, and is not preempted by federal law from proceeding with the docket. The Department further found that the national security privilege has not been properly invoked by the appropriate entity in the proceeding, is therefore not at issue at this time, and that its Investigation will proceed.

The OCC and the other parties to this lawsuit all moved for summary judgment in the United States District Court of Connecticut (3:06-cv-1405 JBA) pursuant to Fed. R. Civ. P. 56 on December 12, 2006 in an action initiated by the United States of America (the "Government") on September 6, 2006 to bar the Department from investigating alleged violations of state law by public service

companies within the state's plenary jurisdiction. The Government asserted jurisdiction under 28 U.S.C. §§ 1331 and 1345, claiming, inter alia, that an order issued by the Defendant-Department allowing discovery in a state agency investigation is in violation of and is preempted under the Supremacy Clause and Federal Law. (Complaint, 9/06/06, pp. 12-13, Count I, ¶¶ 47 and 48).

The OCC filed an opposition pleading in Connecticut federal court on January 9, 2007 to the Government's request for summary judgment. By so doing, the OCC joined the arguments set forth in separate pleadings filed with that Court on that day by the Defendant-Intervenor American Civil Liberties Union of Connecticut ("ACLU-CT") and the Defendant Department in opposition to the Government's Motion for Summary Judgment.

After transfer to this Court pursuant to order by the Multidistrict Litigation Panel, the OCC replies in this pleading to the arguments contained in the Government's Opposition and will not reiterate the arguments advanced by the parties in the earlier pleadings, including the Department's extensive reply to the Government's Opposition (CT-DPUC Reply to Response to Motion for Summary Judgment, 2/26/07). The Government's Opposition rehashes its mischaracterization of the Investigation (Government's Opposition, 1/09/07, at 23-27), but offers no meaningful rebuttal to the preemption arguments offered by the Department, the ACLU-CT, or the OCC (Government's Opposition, 1/09/07, at 27-32).

In spite of a thorough review of the Government's Opposition, the OCC respectfully reiterates that there is no federal question jurisdiction, that the

Government does not state a claim upon which relief can be granted, and in the event the Court concludes that its federal jurisdiction is properly invoked, the Court should abstain from exercising jurisdiction based on the Younger abstention doctrine (which the OCC will not argue again in this pleading).

Based on the undisputed facts of this case, pursuant to Fed. R. Civ. P. 56, the Defendant-Department's position is correct and is entitled to judgment as a matter of law. If the Court reaches the merits of the case, the Court should grant summary judgment in favor of the Department because federal law does not preempt the Department's inquiry.

### III. Argument

The Government initiated the instant law suit claiming: (1) the Department "lacks authority to investigate or seek any information concerning alleged foreign intelligence matters," and (2) "federal law preempts the State Defendants' attempts to obtain any such information." (Government's Opposition, 1/09/07, at 1).

The Government's entire case is based on the erroneous premise that the Department's Investigation is aimed at gathering details about a foreign intelligence program and affects national security, and the conduct of military and foreign affairs. The Government's description of the administrative proceeding is contrary to the Department's focus and goal, as amply demonstrated by its Draft Decision attached hereto as <u>Exhibit A</u>. Indeed, the Department's Investigation of potentially illegal activities of the local exchange carriers is a proper exercise of traditional state police power : in short, the Department is in no way engaged in

gathering foreign intelligence, control over national security, or in the conduct of military and foreign affairs.

The sole and express purpose of the Investigation is to question the Local Exchange Carriers' compliance with Connecticut law. The Department has carefully kept the state regulatory inquiry within its statutory authority and obligations by restricting its investigation to merely whether, or to what extent, the alleged National Security Agency call database described in the media actually exists. The Department's Investigation does not concern the nature of relationship, if any, between the Government and the Local Exchange Carriers. The Interrogatories in the Investigation inquire into the legality of the Companies' involvement with private parties and law enforcement entities, and does not single out NSA. Contrary to the allegations of the Government, the Department is not seeking information "regarding the alleged foreign intelligence gathering activities of the United States, and in particular the NSA." (Government's Opposition, 01/09/07, p. 4). Equally false are the Government's claims that such exercise of state authority amounts to regulation "in an area where there has been a history of significant federal presence" (Government's Opposition, 01/09/07, p. 23), and an investigation of "alleged federal activity" (Government's Opposition, 01/09/07, p. 25).

The Government has yet to demonstrate that the very narrow information requested of the Local Exchange Carriers by the Department usurps the Government's control over foreign intelligence gathering, the conduct of military and foreign affairs, or in any way impacts the country's national security. The

5

1 Government must also show that the information sought is, indeed, of
2 confidential and sensitive nature. This Court has expressed skepticism on this
3 point and denied the outright dismissal of the case seeking similar information,
4 holding the insufficient same set of privileges alleged by Plaintiff in this case.
5 *Hepting v. AT&T Corp.*, 439 F. Supp.2d 974, 997 (N.D. Cal. 2006).
6      Thus, the sole issue before this Court is to determine whether the scope of
7 the Investigation is a valid exercise of state police power, not to predict what
8 evidence the Interrogatories at issue may adduce. There is neither constitutional
9 or federal law statute or common law rule prohibiting the Department from
10 seeking to determine whether the involvement of the Local Exchange Carriers, if
11 any, has been in compliance with state law.
12      Of particular note is the fact that the Department's state statutory authority
13 to investigate the Local Exchange Carriers' potentially illegal activities is not
14 prohibited by any of the statutes the Government delineated in its Complaint.
15 Thus, the Department's authority to conduct the inquiry is within the state's
16 traditional police powers and does not present federal question which the federal
17 courts have jurisdiction under 28 U.S.C. § 1331 to resolve.
18      In sum, in spite of the Government's claims, the Department is not
19 encroaching on the Government's function to gather foreign intelligence, to guard
20 national security or to conduct military and foreign affairs. The Investigation
21 merely seeks to ensure compliance with state law, including the well-established
22 authority in the Department to order a wide variety of relief such as revision of the
23 consumer privacy notices and policies published by the regulated public utilities

without regard to any actions concerning the relevant federal agencies or their activities.

The Supreme Court and the Ninth Circuit have both held that that state action within a traditional realm of state police power is not necessarily preempted by federal law even if the state action overlaps to some extent with federal law, "unless that was the clear and manifest purpose of Congress". *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 981 (9th Cir. 2005) (*quoting DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 n. 8 (1997)).

The Department certainly has authority to request any information deemed necessary for the resolution of the issues properly pending before it since its authority originates from the state's police power to regulate public service companies and protect Connecticut consumers. See *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. at 381 n.8; *New Orleans Pub. Serv., Inc.*, 491 U.S. at 365; Fla. *Lime & Avocado Growers v. Paul*, 373 U.S. at 150. The Department's inquiry into the Local Exchange Companies' potentially illegal operations is a valid exercise of its traditional police power, neither dictating nor placing any prohibition on the manner in which the federal government may pursue its national security objectives.

The Investigation sought to be enjoined here is a typical administrative proceeding, judiciary in nature, by a state agency in accordance with its jurisdiction and authority under state law. For example, the Department's ruling in the Investigation is subject to appeal in state court pursuant to the provisions of the Connecticut Uniform Administrative Procedure Act ("UAPA"), codified as

7

1  Conn. Gen. Stat. § 4-166 et seq. As such, the Investigation at issue does not

2  metamorphose into an investigation of the Government, which of course has not

3  even entered an appearance in the Department Investigation. The Department

4  should be allowed to complete its inquiry.

5  The Government does not state a claim upon which relief can be granted

6  because federal law does not prevent the Department from seeking information

7  that it may claim is protected. In an attempt to rebut the Commissioners'

8  argument that the Government has failed to state a claim upon which relief can

9  be granted (Government's Opposition, 01/09/07, at 11-16), though the

10 Government follows two avenues. First, the Government once again asserts that

11 it "has not and need not invoke the state secrets privilege in order to state a claim

12 that the State Defendants have exceeded their authority to investigate alleged

13 federal foreign intelligence matters." (Government's Opposition, 01/09/07, at 11).

14 Second, relying on In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895),

15 the Government argues that it possesses an implied cause of action to vindicate

16 its sovereign interests in federal court. (Government's Opposition, 01/09/07, at

17 13-16). The Government is wrong on both points.

18 The Department neither conceded that it is seeking to review federal

19 intelligence matters, nor argued that "their purpose is ensure [sic] that 'federal

20 executive action' is subject to 'judicial scrutiny' by the State Defendants."

21 (Government's Opposition, 01/09/07, at 12, referring to the Commissioners'

22 Memorandum of Law, 12/12/06, at 23-24). The Government has taken these

23 phrases out of context and compiled them in a way to mislead the Court. The

1 Department does not portend to have any authority to judicially scrutinize the

2 federal government. Indeed, the Department stated that:

> The courts maintain the critical responsibility to review federal governmental action that threatens or seeks to thwart fundamental liberties. <u>Doe v. Gonzales</u>, 449 F.3d at 423 (*stating that* 'while everyone recognizes national security concerns are implicated when the government investigates terrorism within our Nation's borders, such concerns should be leavened with common sense so as not forever to trump the rights of the citizenry under the Constitution.')." (Commissioners' Memorandum of Law, 12/12/06, at 24).

11 As noted earlier, the Government mischaracterizes the Department's

12 Investigation. Contrary to Plaintiff's assertions (Government's Opposition,

13 01/09/07, at 11), the Department does not attempt to regulate or to investigate

14 matters of federal intelligence activities and national security. At the center of the

15 Department's inquiry are the potentially illegal activities of the Local Exchange

16 Carriers while the activities of the Government are not implicated by the

17 Interrogatories or the docket in general.

18 Again, to the contrary of the Government's assertions, the Department's

19 goal is not to "resolv[e] the details surrounding an alleged federal intelligence

20 matter." (Government's Opposition, 01/09/07, p. 22). The Interrogatories at the

21 center of this case conclusively indicate that the Department does not question

22 the existence, the nature of, or seek any details about the alleged federal

23 programs. The Department is neither investigating the Government nor

24 gathering foreign intelligence or exercising control over national security, military

25 and foreign affairs. The Investigation was expressly opened for the purpose of

26 ascertaining whether the Local Exchange Carriers have illegally disclosed

customer information, i.e., whether state laws have been violated. Any other information is of no consequence to the Department and quite clearly an authorized state agency ensuring compliance with state law is not preempted or foreclosed by the Constitution or any of the statutes applicable to this case.

The Government's second claim that "no further authorization for this suit is needed and the United States may utilize the federal district courts to vindicate its proprietary or sovereign interests" (Government's Opposition, 01/09/07, at 13-16), has no merit and should be rejected. If that were accepted, then the Government, simply by virtue of the broad jurisdictional grant to the district courts under 28 U.S.C. § 1345, would be able to claim a correlative, and presumably equally broad power to invent substantive causes of action in its favor without functional limitation and without congressional authorization. Such unbridled power to create civil causes of action must be rejected.

The Government is expressly attempting to foreclose the exercise of the state's traditional police power vis-à-vis the Local Exchange Carriers and the protection of the general public. The Government has absolutely no interest in whether the Companies complied or violated Connecticut law. Moreover, Department's plenary jurisdiction over the Companies is not contested. In fact, the regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States.

The Department's Investigation does not implicate national security matters, but rather the Investigation is focused entirely on possible violations of state law by the regulated Companies and, contrary to the Government's

assertion (Government's Opposition, 01/09/07, at 23-27) and does not intrude on an area preserved to the Government. Indeed, it is not disputed that the Department's Order seeks information relevant to the inquiry based on state law. (Plaintiff's Memorandum of Points and Authorities, 12/12/06, at 13).

Despite its proclaimed reliance on the Constitution (Government's Opposition, 01/09/07, at 23-27), the Government points only in a footnote to the constitutional provisions allegedly supporting its argument. (Government's Opposition, 01/09/07, at 27 n. 10). No legal authority is offered indicating that the Department's investigation of the Local Exchange Carriers' compliance with state law is preempted even if it only incidentally touches on NSA activities.

As has been amply briefed, preemption is a question of congressional intent and there is a strong presumption against federal preemption of state and local legislation. This presumption is especially strong in areas traditionally occupied by the states, particularly as to regulation of public utility companies. Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by federal act unless that is the clear and manifest purpose of Congress. The cases relied on by the Government do not support its claim that the Department is prohibited from protecting the public interest and from ascertaining whether the Local Exchange Carriers have violated Connecticut law.

It is axiomatic that "under our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." Gregory v. Ashcroft, 501 U.S.

11

452, 457, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) ("Ashcroft") quoting Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). If Congress intends to alter the "usual constitutional balance between the States and the Federal Government," it must make its intention to do so "unmistakably clear in the language of the statute." Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171(1985). No party questions whether Congress has not preempted the entire field of state protection of the public interest and regulation of intrastate telecommunications service providers. Thus, if federal law requires a court order when a governmental entity for any interception of the telephone calls of a person suspected of criminal activity, at least as much is necessary if the United States were to seek the very same information from telephone companies about potentially millions of Connecticut citizens.

The Department's Investigation poses no obstacle to the purposes and objectives of Congress and it is simple for the Local Exchange Companies to comply with Connecticut law and with the federal laws regarding national security intelligence gathering. At the center of the Investigation is the inquiry whether records have been illegally turned over to private parties, the Government and law enforcement entities by the Companies. Any impact on federal law in enforcing Connecticut law in this area, traditionally occupied exclusively by the States in exercise of their police powers, is at most incidental. Therefore, it does not rise to the degree of conflict required by the U.S. Supreme Court.

1       Moreover, compliance with Connecticut law by the Companies does not
2 frustrate any objectives that Congress intended to incorporate in federal statutes
3 regarding intelligence gathering, particularly in light of the many safeguards that
4 exist, such as judicial oversight.  The Government has the right to participate in
5 the Investigation and to assert defenses, including the state secrets privilege and
6 any other claim under federal law, all of which can be adjudicated by the
7 Department and appealed thereafter to the Connecticut courts.  Thus, to the
8 extent Congress intended to protect from disclosure certain information sought
9 by the Department, that objective can be fully protected consistent with state law.
10       The Government is essentially claiming that an authorized state agency
11 with an obligation to the public to protect consumer privacy, among many such
12 responsibilities, is unable to even inquire into claims of illegal activities.  This
13 Court is here asked to determine if federal law actually intends for such a result
14 where there is no statement of such intent anywhere in federal law.  The OCC
15 fervently argues that the Department's Investigation is properly authorized by
16 state law and is no preempted in any way by federal law.
17

**IV. Conclusion**

For all the foregoing reasons, the OCC respectfully requests the Court to deny the Government's Motion for Summary Judgment and to grant the OCC's motion and to dismiss the Complaint with prejudice or in the alternative to abstain.

Respectfully submitted,

MARY J. HEALEY
CONSUMER COUNSEL

By: _____/s/_____
William L. Vallée Jr.
Principal Attorney
Federal Bar No. ct02042
Ten Franklin Square
New Britain, CT  06051
(Tel) 860-827-2905
(Fax) 860-827-2929
william.vallee@ct.gov

April 5, 2007

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2007, a copy of the foregoing was filed electronically and thereby served to the parties by e-mail through the operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                  MARY J. HEALEY
                                  CONSUMER COUNSEL

By: _____/s/_____
    William L. Vallée Jr.
    Litigation Attorney
    Federal Bar No. ct02042
    Ten Franklin Square
    New Britain, CT 06051
    (Tel) 860-827-2905
    (Fax) 860-827-2929
    william.vallee@ct.gov

G:\SHAREDAT\PHONE\2006\06-05-13\Court Federal\OCC Memo Reply to USA Opposition to our SJ 040507.doc