PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
Email: alexander.haas@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
*Attorneys for Federal Defendants Sued in their Official Capacities, the Federal Intervenor-Defendants (United States of America, National Security Agency, President George W. Bush), and the United States of America as Plaintiff against state officials*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>*United States v. Palermino, et al.* | No. M:06-cv-01791-VRW<br><br>No. 3:07-cv-01326-VRW<br><br>**REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Hearing: June 14, 2007 |

No. M:06-cv-01791-VRW/3:07-cv-01326-VRW—REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 2

    I.     CAUSES OF ACTION TO VINDICATE THE UNITED STATES' SOVEREIGN INTERESTS AND UNDER THE SUPREMACY CLAUSE CLEARLY EXIST .................................................................. 2

    II.    THE CONNECTICUT OFFICIALS' ACTIONS INVADE THE FIELDS OF FOREIGN INTELLIGENCE AND NATIONAL SECURITY, INTERFERE WITH OPERATIONS OF THE FEDERAL GOVERNMENT WITH RESPECT TO FOREIGN INTELLIGENCE, AND CONFLICT WITH FEDERAL LAW .............................................................. 5

        A.    The State Defendants Lack Authority To Regulate Foreign Intelligence ............................................................... 5

        B.    The State Defendants Cannot Evade The Supremacy Clause By Attempting To Redefine Their Actions ........................................... 6

        C.    The State Investigation And Order Conflict With Federal Laws Proscribing The Disclosure Of National Security Information ............ 8

    III.   THE ACLU OPPOSITION DOES ALTER THE CONCLUSION THAT THE STATE DEFENDANTS' ACTION ARE IMPERMISSIBLE AND PREEMPTED ............................................................ 10

CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

**CASE(S)**                                                                                              **PAGE(S)**

*ACLU v. NSA*, 438 F. Supp. 2d 754 (E.D. Mich. 2006).................................................................. 10

*Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592 (1982)........................................................ 4

*Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261 (9th Cir. 1994).............................................................. 4

*CIA v. Sims*, 471 U.S. 159 (1985)................................................................................................. 4

*Founding Church of Scientology v. NSA*, 610 F.2d 824 (D.C. Cir. 1979).................................. 8, 9

*Free v. Bland*, 369 U.S. 663 (1962).............................................................................................. 7

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006).................................................... 10

*Hines v. Davidowitz*, 312 U.S. 52 (1941)..................................................................................... 5

*In re Debs*, 158 U.S. 564, 584 (1895)................................................................................... 1, 2, 4

*Massachusetts v. Mellon*, 262 U.S. 447 (1923)........................................................................... 4

*Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964).................................... 6

*People for the Am. Way Found. v. Nat'l Security Agency/Cent. Security Service*,
    462 F. Supp. 2d 21 (D.D.C. Nov. 20, 2006)............................................................................. 8

*Perez v. Campbell*, 402 U.S. 637 (1971)..................................................................................... 6

*Planned Parenthood of Houston and Southeast Tex. v. Sanchez*, 403 F.3d 324 (5th Cir. 2005)... 4

*Shaw v. Delta Airlines*, 463 U.S. 85 (1983)................................................................................. 4

*Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899 (N.D. Ill. 2006)......................................................... 10

*United States v. Adams, et al.*,
    __ F. Supp. 2d __, 2007 WL 441876 (D. Me. Feb. 8, 2007)............................................ 3, 9, 11

*United States v. Arlington County, Com. of Va.*, 326 F.2d 929 (4th Cir. 1964)......................... 1, 2

*United States v. Arlington County, Virginia*, 669 F.2d 925 (4th Cir. 1982)................................. 3

*United States v. City of Glen Cove*, 322 F. Supp. 149 (E.D.N.Y. 1970)....................................... 3

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001)................................................................ 4

*United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980).......................................... 3, 4

*United States v. Colorado Supreme Court*, 87 F.3d 1161 (10th Cir. 1996)................................. 3

*United States v. Ernst & Whinney*, 735 F.2d 1296 (11th Cir. 1984)............................................ 4

| | | |
|---|---|---|
| 1 | *United States v. Locke*, 529 U.S. 89 (2000) | 5 |
| 2 | *United States v. Mattson*, 600 F.2d 1295 (9th Cir. 1979) | 2 |
| 3 | *United Steelworkers of Am. v. United States*, 361 U.S. 39 (1959) | 3 |
| 4 | *Wayte v. United States*, 470 U.S. 598 (1985) | 6 |

**STATUTES**

National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64 ............ 8

50 U.S.C. § 403-1(i)(1) .............................................................................................. 9

**OTHER MATERIALS**

U.S. Const. Art. I, §§ 8, 9, 10 ..................................................................................... 5

U.S. Const. Art. II, §§ 2, 3 .......................................................................................... 5

1    The United States submits this reply memorandum in support of its motion for summary
2    judgment. The United States' memorandum in support of summary judgment ("USG Mem.")
3    established that (1) the United States has a cause of action to vindicate its sovereign interests and
4    assert its Supremacy Clause and preemption claims and that jurisdiction lies in this Court under
5    28 U.S.C. § 1345, *see* USG Mem. at 7-11; and (2) the Connecticut State Defendants' discovery
6    order and their investigation constitute an impermissible intrusion into the alleged operations of
7    the Federal Government over which the State Defendants have no authority, and that their actions
8    are otherwise preempted by federal law, *id.* at 11-23.

9    Reiterating many of the arguments made in their motion for summary judgment, the State
10   Defendants oppose this motion on two principal grounds. First, the State Defendants argue that
11   there is no cause of action for the United States to vindicate its claims. *See* State Defendants'
12   Opposition ("CT Opp.") at 7-15. Second, the State Defendants claim that their investigation is
13   merely an inquiry concerning consumer rights and privacy and therefore is not preempted by
14   federal law. *Id.* at 15-36. These arguments ignore the facts and precedent, rely on faulty
15   interpretations of law, and are therefore groundless.

16   First, the United States clearly has a cause of action to litigate its claims. It is well-
17   established that the United States possesses a cause of action to defend its own sovereign
18   interests. *See In re Debs*, 158 U.S. 564, 584 (1895); *United States v. Arlington County, Com. of
19   Va.*, 326 F.2d 929, 932 (4th Cir. 1964). Where, as here, the State Defendants concede that the
20   purpose of their investigation is to determine whether carriers "have illegally transferred private
21   telephone records to the NSA," *id.* at 23, it cannot seriously be argued that the United States
22   lacks a cause of action to vindicate its sovereign interests through this litigation.

23   Second, the State Defendants' assertion that their actions are not preempted by federal
24   law because their investigation concerns merely the "state protection of the public interest and
25   regulation of intrastate telecommunications service providers," CT Opp. at 26, is meritless. The
26   very object of the state's investigation—as the State Defendants concede—is an alleged foreign
27   intelligence gathering operation of the NSA. *See* CT Opp. at 27 ("at the center of the
28   Investigation is the inquiry whether records have been turned over to the NSA by the

Companies"). There can therefore be no question that the entire purpose of the State Defendants' activities is to investigate and disclose the alleged foreign intelligence operations of the United States. The interests at stake in this litigation are therefore uniquely federal and lie wholly outside traditional areas of state regulation, and the State Defendants' activities directly conflict with numerous provisions of federal law. The State Defendants' purported use of state law to force disclosure of information in violation of federal law, and which could compromise the national security interests of the United States, is clearly preempted.

## ARGUMENT

### I. CAUSES OF ACTION TO VINDICATE THE UNITED STATES' SOVEREIGN INTERESTS AND UNDER THE SUPREMACY CLAUSE CLEARLY EXIST.

The State Defendants' argument that the United States has no cause of action to bring this action is plainly wrong. Numerous Supreme Court and circuit court opinions hold that the United States has a cause of action to raise a claim that a State Government's actions injure the United States' sovereign interests. *See* USG Mem. at 7-10.

*In re Debs* specifically supports the United States' cause of action here. *Debs* held that the Federal Government is "entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, [and] has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other . . . ." *In re Debs*, 158 U.S. 564, 584 (1895). This "right of the federal government to bring suit to enforce its policies and programs . . . has been upheld in numerous[] fields of federal activity." *Arlington County, Com. of Va.*, 326 F.2d at 93 (recognizing a non-statutory cause of action to protect "policies and programs involving the national defense"). In particular, the Ninth Circuit recognizes that *Debs* allows the Federal Government to use a non-statutory cause of action "[w]here interference with national security has been at issue." *United States v. Mattson*, 600 F.2d 1295, 1298 (9th Cir. 1979). That is the precise issue presented here. Indeed, in a similar case against officials on the Maine Public Utilities Commission, the Court rejected the state's argument that the United States did not have a cause of action and that the Court lacked jurisdiction when it granted the United States' request for a preliminary injunction against those

officials. *See United States v. Adams, et al.*, __ F. Supp. 2d __, 2007 WL 441876, at *6 (D. Me. Feb. 8, 2007) (recognizing the sovereign character of the United States' claims against state regulatory officials).

Citing a concurring opinion from *United Steelworkers v. United States*, 361 U.S. 39 (1959), the State Defendants contend that *Debs* is limited to its exact factual situation. *See* CT Opp. at 10, 8-14.[1] Even if that concurring opinion were precedential, it is limited to the question of whether the requested injunction was "within the 'judicial Power' as contemplated by Art. III, s 2," 361 U.S. at 62 (Frankfurter, J., concurring); it cannot be read to support that the United States lacks a non-statutory cause of action to vindicate its sovereign interests. Indeed, the courts have repeatedly recognized the United States' cause of action to vindicate sovereign interests in subsequent cases. *See, e.g., United States v. Colorado Supreme Court*, 87 F.3d 1161 (10th Cir. 1996); *United States v. Arlington County, Virginia*, 669 F.2d 925, 929 (4th Cir. 1982) (United States may sue to vindicate foreign relations interest); *United States v. City of Glen Cove*, 322 F. Supp. 149, 152 (E.D.N.Y. 1970) (finding that "the interest of the national government in the proper implementation of its policies and programs involving the national defense is such as to vest in it the non-statutory right to maintain this action").

The State Defendants also mistakenly rely on *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980), claiming that the Third Circuit has rejected the United States' interpretation of *Debs*. In *City of Philadelphia*, the United States sued a city government and local officials to enjoin "a widespread practice of violating the [due process] rights of persons [that police officers] encounter on the streets and elsewhere in the city." 644 F.2d at 190. The Court held the United States did not have a cause of action because the purpose of that suit was protect the rights of third parties and not to vindicate the United States' own sovereign interests; in doing so, the Third Circuit emphasized the individual nature of the Fourteenth Amendment due process rights at issue, as well as the existence of "numerous mechanisms for the redress" of

---

[1] The quoted language from *United Steelworkers* comes from the concurring opinion of Justices Frankfurther and Harlan that "could not be prepared within the time limitations imposed by the necessity of a prompt adjudication in th[e] case." *United Steelworkers*, 361 U.S. at 44.

the harms.  *Id.* at 192, 199.  In contrast, in this case, the United States seeks to vindicate its own sovereign interests, not the interests of third party citizens suffering due process violations.  *See United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 n.10 (11th Cir. 1984) (noting that *City of Philadelphia* is "inapposite" in a case brought "by the government to protect its own interests" because *City of Philadelphia* "involved attempts by the United States to seek injunctions on behalf of third parties").  Here, the United States has a "compelling interest in protecting . . . the secrecy of information important to our security," *see CIA v. Sims*, 471 U.S. 159, 175 (1985), which accrues to the United States as a whole not to individual citizens.  *Debs*, 158 U.S. at 568.[2]

Beyond whether *the United States* has a cause of action to vindicate its sovereign interests, it is settled law that a preemption cause of action exists *for any party* (sovereign or otherwise) "[e]ven in the absence of an explicit statutory provision."  *See Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994); *Planned Parenthood of Houston and Southeast Tex. v. Sanchez*, 403 F.3d 324, 334 (5th Cir. 2005) ("that there is an implied right of action to enjoin state or local regulation that is preempted by a federal statutory or constitutional provision.").  The Ninth Circuit has squarely held that such a preemption cause of action applies to suits brought by the United States for a determination that the challenged state law or state action is preempted.  *United States v. Morros*, 268 F.3d 695, 699-703 (9th Cir. 2001) (holding that the United States' preemption claims against state officials must be entertained by a federal court and thereby reversing the district court's dismissal).  It is also well-established that a federal cause of action exists to enjoin a state official from acting in derogation of the federal Constitution.  *See* USG Mem. at 9-10; *see also Shaw v. Delta Airlines*, 463 U.S. 85, 96 n.14 (1983).  Notably, the State Defendants make no effort to contest these doctrines.

---

[2] The State Defendants' argument, *see* CT Opp. at 11, that *parens patriae* is unavailable to the United States is clearly wrong.  The Supreme Court has confirmed United States' *parens patriae* authority.  *See, e.g.*, *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923)).

## II. THE CONNECTICUT OFFICIALS' ACTIONS INVADE THE FIELDS OF FOREIGN INTELLIGENCE AND NATIONAL SECURITY, INTERFERE WITH OPERATIONS OF THE FEDERAL GOVERNMENT WITH RESPECT TO FOREIGN INTELLIGENCE, AND CONFLICT WITH FEDERAL LAW.

The vast majority of the State Defendants' opposition brief on the merits simply repeats verbatim the arguments set forth in the State Defendants' motion for summary judgment. *Compare* CT MSJ at 30-42 (preemption), *with* CT Opp. at 15-29; *see also* CT MSJ at 13-26 (state secrets argument), *with* CT Opp. at 30-37. The United States responded at length to these arguments in its opposition to the State Defendants' motion and established that those arguments are without merit. *See* USG Opp. at 23-36. We incorporate here those earlier arguments by reference and emphasize the following. First, and most fundamentally, the State Defendants fail to demonstrate that they have authority regarding matters touching foreign intelligence activities of the United States. Second, the State Defendants' effort to recast their actions to avoid federal preemption ignores the undisputed facts. Finally, there is a clear conflict between federal law's control over national security information and the Connecticut investigation and disclosure order.

### A. The State Defendants Lack Authority To Regulate Foreign Intelligence.

The State Defendants have never addressed in any meaningful fashion the threshold issue that a State may not intrude in an area reserved to the Federal Government under the Constitution. This is a distinct argument from the issue of federal law's preemption of state law. The State Defendants never rebut the United States' showing, *see* USG Mem. at 11-14, that the Constitution vests exclusive authority over matters pertaining to national security and foreign intelligence gathering in the Federal Government. While the State Defendants appeal to the maxim that states "possess sovereignty concurrent with the Federal Government," *see* CT Opp. at 18, the Constitution vests powers over such national security and military affairs exclusively in the Federal Government, *see* U.S. Const. Art. I, §§ 8, 9 & Art. II, §§ 2, 3. *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941) ("the supremacy of the national power in the general field of foreign affairs . . . is made clear by the Constitution."). Moreover, the Constitution itself, *see* U.S. Const. Art. I, § 10, expressly limits states from engaging in matters pertaining to foreign affairs and, absent exceptions not applicable, engaging in military or diplomatic functions. The State

Defendants simply lack authority to investigate the foreign intelligence gathering functions of the United States—both because they lack authority in the area, and because they cannot regulate the Federal Government.

In addition, the State Defendants' argument that there is a presumption against preemption is fundamentally flawed. Because this case relates to the State Defendants' authority to regulate "in an area where there has been a history of significant federal presence," there is no presumption against preemption.[3] *See United States v. Locke*, 529 U.S. 89, 108-09 (2000) (no presumption against preemption where state attempted to regulate in a clearly federal area). Whatever the powers of the States, they may not exercise their authority in such a manner that would frustrate federal objectives or stand as an obstacle to the Federal Government, even where Congress has expressly reserved police powers in a federal statute. *See Locke*, 529 U.S. at 109-10. Thus, the State Defendants' observation that Congress must state clearly when it intends to "alter the 'usual constitutional balance,'" *see* CT Opp. at 18, actually cuts against their position. Neither Congress, nor the Constitution, has given the states *any* role in foreign intelligence gathering and the "usual constitutional balance" undisputably excludes state power in this field.

**B.    The State Defendants Cannot Evade The Supremacy Clause By Attempting To Redefine Their Actions.**

Perhaps recognizing their lack of authority over foreign intelligence matters, the State Defendants seek to redefine their actions as relating to the intrastate regulation of telephone service. But state officials may not avoid the limitations of the Supremacy Clause by "articulating some state interest or policy-other than frustration of the federal objective." *See Perez v. Campbell*, 402 U.S. 637, 652 (1971). Moreover, while the State Defendants baldly assert that their actions "are unrelated to information concerning foreign intelligence activities of the United States," *see* CT Opp. at 6, such claims are belied by their concessions regarding the

---

[3] To say that there is a "significant federal presence" in the area of foreign intelligence gathering would be an understatement. The Supreme Court recognizes the "paramount federal authority in safeguarding national security," *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 76 n.16 (1964), as "[f]ew interests can be more compelling than a nation's need to ensure its own security." *Wayte v. United States*, 470 U.S. 598, 611 (1985).

purpose of their investigation. The State Defendants admit that they are investigating: (i) the "the Companies' possible illegal involvement *with the NSA*," *see* CT Opp. at 6 (emphasis added); (ii) "whether the regulated Companies have illegally transferred private telephone records *to the NSA*," *id*. at 23 (emphasis added); (iii) "whether records have been turned over *to the NSA* by the Companies," *id.* at 27 (emphasis added); and (iv) that halting their investigation "would be tantamount to immunizing *federal executive action* from judicial scrutiny," *id*. at 36 (emphasis added) (which itself establishes that they seek to investigate the Federal Government). The clear object of the Connecticut inquiry concerns alleged foreign intelligence gathering operations, *see id.*, which is governed by the Constitution and federal statutory and common law and vested exclusively in the Federal Government. And Connecticut's interrogatories confirm that the State Defendants seek information about the Carrier Defendants' alleged relationship with the NSA or any other entity associated with the Executive Branch. *See* Exh. C to Compl. at 2 (defining "government entity"), 4-5 (interrogatories). There can thus be no dispute that the information the State Defendants seek goes to the heart of alleged federal operations. *See Free v. Bland*, 369 U.S. 663, 666 (1962) ("[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.").[4]

The State Defendants' contention that their actions only incidentally relate to foreign relations or national security is otherwise meritless. *See* CT Opp. at 26-30. This argument is unmoored from the undisputed facts and the focus in their investigation. The Connecticut investigation and the interrogatories squarely focus on the NSA and other agencies of the Federal Government and the State Defendants purport to order the disclosure of information that is expressly protected by a range of federal law. The State Defendants have made no effort to explain how this would only "incidentally" affect foreign intelligence gathering.

---

[4] Aside from simply summarizing earlier arguments, the Intervenor-OCC brief alone argues that the State Defendants are carrying out obligations under Connecticut law and exercising state police power. *See* OCC Opp. at 3-6. Such considerations are irrelevant to a preemption analysis. *See Free*, 369 U.S. at 666.

## C. The State Investigation And Order Conflict With Federal Laws Proscribing The Disclosure Of National Security Information.

As we have previously addressed, the State Defendants' argument that their actions do not conflict with specific federal laws are deeply flawed. *See* USG Opp. at 28-31. With respect to Section 6 of the National Security Agency Act, Pub. L. No. 86-36, § 6 (1959), the U.S. District Court for the District of Columbia recently held that protects information concerning all alleged NSA activities, including the alleged activities at the heart of the state investigation. *See People for the Am. Way Found. v. Nat'l Security Agency/Cent. Security Service*, 462 F. Supp. 2d 21, 28-31 (D.D.C. Nov. 20, 2006). There, the Court confirmed that any claimed "illegality [of alleged NSA activities] cannot be used in this case to evade the 'unequivocal[ ]' language of Section 6, which 'prohibit[s] the disclosure of information relating the NSA's functions and activities.'" *Id.* at 31 (citations omitted). If the State Defendants' interpretation were correct, Section 6 would be toothless because it could be evaded by any assertion that alleged NSA activities were illegal. There is no support in case law or legislative history for such a theory.

There is also no support for the State Defendants' assertion that Section 6 does not apply where a private party is asked to respond to a state agency. *See* CT Opp. at 23. Such a reading is contrary to the clear language of the statute, which protects "any information with respect to the activities" "or any function" of the NSA from disclosure under "any other law." To the extent that private parties have information regarding the NSA's activities or functions, the statute's express terms clearly apply because a state's attempt to force such disclosures would constitute an attempt to use "any other law" to obtain "any information" about NSA's functions and activities.

The State Defendants' reliance on *Founding Church of Scientology v. NSA*, 610 F.2d 824 (D.C. Cir. 1979), for the proposition that the Government must some showing as to why the information at issue cannot be disclosed here, *see* CT Opp. at 22, is misplaced. *Founding Church* was a case brought under the Freedom of Information Act ("FOIA") for NSA records related to an alleged surveillance program. *See* 610 F.2d at 830. The FOIA context is critical because FOIA establishes, as a matter of federal law, a presumptive right to federal agency

records and an agency must then establish by affidavit whether the information requested is exempt from disclosure under that Act. The simple holding in *Founding Church* was that the particular NSA affidavit at issue in that case did not adequately explain why certain information had been withheld under FOIA. *See id*. at 831. Here, of course, the matter at issue is whether the State Defendants have *authority* to demand any information related to alleged NSA actions. Unlike in *Founding Church*, which concerned whether federal law—the FOIA—was properly applied, here the State has acted without any authority under federal law to demand alleged NSA-related information. The United States does not have to show, as if this were a FOIA case, that the alleged NSA information at issue is in fact properly classified.

The federal statute protecting intelligence sources and methods—codified at 50 U.S.C. § 403-1(i)(1)—also clearly preempts the State Defendants' authority. Congress has established that the exclusive responsibility of a federal actor—the DNI—to protect intelligence sources and methods. Despite this clear congressional determination, the State Defendants seek to exercise the authority of the DNA with regard to national security information. *See Adams*, 2007 WL 441876, at *9 (noting that it is "painfully obvious that, in making assessments about the impact of [a state order] on national security, the [state agency] is acting beyond its depth"). As Judge Woodcock recognized in *Adams*, state regulators may have expertise to "regulate public utilities," but are "not charged with evaluating threats to national security, investigating the NSA, or holding businesses in contempt when their silence was mandated by the federal government." *Id.* Thus, when confronted with a divergence of opinion as to the national security implications of a state Order, as between the Federal Government, which is charged with ensuring national security, and state regulators charged with state utility regulation, the state position must give way under the Supremacy Clause. *See id.*

Congress has specifically proscribed, as a matter of federal statutory law, the disclosure of intelligence-related information, and the State Defendants have no authority under state law to

inquire into this area.[5] The state secrets privilege is yet another source of federal law showing that the authority to protect information related to federal national security matters is derived from the President's constitutional authority over national security matters, and the authority to protect information through this privilege resides with the head of the federal agency within the Executive branch of the United States Government—in this instance, the DNI. *See* USG Mem. at 14-16, 18-20. In sum, the U.S. Constitution, federal statutes and federal common law establish federal policy regarding the non-disclosure of matters concerning alleged foreign intelligence activities, and the State Defendants' attempts to investigate and force disclosure of such information directly conflict with federal law and are preempted by federal law.

### III. THE ACLU OPPOSITION DOES ALTER THE CONCLUSION THAT THE STATE DEFENDANTS' ACTION ARE IMPERMISSIBLE AND PREEMPTED.

The ACLU-Intervenors make several similar arguments. First, they contend that the state secrets privilege either does not apply or has not been properly invoked by the United States. *See* ACLU Opp. at 7-8. Alternatively, the ACLU contends that it is entitled to summary judgment regarding some of the interrogatories because some of the discovery is permissible, *id.* at 8-10, or that the United States has not established that there will be actual conflict with foreign intelligence gathering, *id*. at 11-12.

The United States has already addressed the state secrets privilege points in its earlier opposition. *See* USG Opp. at 32-36. It is quite clear whether the United States has asserted privilege over the information demanded in this case, and whether in substance the information

---

[5] The State Defendants also cannot genuinely dispute the fact that the DNI and NSA have sought to protect this information in federal courts. The Court should also take notice that every court to consider whether information concerning the alleged NSA records program is subject to the protection of federal law has upheld privilege assertions over this information, including whether or not any information even exists. *See Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 917 (N.D. Ill. 2006) (dismissing telephone records case on state secrets grounds); *ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006) (dismissing, on state secrets grounds, "data-mining" claims regarding alleged NSA records activities); *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 998 (N.D. Cal. 2006) (declining to permit discovery into allegations about AT&T's involvement in an alleged communication records program). This shows that the subject matter and law governing disclosure of the information at issue lies within the province and authority of the Federal Government.

No. M:06-cv-01791-VRW/3:07-cv-01326-VRW—REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT 10

1 at issue is privileged, is irrelevant since the party demanding the information *has no lawful*
2 *authority* to demand or have access to such information. That federal policy of non-disclosure is
3 a principal issue for the conflict preemption analysis, given the clear conflict between federal and
4 Connecticut law caused by the State Defendants' disclosure order.

5 Second, the ACLU's argument that they are entitled to summary judgment as to some
6 interrogatories is incorrect. The whole purpose of the interrogatories is to establish the truth of
7 the allegations in the state administrative complaint, which remains squarely focused on the
8 allegations that carriers provided call records to the NSA. Furthermore, in focusing on the
9 purportedly limited nature of the interrogatories, the ACLU suggests that state officials have
10 authority to determine that some facts are not state secrets. But state officials lack authority to
11 determine what are, and what are not, the state secrets of the United States or to cabin discovery
12 to protect what state official *believe* may not be state secrets so as to attempt to protect what they
13 believe are state secrets. *See Adams*, 2007 WL 441876 at *9. State officials simply have no
14 authority to second-guess the United States regarding the protection of national security
15 information.

16 Finally, the ACLU's assertion that the United States has not established interference with
17 national security and foreign intelligence gathering is also meritless. The State Defendants'
18 authority over foreign intelligence gathering, or lack thereof, is a legal issue that may be resolved
19 by the text of the Constitution and federal laws cited by the United States. Moreover, the plain
20 text of the State Defendants discovery orders, as they themselves concede, *see* CT Opp. at 23, 27,
21 goes to the heart of determining whether the carriers were involved with alleged NSA operations.

## **CONCLUSION**

23 For the foregoing reasons, and those in the United States' motion for summary judgment,
24 the Court should grant summary judgment in favor of the United States.

25 DATED: April 5, 2007                    Respectfully Submitted,

26                                         PETER D. KEISLER
                                           Assistant Attorney General, Civil Division
27
                                           CARL J. NICHOLS
28                                         Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

   */s/ Alexander K. Haas*
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone:   (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
Email: alexander.haas@usdoj.gov