PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
Email: alexander.haas@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
*Attorneys for Federal Defendants Sued in their Official Capacities, the Federal Intervenor-Defendants (United States of America, National Security Agency, President George W. Bush), and the United States of America as Plaintiff against state officials*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>*United States v. Volz, et al.* | No. M:06-cv-01791-VRW<br><br>No. 3:07-cv-01396-VRW<br><br>**REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Hearing: June 14, 2007 |

No. M:06-cv-01791-VRW/3:07-cv-01396-VRW—REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

    I.    UNDER THE SUPREMACY CLAUSE, A STATE CANNOT
         DIMINISH THE AUTHORITY OF THE UNITED STATES
         BY REGULATING THIRD PARTIES ............................................... 2

    II.   THE STATE DEFENDANTS CANNOT REDEFINE THEIR
         ACTIONS TO AVOID PREEMPTION UNDER THE
         CONSTITUTION AND FEDERAL LAW .......................................... 5

    III.  THE STATE INVESTIGATION AND ORDER CONFLICT
         WITH FEDERAL LAWS PROSCRIBING THE DISCLOSURE
         OF NATIONAL SECURITY INFORMATION ................................. 8

CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**CASE(S)**                                                                                           **PAGE(S)**

*ACLU v. NSA*, 438 F. Supp. 2d 754 (E.D. Mich. 2006)............................................................... 11

*American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003)........................................................... 7

*Black Hills Power & Light Co. v. Weinberger*, 808 F.2d 665 (8th Cir. 1987)............................... 2

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982)............................ 6

*Free v. Bland*, 369 U.S. 663 (1962).......................................................................................... 7

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988).............................................................. 3

*Grafton & Upton R.R. Co. v. Town of Milford*, 337 F. Supp. 2d 233 (D. Mass. 2004).................. 3

*Hancock v. Train*, 426 U.S. 167 (1976)..................................................................................... 5

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006).................................................. 11

*Hines v. Davidowitz*, 312 U.S. 52 (1941)................................................................................... 5

*Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956).................................................................. 3

*Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964)............................... 5, 7

*National Foreign Trade Council v. Natsios*,
   181 F.3d 38 (1st Cir. 1999), *aff'd* 530 U.S. 363 (2000)......................................................... 6

*Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Development Com'n*,
   461 U.S. 190 (1983)................................................................................................................ 6

*People for the Am. Way Found. v. Nat'l Security Agency/Cent. Security Service*,
   462 F. Supp. 2d 21 (D.D.C. Nov. 20, 2006)........................................................................... 9

*Perez v. Campbell*, 402 U.S. 637 (1971)................................................................................... 6

*Public Utilities Comm'n v. United States*, 355 U.S. 534 (1958).................................................. 3

*Stehney v. Perry*, 907 F. Supp. 806 (D.N.J. 1995).................................................................... 4

*Stehney v. Perry*, 101 F.3d 925 (3d Cir. 1996).......................................................................... 5

*Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899 (N.D. Ill. 2006)...................................................... 11

*United States v. Adams, et al.*,
   __ F. Supp. 2d __, 2007 WL 441876 (D. Me. Feb. 8, 2007).............................................. 10

*United States v. Georgia Public Service Comm'n*, 371 U.S. 285 (1963).................................... 3

*United States/Temple Univ. v. City of Philadelphia*, 798 F.2d 81 (1986).................................... 2

| | | |
|---|---|---|
| 1 | *United States v. Locke*, 529 U.S. 89 (2000).................................................................... | 5 |
| 2 | *United States v. Massachusetts*, 440 F. Supp. 2d 24 (D. Mass. 2006)............................ | 3 |
| 3 | *United States v. Virginia*, 139 F.3d 984 (4th Cir. 1998).................................................. | 3 |
| 4 | *Wayte v. United States*, 470 U.S. 598 (1985).................................................................. | 5 |
| 5 | *West River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*, 918 F.2d 713 (8th Cir. 1990)........................................................................ | 2 |

**STATUTES**

| | | |
|---|---|---|
| | National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64 ....................... | 8, 9 |
| | 50 U.S.C. § 403-1(i)(1)................................................................................ | 10 |

## INTRODUCTION

The United States submits this reply in support of its summary judgment motion. The United States' summary judgment motion ("USG Mem.") established that (1) the United States has a cause of action to vindicate its sovereign interests and assert its Supremacy Clause and preemption claims and that jurisdiction exists under 28 U.S.C. § 1345, *see* USG Mem. at 7-10; and (2) the Vermont State Defendants' Order and their investigation constitute an impermissible intrusion into the alleged operations of the Federal Government over which the State Defendants have no authority, and that their actions are otherwise preempted by federal law, *id.* at 11-25.

Reiterating several arguments from their motion to dismiss, the State Defendants oppose this motion on three principal grounds. First, the State Defendants argue that they are not interfering with federal functions because their order is directed at third-party telephone carriers and not the Federal Government itself. *See* State Defendants' Opposition ("VT Opp.") at 7-10. Second, the State Defendants' assert that their investigation relates to telecommunications regulation, not foreign intelligence gathering, and is merely an inquiry into consumers' rights and privacy. *Id.* at 11-14. Finally, the State Defendants argue that their actions do not conflict with federal law and are therefore not preempted. *Id.* at 17-25. These arguments are unmoored from the undisputed facts and rely on faulty interpretations of law.

First, there is no genuine issue that the State Defendants' Order and other activities concern alleged activities of the Federal Government over national security matters, *i.e.*, whether a telecommunications carrier is assisting the NSA in carrying out alleged foreign intelligence activities. It is undisputed that the Constitution vests authority over the protection of national security in the Federal Government, and it is undisputed that federal law—both statutory law and the constitutionally-based state secrets privilege—governs the protection of information about alleged federal foreign intelligence activities and the disclosure of that information. The State Defendants therefore lack authority to order the disclosure of any information related to allegations that a telecommunications carrier is assisting the United States in an intelligence matter. It is clear, moreover, that Vermont cannot take such steps by seeking information from third parties, rather than the United States. The Supremacy Clause would be toothless if states

could interfere with federal functions simply by regulating third parties in a manner beyond their constitutional authority.

Recognizing their lack of authority in this area, the State Defendants attempt to redefine this case as one concerning the regulation of telecommunications regulation and consumer protection. But the undisputed facts establish that State Defendants seek the disclosure of information concerning alleged foreign intelligence activities of the NSA, and thereby directly intrude on national security matters entrusted under the Constitution to the Federal Government. The State Defendants simply cannot avoid the plain terms of their Order.

Finally, contrary to the State Defendants' strained reading of the law, their actions directly conflict with, and thus are preempted by, numerous provisions of federal law.

**ARGUMENT**

**I. UNDER THE SUPREMACY CLAUSE, A STATE CANNOT DIMINISH THE AUTHORITY OF THE UNITED STATES BY REGULATING THIRD PARTIES.**

The State Defendants' chief response to the United States' motion for summary judgment is that they have not "request[ed] information of any kind from the federal government, or ask[ed] the federal government to do anything." *See* VT Opp. at 4. But the Supremacy Clause's limitations on state power operate regardless of whether the legal incidence of a state's law falls directly on the Federal Government or third parties. As the Eighth Circuit has explained, a "'state cannot diminish the constitutional authority of the United States government by regulating the parties with whom it may contract.'" *West River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*, 918 F.2d 713, 716 n.6 (8th Cir. 1990) (quoting *Black Hills Power & Light Co. v. Weinberger*, 808 F.2d 665, 669 n.4 (8th Cir. 1987)). *Accord United States/Temple Univ. v. City of Philadelphia*, 798 F.2d 81, 87 (1986) (affirming summary judgment for the United States on Supremacy Clause and preemption grounds where local ordinance prohibited third party law school from allowing U.S. armed forces to recruit on campus because of "potential to frustrate" federal operations in military recruiting). Thus, the mere fact that the State Defendants' Order and investigation are directed at third-party telecommunications carriers does not authorize the State Defendants to investigate alleged federal activity. The Supremacy Clause limits state

regulatory power both when a state law applies to federal functions through third parties and to the Federal Government directly. *See, e.g.*, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180-81 (1988); *id.* at 188 n.1 (White, J., dissenting).

For example, in *Public Utilities Comm'n v. United States*, 355 U.S. 534 (1958) and *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956), the Supreme Court struck down state laws on Supremacy Clause grounds that were both applicable to and enforceable against third parties. The Court recognized that an attempted regulation of third parties may contravene the Supremacy Clause, notwithstanding the fact that the State ostensibly has aimed its regulatory efforts at third parties.[1] This remains the rule today. *See, e.g.*, *United States v. Virginia*, 139 F.3d 984, 989-90 (4th Cir. 1998) (barring enforcement of state licensing requirements against independent contractors whose conduct was already sanctioned under FBI standards). The State Defendants also may not act indirectly either to achieve ends that they have no authority to reach directly or to avoid the import of the Supremacy Clause. *See United States v. Massachusetts*, 440 F. Supp. 2d 24, 46-47 & n.188 (D. Mass. 2006) (holding an "indirect regulation seek[ing] to proscribe rules for tank vessel operation" directed to private parties invalid under the Supremacy Clause because they pertained to an exclusively federal field). *See also Grafton & Upton R.R. Co. v. Town of Milford*, 337 F. Supp. 2d 233, 238 (D. Mass. 2004) ("a state 'cannot regulate indirectly . . . what it cannot regulate directly'").

The State Defendants' Order here is just as much an impermissible attempt to regulate the

---

[1] In *Public Utilities Comm'n*, 355 U.S. 534, the Court held that California could not prohibit common carriers from transporting federal government property at rates lower than those approved by the State's Public Utilities Commission. The Court concluded that the State's law impermissibly interfered with federal law requiring negotiated rates and the use of the "least costly means of transportation." *Id.* at 542. *See also United States v. Georgia Public Service Comm'n*, 371 U.S. 285 (1963). In *Leslie Miller*, the Air Force had awarded a base construction contract to a private firm, and the State then instituted proceedings against the contractor for its failure to obtain a license under state law before executing the contract. The Court rebuffed that regulatory intrusion, concluding that the state licensing standards created "a virtual power of review over the federal determination of 'responsibility.'" *Leslie Miller*, 352 U.S. at 190. The Court held that the State had no authority to regulate third-party Air Force contractors because the application of state law would "frustrate the expressed federal policy." *Id*.

activities of the Federal Government as were the ill-fated regulatory efforts in *Leslie Miller* and *Public Utilities Comm'n*.

It cannot be disputed that the State Defendants' Order and investigation concern alleged activities of the Federal Government over national security matters, *i.e.*, whether a telecommunications carrier is assisting the NSA in carrying out alleged foreign intelligence activities. Indeed, the clear object of the Vermont inquiry is "an effort to determine whether the Carriers violated state law," *see* VT Opp. at 8, through their purported involvement in alleged foreign intelligence gathering operations of the United States. Even a cursory examination of the Order's plain language confirms that they seek information about the Carrier Defendants' alleged relationship with the NSA and the operational details, if they exist, over alleged federal intelligence operations. The State Defendants' Order seeks to compel the carrier to, *inter alia*,: (i) state whether it "disclosed or delivered to the [NSA] the phone call records of any [] customers in Vermont at any time since January 1, 2001;" (ii) "identify the categories of information [] provided to the NSA, including the called and calling parties' numbers; date of call; time of call; length of call, name of called and calling parties; and the called and calling parties' addresses;" (iii)"[s]tate whether the disclosures of [] Vermont customer call information to the NSA and/or any state or federal agency is ongoing" and the "number of occasions" the alleged disclosures occurred; (iv) confirm whether it "modified any of its equipment or other physical plant in Vermont to permit access to data and other information carried on its network by any agency of the federal government." *See* Exh. C to Compl. ¶¶ 1-16.

The State Defendants' attempt to distinguish this case from *Stehney v. Perry*, 907 F. Supp. 806 (D.N.J. 1995), clearly fails. *Stehney* supports the United States' position because it rejected claims, which stemmed from loss of employment at a non-profit agency following an employee's refusal to take a polygraph examination, under a state anti-polygraphing law. The Court concluded that the state law was expressly preempted by the Constitution and federal statutes because "there can be no state regulation of a President's constitutionally granted powers to 'classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position . . . that will give that

person access to such information.'" *Id.* at 824-25. The State Defendants' attempt to distinguish *Stehney* fails. The State Defendants assert that they seek access "to unclassified data and information." *See* VT Opp. at 10. But the *Stehney* Court recognized that any "State regulation in the area of national security is expressly preempted by Article I, § 8 and Article II, § 2 of the Constitution," 907 F. Supp. at 824. Indeed, the Third Circuit, in affirming the district court's opinion in *Stehney*, noted that state limitations on third-parties that would hinder participation as NSA contractors would be "impermissible state interference with exclusive federal responsibility in matters of national security" even though such regulation would only apply to private entities, not the Federal Government directly. *See Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir. 1996). The constitutional inquiry focuses on authority, and the State Defendants have made no meaningful effort to establish any authority for state officials under federal law (as there is none) over foreign intelligence gathering. *See Hines v. Davidowitz*, 312 U.S. 52, 62 (1941) ("the supremacy of the national power in the general field of foreign affairs . . . is made clear by the Constitution.").

## II. THE STATE DEFENDANTS CANNOT REDEFINE THEIR ACTIONS TO AVOID PREEMPTION UNDER THE CONSTITUTION AND FEDERAL LAW.

The State Defendants' attempt to avoid federal preemption through several other meritless arguments.

First, the State Defendants argue that there is a presumption against preemption. *See* VT Opp. at 6 & 13. But the Supreme Court has repeatedly observed that where a State attempts to regulate "in an area where there has been a history of significant federal presence" there is no presumption against preemption. *See United States v. Locke*, 529 U.S. 89, 108-09 (2000) (no presumption against preemption where state attempted to regulate in a clearly federal area). And, the Supreme Court has repeatedly recognized the "paramount federal authority in safeguarding national security," under the Constitution, *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 76 n.16 (1964), as "[f]ew interests can be more compelling than a nation's need to ensure its own security." *Wayte v. United States*, 470 U.S. 598, 611 (1985). If anything, in the field of national security, any presumption cuts the other way. *Hancock v. Train*, 426 U.S. 167,

179 (1976); *see* USG Mem. at 11-14. As the First Circuit has noted, the preemptive force of federal law "will be more easily found where states legislate [or regulate] in areas traditionally reserved to the federal government, and in particular where [as here] state laws touch on foreign affairs." *National Foreign Trade Council v. Natsios*, 181 F.3d 38, 73 (1st Cir. 1999), *aff'd* 530 U.S. 363 (2000). Any suggestion that there is not a body of law occupying the field of foreign intelligence gathering is not credible. The federal laws cited by the United States, *see* USG Mem. at 15-25, form a comprehensive scheme over the entire field of national security and foreign intelligence—including in particular the disclosure of national security information. There is no room for state regulation of this area. *See Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Development Com'n*, 461 U.S. 190, 204 (1983). Indeed, the pervasive federal control over foreign intelligence matters and the dominance of the federal interest is so evident that the federal law should be assumed to preclude enforcement of state laws. *See id.*; *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

Second, at various points, the State Defendants assert that their actions only constitute "regulat[ion] [of] intrastate telecommunications matters" and "to protect consumers," *see* VT Opp. at 13. These assertions of the State Defendants' subjective intent, even if they were assumed accurate, are irrelevant. State officials may not avoid preemption by "articulating some state interest or policy-other than frustration of the federal objective." *See Perez v. Campbell*, 402 U.S. 637, 652 (1971); *see also Hancock*, 426 U.S. at 179-82 (invalidating nondiscriminatory state law because it interfered with federal activities). Moreover, the State Defendants' attempts to recast their Order as relating to telephone regulation or consumer protection within state competence simply cannot be reconciled with the undisputed facts. This case concerns the State Defendants' attempts to gain information about the Carrier Defendants' alleged participation in an alleged foreign intelligence program of the NSA. It is undisputed that the central allegations that caused the State Defendants to petition for the investigation were "the alleged disclosure of customer information to *the National Security Agency* and any other state or federal agency." *See* Exh. D to Compl., ¶¶ 3-5 (emphasis added); *see also* Exh. E to Compl. at 1. It is undisputed that virtually all of the specific requests for information either expressly refer to the NSA or any

other federal agency by name or pertain to allegations concerning an alleged federal intelligence gathering operations. *See* Exh. C to Compl. ¶¶ 1-16.

Equally irrelevant is the State Defendants' claim of the importance of their investigation to Vermont, or that the State Defendants are merely trying to determine whether the Carrier Defendants violated Vermont laws. *See* VT Opp. at 9. "The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *See Free v. Bland*, 369 U.S. 663, 666 (1962). While, as a general matter, a state may regulate business practices within its borders, a state may not, consistent with our federal system, exercise such authority in a way that intrudes on the constitutional authority of the Federal Government, particularly in the areas of national security and foreign affairs. *See, e.g.*, *American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 (2003) (state legislation unconstitutional where it produces "more than incidental effect in conflict with express foreign policy of the National Government"); *Murphy*, 378 U.S. at 76 n.16 (stressing the "paramount federal authority in safeguarding national security") (quotation omitted).

Finally, the State Defendants' assertion that their actions only incidentally relate to foreign relations or national security, *see* VT Opp. at 12-14, is untenable. The Vermont investigation and Order squarely focus on the NSA and other agencies of the Federal Government. Indeed, the entire investigation is premised on the carriers' alleged involvement in alleged federal intelligence activities, *see* Exhs. D-F to Compl., and the information requests are directed at the alleged participant in an alleged federal intelligence operation. The State Defendants do not dispute that any response by the Carrier Defendants would, at a minimum, confirm or deny: (i) whether the Carrier Defendants were involved in the alleged foreign intelligence gathering program of the United States; (ii) whether an espionage agreement exists between the Carrier Defendants and the United States; (iii) if the program exists, as the State Defendants assert, the precise nature of the alleged involvement and the details surrounding the alleged NSA activities. *See* Exh. C to Compl. at ¶¶ 1-16. In short, given the unambiguous terms of the information requests, the State Defendants cannot establish the purported "incidental

contact with an area of federal authority" by relying on bald assertions unmoored from the facts.

The State Defendants also attempt to distance their conduct from the preempted state conduct in *Garamendi* by asserting that their activities "cannot be construed as an attempt to fashion an alternative intelligence-gathering approach or a national security policy inconsistent with that of the federal government." *See* VT Opp. at 15. But that too is specious. The State Defendants' demand for extensive information (if it exists) about national security policy would clearly conflict with federal law and policy to protect such information and would establish a state policy for the disclosure of such information.[2]

### III. THE STATE INVESTIGATION AND ORDER CONFLICT WITH FEDERAL LAWS PROSCRIBING THE DISCLOSURE OF NATIONAL SECURITY INFORMATION.

The State Defendants' argument that their actions do not conflict with the federal laws or otherwise frustrate federal policy are deeply flawed. The United States has already addressed the unsupported statutory arguments of the State Defendants. *See* USG Opp. at 16-19. Section 6 of the National Security Agency Act, the federal statute protecting intelligence sources and methods from disclosure and the federal statute criminalizing release of classified information as well as federal common law doctrines clearly conflict with the State Defendants investigation and Order requiring disclosures of information from the carriers.

Section 6 of the National Security Agency Act, which protects "*any information* with respect to the activities" "or any function" of the NSA from disclosure under "any other law," *see* National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note (emphasis added), clearly applies here. By their terms, the information

---

[2] The State Defendants also suggest that the provisions of the Foreign Intelligence Surveillance Act or the Electronic Communications Privacy Act (which they refer to as the "Pen Register Act") demonstrate a lack of preemption. *See* VT Opp. at 14-15. This argument is meritless. Neither statute demonstrates a lack of preemption, but, rather, demonstrate further that any alleged foreign intelligence activities are matters of federal, not state, law. The United States cited a range of federal law that preempts the State Defendants' authority, and the fact another provision of federal law concerns federal intelligence activities does not demonstrate why the disclosure of information related to such alleged activity would become subject to state regulatory authority and law.

requests at issue demand information about alleged NSA activities; indeed, the alleged program of the NSA is singled out in those requests. *See* Exh. C to Compl. The express statutory restriction in Section 6 on requiring disclosure of "any" information under "any other law" is met. Indeed, the U.S. District Court for the District of Columbia held that Section 6 of the National Security Agency Act does protect information concerning all alleged NSA activities. *See People for the Am. Way Found. v. Nat'l Security Agency/Cent. Security Service*, 462 F. Supp. 2d 21, 28-31 (D.D.C. Nov. 20, 2006). There, the Court confirmed that any claimed "illegality [of alleged NSA activities] cannot be used in this case to evade the 'unequivocal[ ]' language of Section 6, which 'prohibit[s] the disclosure of information relating the NSA's functions and activities.'" *Id.* at 31 (citations omitted). While the State Defendants assert that courts have expressed doubt over the breadth of Section 6, *see* VT Opp. at 18, they provide no explanation of why their order, which requires disclosure under "any other law," would trump *Federal* law in any event. According to the State Defendants, despite the express terms of Section 6, state regulators are free from federal proscriptions on disclosure of information pertaining the NSA functions and may investigate the activities of any entity regulated under state law (which undoubtedly would cover each and every non-governmental entity in the United States) to determine (i) whether those private entities have dealings with the NSA, and (ii) what the details are, if any, of those relationships. If the State Defendants' interpretation were correct, Section 6 would be toothless because it could be evaded by any state regulator. There is no support in case law or legislative history for such a theory.

There is also no support for the State Defendants' assertion, in response, that Section 6 only applies in Freedom of Information Act ("FOIA") cases and therefore is inapplicable to a case of a private party responding to a state agency. *See* VT Opp. at 19. Such a reading is contrary to the clear language of the statute, which protects from disclosure "any information with respect to the activities" "or any function" of the NSA from disclosure under "any other

law."[3]  Moreover, such an interpretation would permit greater disclosure of national security information under state law than is permitted under FOIA, which is an untenable legal position. To the extent that private parties have information regarding the NSA's activities or functions, the statute's express terms clearly apply because a state's attempt to force such disclosures would constitute an attempt to use "any other law" to obtain "any information" about NSA's functions and activities.  Such a direct conflict between state law and federal law as is presented here on the face of the Order and the federal statute demands that federal law prevail under the Supremacy Clause.

The federal statute protecting intelligence sources and methods—codified at 50 U.S.C. § 403-1(i)(1)—also clearly preempts the State Defendants' authority.  Congress has established that the exclusive responsibility of a federal actor—the DNI—to protect intelligence sources and methods.  Despite this clear congressional determination, the State Defendants seek to exercise the authority of the DNA with regard to national security information.  *See United States v. Adams, et al.*, __ F. Supp. 2d __, 2007 WL 441876, *9 (D. Me. Feb. 8, 2007) (noting that it is "painfully obvious that, in making assessments about the impact of [a state order] on national security, the [state agency] is acting beyond its depth").  As Judge Woodcock recognized in *Adams*, state regulators may have expertise to "regulate public utilities," but are "not charged with evaluating threats to national security, investigating the NSA, or holding businesses in contempt when their silence was mandated by the federal government." *Id.*  Thus, when confronted with a divergence of opinion as to the national security implications of a state Order, as between the Federal Government, which is charged with ensuring national security, and state regulators charged with state utility regulation, the state position must give way under the Supremacy Clause.  *See id.*

Congress has specifically proscribed, as a matter of federal statutory law, the disclosure of

---

[3] This argument also makes no sense.  While cases addressing NSA's statutory exemption, in the context of a FOIA request, hold that Section 6 *qualifies* as an exemption 3 statute under federal law, Section 6 was passed in 1959 many years before FOIA existed and it therefore applies to attempts to disclose information, not just under FOIA, but under "any other law."

intelligence-related information, and the State Defendants have no authority under state law to inquire into this area.[4] The state secrets privilege is yet another source of federal law showing that the authority to protect information related to federal national security matters is derived from the President's constitutional authority over national security matters, and the authority to protect information through this privilege resides with the head of the federal agency within the Executive branch of the United States Government—in this instance, the DNI. *See* USG Mem. at 14-16, 18-20. In sum, the U.S. Constitution, federal statutes and federal common law establish federal policy regarding the non-disclosure of matters concerning alleged foreign intelligence activities, and the State Defendants' attempts to investigate and force disclosure of such information directly conflict with federal law and are preempted by federal law.

## **CONCLUSION**

For the foregoing reasons, and those in the United States' motion for summary judgment, the Court should grant summary judgment in favor of the United States.

DATED: April 5, 2007          Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT

---

[4] The State Defendants also cannot genuinely dispute the fact that the DNI and NSA have sought to protect this information in federal courts. The Court should also take notice that every court to consider whether information concerning the alleged NSA records program is subject to the protection of federal law has upheld privilege assertions over this information, including whether or not any information even exists. *See Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 917 (N.D. Ill. 2006) (dismissing telephone records case on state secrets grounds); *ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006) (dismissing, on state secrets grounds, "data-mining" claims regarding alleged NSA records activities); *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 998 (N.D. Cal. 2006) (declining to permit discovery into allegations about AT&T's involvement in an alleged communication records program). This shows that the subject matter and law governing disclosure of the information at issue lies within the province and authority of the Federal Government.

Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

  */s/ Alexander K. Haas*
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone:   (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
Email: alexander.haas@usdoj.gov