MARK J. DI STEFANO (VT Bar No. 1420)
MICHAEL N. DONOFRIO (VT Bar No. 4400)
Assistant Attorneys General of Vermont
109 State Street
Montpelier, VT 05609-1001
Tel: (802) 828-3171
Fax: (802) 828-2154
E-mail: mdonofrio@atg.state.vt.us

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION, MDL No. 1791 | MDL Docket No. 06-1791 VRW |
| This Document Relates To: | Relates to Case No. |
| <u>USA v. James Volz, et al.</u>, (D.Vt.) | 07-cv-1396-VRW |
| | Courtroom: 6, 17th Floor |
| | Judge: The Hon. Vaughn R. Walker |

**DEFENDANTS VOLZ, COEN, BURKE, AND O'BRIEN'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>THEIR MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

THE PARTIES...................................................................................................................2

FACTUAL BACKGROUND................................................................................................2

ARGUMENT......................................................................................................................3

I.   Plaintiff Lacks A Valid Cause of Action................................................................3

II.  The State Officials' Actions Are A Proper Exercise Of Their Traditional Police Power And Do Not Interfere With Areas Of Exclusive Federal Control ..................6

III. The Complaint Fails To State A Claim Because The Federal Law Relied On By Plaintiff Does Not Preempt The Requests And Orders ............................................11

   A. Field preemption does not apply because the State officials' actions do not attempt to regulate national security..................................................................12

   B. The State officials' actions do not conflict with any federal law ....................13

CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*,
   850 F.2d 1028 (3d Cir. 1988) ...................................................................................................4

*Al-Haramain Islamic Found. v. Bush*, 451 F. Supp. 2d 1215 (D. Or. 2006) ..................................15

*ACLU v. NSA*, 438 F. Supp. 2d 754 (E.D. Mich. 2006) ..................................................................15

*Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003) ........................................................................13

*AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366 (1999) ................................................................6, 12

*Bell v. Hood*, 327 U.S. 678 (1946) ....................................................................................................4

*In re Debs*, 158 U.S. 564 (1895) .......................................................................................................4

*DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997) .................................12

*Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132 (1973) ........................................... 6-7, 12

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ............................................................10, 11

*Grafton & Upton R.R. Co. v. Town of Milford*, 337 F. Supp. 2d 233
   (D. Mass. 2004) ............................................................................................................................11

*Hancock v. Train*, 426 U.S. 167 (1976) .......................................................................................9, 13

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381 (D.C. Cir. 1979) ..........................14

*Hepting v. AT&T*, 439 F. Supp. 2d 974 (N.D. Cal. 2006) .........................................................2, 15

*Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), *cert den. sub nom*
   *U.S. Bank Corp. v. Kroske*, 127 S. Ct. 157 (2006) ..................................................................12

*Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956) ....................................................................10

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ..................................................................................5

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S.
   350 (1989) ..................................................................................................................................12

*Pacific Gas & Electric Co. v. State Energy Res. Conservation & Dev. Comm'n*,
   461 U.S. 190 (1983) ..................................................................................................................12

*Penn Dairies v. Mile Control Comm'n of Pa.*, 318 U.S. 261 (1943)..........................9, 10

*People for the Am. Way Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 462 F. Supp. 2d 21 (D.D.C. 2006)..........................14

*Perez v. Campbell*, 402 U.S. 637 (1971) ..........................8

*Pub. Utils. Comm'n of Cal. v. United States*, 355 U.S. 534 (1958)..........................11

*Rice v. Cayetano*, 941 F. Supp. 1529 (D. Haw. 1996)..........................9

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)..........................4

*Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899 (N.D. Ill. 2006)..........................14, 15

*United States v. Adams*, _ F. Supp. 2d _, 2007 WL 441876 (D. Me. Feb. 8, 2007)..........................4

*Untied States v. City of Glen Cove*, 322 F. Supp. 149 (E.D.N.Y. 1971) ..........................6

*United States v. City of Philadelphia*, 798 F.2d 81 (3d Cir. 1986)..........................11

*United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1981)..........................5

*United States v. City of Pittsburgh*, 757 F.2d 43 (3d Cir. 1985)..........................5

*United States v. Kaufmann*, 980 F. Supp. 1247 (S.D. Fla. 1997) ..........................6

*United States v. Kentucky*, 252 F.3d 816 (6th Cir. 2001) ..........................12

*United States v. Lewisburg Area Sch. Dist.*, 539 F.2d 301 (3d Cir. 1976) ..........................5

*United States v. Massachusetts*, 440 F. Supp. 2d 24 (D. Mass. 2006)..........................11

*United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967) ..........................5

*United States v. Owlett*, 15 F. Supp. 736 (M.D. Pa. 1936) ..........................6

*United States v. San Jacinto Tin Co.*, 125 U.S. 273 (1888)..........................5

*United States v. Texas*, 695 F.2d 136, 138 n.6 (5th Cir. 1983)..........................9

*United States v. Virginia*, 139 F.3d 984 (4th Cir. 1998)..........................10

*United Steelworkers of America v. United States*, 361 U.S. 39 (1959) ..........................4, 5

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)..................................4

*W. River Elec. Ass'n v. Black Hills Powers & Light Co.*, 918 F.2d 713
 (8th Cir. 1990)........................................................................................................................11

*Younger v. Harris,* 401 U.S. 37 (1971)...........................................................................................2

*Zschernig v. Miller*, 389 U.S. 429 (1968) ....................................................................................13


**Statutes**

50 U.S.C. § 402................................................................................................................................14

50 U.S.C. § 403................................................................................................................................15

30 V.S.A. § 2......................................................................................................................................2

30 V.S.A. § 9......................................................................................................................................2

30 V.S.A. § 203..................................................................................................................................2

30 V.S.A. § 206..................................................................................................................................3

30 V.S.A. § 209..................................................................................................................................2


**Miscellaneous**

Restatement (Second) of Torts § 821B ............................................................................................5

**INTRODUCTION**

In this reply, Defendants Volz, Burke, Coen, and O'Brien (collectively, Mssrs. Volz, Coen, Burke, and O'Brien are referred to herein as "the State Officials") focus on three deeply flawed contentions Plaintiff makes in its Opposition. First, by arguing that it possesses a non-statutory cause of action to vindicate its sovereign interests in federal court, Plaintiff attempts to vest itself with unfettered power to invent substantive causes of action against all whose actions it seeks to challenge. This attempt to blur the line between federal jurisdiction and the existence of a cause of action does not hold up to scrutiny, even under the caselaw Plaintiff cites.

Second, Plaintiff's argument that the State Officials lack authority over matters of national security or foreign intelligence rests on its transparent misportrayal of the State Officials' focused activities as an "investigat[ion] of the alleged foreign intelligence operations of the United States." *United States v. Volz et al.*, 2:06-cv-00188-WKS [hereinafter "*Volz*"], Doc. 62, Plaintiff's Memorandum in Opposition to the State Defendants' Motion to Dismiss [hereinafter "Pl. Opp."], at 3. To the contrary, the sole purpose of the information requests propounded by the Department of Public Service to Defendants AT&T Communications of New England, Inc. and Verizon New England, Inc. d/b/a Verizon Vermont (collectively, the Carriers) is to ascertain the Carriers' compliance with Vermont law. Accordingly, the foundation of Plaintiff's claims—a purported invasion of exclusive federal authority—does not exist.

Finally, none of the federal laws proffered by Plaintiff conflict with, let alone preempt, the State Officials' actions. Indeed, Plaintiff advances the same set of privileges that this Court held insufficient to preclude individuals from maintaining an action against a carrier for allegedly "collaborating with the National Security Agency (NSA) in a massive warrantless surveillance program that illegally tracks the domestic and foreign communications and

communications records of millions of Americans." *Hepting v. AT&T*, 439 F. Supp. 2d 974, 978 (N.D. Cal. 2006). Thus, Plaintiff's preemption arguments cannot justify barring the State Officials—three of whom, as the members of the Public Service Board, possess "the powers of a court of record . . . in all matters over which [the Board] is given jurisdiction," 30 V.S.A. § 9—from exercising their traditional police power to regulate the Carriers and safeguard Vermonters' privacy rights.[1]

### The Parties

Plaintiff is the United States of America. Defendant James Volz is the Chairman of the Vermont Public Service Board (Board), defendants David C. Coen and John D. Burke are Members of the Board, and David O'Brien is the Commissioner of the Vermont Department of Public Service (the Department). The Carriers are telecommunications companies operating in Vermont and subject to the Board's jurisdiction and the Department's oversight.[2] On December 4, 2006, the American Civil Liberties Union of Vermont filed a motion to intervene, *see Volz*, Doc. 28, Motion to Intervene by ACLU-VT, which is now pending before this Court.

### Factual Background

The facts of this case are not in dispute, although the parties disagree on the proper characterization of the underlying state proceedings.[3] On May 17, 2006, the Department

---

[1] The State Officials rest on their previously briefed arguments concerning abstention under *Younger v. Harris,* 401 U.S. 37 (1971), in reply to Plaintiff's abstention arguments.

[2] *See* 30 V.S.A. §§ 2(a)-(b) (Department "shall supervise and direct the execution of all laws relating to public service corporations and firms . . . engaged in such business" and "shall represent the interests of the people of the state"), 203(5) (conferring jurisdiction on Department and Board over "[a] person or company offering telecommunications service to the public"), 209(a)(3), (6) (conferring broad jurisdiction on Board to hear and render judgment in matters involving telecommunications carriers).

[3] For example, the second sentence of Plaintiff's "Factual Background" section, which describes the information requests as the beginning of the State Officials' "attempt[] to investigate the

propounded information requests (the Requests) to the Carriers, pursuant to 30 V.S.A. § 206. *Volz*, Doc. 1, Compl. ¶ 32. When the Carriers failed to provide adequate responses, the Board, acting on the Department's petition, opened an investigation of the Carriers. *Volz*, Doc. 1, Compl. ¶¶ 33-34. The Carriers moved to dismiss, arguing that federal law preempted the investigation and raising many of the same points urged by Plaintiff in this action. *Id.* ¶ 34. Before ruling, the Board invited Plaintiff to intervene in order to assert any privileges that Plaintiff believed barred the Carriers from responding to the Requests. *Id.* ¶ 35. Plaintiff declined to intervene, instead submitting a letter setting out its views on why, if asserted, the state secrets privilege would preclude the Carriers from responding to the Requests. *Id.* The Board denied the Carriers' motions on September 18, 2006, holding that the Carriers could not assert the state secrets privilege. *Id.* ¶ 36. On September 21, 2006, the Board entered orders requiring the Carriers to respond to the Requests (the Orders). *Id.* ¶ 37.

Plaintiff filed this action on October 2, 2006. In December 2006, the State Officials filed the instant motion to dismiss and Plaintiff filed a motion for summary judgment. Meanwhile, on October 19, 2006, the Judicial Panel for Multidistrict Litigation issued conditional transfer order CTO-4 transferring this case to MDL-1791. The Panel denied the State Officials' motion to vacate CTO-4 on February 15, 2007, resulting in the transfer of this matter to this Court.

## ARGUMENT

### I. Plaintiff Lacks A Valid Cause Of Action.

Plaintiff's claim to possess a "blank check" non-statutory cause of action against conduct it deems contrary to its sovereign interests rests on a distorted view of the caselaw it cites to

---

alleged foreign intelligence gathering functions of the United States," Pl. Opp. at 3, brings into vivid relief Plaintiff's efforts to spin this case as an instance of state intrusion into federal functions.

support its claim. First, *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002), did not "confirm[] that a cause of action exists under the Supremacy Clause to restrain state officials from enforcing preempted state law or violating federal rights." Pl. Opp. at 8. Rather, *Verizon* addressed whether Verizon's claim that a federal statute preempted an order of the state commission presented a federal question under 28 U.S.C. § 1331. *Verizon Maryland, Inc.*, 535 U.S. at 638, 642. There is, however, a "distinction between the existence of subject matter jurisdiction and the existence of a cause of action." *Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1032 (3d Cir. 1988). As the *Verizon* Court recognized, the question of the existence of a cause of action "'does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional *power* to adjudicate the case.'" 535 U.S. at 642-43 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)). Thus, *Verizon's* discussion of federal-question jurisdiction does not imply the existence of a cause of action here. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) (discussing distinction between jurisdiction and existence of cause of action). *But cf. United States v. Adams*, --- F. Supp. 2d ---, 2007 WL 441876, *6 (D. Me. Feb. 8, 2007) (holding that United States was likely to succeed on its claim that court had jurisdiction without discussing existence of non-statutory cause of action).

Next, *In re Debs*, 158 U.S. 564 (1895), in which the Supreme Court upheld a federal-court injunction against the Pullman strike of 1894, did not create the catch-all cause of action Plaintiff advocates for. Rather, as the Court explained in *United Steelworkers of America v. United States*, the federal government's ability to "invoke judicial power to abate what is in effect a nuisance detrimental to the public interest" is the "crux of the *Debs* decision." 361 U.S. 39, 61 (1959) (discussing *In re Debs*). By contrast, the State Officials' investigation of the

4

Carriers' possible violations of state law cannot be deemed a public nuisance. *See* Restatement (Second) of Torts § 821B ("A public nuisance is an unreasonable interference with a right common to the general public."); *United Steelworkers*, 361 U.S. at 60 (noting that doctrine traditionally applies "to prevent nuisance to public harbours and public roads"). *See also United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1981) (affirming district court's rejection of *In re Debs* as providing non-statutory cause of action for United States to sue city over alleged police brutality).

It is unclear how Plaintiff's argument is advanced by Justice Rehnquist's dissent in *Maryland v. Louisiana*, 451 U.S. 725, 767 (1981) (Rehnquist, J., dissenting) (addressing "settled doctrine that a state has standing to sue only when its sovereign or quasi-sovereign interests are implicated" (quotations omitted)), or *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 288 (1888) (recognizing that absent Congressionally created cause of action, United States can only sue "upon the same general principles which authorize a private citizen to apply to a court of justice for relief"). Nor does caselaw addressing standing in factually distinct settings support the wild-card cause of action Plaintiff seeks to invoke. *See United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985) (upholding United States' standing to challenge city's attempt to impose a business privilege tax on federal court reporters); *United States v. Lewisburg Area School District*, 539 F.2d 301, 306 (3d Cir. 1976) (upholding United States' standing to challenge state's efforts to collect taxes in federal enclave).

Plaintiff's examples of cases in which federal courts halted "improper state actions," Pl. Opp. at 10, are easily distinguishable, because they involved state actions directly targeting at federal agencies and actors. *See United States v. McLeod*, 385 F.2d 734, 751 (5th Cir. 1967) (enjoining state grand jury investigation of Justice Department's efforts to enforce civil rights

laws in light of "overwhelming" evidence that its purpose was to "harass and obstruct the operations of the Justice Department"); *United States v. Kaufman*, 980 F. Supp. 1247, 1251 (S.D. Fla. 1997) (enjoining bar grievance committee's subpoena to federal judge because complying with subpoena would have "interfere[d] with the administration of justice" in pending federal case); *United States v. Owlett*, 15 F. Supp. 736, 739 (M.D. Pa. 1936) (enjoining state senate resolution creating committee "whose duty it shall forthwith be to make a searching and impartial investigation of the organization administration and functioning of the Works Progress Administration"). By contrast, the contact between state action and federal authority in the instant case is, at most, indirect and tangential. Thus, Plaintiff's claim to possess a wide-ranging non-statutory cause of action should be rejected.[4]

## II. The State Officials' Actions Are A Proper Exercise Of Their Traditional Police Power And Do Not Interfere With Areas Of Exclusive Federal Control.

The viability of Plaintiff's case depends on the fallacy, repeated throughout Plaintiff's filings, that the State Officials "seek to investigate the alleged foreign intelligence surveillance activities of the Federal Government," *Volz,* Doc. 1, Compl. ¶ 37. No amount of repetition, however, can change the fact that the Carriers are the sole subjects of the State Officials' investigation, the goal of which is to determine whether the Carriers complied with Vermont law. Therefore, their actions fall squarely within their traditional police power to regulate telecommunications companies doing business in Vermont, *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 375, 381 n.8 (1999) (states possess wide latitude to regulate intrastate telecommunications matters), and protect Vermont consumers, *Florida Lime & Avocado*

---

[4] Nor does the fact that "the United States may sue to prevent state action which would violate a treaty obligation of the United States" assist Plaintiff. *United States v. City of Glen Cove*, 322 F. Supp. 149, 152 (E.D.N.Y. 1971) (rejecting city's challenges to federal lawsuit seeking to enjoin city from taxing property owned by Soviet Union).

*Growers v. Paul*, 373 U.S. 132, 150 (1973). Accordingly, the Complaint fails to allege an actual incursion by the State Officials into an area of federal authority.

While the information requests refer to the NSA, they cannot plausibly be viewed as attempting to investigate the activities of any entity other than the Carriers. The references—included to provide specificity in light of the May 2006 news articles—do not transform the Requests into an investigation of the NSA; rather, the Requests encompass disclosure to any state or federal agency. Moreover, the Requests neither require responses from any agency nor inquire into the fate of any information after it left the Carriers' custody. Significantly, there is no possibility that the PSB proceedings could result in an order directing any federal entity to act or refrain from acting. Indeed, the mere identity of the recipient of any customer records disclosed by the Carriers has no bearing on whether the Carriers complied with their obligations under Vermont law. The inquiry begins and ends with the Carriers.

Plaintiff's claim that the State Officials "assert the right to demand extensive information, if it exists, about the precise nature of the alleged federal intelligence activities," Pl. Opp. at 12-13, is hyperbole. In reality, the Requests ask about routine customer records that the Carriers keep in the ordinary course of business, and the Request addressing whether the Carriers modified any in-state equipment or physical plant goes to the conduct of the Carriers alone.

Plaintiff also ignores the fact that the Board has authority to order a wide variety of relief unrelated to any particular disclosure a Carrier may or may not have made. Indeed, the Board has ordered the Carriers to answer regarding their policies on responses to state law enforcement requests for Vermont customer records and maintenance of information relative to such law enforcement requests. *See, e.g., Volz*, Doc. 1, Compl. Exh. C (May 17, 2006 Request to AT&T) at 3, items 15 & 16 (requesting Carrier's "policy for responding to state law enforcement

requests for call records of its Vermont customers" and "the information [the Carrier] maintains relative to requests by state and federal law enforcement . . .; the location . . . where such records are kept and the name and title of their custodian; and the retention period for such records"). Depending on responses to such inquiries, the Board could require the Carriers to modify their customer privacy notices to reflect their policies regarding future requests to disclose customer information to government agencies. In the same vein, the Board could ask the Carriers to explain the circumstances under which they believe they may disclose customer information without warrants or other such authorization.

This failure to recognize the variety of relief sought in the Requests and available to the State Officials manifests as another crucial flaw in Plaintiff's case. By framing its claims in terms of the information sought via the Orders as a whole,[5] Plaintiff asks this Court to enjoin and declare invalid an entire spectrum of potential actions by the State Officials, including actions, like those described above, with no arguable effect on any federal function. Plaintiff's all-or-nothing approach must be rejected.

The caselaw Plaintiff cites in support of its attempt to characterize the State Officials' actions as an investigation of the NSA cannot save its claims. For example, Plaintiff observes that a party "may not avoid the limitations of the Supremacy Clause simply by 'articulating some state interest or policy—other than frustration of the federal objective.'" Pl. Opp. at 12 (quoting *Perez v. Campbell*, 402 U.S. 637, 652 (1971)). As the Supreme Court recognized in *Perez*, this principle presupposes that the state action in question in fact "frustrates the full effectiveness of federal law." 402 U.S. at 652. The state law at issue in *Perez* did just that—it provided that a

---

[5] *See, e.g., Volz*, Doc. 1, Compl. ¶ 48 (Count One) (alleging that the State Officials' "attempts to procure the information sought through the Order, or any other related information, are invalid

bankruptcy discharge did not excuse the debtor from satisfying a judgment against him in an action involving his operation of a motor vehicle. *Id*. at 648. Thus, giving effect to the state law would have made it impossible to successfully effectuate the federal Bankruptcy Act's mandate that a discharge relieves all but certain specified judgments. *Id*.; *see also Hancock v. Train*, 426 U.S. 167, 180 (quotations omitted) (federal law preempted state law requiring federal installations to obtain state air pollution permits because it "place[d] a prohibition on the Federal Government" (quotations omitted)). By contrast, the State Officials' actions here leave the federal government free to gather foreign intelligence and promote national security.

Further, even assuming the State Officials' actions here have some incidental impact on federal functions, the Supreme Court has

> recognized that the Constitution presupposes the continued existence of the states functioning in coordination with the national government, with authority in the states to lay taxes and to regulate their internal affairs and policy, and that state regulation like state taxation inevitably imposes some burdens on the national government. . . . and that no immunity of the national government from such burdens is to be implied from the Constitution. . . .

*Penn Dairies v. Milk Control Comm'n of Pa.*, 318 U.S. 261, 270-71 (1943) (citations omitted). Thus, as the Court observed in *Hancock*, "[n]either the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the Federal Government." 426 U.S. at 179. *Accord United States v. Texas*, 695 F.2d 136, 138 n.6 (5th Cir. 1983) ("State regulatory schemes that merely impose upon federal regulation or activity, without vitiating its impact or intent, can be valid exercises of state authority."); *Rice v. Cayetano*, 941 F. Supp. 1529, 1547 (D. Haw. 1996) (federal law preempts state regulation "that would vitiate the impact or intent of the federal regulatory scheme"). The incidental contact, if any, between the

---

under, and preempted by, the Supremacy Clause"), ¶ 51 (Count Two) (alleging that "[p]roviding

9

STATE OFFICIALS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
DOCKET NO. 07-1396-VRW

State Officials' actions and the federal government's authority over national security or foreign intelligence gathering falls well short of frustrating the federal government's efforts in these fields and is properly viewed as a "normal incident" of our "dual system of government." *Penn Dairies*, 318 U.S. at 271.

Plaintiff's assertion that the State Officials cannot defend their investigation based on "the mere fact that the Order[s] [are] directed at the Carrier Defendants," Pl. Opp. at 13-15, fails to recognize that this matter lacks the common thread running through the cases cited by Plaintiff: the fact that "the State [was] claiming the authority to dictate the manner in which the federal function is carried out." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 n.3 (1988). For example, the state law at issue in *Goodyear* imposed supplemental damages against the operator of a federally owned facility for failing to comply with state safety regulations. *Id*. at 181-82 (refraining from deciding whether state law was preempted because federal statute "provide[d] the requisite clear congressional authorization for the application of the [state law]"). Similarly, in *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956), the Court held that allowing the state to require federal contractors to meet the state's licensing requirements would violate the Supremacy Clause by giving "the State's licensing board a virtual power of review over the federal determination of [the contractor's] responsibility and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder." *Id*. at 190. *See also United States v. Virginia*, 139 F.3d 984, 988-90 (4th Cir. 1998) (barring state from requiring federal contractors approved under FBI standards to also meet state licensing requirements, in a case that "cannot be distinguished in any relevant way" from *Leslie Miller*).

---

responses to the Order would be inconsistent with and would violate federal law").

STATE OFFICIALS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
DOCKET NO. 07-1396-VRW

Plaintiff's surface analysis misses the touchstone of this line of authority—the Supremacy Clause's intolerance of state action that "places a prohibition on the Federal Government." *Pub. Utils. Comm'n of Cal. v. United States*, 355 U.S. 534, 543-44 (1958) (invalidating state law granting state power to approve reduced-rate contracts negotiated by federal government with transportation carriers); *see also W. River Elec. Ass'n v. Black Hills Power & Light Co.*, 918 F.2d 713, 720 (8th Cir. 1990) (refusing to require federal air force base to purchase overrun electricity from particular supplier in accordance with state law); *United States v. City of Philadelphia*, 798 F.2d 81, 87 (3d Cir. 1986) (invalidating order of city's human relations commission prohibiting law school from allowing military recruiters on campus). In sum, these authorities demonstrate that state action aimed at a third party intrudes on federal authority only if it enables the state to "dictate the manner in which the federal function is carried out." *Goodyear Atomic Corp.*, 486 U.S. at 181 n.3.[6] The Requests and Orders impose no limitation on the manner in which the federal government carries out its national security and foreign intelligence gathering functions. Therefore, the Court should reject Plaintiff's bid to mischaracterize the State Officials' actions as an attempt to investigate or regulate the federal government's exclusive functions and permit the State Officials to continue their inquiry.

### III. The Complaint Fails To State A Claim Because The Federal Law Relied On By Plaintiff Does Not Preempt The Requests And Orders.

The general presumption against finding that federal law preempts state action applies to state action within a traditional realm of state police power even if the action overlaps to some

---

[6] Plaintiff also cites two factually inapposite decisions for the unremarkable proposition that federal law preempts conflicting "indirect" state regulation. *See United States v. Massachusetts*, 440 F. Supp. 2d 24 (D. Mass. 2006) (state Oil Spill Prevention Act preempted by federal law addressing tank vessels); *Grafton & Upton R.R. Co. v. Town of Milford*, 337 F. Supp. 2d 233, 238 (D. Mass. 2004) (federal Interstate Commerce Commission Termination Act preempted "entire field of railroad regulation," including local regulation of development of railroad yard).

extent with federal authority. As the Supreme Court and the Ninth Circuit recognize, "'[w]here federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 981 (9th Cir. 2005), *cert den. sub nom U.S. Bank Corp. v. Kroske*, 127 S. Ct. 157 (2006) (quoting *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 n. 8 (1997)). Acknowledging that "there is a significant federal presence in the regulation of national banks," the Ninth Circuit in *Kroske* nonetheless applied the presumption because the state statute at issue "was enacted pursuant to the State's historic police powers to prohibit discrimination." *Id*. Because "the regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States," *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989), the presumption applies here.

### A. Field Preemption Does Not Apply Because The State Officials' Actions Do Not Attempt To Regulate National Security.

Plaintiff's field preemption argument rests on the faulty premise that "[t]he relevant field of law at issue is national security." Pl. Opp. at 15.[7] Rather, the Requests and Orders emanate from the State Officials' police power to regulate the Carriers and protect Vermont consumers—fields in which the states are free to operate. *See AT&T Corp. v. Iowa Utils. Bd*., 525 U.S. at 381 n.8; *New Orleans Pub. Serv., Inc.*, 491 U.S. at 365; *Fla. Lime & Avocado Growers v. Paul*, 373

---

[7] It is not clear how the cases dealing with nuclear safety cited by Plaintiff advance its cause. *See Pacific Gas & Electric Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204, 212, 216 (1983) (holding that state law conditioning construction of nuclear plants on state findings that adequate means of waste disposal were available was *not* preempted, despite federal Atomic Energy Act's exclusive occupation of nuclear safety field because state law had economic purpose); *United States v. Kentucky*, 252 F.3d 816, 823 (6th Cir. 2001) (holding that state's waste-permit conditions were preempted because they interfered with federal government's exclusive control over nuclear safety).

U.S. at 150. In addition, their investigation neither dictates nor places any prohibition on the manner in which the federal government may pursue its national security objectives. Thus, the federal government's extensive control over national security poses no obstacle to the State Officials' investigation of the Carriers.

Assuming arguendo that the State Officials' actions touch on federal national security functions, any such contact is merely incidental, given that the Requests and Orders focus on, and demand responses from, the Carriers alone. Plaintiff offers no authority that such minimal contact between state action within a realm of traditional state competence and federal functions requires, or allows, preemption. By contrast, "[n]either the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the Federal Government." *Hancock*, 426 U.S. at 179. Indeed, when state action lies "within 'areas of traditional state competence' . . . it would be reasonable to consider the strength of the state interest, judged by standards of traditional practice, when deciding how serious a conflict must be shown before declaring the state law preempted." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 (2003) (quoting *Zschernig v. Miller*, 389 U.S. 429, 459 (1968) (Harlan, J., concurring)). Thus, Plaintiff is thus wrong to suggest that any state-federal contact, no matter how incidental, automatically results in preemption.

### B. The State Officials' Actions Do Not Conflict With Federal Law.

Plaintiff's attempt to conjure a conflict between the State Officials' actions and various provisions of federal law must be rejected. First, Plaintiff contends that because some of the Requests refer to the NSA by name, they violate Section 6 of the National Security Act of 1959, which provides in relevant part that "nothing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of

any information with respect to the activities thereof." Pub. L. No. 86-36 § 6, 73 Stat. 63, 64, *codified at* 50 U.S.C. § 402 note § 6(a). The Requests, however, seek information from the Carriers alone, and the NSA references do not metamorphose the Requests into questions about the NSA's activities. As noted above, the State Officials are not attempting to ascertain the post-disclosure fate of any information disclosed by the Carriers or the nature of any alleged NSA program. Indeed, *People for the American Way Foundation v. National Security Agency/Central Security Service*, 462 F. Supp. 2d 21 (D.D.C. 2006), is easily distinguished on this ground, as it involved a FOIA request made to the NSA seeking information about its foreign intelligence gathering activities.

Plaintiff's argument concerning Section 6's application to unlawful activity mischaracterizes the State Officials' position. *See* Pl. Opp. at 17 (referring to "the State Defendants' bald assertions that alleged NSA activities, if they exist, are unlawful"). In arguing that Section 6 does not insulate unlawful activities, the State Officials were not claiming that any particular NSA activities were unlawful. Rather, they were countering Plaintiff's boundless interpretation of Section 6 and echoing the concern expressed by Judge Kennelly in *Terkel v. AT&T Corp.*, "that if . . . section 6 is taken to its logical conclusion, it would allow the federal government to conceal information regarding blatantly illegal or unconstitutional activities simply by assigning those activities to the NSA or claiming they implicated information about the NSA's functions." 441 F. Supp. 2d 899, 905 (N.D. Ill. 2006); *see also Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1389 (D.C. Cir. 1979) (limiting discussion of Section 6 to situations "where the function or activity is authorized by statute and not otherwise unlawful").

Plaintiff's reliance on 50 U.S.C. § 403-1(i)(1) is similarly misplaced. Indeed, no court has interpreted § 403-1(i)(1) as foreclosing individual plaintiffs' lawsuits against carrier defendants. *See Al-Haramain Islamic Found. v. Bush*, 451 F. Supp. 2d 1215, 1227 (D. Or. 2006); *Terkel*, 441 F. Supp. 2d at 906; *Hepting*, 439 F. Supp. 2d at 998-99; *ACLU v. NSA*, 438 F. Supp. 2d 754, 766 n.1 (E.D. Mich. 2006). Thus, the statute should not be interpreted as foreclosing the State Officials' exercise of their established police powers to ensure the Carriers' compliance with Vermont law.[8]

## CONCLUSION

In sum, for the reasons above as well as those set forth in the State Officials' previous briefing, Plaintiff has neither demonstrated that the State Officials' actions invade an area of exclusive federal authority nor shown an actual conflict between the State Officials' actions and federal law. Accordingly, the State Officials respectfully asks the Court to grant their motion and to dismiss the Complaint with prejudice or in the alternative to abstain, and such other and further relief as the Court deems proper.

DATED: April 5, 2007

STATE OF VERMONT
WILLIAM H. SORRELL
ATTORNEY GENERAL

By: */s/ Michael N. Donofrio*
Michael N. Donofrio
Mark J. Di Stefano
Assistant Attorneys General

---

[8] The State Officials respectfully refer the Court to their Opposition to Plaintiff's summary judgment motion for additional arguments against the application of preemption. *See Volz*, Doc. 64, Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, at 11-17 (addressing field preemption), 17-24 (addressing conflict preemption).