1   PETER D. KEISLER
    Assistant Attorney General
2   CARL J. NICHOLS
    Deputy Assistant Attorney General
3   JOSEPH H. HUNT
    Director, Federal Programs Branch
4   ANTHONY J. COPPOLINO
    Special Litigation Counsel
5   tony.coppolino@usdoj.gov
    ANDREW H. TANNENBAUM
6   Trial Attorney
    andrew.tannenbaum@usdoj.gov
7   U.S. Department of Justice
    Civil Division, Federal Programs Branch
8   20 Massachusetts Avenue, NW
    Washington, D.C. 20001
9   Phone: (202) 514-4782/(202) 514-4263
    Fax:    (202) 616-8460/(202) 616-8202
10  Attorneys for the United States of America

11              **IN THE UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12                   **SAN FRANCISCO DIVISION**

13

14  IN RE NATIONAL SECURITY AGENCY           )   MDL Dkt. No. 06-1791-VRW
    TELECOMMUNICATIONS RECORDS               )
15  LITIGATION                               )   **MEMORANDUM OF THE**
                                             )   **UNITED STATES IN SUPPORT**
16                                           )   **OF THE MILITARY AND**
                                             )   **STATE SECRETS PRIVILEGE**
17  This Document Relates to:                )   **AND MOTION TO DISMISS OR**
                                             )   **FOR SUMMARY JUDGMENT**
18  (1) All Actions Against the *MCI* and *Verizon*  )
    Defendants in the Master MCI and Verizon )
19  Consolidated Complaint, Dkt. 125; (2) *Bready,*  )   Hon. Vaughn R. Walker
    et al. *v. Verizon Maryland* (06-06313); (3) *Chulsky*  )   Date:  June 21, 2007
20  et al. *v. Cellco Partnership d/b/a Verizon*  )   Time:  2:00 pm
    *Wireless* (06-06570); and (4) *Riordan,* et al. *v.*  )   Courtroom: 6
21  *Verizon Communications* (06-3574)       )
                                             )
22  _____)

23

24

25

26

27  **Public Memorandum of the United States**
    **in Support of Motion to Dismiss or for Summary**
28  **Judgment, MDL No. 06-1791-VRW**

## (U) <u>TABLE OF CONTENTS</u>

**(U)** INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**(U)** BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.     **(U)** The Plaintiffs' Claims Against Verizon . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.     **(U)** The United States' State Secrets Privilege Assertion . . . . . . . . . . . . . . . . 9

**(U)** ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.    **(U)** WHERE STATE SECRETS ARE NEEDED TO RESOLVE A CASE,
    THE MATTER MUST BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.     **(U)** The State Secrets Privilege Bars Use of Privileged Information
           Regardless of a Litigant's Need . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      B.     **(U)** Where the State Secrets Are Central to the Resolution of a
           Case or Needed to Litigate the Claims and Defenses, the Case
           Cannot Proceed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      C.     **(U)** The Court in *Hepting* Misapplied the Standard of Review and
           Failed to Determine the Consequences of the Government's Privilege
           Assertion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

           1.    **(U)** The Court's Application of the Standard of Review in
                *Hepting* Was Erroneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

           2.    **(U)** The Court Failed to Assess the Consequences of the
                State Secrets Privilege in *Hepting* . . . . . . . . . . . . . . . . . . . . . . . . 20

II.    **(U)** THE UNITED STATES HAS PROPERLY ASSERTED THE
    STATE SECRETS PRIVILEGE IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . 25

III.    **(U)** INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE
    IS NECESSARY TO ADJUDICATE PLAINTIFFS' CLAIMS AND, THUS,
    THIS ACTION CANNOT PROCEED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW**

A.    **(U)** Whether or Not MCI/Verizon Has a Relationship with the NSA is a State Secret Necessary to Decide This Case . . . . . . . . . . . . . . . . . . . . . . . . . 26

    1.    **(U)** The *Totten* Doctrine Requires Dismissal of this Action Protect Whether or Not MCI/Verizon Has a Relationship with the NSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    2.    **(U)** The State Secrets Privilege Also Requires Dismissal of this Action to Protect Whether or Not MCI/Verizon Assisted the NSA in the Alleged Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

B.    **(U)** Whether or Not Plaintiffs Have Standing Cannot be Established or Refuted Without the Disclosure of State Secrets and Harm to National Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    1.    **(U)** Plaintiffs Cannot Establish Standing Because The State Secrets Privilege Forecloses Litigation Over Whether They Have Been Subject To Surveillance . . . . . . . . . . . . . . . . . . . . . . . . . 40

    2.    **(U)** Plaintiffs Cannot Establish Standing On The Basis of a "Dragnet" Theory of Surveillance . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

    3.    **(U)** Plaintiffs' Standing to Challenge Alleged Collection of Communication Records Information Cannot be Adjudicated Without State Secrets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

C.    **(U)** The Disclosure of Facts Concerning the Alleged NSA Intelligence Activities is Required to Adjudicate Plaintiffs' Claims on the Merits . . . . . . 48

    1.    **(U)** Plaintiffs' Claims as to Alleged Warrantless Content Surveillance Cannot be Adjudicated Without Disclosing State Secrets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    2.    **(U)** Plaintiffs' Challenge to Alleged Communication Records Collection Cannot be Adjudicated Without Disclosing State Secrets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

IV.     (U) STATUTORY PRIVILEGE CLAIMS HAVE ALSO BEEN PROPERLY
        RAISED IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

(U) CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

## (U) <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*ACLU v. NSA*, 438 F. Supp. 2d 754 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Afshar v. Department of State*, 702 F.2d 1125 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 34

*Bareford v. General Dynamics Corp.*, 973 F.2d 1138 (5th Cir. 1992) . . . . . . . . . . . . 6, 17, 35

*Black v. United States*, 62 F.3d 1115 (8th Cir. 1995),
 *cert. denied*, 517 U.S. 1154 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*CIA v. Sims*, 471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 55

*DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Department of the Navy v. Egan*, 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Director, Office of Workers' Comp. Programs v. Newport News
 Shipbuilding & Dry Dock Co.*, 514 U.S. 122 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Edmonds v. U.S. Department of Justice*, 323 F. Supp. 2d 65 (D.D.C. 2004)
 *aff'd*, 161 Fed. Appx. 6, 045286 (D.C. Cir. 2005), *cert. denied*,
 126 S. Ct. 734 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22, 34

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) . . . . . . . . . . . . . . . . . . . . . . . 37

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983), *cert. denied sub nom.*
 *Russo v. Mitchell*, 465 U.S. 1038 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Ellsberg v. Mitchell*, 807 F.2d 204 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*El-Masri v. Tenet*, 437 F. Supp. 2d 530 (E.D. Va. 2006)
 *aff'd* 2007 WL 625130 (4th Cir. Mar. 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*El-Masri v. United States*, ___ F.3d ___ 2007 WL 625130 (4th Cir. 2007) . . . . . . . . . . . *passim*

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

*Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236 (4th Cir. 1985) . . . . . . . . . . . . . . . . . *passim*

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hayden v. Nat'l Security Agency*, 608 F.2d 1381 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . 54

*Hepting. v. AT&T*, 439 F. Supp. 2d 934 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re United States*, 872 F.2d 472 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir.),
        *cert. denied*, 525 U.S. 967 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Lewis v. Casey*, 518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Linder v. Nat'l Security Agency*, 94 F.3d 693 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 54

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Molerio v. Federal Bureau of Investigation*, 749 F. 2d 815 (D.C. Cir. 1984) . . . . . . . . . . . 51

*Military Audit Project v. Casey*, 656 F.2d at 714 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . 20

*Maxwell v. First National Bank of Maryland*, 143 F.R.D. 590 (D. Md. 1992) . . . . . . . 6, 16, 22

*Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395 (D.C. Cir. 1984) . . . . . . . . . . . 15

*O'Shea v. Littleton*, 414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*People for the American Way Foundation v. National Security Agency*,
        462 F. Supp. 2d 21 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW**

*Raines v. Byrd,* 521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Sterling v. Tenet,* 416 F.3d 338 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 16, 21, 22, 51

*Smelt v. County of Orange,* 447 F.3d 673 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 38

*Smith v. Maryland,* 442 U.S. 735 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Snepp v. United States,* 444 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Tenet v. Doe,* 544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Terkel v. AT&T Corp.,* 441 F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . *passim*

*The Founding Church of Scientology of Washington, D.C., Inc. v.*
*Nat'l Security Agency,* 610 F.2d 824 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . 54

*Tilden v. Tenet,* 140 F. Supp. 2d 623 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Totten v. United States,* 92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Burr,* 25 F. Cas. 30 (C.C.D. Va. 1807) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Nixon,* 418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ott,* 827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*United States v. Reynolds,* 345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Vernonia Sch. Dist. v. Action,* 515 U.S. 646 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Warth v. Seldin,* 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Weinberger v. Catholic Action of Hawaii*
454 U.S. 139 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Zuckerbraun v. United States,* 935 F.2d 544 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 21, 23, 39

*United States ex rel. Ross v. LaVallee,* 341 F.2d 823 (2d Cir. 1965) . . . . . . . . . . . . . . . . 43

**Public Memorandum of the United States**
**in Support of Motion to Dismiss or for Summary**
**Judgment, MDL No. 06-1791-VRW**

## Statutes

18 U.S.C. § 2510(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
18 U.S.C. § 2520(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
18 U.S.C. § 2702(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
18 U.S.C. § 2702(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18 U.S.C. § 2702(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18 U.S.C. § 2702(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18 U.S.C. § 2711(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
18 U.S.C. § 2707(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
18 U.S.C. § 2511(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18 U.S.C. § 2511(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18 U.S.C. § 2511(1)(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18 U.S.C. § 2511(3)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
47 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 43
47 U.S.C. § 605(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
47 U.S.C. § 605(e)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
50 U.S.C. § 1801(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
50 U.S.C. § 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
50 U.S.C. § 1809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Section 6 of the National Security Agency Act of 1959,
      Pub. L. No. 86-36, § 6, 73 Stat. 63, 64,
      codified at 50 U.S.C. § 402 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55, 56

Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act
      of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004),
      codified at 50 U.S.C. § 403-1(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**Public Memorandum of the United States**
**in Support of Motion to Dismiss or for Summary**
**Judgment, MDL No. 06-1791-VRW**

## (U) INTRODUCTION[1]

(**U**) For the second time in this MDL proceeding, the United States is asserting the state secrets privilege in actions before this Court to preclude the disclosure of information concerning alleged classified intelligence activities of the National Security Agency (NSA), including information confirming or denying whether a telecommunications company has assisted the NSA with any such alleged activities. Plaintiffs in these actions allege that the Verizon Defendants ("Verizon"), including the MCI Defendants ("MCI"), have unlawfully provided the NSA with access to the content of Plaintiffs' communications as well as with records related to Plaintiffs' communications.[2]

(**U**) In May 2006, the United States asserted the state secrets privilege and filed a motion to dismiss or for summary judgment in *Hepting. v. AT&T*, 439 F. Supp. 2d 934 (N.D. Cal. 2006)—a case raising allegations against AT&T substantially similar to those made against Verizon in these cases. The Court's order denying the Government's motions in *Hepting* is now

---

[1] (**U**) Classification markings in this memorandum are in accordance with the marking system described in the *In Camera, Ex Parte* Classified Declaration of Lt. Gen. Keith B. Alexander, Director, National Security Agency ("*In Camera* Alexander Decl.").

[2] (**U**) *See* Master Consolidated Complaint Against MCI Defendants and Verizon Defendants, Dkt.125 (hereafter "Master Verizon Compl."); *see also Riordan,* et al. *v. Verizon Communications* (MDL 06-3574); *Bready,* et al. *v. Verizon Maryland* (MDL 06-06313); *Chulsky* et al. *v. Cellco Partnership d/b/a Verizon Wireless* (MDL 06-06570) (separate complaints pending in the MDL against Verizon entities). For a list of all actions against the MCI and Verizon Defendants that have been consolidated in the Master MCI and Verizon Consolidated Complaint, *see* MDL Status Report of AT&T and Bell South Corporation, Dkt. 197, at 10-11. Any reference to "Verizon" or "Verizon Defendants" in this brief includes all Verizon Defendants and entities in all cases brought in this MDL, see Dkt. 61-1 (Joint Case Management Statement) at 2, n.4. In particular, unless otherwise indicated, "Verizon" or "Verizon Defendants" also specifically includes the MCI Defendants, which are now a part of Verizon, even though "MCI" may at times be referenced separately.

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

pending before the Court of Appeals for the Ninth Circuit. We respectfully disagree with the Court's decision in *Hepting*, as we set forth herein. And, as we argued in seeking to stay proceedings related to Verizon, the *Hepting* appeal may resolve, or at least will substantially impact, the same issues in the Verizon cases. Nonetheless, we respectfully request that the Court, having permitted these actions to proceed, approach the facts, law, and arguments presented by the United States with a fresh perspective. The Court is not foreclosed from reaching a different result here and, for the reasons we set forth below, it should dismiss all cases against the Verizon Defendants.

(U) As in *Hepting*, the Plaintiffs here allege that, after the terrorist attacks of September 11, 2001, the President authorized two distinct intelligence gathering activities, involving: (1) the surveillance of the content of their communications, and (2) the collection of records about their communications. With respect to their content surveillance claim, Plaintiffs note that the President authorized the NSA to intercept the content of international communications to or from the United States (*i.e.*, "one-end" foreign communications) reasonably believed to involve members or agents of al Qaeda or affiliated terrorist organizations—a program acknowledged by the President and referred to as the Terrorist Surveillance Program or TSP. *See, e.g.,* Master Verizon Compl. ¶¶ 139-141. Significantly, however, Plaintiffs do *not* claim that they were subject to the Terrorist Surveillance Program or otherwise injured by it. Instead, they allege that the NSA's content surveillance activities go well beyond the TSP and extend to the interception of millions of domestic and international communications made by ordinary Americans and transmitted by MCI and Verizon. *See, e.g., id.* ¶ 165 ("the NSA intercepts millions of communications made or received by people inside the United States, and uses powerful computers to scan their contents for particular names, numbers, words, or phrases").

(U) The Court in *Hepting* recognized that the United States has denied these allegations of a so-called "content dragnet" of domestic communications. *See Hepting*, 439 F. Supp. 2d at

**Public Memorandum of the United States**
**in Support of Motion to Dismiss or for Summary**
**Judgment, MDL No. 06-1791-VRW**
-2-

996.  Thus, Plaintiffs' content surveillance claim in this case (as in *Hepting*) boils down to an unfounded and highly speculative allegation that they do not believe that the President authorized only a limited surveillance program directed at certain al Qaeda-related international communications.  Moreover, they demand the opportunity to determine through discovery what the NSA has actually done with any alleged assistance of the Verizon Defendants.  As set forth below, such an inquiry cannot be accomplished without disclosing state secrets and thereby causing grave harm to the national security.  In particular, we disagree with the Court's conclusion in *Hepting* that discovery into whether a statutory certification was provided in connection with the TSP could be conducted without revealing state secrets.  Such discovery in these cases would either confirm or deny whether Verizon or MCI assisted with the TSP, a fact that the Director of National Intelligence has concluded cannot be disclosed without causing exceptionally grave harm to the national security.  In addition, even apart from the relationship issue, the process of "proving a negative"—that Plaintiffs' content dragnet allegations are false—could not occur without disclosing what the NSA does and does not do.  That process would clearly implicate classified and highly sensitive facts, including operational facts concerning the TSP that would demonstrate that the program was in fact limited to al Qaeda-related one-end foreign communications.

(U)  With respect to Plaintiffs' claim that the Verizon Defendants have provided the NSA with records concerning their communications, this case presents the same issue already resolved by this Court in *Hepting* and by two other courts, each of which upheld the Government's state secrets privilege assertion and declined to allow any discovery into such allegations.  *See Hepting*, 439 F. Supp. 2d at 997-98; *Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 917 (N.D. Ill. 2006); *ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006) (appeal pending).  While we believe that the proper course in *Hepting* should have been to dismiss those claims, as the courts in *Terkel* and *ACLU* did, nothing warrants this Court from deviating from

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW
-3-

1    its conclusion in *Hepting* that information confirming or denying an alleged communications

2    records program cannot be disclosed without causing harm to the national security. In particular,

3    the Government still has not officially confirmed or denied the existence of any alleged records

4    programs, and no statements drawn from the public record can waive the Government's

5    privilege assertion as to this matter.

6        **(U)** Accordingly, the Director of National Intelligence, in conjunction with the Director

7    of the NSA, has asserted the state secrets privilege and statutory privileges to protect against the

8    disclosure of several categories of information put at issue in these cases, including: (1) whether

9    or not MCI and/or Verizon had any involvement in the alleged activities—a dragnet of content

10   surveillance or the provision of communication records; (2) whether or not Plaintiffs have been

11   subject to any of the alleged activities; and (3) other information concerning any alleged NSA

12   intelligence activities, sources, or methods, including (a) facts demonstrating that the TSP was

13   limited to al Qaeda-related international communications and that the NSA does not undertake

14   the dragnet of content surveillance that Plaintiffs allege; and (b) facts that would tend to confirm

15   or deny the existence of the alleged communications records activities.

16       **(U)** In assessing the Government's privilege assertion and motion to dismiss or for

17   summary judgment, we ask the Court to keep in mind two central aspects of the state secrets

18   privilege that we believe were not properly applied in *Hepting*. First, in deciding a state secrets

19   privilege assertion, the proper standard of review is whether the United States has put forward

20   reasonable grounds to conclude that disclosure or confirmation of the information at issue would

21   harm national security. The Court is required to lend the "utmost deference" to the Executive's

22   judgment on the matter. As set forth herein, the DNI and NSA Director amply demonstrate that

23   disclosure of this privileged information risks exceptionally grave harm to the national security

24   and, thus, that it must be excluded from further proceedings in this litigation. *See United States*

25   *v. Reynolds*, 345 U.S. 1 (1953). For the Court to find otherwise, it must conclude that the

26

27   **Public Memorandum of the United States**
     **in Support of Motion to Dismiss or for Summary**

28   **Judgment, MDL No. 06-1791-VRW**                                                    -4-

1   Director of National Intelligence's judgment about the harm of disclosure has no reasonable

2   basis—a conclusion that we respectfully submit would be entirely unfounded.

3      **(U)** Second, the state secrets privilege requires a court to consider whether the matter can

4   proceed by examining the role that state secrets would play in further proceedings. That is, a

5   court must "look ahead" to whether the privileged information would be needed to litigate the

6   various issues that will arise at future stages of the case—not merely whether the case can

7   proceed past the pleadings stage. Because privileged information would be central to

8   adjudicating all issues in this action—including fundamental questions regarding the Court's

9   jurisdiction, as well as a variety of merits issues, well-established authority requires that these

10  cases must be dismissed at the outset. *See Kasza v. Browner*, 133 F.3d 1159 (9th Cir.), *cert.

11  denied*, 525 U.S. 967 (1998). As set forth in more detail below, information within all of the

12  categories of the Government's privilege assertions is required to litigate each one of Plaintiffs'

13  claims.

14     **(U)** With respect, we submit that the Court in *Hepting* incorrectly limited its review of

15  the state secrets privilege to whether allegations concerning AT&T's assistance to the NSA

16  could proceed past the pleading stage and misapplied the standard of review under the state

17  secrets privilege by not addressing the particular national security harms identified by the DNI in

18  that case. Instead, because of the very harms associated with litigating these cases, the sole

19  purpose of which is to disclose highly classified activities, the Court must assess now whether

20  Plaintiffs' claims can ultimately be litigated. They cannot. The alleged relationship between the

21  NSA and a telecommunications carrier is a key threshold issue that cannot be decided without

22  disclosing state secrets. But wholly apart from that issue, classified information concerning

23  NSA sources and methods are essential to adjudicate every issue in this case. In particular, facts

24  concerning whether or not Plaintiffs have actually been subject to the alleged surveillance

25  activities would be necessary to address their standing but could not be disclosed without harm

26

27  **Public Memorandum of the United States
    in Support of Motion to Dismiss or for Summary
28  Judgment, MDL No. 06-1791-VRW**

                                                                                    -5-

to national security.  Likewise, even assuming *arguendo* that a relationship exists, the merits of Plaintiffs' claims could not be fully adjudicated without resort to state secrets, including operational facts tending to prove that the TSP was narrowly limited and facts confirming or denying the existence of a records program.  For these reasons, as set forth further below, the proper application of the state secrets privilege requires the dismissal of this case.

**[REDACTED TEXT]**

(U) The United States is mindful that the denial of a forum for the resolution of disputes can be a "drastic remedy." *Fitzgerald v. Penthouse Int'l, Ltd.,* 776 F.2d 1236, 1243 (4th Cir. 1985).  But it is well established that "the state secrets doctrine finds the greater public good—ultimately the less harsh remedy—to be dismissal." *Bareford v. General Dynamics Corp.,* 973 F.2d 1138, 1141 (5th Cir. 1992); *Kasza,* 133 F.3d at 1167.  This is the "required result" even where allegations of unlawful or unconstitutional actions are at issue. *Halkin v. Helms (Halkin II),* 690 F.2d 977, 1001 (D.C. Cir. 1982); *Maxwell v. First National Bank of Maryland,* 143 F.R.D. 590, 598 (D. Md. 1992) (successful invocation of state secrets privilege and other statutory privileges "may defeat worthy claims").  The Plaintiffs' interests are not the only ones at stake, and proceeding to litigate this dispute would lead to a harsh result of another kind—one that could potentially cause harm to the security of all Americans. *See El-Masri v. Tenet,* 437 F. Supp. 2d 530, 539 (E.D. Va. 2006) ("private interests must give way to the national interest in preserving state secrets"), *aff'd* 2007 WL 625130 (4th Cir. Mar. 2, 2007).

# (U) BACKGROUND

## A.  (U)  The Plaintiffs' Claims Against Verizon

(U) All of the Complaints against the Verizon Defendants now before the Court challenge intelligence activities that were allegedly authorized by the President after the 9/11 attacks.  Moreover, although Plaintiffs specifically refer to statements by the President, Attorney General, and Deputy Director of National Intelligence concerning the Terrorist Surveillance Program, they allege a program much broader than the TSP.  *See, e.g.*, Master Verison Compl. ¶¶ 139-141; *Bready* Compl. ¶ 13; *Chulsky* Compl. ¶¶ 25-27; and *Riordan* Compl. ¶¶ 1, 14; *see also Chulsky* Compl. ¶¶ 19-20 (alleging that pursuant to a secret executive order issued by President Bush following the September 11, 2001 attacks, the NSA, with the assistance of the Verizon Defendants, intercepted all wireless telephone calls and internet communications occurring within the United States without a court order).  Specifically, Plaintiffs allege that MCI and Verizon participated "in an illegal federal government program to intercept and analyze vast quantities of American's telephone and electronic communications and records."  *See* Master Verizon Compl. ¶ 3.  They also allege, *inter alia*, that "the NSA intercepts millions of communications made or received by people inside the United States, and uses powerful computers to scan their contents for particular names, numbers, words, or phrases." *Id.* ¶ 165.  Plaintiffs further allege that the Verizon Defendants "have intercepted and continue to provide the government with direct access to all or a substantial number of the communications transmitted through their key domestic telecommunication facilities, including direct access to streams of domestic, international, and foreign telephone and electronic communications." *Id.* ¶ 168.  None of the Plaintiffs allege that they communicate with individuals the Government has reason to believe are members or agents of al Qaeda or an affiliated terrorist organization.  Thus, at issue in their content surveillance allegations is the whether the President after 9/11 in fact authorized the alleged content dragnet of millions of domestic communications, notwithstanding

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

-7-

1 the Government's denial. *See Hepting*, 439 F. Supp. 2d at 996.

2 (U) The Plaintiffs also allege that, since about October 2001, MCI and Verizon have

3 disclosed to the NSA "call detail records" of all or substantially all of their customers, *see*

4 Master Compl. ¶ 169, and also disclosed or provided to the NSA direct access to databases of

5 stored telephone and electronic communications records. *See id.* ¶¶ 171; 173-76.

6 (U) Plaintiffs seek declaratory and injunctive relief and damages under various federal

7 and state statutory provisions. In particular, Plaintiffs allege that the Verizon Defendants

8 violated 18 U.S.C. §§ 2702(a)(1) and/or (a)(2); 18 U.S.C. § 2702(a)(3); 18 U.S.C. §§ 2511(1)(a),

9 (1)(c), (1)(d), and (3)(a); 47 U.S.C. § 605; 50 U.S.C. § 1809, by knowingly disclosing to the

10 Government the content of communications and records concerning those communications

11 without the Government having first obtained a warrant or court order and without providing the

12 Defendants a certification under 18 U.S.C. § 2511(2)(a)(ii) that a warrant or order was not

13 required. *See* Master Verizon Complaint ¶¶ 201-52. Plaintiffs also allege that the Verizon

14 Defendants violated their rights under the First and Fourth Amendments by acting as instruments

15 of the Government in the acts of interception, disclosure, and divulgence alleged. *See id.* ¶¶

16 254-62.[3]

17 (U) Viewed as a whole, Plaintiffs' multiple statutory and constitutional claims against

18 the Verizon Defendants raise three essential issues for resolution:

19 (1) Whether MCI and/or Verizon intentionally assisted the NSA in the
20 collection of communication content and/or communication record

21

22 [3] (U) The *Bready, Chulsky*, and *Riordan* cases raise substantially similar claims under the
23 Maryland, New Jersey, and California constitutions and state law. In sum, the Plaintiffs in
these cases allege that the Verizon Defendants have granted the NSA direct access to databases
24 of communications in its domestic telecommunications facilities to allow the NSA to undertake
alleged "data mining" operations, and that the Verizon Defendants also provide the NSA with
25 access to their customer records. *See Chulsky* Compl. ¶¶ 21-23; *Bready* Compl. ¶ 13; 16-21;
26 35-71; *Riordan* Compl. ¶¶ 14-23.

27 **Public Memorandum of the United States**
**in Support of Motion to Dismiss or for Summary**
28 **Judgment, MDL No. 06-1791-VRW**                                                    -8-

information.[4]

     (2)    Whether the named Plaintiffs have been aggrieved by any alleged actions taken against them by the Defendants.[5]

     (3)    Whether the NSA's alleged collection of communication content or records, if true, was unlawful.[6]

**B.    (U)    The United States' State Secrets Privilege Assertion.**

    **(U)** In response to the allegations raised in these lawsuits against Verizon, the Director of National Intelligence, supported by the Director of the National Security Agency, has asserted the state secrets privilege, and both officials have asserted statutory privileges, to protect against the disclosure of several categories of information described herein, including:

    A.    **(U)** Information regarding the specific nature of the al Qaeda terrorist threat;

    B.    **(U)** Information that may tend to confirm or deny whether Verizon/MCI has assisted the NSA with any alleged intelligence activities;

    C.    **(U)** Information that may tend to confirm or deny whether the Plaintiffs have been subject to any alleged NSA intelligence activities that may be at issue in this matter; and

    D.    **(U)** Information concerning any NSA intelligence, activities, sources, or methods, including:

        (1)    **(U)** Information concerning the scope and operation of the Terrorist Surveillance Program, including information that may be needed to demonstrate that the TSP was limited to one-end foreign al Qaeda communications and that the NSA does not otherwise engage in the content surveillance dragnet that the Plaintiffs allege; and

---

[4] **(U)** *See* Master Verizon Compl. ¶¶ 203, 218, 230, 237-38, 245, 256; *Bready* Compl. ¶¶ 40, 46, 53, 60, 68; *Chulsky* Compl. ¶¶ 66-68, 72; *Riordan* Compl. ¶¶ 14, 23.

[5] **(U)** *See* Master Compl. ¶¶ 212, 213, 226, 233, 250, 251, 261; *Bready* Compl. ¶¶ 41, 42, 47, 48, 54, 55, 61, 62, 69, 70; *Chulsky* Compl. ¶ 74, 81; *Riordan* Compl. ¶¶ 23, 28-29;38-39.

[6] **(U)** *See* Master Compl. ¶¶ 205-10, 219, 220, 232, 238, 246-49, 256; *Bready* Compl. ¶¶ 40, 46, 60, 65, 68; *Chulsky* Compl. ¶¶ 68, 70, 71 88; *Riordan* Compl. ¶¶ 18, 37.

        (2)     **(U)** Information that would tend to confirm or deny whether the NSA collects large quantities of communication records information as Plaintiffs allege.

*See* Public Declaration of J. Michael McConnell, Director of National Intelligence, ¶ 11 and Public Declaration of Lt. Gen. Keith B. Alexander, Director of the National Security Agency, ¶ 11.

**[REDACTED TEXT]**

**(U)** Through these privilege assertions, the DNI and NSA Director have set forth more than reasonable grounds to demonstrate that disclosure of the privileged information at issue would harm national security.

**(U)** *Alleged Verizon-NSA Relationship*: The DNI and NSA Director have asserted privilege over facts that would tend to confirm or deny whether MCI and Verizon have assisted the NSA with any particular alleged intelligence activity. *See* Public McConnell Decl. ¶ 13; Public Alexander Decl. ¶ 14. The DNI has concluded that the disclosure of any information that would tend to confirm or deny an alleged classified intelligence relationship between the NSA and MCI/Verizon would cause exceptionally grave harm to the national security. *See* Public McConnell Decl. ¶ 13. In the DNI's judgment, confirming or denying such allegations, for instance, would reveal to foreign adversaries whether or not the NSA utilizes particular intelligence sources and methods and, thus, either compromise actual sources and methods or disclose that the NSA does not utilize a particular source or method. *See* Public McConnell Decl. ¶ 13. The harms to national security that would result from such a disclosure are amply demonstrated by the DNI and NSA Director in their *in camera, ex parte* submissions and are certainly reasonable when weighed against the broad national security interests in detecting and preventing another catastrophic terrorist attack on the United States.

**Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW**

-10-

1    [REDACTED TEXT]

2

3         **(U)** *Application of Alleged Intelligence Activities to Plaintiffs*:  The DNI and NSA

4    Director have also asserted privilege as to information that would tend to confirm or deny

5    whether Plaintiffs have been subject to any alleged intelligence activities.  *See* Public McConnell

6    Decl. ¶ 14; Public Alexander Decl. ¶ 15.  In particular, efforts to prove whether specific

7    individuals were targets of alleged NSA activities would either reveal who is subject to

8    investigative interest—helping that person to evade surveillance—or who is not—revealing the

9    scope of intelligence activities as well as secure channels for communication, and potentially

10   revealing actual targets in other cases.  *See id.*

11

12   [REDACTED TEXT]

13

14        **(U)** *Information Concerning the Alleged Activities*:  Finally, the DNI and NSA Director

15   have asserted privilege over information concerning the alleged intelligence activities

16   themselves.  *See* Public McConnell Decl. ¶ 15-17; Public Alexander Decl. ¶ 16-18.  As already

17   noted, disproving Plaintiffs' allegation of a content surveillance dragnet would require

18   demonstrating what the United States *is* doing.  Such an inquiry would entail proving publicly

19   that the acknowledged TSP is not a dragnet of domestic communications, *i.e.*, that it operates as

20   the President and Attorney General have described, thereby revealing specific intelligence

21   sources and methods about the TSP that the DNI and NSA Director have explained must be

22   protected, as well as any other NSA intelligence methods that might confirm the President's

23   assurances.  *See* Public McConnell Decl. ¶ 15-16; Public Alexander Decl. ¶ 16-17.

24

25   [REDACTED TEXT]

26

27   Public Memorandum of the United States
     in Support of Motion to Dismiss or for Summary

28   Judgment, MDL No. 06-1791-VRW                                                    -11-

1　　　　**(U)** Likewise, to litigate the lawfulness of the alleged communications records program,

2　whether or not it exists would have to be publicly aired, thereby disclosing intelligence sources

3　and methods as to what the NSA is—or is not—doing to detect terrorist attacks. *See* Public

4　McConnell Decl. ¶ 17; Public Alexander Decl. ¶ 18.

5

6　**[REDACTED TEXT]**

7

8　　　　**(U)** Finally, because the Plaintiffs' claims arise from allegations that the NSA began to

9　undertake certain intelligence activities after the 9/11 attacks by al Qaeda, *see, e.g.*, Master

10　*Verizon* Compl. ¶¶ 139-141; *Bready* Compl. ¶ 13; *Chulsky Compl.* ¶¶ 18-20; 25-27; and *Riordan*

11　Compl. ¶¶ 1, 14, the DNI has asserted privilege over sensitive intelligence information about the

12　al Qaeda threat. *See* Public McConnell Decl. ¶ 12. If the Government were required to defend

13　the lawfulness of a particular intelligence activity (for example, the acknowledged Terrorist

14　Surveillance Program), specific information about the threat that the activity seeks to

15　address—the severity and exigency of the threat, and the nature and scope of enemy tactics that

16　the NSA seeks to counter—would all be relevant evidence, but not available.

17　　　　　　　　　　　　　　　　**(U) <u>ARGUMENT</u>**

18　　　　**(U)** The resolution of these cases against the Verizon Defendants is governed by clear

19　principles. If the Government shows that the confirmation or denial of whether Verizon has

20　assisted the NSA reasonably could be expected to cause harm to the national security, the case

21　must be dismissed. If the facts needed to adjudicate the question of Plaintiffs' standing, such as

22　whether or not they are subject to the alleged surveillance activities, cannot be disclosed without

23　reasonable danger of harm to the national security, the case must be dismissed. If facts

24　concerning the existence and operation of intelligence sources and methods are needed to

25　adjudicate the merits of Plaintiffs' claims, the case must be dismissed. As set forth below, the

26

27　**Public Memorandum of the United States**
**in Support of Motion to Dismiss or for Summary**
28　**Judgment, MDL No. 06-1791-VRW**　　　　　　　　　　　　　　　　　-12-

United States has demonstrated that each of these categories of information is needed to decide this case, but the disclosure of that information reasonably would cause harm to the national security. In these circumstances, the Court must grant the United States' motion.

## I. (U) WHERE STATE SECRETS ARE NEEDED TO RESOLVE A CASE, THE MATTER MUST BE DISMISSED.

### A. (U) The State Secrets Privilege Bars Use of Privileged Information Regardless of a Litigant's Need.

**(U)** The ability of the executive to protect military or state secrets from disclosure has been recognized from the earliest days of the Republic. *See Totten v. United States*, 92 U.S. 105 (1875); *United States v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807); *United States v. Reynolds,* 345 U.S. 1 (1953); *Kasza*, 133 F.3d 1159. "Although the state secrets privilege was developed at common law, it performs a function of constitutional significance" because the privilege derives from the President's Article II powers to conduct foreign affairs and provide for the national defense. *El-Masri v. United States*, __ F.3d ___, 2007 WL 625130, at *8 (4th Cir. Mar. 2, 2007) (citing *United States v. Nixon,* 418 U.S. 683, 710 (1974)). The Supreme Court has also clearly recognized that the protection of national security information is within the "Executive's constitutional mandate," *see id.* (citing *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988)). Thus the state secrets privilege has a "firm foundation in the Constitution, in addition to its basis in the common law of evidence." *Id.*

**(U)** (1) *Procedural Requirements*: As a procedural matter, "[t]he privilege belongs to the Government and must be asserted by it; *it can neither be claimed nor waived by a private party.*" *Reynolds*, 345 U.S. at 7 (emphasis added); *see also Kasza,* 133 F.3d at 1165. "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by the officer." *Reynolds*, 345 U.S. at 7-8 (footnotes omitted). Thus, the responsible agency head must personally consider the matter and formally assert the claim of privilege.

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

-13-

1    **(U)** (2) *Information Covered*:  The privilege protects a broad range of state secrets,

2    including information that would result in "impairment of the nation's defense capabilities,

3    disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic

4    relations with foreign Governments." *Ellsberg v. Mitchell,* 709 F.2d 51, 57 (D.C. Cir. 1983),

5    *cert. denied sub nom. Russo v. Mitchell,* 465 U.S. 1038 (1984) (footnotes omitted); *accord*

6    *Kasza,* 133 F.3d at 1166 ("[T]he Government may use the state secrets privilege to withhold a

7    broad range of information;"); *see also Halkin II,* 690 F.2d at 990 (state secrets privilege protects

8    intelligence sources and methods involved in NSA surveillance).  In addition, the privilege

9    extends to protect information that, on its face, may appear innocuous but which in a larger

10   context could reveal sensitive classified information. *Kasza,* 133 F.3d at 1166.

> It requires little reflection to understand that the business of foreign intelligence
> gathering in this age of computer technology is more akin to the construction of a
> mosaic than it is to the management of a cloak and dagger affair.  Thousands of
> bits and pieces of seemingly innocuous information can be analyzed and fitted
> into place to reveal with startling clarity how the unseen whole must operate.

14   *Halkin I*, 598 F.2d 1, 8 (D.C. Cir. 1978).  "Accordingly, if seemingly innocuous information is

15   part of a classified mosaic, the state secrets privilege may be invoked to bar its disclosure and

16   the court cannot order the Government to disentangle this information from other classified

17   information." *Kasza,* 133 F.3d at 1166.

18   **(U)** (3) *Standard of Review*: An assertion of the state secrets privilege "must be accorded

19   the 'utmost deference' and the court's review of the claim of privilege is narrow." *Kasza,* 133

20   F.3d at 1166.  Aside from ensuring that the privilege has been properly invoked as a procedural

21   matter, the sole determination for the court is whether, "under the particular circumstances of the

22   case, 'there is a reasonable danger that compulsion of the evidence will expose military matters

23   which, in the interest of national security, should not be divulged.'" *Kasza,* 133 F.3d at 1166

24   (quoting *Reynolds,* 345 U.S. at 10); *see also In re United States,* 872 F.2d 472, 475-76 (D.C. Cir.

25   1989); *Tilden v. Tenet*, 140 F. Supp. 2d 623, 626 (E.D. Va. 2000).

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

-14-

**(U)** In addition, in assessing whether to uphold a claim of privilege, the court does not balance the respective needs of the parties for the information. Rather, "[o]nce the privilege is properly invoked and the court is satisfied that there is a reasonable danger that national security would be harmed by the disclosure of state secrets, the privilege is absolute[.]" *Kasza*, 133 F.3d at 1166; *see also In re Under Seal,* 945 F.2d at 1287 n.2 (state secrets privilege "renders the information unavailable regardless of the other party's need in furtherance of the action"); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) (state secrets privilege "cannot be compromised by any showing of need on the part of the party seeking the information"); *Ellsberg*, 709 F.2d at 57 ("When properly invoked, the state secrets privilege is absolute. No competing public or private interest can be advanced to compel disclosure of information found to be protected by a claim of privilege."). The court may consider the necessity of the information to the case only in connection with assessing the sufficiency of the Government's showing that there is a reasonable danger that disclosure of the information at issue would harm national security. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake. *Reynolds*, 345 U.S. at 11; *Kasza*, 133 F.3d at 1166.[7]

**B.** **(U) Where the State Secrets Are Central to the Resolution of a Case or Needed to Litigate the Claims and Defenses, the Case Cannot Proceed.**

**(U)** Once the court has upheld a claim of the state secrets privilege, the evidence and information identified in the privilege assertion is "completely removed from the case," *Kasza*,

---

[7] **(U)** Judicial review of whether the claim of privilege has been properly asserted and supported does not require the submission of classified information to the court *for in camera, ex parte* review. Nonetheless, the submission of classified declarations for *in camera, ex parte* review is "unexceptional" in cases where the state secrets privilege is invoked. *Kasza*, 133 F.3d at 1169 (citing *Black v. United States*, 62 F.3d 1115 (8th Cir. 1995), *cert. denied*, 517 U.S. 1154 (1996).

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

-15-

1   133 F.3d at 1166, and the Court must undertake a separate inquiry to determine the

2   consequences of this exclusion on further proceedings.

3   **(U)** First, the case must be dismissed if the state secrets "will be so central to the subject

4   matter of the litigation that any attempt to proceed will threaten disclosure of the privileged

5   matters." *See Fitzgerald,* 776 F.2d at 1241-42. In such circumstances, as the court held in *Kasza*

6   the "very subject matter" of the action is a state secret and "the court should dismiss the

7   plaintiff's action based solely on the invocation of the state secrets privilege." *Kasza,* 133 F.3d at

8   1166 (citing *Reynolds,* 345 U.S. at 11 n. 26).[8] Even if some information about a government

9   activity is publicly acknowledged, the very subject matter of the case can be a state secret. The

10  *Fitzgerald* case provides a good example. At issue there was an alleged libel that the plaintiff,

11  who worked on a secret Navy program for training marine mammals, sought to use his expertise

12  for personal profit. *See* 776 F.2d at 1237. After determining that certain facts concerning the

13  program were state secrets which must be protected, the Fourth Circuit went on to analyze

14  whether the case could proceed. Even though the existence of the program at issue was publicly

15  known, *see id.* at 1242-43 (public declaration of the Secretary of the Navy describing marine

16  mammal program), classified aspects of how the program operated would have been inherently

17  at issue in any adjudication of the alleged libel and, thus, the Court held that the "very subject of

18  this litigation is itself a state secret." *Id.* at 1243.

19  **(U)** Second, even if the very subject matter of an action is not a state secret, if the

20  plaintiff cannot make out a *prima facie* case in support of its claims absent the excluded state

21  secrets, the case must be dismissed. *See Kasza,* 133 F.3d at 1166; *Halkin II,* 690 F.2d at 998-99;

22  *Fitzgerald,* 776 F.2d at 1240-41 (dismissing case where "the parties' ability to prove the truth or

23

24  [8] **(U)** *See also El-Masri,* 2007 WL 625130 at *10; *Sterling v. Tenet,* 416 F.3d 338, 345 (4th Cir.
    2005); *Edmonds v. U.S. Department of Justice,* 323 F. Supp. 2d 65, 77-82 (D.D.C. 2004), *aff'd,*
25  161 Fed. Appx. 6, 045286 (D.C. Cir. May 6, 2005) (*per curiam* judgment), *cert. denied,* 126 S.
26  Ct. 734 (2005); *Maxwell,* 143 F.R.D. at 598-99.

27  Public Memorandum of the United States
    in Support of Motion to Dismiss or for Summary
28  Judgment, MDL No. 06-1791-VRW                                                    -16-

falsity of the alleged libel" either risked or depended on the disclosure of state secrets).  And if the privilege "'deprives the defendant of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant.'" *Kasza*, 133 F.3d at 1166 (quoting *Bareford*, 973 F.2d at 1141).

* * *

(U) Thus, there are two issues for the Court to decide.  First, granting his judgment the "utmost deference," has the Director of National Intelligence demonstrated that there is at least a reasonable danger that disclosure of the privileged information will cause harm to the national security?  Second, is the privileged information needed to litigate this case?  As set forth below, the answer to both questions is clearly yes, and dismissal is therefore required.

**C.    (U) The Court in *Hepting* Misapplied the Standard of Review and Failed to Determine the Consequences of the Government's Privilege Assertion.**

(U) Before the state secrets privilege is applied in this case, some observations about the Court's application of the privilege to the substantially similar issues raised in *Hepting* are in order.  We do not critique the Court's decision in *Hepting* as an affront to the Court.  But application of that decision will obviously be central to the Court's consideration of this case, and we do disagree fundamentally with the Court's approach in that case, which is now on appeal.  We specifically take issue with two aspects of the Court's approach in *Hepting*—(1) its application of the state secrets standard of review; and (2) its decision not to assess the consequences of excluding privileged information in that case—and we respectfully request that the Court reassess its application of the privilege under the facts and circumstances presented here.

**1.    (U) The Court's Application of the Standard of Review in *Hepting* Was Erroneous.**

(U) In *Hepting,* the Court observed that "[t]he first step in determining whether a piece of information constitutes a 'state secret' is determining whether that information is actually

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

-17-

'secret.'" *Hepting*, 439 F. Supp. 2d at 986. The Court went on to infer from various public statements by AT&T and the Government that "for all practical purposes [they] already disclosed that AT&T assists the government in monitoring communication content." *Id.* at 991-92. Specifically, the Court referred to statements by AT&T that it has classified contracts with the United States, employees with security clearances, and is willing to assist on national security matters when ask, *see id.* at 992, as well as statements by the Government acknowledging the existence of the TSP to target one-end foreign al Qaeda-related communications, *see id.* The Court then concluded that "it is inconceivable that [the terrorist surveillance program] could exist without the cooperation of telecommunication carriers"and, further, that AT&T must have assisted the NSA because of its size and significance in the market. *See id.*

(U) We respectfully submit that the Court's analysis did not reflect a proper application of the standard of review. Whether information must be protected under the state secrets privilege turns on whether the Government has reasonably demonstrated that there is a reasonable danger that compulsion of the evidence will harm national security. *See Reynolds*, 345 U.S. at 10. The Court is not permitted to substitute its judgment for the judgment of the most senior members of the intelligence community. As the Fourth Circuit recently held, deference to the Government's judgment as to when confirmation or disclosure of information would reasonably endanger national security is appropriate "not only for constitutional reasons, but for practical ones: the Executive and the intelligence agencies under his control occupy a position superior to that of the courts in *evaluating the consequences* of a release of sensitive information." *El-Masri*, 2007 WL 625130, at *9 (emphasis added).

(U) It is not apparent that the Court in *Hepting* considered the reasons proffered by the Director of National Intelligence as to why the alleged NSA-AT&T relationship could not be confirmed or denied without harm to national security. Certainly, the Court did not conclude

that the DNI's prediction of harm to national security was unreasonable, nor did it expressly reject the privilege assertion. Rather, the Court appeared to avoid assessing the harms of disclosure identified by the DNI through its own analysis of statements by AT&T and the Government and conclusions that it drew from these statements.[9] That method of analysis, we respectfully submit, was improper. *See Kasza*, 133 F.3d at 1166 (granting utmost deference to Executive's assessment of danger to national security); *El-Masri*, 2007 WL 625130, at *9 (same).

**[REDACTED TEXT]**

(U) Notably, cases in which the state secrets privilege has been upheld have rejected the contention that certain information is "not a secret" because it could readily be deduced from other information. For example, in *Kasza* itself, the widow of an individual who worked at a classified government facility argued it was absurd to assert privilege over the very *existence* of hazardous waste at that facility. *See Kasza*, 133 F.3d at 1165. Yet the Government's assertion of privilege over this fact was upheld despite the existence of reliable public facts demonstrating that fact (for example, the health conditions of plaintiffs who worked at the facility, which

---

[9] (U) The Court's reliance in part on statements made by a private party in attempting to decide whether information is properly protected under the privilege was not appropriate. The state secrets privilege belongs to the Government and only the Government can waive it. *Reynolds*, 345 U.S. at 7; *see also Kasza,* 133 F.3d at 1165. Notably, the Supreme Court has consistently preserved the secrecy of alleged classified relationships even where the private party to that relationship itself purported to disclose the central secret in a lawsuit against the United States. *See Tenet v. Doe*, 544 U.S. 1 (2005); *Totten*, 92 U.S. 105. As to statements by the Government acknowledging of the TSP, whether they have any bearing on whether *other* facts are properly protected under the state secrets privilege must be assessed by looking to whether there is a reasonable danger of harm to national security if the Government confirms or denies the information.

1 would be well known to family, friends, and physicians). Indeed, the court in *Kasza* found that
2 the privilege could protect *unclassified* information that might, in combination with other facts,
3 reveal classified information. *See id.* at 1168. Similarly, in *Halkin II*, the court upheld the
4 Government's state secrets privilege assertion over whether they had been subject to surveillance
5 in the face of Plaintiffs' contention that information placed in the public domain by former CIA
6 officials in books reviewed in advance for classification by the CIA had disclosed particular
7 facts about their allegations. *See Halkin II*, 690 F.2d at 994. Also, in the recent *El-Masri*
8 decision, the Fourth Circuit upheld the Government's state secrets privilege assertion as to facts
9 concerning an alleged CIA rendition program despite the fact that the plaintiff would have been
10 a witness to his alleged detention, interrogation, and conditions of confinement, and had spoken
11 publicly about those issues. *See* 2007 WL 625130, at *9. In each of these cases, the court
12 examined the reasons advanced by the Government as to why disclosure of information as to
13 which privilege was asserted would cause harm to national security, and did not attempt to
14 ascertain whether something was a secret by taking judicial notice of purportedly reliable public
15 sources. As the D.C. Circuit observed in *Halkin II*:

> Whatever the truth may be, it remains either unrevealed or unconfirmed. We
> cannot assume, as appellants would have us, that the CIA has nothing left to hide.
> To the contrary, the record before us suggests that the CIA still has something to
> hide or that it wishes to hide from our adversaries the fact that is had nothing to
> hide.

19 *See id.* at 995, n.63 (citing *Military Audit Project v. Casey*, 656 F.2d at 714, 744-45 (D.C. Cir.
20 1981).

### 2. (U) The Court Failed to Assess the Consequences of the State Secrets Privilege in *Hepting*.

**(U)** We respectfully submit that the second major flaw in the *Hepting* decision is its
failure to assess all of the consequences of the state secrets assertion. The Court instead decided
just one issue (whether AT&T's alleged assistance to the NSA was "secret"), applied the "very
subject matter" doctrine incorrectly to that issue, and thereby inappropriately deferred deciding

**Public Memorandum of the United States**
**in Support of Motion to Dismiss or for Summary**
**Judgment, MDL No. 06-1791-VRW**
-20-

1 whether the case could nonetheless proceed.

2     **(U)** The "very subject matter" inquiry concerns whether the "central facts"—*i.e.*, "those

3 facts that are *essential to prosecuting the action or defending against it*"—are state secrets. *El-*

4 *Masri*, 2007 WL 625130, at *10 (emphasis added).

5         It is clear from precedent that the "central facts" or "very subject matter" of a civil
proceeding, for purposes of [a] dismissal analysis, are those facts necessary to litigate

6         it—not merely to discuss it in general terms.

7 *Id.* In *Kasza*, for example, the Ninth Circuit held that the "very subject matter" of the case was a

8 state secret because the specific information needed to adjudicate the plaintiffs' claims was

9 protected by the privilege assertion. *See Kasza*, 133 F.3d at 1170. Similarly, in *Fitzgerald v.*

10 *Penthouse Int'l, Ltd.*, 776 F.2d 1236 (4th Cir. 1985), the court held that the very subject matter

11 of that case was a state secret "due to the nature of the question presented in this action *and the*

12 *proof required* by the parties to establish or refute the claim." *Id.* at 1237 (emphasis added).

13 Likewise, in *Zuckerbraun v. United States*, 935 F.2d 544 (2d Cir. 1991), a case concerning

14 whether a missile defense system aboard a U.S. Navy frigate malfunctioned, the very subject

15 matter of the case was a state secret because facts central to proceeding, including how the

16 system worked, were not available. *See id.* at 547-48.[10]

17     **(U)** The Court's effort in *Hepting* to distinguish these cases as involving "classified

18 details about either a highly technical invention or a classified relationship,"*see Hepting*, 439 F.

19 Supp. 2d at 993-94, misses their key point: if state secrets are essential to deciding a case, the

20 very subject matter of the case is a state secret and the case must be dismissed.

21

22 _____

23 [10] **(U)** Similarly, in *Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005), a case concerning whether a
former CIA officer had been discriminated against on the basis of race, the "very subject

24 matter" in that case was a state secret because facts concerning the officers assignments and
CIA operations were essential to decide the case. And in *Clift v. United States*, 808 F. Supp.

25 101, 111 (D. Conn. 1991), the subject matter of the case—a patent dispute over a cryptographic

26 device—was a state secret because the evidence needed to decide the case was privileged.

(U) To be sure, the various consequences of the state secrets privilege outlined in *Kasza* are cut from the same cloth and ask essentially the same question: are state secrets needed to decide the case? Indeed, courts have merged the "very subject matter" and "evidentiary" impacts of the privilege and have ruled that *because* certain evidence is essential to make a *prima facie* case or a defense, the very subject matter of the case is a state secret. Indeed, in *Kasza*, the Ninth Circuit observed that "[n]ot only does the state secrets privilege bar [plaintiff] from establishing her *prima facie* case on any of her eleven claims, but any further proceedings in this matter would harm national security." *See* 133 F.3d at 1170.[11]

(U) The impact a privilege assertion has on a particular case would not be known until the court considers how the privileged information relates to the evidence needed to resolve the case. "[O]nce the state secrets privilege has been properly invoked, the district court must consider whether and how the case may proceed in light of the privilege." *Fitzgerald*, 776 F.2d at 1243; *El-Masri*, 2207 WL 625130, at * 5 ("the ultimate question to be resolved is how the matter should proceed in light of the successful invocation of the privilege."). This inquiry requires the Court to "look ahead" to evaluate whether privileged evidence is needed to decide the elements of particular claims.[12] If state secrets are needed to decide a particular claim, then

---

[11] (U) *See also Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268, 281 (4th Cir. 1980) (en banc) ("It is evident that any attempt on the part of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets that the overriding interest of the United States and the preservation of its state secrets precludes any further attempt to pursue this litigation."); *Zuckerbraun,* 935 F.2d at 547-48 (state secrets needed to address all factual questions related to defendants' liability rendering the "very subject matter" a state secret because "there is no evidence available for appellant to establish a prima facie case."); *Fitzgerald,* 776 F.2d at 1242, 1244 (outlining elements of defamation claim and testimony needed to address them in concluding that the very subject matter is a state secret).

[12] (U) *See also El-Masri,* 2007 WL 625130 at *9 (prospective assessment of what state secrets would be needed as evidence if civil action were to proceed); *Sterling v. Tenet,* 416 F.3d at 346-47 (same); *Edmonds v. U.S. Department of Justice,* 323 F. Supp. 2d at 79-81 (same); *Maxwell,*

Public Memorandum of the United States
in Support of Motion to Dismiss or for Summary
Judgment, MDL No. 06-1791-VRW

-22-

1 wholly apart from the "very subject matter" issue, the Court must enter summary judgment

2 against the Plaintiffs since the evidence needed to adjudicate the merits is unavailable. *See*

3 *Kasza,* 133 F.3d at 1176 (affirming entry of summary judgment for the United States on state

4 secrets privilege grounds); *Zuckerbraun*, 935 F.2d at 547 (where effect of state secrets privilege

5 assertion is to prevent plaintiff from establishing a *prima facie* case, summary judgment under

6 Rule 56 is appropriate on the ground that either the plaintiff, who bears the burden of proof,

7 lacks sufficient evidence to carry that burden, or that the exclusion of evidence precludes the

8 defendant from establishing a valid defense).

9     **(U)** Again, with respect, the *Hepting* decision erred both substantively and procedurally

10 in failing to assess the consequences of the Government's privilege assertion there. The

11 substantive flaw was the Court's conclusion that the "very subject matter"of *Hepting* was not a

12 state secret because it read public disclosures by the Government and AT&T to " indicate that

13 AT&T is assisting the government to issue some kind of surveillance program." *Hepting*, 439 F.

14 Supp. 2d at 994. But that conclusion improperly focuses on "whether the general subject matter

15 of the case can be *described* without resort to state secrets," not on the correct inquiry of

16 "whether an action can be *litigated* without threatening the disclosure of such state secrets." *El-*

17 *Masri*, 2007 WL 625130, at *8 (first emphasis added). Even if it was proper to infer from public

18 statements whether AT&T assisted the NSA with some kind of surveillance program, the Court

19 still had to decide whether the actual claims in that case, which challenge specific alleged

20 activities, could be litigated to conclusion without disclosing the privileged information and

21 causing the harms to national security identified by the DNI.[13]

22

23 ─────────────

143 F.R.D. at 599 (same); *Clift v. United States*, 808 F. Supp. at 108.

24

25 [13] **(U)** The Court's decision to defer assessing the impact of the state secrets privilege until after
discovery was especially inappropriate where the discovery cited by the Court concerned the

26 very subject matter of the case as to which the Government asserted privilege—whether the

1    (U) The procedural flaw in the Court's application of the state secrets privilege is that it
2    did not decide the consequences of excluding privileged evidence in the case. The Court's
3    discussion of whether the "very subject matter" in *Hepting* is a state secret was limited to just
4    one aspect of the case—the alleged AT&T-NSA relationship. Whether the NSA and a
5    telecommunications carrier had an alleged relationship is certainly a central issue in *Hepting* and
6    here. But even if there was no claim in *Hepting* concerning whether or not a
7    telecommunications carrier had a relationship with NSA, and the Plaintiffs had filed suit just
8    against the Government in challenging the alleged intelligence activities, the very subject matter
9    of the case would still be a state secret. Other matters as to which the DNI has asserted privilege
10   render the very subject matter of this case (and *Hepting*) a state secret. For example, facts
11   concerning whether or not the Plaintiffs were subject to the alleged activities are essential to
12   deciding this case—indeed, if that evidence cannot be discovered, the case would have to be
13   dismissed for lack of jurisdiction. *See Halkin I* and *II, supra.* Similarly, facts concerning any
14   alleged intelligence activities are needed to decide the merits of the claims, including facts
15   demonstrating that the TSP was limited to al Qaeda-related international communications;
16   demonstrating that the NSA does not undertake the dragnet of content surveillance that Plaintiffs
17   allege; and confirming or denying whether the NSA is collecting communication records
18   information as alleged. Proceeding in this case therefore requires, at the outset, that the Court
19   assess (1) the validity of the privilege assertion as to *all* of the information discussed by the DNI
20   and NSA Director, and (2) the full impact of excluding that information from future proceedings
21   in the case.

22

23

24   ─────────────────────

25   NSA had a relationship with AT&T and, in that context, provided certifications for the alleged
     intelligence activities. *See Hepting*, 439 F. Supp. 2d at 994 (referring to discovery order in
26   Section 1(G)(3) of decision at page 996).

27   **Public Memorandum of the United States**
     **in Support of Motion to Dismiss or for Summary**
28   **Judgment, MDL No. 06-1791-VRW**                                    -24-