PEGGY A. WHIPPLE (MO 54758)
peggy.whipple@psc.mo.gov
Attorney for Missouri Public Service Commission
LINDA CONTI (ME 3638)
Linda.Conti@maine.gov
Assistant Attorney General of Maine
PATRICK DEALMEIDA
patrick.dealmeida@dol.lps.state.nj.us
Assistant Attorney General of New Jersey
TATIANA D. EIRMANN (CT 03398)
tatiana.eirmann@po.state.ct.us
Assistant Attorney General of Connecticut
MICHAEL DONOFRIO (VT 4400)
mdonofrio@atg.state.vt.us
Assistant Attorney General of Vermont

[Additional counsel for states appear on signature page.]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY ) | MDL Docket No. 06-1791 VRW |
| TELECOMMUNICATIONS RECORDS ) | |
| LITIGATION, MDL No. 1791 ) | Relates to Case Nos. |
| ) | |
| This Document Relates To: ) | |
| ) | 07-cv-1187-VRW |
| Robert Clayton, et al. v. AT&T ) | 07-cv-1242-VRW |
| Communications of the Southwest, Inc., ) | 07-cv-1323-VRW |
| et al., (W.D.Mo.) ) | 07-cv-1324-VRW |
| USA v. Steve Gaw, et al., (E.D.Mo.) ) | 07-cv-1326-VRW |
| USA v. Kurt Adams, et al., (D.Me.) ) | 07-cv-1396-VRW |
| USA v. Zulima V. Farber, et al., (D.N.J.) ) | |
| USA v. Anthony J. Palermino, ) | |
| et al., (D.Ct.) ) | **STATE OFFICIALS'** |
| USA v. James Volz, et al., (D.Vt.) ) | **CONSOLIDATED BRIEF OF** |
| ) | **NINTH CIRCUIT LAW IN FURTHER** |
| ) | **SUPPORT OF PENDING** |
| ) | **DISPOSITIVE MOTIONS** |
| ) | |
| ) | Date:  June 14, 2007 |
| ) | Time  2:00 p.m. |
| ) | Courtroom: 6, 17th Floor |
| ) | Judge:  The Hon. Vaughn R. Walker |

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. iii

ISSUES TO BE DECIDED ................................................................................ iv

STATEMENT OF FACTS ................................................................................. 1

    Case No. 07-1187 *Clayton v. AT&T Communications, et al.* (06-cv-04177) WD Mo. ....... 1

    Case No. 07-1242 *United States v. Gaw* (06-CV-1132) ED Mo. ....................................... 2

    Case No. 07-1323 *United States v. Adams* (CV-06-97-B-W (D. Me.) ............................... 2

    Case No. 07-1324 *United States v. Rabner (Farber)* (CV-06-2683 (FLW)) (D. N.J.) ........ 3

    Case No. 07-1326 *United States v. Palermino* (06-CV-1405 (JBA)) (D. Conn.) ............... 5

    Case No. 07-1396 *United States v. Volz* (06-CV-188) (D. Vt.) .......................................... 6

ARGUMENT ..................................................................................................... 7

    I.   The State Officials' Actions Are Not Preempted Because They Neither Regulate
        Areas of Exclusive Federal Authority Nor Conflict With Federal Law ........................ 7

    II.  The Information Sought By the State Officials Does Not Expose State
        Secrets or Jeopardize National Security ..................................................................... 13

    III. This Court Should Abstain from Exercising Jurisdiction ............................................ 15

    IV. The Government Has No Cause of Action ................................................................. 16

    V.  This Proceeding is Not Ripe for Adjudication by This Court ..................................... 19

    VI. The Government Improperly Seeks an Advisory Opinion ......................................... 21

    VII. There is No Justiciable Case or Controversy Between These Parties ....................... 22

CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases:**

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) .................................................................................................................. 19

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) ................................... 21, 22

*American-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 511 (9th Cir. 1992) ................................................................................................................... 21

*Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) ....................... 21

*Ass'n of Am. Med. Colls v. United States*, 217 F.3d 770, 779-80 (9th Cir. 2000) ...... 19, 20

*AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 375, 381 n.8 (1999) ................................. 8

*Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev.*, 35 F.3d 1348, 1353-54 (9th Cir. 1994) .............................................................................................................. 11, 12

*Boating Indus. Ass'ns. v. Marshall*, 601 F.2d 1376 (9th Cir. 1979). ............................... 23

*Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977.) ....................... 19

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992) ............................................. 9

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ................................................... 18

*Ctr. for Bio-Ethical Reform, Inc. v. City & County of Honolulu*, 455 F.3d 910, 917-18 (9th Cir. 2006) ................................................................................................. 11, 12

*FCC v. Pacifica Found.*, 438 U.S. 726, 734-35 (1978) ................................................... 21

*Fed, Reserve Bank of Boston v. Comm'r of Corps. and Taxation*, 499 F.2d 60, 64 (1st Cir. 1974) ................................................................................................................... 15

*Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).................................................... 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, (2000) ................................................................................................................... 23

*Gov't Employees. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998 ....................... 16

*Hancock v. Train*, 426 U.S. 167, 179 (1976)............................................................. 11, 13

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 998 (N.D. Cal. 2006) ........................ 12, 13

*Hepting,* 439 F.Supp. 2d at 986 .................................................................... 16

*Hisquierdo v. Hisquierdo*, 439 U.S. 572, 583 (1979) ................................................. 10, 11

*Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 n.2 (9th Cir. 2007) ............... 9, 10, 11

*Indus. Communications Sys., Inc. v. Pac. Tel. & Tel. Co.*, 505 F.2d 152, 155 (9th Cir. 1974) ............................................................................................... 21

*Jones v. Rath Packing Co.*, 430 U.S. 519, 540, (1977) .............................................. 9, 10

*Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 981 (9th Cir. 2005) ......................................... 9

*League of Women Voters of Cal. v. Fed. Communications Comm'n*, 489 F. Supp. 517, 520 (C.D. Cal. 1980) .............................................................................. 23

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) .......................... 22

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982) .............................................................................................. 15

*Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47 (1971).............................. 23

*Municipality of Anchorage v. United States* , 980 F.2d 1320 (9th Cir. 1992) ................. 19

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989 ..................................................................................................... 8

*New York Times v. United States,* 403 U.S. 713 (1971) ............................................ 17, 18

*New York Times*, 403 U.S. at 718 ....................................................................... 21

*Pac. Gas & Elec. Co. v. California*, 350 F.3d 932, 944 (9th Cir. 2003) ............................ 9

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005).................................. 19

*Public Affairs Associates v. Rickover*, 369 U.S. 111, 112, 7 L. Ed. 2d 604, 82 S. Ct. 580 (1962)............................................................................................... 16

*Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250, 97 L. Ed. 291, 73 S. Ct. 236 (1952)........................................................................................... 16

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006) ............... 23

*Skysign Int'l, Inc. v. City & County of Honolulu*, 276 F.3d 1109, 1116-17 (9th Cir. 2002)................................................................................................ 11, 12

*Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006)................................. 23

*Sosa v. Alverez-Machain*, 542 U.S. 692, 726 (2004)....................................... 18

*Stewart v. M.M.& P. Pension Plan*, 608 F.2d 776, 782 (9th Cir. 1979)......... 22

*Terkel v. AT&T*, 441 F. Supp. 2d 899, 913 (N.D. Ill. 2006) ........................... 13

*The Coalition for a Healthy Cal. v. Fed. Communications Comm'n*, 87 F.3d 383, 386 (9th Cir. 1996)................................................................................... 21

*Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) ....................... 9, 10, 11, 12

Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1141 (9th Cir. 2000 ........ 21

*TOPA Equities, Ltd. v. City of Los Angeles*, 342 F.3d 1065, 1071 (9th Cir. 2003).... 10, 11

*Total TV v. Palmer Communications, Inc.*, 69 F.3d 298, 304 (9th Cir. 1995) .......... 11, 13

*U.S. Bank Corp. v. Kroske*, 127 S. Ct. 157 (2006) ......................................... 10

*United States v. Adams*, 2007 U.S. Dist. LEXIS 9351 ................................. 2, 3

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972), *cert. denied*, 409 U.S. 1063 (1972)........................................................................................ 17, 18

*United States v. Mattson*, 600 F.2d 1295 (9th Cir. 1979) .................... 16, 17, 18

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) ........................... 15, 16

*United States v. Ohio*, 614 F.2d 101, 105 (6th Cir. 1979) ............................. 15

*United States v. Solomon*, 563 F.2d 1121 (4th Cir. 1977........................... 17, 18

*Volt Info. Science, Inc. v. Bd. of Trs. of the Leland Stanford, Jr. Univ.*, 489 U.S. 468, 477 ................................................................................................. 10

*W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312 (1967)........... 21

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) .................................... 16

*Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322 (9th Cir. 1990) ................. 19

*Younger v. Harris*, 401 U.S. 37 (1971)..................................................... 15, 16

**Constitution and Statutes:**

Conn. Gen. Stat. § 16-1(4) and (25) ............................................................................. 5

18 U.S.C. § 798 ............................................................................................................. 12

28 U.S.C. § 1345 ........................................................................................................... 19

30 V.S.A. § 206 ............................................................................................................... 6

30 V.S.A. § 9 ............................................................................................................. 7, 16

319 F.3d at 1136, ......................................................................................................... 11

47 U.S.C. §§ 201(b) ................................................................................................. 10, 12

50 U.S.C. § 402 ..................................................................................................... 12, 13, 14

50 U.S.C. § 403-1(i)(1) ......................................................................................... 12, 13, 14

**Other Authorities:**

Executive Orders 12958 and 13292 .............................................................................. 12

Kevin Beck, Note, *The Ninth Circuit's Message to Nevada: You're Not Getting Any Younger*, 3 Nev. L.J. 592, 602-604 (2003) ................................................................. 15

Niraj Warikoo, *ACLU: Companies Violated Privacy*, The Detroit Free Press, July 27, 2006 ........................................................................................................................... 14

Section 6 of the National Security Agency Act of 1959 ................................................. 12

James Risen, *Legislation Seeks to Ease Rules on Domestic Spying*, The New York Times, A13, April 14, 2007 .................................................................................................... 14

# INTRODUCTION

This brief is submitted on the Points and Authorities that follow, the pleadings, motions, memoranda, briefs, exhibits, and other documents filed in the records in these actions, and any other evidence and argument presented to this Court at or before the hearing on this brief and the underlying motions.  Specifically, all arguments of fact and law previously briefed, filed in the home courts of these five sovereign states, and now pending before this Court are hereby incorporated herein in their entirety.[1]

Sections V, VI, and VII addressed issues previously briefed and hereby raised by Missouri only.

---

[1] All states had dispositive motions pending in federal court prior to the transfer to this court. For the Court's convenience, the state officials submit the following list of docket numbers for their pending briefs.  Case No. 07-1187 (06-CV-4177) (ED Mo.) *Clayton v. AT&T Communications:*  Docket Nos. 13, 22, 28; Case No. 07-1242 (06-CV-1132) (WD Mo.) *United States v. Gaw:*  Docket Nos. 25, 38, 42; Case No. 07-1323 (CV-06-97-B-W) (D. Me.) *United States v. Adams:*  Docket Nos. 11, 15, 22, 28, 46, 60, 66; Case No. 07-1324 (CV-06-2683) (D. N.J.) *United States v. Rabner (Farber)*:  Docket Nos. 47, 48, 54, 55, 62, 64, 66; Case No. 07-1326 (06-CV-1405) *United States v. Palermino:*  Docket Nos. 49, 55, 58, 63, 72; Case No. 07-1396 (06-CV-188) *United States v. Volz:*  Docket Nos. 33, 41, 62, 64.

## ISSUES TO BE DECIDED

I.      WHETHER THE STATE OFFICIALS' ACTIONS ARE PREEMPTED BY FEDERAL LAW.

II.     WHETHER THE INFORMATION SOUGHT BY THE STATE OFFICIALS EXPOSES STATE SECRETS OR JEOPARDIZES NATIONAL SECURITY.

III.    WHETHER THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION.

IV.     WHETHER THE GOVERNMENT HAS A CAUSE OF ACTION.

V.      WHETHER THIS PROCEEDING IS RIPE FOR ADJUDICATION.

VI.     WHETHER THE GOVERNMENT IMPROPERLY SEEKS AN ADVISORY OPINION.

VII.    WHETHER THERE IS A JUSTICIABLE CASE OR CONTROVERSY.

# STATEMENT OF FACTS

All states had dispositive motions pending in federal court at the time this case was transferred. Those motions are now pending before this Court.

**Case No. 07-1187 *Clayton v. AT&T Communications, et al.* (06-CV-04177) WD Mo.**

Two Commissioners (state officials) of the Missouri Public Service Commission (PSC) applied to Cole County Circuit Court for an order compelling the six Missouri AT&T (AT&T) companies to obey the commands of investigative subpoenas issued pursuant to Sections 386.320 and 386.420 of the Revised Statutes of Missouri (2000) (Notice of Removal, Ex. A, Docket #1).

The subpoenas were issued to determine whether AT&T had used, disclosed, or permitted access to customer proprietary network information in violation of 4 CSR 240-33.160. The subpoenas were duly served on June 19-22, 2006. All subpoenas requested the appearance of witnesses and the production of documents on July 12, 2006. (06-CV-1132, Memorandum in Opposition to Summary Judgment, Ex. B-M, Docket #38).

No defendant moved to quash. On July 11, an attorney for AT&T faxed a letter to the state officials suggesting they "cancel the attendance of the court reporter and reschedule [their] day." (*Id.,* Ex. N). No witness appeared and no documents were produced. The state officials' counsel contacted AT&T's counsel but was unable to resolve the matter.

On July 12, 2006, the state officials filed an Application to Compel Production of Documents and to Compel Witnesses to Appear and Answer Questions Upon Oral Examination based on Section 536.077 of the Revised Statutes of Missouri 2000. (Notice of Removal, Ex. A, Docket #1).

This matter was set for hearing in Cole County Circuit Court on August 28, 2006. AT&T filed a Notice of Removal on August 10, 2006. (*Id.*)

**Case No. 07-1242 *United States v. Gaw* (06-CV-1132) ED MO**

The Complaint seeking a declaratory judgment and injunction was filed on July 26, 2006 by the United States Department of Justice (the government), naming the PSC state officials as Defendants along with the six carriers to which subpoenas had been issued. (*See, supra;* Complaint, Docket #1). The government seeks to preclude the state court from ruling on the application to compel compliance with the subpoenas. (Complaint).

The state officials moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim and separately moved to transfer the action to the Western District of Missouri so it could be adjudicated with the underlying state court proceeding. (Motion to Dismiss, Docket #12, Motion to Transfer, Docket #18).

There has been no discovery. The carriers filed an Answer on September 25, 2006. (Answer, Docket #30). The government moved for summary judgment. (Motion for Summary Judgment, Docket #24).

**Case No. 07-1323 *United States v. Adams* (CV-06-97-B-W) (D. Me.)**

After it was widely reported that some telephone companies were sharing customer calling records with the National Security Agency (NSA), 22 Maine citizens formally asked the Maine Public Utilities Commission (MePUC) to investigate whether Verizon had shared its Maine customers' records with the NSA. (State Defendants' Statement of Additional Material Facts) (SDSAMF), ¶ 39. The citizens asked MePUC to investigate whether "Verizon has provided the NSA, or any other government agency, unwarranted access to any Verizon or MCI

facilities in Maine, or to records of domestic or international calls or e-mails made or received by their customers in Maine." *Id.*

In response, Verizon submitted two press releases it issued on May 12 and May 16, 2006, in which it denied sharing records with the NSA. (*Id*., ¶ 40; Geraghty Affidavit ¶ 3 and Exhibits 1 and 2 thereto). In these press releases, Verizon stated the NSA never asked it to provide customer records, and that if a government agency ever did ask Verizon to provide customer records, it would do so only when authorized by law. (*Id*.) On August 9, 2006, MePUC ordered Verizon to affirm under oath that several of the representations made in its press releases were accurate. (SDSAMF, ¶¶ 41-42). MePUC has not asked for any additional information from Verizon. The government, on August 21, 2006, sued MePUC to enjoin it from pursuing its inquiry. Verizon has not responded to MePUC's August 9 order, and, on February 8, 2007, the United States District Court for the District of Maine (Woodcock, J.) preliminarily enjoined MePUC from enforcing the order. *United States v. Adams*, 2007 U.S. Dist. LEXIS 9351 (D. Me. Feb. 8, 2007).

## Case No. 07-1324 *United States v. Rabner (Farber)* (CV-06-2683 (FLW)) (D. N.J.)

In May 2006, the Attorney General of New Jersey began an investigation into whether telecommunications carriers providing service to subscribers with a New Jersey billing address and/or telephone number disclosed telephone call history data to the NSA. (Complaint ¶34). Subpoenas Duces Tecum were issued pursuant to New Jersey consumer protection law to ten carriers doing business in New Jersey.[2] The carriers made various responses to the subpoenas or

---

[2] (1) AT&T Corp.; (2) Cingular Wireless LLC; (3) Qwest Communications Int'l; (4) Verizon Communications; (5) Cellco Partnership d/b/a Verizon Wireless; (6) Virgin Mobile USA, LLC; (7) Vonage Holdings Corp., Inc.; (8) Nextel Communications, Inc.; (9) Sprint Communications Co.; and (10) United Telephone Company of New Jersey, Inc. (the Carriers). Sprint and Nextel

did not respond at all.[3]

The subpoenas seek: (1) all orders, subpoenas, and warrants pursuant to which the carriers were requested to furnish telephone call history data; (2) identification of the persons whose data was provided to the NSA; (3) a sample of the contract with subscribers which addresses the carriers' authority to disclose subscriber information; and (4) all documents concerning any communication between the carriers and New Jersey subscribers concerning the NSA request for data. (Complaint ¶34, Exh. A).

Prior to the return date of the subpoenas, the government commenced suit in the United States District Court for the District of New Jersey against the New Jersey Attorney General and staff members. (Complaint, ¶¶ 5-7). Five carriers were named as defendants. (Complaint, ¶¶ 8-13).

The government seeks a declaratory judgment that the subpoenas may not be enforced or responded to because the disclosure of the information requested would violate the Supremacy Clause and would infringe on the federal government's exclusive control over national security, foreign intelligence, and foreign affairs. (Complaint, Prayer for Relief). The government seeks to enjoin the New Jersey Attorney General from carrying out his responsibility to investigate violations of New Jersey consumer protection laws.

On July 17, 2006, the government applied for a temporary restraining order to preclude enforcement of the subpoenas. The New Jersey Attorney General agreed to forebear from

---

subsequently merged and became Sprint Nextel. United Telephone is now part of Embarq Corporation.

[3] Sprint Nextel responded to its subpoena by producing a copy of its privacy policy. Verizon Wireless responded by stating it had not provided calling records to the NSA. Vonage responded by stating it had no responsive document other than a sample subscriber agreement. United Telephone did not respond. Virgin Mobile responded, but its response was returned unopened and unread.

enforcing the subpoenas, and the court established a briefing schedule.  The court did not enter preliminary injunctive relief.

On September 8, 2006, the parties filed cross-motions for dispositive relief.  The government moved for summary judgment.  The state officials moved to dismiss.

**Case No. 07-1326 *United States v. Palermino* (06-CV-1405 (JBA) (D. Conn.)**

On May 24, 2006, following media revelations of possible unlawful disclosure of customer telecommunications records, the American Civil Liberties Union of Connecticut (ACLU-CT) filed a complaint requesting the Connecticut Department of Public Utility Control (CT DPUC) to investigate whether the local exchange carriers[4] (LECs) have violated Connecticut law and that the CT DPUC penalize violations if they were found to have occurred. (ACLU-CT's Complaint, 05/24/06).  (Appendix A).[5]

On May 31, 2006, the CT DPUC initiated an administrative proceeding to undertake the requested investigation.  (CT DPUC's Investigation).  Following the CT DPUC's denial of the carriers' motions to dismiss, ACLU-CT filed its First Set of Interrogatories to each of the Carriers.  (ACLU-CT's Interrogatories).  ACLU-CT's Interrogatories sought information about potential illegal disclosure of customer records.

On September 6, 2006, claiming federal preemption, the government initiated *USA v. Palermino, et al* in the United States District Court for the District of Connecticut (Complaint, 09/06/06).  The government's entire case is based on the erroneous premise that the CT DPUC's

---

[4]  SBC Communications, Inc. d/b/a The Southern New England Telephone Corp. (AT&T Connecticut) and Woodbury Telephone Company (AT&T Woodbury) (collectively, AT&T), as well as Verizon New York (Verizon) are public service companies and telecommunications companies within the meaning of Conn. Gen. Stat. § 16-1(a)(4) and (25).

[5] The Connecticut officials are referring to the Appendix submitted with their Memorandum of Law in Support of Motion for Summary Judgment, dated December 12, 2006.

Investigation is aimed at gathering details about a foreign intelligence program which affects national security, and the conduct of military and foreign affairs. The government's characterization of the administrative proceeding is inaccurate and misleading. The subjects of the CT DPUC's Investigation are the carriers over which the CT DPUC's jurisdiction is plenary. The purpose of the CT DPUC's Investigation is to ascertain whether the carriers have complied with Connecticut law.

On December 12, 2006, the government and the Connecticut officials filed cross-motions for summary judgment.

**Case No. 07-1396 *United States v. Volz* (06-CV-188) (D. Vt.)**

In response to customer complaints, the Commissioner of the Vermont Department of Public Service (DPS) propounded information requests pursuant to 30 V.S.A. § 206 to AT&T and Verizon concerning their conduct and policies in response to outside requests for information. (Complaint, Doc. No. 1, 06-CV-188, Exh. C). After AT&T refused to respond and Verizon failed to respond adequately, DPS petitioned the Vermont Public Service Board (PSB) to open investigations of the carriers. (*Id.* ¶¶ 33-34). The carriers moved to dismiss, arguing federal law preempted the investigation. (*Id.* ¶ 34). The PSB invited the government to intervene to assert any privileges it believed barred the carriers from responding. (*Id.* ¶ 35). The government declined, instead submitting a letter stating that, if asserted, the state secrets privilege would preclude the carriers from responding. (*Id)*. The PSB denied the carriers' motions, holding the carriers could not assert the privilege (*Id.* ¶ 36 & Exh. H) and ordered the carriers to respond. (*Id.* ¶ 37 & Exh. I). The PSB orders and DPS requests require responses solely from the carriers.

The government sued the Commissioner and the PSB, which possesses "the powers of a court of record . . . in all matters over which it is given jurisdiction," 30 V.S.A. § 9, to enjoin them from completing the inquiry.  In December 2006, the state officials and the government filed the motions to dismiss and for summary judgment, respectively, now before this Court..

## ARGUMENT

### I.  The State Officials' Actions Are Not Preempted Because They Neither Regulate Areas Of Exclusive Federal Authority Nor Conflict With Federal Law.

The government's preemption claims depend on two fallacies: (1) They presuppose that the carriers' compliance with the state officials' inquiries would divulge state secrets and imperil national security; and (2) They rest on the erroneous premise that the state officials are investigating, and thus impeding, alleged federal foreign intelligence gathering activities, national security matters, and military and foreign affairs.  Neither proposition withstands scrutiny, and, without them, the government's preemption arguments topple.

First, as explained in Point II, *infra*, the public statements of government officials and the carriers' executives, coupled with the recent Justice Department report regarding the Federal Bureau of Investigation's (FBI) improper usage of national security letters, undercut the notion that the state officials' inquiries require the carriers to disclose state secrets.  This, in turn, defeats the government's preemption claims, which only have meaning in the context of some information as to which the government has the authority to safeguard.

Second, as explained more fully in this section, the records developed in the state cases reveal a set of narrow inquiries initiated by the state officials properly under their respective states' laws, not attempts to discover detailed information about foreign intelligence gathering operations and policy.  Thus, there is no force to the government's assertion that the state officials are attempting to investigate or interfere with federal functions.  Once that deeply

flawed premise is stripped away, the government cannot sustain its claims that the state officials' actions invade an area occupied by the federal government or conflict with federal authority.

As the record in each case makes plain, the state officials have properly exercised their undisputed police power to ensure that intrastate activities of LECs do not compromise the privacy rights of their citizens. *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 375, 381 n.8 (1999) (states possess wide latitude to regulate intrastate telecommunications matters); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989) ("[T]he regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States. . . ."). While each state has pursued this goal by different means, in general, the state officials have asked the carriers: (1) whether they illegally disclosed customer information and/or records to third parties, including government entities; (2) if so, to describe the disclosure; and (3) to describe their policies for responding to law enforcement requests for customer information.[6] Significantly, the state officials have not inquired as to the fate of any information after disclosure, nor requested responses of any kind from any recipient of such disclosures. Thus, each state's narrow inquiry is not, as the government contends, a "demand for extensive information (if it exists) about national security policy." MDL 06-1791 Doc. No. 232, at 8. The state officials' inquiries begin and end with the carriers, and do not attempt to investigate any other entity, including the government.

Once the government's specious characterization of the state officials' conduct is pushed aside, its preemption claims fall apart. First, because the state officials' conduct relates to the regulation of intrastate telecommunications and public utilities—fields traditionally regulated by the states—the government's arguments must be evaluated "'in light of the presumption against

---

[6] As noted above, the Maine officials have only asked one carrier to affirm under oath statements it made in press releases.

the pre-emption of state police power regulations.'" *Pac. Gas & Elec. Co. v. California*, 350 F.3d 932, 944 (9th Cir. 2003) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992)).  Indeed, the Ninth Circuit has applied the presumption even where a state's exercise of its traditional police power overlaps to some extent with an area traditionally occupied by the federal government.  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 981 (9th Cir. 2005) (acknowledging "significant federal presence in the regulation of national banks," but nonetheless applying presumption because the state statute at issue "was enacted pursuant to the State's historic police powers to prohibit discrimination"), *cert. den. sub nom U.S. Bank Corp. v. Kroske*, 127 S. Ct. 157 (2006).

Next, there can be no preemption where, as here, the complained-of state conduct does not invade a field occupied by federal law. [7]  Field preemption occurs when "the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation."  *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) (quotations omitted).  Field preemption thus presupposes state action in a fully occupied federal realm.  The state officials' focused inquiries lie within their traditional police power over intrastate telecommunications and public utilities.  Thus, the state action at issue here cannot be construed as "supplementary state regulation" within the realm of foreign intelligence, national security, or military or foreign affairs.

The government's conflict preemption arguments fare no better.  Conflict preemption exists "when either 1) it is not 'possible to comply with the state law without triggering federal enforcement action,' *Jones v. Rath Packing Co.*, 430 U.S. 519, 540, (1977), or 2) state law

_____

[7] "Preemption can occur in one of three ways: express preemption by statute, occupation of the field, or conflict between state and federal regulation."  *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 n.2 (9th Cir. 2007) (quotations omitted) .

'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Volt Info. Science, Inc. v. Bd. of Trs. of the Leland Stanford, Jr. Univ.*, 489 U.S. 468, 477." *Incalza*, 479 F.3d at 1009-10. In determining whether state law "stands as an obstacle" to a federal program, "the 'pertinent question[]' is whether the state law 'sufficiently injure[s] the objectives of the federal program to require nonrecognition.'" *TOPA Equities, Ltd. v. City of Los Angeles*, 342 F.3d 1065, 1071 (9th Cir. 2003) (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 583 (1979)). The government, eschewing these established categories, argues that the state officials are preempted from engaging in any conduct that, in its view, would result in disclosure of information related to national security or foreign intelligence gathering. In the government's view, it can invoke preemption by simply articulating a national security or intelligence gathering function that the state officials' actions hypothetically have some effect on. This blank-check approach is far too blunt an instrument for achieving the balance between state and federal power at the core of preemption analysis.

Indeed, Ninth Circuit conflict preemption jurisprudence evinces a nuanced, fact-specific approach that contrasts sharply with the government's self-executing formula. For example, in *Ting*, after acknowledging that the presumption against preemption did not apply "because of the long history of federal presence in regulating long-distance telecommunications," 319 F.3d at 1136, the court held that California's consumer protection laws did not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives" of the federal Communications Act. *Id*. at 1137. AT&T argued that by concluding that its Consumer Services Agreement (CSA) violated California consumer protection and unconscionability law, the district court effectively forced AT&T to afford more favorable treatment to its California consumers, in violation of 47 U.S.C. §§ 201(b) (requiring that all charges be just and reasonable)

and 202(a) (prohibiting carrier from discriminating in its charges or practices with respect to any person, group, or locality). *Id*. at 1138. The Ninth Circuit rejected AT&T's preemption arguments in part because, despite "extensive factual findings" after trial, AT&T had produced no evidence to support its assumptions concerning the effect of holding that the state laws were preempted. *Id*. at 1146. Thus, *Ting* illustrates that even where state action intersects a traditionally federal field of authority, the proponent of preemption must demonstrate how the state action actually impedes some federal function or purpose. *See also Skysign Int'l, Inc. v. City & County of Honolulu*, 276 F.3d 1109, 1116-17 (9th Cir. 2002) (holding that federal law did not preempt city's aerial signage ordinance even though ordinance related to navigable airspace, an area in which there is a significant federal presence); *Ctr. for Bio-Ethical Reform, Inc. v. City & County of Honolulu*, 455 F.3d 910, 917-18 (9th Cir. 2006) (same); *Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev.*, 35 F.3d 1348, 1353-54 (9th Cir. 1994) (holding that federal bankruptcy code does not preempt state taxicab regulation that arguably made Baker & Drake's reorganization more difficult).

The government's argument boils down to the misconception that states cannot take any action that might hypothetically touch upon the federal government's activities, no matter how incidental or tangential the purported contact. As the Ninth Circuit recently observed, "[t]ension between federal and state law is not enough to establish conflict preemption," and a "'hypothetical conflict is not a sufficient basis for preemption.'" *Incalza*, 479 F.3d at 1010 (quoting *Total TV v. Palmer Communications, Inc.*, 69 F.3d 298, 304 (9th Cir. 1995)); *see also Hancock v. Train*, 426 U.S. 167, 179 (1976) ("Neither the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the Federal Government."). Even assuming that the state officials' narrow inquiries create some tension

with federal functions, any intersection between the state officials' actions and areas of federal authority is so slight as to be negligible for preemption purposes.

The government's reliance on specific provisions of federal law—50 U.S.C. § 402 note (Section 6 of the National Security Agency Act of 1959), 50 U.S.C. § 403-1(i)(1), 18 U.S.C. § 798, and Executive Orders 12958 and 13292—is misplaced. The state officials rely on the arguments set out in the briefing already on file, which demonstrate that their actions do not conflict with any of these provisions such that preemption is appropriate. Indeed, this Court rejected the government's argument that 50 U.S.C. § 402 note and 50 U.S.C. § 403-1(i)(1) required dismissal of a suit brought against AT&T by individuals. *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 998 (N.D. Cal. 2006).

In conclusion, the government seeks to prevent not the disclosure of protected information, but the very act of asking for that information, as well as any judicial scrutiny of whether the government's claim of grave threats to national security is, in fact, valid. According to the government, no one, not even the agencies vested with traditional state police power to protect the public interest and to enforce state laws governing intrastate telecommunications service providers, can question whether a carrier has disclosed massive amounts of confidential customer information in violation of state law. If Congress intended to vest such sweeping power in the federal government to the derogation of the states and the detriment of the general public's privacy rights, it would have stated so expressly. There is no statement of such intent anywhere in federal law. Whatever impact the state officials' actions may have on the federal government's functioning, it would be only incidental and cannot support the preemption arguments underlying the government's complaints.

## II. The Information Sought By the State Officials Does Not Expose State Secrets or Jeopardize National Security.

Disclosures by government officials and recent revelations about the domestic intelligence gathering activities of government agencies highlights the fallacy that the disclosure of the information sought by the state officials would endanger national security. As discussed more fully in prior filings by the state officials, the existence of a program whereby telecommunications carriers provided the NSA with access to phone records of customers is well documented. Statements made by company executives, United States Senators, and senior administration officials including the U.S. Attorney General, confirm that a broad-based effort by the NSA occurred after the September 11, 2001 terrorist attack to collect millions of phone records with the assistance of major telecommunications companies. *Id.* at 986-89. It is precisely these types of admissions that this Court can look to in determining whether something is "secret" for the purposes of the state secrets privilege.[8] *Terkel v. AT&T*, 441 F. Supp. 2d 899, 913 (N.D. Ill. 2006). If no secret exists, then the assertion of the state secrets privilege cannot be carried. *Hepting*, 439 F.Supp. 2d at 986.

---

[8] In its complaints against the state officials, the government mentions the state secrets privilege, but does not formally invoke it. *See, e.g.,* Government's Opposition to Motion for Sum. J. (Docket Item 63 in CT 3:06-CV-01405) at 11 ("The United States has not and need not invoke the state secrets privilege . . . ."). In fact, during oral argument before the Judicial Panel on Multidistrict Litigation on January 25, 2007, counsel for the government, in response to a question from a panel judge, admitted that the government had not invoked the state secrets privilege in any of the state cases. Instead, the government's reference to the state secrets privilege appears to simply be part of an effort to demonstrate that federal law confers a certain degree of secrecy on matters involving national security, and that state action which threatens this secrecy is preempted. *Id.* ("The United States does not rely on the state secrets privilege for its cause of action; the privilege is just one element of substantive federal law that demonstrate that the State Defendants' action to demand the disclosure of information related to alleged foreign intelligence matters is preempted by federal law."). So there is no current need for the Court to address the issue of whether the state secrets privilege applies here.

Since the filing of the primary briefs in these matters, persuasive evidence has come to light that at least one government agency, the FBI, routinely violated federal law in the issuance of national security letters to carriers seeking call record information.  *See* U.S. Department of Justice, Office of the Inspector General *A Review of the Federal Bureau of Investigation's Use of National Security Letters*,  March 2007, available at http://www.usdoj.gov/oig/special/s0703b/final.pdf (IG's report).  The Inspector General also confirmed that the FBI entered into contracts with three carriers between May 2003 and March 2004 to provide "near real-time servicing of legal process" of FBI requests.  *Id*. at 88.  On more than 700 occasions, these requests for call record information were processed by the carriers even before proper authorization, in the form of a grand jury subpoena or national security letter, was issued.  *Id.* at 90.

There has been no showing that the bare disclosure of the carriers' compliance with, or rejection of, similar requests by third parties to turn over customer call records would damage national security.  The IG's report lends great weight to the state officials' argument that compliance with the subpoena requests is proper to ensure that no criminal conduct occurred.[9] The IG's report also lends weight to the argument that no "secret," namely whether carriers have provided bulk phone record calling data to the federal government, exists.

The carriers have admitted they comply with what they view as lawful requests for information by the federal government. *See, e.g.*  Niraj Warikoo, *ACLU:  Companies Violated Privacy*, The Detroit Free Press, July 27, 2006.  It strains logic to suggest that, in light of the

_____

[9] Indeed, the need for judicial scrutiny of this conduct has become more urgent since the Bush Administration's announcement that it is proposing legislation that shields telecommunications carriers from liability when complying with requests made of them by the federal government under the Foreign Intelligence Surveillance Act.  James Risen, *Legislation Seeks to Ease Rules on Domestic Spying*, The New York Times, A13, April 14, 2007.

prior public disclosures by governmental and telecommunications officials and the more recent

disclosure of contractual arrangements between the government and carriers to expedite requests

for that compliance, responding to the various state investigations would either expose state

secrets or jeopardize national security.

### III.     This Court Should Abstain from Exercising Jurisdiction.

Ninth Circuit abstention precedent does not preclude this Court from entertaining the

government's complaints against the state officials.  Under *Younger v. Harris*, 401 U.S. 37

(1971) and its progeny, federal courts should abstain from interfering with ongoing state judicial

proceedings and with certain state administrative proceedings.  *See, e.g., Middlesex County*

*Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982).  The state officials

have argued that *Younger* abstention applies here and that the federal courts should not interfere

with the ongoing proceedings involving the telephone companies.  The government's only

response to this argument has been that *Younger* abstention does not apply when the United

States is the plaintiff.  This is, indeed, the holding of the Ninth Circuit in *United States v.*

*Morros*, 268 F.3d 695 (9th Cir. 2001) .  However, the *Morros* decision was issued by a divided

panel and, as the dissenting judge noted, was based upon a fundamental misunderstanding of the

purpose of *Younger* abstention.  *Id*. at 709 (Hug, J., dissenting); *see also* Kevin Beck, Note, *The*

*Ninth Circuit's Message to Nevada: You're Not Getting Any Younger*, 3 Nev. L.J. 592, 602-604

(2003) (criticizing the *Morros* decision for "undermining the [*Younger*] doctrine's protection of

the broad notions of comity and Our Federalism").  The First and Sixth Circuits have at least

indicated that *Younger* abstention applies regardless of whether the United States is the plaintiff.

*United States v. Ohio*, 614 F.2d 101, 105 (6th Cir. 1979); *Fed, Reserve Bank of Boston v.*

*Comm'r of Corps. and Taxation*, 499 F.2d 60, 64 (1st Cir. 1974).  The state officials recognize

that if this Court follows Ninth Circuit law, rather than the law of the circuits from which these cases arose, it will likely be constrained by the *Morros* decision. Nevertheless, the state officials continue to press their argument that *Younger* abstention applies here and preserve the issue for further appellate review.[10]

Even if the Court declines to exercise *Younger* abstention, neither *Morros* nor other Ninth Circuit precedent defeats the Court's authority to determine whether to exercise jurisdiction under the Declaratory Judgment Act. That determination

> is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.' *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250, 97 L. Ed. 291, 73 S. Ct. 236 (1952) (J. Reed, concurring). The Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.' *Public Affairs Associates v. Rickover*, 369 U.S. 111, 112, 7 L. Ed. 2d 604, 82 S. Ct. 580 (1962).

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).

Moreover, "[d]istinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under" abstention doctrines. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). For the reasons already argued in the state officials' briefs, this Court should abstain under the abstention authority conferred by the Declaratory Judgment Act.

## IV. The Government Has No Cause of Action.[11]

The Ninth Circuit has not recognized a cause of action for the government, without statutory authorization, to prevent a perceived threat to national security. In *United States v.*

---

[10] The Vermont case, *United States v. Volz*, presents an especially compelling case for abstention. Defendants Volz, Burke, and Coen comprise the Vermont Public Service Board, a court of record under 30 V.S.A. § 9. Thus, the government seeks to haul a state court of record into federal court to defend its authority to enforce its own orders aimed at ensuring carriers compliance with state law.

[11] Maine does not join in this argument or the arguments made in sections V, VI, or VII.

*Mattson*, 600 F.2d 1295 (9th Cir. 1979) *)*, the Ninth Circuit discussed causes of action that the United States may assert "[e]ven if there is no express [statutory] provision" and discerned a doctrine that "the government can sue if it has some interest that can be construed to warrant an implicit grant of authority." *Id.* at 1298. The court noted that "[t]his doctrine . . . has developed haphazardly, and clarification of its parameters has not been adequately made." *Id.* The court partially clarified the doctrine by holding that the United States lacked standing and a cause of action to sue on behalf of mentally retarded individuals whom Montana allegedly deprived of constitutional rights. *Id.* at 1297. Thus, the Ninth Circuit agrees with the state officials that the government overstates its authority to claim that, without statutory authorization, it may always sue simply to prevent what it deems to be a violation of federal law.

The *Mattson* court also noted that "[w]here interference with national security has been at issue, courts have also relied on the [implicit grant] doctrine to reach the merits of the controversy." *Id.* at 1298. Rather than seeking to reach the "merits" of whether national security is at issue, the government in these cases seeks to quell any attempt to determine the truth of its assertions that the information sought will harm national security (and to preclude judicial scrutiny of legally suspect behavior) by requesting summary judgment based only upon its assertion that national security is at issue. The decision in *Mattson* does not support this goal.

For at least two reasons, the decision in *Mattson* also does not support the government's assertion of a cause of action to effect national security. First, "relying on" the implicit grant doctrine is not the same as holding it to be sufficient. The *Mattson* court cited two cases in its observation of this reliance: *United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972), *cert. denied*, 409 U.S. 1063 (1972), and *New York Times v. United States,* 403 U.S. 713 (1971). As the Fourth Circuit explained in *United States v. Solomon*, 563 F.2d 1121 (4th Cir. 1977), an

opinion with whose "reasoning" the *Mattson* court was in "substantial agreement," 600 F.2d at

1297, the *Marchetti* court's holding that the government had a cause of action was more

precisely premised upon "the interest of the United States in national security where it ha[s]

contractual rights to protect that interest …." *Solomon,* 563 F.2d at 1127. The *Solomon* court

also noted that in the *New York Times* case, the "opinions of the several justices . . . disclosed an

awareness and concern with regard to the government's right to sue" even though "the issue was

not litigated" because "the New York Times conceded the government's right to sue." *Id.* at

1127 n.5. *See*, *New York Times*, 403 U.S. at 718 (Black, J., concurring) ("The Government does

not even attempt to rely on any act of Congress. Instead, it makes the bold and dangerously far-

reaching contention that the courts should take it upon themselves to 'make' . . . law . . . ."). In

the cases before this Court, there are no contractual rights similar to those in *Marchetti*, and

national security, by itself, is insufficient, without congressional authorization, to convey to the

government a cause of action.

Second, the *Mattson* court observed that the implicit grant doctrine "ha[d] its roots in the

late 1800's when legislative provisions were less prolific." *Id.* at 1298. The federal statutory

claims upon which the government relies, none of which explicitly conveys a cause of action to

the United States, are of more recent vintage. In recent times, the Supreme Court has discerned

separation-of-powers problems when federal courts declare non-statutory causes of action, and

the "general practice has been to look for legislative guidance before exercising innovative

authority over substantive law." *Sosa v. Alverez-Machain*, 542 U.S. 692, 726 (2004) (declining

to create a cause of action to remedy violations of allegedly new norms of international law).

*See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("Congress' institutional

competence in crafting appropriate relief [is] a . . . special factor counseling hesitation in the

[judicial] creation of a new remedy.")  Because Congress has not authorized the United States to sue, it lacks a cause of action, and 28 U.S.C. § 1345 conveys jurisdiction for this Court so to rule.

## V.    This Proceeding is Not Ripe for Adjudication by This Court.

The Missouri cases now pending before this Court are grounded on non-final, state administrative proceedings focused on the unilateral actions of certain state-regulated public utilities.  None of the underlying state agency proceedings focused on any federal agency or official of the government.  However, these state proceedings were prematurely interrupted by the government's filing of complaints in federal court seeking declaratory and injunctive relief against the state officials and their regulated public utilities.

The Ninth Circuit has consistently adhered to the Supreme Court's requirement in *Abbott Laboratories* that a case be "ripe" in order to be adjudicated.

> It is well settled that 'injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy *ripe* for judicial resolution.' *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977.)  The basic purpose of the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' *Abbott Laboratories*, 387 U.S. at 148-149.

*Ass'n of Am. Med. Colls v. United States*, 217 F.3d 770, 779 (9th Cir. 2000); *see also*, *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005); *Municipality of Anchorage v. United States*, 980 F.2d 1320 (9th Cir. 1992); *Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322 (9th Cir. 1990).

Pursuant to *Abbott Laboratories*, in order to evaluate the "ripeness" of a case for adjudication, the courts must assess "both the fitness of the issues for judicial decision and the

hardship to the parties of withholding court consideration.  *Id*. at 149, *cited in Ass'n of Med. Colls*, 217 F.3d at 779-80.

To determine the "fitness" of a case for judicial decision, "[t]he core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties."  *Ass'n of Am. Med. Colls*, 217 F.3d at 780 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).  Neither of the Missouri cases satisfy the requirement that the agency decision-making process be complete as both are grounded upon non-final, incomplete state agency proceedings.  Additionally, as the state officials have not requested anything more than information from their regulated utilities, it is also premature to determine whether or not any of the regulated utilities will be directly affected by these still-incomplete state agency proceedings.  Consequently, these cases are not fit for judicial decision.

Likewise, it is also premature to determine whether any parties will experience hardship if court consideration is withheld at this time.  None of the regulated utilities have been subjected to anything more than an order to provide information to a state regulatory agency.  Compliance by the utilities with the orders of their regulators could conceivably result in decisions by the state regulators that no further administrative action is warranted or necessary.  Therefore, the state utilities cannot yet credibly claim that they will experience hardship if they are not permitted to prematurely adjudicate these cases before this Court.

As for the government, which stands at least one step removed from the proceedings between the state officials and their regulated utilities, it is even more difficult to see any immediate hardship resulting from the current withholding of court consideration.  Their argument, as previously briefed, is that any response by the regulated utilities to their regulators will jeopardize national security or divulge "state secrets," and that no response may therefore be

permitted.  This is not so.  If the utilities restrict their reply, be it negative or affirmative, to only

their unilateral actions (i.e., the utility did or did not disclose customer records to a third party),

the response will divulge nothing beyond the information consistently exchanged in the ordinary

course of business between state-regulated utilities and their regulators.  Therefore, there is no

hardship to the parties caused by this Court withholding a premature judicial review of these

cases.  Indeed, a premature adjudication of these cases by this Court works the hardship upon the

sovereignty of the state officials.

## VI.     The Government Improperly Seeks an Advisory Opinion.

Because Article III of the United States Constitution "limits the jurisdiction of federal

courts to the adjudication of 'cases or controversies,'…[t]his limitation bars federal courts from

giving advisory opinions or from considering hypothetical cases." *Indus. Communications Sys.,*

*Inc. v. Pac. Tel. & Tel. Co.*, 505 F.2d 152, 155 (9th Cir. 1974) (citing *Aetna Life Ins. Co. v.*

*Haworth*, 300 U.S. 227, 240-41 (1937)); *see also The Coalition for a Healthy Cal. v. Fed.*

*Communications Comm'n*, 87 F.3d 383, 386 (9th Cir. 1996) (citing *FCC v. Pacifica Found.*, 438

U.S. 726, 734-35 (1978)).  The Ninth Circuit has also previously declared that "a concrete

factual situation is necessary" to the courts, and that a case that does not present such concrete

facts "is a classic one for invoking the maxim that we do not decide 'constitutional questions in a

vacuum.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000)

(citing *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312 (1967) and *American-Arab*

*Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 511 (9th Cir. 1992)).

These cases are devoid of facts.  Only one vague Answer has been filed in one of the

Missouri cases.  The inquiries of the state officials to their regulated utilities were factual.  The

government's interruption of the non-final state administrative proceedings has precluded the

parties and, more importantly, this Court, from the real facts necessary to a proper resolution of these cases. The government has attempted to insert hypothetical facts into these cases instead, objecting in previously-filed briefs to the type of factual information sought by the state officials. These hypothetical facts proffered by the government also suffer from incompleteness as the government posits that the only possible factual response from all of the regulated utilities here would be some sort of admission of the disclosure of telecommunications customer billing records that would necessarily violate national security. Because these cases present, at best, hypothetical facts, any decision by this Court would be an impermissible advisory opinion.

**VII.    There is No Justiciable Case or Controversy Between These Parties.**

A "case or controversy" that is justiciable, as is required by Article III of the United States Constitution, "is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Stewart v. M.M.& P. Pension Plan*, 608 F.2d 776, 782 (9th Cir. 1979) citing *Aetna Life Ins. Co.*, 300 U.S. at 240-41 .

The Ninth Circuit in *Stewart* did not find a justiciable case or controversy in the context of that declaratory judgment action, because "the facts alleged, under all the circumstances, [did not] show that there is a substantial controversy, between parties having adverse legal interests, or sufficient [i]mmediacy and [r]eality to warrant the issuance of a declaratory judgment." *Id.* (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Particularly, the *Stewart* court dismissed the claim for lack of jurisdiction because the plaintiff had alleged that

the actions complained of "threatened" a violation of the law at issue, not that the actions complained of constituted a past or present violation.  *Id.*

Here, there is no justiciable case or controversy between the government and the state-regulated utilities as there are no adverse legal interests--both entities seek the same relief from this Court -- an order of silence.  *See League of Women Voters of Cal. v. Fed. Communications Comm'n*, 489 F. Supp. 517, 520 (C.D. Cal. 1980) (citing *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47 (1971)).  Additionally, there is not yet a case or controversy justiciable by this Court between the Missouri state officials and the state-regulated utilities as the state officials have only preliminarily requested information and there is not yet any final agency action to be reviewed by this Court.  Further, there is not yet a case or controversy justiciable by this Court between the state officials and the government because the dispute between them is hypothetical at best, and the violations alleged are neither past nor present, but at most, threatened.

Finally, there is no case or controversy justiciable by this Court because the government has no standing.

> The requirements of Article III standing are well-established:  [A] plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, (2000)); *see also, Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006);  *Boating Indus. Ass'ns. v. Marshall*, 601 F.2d 1376 (9th Cir. 1979).

Because the government has grounded its cases on incomplete hypothetical facts and allegations of possibly threatened violations of laws, it cannot show that it has suffered a concrete, particularized, actual or even imminent injury in fact that is fairly traceable to the state officials and that a favorable decision by this Court is likely to redress. The government has no standing, and thus these cases do not present this Court with a justiciable case or controversy.

## CONCLUSION

For the foregoing reasons, the relief requested in the state officials' dispositive motions should be granted.

DATED: April 26, 2007

Respectfully submitted,

/s/ Peggy A. Whipple
Peggy A. Whipple
Missouri Bar No. 54758
peggy.whipple@psc.mo.gov

Jennifer Heintz
Missouri Bar No. 57128
jennifer.heintz@psc.mo.gov

P. O. Box 360
Jefferson City, MO 65102
Tel: (573) 526-6715
Fax: (573) 751-9285
Attorneys for the
Missouri Public Service Commission

**DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B**

I, PEGGY A. WHIPPLE, hereby declare pursuant to General Order 45, § X.B, that I have

obtained the concurrence in the filing of this document from each of the other signatories listed

below.

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed on April 26, 2007, at Jefferson City, Missouri.

/s/ Peggy A. Whipple
Peggy A. Whipple

Dated:  April 26, 2007.

G. STEVEN ROWE
ATTORNEY GENERAL OF MAINE
State House Station 6
Augusta, Maine  04333

By:  /s/ Linda J. Conti
Linda J. Conti
Christopher C. Taub
Assistant Attorneys General

STUART RABNER
ATTORNEY GENERAL OF NEW
JERSEY

By:  /s/ Patrick DeAlmeida
Patrick DeAlemeida
Assistant Attorney General
R. J. Hughes Justice Complex
25 Market Street
Trenton, NJ  08625
Tel:  (609) 292-8576

Anthony J. Palermino,
Donald W. Downes,
Jack R. Goldberg,
John W. Betkoski III,
Anne C. George,
Commissioners
Connecticut Department of Public
Utility Control

RICHARD BLUMENTHAL
ATTORNEY GENERAL
STATE OF CONNECTICUT

By:  /s/ Tatiana D. Eirmann
Tatiana D. Eirmann
Assistant Attorney General
Federal Bar No. ct03398
10 Franklin Square
New Britain, CT  06051
Tel:  (860) 827-2620
Fax:  (860) 827-2893

STATE OF VERMONT
WILLIAM H. SORRELL
ATTORNEY GENERAL

By:  /s/ Michael N. Donofrio
Mark J. DiStefano
Michael N. Donofrio
Assistant Attorneys General
109 State Street
Montpelier, VT  05609
Tel:  (802) 828-3171

Counsel for Defendants James Volz,
David C. Coen, John D. Burke, and
David O'Brien