PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
Email: alexander.haas@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
*Attorneys for Federal Defendants Sued in their Official Capacities, the Federal Intervenor-Defendants (United States of America, National Security Agency, President George W. Bush), and the United States of America as Plaintiff against state officials*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>*Clayton, et al. v. AT&T Communications of the Southwest, Inc., et al.* | No. M:06-cv-01791-VRW<br><br>No. 07-cv-01187-VRW<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES IN SUPPORT OF CARRIERS' MOTION TO DISMISS**<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Hearing: June 14, 2007; 2 p.m. |

No. M:06-cv-01791-VRW/07-cv-01187-VRW—STATEMENT OF INTEREST OF THE UNITED STATES IN SUPPORT OF CARRIERS' MOTION TO DISMISS

## INTRODUCTION

The United States of America, through its undersigned counsel, hereby submits this Statement of Interest[1] in support of the motion of the telecommunications carrier defendants ("carriers") to dismiss *Clayton v. AT&T* (MDL No. 07-cv-1187) ("*Clayton*"). *Clayton* is an action brought against various telecommunications carriers by two officials of the Missouri Public Service Commission (Robert Clayton and Steve Gaw (hereinafer "State Officials")) seeking to compel the carriers to provide information concerning their alleged assistance to the National Security Agency ("NSA") in the alleged collection of communications records. The *Clayton* enforcement action originally arose in Missouri state courts and was removed to the Western District of Missouri and subsequently transferred to this Court by the Judicial Panel on Multi-district Litigation ("JPML"). *Clayton* presents virtually identical legal issues as *United States v. Gaw* ("*Gaw*"), which is also now before this Court, *see* MDL No. 07-cv-1242. In *Gaw*, the United States filed suit in the Eastern District of Missouri against the same State Officials regarding the same subpoenas. The *Gaw* action was also transferred to this Court by the JPML. The key issue in both actions is whether the Missouri PUC subpoenas issued by the State Officials are valid under federal law insofar as they expressly seek information related to alleged federal intelligence gathering activities of the NSA. Hence, the Court's decision in *Gaw* will apply in *Clayton* as well.

In *Clayton* (as in other actions now before this Court challenging similar state conduct), state officials seek to use state law to investigate and seek the disclosure of information regarding the Nation's alleged foreign-intelligence gathering activities, and specifically to inquire into whether the carriers have aided in a purported foreign intelligence program of the National Security Agency ("NSA"). But the Constitution and federal law do not permit the State Officials to use state law to compel the disclosure of information concerning those alleged activities. The

---

[1] The "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

Constitution vests exclusive authority in the Federal Government—to the exclusion of the States—over matters touching foreign affairs, the common defense of the Nation, military affairs, and therefore foreign intelligence activities. Moreover, Congress has enacted comprehensive and detailed federal statutes governing this matter that preempt any state law that might arguably apply to the alleged activities. For those reasons, and the reasons set forth by the carriers, the motion to dismiss should be granted.

## FACTUAL BACKGROUND

On June 19, 2006, and June 22, 2006, the State Officials sent subpoenas to each of the carriers. *See* State Officials' Application to Compel at 2, attached to Notice of Removal, Docket Entry 1 in this civil action. The subpoenas clearly target alleged federal intelligence gathering activities and federal agencies by name through third-parties purportedly involved in those alleged activities. The subpoenas provide that each carrier should fail to comply with the subpoenas at their "peril." The initial return date for the subpoenas was July 12, 2006. The State Officials instituted the underlying subpoena enforcement action by suing the carriers in Cole County Circuit Court on July 12, 2006, claiming that the carriers must respond to the subpoenas. The State Officials did not name the United States as a party to that action. *See id.* The carriers removed the Cole County action to the U.S. District Court for the Western District of Missouri on August 10, 2006. On October 13, 2006, that Court denied a motion by the State Officials to remand the *Clayton* case to state court.

On July 25, 2006, the United States initiated the *Gaw* case, a separate civil action, in the U.S. District Court for the Eastern District of Missouri against the State Officials and the carriers, that (along with *Clayton*) has been transferred to this Court. *See* Notice of Decision by Judicial Panel by the United States, Dkt. 165 (Feb. 16, 2007). Through the *Gaw* suit, the United States seeks a declaration that the State Officials' attempts (through the subpoenas at issue in *Clayton*) to compel the disclosure of information concerning the carriers claimed involvement with alleged intelligence-gathering activities of the NSA (as well as the disclosure of any such information by the carriers) are invalid under the Constitution and are otherwise unlawful and preempted by federal law. In *Gaw*, pending motions for summary judgment and to dismiss by the United States

1  and the State Officials, respectively, are fully briefed (pending supplementation to this Court,
2  pursuant to this Court's March 26, 2007 Scheduling Order, Dkt. 219).

## ARGUMENT

The United States has established in *Gaw* that the subpoenas at issue impermissibly interfere with alleged federal operations in violation of the U.S. Constitution and are otherwise preempted by Federal law and, for this reason, the carriers' motion to dismiss the *Clayton* action should be granted.

The relief sought by the State Officials in *Clayton* is that Missouri law be applied to require the disclosure of information relating to alleged NSA activities. The subpoenas clearly target alleged federal intelligence-gathering activities and federal agencies *by name* through third-parties purportedly involved in those alleged activities. In particular, the subpoenas seek testimony regarding "[t]he number of Missouri customers, if any, whose calling records have been delivered or otherwise disclosed *to the NSA* and whether or not any of those customers were notified that their records would be or had been so disclosed and whether or not any of those customers consented to the disclosure;" "[t]he legal authority, if any, under which the disclosures . . . were made;" "[t]he nature or type of information disclosed *to the NSA*, including telephone number, subscriber name and address, social security numbers, calling patterns, calling history, billing information, credit card information, internet data, and the like;" and "[t]he particular exchanges for which any number was disclosed to the NSA." *See* State Officials' Application to Compel at Exhibit A (emphasis added). It therefore cannot be seriously disputed that those subpoenas seek information regarding alleged foreign intelligence gathering activities of the United States, and in particular the NSA.

As set out more fully in the United States' motion for summary judgment and reply in *Gaw*, *see* USG *Gaw* Motion for Summary Judgment at 15-23; USG *Gaw* Reply at 6-13, state law lacks any force upon which to order the disclosure of information relating to alleged foreign intelligence gathering activities of the United States for two reasons. While we will not reiterate these arguments verbatim here, they are incorporated here by reference and summarized below.

First, it has been clear since at least *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316

(1819), that no state law and no organ of state government may regulate the Federal Government or obstruct federal operations. In seeking to apply a cause of action under Missouri law to require the disclosure of information regarding the Carrier Defendants' purported involvement with the NSA, the State Officials are attempting to use state law as a basis to exert regulatory authority with respect to the nation's foreign intelligence gathering. There is simply no state authority regarding foreign intelligence activities. Such powers, by constitutional design, are reserved exclusively to the federal government. *See* U.S. Const. Art. I, §§ 8, 9 & Art. II, §§ 2, 3 (vesting powers over national security and foreign affairs). Moreover, acquisition of foreign intelligence is obviously an essential part of the national security function. Indeed, as the Supreme Court has stressed, there is "paramount federal authority in safeguarding national security," *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 76 n.16 (1964) (quotation omitted), as "[f]ew interests can be more compelling than a nation's need to ensure its own security." *Wayte v. United States*, 470 U.S. 598, 611 (1985); *see also United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936). In particular, "[g]athering intelligence information" is within the President's constitutional responsibility for the security of the Nation as the Chief Executive and as Commander in Chief of our Armed forces. *United States v. Marchetti*, 466 F.2d 1309, 1315 (4th Cir. 1972).

As a result of this constitutional allocation of authority, state subpoenas targeting alleged foreign intelligence gathering activities for disclosure intrude upon a field that is reserved exclusively to the federal government and interferes with federal prerogatives. The State Officials seek to employ state law to impede and burden those operations by ordering disclosure of information related to alleged intelligence activities without authorization from the Federal Government. That is not constitutionally permissible. State officials simply may not intrude on inherently federal functions through the exercise of state law. *See McCulloch*, 17 U.S. at 326-27; *see also Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189-90 (1956). Indeed, both this Court and the Ninth Circuit have rejected other states' detours into areas of exclusive federal control of far less significance. *See, e.g.*, *Deutsch v. Turner Corp.*, 324 F.3d 692, 711 (9th Cir. 2003); *In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160, 1168-71 (N.D. Cal.

2001).

Second, the state subpoenas are preempted not only because they invade a field of exclusive federal control—national security and federal intelligence functions—but also because, by ordering disclosure of information relating to alleged federal intelligence gathering, they conflict with federal statutory and common law controlling access to and restricting dissemination of such information. There is no genuine question that the Missouri subpoenas, which name the NSA and seek information relating to alleged NSA activities, intrude on this field. Any response to the Missouri subpoenas would, at a minimum, confirm or deny: (i) whether the carriers were involved in the alleged foreign intelligence gathering program of the United States; (ii) whether an espionage agreement exists between the carriers and the United States; (iii) if the program exists, as the State Defendants assert, the precise nature of the alleged involvement and the details surrounding the alleged NSA activities. The United States' complaint and motion for summary judgment in *Gaw* set forth the multitude of statutory and common laws that prohibit this inquiry. Specifically, Section 6 of the National Security Agency Act of 1959[2] (codified at 50 U.S.C. § 402 note); the Intelligence Reform and Terrorism Prevention Act of 2004 (codified at 50 U.S.C. § 403-1); 18 U.S.C. § 798; Executive Orders; and two bodies of federal constitutional common law (the state secrets privilege and the *Totten/Tenet* bar) tightly regulate under Federal law access to and dissemination of information relating to intelligence activities and preempt the state subpoenas.

The required disclosures of information under Missouri law would clearly conflict with the command of Federal law restricting access to and dissemination of information relating to alleged federal intelligence activities. Section 6 of the National Security Agency Act of 1959

---

[2] Section 6 provides: "[N]othing in this Act *or any other law* . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency." *Id.* (emphasis added). Section 6's covers "any other law" and reflects a "congressional judgment that in order to preserve national security, information elucidating the subjects specified ought to be safe from forced exposure." *The Founding Church of Scientology of Washington, D.C. v. Nat'l Security Agency*, 610 F.2d 824, 828 (D.C. Cir. 1979).

clearly covers the disclosure ordered by the subpoenas as the subpoena, by their express terms, require the disclosure of information relating to alleged NSA activities. The subpoenas also conflict with the federal statute protecting intelligence sources and methods—codified at 50 U.S.C. § 403-1(i)(1). Congress has established the exclusive responsibility of a federal actor—the DNI—to protect intelligence sources and methods. Despite this congressional determination, the State Officials seek to undermine that exclusive authority by ordering disclosure of information relating to alleged federal intelligence activities. *See United States v. Adams*, 437 F. Supp. 2d 108, 118 (D. Me. 2007) (noting that it is "painfully obvious that, in making assessments about the impact of [a state order] on national security, the [state agency] is acting beyond its depth"). As Judge Woodcock recognized in *Adams*, state regulators may have expertise to "regulate public utilities," but are "not charged with evaluating threats to national security, investigating the NSA, or holding businesses in contempt when their silence was mandated by the federal government." *Id.* Finally, it is clear that federal constitutional protections for the information—through the state secrets privilege—have been invoked in this MDL proceeding over the very kind of information covered by the subpoenas.[3] There is no possible coexistence for these conflicting state and federal actions.

## CONCLUSION

For the foregoing reasons, and those in the United States' motion for summary judgment in the *Gaw* case brought against the State Officials by the United States, and the supplemental

---

[3] There cannot be a genuine dispute that the DNI and NSA have sought to protect such information. As the Court is aware, every court to consider whether information concerning the alleged NSA records program is subject to the protection of federal law has prohibited the disclosure of such information, including information that would confirm or deny the existence of such a program, in light of the state secrets privilege. *See Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 917 (N.D. Ill. 2006) (dismissing telephone records case on state secrets grounds); *ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006) (dismissing, on state secrets grounds, "data-mining" claims regarding alleged NSA records activities); *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 998 (N.D. Cal. 2006) (declining to permit discovery into allegations about AT&T's involvement in an alleged communication records program). This shows that the subject matter and law governing disclosure of the information at issue lies within the province and authority of the Federal Government.

brief of the United States regarding the State Cases, the Court should grant the carriers' motion to dismiss in *Clayton*.

DATED: April 26, 2007

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

  */s/ Alexander K. Haas*
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
Email: alexander.haas@usdoj.gov