PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS (SBN 220932)
Trial Attorneys
Email: alexander.haas@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202

*Attorneys for Federal Defendants Sued in their Official Capacities, the Federal Intervenor-Defendants (United States of America, National Security Agency, President George W. Bush), and the United States of America as Plaintiff against state officials*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | **No. M:06-cv-01791-VRW** |
| This Document Relates To: | **SUPPLEMENTAL BRIEF OF THE UNITED STATES REGARDING THE STATE CASES** |
| *United States v. Rabner, et al.* (07-1324); *United States v. Gaw, et al.* (07-1242); *United States v. Adams, et al.* (07-1323); *United States v. Palermino, et al.* (07-1326); *United States v. Volz, et al.* (07-1396); *Clayton, et al. v. AT&T Communications of the Southwest, Inc., et al.* (07-1187) | Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Hearing: June 14, 2007; 2 p.m. |

No. M:06-cv-01791-VRW—SUPPLEMENTAL BRIEF OF THE UNITED STATES
REGARDING THE STATE CASES

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I. NINTH CIRCUIT LAW CONFIRMS THAT THIS COURT HAS
JURISDICTION AND THAT THE UNITED STATES POSSESSES
A CAUSE OF ACTION ............................................................................................ 3

    A. Jurisdiction Over The United States' Claims Lies In Federal Court ..................... 3

    B. The United States Has A Cause Of Action To Vindicate Its Sovereign
       Interests And To Vindicate Its Authority Under The Supremacy Clause .............. 4

II. NINTH CIRCUIT PRECEDENT CONFIRMS THAT THE STATE OFFICIALS'
ACTIONS ARE INVALID UNDER AND PREEMPTED BY FEDERAL LAW ............ 5

    A. Ninth Circuit Law Confirms That State Officials May Not Interfere With
       Federal Functions .................................................................................................. 6

    B. Ninth Circuit Precedent Supports The United States' Preemption
       Argument ............................................................................................................... 8

III. LT. GENERAL ALEXANDER'S DECLARATION DEMONSTRATES
THAT, IF PERMITTED TO PROCEED, THE STATE OFFICIALS'
ACTIONS WILL INTERFERE WITH THE FEDERAL GOVERNMENT'S
NATIONAL SECURITY OPERATIONS .................................................................. 11

IV. THE DECISION IN *ADAMS* SUPPORTS THE UNITED STATES'
MOTIONS .................................................................................................................. 12

CONCLUSION ....................................................................................................................... 13

**TABLE OF AUTHORITIES**

**CASES**                                                                                                           **PAGE**

*Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (9th Cir. 2000) .......................... 8

*Bell v. Hood*, 327 U.S. 678 (1946) ................................................................................................ 3

*Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261 (9th Cir. 1994) ........................................................... 5

*California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046 (N.D. Cal. 2003) ................. 8

*In re Debs*, 158 U.S. 564 (1895) .................................................................................................. 4

*Department of the Navy v. Egan*, 484 U.S. 518 (1988) ............................................................. 10

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) .............................................................. 6

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) ............................................................. 6, 10

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) ..................................... 10

*Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995) ................................................................... 12

*Gartrell Construction Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991) ............................................ 7

*In re Grand Jury Subpoena*, 198 F. Supp. 2d 1113 (D. Alaska 2002) ....................................... 10

*Hancock v. Train*, 426 U.S. 167 (1976) ....................................................................................... 6

*Hawaii Newspaper Ag. v. Bronster*, 103 F.3d 742 (9th Cir. 1996) ............................................ 9

*Hydrostorage, Inc. v. Northern Cal. Boilermakers*, 891 F.2d 719 (9th Cir. 1989) ................. 3, 5

*Inland Empire Chapter of Associated General Contractors of America v. Dear*,
    77 F.3d 296 (9th Cir. 1996) .................................................................................................. 2, 10

*Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956) .................................................................. 7

*In re NSA Telecomm. Records Litig.*, 2007 WL 163106 (N.D. Cal. Jan. 18, 2007) ................... 8

*Pacific Gas and Elec. Co. v. State Energy Resources Conservation &
    Development Com'n*, 461 U.S. 190 (1983) ............................................................................... 9

*Planned Parenthood of Houston and Southeast Tex. v. Sanchez*, 403 F.3d 324
    (5th Cir. 2005) ........................................................................................................................... 5

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ............................................................... 9

*Shaw v. Delta Airlines*, 463 U.S. 85 (1983) ................................................................................ 5

*Ultramar Am. Ltd. v. Dwelle*, 900 F.2d 1412 (9th Cir. 1990) .................................................... 4

*Union Oil Co. of California v. Minier*, 437 F.2d 408 (9th Cir. 1970) ........................................ 7

*United States v. Adams*, 473 F. Supp. 2d 108 (D. Me. 2007) .......................................... 1, 12, 13

*United States v. California*, 328 F.2d 729 (9th Cir. 1964) ..................................................... 3

*United States v. County of Humboldt*, 628 F.2d 549 (9th Cir. 1980) ........................................ 7-8

*United States v. Mattson*, 600 F.2d 1295 (9th Cir. 1979) ...................................................... 4

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) ................................................ 3, 4, 5

*United States v. San Jacinto Tin Co.*, 125 U.S. 273 (1888) .................................................... 4

*United States v. State of Montana*, 699 F. Supp. 835 (D. Mont. 1988) ....................................... 7

*In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160
    (N.D. Cal. 2001) ................................................................................................ 6, 7

**STATUTES & LEGISLATIVE HISTORY**

6 U.S.C. § 121(d)(9) ............................................................................................................... 9

6 U.S.C. § 122(d) .................................................................................................................... 9

6 U.S.C. § 482(a)(1)(C) ........................................................................................................... 9

6 U.S.C. § 482(b)(1) (6)-(7) .................................................................................................... 9

6 U.S.C. § 482(c) .................................................................................................................... 9

28 U.S.C. § 1331 ..................................................................................................................... 3

28 U.S.C. § 1345 ..................................................................................................................... 3

50 U.S.C. § 401 ....................................................................................................................... 8

50 U.S.C. § 403 ....................................................................................................................... 8

50 U.S.C. § 403-1(b) ............................................................................................................... 9

50 U.S.C. § 403-1(i)(1) ....................................................................................................... 9, 10

50 U.S.C. § 403-1(i)(2)(B) ...................................................................................................... 9

50 U.S.C. § 403-1(f)(1)(A)(i)-(iii) ........................................................................................... 9

50 U.S.C. §§ 413a(a) & 413b(b) ............................................................................................. 9

Section 6 of the National Security Agency Act of 1959
    (codified at 50 U.S.C. § 402 note) ...................................................................................... 10

18 U.S.C. § 798 ..................................................................................................................... 10

H.R. Conf. Rep. 108-796, 2004 WL 2920869, *241-42 (2004) .............................................. 8

**INTRODUCTION**

Pursuant to this Court's March 26, 2007 Scheduling Order, the United States of America, through its undersigned counsel, hereby submits this Supplemental Brief concerning the above-captioned "State Cases." *See* Scheduling Order, Dkt. 219. Each of the State Cases involves an attempt by state officials to use state law to investigate and publicly disclose whether and to what extent the Federal Government is engaged in alleged foreign-intelligence gathering activities with certain telecommunications carriers. As we have previously demonstrated in the various briefs submitted in these cases,[1] the state officials lack authority to pursue these matters for at least two related but distinct reasons. First, the United States Constitution vests exclusively to the Federal Government—to the exclusion of the States—matters related to foreign affairs, the common defense of the nation, and, in particular, foreign intelligence activities. State action taken in a sphere of authority constitutionally reserved to the Federal Government, such as the actions of the state officials in these cases, treads upon and interferes with federal functions in derogation of the Supremacy Clause, and is therefore unlawful. Second, various provisions of federal law—including the comprehensive and detailed federal statutes that regulate the field of national security and intelligence policy, and that preclude the disclosure of information relating to alleged intelligence activities—preempt entirely the state officials' attempts to investigate the alleged foreign intelligence activities of the United States. For these reasons, explained more fully in our prior briefs in these cases, the United States is entitled to judgment as a matter of law.

As set forth below, Ninth Circuit precedent and the recent decision of Judge Woodcock in *United States v. Adams*, one of these State Cases, provide additional support for our positions. In particular, Ninth Circuit case law confirms that: (i) this Court has jurisdiction and the United States possesses a cause of action to pursue its claims; (ii) it would be impermissible for the Court to abstain under *Younger* from exercising that jurisdiction; (iii) state action that is taken in a sphere of authority entrusted exclusively to the Federal Government by the Constitution, such as the actions of the state officials, is impermissible under the Supremacy Clause; and (iv) the

---

[1] As the Court is aware, the United States has moved for summary judgment in each of the State Cases and has also opposed the state officials' various motions to dismiss.

state officials may not evade the Supremacy Clause merely by purporting to regulate third parties. And the *Adams* opinion—in which Judge Woodcock enjoined Maine state officials from conducting a contempt proceeding related to Maine's attempts to investigate these matters—further demonstrates that this Court should grant summary judgment to the United States. *See infra* at Part IV.

Finally, some of the state officials have suggested that the United States is not entitled to summary judgment absent a fact-based demonstration that the state officials' actions actually interfere and conflict with foreign intelligence operations and federal law. This argument is meritless. The preemptive effect of federal law is a legal question, *see, e.g.*, *Inland Empire Chapter of Associated General Contractors of America v. Dear*, 77 F.3d 296, 299 (9th Cir. 1996), and the conflict between the state officials' actions, on one hand, and federal law and operations, on the other, could not be plainer. To the extent that the Court concludes that such a showing is necessary, however, General Keith B. Alexander, the Director of the National Security Agency ("NSA"), explains in the attached declaration that permitting the state officials to continue their investigations would risk grave harm to the national security. *See* Declaration of General Keith B. Alexander (Apr. 26, 2007) ("Alexander Decl."), attached hereto as Exhibit A. As General Alexander explains:

> With respect to the particular cases at issue, the United States has never confirmed or denied the allegations that form the basis for the five state proceedings: whether the NSA collects large quantities of communication records from certain telecommunication carriers. Confirming or denying such information would disclose whether or not the NSA utilizes particular sources and methods. Such a disclosure would either compromise actual sources and methods or reveal that the NSA does not utilize a particular source or method, in either case providing information that could help an adversary evade detection. Confirming or denying the allegations regarding specific telecommunication companies and specific activities would also replace speculation with certainty for hostile foreign adversaries who are balancing the risk that a particular channel of communication may not be secure against the need to communicate efficiently.

Alexander Decl., ¶ 18. There can be no question that it would interfere with the national security operations of the Federal Government if the state officials are allowed to investigate and publicly disclose whether and to what extent the NSA is engaged in alleged foreign-intelligence gathering activities with certain telecommunications carriers.

**ARGUMENT**

**I. NINTH CIRCUIT LAW CONFIRMS THAT THIS COURT HAS JURISDICTION AND THAT THE UNITED STATES POSSESSES A CAUSE OF ACTION.**

   **A.      Jurisdiction Over The United States' Claims Lies In Federal Court.**

Many of the state officials contend that there is no federal jurisdiction over these cases. As we have previously demonstrated, however, two federal statutes—28 U.S.C. §§ 1331, 1345—create federal subject matter jurisdiction, and Ninth Circuit law confirms this Court's jurisdiction.

First, the Ninth Circuit has long held that 28 U.S.C. § 1345 "provides the district courts with original jurisdiction of all civil actions commenced by the United States" and creates "independent subject matter jurisdiction" regardless of whether there is federal question jurisdiction under 28 U.S.C. § 1331. *See United States v. Morros*, 268 F.3d 695, 702-03 (9th Cir. 2001); *see also United States v. California*, 328 F.2d 729, 736-38 (9th Cir. 1964) (delving into the history of section 1345 and concluding that it "vests jurisdiction in district courts over suits by the United States against a State" regardless of state claims to sovereign immunity). This statute clearly applies to these actions, and the state officials have never contended otherwise.

Second, Ninth Circuit law is clear that federal courts have federal question jurisdiction under 28 U.S.C. § 1331 over suits by *any litigant* (whether the United States or a private party) seeking injunctive relief against a state law, regulation, or order on the ground that federal law preempts such state actions. *See, e.g.*, *Hydrostorage, Inc. v. Northern Cal. Boilermakers*, 891 F.2d 719, 724-25 (9th Cir. 1989). The Ninth Circuit has also held that claims of the United States against states or state officials arise under federal law for purposes of federal question jurisdiction where, as here, the United States seeks relief "'directly under the Constitution or laws of the United States'" in challenging the actions of state officials under the Supremacy Clause. *See Morros*, 268 F.3d at 699-703 (district court committed reversible error in dismissing the action for lack of jurisdiction in such a situation) (citing *Bell v. Hood*, 327 U.S. 678, 681-82 (1946)). Simply put, under well-established Ninth Circuit doctrine, this Court has jurisdiction

over these cases.[2]

### B. The United States Has A Cause Of Action To Vindicate Its Sovereign Interests And To Vindicate Its Authority Under The Supremacy Clause.

As we have previously demonstrated, *In re Debs* and its progeny establish that the United States has a non-statutory cause of action to vindicate its sovereign interests, and the United States also possesses an implied right of action under the Supremacy Clause to pursue its preemption claims. Ninth Circuit precedent supports both causes of action.

*Debs* held that the Federal Government is "entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, [and] has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other . . . ." *In re Debs*, 158 U.S. 564, 584 (1895). *See also United States v. San Jacinto Tin Co.*, 125 U.S. 273, 278-80 (1888) (noting that the United States may sue to protect its interests even when there is no statute specifically authorizing the suit). The Ninth Circuit has recognized that *Debs* allows the Federal Government to use a non-statutory cause of action "[w]here interference with national security has been at issue." *United States v. Mattson*, 600 F.2d 1295, 1298 (9th Cir. 1979).[3] That, of course, is the very claim we make here.

Beyond whether *the United States* has a cause of action to vindicate its sovereign interests, it is settled law in this circuit that a preemption cause of action exists *for any party* (sovereign or otherwise) "[e]ven in the absence of an explicit statutory provision." *See Bud*

---

[2] While many of the state officials have characterized the United States' claims as raising anticipatory defenses to their disclosure demands, and therefore not arising under federal law, these contentions are baseless. *See Morros*, 268 F.3d at 701 (holding that whether a complaint states claims arising under federal law "must 'be ascertained by the legal construction of [the plaintiff's] allegations, and not by the effect attributed to those allegations by the adverse party'") (quoting *Ultramar Am. Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990)).

[3] While *Mattson* held that the United States lacked a cause of action in that case, that result followed because the United States sought to protect not its own *sovereign* interests but instead the constitutional rights of *third parties* without statutory authorization. *See* 600 F.2d at 1299-1300. But *Mattson* recognized that had there been, as there is here, an "assertion [by the United States] of . . . interference with national security," a *Debs* cause of action would exist. *See id.* at 1298-99.

*Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994); *Planned Parenthood of Houston and Southeast Tex. v. Sanchez*, 403 F.3d 324, 334 (5th Cir. 2005) ("that there is an implied right of action to enjoin state or local regulation that is preempted by a federal statutory or constitutional provision"). The Ninth Circuit has expressly held that such a cause of action applies to suits brought by the United States challenging state action as preempted. *Morros*, 268 F.3d at 699-703 (holding that the United States' preemption claims against state officials must be entertained by a federal court). Finally, it is well-established that a cause of action exists to enjoin a state official from acting in derogation of the federal Constitution. *See Hydrostorage*, 891 F.2d at 724-25 (citing *Shaw v. Delta Airlines*, 463 U.S. 85, 96 n.14 (1983)).

The Ninth Circuit also has held that *Younger* abstention, which many of the state officials have relied upon, does not apply where the United States is a litigant. *See Morros*, 268 F.3d at 707-08. Where, as here, the United States seeks to establish its own rights of a sovereign character against state officers who purport to use state authority to intrude into exclusively federal operations, *Younger* lacks force and it is the duty of federal courts to consider the United States' claims. As the Ninth Circuit held in *Morros*, in any case where "the United States seeks relief against a state or its agency, the state and federal governments are in direct conflict before they arrive at the federal courthouse" such that "any attempt to avoid a federal-state conflict would be futile." *Id.*

Ninth Circuit authority thus leaves no doubt that the Court must review the merits of the Government's claims in these cases.

## II. NINTH CIRCUIT PRECEDENT CONFIRMS THAT THE STATE OFFICIALS' ACTIONS ARE INVALID UNDER AND PREEMPTED BY FEDERAL LAW.

As we have previously demonstrated, the state officials lack authority to pursue the investigations at issue in these cases for at least two reasons. First, the United States Constitution vests exclusively to the Federal Government—to the exclusion of the States—matters related to foreign affairs, the common defense of the nation, and, in particular, foreign intelligence activities. State action taken in a sphere power constitutionally reserved to the Federal Government treads upon and interferes with federal functions in derogation of the

Supremacy Clause. Second, various provisions of federal law—including the comprehensive and detailed federal statutes that regulate the field of national security and intelligence policy and federal laws that preclude the disclosure of information relating to alleged intelligence activities—preempt entirely the state officials' attempts to investigate the alleged foreign intelligence activities of the United States. Ninth Circuit precedent fully supports these arguments.

### A. Ninth Circuit Law Confirms That State Officials May Not Interfere With Federal Functions.

It has been well-established since at least *McCulloch v. Maryland* that "the activities of the Federal Government are free from regulation by any state" except where Congress expressly provides to the contrary. *Hancock v. Train*, 426 U.S. 167, 178-79 (1976). Ninth Circuit law confirms that federal law in a field entrusted to the Federal Government invalidates state laws in that field. In *Deutsch v. Turner Corp.*, 324 F.3d 692, 712 (9th Cir. 2003), for example, the Court of Appeals invalided a California law that "intrude[d] on the federal government's exclusive power to make and resolve war." *See also In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160, 1168 (N.D. Cal. 2001) ("*World War II*") (Walker, J.), *aff'd sub nom. in Deutsch*. Indeed, the Ninth Circuit has observed that "it is clear that matters concerning war are part of the inner core" of the foreign relations power "that is denied to the states" under the Constitution. *Deutsch*, 324 F.3d at 711.

This case law clearly applies here. It cannot be disputed that federal intelligence activities, alleged and otherwise, relate to indisputably federal functions over national security, foreign relations, and military functions that are "part of the inner core" of federal power. *Id.*; *see id.* at 712 ("Matters related to war are for the federal government alone to address"); *see also id.* at 709 (citing constitutional provisions vesting powers exclusively in the Federal Government and to the exclusion of the states). *See also Dorfmont v. Brown*, 913 F.2d 1399, 1405 (9th Cir. 1990) (Kozinski, J, concurring) (noting in a review of a security clearance denial that "[u]nder the Constitution, the President has unreviewable discretion over security decisions made pursuant to his powers as chief executive and Commander-in-Chief"). The state officials seek to reveal information that would confirm or deny the existence of intelligence activities and would serve to

harm the national security, and therefore tread upon and interfere with federal functions. Such interference with core federal authority is neither incidental nor indirect and would directly and impermissibly burden federal functions. *See World War II Litig.*, 164 F. Supp. 2d at 1173-74.

Moreover, we have previously demonstrated that the state officials may not evade the Supremacy Clause's limitations on state power merely by regulating third parties. That too is the law in the Ninth Circuit. In *Gartrell Construction Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991), for example, the Court held that California regulations on private third-party contractors were invalid under the Supremacy Clause when applied to contractors working on Federal Government projects.[4] Even though such state regulations fell on third parties, the Court held that the regulations effectively interfered with and obstructed federal operations. *See id.* at 439-40; *see also United States v. State of Montana*, 699 F. Supp. 835, 837-39 (D. Mont. 1988). Similarly, in *Union Oil Co. of California v. Minier*, 437 F.2d 408 (9th Cir. 1970), the Ninth Circuit affirmed a preliminary injunction against a District Attorney's prosecution of nuisance citations issued to third-party oil companies designed to thwart the development of oil production in the outer continental shelf of California. *Id.* at 410. Even though the state's actions were directed at private parties, the Ninth Circuit recognized that the state prosecutions sought "to completely frustrate a federal power." *Id.* at 411. Indeed, the Court observed that where federal functions "come in conflict with the powers of the state, then the latter powers must give way, and this is true whether the United States exercises its rights directly or though the use of private persons."[5] *Id.* (citing cases).

---

[4] In so ruling, the Ninth Circuit followed *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189-90 (1956). In *Leslie Miller*, the Air Force had awarded a base construction contract to a private firm, and the State then instituted proceedings against the contractor for its failure to obtain a license under state law before executing the contract. The Court rebuffed that regulatory intrusion, concluding that the state licensing standards created "a virtual power of review over the federal determination of 'responsibility,'" *id.* at 190. The Court held that the State had no authority to regulate third-party Air Force contractors because the application of state law would "frustrate the expressed federal policy." *Id.*

[5] *United States v. County of Humboldt*, 628 F.2d 549 (9th Cir. 1980), is also instructive. In *Humboldt*, the Ninth Circuit declared unconstitutional, under the Supremacy Clause, a

1   These holdings are clearly applicable to these State Cases. Forcing third parties to
2   disclose alleged foreign intelligence-gathering information, if it exists, would plainly burden
3   federal operations in the exclusively federal field of national security.

**B.     Ninth Circuit Precedent Supports The United States' Preemption Argument.**

In our earlier briefs in these State Cases, we also established that the state disclosure orders and investigations are preempted because they constitute attempts by states to regulate in a preempted field[6]—national security and intelligence—and also otherwise conflict with specific federal laws proscribing disclosure of information related to alleged intelligence activities. Ninth Circuit precedent again supports these positions.

First, with regard to field preemption, there can be no doubt that federal law comprehensively and exclusively covers the field of law relating to national security and intelligence activities.[7] Because federal law occupies the field, the only relevant question is

---

California tax that fell directly on third parties, *i.e.*, on an enlisted person's interest in government-housing. *Id.* at 552-53. The impermissible tax intruded on federal functions because if states could impose such burdens "the military's entire recruitment and quartering processes could be thrown into confusion." *Id.* at 553.

[6] Although this Court held in the *Campbell* and *Riordan* cases (against Verizon and AT&T) that the plaintiffs' California law claims were not "completely preempted" by federal law, *see In re NSA Telecomm. Records Litig.*, 2007 WL 163106, at *3-5 (N.D. Cal. Jan. 18, 2007), that conclusion is wholly consistent with our substantive preemption argument. As this Court has recognized, a conclusion that there is no complete preemption for removal jurisdiction purposes, *i.e.*, "jurisdictional preemption," implies nothing about the question of "substantive preemption." *See California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1060 (N.D. Cal. 2003) (Walker, C.J.) ("The concept of complete preemption . . . [is] irrelevant to defendants' field and conflict preemption arguments"). *See also Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 n.7 (9th Cir. 2000)

[7] Even a cursory review of Chapter 15 of Title 50 confirms that the field is preempted. Consistent with the Declaration of Purpose—*inter alia* "to provide a comprehensive program for the future security of the United States [and] to provide for the establishment of integrated policies and procedures . . . relating to the national security," *see* 50 U.S.C. § 401—Congress recently unified all intelligence functions in a single federal actor, the Director of National Intelligence ("DNI"). The DNI's functions and authority illustrate a congressional determination for the Nation to have a unified national policy regarding the federal intelligence functions. *See* 50 U.S.C. § 403. *See also* H.R. Conf. Rep. 108-796, 2004 WL 2920869, *241-42 (2004). The

whether the state officials are purporting to act in that field.  *See, e.g.*, *Hawaii Newspaper Ag. v. Bronster*, 103 F.3d 742, 748-50 (9th Cir. 1996) (holding a Hawaii law requiring disclosures of business information to state officials preempted as Congress regulated the field of newspaper joint operating agreements).  "When the federal government completely occupies a given field or an identifiable portion of it, . . . the test of preemption is whether 'the matter on which the state asserts the right to act is in anyway regulated'" by federal law.  *See Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Development Com'n*, 461 U.S. 190, 212-13 (1983) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 236 (1947)).  Even a cursory examination of the various state disclosure orders establishes that the states' actions intrude on this field.  Indeed, any response to any of the challenged state orders would, at a minimum, confirm or deny:  (i) whether a carrier or carriers were involved in the alleged foreign intelligence gathering program of the United States; (ii) if the program exists, as the state officials assert, the precise nature of the alleged involvement and the details surrounding the alleged NSA activities.[8] *See* Alexander Decl., ¶ 16.

---

DNI has access to all intelligence information of the Government and the authority not only to "protect intelligence sources and methods from unauthorized disclosure" but also to establish and implement federal policy regarding "[a]ccess to and dissemination of intelligence, both in final form and in the form when initially gathered." *See* 50 U.S.C. § 403-1(b) & § 403-1(i)(1) & § 403-1(i)(2)(B).  Congress also vested the DNI with authority over all aspects related to tasking, evaluating, and disseminating national intelligence information.  50 U.S.C. § 403-1(f)(1)(A)(i)-(iii).  In addition, Congress vested in officials of Department of Homeland Security the authority to disseminate to state officials infrastructure and homeland security information.  *See* 6 U.S.C. §§ 121(d)(9) & (12)(B); 6 U.S.C. § 122(d); 6 U.S.C. §§ 482(a)(1)(C), § 482(b)(1) (6)-(7), & § 482(c).  *Accord* 50 U.S.C. § 403-1(f)(1)(B)(iii).  That underscores that control over national intelligence is subject to the discretion and control of federal officials in all instances.

[8]  We also note that several of the state officials have declared that their actions are, at least in part, to ensure that the Executive Branch's alleged actions are subject to oversight.  The National Security Act of 1947 contemplates that oversight of sensitive intelligence gathering activities, if they exist, is to be conducted by the Senate Select Committee on Intelligence and the House Permanent Select Committee on Intelligence.  *See, e.g.*, 50 U.S.C. §§ 413a(a) & 413b(b).  Those bodies have the expertise required to deal with highly classified intelligence matters.  The National Security Act centralized oversight of such programs in those committees to avoid the risk of compromising intelligence activities.  State investigations of alleged federal intelligence activity would undermine and interfere with that carefully crafted scheme.

Second, with regard to conflict preemption, courts in this circuit have recognized that where, as here, a conflict exists between a state's disclosure or confidentiality laws and the strictures of federal law, such state laws are "trumped . . . as a consequence of the Supremacy Clause of the United States Constitution." *See In re Grand Jury Subpoena*, 198 F. Supp. 2d 1113, 1115-17 (D. Alaska 2002) (holding a state employee's reliance on state confidentiality laws restricting disclosure of state information invalid, when confronted with federal grand jury subpoena under the Supremacy Clause). The Ninth Circuit also has recognized, in other contexts, that the protection of national security information is a matter of federal concern. In the context of a challenge to the revocation of a security clearance, the Ninth Circuit acknowledged that in such a "'sensitive and inherently discretionary' area of decisionmaking, the 'authority to protect [security] information falls on the President as head of the Executive Branch and as Commander in Chief.'" *See Dorfmont*, 913 F.2d at 1401 (quoting *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988)).

The actions of the state officials directly conflict with federal statutes and the decisionmaking, judgment and statutory authority of the Nation's senior intelligence officers by seeking the disclosure of information relating to alleged federal intelligence activities. Confronted with state laws that order disclosure and federal laws that preclude disclosure,[9] only one result can follow: a declaration of the invalidity of the state disclosure orders (and any other similar orders) under the Supremacy Clause. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963) (preemption of state law occurs where "compliance with both [the] federal and state regulations is a physical impossibility").

---

[9] As we have previously demonstrated, *see, e.g.*, USG *Volz* Mem. at 17-24, Section 6 of the National Security Agency Act of 1959 (codified at 50 U.S.C. § 402 note), 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004 (codified at 50 U.S.C. § 403-1(i)(1)), 18 U.S.C. § 798, two bodies of federal constitutional common law (the state secrets privilege and the *Totten/Tenet* bar), and Executive Orders regarding classified information each preclude disclosure of information, if it exists, covered by the state officials' actions.

## III. LT. GENERAL ALEXANDER'S DECLARATION DEMONSTRATES THAT, IF PERMITTED TO PROCEED, THE STATE OFFICIALS' ACTIONS WILL INTERFERE WITH THE FEDERAL GOVERNMENT'S NATIONAL SECURITY OPERATIONS.

Some of the state officials have suggested that the United States is not entitled to summary judgment without making a fact-based showing that the state officials' actions interfere and conflict with federal intelligence operations and federal law. This is meritless. The preemptive effect of federal law is a legal question, *see, e.g.*, *Inland Empire*, 77 F.3d at 299, and the conflict between the federal laws and the state disclosure orders, as well as the orders' interference with national security activities, is manifest.

To avoid any doubt on the question, however, the Director of the NSA, General Keith B. Alexander, has evaluated the state officials' actions and has concluded that permitting their investigations to proceed would interfere with the national security operations of the Federal Government and, indeed, would cause grave harm to national security. The Alexander Declaration explains that each of the "five of the state proceedings . . . seek, at a minimum, information regarding: (1) whether specific telecommunication carriers assisted the NSA with an alleged foreign intelligence program involving the disclosure of large quantities of records pertaining to customer communications; and (2) if such a program exists, the precise nature of the carriers' alleged involvement and details concerning the alleged NSA activities." Alexander Decl., ¶ 16.

But, as General Alexander explains, confirming or denying "allegations concerning intelligence activities, sources, methods, relationships, or targets" would harm national security in various ways. *Id.* ¶ 17. For example:

> If it is confirmed that the United States is conducting a particular intelligence activity, that it is gathering information from a particular source, or that it has gathered information by a particular method or on particular persons or matters, such intelligence-gathering activities would be compromised and foreign adversaries, such as al Qaeda and affiliated terrorist organizations, could use such information to avoid detection. Even confirming that a certain intelligence activity or relationship does *not* exist, particularly with respect to specific alleged programs or methods, would cause harm to the national security because alerting our adversaries to channels or groups of individuals that are not under surveillance could likewise help them avoid detection.

*Id.* (emphasis in original). Moreover, "[c]onfirming or denying the allegations regarding specific

telecommunication companies and specific activities would also replace speculation with certainty for hostile foreign adversaries who are balancing the risk that a particular channel of communication may not be secure against the need to communicate efficiently." *Id*. at ¶ 18.[10]

Put simply, the state officials seek to investigate and disclose to the public various matters that, in the judgment of the Nation's senior intelligence officers, can be neither confirmed nor denied if they exist. There can therefore be no doubt that "it is impossible . . . to comply with both state and federal requirements" regarding disclosure of information and that "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in proscribing disclosure of information relating to alleged intelligence activities. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

## IV. THE DECISION IN *ADAMS* SUPPORTS THE UNITED STATES' MOTIONS.

In late January 2007, after much of the briefing in the State Cases had been completed, the state officials in Maine sought to initiate contempt proceedings against Verizon as a result of Verizon's decision to forgo responding to the state officials' order during the pendency of *United States v. Adams*. The United States sought and obtained a preliminary injunction against those proceedings, and Judge Woodcock's opinion supports the United States' positions in all of the State Cases. On several key issues, Judge Woodcock's opinion is pertinent here.

First, Judge Woodcock rejected the Maine officials' argument that the United States did not have a cause of action and that the Court lacked jurisdiction. *See United States v. Adams*, 473 F. Supp. 2d 108, 115-16 (D. Me. 2007) (recognizing the sovereign character of the United States' claims). Second, Judge Woodcock rejected Maine's argument that he should abstain under *Younger*, holding that "the circumstances of this case—the United States suing the state of

---

[10] The Director of National Intelligence has similarly concluded that is would cause grave harm to confirm or deny, *inter alia*, whether specific telecommunication carriers assisted the NSA with an alleged foreign intelligence program involving the disclosure of large quantities of records pertaining to customer communications; and if such a program exists, the precise nature of the carriers' alleged involvement and details concerning the alleged NSA activities. *See* Former-DNI Negroponte's Declarations in *Hepting* and DNI McConnell's Declarations in the *Verizon* cases.

No. M:06-cv-01791-VRW—SUPPLEMENTAL BRIEF OF THE UNITED STATES
REGARDING THE STATE CASES                                                                                        12

Maine based on concerns over national security—make abstention inappropriate." *Id*. at 116-17. Finally, while not resolving the merits of the dispute, the Court noted that it is "painfully obvious that, in making assessments about the impact of [a state order] on national security, the [state agency] is acting beyond its depth." *Id.* at 118. The reason, as Judge Woodcock recognized, is that state regulators may have expertise to "regulate public utilities," but are "not charged with evaluating threats to national security, investigating the NSA, or holding businesses in contempt when their silence was mandated by the federal government." *Id.*

**<u>CONCLUSION</u>**

In light of the constitutional commitment to the Federal Government of exclusive authority concerning national security, foreign relations, and military functions, as well as the comprehensive treatment of national security and intelligence matters under federal law, it would be wholly inappropriate to permit state governmental actors—who lack any authority over or expertise in intelligence matters—to interfere with national security or intelligence policy by exercising their own independent judgment to order the disclosure of information relating to alleged intelligence activities. For these reasons, and those set forth in the United States' filings in the respective State Cases, the Court should declare invalid the various states' efforts to interfere with the United States' authority over alleged foreign intelligence activities.

DATED: April 26, 2007          Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

  */s/ Alexander K. Haas*
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS (SBN 220932)
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone:   (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
Email: alexander.haas@usdoj.gov