WILMER CUTLER PICKERING HALE
AND DORR LLP
John A. Rogovin      (pro hac vice)
Randolph D. Moss     (pro hac vice)
Samir C. Jain        # 181572
Brian M. Boynton     # 222193
Benjamin C. Mizer    (pro hac vice)
1875 Pennsylvania Ave, NW
Washington, DC  20006
Tel.:  202-663-6000
Fax:   202-663-6363
Email:  john.rogovin@wilmerhale.com

Randal S. Milch       (pro hac vice)
Verizon Communications Inc.
One Verizon Way
VC43E043
Basking Ridge, NJ  07920
Tel.:  908-559-1752
Fax:  908-696-2136

MUNGER, TOLLES & OLSON LLP
Henry Weissmann      # 132418
Susan R. Szabo       # 155315
Aimee A. Feinberg    # 223309
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560
Tel.:  213-683-9100
Fax:  213-683-5150
Email:  Henry.Weissmann@mto.com

Attorneys for Verizon Communications Inc. and
Verizon Maryland Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: | MDL NO. 06-1791 VRW |
| NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | **MEMORANDUM IN SUPPORT OF VERIZON'S MOTION TO DISMISS THE *CHULSKY*, *RIORDAN*, AND *BREADY* COMPLAINTS** |
| This Document Relates To: | |
| 06-3574, 06-6313, and 06-6570 | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………ii

ISSUES TO BE DECIDED ................................................................................................ v

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.    PROCEDURAL POSTURE ..................................................................... 2

II.   THE *CHULSKY* COMPLAINT ............................................................... 2

III.  THE *RIORDAN* COMPLAINT ............................................................... 3

IV.  THE *BREADY* COMPLAINT ................................................................. 4

ARGUMENT ................................................................................................................... 5

I.    ALL OF PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED ................... 5

    A.    The Constitution Preempts the Field of Matters Pertaining to National Security and Military Intelligence Gathering................................. 5

    B.    Plaintiffs' State Law Claims Are Preempted Because They Seek to Regulate Directly the Activities of the Federal Government ....................... 9

    C.    Federal Law Expressly Preempts the State Law Records Claims.............. 12

II.   THE *CHULSKY* PLAINTIFFS' CLAIMS SOUNDING IN FRAUD MUST BE DISMISSED FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY ................ 13

III.  THE *CHULSKY* PLAINTIFFS' CONTRACT CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO IDENTIFY THE CONTRACTS AT ISSUE ........................... 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*AT&T Corp. v. Overdrive, Inc.*, No. 1:05CV1904, 2007 U.S. Dist. LEXIS 1921, 2007 WL 120654 (N.D. Ohio Jan. 10, 2007), *recon. denied by AT&T Corp. v Overdrive, Inc.*, 2007 U.S. Dist. LEXIS 6600, 2007 WL 315709 (N.D. Cal. Jan 30, 2007) .................................... 15

*Aaron v. Aguirre*, No. 06-CV-1451, 2007 U.S. Dist. LEXIS 16667, 2007 WL 959083 (S.D. Cal. Mar. 8, 2007) ........................................................................................................... 15

*Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996) ...................................... 9, 11

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) .............................................. 8

*Cinalli v. Kane*, 191 F. Supp. 2d 601 (E.D. Pa. 2002) ................................................. 14

*City of Los Angeles v. United States*, 355 F. Supp. 461 (C.D. Cal. 1972) ............................ 10, 12

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) ...................................... 6, 7, 8, 9

*EPA v. California*, 426 U.S. 200 (1976) .......................................................................... 11

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ....................................... 13

*F.D.I.C. v. Bathgate*, 27 F.3d 850 (3d Cir. 1994) ........................................................ 13

*Hancock v. Train*, 426 U.S. 167 (1976) .................................................................. 10, 11

*Howell v. American Airlines, Inc.*, No. 05-CV-3628, 2006 U.S. Dist. LEXIS 89229,   2006 WL 3681144 (E.D.N.Y. Dec. 11, 2006) .................................................................... 15

*In re World War II Era Japanese Forced Labor Litigation*, 164 F. Supp. 2d 1160 (N.D. Cal. 2001), *aff'd sub nom. Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) .................... 1, 6

*Johnson v. Maryland*, 254 U.S. 51 (1920) ..................................................................... 10

*Kennedy Funding, Inc. v. Lion's Gate Development, LLC*, No. 05-4741, 2006 U.S. Dist. LEXIS 48997,  2006 WL 1044807 (D.N.J. July 17, 2006) ...................................... 14

*Kentucky v. Ruckelshaus*, 497 F.2d 1172 (6th Cir. 1974) ............................................. 11

*Mayo v. United States*, 319 U.S. 441 (1943) ............................................................ 9, 10

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) ................................................. 9

*Murphy v. Neuberger*, No. 94 Civ. 7421, 1996 U.S. Dist. LEXIS 11164, 1996 WL 442797 (S.D.N.Y. Aug. 6, 1996) ............................................................................... 15

*Muskovich v. Crowell*, No. 3-95-CV-80007, 1995 U.S. Dist. LEXIS 5899, 1995 WL 905403 (S.D. Iowa Mar. 21, 1995) .....................................................................12-13

*Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 2000) ........ 14

ii

*New SD, Inc. v. Rockwell International Corp.*, 79 F.3d 953 (9th Cir. 1996)................................ 13

*North Dakota v. United States*, 495 U.S. 423 (1990)........................................................... 10, 12

*Ohio Casualty Insurance Co. v. Bank One*, No. 95-C-6613, 1996 U.S. Dist. LEXIS 12933, 1996 WL 507292 (N.D. Ill. Sept. 5, 1996) ................................................................... 15

*Perpich v. Department of Defense*, 496 U.S. 334 (1990) ........................................................ 6

*Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116 (C.D. Cal. 2006) ......................... 12

*Rasidescu v. Midland Credit Management, Inc.*, 435 F. Supp. 2d 1090 (S.D. Cal. 2006) .......... 15

*Sale v. Haitian Centers Council*, 509 U.S. 155 (1993) ........................................................... 6

*Schreiber Distributing Co. v. Serv-Well Furniture, Inc.*, 806 F.2d 1393 (9thCir. 1986)............. 13

*Snepp v. United States*, 444 U.S. 507 (1980) ...................................................................... 7

*Stehney v. Perry*, 101 F.3d 925 (3d Cir. 1996) .................................................................. 9

*Tarble's Case*, 80 U.S. (13 Wall.) 397 (1871) ............................................................... 6, 8-9

*Totten v. United States*, 92 U.S. 105 (1875)..................................................................... 7

*United States v. City of Oakland*, No. C-89-3305 JPV, slip opinion (N.D. Cal. Aug. 23, 1990) ............................................................................................................... 9

*Union Oil Co. v. Minier*, 437 F.2d 408 (9th Cir. 1970) ...................................................... 11

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972)................................................. 7

*United States v. New Mexico*, 455 U.S. 720 (1982)......................................................... 10, 11-12

*United States v. Pappas*, 94 F.3d 795 (2d Cir. 1996)........................................................ 13

*Voicenet Communications v. Corbett*, Civ. A. No. 04-1318, 2006 U.S. Dist. LEXIS 61916, 2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ....................................................... 12

*Zebersky v. Bed Bath & Beyond, Inc.*, No. 06-CV-1735, 2006 U.S. Dist. LEXIS 86451, 2006 WL 3454993 (D.N.J. Nov. 28, 2006)......................................................... 14

*Zschernig v. Miller*, 389 U.S. 429 (1968) .............................................................. 6, 9, 10

## U.S. CONSTITUTION AND STATUTES

U.S. Constitution, art. I, § 8, cls. 1,11,12,13,15 .............................................................. 6

U.S. Constitution, art. I, § 10 ......................................................................................... 6

U.S. Constitution, art. II, § 1, cl. 1 ................................................................................. 6

U.S. Constitution, art II, § 2, cl. 1 .................................................................................. 6

18 U.S.C. § 2703(c)(3) ................................................................................................. 12

18 U.S.C. § 2708 ............................................................................................... 12

42 U.S.C. § 1983 ............................................................................................... 12

## OTHER AUTHORITIES

The Federalist No. 23 (Alexander Hamilton) (E.H. Scott ed.1898) ................................................. 6

The Federalist No. 80 (Alexander Hamilton) (E.H. Scott ed.1898) ................................................. 6

## RULES AND REGULATIONS

Federal Rules of Civil Procedure 8 ............................................................................... 15

Federal Rules of Civil Procedure 9(b) ..................................................................... iv, 13, 14

Federal Rules of Civil Procedure 12(b)(6) ..................................................................... v, 1

Federal Rules of Civil Procedure 81(c) ......................................................................... 13

Exec. Order No. 12,333, 46 Fed. Reg. 59,941 (Dec. 4, 1981) ....................................... 7

## MISCELLANEOUS

Jeffrey M. Hirsch, *Can Congress Use Its War Powers To Protect Military Employees from State Sovereign Immunity?* 34 Seton Hall L. Rev. 999 (2004) ................................... 7

# ISSUES TO BE DECIDED

1.    Are the *Chulsky*, *Riordan*, and *Bready* Plaintiffs' state law claims, which seek to regulate the federal government's ability to conduct foreign intelligence surveillance in defense of the nation, preempted by federal law?

2.    Are the *Chulsky* Plaintiffs' vague allegations that Verizon made fraudulent misrepresentations in unidentified statements sufficient to state a claim under the heightened pleading standard of Federal Rule of Civil Procedure 9(b)?

3.    Have the *Chulsky* Plaintiffs adequately stated claims arising from alleged Verizon contracts and policies, where Plaintiffs have failed to identify the contracts and policies at issue?

**INTRODUCTION**

Like the complaints consolidated in the Master Consolidated Complaint against the Verizon and MCI defendants, the complaints in the *Chulsky*, *Riordan*, and *Bready* cases allege that following the terrorist attacks of September 11, 2001, Verizon began cooperating with an arm of the Department of Defense, the National Security Agency ("NSA"), in its efforts to conduct foreign intelligence surveillance in order to thwart further terrorist strikes on our nation. Unlike most of the cases against Verizon, however, the complaints at issue in this motion were filed in *state* court and allege a host of claims solely under *state* law, seeking to employ state law to regulate an alleged federal program to protect our nation against foreign attack. Plaintiffs' attempt to regulate the federal government's alleged national defense and foreign intelligence activities under the laws of California, New Jersey, and Maryland is wholly antithetical to the federal structure embodied in the Constitution and must be rejected.[1]

Two separate doctrines leave state law with no room to operate in this uniquely federal context: First, the Constitution reserves the field of national security and military intelligence gathering exclusively to the federal government. Second, the Supremacy Clause bars state laws from regulating the federal government and federal programs. Because the Constitution wholly preempts the application of state law in these exclusively federal zones, it is unnecessary to assess whether the state law claims that Plaintiffs allege conflict with any federal law or policy. Rather, the states are categorically without power to act. As this Court has recognized in a closely related context, "'all state action, whether or not consistent with current foreign policy, that distorts the allocation of responsibility to the national government for the conduct of American diplomacy is void as an unconstitutional infringement on an exclusively federal sphere of responsibility.'" *In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160, 1165 (N.D. Cal. 2001), *aff'd sub nom. Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) (citation omitted).

---

[1] Nothing in this motion should be construed as an admission or denial regarding the existence of the programs alleged in the Complaints or that defendants participated in any such alleged activities.

The *Chulsky* Plaintiffs' state law claims for breach of contract and various forms of misrepresentation also must be rejected on independent grounds. To the extent the claims rest on allegations of fraud, they must be dismissed under Federal Rule of Civil Procedure 9(b) because Plaintiffs have failed to plead the circumstances of the alleged fraud with particularity. Similarly, Plaintiffs' claims based on alleged contractual or other undertakings by Verizon must be dismissed under Rule 8 in light of Plaintiffs' failure even to identify the contracts and statements at issue.

## BACKGROUND

### I. PROCEDURAL POSTURE

The three cases at issue in this motion—*Chulsky*, *Riordan*, and *Bready*—were initially filed in state court and then removed to federal court by Verizon. Plaintiffs in each case filed a motion to remand the cases to state court, but the cases were consolidated in this proceeding before those motions were heard and, in the case of *Chulsky* and *Bready*, fully briefed. On November 22, 2006, this Court set a hearing for motions to remand in *Riordan* and *Campbell v. AT&T Communications of California*, a case against AT&T that had also been removed and consolidated in the MDL. In the same Order, the Court required the Plaintiffs to file Master Consolidated Complaints. At the request of the Plaintiffs in the removed cases, *see* 11-17-06 Hr'g Tr. at 83, 11-7-06 Joint Case Management Statement at 17, 27 n.18, the Master Consolidated Complaint filed against the Verizon and MCI defendants did not include the *Chulsky*, *Riordan*, and *Bready* cases.

On January 18, 2007, after the Master Consolidated Complaint was filed, the Court issued an order denying the motions to remand in *Riordan* and *Campbell*. The Court concluded, *inter alia*, that the impact of the state-secrets privilege was a substantial, disputed issue of federal law sufficient to give rise to federal jurisdiction in the cases. Order (Dkt. # 130) at 12-14. Notwithstanding this decision, the Master Consolidated Complaint has not been amended to include the *Chulsky*, *Riordan*, and *Bready* cases. As a result, this motion addresses the original complaints filed in these actions.

### II. THE *CHULSKY* COMPLAINT

The *Chulsky* complaint alleges that "[f]ollowing the events of September 11, 2001, President Bush indic[a]ted his desire to create an 'early warning system' that would detect intelligence from electronic communications within the United States to help warn appropriate officials of potential

terrorist activities." Am. Compl. ¶ 18. It contends that "President Bush issued a classified executive order authorizing the NSA to intercept electronic communications" and that "the NSA accomplishes these surveillance activities through the installation, maintenance and operation of various electronic routing and trapping equipment placed on the premises or attached to the property, of the Defendants to gain access to Defendants' stored databases of customer records and live electronic communication pathways." *Id.* ¶¶ 19, 21. Plaintiffs allege that the NSA identifies targets "through a software data mining process that NSA runs against vast databases of Defendants' stored electronic records of their customers' domestic and international telephone and Internet communications." *Id.* ¶ 22.

Plaintiffs further contend that Verizon assisted the NSA with the installation of the equipment needed "to gain direct access to electronic communications" and that the company provided its "customer records directly to NSA or permit[s] the NSA to access the records maintained" by it. *Id.* ¶ 23. Plaintiffs assert that the equipment used by the Government in connection with its classified program "could not have been installed, operated and/or maintained by the NSA without the authorization of Defendants." *Id.* ¶ 21.

From these factual allegations, the *Chulsky* Plaintiffs assert claims for: (1) violation of the New Jersey Wiretap Act; (2) violations of the New Jersey Constitution (claiming violations of their rights to property, to be secure from unreasonable searches, and to privacy); (3) breach of contract; (4) malicious misrepresentation; (5) invasion of privacy; (6) violation of the New Jersey Consumer Fraud Act; (7) violation of the Truth-in-Consumer Contract, Warranty and Notice Act; (8) violation of statutes prohibiting unfair business practices and fraudulent use or distribution of personal information; and (9) violation of New Jersey's civil RICO provision. *Id.* ¶¶ 65-132. Plaintiffs seek (among other things) statutory, compensatory, and punitive damages. *Id.* at 31-32.

## III. THE *RIORDAN* COMPLAINT

Similarly, the *Riordan* complaint alleges that "[b]eginning sometime after September 11, 2001, Verizon began providing the NSA on an ongoing basis with residential customer telephone calling records and access to other information about Verizon's customers and subscribers." Compl. ¶ 14. The complaint further alleges that the NSA "has used and continues to use this sensitive

information to create a massive database to search for patterns of social interaction that might warrant further investigation." *Id.* Plaintiffs allege that Verizon provided the telephone records to the NSA "on a voluntary basis . . . [without] its customers' permission." *Id.* ¶ 18. The complaint further alleges that the information was provided notwithstanding a Verizon "privacy policy that prohibits the disclosure of private call information . . . to outside parties without legal process." *Id.* ¶ 19.

The *Riordan* Plaintiffs assert two claims based on these factual allegations: (1) for violation of the right to privacy under the California Constitution, and (2) for breach of a California Public Utilities Code section addressing when a telephone company may "make available" a subscriber's calling information. *Id.* ¶¶ 24-29, 30-39. Plaintiffs seek declaratory relief as well as to enjoin Verizon "from providing any customer calling records to the NSA or to any other person unless the customer to whom those records pertain has provided written consent for their disclosure or unless the records are disclosed pursuant to legal process." *Id.* at 10.

## IV.   THE *BREADY* COMPLAINT

Like the *Chulsky* complaint, the *Bready* complaint alleges that "following the September 11th, 2001 attacks, the United States Government requested that all major telephone and internet service providers, including [Verizon], participate in a program to monitor and or intercept the telephone and or internet communications, and or records of those communications, of all subscribers in order to search for terrorist activity through 'data mining,' a process used to analyze data for patterns or connections among disparate records." Compl. ¶ 13. Plaintiffs further allege that Verizon "provided the requested assistance" by giving "the United States Government . . . direct access to all or a substantial number of the telephone and internet communications, and the records thereof, through its domestic telecommunications facilities, including direct access to communication infrastructure, communication records, subscriber identity information, and other information." *Id.* ¶¶ 14, 16. Plaintiffs contend that Verizon provided this assistance "without notifying subscribers that it was participating in the 'data mining' program, and did so "without authorization, either from Defendant's subscribers, the courts of the State of Maryland, or any act of the legislature of the State of Maryland." *Id.* ¶¶ 17, 23.

4

Based on these factual allegations, Plaintiffs assert six different statutory claims under Maryland law on behalf of a purported class of Maryland Verizon subscribers. *Id.* ¶¶ 26, 35-79. The claims are for alleged violations of Maryland statutes generally governing (1) intercepts of wire, oral, or electronic communications; (2) disclosures of the contents of unlawfully intercepted communications; (3) divulging the contents of communications while in transmission; (4) divulging the contents of stored communications, (5) disclosing subscriber records to "investigative or law enforcement officer[s]"; and (6) use of "pen registers" and "trap and trace" devices. *Id.* ¶¶ 35-79. The *Bready* Plaintiffs seek, among other things, recovery of statutory damages equal to $1,000 per violation per class member and $100 per day of violation for each class member. *Id.* at 16-17 (Prayer for Relief).

## ARGUMENT

For the reasons explained in the Memorandum of the United States in Support of the Military and State Secrets Privilege and Motion To Dismiss or for Summary Judgment (Dkt. # 254), all of the claims raised in the *Chulsky*, *Riordan*, and *Bready* complaints must be dismissed in light of the government's invocation of the state-secrets privilege. As explained below, moreover, the claims are also subject to dismissal on a number of other independent grounds.

## I. ALL OF PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED

All of Plaintiffs' claims seek to regulate the alleged activity of the military and its alleged agents in gathering intelligence in a time of active hostilities to protect the nation from terrorist attack. The Constitution simply does not permit such claims to sound in state law.

### A. The Constitution Preempts the Field of Matters Pertaining to National Security and Military Intelligence Gathering

The object of Plaintiffs' state law claims is to regulate directly the manner in which the NSA—a component of the Department of Defense and one of the military's intelligence agencies[2]—allegedly gathers intelligence for national security purposes. The text and structure of the Constitution leave no room for state law to be applied to such activities. The federal government

---

[2] *See* Public Decl. of Lt. Gen. Keith B. Alexander, Director, NSA, ¶ 1, attached as Ex. 2 to Mem. of United States in Support of the Military and State Secrets Privilege and Motion To Dismiss or for Summary Judgment, MDL Dkt. #254.

and its alleged agents are not required to consider the applicability of a host of laws in each of the 50 states before undertaking a federal military intelligence activity. Rather, the Constitution vests "plenary and *exclusive*" control over national security and foreign policy in the federal government. *Tarble's Case*, 80 U.S. (13 Wall.) 397, 408 (1871) (emphasis added).

Two well-settled principles establish that the Constitution bars state law from regulating the federal government's intelligence-collection activities, including any actions the federal government may undertake to collect such intelligence from private parties. *First*, "several constitutional provisions commit matters of foreign policy and military affairs to the *exclusive* control of the National Government," *Perpich v. Dep't of Def.*, 496 U.S. 334, 353 (1990) (emphasis added); *In re World War II*, 164 F. Supp. 2d at 1168-70.[3] The Founders recognized that among the "principal purposes to be answered by [the] union" are "[t]he common defence of the members." The Federalist No. 23, at 126 (Alexander Hamilton) (E.H. Scott ed. 1898). They accordingly determined not to leave "the peace of the *whole* . . . at the disposal of a *part*." The Federalist No. 80, at 435 (Alexander Hamilton) (E.H. Scott ed. 1898).

Given the primacy of the federal government in foreign affairs, the Supreme Court has explained that the states are powerless to act in this field, regardless of whether their actions conflict with federal policy. *Zschernig v. Miller*, 389 U.S. 429 (1968). This limitation follows from "both the text and structure of the Constitution," *In re World War II*, 164 F. Supp. 2d at 1168, which "entrusts [matters of foreign affairs] *solely* to the Federal Government," *Zschernig*, 389 U.S. at 436 (emphasis added), and it thus applies "'even in [the] absence of a treaty' or federal statute,'" *Deutsch v. Turner Corp.*, 324 F.3d 692, 709 (9th Cir. 2003) (quoting *Zschernig,* 389 U.S. at 441); *see also In re World War II*, 164 F. Supp. 2d at 1168-70 (state action preempted "'whether or not consistent with foreign policy'" (citation omitted)); Jeffrey M. Hirsch, *Can Congress Use Its War Powers To*

---

[3] The Constitution grants Congress the power, *inter alia*, to "provide for the common Defence," U.S. Const. art. I, § 8, cl. 1; to "declare War," *id*. cl. 11; to "raise and support Armies," *id*. cl. 12; to "provide and maintain a Navy," *id*. cl. 13; and to "provide for calling forth the Militia to . . . suppress Insurrections and repel Invasions," *id*. cl. 15. The President "shall be Commander in Chief," *id*. art. II, § 2, cl. 1, and Chief Executive, *id*. art. II, § 1, cl. 1, with the "unique responsibility" for the conduct of "foreign and military affairs," *Sale v. Haitian Ctrs. Council*, 509 U.S. 155, 188 (1993). Meanwhile, Article I expressly limits the role of the states in the realm of war. U.S. Const. art. I, § 10.

*Protect Military Employees from State Sovereign Immunity*? 34 Seton Hall L. Rev. 999, 1026-27 (2004) ("It appears beyond dispute that, in ratifying the Constitution, the states transferred whatever war powers they may have possessed to the federal government.").

The concentration of power in the federal government, to the exclusion of the states, is particularly clear in the context of military activities. As the Ninth Circuit noted in *Deutsch v. Turner Corp.*, the limits on state sovereignty apply most clearly in the "subset" of foreign affairs cases that concern "the power of the federal government to make and to resolve war." 324 F.3d at 711. The Court observed: "While neither the Constitution nor the courts have defined the precise scope of the foreign relations power that is denied to the states, *it is clear that matters concerning war are part of the inner core of this power*." *Id.* (emphasis added). As in *Zschernig*, moreover, the Ninth Circuit concluded that the absence of federal law prohibiting the state action was irrelevant. *Id.* at 712-13. All that mattered was that the state was acting in an area "exclusively" committed to the federal government. *Id.* at 713-14. On this basis alone, the court struck down the California statute at issue in *Deutsch*. *Id.* at 712-14.

*Second*, an indispensable component of the federal government's military power is its "compelling interest" in gathering and protecting "information important to our national security." *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam). "Gathering intelligence information" is "within the President's constitutional responsibility for the security of the Nation as the Chief Executive and as Commander in Chief of our Armed forces," *United States v. Marchetti*, 466 F.2d 1309, 1315 (4th Cir. 1972), and the President's authority extends to deploying agents, including private parties, to that end, *see Totten v. United States*, 92 U.S. 105, 106 (1875) (President "was undoubtedly authorized during the war, as commander-in-chief . . . to employ secret agents to enter the rebel lines and obtain information respecting the strength, resources, and movements of the enemy"); *see also* Exec. Order No. 12,333, at ¶ 2.7, 46 Fed. Reg. 59,941, 59,951 (Dec. 4, 1981). It follows that the NSA's purported activities as an agency of the Defense Department in gathering foreign intelligence in a time of armed conflict are "[m]atters related to war" and the military that are "for the federal government alone to address." *Deutsch*, 324 F.3d at 712. As such, state law may not place limits on how and whether the NSA may collect intelligence information, including

7

the ways in which the NSA may choose to use private parties.

Plaintiffs' state law claims are preempted without regard to the existence of any conflict with a federal statute. This is not a conflict preemption case; it is a *constitutional field preemption* case.[4] Because the Constitution preempts the application of state law in the entire field of the collection of intelligence for national defense, state law simply may not operate. Conflict is inherent in the state laws' very effort to reach into the sphere of national security. *See Deutsch*, 324 F.3d at 711. Moreover, the consistency of the alleged NSA programs with federal statutes is irrelevant to the *incapacity* of the states to operate in a realm that the Constitution allocates *exclusively* to the federal government. The Supreme Court made that much clear long ago in *Tarble's Case*, where a state court judge attempted to issue a writ of habeas corpus to inquire into the military's custody over an underage soldier whose enlistment, the state court determined, had "not been made in conformity with the laws of the United States." 80 U.S. at 402. The state court lacked the power to issue the writ, the Supreme Court held, because validity of the federal government's authority was "to be determined by the Constitution and laws of the United States," not by the "officers or tribunals" of the state. *Id*. at 409-11.

Within the field of exclusive federal power, state laws cannot be applied, even if those laws are generally applicable and perfectly valid as applied in other situations. What matters is not the face of the state law but the effect of its operation. Indeed, *Zschernig* itself did not turn on "the words of a statute on its face," but on "the manner of its application." 389 U.S. at 433. And the outcome in *Tarble's Case*, too, depended on the application of a general state law authority—the jurisdiction to issue a habeas writ—to the United States military. 80 U.S. at 402.

For these reasons, Plaintiffs may not apply state law to the military intelligence activities

---

[4]      In considering motions to remand in this MDL, this Court held that federal common law did not completely preempt California state law privacy claims because the privacy laws at issue created "an affirmative defense" for reliance on "a legal federal process," and thus there existed no "significant conflict." *In re NSA Telecomms. Records Litig*., MDL No. 06-1791, 2007 WL 163106, at *5 (N.D. Cal. Jan. 18, 2007) ("*Riordan*"). That holding related to complete preemption (which relates to Article III jurisdiction) rather than the analytically distinct category of ordinary preemption (which relates to legislative jurisdiction), as well as to the strictures of federal common law, which requires a finding of substantial conflict. *See Boyle v. United Tech. Corp*., 487 U.S. 500, 504-08 (1988). In the context of *field* preemption, by contrast, *Zschernig* and *Deutsch* make clear that no such conflict is required.

Mem. in Support of Verizon's Motion To Dismiss *Chulsky, Riordan*, and *Bready*          MDL No. 06:1791-VRW

alleged, including the alleged involvement of defendants in those activities. "States and localities may not enact legislation that impedes or hinders the national defense, regardless of whether the defense activities are carried out directly by agencies of the federal government, or by private contractors." *United States v. City of Oakland*, No. C-89-3305 JPV, slip op. at 7 (N.D. Cal. Aug. 23, 1990) (attached as Ex. 1). *Zschernig* involved the application of a state statute to the disposition of a private estate, 389 U.S. at 429, and *Deutsch* involved private claims against Japanese and German corporations for allegedly forcing the plaintiffs to works as slave laborers during World War II, 324 F.3d at 692. Although both cases were brought against private defendants, they implicated questions of exclusive federal authority, and thus the plaintiffs' state law claims could not stand. The same is true here with even greater force: Plaintiffs may not use state law to manage alleged intelligence-gathering functions of the Department of Defense or punish an alleged agent to those functions. *See Stehney v. Perry*, 101 F.3d 925, 939 (3rd Cir. 1996) ("Were the courts to give effect to the New Jersey . . . law in this context, it would . . . prevent any New Jersey employer from serving as an NSA contractor, an impermissible state interference with exclusive federal responsibility in matters of national security.").

### B. Plaintiffs' State Law Claims Are Preempted Because They Seek to Regulate Directly the Alleged Activities of the Federal Government

Separately, the Supremacy Clause commands that "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943); *see also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819). This "intergovernmental immunity of the Supremacy Clause" means that "states may not directly regulate the Federal Government's operations or property." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). Yet that is what the exclusively state law claims in these cases purport to do: to regulate the military's alleged intelligence-collection operations in a time of active conflict. The Supremacy Clause plainly does not allow state laws—even laws that do not appear on their face to target federal agents or authority—to regulate the conduct of alleged federal programs.

The intergovernmental immunity doctrine holds that a state law is "invalid" where it "regulates the United States directly or discriminates against the Federal Government or those with

whom it deals," *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion), or where it "directly obstruct[s] the activities of the Federal Government," *id.* at 437-38. This rule carries particular weight "where, as here, the rights and privileges of the Federal Government at stake"—those pertaining to war powers and the national defense—"find their origin in the Constitution." *Hancock v. Train*, 426 U.S. 167, 178-79 (1976). The doctrine is borne of the constitutional need to "forestall[] 'clashing sovereignty' by preventing the States from laying demands directly on the Federal Government." *United States v. New Mexico*, 455 U.S. 720, 735-36 (1982). This premise—that the power of the states does not extend to regulate the federal sovereign or federal programs—means that the consistency of the alleged federal program with federal rules is beside the point for purposes of immunity from *state* law. When it comes to state regulation, "the federal function must be left free." *Mayo*, 319 U.S. at 447. That is not to say that there can be no remedy for any unlawful conduct in this realm. But if there is to be a remedy, it must be a federal one. *See Zschernig*, 389 U.S. at 441.

The intergovernmental immunity doctrine prevents the states from applying even generally applicable rules to a federal program. In *Johnson v. Maryland*, 254 U.S. 51 (1920), for example, Maryland prosecuted a postal employee for driving a postal truck in the state without a state driver's license. Justice Holmes, in overturning the conviction, explained that "even the most unquestionable and most universally applicable state laws" may not "interrupt the acts of the general government itself." *Id.* at 55-56. In *Mayo*, the Supreme Court invalidated a Florida requirement for labeling bags of fertilizer as applied to the federal government, observing that "the federal function must be left free." 319 U.S. at 447. And in *City of Los Angeles v. United States*, 355 F. Supp. 461, 464 (C.D. Cal. 1972), the district court held that the city could not extract generally applicable municipal pilotage fees from civilian-manned U.S. Naval vessels, explaining that the city could not "regulate and control the manner in which defendant shall carry on War or provide for the National Defense." These cases illustrate that federal government programs must remain free of regulation by state laws, if the restriction is anything more than "incidental[]," *North Dakota*, 495 U.S. at 441, unless the government has consented to the regulation. *See*, *e.g.*, *Hancock*, 426 U.S. at 179 (licensing requirements); *EPA v. California*, 426 U.S. 200, 201-02 (1976) (same); *Blackburn*, 100 F.3d at 1435

10

(California Resort Act inapplicable in Yosemite National Park).

Plaintiffs' own allegations make clear that they are attempting to use state law to regulate the alleged activities of the NSA. From the outset of their complaint, the Chulsky Plaintiffs, for example, announce that their "lawsuit challenges Defendants' illegal actions in permitting the [NSA] and affiliated governmental agencies to . . . conduct surveillance on Defendants' customers' . . . telephone calls and internet communications . . . ." *Chulsky* Am. Compl. ¶ 1. More generally, each of the complaints at issue focuses on the propriety of the *government's* alleged actions. *E.g.*, *Bready* Compl. ¶ 13 ("[T]he United States Government requested that . . . Defendant . . . participate in a program to monitor and or intercept the telephone and or internet communications, and or records of those communications, of all their subscribers in order to search for terrorist activity . . . ."); *Chulsky* Am. Compl. ¶ 21 ("[T]he NSA accomplishes these surveillance activities through the installation . . . of . . . equipment placed on the premises . . . of the Defendants . . . ."); *Riordan* Compl. ¶ 14 ("Verizon began providing the NSA on an ongoing basis with residential customer telephone calling records and access to other information about Verizon's customers and subscribers."). Plaintiffs' requested relief would (if there were any merit to their claims) regulate the NSA by enjoining alleged intelligence programs.

To the extent that Plaintiffs' dispute is with Verizon, it is only over Verizon's alleged *assistance* to the NSA. Plaintiffs take aim at the alleged cooperation of a purported agent (Verizon) in order to obstruct the alleged activities of the purported *principal* (the NSA).[5] It is well settled that "[t]he sovereign can act only through its agents," *Kentucky v. Ruckelshaus*, 497 F.2d 1172, 1175 (6th Cir. 1974), and that state law "must give way" when it interferes with the federal government's authority, regardless of "whether the United States exercises its rights directly or through the use of private persons," *Union Oil Co. v. Minier*, 437 F.2d 408, 411 (9th Cir. 1970). This circumstance is therefore nothing like cases in which the Supreme Court has held that a generally applicable state law may lay an incidental burden on the federal government when it is directed principally at a

---

[5] This Court recognized that the complaint in *Riordan* alleged that Verizon "voluntarily acted as [an] agent[] for the NSA's purposes" and "in furtherance of NSA's interests." *Riordan*, 2007 WL 163106, at *9. Based on these allegations, the Court found jurisdiction under the federal officer removal statute. *Id*.

private entity *qua* private entity, even though the entity does business with the United States. *See New Mexico*, 455 U.S. at 740-41 (allowing imposition of state use tax on privately owned corporations that contracted with federal government). In such cases, the incidental state burden is permissible because it still leaves room for the private party to assist or contract with the federal government. *See North Dakota*, 495 U.S. at 441 (upholding state liquor regulations that did "not restrict the parties from whom the Government [could] purchase liquor"). Here, by contrast, Plaintiffs seek to marshal state law to thwart an alleged relationship between the federal government and its purported agent and thereby to regulate alleged federal programs. *See id.* at 437-38 ("[T]he States may not directly obstruct the activities of the Federal Government."); *City of Los Angeles*, 355 F. Supp. at 465 ("A state statute becomes unconstitutional when applied so as to impede or condition the operation of federal programs and policies."). The Supremacy Clause does not permit Plaintiffs to use state law to restrain the federal government's alleged programs.

### C. Federal Law Expressly Preempts the State Law Records Claims

Plaintiffs' state law records claims are also preempted because if Verizon, as alleged, disclosed any call records, those disclosures would have been authorized by federal law. As explained more in Verizon's Motion to Dismiss the Master Consolidated Complaint, a grave emergency existed in the wake of September 11 that threatened citizens' lives as well as the nation's critical infrastructure, including Verizon's own property. Thus, the actions alleged by Plaintiffs would have been expressly authorized by the Stored Communications Act's emergency and property exceptions. *See* 18 U.S.C. § 2703(c)(3).[6]

---

[6]      Moreover, 18 U.S.C. § 2708 provides that "[t]he remedies and sanctions described in [the SCA] are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." Although this Court has previously concluded that this provision "does not completely preempt suits under state law," *Riordan*, 2007 WL 163106, at 3, Defendants respectfully submit that the provision's plain language reaches Plaintiffs' state law claims and that this provision provides yet another basis for dismissal of those claims. *See Voicenet Commc'ns v. Corbett*, Civ. A. No. 04-1318, 2006 U.S. Dist. LEXIS 61916, at *20, 2006 WL 2506318, at *7 (E.D. Pa. Aug. 30, 2006) (holding that § 2708 precludes a cause of action under 42 U.S.C. § 1983); *Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116, 1138 (C.D. Cal. 2006) ("The SCA thus displaces state law claims for conduct that is touched upon by the statute, such as in divulging stored electronic communications to third parties."); *Muskovich v. Crowell*, No. 3-95-CV-80007, 1995 U.S. Dist. LEXIS 5899, at *2, 1995 WL 905403, at *1 (S.D. Iowa Mar. 21, 1995) ("The clear import of section 2708 is that Congress intended for ECPA remedies to be exclusive and to preempt state law claims."). Defendants also submit that the federal common law requiring uniform rules on matters

## II. THE *CHULSKY* PLAINTIFFS' CLAIMS SOUNDING IN FRAUD MUST BE DISMISSED FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY

As explained above, all of Plaintiffs' state laws claims are preempted and thus should be dismissed. The *Chulsky* Plaintiffs' fourth, sixth, and eighth claims should also be dismissed for failure to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).[7] Rule 9(b), which applies to removed actions, *see* Fed. R. Civ. P. 81(c), provides that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). To plead fraud with particularity, a plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotation marks omitted); *see also Schreiber Distrib. Co. v. Serv-Well Furniture, Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Where the false representation is alleged to have been set forth in a document, the plaintiff must attach the document or allege the specific content of the document. *Edwards*, 356 F.3d at 1066.

Plaintiffs' fourth, sixth, and eighth claims sound in fraud but fail to plead fraud with particularity. The fourth claim—for "malicious misrepresentation"—alleges that Verizon made "misrepresentations of material facts that were made knowingly, without belief in its truth, or in reckless or careless disregard of the truth." Am. Compl. ¶ 98. As a claim of common law fraud, it is subject to Rule 9(b). *See, e.g., F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994). But nowhere in this claim do Plaintiffs identify with any specificity the misrepresentations allegedly made. Rather, the claim just vaguely asserts that Verizon "acknowledged [its] duty under the law [to] protect the confidentiality of Plaintiffs' telecommunications service information." Am. Compl. ¶ 97.

The sixth claim—for violation of the New Jersey Consumer Fraud Act—asserts that Verizon has engaged in "deception, fraud, false promises, false pretenses and/or misrepresentations" and that it "knowingly and with intent concealed, suppressed or omitted material facts." *Id.* ¶¶ 105-106. Because this claim "sound[s] in fraud," it is subject to the heightened pleading requirements of Rule

---

pertaining to national security preempts Plaintiffs' state law claims. *See New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996); *United States v. Pappas*, 94 F.3d 795, 801 (2d Cir. 1996).

[7] Unlike the *Chulsky* complaint, the *Riordan* and *Bready* complaints do not assert claims for fraud.

9(b). *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 2000); *see also Cinalli v. Kane*, 191 F. Supp. 2d 601, 609 (E.D. Pa. 2002); *Zebersky v. Bed Bath & Beyond, Inc.*, No. 06-CV-1735, 2006 U.S. Dist. LEXIS 86451, at *13, 2006 WL 3454993, at *4 (D.N.J. Nov. 28, 2006). But the claim again does not identify in any way the statements by Verizon alleged to have been fraudulent. Instead, the claim references only undescribed "interactions with Plaintiffs." Am. Compl. ¶ 106.

Finally, the eighth claim—for "Deceptive Business Practices" and "Fraudulent Use and Distribution of Items Containing Personal Information of Another"—alleges:

> Defendants, through their promotional literature and/or written notices and/or other written material provided to the public and/or the Plaintiffs and New Jersey Class members represented that the personal, private and confidential records and information of the Plaintiffs and New Jersey Class members as set forth herein would be protected from disclosure to and use by the governmental authorities without appropriate consent and/or authorization and/or legal authority while at all relevant times the Defendants *knew such representations to be false*.

*Id.* ¶ 125 (emphasis added). This claim, which sounds in fraud, is subject to the requirements of Rule 9(b). *See Kennedy Funding, Inc. v. Lion's Gate Dev., LLC*, No. 05-4741, 2006 U.S. Dist. LEXIS 48997, at *7, 2006 WL 1044807, at *5 (D.N.J. July 17, 2006). Again, however, these allegations of fraud lack the specificity required by Rule 9. Plaintiffs notably fail to identify or describe in any detail whatsoever (let alone the detail required by Rule 9(b)) the alleged "promotional literature," "written notices," and "other written material" that supposedly contain false assertions.

For these reasons, the *Chulsky* Plaintiffs' fourth, sixth, and eighth claims should be dismissed.

## III. THE *CHULSKY* PLAINTIFFS' CONTRACT CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO IDENTIFY THE CONTRACTS AT ISSUE

In addition to being preempted, the *Chulsky* Plaintiffs' claims for breach of contract (Claim III) and for violation of the Truth-in-Consumer Contract, Warranty and Notice Act (Claim VII) also must be dismissed because Plaintiffs have failed even to identify the contracts they assert are the basis for their claims.[8] To state a claim for breach of contract, a Plaintiff must, at a minimum,

---

[8] The *Riordan* and *Bready* complaints do not assert contract claims.

identify the contract at issue.  *See, e.g., Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006) ("Plaintiff again fails to identify the alleged contract between the parties, and the facts and circumstances surrounding the alleged breach of contract.  Without such information, the claims in the first amended complaint fail to give fair notice to Defendants of the actions of which they are accused, in direct contravention to Rule 8 of the Federal Rules of Civil Procedure."); *Howell v. American Airlines, Inc.*, No. 05-CV-3628, 2006 U.S. Dist. LEXIS 89229, at *10, 2006 WL 3681144, at *4 (E.D.N.Y. Dec. 11, 2006) ("[T]he complaint in this case does not adequately allege a breach of contract.  Plaintiff's Verified Complaint does not even identify the agreement at issue, much less indicate which terms in that agreement were allegedly breached."); *Ohio Cas. Ins. Co. v. Bank One*, No. 95 C 6613, 1996 U.S. Dist. LEXIS 12933, at *28, 1996 WL 507292, at *8 (N.D. Ill. Sept. 5, 1996) (to same effect); *Murphy v. Neuberger*, No. 94 Civ. 7421, 1996 U.S. Dist. LEXIS 11164, at *45, 1996 WL 442797, at *14 (S.D.N.Y. Aug. 6, 1996) (to same effect).[9]

Plaintiffs' third and seventh claims turn on the contents of contracts they allege they entered into with Verizon, but Plaintiffs fail even to identify the contracts that are supposedly the basis of the claims.  In their third claim for breach of contract, Plaintiffs allege that Verizon "agreed to provide for a subscription fee, and Plaintiffs and class members agreed to purchase from [Verizon] various telecommunications and electronic communication services."  Am. Compl. ¶ 91.  But no specific customer agreement is attached, quoted, or even cited.  Plaintiffs further allege that Verizon "impliedly and expressly promised to protect the privacy and confidentiality of its customers' information, identity, records, subscription, use details, and communications, and, to abide by federal and state law."  *Id.* ¶ 92.  But again, no specific contract is even identified.

Similarly, in their seventh claim, Plaintiffs allege that Verizon "offered and/or entered into a

---

[9]  *See also Aaron v. Aguirre*, No. 06-CV-1451, 2007 U.S. Dist. LEXIS 16667, at *75, 2007 WL 959083, at *16 (S.D. Cal. Mar. 8, 2007) (citing plaintiff's failure to specify contracts as part of the reason for dismissing plaintiff's Interference With Contractual Relations claim for failure to plead sufficiently the elements of the claim); *AT&T Corp. v. Overdrive, Inc.*, No. 1:05CV1904, 2007 U. S. Dist. LEXIS 1921, at *39, 2007 WL 120654, at *14 (N.D. Ohio Jan. 10, 2007) (citing plaintiffs' failure to specify a contract as part of the reason for dismissing plaintiffs' tortious interference claim for insufficiency of allegations), *recon. denied by AT&T Corp. v. Overdrive, Inc.*, 2007 U.S. Dist. LEXIS 6600, 2007 WL 315709 (N.D. Cal. Jan. 30, 2007).

written consumer contract and/or gave or displayed a written consumer warranty, notice or sign which included a provision that violated a clearly established right of Plaintiff as established by State or Federal law." *Id.* ¶ 117; *see also id.* ¶ 118. Plaintiffs do not, however, identify any particular contract, warranty, notice, or sign that they contend underlies their conclusory assertions.

In these circumstances, the *Chulsky* Plaintiffs' contract claims should be dismissed for failure adequately to state a claim.

## CONCLUSION

For the reasons set forth above, this Court should grant Verizon's Motion To Dismiss the *Chulsky*, *Riordan*, and *Bready* Complaints.

Respectfully submitted,

Dated:     April 30, 2007

WILMER CUTLER PICKERING HALE AND DORR LLP

MUNGER, TOLLES & OLSON LLP

Randal S. Milch

By:  /s/ John A. Rogovin
_____
        John A. Rogovin

Attorneys for Verizon Communications Inc. and Verizon Maryland Inc.