1  PETER D. KEISLER
   Assistant Attorney General, Civil Division
2  CARL J. NICHOLS
   Deputy Assistant Attorney General
3  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
4  JOSEPH H. HUNT
   Director, Federal Programs Branch
5  ANTHONY J. COPPOLINO
   Special Litigation Counsel
6  RUPA BHATTACHARYYA
   Senior Trial Counsel
7  ANDREW H. TANNENBAUM
   Trial Attorney
8  Email: tony.coppolino@usdoj.gov
   U.S. Department of Justice
9  Civil Division, Federal Programs Branch
   20 Massachusetts Avenue, NW, Rm. 6102
10 Washington, D.C. 20001
   Phone: (202) 514-4782
11 Fax: (202) 616-8460
   *Attorneys for the United States of America and*
12 *the Federal Defendants in their Official Capacities*

13                **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15                  **SAN FRANCISCO DIVISION**

16  IN RE NATIONAL SECURITY AGENCY      )   **No. M:06-cv-01791-VRW**
17  TELECOMMUNICATIONS RECORDS          )
    LITIGATION                          )   **DEFENDANTS' NOTICE OF**
                                        )   **MOTION AND MOTION TO DISMISS**
18  _____ )   **OR, IN THE ALTERNATIVE, FOR**
                                        )   **SUMMARY JUDGMENT**
19  This Document Relates Only To:      )
20                                      )   Date:        August 30, 2007
    *Shubert v. Bush,*                  )   Courtroom:   6, 17th Floor
21  **(Case No. 07-00693)**             )   Time:        2 p.m.
    _____ )   Judge:       Hon. Vaughn R. Walker
22

23                          NOTICE OF MOTION

24          PLEASE TAKE NOTICE that, on August 30, 2007, before the Honorable Vaughn R.

25  Walker, at 2 p.m., in Courtroom 6, 17th Floor of the United States Courthouse, 450 Golden Gate

26  Avenue, San Francisco, California, the United States and the other Defendants sued in their

27  official capacities in this action will present the accompanying motion to dismiss this action,

28  pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, for

Dockets.Justia.com

1 summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

2 ### MOTION

3 Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the United States and the other Defendants sued in their official capacity in this action, through their undersigned counsel, hereby move to dismiss this action or, in the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. The grounds for this motion are that the United States' assertion of the military and state secrets privilege and of specified statutory privileges requires dismissal of this action, or, in the alternative, summary judgment in favor of the Defendants. The grounds for this motion are set forth further in: (i) the accompanying public Memorandum in Support of the State Secrets Privilege and the Motion to Dismiss or For Summary Judgement by the United States and the Official Capacity Defendants; (ii) a classified Memorandum in Support of the State Secrets Privilege and the Motion to Dismiss or For Summary Judgement by the United States and the Official Capacity Defendants that has been lodged for the Court's *in camera, ex parte* review; and (iii) the accompanying Public Declarations of J. Michael McConnell, Director of National Intelligence, and Keith B. Alexander, Director of the National Security Agency; and (iv) the classified Declarations of J. Michael McConnell, Director of National Intelligence, and Keith B. Alexander, Director of the National Security Agency, that have been lodged for the Court's *in camera, ex parte* review.

### RELIEF REQUESTED

The United States and the other Defendants sued in their official capacities in this action request that this action be dismissed or, in the alternative, that summary judgment be entered for the Defendants.

DATED: May 25, 2007

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

_____/s/ Anthony J. Coppolino_____
ANTHONY J. COPPOLINO
Special Litigation Counsel

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA
Senior Trial Counsel

_____/s/ Andrew H. Tannenbaum_____
ANDREW H. TANNENBAUM
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone:   (202) 514-4782 — Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

1  PETER D. KEISLER
   Assistant Attorney General
2  CARL J. NICHOLS
   Deputy Assistant Attorney General
3  JOSEPH H. HUNT
   Director, Federal Programs Branch
4  ANTHONY J. COPPOLINO
   Special Litigation Counsel
5  tony.coppolino@usdoj.gov
   RUPA BHATTACHARYYA
6  Senior Trial Counsel
   rupa.bhattacharyya@usdoj.gov
7  ANDREW H. TANNENBAUM
   Trial Attorney
8  andrew.tannenbaum@usdoj.gov
   U.S. Department of Justice
9  Civil Division, Federal Programs Branch
   20 Massachusetts Avenue, NW
10 Washington, D.C. 20001
   Phone: (202) 514-4782/(202) 514-4263/(202) 514-3146
11 Fax:    (202) 616-8460/(202) 616-8202
   *Attorneys for the United States of America and*
12 *the Federal Defendants in their Official Capacities*

13 **IN THE UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
14 **SAN FRANCISCO DIVISION**

15

16 IN RE NATIONAL SECURITY AGENCY           )    MDL Dkt. No. 06-1791-VRW
   TELECOMMUNICATIONS RECORDS               )
17 LITIGATION                               )    **MEMORANDUM IN SUPPORT**
                                            )    **OF THE STATE SECRETS**
18                                          )    **PRIVILEGE AND THE**
                                            )    **MOTION TO DISMISS OR FOR**
19 This Document Relates To:                )    **SUMMARY JUDGMENT BY**
                                            )    **THE UNITED STATES AND**
20                                          )    **THE OFFICIAL CAPACITY**
   *Shubert v. Bush*                        )    **DEFENDANTS**
21 (Case No. 07-00693)                      )
                                            )
22                                          )    Date:   August 30, 2007
                                            )    Time:   2:00 pm
23 _____ )    Courtroom: 6
                                                 Hon. Vaughn R. Walker

24

25

26 ***Shubert v. Bush* (Case No. 06-00693)**
   **Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for**
27 **Summary Judgment by the United States and the Official Capacity Defendants**

28

# **TABLE OF CONTENTS**

**(U)** INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**(U)** BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.     **(U)** The Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.     **(U)** The United States' State Secrets Privilege Assertion . . . . . . . . . . . . . . . . . 7

**(U)** ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.     **(U)** WHERE STATE SECRETS ARE NEEDED TO RESOLVE A CASE, THE MATTER MUST BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.     **(U)** The State Secrets Privilege Bars Use of Privileged Information in Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.     **(U)** Where State Secrets Are Central to the Resolution of a Case or Needed to Litigate the Claims and Defenses, the Case Cannot Proceed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.     **(U)** THE UNITED STATES HAS PROPERLY ASSERTED THE STATE SECRETS PRIVILEGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.     **(U)** INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE IS NECESSARY TO ADJUDICATE PLAINTIFFS' CLAIMS AND, THUS, THIS ACTION CANNOT PROCEED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    A.     **(U)** Whether or Not Plaintiffs Have Standing Cannot be Established or Refuted Without the Disclosure of State Secrets and Harm to National Security . . . . . . . . . . . . . . . . . . . . . . . . . 19

        1.     **(U)** Plaintiffs Cannot Establish Standing Because the State Secrets Privilege Forecloses Litigation Over Whether They Have Been Subject to Surveillance . . . . . . . . . . . . . . . . . . . . 23

        2.     **(U)** Plaintiffs Cannot Establish Standing On the Basis of a "Dragnet" Theory of Surveillance . . . . . . . . . . . . . . . . . . . . . . . . 29

    B.     **(U)** The Disclosure of Facts Concerning the Alleged NSA Intelligence Activities is Required to Adjudicate Plaintiffs' Claims on the Merits . . . . . . 30

        1.     **(U)** Plaintiffs' Allegations that the NSA Operates a Content "Dragnet" Cannot be Adjudicated Without State Secrets . . . . . . . . . . 31

        2.     **(U)** Plaintiffs' Allegation that Certain Telecommunications Carriers Cooperated in NSA Intelligence Collection Activities Cannot be Adjudicated Without State Secrets . . . . . . . . . . . . . . . . . . 34

*Shubert v. Bush* **(Case No. 06-00693)**
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-ii-

IV.     (U) STATUTORY PRIVILEGE CLAIMS HAVE ALSO BEEN PROPERLY
        RAISED IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

(U) CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for
Summary Judgment by the United States and the Official Capacity Defendants**

-iii-

**(U) TABLE OF AUTHORITIES**

**Cases**

*ACLU v. NSA*, 438 F. Supp. 2d 754 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . . . . . . . 7

*Bareford v. General Dynamics Corp.*, 973 F.2d 1138 (5th Cir. 1992) . . . . . . . . . . . . 5, 17

*Black v. United States*, 62 F.3d 1115 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 14

*CIA v. Sims*, 471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Clift v. United States*, 808 F. Supp. 101 (D. Conn. 1991) . . . . . . . . . . . . . . . . . 15, 16

*DaimlerChrysler Corp. v. Cuno*, ___ U.S. ___, 126 S. Ct. 1854 (2006) . . . . . . . . . . . . . . . 20

*Dept. of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . 27

*Dept. of the Navy v. Egan*, 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*,
514 U.S. 122 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Edmonds v. U.S. Dept. of Justice*, 323 F. Supp. 2d 65 (D.D.C. 2004)
*aff'd*, 161 Fed. Appx. 6 (D.C. Cir. 2005),
*cert. denied*, ___ U.S. ___, 126 S. Ct. 734 (2005) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) . . . . . . . . . . . . . . . . . . 20

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . 11, 14, 25, 28

*Ellsberg v. Mitchell*, 807 F.2d 204 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 33

*El-Masri v. Tenet*, 437 F. Supp. 2d 530 (E.D. Va. 2006)
*aff'd* 479 F.3d 296 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*El-Masri v. United States*, 479 F. Supp.2d 530 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . *passim*

*Farnsworth Cannon, Inc. v. Grimes*, 638 F.2d 268, 281 (4th Cir. 1980) . . . . . . . . . . . . 17

*Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236 (4th Cir. 1985) . . . . . . . . . . . . . . *passim*

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 36

*Founding Church of Scientology of Washington, D.C., Inc. v.
Nat'l Security Agency*, 610 F.2d 824 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . 33

*Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for
Summary Judgment by the United States and the Official Capacity Defendants**

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hayden v. Nat'l Security Agency*, 608 F.2d 1381 (D.C. Cir. 1979) . . . . . . . . . . . . . 35, 36, 37

*Hepting. v. AT&T*, 439 F. Supp. 2d 974 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . *passim*

*In re Under Seal*, 945 F.2d 1285 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re United States*, 872 F.2d 472 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Lewis v. Casey*, 518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Linder v. Nat'l Security Agency*, 94 F.3d 693 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . 35, 37

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22

*Molerio v. Federal Bureau of Investigation*, 749 F. 2d 815 (D.C. Cir. 1984) . . . . . . . . . . . . 33

*Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . 13

*Maxwell v. First Nat'l Bank of Maryland*, 143 F.R.D. 590 (D. Md. 1992),
    *aff'd* 998 F.2d 1009 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395 (D.C. Cir. 1984) . . . . . . . . . . . 14

*O'Shea v. Littleton*, 414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People for the American Way Found. v. National Security Agency*,
    462 F. Supp. 2d 21 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Raines v. Byrd*, 521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) . . . . . . . . . . . . . 20

*Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005),
    *cert. denied*, ___ U.S. ___, 126 S. Ct. 1052 (2006) . . . . . . . . . . . . . . . . . . . 15, 16, 33

*Smelt v. County of Orange*, 447 F.3d 673 (9th Cir.),
    *cert. denied*, ___ U.S. ___, 127 S. Ct. 396 (2006) . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Snepp v. United States*, 444 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . 7

*Tilden v. Tenet*, 140 F. Supp. 2d 623 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Totten v. United States*, 92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Shubert v. Bush** (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for**
**Summary Judgment by the United States and the Official Capacity Defendants**

*United States v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Nixon*, 418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Reynolds*, 345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,*
    454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Warth v. Seldin*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991) . . . . . . . . . . . 16, 17, 22


**Statutes**

18 U.S.C. § 2510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
18 U.S.C. § 2520(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27
18 U.S.C. § 2711(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
18 U.S.C. § 2712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
18 U.S.C. § 2707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27
50 U.S.C. § 401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
50 U.S.C. § 1801(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
50 U.S.C. § 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
50 U.S.C. § 1801(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Section 6 of the National Security Agency Act of 1959,
    Pub. L. No. 86-36, § 6, 73 Stat. 63, 64,
    codified at 50 U.S.C. § 402 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act
    of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004),
    codified at 50 U.S.C. § 403-1(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 36, 37

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for
Summary Judgment by the United States and the Official Capacity Defendants**

(U) Plaintiffs in this action have filed a class action lawsuit against the United States, as well as the President and other officers of the United States in both their official and individual capacities, alleging that the President authorized the warrantless surveillance of "virtually every telephone, internet and/or email communication that has been sent from or received within the United States since 2001" — a "secret program to spy upon millions of innocent Americans." *See Shubert* Amended Compl. ¶¶ 1-2 (MDL Dkt. 284). Plaintiffs are four individuals who reside in Brooklyn, New York, and their claims are based on allegations made in a December 2005 article in *The New York Times*, as well as on statements made by President Bush that month regarding surveillance he authorized after the terrorist attacks of September 11, 2001. *See id.* ¶ 50.

(U) The President stated in December 2005 that he had authorized the National Security Agency ("NSA") to conduct a limited surveillance program directed at "one-end" international communications to or from the United States as to which reasonable grounds existed to believe that one of the communicants was a member or agent of al Qaeda or an affiliated terrorist organization (referred to as the "Terrorist Surveillance Program" or "TSP"). *See Hepting v. AT&T* 439 F. Supp. 2d 974, 987 (N.D. Cal. 2006) (appeal pending) (taking judicial notice of the President's statements) (citing The White House, *President Bush's Discusses NSA Surveillance Program* (May 11, 2006), http://www.whitehouse.gov/news/releases/2006/05/2006511-1.html) (hereinafter "5/11/06 Statement").[2] The President also stated that the surveillance he authorized

---

[1] **(U)** Classification markings in this memorandum are in accordance with the marking system described in the *In Camera, Ex Parte* Classified Declaration of Lt. Gen. Keith B. Alexander, Director, National Security Agency submitted in this case ("*In Camera* Alexander Decl.").

[2] **(U)** As the Attorney General announced in January 2007, as a result of orders issued by the Foreign Intelligence Surveillance Court ("FISC") on January 10, 2007, any electronic

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-1-

after 9/11 did not involve the interception of purely domestic calls in the United States and that the Government is "not mining or trolling through the personal lives of millions of Americans." *Hepting*, 439 F. Supp. 2d at 987 (citing 5/11/06 Statement).

(U) Plaintiffs nonetheless allege that the NSA monitors the content of purely domestic telephone and Internet communications of people inside the United States, as well as of millions of international telephone and Internet communications of people inside the United States, *see Shubert* Amended Compl. ¶¶ 59-62, and that the NSA then analyzes the content of these communications through key word searches, such as "jihad," "Iraq," and "Bush is a criminal," or "whatever words or phrases the United States Government deems of interest," and then may "target these Americans for even further interception, search and seizure, and electronic surveillance." *See id.* ¶¶ 71-72. Plaintiffs claim that they have personally suffered an injury under the alleged surveillance program because they each "regularly make phone calls and send email both within the United States, and outside the United States," specifically to the United Kingdom, France, Italy, Egypt, the Netherlands, and Norway. *See id.* ¶¶ 5-8. Thus, the Plaintiffs allege, "each of the named plaintiffs were [sic] . . . subject to the unlawful interception, search and seizure, and electronic surveillance of the contents of their phone and internet communications." *Shubert* Amended Compl. ¶ 87.

(U) Notably, Plaintiffs do not allege that they communicate with individuals who may be members or agents of al Qaeda or affiliated terrorist organizations, and thus, do not allege that they fall within the scope of the TSP as described by the President. Instead, their claim is based on an unfounded and highly speculative allegation that the surveillance authorized by the President extends well beyond the TSP to a "dragnet" surveillance on the content of

---

surveillance that was occurring under the TSP is now being conducted subject to the approval of the FISC, and the President has not renewed his authorization of the TSP. *See* Notice of the United States of Attorney General's Letter to Congress, MDL Dkt. 127.

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

communications of millions of Americans. *See Shubert* Amended Compl. ¶ 4.

(U) As in the *Hepting* and *Verizon* actions currently pending before this Court, highly classified information is so central to the litigation of Plaintiffs' claims that the very subject matter of this case is a state secret. *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998). Litigation of Plaintiffs' claims inherently requires the disclosure of whether or not alleged NSA activities are occurring and, if so, facts about their operations, making it impossible to proceed on any front without the disclosure of classified intelligence information, activities, sources, and methods.

(U) As a threshold matter, for example, adjudication of the case obviously requires disclosure of whether or not the Plaintiffs themselves have personally been subject to any alleged NSA surveillance activity; Plaintiffs' standing and the very jurisdiction of the Court cannot be established without such evidence. But, as two of the Nation's top intelligence officers attest, any attempt to confirm or deny such facts would require the disclosure of information relating to the activities of the NSA that has been classified at the highest levels because of the substantial damage to national security that would result from its disclosure. *See* Public Declaration of J. Michael McConnell, Director of National Intelligence ("Public McConnell Decl.") ¶ 3; Public Declaration of Keith B. Alexander, Director, National Security Agency ("Public Alexander Decl.") ¶ 3.

(U) Even assuming jurisdiction could be established without these secret facts—and it cannot—operational facts concerning the TSP that would demonstrate that it was in fact limited to one-end al Qaeda-related communications, as well as other facts showing that no "dragnet" such as that alleged is otherwise undertaken by the NSA, would be required to address and disprove Plaintiffs' surveillance claim on the merits. As this Court has previously recognized, the Government has specifically denied that the TSP was a "dragnet" on the content of the communications of millions of Americans as Plaintiffs allege. *See Hepting*, 439 F. Supp. 2d at

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-3-

996. But any attempt by the Government to *prove* that fact, in other words to "prove a negative"—*i.e.,* that the TSP was not such a "dragnet" and that the NSA has not otherwise engaged in such an alleged "dragnet"—would require disclosure of the nature of the classified intelligence activities actually undertaken by the NSA. Under prevailing law governing the assertion of the state secrets privilege, accordingly, dismissal of Plaintiffs' claims against the Federal Defendants in their official and individual capacities is required.[3]

**[REDACTED TEXT]**

(U) Accordingly, as in *Hepting* and the *Verizon* cases, the DNI, in conjunction with the Director of the NSA, asserts the state secrets privilege and statutory privileges to protect against the disclosure of several categories of information at issue in this case. *See* Public McConnell Decl. ¶ 11; Public Alexander Decl. ¶ 12. Here, these privilege assertions extend to: (1) whether or not Plaintiffs have been subject to any of the alleged activities; and (2) other information concerning any alleged NSA intelligence activities, sources, or methods, including (a) facts demonstrating that the TSP was limited to al Qaeda-related one-end foreign communications and that the NSA does not undertake the "dragnet" of content surveillance that Plaintiffs allege; (b) facts that would tend to confirm or deny the existence of any other NSA activity that might needed in order to rebut Plaintiffs' speculative allegations; and (c) facts that would tend to confirm or deny any alleged relationship between the NSA and any telecommunications carrier.

(U) In deciding a state secrets privilege assertion, the Court, first, must determine whether the United States has put forward reasonable grounds to conclude that disclosure or

---

[3] (U) This motion is brought by the United States and by the Federal Defendants in their official capacities, as only the United States can assert the state secrets privilege. However, because state secrets would be needed to address the claims against the individual capacity Defendants as well, the Court should dismiss all claims in this case. (The Plaintiffs and Defendants in their individual capacities have agreed to defer the individual capacity claims until the state secrets privilege issue is decided.)

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for**
**Summary Judgment by the United States and the Official Capacity Defendants**

-4-

confirmation of the information at issue would harm national security. *See United States v. Reynolds,* 345 U.S. 1, 10 (1953); *Kasza,* 133 F.3d at 1166. The Court is required to lend the "utmost deference" to the Executive's judgment on the matter. *Kazsa,* 133 F.3d at 1166. As set forth herein, the DNI and NSA Director amply demonstrate that disclosure of the privileged information at issue in this case risks exceptionally grave harm to the national security and, thus, that it must be excluded from further proceedings in this litigation. For the Court to find otherwise, it must conclude that the Director of National Intelligence's judgment about the harm of disclosure has no reasonable basis—a conclusion that we respectfully submit would be entirely unfounded.

(U) Second, the state secrets privilege requires a court to consider whether the case can proceed by examining the role that state secrets would play in further proceedings. That is, a court must "look ahead" to whether the privileged information would be needed to litigate various issues that will arise at future stages of the case—not merely whether the case can proceed past the pleadings stage. Because privileged information would be central to adjudicating all issues in this action—including fundamental questions regarding the Court's jurisdiction, as well as a variety of merits issues—well-established authority requires that this case must be dismissed at the outset. *See generally Kasza, supra.*

(U) The United States is mindful that the denial of a forum for the resolution of disputes can be a "drastic remedy." *Fitzgerald v. Penthouse Int'l, Ltd.,* 776 F.2d 1236, 1243 (4th Cir. 1985). But it is well established that "the state secrets doctrine finds the greater public good—ultimately the less harsh remedy—to be dismissal." *Kasza,* 133 F.3d at 1167 (quoting *Bareford v. Gen. Dynamics Corp.,* 973 F.2d 1138, 1144 (5th Cir. 1992)). This is the "required" result even where allegations of unlawful or unconstitutional actions are at issue. *Halkin v. Helms ("Halkin II"),* 690 F.2d 977, 1001 (D.C. Cir. 1982). The Plaintiffs' interests are not the only ones at stake, and proceeding to litigate this dispute would lead to a harsh result of another

*Shubert v. Bush* **(Case No. 06-00693)**
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for**
**Summary Judgment by the United States and the Official Capacity Defendants**

-5-

kind—one that could potentially cause harm to the security of all Americans. *See El-Masri v. Tenet*, 437 F. Supp. 2d 530, 539 (E.D. Va. 2006) ("private interests must give way to the national interest in preserving state secrets"), *aff'd* 479 F.3d 296 (4th Cir. 2007). The conclusion of the Nation's top intelligence officers that this action cannot proceed without causing grave damage to the national security of the United States must be given utmost deference by this Court. Accordingly, Defendants' motion to dismiss this action in its entirety or, in the alternative, for summary judgment, should be granted.

## (U) BACKGROUND

### A.    (U)    The Plaintiffs' Claims

(U) Plaintiffs allege that the NSA intercepts "virtually every telephone, internet and/or email communication that has been sent from or received within the United States since 2001," *Shubert A*mended Compl. ¶ 1. They claim that the President has authorized a "secret program to spy upon millions of Americans," *id.* ¶ 2, and that, as a result, "hundreds of millions of phone, email, and internet communications by U.S. persons have been intercepted, searched and seized, and subjected to electronic surveillance by government spy computers at the NSA." *Id.* ¶ 80. Plaintiffs allege that the "interception, search and seizure, and electronic surveillance" of international telephone and email communications, as well as "purely domestic" telephone and Internet communications, *see id.* ¶¶ 56-67, are all part of the "Spying Program," *id.* ¶ 2, that Plaintiffs contend constitutes an "illegal, covert, dragnet spying operation." *Id.* ¶ 4.

(U) Plaintiffs' Amended Complaint alleges injury only in the form of interception of the "contents" of their communications. *See, e.g., Shubert* Amended Compl. ¶ 87. It does not raise a cause of action, similar to those present in several other actions before this Court, based on the allegation that NSA collects information *about* Plaintiffs' communications.[4] In any event, as

---

[4] **(U)** Plaintiffs' Amended Complaint refers in one instance to the alleged collection of telephone "call data" records, *see Shubert* Amended Compl.¶ 58, but Plaintiffs do not raise a

*Shubert v. Bush* **(Case No. 06-00693)**
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-6-

this Court and two other courts have held, the Government has neither confirmed nor denied the existence of any alleged records collection activities; any information confirming or denying any alleged records collection activities cannot be disclosed without harming the national security; and the Government has asserted the state secrets privilege with respect to any such allegations. *Hepting*, 439 F. Supp. 2d at 997-98; *Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 917 (N.D. Ill. 2006); *ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006) (appeal pending).

**(U)** Viewed as a whole, therefore, Plaintiffs' statutory and constitutional claims against the United States and the named federal officials in their official and individual capacities, raise three issues for resolution:

    (1)    **(U)** Whether the named Plaintiffs have been aggrieved by any alleged actions taken against them by the Defendants;

    (2)    **(U)** Whether the NSA engaged in the "dragnet" collection of the content of "hundreds of millions" of telephone, email and Internet communications, both international and "purely domestic"; and

    (3)    **(U)** Whether such an alleged "dragnet" collection of the content of telephone, Internet, and email communications, if true, was unlawful.

**B.**    **(U)**    **The United States' State Secrets Privilege Assertion.**

**(U)** In response to the allegations raised in this lawsuit, and as in the other lawsuits pending before this Court challenging the NSA's activities after 9/11, the DNI, supported by the Director of the NSA, assert the state secrets privilege, and both officials assert statutory privileges, to protect against the disclosure of several categories of information described herein, including:

    A.    **(U)** Information that may tend to confirm or deny whether the Plaintiffs have been subject to any alleged NSA intelligence activity that may be at issue in this matter;

    B.    **(U)** Information concerning NSA intelligence activities, sources, or methods, including:

---

cause of action challenging any alleged records collection activity. *See id.* ¶¶ 97-112.

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-7-

(1)    **(U)** Information concerning the scope and operation of the Terrorist Surveillance Program, including information that may be needed to demonstrate that the TSP was limited to one-end foreign al Qaeda-related communications and that the NSA does not otherwise engage in the content surveillance dragnet that the Plaintiffs allege; and

(2)    **(U)** Any other information concerning NSA intelligence activities, sources, or methods that would be necessary to adjudicate the Plaintiffs' claims, including, to the extent applicable, information that would tend to confirm or deny whether the NSA collects large quantities of communication records information; and

C.    **(U)** Information that may tend to confirm or deny whether Verizon/MCI, AT&T, or any other telecommunications carrier has assisted the NSA with the alleged intelligence activities.

*See* Public McConnell Decl. ¶ 11; Public Alexander Decl. ¶ 12.

**(U)** The DNI and NSA Director first assert the state secrets and statutory privileges as to information that would tend to confirm or deny whether Plaintiffs have been subject to any alleged intelligence activities. *See* Public McConnell Decl. ¶ 13; Public Alexander Decl. ¶ 14. In particular, efforts to prove whether specific individuals were targets of alleged NSA activities would either reveal who is subject to investigative interest—helping that person to evade surveillance—or who is not—revealing the scope of intelligence activities as well as secure channels for communication, and potentially revealing actual targets in other cases. Public McConnell Decl. ¶ 13; Public Alexander Decl. ¶ 14.

**[REDACTED TEXT]**

**(U)** Second, the DNI and NSA Director assert privilege over information concerning the alleged intelligence activities themselves. As already noted, disproving Plaintiffs' allegation of a content surveillance "dragnet" would require demonstrating what the United States *is* doing. Such an inquiry would entail proving publicly that the acknowledged TSP is not a "dragnet" of domestic communications, thereby revealing specific classified information about the TSP that the DNI and NSA Director have explained must be protected. Adjudicating Plaintiffs' claim would also require the disclosure of other NSA intelligence methods in order to confirm that the

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-8-

alleged "dragnet" is not occurring.  *See* Public McConnell Decl. ¶¶ 14-15; Public Alexander Decl. ¶¶ 15-17.

**[REDACTED TEXT]**

(U) In addition, the DNI and NSA Director assert privilege over facts that would tend to confirm or deny whether Verizon, AT&T or any other telecommunications carrier has assisted the NSA with any particular alleged intelligence collection activity, as Plaintiffs claim.  *See Shubert* Amended Compl. ¶¶ 5-8, 70-72; Public McConnell Decl. ¶ 16; Public Alexander Decl. ¶ 18.  The DNI has determined that disclosure of any information that would tend to confirm or deny an alleged classified intelligence relationship between the NSA and any telecommunications carrier would cause exceptionally grave harm to national security. *See* Public McConnell Decl. ¶ 16.  Confirming or denying such allegations, for instance, would reveal to foreign adversaries whether or not NSA utilizes particular intelligence sources and methods and, thus, either compromise actual sources and methods or disclose that the NSA does not utilize a particular source or method.  *Id.*  The harms to national security that would result from such a disclosure are amply demonstrated by the DNI and NSA Director in their *in camera, ex parte* submissions and are certainly reasonable when weighed against the broad national security interests in detecting and preventing another catastrophic terrorist attack on the United States.

**[REDACTED TEXT]**

(U) Finally, because the Plaintiffs' claims arise from allegations that the NSA began to undertake certain intelligence activities after the 9/11 attacks by al Qaeda, *see, e.g.*, *Shubert* Amended Compl. ¶¶ 4-8, 21, the DNI has asserted privilege over sensitive intelligence information about the al Qaeda threat.  *See* Public McConnell Decl. ¶ 12.  If the Government was required to defend the lawfulness of a particular intelligence activity (for example, the acknowledged Terrorist Surveillance Program), specific information about the threat that the

*Shubert v. Bush* (Case No. 06-00693)
Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for
Summary Judgment by the United States and the Official Capacity Defendants

-9-

activity seeks to address—the severity and exigency of the threat, and the nature and scope of enemy tactics that the NSA seeks to counter—would all be relevant evidence, but not available.

(U) In the course of their privilege assertions over these categories of information, the DNI and NSA Director have set forth more than reasonable grounds to demonstrate that disclosure of the privileged information at issue would harm national security. These experienced intelligence officials, who are entrusted with protecting the national security of the United States, have also demonstrated why the very subject matter of this case must be considered a state secret, and thus why litigation of this case cannot proceed.

## (U) ARGUMENT

(U) The resolution of this case is governed by clear principles. If the facts needed to adjudicate the question of Plaintiffs' standing, such as whether or not they are subject to the alleged surveillance activities, cannot be disclosed without reasonable danger of harm to the national security, the case must be dismissed. If facts concerning the existence and operation of intelligence sources and methods are needed to adjudicate the merits of Plaintiffs' claims, the case must be dismissed. As set forth below, the United States has demonstrated that each of these categories of information is needed to decide this case, but the disclosure of that information reasonably would be expected to cause harm to the national security. In these circumstances, the Court must grant the United States' motion.

I.    (U) WHERE STATE SECRETS ARE NEEDED TO RESOLVE A CASE, THE MATTER MUST BE DISMISSED.

   A.    (U) The State Secrets Privilege Bars Use of Privileged Information In Litigation.

(U) The ability of the executive to protect military or state secrets from disclosure has been recognized from the earliest days of the Republic. *See Totten v. United States*, 92 U.S. 105 (1875); *United States v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807); *United States v. Reynolds*, 345 U.S. 1 (1953); *see Kasza*, 133 F.3d 1165-66 (discussing cases). "Although the state secrets

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-10-

privilege was developed at common law, it performs a function of constitutional significance" because the privilege derives from the President's Article II powers to conduct foreign affairs and provide for the national defense. *El-Masri v. United States*, 479 F.3d 296, 303-04 (4th Cir. 2007) (citing, *inter alia, United States v. Nixon,* 418 U.S. 683, 710-11 (1974)). The Supreme Court has also clearly recognized that the protection of national security information is within the "Executive's constitutional mandate." *Dept. Of the Navy v. Egan*, 484 U.S. 518, 527 (1988)). Thus the state secrets privilege has a "firm foundation in the Constitution, in addition to its basis in the common law of evidence." *El-Masri*, 479 F.3d at 304.

**(U)** (1) *Procedural Requirements*: As a procedural matter, "[t]he privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party." *Reynolds*, 345 U.S. at 7; *see also Kasza,* 133 F.3d at 1165. "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by the officer." *Reynolds*, 345 U.S. at 7-8 (footnotes omitted). Thus, the responsible agency head must personally consider the matter and formally assert the claim of privilege.

**(U)** (2) *Information Covered*: The privilege protects a broad range of state secrets, including information that would result in "impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign Governments." *Ellsberg v. Mitchell,* 709 F.2d 51, 57 (D.C. Cir. 1983) (footnotes omitted); *accord Kasza*, 133 F.3d at 1166 ("[T]he Government may use the state secrets privilege to withhold a broad range of information;"); *see also Halkin II*, 690 F.2d at 990 (state secrets privilege protects intelligence sources and methods involved in NSA surveillance). In addition, the privilege extends to protect information that, on its face, may appear innocuous but, in a larger context, could reveal sensitive classified information. *Kasza*, 133 F.3d at 1166.

> It requires little reflection to understand that the business of foreign intelligence gathering in this age of computer technology is more akin to the construction of a

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-11-

mosaic than it is to the management of a cloak and dagger affair. Thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate.

*Halkin v. Helms* ("*Halkin I*"), 598 F.2d 1, 8 (D.C. Cir. 1978). "Accordingly, if seemingly innocuous information is part of a classified mosaic, the state secrets privilege may be invoked to bar its disclosure and the court cannot order the Government to disentangle this information from other classified information." *Kasza*, 133 F.3d at 1166.

(U)  (3) *Standard of Review*: An assertion of the state secrets privilege "must be accorded the 'utmost deference' and the court's review of the claim of privilege is narrow." *Kasza*, 133 F.3d at 1166. Aside from ensuring that the privilege has been properly invoked as a procedural matter, the sole determination for the court is whether, "under the particular circumstances of the case, 'there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" *Kasza*, 133 F.3d at 1166 (quoting *Reynolds*, 345 U.S. at 10); *see also In re United States,* 872 F.2d 472, 475-76 (D.C. Cir. 1989); *Tilden v. Tenet*, 140 F. Supp. 2d 623, 626 (E.D. Va. 2000). The Court is not permitted to substitute its judgment for the judgment of the most senior members of the intelligence community. As the Fourth Circuit recently held, deference to the Government's judgment as to when confirmation or disclosure of information would reasonably endanger national security is appropriate "not only for constitutional reasons, but also practical ones: the Executive and the intelligence agencies under his control occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information." *El-Masri*, 479 F.3d at 305.

(U) Notably, cases in which the state secrets privilege has been upheld have rejected the contention that certain information is "not a secret" because it could readily be deduced from other information. For example, in *Kasza*, the widow of an individual who worked at a classified government facility argued it was absurd to assert privilege over the very *existence* of

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-12-

hazardous waste at that facility. *See Kasza*, 133 F.3d at 1165. Yet the Government's assertion of privilege over this fact was upheld despite the existence of reliable public facts that tended to confirm it (for example, the health conditions of plaintiffs who worked at the facility, which would be well known to family, friends, and physicians). Indeed, the court in *Kasza* found that the privilege could protect *unclassified* information that might, in combination with other facts, reveal classified information. *See id.* at 1168. Similarly, in *Halkin II*, the court upheld the Government's state secrets privilege assertion over whether the plaintiffs had been subject to surveillance in the face of plaintiffs' contention that information placed in the public domain by former CIA officials in books reviewed in advance for classification by the CIA had disclosed particular facts about their allegations. *See Halkin II,* 690 F.2d at 994. And in the recent *El-Masri* decision, the Fourth Circuit upheld the Government's state secrets privilege assertion as to facts concerning an alleged CIA rendition program despite the fact that the plaintiff was a witness to his own alleged detention, interrogation, and conditions of confinement, and had spoken publicly about those issues. *See* 479 F.3d at 308-10. In each of these cases, the court examined the reasons advanced by the Government as to why disclosure of information as to which privilege was asserted would cause harm to national security, and did not attempt to ascertain whether something was a secret by taking judicial notice of purportedly reliable public sources. As the D.C. Circuit observed in *Halkin II*:

> Whatever the truth may be, it remains either unrevealed or unconfirmed. We cannot assume, as the appellants would have us, that the CIA has nothing left to hide. To the contrary, the record before us suggests either that the CIA still has something to hide or that it wishes to hide from our adversaries the fact that it has nothing to hide.

*See* 690 F.2d at 994 n.63 (citing *Military Audit Project v. Casey*, 656 F.2d 724, 744-45 (D.C. Cir. 1981)).

(U) In addition, in assessing whether to uphold a claim of privilege, the court does not balance the respective needs of the parties for the information. Rather, "[o]nce the privilege is

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for
Summary Judgment by the United States and the Official Capacity Defendants**

-13-

properly invoked and the court is satisfied that there is a reasonable danger that national security would be harmed by the disclosure of state secrets, the privilege is absolute[.]" *Kasza*, 133 F.3d at 1166; *see also In re Under Seal,* 945 F.2d 1285, 1287 n.2 (4th Cir. 1991) (state secrets privilege "renders the information unavailable regardless of the other party's need in furtherance of the action"); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) (state secrets privilege "cannot be compromised by any showing of need on the part of the party seeking the information"); *Ellsberg*, 709 F.2d at 57 ("When properly invoked, the state secrets privilege is absolute. No competing public or private interest can be advanced to compel disclosure of information found to be protected by a claim of privilege."). A court may consider the necessity of the information to the case only in connection with assessing the sufficiency of the Government's showing that there is a reasonable danger that disclosure of the information at issue would harm national security. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court ultimately is satisfied that military secrets are at stake. *Reynolds*, 345 U.S. at 11; *Kasza*, 133 F.3d at 1166.[5]

**B.** **(U) Where State Secrets Are Central to the Resolution of a Case or Needed to Litigate the Claims and Defenses, the Case Cannot Proceed.**

**(U)** Once the Court has upheld a claim of the state secrets privilege, the evidence and information identified in the privilege assertion is "completely removed from the case," *Kasza*, 133 F.3d at 1166, and the Court must undertake a separate inquiry to determine the consequences of this exclusion on further proceedings. *Fitzgerald*, 776 F.2d at 1243 ("[O]nce

---

[5] **(U)** Judicial review of whether the claim of privilege has been properly asserted and supported does not require the submission of classified information to the court *for in camera, ex parte* review. Nonetheless, the submission of classified declarations for *in camera, ex parte* review is "unexceptional" in cases where the state secrets privilege is invoked. *Kasza*, 133 F.3d at 1169 (citing *Black v. United States*, 62 F.3d 1115 (8th Cir. 1995)).

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-14-

the state secrets privilege has been properly invoked, the district court must consider whether and how the case may proceed in light of the privilege."); *see also El-Masri*, 479 F.3d at 304 ("the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim"). This inquiry requires the Court to "look ahead" to evaluate whether privileged evidence is needed to resolve any issue raised by the case.[6]

(U) First, the case must be dismissed if the state secrets "will be so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privileged matters." *Fitzgerald*, 776 F.2d at 1241-42. In such circumstances, as the court held in *Kasza*, the "very subject matter" of the action is a state secret and "the court should dismiss the plaintiff's action based solely on the invocation of the state secrets privilege." *Kasza*, 133 F.3d at 1166 (citing *Reynolds*, 345 U.S. at 11 n.26).[7] The "very subject matter" inquiry concerns whether the "central facts"—*i.e.*, "those facts that are *essential to prosecuting the action or defending against it*"—are state secrets. *El-Masri*, 479 F.3d at 308 (emphasis added). "It is clear from precedent that the 'central facts' or 'very subject matter' of a civil proceeding, for purposes of [a] dismissal analysis, are those facts necessary to litigate it—not merely to discuss it in general terms." *Id.* at 310. In *Kasza*, for example, the Ninth Circuit held that the "very subject matter" of the case was a state secret because the specific information needed to adjudicate the plaintiffs' claims was protected by the privilege assertion. *See Kasza*, 133 F.3d at

---

[6] **(U)** *See El-Masri*, 479 F.3d at 308-10 (conducting prospective assessment of what state secrets would be needed as evidence if civil action were to proceed); *Sterling v. Tenet*, 416 F.3d 338, 346-47 (4th Cir. 2005) (same), *cert. denied*, ___ U.S. ___, 126 S. Ct. 1052 (2006); *Edmonds v. U.S. Dept. of Justice*, 323 F. Supp. 2d 65, 79-81 (D.D.C. 2004) (same), *aff'd* 161 Fed. Appx. 6 (D.C. Cir.), *cert. denied*, ___ U.S. ___, 126 S. Ct. 734 (2005); *Maxwell v. First Nat'l Bank of Maryland*, 143 F.R.D. 590, 599 (D. Md. 1992) (same), *aff'd* 998 F.2d 1009 (4th Cir. 1993); *Clift v. United States*, 808 F. Supp. 101, 108 (D. Conn. 1991) (same).

[7] **(U)** *See also El-Masri*, 479 F.3d at 308; *Sterling*, 416 F.3d at 345; *Edmonds*, 323 F. Supp. 2d at 77-82; *Maxwell*, 143 F.R.D. at 598-99.

*Shubert v. Bush* (Case No. 06-00693)
**Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for Summary Judgment by the United States and the Official Capacity Defendants**

-15-

1170.  Similarly, in *Fitzgerald*, the court held that the very subject matter of that case was a state

secret "due to the nature of the question presented in this action *and the proof required* by the

parties to establish or refute the claim."  776 F.2d at 1237 (emphasis added).  Likewise, in

*Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991), a case concerning

whether a missile defense system aboard a U.S. Navy frigate malfunctioned, the very subject

matter of the case was a state secret because facts central to proceeding, including how the

system worked, were not available.  *See id.* at 547-48.[8]

   **(U)**  Even if some information about a government activity is publicly acknowledged,

the very subject matter of the case can be a state secret.  The *Fitzgerald* case provides a good

example.  At issue in that case was an alleged libel that the plaintiff, who worked on a secret

Navy program for training marine mammals, sought to use his expertise for personal profit.  *See*

776 F.2d at 1237.  After determining that certain facts concerning the program were state

secrets which required protection, the Fourth Circuit went on to analyze whether the case could

proceed.  Even though the existence of the program was publicly known, *see id.* at 1242-43

(public declaration of the Secretary of the Navy describing marine mammal program), classified

aspects of how the program operated would have been inherently at issue in any adjudication of

the alleged libel and, thus, the Court held that the "very subject of this litigation is itself a state

secret."  *Id.* at 1243.

   **(U)**  Even if the very subject matter of an action is not a state secret, the case still must be

dismissed if the plaintiff cannot make out a *prima facie* case in support of its claims absent the

excluded state secrets.  *See Kasza,* 133 F.3d at 1166; *Halkin II*, 690 F.2d at 998-99; *Fitzgerald,*

---

   [8]  **(U)**  Similarly, in *Sterling*, a case concerning whether a former CIA officer had been
discriminated against on the basis of race, the "very subject matter" in that case was a state
secret because facts concerning the officer's assignments and CIA operations were essential to
decide the case.  *See* 416 F.3d at 345-46.  And in *Clift*, the subject matter of the case—a patent
dispute over a cryptographic device—was a state secret because the evidence needed to decide
the case was privileged.  808 F. Supp. at 111.

*Shubert v. Bush* (Case No. 06-00693)
Memorandum in Support of State Secrets Privilege and the Motion to Dismiss or for
Summary Judgment by the United States and the Official Capacity Defendants

-16-