PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS (SBN 220932)
Trial Attorneys
Email: alexander.haas@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
*Attorneys for Federal Defendants Sued in their Official Capacities,
the Federal Intervenor-Defendants (United States of America,
National Security Agency, President George W. Bush), and the
United States of America as Plaintiff against state officials*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | **No. M:06-cv-01791-VRW**<br><br>**BRIEF OF THE UNITED STATES IN RESPONSE TO THE SUPPLEMENTAL BRIEF OF THE STATE OFFICIALS**<br><br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker<br>Hearing: June 21, 2007; 2 p.m. |
| This Document Relates To:<br><br>*United States v. Rabner, et al.* (07-1324);<br>*United States v. Gaw, et al.* (07-1242);<br>*United States v. Adams, et al.* (07-1323);<br>*United States v. Palermino, et al.* (07-1326);<br>*United States v. Volz, et al.* (07-1396);<br>*Clayton, et al. v. AT&T Communications of the Southwest, Inc., et al.* (07-1187) | |

No. M:06-cv-01791-VRW—BRIEF OF THE UNITED STATES IN RESPONSE TO THE SUPPLEMENTAL BRIEF OF THE STATE OFFICIALS

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    THE STATE OFFICIALS' ACTIONS ARE CLEARLY INVALID UNDER, AND PREEMPTED BY, FEDERAL LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    NINTH CIRCUIT PRECEDENT FORECLOSES EACH OF THE STATE OFFICIALS' ARGUMENTS SEEKING TO AVOID JUDICIAL REVIEW OF THE MERITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(s)**

*ACLU v. NSA*,
  438 F. Supp. 2d 754 (E.D. Mich. 2006) .................................... 7

*Admiral Ins. Co. v. U.S. Dist. Court*,
  881 F.2d 1486 (9th Cir. 1988) ............................................ 11

*Chadha v. Immigration and Naturalization Service*,
  634 F.2d 408 (9th Cir. 1980) ............................................. 12

*City & County of San Francisco v. United States*,
  930 F. Supp. 1348 (N.D. Cal. 1996) ....................................... 10

*City of Auburn v. Qwest Corp.*,
  260 F.3d 1160 (9th Cir. 2001) .......................................... 11, 12

*Deutsch v. Turner Corp.*,
  324 F.3d 692, 711 (9th Cir. 2003) ......................................... 4

*Earth Island Institute v. Ruthenbeck*,
  459 F.3d 954 (9th Cir. 2006) ............................................. 12

*Gartrell Construction Inc. v. Aubry*,
  940 F.2d 437 (9th Cir. 1991) ............................................. 5, 9

*Hancock v. Train*,
  426 U.S. 167 (1976) ....................................................... 4

*Hawaiian Tel. Co. v. Pub. Util. Comm. of State of Hawaii*,
  827 F.2d 1264 (9th Cir. 1987) ............................................. 6

*Hepting v. AT&T*,
  439 F. Supp. 2d 974 (N.D. Cal. 2006) ..................................... 7, 8

*Industrial Truck Assn., Inc. v. Henry*,
  125 F.3d 1305 (9th Cir. 1997) ............................................. 5

*Leslie Miller, Inc. v. Arkansas*,
  352 U.S. 187 (1956) ....................................................... 5

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) .............................................. 9

*New Orleans Public Service Inc. v. City of New Orleans*,
  491 U.S. 350 (1989) ....................................................... 9

*Pacific Gas & Elec. Co. v. State Energy Res. Conserv. & Devel. Com'n*,
  461 U.S. 190 (1983) ....................................................... 5

*Perez v. Campbell*,
  402 U.S. 637 (1971) ....................................................... 6

*Principal Life Ins. Co. v. Robinson*,
    394 F.3d 665 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Public Utility District No. 1 v. Idacorp, Inc.*,
    379 F.3d 641 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*SPGGC, LLC v. Ayotte*,
    __ F.3d __, 2007 WL 1545840 (1st Cir. May, 30 2007) . . . . . . . . . . . . . . . . . . . . . . . 5

*Shell Oil Co. v. City of Santa Monica*,
    830 F.2d 1052 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State of Nevada v. Watkins*,
    914 F.2d 1545 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Terkel v. AT&T*,
    441 F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. City of Pittsburgh*,
    757 F.2d 43 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Geophys. Corp.*,
    732 F.2d 693 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Locke*,
    529 U.S. 89 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Mattson*,
    600 F.2d 1295 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Morros*,
    268 F.3d 695 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Town of Windsor, Conn.*,
    765 F.2d 16 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wilton v. Seven Falls*,
    515 U.S. 277 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

18 U.S.C. § 798 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**INTRODUCTION**

The State Officials' supplemental brief ("State Supp. Br.") concedes that they cannot investigate, regulate, or seek the disclosure of information concerning alleged federal intelligence activities of the United States. They rest instead on the assertion that national security matters are *not* at issue—that they have made only "narrow inquiries" properly within a state government's traditional authority to regulate intrastate telecommunications carriers. Indeed, they go so far as to argue that the Government's characterization of these matters as investigations into alleged intelligence activities of the National Security Agency ("NSA") is "deeply flawed" and "specious."

Under the State Officials' own approach, if their characterization of their actions is wrong, the Government wins these cases. As even a cursory review of the orders and subpoenas reveals, however, it is the State Officials' position that is "deeply flawed" and "specious": The plain and unambiguous terms of the orders and subpoenas would require the disclosure of whether telecommunication carriers have provided communication records information to the National Security Agency, as well as the scope and nature of such alleged activities and the legal authority supporting them. *See infra* at 3-4. The States simply cannot "spin" the matter otherwise. By their express terms, the orders demand the disclosure of information about an alleged federal intelligence activity purportedly undertaken by the United States Government. That is what these cases are about—nothing less. And that is why the State Officials' demands squarely implicate the sovereign authority of the United States under the Constitution with respect to national security matters, and conflict with federal statutory and common law that exclusively governs the disclosure of information concerning federal national security matters.

The State Officials simply have no authority to investigate alleged national security activities of the United States Government by demanding to know whether a company is allegedly assisting the Government in an intelligence matter. That is exactly what they seek to do, and their attempts to claim that they are not doing so is simply not plausible in the face of the express words of their own demands. Beyond this, the State Officials' numerous other arguments seeking to avoid judicial review of their actions are meritless. Ninth Circuit case law

requires this Court to reach the merits of the United States' claims and to vindicate its sovereign interests.

## I. THE STATE OFFICIALS' ACTIONS ARE CLEARLY INVALID UNDER, AND PREEMPTED BY, FEDERAL LAW.

The State Officials' only argument regarding the merits is that they are merely investigating the intrastate activities of the telecommunications carriers, and such investigations do not interfere with the operations of the Federal Government and are not preempted by Federal law. As the State Officials put it, their "inquiries begin and end with the carriers, and do not attempt to investigate any other entity, including the government." State Supp. Br. at 8. The State Officials thus concede that *if* their investigations require the disclosure of national intelligence operations or interfere with the operations of the Federal Government, those investigations would be preempted and unlawful. Indeed, the Maine Officials have acknowledged in their summary judgment papers that they "*do not dispute that state action that would reveal secret operations of the NSA is preempted.*" Maine Opp. to USG Mot for SJ at 18-19 (emphasis added); *see also id.* at 10 ("The MPUC does not dispute that the federal government occupies the field of national security, or that the MPUC might well be preempted if it attempted to take action in that field."). And both New Jersey and Connecticut Officials have stated that halting their investigations would be tantamount to "immunizing *federal executive action* from judicial scrutiny," *see* CT Opp. to USG Mot for SJ at 36 (emphasis added); NJ Mot to Dismiss at 17-18, confirming that they are attempting to investigate the alleged intelligence operations of the Federal Government.

Indeed, notwithstanding the State Officials' claim that the United States has "specious[ly] characteriz[ed]" their conduct, State Supp. Br. at 8, it cannot be seriously disputed that the State Officials are, in fact, investigating the alleged intelligence operations of the United States, and in particular an alleged call records program of the NSA. While the State Officials' brief is full of rhetoric, they fail entirely to address the actual language of their orders. It is clear why: By their plain terms, those orders focus squarely on the alleged relationship between the NSA and the telecommunications carriers, and even go so far as to *name the NSA*. Thus, even a cursory

examination of those orders—which are attached for the Court's convenience collectively as Exhibit A to this filing—demonstrates that they seek the disclosure of information concerning alleged intelligence operations of the NSA. For example, the New Jersey subpoena seeks:

- "[a]ll ***names and complete addresses of Persons*** including, but not limited to, all affiliates, subsidiaries and entities, ***that provide Telephone Call History Data to the NSA***";

- "[a]ll ***orders, subpoenas and warrants issued by or on behalf of any unit or officer of the Executive Branch of the Federal Government and provided to [the carriers] concerning any demand or request to provide Telephone Call History Data to the NSA***"; and

- "[a]ll ***Documents concerning any communication between [the carriers] and the NSA or any other unit or officer of the Executive Branch of the Federal Government concerning the provision of Telephone Call History Data to the NSA***."

*See* Exh. A, Tab 1, pp. 10-11 (Document Requests) (emphasis added). Similarly, the Vermont order seeks:

- whether they "***disclosed or delivered to the [NSA] the phone call records of any [] customers in Vermont at any time since January 1, 2001***";

- "***the categories of information [] provided to the NSA***";

- whether they "***disclosed or delivered to any other state or federal agency the phone call records of any [] customer in Vermont since January 1, 2001***"; and

- whether they "***modified any . . . equipment or other physical plant in Vermont to permit access to data and other information carried on [their] network by any agency of the federal government.***"

*See* Exh. A, Tab 2, pp. 1-3 (emphasis added). The Missouri subpoenas seek:

- "***[t]he nature or type of information disclosed to the NSA"***;

- "[t]he number of Missouri customers, if any, whose calling records have been delivered or otherwise ***disclosed to the National Security Agency***"; and

- the "legal authority" for alleged disclosures to the NSA.

*See* Exh. A, Tab 3, p. 2 (emphasis added). And the Connecticut interrogatories and Maine order seek, respectively:

- whether the carriers "disclosed customer information and/or records to private parties, ***government entities*** and/or law enforcement personnel when not compelled to do so by subpoena, warrant, court order or a request under 18 U.S.C. § 2709 ("National Security Letter" []), along with the "***full details***" of any such alleged disclosures "including the date of each request, the information sought, the information provided, and the date on which the information was

provided" [Connecticut]; and

- for Verizon to confirm that it "was not asked *by NSA* to provide, nor did [it] provide, customer phone records from any of its businesses, or any call data from those records" and that "[n]one of these companies – wireless or wireline – provided customer records or call data." [Maine]

*See* Exh. A, Tab 4, at p. 4 (emphases added), Tab 5, at p. 2 (emphasis added).

It therefore could not be plainer that the State Officials are seeking to investigate and publicly disclose whether and to what extent the Federal Government (specifically, the NSA) is engaged in alleged intelligence gathering activities with certain telecommunications carriers. As General Alexander has explained, permitting the State Officials to continue their investigations would risk grave harm to the national security by requiring the confirmation or denial of "the allegations that form the basis for the five state proceedings: whether the NSA collects large quantities of communication records from certain telecommunication carriers." *See* Declaration of General Keith B. Alexander (Apr. 26, 2007) ("Alexander Decl."). Thus, based on the State Officials' own concessions their actions are unconstitutional and otherwise preempted by Federal law.

Indeed, it is precisely because the State Officials seek to disclose such information that their actions are unlawful, for at least three reasons. *First,* as we have previously demonstrated, it is well-established that the Constitution forbids states from interfering with the operations of the federal government, *see McCulloch v. Maryland,* and that "the activities of the Federal Government are free from regulation by any state" except where Congress expressly provides to the contrary. *Hancock v. Train*, 426 U.S. 167, 178-79 (1976). The State Officials do not dispute that federal intelligence activities, alleged and otherwise, relate to federal functions over national security, foreign relations, and military functions that are "'part of the inner core'" of federal power. *See* USG Supp. Br. at 6 (quoting *Deutsch v. Turner Corp.*, 324 F.3d 692, 711 (9th Cir. 2003)). By seeking to reveal information that would confirm or deny the existence of intelligence activities and would serve to harm the national security, the State Officials are unlawfully attempting to tread upon and interfere with federal functions.

The State Officials attempt to avoid the limitations of the Supremacy Clause by relying

on the fact that their inquiries are directed to third parties, and not the United States. *See* State Supp. Br. at 8. There is absolutely no basis for this argument; it is well-established that state officials may not evade the Supremacy Clause's limitations on state power merely by regulating third parties. *See Gartrell Construction Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991) (following *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189-90 (1956)); *see* USG Supp. Br. at 7-8 & nn.4-5. Indeed, just two days ago, the First Circuit rejected this argument because "the question [] is not *whom* the [state] statute regulates, but rather, against *what activity* it regulates." *SPGGC, LLC v. Ayotte*, __ F.3d __, 2007 WL 1545840, *6 (1st Cir. May, 30 2007) (emphasis in original). *See also United States v. Town of Windsor, Conn.*, 765 F.2d 16, 19 (2d Cir. 1985) (invalidating state permit provisions directed to a federal contractor that "would have the same effect as direct enforcement against the Government . . . [*i.e.*] turning over its classified plans and specifications to the Town's building inspector").

    *Second*, as the Maine Officials have expressly conceded (and none of the other State Officials have contested), federal law comprehensively and exclusively covers the field of law relating to national security and intelligence activities. *See* USG Supp. Br. at 8-9 & nn.7-8. Because the Constitution and cited federal laws exclusively "occup[y] a field, the federal scheme proscribes *all* state action in that field," *see Industrial Truck Assn., Inc. v. Henry*, 125 F.3d 1305, 1313 (9th Cir. 1997) (all state hazardous chemical warning requirements, promulgated through police power, preempted by federal field), and the only relevant question is whether the state officials are purporting to act in that field. *See id.* ("[T]he test of pre-emption is whether the matter on which the State asserts a right to act is *in any way* regulated by" Federal law)(emphasis in original)). *See also Pacific Gas & Elec. Co. v. State Energy Res. Conserv. & Devel. Com'n*, 461 U.S. 190, 212-13 (1983). Any response to any of the challenged state orders would, at a minimum, confirm or deny whether a carrier or carriers were involved in the alleged foreign intelligence gathering program of the United States, as well as the precise nature, if any, of the alleged involvement and details surrounding the alleged NSA activities. The State Officials' actions are therefore unlawful because they involve a preempted field.

    It is simply wrong to argue, as the State Officials do, that the relevant field for field

preemption purposes is "intrastate telecommunications and public utilities," over which they retain "their traditional police power." State Supp. Br. at 9. The plain terms of their own orders demonstrate that the relevant fields of law are national security and intelligence policy, which are fully occupied by Federal laws and which are part of the inner core of federal power. *See* USG Supp. Br. at 6, 8-9 & n.7. Compelling disclosure of the information sought would intrude upon the national security operations of the Federal Government—as well as the Federal Government's control over information concerning those alleged operations.[1] The State Officials' transparent attempt to re-cast their actions to "articulat[e] some state interest or policy other than frustration of the federal objective" cannot evade Supremacy Clause limitations on state authority.[2] *See Perez v. Campbell*, 402 U.S. 637, 652 (1971).

*Third,* with regard to conflict preemption, "'compliance with both federal and state regulations [would be] a physical impossibility.'" *Ting v. AT&T*, 319 F.3d 1126, 1137 (9th Cir. 2003) (citation omitted).[3] As we have demonstrated, various federal statutes and Executive

---

[1] It is not important whether the field is viewed broadly (*i.e.*, national security or intelligence policy), or narrowly (*i.e.*, control over national security information), because whether the Federal Government "completely occupies a given field or an identifiable portion of it," the test for field preemption is the same. *See Public Utility District No. 1 v. Idacorp, Inc.*, 379 F.3d 641, 647 (9th Cir. 2004) (exclusive federal authority over wholesale sales of power in interstate commerce preempted field and state utility's claims).

[2] In *State of Nevada v. Watkins*, 914 F.2d 1545 (9th Cir. 1990), the Ninth Circuit rejected the "professed motivation" of state officials who cited "economic and environmental effects of nuclear waste disposal" with regard to a state legislative veto over a federal nuclear waste repository because "the state's action has the actual effect of frustrating Congress' intent." *Id.* at 1560-61. And despite the undisputed "authority of a state PUC to establish a reasonable rate of return for utilities within its jurisdiction," a state commission's rate order was invalidated as a "fairly transparent and improper attempt to circumvent" an FCC mandate. *Hawaiian Tel. Co. v. Pub. Util. Comm. of State of Hawaii*, 827 F.2d 1264, 1277 (9th Cir. 1987).

[3] While the State Officials assert that this Court should apply the "presumption against preemption," *see* State Supp. Br. at 8-9, the Ninth Circuit has held that such a presumption does not apply even in the (inapplicable here) field of telecommunications because of "the long history of federal presence." *See Ting*, 319 F.3d at 1137. *Ting*'s reasoning on this point is even stronger in the fields of national security and intelligence where not only there is a long history of federal presence, there is no concurrent state authority. *See United States v. Locke*, 529 U.S. 89, 108-09 (2000) (no presumption against preemption where state attempted to regulate in a federal area).

Orders preclude the telecommunications carriers from providing responses to the orders at issue in these cases. *See* USG Supp. Br. at 10-12. Indeed, 18 U.S.C. § 798 makes it a criminal offense to disclose "to an unauthorized person . . . classified information . . . concerning the communication intelligence activities of the United States." The telecommunications carriers simply cannot comply both with Federal law and with the state disclosure orders. In addition, these investigations "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Ting*, 319 F.3d at 1136 (citation omitted), because Congress has decided to unify all intelligence functions in a single federal actor, the Director of National Intelligence. *See* USG Supp. Br. at 8-9 & n.7. If the State Officials' position were correct, there would be no unified control of intelligence policy and information, but instead each of the fifty states would be able to impose its own standard regarding whether, when and how national security information is disclosed.

Finally, in a last-ditch effort to justify their actions, the State Officials contend that their investigations are lawful because "the existence of a program whereby telecommunications carriers provided the NSA with access to phone records of customers is well documented." State Supp. Br. at 13-14. But every court to consider whether information concerning the alleged NSA records program is subject to the protection of federal law has prohibited the disclosure of such information, including information that would confirm or deny the existence of such a program, in light of the state secrets privilege. *Hepting v. AT&T*, 439 F. Supp. 2d 974, 997 (N.D. Cal. 2006); *accord Terkel v. AT&T*, 441 F. Supp. 2d 899, 915-17 (N.D. Ill. 2006) (requiring telecommunications carrier to admit or deny existence of Government request to assist on alleged communications records program would disclose significant information that had not been revealed by other public information); *ACLU v. NSA*, 438 F. Supp. 2d 754, 765 (E.D. Mich. 2006) (dismissing, on state secrets grounds, "data-mining" claims regarding alleged NSA activities). The Court in *Hepting* correctly found that information confirming or denying an alleged communication records program should remain protected from disclosure. *See* 439 F. Supp. 2d at 997-98. Indeed, the Court recognized the potential harm of confirming or denying such allegations, and it also appropriately held that it is not in a position to second-guess the

judgment of the DNI and NSA Director regarding such harm. *See id.* at 997. As the Court noted:

> Revealing that a communications records program exists might encourage that terrorist to switch to less efficient but less detectable forms of communication. And revealing that such a program does not exist might encourage a terrorist to use [a provider's] services when he would not have done so otherwise.

The harms to national security at stake in confirming or denying an alleged intelligence relationship are indeed significant. Revealing whether or not any of the carriers assists the NSA with specific intelligence activities, for example, would replace speculation with certainty for hostile foreign adversaries who are balancing the risk that a particular channel of communication may not be secure against the need to communicate efficiently. *See* Alexander Decl., ¶ 18. The Court itself recognized this concern with respect to alleged communications records activities, when it observed in *Hepting* that "[a] terrorist who operates with full information is able to communicate more securely and more efficiently that a terrorist who operates in an atmosphere of uncertainty." *See Hepting*, 439 F. Supp. 2d at 990. Even a small margin of error may make the difference in protecting national security. And the State Officials clearly seek information that, if it exists, has never been confirmed or denied by the Government. *See* Alexander Decl., ¶ 16. If any doubt remained, the United States has invoked the state secrets privilege in a number of cases with regard to the alleged NSA call records program and the Court may refer to those cases for a greater recitation of these issues, most recently with regard to the allegations against Verizon and in *Shubert*.[4] *See* Dkts. 253-57 (Verizon cases); Dkts. 295-98 (*Shubert*); *see also* Dkts. 124-25 in No:06-cv-672-VRW (allegations against AT&T in *Hepting*).

## II. NINTH CIRCUIT PRECEDENT FORECLOSES EACH OF THE STATE OFFICIALS' ARGUMENTS SEEKING TO AVOID JUDICIAL REVIEW OF THE MERITS.

The State Officials also raise a series of arguments that seek to avoid review of the merits of their actions under Federal law, *see* State Supp. Br. at 15-24, but Ninth Circuit law

---

[4] In any event, whether the mere existence of a federal intelligence activity has been publicly acknowledged by the Government is not determinative. It is clear that states have no authority under the Supremacy Clause to investigate any aspects of the Federal Government's operations, *see, e.g.*, USG Opp. to CT Mot for SJ at 14-15 (citing cases), and therefore could not investigate any federal intelligence activities, even if publicly acknowledged by the Government.

demonstrates that each of these arguments is meritless.

*Younger Abstention:* The State Officials argue that the Court should abstain under *Younger*, *see* State Supp. Br. at 15-16, but concede that the "holding of the Ninth Circuit in *United States v. Morros*, 268 F.3d 695 (9th Cir. 2001)" is that "*Younger* abstention does not apply when the United States is the plaintiff." *See id*. While the State Officials suggest that this Court should disregard Ninth Circuit precedent, *Morros* squarely controls the resolution of this argument. *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) (explaining that Ninth Circuit panels and district courts may depart from Ninth Circuit precedent only upon binding "intervening higher authority" that "effectively overruled" prior panel decision). *Younger* abstention is inapplicable.[5]

*Declaratory Judgment Act:* The State Officials also argue that the Court should decline to enter any relief under the Declaratory Judgment Act. *See* State Supp. Br. at 16 (*Wilton v. Seven Falls*, 515 U.S. 277 (1995)). But *Wilton*'s holding is limited to situations in which the federal case (i) involves the "same parties," (ii) raises only issues of state law, and (iii) that "presents [an] opportunity for the ventilation of the same state law issues" that were "pending in state court." *Id.* at 283; *id.* at 290 (refusing to extend its holding to cases raising issues of federal law or cases in which there are no parallel state proceedings). *See also Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2004) (setting forth other relevant factors for consideration). These cases do not involve the "same parties" because the United States is not a party to any of the state administrative actions, and present only issues of Federal law. *See New Orleans Public Service Inc. v. City of New Orleans*, 491 U.S. 350, 361-62 (1989) (holding that a Supremacy Clause challenge to a state utility council's decision "does not involve a state-law

---

[5] The United States has not argued that *Younger* abstention is inapplicable only because the United States is the plaintiff. We have also argued that *Younger* does not apply because our preemption claims are facially conclusive and there is no important state interest at issue. *See, e.g.*, USG Opp. to VT Mtn to Dismiss at 19-25. Even if *Morros* were not binding, Ninth Circuit law supports these alternative abstention arguments. *See, e.g.*, *Gartrell Construction*, 940 F.2d at 441-42. Finally, although *Younger* is clearly inapplicable, even if it did apply to some of these cases, it could not apply to the Missouri cases because the Missouri officials initiated *Clayton*, which is now pending in *Federal court*.

claim"). *Wilton* is therefore inapplicable.

Further, because this action "will settle all aspects of the controversy" as to whether the State Officials have any authority to inquire into alleged foreign intelligence operations and will "serve a useful purpose in clarifying the legal relations at issue," declaratory relief should not be withheld. *See Principal Life Ins. Co.*, 394 F.3d at 672. And because we seek both declaratory *and* injunctive relief, the abstention standard discussed in *Wilton* (from *Brillhart*) is inapplicable in any event. *See City & County of San Francisco v. United States*, 930 F. Supp. 1348, 1352 (N.D. Cal. 1996) (Walker, J.) (citing *40235 Washington Street Corp. v. Lusardi*, 976 F.2d 587 (9th Cir. 1992)).

*Cause of Action:* The State Officials continue to press the argument that the United States has not established a cause of action. *See* State Supp. Br. at 16-18. But Ninth Circuit precedent clearly establishes at least three distinct causes of action that apply in this case: (i) a *Debs* cause of action for the sovereign; (ii) an implied cause of action to enjoin preempted state law; and (iii) an implied cause of action for an injunction against state officials acting in derogation of the Constitution and Federal law. *See* USG Supp. Br. at 4-5 & n.3 (citing cases). The State Officials challenge only the *Debs* cause of action and fail to address the others. But even if the United States had pleaded only a *Debs* cause of action, the State Officials concede, *see* State Supp. Br. at 17, that in the Ninth Circuit the United States may rely on a non-statutory cause of action "[w]here interference with national security has been at issue." *United States v. Mattson*, 600 F.2d 1295, 1298 (9th Cir. 1979).[6]

*Justiciability*: The State Officials argue (in various guises) that these cases are not

---

[6] Despite *Mattson*'s plain language, the State Officials nevertheless argue that no cause of action exists when it is based solely upon a Government "assertion that national security is at issue." *See* State Supp. Br. at 17. *Mattson* forecloses this argument. *See Mattson*, 600 F.2d at 1298-99 (recognizing that had there been an "assertion [by the United States] of . . . interference with national security" a *Debs* cause of action would have existed). In any event, the United States relies upon the plain language of the state disclosure orders, not assertions, to establish that the orders at issue seek to intrude upon matters of national security. *See* Exh. A, hereto. *See also* Alexander Decl., ¶¶ 16-20.

justiciable under Article III.[7] These arguments are wholly without merit. The State Officials are *presently* seeking to require the disclosure of information by the carriers relating to alleged intelligence activities of the Federal Government. The United States challenges the very authority of the State Officials to take any actions to investigate the alleged intelligence operations of the United States, and these disputes are thus plainly ripe.

*Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052 (9th Cir. 1987), demonstrates that the State Officials' argument is meritless. In *Shell Oil*, the Ninth Circuit considered a preemption challenge by an oil company against the City of Santa Monica's attempt to impose safety standards in negotiations over a franchise agreement. *Id.* at 1061. Like the State Officials, the City asserted that the preemption claims were not justiciable because it was not clear, at that stage of negotiations, whether the agreement would contain particular safety standards or even be executed. *Id.* The Court dismissed this "mischaracteriz[ation]" of the preemption challenge because the oil company requested a declaratory judgment that the City lacked authority to "impose *any* safety standards." *Id.* In so doing, the Ninth Circuit noted that an "issue is not unripe because a mere possibility exists" that other steps in the process might occur. *See id.* at 1162. As other Ninth Circuit cases establish, a challenge to the very authority of officials to issue such disclosure orders is plainly justiciable. *See United States v. Geophys. Corp.*, 732 F.2d 693, 698 (9th Cir. 1984) (holding that a challenge to public disclosure provisions and decision of federal officials to disclose data was ripe); *see also Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1490 (9th Cir. 1988) (holding that "privilege issue ripe for review" in an interlocutory All Writs Act appeal challenging a court's order of disclosure of privileged information).[8]

It also is difficult to understand how the State Officials can characterize their orders,

---

[7] The Maine Officials do not join these arguments.

[8] The United States' claims are also "fit for judicial decision" because the "controversy is essentially legal in nature" and "no further factual amplification is necessary." *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 (9th Cir. 2001) (internal marks omitted). As the *City of Auburn* Court noted, preemption and Supremacy Clause claims are ideally suited for judicial review because they "present[] pure question[s] of law." *Id.* at 1172-73.

which impose immediate legal obligations under state law, as abstract or theoretical. While federal courts surely "must refrain from deciding abstract or hypothetical controversies and from rendering impermissible advisory opinions with respect to such controversies," *Earth Island Institute v. Ruthenbeck*, 459 F.3d 954, 961 (9th Cir. 2006), the claim that *these* cases "are devoid of facts," *see* State Supp. Br. at 21-22, is meritless. These cases focus on what is presently occurring in state administrative proceedings and challenge actual state orders purporting to create *immediate* legal duties to disclose information, if it exists, regarding specific topics. The suggestion that these facts are "at best, hypothetical" is frivolous.[9] *See id.*

*Standing:* The State Officials' assertion that the United States lacks standing is also meritless. *See* State Supp. Br. at 23-24. For an injury to be constitutionally cognizable, the law "does not require Damocles' sword to fall before [courts] recognize the 'realistic danger of sustaining a direct injury.'" *See City of Auburn*, 260 F.3d at 1171-72. The United States' sovereign interests are injured not only by the State Officials' attempts to regulate federal function—through state investigations of third parties that they alleged to be involved in alleged intelligence operations—but also by a present and immediate demand for the release of national security information. *See, e.g.*, Alexander Decl., ¶¶ 16-20. Far lesser injuries than these are sufficient to establish an injury to the United States. *See United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985). In addition, the causality and redressibility prongs of the standing inquiry are clearly satisfied. The challenged conduct—investigating alleged intelligence operations of the United States and demanding disclosure of information, if it exists, from the carriers—is the cause of the United States' injuries. And an order invalidating the State Officials' actions and permanently enjoining them from enforcing their disclosure orders would

---

[9] The State Officials' reference to a lack of adversity, *see* State Supp. Br. at 23, is equally meritless because the State Officials are unquestionably adverse to the United States. The adversity requirement demands that "the controversy 'must be a real and substantial (one) admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Chadha v. Immigration and Naturalization Service*, 634 F.2d 408, 419-20 (9th Cir. 1980). Here, a decision in the United States' favor would end the state administrative processes; a final decision in favor of the State Officials would permit them to continue.

redress the United States' injuries. Where, as here, the United States seeks to prevent the imminent and grave harm to the United States' sovereign interests threatened by the State Officials' actions, there can be no question that these cases are justiciable.

## CONCLUSION

For the foregoing reasons, and those set forth in the United States' Supplemental Brief and the filings in the respective State Cases, the Court should grant the United States' motions for summary judgment in the above referenced actions and otherwise declare invalid the various states' efforts to intrude upon the United States' authority over alleged foreign intelligence activities.

DATED: June 1, 2007  Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

　*/s/ Alexander K. Haas*
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS (SBN 220932)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 307-3937
Fax: (202) 616-8470/(202) 616-8202
Email: alexander.haas@usdoj.gov