PEGGY A. WHIPPLE (MO 54758)
peggy.whipple@psc.mo.gov
Attorney for Missouri Public Service Commission
LINDA CONTI (ME 3638)
Linda.Conti@maine.gov
Assistant Attorney General of Maine
PATRICK DEALMEIDA
patrick.dealmeida@dol.lps.state.nj.us
Assistant Attorney General of New Jersey
TATIANA D. EIRMANN (CT 03398)
tatiana.eirmann@po.state.ct.us
Assistant Attorney General of Connecticut
MICHAEL DONOFRIO (VT 4400)
mdonofrio@atg.state.vt.us
Assistant Attorney General of Vermont

[Additional counsel for states appear on signature page.]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | ) ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| *Clayton, et al. v. AT&T Communications of the Southwest, et al.* (W.D. Mo. 07-1187) | ) ) ) |
| *United States v. Gaw, et al.* (E.D. Mo. 07-1242) | ) |
| *United States v. Adams, et al.* (D. Me. 07-1323) | ) |
| *United States v. Farber, et al.* (D. N.J. 07-1324) | ) |
| *United States v. Palermino, et al.* (D. Conn. 07-1326) | ) ) |
| *United States v. Volz, et al.* (D. Vt. 07-1396) | ) |

MDL Docket No. M:06-cv-1791-VRW

**STATE OFFICIALS' SUPPLEMENTAL REPLY BRIEF**

Hearing:  June 21, 2007; 2:00 p.m.
Courtroom:  6, 17th Floor
Judge:  Hon. Vaughn R. Walker

# TABLE OF CONTENTS

I.     The Government Has No Cause of Action.........................................................................1

II.    The State Officials Are Neither Directly Nor Indirectly
Regulating The Federal Government ...........................................................................2

III.   Congress Has Not Preempted The Field of National Security........................................4

      A.      Congress Specifically Contemplated State Participation .......................................4

      B.      The Executive Branch Understands That Current Law Does
Not Preempt The State Officials' Inquiries ..............................................................5

      C.      The Cases Cited by The Government do Not Support a Finding
of Field Preemption Here...........................................................................................7

IV.   The Government Still Fails to Meet Its Burden of Demonstrating That The
State Officials' Actions Conflict With Federal Activities.................................................9

V.    There is No Categorical Bar to State Action That Touches Upon The
Federal Government's National Security Operations ....................................................11

VI.   The Supplemental Alexander Declaration Should Not be Considered,
And, in Any Event, Does Not Establish That The State Officials'
Actions Actually Interfere With National Security Operations .....................................14

VII.   The Government's Reliance on *United States v. Adams* is Unwarranted .......................15

# TABLE OF AUTHORITIES

## Cases

*Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003) ........................................ 13

*Anaheim v. Duncan*, 658 F.2d 1326 (9th Cir. 1981) ........................................ 15

*AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366 (1999) ........................................ 9

*Bush v. Lucas*, 462 U.S. 367 (1983) ........................................ 1

*Chappell v. Wallace*, 462 U.S. 296 (1983) ........................................ 1

*Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) ........................................ 9

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) ........................................ 11, 12

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) ........................................ 9

*Gartrell Constr. v. Aubry*, 940 F.2d 437 (9th Cir. 1991) ........................................ 3

*Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989) ........................................ 2

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ........................................ 3

*Hancock v. Train*, 426 U.S. 167 (1976) ........................................ 2, 3, 10

*Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742 (9th Cir. 1996) ........................................ 7, 8

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006) ........................................ 10

*Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985) ........................................ 11

*In re Debs*, 158 U.S. 564 (1895) ........................................ 1

*In re Grand Jury Subpoena for N.Y. State Income Tax Records*, 468 F. Supp. 575 (N.D.N.Y. 1979) ........................................ 10

*In re Grand Jury Subpoena*, 198 F. Supp. 2d 1113 (D. Alaska 2002) ........................................ 10

*In re NSA Telecomms. Records Order Litig.*, 2007 U.S. Dist. LEXIS 3786 (N.D. Cal. Jan. 18, 2007) ........................................ 4

*In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160 (N.D. Cal. 2001) ........................................ 12, 13

*Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005 (9th Cir. 2007) ...................................................... 10

*Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956) ...................................................... 3

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) ...................................................... 2

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190 (1983) ...................................................... 7, 8

*Pub. Utils. Comm'n of Cal. v. United States*, 355 U.S. 534 (1958) ...................................................... 3

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ...................................................... 7, 8

*Shaw v. Delta Air Lines*, 463 U.S. 85 (1983) ...................................................... 2

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ...................................................... 11

*Total TV v. Palmer Communications, Inc.*, 69 F.3d 298 (9th Cir. 1995) ...................................................... 10

*Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412 (9th Cir. 1990) ...................................................... 2

*Union Oil Co. v. Minier*, 437 F.2d 408 (9th Cir. 1970) ...................................................... 3

*United States v. Adams*, 473 F. Supp. 2d 108 (D. Me. 2007) ...................................................... 15

*United States v. County of Humboldt*, 628 F.2d 549 (9th Cir. 1980) ...................................................... 3

*United States v. Mattson*, 600 F.2d 1295 (9th Cir. 1979) ...................................................... 1

*United States v. Montana*, 699 F. Supp. 835 (D. Mont. 1988) ...................................................... 3

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) ...................................................... 1

*United States v. Philadelphia*, 798 F.2d 81 (3d Cir. 1986) ...................................................... 11

*United Steelworkers of America v. United States*, 361 U.S. 39 (1959) ...................................................... 1

*Zschernig v Miller*, 389 U.S. 429 (1968) ...................................................... 13

**Statutes**

18 U.S.C. § 2520(d) ...................................................... 5

18 U.S.C. § 2511(2)(a)(ii) ...................................................... 5

28 U.S.C. § 1441 .................................................................................................. 6

42 U.S.C. § 1983 .................................................................................................. 2

50 U.S.C. § 1805(i) .............................................................................................. 5

50 U.S.C. § 1861(a)(1) ......................................................................................... 4

50 U.S.C. § 1861(e) .............................................................................................. 4

**Other**

Intelligence Authorization Act For Fiscal Year 2008 ................................................ 5, 6

 IAA Sectional Analysis, 195 ................................................................................. 5

Executive Order No. 13228, 66 Fed. Reg. 51812 (October 8, 2001) ..................... 12, 13

I.		The Government Has No Cause of Action.

In claiming it has a cause of action, U.S. Supplemental Brief, 4-5, the government overstates the contemporary potency of *In re Debs*, 158 U.S. 564 (1895), which has been relegated to bantam status of no relevance to this matter. *See, e.g., United Steelworkers of America v. United States*, 361 U.S. 39, 61 (1959) (despite widespread criticism of *Debs* and Congressional restraints on the injunctive powers that *Debs* invoked, the opinion still retains its "crux" that "the Government may [without statutory authorization] invoke judicial power to abate . . . a [public] nuisance"); *see also United States v. Mattson*, 600 F.2d 1295, 1298 (9th Cir. 1979). Whatever one may say about the requests for information issued by officials of sovereign states, they cannot be characterized as "public nuisances."

Moreover, the downsizing of *Debs* exemplifies the Supreme Court's recognition that separation of powers requires that Congress, rather than the Judiciary, create causes of actions. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 389 (1983) ("Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service"); *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (judicial creation of civil claim against military superior would be "plainly inconsistent with Congress' authority in this field").

The government errs in claiming that "a preemption cause of action exists for any party (sovereign or otherwise) even in the absence of an explicit statutory provision." U.S. Supplemental Brief, 4 (quotations and brackets omitted). The cases cited by the government do not support this claim. In *United States v. Morros*, 268 F.3d 695 (9th Cir. 2001), the court addressed jurisdiction and abstention, not the existence of causes of action. Generally, "[i]t would be inaccurate to say . . . that the concept of preemption itself is the federal claim. One

cannot sue in federal court on a mere claim of 'preemption.'" *Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412, 1415 (9th Cir. 1990). Although a private person may in certain situations bring an action to challenge preempted state action under 42 U.S.C. § 1983, *see Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989); *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983), the United States is not a private person. And the government admits that "without statutory authorization," it cannot sue "to protect . . . the . . . rights of third parties." U.S. Supplemental Brief, 4 n.3. Whatever federal causes of action the telephone companies might enjoy, the government cannot cure its failure to state a claim by piggybacking on to their claims.

## II.  The State Officials Are Neither Directly Nor Indirectly Regulating The Federal Government.

Citing *Hancock v. Train*, 426 U.S. 167 (1976) and *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), the government correctly points out that states generally may not regulate the federal government. U.S. Supplemental Brief, 6. So, when a state attempts to restrict or control the government's actions, it has generally overstepped its authority. For example, in *McCulloch*, a state was attempting to directly tax a federal bank. *McCulloch,* 17 U.S. at 425. The court held that the state could not exercise such control over the federal government, noting that allowing states to tax the federal government would make them "capable of arresting all the measures of the government, and of prostrating it at the foot of the States." *Id*. at 431-32. In *Hancock*, a state attempted to force federal facilities to obtain permits to discharge pollutants into the air, and the court held that such a requirement would effectively allow the state to prohibit operation of federal facilities, which the state could not do. *Hancock*, 426 U.S. at 180.[1] These

---

[1] In *Hancock*, the court specifically stated that "[n]either the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the Federal Government." *Hancock*, 426 U.S. at 179. This directly negates the government's argument that any state action that touches upon national security is barred.

cases are inapposite because here, the State Officials have done nothing to restrict or control the government's intelligence gathering operations.

The government also points out that states are sometimes barred from regulating third parties who work for the government. U.S. Supplemental Brief, 7. As the cases cited by the government demonstrate, though, this is true only when regulation of the third party effectively restricts the government's autonomy. For example, states may not restrict the government's freedom to choose its own contractors by imposing licensing requirements on government contractors or by requiring contractors to pay permit fees. *Gartrell Constr. v. Aubry*, 940 F.2d 437 (9th Cir. 1991); *United States v. Montana*, 699 F. Supp. 835 (D. Mont. 1988); *see also Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956). States may not bring criminal charges against companies to stop them from doing what they were authorized to do by Congress. *Union Oil Co. v. Minier*, 437 F.2d 408 (9th Cir. 1970). And, states may not tax soldiers on free housing provided by the military in a manner that would interfere with the military's ability to provide free housing. *United States v. County of Humboldt*, 628 F.2d 549, 553 (9th Cir. 1980). The touchstone of these and other cases involving state regulation of third parties working for the government is the Supremacy Clause's intolerance of state action that "places a prohibition on the Federal Government." *Pub. Utils. Comm'n of Cal. v. United States*, 355 U.S. 534, 543-44 (1958). So, state action aimed at a third party is an impermissible intrusion on federal authority only if it enables the state to "dictate the manner in which the federal function is carried out." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 n.3 (1988).

Here, the actions the State Officials have taken with respect to the telephone companies do not in any way limit the government's ability to conduct intelligence activities. The State Officials are not prohibiting telephone companies from lawfully sharing records with the

government.  They are not dictating the circumstances under which telephone companies lawfully may provide records to the government.  They are not contemplating imposing sanctions on companies that lawfully provide records to the government.  The State Officials are merely trying to find out whether the companies illegally shared records.  Such inquiries simply do not restrict the actions of the federal government or dictate the manner in which its actions must be carried out.

## III.    Congress Has Not Preempted The Field of National Security.

   *A.     Congress Specifically Contemplated State Participation.*

The government argues that federal law so completely occupies the field of national security that states may not even ask telephone companies whether they turned customer records over to the federal government and, if they did, whether they had proper legal authority for doing so.  In fact, though, Congress, in enacting the Foreign Intelligence Surveillance Act (FISA), specifically contemplated that states (or any interested person) could make such inquiries, and that telephone companies would respond to them.  FISA states that "a person who, in good faith, produces tangible things under an order pursuant to this section shall not be liable to any other person for such production."  50 U.S.C. § 1861(e).  As this Court previously stated in lawsuits alleging the unlawful disclosure of records by telephone companies, this provision "implies the availability of civil claims with respect to the production of records" and makes clear that "FISA thus contemplates that, in the absence of a government order for business records under 50 USC § 1861(a)(1) (as alleged here), injured parties will have causes of action and remedies under other provisions of state and federal law."  *In re NSA Telecomms. Records Order Litig.*, 2007 U.S. Dist. LEXIS 3786, 46-47 (N.D. Cal. Jan. 18, 2007).  Congress clearly understood that persons could bring lawsuits against telephone companies alleging the unlawful disclosure of

telephone records, and provided that the telephone companies may defend against such actions by demonstrating that the records were disclosed to the government pursuant to a FISA order. This provision would make no sense if, as the government claims, telephone companies are not permitted to disclose whether they shared records with the government.

B.     *The Executive Branch Understands That Current Law Does Not Preempt The State Officials' Inquiries.*

Legislation proposed by the Bush Administration further undermines the government's argument that the State Officials' inquiries are preempted.  The proposed legislation would exempt all telecommunications carriers and government personnel from any civil or criminal liability arising out of assistance those carriers provided to the federal government after September 11, 2001.[2]  *See* Intelligence Authorization Act for Fiscal Year 2008 ("IAA"), § 408(a), (c)(2), *available at* http://intelligence.senate.gov/070501/bill.pdf.  Obviously, this legislation would not be necessary if, as the government claims, the State Officials' inquiries are already improper.  If the existing statutory framework "comprehensively and exclusively covers the field of law relating to national security and intelligence activities," U.S. Supplemental Brief, 8, then inserting specific language that "would protect providers from liability based upon allegations that they assisted the government in connection with alleged classified communications intelligence activities" would be unnecessary.  IAA Sectional Analysis, 195. The insertion of this immunity provision wholly undermines the government's central argument – namely, that while the federal government will neither confirm nor deny that it engages in the wholesale collection of phone record data, even if the government does engage in this activity,

---

[2]  The legislation can only be read as superfluous since telecommunications carriers are already exempt from civil or criminal penalties provided certain criteria are met, *see, e.g.,* 18 U.S.C. § 2511(2)(a)(ii), 18 U.S.C. § 2520(d) and 50 U.S.C. § 1805(i), or a tacit admission by the Bush Administration that if inquiries of the State Officials move forward, the legality of conduct by the telecommunications carriers and/or the federal government would be called into question.

such conduct is beyond the reach of the courts.[3]  The only logical conclusion this Court should draw from the proposed legislation being advocated by the White House is that current law does not completely occupy the field and that under our current statutory framework, there is room for the traditional role states play in overseeing the telecommunications industry while not infringing on the role our federal government has in national security matters.

This Court should also be mindful of the attempt by the federal government to extinguish the ability of both state officials and private litigants to vindicate their interests and uphold federal and state law as well as Constitutional protections when determining whether these cases should proceed.  Ample protections exist to shield lawful action from civil or criminal liability.  There is no question that lawful cooperation by telecommunications carriers with lawful requests for information from the federal government should be protected; however, it is equally true that unlawful cooperation by the telecommunications carriers merits investigation and, if warranted, prosecution.  Regrettably, a growing volume of publicly available information confirms that the need for judicial scrutiny of the relationship between the federal government and the telecommunications carriers is warranted and necessary.[4]  *See* State Officials Supplemental Brief, 14-15.

---

[3] Similarly, the inclusion of a specific provision deeming any case challenging this type of conduct or action brought in the state court as arising "under the Constitution and laws of the United States" and properly removed to federal court pursuant to 28 U.S.C.  § 1441 is unnecessary if the government's argument that removal is already proper is to be believed.  *See* IAA § 408(b).

[4] The proposed legislation also includes a provision allowing for removal of any federal district court case involving "classified communications intelligence activities" to the Foreign Intelligence Surveillance Court (FISC) if the Attorney General provides an affidavit that further proceedings risk harm to the national security.  Once in the FISC, the Attorney General and/or DNI may unilaterally withhold information from the court that either official deems necessary to protect national security.  *See* IAA § 411.

C.     *The Cases Cited by The Government do Not Support a Finding of Field Preemption Here.*

The government's mere recitation of black letter law from the decisions in *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190 (1983) *(PG&E)* and *Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742 (9th Cir. 1996) (*Bronster*), U.S. Supplemental Brief, 8-9, does not compel a finding of field preemption.  Under both cases, a state is preempted only if it is acting in a specific area that has been entirely displaced by federal law.  "When the federal government completely occupies a given field or an identifiable portion of it, . . . the test of preemption is whether 'the matter on which the state asserts the right to act is in any way regulated by the Federal Act.'"  *PG&E*, 461 U.S. at 212-13 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 236 (1947)); *Bronster*, 103 F.3d at 749.  As explained in Point II, *supra*, the State Officials are not acting in the area of national security and, in any event, that area has not been entirely displaced by federal law.

Moreover, *PG&E* supports the State Officials' argument and *Bronster* is distinguishable.  In *PG&E*, the Supreme Court rejected the government's field preemption argument because it found that Congress, in enacting the Atomic Energy Act, "intended that the Federal Government should regulate the radiological safety aspects involved in the construction and operation of a nuclear plant, but that the States retain their traditional responsibility in the field of regulating electrical utilities for determining questions of need, reliability, cost, and other related state concerns."  *PG&E*, 461 U.S. at 205 (rejecting argument that Congress intended that federal government would be the "sole regulator of all matters nuclear").  The Court reasoned that because the state law at issue was intended to address economic issues associated with nuclear power, "the statute lies outside the occupied field of nuclear safety regulation" and was not preempted.  *PG&E*, 461 U.S. at 216.

The instant cases are similar to *PG&E*.  As in *PG&E*, since regulation of public utilities and the protection of the public interest are within state purview, the Court should start "'with the assumption that the historic police powers of the states were not to be superseded by the Federal act unless that was the clear and manifest purpose of Congress.'"  *PG&E*, 461 U.S. at 206 (quoting *Rice*, 331 U.S. at 230).  Further, just as the Supreme Court found that Congress had not preempted the field of "all matters nuclear," *PG&E*, 461 U.S. at 205, Congress has not preempted the field of all matters involving privacy of consumers' telephone records.  States still have a role to play in that area, and FISA actually contemplates that states (and individuals) may require telephone companies to disclose whether they had valid legal authority for sharing records with the federal government.

*Bronster* is easily distinguishable from the instant cases.  First, unlike the federal law at issue there, which preempted entirely the field of joint operating agreements between newspapers, there is no federal law that so comprehensively regulates the field of national security as to entirely preempt state action.  Indeed, as discussed above, Congress, in enacting FISA, clearly understood that states would continue to have a role to play in investigating whether telephone companies had legal authority to turn over telephone records to the federal government.  And, even if the federal government does occupy the national security field, the State Officials' actions fall outside that field.  The State Officials are investigating whether customer telephone records have been illegally turned over to private parties, government entities, and law enforcement personnel.  State laws address the relationship between the carriers and their customers, an area of traditional state competence.  The government's argument on field preemption is devoid of references to federal law expressly or tacitly preempting any aspect of that relationship.  The presumption in favor of preserving state authority over intrastate

telecommunications matters remains intact.  It is still described "as a fence that is hog tight, horse high, and bull strong."  *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 375 (1999) (quotations omitted).

## IV.  The Government Still Fails to Meet Its Burden of Demonstrating That The State Officials' Actions Conflict With Federal Activities.

The government's conflict preemption argument remains ephemeral, relying on an imagined conflict between the actions of the State Officials and a now-familiar cohort of federal statutes and executive orders.  U.S. Supplemental Brief, 10 & n.9.  Throughout the briefing already on file, the State Officials have demonstrated that their actions do not conflict with these sources of federal law.  Nothing the government argues in its supplemental brief alters that conclusion.

For example, the government cites the uncontroversial proposition that "the 'authority to protect [security] information falls on the President as head of the Executive Branch and as Commander in Chief.'"  *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) (quoting *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988)).  In *Dorfmont*, the plaintiff challenged the Defense Department's decision to discontinue her security clearance.  Recognizing that the strong presumption against granting a security clearance means that "'no one has a "right" to a security clearance,'" the Ninth Circuit held that judicial review of the merits of a clearance decision was unavailable.  *Id*. (quoting *Egan*, 484 U.S. at 528).  The decision thus rested on the unique circumstances surrounding security clearance decisions, concerns not at play here.  *See id*. ("Security clearance decisions are inherently uncertain; they rest on the ability to predict an individual's future behavior.").  Thus, *Dorfmont* does not advance the government's claim that the State Officials' actions – taken pursuant to their traditional police powers to regulate utilities and protect consumers – conflict with federal statutes or authority.

Nor does the fact that a state law protecting confidential information must yield to a federal grand jury subpoena assist the government's conflict preemption argument. The district court in *In re Grand Jury Subpoena* so held because "'the federal grand jury is a product of the Fifth Amendment and its powers.'" 198 F. Supp. 2d 1113, 1115 (D. Alaska 2002) (quoting *In re Grand Jury Subpoena for N.Y. State Income Tax Records*, 468 F. Supp. 575, 577 (N.D.N.Y. 1979)). By contrast, the government pegs its conflict preemption argument not to a constitutional provision, but to a collection of statutes and executive orders. Moreover, neither of the "two bodies of federal constitutional common law" raised by the government, U.S. Supplemental Brief, 10 n.9, supports preemption: the government has not raised the state secrets privilege in these cases, and the *Totten/Tenet* doctrine does not apply for the reasons this Court laid out in *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 991-93 (N.D. Cal. 2006).

As the State Officials have argued in their briefing to date, the government's preemption claim rests upon the unsupportable premise that state action making, at most, incidental contact with national security functions is preempted. Indeed, as the Ninth Circuit recently observed, "[t]ension between federal and state law is not enough to establish conflict preemption," *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007), and a "'hypothetical conflict is not a sufficient basis for preemption.'" *Id.* (quoting *Total TV v. Palmer Communications, Inc.*, 69 F.3d 298, 304 (9th Cir. 1995)); *see also Hancock*, 426 U.S. at 179 ("Neither the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the Federal Government."). Thus, based on the foregoing, along with the reasons given in the State Officials' briefing already on file, the government has failed to demonstrate conflict preemption.

Remarkably, the government claims that facts are irrelevant when it comes to deciding whether state actions would interfere with federal activities. U.S. Supplemental Brief, 2. Without a doubt, there are cases where a state statute so plainly conflicts with federal law that no factual inquiry is necessary. In the absence of such a conflict, though, courts routinely examine in detail the actual effect of the state action on federal activities, and find preemption only when the former substantially interferes with the latter. *See, e.g., Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003); *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 720-21 (1985); *United States v. Philadelphia*, 798 F.2d 81 (3d Cir. 1986).

## V.     There is No Categorical Bar to State Action That Touches Upon The Federal Government's National Security Operations.

Rather than engage in a traditional preemption analysis, the government seeks to create a new doctrine, arguing that states are flatly prohibited from conducting any activity that touches upon national security. U.S. Supplemental Brief, 6-7. In support of this argument, the government relies upon *Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003). There, California enacted a law creating a cause of action for persons forced to perform slave labor during World War II. *Id*. at 703. The court held that the statute was unconstitutional because

> the Constitution allocates the power over foreign affairs to the federal government exclusively, and the power to make and resolve war, including the authority to resolve war claims, is central to the foreign affairs power in the constitutional design. In the absence of some specific action that constitutes authorization on the part of the federal government, states are prohibited from exercising foreign affairs powers, including modifying the federal government's resolution of war-related disputes.

*Id*. at 713-14.

The government's reliance on this case is misplaced. First, the fact that California had created a new remedy for war-related injuries was critical to the court's decision in *Deutsch*. *Id*. at 716. Indeed, the Ninth Circuit specifically noted that "a state is generally more likely to

exceed the limits of its power when it seeks to alter or create rights and obligations than when it seeks merely to further enforcement of already existing rights and duties." *Id*. at 708. The State Officials are not altering or creating rights – they are simply attempting to determine whether telephone companies are complying with their existing duty to not disclose confidential customer information without proper legal authorization.

Moreover, if the government is relying on *Deutsch* to suggest that state intrusion into national security should be treated the same as state intrusion into foreign affairs, the argument fails for at least three reasons. First, the State Officials are not acting in the areas of national security or foreign affairs. They are acting in areas within their traditional police powers: utility regulation and consumer protection. Second, state action implicating foreign affairs is treated uniquely because the Constitution assigns foreign affairs powers exclusively to the federal government. *Deutsch*, 324 F.3d at 709 ("the Supreme Court has long viewed the foreign affairs powers specified in the text of the Constitution as reflections of a generally applicable constitutional principle that power over foreign affairs is reserved to the federal government").[5] The Constitution does not do so with respect to national security. Indeed, states indisputably have a role to play when it comes to national security, and the federal government provides significant funding to the states for this very purpose. Under Executive Order No. 13228, §3(b)(i)(A), 66 Fed. Reg. 51812 (October 8, 2001), the Office of Homeland Security must "facilitate collection from State and local governments . . . of information pertaining to terrorist threats or activities within the United States." The Executive Order also expressly provides for cooperation with state and local governments and private entities: "The Office shall encourage

_____

[5] The decision in *Deutsch* affirmed this Court's holding in *In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160 (N.D. Cal. 2001). This Court's holding, like that of the 9th Circuit, was based on the premise that the Constitution assigns foreign affairs powers exclusively to the federal government. *Id.* at 1178.

and invite the participation of State and local governments and private entities, as appropriate, in carrying out the Office's functions." *Id*., § 3(j). Given this contemplated state involvement and absence of exclusive delegation in the Constitution, there is no basis for importing a foreign affairs analysis into these cases.

Finally, even when it comes to foreign affairs, there is no absolute bar to state involvement; instead, states "may legislate with respect to local concerns that touch upon foreign affairs," *In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d at 1173, and such legislation is unconstitutional only "when it has more than an 'incidental or indirect effect in foreign countries.'" *Id*. at 1171 (quoting *Zschernig v Miller*, 389 U.S. 429, 440 (1968)). In fact, just recently the Supreme Court stated that "at *some point* an exercise of state power that touches on foreign relations must yield to the National Government's policy," thereby implicitly acknowledging that some state regulation relating to foreign affairs is permissible. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003) (emphasis added). The court explicitly stated that "it might make good sense to require a conflict" when a state acts within its "traditional competence" and not require a conflict when a state acts "with no serious claim to be addressing a traditional state responsibility." *Id*. at 420 n.11. If the Court were to import a foreign affairs analysis here, the State Officials submit that in light of the fact that they are exercising traditional state powers – utility regulation and consumer protection – the government still must demonstrate that there is clear conflict between the actions of the State Officials and the government's national security activities. The government has not demonstrated such a conflict.

**VI.    The Supplemental Alexander Declaration Should Not Be Considered, And, in Any Event, Does Not Establish That The State Officials' Actions Actually Interfere With National Security Operations.**

Hedging its bets, the government argues that even if it must make a fact-based showing of interference, it has met that burden with the last-minute declaration of Lt. General Alexander dated April 26, 2007.  As an initial matter, the declaration should not be considered because it comes too late; is in contravention of this Court's scheduling order of March 26, 2007 affording the parties the opportunity to file only "briefs," rather than additional evidence; incorporates non-factual legal argument (¶ 20); and incorporates *ex parte* declarations from related proceedings as to which the State Officials have had no opportunity for examination or comment (¶ 19).

Having had no opportunity to examine the incorporated *ex parte* declarations from related proceedings, the State Officials cannot definitively state that the declaration, even if accepted by the Court, would fail to support the government's burden of proof.  But the new declaration, by itself, fails to suggest how the government's mere say-so of interference and conflict can be valid in view of the disclosures by government officials and abundant revelations about the domestic intelligence gathering activities of government agencies.[6]  At the very least, the Court should not credit Lt. General Alexander's statements without first giving the State Officials an opportunity to explore, perhaps through *in camera* discovery, the basis for those statements.

---

[6] The new Alexander affidavit does not address the unique situation in Maine.  There, the State Officials are only asking Verizon to affirm under oath its prior press releases in which it denied sharing records with the federal government.  Lt. General Alexander does not even claim that (much less explain how) affirming a prior disclosure causes any additional interference.

**VII.** **The Government's Reliance on *United States v. Adams* is Unwarranted.**

Judge Woodcock's decision in *United States v. Adams*, 473 F. Supp. 2d 108 (D. Me. 2007) is entitled to little consideration.[7]  First, the decision was on a motion for a preliminary injunction, and, because the standard for deciding such a motion is different from the standard for deciding the merits, such decisions are not "law of the case" and are not binding precedent. *Anaheim v. Duncan*, 658 F.2d 1326, 1328 n.2 (9th Cir. 1981) ("We have not departed from the general rule that a decision on a preliminary injunction does not constitute the law of the case and the parties are free to litigate the merits.").  Second, as Judge Woodcock himself acknowledged, he was operating under "extremely compressed time constraints" and "[t]he briefing and argument schedule allowed precious little time with the press of other matters to research and write a decision on an issue of manifest public significance, due within hours of oral argument."  *Adams*, 473 F. Supp. 2d at 114 n.7.

Finally, while the central issue in all of these cases is whether federal law preempts the actions of the State Officials, Judge Woodcock never conducted any preemption analysis.  In fact, he did not even address the applicable preemption standards.  Instead, the basis of his holding was that, at least for now, he would defer to the government's assertion that the Maine PUC's conduct threatened national security.  *Adams*, 473 F. Supp. 2d at 118-19.  Judge Woodcock's ruling did not recognize that the government bears the burden of demonstrating that the actions of the State Officials would actually interfere with the government's national security operations.

---

[7] It is important to note that Judge Woodcock did not review or consider the unique circumstances of the other state cases, so his decision is of no relevance to those cases.

DATED:  June 1, 2007

Respectfully submitted,

G. STEVEN ROWE
Attorney General of Maine


/s/ Christopher C. Taub
Christopher C. Taub (ME 8416)
Christopher.C.Taub@maine.gov
Linda Conti (ME 3638)
Linda.Conti@maine.gov
Assistant Attorneys General
Six State House Station
Augusta, Maine  04333-0006
Tel. (207) 626-8800
Fax: (207) 287-3145
Counsel for Defendants Adams, Vafiades,
and Reishus

**DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B**

I, CHRISTOPHER C. TAUB, hereby declare pursuant to General Order 45, § X.B, that I have obtained the concurrence in the filing of this document from each of the other signatories listed below. I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed on June 1, 2007, at Augusta, Maine.

/s/ Christopher C. Taub
Christopher C. Taub

STUART RABNER
ATTORNEY GENERAL OF NEW
JERSEY

RICHARD BLUMENTHAL
ATTORNEY GENERAL
OF CONNECTICUT

By: /s/ Patrick DeAlmeida
Patrick DeAlemeida
Assistant Attorney General
R. J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
Tel: (609) 292-8576
Fax: (609)777-3120
Counsel for Defendants Farber, Ricketts
and O'Donnell

By: /s/ Tatiana D. Eirmann
Tatiana D. Eirmann
Assistant Attorney General
10 Franklin Square
New Britain, CT 06051
Tel: (860) 827-2620
Fax: (860) 860-2893
Counsel for Defendants Palermino,
Downes, Betkoski, and George

WILLIAM H. SORRELL
ATTORNEY GENERAL OF VERMONT

By: /s/ Michael N. Donofrio
Michael N. Donofrio
Mark J. DiStefano
Assistant Attorneys General
109 State Street
Montpelier, VT 05609
Tel: (802) 828-3171
Fax: (802) 828-2154
Counsel for Defendants Volz,
Coen, Burke, and O'Brien

/s/ Peggy A. Whipple
Peggy A.Whipple
Missouri Bar No. 54758
peggy.whipple@psc.mo.gov
Jennifer Heintz
Missouri Bar No. 57128
jennifer.heintz@psc.mo.gov
P.O. Box 360
Jefferson City, MO 65102
Tel: (573) 526-6715
Fax: (573) 751-9285
Attorneys for the Missouri Public Service
Commission