PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
DAVID L. ANDERSON #149604
JACOB R. SORENSEN #209134
MARC H. AXELBAUM #209855
DANIEL J. RICHERT #232208
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com

SIDLEY AUSTIN LLP
DAVID W. CARPENTER (admitted *pro hac vice*)
BRADFORD A. BERENSON (admitted *pro hac vice*)
DAVID L. LAWSON (admitted *pro hac vice*)
EDWARD R. MCNICHOLAS (admitted *pro hac vice*)
ERIC A. SHUMSKY #206164
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8010
Facsimile: (202) 736-8711

Attorneys for AT&T Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL SECURITY AGENCY TELE-COMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>*Clayton, et al. v. AT&T Communications of the Southwest, Inc., et al.*, No. 07-1187 | MDL Dkt. No. 06-1791-VRW<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF AT&T COMMUNICATIONS OF SOUTHWEST, INC., ET AL. TO DISMISS PLAINTIFFS' APPLICATION TO COMPEL**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date: June 21, 2007<br>Time: 2 p.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Vaughn R. Walker |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.  STATE AUTHORITIES LACK POWER UNDER THE CONSTITUTION TO OVERSEE OR INVESTIGATE ALLEGED CARRIER COOPERATION WITH FEDERAL INTELLIGENCE ACTIVITIES ........................................................................................... 2

II. FEDERAL STATUTES PREEMPT PLAINTIFFS' SUBPOENAS ......................... 5

III. FEDERAL COMMON LAW PREEMPTS PLAINTIFFS' SUBPOENAS ............. 10

IV. PLAINTIFFS DO NOT HAVE AUTHORITY UNDER STATE LAW TO ENFORCE THE SUBPOENAS ........................................................................ 12

CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

*Bank of Am. v. City & County of S.F.*,
309 F.3d 551 (9th Cir. 2002) ................................................................................6

*Brooks v. Pool-Leffler*,
636 S.W.2d 113 (Mo. Ct. App. 1982), *recognized as abrogated
by statute on other grounds, Gerlach v. Mo. Comm'n on Human Rights*,
980 S.W.2d 589 (Mo. Ct. App. 1998) ...................................................................13

*California ex rel. Lockyer v. Mirant Corp.*,
266 F. Supp. 2d 1046 (N.D. Cal. 2003), *aff'd*,
375 F.3d 831 (9th Cir.), *amended on denial of reh'g*,
387 F.3d 966 (9th Cir. 2004) ................................................................................10

*Cook v. Cook*,
97 S.W.3d 482 (Mo. Ct. App. 2002) .....................................................................13

*Gartrell Constr. Inc. v. Aubry*,
940 F.2d 437 (9th Cir. 1991) ..................................................................................4

*Haw. Newspaper Agency v. Bronster*,
103 F.3d 742 (9th Cir. 1996) ..................................................................................7

*Hepting v. AT&T Corp.*,
439 F. Supp. 2d 974 (N.D. Cal. 2006) ..................................................................11

*Hillsborough County v. Automated Med. Labs.*,
471 U.S. 707 (1985) ................................................................................................6

*Inland Empire Chapter of Associated General Contractors of Am. v. Dear*,
77 F.3d 296 (9th Cir. 1996) ....................................................................................7

*Johnson Controls, Inc. v. Citizens Mem'l Hosp. Dist.*,
952 S.W.2d 791 (Mo. Ct. App. 1997) ...................................................................13

*New SD, Inc. v. Rockwell Int'l Corp.*,
79 F.3d 953 (9th Cir. 1996) ..................................................................................10

*State ex rel. Philipp Transit Lines, Inc. v. Pub. Serv. Comm'n*,
552 S.W.2d 696 (Mo. 1977) ..................................................................................13

*Stehney v. Perry*,
101 F.3d 925 (3d Cir. 1996) ....................................................................................4

*In re Tarble*,
80 U.S. (13 Wall.) 397 (1871) ................................................................................3

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003) ................................................................................6

*Union Oil Co. of Cal. v. Minier*,
437 F.2d 408 (9th Cir. 1970) ...............................................................................................5

*United States v. Adams*,
473 F. Supp. 2d 108 (D. Me. 2007) ..................................................................................4, 8

*United States v. Hall*,
543 F.2d 1229 (9th Cir. 1976) ............................................................................................10

*United States v. Locke*,
529 U.S. 89 (2000) ...............................................................................................................6

*Wigfall v. City & County of San Francisco*,
__ F. Supp. 2d __, 2007 WL 174434 (N.D. Cal. Jan. 22, 2007) ..........................................14

*Zschernig v. Miller*,
389 U.S. 429 (1968) .............................................................................................................5

**STATUTES**

18 U.S.C. § 798 ......................................................................................................................7

50 U.S.C. § 402 note ..........................................................................................................7, 8

RSMo. § 386.130.........................................................................................................12, 13
RSMo. § 386.360.1......................................................................................................12, 13
RSMo. § 536.077...............................................................................................................12

**LEGISLATIVE HISTORY**

S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112 .....................................9

## INTRODUCTION

The Plaintiff Missouri Commissioners argue that they are not constitutionally disabled or statutorily preempted from enforcing their subpoenas, because they are engaged in nothing more than a routine investigation into alleged violations of state privacy law. They claim to be interested only in AT&T's alleged activities, not those of the NSA, as if an investigation into an alleged relationship between two parties can concern only one. And they repeatedly assert that their effort to determine whether AT&T shared bulk call records databases with the NSA does not harm federal military or intelligence activities, even though the nation's most senior intelligence officials have previously sworn that the opposite is true, and three separate district courts, including this one, have refused to allow inquiry into this subject.

Notwithstanding the Commissioners' efforts to portray their subpoenas as a garden-variety exercise of state police power, the express purpose of their investigation is – and its clear effect would be – to determine whether AT&T participated in alleged counterterrorism activities of the NSA and, if so, the details of that participation. Each and every topic set forth in Plaintiffs' subpoena expressly concerns the NSA. *See* Subpoena Ad Testificandum ¶¶ 1-5, *Clayton v. AT&T Commc'ns of the S.W., Inc.*, No. 07-1187, Dkt. 1-3, at 9. Indeed, Plaintiffs admit that their investigation was "made in response to media reports" of AT&T's alleged disclosure of call records to the NSA, and they expressly assert that the investigation and "the need for judicial scrutiny" is justified by, among other things, recent disclosures of unrelated "violat[ions of] federal law [by the Federal Government] in the issuance of national security letters to carriers seeking call record information." Pls.' Br. of P's & A's in Opp'n to AT&T's Mot. to Dismiss ("Opp'n"), MDL No. 06-1791, Dkt. 275, at 5, 19-21, & n.3.

The authority of the Missouri Public Service Commission to regulate intrastate operations of telecommunications carriers does not permit the Commission – much less two of its five Commissioners – to investigate or oversee federal military and intelligence activities. Merely because Plaintiffs identify some domain of potentially applicable state law

hardly means that their subpoenas do not invade spheres of authority reserved to the federal government under the Constitution or federal statutes. If Plaintiffs' reasoning were correct, there would be no meaningful limit on the states' ability to use their local law authorities to superintend the activities of the federal government. This is, of course, not the law. Plaintiffs' subpoenas intrude into exclusively federal domains, conflict with and are preempted by federal statutory and common law, and cannot be enforced under Missouri law. Accordingly, their lawsuit must be dismissed.

## ARGUMENT

### I. STATE AUTHORITIES LACK POWER UNDER THE CONSTITUTION TO OVERSEE OR INVESTIGATE ALLEGED CARRIER COOPERATION WITH FEDERAL INTELLIGENCE ACTIVITIES.

In its opening memorandum, AT&T demonstrated that Plaintiffs' effort to enforce their subpoenas is constitutionally forbidden because the Constitution both reserves the domain of foreign intelligence to the federal government and forbids the states from attempting to oversee such exclusively federal activities. *See* Mot. of Defs.' AT&T Commc'ns of S.W., Inc. et al. to Dismiss Pls.' Applications to Compel ("Mot. to Dismiss"), MDL No. 06-1791, Dkt. 240, at 6-7. Plaintiffs do not, because they cannot, gainsay these settled constitutional principles. Instead, Plaintiffs offer three reasons why these principles do not apply here: (1) the cases cited by AT&T involve facts that are not identical to the facts alleged here; (2) Plaintiffs' investigation targets AT&T, and not the NSA; and (3) the investigation concerns state privacy law, and so does not concern foreign intelligence. For the most part, these arguments simply attack the factual premise of AT&T's legal arguments, and none survives scrutiny.

*First*, Plaintiffs do not seek to distinguish the holding or underlying reasoning of the numerous cases cited by AT&T. *Id.* at 6-9 & nn.7-8. Rather, they make the conclusory assertion that these cases do not control because their facts are not identical to those here, without explaining why those factual distinctions make a difference to the legal analysis. Opp'n at 6-7. Merely noting, for example, that this Court's decision in *In re World War II Era Japanese Forced Labor Litigation* involved "a California statute permitting suits for

-2- AT&T REPLY IN SUPPORT OF MOTION TO DISMISS
CLAYTON v. AT&T, No. 07-1187
MDL No. 06-1791-VRW

compensation for World War II forced labor" is an observation without legal consequence. *Id.* at 6.[1]

*Second*, Plaintiffs contend that their investigation does not concern foreign intelligence because they issued subpoenas to AT&T, not the NSA. *E.g.*, *id.* at 4 ("This attempted investigation has been and remains very specifically limited to *only the actions of the six defendants*, who are private parties . . . ."). In the first place, this argument cannot be squared with Plaintiffs' admission that the subpoenas by their terms require AT&T to divulge information about NSA activities. Their sole response is that the subpoenas' references to the NSA were "positional." *Id.* at 4-5. Whatever that may mean, Plaintiffs cannot both expressly demand that a carrier disclose information sufficient to confirm or refute public reports that bulk call records data were shared with the NSA as part of an assertedly classified counterterrorism program, and at the same time deny that their investigation concerns alleged foreign intelligence surveillance. Nor would it help to edit the subpoenas to remove references to the NSA. *Id.* at 5. Deleting the word "NSA" would not change the fact that the subpoenas seek disclosure of information pertaining to allegations that AT&T shared bulk call records data to support federal counterterrorism activities.[2]

The United States has explained that compliance with the subpoenas would impede the federal government's foreign intelligence activities by "improperly reveal[ing] intelligence sources and methods," regardless of whether AT&T was or was not involved in any activities of the kind that stimulated Plaintiffs' inquiry. Compl. ¶ 39, *United States v. Gaw*,

---

[1] Plaintiffs discuss in slightly greater detail *In re Tarble*, 80 U.S. (13 Wall) 397 (1871), focusing on *Tarble*'s observation that there are "co-existing spheres of federal and state" powers. Opp'n at 7-8. They ignore, however, that in the very passage they quote, the Supreme Court recognized that, in light of "the distinct and independent character of the two governments, within their respective spheres of action, it follows that *neither can intrude with its judicial process into the domain of the other*." 80 U.S. (13 Wall) at 407 (emphasis added). Plaintiffs' subpoenas violate the Constitution precisely because they intrude into the exclusively federal function of gathering foreign intelligence to prevent external attack.

[2] Nor does Plaintiffs' new reference (Opp'n at 19-20) to the report by the Justice Department's Inspector General identifying defects in the FBI's issuance of National Security Letters ("NSLs") alter the state-federal balance on these matters: Missouri PSC Commissioners have no more authority to use state law to investigate or punish assertedly problematic disclosures of call records to the FBI than to the NSA.

1 No. 07-1242, Dkt. 1-1, at 11; Alexander Decl., Dkt. 265 Att. 1, ¶¶ 16-17, at 8-9.[3] The fact that an in-house economist at the Missouri PSC believes that the call records themselves are not state secrets is irrelevant, as the subpoenas do not in the main seek the call records themselves, and national security-related judgments are far beyond the institutional competence or charter of the Missouri PSC or its economists anyway. *See* Opp'n at 19 (citing Aff. of Natelle Dietrich, Mem. in Opp. to Summ. J., *United States v. Gaw*, No. 07-1242, Dkt. 1-71). "[I]n making assessments about the impact of [a state investigation] on national security, the [state agency] is acting beyond its depth." *United States v. Adams*, 473 F. Supp. 2d 108, 118 (D. Me. 2007).

Plaintiffs' argument that their subpoenas are permissible because they have nothing to do with "[i]dentifying the third parties to whom disclosure of these customer records was made" or even whether "there was such disclosure" in the first instance is erroneous as a factual matter. Opp'n at 4. How could AT&T say anything about, for instance, "[t]he nature or type of information disclosed to the NSA" and "[t]he date or dates on which [such] disclosures were made" without acknowledging whether there was a disclosure to the NSA and its approximate scope? Subpoena Ad Testificandum ¶¶ 3, 4, Dkt. 1-3, at 9. More fundamentally, the legality of third-party disclosures of call records cannot be assessed without knowing to whom those disclosures were made, under what circumstances, and under what legal authority. That would be true even if the Commissioners' sole focus were on alleged violations of state law, because state regulation of alleged private contractors to the federal government violates the Supremacy Clause when state laws interfere with, impact, or obstruct federal operations. *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 439-42 (9th Cir. 1991); *see also Stehney v. Perry*, 101 F.3d 925 (3d Cir. 1996) (state polygraph statute can-

---

[3] *Accord* Letter from Benjamin A. Powell, Gen. Counsel, Office of the Dir. of Nat'l Intelligence, to Edward R. McNicholas (July 11, 2006) ("Powell Letter"), Ex. E, Dkt. 1-37, at 1 ("The subpoenas infringe upon federal operations, are contrary to federal law, and accordingly are invalid under the Supremacy Clause of the United States Constitution."); Letters from Paul G. Lane, AT&T Gen. Counsel-Missouri and Kansas, to PSC Comm'rs Robert M. Clayton III and Steve Gaw (July 11, 2006) ("Lane Letters"), Ex. D, Dkt. 1-36, at 4, 9.

1 not apply to NSA contractors); *Union Oil Co. of Cal. v. Minier*, 437 F.2d 408, 411 (9th Cir. 1970) ("If the acts of the United States done within its power come in conflict with the powers of the state then the latter powers must give way, and this is true whether the United States exercises its rights directly or through the use of private persons.").[4] Whether the Plaintiff Commissioners like it or not, Missouri's CPNI rules could not operate to prohibit hypothesized federal national security-related activities that were permitted or required by federal law.

*Third*, for this reason, it is no response to argue that Plaintiffs are acting within a sphere of traditional state regulation. *See* Opp'n at 10-11. The Supreme Court has squarely held that, even when state governments act in an area that "[t]he several States . . . have traditionally regulated," they "must give way if they impair the effective exercise of the Nation's foreign policy." *Zschernig v. Miller*, 389 U.S. 429, 440 (1968). Thus, Plaintiffs' claim to be acting pursuant to their traditional authority to regulate the intrastate operations of telecommunications companies does not answer the question posed by this litigation but merely restates it. The question is whether that authority is being exercised in a way that intrudes into matters that are within the exclusive control of the federal government, such as the gathering of foreign intelligence to protect the country from attack. Because the Commissioners are attempting to use their authority under state law to examine and potentially punish what are claimed to be carrier activities associated with federal intelligence operations, they are acting beyond the lawful scope of their authority under the Constitution.

## II. FEDERAL STATUTES PREEMPT PLAINTIFFS' SUBPOENAS.

Plaintiffs' suit also must be dismissed because their claims are preempted by federal statutes, under both conflict and field preemption. Mot. to Dismiss 12-18. As an initial

---

[4] Plaintiffs make much of AT&T's recognition that "'not every state action that merely touches upon national security or foreign affairs is foreclosed.'" Opp'n at 5 (citing Mot. to Dismiss at 7). By no means is this a fatal "admission." *Id.* Here, the intrusion into the exclusively federal sphere of national security is direct and substantial: the acknowledged purpose of the Plaintiffs' subpoenas is to compel the disclosure of information concerning the alleged intelligence-gathering activities of the NSA that the federal government believes must remain secret in order to safeguard the effectiveness of its intelligence operations.

matter, Plaintiffs' overall analysis is infected with the same mistaken view of state power that undermines their constitutional argument. Specifically, they argue that a "presumption against preemption" applies here, on the theory that "the state officials' conduct relates to the regulation of intrastate telecommunications and public utilities." Opp'n at 10 (internal quotation marks omitted). As set forth in our opening brief and above, however, under the Constitution, the federal government has sole charge of foreign intelligence. And, in a domain of exclusive or traditional federal power, the presumption against preemption does not apply. *See United States v. Locke*, 529 U.S. 89, 108 (2000) ("The state laws now in question bear upon national and international maritime commerce, and in this area there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers."); *accord Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) (presumption against preemption does not apply where there is a "long history of federal presence"); *Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002) ("the presumption is not triggered when the State regulates in an area where there has been a history of significant federal presence") (internal quotation marks omitted). It cannot be, as Plaintiffs would have it, that the mere invocation of "traditional state powers" is a trump card; were this true, the presumption against preemption would have applied in *Ting* (which concerned telecommunications regulation). Rather, the correct inquiry is "whether the local laws in question are consistent with the federal statutory structure, which has as one of its objectives a uniformity of regulation." *Locke*, 529 U.S. at 108.

Here, the Commissioners' effort to require AT&T to answer their questions about whether and how AT&T may have cooperated with alleged NSA requests for call records runs afoul of federal statutes in a number of respects. Most clearly, it conflicts with specific prohibitions on disclosure of NSA and intelligence-related information. *See* Mot. to Dismiss at 12-14. Because this case involves preemption of the clearest sort, where compliance with both state demands and federal requirements is "a physical impossibility," *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 713 (1985), the *Ting* case, on which Plaintiffs rely, Opp'n at 11-12, simply has no application.

1         Plaintiffs' arguments in response suffer from at least four fatal flaws. *First*, Plaintiffs fail to demonstrate how their subpoenas may be complied with or enforced consistent with 18 U.S.C. § 798, which makes it a federal crime to disclose classified information relating to communications intelligence activities. Although Plaintiffs assert that they might be – on some unspecified "reading of the statute" and depending on unspecified future "circumstances" – authorized to receive classified information, Opp'n at 13, these musings are just wrong: "The State Defendants have not been authorized to receive classified information concerning the communication intelligence activities of the United States in accordance with the terms of 18 U.S.C. § 798, or any other federal law, regulation, or order." Compl. ¶ 38, *United States v. Gaw*, No. 07-1242, Dkt. 1-1, at 11; *see also id.* ¶ 37 ("The State Defendants have not been granted access to classified information related to the activities of the NSA pursuant to the requirements set out in Executive Order No. 12958 or Executive Order No. 13292."). Their Application must be dismissed for this reason alone.[5]

        *Second*, Plaintiffs' subpoenas conflict with § 6 of the National Security Act, which bars the compelled disclosure of information regarding NSA activities. *See* 50 U.S.C. § 402 note. Plaintiffs respond that § 6 is inapplicable because AT&T, not the NSA, is the direct target of their investigation. Opp'n at 14. As explained above, however, this is no answer, as AT&T's responses to the questions posed, even if they were flat denials, would reveal information that would help to confirm or deny the existence of an NSA call records program and whether AT&T is or has been a source of intelligence for any such program. The plain language of the statute broadly bars disclosure of "information with respect to the activities" of the NSA, irrespective of who furnishes it. 50 U.S.C. § 402 note; *see also*

---

[5] Plaintiffs suggest that the facts are too limited at this stage to determine whether preemption applies. Opp'n at 11-12. But preemption is not a fact-bound inquiry; it depends upon a legal determination whether an action by the state conflicts with, or falls within a field reserved to, federal law. *See, e.g.*, *Inland Empire Chapter of Associated Gen. Contractors of Am. v. Dear*, 77 F.3d 296, 299 (9th Cir. 1996) ("preemption is a legal question"); *see also Haw. Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th Cir. 1996) (the "issue of whether a federal law occupies the field and thereby preempts state law is purely legal" (internal quotation marks omitted)). In any event, even if facts were needed to demonstrate a conflict, those have been provided in the form of the declaration recently submitted by the Director of the NSA. *See* Alexander Decl., Dkt. 265 Att. 1, ¶¶ 16-20, at 8-11.

Statement of Interest of the United States in Supp. of Carriers' Mot. to Dismiss ("U.S. Statement of Interest"), MDL No. 06-1791, Dkt. 264, at 5-6. If Plaintiffs' argument were correct, § 6 could be easily circumvented through the simple expedient of seeking information from alleged NSA sources, rather than from the NSA itself. This is not what Congress had in mind when it mandated that "nothing" in "*any . . . law*" "shall be construed to require the disclosure of the organization or *any* function of the National Security Agency, or *any* information with respect to the activities thereof." 50 U.S.C. § 402 note (emphases added).

*Third*, Plaintiffs maintain that there is no conflict because AT&T can comply with both federal and state law. Specifically, plaintiffs say they will end their investigation if "an authorized federal official has lawfully . . . instructed" AT&T that it cannot confirm or deny whether it disclosed any customer proprietary information. Opp'n at 17. This suggestion is puzzling, because, as Plaintiffs know, *see* Lane Letters, Dkt. 1-36, at 4, 9, AT&T has received just such an instruction. On July 11, 2006, the General Counsel of the Office of the Director of National Intelligence ("DNI") notified AT&T that "[c]ompliance with the subpoenas by [AT&T] would place [AT&T] in a position of having to confirm or deny the existence of information *that cannot be confirmed or denied* without harming national security." Powell Letter, Dkt. 1-37, at 1 (emphasis added). This is exactly the instruction that Plaintiffs claim to seek and to which they promise to defer. Yet it is also the precise instruction that caused the Commissioners to file this lawsuit. Thus, unless the Commissioners are signaling a willingness to abandon this suit, their suggestion that state and federal law can be harmonized in this way is illusory.

*Last*, Plaintiffs contend that even if their investigation "create[d] some tension with federal functions" regarding national security, any impingement would be "so slight as to be negligible." Opp'n at 13; *see also id.* at 19 (citing Plaintiffs' putative expert regarding "'state or military secrets'" and the "'national security'"). This assertion warrants no credence. Although utility commissioners are authorized to "regulate public utilities," they are "not charged with evaluating threats to national security, investigating the NSA, or holding

businesses in contempt when their silence was mandated by the federal government." *Adams*, 473 F. Supp. 2d at 118.  The Director of National Intelligence and the Director of the NSA, who do have responsibilities for evaluating the national security implications of disclosures of information, do not agree that the impact on federal intelligence would be "negligible."  As General Alexander has explained:

> If it is confirmed that the United States is conducting a particular intelligence activity, that it is gathering information from a particular source, or that it has gathered information by a particular method or on particular persons or matters, such intelligence-gathering activities would be compromised and foreign adversaries, such as al Qaeda and affiliated terrorist organizations, could use such information to avoid detection. . . .
>
> . . . Confirming or denying such information [regarding an alleged call records program] would disclose whether or not the NSA utilizes particular sources and methods.  Such a disclosure would either compromise actual sources or methods or reveal that the NSA does not utilize a particular source or method, in either case providing information that could help an adversary evade detection.  Confirming or denying the allegations regarding specific telecommunication companies and specific activities would also replace speculation with certainty for hostile foreign adversaries who are balancing the risk that a particular channel of communication may not be secure against the need to communicate efficiently.

Alexander Decl., Dkt. 265 Att. 1, ¶¶ 17-18, at 8-9.

In addition to conflict preemption, Plaintiffs' subpoenas are also preempted because they seek to enter into a field occupied by federal statutes.  Through the enactment of CALEA, the Wiretap Act, the Stored Communications Act, and FISA, Congress has created an extensive and detailed statutory regime that governs telecommunications carriers' assistance to federal authorities.  *See* Mot. to Dismiss at 16-18.

Plaintiffs respond that these statutes "carve[] out an area of authority for state laws, state courts and/or state officials."  Opp'n at 14.  This is true but irrelevant.  AT&T has not argued that the states lack all authority over any subject touched by any of these statutes.  On the contrary, statutes like the Wiretap Act cover carrier involvement with surveillance by both federal government officials and state and local officials, *see* S. Rep. No. 90-1097 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2112, 2155-56, so of course these statutes refer

1 to state court proceedings and state law enforcement officers and preserve state jurisdiction
2 over assistance provided by telecommunications carriers to state officials and activities.
3 But just because Congress preserved state power to regulate surveillance activities involv-
4 ing *state* officials, it does not follow that the states therefore have authority to regulate, in-
5 vestigate, or oversee such activities in the context of *federal* surveillance. *See United States*
6 *v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976) (en banc) ("With the lone exception concern-
7 ing interception by state officers for state prosecutions, the federal statute does not defer to
8 the states."). None of the provisions cited by Plaintiffs in any way suggests that state law
9 may regulate or oversee carrier cooperation with federal activities or operations. In that
10 field, federal law governs exclusively, and states are without power to act.[6]

### III. FEDERAL COMMON LAW PREEMPTS PLAINTIFFS' SUBPOENAS.

Plaintiffs' Application also must be dismissed because enforcement of the subpoe-
nas is preempted by federal common law. Mot. to Dismiss at 18-19. Plaintiffs do not dis-
pute that federal common law displaces state law in areas of "uniquely federal interests," or
that foreign intelligence surveillance is such an area. *Id.* (internal quotation marks omitted);
*see* Opp'n at 18-22. Indeed, Plaintiffs make no effort to distinguish *New SD, Inc. v. Rock-
well Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996), where the Ninth Circuit held that the fed-
eral interest in national security requires uniformity, and therefore federal law displaces
state law in all "government contract matters having to do with national security."

Instead, Plaintiffs respond by disputing whether the state secrets doctrine applies
here. Opp'n at 18-22. This is a straw man. AT&T has not attempted to invoke the gov-

---

[6] Plaintiffs' insistence that field preemption is inapplicable because there remains a residue of state authority both mistakes the "field" at issue, as explained above, and appears to be based on a confusion between complete preemption and field preemption. Opp'n at 14 ("Contrary to AT&T's claims that each of these federal statutes completely preempts the state officials' investigatory proceeding, each federal statute specifically carves out an area of authority for state laws, state courts and/or state officials."). As this Court has noted, "[t]he concept of complete preemption . . . [is] irrelevant to [a] defendant['s] field and conflict preemption arguments." *California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1060 (N.D. Cal. 2003) (Walker, J.), *aff'd*, 375 F.3d 831 (9th Cir.), *amended on denial of reh'g*, 387 F.3d 966 (9th Cir. 2004); *see also* Mot. to Dismiss at 17-18 (collecting cases).

ernment's state secrets privilege (which it could not) or argued that the United States has done so (which it has not). Although the state secrets privilege likely forecloses any call records-based claims, *see Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 997-98 (N.D. Cal. 2006); Mot. to Dismiss at 20 & n.13 (citing cases), as does the *Totten* bar, that is not the point. Rather, these common-law doctrines simply demonstrate "the uniquely federal nature of the interest in foreign intelligence activities and the independent preemptive force of federal law" at issue here, such that any gaps left by the statutes with respect to carrier cooperation with federal intelligence programs would be filled not by state law but by federal common law. Mot. to Dismiss at 19.

Plaintiffs respond that individual call records are not state secrets. Opp'n at 19. This would only matter if the focus of the subpoenas were on obtaining customer call records themselves. It is not. Rather, Plaintiffs seek the disclosure of information concerning the number, nature, dates, and original exchanges of any disclosures by AT&T to the NSA, as well as broad categories of documents relating to such disclosures. Subpoena Ad Testificandum ¶¶ 1-5, Dkt 1-3, at 8-9; Subpoena Duces Tecum ¶ 4, Dkt. 1-3, at 11-12. These disclosures would themselves necessarily reveal whether or not AT&T was involved in the sort of large-scale call records program that press reports have purported to describe, as well as whether any relationship exists between AT&T and the NSA. This is precisely the type of information whose disclosure could be expected to harm national security, as the United States has explained. *See* Mot. to Dismiss at 21 (discussing *El-Masri v. United States*, 479 F.3d 296, 309 (4th Cir. 2007)); U.S. Statement of Interest, MDL No. 06-1791, Dkt. 264, at 5; *see also* Powell Letter, Ex. E, Dkt. 1-37.[7]

---

[7] Plaintiffs also make the curious argument that AT&T violated *Totten* by arguing that enforcing the subpoenas could conceivably reveal the existence of a secret espionage relationship between AT&T and the NSA. Opp'n at 22-23. This is frivolous. It is Plaintiffs' subpoenas that put AT&T's purported involvement with the NSA at issue. *See, e.g.*, Subpoena Ad Testificandum ¶ 2, Dkt. 1-3, at 9. AT&T has never, and is not now, confirming or denying its participation in any alleged activities of the NSA. And even if AT&T had done so, that would not violate *Totten* any more than Totten's estate did in seeking to enforce his alleged espionage contract with President Lincoln. *Totten* is about the justiciability of particular disputes, not the conduct of parties.

## IV. PLAINTIFFS DO NOT HAVE AUTHORITY UNDER STATE LAW TO ENFORCE THE SUBPOENAS.

Finally, AT&T has shown that only the Missouri PSC as a whole may enforce the investigative subpoenas at issue here, rather than the individual Commissioner Plaintiffs, who constitute only a minority of that body. Mot. to Dismiss at 21-24. In response, Plaintiffs cite RSMo. § 536.077 without explaining how it applies, Opp'n at 24, and offer a reading of RSMo. § 386.130 that is unsupported by its text, *id.* at 25. Neither statute supports Plaintiffs' claim to individual subpoena enforcement power.

Section 536.077 does not establish Plaintiffs' authority to enforce these subpoenas because the statute, by its plain terms, applies only to subpoenas issued in "contested case[s]." RSMo. § 536.077. Plaintiffs have failed to refute AT&T's showing that these are investigative rather than contested-case subpoenas, *see* Mot. to Dismiss at 21-22, and indeed they have affirmatively and repeatedly conceded that their subpoenas are investigative, Opp'n at 3-4; Sugg. in Supp. of Mot. for Remand, Dkt. 1-27, at 2; Reply Sugg. in Supp. of Pls.' Mot. for Remand, Dkt. 1-67, at 1. Even if § 536.077 did apply, moreover, it requires enforcement by the PSC as a whole. *See* RSMo. § 536.077 (requiring that "[t]he agency . . . shall enforce" contested-case subpoenas (emphasis added)).[8]

Plaintiffs' reliance on § 386.130 is equally unavailing. Far from permitting individual commissioners to enforce investigative subpoenas, this statute reinforces Plaintiffs' lack of enforcement power. *See* Mot. to Dismiss at 23. Section 386.130 authorizes individual commissioners to "undertake[]" an "investigation" or "inquiry," including the power to *issue* subpoenas, but it does not authorize them to initiate judicial action to *enforce* subpoenas.[9] Rather, the power to enforce subpoenas is addressed in § 386.360.1, which grants this

---

[8] Although Plaintiffs may have *issued* their subpoenas pursuant to the authority granted to them in RSMo. §§ 386.320 and 386.420 to employ compulsory process, *see* Opp'n at 23-24, neither statute provides Plaintiffs with the power to have such subpoenas judicially *enforced*. Such enforcement authority is vested in the Commision as a whole. *See* RSMo. §§ 386.360.1, 386.130; *infra* at 13.

[9] Nor does the provision state, as Plaintiffs imply, that any power of the Commission may also be exercised by an individual Commissioner. The provision, whose critical sentence Plaintiffs omit, states in relevant part:

> *A majority of the commissioners shall constitute a quorum* for the transaction of any business, for the performance of any duty or *for the exercise of*

(continued…)

power to the commission as a whole. Mot. to Dismiss at 23. Neither the PSC nor individual commissioners have inherent authority to enforce subpoenas, and any authority must be explicitly enumerated by statute. *See Brooks v. Pool-Leffler*, 636 S.W.2d 113, 121 (Mo. Ct. App. 1982), *recognized as abrogated by statute on other grounds*, *Gerlach v. Mo. Comm'n on Human Rights*, 980 S.W.2d 589 (Mo. Ct. App. 1998). Plaintiffs point to no statute explicitly granting them power to enforce subpoenas individually, and § 386.360.1, which grants this power to the PSC as a whole, must be enforced by a majority of commissioners as required by § 386.130. *See* RSMo. § 386.360.1; *see also State ex rel. Philipp Transit Lines, Inc. v. Pub. Serv. Comm'n*, 552 S.W.2d 696, 701 n.4 (Mo. 1977) (PSC powers may only be exercised by a quorum). Plaintiffs, two of five PSC commissioners, do not satisfy this requirement.[10]

Contrary to Plaintiffs' argument that this interpretation would render Missouri law superfluous and ineffective, Opp'n at 24, this is precisely the arrangement employed by the United States Congress. Subpoenas may be issued by individual committees or subcommittees, or sometimes their Chairmen, but enforcement requires a vote of the full House or Senate. Mot. to Dismiss at 23 n.15. Far from "illogical," Opp'n at 25, this arrangement recognizes the dramatic difference between the power to demand information from someone and the power to threaten them with imprisonment or other penal sanction for failure to comply. This two-tiered framework permits individual commissioners to move forward with investigations, including compulsory process, on their own, while recognizing that ju-

---

> *any power of the commission . . . .* Any investigation, inquiry or hearing which the commission has power to undertake or to hold may be undertaken or held by or before any commissioner. All investigations, inquiries, hearings and decisions of a commissioner shall be and be deemed to be the investigations, inquiries, hearings and decisions of the commission, and every order and decision made by a commissioner, *when approved and confirmed by the commission* and ordered filed in its office, shall be and be deemed to be the order of the commission. (emphasis added)

[10] Missouri law is clear that, when a statute specifies that an action be undertaken in a certain manner or by a certain entity, this requirement must be strictly adhered to. *Cook v. Cook*, 97 S.W.3d 482, 486 (Mo. Ct. App. 2002); *Johnson Controls, Inc. v. Citizens Mem'l Hosp. Dist.*, 952 S.W.2d 791, 793 (Mo. Ct. App. 1997).

dicial action should not be undertaken without the accountability and majoritarian legitimacy provided by a vote of the PSC as a whole.[11]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Application should be dismissed.

Dated: June 1, 2007                       Respectfully submitted,

| PILLSBURY WINTHROP<br>  SHAW PITTMAN LLP<br>BRUCE A. ERICSON<br>DAVID L. ANDERSON<br>JACOB R. SORENSEN<br>MARC H. AXELBAUM<br>DANIEL J. RICHERT<br>50 Fremont Street<br>Post Office Box 7880<br>San Francisco, CA 94120-7880 | SIDLEY AUSTIN LLP<br>DAVID W. CARPENTER*<br>BRADFORD A. BERENSON*<br>DAVID L. LAWSON*<br>EDWARD R. MCNICHOLAS*<br>ERIC A. SHUMSKY<br>1501 K Street, N.W.<br>Washington, DC 20005<br><br>* admitted *pro hac vice* |
|---|---|
| By    /s/ Marc H. Axelbaum<br>      Marc H. Axelbaum | By    /s/ Bradford A. Berenson<br>      Bradford A. Berenson |

*Attorneys for AT&T Defendants*

---

[11] Plaintiffs also make the obviously incorrect argument that this Court cannot dismiss on the basis of state law. Opp'n at 25 ("This matter . . . is one properly addressed by the State Courts of Missouri, and not appropriately raised in AT&T's Motion to Dismiss."). Plaintiffs lost their motion to remand this matter to state court, Minute Entry, Dkt. 1-71, and they may not collaterally attack that ruling here. There can be no serious question that a federal court can dismiss a suit on state-law grounds. *E.g.*, *Wigfall v. City & County of San Francisco*, __ F. Supp. 2d __, 2007 WL 174434, at *2 (N.D. Cal. filed Jan. 22, 2007) (Walker, C.J.) (dismissing harassment case on basis of state law immunity).

**DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B**

I, MARC H. AXELBAUM, hereby declare pursuant to General Order 45, § X.B, that I have obtained the concurrence in the filing of this document from the other signatory listed below.

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed on June 1, 2007, at San Francisco, California.

                                                   */s/ Marc H. Axelbaum*
                                                   Marc H. Axelbaum