1   LAURENCE F. PULGRAM (CSB NO. 115163)
    lpulgram@fenwick.com
2   JENNIFER L. KELLY (CSB NO. 193416)
    jkelly@fenwick.com
3   CANDACE MOREY (CSB NO. 233081)
    cmorey@fenwick.com
4   FENWICK & WEST LLP
    555 California Street, 12th Floor
5   San Francisco, CA  94104
    Telephone:     (415) 875-2300
6   Facsimile:      (415) 281-1350

7   ANN BRICK (CSB NO. 65296)
    NICOLE A. OZER (CSB NO. 228643)
8   AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN CALIFORNIA
9   39 Drumm Street
    San Francisco, CA 94111
10  Telephone:  (415) 621-2493
    Facsimile:  (4150 255-8437

11

12  Attorneys for Plaintiffs,
    Dennis P. Riordan, et al.
13
    [Additional Counsel Appear on Following Page]
14

15                  UNITED STATES DISTRICT COURT

16               NORTHERN DISTRICT OF CALIFORNIA

17                     SAN FRANCISCO DIVISION

18

19  IN RE:                                    MDL No. 06-1791 VRW
20
    NATIONAL SECURITY AGENCY                  **PLAINTIFFS' JOINT OPPOSITION TO**
21  TELECOMMUNICATIONS RECORDS                **VERIZON'S MOTION TO DISMISS THE**
    LITIGATION,                               ***CHULSKY*, *RIORDAN*, AND *BREADY***
22                                            **COMPLAINTS**
    This Document Relates To:
23
    06-3574, 06-6313, and 06-6570.
24

25

26

27

28

Dockets.Justia.com

Ronald L. Motley
Jodi W. Flowers
Don Migliori
Vincent Parrett (CSB No. 237563)
Justin B. Kaplan
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P. O. Box 1793
Mount Pleasant, SC 29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9027

Attorneys for Interim Class Counsel for
Verizon Class and Transworld Class


David H. Steinlieb
SHAPIRO & STEINLEIB LLC
800 Tennent Road
Manalapan, NJ  07726

Attorney for Plaintiffs,
Glen Chulsky, et al.

Joshua Graeme Whitaker
GRIFFIN WHITAKER LLP
8730 Georgia Ave., Suite LL100
Silver Springs, MD  20910
Telephone: 301 587-3345
Facsimile: 888 367-0383

Attorney for Plaintiffs,
Ann Bready, et al.

JOINT OPPOSITION TO VERIZON'S MOTION
TO DISMISS *CHULSKY*, *RIORDAN*, AND
*BREADY* COMPLAINTS

MDL NO. C-06-1791-VRW

# TABLE OF CONTENTS

Page(s)

ISSUES TO BE DECIDED ........................................................................................ vii

INTRODUCTION .................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................ 2

    A.    The *Riordan* Complaint ...................................................................... 3

    B.    The *Bready* Complaint. ...................................................................... 4

    C.    The *Chulsky* Complaint. ..................................................................... 4

ARGUMENT ............................................................................................................ 6

I.    NO FEDERAL LAW PREEMPTS PLAINTIFFS' STATE LAW CLAIMS ................. 8

    A.    Federal Statutes Do Not Expressly Preempt Plaintiffs' Claims ............................. 9

    B.    Federal Statutes Contemplate State Regulation of, and Do Not Preempt, the Field of Electronic Privacy, Even in the Sphere of Foreign Intelligence ............. 10

    C.    As This Court Has Already Recognized, No Conflict Exists That Could Create Conflict Preemption with Federal Statutes or Federal Common Law ....... 11

II.    WHAT VERIZON TERMS "CONSTITUTIONAL FIELD PREEMPTION" DOES NOT FORECLOSE PLAINTIFFS' CLAIMS ....................................................... 12

    A.    Verizon's "Constitutional Field Preemption" Argument is No More Than a Replay of Its Failed Federal Common Law Preemption Argument ..................... 12

    B.    The Federal Common Law of Foreign Affairs Cannot Be Stretched To Govern Issues Unrelated to International Diplomacy ............................................ 14

    C.    Foreign Affairs Cases, Even Where Applicable, Require Conflict With Federal Policy Which Verizon Has Not Even Attempted to Demonstrate Here .......................................................................................................................... 15

    D.    Verizon's Cases Do Not Support Preemption Based On A Generalized Federal Interest In National Security ..................................................................... 17

III.    THE STATE LAWS AT ISSUE CANNOT BE PREEMPTED DIRECTLY UNDER THE SUPREMACY CLAUSE ................................................................... 19

    A.    Plaintiffs' State Law Claims Do Not Directly Regulate The Federal Government .............................................................................................................. 20

    B.    Plaintiffs' State Law Claims Do Not Discriminate Against The Government .............................................................................................................. 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

IV.   NONE OF THE *CHULSKY* CLAIMS SHOULD BE DISMISSED UNDER
       RULE 9(B) ..................................................................................................... 23

       A.   Rule 9(b) Does Not Apply To *Chulsky's* Misrepresentation Claim ................... 23

       B.   *Chulsky's* Allegations of Fraud Are Specific and Satisfy Rule 9(b)................... 23

       C.   Should The Court Find *Chulsky's* Allegations Of Fraud Are Not Specific
            Enough To Satisfy Rule 9(b), Leave To Amend Should Be Freely Granted........ 24

V.    *CHULSKY'S* CONTRACT CLAIMS SATISFY NOTICE PLEADING
       STANDARDS UNDER RULE 8.................................................................... 24

CONCLUSION ......................................................................................................... 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT OPPOSITION TO VERIZON'S MOTION
TO DISMISS CHULSKY, RIORDAN, AND          -ii-          MDL NO. C-06-1791-VRW
BREADY COMPLAINTS

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*American Ins. Ass'n v. Garamendi*,
539 U.S. 396 (2003) ........................................................................................... 16

*Arthur D. Little, Inc. v. Comm'r of Health & Hosps.*,
395 Mass. 535 (1985) ......................................................................................... 17

*AT&T Corp. v. Iowa Utils. Bd.*,
525 U.S. 366 (1999) ............................................................................................. 6

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ........................................................................................... 13

*Bicoastal Corp. v. Aetna Cas. and Sur. Co.*,
No. C-94-20108, 1994 WL 564539, (N.D. Cal Oct. 4, 1994 ) ............................. 25

*Blackburn v. United States*,
100 F.3d 1426 (9th Cir. 1996) ............................................................................ 21

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) ................................................................................... 7, 8, 13

*Chaganti v. I2 Phone Int'l Inc.*,
No. 04-CV-0987, 2005 WL 679664 (N.D. Cal. March 11, 2005 ) .................. 24, 25

*City of Los Angeles v. United States*,
355 F. Supp. 461 (C.D. Cal. 1972) ..................................................................... 21

*Deutsch v. Turner Corp.*,
324 F.3d 692 (9th Cir. 2003) .................................................................. 14, 15, 17

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................................................................... 24, 25

*Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136 (2d Cir. 2005),
*aff'd*, 126 S. Ct. 2121 (2006) ............................................................................ 13

*English v. General Elec. Co.*,
496 U.S. 72 (1990) ..................................................................................... 6, 9, 10

*FDIC v. Bathgate*,
27 F.3d 850 (3d Cir. 1994) ................................................................................. 23

*Forte Capital Partners v. Cramer*,
No. 07-CV-01237, 2007 U.S. Dist. LEXIS 40126,
2007 WL 1430052 (N.D. Cal., May 14, 2007) .................................................... 23

*Hancock v. Train*,
426 U.S. 167 (1976) ........................................................................................... 21

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1990) ............................................................................................. 11

*In re Cendant Corp.*,
190 F.R.D. 331 (D.N.J. 1999) ......................................................................... 7, 23

*In re Heritage Bond Litig.*,
289 F. Supp. 2d 1132, 1146 (C.D. Cal. 2003) .................................................... 23

Fenwick & West LLP
Attorneys At Law
San Francisco

*In re NSA Telcoms. Records Litig.*,
  MDL No. 06-1791, 2007 U.S. Dist. LEXIS 3786,
  WL 163106 (N.D. Cal. Jan. 18, 2007) ............................................................ passim

*In re World War II Era Japanese Forced Labor Litig.*,
  164 F. Supp. 2d 1160 (N.D. Cal. 2001) ........................................................ 14, 15

*Johnson v. Maryland*,
  254 U.S. 51 (1920) ............................................................................................ 21

*Kentucky ex rel. Hancock v. Ruckelshaus*,
  497 F.2d 1172 (6th Cir. 1974),
  *aff'd*, 426 U.S. 167 (1976) .................................................................................. 20

*Kroske v. US Bank Corp.*,
  432 F.3d 976 (9th Cir. 2005).............................................................................. 6

*Kroske v. US Bank Corp.*,
  No. 04-35187, 2006 U.S. App. LEXIS 3367,
  2006 WL 319025 (9th Cir. Feb. 13, 2006)....................................................... 6, 10

*Mayo v. United States*,
  319 U.S. 441 (1943).......................................................................................... 21

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)............................................................................................ 6

*N.Y. State Dep't of Soc. Servs. v. Dublino*,
  413 U.S. 405 (1973)............................................................................................ 6

*National Foreign Trade Council v. Natsios*,
  181 F.3d 38, 49-57 (1st Cir. 1999).................................................................... 15

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989)............................................................................................ 6

*North Dakota v. United States*,
  495 U.S. 423 (1990)..................................................................................... passim

*Northwest Pipe Co. v. Travelers Indem. Co.*,
  No. 02-CV-04189, 2003 U.S. Dist. LEXIS 26416,
  2003 WL 24027882 (N.D. Cal. Feb. 12, 2003) ................................................ 25

*Odom v. Microsoft Corp.*,
  No. 04- CV-35468, 2007 U.S. App. LEXIS 10519,
  2007 WL 1297249 (9th Cir. May 4, 2007) ........................................................ 23

*Perpich v. Dep't of Defense*,
  496 U.S. 334 (1990)............................................................................................ 18

*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218 (1947)............................................................................................ 10

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985).............................................................................. 23

*Silkwood v. Kerr-McGee Corp.*,
  464 U.S. 238 (1984)............................................................................................ 11

*Snepp v. United States*,
444 U.S. 507 (1980) .................................................................... 18

*Stehney v. Perry*,
101 F.3d 925 (3d Cir. 1996) ...................................................... 18

*Tarble Case*,
80 U.S. (13 Wall.) 397 (1872) .................................................... 18

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) .................................................................... 12

*Torres v. Southern Peru Copper Corp.*,
113 F.3d 540 (5th Cir. 1997) ...................................................... 12

*United States v. City of Oakland*,
No. C-89-3305 (N.D. Cal. Aug. 23, 1990) ............................... 18, 19

*United States v. Marchetti*,
466 F.2d 1309 (4th Cir. 1972) .................................................... 18

*United States v. New Mexico*,
455 U.S. 720 (1982) ................................................................ 20, 21

*Venture Assoc. Corp. v. Zenith Data Systems Corp.*,
987 F.2d 429 (7th Cir. 1993) ...................................................... 25

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .................................................... 24

*Washington v. United States*,
460 U.S. 536 (1983) .................................................................... 22

*Zschernig v. Miller*,
389 U.S. 429 (1968) ................................................................ 14, 16

**STATUTES**

18 U.S.C. § 2701 ................................................................................ 9

28 U.S.C. § 1442(a)(1) ...................................................................... 20

50 U.S.C .§ 1806(f) ........................................................................... 10

50 U.S.C. § 1801 ................................................................................ 9

50 U.S.C. § 1861(a)(1) ...................................................................... 10

50 U.S.C. § 1861(e) ........................................................................... 10

Cal. Pub. Util. Code § 2891 ............................................................... 4

Cal. Pub. Util. Code § 2891(d)(6) .................................................... 11

Cal. Pub. Util. Code § 2894 .............................................................. 11

Md. Code Ann., CTS. & JUD. PROC., § 10-402(a) ......................... 4

Md. Code Ann., CTS. & JUD. PROC., § 10-410(b) ........................ 11

Md. Code Ann., CTS. & JUD. PROC., § 10-4A-04(c)(2)(ii) ............ 4

Md. Code Ann., CTS. & JUD. PROC., § 10-4B-02(a) ...................... 4

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

N.J. Stat. Ann. § 2A:156A-1 ........................................................................................................ 5

N.J. Stat. Ann. § 2A:156A-25 .................................................................................................... 11

N.J. Stat. Ann. § 2A:156A-33(a) ............................................................................................... 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a) ................................................................................................................... 24

Fed. R. Civ. P. 8 ........................................................................................................... 2, 8, 24, 25

Fed. R. Civ. P. 9(b) ............................................................................................................. passim

**RULES**

5A Charles Alan Wright, Federal Practice and Procedure § 1297 (3d ed. 2004) ........................ 23

Cal. Const. art. I, § 1 (2006) ......................................................................................................... 4

Historical & Statutory Notes, § 1 of Stats. 1986, c. 821 .............................................................. 4

1.      Whether state laws regulating public utilities and protecting privacy and consumer records are preempted where there is no evidence of Congressional intent to preempt by federal law, and the state laws neither implicate foreign affairs nor directly regulate the federal government.

2.      Whether the *Chulsky* Plaintiffs' misrepresentation and fraud claims are subject to dismissal under Rule 9(b) of the Federal Rules of Civil Procedure, where:

(A)     claims for misrepresentation are not subject to Rule 9(b);

(B)     the *Chulsky* Plaintiffs' allegations that Verizon falsely and knowingly misrepresented that it would not disclose communications and call records without consent or court order give Verizon ample notice of its misconduct; and

(C)     in any event, leave to amend the Complaint should be freely granted pursuant to Rule 15 of the Federal Rules of Civil Procedure.

3.      Whether *Chulsky's* factual allegations supporting all elements of their breach-of-contract claims satisfy notice pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, and if not, whether leave to amend should be freely given.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The *Riordan*, *Chulsky*, and *Bready* Plaintiffs seek to enforce state laws that are fully consistent with, and complementary to, Congressional statutes that expressly contemplate concurrent state regulation of electronic surveillance. Indeed, while Congress *could have*, it has *not* acted to preempt traditional state regulation of public utilities and privacy rights of their customers. Application of the asserted state laws to Verizon does not regulate or restrict the *federal government*; neither does it prohibit Verizon from assisting or contracting to assist the federal government. These state laws have no relation to foreign policy. And, as this Court has already concluded, the California laws do not conflict with any federal laws—statutory, common law, or otherwise. The same is true of the Maryland and New Jersey laws: compliance with federal authority is a defense to all. Rather, the state laws asserted simply provide additional remedies where a telecommunications carrier has provided access to customers' private call records and electronic communications, without any federal or state authorization.

In this context, Verizon's Motion to Dismiss finds no support in any viable preemption doctrine. Abandoning traditional preemption analysis, Verizon instead continues its "repeated invocation of the 'sweeping authority of Congress and the Executive' to protect national security" that this Court rejected in the motion to remand—now cloaked under a new rubric of "constitutional field preemption." *See In re NSA Telcoms. Records Litig.*, MDL No. 06-1791, 2007 U.S. Dist. LEXIS 3786, WL 163106, at *2 (N.D. Cal. Jan. 18, 2007) (hereinafter "*Remand Order*," with citations to Westlaw pagination). This argument for preemption—by the mere *grant* in the Constitution of Congressional authority to provide for national defense—finds no direct support in the case law. Instead, Verizon relies principally on cases that did not address preemption of a state law or found preemption of laws expressly attempting to regulate foreign affairs, which have no application here. This Court already considered and rejected most of those cases when it found that preemption did not provide a basis for federal jurisdiction in the *Riordan* case. Finding the state claims preempted—in the absence of Congressional directive—would require a feat of judicial activism no different than creating a new rule of federal common law (which this Court already rejected as unwarranted).

In the alternative, Verizon makes equally unavailing arguments that the claims are

preempted because Plaintiffs seek to directly regulate the federal government. Again, Verizon

cites cases that are not remotely analogous to the instant setting. Accordingly, Verizon's Motion

to Dismiss the *Riordan*, *Chulsky*, and *Bready* complaints must be denied; they are not preempted

by the mere delegation of authority to Congress.

Verizon also seeks dismissal of three of the nine *Chulsky* claims for failing to satisfy

particular pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Yet the

first of those claims is for misrepresentation, not "fraud or mistake." Verizon ignores authority in

the Ninth and Third Circuits (*Chulsky's* trial forum) that a misrepresentation claim need not be

pled with particularity under Rule 9(b). Moreover, to the extent that Rule 9(b) applies, the

*Chulsky* Complaint alleges specific instances in which Verizon falsely assured customers that it

would not disclose their communications and records without consent or court order.

Verizon also seeks dismissal of two additional *Chulsky* claims, for breach-of-contract and

violations of the Truth-in-Consumer Contract, Warranty and Notice Act. Verizon incorrectly

suggests that Rule 8 of the Federal Rules of Civil Procedure requires dismissal unless the

"specific customer agreement is attached, quoted, or [] cited" to in the Complaint. Nonsense.

The *Chulsky* Plaintiffs give Verizon fair notice of those causes of action by alleging the existence

of the subscriber agreements that were breached. In any event, should the Court find that more

specificity is necessary for any of the *Chulsky* claims, leave to amend should be freely given.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants Verizon Communications Inc., and Verizon Maryland Inc. (collectively

"Verizon") seek to dismiss, on preemption and pleading grounds, three actions raising claims

solely under state law: *Riordan v. Verizon Commc'ns Inc.*, 06-3574, *Bready v. Verizon Maryland

Inc.*, No. 06-6313, and *Chulsky v. Cellco Partnership & Verizon Commc'ns Inc.*, No. 06-6570.

After being removed from state court and consolidated in this multidistrict proceeding, plaintiffs

in all three cases filed motions to remand.

While this Court denied remand in *Riordan*, it also rejected Verizon's argument that

federal jurisdiction could be premised on purported complete preemption by various federal

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    statutes or the federal common law. *See Remand Order* at *2-5. Indeed, the Court specifically

2    considered, and rejected, Verizon's "conten[tion] that federal law governing national securities

3    matters 'leaves no room for plaintiffs' state-law privacy claims.'" *Id*. at *2. Instead, the Court

4    found federal jurisdiction on other grounds.

5         By the current motion, Verizon seeks to dismiss each of the *Riordan*, *Bready*, and *Chulsky*

6    complaints on preemption grounds and to dismiss particular *Chulsky* claims sounding in fraud and

7    breach of contract based on alleged pleading defects. Mem. in Supp. of Verizon's Mot. to

8    Dismiss the *Chulsky*, *Riordan*, and *Bready* Complaints, Doc. No. 271 (M:06-cv-01791-VRW)

9    (hereinafter "*Ver. Mot.*"). Other motions by Verizon and the U.S. government are currently

10   pending before the Court and seek dismissal of Plaintiffs' claims against Verizon, its affiliates

11   and subsidiary MCI, on grounds of personal jurisdiction and state secrets—issues that are not

12   addressed in this brief. Hearing on all of these motions is August 30, 2007. Because this Court

13   will consider similar preemption issues at the June 21, 2007 hearing on the State Officials

14   Actions, Plaintiffs submit this brief for the Court's consideration in advance of that hearing.[1]

15        **A.    The *Riordan* Complaint.**

16        The *Riordan* Plaintiffs commenced their action on May 26, 2006, in the wake of

17   widespread publicity about Verizon's and MCI's turnover of vast databases of private customer

18   information. In *Riordan*, which is not a class action, Plaintiffs are residential customers of

19   Verizon and its MCI subsidiary in California. *Riordan* Compl. ¶¶ 5-11. They include the drafter

20   of California's Consumer Privacy Act, a psychiatrist, business people, two criminal defense

21   attorneys, a civil rights attorney and the members of the three ACLU affiliates in California.

22   These Plaintiffs challenge Verizon's (and its subsidiary, MCI's) voluntary turnover to the

23   National Security Agency ("NSA") of millions of residential telephone customer calling records

24   and other data without any legal process (such as a compulsion of a warrant, court order,

25   subpoena, or other legal authority), and without their consent. *Id.* ¶¶ 2, 9, 12, 18.

26        The customer calling records Verizon turned over reveal the telephone numbers of those

27   ───────────────

28   [1] Plaintiffs will file separate briefs responding to other motions to dismiss by Verizon and the Government when they are due, on June 22, 2007.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  making and receiving millions of telephone calls, as well as the time, date and duration of each

2  call.  The California Legislature recognized the importance of utilities' maintaining the

3  confidentiality of this information when it enacted the Customer Privacy Act, which included

4  Cal. Pub. Util. Code § 2891.  The Legislature declared that "the protection of this right to privacy

5  [of telephone communications] is of paramount state concern, and to this end, has enacted this

6  act."  Cal. Pub. Util. Code § 2891, Historical & Statutory Notes, § 1 of Stats. 1986, c. 821.

7  The *Riordan* Plaintiffs assert two causes of action under California law: violation of

8  Section 2891, and violation of Plaintiffs' rights of privacy guaranteed under Article I, section 1 of

9  the California Constitution.  They seek declaratory and injunctive relief prohibiting further

10  disclosures of telephone customer information without legal process.  They do not seek damages.

11  **B.  The *Bready* Complaint.**

12  The *Bready* Plaintiffs are six individuals representing a class of subscribers to Verizon's

13  services in Maryland.  The *Bready* Plaintiffs allege that defendant Verizon Maryland, Inc.

14  monitored and intercepted, either directly or through its parent company, their telephone, internet

15  communications, and/or calling records for "data mining," a process used to analyze data for

16  patterns or connections among disparate records.  *See Bready* Compl. ¶¶ 35-79.  Their complaint,

17  filed in Maryland Circuit Court on July 21, 2006, seeks damages and injunctive relief.

18  The *Bready* Plaintiffs assert violations of three Maryland statutes based on Verizon's

19  interception and monitoring:  Md. Code Ann., CTS. & JUD. PROC., § 10-402(a) ("Wiretap &

20  Electronic Surveillance Act"), § 10-4A-04(c)(2)(ii) ("Stored Wire And Electronic

21  Communications & Transactional Records Access"), and § 10-4B-02(a) ("Pen Registers and Trap

22  and Trace Devices") (West 2006).

23  **C.  The *Chulsky* Complaint.**

24  The *Chulsky* Plaintiffs and class members subscribe to and have used Verizon's long

25  distance, regional, and/or residential telecommunications services in New Jersey.  *Id.* ¶¶ 4-10, 29,

26  45.  The *Chulsky* Plaintiffs allege that Verizon "knowingly, willfully, and voluntarily provided

27  confidential, private, and protected information," *Chulsky* Am. Compl. ¶ 97, specifically, its

28  customer "communications" and "customer records," to the Government.  *See Id.* ¶ 23, 31-34, 38-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

41. Defendants thereby violated the *Chulsky* Plaintiffs' rights under the New Jersey constitution, statutes, and common law, i*d.* ¶¶ 65-132 (Counts I – IX), including the New Jersey Wiretap Act, N.J. Stat. Ann. § 2A:156A-1 *et seq.* (West 2007).

The *Chulsky* Plaintiffs also have claims for malicious misrepresentation (Count IV), and violations of the N.J. Consumer Fraud Act (Count VI) and N.J. Deceptive Business Practices Act (Count VIII). These claims are supported by allegations detailing how Defendants, through "subscriber agreements" and "promotional literature and/or written notices . . . represented that the personal, private, and confidential records and information of the Plaintiffs . . . would be protected from disclosure to and use by governmental authorities without appropriate consent and/or authorization and/or legal authority while at all relevant times the Defendants knew such representations to be false." *Chulsky* Am. Compl. at ¶ 97. *See also id.* ¶ 43, 47, 125.

The *Chulsky* Plaintiffs also allege claims for breach of contract (Count III) and Violations of the Truth-in-Consumer Contract, Warrant and Notice Act (Count VII). The alleged contracts are identified throughout the complaint as the *Chulsky* Plaintiffs' subscriber agreements, *see, e.g.*, *Chulsky* Am. Compl. ¶ 43, 97, 125, under which "Defendants agreed to provide for a subscription fee, and Plaintiffs and class members agreed to purchase from the Defendants, various telecommunications" services. *Id.* ¶ 91, 117-18. The claims also allege the pertinent terms of those contracts, whereby Defendants "expressly promised to protect the privacy and confidentiality of its customers' information, identity, records, subscription, use details, and communications." *Id.* ¶ 92. Defendants breached those agreements by "knowingly, willfully, and voluntarily provid[ing] confidential, private, and protected information" (*i.e.*, "communications" and "customer records") to the Government without consent or court order. *See id.* ¶¶ 23, 31-34, 38-43, 97. The *Chulsky* Plaintiffs seek damages for their contract claims. *Id.* ¶¶ 94, 123.

Although they could have, none of the *Riordan*, *Chulsky* or *Bready* Plaintiffs are pursuing relief under federal law. Nor have they asserted any claims against the federal government or its representatives. Nevertheless, they do not dispute that if Verizon had turned over the call records in a good faith response to legal process (which each alleges is *not* the case) that would provide a defense to their state law claims. Thus, if this Court grants any of Plaintiffs' requests for

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

declaratory or injunctive relief, it would have no impact on the NSA's ability to conduct lawful surveillance of telephone and internet communications.

## ARGUMENT

Although the federal government is supreme when it affirmatively acts, exercise of such federal supremacy is not lightly to be presumed. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 413 (1973). Indeed, "because the States are independent sovereigns in our federal system, we have long presumed the Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). And, where Congress is alleged to have preempted areas traditionally occupied by the states, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotations omitted). The state laws challenged here are entitled to such presumption, because "[t]he regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989) (internal citation omitted). *See also AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 375, 381 n.8 (1999) (states possess wide latitude to regulate intrastate telecommunications matters).

Well settled preemption jurisprudence establishes three circumstances in which a state law may be preempted: (i) express preemption, where Congress, through "explicit statutory language" has preempted state regulation; (ii) field preemption, where Congress intended the federal government to occupy the field exclusively; or (iii) conflict preemption, where a particular state law actually conflicts with federal law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990). "In considering whether any of these three categories of preemption apply, however, the purpose of Congress is the ultimate touchstone of pre-emption analysis." *Kroske v. US Bank Corp.*, 432 F.3d 976, 981 (9th Cir. 2005), *as amended* at *Kroske v. US Bank Corp.*, No. 04-35187, 2006 U.S. App. LEXIS 3367, 2006 WL 319025 (9th Cir. Feb. 13, 2006) (citations omitted).

Verizon hardly takes the effort to argue that any of these three traditional bases for preemption applies. They do not, principally for reasons already set forth by this Court when it found no complete preemption in the Remand Order. *See* Part I(A)-(C).

Fenwick & West LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Similarly, the Remand Order rejected Verizon's main preemption argument here, holding

2  that, in the absence of express Congressional directives on point, no federal common law

3  preempts Plaintiffs' state law claims. *Remand Order* at *4; *see also Boyle v. United Techs. Corp.*,

4  487 U.S. 500 (1988). Verizon attempts now to sketch out an unprecedented theory it labels

5  "constitutional field preemption." But the cases upon which Verizon relies are the same

6  applications of the federal common law of foreign affairs that this Court previously considered,

7  and rejected, as a source of preemption. *See* Part II(A). The foreign affairs preemption cases

8  cannot bear on Plaintiffs' state law claims, which involve purely domestic companies and conduct

9  and in no way seek to intrude on foreign affairs or international diplomacy. *See* Part II(B). Nor

10 do the foreign affairs preemption cases support creation of a new rule of federal common law

11 relating to national security where "no conflict exists between plaintiffs' California privacy

12 claims and any uniquely federal interest." *Remand Order* at *4; *see* Part II(C). As the Supreme

13 Court has never recognized a federal common law of "national security" or "electronic

14 surveillance," Verizon could prevail only if this Court decides to act affirmatively, where

15 Congress has not, and declare an overriding federal law that displaces generally applicable state

16 utility and privacy laws. No existing authority supports such a reach. *See* Part II(D).

17 These state laws also do not run afoul of the Supremacy Clause directly, because none

18 "regulates the Government directly or discriminates against it." *North Dakota v. United States*,

19 495 U.S. 423, 434 (1990). Each of the laws asserted by the *Riordan*, *Chulsky*, and *Bready*

20 Plaintiffs are laws of general applicability. They in no way regulate the government or disfavor

21 Verizon based on its relationship with the federal government. *See* Part III. Accordingly, they

22 cannot be preempted on any grounds.

23 Verizon's challenges to the *Chulsky* Plaintiffs' misrepresentation, fraud, and contract-

24 based claims are also flawed. First, the *Chulsky* Plaintiffs' misrepresentation claim (Count IV) is

25 not even subject to Rule 9(b) of the Federal Rules of Civil Procedure "[b]ecause a claim of

26 misrepresentation is distinct from a claim of fraud under state law." *In re Cendant Corp.*, 190

27 F.R.D. 331, 337 (D.N.J. 1999) (citation omitted). Further, while Rule 9(b) does apply to

28 allegations supporting claims under the N.J. Consumer Fraud Act and Deceptive Business

Practices Act (Counts VI and VIII) the Complaint's numerous allegations of fraud are specific enough to give a defendant notice of the alleged misconduct so that it can defend against them. Accordingly, each of the misconduct and fraud-based claims satisfies Rule 9(b). *See* Part IV.

Verizon's final effort to chip away at the *Chulsky* complaint's contract-based claims (Counts III and VII) is also based on an erroneous conception of the law. It is irrelevant whether a "specific customer agreement is attached, quoted, or even cited" to in the Complaint. *Cf. Ver. Mot.* at 15. These claims satisfy federal notice pleading requirements, which require only that the *Chulsky* Plaintiffs plead breach of contract "according to its effect." The *Chulsky* plaintiffs have pleaded facts supporting all elements of their breach-of-contract claims, *Chulsky* Am. Compl. ¶¶ 91, 92, 94, 97, 123, and accordingly, under Rule 8, their contract claims stand. *See* Part V.

## I.   NO FEDERAL LAW PREEMPTS PLAINTIFFS' STATE LAW CLAIMS.

If the bulk of Verizon's preemption argument rings familiar, that is because it is only a re-hashing of arguments Verizon made in opposition to remand. *See Riordan et al. v. Verizon Commc'ns, Inc.*, Def.'s Opp'n to Pls.' Mot. to Remand, Doc. No. 29 (Case No. 06-3574) at 7-9 ("*Ver. Opp'n to Remand*") (presenting the same cases). Once again, Verizon misses the mark.

In the Remand Order, this Court ruled:

> Defendants contend that federal law governing national security matters "leaves no room for plaintiffs' state-law privacy claims." Safeguarding national security is said to fall squarely within the federal government's "supreme sphere of action." ("The Founders recognized that among the 'principal purposes to be answered by [the] union' are '[t]he common defence of the members' and 'the preservation of the public peace, as well against internal convulsions as external attacks.'") But defendants' repeated invocation of the "sweeping authority of Congress and the Executive" to protect national security misses the mark. Under the doctrine of complete preemption, the question is not whether Congressional authority exists, it is instead whether that authority has been exercised to its fullest extent.

*Remand Order* at *2 (internal citations omitted). This Court proceeded to analyze the specific statutory enactments and purported conflicts with federal law to determine whether complete preemption existed. *Id.* at *2-5. Though the question is now one of ordinary, not complete, preemption, the appropriate question is again not whether federal authority *exists*, but whether that authority has been exercised with intent to displace the challenged state law of several application. *See, e.g., Boyle*, 487 U.S. at 504 ("In most fields of activity, to be sure, this Court

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1　has refused to find federal pre-emption of state law in the absence of either a clear statutory

2　prescription, or a direct conflict between federal and state law.").

3　　　**A.　　Federal Statutes Do Not Expressly Preempt Plaintiffs' Claims.**

4　　　　In the Remand Order, this Court correctly rejected Verizon's argument for express

5　preemption under the Stored Communication Act ("SCA," codified at 18 U.S.C. § 2701 *et seq.*)

6　and Foreign Intelligence Surveillance Act ("FISA," codified at 50 U.S.C. § 1801 *et seq.*)　The

7　SCA and FISA statutes do not expressly preempt any state laws because each "lacks express

8　statutory exclusivity language" to that effect.　*Remand Order* at *3.　*See also English*, 496 U.S. at

9　79 (1990) (express preemption occurs only where Congress "define[s] explicitly the extent to

10　which its enactments pre-empt state law").　Verizon adds nothing here to warrant reversal of this

11　Court's earlier conclusion.

12　　　　As recognized by the Court, the remedies provisions of Section 2708 of the SCA do not

13　preempt state law claims that may coexist with a cause of action in the SCA.　*Remand Order*

14　at *3.　This section serves a limited purpose to prevent suppression of criminal evidence as a

15　remedy for violations.　*See id.*[2]　Verizon quarrels with that holding in a footnote, *Ver. Mot.* at 12

16　n.6, but presents nothing new to warrant revisiting this issue.

17　　　　Verizon fares no better arguing, by reference to other briefs it has filed, that express

18　preemption can be found in provisions in the SCA allegedly "authorizing" its actions in an

19　"emergency" or to protect Verizon's "property."　*Ver. Mot.* at 12.　As will be explained fully in

20　Plaintiffs' other forthcoming briefs, an indefinite terrorist threat constitutes neither a perpetual

21　"emergency" nor a threat to Verizon's particular "property" so as to create a defense under the

22　SCA.　In any event Verizon confuses express preemption, which requires explicit language of

23　express preemption, with a theoretical (and implausible) defense.

24　　　　Verizon does not argue that any other federal law preempts the state claims at issue.

25　Accordingly, Verizon's express preemption claim again should be rejected.

26　——————————————

27　[2]　Indeed, the *Riordan* Plaintiffs presented this Court with substantial indication of Congress's ***express intention to preserve state law claims*** throughout Title III and its amendment by the ECPA.　*Riordan et al. v. Verizon Communications, Inc.*, Pls.' J. Reply in Supp. of Mots. for

28　Remand, Doc. No. 43 (Case No. 06-3574) at 3 n. 3.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.      Federal Statutes Contemplate State Regulation of, and Do Not Preempt, the Field of Electronic Privacy, Even in the Sphere of Foreign Intelligence.**

This Court's Remand Order also informs why there is no field preemption of Plaintiffs' utilities and privacy claims.  Field preemption requires that Congress regulate in an area it intends the Federal Government to occupy exclusively, which may be inferred from a "'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"  *English*, 496 U.S. at 79 (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  This Court already rejected Verizon's prior arguments that FISA "constitutes a set of 'complex, detailed and comprehensive provisions' that 'create a whole system under federal control.'"  *Remand Order* at *3.  The Court also observed that FISA "appear[s] to contemplate state court litigation," *id.*, noting FISA's creation of procedures for federal court review of materials obtained under a FISA order in state court cases.  *Id.; see also* 50 U.S.C. § 1806(f).  Further, citing the fact that 50 U.S.C. § 1861(e) only grants immunity for production of records if a FISA order has been first obtained, the Court held that ***"FISA thus contemplates that, in the absence of a government order for business records under 50 U.S.C. § 1861(a)(1) (as alleged here), injured parties will have causes of action and remedies under other provisions of state and federal law."***  *Remand Order* at *3. (emphasis added).

In short, Congress not only *affirmatively* contemplated a role for state court litigation in the field of electronic surveillance, it legislated appropriate limitations and procedures applicable to such claims. This intention precludes a finding of field preemption.  *See English*, 496 U.S. at 78-79 (preemption is "fundamentally . . . a question of congressional intent").  This is especially true here, where the challenged state laws regulating public utilities fall within the traditional police powers of the state.  *See Kroske*, 432 F.3d at 981 (acknowledging "significant federal presence in the regulation of national banks" but nonetheless applying presumption against preemption where state law "was enacted pursuant to the State's historic police powers to prohibit discrimination on specified grounds").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

C.    **As This Court Has Already Recognized, No Conflict Exists That Could Create Conflict Preemption With Federal Statutes or Federal Common Law.**

Verizon's Motion includes a single sentence alluding to conflict preemption, repeating an argument that the Court previously rebuffed: that "the federal common law requiring uniform rules on matters pertaining to national security preempts Plaintiffs' state law claims." *Ver. Mot.* at 12-13 n.6. To the contrary, "[s]tate law is [] pre-empted to the extent it actually conflicts with federal law . . . or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) (citations omitted). As this Court found, there is no conflict with "the California laws on which Plaintiffs' claims are based" because those claims "do not make unlawful an act of defendants that federal law or policy deems lawful." *Remand Order* at *5. "Under state and federal law, [Verizon] may present as an affirmative defense any assertion that it acted pursuant to legal process, including a legal federal process." *Id.*; *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1990) (defendant's asserted justification is defense to California claim for invasion of privacy); Cal. Pub. Util. Code §§ 2891(d)(6), 2894 (legal compulsion is a defense). The same is true of the New Jersey and Maryland laws. *See, e.g.*, N.J. Stat. Ann. § 2A:156A-25 & 2A:156A-33(a) (court order or warrant authorizing interception or disclosure of communications is complete defense to civil action under New Jersey Wiretap Act); Md. Code Ann., CTS. & JUD. PROC., § 10-410(b), "Wiretap & Electronic Surveillance Act" ("[g]ood faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this subtitle or under any other law").

Verizon does not attempt to identify any genuine conflict between state and federal law; Verizon (incorrectly) maintains that actual conflict is irrelevant. *Ver. Mot.* at 8. Accordingly, there is no basis to revisit the Court's conclusion that no actual conflict exists.

II.    **WHAT VERIZON TERMS "CONSTITUTIONAL FIELD PREEMPTION" DOES NOT FORECLOSE PLAINTIFFS' CLAIMS.**

A.    **Verizon's "Constitutional Field Preemption" Argument Is No More Than a Replay of Its Failed Federal Common Law Preemption Argument.**

Having failed to persuade the Court that a federal common law (including one of foreign

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

affairs) preempts state law claims, Verizon now seeks to repackage the argument as a doctrine of "constitutional field preemption." They are one and the same. Tellingly, Verizon's label appears nowhere in 200 years of constitutional precedent: a Lexis search of "constitutional field preemption" yields no relevant authority. By contrast, foreign affairs is one of the few recognized areas in which federal common law *does exist*, reflecting that this is a federal common law rule. *See Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 n.7 (5th Cir. 1997) ("The Supreme Court has authorized the creation of federal common law in the area of foreign relations.") (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)). Verizon's current claim is still that national defense, as a subset of federal power over foreign affairs, comprises a field of "exclusive federal control" as to which federal interest excludes state regulation, notwithstanding the absence of Congressional action. *Ver. Mot.* at 6-8 n.4. In fact, Verizon made exactly the same arguments before. *See, e.g.*, *Ver. Opp'n to Remand* at 7:20-21 ("[t]he constitution vests 'plenary and exclusive' control over national security, national defense, and foreign policy in Congress and the Executive"); *Ver. Mot.* at 6:2-3 (same argument, almost verbatim); *Ver. Opp'n to Remand* at 8:27-28 ("the Constitution expressly cabins the role of the states with respect to national defense"); Remand Hr'g Tr., December 21, 2006, Doc. No. 119 (Case No. 06-3574) at 39:15-17 (Verizon's counsel emphasizing that he was making a "very separate and independent argument" for preemption "based solely on the Constitution"). The argument is no more persuasive this time around. It is no more than a call for application of federal common law, which is founded on the principle that: "a few areas, involving 'uniquely federal interests,' are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts – so-called 'federal common law.'" *Remand Order* at 8 (*quoting Boyle*, 487 U.S. at 504). In rejecting Verizon's prior attempt to apply federal common law preemption, this Court correctly rejected Verizon's present position.[3]

---

[3] Verizon makes a conclusory attempt to distinguish the Court's prior rejection of the federal common law argument on the basis that here the issue is one of ordinary, not complete preemption. *Ver. Mot.* at 8 n.4. The distinction makes no difference. Federal common law may

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Indeed, the Court fully addressed the preemptive reach of "uniquely federal interests" in the Remand Order. It rightly noted that only "extremely limited" instances justify creation of federal common law by judicial fiat rather than by recourse to Congressional intent. *See Remand Order* at *4. This is because "whether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts." *Id.* (internal quotations omitted). As the Court stated, "in view of Congress's extensive legislation addressing surveillance via FISA, portions of Title III and the SCA, it would be anomalous for the court to supplant this detailed work with a set of federal common law rules." *Id.* at *5. Plaintiffs know of no case, and Verizon has cited none, in which a court has imposed a rule of field preemption notwithstanding that Congress, as here, "contemplate[d] state court litigation" and "causes of action and remedies under other provisions of state . . . law." *Id.* at *4; *see also* Part I(B), *supra*. Here, the state and federal laws are fully consistent and complementary, providing remedies for the same misconduct, with the same law enforcement exclusions. Compliance with federal law necessarily provides a "safe harbor" under state law. The Supreme Court has found state laws not preempted where a federal statute preserves a broad role for state regulation and the state laws "would seem to aid, rather than hinder, the functioning" of a federal statue. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 450-51 (2005) (plaintiffs' claims founded on inadequate pesticide labeling by chemical company were not within scope of express preemption clause).

### B. The Federal Common Law of Foreign Affairs Cannot Be Stretched to Govern Issues Unrelated to International Diplomacy.

The pillars of Verizon's preemption argument (*i.e.*, the cases whose holdings actually speak to preemption of a state law) are decisions preempting state laws that interfere with the

---

apply equally as a defense to liability under state law (as Verizon now argues), or it may govern a case and hence creates federal question jurisdiction (as Verizon previously argued). *See Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 141 (2d Cir. 2005), *aff'd*, 126 S. Ct. 2121 (2006) (describing doctrine and the two applications). Either way, the test from *Boyle*, 487 U.S. 500, is the touchstone to determine if federal common law governs the case. Indeed, the fact that no distinction lies between "ordinary" and "complete" preemption by federal common law is best illustrated by the fact that the issue in *Boyle* was *not* federal jurisdiction (it was a diversity action), but only whether federal common law provided a defense to a state tort claim. *See id.* at 502, 512. Thus, it follows ineluctably from this Court's application of *Boyle* in the Remand analysis to conclude that federal common law does not apply to create federal jurisdiction that, likewise, it does not create a preemption defense to the state law claims.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

conduct of foreign affairs. By contrast, *Riordan*, *Chulsky*, and *Bready* in no way implicate

foreign affairs or foreign relations. While Verizon's decision to hand Plaintiffs' confidential

telephone records over to the NSA may have been motivated by an interest in national security,

there is no basis for concluding that allowing Plaintiffs to prosecute their privacy-based claims

against Verizon—a private, domestic company—will have any impact on the United States'

relations with any foreign nation. Nor were the generalized state laws Verizon challenges enacted

with any eye directed at influencing foreign affairs. Accordingly, none of the foreign relations

cases are precedent for holding the state laws preempted here.

For example, Verizon relies heavily on *Zschernig v. Miller*, 389 U.S. 429 (1968). That

case invalidated an Oregon statute that effectively conditioned inheritance on foreign heirs not

residing in what Oregon considered a communist or fascist regime. The Court found the statute

was "an intrusion by the State into the field of foreign affairs," *id.* at 432, and had "more than

'some incidental or indirect effect in foreign countries.'" *Id.* at 434-35 (citation omitted). As the

Ninth Circuit explains, the statute struck in *Zschernig* was "seen by a Court operating at the

height of the Cold War as a potential provocation to foreign powers," since "international

controversies of the gravest moment, sometimes even leading to war, may arise from real or

imagined wrongs to another's subjects inflicted, or permitted, by a government." *Deutsch v.*

*Turner Corp.*, 324 F.3d 692, 711 (9th Cir. 2003) (internal quotations omitted). By contrast, while

*Zschernig* prohibited each State from "establish[ing] its own foreign policy" (389 U.S. at 441)

here the challenged state laws do not impact foreign policy, facially or as applied to Verizon.

Verizon also places unwarranted reliance on *Deutsch*, 324 F.3d 692, which affirmed this

Court's decision in *In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160

(N.D. Cal. 2001). *Deutsch* affirmed preemption of a California law creating a cause of action for

victims of World War II slave labor. 324 F.3d at 703, 708. "California seeks to redress

wrongs . . . for wartime acts that California's legislature believed had never been fairly resolved."

*Id.* at 712. The legislature was motivated to pass the act by dissatisfaction "with how the federal

government chose to address the various wartime injuries suffered by victims" through post-war

treaties and sought "to remedy those[] injuries in a manner favored by California but not provided

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

for by the federal government." *Id.* at 715. Indeed, as this Court noted, the statute's terms and legislative history "demonstrate a purpose to influence foreign affairs directly" and "target[] particular countries," because "California intended the statute to send an explicit foreign relations message, rather than simply to address some local concern." *In re WWII*, 164 F. Supp. 2d at 1173, 1174. None of the California, New Jersey, or Maryland laws Verizon seeks to preempt here have any express purpose to affect foreign relations or, alternatively, national security. They are directed entirely at the traditional state concerns of regulating utilities and privacy, and warrant no finding of preemption.

### C. Foreign Affairs Cases, Even Where Applicable, Require Conflict With Federal Policy Which Verizon Has Not Even Attempted to Demonstrate Here.

Beyond the fact that this is not a foreign affairs case, Verizon's argument also fails because it wrongly asserts that preemption may pertain as a constitutionally existential principle, regardless of any conflict between state law and federal policy. *Ver. Mot.* at 8. To the contrary, even in the paradigm realm of foreign relations, state laws have not been held preempted in a constitutional vacuum. As the Ninth Circuit explained in *Deutsch*, affirming this Court:

> Despite the broad language of Pink and the Chinese Exclusion Case, however, *Zschernig* is "[t]he only case in which the Supreme Court has struck down a state statute as violative of the foreign affairs power." *Zschernig* has been applied sparingly, because the Supreme Court has held that a statute *does not violate the constitution where it merely has "some incidental or indirect effect in foreign countries.*" *Clark v. Allen*, 331 U.S. 503, 517 (1947).

*Deutsch*, 324 F.3d at 710 (some citations omitted) (emphasis added). Hence, "there is a threshold level of involvement in and impact on foreign affairs which the states may not exceed." *In re WWII, 164 F. Supp. 2d at 1171* (quoting *National Foreign Trade Council v. Natsios*, 181 F.3d 38, 49-57 (1st Cir. 1999)). Verizon, by contrast, simply refuses to accept that states may regulate in ways that have even an "incidental or indirect" effect on national security or defense. It has not attempted to show that the state laws Plaintiffs assert would cross any threshold.

Further, more recent Supreme Court precedent has reinforced the significance of finding conflict even in the narrow circumstance where foreign affairs are actually implicated by a state

law.  *See American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).[4]  California statutes

challenged in *Garamendi* prohibited insurers from doing business in the state unless they

compiled and disclosed a vast database of information about policies sold before and during

World War II, notwithstanding Executive Agreements entered into by the President establishing

an international procedure to remedy holocaust victims' claims.  *See id.* at 401.  The Court held

that "[t]he express federal policy and the *clear conflict* raised by the state statute [were] alone

enough to require state law to yield."  *Id.* at 425 (emphasis added).  Among other things, the state

law interfered with the President's economic and diplomatic leverage with foreign nations;

pursued coercion and litigation instead of voluntary funding; and presented "an obstacle to the

success of the National Government's chosen 'calibration of force' in dealing with the Europeans

using a voluntary approach."  *Id.* at 420-425.  As the Supreme Court summarized:

> The basic fact is that California seeks to use an iron fist where the President has
> consistently chosen kid gloves. . . . *The question relevant to preemption in this
> case is conflict*, and the evidence here is more than sufficient to demonstrate that
> the state Act stands in the way of [the President's] diplomatic objectives.

*Id.* at 427 (emphasis added).

In addition, the *Garamendi* Court emphasized the need to consider "the strength of the

state interest, judged by standards of traditional practice, when deciding how serious a conflict

must be shown before declaring the state law preempted."  *Id.* at 420.  The Court concluded that

California's unusual legislation, which "singles out only policies issued by European companies,

in Europe, to European residents, at least 55 years ago," reflected the "weakness of the State's

interest, against the backdrop of traditional state legislative subject matter . . . ."  *Id.* at 425-26.

By contrast, Verizon makes no effort to dispute the powerful interest and "traditional

competence," *id.* at 425 n. 11, of the states to regulate public utilities and their duties to

consumers.  Nevertheless, Verizon demonstrated any actual conflict between the state laws and a

---

[4]  Contrary to Verizon's claim that conflict is never required to preempt state laws touching the
arena of foreign affairs, the Supreme Court in *Garamendi* acknowledged—but declined to answer
categorically—what it described as the "fair question" presented by "the contrasting theories of
field and conflict preemption evident in the *Zschernig* opinions."  *Id.* at 419.  The Court instead
applied a balancing test weighing both the degree of conflict and the extent of traditional
competence of the state in the regulated arena.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   valid federal exercise of power.  Rather, Verizon erroneously asserts that preemption requires no

2   showing of conflict whatsoever, saying only that "[c]onflict is inherent in the state laws' very

3   effort to reach into the sphere of national security."  *Ver. Mot.* at 8.  That statement is mere *ipse*

4   *dixit* here, where the state laws are of general applicability, were not passed in any "effort" to

5   influence national security, and, coterminus with federal law, allow disclosure of records, in the

6   event of lawful process and thus would have at most an indirect and inconsequential effect on

7   intelligence gathering.

8       **D.      Verizon's Cases Do Not Support Preemption Based on a Generalized Federal
             Interest in National Security.**
9

10          Verizon labors to patch together support for an assertion that the constitution's bare

11  allocation of responsibilities for national defense, without more, requires preemption.  It succeeds

12  admirably in culling quotes from otherwise irrelevant authorities.  But no court has previously

13  recognized, and no authority warrants, expanding the "sparingly applied" foreign affairs doctrine

14  *Deutsch*, 324 F.3d at 692, to national defense.  At bottom, Verizon can find no authority holding a

15  state law preempted by the Constitution's *mere allocation* of war and defense powers to the

16  federal government, without reference to either conflicting *federal exercise* of that power, or to an

17  explicit finding of *interference* of the state law with express U.S. policy.

18          Indeed, the Massachusetts Supreme Court rejected an argument similar to Verizon's, that

19  "any regulation which interferes with the conduct of a [Department of Defense] research program

20  is preempted by the Constitution's grant of war and defense powers to the Federal government."

21  *Arthur D. Little, Inc. v. Comm'r of Health & Hosps.*, 395 Mass. 535, 546 (1985) (upholding

22  regulation prohibiting uses of chemical warfare agents notwithstanding impact on research

23  activities carried out by ADL pursuant to contracts with the Department of Defense).  The court

24  declined to find preemption, recognizing that "not every regulation which has some incidental

25  effect on a defense program is invalid under the supremacy clause."  *Id.* at 547.

26          By contrast, although Verizon's brief quotes freely from authorities that recognize federal

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

interests in foreign policy, war, and military affairs, *Ver. Mot.* at 6,[5] none of them hold a state law preempted on the basis of naked constitutional supremacy in national security generally, much less constitutional supremacy in regulating public utilities. For example, *Tarble's Case*, 80 U.S. (13 Wall.) 397 (1872), stated the issue decided as "[w]hether any judicial officer of a State has jurisdiction to issue a writ of habeas corpus . . . for the discharge of a person *held under the authority, or claim and color of the authority, of the United States by an officer of that government.*" *Id.* at 402 (emphasis added). It stands for the unexceptional proposition that the federal government has supremacy in any case, military or not, in which a state court attempts to affirmatively force it to act in a manner that conflicts with federal law. *Id.* at 407.

Further, the issue in *Stehney v. Perry* is one of conflict preemption, not constitutional power. 101 F.3d 925, 938 n.10 (3d Cir. 1996). A New Jersey law prohibiting employer polygraphs was held to be an "obstacle" to the federal Employee Polygraph Protection Act, which "provide[d] that states may not regulate or prohibit the federal government from requiring employees of NSA contractors to take polygraph examinations." *Id.* The Third Circuit, in fact, expressly declined to premise preemption on constitutional war powers under Article I § 8 and Article II § 2 of the U.S. Constitution. *Id.*[6]

Finally, Verizon relies on an unpublished opinion striking down Oakland's Nuclear Free Zone Ordinance. *United States v. City of Oakland*, No. C-89-3305 (N.D. Cal. Aug. 23, 1990), *Ver. Mot.* Exh. 1. That case, which appears never to have been cited by another court, is inapposite for several reasons. First, the Oakland ordinance prohibited all "persons"—defined to include the federal government—from a host of activities, including development, testing, production, maintenance, transportation, storage, research or evaluation of nuclear weapons

---

[5] Verizon previously cited nearly all of these cases. *See Ver. Opp'n to Mot. to Remand* at (ii-iv).

[6] The actual holdings in Verizon's other purported authorities are also wholly inapplicable. *See, e.g., Perpich v. Dep't of Defense,* 496 U.S. 334 (1990) (no state law challenged; federal statute withdrawing a previous statutory right of governors to veto training outside the U.S. of "dual enlistment" members of National Guard /Army Reserves upheld as consistent with Militia Clauses); *Snepp v. United States,* 444 U.S. 507, 509 n.3 (1980) (affirming validity of contract between Snepp and CIA restricting his disclosure of information absent pre-publication review from CIA); *United States v. Marchetti,* 466 F.2d 1309, 1315 (4th Cir. 1972) (affirming validity of secrecy agreement signed by Marchetti upon joining CIA).

within Oakland. *Id.* at 2. Second, the court found the ordinance was not only "clearly designed to interfere with" U.S. nuclear policy, but that it in fact would "clearly interfere with the United State defense policy directly and substantially." *Id.* at 9 (emphasis added). Third, unlike *Oakland*, Plaintiffs here do not directly target the government. *Cf. id.* at 10 (distinguishing contrary authority on that basis). Fourth, unlike regulation of nuclear defense, the state laws regulating public utility records fall squarely within the traditional competency of the states.

In summary, Verizon has not approached the showing needed to overcome the presumption against preemption of the sovereign state laws at issue. This case lies far outside the "sparingly applied" rule of foreign affairs preemption. And even if that rule were dramatically expanded beyond all precedent to reach national security or intelligence surveillance, this Court's prior finding of no conflict between state and federal law remains dispositive.

## III. THE STATE LAWS AT ISSUE CANNOT BE PREEMPTED DIRECTLY UNDER THE SUPREMACY CLAUSE.

Under a direct application of the intergovenmental immunity clause, a state law may also run afoul of the Supremacy Clause, but "only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990). Verizon's backstop argument for such preemption fails because Plaintiffs' state claims by no means constitute efforts to regulate "directly" the Federal Government; nor do they "discriminate" against Verizon in any way, let alone on the basis of rendering voluntary assistance to the federal government.

As an initial matter, *North Dakota's* "direct regulation or discrimination" test recognizes that "[w]hatever burdens are imposed on the Federal Government by a neutral state law regulating its suppliers are but normal incidents of the organization within the same territory of two governments." *Id.* at 435. Moreover, the test entails a "functional approach to claims of governmental immunity, accommodating of the full range of each sovereign's legislative authority and respectful of the primary role of Congress in resolving conflicts between National and State Government." *Id.* Here, the state laws at issue are neutral and generally applicable regulations. Congress itself contemplated state law claims against private entities relating to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   surveillance in the absence of a FISA order.  *Remand Order* at *4.  Accordingly there is no room

2   whatsoever to find preemption under the Supremacy Clause directly.

3   **A.    Plaintiffs' State Law Claims Do Not Directly Regulate the Federal**
       **Government**

4

5       Plaintiffs' claims cannot reasonably be said to constitute regulation of the federal

6   government directly.  Their claims are not asserted against the federal government.  They impose

7   no requirements on the federal government to do anything at all.  They merely seek to enforce

8   state privacy and consumer protection laws against private utilities.

9       The Supreme Court's most recent, and most analogous, ruling on this subject is *North*

10  *Dakota*, 495 U.S. at 423.  There, the Supreme Court upheld the constitutionality of laws that

11  required out-of-state shippers of alcoholic beverages to file monthly reports and to affix a label to

12  each bottle of liquor sold to federal military enclaves.  *Id.* at 426.  The Court noted that "[t]here is

13  no claim in this case, nor could there be, that North Dakota regulates the Federal Government

14  directly," because the laws operated against suppliers, not the government.  *Id.* at 436-37.

15  Accordingly, "concerns about direct interference . . . are not implicated."  *Id.* at 437 (internal

16  citations omitted).  Similarly here, the state laws operate only against Verizon, which is turning

17  over information to the government, not against the government itself.[7]

18      The authorities Verizon cites in which state laws were preempted as attempts to directly

19  regulate or control the federal government are not analogous.  In two cases the plaintiffs sought to

20  ─────────────────────────

21  [7]  To the extent Verizon suggests that it was acting as a "federal agent" and is entitled to
     sovereign immunity, it has not made any showing to support such a finding.  At most, Verizon

22  asserts that it acted as an agent of the NSA.  *See Ver. Mot.* at 11 n.5.  Finding a private entity is
     entitled to partake in the intergovernmental sovereign immunity, however, "requires something

23  more than the invocation of traditional agency notions."  *United States v. New Mexico*, 455 U.S.
     720, 736 (1982) (holding contractor that provided services to government not entitled to tax

24  immunity under principles of sovereign immunity) (internal quotations omitted).  Rather, a
     private entity must "actually stand in the Government's shoes," a claim Verizon has not made.

25  *Id.*  Further, *Kentucky ex rel. Hancock v. Ruckelshaus*, which Verizon cites for the proposition
     that "[t]he sovereign can only act through its agents" is inapt because there, defendants were the

26  *heads* of various *federal* departments and agencies.  497 F.2d 1172, 1175 (6th Cir. 1974), *aff'd*,
     426 U.S. 167 (1976)  ("We view the action against the non-TVA defendants as a suit against the

27  United States.").  It is also irrelevant that this Court found jurisdiction under the removal statute
     for entities "acting under" the direction of the government, 28 U.S.C. § 1442(a)(1).  If Verizon

28  contends that finding jurisdiction under that statute has some relevant relation to conferring
     sovereign immunity on a private entity, it has not illuminated that theory.

exact fees from the United States, whereas Plaintiffs do not seek money or anything else from the government. *See Mayo v. United States*, 319 U.S. 441, 447 (1943) (striking down inspection fees "laid directly upon the United States"); *City of Los Angeles v. United States*, 355 F. Supp. 461, 464 (C.D. Cal. 1972) (striking municipal pilotage fees levied by the city against the United States Navy); but *cf. United States v. New Mexico*, 455 U.S. 720 (1982) (upholding taxes on federal contractors). In *Hancock v. Train*, the state Attorney General sought to force the U.S. Army, TVA, and the Atomic Energy Commission to obtain state air pollution permits for facilities on federal installations—a direct "prohibition on the Federal Government." 426 U.S. 167, 174, 180 (1976). *Cf. Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) (requiring National Parks Service to post signage and ropes indicating water depth under River Resort Act would constitute "direct and intrusive" regulation of Federal Government's operation of its property at Yosemite). Verizon's attempts to piece together quotes cannot support the incorrect assertion that the "intergovernmental immunity doctrine prevents the states from applying even generally applicable rules to a federal program." *Ver. Mot.* at 10.[8] The challenged state laws impose no direct regulations on the Federal Government, as would be required to preempt them.

**B.**     **Plaintiffs' State Law Claims Do Not Discriminate Against the Government.**

Plaintiffs' claims are also not preempted simply because they may bear incidentally on a government program. "Neither the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the Federal Government." *Hancock*, 426 U.S. at 179. Indeed, 70 years have now passed since the Supreme Court "decisively rejected the argument that any state regulation which *indirectly regulates* the Federal Government's activity is unconstitutional," a view now "thoroughly repudiated." *North Dakota*, 495 U.S. at 434-435 (internal citation omitted) (emphasis added). At most, application of the neutral state laws here would have an indirect effect on the alleged NSA programs but, in any event, no effect beyond

---

[8]  Verizon's reliance on *Johnson v. Maryland* for this assertion is untenable, as it held only that a state could not require a federal postal employee to obtain a state driver's license to drive a mail truck. 254 U.S. 51 (1920). Regardless, it was also from the period preceding the Court's "decisive rejection" of the principle that "any state regulation which indirectly regulates the Federal Government's activity is unconstitutional." *See North Dakota*, 495 U.S. at 434.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

application of parallel federal law. The program's volunteers, including Verizon, may become more vigilant in obtaining proper legal process *before* supplying the NSA with customer call records or access to communications. Indeed, that may already be the trend, given the public outrage over Defendants' wholesale breach of customer privacy rights. Regardless, even such an incidental effect would be inconsequential in the preemption analysis. As in *North Dakota*, if an impact of unknown severity is to be deemed sufficient to negate state law, it would be for Congress, not a court, to impose preemption. *Id.* at 444 (for Court to preempt state law based on unquantified burden of labeling and reporting would be "unwise and . . . unwarranted").

Rather, absent direct regulation of the government, the Court could deem state law claims preempted only if they "discriminate against" Verizon or other telecommunications companies, which they obviously do not. A "[s]tate does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S. 536, 544-545 n.10 (1983). Here, the asserted state laws make no distinction based on the government's involvement. They regulate equally all public utilities and any unauthorized disclosure, not merely disclosure to the federal government. These statutes cannot *disfavor* the government as compared to other entities, again because they accommodate a defense of lawful process regardless of whether the source is state or federal authorization. Nor do Plaintiffs seek to restrict the parties with whom the government can contract. *See Ver. Mot.* at 12. The government can always enlist Verizon and other companies to supply call records; the companies must simply comply with applicable, non-discriminatory state law.

What Verizon seeks is actually preferential treatment for itself for having volunteered to assist the NSA in disregard for the governing laws and without lawful authorization. That, however, is no grounds for preemption.

## IV. NONE OF THE *CHULSKY* CLAIMS SHOULD BE DISMISSED UNDER RULE 9(B).

Verizon is wrong that Federal Rule of Civil Procedure 9(b) requires dismissal of three of the nine claims in *Chulsky*: Count IV (misrepresentation), Count VI (N.J. Consumer Fraud Act) and Count VIII (N.J. Deceptive Business Practices). *Ver. Mot.* at 13-14.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## A. Rule 9(b) Does Not Apply to *Chulsky*'s Misrepresentation Claim.

"Because a claim of misrepresentation is distinct from a claim of fraud under state law, Rule 9(b) does not apply to the former according to its terms." *In re Cendant Corp.*, 190 F.R.D. 331, 337 (D.N.J. 1999); *see also*, 5A Charles Alan Wright, et al., Federal Practice and Procedure § 1297 (3d ed 2004) ("[b]y its terms . . . Rule 9(b) applies only to averments of fraud," "its scope of application should be construed narrowly and not extended to other legal theories"). Indeed, this District recently rejected the same argument Verizon makes here as "highly unpersuasive," holding that common-law misrepresentation claims are outside the scope of Rule 9(b). *Forte Capital Partners v. Cramer*, No. 07-CV-01237, 2007 U.S. Dist. LEXIS 40126, at *22-23, 2007 WL 1430052, at * 8 (N.D. Cal., May 14, 2007) (citing multiple authorities).

Tellingly, the lone case that Verizon cites in support of its argument that Rule 9(b) applies to *Chulsky*'s misrepresentation claim held only that fraud claims are subject to the particularity requirement of Rule 9(b). *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (affirming District Court's holding that New Jersey Consumer Fraud Act and common law fraud claims are subject to the particularity requirement of Rule 9(b)). Accordingly, Verizon's argument that Rule 9(b) applies to misrepresentation claims is incorrect.

## B. *Chulsky*'s Allegations of Fraud Are Specific and Satisfy Rule 9(b).

*Chulsky*'s claims under the N.J. Consumer Fraud Act (Count VI), and the N.J. Deceptive Business Practices Act (Count VIII), are specific and satisfy the pleading requirements of Rule 9(b). Rule 9(b)'s "particularity requirement is satisfied if the allegations of fraud are specific enough to give a defendant notice of the alleged misconduct so that it can defend against the charge and not just deny any wrongdoing." *In re Heritage Bond Litig.*, 289 F. Supp. 2d 1132, 1146 (C.D. Cal. 2003) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)); *see also, Odom v. Microsoft Corp.*, No. 04- CV-35468, 2007 U.S. App. LEXIS 10519, 2007 WL 1297249, at *12 (9th Cir. May 4, 2007) (reversing dismissal, explaining that Rule 9(b) only "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations"). Here, Verizon has ample notice of its misconduct. The *Chulsky* plaintiffs specifically allege that Verizon, through its subscriber agreements, promotional

literature and written notices, falsely represented to customers that it would not disclose their communications and records without consent or court order. *Chulsky* Am. Compl. ¶¶ 92, 97, 125. At the very same time, Verizon was disclosing customer communications and records without giving customers any notice or obtaining their consent, and without warrant, court order, or any other appropriate certifications. *Id.* ¶¶ 1, 42, 70, 71, 92, 125. These allegations are specific enough to give Verizon ample notice of the misconduct alleged so that it can prepare and answer and defend itself. Verizon is well aware of its own published customer privacy policies.

### C. Should the Court Find *Chulsky*'s Allegations of Fraud Are Not Specific Enough to Satisfy Rule 9(b), Leave to Amend Should Be Freely Granted.

In the event the Court finds that the *Chulsky* allegations grounded in fraud and misrepresentation do not comply with Rule 9(b), the *Chulsky* plaintiffs hereby respectfully request leave to amend their pleadings under Rule 15(a). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) ("As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. 'Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'") (citation omitted); *see also, Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (leave to amend under Rule 15 is "to be applied with extreme liberality"). The *Chulsky* plaintiffs can readily plead and provide Verizon with its own published subscriber agreements, promotional literature and written notices where Verizon vowed to protect its customers' privacy.

## V. *CHULSKY*'S CONTRACT CLAIMS SATISFY NOTICE PLEADING STANDARDS UNDER RULE 8.

"Notice pleading does not impose heightened pleading standards when alleging a breach of contract." *Chaganti v. I2 Phone Int'l Inc.*, No. 04-CV-0987, 2005 WL 679664, at *3 (N.D. Cal. March 11, 2005 ) (Walker, J.). Notwithstanding this well-settled law, Verizon insists that Rule 8 requires the *Chulsky* Plaintiffs' claims for breach of contract (Count III) and for violation of the Truth-in-Consumer-Contract Act (Count VII) to be dismissed because "no specific customer agreement is attached, quoted, or even cited." *Ver. Mot.* at 15. Contracts are not required to be pled in their entirety to satisfy the federal notice pleading standards. *Bicoastal*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Corp. v. Aetna Cas. and Sur. Co.*, No. C-94-20108, 1994 WL 564539, at *3 (N.D. Cal Oct. 4, 1994 ) (citing *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("A plaintiff is under no obligation to attach to her complaint documents upon which her action is based."). Thus, plaintiffs need not attach a "specific customer agreement" that Verizon breached, but merely "plead it according to its effect." *Northwest Pipe Co. v. Travelers Indem. Co.*, No. 02-CV-04189, 2003 U.S. Dist. LEXIS 26416, at *10, 2003 WL 24027882, at *3 (N.D. Cal. Feb. 12, 2003). "So long as Plaintiff has pleaded all of the elements of a breach of contract claim, however, its claim may stand." *Id.*; *see also Chaganti*, 2005 WL 679664, at *4 ("The purpose of the complaint is to give defendants notice of the causes of action. . . . Plaintiff has alleged the existence of a contract. If defendants believe there was no valid contract, summary judgment or trial will provide an appropriate forum to make that determination.").

Here, the *Chulsky* Plaintiffs have pleaded all elements of their breach-of-contract claims, including the existence of the Verizon customer agreements, pertinent terms, breach, and damages. *Chulsky* Am. Compl. ¶¶ 91, 92, 94, 97, 123, *supra*. Accordingly, Verizon's motion to dismiss Counts III and VII under Rule 8 fails.

Should the Court find that Rule 8 requires plaintiffs to provide Verizon with its own "specific customer agreement" to give fair notice of the breach-of-contract claims, the *Chulsky* plaintiffs hereby respectfully request leave to amend. *See Eminence Capital*, 316 F.3d at 1051.

## CONCLUSION

For the reasons set forth above, this Court should deny Verizon's Motion to Dismiss the *Chulsky*, *Riordan*, and *Bready* Complaints.

Respectfully,

Dated: June 8, 2007                    FENWICK & WEST LLP

By:     /s/ Laurence F. Pulgram
               Laurence F. Pulgram

Attorneys for Plaintiffs
Dennis P. Riordan, et al.

Dated: June 8, 2007                    Respectfully,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA


By: _____/s/ Ann Brick_____
                Ann Brick

Attorneys for Plaintiffs
Dennis P. Riordan, et al.


Dated: June 8, 2007                    Respectfully,

SHAPIRO & STEINLEIB LLC


By: _____/s/ David H. Steinlieb_____
                David H. Steinlieb

Attorneys for Plaintiffs
Glen Chulsky, et al.


Dated: June 8, 2007                    Respectfully,

GRIFFIN WHITAKER LLP


By: ___/s/ Joshua Graeme Whitaker___
                Joshua Graeme Whitaker

Attorneys for Plaintiffs
Ann Bready, et al.