1   PETER D. KEISLER
    Assistant Attorney General, Civil Division
2   CARL J. NICHOLS
    Deputy Assistant Attorney General
3   DOUGLAS N. LETTER
    Terrorism Litigation Counsel
4   JOSEPH H. HUNT
    Director, Federal Programs Branch
5   ANTHONY J. COPPOLINO
    Special Litigation Counsel
6   Email: tony.coppolino@usdoj.gov
    ANDREW H. TANNENBAUM
7   Trial Attorney
    Email: andrew.tannenbaum@usdoj.gov
8   U.S. Department of Justice
    Civil Division, Federal Programs Branch
9   20 Massachusetts Avenue, NW, Rm. 6102
    Washington, D.C. 20001
10  Phone: (202) 514-4782/(202) 514-4263
    Fax: (202) 616-8460
11  *Attorneys for Defendants*

12              **UNITED STATES DISTRICT COURT**

13           **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15                                    )    **No. M:06-cv-01791-VRW**
    IN RE NATIONAL SECURITY AGENCY    )
16  TELECOMMUNICATIONS RECORDS        )    **DEFENDANTS' SUPPLEMENTAL**
    LITIGATION                        )    **MEMORANDUM IN SUPPORT OF**
17                                    )    **MOTION TO DISMISS OR FOR**
    _____ )    **SUMMARY JUDGMENT IN** *Center for*
18                                    )    *Constitutional Rights v. Bush (07-1115)*
    This Document Relates Only To:    )
19                                    )    Judge:      Hon. Vaughn R. Walker
    *Center for Constitutional Rights v. Bush,* )    Date:       August 9, 2007
20  (Case No. 07-1115)                )    Time:       2 p.m.
                                      )    Courtroom:  6, 17th Floor
21                                    )
                                      )
22  _____ )

23

24

25

26

27

28  **Defendants' Supplemental Memorandum**
    *Center for Constitutional Rights v. Bush* (07-CV-1115-VRW)
    M:06-CV-1791-VRW

**TABLE OF CONTENTS**

                                                                                          **PAGE**

**(U)** INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**(U)** BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    **(U)** Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    **(U)** The Parties' Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    **(U)** Intervening FISA Court Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**(U)** ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    **(U)** The FISA Court Orders Underscore that Plaintiffs Cannot
          Establish their Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    **(U)** The Mootness Doctrine Also Requires Dismissal of This
          Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.    **(U)** Plaintiffs' Claims on the Merits Cannot Be Sustained Because
          the Challenged Surveillance is Subject to FISA Court Approval . . . . . . . . . . . . 15

    D.    **(U)** The States Secrets Privilege Continues to Preclude
          Adjudication of Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**(U)** CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**TABLE OF AUTHORITIES**

**PAGE(S)**

*Ali v. Cangemi*, 419 F.3d 722 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Blum v. Yaretsky*, 457 U.S. 991 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Center for Biological Diversity v. Lohn*, 483 F.3d 984 (9th Cir. 2007) . . . . . . . . . . . . 12, 13, 14

*Chamber of Commerce v. Department of Energy*, 627 F.2d 289 (D.C. Cir. 1980) . . . . . . . . . . 15

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Demery v. Arpaio*, 378 F.3d 1020 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Department of Commerce v. United States House of Representatives*,
    525 U.S. 316 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Foster v. Carson*, 347 F.3d 742 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167 (2000) . . . . . . . . 13

*Gator.com Corp. v. LL Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 9

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 12

*Greenbaum v. EPA*, 370 F.3d 527 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*INS v. St. Cyr*, 533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Laird v. Tatum*, 408 U.S. 1 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Murphy v. Hunt*, 455 U.S. 478 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . 12, 14

*Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346 (D.C. Cir. 1997) . . . . . . . . . . 14

*North Carolina v. Rice*, 404 U.S. 244 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*O'Shea v. Littleton*, 414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rizzo v. Goode*, 423 U.S. 362 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . 10

*Smith v. University of Washington Law School*, 233 F.3d 1188 (9th Cir. 2000) . . . . . . . . . . . . 12

*Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724 (10th Cir. 1997) . . . . . . . . . . . . . . 15

*Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101 (1944) . . . . . . . . . . . . . . . . . . . . . . 15

*Steffel v. Thompson*, 415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) . . . . . . . . . . . . . . . . . . . . . . 12

*Weinstein v. Bradford*, 423 U.S. 147 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES

50 U.S.C. § 1801, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# (U) INTRODUCTION

**(U)**    Plaintiffs in this action—the Center for Constitutional Rights ("CCR") and several of its legal staff members—challenge a foreign intelligence surveillance program that, as set forth below, is no longer operative. Specifically, Plaintiffs challenge a program described by the President in December 2005, pursuant to which the National Security Agency ("NSA") targeted the content of international communications to or from the United States where one party was reasonably believed to be a member or agent of al Qaeda or an affiliated terrorist organization. *See* Complaint ¶ 27.[1]  Plaintiffs allege that this program—which the Government referred to as the Terrorist Surveillance Program or "TSP"[2]—was unlawful because it authorized electronic surveillance without statutory authorization and in violation of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801, *et seq.*, and the United States Constitution. *See* Compl. ¶ 46.

**(U)**    Prior to the transfer of this action to this Court, the parties filed respective dispositive motions. Defendants moved to dismiss the action or, in the alternative, for summary judgment, because Plaintiffs lack standing on the face of their Complaint and because, in any event, further proceedings would inherently require the disclosure of classified information over which the Director of National Intelligence ("DNI") asserted the state secrets privilege. *See* Dkt. No. 1 (07-1115), Item Nos. 12-16. In support of that motion and privilege assertion, Defendants submitted unclassified and classified briefs, as well as unclassified and classified declarations of the Director of National Intelligence and the Signals Intelligence Director of the NSA.[3]

---

[1] **(U)**  The electronic docket for the *CCR* case in this MDL proceeding is available under Civil Action No. 07-1115, and the Complaint in this action is at Dkt. No. 1, Item No. 1.

[2] **(U)**  Plaintiffs refer to this activity as the "NSA Surveillance Program." *See* Compl. ¶ 27. This brief will use the Government's term for this activity—the TSP.

[3] **(U)**  The classified materials, further listed in n.6, *infra*, were lodged with the Court Security Officer for *in camera, ex parte* review in proceedings before the Southern District of New York, and are similarly available for this Court's review.

**Defendants' Supplemental Memorandum**
*Center for Constitutional Rights v. Bush* (07-CV-1115-VRW)
M:06-CV-1791-VRW

Plaintiffs filed a motion for partial summary judgment on the theory that the lawfulness of the TSP could be decided based solely on the public record. *See id.*, Item Nos. 5-6, 8-9.[4] Both of these motions have been pending since the transferor court held oral argument in September 2006.

(U) This supplemental memorandum addresses an intervening judicial event that further requires dismissal of this case. As Defendants notified this Court on January 11, 2007, the Foreign Intelligence Surveillance Court ("FISA Court" or "FISC") issued orders on January 10, 2007 authorizing the Government to target for collection international communications into or out of the United States where there is probable cause to believe that one of the parties to the communication is a member or agent of al Qaeda or an associated terrorist organization. *See* Dkt. 127-1 (MDL-1791). In light of these intervening FISA Court orders, any electronic surveillance that was occurring as part of the TSP is now being conducted subject to the approval of the FISA Court, and the President has decided not to reauthorize the TSP. *See id.* Accordingly, the essential predicate for Plaintiffs' claims and request for relief no longer exists.

(U) As explained below, whether viewed as an issue of standing or mootness under the "case or controversy" requirement of Article III, or a matter that goes to the underlying merits of Plaintiffs' claims, the FISA Court orders reinforce and independently compel the conclusion that this suit—which seeks only prospective relief concerning the TSP—must be dismissed. The fact that the TSP is no longer in place confirms that Plaintiffs do not have standing to seek prospective relief. Indeed, Plaintiffs' claim that the TSP caused a chilling effect on their activities, already insufficient on the face of the Complaint, certainly cannot be sustained in the absence of the TSP. Alternatively, the mootness doctrine requires dismissal where, as here, the challenged activity is no longer in place and no exception to that doctrine

---

[4] (U) On May 24, 2007, the parties in this case filed a stipulation proposing an August 9, 2007 hearing for their pending dispositive motions and a schedule for supplemental briefing. *See* Dkt. No. 289-1 (MDL-1791). The Court has not yet entered that schedule, but Defendants file this supplemental memorandum in accordance with that stipulation.

applies or could be adjudicated in light of the state secrets privilege.

(U)     Assuming that a valid jurisdictional basis remains, Plaintiffs' underlying claims on the merits also necessarily fail where the challenged activity is now occurring under FISA. Finally, factual adjudication of any or all of these issues (standing, mootness, and the merits) would require disclosure of state secrets concerning the surveillance authorized by the President, or the surveillance now authorized by the FISC, and could not proceed without causing exceptionally grave harm to the national security.

## (U) BACKGROUND

### A.   (U) Plaintiffs' Claims

(U)     In contrast to other actions pending before this Court, including the *Hepting*, *Verizon* and *Shubert* cases, Plaintiffs in *CCR* do not allege that the NSA undertakes a "dragnet" of content surveillance. Rather, Plaintiffs allege that they are subject to, and have been subjected to, the particular NSA surveillance program described by the President in December 2005 (*i.e.*, the TSP), pursuant to which he authorized the NSA to intercept the content of certain communications where there are reasonable grounds to believe that (1) the communication originated or terminated outside the United States, and (2) a party to such communication is a member or agent of al Qaeda or an affiliated terrorist organization. *See* Press Conference of President Bush (Dec. 19, 2005); *see also* Compl. ¶ 27. Plaintiffs allege that they represent individuals who have been detained or investigated for terrorism-related matters, including alleged al Qaeda suspects, and that their communications with clients, counsel, witnesses, and other persons thus "fit within the criteria" of the TSP. *See* CCR Complaint ¶¶ 35-40; *see also id.* ¶¶ 3-4 (Plaintiffs' clients, including detainees at Guantanamo Bay Naval Station, "are within the class of people the government has described as the targets of the warrantless NSA surveillance program challenged here").

(U)     Plaintiffs raise two distinct allegations of injury. First, Plaintiffs allege that the mere revelation of the existence of the TSP impaired their ability to communicate with their overseas clients, witnesses, and other persons by telephone or email "out of fear that their

privileged communications are being and will be overheard" by the program. Compl. ¶ 42.

Plaintiffs allege that, once apprised that the TSP existed, the "risk that their conversations are

being overheard" has forced them "to institute protective measures to reduce the potential impact

of such surveillance on the representation of their clients . . . ." *Id.*; *see also id.* ¶ 6 (alleging that

the secretive nature of the surveillance program, combined with Defendants' admission that it is

targeted at persons alleged to have some connection to al Qaeda or groups that support al Qaeda,

has "inhibited Plaintiffs' ability to represent their clients vigorously"). Second, Plaintiffs also

alleged a direct injury—namely that their attorney-client communications "have been and

continue to be intercepted" by the TSP. *Id.* ¶ 43; *see also id.* ¶ 5.[5]

     **(U)**     Based on these claimed injuries, Plaintiffs seek declaratory and injunctive relief

and raise four distinct claims. First, they allege that the TSP unlawfully authorizes electronic

surveillance outside of the FISA and, thus, is without statutory authorization in violation of the

Administrative Procedure Act, 5 U.S.C. § 702. *See* Compl. ¶ 46. Second, Plaintiffs allege that

Defendants, by carrying out the TSP, have acted in excess of the President's Article II authority

by acting in contravention of FISA. *See id.* ¶ 48. Third, Plaintiffs allege that Defendants have

carried out unreasonable surveillance of Plaintiffs' private telephone and email communications

under the TSP without probable cause or warrants in violation of the Fourth Amendment. *See id.*

¶ 50. Fourth, Plaintiffs allege that, "by carrying out and or asserting the right to carry out" the

TSP, Defendants have violated Plaintiffs' rights of free expression and association under the

First Amendment. *See id.* ¶ 52.

     **B.**     **(U) The Parties' Dispositive Motions**

     **(U)**     While the case was pending before the Southern District of New York, the parties

each filed dispositive motions. Plaintiffs moved for partial summary judgment on the grounds

---

     [5] **(U)**     Plaintiffs have largely abandoned their claim of actual surveillance and argue that
they have standing based on their chilling effect theory "regardless of whether Plaintiffs are
actually being wiretapped." *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss or for
Summary Judgment ("Pls. Opp.") (Dkt. No. 1 (07-1115), Item No. 20 at 32-33).

**Defendants' Supplemental Memorandum**
*Center for Constitutional Rights v. Bush* (07-CV-1115-VRW)
M:06-CV-1791-VRW

that the merits of their legal challenge to the TSP could be resolved based solely on the facts

available on the public record. *See* Dkt. No. 1 (07-1115), Item Nos. 5-6, 8-9. Defendants moved

to dismiss or for summary judgment. *See* Dkt. No. 1 (07-1115) Item Nos. 12-16.[6] In that

motion, Defendants demonstrated first that Plaintiffs' allegation of a "chilling effect" is

insufficient on the face of the Complaint to establish standing under *Laird v. Tatum*, 408 U.S. 1

(1972). *See* Defs. MSJ Mem. at 18-24; Defs. Reply at 4-9. Moreover, even if their allegations

of injury were sufficiently pled, Plaintiffs' standing could not be adjudicated as a factual matter

without state secrets describing the operation of the program. In particular, with respect to their

claim of actual surveillance, Plaintiffs could not establish standing because the facts needed to

determine whether or not they have been subject to surveillance under the TSP are classified and

properly protected by the state secrets privilege. *See Halkin v. Helms*, 598 F.2d 1, 8-9 (D.C. Cir.

---

[6] **(U)** Defendants filed the following documents in support of their motion to dismiss or
for summary judgment, the public versions of which are now accessible through the electronic
filings in this proceeding under Civil Action No. 07-1115: (1) Memorandum in Support of
Defendants' Motion to Dismiss or for Summary Judgment ("Defs. MSJ Mem."), Dkt. No. 1,
Item No. 15; (2) Public Declaration of John D. Negroponte, Director of National Intelligence, *id*,
Item No. 13; (3) Public Declaration of Major General Richard J. Quirk, Signals Intelligence
Director, National Security Agency, *id.*, Item No. 14; (4) Defendants' Reply in Support of
Motion to Dismiss or for Summary Judgment ("Defs. Reply"), *id.*, Item No. 24. Defendants also
made the following classified submissions in support of its motions for the Court's *in camera, ex
parte* review: (1) *In Camera, Ex Parte* Classified Memorandum of Points and Authorities in
Support of the United States' Assertion of the Military and State Secrets Privilege; Defendants'
Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; Defendants' Motion to
Stay Consideration of Plaintiffs' Motion for Summary Judgment; (2) *In Camera, Ex Parte,*
Classified Declaration of John D. Negroponte, Director of National Intelligence; and (3) *In
Camera, Ex Parte* Classified Declaration of Major General Richard J. Quirk, Signals Intelligence
Director, National Security Agency. The electronic docket for Civil Action No. 07-1115 omits
the public notices of lodging that Defendants filed in the Southern District of New York to
reflect that fact of each of these classified filings. Accordingly, Defendants have filed separate
notices of lodging in this MDL proceeding for these materials, which are available for this
Court's *in camera, ex parte* review upon request from the Court Security Officers. In addition,
Defendants have also filed in this MDL proceeding an additional classified Declaration of Lt.
Gen. Keith B. Alexander, the Director of the National Security Agency, for the Court's *in
camera, ex parte* review. *See* Notice of Lodging of Classified Declaration of Lt. Gen. Keith B.
Alexander, Director, National Security Agency (dated June 8, 2007).

1978); *see* Defs. MSJ Mem. at 24-27; Defs. Reply at 9-10.

     **(U)**    Assuming, *arguendo*, that Plaintiffs could factually establish their standing and the Court's jurisdiction to proceed, Defendants explained that adjudication of the merits of their challenge to the TSP would inherently require the disclosure of a range of classified information as to which the Director of National Intelligence has properly asserted the state secrets privilege in this case, including facts that would confirm or deny whether the Plaintiffs were subject to surveillance under the TSP, as well as facts concerning the operation of the TSP and the specific nature of the al Qaeda threat that it sought to address. *See* Defs MSJ Mem. at 27-47; Defs. Reply at 34-43; *see also* Public and Classified Declarations of John D. Negroponte, Director of National Intelligence and Major General Richard J. Quirk, Signals Intelligence Director, National Security Agency. In particular, if this case proceeded to the merits, state secrets demonstrating precisely what the TSP entailed, and why those activities were reasonable and necessary to meet the al Qaeda theat, would be essential to any determination as to whether the TSP was within the President's statutory and constitutional authority, but could not be disclosed without causing exceptionally grave harm to national security.

     **(U)**    Finally, at the time the parties' dispositive motions were filed, Defendants also demonstrated that Plaintiffs' Motion for Partial Summary Judgment could not be adjudicated before the state secrets issues raised in Defendants' motions were resolved. *See* Defs. MSJ Mem. at 51-52; Defs. Reply at 50-54. Defendants' motions put at issue not only whether the case could proceed at all, but whether and to what extent any evidence would be available to respond to Plaintiffs' motion for partial summary judgment. Unless the state secrets issues are resolved first, Defendants would be forced into the untenable choice of either adjudicating the merits without the evidence required to decide the case or disclosing state secrets in order to defend against Plaintiffs' claims. *See id.*

     **(U)**    While Defendants fully adhere to their prior position on these issues, the circumstances of this case have changed substantially in the interim. As set forth further below, the challenged program is no longer in place and, thus, another ground for dismissing this case

1    now exists.

2        **C.    (U)  Intervening FISA Court Orders**

3        **(U)**    On January 17, 2007, the Attorney General sent a public letter to Senate Judiciary

4    Committee Chairman Leahy and Ranking Member Specter (filed with this Court the same day)

5    advising them that "on January 10, 2007, a Judge of the Foreign Intelligence Surveillance Court

6    issued orders authorizing the Government to target for collection international communications

7    into or out of the United States where there is probable cause to believe that one of the

8    communicants is a member or agent of al Qaeda or an associated terrorist organization." *See*

9    Dkt. 127-1(MDL-1791).  As a result of these orders, "any electronic surveillance that was

10   occurring as part of the Terrorist Surveillance Program will now be conducted subject to the

11   approval of the Foreign Intelligence Surveillance Court." *See id.*  The letter elaborated that,

12   "[a]though, as we have previously explained, the [TSP] fully complies with the law, the orders

13   the Government has obtained will allow the necessary speed and agility while providing

14   substantial advantages." *Id.*  "Accordingly," the letter concluded, "under these circumstances,

15   the President has determined not to reauthorize the Terrorist Surveillance Program when the

16   current authorization expires." *Id.* at 1-2.

17       **(U)**    On February 22, 2007, the United States filed a public Declaration of Lt. Gen.

18   Keith B. Alexander, Director of the NSA, which echoed the Attorney General's statement that

19   any electronic surveillance that was conducted under the TSP is now being conducted subject to

20   the approval of the FISA Court, and that the President has determined not to reauthorize the TSP,

21   which is no longer operative. *See* Dkt. 175 (MDL-1791).  Also on February 22, 2007, the United

22   States filed a classified declaration by Lt. Gen. Alexander for the Court's *in camera, ex parte*

23   review. *See* Dkt. No. 176-1 (MDL-1791).  Further details regarding the proceedings of the FISA

24   Court cannot be publicly disclosed, including the number, nature, and contents of the January

25   2007 orders.

26       **[REDACTED TEXT]**

27

28

**(U) ARGUMENT**

**(U)** The central premise upon which Plaintiffs' case is built no longer exists. In this action for prospective relief only, Plaintiffs allege that the surveillance activities conducted under the TSP are applicable to them and are unlawful because they were carried out under the authorization of the President, but "without statutory authorization." *See* Compl. ¶¶ 2, 23-25, 46. On this basis, Plaintiffs claim that the challenged surveillance violates the Fourth Amendment (and, derivatively, the First Amendment), FISA itself, and, for the same reasons, the separation of powers. *See* Compl. ¶¶ 45-52; *see also* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 1 (07-1115) Item No. 6.

**(U)** After the January FISA Court orders, however, any electronic surveillance that was occurring as part of the TSP is now being conducted subject to the approval of the FISA Court, and the President has determined not to reauthorize the TSP. *See* Public Alexander Decl. ¶¶ 3-4, Dkt. 175 (MDL1791). This eliminates the challenged activity at issue in each of Plaintiffs' claims, and there is no longer any appropriate basis for proceeding with this litigation. The Supreme Court has stressed that federal courts must avoid needlessly addressing serious constitutional issues, *see, e.g., INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001), and should proceed with special caution where the President's war powers are implicated, *see Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (plurality opinion). These considerations are especially apt here, where litigating this action would require both delving into extremely sensitive state secrets and possibly deciding the extraordinarily important constitutional issue regarding the scope of the President's inherent constitutional authority to conduct foreign intelligence surveillance in wartime.

**(U)** As set forth in Defendants' prior submissions, several different legal doctrines require dismissal of this case. In addition, the developments before the FISA Court underscore the Government's position on a range of issues, including that Plaintiffs' allegation of a chilling effect is insufficient on the face of the Complaint and that this case cannot go forward in light of the state secrets privilege because it is not possible to evaluate fully the Plaintiffs' claims without

delving into state secrets.  The operation of the state secrets privilege therefore, by itself, continues to require dismissal of this action.

**A.     (U) The FISA Court Orders Underscore that Plaintiffs Cannot Establish their Standing.**

**(U)**     The FISA Court orders underscore that Plaintiffs cannot establish their standing to sue under either the injury, causation, or redressability prongs of the standing inquiry, and that the case must be dismissed for this reason.  Wholly apart from the state secrets privilege issue, which renders it impossible to adjudicate whether or not Plaintiffs were actually subject to surveillance under that program, the fact that the TSP is no longer in effect confirms Plaintiffs' lack of standing.[7]

**(U)**     To have standing, a plaintiff's alleged injury must be "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).  Even where a plaintiff alleges that his rights were violated in the past, he lacks standing to obtain prospective relief absent a "real and immediate threat" that he will suffer the same injury in the future.  *Id.* at 105.  Alleged "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."  *Id.* at 103 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) and *Rizzo v. Goode*, 423 U.S. 362, 372 (1976)).  This "imminence requirement ensures that courts do not entertain suits based on speculative or hypothetical harms."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).  Thus, a plaintiff  "who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."  *Blum v. Yaretsky,* 457 U.S. 991, 999 (1982).  Rather, Plaintiffs here must "demonstrate that they are 'realistically threatened by a repetition of the [alleged] violation.'"  *Gest v. Bradbury*, 443 F.3d

---

[7]  **(U)**     The fact that plaintiffs have also sought declaratory relief does not affect this determination.  "The limitations that Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment context."  *Gator.com Corp. v. LL Bean, Inc.,* 398 F.3d 1125, 1129 (9th Cir. 2005).

**Defendants' Supplemental Memorandum**
*Center for Constitutional Rights v. Bush* (07-CV-1115-VRW)
M:06-CV-1791-VRW

9

1177, 1181 (9th Cir. 2006).

**(U)** Accordingly, and apart from whether or not Plaintiffs were ever within the scope of the TSP or actually surveilled under that program when it was in place (facts that cannot be established without state secrets), the fact that the TSP has not been reauthorized renders it impossible for Plaintiffs to establish an imminent threat of future injury under either their "chilling effect" or direct surveillance allegations. Because Plaintiffs seek only prospective relief, their claims must be dismissed because there is no basis to award such relief where the challenged activity is no longer in place.[8]

**(U)** With respect to the alleged chilling effect of the TSP, *see* Compl. ¶ 42, Defendants have shown that this theory provides a legally insufficient foundation upon which a court may base Article III jurisdiction, *see* Defs. MSJ Mem. at 18-24; Defs. Reply at 4-9, and this remains an independent and fully applicable ground requiring dismissal of this case. But the discontinuance of the TSP further negates this theory of standing because Plaintiffs cannot credibly claim any *continuing* chill caused by the TSP (if they ever could) where that activity has now lapsed and has been supplanted by activities authorized by the FISA Court. Thus, whatever alleged chilling effect the mere existence of the TSP had in the past, such alleged prior harm is insufficient to support standing for prospective relief where the program is no longer in place.

**(U)** The FISA Court orders also buttress a point Defendants have previously made—that Plaintiffs cannot claim to be meaningfully chilled by the mere prior existence of the TSP when, under Plaintiffs' own characterizations, they communicate with individuals (al Qaeda suspects) that any reasonable person must assume could be subject to surveillance by a number

---

[8] **(U)** The Supreme Court also has made clear that, in order for standing to exist, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *See Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)). But there is no likelihood that redress for Plaintiffs' claimed injuries could be obtained at this point in light of the fact that the TSP has not been reauthorized and any electronic surveillance that Plaintiffs are challenging is now being conducted subject to the approval of the FISA Court. *See* Public Alexander Decl. ¶¶ 3-4, Dkt. 175-1 (MDL-1791). Lacking redressability, plaintiffs have no standing to litigate their claims.

of other means, including pursuant to FISA Court orders, overseas surveillance that falls outside of FISA, or surveillance by foreign countries. *See* Defs. MSJ Mem. at 23-24; Defs. Reply at 8-9. The fact that any electronic surveillance that was conducted as part of the TSP is now being conducted subject to the approval and supervision of the FISA Court proves that very point. And it certainly cannot be the case that Plaintiffs could suffer any legitimate chill from the prospect of being subjected to surveillance authorized by the FISA Court. For this reason as well, Plaintiffs' standing based on an alleged chilling effect is further undermined by the FISC orders.

(U) With respect to Plaintiffs' allegation that their communications have been and continued to be intercepted under TSP surveillance, *see* Compl. ¶ 43, the fact that the TSP is no longer in place likewise confirms their lack of standing to seek prospective relief, since they cannot currently be subject to surveillance under a program that is no longer operative.[9]

(U) Finally, if there remains any doubt that Plaintiffs lack standing in light of the FISA Court orders, facts necessary to adjudicate the matter are subject to the state secrets privilege. This would include whether Plaintiffs were ever subject to surveillance under the TSP, as well as facts surrounding the President's decision not reauthorize the TSP after the January FISC orders. It would simply not be possible for Plaintiffs to show, or Defendants to rebut, whether there is currently any "real and immediate" threat of imminent injury to Plaintiffs that would warrant prospective relief, or any possible chilling effect on Plaintiffs' activities under the present circumstances, without a full exposition of what previously occurred under the TSP and what is now occurring under the FISC orders.

**[REDACTED TEXT]**

**B.     (U) The Mootness Doctrine Also Requires Dismissal of This Action.**

(U) For the same reasons that the Plaintiffs lack standing to obtain declaratory and

---

[9] **(U)** Again, Plaintiffs have largely abandoned their claim of actual surveillance and rely instead on their chilling effect theory of standing. *See* Pls.' Opp. at at 32-33.

injunctive relief, their claims are now moot.  Like considerations of standing, the mootness

doctrine concerns whether there is an actual case or controversy sufficient for the Court to

exercise Article III jurisdiction.  *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)

(*per curiam*).  "Article III requires that a live controversy persists through all stages of the

litigation." *Gator.com Corp.*, 398 F.3d at 1128-29 (citing *Steffel v. Thompson*, 415 U.S. 452,

459 n. 10 (1974)); *see also United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980)

("The requisite personal interest that must exist at the commencement of the litigation (standing)

must continue throughout its existence (mootness).") (quotation mark omitted).  If this condition

is not met, "the case has become moot, and its resolution is no longer within our constitutional

purview." *Gator.com Corp.* at 1129 (citing *Foster v. Carson*, 347 F.3d 742, 747 (9th Cir. 2003)

and *Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004)).  *See also Center for Biological

Diversity v. Lohn*, 483 F.3d 984, 989 (9th Cir. 2007); *Smith v. University of Washington Law

School*, 233 F.3d 1188, 1193 (9th Cir. 2000), *cert. denied*, 532 U.S. 1051 (2001); *Native Vill. of

Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994).  Thus, while the Court may decide the

matter as a question of standing, the mootness doctrine would also apply.  *See Arizonans for

Official English v. Arizona*, 520 U.S. 43, 66 (1997) (analyzing standing before mootness, but

holding that it need not resolve its "grave doubts" on standing "because the former question

[mootness], like the latter [standing], goes to the Article III jurisdiction of this Court and the

courts below").

    **(U)**    Here, Plaintiffs' challenge to the TSP is now moot.  The program is no longer in

place, and no relief can be provided as a matter of law concerning an activity that is now

inoperative.  Even as to a claim for declaratory relief, the test for mootness is "'whether the facts

alleged, under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.'" *Center for Biological Diversity*, 483 F.3d at 987; *Gator.com Corp.*, 398

F.3d at 1129 (citations omitted); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971)

(standard for mootness is "whether the relief sought would, if granted, make a difference to the

**Defendants' Supplemental Memorandum**
*Center for Constitutional Rights v. Bush* (07-CV-1115-VRW)
M:06-CV-1791-VRW

legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)).”  Where the challenged activity is no longer in place, it simply cannot be said that a substantial controversy between parties having adverse legal interests continues to exist and is of such immediacy and reality to warrant judicial relief.  *See Center for Biological Diversity*, 483 F.3d at 988 (no case or controversy exists for declaratory relief where the purported adverse effect is “‘so remote and speculative that there [is] no tangible prejudice to the *existing interests* of the parties’”) (alteration and emphasis in original) (quoting *Super Tire Eng’g Co. v. McCorkle*, 416 U.S. 115, at 123 (1964)).

    **(U)**    There is, moreover, no basis to find an exception to the mootness doctrine on the ground that there has been a “voluntary cessation” of allegedly unlawful activity.  *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envt’l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).  An independent judicial body—the FISA Court—has now acted to provide additional and sufficient legal authority for the activity that Plaintiffs challenged.  The Government has not terminated its conduct in response to Plaintiffs’ suit; instead, it worked with the FISA Court to obtain authorization for surveillance activities that now supplant the TSP.  There is nothing about the Executive’s decision to pursue FISA Court approval that renders the matter a voluntary cessation of the challenged conduct.  *See Center for Biological Diversity*, 483 F.3d at 989 (no voluntary cessation where the Government made a policy decision to alter a prior policy at issue in the case).  Rather, the Government for some time has sought FISA Court approval for electronic surveillance of international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member of agent of al Qaeda or an associated terrorist organization—and in a manner that would preserve the speed and agility that the NSA needs to help protect the Nation from another terrorist attack by al Qaeda.  *See* Public Alexander Declaration ¶ 3, Dkt. 175-1 (MDL-1791).  Although the President determined that the TSP was lawful and in accordance with FISA and his inherent constitutional authority when he authorized the program, he also has recognized that there is considerable value in ensuring that all three branches supported the vital foreign intelligence gathering

program at issue.

(**U**)  Moreover, to the extent the question of mootness is a factual one, including whether there has been any "voluntary cessation" of the alleged illegal conduct, the matter could not be adjudicated properly without an exposition of facts concerning the FISA Court orders. Whether a party has taken an action in response to a lawsuit depends on what actions have been taken, including whether, how, and to what extent that action compares with the challenged activity no longer in place.

**[REDACTED TEXT]**

(**U**)  Similarly, Plaintiffs' claims cannot proceed on the ground that the challenged activity is "capable of repetition, yet evading review." *See Center for Biological Diversity*, 483 F.3d at 989; *Native Vill. of Noatak,* 38 F.3d at 1509. The "capable of repetition, yet evading review" exception to the mootness doctrine applies only in "exceptional circumstances," where "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Lewis v. Continental Bank Corp*., 494 U.S. 472, 481 (1990) (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (*per curiam*) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Plaintiffs have nothing but speculation to suggest they might be subjected to surveillance under the TSP in the future. "A mere physical or theoretical possibility" of repetition is not sufficient; there must be a "'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy,* 455 U.S. at 482 (quoting *Weinstein*, 423 U.S. at 149); *see also Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (possibility that government defendant may reinstate a rescinded policy does not enough overcome mootness; "[r]ather, there must be evidence indicating that the challenged [policy] likely will be reenacted"); *Smith*, 233 F.3d at 1195 (plaintiff's "fear of 'the *possibility*'" that the government's alleged discriminatory policy may recur insufficient to overcome mootness) (quoting *Noatak*, 38 F.3d at 1510) (original emphasis). And, again to the extent necessary, any effort to prove the matter further would implicate

evidence protected by the state secrets privilege, including the circumstances surrounding the

cessation of the TSP—such as why the President decided not to reauthorize the program in light

of what replaced it—and whether the Plaintiffs were ever subject to TSP surveillance or have

any reasonable expectation they would be in the future.  Surveillance activities like the TSP are

inherently secret, and it is not possible to place on the public record facts concerning their

possible duration, or whether a person has a reasonable expectation of being subject to such

surveillance, without disclosing classified intelligence sources and methods.[10]

**[REDACTED TEXT]**

**C.      (U) Plaintiffs' Claims on the Merits Cannot Be Sustained
            Because the Challenged Surveillance is Subject to FISA Court
            Approval.**

**(U)**          Assuming, *arguendo,* the merits of this case could be reached, the essential

premise that underlies Plaintiffs' complaint is that the TSP is unlawful because it is not

authorized by any statute or court and violates FISA.  *See* Compl. ¶¶ 2, 23-25, 46.  That

allegation is now plainly unsustainable on its own terms: as explained, any electronic

surveillance that was being conducted under the TSP is now being conducted subject to the

approval of the FISA Court.  *See* Public Alexander Decl. ¶ 3, Dkt. 175-1 (MDL-1791).

Plaintiffs' underlying claims on the merits therefore manifestly fail on their own terms.  Even

---

[10] **(U)**   Closely related to the Article III mootness doctrine is the prudential mootness doctrine, which addresses "not the power to grant relief, but the court's discretion in the exercise of that power." *Chamber of Commerce v. Department of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980).  Thus, a court may refuse to entertain a suit that, while "'not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel that court to stay its hand and to withhold relief it has the power to grant.'" *Greenbaum v. EPA*, 370 F.3d 527, 534-35 (6th Cir. 2004) (quoting *Chamber of Commerce*, *supra*); *see also Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997); *Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005) (*en banc*).  In the circumstances presented here, the prudential mootness doctrine provides an independent basis for dismissing this case.  This case presents extraordinarily sensitive constitutional questions about the authority of the coordinate Branches to authorize (or restrict) foreign intelligence gathering during wartime, and where that activity has now been supplanted by a FISA Court order, at the very least prudence dictates deference to that process by finding the matter at issue here now moot.

1  assuming, *arguendo*, that a valid jurisdictional basis existed for addressing their claims in the

2  first place, relief on the merits is not possible where the challenged surveillance activity is now

3  subject to FISA, even if the circumstances of how that is occurring cannot be disclosed.

4     **D.    (U) The States Secrets Privilege Continues to Preclude**
            **Adjudication of Plaintiffs' Claims.**

5

6     **(U)**     Finally, to the extent Plaintiffs' Complaint is not dismissed on its face for either

7  lack of standing or mootness, then, as indicated throughout this memorandum, the state secrets

8  privilege continues to preclude litigation of the central issues raised by this lawsuit, including:

9  (i) whether Plaintiffs could demonstrate any basis in fact for their allegation that the TSP

10 reasonably caused (or still causes despite being inoperative) any legitimate chilling effect on

11 their activities; (ii) whether Plaintiffs can prove any actual interception of their communications;

12 (iii) whether there was any voluntary cessation of alleged unlawful conduct or whether the

13 alleged unlawful conduct is capable or repetition yet evading review; and (iv) assuming there is

   any jurisdiction for a continuing challenge, whether the TSP was unlawful.

14

15    **(U)**     The information embraced by the privilege in this case is highly sensitive in

16 nature, and goes to the heart of how the Government's foreign intelligence gathering is

17 conducted at a time when the Nation is at war with an enemy that has already inflicted

18 devastating damage on the United States by operating through a shadowy terrorist network. *See*

19 Defs. MSJ Mem. at 27-47; Defs. Reply at 34-43; *see also* Defendants' Classified *In Camera, Ex*

20 *Parte* Memorandum of Points and Authorities, and the Classified Declarations of John D.

21 Negroponte, Director of National Intelligence and Major General Richard J. Quirk, Signals

22 Intelligence Director, National Security Agency (submitted and lodged on May 26, 2006).  As

23 Defendants have set forth at length, this case is about whether a classified foreign intelligence

24 activity was lawfully within the President's statutory and constitutional authority, and the issues

25 raised cannot be decided without setting forth and evaluating the facts concerning how and why

26 that activity was conducted, and, indeed, how they are now being conducted under the

27 supervision of the FISA Court.

28

---

**Defendants' Supplemental Memorandum**
*Center for Constitutional Rights v. Bush* (07-CV-1115-VRW)
M:06-CV-1791-VRW

1  **(U)**     "'If there is one doctrine more deeply rooted than any other in the process of

2  constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality

3  . . . unless such adjudication is unavoidable.'" *Department of Commerce v. United States House*

4  *of Representatives*, 525 U.S. 316, 343 (1999) (*quoting Spector Motor Service, Inc. v.*

5  *McLaughlin*, 323 U.S. 101, 105 (1944)).  There is no longer a viable reason for adjudication of

6  Plaintiffs' claims and, as was the case from the outset, doing so is impossible without revealing

7  to our adversaries vital NSA sources and methods.

8  ## (U) CONCLUSION

9  **(U)**     For the foregoing reasons, and for all the reasons stated in our prior public and *in*

10 *camera, ex parte* classified submissions, Defendants' Motion to Dismiss or, in the Alternative,

11 for Summary Judgment, should be granted.

12 DATED: June 8, 2007                    Respectfully Submitted,

13                                        PETER D. KEISLER
                                          Assistant Attorney General, Civil Division
14
15                                        CARL J. NICHOLS
                                          Deputy Assistant Attorney General
16                                        DOUGLAS N. LETTER
                                          Terrorism Litigation Counsel
17
18                                        JOSEPH H. HUNT
                                          Director, Federal Programs Branch
19                                        _____/s/ Anthony J. Coppolino_____
                                          ANTHONY J. COPPOLINO
20                                        Special Litigation Counsel
                                          tony.coppolino@usdoj.gov
21
22                                        _____/s/ Andrew H. Tannenbaum_____
                                          ANDREW H. TANNENBAUM
23                                        Trial Attorney
                                          andrew.tannenbaum@usdoj.gov
24
25                                        U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
26                                        20 Massachusetts Avenue, NW
                                          Washington, D.C. 20001
27                                        Phone:  (202) 514-4782
                                                  (202) 514-4263
                                          Fax:    (202) 616-8460
28