1    RONALD L. MOTLEY        ELIZABETH J. CABRASER (CSB No. 083151)
    JODI W. FLOWERS          BARRY R. HIMMELSTEIN (CSB No. 157736)
2    DONALD A. MIGLIORI      MICHAEL W. SOBOL (CSB No. 194857)
    JUSTIN B. KAPLAN        ERIC B. FASTIFF (CSB No. 182260)
3    VINCENT I. PARRETT (CSB No. 237563)    ALLISON S. ELGART (CSB No. 241901)
    MOTLEY RICE LLC         LIEFF, CABRASER, HEIMANN
4    28 Bridgeside Blvd.                   & BERNSTEIN, LLP
    P.O. Box 1792                 275 Battery Street, 30th Floor
5    Mt. Pleasant, SC 29465         San Francisco, CA 94111-3339
    Telephone: (843) 216-9000      Telephone: (415) 956-1000
6    Facsimile: (843) 216-9440       Facsimile: (415) 956-1008
7

8    Interim Class Counsel for Verizon Class      Interim Class Counsel for MCI Class

9    [Additional Counsel Appear on Signature Page]

10

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15    IN RE NATIONAL SECURITY       MDL Docket No. 06-1791 (VRW)
    AGENCY TELECOMMUNICATIONS
16    RECORDS LITIGATION

17    ───────────────────────────    **JOINT OPPOSITION TO VERIZON'S**
                                        **MOTION TO DISMISS FOR LACK**
    This Document Relates Only To:     **OF PERSONAL JURISDICTION**
18

19    *Bissitt*, No. 06-220 (D.R.I.)        [Fed. R. Civ. P. 12(b)(2)]
    *Conner*, No. 1:06-cv-632 (E.D. Cal.)
    *Fuller*, No. cv-06-77 (D. Mont.)     Date:   August 30, 2007
20    *Herron*, No. 06-2491 (D. La.)     Time:   2:00 p.m.
    *Hines*, No. cv-06-694 (D. Ore.)     Courtroom: 6, 17th Floor
21    *Joll*, No. 1:06-cv-2680 (N.D. Ill.)    Judge: Hon. Vaughn R. Walker
    *Mahoney*, No. 06-224 (D.R.I.)
22    *Riordan*, No. 3:06-cv-3574 (N.D. Cal.)
    *Spielfogel-Landis,* No. 3:06-cv-4221 (N.D.
23    Cal.)

24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

ISSUES TO BE DECIDED ................................................................ viii

INTRODUCTION ............................................................................... 1

ARGUMENT ........................................................................................ 3

I.   California, Illinois, Montana, Oregon and Rhode Island Have Personal Jurisdiction  Over VCI ........................................................ 3

    A.   Burden of Demonstrating Personal Jurisdiction ................... 3

    B.   Principles of Personal Jurisdiction ........................................ 4

    C.   California, Illinois, Montana, Oregon and Rhode Island Have General Jurisdiction Over VCI ........................................ 5

        1.   VCI's Press Releases Show That VCI Does Continuous & Substantial Business in the Forum States ............... 7

        2.   VCI Lobbies California State Legislators and Regulators Extensively ........................................................ 10

        3.   Courts Have Exercised Jurisdiction Over VCI and Similar Telecommunications "Holding Company" Defendants ..................... 11

        4.   General Jurisdiction Is Additionally Proper Under California's Representative Services Doctrine Because VCI's California Subsidiaries Offer Services that VCI Would Have to Provide if those Subsidiaries Did Not Exist ............................................. 13

        5.   VCI's Website Conducts Business Regularly With Californians ....... 15

    D.   California, Illinois, Montana, Oregon and Rhode Island Have Specific Jurisdiction Over VCI ........................................ 15

        1.   VCI Has Purposefully Availed Itself of the Privilege of Conducting Business Targeted in the Forum States ........... 17

        2.   Plaintiffs' Claims Arise Out of VCI's Forum-Related Activities ....... 18

        3.   The Exercise of Specific Jurisdiction is Reasonable ........... 19

II.   Louisiana Has Personal Jurisdiction Over VGN ...................... 20

III.  **California Has Personal Jurisdiction Over MCI, LLC** ........................................... 21

    A.    **MCI, LLC Is Subject To General Jurisdiction In California** ......................... 21

    B.    **MCI, LLC Is Subject To Specific Jurisdiction In California** ......................... 22

IV.  **In The Alternative, Plaintiffs Should Be Permitted To Conduct Limited Jurisdictional Discovery** ..................................................................................... 24

V.  **In The Alternative, Plaintiffs Should Be Permitted To Amend Their Complaints** ..................................................................................................................... 24

**CONCLUSION** ........................................................................................................................ 24

**FEDERAL CASES**

*Acorn v. Household Int'l, Inc.*,
211 F. Supp.2d 1160 (N.D. Cal. 2002) ........................................................ 5

*Autodesk, Inc. v. RK Mace Eng'g, Inc.*, No. C-03-5128 VRW,
2004 WL 603382 (N.D. Cal. Mar. 11, 2004) ................................................ 19

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
223 F. 3d 1082 (9th Cir. 2000) ...................................................................... 4

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...................................................................................... 19

*Calder v. Jones*,
465 U.S. 783 (1984) ................................................................ 17, 18, 22, 23

*Cargill Int'l, S.A. v. M/T Pavel Dybenko*,
991 F.2d 1012 (2d Cir. 1993) ........................................................................ 3

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) ....................................................................... 17

*Covad Commc'ns Co. v. Pac. Bell*, No. C 98-1887 SI,
1999 U.S. Dist. LEXIS 22789, 1999 WL 33757058, (N.D. Cal. Dec. 14, 1999) .............. 5, 11

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ....................................................................... 18

*Data Disc, Inc. v. Sys. Tech. Assoc. Inc.*,
557 F.2d 1280 (9th Cir. 1977) ....................................................................... 3

*Davis v. Am. Family Mut. Ins. Co.*,
861 F.2d 1159 (9th Cir. 1988) ....................................................................... 4

*DNH, LLC v. In-N-Out Burgers*,
381 F. Supp.2d 559 (E.D. La. 2005) ............................................................. 4

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ................................................................ 3, 4, 24

*Gammino v. Verizon Commc'ns, Inc.,* No. 03-CV-5579,

   2005 U.S. Dist. LEXIS 35873, 2005 WL 3543810 (E.D. Pa. Dec. 27, 2005) ............. 4, 12, 24

*Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.,*

   284 F.3d 1114 (9th Cir. 2002) .............................................................................................. 19

*Haisten v. Grass Valley Med. Reimbusment Fund, Ltd.,*

   784 F.2d 1392 (9th Cir. 1986) .............................................................................................. 19

*Hepting v. AT&T Corp.,*

   439 F. Supp. 2d 974 (N.D. Cal. 2006) .................................................................................. 23

*In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.,*

   344 F. Supp.2d 686 (W.D. Wash. 2003) ................................................................................ 5

*Int'l Shoe Co. v. Washington,*

   326 U.S. 310 (1945) ............................................................................................................... 4

*Jamba Juice Co. v. Jamba Group, Inc.,* No. C-01-4846 VRW,

   2002 U.S. Dist. LEXIS 9549, 2002 WL 1034040, (N.D. Cal. May 15, 2002) ...................... 18

*Keeton v. Hustler Magazine, Inc.,*

   465 U.S. 770 (1984) ........................................................................................................ 23, 24

*Lewis v. Fresne,*

   252 F.3d 352 (5th Cir. 2001) ................................................................................................. 22

*Maricopa County v. Am. Petrofina, Inc.,*

   322 F. Supp. 467 (N.D. Cal. 1971) ......................................................................................... 3

*MGM Studios Inc. v. Grokster, Ltd.*

   243 F. Supp.2d 1073 (C.D. Cal. 2003) ............................................................................. 3, 13

*Millennium Enters., Inc. v. Millennium Music, LP,*

   33 F. Supp.2d 907 (D. Or. 1999) ............................................................................................ 4

*Negron-Torres v. Verizon Commc'ns Inc.,*

   478 F.3d 19 (1st Cir. 2007) .............................................................................................. 12, 13

*Newman v. Motorola, Inc.,*

   125 F. Supp.2d 717 (D. Md. 2000) .................................................................................. 12, 13

*Omeluk v. Langsten Slip & Batbyggeri A/S,*

    52 F.3d 267 (9th Cir. 1995)......................................................................... 15

*Panavision Int'l, L.P. v. Toeppen,*

    141 F.3d 1316  (9th Cir. 1998)............................................................ 17, 18

*Phonetel Commn'cs, Inc. v. U.S. Robotics Corp.,* No. 4:00-CV-1750-R,

    2001 U.S. Dist. LEXIS 7233 (N.D. Tex. June 1, 2001) ........................ 13

*Readylink Healthcare v. Lynch,*

    440 F.3d 1118 (9th Cir. 2006)................................................................. 17

*Shepherd Invs. Int'l, Ltd. v. Verizon Commc'ns Inc.,*

    373 F. Supp.2d 853 (E.D. Wis. 2005).......................................... 5, 8, 11, 12, 22

*United Fin. Mortg. Corp. v. Bayshores Funding Corp.,*

    245 F. Supp.2d 884 (N.D. Ill. 2002) .......................................................... 4

*Von Grabe v. Sprint PCS,*

    312 F. Supp.2d 1285 (S.D. Cal. 2003)................................................. 12, 13

*Wells Fargo & Co.  v. Wells Fargo Express Co.,*

    556 F.2d 406 (9th Cir.1977)................................................................. 23, 24

*Yahoo! Inc. v. La Ligue Contre Le Racisme,*

    433 F.3d 1199 (9th Cir. 2006) (en banc)................................................... 15

*Ziegler v. Indian River County,*

    64 F.3d 470 (9th Cir. 1995)................................................................. 3, 17

## STATE CASES

*Conn v. ITT Aetna Fin. Co.,*

    252 A.2d 184 (R.I. 1969) .......................................................................... 4

*DVI, Inc. v. Superior Court,*

    104 Cal. App. 4th 1080 (Cal. App. 4th Dist. 2002) ............................. 5, 14

*F. Hoffman-La Roche, Ltd. v. Superior Court,*

    130 Cal. App. 4th 782 (Cal. App. 6th Dist. 2005) ................................. 14

*In re Qwest Communications Intern., Inc.,*

    131 N.M. 770 (N.M. 2002) ..................................................................... 23

## STATE STATUTES

Cal. Civ. Proc. Code § 410.10 .......................................................................................... 4

735 Ill. Comp. Stat. 5/2-209 ............................................................................................. 4

La. Rev. Stat. Ann. § 13:3201 .......................................................................................... 4

Or. Rev. Stat. § 60.714 ...................................................................................................... 8

Or. Rev. Stat. § 60.721 ...................................................................................................... 8

R.I. Gen. Laws § 9-5-33 ................................................................................................... 4

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(2) ............................................................................................... 1, 24

Fed. R. Evid. 801(d)(2) ..................................................................................................... 7

## STATE RULES

Mont. R. Civ. P. 4B ........................................................................................................... 4

Or. R. Civ. P. 4L ............................................................................................................... 4

## ISSUES TO BE DECIDED

1.      Whether courts in California, Illinois, Montana, Oregon, and Rhode Island have personal jurisdiction over Verizon Communications Inc. ("VCI") where VCI's own public filings, press releases, interactive website, and lobbying activities show that VCI engages in substantial and continuous business in those States, and where Plaintiffs have expressly alleged that VCI directly engaged in the violations of law at issue in the forum States.

2.      Whether a court in Louisiana has jurisdiction over Verizon Global Networks Inc. ("VGN") when that company filed its charter and was qualified to do business in Louisiana in 2003 by the Louisiana Secretary of State, is in good standing and authorized to do business in Louisiana, has its principal business establishment in Louisiana listed with the Louisiana Secretary of State, and has a registered agent for service of process in Louisiana.

3.      Whether a court in California has personal jurisdiction over MCI, LLC, where its predecessor's public filings show that it maintained an office in California and conducted substantial lobbying activities in California, and where Plaintiffs have expressly alleged that its predecessor specifically directed its subsidiary to engage in the violations of law at issue.

# INTRODUCTION

These cases are brought on behalf of subscribers or customers of Defendants Verizon Communications Inc. ("VCI"), Verizon Global Networks Inc. ("VGN"), and MCI Communications Services, Inc. ("MCI"), alleging that Defendants are violating the Fourth Amendment of the United States Constitution, federal and State statutes, and State constitutional provisions by intercepting and disclosing their customers' communications and records to the Government without consent or court order. *See, e.g.,* Master Consolidated Complaint ("MCC") ¶¶ 163, 168-171, 175, 218, 230-233. Defendants VCI, VGN, and MCI's parent, MCI, LLC, move to dismiss the complaints in the following actions for lack of personal jurisdiction: *Bissitt et al. v. Verizon Commc'ns Inc. et al.*, No. 06-220 (D.R.I.); *Conner et al. v. AT&T, Verizon et al.,* No.: 1:06-cv-632 (E.D. Cal.); *Fuller v. Verizon Commc'ns Inc.,* No. cv-06-77 (D. Mont.); *Herron et al. v. Verizon Global Networks Inc. et al.,* No. 06-2491 (D. La.); *Hines v. Verizon Commc'ns Inc.,* No. cv-06-694 (D. Ore.); *Joll et al. v. AT&T Corp., Verizon Commc'ns Inc.,* No. 1:06-cv-268- (N.D. Ill.); *Mahoney v. Verizon Commc'ns Inc.*, No. 06-244 (D.R.I.); *Riordan et al. v. Verizon Commc'ns Inc.*, No. 3:06-cv-3574 (N.D. Cal.); and *Spielfogel-Landis v. MCI, LLC*, No. 3:06-cv-4221 (N.D. Cal.).

The only evidence Defendants submit in support of their Rule 12(b)(2) motion is the Declaration of Joseph P. Dunbar ("Dunbar Decl."), which says that VCI and MCI, LLC are mere holding companies that conduct "no business" and provide "no services" to the public, including telecommunications services, Dunbar Decl. ¶¶3, 7, and that VCI, MCI, LLC, and VGN do not advertise, solicit business, have offices, own or lease property, have employees, and have never been registered, or appointed an agent for service of process, in California, Illinois, Louisiana, Montana, Oregon, and Rhode Island. Dunbar Decl. ¶¶4, 8, 19.

However, as demonstrated below, VCI's own public filings show that VCI is a telecommunications giant that provides telecommunications services, including voice, network access, and nationwide long-distance services, in the forum States through its wireline business that VCI "operates and controls." Indeed, since VCI merged with MCI, LLC on January 6, 2006, VCI has integrated MCI's telecommunications services, including MCI's long-distance services

operating in the forum States, into VCI's wireline business. Moreover, multiple VCI press releases set forth below repeatedly refer to *VCI's* business activities conducted and targeted in each of the forum States, and VCI takes responsibility for the activities of its business segments regarding customer privacy. VCI also acts as an intermediary between its subsidiaries and customers in these States. VCI also forgets to apprise the Court that it previously was registered to do business and had an agent appointed for service of process in California and Oregon.[1]

Contrary to Mr. Dunbar's declaration, public reports signed under penalty of perjury by authorized representatives of MCI, LLC's predecessors, MCI, Inc. and WorldCom, Inc., establish that these entities maintained offices in San Francisco, California until they were acquired by VCI. These documents alone are sufficient to create a factual dispute as to these entities' presence in California sufficient to warrant jurisdictional discovery.

Moreover, as Plaintiffs show below, VCI spends, and MCI, LLC's predecessors spent truly substantial sums of money to influence State legislators in developing telecommunications policy and passing legislation favorable to them. Accordingly, VCI and MCI, LLC's "mere-holding-company" argument is not convincing.

Most importantly, as to MCI, LLC, Plaintiffs have specifically alleged that "[a]t the request of the federal government, MCI, Inc. [MCI, LLC's predecessor] exercised domination and control over its wholly-owned subsidiary, MCI, and *specifically directed it to engage in the violations of law alleged herein*." MCC ¶ 9 (emphasis added). Under well-established law, this allegation alone is sufficient to confer specific jurisdiction over MCI, LLC with respect the unlawful acts alleged wherever the victims of those acts are located, including in California.

Defendants' argument that Louisiana cannot exercise personal jurisdiction over VGN is frivolous. The Dunbar Declaration's sworn statement that VGN "has never been registered or otherwise qualified to do business in Louisiana," Dunbar Decl. ¶ 19, is belied by documents filed by VGN and VCI with the Louisiana Secretary of State. As shown below, VGN filed its charter

---

[1] Notably, in *Hines v. Verizon*, No. CV-06-694 (D. Or.), the subsidiary telecommunication company, Verizon Northwest ("VNW"), was also named in the complaint, and it was alleged that VCI and VNW acted jointly in violating the Stored Wire and Electronic Communications and Transactional Records Access Act, 18 USC §2701, *et seq. Hines* Complaint ¶¶ 10-12.

and was qualified to do business in Louisiana in 2003 by the Louisiana Secretary of State, is in good standing and authorized to do business in Louisiana, has its principal business establishment in Louisiana listed with the Louisiana Secretary of State, and has a registered agent for service of process in Louisiana.

## ARGUMENT

### I. California, Illinois, Montana, Oregon and Rhode Island Have Personal Jurisdiction Over VCI

Courts in California, Illinois, Montana, Oregon and Rhode Island have personal jurisdiction over VCI based on VCI's contacts with those States. They also have personal jurisdiction over VCI based on the activities of its subsidiaries in those States. Thus, in this MDL proceeding, this Court may exercise personal jurisdiction over VCI just as the transferor courts may. *Maricopa County v. Am. Petrofina, Inc.*, 322 F. Supp. 467, 469 (N.D. Cal. 1971).

### A. Burden of Demonstrating Personal Jurisdiction

Plaintiffs have the burden of showing that personal jurisdiction exists. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "However, the plaintiff need only make a prima facie showing of jurisdiction to survive a jurisdictional challenge on a motion to dismiss where, as here, a court has not heard testimony or made findings of fact." *MGM Studios Inc. v. Grokster, Ltd.*, 243 F. Supp.2d 1073, 1082 (C.D. Cal. 2003) (citing *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). On a motion to dismiss, factual allegations in the complaint are taken as true, although a court may look beyond the pleadings to any evidence before it. *Cargill Int'l, S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993). If the Plaintiffs bring forward evidence to rebut the Defendants' affidavits, such evidence may demonstrate facts that, if true, would support a finding of jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1997). Here, factual conflicts between the parties' evidence must be resolved in favor of the plaintiff. *Unocal*, 248 F.3d at 922.

While the Court may hold an evidentiary hearing, neither party here has requested one. Plaintiffs do not believe such a hearing is necessary because, through the Complaints and their submissions herewith, they have demonstrated prima facie personal jurisdiction over VCI in California, Illinois, Montana, Oregon and Rhode Island, prima facie personal jurisdiction over

VGN in Louisiana, and prima facie personal jurisdiction over MCI, LLC in California. If the Court were to require a greater showing, Plaintiffs respectfully request the opportunity to conduct targeted jurisdictional discovery of VCI and its subsidiaries in these forums, and to amend their complaints to add VCI's relevant forum-specific subsidiaries. See *Unocal,* 248 F.3d at 921; *Gammino v. Verizon Commc'ns, Inc.*, No. 03-CV-5579, 2005 U.S. Dist. LEXIS 35873, at *6, 2005 WL 3543810, at *1 (E.D. Pa. Dec. 27, 2005) (denying VCI's motion for summary judgment and granting plaintiffs discovery to establish "the extent to which VCI controls and/or operates in conjunction with its subsidiaries" and "the method by which VCI communicates with its subsidiaries.").

### B. Principles of Personal Jurisdiction

Personal jurisdiction hinges on one basic notion: whether maintenance of an action against a foreign defendant offends "'traditional notions of fair play and substantial justice'" in light of defendant's "minimum contacts" with the forum State. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[2] Personal jurisdiction may be asserted in two ways: general jurisdiction and specific jurisdiction.

General jurisdiction is based on a defendant's actual or virtual presence in the forum. As put by the Ninth Circuit:

> A defendant whose contacts with a State are "substantial" or "continuous and systematic" can be haled into court in that State in any action, even if the action is unrelated to those contacts. This is known as general jurisdiction. The standard for establishing general jurisdiction is "fairly high," and requires that the defendant's contacts be of the sort that approximate physical presence.

*Bancroft & Masters v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citations omitted).

---

[2] All parties agree that California, Illinois, Louisiana, Montana, Oregon and Rhode Island permit the exercise of personal jurisdiction to the maximum limits of due process. Cal. Civ. Proc. Code § 410.10; *Unocal*, 248 F.3d at 921-22 (construing California law); 735 Ill. Comp. Stat. 5/2-209(c), *United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp.2d 884, 890 (N.D. Ill. 2002)(construing Illinois law); La. Rev. Stat. Ann. § 13:3201(B); *DNH, LLC v. In-N-Out Burgers,* 381 F. Supp.2d 559, 563 (E.D. La. 2005)(construing Louisiana law); Mont. R. Civ. P. 4B; *Davis v. Am. Family Mut. Ins. Co.,* 861 F.2d 1159, 1161 (9th Cir. 1988) (construing Montana law); Or. R. Civ. P. 4L; *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp.2d 907, 909 (D. Or. 1999) (construing Oregon law); R.I. Gen. Laws § 9-5-33; *Conn v. ITT Aetna Fin. Co.,* 252 A.2d 184, 186 (R.I. 1969) (construing Rhode Island law).

When a "local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of the parent's <u>own</u> business," under the representative services doctrine, the non-resident parent is subject to the jurisdiction of courts where the local subsidiary operates. *DVI, Inc. v. Superior Court*, 104 Cal. App. 4th 1080, 1093 (2002) (emphasis in original). While some courts have held that holding companies, without more, are not subject to jurisdiction on account of the acts of their subsidiaries, other courts have held that a defendant's claim to be a holding company does <u>not</u> preclude imputation of its subsidiaries' minimum contact to it. *See, e.g., Shepherd Invs. Int'l, Ltd. v. Verizon Commc'ns Inc.*, 373 F. Supp.2d 853, 863-866 (E.D. Wis. 2005) (ruling that holding company VCI's activities in the forum – including selling stock, promoting itself to analysts and investors, previous registration to do business, and lobbying in the forum – were sufficient to establish general jurisdiction over it); *In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 344 F. Supp.2d 686, 691-96 (W.D. Wash. 2003) (finding the fact that the corporation "denominates itself a mere holding company and has no direct employees does not, under these circumstances, mandate a contrary conclusion" to the view that the holding company "is more than a simple investment mechanism"); *Acorn v. Household Int'l, Inc.,* 211 F. Supp.2d 1160, 1167 (N.D. Cal. 2002) (holding plaintiffs established prima facie personal jurisdiction over a holding company based on the contacts of its subsidiaries in California); *Covad Commn'cs Co. v. Pac. Bell*, No. C 98-1887 SI, 1999 U.S. Dist. LEXIS 22789, at *21, 1999 WL 33757058, at *6 (N.D. Cal. Dec. 14, 1999) (finding personal jurisdiction over telecommunications holding company because the company "repeatedly states that it does much more than simply hold stock in its regional companies").

Given the showing below of VCI's presence in the forum States of California, Illinois, Montana, Oregon and Rhode Island, and VCI's relationship with its subsidiaries in those States, the Court should find that Plaintiffs have made a prima facie showing of personal jurisdiction over VCI, which is far more than a "simple investment mechanism."

### C.    California, Illinois, Montana, Oregon and Rhode Island Have General Jurisdiction Over VCI

VCI asserts that it is merely a holding company that "conducts no business and provides

no services of any kind to the public, including telecommunications services" (Dunbar Decl. ¶ 3)

and "does not advertise, solicit business, or provide any services in California, Illinois, Montana,

Oregon, or Rhode Island" (Dunbar Decl. ¶ 4).

However, VCI's Company Profile, displayed prominently on its website, makes clear

that VCI is much more than a "mere" holding company:

> Verizon Communications Inc., a Dow 30 company, is a leader in delivering broadband and other wireline and wireless communication innovations to mass market, business, government and wholesale customers. . . . Verizon Telecom brings customers the benefits of converged communications, information and entertainment services of the nation's most advanced fiber-optic network.

*See* Declaration of Vincent I. Parrett in support of Plaintiffs' Joint Opposition to Verizon's

Motion to Dismiss for Lack of Personal Jurisdiction, Ex. 1 at 1. ("Parrett Declaration").[3]

Moreover, despite VCI's sworn assertions now that "VCI conducts no business and

provides no services of any kind to the public, *including telecommunications services*," Dunbar

Decl. ¶ 3, the very first item discussed on the first page of VCI's Form 10-K for 2006 describing

VCI's "Business" says something quite different:

> ***Verizon Communications Inc. (Verizon) is one of the world's leading providers of communications services.*** Our Wireline business provides telephone services, including voice, network access and nationwide long-distance services, broadband, video and data services, and other communications products and services.
> ***
> We completed our merger with MCI on January 6, 2006, and have incorporated its operations into our wireline business.
> ***
> We have two reportable segments, Wireline and Domestic Wireless, ***which we operate and manage*** as strategic business units and organize by products and services. . . . Wireline provides communications services including voice, broadband video and data, next generation IP network services, network access, long distance and other services to consumers, carriers, business and government customers both domestically and globally in 150 countries.

Ex. 2 at 1 (VCI Form 10-K, 2006, Part I, Item I: "Business")(emphasis added). Hence, VCI's

sworn statement now that "VCI conducts no business and provides no services of any kind,"

Dunbar Decl. ¶ 3, is contradicted by its own public documents showing that VCI "operates and

manages" its business providing telecommunications services pervasively throughout the forum

---

[3] All factual citations to Exhibits ("Ex.") throughout this brief are Exhibits to the supporting Parrett Declaration, unless otherwise indicated.

States and the nation.  Ex. 2.[4]

Moreover, VCI is present in the forum States, even if, as it contends, it has no offices in the forum States.  Dunbar Decl. ¶¶ 4.  VCI markets itself and acquires customers who subscribe to its telecommunications products and services in the forum States *through* the telecommunications business VCI "operates and manages."  Ex. 2 at 1.  Indeed, VCI markets itself so aggressively through its national *interactive* website and advertising campaigns that VCI's most recent Form 10-K shows VCI spent **$2.271 billion** in advertising in 2006 alone.  Ex. 2 at p. 144 of 155 (Note 19 to VCI Consolidated Financial Statement).  Presumably this includes Verizon's massive "It's the nationally available Network" ad campaign and its internet marketing efforts.  While Plaintiffs do not now, before discovery, know the precise extent to which these funds were spent by VCI or its subsidiaries in the specific forum States (though it is safe to assume the amounts were substantial), one thing is clear:  if VCI did not have subsidiaries to provide these services in the forum States, it would have to undertake this work itself.  Thus, as discussed below, VCI should be considered present in the forum States under the representative services doctrine or agency theory of imputation of forum contacts.

### 1. VCI's Press Releases Show That VCI Does Continuous & Substantial Telecommunications Business in the Forum States

VCI's press releases, available on VCI's website at http://newscenter.verizon.com, disclose VCI's substantial and continuous business activities in the forum States.[5]  The following is a sample of VCI's press releases reflecting its continuous and systematic contacts in the forum States of California, Illinois, Montana, Oregon and Rhode Island:

#### California

- May 26, 2006 News Release, Ex. 3:  "THOUSAND OAKS, Calif. – Verizon applauds California Assembly Committee Vote in Favor of Video Choice.  The

---

[4] For instance, VCI's Form 10-K admits that "State public utility commissions regulate our telephone operations with respect to certain telecommunications intrastate rates and services," and specifically discusses "alternative forms of regulation" to which VCI's telephone operations are subject in California, Illinois, Oregon, and Rhode Island. Ex. 2 at 10 ("State Regulation & Local Approvals:  Telephone Operations").  Such regulation of VCI's telephone operations by the forum States confirms the presence of VCI *in* the forum States.

[5] These public statements on the VCI's website are adoptive admissions by VCI under Fed. R. Evid. 801(d)(2)(B), (C), or (D).

California Assembly Committee on Appropriations on Thursday approved Assembly Bill 2987, which would overhaul the State's outdated cable franchising process and pave the way for new competitors such as Verizon to offer consumers a choice in video programming, better technology, and lower prices…"

- December 20, 2006 News Release, Ex. 4: "OXNARD, Calif. – Spurred by significant growth in deployment and demand for its fiber-optic-based Internet and TV services around the country, Verizon is seeking to fill approximately 50 more positions at its state-of-the-art Fiber Solutions Center (FSC) here. . . ."

- March 8, 2007 News Release, Ex. 5: "THOUSAND OAKS, Calif. – Hundreds of thousands more consumers will soon have the choice of Verizon's industry-leading FiOS TV service under California's first State-issued video franchise, granted Thursday (March 8) by the Public Utilities Commission. . . ."

- March 22, 2007 News Release, Ex. 6: "LONG BEACH, Calif. – Verizon, provider of the fastest internet connections in Southern California through its all-fiber-optic network direct to customers' homes, is inviting everyone to move into the fast lane with free passes to the 33rd Annual Toyota Grand Prix of Long Beach next month. . . ."

- March 23, 2007 News Release, Ex. 7: "LONG BEACH, Calif. – Consumers in 129,000 households in 12 Southern California cities – including Long Beach, Huntington Beach, Santa Monica and Chino – will immediately reap the benefits of video choice as Verizon significantly expands its industry-leading FiOS television service throughout the region. . . ."

VCI also actively recruits for employment positions in California on its interactive website. Recent hiring events have been held in Simi Valley, Barstow, Cerritos, Bellflower, and Los Angeles. *See* Ex. 8 at 4-5.

### Montana

- May 3, 2006 News Release (***** Decl., Ex. 9): "EVERETT,Wash. – Verizon Communications has appointed David Valdez as senior vice president for Verizon West. He will be responsible for the company's regulatory and legislative initiatives in Alaska, Colorado, Idaho, Iowa, Minnesota, Montana, Nebraska, North Dakota, Oregon, South Dakota, Utah, Washington and Wyoming. . . ."

### Oregon[6]

- April 5, 2006 News Release (***** Decl., Ex. 10): "BEAVERTON, Ore. – A

---

[6] Regarding general jurisdiction's requirement for "continuous" business in the forum State, note that VCI's predecessor, Verizon Inc., registered with the Oregon Secretary of State on December 14, 1999 to do business in Oregon before it merged with Bell Atlantic Corp. in 2000. *See* Ex. 33. Upon registering to do business in Oregon, Verizon Inc. thereby appointed a registered agent to accept service of process, and submitted to jurisdiction in Oregon. Or. Rev. Stat. §60.714; Or. Rev. Stat. § 60.721. Such prior registration was one factor in the court's decision to exercise general jurisdiction over VCI in *Shepherd Invs. Int'l v. Verizon Commc'ns Inc.*, 373 F. Supp.2nd 853, 856 (E.D. Wis. 2005). Moreover, after the 2000 Bell Atlantic Corp. merger, VCI filed documents with the Oregon Secretary of State amending Verizon Inc.'s "application for authority," in order that it could now do business in Oregon under the name VCI. *See* Ex. 33.

growing number of customers in the Portland metro area and beyond soon will experience super-fast broadband Internet access as the company expands availability of its Verizon FiOS Internet Service to homes surrounding Portland. . . ."

- December 4, 2006 News Release (***** Decl., Ex. 11): "BEAVERTON, Ore. – Verizon has boosted access to its fast, affordable DSL broadband service with network upgrades to 20 switching centers in Oregon. . . ."

- February 19, 2007 News Release (***** Decl., Ex. 12): "BEAVERTON, Ore. – Internet users in Washington, Clackamas, Multnomah and Yamhill counties will soon be able to subscribe to state-of-the-art broadband service from Verizon, the company that is building the nation's most advanced digital all-fiber-optic network. . . .
. . .
A total of 59,000 additional homes will be connected to the FTTP network, which offers the fastest data speeds available to homeowners and small businesses and is capable of offering TV services in the future. . . ."

- April 17, 2007 News Release (***** Decl., Ex. 13): "BEAVERTON, Ore. – On Feb. 8, the MACC (Metropolitan Area Communications Commission) Board of Commissioners recommended the approval of a video franchise agreement reached with Verizon for 10 municipalities and Washington County. . . ."

- May 17, 2007 News Release (***** Decl., Ex. 14): "BEAVERTON, Ore. – Residents of the Yamhill County community of Dundee are a major step closer to having a real choice for their television services, thanks to a newly approved agreement authorizing Verizon to offer its FiOS service, delivered over the most advanced fiber-optic network straight to customers' homes. . . ."

### Illinois

- September 5, 2006 News Release (***** Decl., Ex. 15): "BLOOMINGTON, Ill. – Verizon will soon be raising the speed limit in 48 rural communities throughout Illinois with the introduction of its super-fact digital subscriber line (DSL) Internet access service for consumers and businesses. . . ."

- December 20, 2006 News Release (***** Decl., Ex. 16): "BLOOMINGTON, Ill. – Verizon customers in 20 rural communities throughout Illinois will get a long-awaited benefit, just in time for the holidays; the availability of high-speed internet access where they live or work. . . ."

- February 13, 2007 News Release (***** Decl., Ex. 17): "BLOOMINGTON, Ill – Verizon has introduced a winning array of new calling packages that are designed to beat any of cable's offerings for quality, value and network reliability. Verizon's Illinois customers can now choose from new packages that offer two, three, or now four services – including wireless calling from Verizon Wireless – with each package offered at one monthly rate. . . ."

### Rhode Island

- September 12, 2006 News Release (***** Decl., Ex. 18): "PROVIDENCE, R.I. – Verizon customers in Rhode Island now have two new options for flat-rate, unlimited, any-distance calling. Customers can combine the new phone plans with Verizon high-speed Internet and DIRECTV services to meet or beat the best bundle offer from cable. . . ."

- December 18, 2006 News Release (***** Decl., Ex. 19): "BOSTON – Verizon just opened the passing lane on the Internet turnpike for consumers and small businesses in parts of Massachusetts and Rhode Island, while reducing tolls for the fastest drivers. . . ."

- December 20, 2006 News Release (***** Decl., Ex. 20): "WARWICK, R.I. – The state division of Public Utilities and Carriers granted a Compliance Order Certificate to Verizon Wednesday (Dec. 20), taking the next significant step toward bringing video choice to approximately 80,000 Rhode Island households. . . .

- March 8, 2007 News Release (***** Decl., Ex. 21): "PROVIDENCE, R.I. – Residents and businesses in 12 more Rhode Island communities are one step closer to having a long-awaited choice for their video services. Verizon Thursday (March 8) filed a petition with the Rhode Island Division of Public Utilities and Carriers (DPUC) seeking a franchise to provide the communities with FiOS TV, the company's fiber-optic-based service. . . ."

- May 7, 2007 News Release (***** Decl., Ex. 22): "NEW YORK – More and more customers are choosing Verizon packages of voice, internet and TV as they shop for convenient and money-saving communications services. . . .
. . .
Verizon also has developed new packages featuring FiOS Internet and FiOS TV products. The FiOS all-fiber-optic network services are now being introduced in parts of 16 states.
. . .
The FiOS packages are being introduced in Pennsylvania, Delaware, Maryland, Virginia, Massachusetts, Rhode Island, California, Texas, Indiana and Oregon. . . ."

These VCI news releases, just a sampling of VCI's news releases over the past few years, show two things: (1) that VCI is in the business of telecommunications, not just of acquiring other businesses as an "investment mechanism," and (2) that VCI does substantial, systematic, and continuous telecommunications business *in* the forum States.

## 2. VCI Lobbies California State Legislators and Regulators Extensively

Public records signed under penalty of perjury by a VCI representative demonstrate that VCI itself has spent enormous amounts of money lobbying California State legislators and other government officials, as well as the California Public Utilities Commission ("CPUC"). During the 2005-2006 sessions, VCI spent $3,181,272.70 on general lobbying and $52,979.18 on lobbying the CPUC. Ex. 23. In the *first three months* of the 2007-2008 legislative session, VCI has spent $212,509.92 on general lobbying. *Id.* For the 2003-2004 session, VCI spent $1,420,353.60 on general lobbying and $134,830.86 lobbying the CPUC. *Id.* During the 2001-2002 session, VCI spent $982,852.80 on general lobbying in California and $142,859.24 trying

to influence the CPUC.  *Id.*   Thus, since 2001 VCI has spent over $6 million dollars lobbying in California.

The <u>Lobbying Disclosure Information Manual</u> published by the California Fair Political Practices Commission provides in part:

> **Name Identification**
> **Requirements**
> The Act requires disclosures of the names of entities that engage in lobbying activity.  If a lobbyist employer is a business entity with subsidiaries, the name of the subsidiaries may be required to be separately identified along with the corporate parent's name.  This manual can not address all of the different relationships of affiliated entities.  Following is a selected summary of Commission advice.  Lobbyist employers are encouraged to contact the FPPC for specific guidance.
>
> **Examples**
> A corporation and its subsidiary both make payments to a lobbying firm; the name of the filer should be listed as: ABC Company and its affiliate, XYZ subsidiary.  A lobbying firm represents the lobbying interests of a corporation and its subsidiary, and each entity provides direction to the lobbying firm.  The corporation makes all of the payments to the lobbying firm. The name of the filer should be listed as: ABC Company and its affiliate, XYZ subsidiary.
>
> A corporation has several subsidiaries.  The corporation, alone, directs and controls the lobbying activity and makes all payments to the lobbying firm.  The subsidiaries are not involved with lobbying activity nor do they make payments to the lobbying firm.  Even though the subsidiaries may benefit from the lobbying firm's services, the name of the filer should be listed as: ABC Corporation.  The subsidiaries are not required to be identified.

<u>Lobbying Disclosure Information Manual</u>, California Fair Political Practices Commission, at 3-1.  Ex. 24.  Clearly, if a separate subsidiary of VCI was the lobbyist employer entity, it would have to be identified in VCI's reports.  *But no subsidiary is listed in VCI's reports*.  Hence, the only conclusion to be drawn is that VCI itself – not one of its subsidiaries – is lobbying and thus subject to personal jurisdiction in California.  *See, e.g., Shepherd Invs. Int'l, Ltd.*, 373 F. Supp.2d at 863-866 (ruling that holding company VCI's activities in the forum – including lobbying in the forum – were sufficient to establish general jurisdiction over VCI).

**3.      Courts Have Exercised Jurisdiction Over VCI and Similar Telecommunications "Holding Company" Defendants**

This District has exercised jurisdiction over a telecommunications giant – SBC – that claimed it was "merely a holding company."  *Covad Commn'cs Co.,* 1999 U.S. Dist. LEXIS

22789, at *21, 1999 WL 33757058, at *6, (N.D. Cal. Dec. 14, 1999). The Court asserted general jurisdiction based on pervasive contacts of SBC (now AT&T) with California, despite SBC's contention (like VCI's here) that it had no offices or employees in California and was not licensed to do business in California. *Id.* The Court explained: "Given the wide array of documents presented to the Court, representing either that SBC is present in California or is, in fact, more than a simple holding company, the Court finds that plaintiff has stated a prima facie case of personal jurisdiction over SBC." *Id.*[7]

Likewise, the Eastern District of Wisconsin recently held it could properly exercise general jurisdiction over VCI in *Shepherd Invs. Int'l,* 373 F. Supp.2d 853 (E.D. Wis. 2005). The court found jurisdiction proper because VCI sold its stock in the forum State, promoted itself to financial analysts and investors in the forum State, and undertook lobbying activities in the forum State, and previously had been registered to do business in Wisconsin (a right it apparently had relinquished several years before the litigation commenced). *Id.* at 863-66. As shown above, VCI similarly has engaged in substantial lobbying activities in California, Ex. 24, and further employs a lobbyist based in Oregon. Ex. 25. Furthermore, directly contrary to VCI's claim that it has "never" been registered to do business in any of the forum States, VCI itself—as distinct from its subsidiaries—*did* register to do business and appointed an agent for service of process in California in December 1999, and was also licensed to do business in Oregon. Ex. 26.

VCI cites to four cases in which the facts supporting jurisdiction were insufficient. All are distinguishable. *See Negron-Torres v. Verizon Commc'ns Inc.,* 478 F.3d 19, 24-27 (1st Cir. 2007); *Von Grabe v. Sprint PCS,* 312 F. Supp.2d 1285 (S.D. Cal. 2003); *Newman v. Motorola,*

---

[7] Similarly, in *Gammino,* 2005 WL 724130 at *3 (E.D. Pa. Mar. 29, 2005), the court held that SBC was amenable to jurisdiction in Pennsylvania primarily due to the content and interactivity of its website. *Id.* at *3. ("SBC's internet contacts are for the purposeful availment of conducting business with Pennsylvania residents. Such purposeful availment consequently subjects SBC to the general personal jurisdiction of this Court."). The interactivity of VCI's website is discussed in Section (D)(1) below. Like VCI here, SBC argued in *Gammino* that the services offered through its website in the forum States were those of various SBC subsidiaries, not of SBC itself. But because SBC was "acting in essence, as a solicitor and agent for its subsidiaries" and solicited "internet contacts for the benefit of SBC subsidiaries," general jurisdiction over SBC existed.

Inc., 125 F. Supp.2d 717 (D. Md. 2000); *Phonetel Commn'cs, Inc. v. U.S. Robotics Corp.,* No. 4:00-CV-1750-R, 2001 U.S. Dist. LEXIS 7233 (N.D. Tex. June 1, 2001).

In *Negron-Torres*, the Court rejected plaintiffs' argument that "the mere use of a trademark or logo . . . suffice[d] to demonstrate the existence of the requisite minimum contacts" for personal jurisdiction. *Negron-Torres*, 478 F.3d at 26. No such argument is advanced here. Moreover, the plaintiffs there did not provide any evidence of VCI's continuous and systematic contacts with the forum State, as Plaintiffs here have done here.

The court in *Von Grabe* ruled that the pro se plaintiff provided limited evidence that the court dismissed as unsupported or erroneous. *Von Grabe*, 312 F. Supp.2d at 1297-98. For example, the plaintiff in *Von Grabe* relied on an alter ego argument as a basis for personal jurisdiction, but was unable to provide the evidence necessary to meet the high standard for a finding of alter ego such as "unity" of ownership and disregard of corporate identities or formalities. *Id.* at 1299-1300. Plaintiffs here do not make an alter ego argument.

In *Newman*, the court required plaintiffs to "prove, by a *preponderance of the evidence*, that [personal] jurisdiction is proper." *Newman,* 125 F. Supp.2d at 722-23 (emphasis added). Yet Plaintiffs here do not bear that burden, as no evidentiary hearing has been conducted and discovery has not commenced. Hence, Plaintiffs here need only establish *prima facie* jurisdiction over VCI. *MGM Studios Inc.,* 243 F. Supp.2d at 1082 (discussed *supra*).

Finally, in *Phonetel* the plaintiff apparently relied on defendant's website *alone* to assert specific jurisdiction over VCI through an *alter ego* theory. *Phonetel*, 2001 U.S. Dist. LEXIS 7233 at **10-14. The facts and arguments are completely different in *Phonetel* than in the present case, as plaintiffs here do not rely solely on VCI's website nor make an alter ego argument, but rather assert general jurisdiction over VCI through the pervasive forum contacts of VCI's business that VCI "manages and operates" in the forum States. Ex. 1-22.

### 4. General Jurisdiction Is Additionally Proper Under California's Representative Services Doctrine Because VCI's California Subsidiaries Offer Services that VCI Would Have to Provide if those Subsidiaries Did Not Exist

VCI is a telecommunications giant that advertises and provides telecommunications

services and products. Ex. 1-22. Its subsidiaries exist to help further VCI's own business. If VCI did not have subsidiaries to provide its products and services in California, VCI would have to provide them itself. Thus, the Court has an additional reason to find that the exercise of general jurisdiction over VCI in California is proper under the representative services doctrine.

A non-resident defendant is subject to general jurisdiction if a "local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business." *DVI, Inc.,* 104 Cal. App. 4th at 1093 (emphasis in original). As noted above, VCI engages in widespread lobbying and uses its well-known name in California advertising and publicity to increase its customer base. Ex. 23-24; *see also*, Ex. 2 at p. 144 of 155 (Form 10-K showing VCI spent **$ 2.271 billion** in advertising in 2006 alone.) Still, VCI's underlying business is neither lobbying nor advertising; it is providing telecommunications services for consumers. Ex. 1-22. Despite VCI's claim that it is merely a holding company that acquires subsidiaries for investment purposes only, VCI's active business is telecommunications and increasing the number of consumers for that business. Having spent vast resources developing and marketing to a broad customer base (which amounts to billions of dollars annually), businesses "managed and controlled" by VCI *must* provide services and products for VCI's customers. Those entities are VCI business segments such as Verizon Wireline and subsidiaries that supply telecommunications services in California, Illinois, Montana, Oregon and Rhode Island. They exist to further VCI's telecommunications business. The use of the representative services doctrine to obtain general jurisdiction is appropriate if "the parent uses a subsidiary to do what it otherwise would do itself in the operational sense." *F. Hoffman-La Roche, Ltd. v. Superior Court*, 130 Cal. App. 4th 782, 798 (2005). Because VCI uses its subsidiaries that do business in the forum States to provide products and services that VCI would have to provide in their absence, general jurisdiction over VCI exists.

### 5. VCI's Website Conducts Business Regularly With Californians

As discussed in Section D(1), *infra,* VCI offers numerous services and products via its interactive website, specifically targeting Californians to sign up for the services and products. Plaintiffs do not argue that, by itself, a website's mere existence is sufficient to establish general

jurisdiction. However, along with Plaintiffs' other evidence, the interactive website through which VCI directly participates in the delivery of telecommunications services to California customers is a factor to be weighed in determining whether general jurisdiction over VCI exists.

**D.      California, Illinois, Montana, Oregon and Rhode Island Have Specific Jurisdiction Over VCI**

Even if VCI's contacts with the forum States were not sufficient for general jurisdiction, the exercise of specific jurisdiction is proper as long as:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some transaction by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Omeluk v. Langstsen Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)

In analyzing specific jurisdiction, a court "must evaluate all of a defendant's contacts with the forum State, whether or not those contacts involve wrongful activity by the defendant." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (*en banc*).[8]

VCI's sole argument that the Court cannot properly exercise specific jurisdiction over it is contained in one paragraph:

> [P]laintiffs' claims arise from alleged divulgences of telecommunications content or records, but none of the moving Verizon defendants provide telecommunications services in the relevant states. VCI and MCI, LLC are mere holding companies that do not provide telecommunications services in <u>any</u> state. . . . *Because they do not provide telecommunications services to individual customers, the moving Verizon defendants could not have made the alleged disclosures of telecommunications content or records in the relevant states or with respect to customers in those states*.

Verizon Mem. at 8-9. (underline)emphasis added) That argument is a *non sequitur*. Even if it were true that VCI is a "mere holding company" that provides no telecommunications services to individual customers – a claim Plaintiffs sharply dispute *supra* – it does not follow that VCI did not make the alleged disclosures of customer communications and records or did not order, control or facilitate such disclosures. VCI's position is akin to arguing that a holding company

---

[8] *Yahoo!* also made clear that only a jurisdictionally sufficient amount of harm, not the "brunt" of the harm, need occur in the forum State. 433 F.3d at 1207.

that ordered its operating subsidiaries to systematically overcharge customers could not be subject to specific jurisdiction because the holding company was not doing the cheating itself.

Indeed, Verizon's position that it "could not have made the alleged disclosures" is unsupported by any evidence. VCI's Dunbar Declaration does not deny that VCI: (a) on behalf of its subsidiaries, determines policies for turnover of communications and records to assist in national security surveillance, (b) negotiates contracts such as the one recently publicly admitted by the Government whereby Verizon turns over customer call records in real time to the FBI in response to National Securities Letters,[9] or (c) plays a logistical role in delivering access to telecommunications content and records to the Government.

Moreover, it was VCI – not any of its subsidiaries – that issued News Releases on May 12, 2006 and May 16, 2006 responding to media reports that it had provided caller information to the government. Ex. 27 & Ex. 28. It was VCI's May 12, 2006 press release entitled *Verizon Issues Statement on NSA and Privacy Protection* that emphasized that "Verizon will provide customer information to a government agency only where authorized by law for appropriately-defined and focused purposes." Ex. 27. And it was VCI's press release that expressly assumed responsibility for MCI's conduct in turning over call records, by announcing: "In January 2006, Verizon acquired MCI, and ***we are ensuring*** that Verizon's policies are implemented at that entity and that all its activities fully comply with the law." Ex. 28. Hence, VCI's public statements do not support VCI's current conclusory argument that VCI was not the entity with the power to provide, help provide, or prevent the turnover of the customer records at issue.

Many of the facts discussed above supporting general jurisdiction over VCI also support *specific* jurisdiction over VCI, particularly the first factor: whether VCI has "invoke[ed] the benefits and protections of [the forums'] laws." By managing and operating its telecommunications business in the forums, Ex. 1-22, VCI has purposely availed itself of the privilege of conducting business in the forums, including by its extensive lobbying. Ex. 23-25.

---

[9] *See Hearing Before the H. Judiciary Committee*, March 20, 2007 (attached at Ex. HH, p. 37, to the Declaration of Candace J. Morey In Support of Plaintiffs' Joint Opposition to the Motion to Dismiss by the United States (filed June 22, 2007 at 06 MDL 1791 Docket No. )).

### 1. VCI Has Purposefully Availed Itself of the Privilege of Conducting Business Targeted in the Forum States

The first requirement for specific jurisdiction is "purposeful availment." This requirement ensures that a nonresident defendant will not be haled into court based on "'random, fortuitous or attenuated contacts with the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) The purposeful availment requirement is satisfied if the defendant "'has taken deliberate action' toward the forum state." *Id.* The defendant does not have to be physically present or have physical contacts with the forum; all that is required is that the defendant's efforts are "purposefully directed" toward forum residents. *Id.*

Plaintiffs allege that VCI's conduct in providing customer communications and records to the Government – resulting in the invasion of Plaintiffs' privacy – was aimed at individuals in the forums at issue. *See, e.g.,* MCC ¶¶ 8, 40, 41, 45, 84, 91, 163, 168-171, 264-265. Such invasion of privacy is an intentional tort. *See, e.g., Readylink Healthcare v. Lynch*, 440 F.3d 1118, 1121 (9th Cir. 2006). "In tort cases, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state." *Panavision*, 141 F.3d at 1321 (citing *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *Calder v. Jones*, 465 U.S. 783 (1984)). Under *Calder*, personal jurisdiction can be based on: "'(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered – and which the defendant knows is likely to be suffered – in the forum state.'" *Id.* (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993)).

Here, the requirements of the *Calder* effects test are easily met. VCI's actions in providing, directing, authorizing or helping to provide records and communications to the government were obviously intentional. The actions were expressly aimed at customers in the forum States. Moreover, the harms of which Plaintiffs complain were suffered in their respective forum States whence VCI intercepted and disclosed Plaintiffs' calls and records. And VCI knew these harms were likely to be suffered in the forum States. Therefore, VCI meets the purposeful availment requirement under the effects doctrine.

Furthermore, VCI's interactive website is additional evidence that VCI purposefully

avails itself of the privilege of conducting business activities here. Case law supports specific jurisdiction based on a website if the "defendant purposefully (albeit electronically) directed his activity [via the website] in a substantial way to the forum state." *Panavision Int'l.,* 141 F.3d at 1321; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). "[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Cybersell*, 130 F.3d at 417. Courts require "something more" than a passive website to demonstrate defendants' purposeful availment. *Panavision,* 141 F.3d at 1321; *Jamba Juice Co. v. Jamba Group, Inc.* No. C-01-4846 VRW, 2002 U.S. Dist. LEXIS 9549, 2002 WL 1034040, at *3, (N.D. Cal. May 15, 2002) ("a plaintiff must show 'something more' than the operation of a general access website, specifically, 'conduct directly targeting the forum'") (citations omitted).

VCI's website, www.verizon.com, meets these criteria. Through its website, VCI not only solicits business from, but offers a wide variety of services to, California residents, including telephone services. The accompanying Declaration of Jennifer L. Kelly, Esq., demonstrates that, from California, Ms. Kelly could enter into a continuing contract for Verizon residential local and long distance telephone services in Los Angeles, using nothing but the VCI website.[10] Declaration of Jennifer L. Kelly in support of Plaintiffs' Joint Opposition to Verizon's Motion to Dismiss for Lack of Personal Jurisdiction, ¶2 & Ex. A. Ms. Kelly's declaration also demonstrates that there was no indication at any point in the process of a signing up for Verizon telephone services to be provided in Los Angeles, via the VCI website, that the customer would be contracting with any entity other than VCI. *Id.*

        **2.**        **Plaintiffs' Claims Arise Out of VCI's Forum-Related Activities**

The second specific jurisdiction factor is that the claims asserted in the litigation arise out of the defendant's forum related activities. *Panavision,* 141 F.3d at 1322. Thus, the Court must determine whether Plaintiffs would not have been injured "but for" VCI's conduct directed

---

[10] In stark contrast, the sole jurisdictional contact of the *Autodesk* defendant, a small Missouri company, was to willfully infringe, in Missouri, the copyright of the California plaintiff. Still, this court found purposeful availment under *Calder*'s effects test. *Autodesk, Inc. v. RK Mace Eng'g, Inc.*, No. C-03-5128 VRW, 2004 WL 603382. at *7, (N.D. Cal. Mar. 11, 2004)

toward Plaintiffs in the forum at issue. *Id.*

This factor is easily met here. Plaintiffs' claims arise out of VCI's alleged activities in intercepting and disclosing customers' calls and records in the forum States. But for VCI's conduct in providing or helping to provide the government with the private and sensitive customer communications and records in the forum States, Plaintiffs would not have suffered and would not continue to suffer an invasion of their privacy.

### 3.     The Exercise of Specific Jurisdiction is Reasonable

As it is shown that VCI purposefully directed its activities toward the forum States, personal jurisdiction over VCI is presumed reasonable. Thus, to avoid jurisdiction, VCI must make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). This Court assesses seven factors in a determination of whether specific jurisdiction is reasonable:

1.     The extent of defendants' purposeful interjection into the forum State's affairs;
2.     The burden on defendant of litigating in the forum;
3.     The extent of conflict with the sovereignty of defendant's home State;
4.     The forum State's interest in adjudicating the dispute;
5.     The most efficient judicial resolution of the controversy;
6.     The importance of the forum to plaintiff's interest in convenient and fair relief; and
7.     The existence of an alternate forum.

*Autodesk, Inc. v. RK Mace Eng'g, Inc.*, No. C-03-5128 VRW, 2004 WL 603382. at *7, (N.D. Cal. Mar. 11, 2004) (citing *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002)).

VCI cannot make a compelling case that jurisdiction is unreasonable. As to the first factor, a "court's determination that defendant has purposefully directed its activities toward [the forum State] is sufficient to resolve this factor in favor of jurisdiction." *Id.* at *7 (citing *Haisten v. Grass Valley Med. Reimbusment Fund*, 784 F.2d 1392, 1400-01 (9th Cir. 1986)). On the second factor, VCI, a Dow 30 Company, would suffer little burden in litigating in the forum States. And this factor applies more to international than interstate travel. *Id.* at *7. Likewise, the third factor – sovereignty conflicts – applies mainly to international disputes. *Id.* at *8.

On the fourth factor, the forum States at issue have a strong interest in adjudicating the

dispute.  As Plaintiffs are citizens of the forum States, those States have a strong interest in protecting the privacy of their citizens.  The fifth factor, efficient judicial resolution, focuses on where the witnesses and evidence are likely to be located.  Because of the nature of the cases, it cannot yet be known before discovery where many of the witnesses and much of the evidence is located.  Yet Plaintiffs *are* in the forum States at issue.  Without showing more than it has, VCI cannot even make a weak case, let alone a compelling one, on this factor.

The sixth factor concerns convenient and effective relief for plaintiffs.  Most of the named Plaintiffs reside in the forum States; thus, any jurisdiction outside of their home forum would be less convenient and effective for them.  As to the existence of an alternate forum, Delaware and New York might qualify, yet all pre-trial proceedings will occur in this MDL court.  To the extent this one factor weighs in favor of VCI, it becomes significant "only if other factors weighed against jurisdiction."  *Id.*  Here, all of the other factors either weigh in *favor* of jurisdiction or are neutral.  Thus, this factor is not enough for VCI to make a compelling case that jurisdiction in the Plaintiffs' forums is unreasonable.

Accordingly, personal jurisdiction over VCI exists in the forum States.

## II.    Louisiana Has Personal Jurisdiction Over VGN

Verizon Global Networks, Inc.'s ("VGN") challenge to jurisdiction in Louisiana is based on their narrow representation to this Court that VGN is not registered to do business in Louisiana and does not have an agent for service of process in Louisiana.[11]  However, VGN misstates the facts with regard to their contacts with the State of Louisiana.  Contrary to the Dunbar Declaration, VGN was qualified to business in Louisiana with the Secretary of State on June 4, 2003, maintains an agent for service of process in Louisiana *and* VGN remains active and in good standing in Louisiana.[12]  Clearly, these facts cast serious doubt on the Dunbar Declaration.

Additionally, with regard to jurisdiction in Louisiana, no discovery has taken place on

---

[11]    *See* Ver. Mot. at 7-8.

[12]    *See* VGN's corporate filing data with the Louisiana Secretary of State, attached as Ex. 29, and available at http://www.sos.louisiana.gov/cgibin?rqstyp=crpdtlC&rqsdta=35493945F (last report filed on May 7, 2007, and reflecting VGN's status as "Active" & "In Good Standing").  Additionally, the various addresses provided to the State of Louisiana for VGN and its officers are all Verizon office locations.

the various contacts maintained therein by VGN or any of the Verizon entities so as to establish or defeat jurisdiction.  In Louisiana, VCI has woven a tangled web resulting in its operating as the now defunct "Bell Atlantic Corporation."[13]  In Louisiana, VCI qualified to do business in the State on December 15, 1999 and filed a notice of merger into what was then the non-existent Bell Atlantic Corporation on November 3, 2000.[14]  A search of the Louisiana Secretary of State's records indicates that Bell Atlantic Corporation had withdrawn on January 5, 1994,[15] and was apparently replaced by Bell Atlantic Communications, Inc, on May 24, 1996.[16]  Accordingly, the only readily identifiable non-wireless Verizon entity currently qualified to do business in the State of Louisiana was VGN.  However, should the Court find that Plaintiffs have not established prima facie jurisdiction over VGN in Louisiana, then Plaintiffs respectfully request leave to conduct jurisdictional discovery on Verizon businesses and subsidiaries subject to personal jurisdiction in Louisiana.

**III.    California Has Personal Jurisdiction Over MCI, LLC**

    **A.    MCI, LLC Is Subject To General Jurisdiction In California**

    Mr. Dunbar's declaration that neither MCI, LLC nor its predecessors, WorldCom, Inc. (1983 through April 2004) or MCI, Inc. (April 2004 through January 6, 2006), maintained offices in California[17] is contradicted by public records signed under penalty of perjury by authorized representatives of those companies.  WorldCom, Inc.'s official Report of Lobbyist Employer for the first quarter of 2004 lists that company's business address as San Francisco, California, as do MCI, Inc.'s reports for the second, third, and fourth quarters of 2004.  Exs. 38-41.  These documents alone are sufficient to create a factual dispute as to these entities' presence in

---

[13]    According to VCI's most recent Form 10-K dated March 1, 2007, VCI was formed and began doing business as VCI after the merger of Bell Atlantic Corporation and GTE Corporation on June 30, 2000.  Ex. 2 at 1 (Part I, Item 1: "Business").

[14]    *See* VCI's corporate filing data with Louisiana Secretary of State, attached as Ex. 30, and available at:  http://www.sos.louisiana.gov/cgibin?rqstyp=crpdtlC&rqsdta=34868256F

[15]    *See* the Louisiana Secretary of State's website at http://www.sos.louisiana.gov/cgibin?rqstyp=crpdtlC&rqsdta=34130760F

[16]    *See* the Louisiana Secretary of State's website at http://www.sos.louisiana.gov/cgibin?rqstyp=crpdtlC&rqsdta=34528033F

[17]    *See* Dunbar Decl., ¶¶10, 12, 14, 16.

California sufficient to warrant discovery.

In addition, MCI, Inc. has spent tremendous amounts of money lobbying California State legislators and other government officials, as well as the California Public Utilities Commission (CPUC). During the 2003-2004 legislative session, MCI, Inc. spent $230,269 on general lobbying and $14,687 lobbying the CPUC. Ex. 34. During the first five quarters of the 2005-2006 session, MCI, Inc. spent $165,355 on general lobbying and $5,776 lobbying the CPUC. Ex. 35. MCI, Inc. also spent significant amounts of money on payments to lobbying firms and other "payments to influence legislative or administrative action." For example, from April 1, 2005 to June 30, 2005, MCI, Inc. spent $41,915 on payments to lobbying firms and $1,862 on "payments to influence." Ex. 36. From July 1, 2005 to September 30, 2005, MCI, Inc. spent $45,077 on payments to lobbying firms, $4,345 on other payments to influence, and $2,800 on payments in connection with administrative testimony in ratemaking proceedings before the CPUC. Ex. 37. From July 1, 2004 to September 30, 2004, MCI, Inc. spent $26,476 on payments to lobbying firms, $35,032 on other payments to influence, and $1925 on payments in connection with PUC activities. Ex. 38.

MCI, LLC's predecessors made substantial expenditures on lobbying activities in the State of California, and apparently had a long-standing presence in San Francisco, California, prior to MCI, Inc.'s acquisition by VCI. Accordingly, for the reasons discussed in Section I(C)(2) with respect to VCI, the State of California has general jurisdiction over MCI, LLC. *See, e.g., Shepherd Invs. Int'l, Ltd.*, 373 F. Supp. 2d at 863-866 (ruling that holding company VCI's activities in the forum – including lobbying in the forum – were sufficient to establish general jurisdiction over VCI).

### B.     MCI, LLC Is Subject To Specific Jurisdiction In California

Under *Calder*, MCI, LLC is subject to jurisdiction in California, because it directed the commission of intentional unlawful acts directed at the residents of this State. *See also Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) (a "single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted"). Plaintiffs have specifically alleged that "[a]t the request of the federal government, MCI, Inc. exercised

domination and control over its wholly-owned subsidiary, MCI, and *specifically directed it to engage in the violations of law alleged herein.*" MCC ¶ 9 (emphasis added). Plaintiffs have a reasonable and good faith basis for this allegation.

As the Court has already found, in the Fall of 2001, the Chairman and CEO of Qwest Communications International, Inc., Mr. Joseph Nacchio, "'was approached to permit the Government access to the private telephone records of Qwest customers,'" but he "declined to participate in the program." *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 988 (N.D. Cal. 2006). Like VCI, MCI, Inc., and WorldCom, Inc., Qwest Communications International, Inc.—the entity of which Mr. Nacchio was Chairman and CEO—is ostensibly a holding company, providing telecommunications services through its operating subsidiaries. *See In re Qwest Communications Intern., Inc.*, 131 N.M. 770, 42 P.3d 1219 (N.M. 2002). Mr. Dunbar confirms that no fewer than 14 separate subsidiaries of WorldCom, Inc. and MCI, Inc. "provide[d] telecommunications services in California," Dunbar Decl. ¶¶13, 17 & n.3,4,[18] and that "[e]ach subsidiary had its own Board of Directors and management . . . ." Dunbar Decl. ¶¶13, 17.

As was the case with Qwest, it is reasonable to assume that rather than approaching the separate management of the myriad operating subsidiaries of WorldCom, Inc.—which would have required the NSA to hold a virtual *convention*— the NSA directed its request to the highest corporate echelon, the management of WorldCom, Inc., and the decision to participate in the program was made at that level, and merely implemented by its operating subsidiaries, including MCI. Accordingly, MCI's disclosure of its California customers' communications and records is imputable to WorldCom, Inc.'s successor, MCI, LLC, for jurisdictional purposes. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 419-20 (9th Cir. 1977) (where activities of subsidiary out of which claims arise are conducted at the behest of parent, they are imputable to parent for jurisdictional purposes).

As set forth above, under *Calder* and its progeny, this act alone is sufficient to subject MCI, LLC to specific jurisdiction in California. *See also Keeton v. Hustler Magazine, Inc.*, 465

---

[18] The nationwide list of operating subsidiaries is undoubtedly much longer, as many of the entities Mr. Dunbar identifies contain the names of California municipalities.

U.S. 770, 773, 780 (1984)(finding jurisdiction in New Hampshire even though "the bulk of the harm done to petitioner occurred outside New Hampshire"). Accordingly, California may exercise personal jurisdiction over MCI, LLC.

## IV. In The Alternative, Plaintiffs Should Be Permitted To Conduct Limited Jurisdictional Discovery

In the event the Court is inclined to grant Defendants' Rule 12(b)(2) motion, Plaintiffs respectfully request the Court grant them limited jurisdictional discovery of VCI in California, Illinois, Montana, Oregon and Rhode Island, and of MCI, LLC and its predecessors in California. *See Unocal,* 248 F.3d at 921; *Gammino,* 2005 U.S. Dist. LEXIS 35873, at *6, 2005 WL 3543810, at *1(denying VCI's motion for summary judgment and granting plaintiffs discovery to establish "the extent to which VCI controls and/or operates in conjunction with its subsidiaries" and "the method by which VCI communicates with its subsidiaries."). Indeed, the Ninth Circuit has instructed that jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Wells Fargo & Co.,* 556 F.2d at 430 n. 24 (further noting that jurisdictional discovery has been allowed on "whether jurisdiction could be established over an alien corporation through the employment of another as agent").

## V. In The Alternative, Plaintiffs Should Be Permitted To Amend Their Complaints To Add Defendants' Subsidiaries In The Forum States

In the event the Court is inclined to grant Defendants' motion to dismiss for lack of personal jurisdiction, Plaintiffs respectfully request that the Court allow Plaintiffs to amend their complaints pursuant to Rule 15(a) to name Defendants' subsidiaries in the forum States whose conduct gives rise to the claims set forth in Plaintiffs' complaints.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss for lack of personal jurisdiction should be denied. In the alternative, Plaintiffs respectfully request that the Court allow Plaintiffs limited jurisdictional discovery and allow Plaintiffs to amend their respective complaints.

Dated: June 22, 2007                    Respectfully,

MOTLEY RICE LLC

By: /s/ Vincent I. Parrett_____

    Vincent I. Parrett (CSB No. 237563)

Interim Class Counsel for Verizon Class

Dated: June 22, 2007                    Respectfully,

LIEFF, CABRASER, HEIMANN & BERNSTEIN,

LLP

By: /s/   Barry R. Himmelstein_____

    Barry R. Himmelstein (CSB No. 157736)

Interim Class Counsel for MCI Class
Attorneys for Plaintiffs *Spielfogel-Landis et al.*,

No. 3:06-cv-4221 (N.D. Cal.)

Dated: June 22, 2007                    Respectfully,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

By: /s/ Ann Brick_____
    Ann Brick (CSB No. 65296)

Attorneys for Plaintiffs *Riordan et al.*,

  No. 3:06-cv-3574 (N.D. Cal.)

Dated: June 22, 2007                    Respectfully,

FENWICK & WEST LLP

By: /s/ Laurence F. Pulgram_____
    Laurence F. Pulgram (CBS No. 115163)

Attorneys for Plaintiffs *Riordan et al.*,

  No. 3:06-cv-3574 (N.D. Cal.)

Dated: June 22, 2007                    Respectfully,

SLATER ROSS

By: /s/ Christopher A. Slater_____
    Christopher A. Slater

Attorneys for Plaintiffs *Hines et al.*,

  No. cv-06-694 (D. Ore.)

Dated:    June 22, 2007                    Respectfully,


                                           LISKA, EXNICIOS & NUNGESSER

                                           By:  /s/ Val Patrick Exnicios_____
                                                   Val Patrick Exnicios

                                           Attorneys for Plaintiffs *Herron et al.,*
                                           No. 06-2491 (D. La.)

Dated:  June 22, 2007                      LAW OFFICES OF STEVEN E. SCHWARZ, ESQ.

                                           By:  /s/  Steven E. Schwarz_____
                                                   Steven E. Schwarz

                                           Attorneys for Plaintiffs *Joll et al.,*
                                           No. 1:06-cv-2680 (N.D. Ill.)


Dated:  June 22, 2007                      REVENS REVENS & ST. PIERRE, PC

                                           By:  /s/ Michael A. St. Pierre_____
                                                   Michael A. St. Pierre

                                           Attorneys for Plaintiffs *Bissitt et al.*,
                                           No. 06-220 (D.R.I.)



Dated:  June 22, 2007                      THE MASON LAW FIRM, P.C.

                                           By:  /s/ Gary E. Mason_____
                                                   Gary E. Mason

                                               Attorneys for Plaintiffs *Mahoney et al.*,
                                               No. 06-224 (D.R.I.)



Dated:  June 22, 2007                      ROSSBACH HART BECHTOLD, P.C.

                                           By:  /s/  William A. Rossbach_____
                                                   William A. Rossbach

                                           Attorneys for Plaintiffs *Fuller et al.,*
                                           No. cv-06-77 (D. Mont.)

Dated:     June 22, 2007               WAGNER & JONES LAW OFFICES

2                                      By: /s/ Nicholas J. P. Wagner_____
3                                              Nicholas J. P. Wagner (CSB No. 109455)

4                                      Attorneys for Plaintiffs *Conner et al.*,
                                       No. 1:06-cv-632 (E.D. Cal.)
5

6

7          Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of

8    this document has been obtained from Barry R. Himmelstein, Ann Brick, Laurence F. Pulgram,

9    Christopher A. Slater, Val Patrick Exnicios, Steven E. Schwarz, Michael A. St. Pierre, Gary E.

10   Mason, William A. Rossbach, and Nicholas J. P. Wagner.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28