Ilann M. Maazel
Matthew D. Brinckerhoff
Kennisha Austin
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
Telephone: (212) 763-5000
Facsimile: (212) 763-5001
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY ) TELECOMMUNICATIONS RECORDS ) LITIGATION ) ) | MDL Dkt. No. 06-1791-VRW |
| This Document Relates to: ) ) | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OR FOR SUMMARY JUDGMENT BY THE UNITED STATES AND THE OFFICIAL CAPACITY DEFENDANTS** |
| VIRGINIA SHUBERT, NOHA ARAFA, ) SARAH DRANOFF and HILARY ) BOTEIN, individually and on behalf of all ) others similarly situated, ) ) | |
| Plaintiffs, ) ) | |
| -against - ) ) | Date:   August 30, 2007 |
| GEORGE W. BUSH, MICHAEL V. ) HAYDEN, KEITH B. ALEXANDER, ) ALBERTO GONZALES, JOHN ) ASHCROFT, UNITED STATES OF ) AMERICA, and JOHN/JANE ) DOES #1-100 (07-693) ) ------------------------------------------------------) | Time:  2:00 pm Courtroom: 6 Hon. Vaughn R. Walker |

# TABLE OF CONTENTS

**PAGE NO(s):**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-xi

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     The Complaint States a Claim for Violation of the Fourth
          Amendment and FISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.     The Complaint Alleges Violations of FISA . . . . . . . . . . . . . . . . . . . . . 5

          B.     The Complaint Alleges Violations of the Fourth Amendment . . . . . . . . 10

                 1.     The Dragnet is Warrantless . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                 2.     The Dragnet is General and Indiscriminate, Not Specific
                       and Particularized . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                 3.     The Dragnet is Not Reasonable Or Based Upon Probable
                       Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    II.    The Executive's Radical Extension of the State Secrets Privilege
          Cannot Bar This Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          A.     FISA Itself Precludes Application of the State Secrets
                 Privilege In This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                 1.     The FISA Cause of Action is Inconsistent With the
                       State Secrets Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                 2.     In Addition to Creating a Cause of Action, Congress
                       Set Forth Specific Procedures to Govern Confidential
                       Information Relating to Electronic Surveillance . . . . . . . . . . . . 20

                 3.     FISA Also Contemplated Discovery From
                       Telecommunications Carriers . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4.      FISA Precludes Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B.      Origins of the State Secrets Privilege and Constitutional
        Principles At Stake . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        1.      Principles of Separation of Powers . . . . . . . . . . . . . . . . . . . . . . 24

        2.      The State Secrets Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

                (i)     The Ninth Circuit and the State Secrets Privilege . . . . . . 33

                (ii)    Other Circuits and the State Secrets Privilege . . . . . . . . 34

C.      The State Secrets Privilege Does Not Apply to a Massive,
        Illegal Program That Reaches Into the Heartland of This
        Country and Violates The Constitutional Rights of Millions
        of Ordinary Americans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

        1.      Because This Case Concerns Civilian, not "Military Matters,"
                the State Secrets Privilege Does Not Apply . . . . . . . . . . . . . . . . . 37

        2.      The Supreme Court Case in *Webster* Requires Balancing
                of the Parties' Interests, not Dismissal . . . . . . . . . . . . . . . . . . . . . 39

        3.      *Reynolds*, Which Was Decided In a Considerably Different
                Factual Context, Does Not Require Dismissal . . . . . . . . . . . . . . 42

        4.      Because the Content Monitoring Program Is Not Secret,
                It Is Not a "State Secret" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

D.      The *Totten/Tenet* Bar Does Not Apply . . . . . . . . . . . . . . . . . . . . . . . . . 46

III.    Defendants' Standing Argument Is a Red Herring . . . . . . . . . . . . . . . . . . . . . . 47

A.      The Sixth Circuit Opinion in *ACLU v. NSA* Does Not Help
        Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

IV.     Defendants' Statutory Arguments Fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

A.      Neither Statute Requires Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

B.      FISA Supplants the Statutory Provisions . . . . . . . . . . . . . . . . . . . . . . . . . 55

C.    On Its Face, Section 102(a)(i)(1) Applies to the DNI, Not to the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

D.    The Statutes Plainly Do Not Preclude Discovery From Third-Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

E.    Defendants' Interpretation of the Statutes Raises Serious Constitutional Concerns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE NO(s)**

*ACLU Found. of Southern Cal. v. Barr,*
    952 F.2d 457 (D.C. Cir. 1991) ....................................... 22, 50-53

*Adams v. City of Battle Creek,*
    250 F.3d 980 (6th Cir. 2001) .............................................. 54

*Al-Haramain Islamic Found. v. Bush,*
    451 F.Supp.2d 1215 (D.Or. 2006) ..................................... *passim*

*Al-Marri v. Wright,*
    2007 WL 1663712 (4th Cir. June 11, 2007) ........................ 27, 38, 43-45

*American Civil Liberties Union v. National Security Agency,*
    2007 WL 1952370 (6th Cir. July 6, 2007) .............................. 9, 48-50

*Bareford v. General Dynamics Corp.,*
    973 F.2d 1138 (5th Cir. 1992) ............................................ 37

*Berger v. New York,*
    388 U.S. 41 (1967) .......................................... 2, 10, 11, 15, 16

*Brinegar v. United States,*
    338 U.S. 160 (1949) ....................................................... 3

*Busic v. United States,*
    446 U.S. 398 (1980) .................................................... 55, 56

*Chimel v. California,*
    395 U.S. 752 (1969) .................................................... 11, 15

*CIA v. Sims,*
    471 U.S. 159 (1985) .................................................... 56, 57

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ....................................................... 52

*Department of Navy v. Egan,*
    484 U.S. 518 (1988) ...................................................... 37

*Dickerson v. United States,*
      530 U.S. 428 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Director, Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.,*
      514 U.S. 122 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Edmonds v. United States Dept. of Justice,*
      323 F.Supp.2d 65 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Ellsberg v. Mitchell,*
      709 F.2d 51 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*El-Masri v. Tenet,*
      479 F.3d 296 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Ex Parte Milligan,*
      71 U.S. 2 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Farnsworth Cannon, Inc. v. Grimes,*
      635 F.2d 268 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*FEC v. Akins,*
      524 U.S. 11 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Fitzgerald v. Penthouse Int'l, Ltd.,*
      776 F.2d 1236 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Fitzgibbon v. CIA,*
      911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
      529 U.S. 120 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Founding Church of Scientology v. NSA,*
      610 F.2d 824 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 57

*Halkin v. Helms,*
      598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-36

*Halkin v. Helms,*
      690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-36

*Halpern v. United States,*
    258 F.2d 36 (2nd Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . 17-19, 23, 31, 34, 36, 41

*Hamdan v. Rumsfeld,*
    126 S.Ct. 2749 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 24

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25

*Hayden v. NSA,*
    608 F.2d 1381 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Hilao v. Estate of Marcos,*
    103 F.3d 767 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*In re Under Seal,*
    945 F.2d 1285 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*In re United States,*
    872 F.2d 472 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Jencks v. United States,*
    353 U.S. 657 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Kasza v. Browner,*
    133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 17, 18, 23, 33, 34, 37, 40, 42

*Katz v. United States,*
    389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Laird v. Tatum,*
    408 U.S. 1 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 33, 43

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 51

*Marbury v. Madison,*
    5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 24, 39, 44

*McDonald v. United States,*
    335 U.S. 451 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Molerio v. FBI,*
    749 F.2d 815 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Multi Denominational Ministry v. Gonzales,*
    474 F.Supp.2d 1133 (N.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53-54

*Northrop Corp. v. McDonnell Douglas Corp.,*
    751 F.2d 395 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Organizacion JD Ltda v. U.S. Dept. Of Justice,*
    18 F.3d 91 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Panetti v. Quarterman,*
    127 S.Ct. 2842 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Payton v. New York,*
    445 U.S. 573 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People for the Am. Way Found. v. NSA,*
    462 F.Supp.2d 21 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*R.J. Reynolds Tobacco Co. v. Shewry,*
    423 F.3d 906 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ramadan v. Gonzales,*
    479 F.3d 646 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Reid v. Covert,*
    354 U.S. 1 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27, 39

*Retlaw Broadcasting Co. v. N.L.R.B.,*
    53 F.3d 1002 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Rochon v. Gonzales,*
    438 F.3d 1211 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Salazar v. Heckler,*
    787 F.2d 527 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Snepp v. United States*,
    444 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Stehney v. Perry*,
    101 F.3d 925 (3rd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Sterling v. Tenet*,
    416 F.3d 338 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Tenet v. Doe*,
    544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18, 23, 26, 29, 33, 37, 42, 47

*Terkel v. AT&T Corp.*,
    441 F.Supp.2d 899 (N.D.Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56-58

*The Presbyterian Church (U.S.A.) v. United States*,
    870 F.2d 518 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Tilden v. Tenet*,
    140 F.Supp.2d 623 (E.D.Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*TMJ, Inc. v. Nippon Trust Bank*,
    2001 WL 925622 (9th Cir. Aug. 15, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Toth v. Quarles*,
    350 U.S. 11 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Totten v. United States*,
    92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 28, 29, 31, 33, 42, 46, 47

*United States v. Belfield*,
    692 F.2d 141 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Burr*,
    25 F.Cas. 30 (C.C.D.Va. 1807) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Karo*,
    468 U.S. 705 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Nixon*,
    418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Reynolds,*
    345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. United States District Court for the Eastern District of Michigan,*
    689 U.S. 297 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 13, 16

*Webster v. Doe,*
    486 U.S. 592 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Wilbur v. Locke,*
    423 F.3d 1101 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 47

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Zuckerbraun v. General Dynamics Corp.,*
    935 F.2d 544 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Zweibon v. Mitchell,*
    516 F.2d 594 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15, 24

## <u>STATUTES</u>

18 U.S.C. § 2510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2511(2)(a)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

18 U.S.C. § 2511(2)(a)(ii) (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 2511(2)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 54

18 U.S.C. § 2522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2707(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

35 U.S.C. § 181 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 2000e-16(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

50 U.S.C. § 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

50 U.S.C. § 403-1(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

50 U.S.C. § 1801 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 53

50 U.S.C. § 1801(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20

50 U.S.C. § 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

50 U.S.C. § 1801(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

50 U.S.C. § 1805(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

50 U.S.C. § 1805(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-22, 56, 57

50 U.S.C. § 1809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 48, 53

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 48

50 U.S.C. § 1811 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub. L. No. 90-351, 83 Stat. 311 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pub. L. No. 107-40, 115 Stat. 224 (Sept. 18, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................... 5

Fed. R. Civ. P. 12(b)(6) ................................................... 5

Fed. R. Civ. P. 56(f) ..................................................... 5

## LEGISLATIVE MATERIALS

H.R. Conf. Rep. No. 95-1720 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4048 ............... 6

S. Rep. No. 95-604(I) (1978), *reprinted in* 1978 U.S.C.C.A.N. 3904 ................. 5-9, 21

S. Rep. No. 95-701 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973 .................. 6, 12, 14

S. Rep. No. 95-755 (1976) ................................................. 5

S. Select Comm. To Study Governmental Operations with Respect to Intelligence Activities
  (Church Committee Books I-VI), available at
http://www.aarclibrary.org/publib/church/reports/contents.htm ......................... 5

## PRELIMINARY STATEMENT

Defendants had a choice. After 9/11, defendants could have proposed a statute to amend FISA.[1] They could have proposed a constitutional amendment to limit or eliminate the Fourth Amendment in the foreign intelligence context. Instead they secretly violated FISA and the Fourth Amendment by instituting a massive, criminal, domestic spying program that monitors millions of telephone and internet communications of ordinary Americans. Now they seek to transform a limited, common law evidentiary privilege into a sweeping immunity for their own unlawful conduct. That they cannot do.

"With all its defects, delays and inconveniences, men have discovered no technique for long preserving free government except that the Executive be under the law."[2] Defendants' radical extension of the state secrets privilege flies in the face of over two centuries of American jurisprudence: law that established the constitutional right and duty of Article III courts to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803); the right to be free from unreasonable searches and seizures, *see* U.S. Const. amend. IV; the right to a judicial forum to assert constitutional rights, *see Webster v. Doe*, 486 U.S. 592 (1988); and constitutional limitations upon Executive power, *see Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).

Defendants would sweep away these vital constitutional principles with the stroke of a declaration, arrogating to themselves the right to immunize *any* criminal or unconstitutional

---

[1] The Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*

[2] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 655 (1952) (Jackson, J., concurring).

conduct in the name of national security. Defendants cannot so easily puncture a hole in the Constitution. The motion should be denied because:

- FISA preempts the state secrets privilege, setting forth a reasoned mechanism balancing national security interests with plaintiffs' FISA rights and the Court's obligation to uphold the law (*see infra* Point II(A));

- The state secrets privilege, by its own terms, does not apply to a massive domestic spying program targeted at millions of ordinary Americans (*see infra* Point II(C)(1));

- The Supreme Court case in *Webster v. Doe*, 486 U.S. 592 (1988), which post-dates *United States v. Reynolds*, 345 U.S. 1 (1953), compels balancing of the parties' interests, not dismissal (*see infra* Point II(C)(2));

- *Reynolds*, which arose in a considerably different factual context, plainly does not compel dismissal (*see infra* Point II(C)(3));

- Defendants' surveillance program is not even a secret, much less a "state secret" (*see infra* Point II(C)(4));

- Defendants' standing argument falls with their state secrets argument (*see infra* Point III); and

- Defendants' half-hearted statutory arguments also fail (*see infra* Point IV).

The Executive has illegally placed the intelligence arm of the United States military "in the bedroom, in the business conference, in the social hour, in the lawyer's office–everywhere and anywhere a 'bug' can be placed."[3] But defendants' motion is even more frightening than the conduct alleged in the Amended Complaint. For defendants offer no limiting principle for their radical argument. In defendants' view, a secret program by the Executive to put a camera in every American's bedroom could not be revealed, if to reveal it might harm national security. A secret program by the Executive to abduct and torture

---

[3]*Berger v. New York*, 388 U.S. 41, 64-65 (1967) (Douglas, J., concurring).

Americans could not be revealed, challenged, much less enjoined, if to reveal it might harm national security.

Article III courts exist to prevent such unchecked power. "Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government."[4] So too the uncontrolled ability of the Executive to insulate itself from Article III scrutiny is a powerful weapon "in the arsenal of . . . arbitrary government."

The motion should be denied.

## FACTS[5]

On June 9, 2005, President Bush assured the public that "Law enforcement officers need a federal judge's permission to wiretap a foreign terrorist's phone, a federal judge's permission to track his calls, or a federal judge's permission to search his property. Officers must meet strict standards to use any of these tools. And these standards are fully consistent with the Constitution of the U.S."[6] Amended Complaint ("Complaint," or "Compl.") ¶ 48. As revealed in *The New York Times* in December 2005, however, and as subsequently admitted, *inter alia*, by President Bush, Attorney General Gonzalez, published press reports, whistleblowers, and insiders within the United States government, in the fall of 2001 the National Security Agency ("NSA")–the intelligence arm of the Department of Defense–launched

---

[4]*Brinegar v. United States*, 338 U.S. 160, 180 (1949) (Jackson, J., dissenting).

[5]The factual allegations of the Amended Complaint are all accepted as true for purposes of this motion. *See Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (standing); *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 911 n.2 (9th Cir. 2005) (12(b)(6)).

[6]*See* http://www.whitehouse.gov/news/releases/2005/06/20050609-2.html (President Discusses Patriot Act, dated June 9, 2005).

a secret electronic surveillance program to intercept, search and seize, without prior judicial authorization, the telephone and internet communications of persons inside the United States. *Id.* ¶ 50. President Bush secretly approved and reauthorized the program more than 30 times. *Id.* ¶¶ 51-52.

The NSA intercepted (and continues to intercept) millions of phone calls and email of ordinary Americans, including plaintiffs, with no connection to Al Qaeda, terrorism, or any foreign government (the "Dragnet" program). The Dragnet program monitors millions of calls and emails made to or from the United States and other countries, and millions of calls and emails entirely within the United States. *Id.* ¶¶ 75-87. The NSA has spied and continues to spy upon these private phone conversations and emails without a warrant. *Id.* ¶¶ 1, 5-8, 83.

Although defendants protest to this Court that the state secrets privilege prevents them from denying the Dragnet program, defendants (as part of this very motion) appear to deny the Dragnet program. *See* Public Declaration of Keith Alexander, May 25, 2007 ¶ 16 ("Plaintiffs' allegations of a content surveillance dragnet are false.").

# ARGUMENT

## I.    The Complaint States a Claim for Violation of the Fourth Amendment and FISA

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-

matter jurisdiction, and in the alternative, for summary judgment.[7]  Defendants failed to

challenge the sufficiency of the Complaint under Rule 12(b)(6), and for good reason.  There is no

question that, taking the allegations in the Complaint as true, defendants violated the law.

### A.    The Complaint Alleges Violations of FISA

In 1972, the Supreme Court held that the Fourth Amendment does not permit

warrantless surveillance in intelligence investigations of domestic security threats.  *See United*

*States v. United States District Court for the Eastern District of Michigan,* 407 U.S. 297 (1972)

("*Keith*").  In 1976, the United States Senate Select Committee to Study Governmental

Operations with Respect to Intelligence Activities, known as the "Church Committee," found

that "warrantless electronic surveillance in the name of national security ha[d] been seriously

abused.[8]  In response to both the *Keith* decision and the Church Committee's findings, Congress

---

[7]Defendants' "summary judgment" motion is perplexing.  Defendants do not set forth any set of undisputed facts.  Nor do defendants even attempt to argue that their spying program is lawful.  Defendants' "summary judgment" motion is not a summary judgment motion at all, but a jurisdictional state secrets argument in ill-fitting procedural clothes.  In any event, the motion, made at the outset of this case, is premature.  *See, e.g., TMJ, Inc. v. Nippon Trust Bank,* 2001 WL 925622, at *1 (9th Cir. Aug. 15, 2001); Declaration of Ilann M. Maazel Pursuant to Fed. R. Civ. P. 56(f) in Opposition to Motion to Dismiss Or, in the Alternative, For Summary Judgment, dated July 19, 2007.

[8]S. Rep. No. 95-604 (I), at 7-8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3904, 3908-09; *see* S. Select Comm. To Study Governmental Operations with Respect to Intelligence Activities, 94th Cong., S. Rep. No. 94-755 (1976) (Church Committee Books I-VI), available at http://www.aarclibrary.org/publib/church/reports/contents.htm; *see also United States v. Belfield,* 692 F.2d 141, 145-46 (D.C. Cir. 1982) (discussing FISA's history).

passed the Foreign Intelligence Surveillance Act of 1978, an "exclusive charter" intended to "regulate the exercise of [presidential] authority" over intelligence surveillance. S. Rep. No. 95-604(I), at 15-16 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3904, 3916-17. FISA was specifically designed to "curb the practice by which the Executive branch may conduct warrantless electronic surveillance on its own unilateral determination that national security justifies it." S. Rep. No. 95-604(I), at 8, *reprinted in* 1978 U.S.C.C.A.N. at 3910. Congress made clear that it intended to prevent the Executive from engaging in electronic surveillance in the United States without judicial oversight, even during times of war. *See* S. Rep. No. 95-701 (1978), at 47, *reprinted in* 1978 U.S.C.C.A.N. 3973, 4016 ("This bill will establish the exclusive United States law governing electronic surveillance in the United States for foreign intelligence purposes.").

Congress provided that the procedures set out in FISA and in Title III[9] "shall be the *exclusive means* by which electronic surveillance . . . and the interception of domestic wire, oral, and electronic communications may be conducted." 18 U.S.C. § 2511(2)(f) (emphasis added). Rejecting the so-called "inherent authority" Article II argument that the current President seeks to resurrect, Congress expressly rejected language that would have made FISA and Title III the "exclusive *statutory* means" under which electronic surveillance could be conducted, instead adopting language that made those statutes simply the "exclusive means" governing such surveillance. H.R. Conf. Rep. No. 95-1720, at 35 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4048, 4064 (emphasis added); *see* S. Rep. 95-604(I), at 6, *reprinted in* 1978 U.S.C.C.A.N. at 3907 ("The bill recognizes no inherent power of the President in this area."); S. Rep. 95-604(I), at 16,

_____

[9]Pub. L. No. 90-351, 83 Stat. 311 (1968) (codified as amended at 18 U.S.C. §§ 2510-2522).

*reprinted in* 1978 U.S.C.C.A.N. at 3917 ("he basis for this legislation is the

understanding–concurred in by the Attorney General–that even if the President has an 'inherent'

Constitutional power to authorize warrantless surveillance for foreign intelligence purposes,

Congress has the power to regulate the exercise of this authority by legislating a reasonable

warrant procedure governing foreign intelligence surveillance.").[10]

  Congress intended that FISA govern even during emergencies and times of war.

In an emergency, FISA permits the Executive to conduct warrantless surveillance for up to 72

hours. *See* 50 U.S.C. § 1805(f). FISA also permits electronic surveillance without a court order

for fifteen calendar days after a formal declaration of war. *See* 50 U.S.C. § 1811.

  There is no dispute that the Dragnet program involves "electronic surveillance" of

Americans. *See* 50 U.S.C. § 1801(f) (defining the term). In order to obtain an order from the

FISA Court authorizing electronic surveillance, the government must demonstrate, *inter alia*,

probable cause to believe that "the target of the electronic surveillance is a foreign power or an

agent of a foreign power" and that "each of the facilities or places at which the electronic

surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a

---

[10]*See* S. Rep. 95-604(I), at 6-7, *reprinted in* 1978 U.S.C.C.A.N. at 3908 (FISA "repeal[s] the so-called executive 'inherent power' disclaimer clause currently found in Section 2511(3) of Title 18, United States Code. [FISA] provides instead that its statutory procedures (and those found in [Title III]) 'shall be the exclusive means' for conducting electronic surveillance, as defined in the legislation, in the United States. The highly controversial disclaimer has often been cited as evidence of a congressional ratification of the President's inherent constitutional power to engage in electronic surveillance in order to obtain foreign intelligence information essential to the national security. Despite the admonition of the Supreme Court that the language of the disclaimer was 'neutral' and did not reflect any such congressional recognition of inherent power, the section has been a major source of controversy. By repealing section 2511(3) and expressly stating that the statutory warrant procedures spelled out in the law *must* be followed in conducting electronic surveillance in the United States, this legislation ends the eight-year debate over the meaning and scope of the inherent power disclaimer clause.").

foreign power." 50 U.S.C. § 1805(a)(3); *see* S. Rep. 95-604(I), at 6, *reprinted in* 1978

U.S.C.C.A.N. at 3908 ("[T]he executive cannot engage in electronic surveillance within the

United States without a prior judicial warrant."); S. Rep. 95-604(I), at 18, *reprinted in* 1978

U.S.C.C.A.N. at 3919 (FISA "authorizes electronic surveillance in a limited number of non-

criminal situations only under the twin safeguards of an independent review by a neutral judge

and his application of a 'probable cause standard.'").

       Any person who "engages in electronic surveillance under color of law except as

authorized by statute" and without "a search warrant or court order" is guilty of a federal crime,

"punishable by a fine of not more than $10,000 or imprisonment for not more than five years, or

both." 50 U.S.C. § 1809. In addition, any "aggrieved person" (defined as any person "whose

communications or activities were subject to electronic surveillance," 50 U.S.C. § 1801(k)),

other than a foreign power or an agent of a foreign power, "shall have a cause of action against

any person" who violated 50 U.S.C. § 1809. *See* 50 U.S.C. § 1810.

       There is no dispute that, taking the allegations in the Complaint as true,

defendants violated FISA. As alleged, defendants "engage[d] in electronic surveillance" of

plaintiffs without "a search warrant or court order." 50 U.S.C. §§ 1809(b), 1810.

       The Court can also take judicial notice of defendants' admissions that their

program involves electronic surveillance and violates FISA. Defendant Attorney General

Gonzales conceded both that "The President has authorized a program to engage in electronic

surveillance" (the so-called "Terrorist Surveillance Program" or "TSP") and that "the Foreign

Intelligence Surveillance Act . . . requires a court order before engaging in *this kind of*

*surveillance* that I've just discussed and the President announced on Saturday [the TSP], . . .

unless otherwise authorized by statute or by Congress."[11]  Defendant Director for National

Intelligence Hayden admitted "unequivocally" that the warrantless program was used "in lieu of"

FISA.[12]  Hayden also stated that the program's "trigger is quicker and a bit softer than it is for a

FISA warrant."[13]

Taking the allegations of the Complaint as true, as this Court must, the Complaint

states a valid claim for violation of FISA.[14]

---

[11] http://www.whitehouse.gov/news/releases/2005/12/20051219-1.html (Press Briefing by Attorney General Gonzalez & General Hayden, Dec. 19. 2005).  Defendants of course knew that FISA prohibits the warrantless eavesdropping even of international communications.  *See* S. Rep. No. 95-604(I), at 6, *reprinted in* 1978 U.S.C.C.A.N. at 3907 ("The definition of electronic surveillance has been expanded to include the targeting of United States persons in their international communications.  This is specifically aimed at eliminating one of the abuses identified by the Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities and largely implements one of that committee's recommendations.").

[12] *Id.  See also* http://www.reporter-times.com/?module=displaystory&story_id=30032&format=html (Interview of Homeland Security Secretary Michael Chertoff, Jan. 25, 2006) ("[S]uffice it to say that if you have a large volume of data, a large number of [phone] numbers you're intercepting, the typical model for any kind of warrant requires you to establish probable cause [that one party is a foreign agent] on an individual number."  But, he continued, FISA warrant applications are "impractical. . . . a voluminous, time-consuming process . . . . [I]f you're culling through literally thousands of phone numbers . . . you could wind up with a huge problem managing the amount of paper you'd have to generate.").

[13] http://www.globalsecurity.org/intell/library/news/2006/intell-060123-dni01.htm (Remarks by General Michael V. Hayden before the National Press Club, Jan. 23, 2006).

[14] In *American Civil Liberties Union v. National Security Agency*, 2007 WL 1952370 (6th Cir. July 6, 2007), defendants sought to justify their violation of FISA by claiming that Congress *sub silentio* authorized warrantless surveillance of the American people in the authorization to use force against Al Qaeda (Pub. L. No. 107-40, 115 Stat. 224 (Sept. 18, 2001)), and that the President has "inherent authority" to violate FISA to protect the country.  For the reasons thoroughly set forth in the dissent in *ACLU*, (the only opinion in that case to address the merits), both arguments are meritless. *ACLU*, 2007 WL 1952370, at *62-67.

**B.      The Complaint Alleges Violations of the Fourth Amendment**

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The security of one's privacy against arbitrary intrusion by the police–which is at the core of the Fourth Amendment–is basic to a free society." *Berger v. New York*, 388 U.S. 41, 53 (1967) (citation omitted).

There is little question that, as alleged, the Dragnet violates the Fourth Amendment. A dragnet sweeping hundreds of millions of private phone calls and emails of millions of innocent Americans, without a warrant, probable cause, or even reasonable suspicion, is the very opposite of what the Fourth Amendment requires.

**1.      The Dragnet is Warrantless**

*First*, the Dragnet program violates the Fourth Amendment because it is warrantless. It has been settled for forty years that the Fourth Amendment requires the government to obtain a warrant before intercepting the content of a telephone call. *See Katz v. United States*, 389 U.S. 347, 352 (1967); *Berger*, 388 U.S. at 51. Wiretapping "[b]y its very nature . . . involves an intrusion on privacy that is broad in scope," *Berger*, 388 U.S. at 56, and thus bears a dangerous "similarity to the general warrants out of which our Revolution sprang," *id.* at 64 (Douglas, J., concurring). Warrants are *particularly* vital in the wiretapping context. For "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping

devices." *Berger*, 388 U.S. at 63. A wiretap "constitutes a dragnet, sweeping in all conversations within its scope–without regard to the participants or the nature of the conversations. It intrudes upon the privacy of those not even suspected of crime and intercepts the most intimate of conversations." *Id.* at 65 (Douglas, J., concurring).

Any search conducted without a warrant is presumptively unreasonable. "Over and again this Court has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357 (citation and footnotes omitted); *see also United States v. Karo*, 468 U.S. 705, 717 (1984); *Payton v. New York*, 445 U.S. 573, 586 (1980); *Chimel v. California*, 395 U.S. 752, 762-63 (1969). The warrant requirement is no mere "formalit[y]. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police." *McDonald v. United States*, 335 U.S. 451, 455 (1948). "The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals." *Id.* at 455-56.

The Supreme Court has never recognized an exception to the warrant requirement for intelligence surveillance inside the United States. To the contrary, in the *Keith* case, the Supreme Court rejected such an exception, holding that the Fourth Amendment's promise of privacy "cannot properly be guaranteed if security surveillance may be conducted solely within the discretion of the Executive Branch." 407 U.S. at 316-17. In the intelligence context, as elsewhere, "[t]he warrant clause of the Fourth Amendment is not dead language. Rather, it has

been a valued part of our constitutional law for decades . . . . It is not an inconvenience to be

somehow 'weighed'" against the government's interests. *Id.* at 315 (citation omitted). In the

intelligence context, as elsewhere, "unreviewed executive discretion may yield to pressures to

obtain incriminating evidence and overlook potential invasions of privacy and protected speech."

*Id.* at 317. In the intelligence context, as elsewhere, "[p]rior review by a neutral and detached

magistrate is the time-tested means of effectuating Fourth Amendment rights." *Id.* at 318.[15]

   In *Keith*, the Supreme Court rejected every argument the President makes today

for a warrantless eavesdropping intelligence program. "It is urged that the requirement of prior

judicial review would obstruct the President in the discharge of his constitutional duty to protect

domestic security." The Court rejected the argument. *Id.* at 318. "We are told further that these

surveillances are directed primarily to the collecting and maintaining of intelligence with respect

to subversive forces, and are not an attempt to gather evidence for specific criminal

prosecutions." The Court rejected this "prevention, not prosecution" argument. *Id.* at 318-19.

"The Government further insists that courts . . . have neither the knowledge nor the techniques

necessary to determine" whether the "surveillance was necessary to protect national security,"

issues that "involve a large number of complex and subtle factors beyond the competence of

courts to evaluate." The Court rejected this argument too, even before almost three decades of

experience with FISA demonstrated its invalidity. *Id.* at 319. As its trump card, the same card

the Executive would use today, "the Government believes that disclosure to a magistrate of all or

---

[15]Congress agrees with the Supreme Court. FISA "embodies a legislative judgment that
court orders and other procedural safeguards are necessary to insure that electronic surveillance
by the U.S. Government within this country conforms to the fundamental principles of the Fourth
Amendment." S. Rep. No. 95-701, at 13, *reprinted in* 1978 U.S.C.C.A.N. at 3982.

even a significant portion of the information involved" in the surveillance would endanger "the national security and . . . the lives of informants and agents . . . . Secrecy is the essential ingredient in intelligence gathering." The Supreme Court rejected that argument too. *Id.*

Instead, the Court held that "Official surveillance, whether its purpose be criminal investigation or ongoing intelligence gathering, risks infringement of constitutionally protected privacy of speech. Security surveillances are especially sensitive because of the inherent vagueness of the domestic security concept, the necessarily broad and continuing nature of intelligence gathering, and the temptation to utilize such surveillance to oversee political dissent." *Id.* at 320. Although the warrant procedure imposes an "added burden" upon the Executive, "this inconvenience is justified in a free society to protect constitutional values." *Id.* at 321. "[B]y no means of least importance," the warrant will "reassur[e] . . . the public generally that *indiscriminate wiretapping and bugging of law-abiding citizens cannot occur*," *id.* (emphasis added), which is precisely what the Complaint alleges happened when this President decided to bypass the warrant requirement.

*Keith* concerned surveillance relating to domestic security threats rather than foreign security threats but the *Keith* Court's reasoning applies with equal force here. *See Zweibon v. Mitchell*, 516 F.2d 594, 614 (D.C. Cir. 1975) (plurality opinion) (requiring a warrant even where surveillance "is installed under presidential directive in the name of foreign intelligence gathering for protection of the national security"); *id.* at 651 ("absent exigent circumstances, no wiretapping in the area of foreign affairs should be exempt from prior judicial scrutiny, irrespective of the justification of the surveillance or the importance of the information sought"); *id.* at 689 (Wilkey, J., concurring) (warrantless surveillance violates Fourth

Amendment notwithstanding President's "foreign affairs" power).[16] A neutral intermediary between Americans and executive officers is no less necessary because the threat comes from foreign agents rather than domestic ones. In the absence of judicial oversight, no one can even be sure that surveillance targets *are* foreign agents. In this case, for example, the Complaint alleges that defendants are surveilling millions of Americans who plainly have nothing to do with foreign agents or governments. As a result, the so-called "foreign intelligence surveillance" at issue presents exactly the same dangers as the "domestic intelligence surveillance" in *Keith*.

Nor are any of the rationales the government presented in *Keith* for warrantless domestic intelligence surveillance any more convincing in the foreign intelligence context. *See Zweibon*, 516 F.2d at 641-651 (summarizing and methodically rejecting every government rationale for warrantless foreign intelligence surveillance in the United States). The judiciary is, if anything, more qualified to deal with national security issues than when *Keith* was decided, because it now has almost thirty years of experience with FISA. FISA also forecloses any argument that the warrant requirement can be dispensed with simply because the Executive claims its actions are directed at foreign agents. As the Senate Intelligence Committee explained, FISA "embodies a legislative judgment that court orders and other procedural safeguards are necessary to insure that electronic surveillance by the U.S. government within this country conforms to the fundamental principles of the Fourth Amendment." S. Rep. No. 95-701, at 13, *reprinted in* 1978 U.S.C.C.A.N. at 3982.

---

[16]Thus, a majority of the D.C. Circuit agreed that warrants are required for foreign electronic intelligence surveillance, at least vis-a-vis domestic organizations that are not agents for or acting in collaboration with a foreign power. *Id.* at 614, 689.

"[G]iven the way in which almost any activity can be said to relate, at least remotely, to foreign affairs or foreign policy making, the potential scope of [a foreign intelligence] exception to the warrant requirement is boundless, and thus a substantial danger to the values the Fourth Amendment was fashioned to protect." *Zweibon*, 516 F.2d at 654. This case, involving a massive sweep of domestic communications of innocent Americans in the name of fighting a foreign enemy, could not make that point more clearly. Because the Dragnet is warrantless, it violates the Fourth Amendment.

## 2. The Dragnet is General and Indiscriminate, Not Specific and Particularized

*Second*, the Dragnet program–which spies upon millions of Americans–violates the Fourth Amendment's proscription against general searches. The use of "general warrants" was "a motivating factor behind the Declaration of Independence . . . . The Fourth Amendment's requirement that a warrant 'particularly describ(e) the place to be searched, and the persons or things to be seized,' repudiated these general warrants and makes general searches impossible." *Berger*, 388 U.S. at 58 (citing the Fourth Amendment); *see also Chimel*, 395 U.S. at 761 ("The [Fourth] Amendment was in large part a reaction to the general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence."). The Dragnet is even worse than a general warrant, because it is a general search without a warrant. The Dragnet does not target any "particular[] . . . place to be searched" or "persons or things to be seized." U.S. Const. amend. IV. Rather, it indiscriminately targets every call and every email of every person. No such general search has ever been permitted in any Fourth Amendment case. *See, e.g., Berger*, 388 U.S. at 57 ("The need for particularity and evidence of reliability in the

showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping."); *id.* at 58 (The "indiscriminate use of electronic devices" is to be "condemned") (citation omitted); *id.* ("[G]eneral searches by electronic devices" are of "truly offensive character" and violate the Fourth Amendment); *id.* at 59 (Even a "statute's failure to describe with particularity the conversations sought gives the officer a roving commission to 'seize' any and all conversations. As with general warrants this leaves too much to the discretion of the officer executing the order.").

### 3. The Dragnet is Not Reasonable Or Based Upon Probable Cause

*Third*, the Dragnet violates the Fourth Amendment because the indiscriminate eavesdropping of millions of Americans is "unreasonable" and not based on "probable cause." *Id.* The Dragnet sweeps millions of Americans, even though there is no probable cause to believe either that they committed a crime, *Berger*, 388 U.S. at 59, or that they are an "agent of a foreign power." 50 U.S.C. § 1805(a)(3). The Supreme Court held forty years ago that wiretapping without probable case violates the Fourth Amendment. *See Berger*, 388 U.S. at 64 (Douglas, J., concurring) (*Berger* "allows a discreet surveillance *only* on a showing of 'probable cause.'") (emphasis added); *id.* at 59 (majority opinion) ("The purpose of the probable cause requirement of the Fourth Amendment" is "to keep the state out of constitutionally protected areas until it has reason to believe that a specific crime has been or is being committed.").

"[I]t is not asking too much that [defendants] be required to comply with the basic command of the Fourth Amendment before the innermost secrets of one's home or office are invaded." *Berger*, 388 U.S. at 63. Defendants do not challenge the sufficiency of plaintiffs'

Fourth Amendment claim because they cannot. As alleged, defendants violated the Fourth Amendment.

## II. The Executive's Radical Extension of the State Secrets Privilege Cannot Bar This Suit

Rather than attempt to defend the indefensible, defendants seek to avoid the merits by transforming a narrow, evidentiary privilege into a sweeping immunity for violations of criminal law and the Constitution. The effort should be rejected.

### A. FISA Itself Precludes Application of the State Secrets Privilege In This Case

The state secrets privilege is no more than "an evidentiary privilege rooted in federal common law." *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998); *In re United States*, 872 F.2d 472, 474 (D.C. Cir. 1989) ("The state secrets privilege is a common law evidentiary rule."). Where a statute "speaks directly to [a] question otherwise answered by federal common law," the statute preempts common law. *Kasza*, 133 F.3d at 1167 (citations omitted); *see Dickerson v. United States*, 530 U.S. 428, 437 (2000) ("Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution.") (citation omitted).

As multiple courts have recognized, Congress may preempt the state secrets privilege, as well as the more narrow espionage agreement privilege (*see infra* § II(D)). *See Halpern v. United States*, 258 F.2d 36, 43 (2nd Cir. 1958) ("Unless Congress has created rights which are completely illusory, existing only at the mercy of government officials, the act must be viewed as waiving the [state secrets] privilege."); *Kasza*, 133 F.3d at 1167; *Tenet v. Doe*, 544

U.S. 1, 11 (2005) (where "the national interest would be well served . . . Congress can modify the federal common-law rule announced in *Totten*") (Stevens, J., concurring).[17]

Here, there is little question that Congress has, through FISA, directly addressed the procedures for handling confidential information. FISA, not the state secrets privilege, controls in this case, and FISA plainly does not authorize dismissal on state secrets grounds.

> ### 1. The FISA Cause of Action is Inconsistent With the State Secrets Privilege

FISA Section 1810, by providing a private cause of action for FISA violations despite the otherwise secret nature of FISA proceedings, plainly displaces any common law rule of outright dismissal. If Section 1810 did not preclude outright dismissal, then Congress'

---

[17]To the extent the state secrets privilege is related to the President's Article II powers, as a couple of lower court cases have suggested, the Executive nevertheless may not ignore a Congressional statute. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 715 (1974) (the President is not "above the law"); *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion) ("Whatever power the United States Constitution envisions for the Executive in its exchanges with other nations or with enemy organizations in times of conflict, it most assuredly envisions a role for all three branches when individual liberties are at stake."); *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2774 n.23 (2006) ("Whether or not the President has independent power, absent Congressional authorization . . . he may not disregard limitations the Congress has, in proper exercise of its own war powers, placed on his powers."); *id.* at 2799 (Kennedy, J., concurring) ("Congress, in the proper exercise of its powers as an independent branch of government . . . set limits on the President's authority."). "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb." *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring). Here Congress has plainly spoken as to how confidential information should be treated in a FISA case, exercising its authority to override the privilege. *See, e.g.*, *Halpern*, 258 F.2d at 43; *Kasza*, 133 F.3d at 1167; *Tenet*, 544 U.S. at 11. Like the statutes at issue in *Youngstown* and *Hamdan*, FISA was the result of "a deliberative and reflective process engaging both of the political branches." *Hamdan*, 126 S.Ct. at 2799; *see also Youngstown*, 343 U.S. at 660 (Burton, J., concurring) ("The controlling fact here is that Congress, within its constitutionally delegated power, has prescribed for the President specific procedures . . . for his use in meeting the present type of emergency."). The President, therefore, cannot disregard the limitations that Congress, through FISA, has properly placed on executive power.

creation of a private FISA action would be meaningless, for the President would be able to evade any FISA claim merely by invoking the state secrets privilege.

The situation is analogous to *Halpern v. U.S.*, 258 F.2d 36 (2nd Cir. 1958), a lawsuit arising under the Invention Secrecy Act, 35 U.S.C. § 181 *et seq.*, which allowed the patent office to withhold a patent grant for inventions implicating national security, but also allowed inventors to sue for compensation if a patent was denied. When the plaintiff was denied a patent and sued for compensation, the government invoked the state secrets privilege. The Second Circuit rejected the assertion of the privilege because "the trial of cases involving patent applications placed under a secrecy order will always involve matters within the scope of this privilege," and "[u]nless Congress has created rights which are completely illusory, existing only at the mercy of government officials, the Act must be viewed as waiving the privilege." *Id.* at 43. *Halpern* specifically distinguished *United States v. Reynolds*, 345 U.S. 1 (1953), which did not "involv[e] a specific enabling statute contemplating the trial of actions that by their very nature concern security information." *Id.* at 44.

Similarly, a private FISA action (which by definition concerns "Foreign Intelligence Surveillance") involves matters that "by their very nature concern security information." *Id.* Unless Section 1810 creates "rights which are completely illusory, existing only at the mercy of government officials," *id.*, FISA must be viewed as supplanting the state secrets privilege, vesting courts with the power to ensure national security with "appropriate security procedures and protective orders." 50 U.S.C. § 1806(f).

-19-

### 2. In Addition to Creating a Cause of Action, Congress Set Forth Specific Procedures to Govern Confidential Information Relating to Electronic Surveillance

Congress did not merely create a private cause of action under FISA, it set forth a detailed procedure for courts to follow whenever the Government invokes the state secrets privilege in cases involving electronic surveillance. *See* 50 U.S.C. § 1806(f).

The five-step protocol outlined in Section 1806(f) is as follows:

1. The court must await a "motion or request . . . by an aggrieved person . . . to discover or obtain . . . materials relating to electronic surveillance." 50 U.S.C. § 1806(f).

2. Following such request, "the Attorney General [may] file[] an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States." *Id.*

3. Upon receipt of that affidavit, the "court . . . shall . . . review in camera and *ex parte*" any "materials relating to the surveillance as may be necessary [to allow the court] to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." *Id.*

4. Based upon that submission, the court decides whether to "disclose to the aggrieved person" any "materials relating to the surveillance," a step that is permissible "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.*

5. Where disclosure to the plaintiff is necessary, the court discloses the materials subject to "appropriate security procedures and protective orders." *Id.*

This procedure applies, without qualification and "notwithstanding any other law," to discovery of any materials relating to "electronic surveillance," which includes any "acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire communication . . . without the consent of any party thereto." *Id.*; 50 U.S.C. § 1801(f)(2); *see*

*also* S. Rep. No. 95-604(I), at 57, *reprinted in* 1978 U.S.C.C.A.N. at 3958 (procedures "apply whatever the underlying rule or statute referred to in [a party's] motion.").

The detailed procedures set forth in Section 1806(f) apply whether or not the Executive has acknowledged the challenged surveillance. *See Al-Haramain Islamic Found. v. Bush*, 451 F.Supp.2d 1215, 1231 (D.Or. 2006) ("To accept the government's argument that Section 1806(f) is only applicable when the government intends to use information against a party would nullify FISA's private remedy and would be contrary to the plain language of Section 1806(f)."). The procedure set forth in Section 1806(f) is not merely applicable, but the exclusive means by which the Executive can assert the state secrets privilege over information related to electronic surveillance. When the legality of the surveillance is at issue, "it is this procedure 'notwithstanding any other law' that must be used to resolve the question." S. Rep. No. 95-604(I), at 57, *reprinted in* 1978 U.S.C.C.A.N. at 3958.

### 3. FISA Also Contemplated Discovery From Telecommunications Carriers

The civil cause of action against private parties for violations of FISA, *see* 18 U.S.C. §§ 2520, 2511(2)(a)(ii), further confirms that Congress intended to preempt the state secrets privilege in electronic surveillance cases. FISA amended 18 U.S.C. § 2511(2)(a)(ii) (1970) to specify that a "communications common carrier" must receive either a court order or a certification that the prospective electronic surveillance is legal before it may help the government monitor customer communications. FISA § 201(a). As a result, if a telephone company assists the government in conducting surveillance without a Section 2511 court order or certification, it is liable for damages under 18 U.S.C. § 2520.

Congress was clearly aware that sensitive information would be at issue in litigation over the legality of cooperation between carriers and the government under Section 2511(2)(a)(ii).  To address the possibility, Congress forbade carriers from disclosing information relating to these surveillance efforts *except as "required by legal process."*  FISA § 201(a) (amending 18 U.S.C. § 2511(2)(a)(ii)) (emphasis added).  In the event legal process does require the carrier to disclose confidential information, the carrier must first give notice to the Attorney General or another authority.  *Id.*

Read in conjunction with 50 U.S.C. § 1806(f), the notice provision in Section 2511(2)(a)(ii) is further evidence that Congress fully considered and addressed the need for both secrecy and discovery, even in litigation involving surveillance efforts aided by common carriers.

### 4.    FISA Precludes Dismissal

FISA nowhere permits dismissal of an action simply because it may involve confidential information.  To the contrary, FISA sets forth an explicit procedure for handling confidential information as the case goes forward.  *See* 50 § 1806(f).  The five-step protocol established by Congress provides plaintiffs an opportunity to pursue their claim while guarding against unnecessary disclosures of secret information.  The Court must decide "whether the surveillance of the aggrieved person was lawfully authorized and conducted" and, if necessary, disclose the evidence to the aggrieved party under appropriate circumstances.  *Id.*; *ACLU Found. of Southern Cal. v. Barr*, 952 F.2d 457, 465, 470 (D.C. Cir. 1991) (Section 1806(f) procedures "[a]re not to be bypassed by the inventive litigant using a new statute, rule or judicial

construction.") (citation omitted). But FISA contains no reference to dismissal, on the pleadings or otherwise. Section 1806(f) is an unambiguous rejection of such premature termination of litigation in the electronic surveillance context.

*Halpern* governs this case, not *Reynolds*. Where, as here, Congress has enacted legislation that evinces its "intent to replace the government's evidentiary privilege to withhold sensitive information" with a different protocol, the common law privilege is preempted. *Kasza*, 133 F.3d at 1168; *Halpern*, 258 F.2d at 43; *Tenet*, 544 U.S. at 11. Congress may not only draw the line between personal liberty and national security, as it has in enacting FISA and the other statutes at issue, it may lay down a specific procedure for courts to employ to determine whether that line has been crossed. That is what FISA has done here. Defendants' motion should be denied.

### B.   Origins of the State Secrets Privilege and Constitutional Principles At Stake

Defendants' argument is breathtaking. If the Executive successfully uses the state secrets privilege to dismiss this case at the pleading stage, there will be virtually no check left upon the ability of an overly-aggressive executive to violate the rights of ordinary Americans. With a single declaration, the Executive can wipe out statutory mandates, immunize himself from Article III scrutiny, and arrogate to himself the power to engage in unconstitutional and even criminal conduct, for however long, affecting millions. This startling departure from over two hundred years of American jurisprudence must be rejected.