WILMER CUTLER PICKERING HALE
AND DORR LLP
John A. Rogovin        (pro hac vice)
Randolph D. Moss       (pro hac vice)
Samir C. Jain          # 181572
Brian M. Boynton       # 222193
Catherine M.A. Carroll       (pro hac vice)
1875 Pennsylvania Ave, NW
Washington, DC  20006
Tel.:  202-663-6000
Fax:   202-663-6363
Email:  john.rogovin@wilmerhale.com

Randal S. Milch        (pro hac vice)
Verizon Communications Inc.
One Verizon Way
VC43E043
Basking Ridge, NJ  07920
Tel.: 908-559-1752
Fax: 908-696-2136

Attorneys for Verizon Communications Inc.,
Verizon Global Networks Inc., and MCI, LLC

MUNGER, TOLLES & OLSON LLP
Henry Weissmann     # 132418
Susan R. Szabo       # 155315
Aimee A. Feinberg    # 223309
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560
Tel.: 213-683-9100
Fax: 213-683-5150
Email:  Henry.Weissmann@mto.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: <br><br> NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION <br><br> This Document Relates To: <br><br> No. 06-220 (D.R.I.) <br> No. 1:06-cv-632 (E.D. Cal.) <br> No. cv-06-77 (D. Mont.) <br> No. 06-2491 (D. La.) <br> No. cv-06-694 (D. Ore.) <br> No. 1:06-cv-2680 (N.D. Ill.) <br> No. 06-224 (D.R.I.) <br> No. 3:06-cv-3574 (N.D. Cal.) <br> No. 3:06-cv-4221 (N.D. Cal.) | MDL NO. 06-1791 VRW <br><br> **REPLY MEMORANDUM IN SUPPORT OF VERIZON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> [Fed. R. Civ. P. 12(b)(2)] <br><br> Hearing Date:  August 30, 2007 <br> Time:           2:00 p.m. <br> Courtroom:    6 (17th floor) <br> Judge:          Hon. Vaughn R. Walker |

Reply Mem. in Support of Verizon's Mot. To Dismiss For Lack of Personal Jur.          MDL No. 06:1791-VRW

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

INTRODUCTION ............................................................................................................................. 1

I.      THE COURT LACKS GENERAL JURISDICTION OVER VCI AND MCI, LLC ............... 2

      A.     VCI Lacks the Substantial or Continuous and Systematic Contacts with the Forum States Necessary To Sustain General Jurisdiction ............................................. 3

      B.     MCI, LLC Lacks Substantial, Continuous Contacts with the Forum States ............... 10

II.     THE COURT LACKS SPECIFIC JURISDICTION OVER VCI AND MCI, LLC .............. 11

      A.     Plaintiffs' Claims Do Not Arise From Any Forum-Related Activity by VCI ............. 11

      B.     MCI, LLC Did Not "Expressly Aim" at California Residents ................................... 14

III.    PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY ................... 15

CONCLUSION ................................................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996)........................4

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ..............................................................2, 7, 12, 13

*Best Van Lines, Inc. v. Walker*, No. 04-3924-cv,
    2007 WL 1815511 (2d Cir. June 26, 2007) ...............................................13

*Blackwell v. Marina Associates*, No. Civ. A. 05-5418, 2006 U.S. Dist. LEXIS 9423,
    2006 WL 573793 (E.D. Pa. Mar. 6, 2006)...............................................8

*Calder v. Jones*, 465 U.S. 783 (1984)....................................................12, 13, 14

*Calvert v. Huckins*, 875 F. Supp. 674 (E.D. Cal. 1995)........................................4

*Covad Communications Co v. Pacific Bell*, No. C 98-22789,
    1999 U.S. Dist. LEXIS 22789, 1999 WL 33757058 (N.D. Cal. Dec. 14, 1999)...........5

*Debt Relief Network, Inc. v. Fewster*, 367 F. Supp. 2d 827 (D. Md. 2005) .......................8

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)............................................4

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ....................................12

*Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299 (9th Cir. 1986) .........................2

*Gammino v. SBC Communications, Inc.*, No. 03-CV-6686,
    2005 U.S. Dist LEXIS 5077, 2005 WL 724130 (E.D. Pa. Mar. 29, 2005) ................10

*Graziose v. American Home Products Corp.*, 161 F .Supp. 2d 1149 (D. Nev. 2001).........6

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) ........................7

*Home-Stake Production v. Talon Petroleum, C.A.*,
    907 F.2d 1012 (10th Cir. 1990) .....................................................8

*IMO Industrial, Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ........................................................13

*Investment Co. Institute v. United States*,
    550 F. Supp. 1213 (D.D.C. 1982) ....................................................6

*Jemez Agency, Inc. v. Cigna Corp.*,
    866 F. Supp. 1340 (D.N.M. 1994)....................................................4

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991) .........................................................6

*Lamb v. Turbine Designs, Inc.*,

    40 F.3d 1316 (11th Cir. 2001) .................................................................................6

*Management Insights, Inc. v. CIC Enterprises, Inc.*,
    194 F. Supp. 2d 520 (N.D. Tex. 2001) ................................................................6

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ............................................15

*Rank v. Hamm*, No. 2:04-0997, 2007 U.S. Dist. LEXIS 20161,
    2007 WL 894565 (S.D.W.Va. Mar. 21, 2007) ..................................................13

*Revell v. Lidor*, 317 F.3d 467 (5th Cir. 2002).................................................................13

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................7, 12, 13, 14

*Seiko Epson Corp. v. Print-Rite Holdings, Ltd.*,
    No. cv 01-500 BR, 2002 WL 32513403 (D. Or. Apr. 20, 2002)........................8

*Shepherd Investments International Ltd. v. Verizon Communications Inc.*,
    373 F. Supp. 2d 853 (E.D. Wis. 2005) ............................................................ 7-8

*Stutzman v. Rainbow Yacht Adventures, Ltd.*, Civ. A. No. 3:06-cv-0300K,
    2007 U.S. Dist. LEXIS 8697, 2007 WL 415355 (N.D. Tex. Feb. 7, 2007) .................8

*Sullivan v. Tagliabue*, 785 F. Supp. 1076 (D.R.I. 1992) .................................................6, 7

*Terracom v. Valley National Bank*, 49 F.3d 555 (9th Cir. 1995) ...................................15

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir.),
    *cert. denied*, 127 S. Ct. 723 (2006) ..................................................................7

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002).....................................13

### STATE CASES

*DVI, Inc. v. Superior Court*,
    104 Cal. App. 4th 1080 (Cal. Ct. App. 2002) ...................................................8

*F. Hoffman-La Roche, Inc. v. Superior Court*,
    130 Cal. App. 4th 782 (Cal. Ct. App. 2005)...................................................8, 9

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (Cal. Ct. App. 2000).......................................................9

### FEDERAL REGULATIONS

17 C.F.R. § 210.3A-02.......................................................................................................3

    § 210.3-01 ............................................................................................3

    § 210.3-02 ............................................................................................3

    § 229.101 ............................................................................................3

§ 229.102  .................................................................................................4

**STATE STATUTES**

Cal. Const. art. XII, § 3.................................................................................9

Cal. Public Utilities Code §§ 216, 1001 ......................................................9

# INTRODUCTION

Plaintiffs have not met their burden of making even a prima facie showing of general or specific jurisdiction over Verizon Communications Inc. ("VCI") or MCI, LLC in the forum states. As to *general* jurisdiction, Plaintiffs' opposition does not rebut our showing that VCI and MCI, LLC are holding companies that provide no telecommunications services to the public in any state, do not own or lease any property in the relevant states, have no employees in these states, and have never been registered to do business in these states. Plaintiffs have not demonstrated that VCI or MCI, LLC have *any* contacts with the forum states aside from lobbying conducted in California, which is insufficient to sustain general jurisdiction over the companies. The VCI press releases and securities filings to which Plaintiffs point do not indicate that VCI itself, as opposed to its subsidiaries, provides telecommunications services to any customers in the forum states. As to MCI, LLC, Plaintiffs rely entirely on office space that is leased by a subsidiary of MCI, LLC. None of these contacts provides any basis for asserting general jurisdiction over VCI and MCI, LLC.

Recognizing the dearth of direct contacts with the forum states, Plaintiffs invoke the "representative services" doctrine, under which the contacts of subsidiaries can be attributed to parent companies if the subsidiary provides services in the forum that the parent would otherwise have to provide in furtherance of its own business. But as the very cases upon which Plaintiffs rely make clear, the representative services doctrine is inapplicable to holding companies such as VCI and MCI, LLC that do not perform any business themselves.

Finally, Plaintiffs' attempt to establish *specific* jurisdiction also fails. In the face of indisputable evidence that VCI and MCI, LLC do not have any telecommunications customers whose records or calls could even be disclosed, Plaintiffs are forced to shift positions and argue for the first time that VCI actually ordered or facilitated disclosure by its subsidiaries (or disclosed calls and records of its subsidiaries). But this contention is belied by the allegations of Plaintiffs' complaint, which nowhere assert that VCI's liability flows from its role in the alleged disclosure of calls and records of or by its subsidiaries. In any event, even if Plaintiffs' allegations that VCI and MCI, LLC had a role in their subsidiaries' alleged disclosure of telephone calls and records were accepted for purposes of this motion, those allegations would provide no basis for exercising

1

specific jurisdiction. Plaintiffs' own allegations make clear that VCI and MCI, LLC did not "expressly aim" their (alleged) conduct at California, Illinois, Montana, Oregon, and Rhode Island, as would be required for Plaintiffs to succeed under this new theory. Thus, this Court should dismiss the relevant cases against VCI and MCI, LLC for lack of personal jurisdiction.

Verizon Global Networks Inc. ("GNI") is withdrawing its motion to dismiss *Herron v. Verizon Global Networks, Inc.* for lack of personal jurisdiction and, instead, hereby joins Verizon's pending motion to dismiss the Master Complaint on the merits. As explained in the Supplemental Declaration of Joseph P. Dunbar, Verizon has determined that Plaintiffs' contention that GNI is qualified to do business and has an agent for service of process in Louisiana is correct and that certain statements in the original Dunbar declaration regarding GNI were incorrect. *See* Supplemental Decl. of Joseph P. Dunbar ¶¶ 13-14 (August 3, 2007) ("Supp. Dunbar Decl."). We regret the error.

## I.     THE COURT LACKS GENERAL JURISDICTION OVER VCI AND MCI, LLC

Plaintiffs cannot meet their burden of establishing general jurisdiction. Plaintiffs do not dispute that in order to establish general jurisdiction it is their burden to demonstrate that VCI and MCI, LLC have the kind of "substantial" or "continuous and systematic" contacts with the forum states "that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see also Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301-302 (9th Cir. 1986). Plaintiffs also do not dispute that the "[f]actors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters*, 223 F.3d at 1086.

Plaintiffs do not contest critical facts that militate against general jurisdiction over VCI and MCI: VCI and MCI, LLC (1) are incorporated in Delaware with their headquarters in New York and New Jersey, respectively, *see* Decl. of Joseph P. Dunbar ¶¶ 2, 6 (April 30, 2007) ("Dunbar Decl."); (2) hold only the stock of their subsidiaries, certain trademarks, cash, promissory notes, and other equity investments, *see id.* ¶¶ 3, 7; and (3) are not registered or otherwise qualified to do business in the relevant states, and have not appointed agents for service of process in the relevant

2

states, *see id.* ¶¶ 4, 8.  Plaintiffs also do not contend that VCI has offices, owns or leases property, or has employees in the relevant states.  *See id.* ¶ 4.  Finally, Plaintiffs do not attempt to establish that MCI, LLC conducts business, provides services of any kind to the public, advertises, or solicits business in California.  *See id.* ¶¶ 7-8.

### A. VCI Lacks the Substantial or Continuous and Systematic Contacts with the Forum States Necessary To Sustain General Jurisdiction

#### 1. VCI Does Not Provide Services or Advertise in the Forum States

Contrary to Plaintiffs' contention (at 6-10), the VCI annual report, Verizon's website, and the press releases Plaintiffs cite indicate only that VCI's subsidiaries provide telecommunications services and advertise in the forum states.  They do not call into question the sworn statement of Joseph Dunbar that "VCI does not advertise, solicit business, or provide any services in California, Illinois, Montana, Oregon, or Rhode Island."  Dunbar Decl. ¶¶ 3-4.

*First*, because VCI's year 2006 annual Form 10-K filing describes the *"consolidated"* activities and financial performance of VCI *and its subsidiaries*, not just VCI, the report provides no basis for asserting general jurisdiction over VCI.  Securities and Exchange Commission regulations provide that companies required to register under the securities laws generally must file consolidated financial statements that include the financial information of their majority-owned subsidiaries: "[t]here is a presumption that consolidated statements are . . . usually necessary for a fair presentation when one entity directly or indirectly has a controlling financial interest in another entity."  17 C.F.R. § 210.3A-02; *see also id.* § 210.3A-02(a) ("Generally, registrants shall consolidate entities that are majority owned."); *id.* § 210.3-01(a) (a company must file "consolidated, audited balance sheets"); *id.* § 210.3-02(a) ("There shall be filed, for the registrant *and its subsidiaries consolidated* and for its predecessors, audited statements of income and cash flows . . . ." (emphasis added)).  The regulations governing the filing of annual reports on Form 10-K also generally require reporting of the consolidated activities of a parent and its subsidiaries.  For example, a company is required to "[d]escribe the general development of the business of the registrant, *its subsidiaries* and any predecessor(s)."  *Id.* § 229.101(a) (emphasis added).  Similarly, a company must "[s]tate briefly the location and general character of the principal plants, mines and

other materially important physical properties of the registrant *and its subsidiaries.*" *Id.*

§ 229.102(a) (emphasis added).

Recognizing that companies are required to file consolidated annual reports and financial statements, courts have consistently held that such filings are not a basis to attribute contacts of the company's subsidiaries to the company. *See, e.g., Doe v. Unocal Corp.*, 248 F.3d 915, 929 (9th Cir. 2001) ("consolidating the activities of a subsidiary into the parent's reports is a common business practice" and not a basis for attributing contacts of a subsidiary to the parent (internal quotation marks omitted)); *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (same); *Calvert v. Huckins*, 875 F. Supp. 674, 678-679 (E.D. Cal. 1995) (same); *Jemez Agency, Inc. v. Cigna Corp.*, 866 F. Supp. 1340, 1345 (D.N.M. 1994) (same).

In light of the applicable SEC regulations, it is unsurprising that VCI's 2006 Form 10-K filing (Plaintiffs' Exhibit 2 (to the Parrett Declaration)) includes descriptions of the business conducted by its subsidiaries and financial information for its subsidiaries without segregating that information. Indeed, a review of VCI's Form 10-K filing makes clear that it is disclosing information regarding its subsidiaries as well as itself. *See, e.g.*, Pl. Ex. 2 at 4 ("Verizon Telecom consists of three lines of business which operate across our telephone subsidiaries"), 44 (Valuation and Qualifying Accounts for "Verizon Communications Inc. and Subsidiaries"), 48-49 (financial data for "Verizon Communications Inc. and Subsidiaries"), 52-55 ("consolidated" financial data), 96 (Ernst & Young LLP audit report of "consolidated balance sheets of Verizon Communications Inc. and subsidiaries (Verizon)"), 97-101 (consolidated financial statements for "Verizon Communications Inc. and Subsidiaries"), 102 ("The consolidated financial statements include our controlled subsidiaries."), 150 (list of subsidiaries).[1] The fact that VCI has filed consolidated financial reports provides no basis for attributing to VCI the contacts of its subsidiaries.

*Second*, Plaintiffs cite VCI's company profile posted on the Verizon website. *See* Pl. Opp. at 6. But that profile is among the information provided to investors in VCI, as the website page Plaintiffs attach as Exhibit 1 makes clear. And as discussed above, when VCI provides information

---

[1] The Supplemental Declaration of Joseph Dunbar confirms that the advertising expenditures Plaintiffs point to (at p. 7) are not by or attributable to VCI. *See* Supp. Dunbar Decl. ¶ 8.

to investors, it does so on a consolidated basis, including the activities of its majority-owned subsidiaries. It is therefore only logical that VCI would be described to its investors in a way that includes the activities of its subsidiaries. For this reason, the VCI company profile casts no doubt on the sworn statement of Joseph Dunbar that "VCI conducts no business and provides no services of any kind to the public, including telecommunications services." Dunbar Decl. ¶ 3.

*Third*, the press releases upon which Plaintiffs rely do not indicate that VCI itself, as opposed to its subsidiaries, has any contacts with the forum states. In all but one of the press releases, the substance of the release refers generically to "Verizon," not "Verizon Communications Inc." *See* Pl. Exs. 3-8, 10-22. The lone exception is the Montana press release (Ex. 9) that says "Verizon Communications has appointed David Valdez as senior vice president for Verizon West," and that press release makes clear that it is in fact a subsidiary of VCI—Verizon West—that is at issue. Moreover, the supplemental declaration of Mr. Dunbar reconfirms that VCI owns or leases no property, provides no services, and has no employees in California, Illinois, Montana, Oregon, or Rhode Island. Supp. Dunbar Decl. ¶ 2. In fact, VCI has fewer than 30 employees, all of whom work in New Jersey or New York. *Id.*

Because Plaintiffs point to no evidence that VCI, as opposed to its subsidiaries, conducts any business in the forum states, Plaintiffs' reliance on *Covad Communications Co v. Pacific Bell*, No C 98-1187 SI, 1999 U.S. Dist. LEXIS 22789, 1999 WL 33757058 (N.D. Cal. Dec. 14, 1999), is misplaced. In that case, the Court exercised general jurisdiction over SBC because it concluded that the plaintiffs had made a prima facie case that SBC was doing business in California based on a "wide array of documents presented to the Court, representing either that SBC is present in California or is, in fact, more than a simple holding company." 1999 U.S. Dist. LEXIS 22789, at *21, 1999 WL 33757058, at *6. Plaintiffs here have presented no comparable evidence.

### 2. Lobbying Alone Cannot Be Equated To Physical Presence in the State

VCI's limited lobbying in California is not sufficient to give rise to general jurisdiction there, much less in Illinois, Montana, Oregon, or Rhode Island, the states at issue. Although Plaintiffs are correct that California lobbying disclosure forms for the last several years list VCI as the filer, in fact, the lobbying conducted in California is overseen and directed by employees of a subsidiary of

5

VCI, the lobbying expenditures were paid for in the first instance by a VCI subsidiary, and the costs of the lobbying are allocated primarily to VCI's subsidiaries. *See* Supp. Dunbar Decl. ¶ 9 (approximately 11% of 2002 to 2007 California lobbying expenses allocated to VCI).

In any event, the "government contacts" exception dictates that lobbying activity cannot form the basis for personal jurisdiction. *See, e.g., Graziose v. American Home Prods. Corp.*, 161 F. Supp. 2d 1149, 1153 (D. Nev. 2001). This doctrine originated in the District of Columbia, *see Investment Co. Inst. v. United States*, 550 F. Supp. 1213, 1216 (D.D.C. 1982) ("[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality . . . would pose a threat to free public participation in government"), but it has been expanded to include interaction with federal agencies outside the District, *see, e.g., Lamb v. Turbine Designs, Inc.*, 240 F.3d 1316, 1317 (11th Cir. 2001) (relying on interpretation of Georgia long-arm statute by the Georgia Supreme Court); *Management Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 529-530 (N.D. Tex. 2001). Likewise, it has been expanded to include interaction with state governments. *See, e.g., Graziose*, 161 F. Supp. 2d at 1153; *Sullivan v. Tagliabue*, 785 F. Supp. 1076, 1080 (D.R.I. 1992).

The rationale set forth in *Graziose* applies equally here. There, the court rejected plaintiff's claim that a trade association's lobbying activities and testimony before state legislators and government officials subjected the association to personal jurisdiction. 161 F. Supp. 2d at 1153. The court reasoned that it would "chill constitutionally protected rights of free speech and governmental contacts to expose every person, who addressed a state legislature or public official, to jurisdiction over claims that did not arise out of such conduct." *Id.* The court stated:

> This Court joins with the Second Circuit in holding that personal jurisdiction may not be founded upon any kind of lobbying or "government contacts" such as "getting information from or giving information to the government, or getting the government's permission to do something." The "government contacts" doctrine arises out of a constitutional right protected by the First Amendment to "petition the Government for redress of grievances." To do otherwise would jeopardize public participation in government. This right has been protected by numerous courts.

*Id.* (citations omitted) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991)). Applying the government contacts doctrine, the court in *Sullivan* similarly held that "[u]sing government contacts to establish personal jurisdiction directly undermines the right to petition as

guaranteed by the Constitution." 785 F. Supp. at 1080 (citations omitted). This Court should likewise hold that the government contacts exception dictates that VCI's constitutionally protected lobbying activity not be used to support a claim of personal jurisdiction.

Even if lobbying activity could be considered in the jurisdictional calculus, there is no basis to hold that lobbying alone gives rise to *general* jurisdiction. For a company to be subject to general (as opposed to specific) jurisdiction, its contacts with the forum state must "be of the sort that approximate physical presence." *Bancroft & Masters*, 223 F.3d at 1086; *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). The Ninth Circuit has made clear that merely hiring a firm based in the forum state (such as a lobbying firm) is not sufficient to give rise to general jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (retaining "California-based direct-mail marketing company" and hiring "sales training company, incorporated in California, for consulting services" not sufficient). Indeed, the Ninth Circuit has explained that "[g]enerally, an isolated contact with the forum state . . . will not support general jurisdiction." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1173 (9th Cir. 2006), *cert. denied,* 127 S. Ct. 723 (2006).

Under these standards, VCI's mere act of spending money on lobbying in California does not come anywhere close to carrying on a "continuous and systematic . . . part of its *general business*" in California. *Helicopteros Nacionales*, 466 U.S. at 415 (internal quotation marks omitted, emphasis added). By Plaintiffs' own account, lobbying is not VCI's general business. Rather, Plaintiffs assert (incorrectly) that VCI's business is "providing telecommunications services." Pl. Opp. at 6. And the mere act of spending money on lobbying in California cannot be equated to having a "physical presence" in the state. Paying for lobbying in the state is simply a limited contact that under *Schwarzenegger* and *Tuazon* is insufficient to support general jurisdiction.

Plaintiffs cite a Wisconsin decision for the proposition that lobbying contacts can give rise to general jurisdiction. Verizon respectfully disagrees with that decision, but it is distinguishable. The court in that case based its assertion of general jurisdiction primarily on the fact that there are numerous VCI shareholders in Wisconsin. *See Shepherd Invs. Int'l Ltd. v. Verizon Commc'ns Inc.*, 373 F. Supp. 2d 853, 863-65 (E.D. Wis. 2005). (Plaintiffs do not advance that argument, which

7

would subject most public companies to jurisdiction in every state, thereby eviscerating established limitations on personal jurisdiction.[2]) VCI's Wisconsin lobbying was just an additional contact incorrectly considered by the court. *See id.* at 865.

### 3. Contacts by VCI's Subsidiaries Cannot Be Attributed to VCI

Plaintiffs erroneously argue that the contacts of VCI's subsidiaries should be attributed to VCI. Pl. Opp. at 13-14. Plaintiffs do not dispute that, in general, "[t]he existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe*, 248 F.3d at 925. Moreover, Plaintiffs do not seek to rely on an "alter ego" theory of attributing the contacts of VCI's subsidiaries to it. *See* Pl. Opp. at 13 ("Plaintiffs here do not make an alter ego argument.").

Rather, relying on a pair of California state court decisions, Plaintiffs assert that general jurisdiction exists over VCI under the "representative services doctrine" because "VCI uses its subsidiaries that do business in the forum States to provide products and services that VCI would have to provide in their absence." Pl. Opp. at 14. But the very cases upon which Plaintiffs rely make clear that "the representative services theory is *inapplicable to a holding company* because [t]o find the holding company subject to jurisdiction simply because the holding company chose to invest rather than operate would swallow the distinction, made in the case law . . . between holding companies and operating companies." *DVI, Inc. v. Superior Ct.*, 104 Cal. App. 4th 1080, 1093 (Cal. Ct. App. 2002) (emphasis added, internal quotation marks omitted); *see also F. Hoffman-La Roche, Inc. v. Superior Ct.*, 130 Cal. App. 4th 782, 802 (Cal. Ct. App. 2005) ("Where, as here, the evidence establishes that the business of the foreign holding company is mere passive investment, the exercise

---

[2] *Debt Relief Network, Inc. v. Fewster*, 367 F. Supp. 2d 827, 830 (D. Md. 2005) (rejecting as "[m]anifestly . . . far outside settled principles" contention that court should "exercise personal jurisdiction over an out-of-state corporation solely because a shareholder or officer resides in the forum" and noting that plaintiff had "cited no case . . . that has so held."); *Seiko Epson Corp. v. Print-Rite Holdings, Ltd.*, CV 01-500 BR, 2002 WL 32513403, at *28 (D. Or. Apr. 30, 2002) ("mere presence of a shareholder of a corporation in the forum also is insufficient to warrant general jurisdiction over the foreign corporation absent an alter ego finding"); *Stutzman v. Rainbow Yacht Adventures, Ltd.*, Civ. A. No. 3:06-CV-0300 K, 2007 WL 415355, at * 10, 2007 U.S. Dist. LEXIS 8697, at *20 (N.D. Tex. Feb. 7, 2007); *Blackwell v. Marina Assocs.*, No. Civ. A. 05-5418, 2006 WL 573793, at *5, 2006 U.S. Dist. LEXIS 9423, at *14 (E.D. Pa. Mar. 6, 2006); *Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020-21 (10th Cir. 1990).

8

of jurisdiction based on a theory of agency is wholly improper.").  As the *F. Hoffman-La Roche* case emphasized, the representative services doctrine is applicable only where the parent is "itself engaged in business operations closely connected to" the subsidiary and the subsidiary "perform[s] functions solely to assist the [parent] in *its* business." 130 Cal. App. 4th at 803.

Indeed, the case upon which both *DVI* and *F. Hoffman* relied—*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (Cal. Ct. App. 2000)—left no doubt that the representative services doctrine is only applicable where the parent *itself* conducts business operations:

> It is abstractly true that Diamond could have dispensed with the formation of Sonora Mining and instead acquired the mine itself and hired its own employees to work the mine and market the gold.  In this sense, Diamond was using a "subsidiary to do what it otherwise would have done itself."  However, this is true whenever a foreign holding company elects to invest in a local business operation rather than conduct the operation itself.  To find the holding company subject to jurisdiction simply because the holding company chose to invest rather than operate would swallow the distinction, made in the case law and described above, between holding companies and operating companies, as well as implicitly obliterate the federal constitutional principle pronounced by the United States Supreme Court, the authoritative voice on the subject of federal constitutional law, that the parent-subsidiary relationship alone is not a basis for exercising jurisdiction over the parent based upon the activities of the subsidiary.

*Id.* at 545 (citations omitted).

VCI does not itself provide telecommunications services.  *See* Dunbar Decl. ¶ 3.[3]  For this reason, VCI's subsidiaries are not performing functions solely to assist VCI in *its* business.  Under Plaintiffs' own authority, jurisdiction cannot lie under the representative services doctrine.[4]

### 4.  VCI Has Never Been Registered To Do Business in Oregon or California

Plaintiffs' assertion (at 12) that "VCI itself—as distinct from its subsidiaries—*did* register to do business and appointed an agent for service of process in California in December 1999," as well

---

[3]  Indeed, VCI itself is legally incapable of providing telecommunications services in at least some of the forum states.  For example, in California, only certificated public utilities may provide utility services.  *See* Cal. Const. art. XII, § 3; Cal. Pub. Util. Code §§ 216, 1001.  VCI is not a certificated public utility in California.  *See* Supp. Dunbar Decl. ¶ 10.

[4]  In support of their "representative services" argument, Plaintiffs contend that VCI has "spent vast resources developing and marketing to a broad customer base (which amounts to billions of dollars annually)."  Pl. Opp. at 14.  But as noted above, the advertising expenditure figure upon which Plaintiffs rely is a figure for VCI and its subsidiaries, as VCI's Form 10-K itself makes clear.  *See* Pl. Ex. 2 at p. 144 of 155.  The only evidence regarding advertising or marketing by VCI itself is the unrebutted declaration of Mr. Dunbar, which states that "VCI does not advertise [or] solicit business" in the forum states.  Dunbar Decl. ¶ 4.

as their contention (at 8 n.6) that VCI was registered with the Oregon Secretary of State, are incorrect. As explained in the supplemental declaration of Joseph Dunbar, VCI was never registered to do business in California or Oregon. *See* Supp. Dunbar Decl. ¶¶ 3-5. Plaintiffs' confusion on this point is understandable, because a company called Verizon Communications, Inc.—which unlike VCI has a comma in its name between Communications and Inc.—was registered to do business in California and Oregon in 1999 and 2000. *See id.* But that corporate entity, which was formed simply to hold the name "Verizon" until Bell Atlantic Corporation changed its name to VCI following the merger with GTE, no longer exists and is distinct from VCI. *See id.*[5] Accordingly, the former registration of Verizon Communications, Inc. (with a comma) in Oregon and California should play no role in the jurisdictional analysis.

> 5. <u>Verizon's Website Is Insufficient To Give Rise To General Jurisdiction</u>

Plaintiffs concede that the "mere existence" of Verizon's website "is insufficient to establish general jurisdiction."[6] Pl. Opp. at 14-15. And in any event, the website—www22.verizon.com—is owned and operated (and its content is determined) by subsidiaries of VCI, not by VCI itself. *See* Supp. Dunbar Decl. ¶ 7.

**B.     MCI, LLC Lacks Substantial, Continuous Contacts with the Forum States**

Plaintiffs' argument that MCI, LLC is subject to general jurisdiction in California is based entirely on four lobbying disclosure forms that list "San Francisco, CA 94105" as the address of the filer and some limited lobbying apparently conducted by its predecessor MCI, Inc. Neither basis can

---

[5]     Moreover, as explained in the supplemental Dunbar declaration, VCI is the successor to Bell Atlantic Corporation, not Verizon Communications, Inc. (with a comma) or its corporate predecessor Verizon, Inc., which were simply merged into Bell Atlantic Corporation and out of existence. *See* Supp. Dunbar Decl. ¶ 3. For this reason, the court in *Shepherd Investments International Ltd.*, 373 F. Supp. 2d at 865, erred in considering the prior registration of Verizon, Inc. in Wisconsin. In any event, neither Verizon Communications, Inc. (with a comma) nor Verizon, Inc. ever sold, marketed, or provided goods or services of any kind. *See* Supp. Dunbar Decl. ¶ 6. Neither company ever conducted any business in California or Oregon, had offices in California or Oregon, owned any real estate in California or Oregon, or had any employees in California or Oregon. *See id.*

[6]     Plaintiffs cite only a single case holding that maintenance of a website is relevant to determining whether a company is subject to *general* jurisdiction, and it is clear that the court in that case confused the standards for determining general and specific jurisdiction. *See Gammino v. SBC Commc'ns, Inc.*, No. 03-CV-6686, 2005 WL 724130, at *3, 2005 U.S. Dist LEXIS 5077, at *10-11 (E.D. Pa. Mar. 29, 2005) (finding "purposeful availment" based on website but holding SBC subject to *general* jurisdiction).

Reply Mem. in Support of Verizon's Mot. To Dismiss For Lack of Personal Jur.                    MDL No. 06:1791-VRW

1    support general jurisdiction.  First, the offices in San Francisco that were listed as the address for

2    MCI, Inc. and WorldCom, Inc. and its subsidiaries on the 2004 and 2005 lobbying disclosure forms

3    (Exhibits 38-41) were in fact leased by a *subsidiary* of MCI, Inc. (and previously WorldCom, Inc.)

4    called MCI WorldCom Network Services, Inc.  *See* Supp. Dunbar Decl. ¶ 12.  William Harrelson

5    and Richard Severy, the gentlemen who signed the disclosure forms, worked at that address.  *See id.*

6    The limited information attached on these lobbying disclosure forms thus does not call into question

7    the sworn declaration of Mr. Dunbar, which explains that MCI, LLC (and its predecessors MCI,

8    Inc., and WorldCom, Inc.) have not owned or leased property in California.  *See* Dunbar Decl. ¶¶ 8,

9    12, 16; *see also* Supp. Dunbar Decl. ¶ 11.  Second, for all of the reasons explained above, any

10   lobbying conducted by MCI, Inc. cannot give rise to general jurisdiction over the company (and its

11   successor).  Lobbying should not even be considered; and, in any event, there is no basis for

12   exercising general jurisdiction over a defendant based solely on lobbying.

13   **II.     THE COURT LACKS SPECIFIC JURISDICTION OVER VCI AND MCI, LLC**

14           Plaintiffs concede that this Court can exercise "specific" jurisdiction over VCI and MCI,

15   LLC only if (1) VCI and MCI, LLC "perform[ed] some transaction by which [they] purposefully

16   avail[ed] [themselves] of the privilege of conducting activities in the forum," and (2) Plaintiffs'

17   claims "arise[] out of or result[] from" those forum-related activities.  Pl. Opp. at 15.  Plaintiffs

18   cannot meet this standard.

19           **A.      Plaintiffs' Claims Do Not Arise From Any Forum-Related Activity by VCI**

20           Plaintiffs' claims against VCI rest on their allegation that VCI provided the government with

21   access to call contents and records.  *See* Master Consolidated Complaint ("MCC") 168-169, 203,

22   218, 230-231, 238, 245-247, 256, 264, 267, 275.  To demonstrate specific jurisdiction, Plaintiffs

23   must show that VCI purposefully availed itself of the privilege of conducting activities in the forum

24   states by engaging in this alleged conduct.  Plaintiffs cannot make this showing for at least two

25   reasons.

26           First, as explained in Verizon's opening motion, VCI could not have disclosed the contents

27   and records of customer telephone calls—much less done so in the forum states—because it has no

28   customers.  *See* Dunbar Decl. ¶¶ 3-4.  Plaintiffs' only response to this straightforward proposition is

11

to assert, for the first time, that their claims arise not from VCI disclosing the contents and records of *its* customers' calls, but rather from VCI either disclosing contents and records of *its subsidiaries'* calls or by ordering, controlling, or facilitating the disclosure of call contents and records by *its subsidiaries*. *See* Pl. Opp. at 15-17. But these actions are *not* what Plaintiffs have alleged.

Nowhere in the Master Consolidated Complaint do Plaintiffs allege that VCI ordered its subsidiaries to disclose their customers' call contents or records, facilitated such a disclosure, or itself disclosed its subsidiaries' customers' call contents and records. Rather, all of the allegations in the complaint are that VCI directly disclosed its customers' call contents and records. *See, e.g.*, MCC ¶¶ 15-19 (defining "Verizon" to include both VCI and its subsidiaries), 163, 168, 169, 173. Plaintiffs cannot sustain jurisdiction by hypothesizing that VCI took various actions not alleged in the complaint and not supported by any evidentiary showing.

Second, even if it were possible for VCI to have disclosed customers' call contents and records, such disclosures would not be "forum-related activities." Plaintiffs do not dispute that VCI has no offices or facilities in any of the forum states and therefore could not have engaged in the alleged actions within the forum states. And the disclosures were allegedly made to the National Security Agency, which is not located in any forum state. Rather, Plaintiffs argue that VCI purposefully availed itself of the privilege of conducting business in the forum states because its (alleged) disclosures had *effects* on customers in the forum states. *See* Pl. Opp. at 17. But merely taking actions that have an effect on individuals in a forum state is not sufficient to establish jurisdiction in that state. Rather, Plaintiffs must demonstrate that VCI "(1) committed an intentional act, (2) expressly aimed at the forum state[s], (3) causing harm that [VCI] knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

Here, Plaintiffs cannot possibly show that VCI's alleged conduct was "expressly aimed at the forum state[s]." The Ninth Circuit has made clear that *Calder v. Jones*, 465 .U.S. 783 (1984), does not "stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction" *Bancroft & Masters*, 223 F.3d at 1087. And almost every court to have considered the issue has concluded that the fact that a plaintiff suffers harm in the

forum state is insufficient by itself to give rise to jurisdiction under *Calder. See, e.g., Revell v. Lidov*, 317 F.3d 467, 473-75 (5th Cir. 2002) (describing cases); *Young v. New Haven Advocate*, 315 F.3d 256, 258-59, 261-63 (4th Cir. 2002) (no personal jurisdiction because Connecticut newspapers "did not manifest an intent to aim their websites or the posted articles at a Virginia audience" even though articles allegedly defamed a Virginia prison warden); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 261-65 (3d Cir. 1998) (recognizing that First, Fourth, Fifth, Eighth, Ninth and Tenth Circuits have held that the suffering of injury in the forum state is not sufficient to confer jurisdiction and adopting the majority view).

The "express aiming" element of *Calder* requires "something more" than just injury arising in the forum state from an intentional tort. *Bancroft & Masters*, 223 F.3d at 1087. It requires at a minimum "wrongful conduct *individually targeting* a known forum resident." *Id.* (emphasis added); *see also Schwarzenegger*, 374 F.3d at 805 (emphasizing that *Bancroft* requires "individual[] target[ing]"). Thus, where a defendant undertakes an action that could foreseeably harm a forum resident, but the defendant does not individually target the forum resident by aiming his alleged conduct at the resident, the "expressly aimed" requirement is not satisfied. For example, in *Schwarzenegger*, where the Ohio defendant ran an advertisement using Mr. Schwarzenegger's image with the purpose of "entic[ing] Ohioans to buy or lease cars from Fred Martin and, in particular, to 'terminate' their current car leases," the Ninth Circuit concluded the defendant had not individually targeted a California resident even though the defendant's "intentional act eventually caused harm to Schwarzenegger in California, and [the defendant] may have known that Schwarzenegger lived in California." 374 F.3d at 807.

Where a defendant's conduct is likely to have effects across the nation, not just in the forum state, the "expressly aimed" requirement by definition cannot be met. *See Rank v. Hamm*, Civ. A. No. 2:04-0997, 2007 WL 894565, at *12, 2007 U.S. Dist. LEXIS, at * 38 (S.D.W.Va. Mar. 21, 2007) ("nationwide policy does not of itself result in Jenkins purposefully directing personal activities toward West Virginia"); *cf. Best Van Lines, Inc. v. Walker*, No. 04-3924-cv, 2007 WL 1815511, at *12 (2d Cir. June 26, 2007) ("Moreover, the nature of Walker's comments does not suggest that they were purposefully directed to New Yorkers rather than a nationwide audience.").

In such a case, no single state is the "focal point" of the alleged conduct. *Calder*, 465 U.S. at 789.

In this case, Plaintiffs' own allegations make clear that VCI's purported activities were not "expressly aimed" at individual residents of California, Illinois, Montana, Oregon, and Rhode Island. Plaintiffs allege that "Verizon Communications provides landline, residential, and commercial telephone services to customers throughout at least 28 states and the District of Columbia." MCC ¶ 17. And they contend that VCI disclosed the call records of "all or substantially all of [its] customers" and "all or a substantial number of the communications transmitted through their key domestic telecommunications facilities." *Id.* ¶¶ 168-169. They seek to certify a class of "[a]ll individuals and entities located in the United States that have been subscribers or customers of Verizon's wireline telephone, wireless, or other electronic communications or remote computing services at any time since October 6, 2001." *Id.* ¶ 126. Plainly, therefore, Plaintiffs are not alleging that VCI expressly aimed at individuals located in just California, Illinois, Montana, Oregon, and Rhode Island.

Additionally, Plaintiffs' allegations indicate that VCI's purpose in (allegedly) disclosing call content and records was not to harm subscribers in the forum states but rather "to assist . . . the government in carrying out" its surveillance program. *Id.* ¶ 259. Such an alleged purpose is, of course, wholly unrelated to the forum states. As in the *Schwarzenegger* case, therefore, the effects test of *Calder* cannot be met here. *See* 374 F.3d at 807.[7]

## B. MCI, LLC Did Not "Expressly Aim" at California Residents

Plaintiffs also contend that this Court has specific jurisdiction over MCI, LLC under the *Calder* "effects" test because MCI, LLC allegedly directed its subsidiary to disclose its customers' call contents and records. Pl. Opp. at 22-24.[8] But for the same reason such allegations against VCI

---

[7]     Plaintiffs also contend that VCI has purposefully availed itself of the privilege of doing business in the forum states by operating an interactive website accessible in the forum states. *See* Pl. Opp. at 17-18. But as noted above, VCI does not own, operate, or determine the content of the website at www22.verizon.com. *See* Supp. Dunbar Decl. ¶ 7. And, in any event, Plaintiffs' claims are unrelated to the Verizon website, so the website cannot form the basis for "specific" jurisdiction.

[8]     Unlike their claims with respect to VCI, Plaintiffs' claims against MCI, LLC actually do rest on an allegation that MCI, LLC's predecessor "specifically directed" its subsidiary "to engage in the violations of law alleged" in the complaint. MCC ¶ 9. Indeed, this is Plaintiffs' only allegation directed toward MCI, LLC. (All of the subsequent allegations of disclosures of content and records are directed to MCI Communications Services, Inc. *See, e.g.*, MCC ¶¶ 163, 169-170, 173.) Whether

14

would be insufficient to satisfy the "expressly aim" requirement (had they actually been made), the allegations are insufficient with respect to MCI.

Plaintiffs do not allege conduct targeted at California. Rather, they allege that "MCI had approximately 14 million residential customers and approximately one million business customers for its wireline telephone services" and seek to certify a class consisting of "[a]ll individuals and entities located in the United States that have been subscribers or customers of MCI's wireline long distance telephone services at any time since October 6, 2001." MCC ¶¶ 11, 124. And they allege that MCI's purpose in (allegedly) disclosing its customers' call contents and records was to assist the government's counter-terrorism efforts, not to target individual residents of California. *Id.* ¶ 259.

## III. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

Plaintiffs' request for jurisdictional discovery should be denied. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). Here, Plaintiffs have provided nothing beyond their speculation to cast any doubt on the sworn statements of Mr. Dunbar that VCI and MCI, LLC are mere holding companies that provide no services to the public and have no presence in the forum states.

### CONCLUSION

For the reasons set forth above and in Verizon's opening memorandum, this Court should grant Verizon's Motion To Dismiss for Lack of Personal Jurisdiction.

Dated:     August 3, 2007                    Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

MUNGER, TOLLES & OLSON LLP

Randal S. Milch

---

this allegation even states a claim under the various statutes Plaintiffs have invoked is a separate question that can be addressed at a later date, if necessary.

By: /s/ John A. Rogovin

          John A. Rogovin

Attorneys for Verizon Communications Inc.,
Verizon Global Networks Inc., and MCI, LLC