WILMER CUTLER PICKERING HALE
AND DORR LLP
John A. Rogovin        (pro hac vice)
Randolph D. Moss      (pro hac vice)
Samir C. Jain          # 181572
Brian M. Boynton       # 222193
Catherine M.A. Carroll  (pro hac vice)
1875 Pennsylvania Ave, NW
Washington, DC  20006
Tel.:  202-663-6000
Fax:   202-663-6363
Email:  john.rogovin@wilmerhale.com

Randal S. Milch        (pro hac vice)
Verizon Communications Inc.
One Verizon Way
VC43E043
Basking Ridge, NJ  07920
Tel.:  908-559-1752
Fax:  908-696-2136

Attorneys for Verizon Communications Inc. and
Verizon Maryland Inc.

MUNGER, TOLLES & OLSON LLP
Henry Weissmann        # 132418
Susan R. Szabo          # 155315
Aimee A. Feinberg       # 223309
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560
Tel.:  213-683-9100
Fax:  213-683-5150
Email:  Henry.Weissmann@mto.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE:<br><br>NATIONAL SECURITY AGENCY<br>TELECOMMUNICATIONS<br>RECORDS LITIGATION<br><br>This Document Relates To:<br><br>06-3574, 06-6313, and 06-6570 | MDL NO. 06-1791 VRW<br><br>**REPLY MEMORANDUM IN SUPPORT<br>OF VERIZON'S MOTION TO DISMISS<br>THE *CHULSKY*, *RIORDAN*, AND *BREADY*<br>COMPLAINTS**<br><br>Hearing Date:  August 30, 2007<br>Time:              2:00 p.m.<br>Courtroom:      6 (17th floor)<br>Judge:            Hon. Vaughn R. Walker |

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………ii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 2

I.      PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED................................... 2

        A.      The Claims Intrude On The Exclusively Federal Field Of Military Affairs ................2

        B.      Plaintiffs' Remaining Arguments Are Without Merit ....................................................7

II.     PLAINTIFFS' CLAIMS VIOLATE THE SUPREMACY CLAUSE................................... 10

III.    *CHULSKY*'S FRAUD CLAIMS MUST BE DISMISSED UNDER RULE 9(b) ................... 13

IV.     FAILURE TO IDENTIFY THE CONTRACTS AT ISSUE REQUIRES DISMISSAL ....... 15

CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Aaron v. Aguirre*, No. 06-CV-1451, 2007 U.S. Dist. LEXIS 16667,
  2007 WL 959083 (S.D. Cal. Mar. 8, 2007) ...............................................15

*American Insurance Association v. Garamendi*, 539 U.S. 396 (2003) ....................9, 10

*Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003) ..............................7

*Bicoastal Corp. v. Aetna Casualty & Surety Co.*, No. C94-20108,
  1994 WL 564539 (N.D. Cal. Oct. 4, 1994) ...............................................15

*Black Hills Power & Light Co. v. Weinberger*, 808 F.2d 665 (8th Cir. 1987) ..............12

*In re Cendant Corp. Securities Litigation*, 190 F.R.D. 331 (D.N.J. 1989) ..............13, 14

*Chaganti v. I2 Phone International, Inc.*, No. C04-0987,
  2005 WL 679664 (N.D. Cal. Mar. 11, 2005) ..............................................15

*Cook v. Gralike*, 531 U.S. 510 (2001) ..................................................7

*In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005),
  *cert. denied*, 546 U.S. 1172 (2006) ..................................................14

*Department of Navy v. Egan*, 484 U.S. 518 (1988) .......................................2

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) .................................2

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ............................14

*English v. General Electric Co.*, 496 U.S. 72 (1980) ...................................8

*Forte Capital Partners v. Cramer*, No. C07-01237, 2007 U.S. Dist. LEXIS 40126,
  2007 WL 1430052 (N.D. Cal. May 14, 2007) ..............................................13

*Gartrell Construction Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991) ....................7

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) .................................11

*Hancock v. Train*, 426 U.S. 167 (1976)............................................9, 10, 11

*In re Heritage Bond Litigation*, 289 F. Supp. 2d 1132 (C.D. Cal. 2003) .............14, 15

*International Association of Independent Tanker Owners v. Locke*,
  148 F.3d 1053 (9th Cir. 1998), *rev'd on other grounds*,
  *United States v. Locke*, 529 U.S. 89 (2000) .........................................4-5

*Mayo v. United States*, 319 U.S. 441 (1943) .......................................10, 12

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) .................................10

Reply Mem. in Support of Verizon's Motion To Dismiss *Chulsky*, *Riordan*, and *Bready*                MDL No. 06:1791-VRW

*In re NSA Telecommunications Records Litigation*,
  483 F. Supp. 2d 934 (N.D. Cal. 2007) ...................................................7, 8

*North Dakota v. United States*, 495 U.S. 423  (1990) ......................................10, 12, 13

*Northwest Pipe Co. v. Travelers Indemnity Co.*, No. C02-04189, 2003 U.S. Dist. LEXIS
  26416, 2003 WL 24027882 (N.D. Cal. Feb. 12, 2003) ..........................................15

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) .................................... 14-15

*Perpich v. Department of Defense*, 496 U.S. 334 (1990) .........................................2

*Rasidescu v. Midland Credit Management, Inc.*, 435 F. Supp. 2d 1090 (S.D. Cal. 2006)............15

*Schreiber Distributing Co. v. Serv-Well Furniture, Inc.*, 806 F.2d 1393 (9th Cir. 1986) .............14

*Shamrock Farms Co. v. Veneman*, 146 F.3d 1177 (9th Cir. 1998) .................................9

*Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (9th Cir. 1992) ...................................14

*Snepp v. United States*, 444 U.S. 507 (1980)....................................................2

*In re Stac Electrics Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996) .......................14

*Stehney v. Perry*, 101 F.3d 925 (3d Cir. 1996) .................................................6

*Tarble's Case*, 80 U.S. (13 Wall.) 397 (1871) ...........................................2, 3, 5

*Totten v. United States*, 92 U.S. 105 (1875) ...................................................2

*Union Oil Co. v. Minier*, 437 F.2d 408 (9th Cir. 1970)...................................... 11-12

*United States v. City of Oakland*, No. C-89-3305 JPV,
  slip opinion (N.D. Cal. Aug. 23, 1990) ..................................................... 6-7

*United States v. County of Humboldt*, 628 F.2d 549 (9th Cir. 1980)  ..........................13

*United States v. Locke*, 529 U.S. 89 (2000) ..................................................4, 8

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972) .........................................2

*United States v. New Mexico*, 455 U.S. 720 (1982) ........................................11, 12, 13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ............................. 13-14

*West River Electric Association v. Black Hills Power & Light Co.*,
  918 F.2d 713 (8th Cir. 1990) .............................................................7, 11

*In re World War II Era Japanese Forced Labor Litigation*,
  164 F. Supp. 2d 1160 (N.D. Cal. 2001), *aff'd sub nom. Deutsch v. Turner Corp.*,
  324 F.3d 692 (9th Cir. 2003) ...............................................................2, 4

*Zschernig v. Miller*, 389 U.S. 429 (1968) ................................................3, 5, 9, 10

## STATE CASES

*Missouri v. Isa*, 850 S.W.2d 876 (Mo. 1993) ...............................................................9

## U.S. CONSTITUTION AND STATUTES

U.S. Constitution, art. I, § 8, cls. 1, 11, 12, 13, 15 ...........................................2

U.S. Constitution, art. I, § 10, cl. 3 ..................................................................3

U.S. Constitution, art. II, § 1, cl. 1 ..................................................................2

U.S. Constitution, art. II, § 2, cl. 1 ..................................................................2

50 U.S.C. § 1806 ..............................................................................................9

50 U.S.C. § 1861(e) ..........................................................................................9

## OTHER AUTHORITIES

The Federalist No. 15 (Hamilton) (Jacob E. Cooke ed. 1961) .......................7

The Federalist No. 23 (Hamilton) (Jacob E. Cooke ed. 1961) .......................3

The Federalist No. 25 (Hamilton) (Jacob E. Cooke ed. 1961) .......................3

The Federalist No. 39 (Madison) (Jacob E. Cooke ed. 1961) ........................7

The Federalist No. 80 (Hamilton) (Jacob E. Cooke ed. 1961) .......................3

## RULES AND REGULATIONS

Federal Rules of Civil Procedure 8...............................................................15

Federal Rules of Civil Procedure 9(b) .....................................................13, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

Plaintiffs' state-law claims in *Chulsky*, *Riordan*, and *Bready* challenge an alleged ongoing federal intelligence-gathering program that is, according to Plaintiffs' own allegations, being used to support the defense of the nation from foreign attack. As described in the complaints, the alleged program could not have been carried out without Verizon's alleged involvement.

Plaintiffs have brought their claims with the avowed purpose of seeking to "halt" Verizon's alleged cooperation with the NSA. *Chulsky* Am. Compl. ¶ 2. If successful, Plaintiffs would use state laws to (i) declare the carriers' alleged cooperation illegal; (ii) enjoin the carriers from further alleged cooperation; and (iii) impose crippling monetary sanctions for their alleged cooperation. Plaintiffs' claims would thus intrude into the exclusively federal field of military affairs in a manner that is far more than incidental or indirect, and they are therefore preempted by the Constitution. (*See* Part I below). Plaintiffs' claims are also barred for another wholly independent reason: Their claims would use state law to obstruct and prohibit the alleged federal program described in the complaints in violation of the Supremacy Clause's intergovernmental immunity doctrine. (*See* Part II below.)

The case for barring Plaintiffs' state law claims here is even stronger than the one presented in the cases concerning state public utility commission investigations of alleged carrier cooperation with the NSA that were recently addressed by the Court (the "State Cases"). Unlike those cases, which at least at this stage were only seeking information concerning carriers' alleged cooperation with the NSA, the thrust of these cases is to regulate the manner in which the federal government conducts its alleged program by stopping the carriers' alleged cooperation and imposing potentially massive damages on the carriers as punishment for their alleged cooperation.

Finally, the *Chulsky* Plaintiffs' state-law claims for breach of contract and misrepresentation also must be rejected because Plaintiffs have failed to meet the basic pleading requirements of Rules 8 and 9. (*See* Parts III and IV below.)

**ARGUMENT**

**I.     PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED**

**A.     The Claims Intrude On The Exclusively Federal Field Of Military Affairs**

It is well settled that military affairs—including tactical operations, the conduct of war,

intelligence gathering, and the protection of the country against foreign attack—are committed to the

national government's "plenary and exclusive" control. *Tarble's Case*, 80 U.S. (13 Wall.) 397, 408

(1871); *see also Perpich v. Dep't of Def.*, 496 U.S. 334, 353 (1990) ("[S]everal constitutional

provisions commit matters of foreign policy and military affairs to the exclusive control of the

National Government."); *Deutsch v. Turner Corp.*, 324 F.3d 692, 712 (9th Cir. 2003) ("Matters

related to war are for the federal government alone to address.").  Indeed, military affairs lie at the

"*inner core*" of what has been described more generally as the federal government's "foreign

affairs" power.  *Deutsch*, 324 F.3d at 711 (emphasis added); *see also* State Cases Order (Dkt. # 334)

at 29-30.  If anything, military affairs are even *more* committed by the Constitution to the federal

government's exclusive control than "foreign affairs" or foreign relations.  It is also equally well

settled (and unchallenged by the Plaintiffs) that the federal power over military affairs includes the

authority to gather intelligence and maintain its confidentiality.  *See Dep't of Navy v. Egan*, 484 U.S.

518, 527-528 (1988); *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980); *Totten v. United States*,

92 U.S. 105, 106 (1875); *United States v. Marchetti*, 466 F.2d 1309, 1315 (4th Cir. 1972).

These holdings rest on the Framers' decision—reflected throughout the Constitution's text

and structure—to allocate all authority over military affairs to the federal government.  *See Deutsch*,

324 F.3d at 711-712; *In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160,

1168-1171 (N.D. Cal. 2001), *aff'd sub nom. Deutsch*, 324 F.3d 692; State Cases Order at 29-30; *see*

*also* U.S. Const. art. I, § 8, cl. 1 (granting Congress power "to provide for the common Defence");

*id.* cl. 11 (power to "declare War"); *id.* cl. 12 ("raise and support Armies"); *id.* cl. 13 ("provide and

maintain a Navy"); *id.* cl. 15 ("provide for calling forth the Militia to . . . suppress Insurrections and

repel Invasions"); *id.* art. II, § 1, cl. 1 (vesting "executive Power" in the President); *id.* § 2, cl. 1

(making President "Commander in Chief").  The Constitution categorically disables states from

acting in the field of military affairs, making an exception only for the extraordinary circumstance of actual invasion or imminent danger. *Id*. art. I, § 10, cl. 3. The Constitution denies authority to states in this field because "[t]he common defence of the members" was one of the "principal purposes to be answered by [the] Union." The Federalist No. 23, at 146-147 (Hamilton) (Jacob E. Cooke ed. 1961). Experience under the Articles of Confederation had demonstrated that leaving the common defense to be provided for by the states would be "dangerous to all, and baneful to the confederacy." The Federalist No. 25, at 158 (Hamilton) (Cooke ed. 1961); *see also* The Federalist No. 80, at 535 (Hamilton) (Cooke ed. 1961) ("[T]he peace of the WHOLE ought not to be left at the disposal of a PART.").

Because the Constitution allocates *exclusive* authority over the conduct of military affairs to the federal government, states cannot act in this field regardless of whether their action may be said to conflict with federal law. As this Court recognized, state intrusion into a field reserved by the Constitution exclusively to the federal government is preempted "whether or not consistent" with federal policy. State Cases Order at 29 (citation omitted); *see also id*. at 31 (state law with more than "incidental or indirect effect" on foreign relations is unconstitutional (discussing *Zschernig v. Miller*, 389 U.S. 429 (1968))). Plaintiffs' contrary view (Pls.' Joint Opp'n to Verizon's Mot. to Dismiss *Chulsky*, *Riordan*, & *Bready* Compls. (Opp'n) at 15-17) would permit a state to declare or even wage war against another country, so long as the federal government was pursuing the same course. But the Constitution allows no such thing. The Supreme Court decided as much when it held in *Tarble's Case* that state courts could not exercise *habeas* jurisdiction to determine the validity of the enlistment of soldiers in the U.S. military in alleged violation of federal law. 80 U.S. (13 Wall.) at 408, 411. While states traditionally had broad authority to issue *habeas* writs, *id*. at 409, they simply had no power to exercise that authority in the field of military affairs, *id*. at 408-411. That constitutional prohibition did not depend on whether the state court's *habeas* decision would conflict with what a federal court would have decided. *Id*. at 411.

Here, Plaintiffs' state-law claims intrude on the exclusively federal field of military affairs and have more than an "incidental or indirect" effect on the alleged activities of the federal government. State Cases Order at 31. The complaints directly attack the lawfulness, under state

3

law, of the alleged collection of military intelligence by the federal government—through the NSA, a component of the Defense Department—with the obvious and intended effect of prohibiting the federal government from operating the alleged military intelligence program in the manner it has allegedly chosen. For example, the *Chulsky* Plaintiffs challenge Verizon's alleged act of "permitting" the NSA to "detect intelligence" needed to "warn appropriate officials of potential terrorist activities" and protect against the "continuing threat" from "al Qaeda and related terrorist organizations." *Chulsky* Am. Compl. ¶¶ 1, 3, 17-18, 25. They further allege that the equipment allegedly used to carry out the alleged intelligence-gathering "could not have been installed, operated and/or maintained by the NSA without the authorization of Defendants." *Id.* ¶ 21; *see also, e.g.*, *Bready* Compl. ¶¶ 1, 13-14 (challenging Defendants' alleged participation in "Governmental program" "to search for terrorist activity" in the wake of the September 11, 2001 attacks); *Riordan* Compl. ¶¶ 1-2, 14, 16 (alleging that Defendants provided data to NSA and other agencies required for investigative purposes). In addition, the relief that Plaintiffs seek would purport to control the federal government's alleged methods of collecting intelligence and prohibit certain alleged methods of doing so; indeed, that is the whole point of Plaintiffs' lawsuits. Plaintiffs have requested that Verizon's alleged cooperation with the NSA be declared unlawful and that any further cooperation with the alleged program be enjoined. Further, Plaintiffs seek to punish Verizon by imposing crushing damages for its alleged cooperation with the federal government. *See Chulsky* Am. Compl. ¶¶ 2, A-H*; Bready* Compl. ¶¶ B-D; *Riordan* Compl. ¶ (b). Thus, wherever the precise boundary might lie between state action that has merely an incidental or indirect effect in the preempted field and state action that intrudes into that field, this is not a close case. Plaintiffs' attempt to use state law to dictate how the alleged military intelligence-gathering activities of the federal government should be carried out is far more than an "incidental or indirect" effect and amounts to a substantial and direct intrusion by state law on a field of responsibility the Constitution allocates exclusively to the federal government. State Cases Order at 31; *In re World War II*, 164 F. Supp. 2d at 1171.[1]

---

[1] This case thus stands in sharp contrast to *International Association of Independent Tanker Owners v. Locke*, 148 F.3d 1053, 1069 (9th Cir. 1998), *rev'd on other grounds, United States v. Locke*, 529 U.S. 89 (2000), addressed in the State Cases Order (at 33-34). As the Ninth Circuit noted, the state regulations at issue in *Locke* did not clearly have any extraterritorial effect at all, let alone one that

It is no answer to suggest that there is no unconstitutional intrusion here because state laws of general applicability are involved. Opp'n at 14-15, 17. The application of state law can be unconstitutional even if the state statutes in question are laws of general applicability directed at traditional state concerns. *See* State Cases Order at 30-31. The issue, as correctly framed by the Court, is simply whether the *application* of state law in the particular case would intrude, or have more than an indirect effect, on an exclusively federal field. *Id*. at 33-34. After all, *Zschernig* itself was about a law of general applicability whose *application* was being challenged as unconstitutional. 389 U.S. at 432-34. Likewise, in *Tarble's Case*, 80 U.S. (13 Wall.) 397, the Court held that the state could not exercise its traditional authority to issue writs of *habeas corpus*—a generally applicable police power with no express purpose of affecting military affairs—in a case involving the United States military. *Id*. at 408, 411. Thus, under these cases, for example, a neutral state law of general applicability establishing acceptable ambient noise levels could not be used to stop the military from flying overhead to protect the country because it would infringe on the exclusively federal sphere of military affairs. Similarly, the relief Plaintiffs request here—prohibiting the continued operation of an alleged military intelligence-gathering program or controlling how that alleged program is conducted—would be at odds with the constitutional allocation of power between the states and the federal government, no matter whether it was based on a law of general applicability or a law aimed specifically at the NSA's alleged activities.

In addition, the effect of Plaintiffs' claims on the alleged intelligence-gathering activities of the federal government is far more direct and disruptive than in the State Cases. In those cases, at least at this stage, several public utility commissions ("PUCs") were relying on state laws to gather information from the carriers about their alleged cooperation with the government. The Court reasoned that although the state investigations may have an effect on an exclusively federal field, "that effect [was] only incidental and indirect." State Cases Order at 34. Here, by contrast, Plaintiffs do not seek to gather information, but ask for injunctive and other relief that would have the effect of prohibiting the federal government from operating the alleged military intelligence

was more than "incidental or indirect," nor did they otherwise rise to the level of an unconstitutional intrusion into an exclusively federal field. *Id*.

program in the manner it has allegedly chosen. There can be no question that this direct constraint on an alleged federal military program constitutes a substantial and direct intrusion on the exclusively federal field.

Further, the unconstitutional intrusion here does not turn on whether Plaintiffs' claims target a specific foreign country. Although many of the cases finding preemption due to the exclusive federal authority over "foreign affairs" have arisen in a context in which state action would have had an effect on a particular foreign nation, *see* State Cases Order at 32 (citing cases), nothing in the case law suggests that states are free to dictate how the federal government conducts foreign affairs as long as they do not target a particular foreign country. And none of those cases involves the issue presented here—the effect of state law on an alleged ongoing military operation. Clearly, many actions taken as part of the defense of this country are intended to guard against external threats generally, rather than against a specific country, and states are disabled from regulating those activities. Thus, if the federal government were to deploy a "missile defense shield" to protect the nation against attack, a state would be preempted from taking action to prohibit or disrupt that military action, even if the shield was not deployed with any particular foreign country in mind. Likewise, a state could not prohibit companies from doing business with the Department of Defense, regardless of whether that prohibition would affect any particular foreign nation or even foreign relations or diplomacy more generally.

Finally, the fact that state law claims are brought against a private party in the first instance, rather than against the government itself, does not alter this analysis. Opp'n at 14. Thus, in *Stehney v. Perry*, a state law that applied to private contractors had the effect of preventing private entities from serving as NSA contractors, an effect the court found to be not only in conflict with federal law, but also "an impermissible state interference with exclusive federal responsibility in matters of national security." 101 F.3d 925, 939 (3d Cir. 1996). Likewise, "[s]tates and localities may not enact legislation that impedes or hinders the national defense, regardless of whether the defense activities are carried out directly by agencies of the federal government, or by private contractors acting as agents of the federal government." *United States v. City of Oakland*, No. C-89-3305 JPV, slip op. at 7 (N.D. Cal. Aug. 23, 1990) (Ex. 1 to Verizon Mem. in Supp. of Mot. to Dismiss *Chulsky*,

*Riordan*, *Bready* Compls. ("Verizon Mem.") ) (invalidating local ordinance prohibiting private firms under contract to federal government from engaging in nuclear weapons work); *cf. Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991) (federal government contractor exempt from state licensing requirements); *West River Elec. Ass'n v. Black Hills Power & Light Co.*, 918 F.2d 713, 716 n.6 (8th Cir. 1990) ("'[A] state cannot diminish the constitutional authority of the United States government by regulating the parties with whom it may contract.'" (citation omitted)).[2]

**B.     Plaintiffs' Remaining Arguments Are Without Merit**

Plaintiffs' remaining arguments fare no better and should be rejected.

1.  There is no basis in the Court's Remand Order—nor in the recent State Cases Order—for Plaintiffs to assert that Verizon's motion to dismiss is simply a "replay" of the federal common law arguments Verizon presented in opposition to remand.  Opp'n at 11.  The Court's remand decision did not even address, let alone decide, the constitutional question presented in this motion. Moreover, the Court's decision in the State Cases discussed the constitutional issues without suggesting they had already been resolved by the analysis of federal common law in the Court's remand decision.

The jurisdictional question raised by the remand motion was whether federal law creates an exclusive cause of action, such that Plaintiffs' claims—although nominally pleaded under state law—in fact arise under federal law.  *In re NSA Telecomms. Records Litig.*, 483 F. Supp. 2d 934, 938 (N.D. Cal. 2007) ("Remand Order"); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 11 (2003).  With respect to federal common law as a basis for complete preemption, the Court ruled that "[c]ases justifying judicial creation of preemptive federal rules are extremely limited," because it is "primarily a decision for Congress" whether federal law should displace state law.  Remand

---

[2]     If anything, the intrusion here is all the more unconstitutional precisely because of the alleged involvement of a private party.  The Constitution provides for a national government with which all of its citizens have a direct relationship.  *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 821 (1995); *see also, e.g.*, The Federalist No. 15, at 93 (Hamilton) (Cooke ed. 1961); The Federalist No. 39 (Madison) (Cooke ed. 1961).  The Constitution permits no role for the states to interpose themselves between citizens and the national government.  *See, e.g., Cook v. Gralike*, 531 U.S. 510, 527 (2001) (Kennedy, J., concurring).  Thus, a state has no power to interfere with alleged communications between the federal government and one of its citizens—particularly if those communications involve military affairs and defending the nation from attack, as Plaintiffs allege.

7

Order, 483 F. Supp. 2d at 940.  Complete preemption of state law by judge-made federal common law, the Court explained, was therefore appropriate only in rare cases of "significant conflict" between state and federal law in an area of "uniquely federal interest." *Id.* The Court concluded that neither federal statutory law nor federal common law completely preempted the state-law claims, because Congress had not expressed an intent to displace state law, and because this was not one of those unusual cases in which a "significant conflict" between state law and federal policy justified the Court's reaching out to do what Congress had refrained from doing. *Id.* at 940-941.[3]

Unlike the complete preemption inquiry in the motion to remand, the source of preemption asserted here is neither a federal *statute* nor federal *common law*—it is the Constitution itself.  In this context, the application of state law is unconstitutional—regardless of any conflict with federal statutory or common law and regardless of the existence of a substitute federal cause of action—because it is being used to regulate in the exclusively federal field of military intelligence.  As noted above, no conflict between state and federal law is required in this setting, as it was to justify the creation of federal common law.  In addition, Verizon's argument here does not ask the Court to create substantive federal common law to displace the state-law claims, but simply to apply the Constitution to determine that the application of state law impermissibly intrudes into a field entrusted exclusively to the federal government.  The Remand Order did not consider this issue.

2.  For much the same reasons, Plaintiffs' invocation of the so-called "presumption against preemption" and their extended discussion of *congressional* preemption (Opp'n at 6-11) are irrelevant.  The presumption against preemption is a rule of interpretation applied when determining whether Congress has acted with an intent to displace state law.  *E.g.*, *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).  But congressional intent has no bearing here because it is the Constitution itself—not an affirmative act of Congress—that renders states powerless to intrude into the field of military affairs.  Moreover, the presumption applies only where state authority is exercised in an area traditionally occupied by the states.  *Locke*, 529 U.S. at 107-108.  Where state law regulates in an area with a "history of significant federal presence," the presumption simply has no application.

_____

[3]  Verizon respectfully disagrees with these conclusions and preserves all arguments presented to the Court opposing the remand motion.

*Id.* at 108. In this case, Plaintiffs' claims would inject state law into an area—the alleged gathering of military intelligence—where the federal presence is not only "significant," but also exclusive.

3. Likewise, Plaintiffs' argument that provisions of the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. §§ 1806(f), 1861, contemplate a role for state-court litigation (Opp'n at 10) is irrelevant. The federal government occupies the entire field of military affairs because the Constitution—not Congress—commits that field to exclusive federal control. It is highly doubtful that Congress even has the authority to trump the *constitutional* allocation of power between the state and federal governments. Even if Congress had such authority, however, it would need to exercise it in the most unmistakable terms. *Cf. Hancock v. Train*, 426 U.S. 167, 178-179 (1976) (under intergovernmental immunity doctrine, states may not directly regulate federal government without "clear and unambiguous" authorization by Congress); *Shamrock Farms Co. v. Veneman*, 146 F.3d 1177, 1180 (9th Cir. 1998) (congressional intent must be "unmistakably clear" to authorize state regulation that would otherwise violate the dormant Commerce Clause). But there is no such clear statement in FISA. The possibility that Congress may have implicitly meant to leave room for state-court litigation that does *not* intrude into the field of military affairs—for example, a state prosecution using evidence derived from an electronic surveillance, *see, e.g.*, *Missouri v. Isa*, 850 S.W.2d 876, 887-888 (Mo. 1993) (discussing 50 U.S.C. § 1806)—does not clearly and unambiguously authorize state-law claims that *do* intrude into the federal field. Nor does the creation of a safe harbor for those who provide records pursuant to a FISA order, 50 U.S.C. § 1861(e), provide a clear statement of intent to authorize states to prohibit or control federal military programs that fall outside the safe harbor (particularly where the statute does not even mention states or state law, *id.*). The scope of FISA therefore has no bearing on whether Plaintiffs' claims are constitutionally preempted.

4. Finally, Plaintiffs' reliance (Opp'n at 15-16) on *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003), is misplaced. The Court explained there that, under *Zschernig*, "state action with more than incidental effect on foreign affairs is preempted, *even absent any affirmative federal activity in the subject area of the state law, and hence without any showing of conflict.*" 539 U.S. at 418 (emphasis added). Contrary to Plaintiffs' suggestion, *Garamendi* did not

1   purport to overrule *Zschernig* or hold that conflict with federal law is required before state law will

2   be constitutionally preempted. Indeed, the Court specifically disclaimed such a result. *Id*. at 419-

3   420. The Court simply found it unnecessary to rely on *Zschernig*, since the case before it presented

4   a clear conflict between state and federal law. *Id*. at 420. Nor did *Garamendi* hold that a court

5   should evaluate the relative weights of the federal and state interests before finding preemption. *Id*.

6   at 425. The Constitution has already struck that balance in favor of the federal interests.

7   **II.      PLAINTIFFS' CLAIMS VIOLATE THE SUPREMACY CLAUSE**

8             As the Court explained most recently in its order in the State Cases, under the Supremacy

9   Clause, the intergovernmental immunity doctrine prohibits state law from regulating or obstructing

10  the activities of the federal government. State Cases Order at 16; *see also Mayo v. United States*,

11  319 U.S. 441, 445 (1943); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). That doctrine is

12  violated here because Plaintiffs seek to employ state law to prohibit the alleged federal program

13  described in their complaints and dictate the manner in which the federal government conducts its

14  alleged intelligence-gathering activities.

15            Citing *North Dakota v. United States*, 495 U.S. 423 (1990), Plaintiffs contend that the

16  Supremacy Clause is not violated here because they have brought their state-law claims against a

17  private company, not against the federal government itself. Accordingly, they assert, any

18  interference with the government as a result of their claims—no matter its nature or magnitude—is

19  merely the permissible incident of state regulation of private parties under a neutral law of general

20  applicability. Opp'n at 19-20. Contrary to Plaintiffs' contention, however, *North Dakota* did not

21  purport to establish a *per se* rule that state regulation that operates initially on a private party can

22  never violate the intergovernmental immunity doctrine. Rather, the plurality found that the state

23  regulation at issue (state liquor laws imposing a reporting and labeling requirement on suppliers) did

24  not violate the Supremacy Clause because it merely raised prices for liquor sold on military bases in

25  North Dakota and, even though that raised the government's costs, it did not directly interfere with

26  the government's operations. 495 U.S. at 436-438. The Court specifically distinguished the liquor

27  laws before it from cases in which the federal government was regulated "directly," *id*. at 436-437,

28  including *Hancock v. Train*, 426 U.S. 167 (1976), which addressed a state law that operated initially

10

on private parties, *id.* at 174 n.23. Similarly, in *United States v. New Mexico*, 455 U.S. 720 (1982), the Court upheld a state tax on federal government contractors because it did not "direct[ly] interfer[e] with the functions of government itself." *Id.* at 736 (citation omitted). The Court nonetheless recognized that "of course . . . state taxes on contractors are constitutionally invalid if they . . . substantially interfere with [the Federal Government's] activities." *Id.* at 735 n.11.

Thus, even where the immediate impact of state law operates in the first instance on a private party, the application of state law will still violate the Supremacy Clause if it has the effect of directly obstructing or regulating the activities of the federal government. And case law leaves no doubt that this line is crossed when, as here, state law is being used to *prohibit* alleged federal activities. In *Hancock*, 426 U.S. 167, for example, the Supreme Court held that, absent a clear statement by Congress, a state could not apply a permit requirement to federal facilities—including facilities operated by *private parties* on behalf of the federal government, *id*. at 174 n.23—because, even though the state might grant the permit, the mere fact of requiring compliance with the state permit requirement was "tantamount to prohibiting" the federal activities, *id.* at 180. The controlling principle was that "the federal *function* must be left free," *id*. at 179 (emphasis added, citation omitted)—a principle that applies regardless of whether the states attempt to block those federal "activities," *id.*, by applying their law to the federal government or to private parties. Relying on *Hancock*, the Supreme Court later reaffirmed that the Supremacy Clause precludes state regulation that would prohibit federal activities or "dictate the manner in which [they] are carried out," even where "the federal function is carried out by a private contractor," unless Congress "clearly authorizes such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 & n.3 (1988).

The Ninth Circuit has similarly held that state regulation "must give way" when it blocks the activities of the federal government, regardless of "whether the United States exercises its rights directly or through the use of private persons." *Union Oil Co. v. Minier*, 437 F.2d 408, 411 (9th Cir. 1970). In *Union Oil*, local authorities—relying on neutral laws of general applicability—brought state-law charges to abate a public nuisance against private companies developing the outer continental shelf under federally-granted oil and gas leases. Although the federal government was neither a defendant nor the object of state regulation in the first instance, the Court of Appeals

nevertheless held that the objective of the state-law actions was to "cause the cessation of operations" under the federal leases and thus would "completely frustrate" the federal government's authority to develop the continental shelf through use of private leases. *Id*. at 411. The state-law claims were therefore impermissible, *id.* at 411 & n.4 (citing *Mayo*, 319 U.S. 441), even though they operated in the first instance on the private lessees, not the government itself. Any other result would permit state law to be used to accomplish indirectly what it cannot do directly. *See Black Hills Power & Light Co. v. Weinberger*, 808 F.2d 665, 669 & n.4 (8th Cir. 1987) ("[A] state cannot diminish the constitutional authority of the United States government by regulating the parties with whom it may contract.").

Here, Plaintiffs' assertion of state-law claims against the private defendants would, if successful, have the effect of prohibiting the federal government's alleged activities. Unlike the state laws at issue in *North Dakota* and *New Mexico*, Plaintiffs' claims here do not seek to impose a state tax or regulation on routine business practices that merely makes it more costly for the government to do business. Rather, as noted above in Part I.A, Plaintiffs' own allegations make clear that they seek to enjoin Verizon from allegedly assisting at all in the government's alleged military intelligence-gathering activities. Plaintiffs would thus prohibit those alleged activities outright, unless the federal government conforms its alleged program to Plaintiffs' understanding of state law. *See also* Plfs.' Joint Opp'n to Verizon's Mot. to Dismiss Master Consolidated Compl. at 1 (goal of suit against Verizon is for alleged government surveillance program to "finally be ended").

For the same reasons, Plaintiffs' claims here are not like the state-law actions this Court considered in its recent decision in the State Cases. Unlike the PUCs, Plaintiffs are not using state law to seek information about whether Verizon cooperated in the alleged federal program; they are trying to stop the alleged cooperation entirely. *See* State Cases Order at 18 (distinguishing *Hancock* on the ground that the state investigations did not seek to "place[] a prohibition on the federal government"). And unlike the PUCs, Plaintiffs here are seeking not simply to investigate the alleged intelligence-gathering activities of the federal government, but to dictate the manner in which the government carries out those alleged activities by prohibiting the operation of the alleged intelligence-gathering program their complaints purport to describe.

12

Moreover, even if Plaintiffs' claims would not prohibit outright the alleged federal intelligence-gathering program in violation of the Supremacy Clause (which they would, for all the reasons described above), their claims would still be unconstitutional because they have a far more direct and obstructive effect on alleged federal activities than the state regulations at issue in *North Dakota*. While *North Dakota* considered state laws that resulted in only a small increase in the government's cost of procuring liquor for military bases, the state-law claims in these cases would "substantially interfere with [the Federal Government's] activities." *New Mexico*, 455 U.S. at 735 n.11. Plaintiffs not only would require the federal government to alter its alleged manner of gathering military intelligence, but also seek to impose massive damages on Verizon for allegedly cooperating with the alleged federal program. Were Plaintiffs' claims permitted to proceed, the threat of facing such damages under the laws of fifty states would undoubtedly deter private companies from cooperating with the federal government, a result that would not simply make it more costly for the government to engage in its alleged activities, but would substantially interfere with the government's ability to carry out those alleged activities at all. *See also United States v. County of Humboldt*, 628 F.2d 549, 553 (9th Cir. 1980) (invalidating state tax levied on military personnel living in rent-free military housing because applying the tax would reduce soldiers' incentives to enlist and thereby disrupt and interfere with military recruitment process).

## III.   *CHULSKY*'S FRAUD CLAIMS MUST BE DISMISSED UNDER RULE 9(b)

The *Chulsky* Plaintiffs make no attempt to show that their fourth claim satisfies the particularity requirement of Federal Rule of Civil Procedure 9(b). They argue only that compliance with that rule should be excused because Rule 9(b) does not apply to claims of misrepresentation. Opp'n at 23. But the cases on which Plaintiffs base that argument involve claims for *negligent* misrepresentation. *See In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 336-337 (D.N.J. 1999) (denying motion to dismiss claim for "negligent misrepresentation"); *Forte Capital Partners v. Cramer*, No. C07-01237, 2007 U.S. Dist. LEXIS 40126, at *22, 2007 WL 1430052, at *8 (N.D. Cal. May 14, 2007) (Rule 9(b) not applicable to claim for "negligent misrepresentation"). When a misrepresentation claim sounds in fraud, the heightened pleading standard of Rule 9(b) must be satisfied. *In re Cendant Corp.*, 190 F.R.D. at 337; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

13

1103-1104 (9th Cir. 2003) (Rule 9(b) applies to allegations of fraudulent conduct).[4]

Here, the *Chulsky* Plaintiffs' misrepresentation claim sounds in fraud, not negligence. The fourth claim, titled "*malicious* misrepresentation," alleges that Verizon made material misrepresentations "knowingly, without belief in [their] truth, or in reckless or careless disregard of the truth," *Chulsky* Am. Compl. ¶ 98, and "with the purpose of inducing" Plaintiffs' reliance on the misrepresentations, *id.* ¶ 99. The *Chulsky* Plaintiffs nowhere suggest that Verizon acted only negligently. The claim is therefore subject to Rule 9(b). *See In re Daou Systems*, 411 F.3d at 1028; *Shapiro*, 964 F.2d at 287. And since the fourth claim does not satisfy Rule 9(b)—a point Plaintiffs do not contest—it must be dismissed.

The *Chulsky* Plaintiffs' sixth and eighth claims—which they concede are subject to Rule 9(b)—are likewise defective. To satisfy Rule 9(b), a claim must state "the time, place, and specific content" of the allegedly false representations, as well as the identities of the parties to the statement. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-1401 (9th Cir. 1986). "Mere conclusory allegations" are insufficient. *In re Heritage Bond Litig.*, 289 F. Supp. 2d 1132, 1146 (C.D. Cal. 2003). None of the *Chulsky* claims that sound in fraud satisfies that standard. *See* Verizon Mem. at 13-14. The *Chulsky* Plaintiffs cite three paragraphs of their amended complaint to show they satisfy Rule 9(b). Opp'n at 24 (citing Am. Compl. ¶¶ 92, 97, 125). But those paragraphs—like the remainder of the amended complaint—fail to state the time, place, or specific content of Verizon's alleged misrepresentations.[5] All three of the *Chulsky* claims sounding in fraud must therefore be dismissed.[6]

---

[4] *See also In re Daou Systems, Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005), *cert. denied*, 546 U.S. 1172 (2006) (claim under § 11 of Securities Act is subject to Rule 9(b) if complaint "sounds in fraud" even though § 11 contains no element of fraud); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-1405 (9th Cir. 1996) (same); *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 287 (9th Cir. 1992) (same).

[5] *See* Am. Compl. ¶ 92 (alleging generally that Verizon "impliedly and expressly promised to protect the privacy and confidentiality of its customers' information"); *id.* ¶ 97 (Defendants "acknowledged their duty" to protect confidentiality of information); *id.* ¶ 125 (citing unidentified "promotional literature and/or written notices and/or other written material"); *see also id.* ¶ 106 (basing sixth claim on alleged misrepresentation Verizon made "in its interactions with Plaintiffs").

[6] The cases the *Chulsky* Plaintiffs cite in support of claims six and eight are inapposite. In one case, involving claims of wire fraud, the plaintiffs described the dates, locations, and specific details of allegedly fraudulent transactions. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 554-555 (9th Cir.

## IV. FAILURE TO IDENTIFY THE CONTRACTS AT ISSUE REQUIRES DISMISSAL

Even under the notice pleading standards of Rule 8 of the Federal Rules of Civil Procedure, a claim for breach of contract that fails to *identify* the contract that is the basis of the claim must be dismissed. *See* Verizon Mem. at 15 (citing cases). The third and seventh *Chulsky* claims fall well short of this standard. Although the claims refer generally to unspecified "agreements" and "promises," *Chulsky* Am. Compl. ¶¶ 91, 92, 97, as well as unidentified contracts, warranties, notices, "and/or" signs, *id.* ¶ 117, they do not identify with any specificity the particular agreements, contracts, warranties, or promises which were allegedly breached. Unable to counter this argument, the *Chulsky* Plaintiffs submit that a claim for breach of contract need not *attach* the contract that is the basis of the claim or *plead it in its entirety*. Opp'n at 24-25.[7] That is no answer. The defect in the *Chulsky* contract claims is their failure to *identify* the relevant contracts or contract terms. *See* Verizon Mem. at 15.[8] The third and seventh claims should therefore be dismissed.

## CONCLUSION

For the reasons set forth above, Verizon's Motion To Dismiss the *Chulsky*, *Riordan*, and *Bready* Complaints should be granted.

Respectfully submitted,

Dated: August 3, 2007

WILMER CUTLER PICKERING HALE AND DORR LLP

MUNGER, TOLLES & OLSON LLP

Randal S. Milch

---

2007). In the other, the court held that Rule 9(b) did not apply, and that the allegations satisfied general pleading requirements. *In re Heritage Bond Litig.*, 289 F. Supp. 2d at 1154-1155.

[7] All the cases the *Chulsky* Plaintiffs cite involve breach of contract claims where the relevant contract terms *were* adequately identified. *See Chaganti v. I2 Phone Int'l, Inc.*, No. C04-0987, 2005 WL 679664, at *3 (N.D. Cal. Mar. 11, 2005); *Northwest Pipe Co. v. Travelers Indem. Co.*, No. C02-04189, 2003 U.S. Dist. LEXIS 26416, at *10, 2003 WL 24027882, at *3 (N.D. Cal. Feb. 12, 2003); *Bicoastal Corp. v. Aetna Cas. & Sur. Co.*, No. C94-20108, 1994 WL 564539, at *3 (N.D. Cal. Oct. 4, 1994).

[8] *See, e.g.*, *Aaron v. Aguirre*, No. 06-CV-1451, 2006 U.S. Dist. LEXIS 16667, at *35, 2007 WL 959083, at *15 (S.D. Cal. Mar. 8, 2007) (general allegations that defendant breached "agreements" dismissed for failure to identify which agreements were basis of claim); *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006) (failure to identify alleged contract violates Rule 8).

By: /s/ John A. Rogovin

_____

John A. Rogovin

Attorneys for Verizon Communications Inc. and Verizon Maryland Inc.