PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov
RUPA BHATTACHARYYA
Senior Trial Counsel
rupa.bhattacharyya@usdoj.gov
ANDREW H. TANNENBAUM
Trial Attorney
andrew.tannenbaum@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20001
Phone: (202) 514-4782/(202) 514-3146
Fax: (202) 616-8460/(202) 616-8202
*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>*Shubert v. Bush*<br>(Case No. 07-00693) | **No. M:06-cv-01791-VRW**<br><br>**REPLY MEMORANDUM OF THE UNITED STATES IN SUPPORT OF THE STATE SECRETS PRIVILEGE AND THE MOTION TO DISMISS OR FOR SUMMARY JUDGMENT BY THE UNITED STATES AND THE OFFICIAL CAPACITY DEFENDANTS**<br><br>Hon. Vaughn R. Walker<br>Date: August 30, 2007<br>Time: 2:00 p.m.<br>Courtroom: 6 |

**Reply Memorandum of the United States in Support of Motion to Dismiss or for Summary Judgment, MDL No. 06-1791-VRW**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    THE STATE SECRETS PRIVILEGE IS FULLY APPLICABLE TO THIS CASE
AND PLAINTIFFS' ARGUMENTS TO THE CONTRARY ARE WITHOUT
MERIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The United States' Assertion of the State Secrets Privilege is Fully
Consistent with the Law and Not an Attempt to "Immunize"
Government Activity from Judicial Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Plaintiffs' Have Adopted an Excessively Narrow Conception of
"Military Matters" That is Inconsistent with the Law Governing the
State Secrets Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    Plaintiffs' Reliance on *Webster v. Doe* is Misplaced Because the
State Secrets Privilege Was not Invoked in That Case. . . . . . . . . . . . . . . . . . . . 6

II.    STATE SECRETS ARE NECESSARY TO THE FULL AND FAIR
ADJUDICATION OF PLAINTIFFS' CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    Plaintiffs Cannot Establish Standing Without State Secrets. . . . . . . . . . . . . . . . . 8

    B.    The Merits of Plaintiffs' Claims Could Not Be Adjudicated
Without State Secrets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.    THE COURT MUST DETERMINE THE CONSEQUENCES OF THE UNITED
STATES' SUCCESSFUL ASSERTION OF THE STATE SECRETS
PRIVILEGE ON THE PARTIES' ABILITY TO LITIGATE THIS CASE. . . . . . . . . . . 11

IV.    FISA DOES NOT PRECLUDE APPLICATION OF THE STATE SECRETS
PRIVILEGE IN CASES ALLEGING UNLAWFUL SURVEILLANCE. . . . . . . . . . . . 13

V.    THE STATUTORY PRIVILEGES INVOKED IN THIS CASE FURTHER
PROTECT THE STATE SECRETS AT ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

*Am. Civil Liberties Union v. Nat'l Security Agency*,
    ___ F.3d ___, 2007 WL 1952370 (6th Cir., July 6, 2007)................................. 2, 9

*Clift v. United States*, 597 F.2d 826 (2d Cir. 1979)....................................... 13

*Clift v. United States*, 808 F. Supp. 101 (D. Conn. 1991).................................. 13

*Dept. of the Navy v. Egan*, 484 U.S. 518 (1988)............................................ 15

*Doe v. Tenet*, 329 F.3d 1135 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005).... 4, 8

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990).......................................... 15

*Edmonds v. Fed. Bureau of Investigation*, 323 F. Supp. 2d 65 (D.D.C. 2004),
    *aff'd* 161 Fed. Appx. 6 (D.C. Cir.), *cert. denied*, __ U.S. ___, 126 S. Ct. 734 (2005)... 6

*El Masri v. United States*, 479 F.3d 296 (4th Cir. 2007),
    *petition for cert. filed*, 75 U.S.L.W. 3663 (May 30, 2007)......................... 4, 6, 7, 11

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983)....................................... 5, 7

*Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268 (4th Cir. 1980).......................... 12

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978)............................................. 5, 7

*Halkin v. Helms*, 690 F.2d 977 (1982)..................................................... 5, 7

*Halperin v. Kissinger*, 807 F.2d 180 (D.C. Cir. 1986)..................................... 7

*Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958)..................................... 13, 14

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006), *appeal pending* (2d Cir.)... 11

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998).......................................... 5, 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...................................... 9

*In re Sealed Case*, ___ F.3d ___, 2007 WL 2067029 (D.C. Cir., July 20, 2007).............. 6

*Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005).......................................... 11, 12

*Tenenbaum v. Simonini*, 372 F.2d 776 (6th Cir.), *cert. denied*, 543 U.S. 1000 (2004)..... 5

*Totten v. United States*, 92 U.S. 105 (1876).............................................. 13

*United States v. Nixon*, 418 U.S. 683 (1974).............................................. 7, 15

*United States v. Reynolds*, 345 U.S. 1 (1953)............................................. passim

*Webster v. Doe*, 486 U.S. 592 (1988)...................................................... 6, 7, 8

| | | |
|---|---|---|
| 1 | *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). | 15 |
| 2 | *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544 (2d Cir. 1991). | 12 |

**STATUTES**

| | | |
|---|---|---|
| 4 | 50 U.S.C. 403-1(i). | 14 |
| 5 | Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 *et seq.* | 13 |
| 6 | Fed. R. Civ. P. 56(b). | 2, 8, 12 |
| 7 | Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004). | 14 |
| | National Security Act, 50 U.S.C. § 403(c). | 6 |
| | Protect America Act of 2007, Pub. L. No. 110-55 (August 5, 2007). | 3 |

**INTRODUCTION**

Based on the limited public statements made by the United States about the Terrorist Surveillance Program ("TSP"), plaintiffs seek to compel sweeping disclosures of facts concerning National Security Agency ("NSA") operations that would be necessary to litigate their claims regarding alleged activities markedly different than what the United States has acknowledged. Specifically, plaintiffs challenge alleged foreign intelligence activities that they contend constitute a "dragnet" of content surveillance – "a massive, criminal domestic spying program that monitors millions of telephone and internet communications of ordinary Americans," and that "indiscriminately targets every call and every email of every person." Pls' Opp. (MDL Docket No. 335) at 1, 15. As this Court has noted, although the United States has acknowledged that under the TSP it intercepted the content of communications to or from the United States reasonably believed to involve a member or agent of al Qaeda, the United States has *denied* the existence of a broad content "dragnet" of the sort alleged by plaintiffs.

As the Director of National Intelligence ("DNI") and the NSA Director explain in their public and classified declarations, litigating plaintiffs' content "dragnet" claims, or even such threshold questions as the plaintiffs' standing to pursue such litigation, would require disclosure of information concerning NSA activities that, if revealed, would cause serious harm to national security. The DNI's assertion of the state secrets privilege must be upheld if it demonstrates a "reasonable danger" that disclosure of the information at issue will harm national security, and, in assessing that demonstration, the Court must accord the predictive judgment of the Nation's top intelligence officials the "utmost deference." Any other result would fail to accord respect to the considered views of the DNI, and it is here evident that the state secrets privilege is properly invoked.

In opposing the Government's submission, plaintiffs rely on various faulty and misguided arguments about the state secrets privilege and its impact on this case. The fundamental flaw in plaintiffs' brief is their failure to acknowledge that defendants have sought summary judgment and have established that it is apparent now that this case cannot be litigated without the exposure of state secrets. While plaintiffs concede that on a motion for summary judgment, "the plaintiff can no longer rest on allegations," *see* Pls' Opp. at 50-51, they nonetheless proceed to do exactly that

1   while claiming that the Court should ignore defendants' motion because "it comes at the pleading
2   stage, before they have even answered." *Id.* Plaintiffs make no effort to demonstrate that their case
3   can be litigated without state secrets but choose instead to rely solely on allegations, a completely
4   insufficient response to defendants' motion for summary judgment.
5       Plaintiffs' papers make it apparent that delaying full resolution of the state secrets issues
6   would be pointless and would defeat the very purpose of the privilege by putting the security of the
7   information at continued risk of disclosure, inadvertent or otherwise. Plaintiffs' only concession to
8   the fact that defendants have filed a summary judgment motion is their submission of an affidavit
9   under Federal Rule of Civil Procedure 56(f) ("Pls' 56(f) Aff.," MDL Docket No. 336). This affidavit
10  describes the evidence that plaintiffs do not have, but that they have identified as essential to the
11  litigation of their claims, including discovery into whether telecommunications carriers were
12  involved in the "interception and disclosure of plaintiffs' communications to the Government," Pls'
13  56(f) Aff. ¶ 5; "the existence and scope of the monitoring program," *id.* ¶ 7; whether plaintiffs'
14  communications were themselves intercepted; *id.* ¶¶ 9-10; the "manner" in which plaintiffs'
15  communications are intercepted, *id.* ¶ 11; and such other discovery as might be necessary "as the
16  case progresses." *Id.* at note 1. All of this information is squarely covered by the DNI's assertion
17  of the state secrets privilege, and plaintiffs' Rule 56(f) statement is an acknowledgment that such
18  basic information critical to the litigation of their claims remains secret from them.
19      Dismissal at the outset is not unusual in a case like this; it is what the state secrets doctrine,
20  as articulated by the Supreme Court and Ninth Circuit, requires. Plaintiffs' arguments about the
21  inapplicability of the state secrets privilege to their case are based on a fundamental misreading of
22  the relevant caselaw, and are discussed below. Dismissal is also the course followed recently by the
23  Sixth Circuit in *Am. Civil Liberties Union v. Nat'l Security Agency* ("*ACLU*"), __ F.3d __, 2007 WL
24  1952370 (6th Cir., July 6, 2007), in which that Court held that the state secrets privilege prevented
25  the plaintiffs from proving their standing. Plaintiffs' speculative claims of a content "dragnet" that
26  monitors the telephone calls of "every American" bears no relationship to the general description of
27  the limited nature of the TSP made by the Government, and such speculation provides an entirely
28  insufficient basis on which to lay bare the details of the United States' intelligence gathering

programs simply so that it can be demonstrated that what plaintiffs fear does not exist. In these circumstances, the Court should not hesitate to preclude the disclosure of intelligence-related information that could harm the Nation now and for many years to come. We respectfully submit that, in this case, the only way to avoid such disclosures is through dismissal.

**ARGUMENT**

**I. THE STATE SECRETS PRIVILEGE IS FULLY APPLICABLE TO THIS CASE AND PLAINTIFFS' ARGUMENTS TO THE CONTRARY ARE WITHOUT MERIT.**

The DNI and NSA Director, in their unclassified and classified submissions, have explained in detail the information that must be protected from disclosure in this case and the grave harms that confirmation, denial, or disclosure could cause to the national security. In unclassified terms, the information covered by the United States' assertion of the state secrets privilege includes information that may be needed to demonstrate that the TSP was a limited program and that the NSA does not otherwise engage in the content surveillance "dragnet" alleged by plaintiffs, as well as information that may tend to confirm or deny whether the individual plaintiffs have been subject to any alleged intelligence activities. *See* U.S. Mem. (MDL Docket No. 295) at 7-10. The explanations of these experienced officials concerning the national security harms risked by this litigation are specific and thorough, are based on their unique perspective and expertise, and are eminently reasonable.[1]

Plaintiffs' only response to the United States' comprehensive showing is to argue that the state secrets privilege is inapplicable for three reasons. Each of these arguments is without merit.

**A. The United States' Assertion of the State Secrets Privilege is Fully Consistent with the Law and Not an Attempt to "Immunize" Government Activity from Judicial Review.**

Plaintiffs contend that the United States has attempted to "transform . . . a narrow, evidentiary privilege into a sweeping immunity for violations of criminal law and the Constitution," *see* Pls' Opp. at 17, and they offer a variety of extreme hypothetical situations that have no relationship to plaintiffs' allegations or the TSP, and that would be allegedly "immunized" through the application of the state secrets privilege here. *See id.* at 38. For example, plaintiffs complain that "there is

---

[1] Further support for the invocation of the privilege may be derived from the enactment of the Protect America Act of 2007, Pub. L. No. 110-55 (August 5, 2007). *See* Defts' Notice of Statutory Amendments to the Foreign Intelligence Surveillance Act, MDL Docket No. 345.

**Reply Memorandum of the United States in Support of Motion**
**to Dismiss or for Summary Judgment, MDL No. 06-1791-VRW** 3

*nothing* the military could not do within the wide landscape of this country that could not be cloaked by the state secrets privilege," *id.*, including "taking over the broadcast networks in order to control the airwaves," *id.*, or "put[ting] a camera in every American's bedroom." *Id.* at 2. But the United States has never argued, and does not now argue, that the state secrets privilege allows it to unilaterally insulate its activities entirely from judicial review. To the contrary, the United States recognizes and appreciates the Court's important role in assessing availability of the state secrets privilege under the standards established by the Supreme Court. *See El Masri v. United States*, 479 F.3d 296, 312 (4th Cir. 2007) ( "the state secrets doctrine does not represent a surrender of judicial control over access to the courts"), *petition for cert. filed*, 75 U.S.L.W. 3663 (May 30, 2007). It is out of respect for that role that the United States has submitted detailed classified presentations (in this case and others), setting forth for the Court the specific information that needs to be protected and the harms that could result from disclosure.

We have made such detailed presentations, although the law does not require them, so that the Court may see for itself the serious dangers that litigating this case poses to the effectiveness of the United States' foreign intelligence efforts. *See United States v. Reynolds*, 345 U.S. 1, 10 (1953) ("[W]e will not go so far as to say that the court may automatically require a complete disclosure to the judge before the claim of privilege will be accepted. . . . [T]he court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers."). We have also adhered strictly to the principle that the state secrets privilege "is not to be lightly invoked," *id.* at 7, and have relied for its assertion upon the personal consideration and experienced assessment of the DNI, the Nation's senior intelligence officer. "It is invocation at that level of the executive hierarchy, and with that degree of personal assurance, that lessens the possibility of reflexive invocation of the doctrine as a routine way to avoid adverse judicial decisions." *Doe v. Tenet*, 329 F.3d 1135, 1151 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005). We ask only that the Court carefully consider all of the information provided and defer appropriately to the judgments of national security experts as to the risk of harms. Defendants' adherence to well-established law hardly amounts to a demand for "sweeping immunity," and plaintiffs' overheated rhetoric on this point is entirely misplaced. *See El-Masri*, 479

F.3d at 312-13 (rejecting plaintiffs' "invitation to rule that the state secrets privilege can be brushed aside on the ground that the President's foreign policy has gotten out of line").

### B. Plaintiffs' Have Adopted an Excessively Narrow Conception of "Military Matters" That is Inconsistent with the Law Governing the State Secrets Privilege.

Plaintiffs also argue that the state secrets privilege was not intended to extend its protection to anything other than "military matters," and that it was not intended to protect evidence concerning Government activities aimed at "civilian affairs" from disclosure in litigation. *See* Pls' Opp. at 25-28, 31-39. According to plaintiffs, "military matters" consist of only those secrets that specifically implicate the physical maneuvers and materiel of the United States' armed services. *See* Pl's Opp. at 37 & n.21. No case has ever limited the state secrets privilege in this way. *Reynolds* itself explicitly refers to "a privilege which is well established in the law of evidence" that "protects military *and* state secrets," 345 U.S. at 7 (emphasis added), and provides that courts should find the state secrets privilege successfully asserted where they are satisfied that there is a "reasonable danger" that disclosing the evidence will expose information that "in the interests of *national security*, should not be divulged." *Id.* at 10 (emphasis added). Courts applying *Reynolds* have specifically noted the broad range of secrets encompassed by the privilege:

> Possibly because the state secrets doctrine pertains generally to *national security* concerns, the privilege has been viewed as both expansive and malleable. The various harms, against which protection is sought by invocation of the privilege, include impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments.

*Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (footnotes omitted; emphasis in original); *accord Tenenbaum v. Simonini*, 372 F.2d 776, 777 (6th Cir.) (upholding state secrets privilege because "a reasonable danger exists that disclosing the information in court proceedings would harm national security interests, or would impair national defense capabilities, [or] disclose intelligence-gathering methods or capabilities. . . ."), *cert. denied*, 543 U.S. 1000 (2004); *see also Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) ("The government may use the state secrets privilege to withhold a broad range of information") (citing *Ellsberg*, *supra*, and *Halkin v. Helms* ("*Halkin I*"), 598 F.2d 1 (D.C. Cir. 1978), both applying state secrets privilege to claims arising from allegations of unconstitutional warrantless surveillance); *Halkin v. Helms* ("*Halkin II*"), 690 F.2d 977 (1982)

(same). Thus, numerous courts have upheld the state secrets privilege in cases just like this one.

### C. Plaintiffs' Reliance on *Webster v. Doe* is Misplaced Because the State Secrets Privilege Was not Invoked in That Case.

Relying on *Webster v. Doe*, 486 U.S. 592 (1988), plaintiffs argue that where a plaintiff makes a constitutional claim, the courts must balance the litigant's need for information against the holder of the privilege's need to maintain its confidentiality. *See* Pls' Opp. at 39-44 (citing *Webster*, 486 U.S. at 604). In other words, plaintiffs' argument is that, in cases raising constitutional claims, *Webster* transforms the absolute state secrets privilege into a qualified one.

Plaintiffs' reading of *Webster* is an invitation to error. Nothing in *Webster* overrules *Reynolds,* which confirmed the absolute nature of the state secrets privilege: "even the *most compelling necessity* cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." 345 U.S. at 11 (emphasis added). *Webster*, of course, did not review an Executive Branch assertion of the state secrets privilege at all, but merely held that the National Security Act, 50 U.S.C. § 403(c), did not preclude review of constitutional claims despite the agency's generalized fears of "rummaging around" in agency affairs. *Webster* provides no insight into what the Court might have done where the litigation of constitutional claims required the disclosure of information which the head of a federal agency had properly and specifically determined to be exempt from disclosure under the state secrets privilege as it has done here.

Thus, both before and after *Webster*, courts have repeatedly applied the state secrets privilege to bar the disclosure of classified information in cases where constitutional claims are raised. Most recently, in *In re Sealed Case*, ___ F.3d ___, 2007 WL 2067029 (D.C. Cir., July 20, 2007), the United States Court of Appeals for the District of Columbia specifically considered and rejected the argument that "the constitutional nature of [the] underlying claim . . . entitles [a plaintiff] to escape the binds of the federal rules" governing the use of evidence, and found that "so long as the state secrets privilege operates as a rule of evidence . . . and not as a means to modify [a plaintiff's] substantive constitutional rights, we hold that it may be invoked by the United States" in a case raising constitutional claims. *Id.*, 2007 WL 2067029 at *3. *See also El Masri v. Tenet*, 479 F.3d at 308-13 (finding that state secrets privilege barred disclosure of classified information in case raising claims for relief under the Constitution); *Edmonds v. Fed. Bureau of Investigation*, 323 F. Supp. 2d

65, 79-80 (D.D.C. 2004) (dismissing constitutional claims arising from allegedly unlawful termination on the grounds that the claims could not be litigated in the absence of information protected by the state secrets privilege), *aff'd* 161 Fed. Appx. 6 (D.C. Cir.), *cert. denied*, __ U.S. ___, 126 S. Ct. 734 (2005); *see also Ellsberg, supra, Halkin I, supra,* and *Halkin II, supra* (all evaluating the applicability of the state secrets privilege in context of constitutional claims); *Halperin v. Kissinger*, 807 F.2d 180, 188 (D.C. Cir. 1986) (the state secrets privilege sometimes "make[s] it impossible for plaintiffs to go forward with their claims for damages based on statutory and constitutional violations" because they cannot obtain "access to the facts").

At bottom, plaintiffs' argument is no more than that constitutional claims pose a more "compelling necessity" than other sorts of claims and that this necessity warrants setting the Government's claims of privilege aside. But this argument does not withstand scrutiny in the face of the Supreme Court's plain language in *Reynolds,* and there is nothing in *Webster* that suggests that the Court intended such a sweeping change in well-established common law principles governing absolute privileges, let alone a privilege grounded in the President's Article II power to protect the nation from attack.[2] *See El-Masri*, 479 F.3d at 313 n.6 ("Even if we were to conclude . . . that protecting national security is less important than litigating the merits of [plaintiffs' civil and human rights] claim, we are not at liberty to abrogate the state secrets doctrine on that basis.").

As we have explained, the state secrets privilege operates as an evidentiary privilege in this case. *See* U.S. Mem. at 12-14. Once it is determined to apply, however, it is absolute and requires the exclusion of any evidence over which the privilege is properly asserted. Although the exclusion of privileged evidence may have certain consequences, including dismissal, *see infra,* those consequences do not alter the fundamentally evidentiary nature of the privilege, and nothing in *Webster* decrees that absolute privileges change their stripes simply because they are asserted in

---

[2] Indeed, because the state secrets privilege is grounded in the Constitution, *see United States v. Nixon*, 418 U.S. 683, 710 (1974), any such holding would itself pose a "serious constitutional question." *Webster*, 486 U.S. at 603.

**Reply Memorandum of the United States in Support of Motion**
**to Dismiss or for Summary Judgment, MDL No. 06-1791-VRW**  7

cases raising constitutional claims. Plaintiffs' reliance on *Webster*, accordingly, in unavailing.[3]

## II. STATE SECRETS ARE NECESSARY FOR A FULL AND FAIR ADJUDICATION OF PLAINTIFFS' CLAIMS.

Plaintiffs rest their case on the theory that they need only show (and will be able to prove) three sets of facts to litigate their claims: (1) the existence of a warrantless content collection "dragnet"; (2) that the alleged "dragnet" is "general and indiscriminate" and not "specific and particularized," and (3) that the alleged "dragnet" is not reasonable or based upon probable cause. *See* Pl's Opp. at 10-17.[4] Plaintiffs, however, can establish neither their standing to pursue their claims nor any of these facts without information that is protected by the state secrets privilege.

### A. Plaintiffs Cannot Establish Standing Without State Secrets.

Plaintiffs' only response to defendants' motion for summary judgment is to assert that they *allege* facts sufficient to demonstrate standing, *see* Pls' Opp. at 47-50, and to claim that defendants "*concede* that plaintiffs have *alleged* standing." *Id.* at 49 (second emphasis added). Plaintiffs concede that "on a motion for summary judgment, the plaintiff can no longer rest on allegations," Pl's Opp. at 50 (internal quotations omitted), but appear to believe that they have no obligation to properly respond to defendants' motion because it is "premature" and "perplexing." *See* Pls' Opp. at 5 n. 7 (noting that defendants' motion was not accompanied by any set of undisputed facts). The Federal Rules of Civil Procedure, however, allow a defendant to seek summary judgment "at any time," Fed. R. Civ. P. 56(b), and the Local Rules of this Court do not allow the filing of a separate

---

[3] If *Webster* is considered to have any relevance to a case like this one where the United States has made a properly supported state secrets claim as opposed to a generalized objection to unspecified discovery, *Webster*, at best, only confirms the unexceptional proposition that a Court should attempt to make reasonable accommodations at the discovery and trial stages that do not sacrifice the Government's national security interests. *Webster*, 486 U.S. at 604; s*ee Doe v. Tenet*, 329 F.3d at 1153 (recognizing that the state secrets privilege is absolute but noting that *Webster* "confirms that particularly where constitutional claims are at issue, the *Reynolds* inquiry requires courts to make every effort to ascertain whether the claims in question can be adjudicated *while protecting the national security interests asserted*") (emphasis added).

[4] As previously described, plaintiffs here challenge only an alleged content collection "dragnet" program. *See* U.S. Mem. at 6 & n.4. Plaintiffs' brief confirms that their Amended Complaint states no claims concerning either the TSP, or any alleged communication records program.

**Reply Memorandum of the United States in Support of Motion
to Dismiss or for Summary Judgment, MDL No. 06-1791-VRW** 8

statement of undisputed facts without court order. *See* Local Rule 56-2(a).

In light of our pending summary judgment motion, whether plaintiffs have *alleged* standing, or even whether defendants concede that they have *alleged* standing, is entirely beside the point.[5] The question presently before the Court is whether, in light of the state secrets privilege, plaintiffs can *prove* standing, and plaintiffs make no effort to demonstrate how they can. *See, e.g., ACLU*, 2007 WL 1952370, at *37 (Gibbons, J., concurring) ("As this case was decided on the government's motion for summary judgment, the plaintiffs must set forth by affidavit or other evidence specific facts," but "plaintiffs have failed to meet this burden because there is no evidence in the record that any of the plaintiffs are personally subject to the TSP.") (citations and internal quotation marks omitted); *id.* ("On summary judgment, however, the plaintiffs' mere allegations are insufficient," and the publicly available information about the TSP "does not satisfy the plaintiffs' burden"). The Sixth Circuit held that the state secrets privilege prevented the *ACLU* plaintiffs from proving actual interception and dismissed the case for lack of standing. The same result is required here.

Plaintiffs concede that in order to *establish* standing, as opposed to merely *allege* it, they must show that "plaintiffs . . . were illegally spied upon and are being spied upon . . . by defendants." *See* Pls' Opp. at 48. Yet, plaintiffs cannot establish any such fact as to any individual plaintiff because information tending to confirm or deny whether they have been subject to alleged NSA activities falls squarely within the DNI's privilege assertion. *See* U.S. Mem. at 23-20; *ACLU*, 2007 WL 1952370, at *3 ("But the plaintiffs do not – and because of the State Secrets Doctrine cannot – produce any evidence that any of their own communications have ever been intercepted by the NSA under the TSP, or without warrants."); *id.* at *5 ("Moreover, due to the State Secrets Doctrine, the proof needed either to make or negate such a showing [of actual wiretapping] is privileged, and therefore withheld from discovery or disclosure."); *id.* at *38 (Gibbons, J., concurring) ("Under any

---

[5] Defendants do not concede that plaintiffs' speculative allegations are sufficient even to *allege* standing. The "irreducible constitutional minimum of standing" demanded by the Supreme Court requires that a plaintiff allege an "injury in fact," *i.e.*, an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotes and citations omitted). Even at the pleading stage, entirely speculative allegations like plaintiffs would be insufficient to meet this minimum.

**Reply Memorandum of the United States in Support of Motion**
**to Dismiss or for Summary Judgment, MDL No. 06-1791-VRW**　　　　　　　　9

understanding of constitutional standing, the plaintiffs are ultimately prevented from establishing standing because of the state secrets privilege.").

Plaintiffs argue that the Sixth Circuit's decision in *ACLU* is inapplicable here, but plaintiffs' arguments are obviously flawed. Plaintiffs argue that *ACLU* is inapposite because in that case plaintiffs had moved for partial summary judgment, *see* Pls' Opp. at 50, but the existence of a plaintiff's motion has no bearing whatsoever on a plaintiff's obligation to properly respond to a defendant's motion. That plaintiffs have chosen not to move for summary judgment does not relieve them of the obligation to show, in response to defendants' summary judgment motion, how they can prove their standing in light of the state secrets privilege. Plaintiffs also argue that *ACLU* is inapplicable because in that case the plaintiffs did not challenge the Government's invocation of the state secrets privilege, Pls' Opp. at 51, but as we have explained, *these* plaintiffs have failed to raise any colorable argument that the privilege has not been properly invoked. Plaintiffs also attempt to distinguish *ACLU* on the ground it involved only injunctive relief, whereas these plaintiffs seek damages for allegedly unlawful past surveillance, but again, reliance on allegations is entirely insufficient in response to defendants' summary judgment motion; plaintiffs cannot *establish* either that they have been or that they are being subjected to any of the NSA activities in light of the state secrets privilege. *See* U.S. Mem. at 23-30. Finally, plaintiffs make the remarkable argument that because an injunction stopping the alleged "dragnet" program would remedy their alleged harm, they are entitled to relief. Pls' Opp. at 53. This argument, of course, is entirely inconsistent with Article III; no court has the power to issue an injunction stopping alleged Government activity that is neither proven to exist nor proven to operate against any plaintiff in the case

### B. The Merits of Plaintiffs' Claims Could Not Be Adjudicated Without State Secrets.

Plaintiffs barely respond to the Government's argument that privileged information is necessary to litigate the merits of their claims. As described in the United States's opening brief, which we do not repeat here, information relating to the merits of plaintiffs' claims is squarely covered by the privilege assertion. *See* U.S. Mem. at 30-35.

Plaintiffs make no attempt to grapple with either the sensitive nature of these facts or the fact that they cannot establish a *prima facie* case without them. Instead, plaintiffs respond simply that

1 the program they purport to challenge is "not a secret" and that the limited public disclosures made
2 by the United States about the TSP have "opened the door" to further inquiry about alleged other
3 activities of the NSA. Pl. Opp. at 45-46. But plaintiffs do not challenge the TSP and, in any event,
4 only the most general facts about the TSP have been disclosed, such as its existence and the fact that
5 it targeted international communications involving members or agents of al Qaeda or affiliated
6 terrorist organizations. Numerous other facts about the TSP and any other NSA operations remain
7 highly classified, and forcing their disclosure based on the extremely limited public description of
8 the TSP would, as the DNI explains, cause irreparable harm to the national security by compromising
9 sensitive intelligence sources and methods. Plaintiffs essentially argue that the acknowledged
10 existence of one limited intelligence activity allows them, simply by making speculative allegations,
11 to force the disclosure of additional intelligence information or activities. The law simply does not
12 countenance such a "fishing expedition." *Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005).

Plaintiffs' approach to this case fails to take account of the fundamental principle underlying the state secrets privilege: where the United States has shown a "reasonable danger" that disclosure will harm the national security, the privilege must be upheld. *Reynolds*, 345 U.S. at 10. The DNI and NSA Director have amply demonstrated the harms that would occur if this litigation required the disclosure of classified intelligence information needed to disprove plaintiffs' content "dragnet" theory. Ignoring their judgment and allowing plaintiffs to probe for proof of any undisclosed operations would essentially put the Nation's most sensitive foreign intelligence operations at risk any time a narrow public disclosure is made or a litigant chooses to speculate. *See Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 990 (N.D. Cal. 2006), *appeal pending* (2d Cir.) (declining to "invite attempts to undermine the privilege by mere assertions of knowledge by an interested party").

### III. THE COURT MUST DETERMINE THE CONSEQUENCES OF THE UNITED STATES' SUCCESSFUL ASSERTION OF THE STATE SECRETS PRIVILEGE ON THE PARTIES' ABILITY TO LITIGATE THIS CASE.

Once the state secrets privilege is upheld as an evidentiary matter, the Court must determine the effect of the privilege on the case. In all cases the privilege requires the exclusion of the protected information from disclosure; in certain cases where state secrets are necessary to a full and fair adjudication of the case, the case cannot proceed and must be dismissed. *See* U.S. Mem. at 14-

18; *see*, *e.g.*, *El-Masri*, 479 F.3d at 306-08; *Kasza*, 133 F.3d at 1166. The Court should not delay dismissing the case when it is evident that the litigation will require state secrets; rather, in order to avoid proceedings that will unnecessarily risk the disclosure of state secrets, the Court must assess the full impact of the privilege at the time of the assertion.

As demonstrated by their own affidavit, all of the information that plaintiffs contend is necessary discovery in order for plaintiffs to respond to defendants' pending motion for summary judgment is squarely covered by the privilege assertion made by the DNI and the NSA Director. Thus, plaintiffs' Rule 56(f) Affidavit vividly illustrates the futility of delaying a full assessment of the privilege in this case. It makes no sense to defer a complete decision on the state secrets issues until after discovery; the United States would have to reassert the very same privilege in response to the discovery requests. Not only would such a process "be a waste of time and resources," *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 548 (2d Cir. 1991), but, more importantly, it would put the disclosure of national security information at continued risk. Plaintiffs would "have every incentive to probe as close to the core secrets" as possible in "attempt[ing] to make out a prima facie case," and such probing "would inevitably be revealing." *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir. 1980) (en banc) (per curiam). And the risk of inadvertent disclosures, which is always present in cases involving the handling of classified information, would persist. *See Sterling*, 416 F.3d at 344 ("Courts are not required to play with fire and chance further disclosure – inadvertent, mistaken, or even intentional – that would defeat the very purpose for which the privilege exists."); *id.* at 348 ("Inadvertent disclosure during the course of a trial – or even in camera – is precisely the sort of risk that *Reynolds* attempts to avoid."). That is why courts are called upon to give "utmost deference" to the considered judgment of the Nation's intelligence officials that the continuation of the litigation of a matter such as this is likely to result in disclosures that would be harmful to the national security.

This is not a case where state secrets are tangential and can be considered as discrete matters later as individual evidentiary issues arise. The privilege assertion here covers information at the very core of plaintiffs' claims, and the effect of the exclusion of such information on further proceedings is presently apparent. The United States' motion to dismiss or for summary judgment,

moreover, has put the issue squarely before the Court and has placed the burden on plaintiffs to respond. They have failed entirely to meet that burden.

## IV. FISA DOES NOT PRECLUDE APPLICATION OF THE STATE SECRETS PRIVILEGE IN CASES ALLEGING UNLAWFUL SURVEILLANCE.

Plaintiffs advance the clearly erroneous argument that Section 1806(f) of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 *et seq.*, abrogates the state secrets privilege, "displaces" any common law rule of outright dismissal, and establishes the procedure to follow whenever the Government invokes the privilege in a case involving allegations of unlawful electronic surveillance. Pls' Opp. at 18-23. As we have explained in other cases before this Court, there is no authority that supports either plaintiffs' argument that FISA was intended to abrogate the state secrets privilege, or the argument that the procedures set forth in FISA were intended to apply in cases where plaintiffs seek disclosure of national security information to support claims for relief in civil litigation. *See, e.g.,* MDL Docket No. 340, at 40-46. We do not repeat those arguments here, but incorporate them by reference.

One point is worth noting. Plaintiffs rely heavily on *Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958), for the proposition that a statute may waive the state secrets privilege. *See* Pl. Opp. at 17-19, 23, 36. That argument misreads *Halpern*. *Halpern* itself noted that the state secrets privilege was inapplicable in that case only because, unlike in *Reynolds* and *Totten v. United States*, 92 U.S. 105 (1876), which involved "attempts to obtain unauthorized disclosures of secret information," the *Halpern* plaintiff was "not seeking to obtain secret information which he did not possess." 258 F.2d at 44; *cf. Clift v. United States*, 597 F.2d 826, 829 (2d Cir. 1979) (in later case, under same statute and similar facts, explaining that the state secrets privilege protected facts the *Halpern* plaintiff did not know). Thus, the only question for the Court in *Halpern* was how to structure the proceedings so as to prevent disclosures of classified information to persons other than the parties who already possessed it, and the Court held that "the privilege relating to state secrets is inapplicable when disclosure to court personnel in an in camera proceeding will not make the information public or endanger the national security." 258 F.2d at 44.

Various courts have recognized the distinction between *Halpern* and cases, like this one, where plaintiffs seek disclosure of secret information *not* known to them in order to pursue litigation,

**Reply Memorandum of the United States in Support of Motion
to Dismiss or for Summary Judgment, MDL No. 06-1791-VRW** 13

and have refused to interpret *Halpern* as requiring a finding that the state secrets privilege has been waived in other cases arising under the statute at issue in that case. *See Clift v. United States*, 808 F. Supp. 101, 109-11 (D. Conn. 1991) (holding that Invention Secrecy Act does not waive the state secrets privilege because that would "turn an absolute privilege into a qualified one, which is unsupported by precedent or statute"); *see also Am. Tel. & Telegraph Co. v. United States*, 4 Cl. Ct. 157, 160 n.2 (Cl. Ct. 1983) (rejecting assertion that "the Invention Secrecy Act . . . is a waiver of the state secrets privilege" and characterizing contrary language in *Halpern* as dicta in light of the fact that "the *Halpern* court's holding was much more limited and closely tailored to that case's facts"). *Halpern* simply does not stand for the proposition that a statutory provision in general, much less FISA in particular (which *Halpern* did not consider), waives the state secrets privilege. As we have explained in our other filings, FISA does no such thing.

## V. THE STATUTORY PRIVILEGES INVOKED IN THIS CASE FURTHER PROTECT THE STATE SECRETS AT ISSUE.

Plaintiffs' effort to diminish the statutory privileges invoked by the DNI and the Director of the NSA to protect intelligence sources and methods is also unavailing. *See* Pls' Opp. at 54-57. These privileges were properly asserted – and properly apply to the information at issue – in this case, and support the Government's argument that dismissal is required as a result of the state secrets privilege. *See* U.S. Mem. at 35-38. Indeed, Congress spoke clearly, broadly, and sensibly in protecting from disclosure information pertaining to the intelligence activities of the NSA, and plaintiffs have pointed to no valid basis for contravening Congress' plain intent.

Plaintiffs argue that FISA postdates these statutory enactments and that therefore, they should yield to that later-in-time statute. This argument is misguided: the critical protective schemes established by these statutes, which are aimed at protecting specifically identified information determined to be essential to national security, have never been amended or restricted. Indeed, the "intelligence sources and methods" protection provided in 50 U.S.C. 403-1(i)(l) was *reenacted* in 2004 to transfer the authority to protect such information from the Director of Central Intelligence to the Director of National Intelligence without the slightest hesitation by Congress. Intelligence Reform and Terrorism Prevention Act of 2004, Sec. 102A(i)(1), Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1).

Plaintiffs' arguments that Section 401-1(i)(l) provides authority only to the DNI and that neither that statute nor Section 6 of the National Security Agency Act precludes discovery from third parties are also wrong. The DNI has exercised his statutory authority to protect information by invoking the privilege granted to him in this case, and in doing so, he has acted within his powers and within the rubric of the state secrets privilege which requires invocation by the head of an agency; moreover, the DNI has specifically determined that information relating to – and that may be in the hands of – third parties is protected by the privilege, and it is well recognized that control of classified information rests with Executive Branch officials. *See Dept. of the Navy v. Egan*, 484 U.S. 518, 527 (1988); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990).

Finally, plaintiffs' cursory argument that the statutory privileges would raise constitutional questions if they were construed to deny a judicial forum for plaintiffs' constitutional claims, *see* Pls. Opp. at 57-58, is not based on their citation to any authority that a statutory privilege, or any other privilege for that matter, may be abrogated simply because the information protected is relevant to a constitutional claim. In any event, the Court can easily avoid any constitutional concern about the scope of the statutory privileges in this case. As is clear from declarations submitted, the statutory privilege assertions cover the same information that is protected by the state secrets privilege in this case. *See* Public DNI Decl. ¶ 10; Public NSA Director Decl. ¶¶ 2, 11-12. Because the state secrets privilege itself is grounded in the Constitution, *see Nixon*, 418 U.S. at 710, there can be no constitutional problem with precluding the litigation of plaintiffs' claims on the ground that such adjudication would require the disclosure of privileged national security information. Indeed, the statutory authorities invoked by the DNI and the NSA Director demonstrate that the assertion of the state secrets privilege in this case is directly supported by statutory law and, thus, would be at the "highest ebb" of Presidential authority, as described in Justice Jackson's concurring opinion in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 634-38 (1952) (Jackson, J., concurring).

## CONCLUSION

For the foregoing reasons, and those set forth in the United States' opening brief, the Court should uphold the state secrets and statutory privilege assertions and grant the United States' motion to dismiss or for summary judgment.

|   |   |   |
|---|---|---|
| 1 |  | Respectfully submitted, |
| 2 |  | PETER D. KEISLER<br>Assistant Attorney General, Civil Division |
| 3 |  |  |
| 4 |  | CARL J. NICHOLS<br>Deputy Assistant Attorney General |
| 5 |  | JOSEPH H. HUNT<br>Director, Federal Programs Branch |
| 6 |  |  |
| 7 |  |   *s/ Anthony J. Coppolino*<br>ANTHONY J. COPPOLINO<br>Special Litigation Counsel |
| 8 |  | tony.coppolino@usdoj.gov |
| 9 |  |   *s/ Rupa Bhattacharyya*<br>Senior Trial Counsel |
| 10 |  | rupa.bhattacharyya@usdoj.gov |
| 11 |  |   *s/ Andrew H. Tannenbaum*<br>ANDREW H. TANNENBAUM |
| 12 |  | Trial Attorney<br>andrew.tannenbaum@usdoj.gov |
| 13 |  | U.S. Department of Justice<br>Civil Division, Federal Programs Branch |
| 14 |  | 20 Massachusetts Avenue, NW<br>Washington, D.C. 20001 |
| 15 |  | Phone: (202) 514-4782/(202) 514-4263<br>Fax: (202) 616-8460/(202) 616-8202 |
| 16 |  |  |
|  |  | *Attorneys for United States of America* |
| 17 | DATED: August 16, 2007. |  |