| | |
|---|---|
| WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>John A. Rogovin (*pro hac vice*)<br>Randolph D. Moss (*pro hac vice*)<br>Samir C. Jain SBN 181572<br>Brian M. Boynton SBN 222193<br>Catherine M.A. Carroll (*pro hac vice*)<br>1875 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363<br>Email: john.rogovin@wilmerhale.com | MUNGER, TOLLES & OLSON LLP<br>Henry Weissmann SBN 132418<br>Susan R. Szabo SBN 155315<br>Aimee A. Feinberg SBN 223309<br>355 South Grand Avenue, Suite 3500<br>Los Angeles, CA 90071-1560<br>Telephone: (213) 683-9100<br>Facsimile: (213) 687-3702<br>Email: Henry.Weissmann@mto.com |

Randal S. Milch (*pro hac vice*)
Verizon Communications Inc.
One Verizon Way, VC 43E043
Basking Ridge, NJ 07920
Telephone: (908) 559-1752
Fax: (908) 696-2136

Attorneys for Verizon Communications Inc.,
Verizon Northwest Inc., Verizon Florida Inc.,
and MCI Communications Services, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br><br>NATIONAL SECURITY AGENCY<br>TELECOMMUNICATIONS RECORDS<br>LITIGATION<br><br>This Document Relates To:<br><br>All Actions Against the MCI and Verizon<br>Defendants in the Master MCI and Verizon<br>Consolidated Complaint, Dkt. 125 | MDL NO. 06-1791 VRW<br><br>**VERIZON'S RESPONSE TO PLAINTIFFS'**<br>**SUPPLEMENTAL REQUEST FOR**<br>**JUDICIAL NOTICE AND SUPPLEMENTAL**<br>**AUTHORITIES**<br><br>Hearing Date: August 30, 2007<br>Time: 2:00 p.m.<br>Courtroom: 6 (17th floor)<br>Judge: Hon. Vaughn R. Walker |

In their supplemental submission, plaintiffs point to a recent decision by a divided panel of the D.C. Circuit, *In re Sealed Case*, No. 04-5313, 2007 WL 2067029 (D.C. Cir. July 20, 2007), and suggest that this Court should undertake an *in camera* review of any evidence protected by the state-secrets privilege to determine if such evidence would establish that Verizon's arguments on the merits are "valid." *See* Plaintiffs' Supplemental Request for Judicial Notice and Supplemental Authorities for the Motions to Dismiss or, in the Alternative, for Summary Judgment by the United States of America and Verizon (Dkt. 356), at 7-8. Only if the Court adjudicates the merits *in camera*, plaintiffs claim, should the Court conclude that the withdrawal of information protected by the state-secrets privilege impairs Verizon's ability to defend itself such that dismissal of the Complaint is required. Plaintiffs' reliance on *In re Sealed Case* is misplaced.

*In re Sealed Case* permitted a Fourth Amendment claim against a federal government employee to proceed notwithstanding the government's successful invocation of the state-secrets privilege over classified portions of two reports. The court reasoned that "the district court may properly dismiss a complaint because of the unavailability of a defense when the district court determines from appropriately tailored *in camera* review of the privileged record that the truthful state of affairs would deny a defendant a valid defense that would likely cause a trier to reach an erroneous result." *In re Sealed Case*, 2007 WL 2067029, at *10 (citations omitted).

Judge Brown dissented. Noting that "no other circuit has adopted the severe defense standard applied by the majority here," she explained that the court's standard "ignores the potential for distortion when valid defenses are excised by invocation of the privilege." *Id.* at *15-16 (Brown, J., concurring in part, dissenting in part); *see also id.* at *15-16 (describing the majority's standard as "novel" and a "sharp departure from the other circuits"). She concluded that "[w]hen application of the privilege so compromises the intrinsic fairness of a judicial

- 1 -

proceeding—whether because it has removed too much information from the plaintiff's case or from the defendant's defense, or, as in this case, both—the right solution is not simply to muddle on," but rather to dismiss the case. *Id.* at *16 (internal quotation marks omitted).[1]

1. As we explained in our opening brief, a court must dismiss a complaint when the state-secrets privilege would remove from the case evidence bearing on the defendant's ability to defend itself. *See* Memorandum in Support of Verizon's Motion to Dismiss Plaintiffs' Master Consolidated Complaint (Dkt. 274-1), at 5. This rule is required by fundamental principles of due process. The government may not "punish[] an individual without first providing that individual with an opportunity to present every available defense." *Philip Morris USA v. Williams*, 127 S. Ct. 1057, 1063 (2007) (internal quotation marks omitted). When the government subjects a defendant to crushing monetary liability, it may not deprive it of evidence that could be useful in its defense.

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007), *cert. petition filed*, No. 06-1613 (May 30, 2007), illustrates the proper approach. In *El-Masri*, the Fourth Circuit dismissed a plaintiff's claim in light of the government's assertion of the state-secrets privilege, because, *inter alia*, "defendants could not properly defend themselves without using privileged evidence." *Id.* at 309. The plaintiff alleged that he had been unlawfully detained and mistreated by the CIA with the help of private companies. The Fourth Circuit noted that each of the potential arguments available to defendants—that plaintiff had not been subjected to the treatment he alleged; that defendants were not involved in such alleged treatment; or if defendants did participate in the alleged treatment, that their involvement did not give rise to liability—involved secret information. *Id.* Any of these "*possible* defenses," the court concluded, "would require the

---

[1] The D.C. Circuit panel granted an extension of time for the filing of a petition for rehearing and rehearing en banc, making such petition due on September 12, 2007. *See* 8/9/2007 Order, Docket No. 04-5313 (D.C. Cir.).

production of witnesses whose identities are confidential and evidence the very existence of which is a state secret. We do not, of course, mean to suggest that any of these hypothetical defenses represents the true state of affairs in this matter, but they illustrate that virtually any conceivable response to El-Masri's allegations would disclose privileged information." *Id.* at 310 (emphasis added). Accordingly, the court dismissed the complaint. The court reached this result not because defendants had proffered evidence *in camera* or had established that no reasonable trier could find them liable, but because defendants' "possible" arguments all would have required secret information. This is the correct standard for courts to determine whether a complaint must be dismissed when the state-secrets privilege deprives a defendant of evidence it needs to defend itself against a plaintiff's claims.

2. *In re Sealed Case* is inapposite on its own terms. The plaintiff in *In re Sealed Case* sued a federal government employee, bringing allegations that, in substance, ran against the government itself. The government therefore was in a position to protect the defendant-employee's interests adequately, both through its control over litigation of evidence that might be shielded by the state-secrets privilege and by its discretion to indemnify a government employee. 2007 WL 2067029, at *10. In addition, the court in *In re Sealed Case* noted that the defendant relied on a discrete defense: that he had learned of plaintiff's conversation from another person rather than through an illegal wiretap. *Id.* at *8. The court reasoned that this defense presented a narrow factual question amenable to *in camera* verification. It contrasted this situation from one in which the evidence shielded by the state-secrets privilege relates not just to a single discrete factual question, but is intertwined with a variety of issues likely to be raised by the defendant. *See id.* In the latter context, the court indicated, the invocation of the state-secrets privilege may well require dismissal. *Id.* at *11-12.

Plaintiffs nevertheless invite this Court to expand the D.C. Circuit's novel approach

- 3 -

VERIZON'S RESPONSE TO PLS SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE AND
SUPPLEMENTAL AUTHORITIES                                                    MDL NO. 06-1791 VRW

dramatically. They ask the Court to adjudicate *in camera* not just a single discrete factual question, but a variety of complex issues that they say are necessary to determine the validity of Verizon's arguments. For example, plaintiffs claim that defendants' alleged communication of telephone call records to the government did not involve speech on a matter of public concern because, they argue, defendants purportedly conveyed more information than was necessary to prevent terrorist attacks. *See* Plaintiffs' Joint Opposition to Verizon's Motion to Dismiss Plaintiffs' Master Consolidated Complaint (Dkt. 319) ("Opp."), at 34-35. Although plaintiffs' Complaint establishes as a matter of law that, if a records program even exists and if it operates as plaintiffs claim, defendants' alleged communication of call records would have been on a matter of public concern, any evidentiary assessment of this argument would require a wide-ranging factual inquiry. The Court would need to examine, among other things, whether a records program existed, and if so, what records were communicated; why the government chose to request such records (if it did) rather than a narrower sub-set; what process the government used (if any) to winnow the information to identify terrorists; and how successful this alleged process was. A similarly broad inquiry would be needed to examine plaintiffs' claim that ECPA's emergency exception, 18 U.S.C. § 2702(c)(4), does not apply because there was no real emergency. *See* Opp. at 8. Although plaintiffs' allegations establish that such an emergency existed as a matter of law, plaintiffs' proposed procedure for assessing the facts they say are needed would require the Court to probe into, among other things, the existence and gravity of the threat of further terrorist attacks, what intelligence information supported the government's assessment of such threats, and the credibility of that information.

An *in camera* adjudication of these and the other issues plaintiffs say must be resolved would be unworkable. The Court may conduct *in camera* proceedings to determine whether the government has properly invoked the state-secrets privilege. Such *in camera* proceedings are the

- 4 -

traditional means for assessing a party's assertion of any kind of evidentiary privilege, and are limited to determining whether information is in fact privileged. By contrast, plaintiffs would have courts adjudicate *the merits* in an *in camera* proceeding. Whatever the propriety of such a procedure when the merits depend on a single, discrete factual question, *in camera* adjudication of the merits of alleged factual issues that, if they exist, would be complex and far-ranging and is wholly impractical.

Plaintiffs do not explain how the procedure they propose would actually function in this case. It is not clear, for example, who would decide what evidence (if any) would be submitted to the Court. In *In re Sealed Case*, the government was effectively controlling the defense and had access to the evidence protected by the state-secrets privilege. In this case, by contrast, the private companies have no control over evidence, if any exists, that may be in the government's possession and that may bear on defendants' ability to respond to plaintiffs' claims.

Where a defendant is a private company, moreover, the government's interests may not be fully aligned with the defendant's. For example, the government's desire to protect as much information as possible may be at odds with a defendant's need to support its arguments with any and every available fact. Hence, the government may or may not choose to submit secret evidence (if any exists) that a defendant would have relied upon to support its defense.

Plaintiffs also fail to describe how the meaning and relevance of any secret evidence submitted *in camera* would be determined. To the extent plaintiffs or the government would ask the Court to make this determination *ex parte*, practical and legal problems would proliferate. Without the benefit of parties' briefs and analysis, the Court would be left to evaluate a wide range of issues with no guidance on what any secret documents are, what they show, and what reasonable inferences should be drawn from them. These problems could not be overcome by requiring the government to brief these issues in lieu of the defendants. As noted, the

- 5 -

government's interests may not be fully aligned with defendants'. From the defendants' perspective, moreover, *ex parte* adjudication of the merits—an endeavor very different from an *ex parte* determination of whether a privilege is properly invoked—would be fundamentally unfair. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000) ("The fundamental requisite of due process of law is the opportunity to be heard." (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *id.* at 471 ("judicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated").

Nor do plaintiffs explain how the Court would announce the results of its *in camera* review on the merits. Any public decision about secret evidence would be inherently problematic because such a decision would tend to confirm or deny the existence and operational details of alleged intelligence programs. Indeed, the necessity of issuing even a bare-bones judgment following the *in camera* merits review that plaintiffs propose brings the risk of acknowledging the existence of alleged intelligence activities. But an *in camera* decision on the merits would be highly unusual and would raise its own set of issues. Traditionally, a check on the judiciary has been the obligation to articulate publicly the grounds for a decision on the merits. *See, e.g.*, *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

Finally, the *in camera* adjudication of wide-ranging merits issues, as plaintiffs propose, risks the very harms of disclosure that the state-secrets privilege is intended to avoid. As the Supreme Court cautioned in *United States v. Reynolds*, "the court should not jeopardize the security which the [state-secrets] privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." 345 U.S. 1, 10 (1952); *see also Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005) (rejecting plaintiff's argument "that the court could devise special procedures that would allow his suit to proceed" because "[s]uch procedures,

VERIZON'S RESPONSE TO PLS SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE AND
SUPPLEMENTAL AUTHORITIES                                                MDL NO. 06-1791 VRW

| | |
|---|---|
| 1 | whatever they might be, still entail considerable risk"). |
| 2 | For these reasons, plaintiffs' reliance on *In re Sealed Case* is misplaced. |
| 3 | |
| 4 | |
| | Dated: August 28, 2007 |
| 5 | |
| 6 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 7 | |
| | MUNGER, TOLLES & OLSON LLP |
| 8 | |
| | Randal S. Milch |
| 9 | |
| 10 | By:  /s/ John A. Rogovin |
| | _____ |
| 11 | John A. Rogovin |
| 12 | Attorneys for Verizon Communications Inc., Verizon Northwest Inc., Verizon Florida Inc., |
| 13 | and MCI Communications Services, Inc. |