PETER D. KEISLER
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS (SBN 220932)
Trial Attorneys
Email: tony.coppolino@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460
*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>(1) All Actions Against the *MCI* and *Verizon* Defendants in the Master MCI and Verizon Consolidated Complaint, Dkt. 125; (2) *Bready v. Verizon Maryland* (06-06313); (3) *Chulsky v. Cellco Partnership d/b/a/ Verizon Wireless* (06-06570); (4) *Riordan v. Verizon Communications* (06-03574). | **No. M:06-cv-01791-VRW**<br><br>**RESPONSE OF THE UNITED STATES TO PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR JUDICIAL NOTICE [Dkts. 356 & 363]**<br><br>Hon. Vaughn R. Walker<br>Date: August 30, 2007<br>Time: 2:00 p.m.<br>Courtroom: 6 |

No. M:06-cv-01791-VRW—RESPONSE OF THE UNITED STATES TO PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR JUDICIAL NOTICE [Dkts. 356 & 363]

Dockets.Justia.com

# RESPONSE OF THE UNITED STATES TO
# PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR JUDICIAL NOTICE

The United States hereby respectfully responds to Plaintiffs' first and second supplemental requests for judicial notice concerning an interview given by the Director of National Intelligence ("DNI"), congressional testimony of the Attorney General and FBI Director, letters from the Attorney General and DNI to Members of Congress, and an interview given by a Member of Congress.

**THE STATEMENTS CITED BY PLAINTIFFS DO NOT CONFIRM ANY OF THE ALLEGATIONS AT ISSUE IN THIS CASE**

The United States has no objection to judicial notice of the fact that the statements in the letters and testimony cited by Plaintiffs were made, or that the statements in the two news articles were reported. We do, however, disagree with Plaintiffs' characterization of those statements and their impact on this case. As explained below, the statements in question do not detract from the Government's arguments that this action cannot be litigated without disclosing state secrets. In particular, the statements do not confirm Plaintiffs' allegations of a telephone records program or a content surveillance dragnet, nor do they confirm that Verizon or MCI assisted with such alleged activities. The statements also provide no basis to publicly adjudicate Plaintiffs' standing or the merits of their claims.

**A.   Statements by the Attorney General and Director of National Intelligence**

First, Plaintiffs contend that, in a passing reference by the Attorney General in lengthy testimony before the Senate Judiciary Committee, as well as an interview with the DNI published in the *El Paso Times* on August 22, 2007, the Government has admitted that "the defendant telecommunications companies in this MDL proceeding" assisted "in the Government's warrantless surveillance and interception activities." Plaintiffs' Second Supplemental Request for Judicial Notice at 2. Even more specifically, Plaintiffs claim that the Government has confirmed that the assistance was provided in "the programs at issue" in this litigation. Plaintiffs' Supplemental Request for Judicial Notice ("Pl. Supp. Req.") at 3.

The statements cited by Plaintiffs, however, are far too general to have the impact on these cases that Plaintiffs suggest. The Attorney General, for example, simply stated that

unspecified "companies" have "provided help in trying to protect this country." Pl. Supp. Req., Exhibit A, at 50.[1] As even Plaintiffs concede, the Attorney General did not identify any company by name, much less state that one of the unidentified "companies" was Verizon or MCI. *See* Pl. Supp. Req. at 3 (asserting that the statement "*strongly suggested*" that the "companies" include Verizon and MCI) (emphasis added).[2] Nor did the Attorney General state what type of help such companies may have provided, much less indicate that *any* company assisted the Government with the specific alleged intelligence activities at issue in these cases or confirm the existence of such alleged activities—*i.e.*, (1) an alleged content surveillance dragnet involving the interception of "all or a substantial number of the communications transmitted through [Verizon/MCI's] key domestic telecommunications facilities," Master Verizon Compl. ¶ 168, and (2) an alleged telephone records program pursuant to which Verizon and MCI provided the NSA with call records "of all or substantially all of [its] customers" since October 2001, *id.* ¶ 169.

The DNI's statement quoted by Plaintiffs also does not reveal any information that is relevant to Plaintiffs' claims in these cases. At most, the DNI stated that unnamed private companies had assisted with the Terrorist Surveillance Program (*i.e.*, the interception of one-end foreign communications involving a member or agent of al Qaeda or an affiliated terrorist organization) and "were being sued." But like the Attorney General, the DNI did not confirm any specific intelligence-gathering relationship between the Government and any specific

---

[1] The statement was made in response to an objection by Senator Feingold that the Government has "*refuse[d]*" to publicly disclose who "cooperate[d] with the government" in "*unidentified* intelligence activities" in seeking enactment of an "immunity" provision for intelligence activities. Pl. Supp. Req., Exhibit A, at 50 (emphasis added).

[2] The general nature of the reference to "companies" is underscored by the immunity provision in the draft bill that prompted the exchange. The draft provision would grant immunity to "*any person* for the alleged provision to an element of the intelligence community of any information (including records or other information pertaining to a customer), facilities, or *any other form of assistance*, during the period of time beginning on September 11, 2001, and ending on the date that is the effective date of this Act, in connection with any alleged classified communications intelligence activity." § 408, Proposed 2008 Intelligence Reauthorization.

company, and he did not state that all companies "being sued" had assisted the Government as to the TSP. Whether or to what extent any particular company (including Verizon or MCI) entered into an intelligence gathering relationship with the Government therefore remains a state secret.

In any event, because the DNI's statement was explicitly limited to the TSP, it is of no assistance to Plaintiffs. Plaintiffs concede that they do not challenge that limited foreign intelligence activity. Instead, Plaintiffs challenge an alleged content surveillance dragnet "far broader" than the TSP, as well as the alleged collection of non-content information concerning telephone call records. Pl. Opp. at 3. The cited DNI statement does not address in any way those types of allegations, let alone confirm that such activities existed or that they were conducted with the assistance of Verizon or MCI. Indeed, the Government has denied the existence of the content dragnet alleged by Plaintiffs and has never confirmed or denied the existence of a telephone records program. And even with respect to the TSP, as discussed, the DNI did not confirm any intelligence gathering relationship between the Government and any specific company, and did not point to any specific company among those that have been sued.

While some might speculate based on publicly available statements or media reports (much of which offer varying or inconsistent accounts of alleged activities) as to whether any specific company assisted the Government with respect to a particular alleged activity, that would be just that—speculation. The Government has not confirmed or denied the existence of any intelligence gathering relationship with any specific company as to any particular intelligence activity. As explained throughout this case, disclosing such information could compromise the sources and methods of the Government's intelligence gathering efforts and aid foreign adversaries in avoiding detection.

While the alleged carrier relationship certainly presents a significant threshold issue in this litigation, there are many other reasons why Plaintiffs' claims cannot be fully and fairly adjudicated without state secrets. As we have explained, wholly apart from the relationship issue, privileged information would be needed to adjudicate Plaintiffs' standing and the merits of their claims. For example, Plaintiffs' telephone call records claims could not be adjudicated without information confirming or denying the existence of the alleged program. And even

assuming solely for the sake of argument that the existence of a call records program could be established, more specific information would be needed for an actual adjudication of Plaintiffs' claims, such as the scope of the alleged program; whether the named Plaintiffs' own records were disclosed; the duration of the alleged program and whether it is currently in operation; the purpose and operation of the alleged program; the effectiveness of the alleged program in detecting terrorist plots; the extent of any communications, if they exist, between the Government and Verizon or MCI regarding the alleged program; whether the alleged program was authorized by court order, statute, or constitutional authority; and the factual circumstances that allowed the invocation of any such authorities. *See* Reply Memorandum of the United States in Support of State Secrets Privilege and Motion to Dismiss or for Summary Judgment ("U.S. Reply"), at 36-39. The Government's denial of the content surveillance dragnet alleged by Plaintiffs, moreover, could not be fully adjudicated without establishing the nature and scope of actual NSA operations. *See id.* at 36. All of these facts, however, are covered by the state secrets assertion in this case, have not been disclosed, and are clearly outside the scope of the statements that Plaintiffs cite.

### B. Correspondence From DNI McConnell and Attorney General Gonzales

Congressional correspondence from the Attorney General and DNI cited by Plaintiffs also does not detract from the Government's arguments that this case cannot be adjudicated without state secrets. *See* Pl. Supp. Req. at 3-4. Plaintiffs contend that these letters "negate the Government's argument that no surveillance beyond the TSP has been acknowledged," and thus show that the very subject matter of this case is no longer a state secret. *Id.* at 3. The subject matter of this action, however, is not whether NSA engages in *unspecified* intelligence gathering activities other than the TSP. Rather, the very subject matter of this action is whether Verizon or MCI participated in the particular secret activities alleged in this case, *i.e.*, the alleged content surveillance "dragnet" and telephone records program.

Neither the Attorney General's letter nor the DNI's letter confirms that those particular alleged activities exist, much less discloses the details of any such activities that would be needed to assess their legality. To the contrary, the DNI's letter emphasizes that only "[o]ne particular

aspect of [the NSA's] activities, and *nothing more*, was publicly acknowledged by the President and described in December 2005, following an unauthorized disclosure," *i.e.*, the TSP. Pl. Supp. Req., Exhibit C., at 1 (emphasis added). The DNI further explained that the TSP is "the *only* aspect of the NSA activities that can be discussed publicly because it is the *only* aspect of those various activities whose existence has been officially acknowledged." *Id.* (emphasis added). Similarly, the Attorney General's letter merely states that the President authorized the NSA to undertake "a number" of unspecified "highly classified intelligence activities," and clarifies that the Attorney General's use of the term "Terrorist Surveillance Program" in his public testimony referred only to the "one aspect of the NSA activities" that the President publicly acknowledged. Pl. Supp. Req., Exhibit C, at 1.

In short, neither letter detracts from the Government's state secrets assertion. As the DNI explained, the President, after September 11, 2001, authorized the National Security Agency (NSA) to undertake a number of different intelligence activities, but only one aspect of those activities, the TSP, has been publicly acknowledged. Significantly, Plaintiffs have disclaimed any challenge to the TSP. In any event, as the DNI reiterated in his letter, "[i]t remains the case that the operational details even of the activity acknowledged and described by the President have not been made public and cannot be disclosed without harming national security." *See* Pl. Supp. Req., Ex. D.

### C. Director Mueller's July 26, 2007 Testimony

Plaintiffs claim that FBI Director Mueller somehow confirmed the existence, "at a minimum, [of] the telephone records collection program alleged by Plaintiffs," by testifying before the House Judiciary Committee that he had a "brief discussion" with former Attorney General John Ashcroft in March 2004 about "an NSA program that has been much discussed." Pl. Supp. Req. at 4 & Exhibit F at 18. Plaintiffs' characterization of Director Mueller's testimony is based on nothing but pure speculation. Director Mueller was asked about the TSP itself, *see id.*, and, in the very general passage cited, was careful not to confirm or deny any specific intelligence activities other than what had been acknowledged by the President. Director Mueller certainly did not confirm the existence of any telephone records or content dragnet

programs, or whether Verizon or MCI assisted with any such activities. Indeed, where the underlying matters at issue are highly classified, limited public references must necessarily be vague, and while Plaintiffs would like to infer that Director Mueller was referring to a telephone records program, that type of guesswork cannot qualify as the type of disclosure that could undercut a state secrets assertion. Plaintiffs' conjecture concerning the implicit meaning of Director Mueller's testimony, therefore, has no bearing on privilege assertion in this case.

### D. Interview With Representative Hoekstra

Just as they did in their initial opposition to our motion to dismiss or for summary judgment, Plaintiffs cite an interview with a Member of Congress—here, Representative Pete Hoekstra—to claim that he "confirmed that telecommunications carriers were the 'companies' that assisted in these surveillance activities." Pl. Supp. Req. at 2. As we have previously argued, press reports of statements by individual Members of Congress cannot undercut a state secrets assertion. *See* U.S. Reply at 17-19.

In any event, a close examination of that interview, and the portions that Plaintiffs omit, shows that it has no effect on the state secrets assertion in this action. From beginning to end, it is clear that the object of the entire interview is the TSP, which is not at issue in this case. *See* Pl. Supp. Req., Ex. B at 1 (introducing Congressman Hoekstra to discuss "President Bush's terrorist surveillance program"); *id.* at 3 (concluding the interview by stating "[m]uch more on the future of the terrorist surveillance program when we come back"). Nowhere in the interview does Representative Hoekstra discuss or reference allegations of a telephone records program or content surveillance dragnet. Further, even when discussing the issue of telecommunication company liability, he does so solely in reference to the TSP and without confirming or denying the participation of any particular carrier in the TSP. *See id.* at 2, 3. At most, Representative Hoekstra suggests that some unidentified companies assisted the NSA with a limited program not at issue in this case. But like the other statements discussed above, that very general suggestion by no means changes the fundamental conclusion that the particular claims at issue in this case

cannot be adjudicated without state secrets.[3]

* * * * *

Ultimately, in deciding whether the state secrets privilege has been properly asserted, the Court, according the "utmost deference" to the government's claim of privilege, must determine whether there is a "reasonable danger" that litigating the matter would divulge matters "which, in the interest of national security, should not be divulged." *Kasza*, 133 F.3d at 1166. Notwithstanding Plaintiffs' efforts to piece together some public acknowledgment of some activity, the following matters (at a minimum) remain privileged in this case: (1) whether or to what extent the alleged telephone records program exists; (2) whether or to what extent Verizon or MCI was involved in a telephone records program, if it exists or existed; (3) whether or to what extent Plaintiffs' own records or communications were disclosed or intercepted as part of a foreign intelligence gathering activity; (4) other details concerning an alleged telephone records program, if it exists or existed, including its scope, operation, nature, purpose, duration, effectiveness, and legal basis; and (5) facts that would be needed to prove that the NSA does not conduct the content surveillance dragnet that Plaintiffs allege. All of that information, as we have explained at length, would be a necessary part of any full and fair adjudication of Plaintiffs' claims, but is covered by the state secrets privilege, and it should be apparent now that the need to protect this information requires dismissal.[4]

---

[3] More generally, as we have discussed in our briefs, Plaintiffs' repeated efforts to cobble together information that they claim suggests that the alleged activities are public is out of step with existing precedent. In cases like *Tenet v. Doe*, 544 U.S. 1 (2005), and *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998), the Government generally acknowledged that an underlying activity existed (a CIA spy program in *Tenet* and an Air Force hazardous-waste facility in *Kasza*), but the courts dismissed those cases because the information inherently needed to adjudicate the claims was a state secret. *Tenet*, 544 U.S. at 4; *Kasza*, 133 F.3d at 1162-63, 1170. Here, where the very existence of the alleged telephone call records program is a state secret, and the Government has denied the alleged content surveillance dragnet, the case for dismissal is even stronger than in *Tenet* or *Kasza*.

[4] Plaintiffs' supplemental filing also addresses the recent decision in *In re Sealed Case*, No. 04-5313, 2007 WL 2067029 (D.C. Cir. July 20, 2007), and *ACLU v. NSA*, Nos. 06-2095, 06-2140, 2007 WL 1952370 (6th Cir. July 6, 2007). Because we have already addressed those

| | |
|---|---|
| 1 | **CONCLUSION** |
| 2 | For the foregoing reasons, the United States has no objection to Plaintiffs' supplemental |
| 3 | requests for judicial notice, but does disagree with Plaintiffs' characterization of the statements |
| 4 | and their impact on this litigation. None of the statements alters the fundamental conclusion that |
| 5 | this case cannot proceed without disclosing state secrets. |

DATED: August 29, 2007

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

*s/ Alexander K. Haas*
ANDREW H. TANNENBAUM
ALEXANDER K. HAAS (SBN 220932)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

---

cases in our reply brief, we do not address them further here. Of course, we will address any questions that the Court has about those cases at oral argument.