PETER D. KEISLER
Assistant Attorney General
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
Email: tony.coppolino@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates Only To:<br><br>*Center for Constitutional Rights v. Bush*, (MDL No. 07-1115) | **No. M:06-cv-01791-VRW**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT COMPLAINT**<br><br>Judge: Hon. Vaughn R. Walker<br>Courtroom 6 |

---

**M:06-CV-01791(VRW) Defendants' Opposition to Plaintiffs' Motion to Supplement Complaint**
*Center for Constitutional Rights v. Bush* (07-1115) (VRW)

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Procedural Posture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Protect America Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    Proposed Supplemental Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE
        PLAINTIFFS LACK STANDING TO CHALLENGE THE
        PROTECT AMERICA ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    The Mere Existence of Statutory Authority to Undertake
            Surveillance is Not Sufficient to Establish Standing
            Under Article III.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    An Alleged Chill on First Amendment Activities Based on
            the Existence of Authority to Undertake Surveillance is Not
            Sufficient to Establish Standing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.    Standing to Raise a Fourth Amendment Claim Also
            Requires an Individualized Showing of Harm.. . . . . . . . . . . . . . . . . . . 10

    II.   PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE
        THE PROPOSED SUPPLEMENTAL COMPLAINT WOULD
        RAISE DISTINCT CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGES**

*Alderman v. United States*, 394 U.S. 165 (1969). ............................................................................... 11

*Align Tech. Inc. v. Orthoclear*, 2006 WL 1127868 (N.D. Cal. 2006). ....................................... 12

*American Civil Liberties Union v. NSA*, 493 F.3d 644 (6th Cir. 2007). ..................................... 11

*American Fed'n of Government Employees, AFL-CIO, Local 2391, v. Martin*,
   969 F.2d 788, 791 (9th Cir. 1992) ............................................................................... 11

*Arizona Right to Life Political Action Committee v. Bayless*,
   320 F.3d 1002 (9th Cir, 2003). ..................................................................................... 9

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979). .......................................... 9

*Bras v. California Pub. Util. Comm'n*, 59 F.3d 869 (9th Cir. 1955) .......................................... 6

*California Pro Life Council v. Getman*, 328 F.3d 1088 (9th Cir. 2003). .................................... 9

*Chaset v. Fleer/Skybox Intern.*, 300 F.3d 1083 (9th Cir. 2002). ................................................ 5

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). ............................................................. 6, 8

*Foman v. Davis*, 371 U.S. 178 (1962). ................................................................................ 5

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978). ................................................................... 12

*Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982). ............................................................. 8, 9

*Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189 (9th Cir. 1975). ..................................... 6

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988) ................................................................ 4, 12

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bur.*, 701 F.2d 1276
   (9th Cir. 1983) ............................................................................................................. 5

*Laird v. Tatum*, 408 U.S. 1 (1972). ................................................................................ 2, 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 5, 6

*Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.*, 2007 WL 127997
   (N.D. Cal. 2007) ........................................................................................................ 12

*Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400 (9th Cir. 1997). ............. 5, 12

*Portland Police Ass'n v. City of Portland*, 658 F.2d 1272 (9th Cir. 1981). ............................... 7

*Rakas v. Illinois*, 439 U.S. 128 (1978). ............................................................................. 11

*San Diego Co. Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996). ..................... 5, 6, 8, 9

*Sibron v. United States*, 392 U.S. 40 (1968). .................................................................... 11

*Smith v. Commanding Officer, Air Force Accounting & Fin. Ctr.*, 555 F.2d 234 (9th Cir. 1977). .................................................................................................... 5

*State of Nevada v. Burford*, 918 F.2d 854 (9th Cir. 1990). ............................................. 5

*Steffel v. Thompson*, 415 U.S. 452 (1974). ............................................................... 7, 8

*Stoianoff v. Montana*, 695 F.2d 1214 (9th Cir. 1983). .................................................... 6

*Takhar v. Kessler*, 76 F.3d 995 (9th Cir. 1996). .............................................................. 5

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000). .......... 8, 9

*United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) ......... 7, 8, 9, 10

*United Public Workers v. Mitchell*, 330 U.S. 75 (1947). ............................................... 7

*United States for Use of Atkins v. Reiten*, 313 F.2d 673 (9th Cir. 1963). ...................... 4

*United States v. Salerno*, 481 U.S. 739 (1987). ........................................................... 11

## STATUTES & RULES

Protect America Act of 2007, Pub. L. 110-55, 121 Stat. 552. ................................. 1, 3, 4

50 U.S.C. § 1801. ........................................................................................................ 3, 4

50 U.S.C. § 1806(e). ....................................................................................................... 11

Fed. R. Civ. P. 15(d). ....................................................................................................... 4

## INTRODUCTION

Nearly two years after this suit was filed, and one day after the Court heard oral argument on pending motions as to whether Plaintiffs' original claims—challenging the presidentially-authorized and now inoperative Terrorist Surveillance Program ("TSP")—should now be dismissed, Plaintiffs filed a "Motion to Supplement Complaint," which seeks to add an entirely new and distinct claim to their complaint. Plaintiffs now wish to challenge the Protect America Act (the "Act" or "PAA"), Pub. L. 110-55, 121 Stat. 552, signed by the President on August 5, 2007, which among other things amends the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq*. ("FISA"), to clarify that the definition of "electronic surveillance" under FISA does not encompass surveillance "directed at a person reasonably believed to be located outside of the United States." *Id.* § 2 (adding § 105A to FISA). Plaintiffs contend that the PAA, which currently sunsets in February 2008, permits Defendants to conduct electronic surveillance of Plaintiffs' attorney-client conversations with clients located overseas without probable cause or a warrant and, thus, violates the Fourth and First Amendments by "directly interfer[ing] with plaintiffs' ability to carry out their professional ethical duties of confidentiality and advocacy for their clients." *See* Proposed Supp. Compl. ¶¶ 11-16.

Plaintiffs' Motion to Supplement should be denied for two reasons. *First*, Plaintiffs' motion should be denied as futile because their new claims would be subject to dismissal. Plaintiffs plainly lack standing to challenge the PAA. Plaintiffs' new claims seek to challenge the mere *existence* of statutory provisions that permit surveillance of overseas targets. Plaintiffs do not allege that they or their overseas clients have been, or will be, subject to surveillance pursuant to the PAA, but merely that the Act interferes with their professional duties because surveillance permitted by it *might*, in theory, encompass their communications. Such allegations are insufficient to establish the kind of actual case or controversy required to invoke the Court's jurisdiction under Article III. And with respect to their specific claim, Plaintiffs lack standing to pursue their Fourth Amendment challenge because they fail to allege that an actual search of their private communications has occurred. And Plaintiffs' First Amendment claim of injury, which appears to rest on their allegation that the Act "chills" their communications with overseas

clients, plainly fails under *Laird v. Tatum*, 408 U.S. 1 (1972) (allegations of a subjective chill by fear of the existence of surveillance authority are an insufficient basis for standing).

*Second*, under Ninth Circuit authority, supplemental pleadings should not be used to introduce separate, distinct, and new claims and causes of action. Plaintiffs' proposed Supplemental Complaint does just that. The heart of Plaintiffs' original complaint was that the TSP, a presidentially-authorized surveillance program, was unlawful because it violated FISA. In contrast, Plaintiffs' proposed new claims would challenge FISA itself, as amended by the PAA. The only connection between the two complaints is Plaintiffs' speculative claim that their clients might be subject to surveillance under these distinct authorities. But that connection does not justify supplementing the *existing* complaint, so that it would include challenges to plainly distinct authorities. The interests of efficiency and economy that underlie Rule 15(d) would not be served where the parties would clearly be starting a new lawsuit from the beginning and without regard to the original complaint.

For these reasons, as set forth further below, Plaintiffs' motion should be denied.

## BACKGROUND

### A. Procedural Posture

Plaintiffs originally brought suit in the Southern District of New York in January 2006 challenging the TSP, and alleged that it violated FISA as well as, *inter alia*, the separation of powers doctrine under the Constitution and the First and Fourth Amendments. *See* CCR Compl. ¶¶ 2, 46, 48, 50, 52. The United States asserted the state secrets privilege and moved to dismiss or for summary judgment on the grounds that the Plaintiffs lacked standing to challenge the TSP on the face of the Complaint, and without evidence protected by the state secrets privilege, could not prove whether they in fact had standing or the merits of their claims. *See* Dkt. No. 1 (07-1115) Item Nos. 12-16. Plaintiffs filed a motion for summary judgment, asserting that the lawfulness of the TSP could be determined based solely on public record information. *See id.* Item Nos. 5-6, 8-9. In December 2006, this case was transferred to this Court by the Judicial Panel on Multidistrict Litigation to be coordinated with a number of other lawsuits challenging alleged foreign intelligence activities in which the state secrets privilege had been or would be

invoked.

As the Court is aware, beginning in January 2007, any electronic surveillance that had been conducted under the TSP was authorized by order of the Foreign Intelligence Surveillance Court ("FISC"), and the President decided not to reauthorize the TSP. *See* Defendant's Supplemental Memorandum in Support of Motion to Dismiss or for Summary Judgment, Dkt. No. 3 (07-1115) ("USG Supp. Mem"). At that time, in addition to reiterating their prior position on all issues, Defendants contended that Plaintiffs' allegations of a chill injury caused by the TSP could not possibly support Plaintiffs' standing or demand for prospective relief where the TSP was no longer operative. *See* Defendants' Supplemental Reply Memorandum in Support of Motion to Dismiss or for Summary Judgment, Dkt. No. 14 (07-1115) ("USG Supp. Reply"). On August 9, 2007, the Court heard oral argument on the pending motions filed as to the original complaint in this action.

**B.     The Protect America Act**

Defendants previously identified for the Court the provisions of the PAA that Plaintiffs now seek to challenge, *see* Defendants' Notice of Statutory Amendments to the Foreign Intelligence Surveillance Act, Dkt. 18 (07-1115), and set forth herein a brief summary of the relevant provisions for the Court's convenience. The PAA clarifies that "[n]othing in the definition of electronic surveillance under [50 U.S.C. § 1801(f)] shall be construed to encompass surveillance directed at a person reasonably believed to be located outside of the United States," *id.* § 2 (adding § 105A to FISA), and establishes new procedures for authorizing the acquisition of foreign intelligence information concerning persons reasonably believed to be outside the United States. *See* Act, § 2 (adding § 105B to FISA). In particular, the PAA provides that the Director of National Intelligence and Attorney General may authorize such acquisition for periods of up to one year if they determine, *inter alia*, that reasonable procedures are in place for determining that the acquisition concerns a person reasonably believed to be outside the United States, that a significant purpose of the acquisition is to obtain foreign intelligence information and the minimization procedures to be used with respect to such acquisition activity meet the definition of minimization procedures under 50 U.S.C. § 1801(h). The Act provides for judicial

review by the FISC of the procedures by which the Government determines that acquisitions conducted pursuant to section 105B do not constitute electronic surveillance, *see id.* § 3 (adding § 105C to FISA), and establishes Congressional oversight requirements with respect to the acquisitions under the Act's provisions. *See id.* Finally, the Act expires 180 days after the date of enactment, although authorizations for the acquisition of foreign intelligence information pursuant to the statute shall remain in effect until their expiration. *See id.* § 6.

**C.     Proposed Supplemental Complaint**

On August 10, 2007, the day after oral argument on the pending dispositive motions, Plaintiffs moved to supplement their complaint. Plaintiffs do not allege that their communications are actually being surveilled pursuant to the PAA; instead, they claim merely that they "engage in telephonic and email communications with individuals outside the [United States]," and that the PAA "*permits* Defendants to conduct electronic surveillance of plaintiffs' attorney-client conversations without a showing of probable cause that plaintiffs or their clients are engaged in criminal activity, without a warrant, and without any meaningful judicial oversight." Prop. Supp. Compl. ¶¶ 11-12 (emphasis added). Plaintiffs' standing is thus based on the claimed injury that the "new law directly interferes with plaintiffs' ability to carry out their professional ethical duties of confidentiality and advocacy for their clients." *Id.* ¶ 13.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(d) allows parties to add claims that accrue after an initial complaint is filed. *United States for Use of Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963); *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). Rule 15(d) provides that "[u]pon motion of a party, the court may, upon reasonable notice and on such terms that are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). The rule is intended to give district courts discretion to allow supplemental pleadings where this will "promote the speedy and economical disposition of a controversy." *Keith*, 858 F.2d at 473-75. But application of this discretion is not without some important limitations.

First, supplementation of or amendment to the pleadings should be denied if the proposed

amendment would be futile and would subject the amending pleading to dismissal. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bur.*, 701 F.2d 1276, 1292-93 (9th Cir. 1983) (noting that while amendments are "commonly granted," "futile amendments should not be permitted"). A proposed supplemental complaint or amendment is futile if it would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment or a motion to dismiss. *See Smith v. Commanding Officer, Air Force Accounting & Fin. Ctr.*, 555 F.2d 234, 235 (9th Cir. 1977) (district court correctly denied motion to amend as futile due to Government's immunity). "[A]rticle III of the Constitution requires that federal courts visit the 'threshold question' of standing in every federal case," *State of Nevada v. Burford*, 918 F.2d 854, 856 (9th Cir. 1990), an issue on which the plaintiff carries the burden of establishing the elements. *See Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996). Thus, where, as here, a party is unable to establish standing, denial of a motion to supplement or amend the pleadings is proper. *Chaset v. Fleer/Skybox Intern.*, 300 F.3d 1083, 1087-88 (9th Cir. 2002).[1]

Second, the Ninth Circuit has held that "while leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action" to a case. *See Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

## ARGUMENT

### I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS LACK STANDING TO CHALLENGE THE PROTECT AMERICA ACT.

As the Court is well aware, Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and "the core component of standing is an essential and unchanging part of th[is] case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *San Diego Co. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). To have Article III standing, a plaintiff must establish three elements.

First, plaintiffs must have suffered an "injury-in-fact" to a legally

---

[1] Should the Court grant the motion to supplement, the United States intends to file a dispositive motion on Plaintiffs' new claims.

> protected interest that is both "concrete and particularized" and "actual or imminent," as opposed to "'conjectural' or 'hypothetical.'" Second, there must be a causal connection between their injury and the conduct complained of. Third, it must be "likely"-not merely "speculative"-that their injury will be "redressed by a favorable decision."

*San Diego County*, 98 F.3d at 1126 (citing *Lujan*, 504 U.S. at 560-61). In addition, "[b]ecause plaintiffs seek declaratory and injunctive relief only, there is a further requirement that they show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury." *Id.* (citing *Bras v. California Pub. Util. Comm'n,* 59 F.3d 869, 873 (9th Cir. 1995)); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 101-02 (1983).

Even a cursory examination of Plaintiffs' proposed Supplemental Complaint demonstrates that, at most, Plaintiffs' allegations of injury are based on the theory that their communications might be intercepted under the authority granted by the PAA. Plaintiffs do not allege that they actually are, or will be, subjected to surveillance undertaken pursuant to the Act, but instead allege only that the Act permits the United States to conduct surveillance that *might* target their clients. These allegations cannot serve as the basis for standing and prospective relief.

### A. The Mere Existence of Statutory Authority to Undertake Surveillance is Not Sufficient to Establish Standing Under Article III.

Plaintiffs' reliance on the mere *existence* of statutory authorization to engage in surveillance, *see* Prop. Supp. Compl. ¶ 12, is insufficient as a matter of law to satisfy their burden. It has long been recognized that the "'mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.'" *San Diego County*, 98 F.3d at 1126 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)). "'The power of courts . . . to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough.'" *Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975) (quoting *United Public*

*Workers v. Mitchell,* 330 U.S. 75, 89-90 (1947)).[2]  This is precisely the case here.  Plaintiffs challenge a law they believe may be applied to them, because it authorizes certain surveillance actions that *might* encompass their communications with overseas clients.  These allegations are insufficient to invoke the Court's Article III jurisdiction because they are based on conjecture as to whether the Act will ever be applied to Plaintiffs' communications with their clients.

*United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984), involved closely analogous circumstances.  In *United Presbyterian*, the plaintiffs—political and religious organizations and politically active individuals and journalists—challenged the lawfulness of an Executive Order that set forth the authority and procedures applicable to the collection of foreign intelligence information as in violation of statutory law as well as the First and Fourth Amendments.  *See id*. at 1376.  Plaintiffs alleged an immediate threat of being targeted for surveillance and, thus, of being deprived of their First and Fourth Amendment rights, in addition to alleging that this authority "chilled" their constitutionally protected activities.[3]  *See id.* at 1377. The D.C. Circuit held that the plaintiffs could not establish standing based on the claim that the authority granted by the Executive Order would be exercised against them.  The Court noted that the plaintiffs had "not adequately averred that any specific action is threatened or even contemplated against them," *id.* at 1380, and specifically rejected the theory that the plaintiffs were "more likely than the populace at large to be subjected to the unlawful activities which the order allegedly permits" either because they have been subjected to unlawful surveillance in the past or, because of their activities (frequent foreign travel and contact with foreigners), are likely to be targets of the surveillance authorized by the order.  *Id.*

> Even if it were conceded that these factors place the plaintiffs at greater risk than the public at large, that would still fall far short of the "genuine threat" required to support this theory of standing, [citing *Steffel v. Thompson*, 415 U.S. 452, 475 (1974)] as opposed

---

[2] *See also Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1274 (9th Cir. 1981) (Kennedy, C.J.) (citing Supreme Court's rejection of standing to challenge to the constitutionality of Hatch Act in *Mitchell* and rejecting standing to obtain prospective relief based on speculative allegations of future injury).

[3] The adequacy of an alleged "chill" injury to support standing is discussed *infra*.

> to mere "speculative" harm, [*id*. at 459]. It must be borne in mind
> that this order does not direct intelligence-gathering activities
> against all persons who could conceivably come within its scope,
> but merely authorizes them.

*Id.*; *see also Halkin v. Helms*, 690 F.2d 977, 1001-02 (D.C. Cir. 1982) (rejecting standing to raise similar challenge to surveillance authority under executive order).

Plaintiffs' challenge to the PAA is virtually identical to the scenario presented in *United Presbyterian*, and should fail for the same reasons. Plaintiffs do no more than assert that they undertake international communications with individuals overseas who might be of foreign intelligence interest, and thereby fall within the terms of possible surveillance under the Act. As in *United Presbyterian*, that falls far short of the "genuine threat" required to support this theory of standing, as opposed to mere "speculative" harm. *See* 738 F.2d at 1380.[4]

Ninth Circuit case law regarding pre-enforcement challenges to proscriptive criminal statutes further demonstrates why Plaintiffs lack standing. Even where a plaintiff challenges a statute that imposes proscriptive requirements or establishes a threat of actual prosecution under the terms of the statute, the case or controversy requirements of Article III are not satisfied by the mere existence of the statute. To be sure, if the statutory requirements directly regulate a plaintiffs' conduct, a plaintiff need not always wait for the statute or ordinance to be enforced. But she must still demonstrate that the challenged statute actually effects her by regulating her intended conduct, that she has a concrete intention to engage in the regulated or prohibited conduct, and that she faces an imminent threat of enforcement if she does so. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-41 (9th Cir. 2000) (en banc); *San Diego County*, 98 F.3d at 1126-29; *see also Steffel*, 415 U.S. at 459. Such a showing distinguishes cases in which there is "'a realistic danger of sustaining a direct injury as a result of the statute's

---

[4] Plaintiffs' allegations of injury also fail to satisfy other elements of the standing analysis. For example, Plaintiffs' alleged injury to their professional activities caused by the threat of surveillance is not fairly traceable to the Act, nor redressable by any injunction, since Plaintiffs' overseas clients may be subject to surveillance under *other* authority. *See* USG Supp. Reply at 10-12. Also, as we have previously set forth, the law is clear that prospective relief cannot be entered based on speculative concerns as to possible future applications of the governmental authority. *See id*. at 12-14 (discussing *City of Los Angeles v. Lyons*, supra).

operation or enforcement' . . . or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Thomas*, 220 F.3d at 1139 (internal cite omitted) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).[5]

In this case, of course, the PAA imposes no criminal sanction or proscriptive regulatory requirement on the Plaintiffs at all—it simply clarifies that surveillance of people outside the United States is not within the FISA's definition of electronic surveillance and, hence outside of the terms of the FISA generally (except to the extent specifically referenced in the PAA itself). Thus, Plaintiffs cannot contend that they have standing on the grounds that their conduct necessarily falls within the terms of the Act as a regulatory matter, let alone that they have been threatened with any surveillance, and thus, they cannot show that they face the kind of imminent threat of harm by the existence of the Act that might somehow warrant invoking the Court's jurisdiction. Indeed, as noted above (in the precise context presented here), courts have rejected standing to challenge the mere authorization of surveillance. *See United Presbyterian*, 738 F.2d 1377-80; *Halkin*, 690 F.2d at 1001-02.

### B. An Alleged Chill on First Amendment Activities Based on the Existence of Authority to Undertake Surveillance is Not Sufficient to Establish Standing.

To the extent Plaintiffs contend they have standing based on the related but distinct

---

[5] In *San Diego County*, the Ninth Circuit rejected plaintiffs' standing to challenge a statutory ban on certain assault weapons, finding that even though the plaintiffs alleged generalized intentions to engage in conduct that would bring them within the terms of the proscriptive statute and thereby violate the law, they had failed to establish any credible, specific threat of prosecution. *See* 98 F.3d at 1127-28. In *Thomas*, the Ninth Circuit rejected standing by landlords who brought a First Amendment challenge to a local ordinance that barred discrimination in housing based on marital status. The plaintiffs had refused to rent to unmarried couples—conduct that violated the statute—but their standing to challenge threatened enforcement was rejected where there was not yet any credible threat of an investigation or prosecution to enforce the statute. *See Thomas*, 220 F.3d at 1137-38. *See also California Pro Life Council v. Getman*, 328 F.3d 1088 (9th Cir. 2003) (standing found for pre-enforcement challenge to campaign finance disclosure laws where plaintiffs had an actual well-found fear that law would be enforced against them because their intended speech fell within the statute's reach); *Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002 (9th Cir, 2003) (same).

notion that their First Amendment activities are "chilled" by the existence of the Act (and such an allegation of injury is not clear but is certainly implied by the proposed Supplemental Complaint), this too would be insufficient to establish their standing. As Defendants have previously demonstrated, *see, e.g.*, USG Supp. Reply at 4-12, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13-14; *United Presbyterian*, 738 F.2d at 1378-79 (applying *Laird* to reject separate allegation of a chill injury). Here, as in *Laird* and *United Presbyterian,* Plaintiffs are challenging the mere existence of statutory provisions that make clear that the Government can engage in certain types of surveillance, and appear to allege they fear their communications with clients may be subject to that authority and, thus, will inhibit their First Amendment rights. But *Laird* and its progeny held that a plaintiff must be able to establish that he or she has sustained or is immediately in danger of sustaining a direct injury from the challenged action—not merely that he or she fears being subject to surveillance based on the existence of a program or authority to undertake surveillance. *See Laird*, 408 U.S. at 13. The fact that a statute may permit surveillance is quite distinct from the actual use of that authority. *See* USG Supp. Reply at 8-9 (distinguishing cases where standing was found because statutory requirements clearly were applied to plaintiff's conduct or a plaintiff was subject to a direct enforcement action). In addition, self-imposed harms taken out of a subjective fear that such authority *might* be used with respect to Plaintiffs' clients cannot establish standing. *See* USG Supp. Reply at 5-8. Put simply, Plaintiffs are merely assuming that their communications might be subject to surveillance under the terms of the PAA; but that assumption is not an "objectively reasonable" basis on which to find an actual or imminent threat of injury to support Article III standing for an alleged First Amendment chill injury or any other injury.

### C. Standing to Raise a Fourth Amendment Claim Also Requires an Individualized Showing of Harm.

The law is also clear that Fourth Amendment rights are personal rights and "'may be enforced only at the instance of one whose own protection was infringed by the search and

seizure.'"[6] *American Civil Liberties Union v. NSA*, 493 F.3d 644, 673-74 (6th Cir. 2007) (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)); *see also Alderman v. United States*, 394 U.S. 165, 174 (1969) (same). In *Sibron v. United States*, 392 U.S. 40, 59-62 (1968), for example, the Court rejected a Fourth Amendment attack on a statute authorizing police to stop and frisk individuals upon reasonable suspicion. The Court explained that the constitutionality of stop-and-frisk searches, which turns on "[r]easonable[ness]" rather on than the Fourth Amendment's specific requirements for warrants, *id.* at 62, "is pre-eminently the sort of question which can *only be decided in the concrete factual context of the individual case*," *id.* at 59 (emphasis added). Review of such stop-and-frisk laws for "compatib[ility]" with the Fourth Amendment would be "abstract and unproductive" because particular facts are required to make a Fourth Amendment claim cognizable. *Id.* The same is true here. Because the proposed supplemental complaint is entirely devoid of concrete facts alleging particularized surveillance against Plaintiffs, the Court would render no more than an advisory opinion regarding the adequacy and reasonableness of the statutory procedures set forth in the Protect America Act.[7]

---

[6] While Plaintiffs purport to bring only an as-applied claim, *see* Prayer for Relief (a), it should be noted that they could not succeed in bringing a Fourth Amendment facial challenge to the PAA. "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *American Fed'n of Government Employees, AFL-CIO, Local 2391, v. Martin*, 969 F.2d 788, 791 (9th Cir. 1992) (applying *Salerno* in the Fourth Amendment context). In addition, Congress has limited the ability to challenge even the introduction of FISA derived evidence to "aggrieved persons," 50 U.S.C. § 1806(e). Limiting challenges to the PAA to only those plaintiffs that are, in fact, aggrieved persons within the meaning of FISA ensures that courts have the necessary "concrete factual context of the individual case" needed to properly judge constitutional questions. *See Sibron*, 392 U.S. at 59.

[7] Moreover, for the reasons Defendants have previously demonstrated, Plaintiffs would not be able to adduce any evidence as to whether or not they or their clients are or have been subject to surveillance under the TSP or pursuant to the PAA in light of the state secrets privilege assertion in this case. Because Plaintiffs' proposed Supplemental Complaint does not put at issue whether Plaintiffs have actually been surveilled under the terms of the Act, and because the allegations on the face of the proposed Supplemental Complaint are insufficient to support Plaintiffs' standing for the reasons set forth herein, the Government's state secrets privilege assertion concerning whether there has been any actual surveillance of the Plaintiffs need not be

## II. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE PROPOSED SUPPLEMENTAL COMPLAINT WOULD RAISE DISTINCT CLAIMS.

Plaintiffs' Motion to Supplement their existing complaint should be denied for an additional reason: The proposed complaint raises a new and distinct cause of action and it would not serve any interest of efficiency or judicial economy to adjudicate the matter in this case. The Ninth Circuit and other courts have held that "while leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action" to a case. *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997);[8] *see also Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.*, 2007 WL 127997 (N.D. Cal. 2007) (Alsup, J.); *Align Tech. Inc. v. Orthoclear*, 2006 WL 1127868 (N.D. Cal. 2006) (Chesney, J.). A key factor in the Ninth Circuit's decision was that "the supplemental complaint challenged a different statute than the one that had been challenged in the original suit," which had gone to judgment.[9] *See Neely*, 130 F.3d at 402.

Plaintiffs' proposed Supplemental Complaint clearly raises new and distinct claims. The

---

reached in deciding the Motion to Supplement. However, if proof of actual surveillance were necessary in this case, then, as with Plaintiffs' TSP claims, the state secrets privilege would preclude its disclosure and require dismissal of the case. *See Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978).

[8] In *Neely*, Planned Parenthood sought to challenge an amended Arizona abortion statute by way of a supplemental complaint in the district court where it had obtained a judgment enjoining an earlier state abortion statute. 130 F.3d at 401. The district court permitted the supplemental pleading and enjoined the statute. The Ninth Circuit vacated and concluded that the district court abused its discretion in permitting the supplemental filing because it "involved a new and distinct action that should have been the subject of a separate suit." *Id.* at 402.

[9] While judgment was entered in *Neely*, its holding is not limited to that context. Notably, courts in this district have applied *Neely* in denying motions to supplement in ongoing cases after concluding that the supplemental complaint would raise claims that were new and distinct from the pending claims. *See Matsushita Elec.*, 2007 WL 127997 at *3-*4; *Align Tech*, 2006 WL 1127868 at *1. Also, the Ninth Circuit in *Neely* distinguished a prior Ninth Circuit case, *Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988), in which the court allowed a party to supplement the complaint on the ground that the new claims arose from alleged violations of a consent decree that had settled the case, and the supplemental pleading was related to matters over which the district court exercised continuing enforcement jurisdiction. *See Keith*, 858 F.2d at 474-75.

central premise of Plaintiffs' challenge to the TSP is that any surveillance under that program was authorized and undertaken outside of the statutory provisions of the FISA. In contrast, Plaintiffs' new claims would challenge FISA itself. *Compare* CCR Complaint, Dkt. 1 in S.D.N.Y, ¶¶ 1-2 (alleging "widespread electronic surveillance of telephone calls and emails, without warrants from any court" that is "contrary to clear statutory mandates provided in . . . FISA"), *with* CCR Proposed Supp. Complaint, Dkt. 347 in MDL 1791, ¶ 2 (seeking to challenge the "constitutionality of new legislation authorizing electronic surveillance of their attorney-client communications with overseas clients and witnesses"). If Plaintiffs are permitted to supplement their complaint, this case would go from one challenging only whether the President could authorize foreign intelligence surveillance that (they claim) is prohibited by FISA, to one making both that claim and a challenge to surveillance that *is* allowed by FISA. Indeed, the PAA enacts statutory provisions that *conflict* with the theory behind Plaintiffs' original complaint that there is no statutory authority for the prior challenged surveillance outside of the terms of FISA, and thus presently provides a further basis for dismissing Plaintiffs' original claims.

The purpose of Rule 15(d) is to serve the interests of judicial efficiency and economy by dealing with matters that arise after (but closely relate to the specific transactions or events at issue in) the original complaint. Where, as here, Plaintiffs' proposed Supplemental Complaint raises new and distinct claims that would clearly proceed on an independent tract, allowing supplementation would not serve the purpose of the rule and would be inappropriate.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Supplement the complaint in this action.

DATED: September 28, 2007           Respectfully Submitted,

                                    PETER D. KEISLER
                                    Assistant Attorney General, Civil Division

                                    CARL J. NICHOLS
                                    Deputy Assistant Attorney General

                                    DOUGLAS N. LETTER

Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

    */s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

    */s/ Alexander K. Haas*
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov