Shayana Kadidal
Michael Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012-2317
Phone: (212) 614-6438
Fax: (212) 614-6499
Email: kadidal@ccr-ny.org

David Cole
c/o Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, DC 20001
Phone: (202) 662-9078

Michael Avery
J. Ashlee Albies
NATIONAL LAWYERS GUILD
c/o Suffolk Law School
120 Tremont Street
Boston, MA 02108
Phone: (617) 573-8551

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | **No. M:06-cv-01791-VRW**<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO SUPPLEMENT COMPLAINT**<br><br>Judge: Hon. Vaughn R. Walker<br><br>*no hearing date (submitted on the papers)* |
| This Document Relates Only to:<br>*Center for Constitutional Rights v. Bush*,<br>(Case No. 07-1115) | |

M:06-CV-1791        Plaintiffs' Reply - Motion for Leave to File Supp. Complaint
*Center for Constitutional Rights v. Bush*, 07-1115

Defendants claim that Plaintiffs' attempt to supplement their complaint should be rejected because the supplemental complaint "introduce[s] separate, distinct, and new claims and causes of action" challenging "distinct [legal] authorities" for surveillance from those challenged in the original complaint, and because the proposed supplemental claims are "futile" since Plaintiffs lack standing to pursue them. Both arguments should be rejected.

"'The purpose of [Rule 15(d)] is to promote as complete an adjudication of the dispute between the parties as is possible.'" *La Salvia v. United Dairymen of Arizona*, 804 F.2d 1113 (9th Cir. 1986) (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1504). While "courts typically require some relationship between the original" complaint and the supplemental material,[1] an application for leave to supplement is "addressed to the discretion of the court and should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties" and will not prejudice the opposing party. WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1504, at 187 (2d ed. 1990) (citing cases); *see also* Advisory Committee Note, 1963 Amendments ("Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading."); *Keith v. Volpe*, 858 F.2d 467, 473-75 (9th Cir. 1988).

The dispute between the parties here is defined not by the source of legal authority underlying the claims or defenses, but by the *injury* Plaintiffs assert: the fact that Plaintiffs are required to undertake countermeasures to mitigate the harm posed by warrantless surveillance without judicially-supervised minimization.[2] "Plaintiffs maintain that the statute is unconstitutional

---

[1] WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1504, at 183 (2d ed. 1990).

[2] In Defendants' Notice of Statutory Amendments to the Foreign Intelligence Surveillance Act, Dkt. 18 (Aug. 8, 2007), at 3 lines 13-18, Defendants claim that "Plaintiffs' ... alleged chill derives from their belief that the now-inoperative [NSA Program] did not involve FISA minimization procedures," and imply that Plaintiffs chilling-effect theory could not underlie standing to challenge the new FISA amendments in the Protect America Act because "the [Act] now expressly applies FISA minimization procedures to surveillance conducted pursuant to the amendments and directed at individuals outside the United States."

At best this assertion is based on a naive reading of the new statute. Section 105B(a)(5) of the PAA mandates only that "minimization procedures to be used with respect to such acquisition activity meet the definition of minimization procedures under section 101(h)" of FISA, 50 U.S.C. § 1801(h). However, the definition in FISA section 1801(h) begins "'Minimization procedures', *with respect to electronic surveillance*, means..." (emphasis added). Since "electronic surveillance"

as applied to their conversations under the First and Fourth Amendments, and seek injunctive relief to protect their ability to consult with their clients with assurances of confidentiality essential to their communications." Proposed Supp. Compl., Dkt. 19, ¶2. The Supreme Court has allowed plaintiffs to introduce supplemental claims that were quite distinct, legally and factually, from those in the original complaint where the injuries asserted by plaintiffs were consistent over time:

> The original complaint had challenged racial segregation in schools which were admittedly public. The new complaint charged that Prince Edward County was still using its funds, along with state funds, to assist private schools while at the same time closing down the county's public schools, all to avoid the desegregation ordered in the *Brown* cases. The amended complaint thus was not a new cause of action but merely part of the same old cause of action arising out of the continued desire of colored students in Prince Edward County to have the same opportunity for state-supported education afforded to white people, a desire thwarted before 1959 by segregation in the public schools and after 1959 by a combination of closed public schools and state and county grants to white children at the Foundation's private schools. ... Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice.

*Griffin v. County Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 226-27 (1964). Here, similarly, Plaintiffs' proposed supplemental claims "aris[e] out of the continued desire" to be able to communicate in confidence with overseas clients, witnesses, co-counsel, and other important litigation participants without the need to take extraordinary countermeasures to mitigate the harm caused by the threat of unlawful warrantless surveillance.

A Ninth Circuit case cited by Defendants also upheld a grant of leave to supplement with claims based on statutory authorities not cited in the original complaint. In *Keith v. Volpe*, a court of appeals panel approved of a grant of leave even though the supplemental complaint "involve[d] additional statutes" as the basis for its new claims, those claims did not arise out of the same

---

under PAA is defined to exclude foreign-target surveillance, PAA § 105B(a)(5) imposes no minimization requirement on the executive.
    Even if the PAA did impose a minimization requirement, it would not be a *judicially-supervised* minimization requirement. The minimization procedures mentioned in PAA § 105B(a)(5) are not subject to the one-time review by the FISA court set forth in Section 3 of the Act; instead that review is limited to whether the government clearly erred in determining that the procedures in place are reasonable measures to ensure targets are reasonably believed to be outside the United States.
    In any event, a one-time judicial review of general procedures cannot fulfill the constitutional requirement that minimization procedures be subject to ongoing judicial oversight. *See* Pls. Suppl. Br., Dkt 13, at 8 n.17, 17 n.31 (describing constitutional dimensions of ongoing judicially-supervised minimization requirement).

2

M:06-CV-1791         Plaintiffs' Reply - Motion for Leave to File Supp. Complaint
                     *Center for Constitutional Rights v. Bush*

"transaction or occurrence" as the original claims, and the complaint added a party that originally was a plaintiff (the city of Hawthorne) as a defendant. In that case, the original suit was brought by groups seeking replacement housing for minorities displaced by freeway construction; when the city of Hawthorne, years later, refused to approve replacement housing developments, some of the original plaintiffs sought to supplement to add claims against the city. The Ninth Circuit held that the text of Rule 15(d) made clear that it did not mandate a transactional test (in sharp contrast to the compulsory counterclaim and joinder rules), and that the fact that "the supplemental pleading technically states a new cause of action should not be a bar to its allowance, but only a factor to be considered by the court in the exercise of its discretion." Instead, district courts should look to whether "some relationship" exists "between the newly alleged matters and the subject of the original action." *Keith*, 858 F.2d at 474; *see also Rowe v. U.S. Fidelity & Guar. Co.*, 421 F.2d 937, 943 (4th Cir. 1970) (setting forth same "some relationship" standard).[3]

---

[3] *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402-03 (9th Cir. 1997) (per curiam), is not to the contrary. There, plaintiffs attempted to file a supplemental complaint in a case where there was a four-year-old final unappealed judgment in their favor. The court of appeals panel, speaking *per curiam*, held that supplementing the original complaint would "not serve to promote judicial efficiency." (One presumes an element of judge-shopping might have been at work in plaintiffs' decision to file a supplemental four years after the resolution of the original case; by mandating a new action be filed the court of appeals presumably ensured the matter would end up back on the random assignment wheel for the district.)

The fact that the original case had been long concluded presumably is what led the court of appeals to describe the supplemental claims as a "new and distinct" cause of action. *Neely*, 130 F.3d at 402. The court was clearly *not* attempting to engage in line-drawing as to whether the claims of the supplemental were adequately close—had "some relationship"—to the claims of the original complaint. Defendants citation of *Neely* as authority for the standard that one cannot use a supplemental complaint to introduce "'a separate, distinct, and new cause of action' to a case" simply reads those words out of context. Defs. Opposition to Pls.' Motion to Supplement Compl., Dkt. 22, at 12 lines 5-8. The correct standard in ordinary circumstances is the "some relationship" standard set forth in *Keith* and the other cases discussed above.

Similarly irrelevant are *Matsushita Electric Indus. Co. ltd v. CMC Magnetics Copr.*, 2007 WL 127997 (N.D. Cal. 2007) and *Align Tech. Inc. v. Orthoclear*, 2006 WL 1127868 (N.D. Cal. 2006), cited in Defendants' Opposition at page 12. In *Matsushita*, the defendant's supplemental counterclaims were based on patents that bore no relation to the patents that were the basis of the plaintiff's claim. 2007 WL 127997 at *3 ("The proposed counterclaim [by CMC] involves an entirely different product than Matsushita's infringement claims"). In *Align Technology*, the existing claims related to defendant's alleged trademark infringement, and alleged false statements regarding dental practitioner training and certification programs; the proposed supplemental claims related to supposed hazards of dental products sold by plaintiffs. *See* 2006 WL 1127868 at *1. In

3

M:06-CV-1791     Plaintiffs' Reply - Motion for Leave to File Supp. Complaint
*Center for Constitutional Rights v. Bush*

The "some relationship" standard is not a difficult one for Plaintiffs to meet. In the instant case, as in *Griffin* and *Keith*, the facts and claims asserted in the original complaint and those in the supplemental complaint are related closely enough to merit their resolution in one proceeding before this Court. Indeed, Defendants obviously believe this is the case since they have argued that "the FISA amendments provide an additional basis for dismissal" of the *original* complaint. Defendants' Notice of Statutory Amendments to the Foreign Intelligence Surveillance Act, Dkt. 18 (Aug. 8, 2007), at 3 lines 5-6. Presumably Defendants believe they could introduce defenses based on the FISA amendments of the "Protect America Act" in a supplemental *answer* to the original complaint; it follows that it is a sound exercise of this Court's discretion to allow challenges to the constitutionality of the PAA, based on the same sort of harm, in a supplemental complaint. Such a result is consistent with "[o]ne of the basic policies of the [federal] rules": "that a party should be given every opportunity to join all of his grievances against another party regardless of when they arose." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1506, at 196 (2d ed. 1990). Barring leave to supplement the original complaint, Plaintiffs' alternative would be to file a new complaint in the Southern District of New York. (Based on their assertions concerning the differences between the two sets of claims, Defendants presumably would not request transfer to this district under the MDL statute.) That would hardly be the most efficient way to "promote the economic and speedy disposition of the entire controversy between the parties."

* * *

Defendants also argue that "[e]ven a cursory examination of Plaintiffs' proposed supplemental complaint" reveals that plaintiffs lack standing, and therefore it would be futile for this Court to grant leave to supplement. Essentially that is an argument that this Court should dismiss the supplemental claims before they are ever allowed to become a part of this case.

Unsurprisingly, the cases Defendants claim are authority for such a premature ruling on standing are all inapposite or involve exceptional factual circumstances. *See* Defs. Opposition to

---

both cases, the district courts effectively applied the "some relationship" standard—and found the supplemental claims *completely and utterly* unrelated to the existing claims.

M:06-CV-1791  Plaintiffs' Reply - Motion for Leave to File Supp. Complaint
*Center for Constitutional Rights v. Bush*

4

Pls.' Motion to Supplement Compl., Dkt. 22, at 5. None of the cases cited stand for the position that a court should generally decide standing issues on a motion for leave to supplement.

The first case Defendants cite, *Foman v. Davis*, 371 U.S. 178 (1962), simply does not stand for the proposition that "supplementation ... should be denied if the proposed amendment would be futile," Defs. Opp., Dkt. 22, at 4-5. Indeed, in *Foman* the Supreme Court reversed both the court of appeals and the district court and held that the plaintiff *should* be allowed to supplement her complaint despite the fact the motion for leave was filed after dismissal.[4]

In *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276 (9th Cir. 1983), the supplement proposed by plaintiffs would only have affected the amount of damages; it was held futile because by the time it was offered, the liability issue had already been decided against plaintiff. The court of appeals upheld the liability finding and thus found the district court was within its discretion to deny leave—although the court of appeals emphasized that use of a trial court's discretion to deny leave would be "review[ed] ... strictly" in this Circuit. 701 F.2d at 1292.[5]

In *Smith v. Commanding Officer, Air Force Acct'g & Fin. Ctr.*, 555 F.2d 234 (9th Cir. 1977) (per curiam), plaintiff attempted to amend his complaint to repair defects of subject matter jurisdiction after remand from the court of appeals. The district court actually considered the amendments and found that they failed to cure the jurisdictional defects, holding only in the

---

[4] In its very brief opinion in *Foman*, the Court said that such generous leave ought to be granted to amend "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," but that casual choice of phrase can hardly be taken (as Defendants here would read it) to mean that courts should scrutinize the proposed supplemental, and, if it fails to state a claim, leave should be withheld. (Moreover, *Foman* was decided before 1963 amendments to Rule 15(d) that made it clear that leave could be granted even if the original complaint failed to state a claim; because many courts had decided (prior to 1963) that leave should be denied when the original complaint was defective in this regard, courts might sensibly have been more inclined to simultaneously give close scrutiny to the supplemental claims at the motion for leave stage as well.)

[5] Similarly, *Chaset v. Fleer*, 300 F.3d 1083 (9th Cir. 2002) involved absurd claims that purchasers of trading cards suffered financial injury for RICO purposes when special randomly-placed bonus cards did not appear in packs they purchased. The court of appeals summarily held that no amendment could cure the "basic flaws" in the original pleading.

---

M:06-CV-1791  Plaintiffs' Reply - Motion for Leave to File Supp. Complaint
*Center for Constitutional Rights v. Bush*

5

alternative that even if they could cure the jurisdictional defects the court would deny leave to amend. *Id*. at 235. In a very terse per curiam opinion, the court of appeals came to the same conclusions: while it began its analysis by stating in the subjunctive that "[e]ven if" jurisdiction existed on the amended allegations, the district court was within its discretion in denying leave, it subsequently analyzed the merits of the jurisdictional amendments in the last paragraph of its opinion. The court's statements regarding the propriety of denying leave when amendments are futile are thus dicta.

None of this purported "Ninth Circuit authority" stands for the proposition that Defendants advance here: that courts should essentially decide the merits in favor of the supplementing party before allowing leave. Defendants' arguments that Plaintiffs lack standing would be more appropriately decided on their promised motion to dismiss.[6] At that point Plaintiffs will be able to make assertions regarding specific types of communications that are problematic under the new statute (assertions which Defendants concede may be relevant to the standing calculus, *see* Defs. Opposition to Pls.' Motion to Supplement Compl., Dkt. 22, at 8 lines 17-19), perhaps adducing expert testimony as to why the surveillance regime created by the PAA is problematic for attorneys and legal workers situated as Plaintiffs are (testimony whose relevance Defendants' counsel claimed was restricted to the specific legal regime exiting before the PAA at oral argument on August 9, 2007, Tr. at 57:5-58:25), and show the relationship of those communications to Plaintiffs' legal claims.

On the merits, many of Defendants' arguments regarding standing have already been rehashed several times, and are incorrect for the reasons laid out in Plaintiffs' previous briefs, *see* Pls. Suppl. Br., Dkt 13, at 10-26; Pls. Opp. to MTD, Dkt. 56 (S.D.N.Y.), at 2-13, 32-33; Pls. Reply in Suppt. of Summary Judgment, Dkt. 74 (S.D.N.Y.), at 1-8, and in the oral arguments before Judge Lynch, Oral Arg. Tr. (Sept. 5, 2006) at 16-37, 52-53, and this Court.

---

[6] *See* Defs. Opposition to Pls.' Motion to Supplement Compl., Dkt. 22, at 5 n.1.

6

M:06-CV-1791      Plaintiffs' Reply - Motion for Leave to File Supp. Complaint
*Center for Constitutional Rights v. Bush*

**CONCLUSION**

As Defendants point out, it is "[n]early two years after this suit was filed," and it is now nearly two months after the filing of Plaintiffs' motion for leave, yet Plaintiffs have still not been able to resolve the question of their legal rights against the threat of lawless, unchecked government surveillance. Plaintiffs urge this court to expeditiously grant their motion for leave, thereby allowing them to move for injunctive relief against the threat of surveillance under the new FISA amendments.

For the foregoing reasons, Plaintiffs request that the Court grant their motion for leave.

Respectfully submitted,

　　/s/Shayana Kadidal　　
Shayana Kadidal
Michael Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012-2317
(212) 614-6438

David Cole
(CCR Cooperating Counsel)
c/o Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, DC 20001
(202) 662-9078

Michael Avery
J. Ashlee Albies
NATIONAL LAWYERS GUILD
c/o Suffolk Law School
120 Tremont Street
Boston, MA 02108
(617) 573-8551

*Attorneys for Plaintiffs*

October 5, 2007

M:06-CV-1791　　Plaintiffs' Reply - Motion for Leave to File Supp. Complaint
*Center for Constitutional Rights v. Bush*

7

# Certificate of Service

I, Shayana Kadidal, certify that on October 5, 2007 (PDT), I caused the foregoing Reply Memorandum to be filed electronically on the ECF system and served via email on the counsel for defendants listed below.

> Anthony J. Coppolino
> Special Litigation Counsel
> United States Department of Justice
> Civil Division, Federal Programs Branch
> P.O. Box 883
> Washington, D.C. 20044
> Email: *tony.coppolino@usdoj.gov*

Dated: October 5, 2007

> s/   Shayana Kadidal
> Shayana Kadidal
> CENTER FOR CONSTITUTIONAL RIGHTS
> 666 Broadway, 7th Floor
> New York, NY  10012-2317