JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH J. HUNT
Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8470
*Attorneys for the Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Solely Relates To:<br><br>*Al-Haramain Islamic Foundation et al. v Bush, et al.* (07-109) | No. M:06-cv-01791-VRW<br><br>DEFENDANTS' CASE MANAGEMENT STATEMENT IN *Al-Haramain Islamic Foundation et al. v. Bush et al.*<br><br>Date:        February 7, 2008<br>Time:        10:00 a.m.<br>Courtroom:   19<br>Honorable Vaughn R. Walker |

## INTRODUCTION

On January 25, 2008, the Court issued an order setting a Case Management Conference in this action for February 7, 2008. Under Local Rule 16-10(d), parties are required to submit <u>joint</u> case management statements within ten (10) days of the conference. Because the Court's order setting the conference was itself issued ten business days before the conference, timely compliance was not possible, but the parties nonetheless conferred by phone to discuss our respective positions in order to prepare for the conference.

**Defendants' Case Management Statement**
*Al-Haramain Islamic Foundation et al. v. Bush et al.* **(07-109)**
**MDL No. 06-1791-VRW**

On February 4, 2008, however, without any prior notice to Defendants, the Plaintiffs filed a separate "Supplemental Case Management Statement" (hereafter "Pls. CMC Stm.") setting forth their positions on various issues that may arise at the conference. While the parties had discussed some of the issues raised in this statement, Plaintiffs did not advise the Defendants that they intended to file their own statement, nor permit Defendants to set forth their position on the various issues raised in that document. In addition, Plaintiffs did not confer with the Defendants as to the specific briefing and hearing schedule they proposed to the Court.[1]

Under these circumstances, Defendants submit their own separate statement to advise the Court of their position on the various issues raised by Plaintiffs.

**DEFENDANTS SUPPLEMENTAL CASE MANAGEMENT STATEMENT**

1. *Procedural History*

This action is on remand from the Court of Appeals for the Ninth Circuit, which upheld the United States' assertion of the state secrets privilege to bar disclosure of whether or not the Plaintiffs were subject to alleged surveillance by the Government. *See Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190 (9th Cir. 2007). The Court of Appeals remanded the matter for consideration of whether the state secrets privilege is preempted by provisions of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801-1871. *See id.* at 1205.

As the Court is aware, the Plaintiffs in this action are the Al-Haramain Islamic Foundation of Oregon ("AHIF"), an entity designated by the United States and the United Nations as a terrorist organization with ties to al Qaeda, and two attorneys who are affiliated

---

[1] With respect to initial case management conferences, Local Rule 16-9(a) provides that a party may file a separate case management statement only where it has been "unable, despite reasonable efforts, to obtain the cooperation of another party in the preparation of a joint statement," and even in that circumstance a declaration must be submitted describing the conduct of the uncooperative party that prevented the preparation of a joint statement. *See* L.R. 16-9(a). Plaintiffs would have no grounds to contend that their subsequent case management statement was the result of any lack of cooperation since they never advised Defendants that they intended to file a separate statement nor sought their cooperation in a joint statement.

**Defendants' Case Management Statement**
*Al-Haramain Islamic Foundation et al. v. Bush et al.* **(07-109)**
**MDL No. 06-1791-VRW**                                                                                                   -1-

with Al-Haramain. Plaintiffs allege that, in March and April 2004, they were subjected to warrantless foreign intelligence surveillance authorized by the President after the September 11, 2001 attacks, and seek to pursue various causes of action related to that alleged surveillance. *See* Complaint (Dkt. 07-109, Dkt. # 1, Part # 1).

On June 21, 2006, the Director of National Intelligence ("DNI") asserted the state secrets privilege in this case, and the Defendants moved to dismiss or, in the alternative, for summary judgment, on the grounds that evidence protected by the state secrets privilege is necessary to litigate this case, including in particular whether or not the Plaintiffs had been subject to alleged warrantless surveillance and thus had standing. The DNI also asserted privilege as to information contained in a classified document that had been inadvertently disclosed to Plaintiffs during Treasury Department proceedings on the designation of AHIF.

In a September 2006 ruling, the District Court for the District of Oregon (Judge King) recognized that the Government had properly invoked the state secrets privilege, but nonetheless declined to dismiss the case. *See Al-Haramain v. Bush*, 451 F. Supp. 2d 1215 (D. Or. 2006). Judge King certified that decision for interlocutory review pursuant to 28 U.S.C. § 1292(b).

By Order dated December 15, 2006, this case was transferred to this Court by the Judicial Panel on Multi-district Litigation. *See* Dkt. #97, MDL-1791.

By Order dated December 21, 2006, the Court of Appeals granted Defendants' petition for interlocutory review of the district court's denial of Defendants' motion to dismiss.

On January 17, 2007, Defendants filed a notice with this Court indicating that any surveillance that had been occurring under the Terrorist Surveillance Program was now occurring subject to orders of the Foreign Intelligence Surveillance Court and that the TSP had lapsed. *See* Dkt. #127, MDL-1791.

On March 13, 2007, this Court ordered that briefing proceed on Plaintiffs' motion for summary judgment in this case. *See* Dkt. # 196, MDL-1791.

By Order dated April 4, 2007, the Court of Appeals stayed all proceedings in this Court pending resolution of Defendants' appeal. *See* Dkt. # 227, MDL-1791.

On November 16, 2007, the Ninth Circuit reversed the denial of the Government's motion to dismiss and upheld the Government's state secrets privilege assertion to protect and exclude from this case information as to whether or not the Plaintiffs had been subject to the alleged surveillance. *See Al-Haramain*, 507 F.3d at 1202-04. In particular, the Court upheld the Government's privilege assertion as to the sealed document that had been inadvertently disclosed to the Plaintiffs, and excluded that document from the case. *See id.* at 1204. The Ninth Circuit then went on to hold that, without the privileged information, Plaintiffs could not establish their standing to litigate their claims. *See id.* at 1205. In upholding the government's assertion of the state secrets privilege, the Ninth Circuit stated, after conducting "a very careful" review of the classified record, that the basis for the privilege was "exceptionally well documented" in "[d]etailed statements." *Id*. at 1203; *see also id.* ("We take very seriously our obligation to review the documents with a very careful, indeed a skeptical eye, and not to accept at face value the government's claim or justification of privilege. Simply saying 'military secret,' 'national security,' or 'terrorist threat" or invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege. Sufficient detail must be—*and has been*—provided for us to make a meaningful examination.") (emphasis added).

The Court of Appeals declined to decide a separate issue raised on appeal—whether the FISA preempts the state secrets privilege—and remanded for the district court to consider that issue and any proceedings collateral to that determination. *See id.* at 1206.

2. *Remand Proceedings*

The principal issue raised by Plaintiffs' Supplemental Case Management Statement is whether the Court should consider Plaintiffs' motion for summary judgment in conjunction with remand proceedings concerning whether FISA Section 1806(f) preempts the state secrets privilege. *See* Pls. CMC Stm. at 2-3. Defendants disagree with Plaintiffs' proposed approach. We submit that, before the parties brief the merits of Plaintiffs' claims, the Court should first consider several threshold jurisdictional and preemption issues, including the issue identified by the Ninth Circuit in its remand, that go to whether the merits could even be reached.

There are several reasons to proceed in this manner. First, the landscape of this case has changed significantly since Plaintiffs filed their motion for summary judgment. Among other things, the challenged surveillance activity— the Terrorist Surveillance Program—is no longer operative; the Court of Appeals has upheld the state secrets privilege as to the very document on which Plaintiffs previously built their summary judgment motion; the Court of Appeals further held that Plaintiffs could not prove their standing to proceed without the disclosure of information that would harm national security. In light of these holdings, we respectfully submit that the Court should proceed carefully and address first various threshold questions as to whether and how this case may proceed, including the specific issue remanded by the Court of Appeals, before simultaneously entertaining briefing on the merits through Plaintiffs' summary judgment motion.

One threshold issue is whether there any specific claims left in this case to adjudicate. The lapse of the TSP in January 2007 forecloses any prospective relief in this case, leaving only Plaintiffs' claim for damages under FISA Section 1810. *See* 50 U.S.C. §1810. But FISA Section 1810 is not a waiver of sovereign immunity for a claim of damages against the United States, as Plaintiffs seek. *See* Compl. ¶ 27. These issues should be adjudicated before attempting to brief Plaintiffs' motion for summary judgment.

In addition, the question of whether Plaintiffs can prove their standing without harm to national security will remain at issue on remand and should be decided before reaching the merits. Whether or not Plaintiffs are "aggrieved parties" under the FISA is critical to whether they can proceed at all under Section 1806(f), assuming that provision should be applied here, and whether this issue can be addressed in light of the Ninth Circuit's ruling should also be resolved before proceeding to the merits.

Beyond this, the central question on which the Court of Appeals believed that a remand is appropriate—whether the FISA preempts the state secrets privilege (and, we would add, whether Section 1806(f) is even applicable here)—presents threshold issues that will impact whether the case can proceed. Simply put, the Court should decide *whether* certain statutory provisions (like

Section 1806(f)) apply in this case before attempting to actually apply them in an adjudication of the merits. The Court should take matters in this logical order, especially in light of the harms to national security at stake in this case (which have been recognized by the Court of Appeals). If the Court finds the case cannot proceed in light of the state secrets privilege upheld by the Court of Appeals, or if it finds that Section 1806(f) does not apply here, the case would be over.[2] To simultaneously brief myriad constitutional theories[3] at the very same time the Court is assessing whether and how the merits may proceed makes little sense in Defendants' view.

Moreover, even if Section 1806(f) of the FISA could be applied here, those proceedings would be far different than anything contemplated by normal summary judgment proceedings. *See* 50 U.S.C. § 1806(f) (authorizing *in camera, ex parte* submissions to determine the legality of surveillance); *see also Al-Haramain*, 507 F.3d at 1204 (Section 1806(f) proceedings entail "detailed procedural safeguards that must be satisfied *before* such review can be conducted"). Such proceedings under Section 1806(f) are specifically designed to be special procedures undertaken outside the normal litigation process. It is this process that would be the "proceedings collateral" to any determination that Section 1806(f) preempts the state secrets privilege, *see id*. at 1205,— not proceeding now on Plaintiffs' motion for summary judgment. Indeed, the Court of Appeals decision on the state secrets privilege should foreclose the kind of summary judgment proceedings Plaintiffs apparently still contemplate in which they may rely on

---

[2] Indeed, Plaintiffs concede that proceedings on their motion may commence only "*if this Court finds* that FISA preempts the state secrets privilege *and permits* the litigation to go forward." *See* Pls. CMC Stm. at 2 (emphasis added).

[3] Plaintiffs challenge alleged surveillance of them on numerous grounds, including as a violation of the FISA, the separation of powers doctrine, Fourth Amendment, First Amendment, and International Covenant on Civil and Political Rights—all of which were raised by Plaintiffs' prior motion for summary judgment and, if raised again, would be at issue before the Court decides whether the case can proceed at all. *See* Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment of Liability or, Alternatively, Partial Summary Adjudication of Specific Issues within Claims (Dkt. #85, Civ. 06-274-KI (D. Or.)). Plaintiffs also argued in their prior motion that the lawfulness of the now inoperative Terrorist Surveillance Program could be decided on "summary adjudication" *without* a prior determination as to their standing, *see id*. at 32-33,—which obviously is meritless.

the inadvertently disclosed sealed document that is now excluded from this case, or their memory of it. *See id.* at 1204.

The sole reason Plaintiffs advance for proceeding now to their summary judgment motion is that doing so would somehow avoid "literally years of delay that would otherwise result from consecutive decisions on the various issues and the multiple attendant interlocutory appeals that would likely be sought from each decision." *See* Pls. CMC Stm. at 3. Plaintiffs' assertion does not hold up. Assuming the case is not dismissed (as we believe it should be), whether an interlocutory appeal is necessary, permitted by law, or appropriate is a matter that could (and would) be addressed separately at the appropriate time by the parties and Court. Briefing the kind of threshold questions Defendants have outlined would not lock the case into inevitable years of delay; indeed, it may dispose of the case immediately. Conversely, attempting to brief a range of constitutional theories before the Court has decided whether and how the case should proceed would not prevent questions that may require further review from arising—such as whether the FISA preempts the state secrets privilege—nor the parties or Court from seeking further review.

For these reasons, Defendants propose that their own motion to dismiss, raising the issues describe herein, including the question remanded by the Court of Appeals, should logically be considered first, especially give the underlying national security concerns already found by the Court of Appeals.

3. *"Amicus" Briefs from Other MDL Parties*

Plaintiffs propose that amicus briefs be filed by parties in other cases in the MDL proceedings, including in the *Hepting* action that is presently still on appeal. Plaintiffs do not specify what issues will be addressed by these "amicus," but presumably these briefs would be limited to the Section 1806(f) issue described above. Defendants defer to the Court's wishes as to whether it wants to receive additional briefs from non-parties in this case on this issue. We would simply observe that this may not be necessary or appropriate at this stage in *Al-Haramain* or in light of the *Hepting* appeal.

As outlined above, this case presents unique issues and circumstances that may foreclose reaching the Section 1806(f) issue. We also note that the parties in other MDL cases are not actually "amicus" offering an opinion about whether Section 1806(f) should be applied in *Al-Haramain*—a matter about which they would have little or no foundation on which to opine. Rather, the other MDL litigants are *parties* to cases presently in this Court and likely would set forth their views concerning how Section 1806(f) should apply in their case. Some of those parties (in the *Verizon* and *Shubert* cases) have already done so in response to the Government's motions to dismiss or for summary judgment, which were heard in August 2007 and are under submission to the Court. In addition, the *Hepting* appeal is still pending, and among the issues that have been raised on appeal is whether Section 1806(f) should be applied in that challenge to the alleged actions of telecommunication carriers. Thus, if the Court wishes to consider the Section 1806(f) the issue at one time, the appropriate course for all cases may be to wait for resolution of the *Hepting* appeal. Otherwise, Defendants are ready to proceed now in *Al-Haramain* and believe the briefs of the parties in that case will address all the pertinent issues fully, but leave for the Court to decide whether other MDL parties should participate in the briefing as well.

4.  *Schedule for Proceeding*

Plaintiffs' Supplemental Case Management Statement includes a proposed schedule as to which they did not confer with Defendants, even as to Government counsel's availability on the proposed hearing date.[4] The Court had previously advised the parties "to make best efforts to resolve scheduling and other procedural issues by conferring with opposing counsel in the case(s) before contacting the court." *See* Order dated 9/10/07 (Dkt. 370, MDL-1791). Defendants request that the Court not enter the Plaintiffs' proposed schedule until the parties have had an opportunity to fully confer on the matter. Defendants will seek to do so in advance

---

[4] We understand that Plaintiffs' counsel did confer with counsel for the *Hepting* plaintiffs in developing their proposed schedule.

| | |
|---|---|
| 1 | of the case management conference.[5] |
| | *Page Limits* |
| 2 | |
| 3 | Defendants do not oppose Plaintiffs' request to file a 45-page brief so long as the page limits are reciprocal. |
| 4 | |
| 5 | February 6, 2008 |

February 6, 2008                         Respectfully Submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JOSEPH J. HUNT
Branch Director

   *s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

   *s/ Alexander K. Haas*
ALEXANDER K. HAAS
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8470
Attorneys for the Defendants

---

[5] Defendants note that Plaintiffs' proposed schedule fails to account for the fact that the Defendants would also be filing a dispositive motion and does not schedule all of the submissions associated with such a motion, including the Defendants reply brief. Also, assuming amicus briefs are filed, Plaintiffs would grant Defendants just seven (7) days to reply to an unknown number of such briefs. Finally, the proposed schedule would allow the Court less than two weeks to review all of these submissions before a hearing.

**Defendants' Case Management Statement**
*Al-Haramain Islamic Foundation et al. v. Bush et al.* **(07-109)**
**MDL No. 06-1791-VRW**                                          -8-