1   JEFFREY S. BUCHOLTZ
    Acting Assistant Attorney General
2   CARL J. NICHOLS
    Deputy Assistant Attorney General
3   DOUGLAS N. LETTER
    Terrorism Litigation Counsel
4   JOSEPH H. HUNT
    Branch Director
5   ANTHONY J. COPPOLINO
    Special Litigation Counsel
6   ALEXANDER K. HAAS
    Trial Attorney
7   U.S. Department of Justice
    Civil Division
8   Federal Programs Branch
    20 Massachusetts Avenue, NW
9   Washington, D.C. 20001
    Phone: (202) 514-4782
10  Fax:    (202) 616-8460

11  *Attorneys for the Defendants*

12

### UNITED STATES DISTRICT COURT

13

### NORTHERN DISTRICT OF CALIFORNIA

14

|  |  |
|---|---|
| ) | No. M:06-cv-01791-VRW |
| IN RE NATIONAL SECURITY AGENCY ) | |
| TELECOMMUNICATIONS RECORDS ) | **DEFENDANTS' NOTICE OF MOTION** |
| LITIGATION ) | **AND SECOND MOTION  TO DISMISS** |
| ) | **IN OR, IN THE ALTERNATIVE, FOR** |
| This Document Solely Relates To: ) | **SUMMARY JUDGMENT IN** |
| ) | *Al-Haramain Islamic Foundation et al.* |
| *Al-Haramain Islamic Foundation et al. v Bush,* ) | *v. Bush et al.* |
| *et al.*  (07-CV-109-VRW) ) | |
| ) | Date:          Wed. April 23, 2008 |
| ) | Time:          10:00 am |
| ) | Courtroom:  6, 17TH Floor |
| ) | Honorable Vaughn R. Walker |

15
16
17
18
19
20
21

### NOTICE OF MOTION AND MOTION

22

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

23

        PLEASE TAKE NOTICE that on Wednesday, April 23, 2008, at 10:00 a.m., before the

24

Honorable Vaughn R. Walker, United States District Chief Judge, in Courtroom 6, 17th Floor,

25

450 Golden Gate Avenue, San Francisco, California, the defendants in *Al-Haramain Islamic*

26

27  **Defendants' Notice of Motion and Motion to Dismiss or,**
    **in the Alternative, for Summary Judgment, in** *Al-Haramain*
    *Islamic Foundation et al. v. Bush et al.* **(07-CV-109-VRW)**
28  **MDL No. 06-1791-VRW**

*Foundation et al. v. Bush et al.* (07-CV-109-VRW) will move and hereby do move the Court, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss this action for lack of jurisdiction or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The grounds for defendants' motion under Rule 12(b)(1) are that the Court lacks jurisdiction in this action because the plaintiffs lack standing for any prospective relief and, in addition, there has been no waiver of sovereign immunity by the United States with respect to the provision under which the plaintiffs seek damages (Section 110 of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1810). In the alternative, defendants are entitled to summary judgment under Rule 56 on the grounds that the state secrets privilege is not preempted by the Foreign Intelligence Surveillance Act, and plaintiffs are otherwise foreclosed from establishing their standing in this case by the United States' assertion of the state secrets privilege as upheld by the Court of Appeals for the Ninth Circuit.

This motion is based on this notice of motion and motion, the memorandum that follows, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this motion.

Respectfully Submitted

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

**Defendants' Notice of Motion and Motion to Dismiss or, in the Alternative, for Summary Judgment, in *Al-Haramain Islamic Foundation et al. v. Bush et al.* (07-CV-109-VRW) MDL No. 06-1791-VRW**

-2-

*s/ Anthony J. Coppolino*

ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

*s/ Alexander K. Haas*

ALEXANDER K. HAAS
Trial Attorney

U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:     (202) 616-8460

*Attorneys for the Defendants*

**Defendants' Notice of Motion and Motion to Dismiss or,
in the Alternative, for Summary Judgment, in *Al-Haramain
Islamic Foundation et al. v. Bush et al.* (07-CV-109-VRW)
MDL No. 06-1791-VRW**

-3-

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8460

*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Solely Relates To:<br><br>*Al-Haramain Islamic Foundation et al. v. Bush, et al.* (07-CV-109-VRW) | No. M:06-CV-01791-VRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SECOND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT IN *Al-Haramain Islamic Foundation et al. v. Bush et al.***<br><br>Date:          April 23, 2008<br>Time:          10:00 a.m.<br>Courtroom:  6, 17th Floor<br>Honorable Vaughn R. Walker |

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS . . . . . . . . . . . 6

        A.      Plaintiffs Lack Standing to Obtain Prospective Relief  . . . . . . . . . . . . . . . . . . . . . 6

        B.      Plaintiffs Seek Damages Against the United States Under a
                Provision of FISA That Does Not Waive Sovereign Immunity  . . . . . . . . . . . . . 8

II.     THE STATE SECRETS PRIVILEGE IS NOT PREEMPTED BY FISA
        SECTION  106(f), AND ANY PROCEEDINGS UNDER THAT
        PROVISION IN THIS CASE WOULD INHERENTLY RISK HARM
        TO NATIONAL SECURITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      Congress Cannot Intrude on Executive Authority or Preempt the
                Common Law Without a Clear and Direct Action  . . . . . . . . . . . . . . . . . . . . . . . 13

        B.      Section 1806(f) Serves a Fundamentally Different Purpose Than
                the State Secrets Privilege and Does Not Preempt the Privilege . . . . . . . . . . . . 15

        C.      Plaintiffs' Standing to Proceed Under Section 1806(f) Could Not
                be Established Without Causing the Same Harm to National Security
                Found by the Ninth Circuit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*ACLU Foundation v. Barr*, 952 F.2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Alderman v. United States*, 394 U.S. 165 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Al-Haramain v. Bush*, 451 F. Supp. 2d 1215 (D. Or. 2006), *rev'd*,
        507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . passim

*Al-Haramain Islamic Foundation v. U.S. Dept. of the Treasury*,
        (Civ. 07-1155-KI) (D. Or.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Armstrong v. Bush,* 924 F.2d 282 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Asmar v. U.S. Dept. of Treasury, I.R.S.*, 680 F. Supp. 248 (E.D. Mich. 1987) . . . . . . . . . . . 11-12

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) . . . . . . . . . . . . . . . . . . . . . . 15

*Balser v. Dep't. of Justice, Office of U.S. Trustee*, 327 F.3d 903
        (9th Cir. 2003), *cert. denied*, 541 U.S. 1041 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blum v. Yaretsky*, 457 U.S. 991 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*California v. United States*, 215 F.3d 1005 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Church of Scientology of California v. United States Department of
        Justice*, 612 F.2d 417 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Coleman v. Calderon*, 210 F.3d 1047 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*County of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985) . . . . . . . . . . . . . . . . . . . . . . . 15

*Department of the Navy v. Egan*, 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Doe v. Tenet*, 544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Dunn & Black, P.S. v. United States,* 492 F.3d 1084 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . 8, 12

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building &
        Construction Trades Council*, 485 U.S. 568 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007),
        *cert. denied*, 128 S. Ct. 373 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gilbert v. DaGrossa*, 756 F.2d 1455 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Grand Jury Investigation*, 431 F. Supp.2d 584 (E.D. Va. 2006) . . . . . . . . . . . . . . . . . . . 19

*In re Grand Jury Proceedings*, 856 F.2d 685 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Isbrandtsen Co. v. Johnson*, 343 U.S. 779 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 21

*Lane v. Pena*, 518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Linder v. National Security Agency,* 94 F.3d 693 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 21

*Little Earth of United Tribes, Inc. v. Dept. of Housing and Urban*
*Development*, 807 F.2d 1433 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978
(9th Cir. 1999), *cert. denied*, 528 U.S. 1156 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Multi Denominational Ministry of Cannabis v. Gonzales*,
474 F. Supp. 2d 1133 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*In re Niles*, 106 F.3d 1456 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*National Ass'n of Home Builders v. Defenders of Wildlife*,
127 S. Ct. 2518 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co.*,
464 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oregon Natural Resources Council, Inc. v. Kantor*, 99 F.3d 334
(9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*O'Shea v. Littleton*, 414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pit River Home & Agr. Co-op. Ass'n v. United States*,
30 F.3d 1088 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Public Citizen v. U.S. Department of Justice*, 491 U.S. 440 (1989) . . . . . . . . . . . . . . . . . . . . . 14

*Rizzo v. Goode*, 423 U.S. 362 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Sealed Case*, 310 F.3d 717 (For. Intel. Surv. Rev. 2002) . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005), *cert. denied*, 546 U.S. 1093 (2006) . . . . . . . . 24

*Taglianetti v. United States,* 394 U.S. 316 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Cavanagh*, 807 F.2d 787 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Damrah*, 412 F.3d 618 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Johnson*, 952 F.2d 565 (1st Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Nixon*, 418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Reynolds*, 345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

*United States v. Testan*, 424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Texas*, 507 U.S. 529 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Washington*, 235 F.3d 438 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vacek v. U.S. Postal Serv.*, 447 F.3d 1248 (9th Cir. 2006),
    *cert. denied*, 127 S. Ct. 2122 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Washington Dep't of Soc. & Health Servs. v. Estate of Keffeler*,
    537 U.S. 371 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Watt v. Alaska*, 451 U.S. 259 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*West v. Federal Aviation Admin.*, 830 F.2d 1044 (9th Cir. 1987),
    *cert. denied*, 485 U.S. 1007 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weston v. Lockheed Missiles & Space Co.*, 881 F.2d 814 (9th Cir. 1989) . . . . . . . . . . . . . . . . 16

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## <u>UNITED STATES CONSTITUTION</u>

U.S. Const. amend IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const. amend V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const. amend VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATUTORY LAW**

18 U.S.C. § 2510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 2520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 2712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 2712(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2672 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. §§ 2000aa-6(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

50 U.S.C. § 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

50 U.S.C. § 1801 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

50 U.S.C. § 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18, 23

50 U.S.C. § 1801(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. § 1806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1806(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,17

50 U.S.C. § 1806(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

50 U.S.C. § 1806(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,19

50 U.S.C. § 1806(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

50 U.S.C. § 1806(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

50 U.S.C. § 1825(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. § 1845(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 4(i)(2)(B), (m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 12(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## **LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 95-1720  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

S. Rep. No. 95-604, 1978 U.S.C.C.A.N. 3954  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

S. Rep. 95-701, 1978 U.S.C.C.A.N. 3973  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

## ISSUES TO BE DECIDED

1. Whether the Court lacks jurisdiction on the grounds that: (i) plaintiffs lack standing to obtain prospective relief; and (ii) there has been no waiver of sovereign immunity for damages against the United States under Section 110 of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1810.

2. Whether Section 106(f) of the FISA, 50 U.S.C. § 1806(f), preempts the state secrets privilege assertion that has been upheld by the Court of Appeals in this case.

## INTRODUCTION

This action is on remand from the Court of Appeals. Plaintiffs are the Al-Haramain Islamic Foundation of Oregon ("AHIF-Oregon"), an entity designated by the United States as a "Specially Designated Global Terrorist," *see* Complaint ¶¶ 4, 21 (Dkt. 07-109, No. 1, Part # 1), and two U.S. citizens who aver that they are attorneys that have "business and other relationships" with AHIF-Oregon, *see id.* ¶¶ 4-6. Plaintiffs allege that, in March and April 2004, they were subject to warrantless foreign intelligence surveillance authorized by the President after the September 11, 2001 attacks, and they seek to pursue various causes of action related to that alleged surveillance.

The landscape of this case has changed significantly since this action was filed two years ago. The Court of Appeals has now upheld the Government's state secrets privilege assertion and has barred disclosure of whether or not plaintiffs were subject to surveillance. *See Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190, 1201-05 (9th Cir. 2007). The Court of Appeals agreed that the national security would be harmed by disclosure of this information and held as a result that the plaintiffs would be unable to establish their standing. *See id.* at 1205-06. The Court remanded the case for consideration of whether the state secrets privilege is preempted by provisions of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 *et seq. See id.* at 1205.

Before that issue can be reached, however, the Court must have jurisdiction to proceed and, as we explain below, jurisdiction is now lacking in this case. Plaintiffs challenge alleged warrantless surveillance authorized by the President after 9/11 (under the so-called Terrorist Surveillance Program or "TSP"), but that program lapsed in January 2007. As a result, plaintiffs

cannot establish their standing to obtain prospective declaratory and/or injunctive relief with respect to the alleged surveillance. In addition, plaintiffs' *retrospective* claim for damages based on alleged surveillance in 2004 is based on Section 110 of the FISA, *see* 50 U.S.C. §1810, but that provision does not waive the sovereign immunity of the United States.

Assuming, *arguendo*, these jurisdictional bars could be overcome and the Court reaches the question remanded, the state secrets privilege, which is rooted in the constitutional authority of the President as well as the common law, cannot be preempted absent an unmistakably clear directive by Congress that it intended to do so. Nothing in the text or legislative history of the FISA says anything about preempting the state secrets privilege—let alone reflects a clear and unambiguous intention to do so. In particular, Section 106(f) of the FISA, *see* 50 U.S.C. § 1806(f), the provision that plaintiffs have asserted preempts the privilege,[1] applies to those cases where the Government has acknowledged the existence of electronic surveillance, and cannot be read to compel the Government to disclose (or risk the disclosure of) information concerning intelligence sources and methods that the Government chooses to protect.

Finally, it must be stressed that the question of whether Section 1806(f) preempts the state secrets privilege is not merely an abstract issue of law. The Government's privilege assertion in this case has been upheld, and the Court of Appeals found that harm to national security would result from disclosure of whether or not plaintiffs were subject to alleged surveillance. The very same concern, however, exists on remand. Any effort to establish whether plaintiffs have standing to proceed as "aggrieved persons" as defined by the FISA through a Section 1806(f) proceeding would inherently risk or require disclosure of whether or not plaintiffs have been subject to alleged surveillance and cause the very harm to national security already recognized by the Court of Appeals. This would plainly be an inappropriate and, indeed, dangerous outcome that, again, is not remotely supported by any reasonable reading of Section 1806(f), its legislative history, or case law applying that provision.

---

[1] This brief will hereafter refer to the key sections of the FISA at issue as "Section 1810" and "Section 1806(f)" of title 50, United States Code.

For these reasons, set forth further below, what is left of this case should now be dismissed.

## BACKGROUND

Plaintiffs allege that, in March and April of 2004, the NSA engaged in electronic surveillance of their communications—specifically that the NSA intercepted communications "between a director or directors of plaintiff Al-Haramain Oregon and plaintiffs Belew and Ghafoor." *See* Compl. ¶¶ 5, 6, 19. Plaintiffs allege that the NSA "did not obtain a court order authorizing such electronic surveillance nor did it otherwise follow the procedures mandated by FISA." *Id.* ¶ 19. Plaintiffs also allege that the designation of AHIF-Oregon as a Specially Designated Global Terrorist by the Department of the Treasury, Office of Foreign Assets Control ("OFAC") was based in part on evidence derived from the alleged surveillance, *see id.* ¶ 1, 18 although they do not challenge that designation in this case.[2] Rather, plaintiffs challenge the alleged surveillance on the grounds that it violates the FISA, the separation of powers doctrine, the Fourth, Fifth and Sixth Amendments, and the International Covenant on Civil and Political Rights. *See id.* ¶¶ 26-37. Plaintiffs seek a declaratory judgment that the alleged surveillance is unlawful, and an injunction on any such warrantless surveillance. *See id.* at 7 (Prayer for Relief) ¶ 1. Plaintiffs also seek damages allegedly caused by the alleged surveillance pursuant to 50 U.S.C. § 1810, *see* Compl. ¶ 27 and at 7 (Prayer for Relief) ¶ 5, 6.[3]

On June 21, 2006, the Director of National Intelligence ("DNI") asserted the state secrets privilege over various information implicated by the claims in this case, including in particular

---

[2] Plaintiffs have filed a separate lawsuit challenging the designation of AHIF-Oregon and the evidence on which it was based, including the sealed document at issue in this case. *See Al-Haramain Islamic Foundation v. U.S. Dept. of the Treasury*, (Civ. 07-1155-KI) (D. Or.), Complaint ¶ 73 and Supplemental Complaint ¶ 23, Dkt. Nos. 1, 43 (Civ. 07-1155-KI) (D. Or.). On February 7, 2008, the Government filed a Motion to Dismiss and for Summary Judgement in that action.

[3] Plaintiffs also seek an Order requiring the Government to produce any records pertaining to the alleged surveillance, and that the Government make no further use of and destroy any such alleged information. *See id.* at 7 (Prayer for Relief) ¶¶ 2-4.

information that would reveal whether or not the plaintiffs have been subject to alleged surveillance under the TSP or any other program. *See* Public Declaration of John D. Negroponte, Director of National Intelligence, ¶ 11(iii) (Dkt. No. 59, Item #1) (Civ. 06-274-KI) (D. Or). The DNI also asserted privilege over information contained in a classified document that had been inadvertently disclosed to plaintiffs during OFAC proceedings on the designation of AHIF-Oregon, which plaintiffs have sought to use as evidence in this litigation (hereafter the "sealed document"). *See id.* ¶¶ 11(iv), 14. The defendants then moved to dismiss or, in the alternative, for summary judgment, on the grounds that evidence protected by the state secrets privilege is necessary to litigate this case.[4]

In September 2006, Judge King of the District of Oregon upheld the Government's state secrets privilege assertion with respect to any information confirming or denying whether plaintiffs' communications have been or continue to be intercepted—except with respect to communications allegedly reflected in the sealed document. *See Al-Haramain v. Bush*, 451 F. Supp. 2d 1215, 1224 (D. Or. 2006), *rev'd*, 507 F.3d 1190 (9th Cir. 2007). Judge King concluded that the content of the sealed document would not be a secret to the plaintiffs in light of its inadvertent disclosure, and held that the plaintiffs should be granted an opportunity to attempt to establish their standing or a *prima facie* case as to any alleged surveillance reflected in the sealed document through special *in camera* procedures if necessary, including through the submission *in camera* of declarations indicating what plaintiffs may recall of the document's content. *See id.* at 1226, 1229. Judge King therefore declined to dismiss the case. But Judge King made clear that his decision was limited to the content of the sealed document, and that he was upholding the Government's privilege assertion insofar as it applied to any other alleged surveillance. *See*

---

[4] The classified declarations of the Director of National Intelligence and the Director of the National Security Agency that were previously submitted by the United States for *in camera*, *ex parte* review in support of the state secrets and statutory privilege assertions in this case are available to this Court in connection with the instant motion. Defendants have also lodged a classified supplemental memorandum for the Court's review, *in camera*, *ex parte*, in further support of this motion accompanied by the classified privilege declarations previously submitted in this case. *See* Defendants' Notice of Lodging of *In Camera*, *Ex Parte* Submission.

*id.* at 1224 ("based on the record as it stands now, forcing the government to confirm or deny whether plaintiffs' communications have been or continue to be intercepted, *other than any communications contained in the Sealed Document*, would create a reasonable danger that national security would be harmed by the disclosure of state secrets") (emphasis added). Judge King certified his decision for interlocutory review pursuant to 28 U.S.C. § 1292(b), *see id.* at 1233, and, by Order dated December 21, 2006, the Court of Appeals granted defendants' petition to review Judge King's Order denying defendants' motion to dismiss. *See* Dkt. No. 96 (Civ. 06-274-KI) (D. Or.).[5]

On January 17, 2007, the United States filed a notice with this Court indicating that any electronic surveillance that had been occurring under the Terrorist Surveillance Program is now occurring subject to orders of the Foreign Intelligence Surveillance Court and that the TSP had lapsed. *See* Dkt. #127, MDL-1791.

On November 16, 2007, the Court of Appeals reversed Judge King's denial of the defendants' motion to dismiss and upheld the Government's state secrets privilege assertion to protect from disclosure information concerning whether or not the plaintiffs had been subject to the alleged surveillance, as well information contained in the sealed document. *See Al-Haramain*, 507 F.3d at 1202-04. The Ninth Circuit went on to hold that, without the privileged information, plaintiffs could not establish their standing to litigate their claims. *See id.* at 1205. In upholding the Government's assertion of the state secrets privilege, the Ninth Circuit stated, after conducting "a very careful" review of the classified record, that the basis for the privilege was "exceptionally well documented" in "[d]etailed statements." *Id.* at 1203.[6] The Ninth

---

[5] On December 15, 2006, this case was transferred to this Court by the Judicial Panel on Multidistrict Litigation. *See* Dkt. Nos. 97 and 114 (MDL 07-1791-VRW).

[6] The Court of Appeals stated that it had reviewed the Government's classified submissions:

> We take very seriously our obligation to review the documents with a very careful, indeed a skeptical eye, and not to accept at face value the government's claim or justification of privilege. Simply saying 'military secret,' 'national security,' or 'terrorist

**Memorandum in Support of Defendants' Second Motion to Dismiss or for Summary Judgment**
*Al-Haramain Islamic Foundation et al. v. Bush et al.* (07-CV-109-VRW) (MDL No. 06-1791-VRW)          -5-

Circuit's decision did not pertain solely to the use of the sealed document in this case, but also encompassed information concerning "whether Al-Haramain was subject to surveillance." *See id.* at 1202 (identifying these two separate state secret privilege issues and resolving both in the Government's favor); *see also id.* at 1203 ("[W]e conclude that the Sealed Document is protected by the state secrets privilege, *along with the information as to whether the government surveilled Al-Haramain*.") (emphasis added); *id.* (addressing the question of "whether Al-Haramain has been subject to NSA surveillance" and holding that "judicial intuition about this proposition is no substitute for documented risks and threats posed by the potential disclosure of national security information"); *id.* at 1205 (affirming "the district court's conclusion that the Sealed Document, *along with data concerning surveillance*," are privileged) (emphasis added). The Court of Appeals declined to decide a separate issue raised on appeal—whether the FISA preempts the state secrets privilege—and remanded for the district court to consider that limited issue and any proceedings collateral to that determination. *See id.* at 1205.

## ARGUMENT

## I. THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS.

Before any further proceedings in this case can go forward, the Court must first determine whether it has jurisdiction at this stage over the claims raised in plaintiffs' Complaint. As set forth below, the Court lacks jurisdiction over plaintiffs' claims for prospective relief arising from alleged surveillance under the Terrorist Surveillance Program, and plaintiffs' claim for retrospective damages against the United States also fails for lack of a waiver of sovereign immunity.

---

threat" or invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege. Sufficient detail must be—and has been—provided for us to make a meaningful examination.

*Al-Haramain*, 507 F.3d at 1203.

## A.    Plaintiffs Lack Standing to Obtain Prospective Relief.

To have standing, a plaintiff's alleged injury must be "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).  In addition, even where a plaintiff alleges that his rights were violated in the past, he lacks standing to obtain prospective relief absent a "real and immediate threat" that he will suffer the same injury in the future.  *Lyons*, 461 U.S. at 105.  Alleged "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."  *Id.* at 103 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) and *Rizzo v. Goode*, 423 U.S. 362, 372 (1976)).  This "imminence requirement ensures that courts do not entertain suits based on speculative or hypothetical harms." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).  Rather, plaintiffs must "demonstrate that they are 'realistically threatened by a repetition of the [alleged] violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006); *Lyons*, 461 U.S. at 102.  Indeed, even a plaintiff "who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).  Thus, to obtain prospective injunctive relief against the alleged presidentially-authorized warrantless surveillance at issue in the Complaint, plaintiffs would have to establish the predicate fact that they are presently subject to that surveillance or imminently threatened by such surveillance.

As noted, plaintiffs have challenged alleged surveillance of them under the presidentially-authorized TSP on several grounds, notably that any such surveillance occurred outside of—and in violation of—the FISA, and was not otherwise authorized by the President's constitutional authority.  *See* Compl. ¶¶ 27, 29.  But the presidential authorization under which plaintiffs allege they were subject to warrantless surveillance ceased in January 2007, and any electronic surveillance that had been conducted under the TSP is being conducted subject to orders of the Foreign Intelligence Surveillance Court.  *See* Dkt. No. 127 (M: 06-1791-VRW) (N.D. Cal.).  Thus, even if plaintiffs had been subject to alleged surveillance under that

presentially-authorized activity in 2004—a fact the Government cannot confirm or deny—they could not in any event establish standing to enjoin any such surveillance since that program is no longer operative. Plaintiffs' challenge to alleged surveillance therefore hinges on whether their retrospective claim for damages against the United States, which is based on alleged prior conduct in 2004, has a valid jurisdictional basis. As we show below, it does not.[7/]

### B. Plaintiffs Seek Damages Against the United States Under a Provision of FISA That Does Not Waive Sovereign Immunity.

"It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). *Accord United States v. Testan*, 424 U.S. 392, 399 (1976). As a result, courts cannot award relief against officials of the United States unless a statute expressly waives the Federal Government's sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994); *Sierra Club v. Whitman*, 268 F.3d 898, 901 (9th Cir. 2001) ("suits against officials of the United States . . . in their official capacity are barred if there has been no waiver [of sovereign immunity]"); *Multi Denominational Ministry of Cannabis v. Gonzales*, 474 F. Supp. 2d 1133, 1140 (N.D. Cal. 2007) (Walker, C.J.). The terms of the United States' waiver of sovereign immunity "'is an important limitation on the subject matter jurisdiction of federal courts.'" *See Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 & n.2 (9th Cir. 2007) (quoting *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 2122 (2007)). "Absent an explicit waiver, a district court lacks subject matter jurisdiction over any claim against the United States." *Multi-Denominational Ministry*, 474 F. Supp. 2d at 1140;

---

[7] In addition, as noted above, Judge King previously upheld the Government's privilege assertion with respect to any alleged surveillance not reflected in the sealed document, including any current surveillance. *See Al-Haramain*, 451 F. Supp. 2d at 1224. Plaintiffs did not appeal the district court's decision upholding the state secrets privilege to this extent, and it remains law of the case. *United States v. Washington*, 235 F.3d 438, 441 (9th Cir. 2000) (citing *Coleman v. Calderon*, 210 F.3d 1047, 1052 (9th Cir. 2000)); *see also Little Earth of United Tribes, Inc. v. Dept. of Housing and Urban Development*, 807 F.2d 1433, 1438 (8th Cir. 1986) (law of the case doctrine applies to issues decided in earlier stages of the same case). For this reason as well, prospective relief is not available and nothing but plaintiffs' claim for damages based on alleged prior surveillance remains at issue.

*see also Gilbert*, 756 F.2d at 1458. The burden of showing an unequivocal waiver of immunity lies with the party who seeks to bring suit against the federal government. *West v. Federal Aviation Admin.*, 830 F.2d 1044, 1046 (9th Cir. 1987). And because "sovereign immunity is a jurisdictional defect, . . . [it] may be asserted by the parties at any time or by the court *sua sponte.*" *Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1100 (9th Cir. 1994); *see also Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 981 n.3 (9th Cir. 1999) (same); Fed. R. Civ. P. 12(h)(3) (noting that a court shall dismiss an action if "at any time" it determines that it lacks jurisdiction). Any ambiguity in the terms of the waiver are strictly construed in favor of the federal government and therefore a waiver may not be implied, but "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The bar of sovereign immunity applies to claims such as those at issue here for monetary damages. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

Plaintiffs seek damages pursuant to Section 1810 from the "defendants" in this case. *See* Compl. ¶ 27. The defendants are: three agencies of the United States Government—the National Security Agency, the Federal Bureau of Investigation, the Office of Foreign Assets Control of the Department of the Treasury; the President of the United States; and three officials of the United States Government—the Directors of the NSA, FBI, and OFAC. *See* Compl. ¶¶ 7-13. The Complaint does not name any of the individual defendants in their individual capacity. *See id.* ¶¶ 7, 9, 11, 13.[8/]

Section 1810 of title 50 (FISA Section 110), entitled "Civil Liability," does not waive the United States' sovereign immunity for plaintiffs' claims against these defendants. Section 1810 provides in pertinent part:

> An aggrieved person, other than a foreign power or an agent of a foreign power, as defined in section 1801(a) or (b)(1)(A) of this title, respectively, who has been

---

[8] Any assertion by plaintiffs at this late stage that their Complaint does purport to sue the defendant officers and employees in their individual capacity would be utterly baseless. Plaintiffs have never served those potential individual defendants with a complaint and summons in this case, and it is far too late to cure that defect. *See* Fed. R. Civ. P. 4(i)(2)(B), (m) (requiring actual service on federal officials "sued in an individual capacity" within 120 days of complaint).

subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action *against any person* who committed such violation and shall be entitled to recover--

(a) actual damages, but not less than liquidated damages of $1,000 or $100 per day for each day of violation, whichever is greater;  (b) punitive damages; . . .

50 U.S.C. § 1810 (emphasis added).  The FISA defines "person" to mean "any *individual*, including any *officer* or *employee* of the Federal Government, or any group, entity, association, corporation, or foreign power."  *See* 50 U.S.C. § 1801(m) (emphasis added).  By utilizing the terms "person," "individual," "officer," or "employee"—but not "the United States," the language of Section 1810 authorizes damages actions against officers or employees of the Federal Government sued in their individual capacities.  But, as this Court recently held, "[a] suit against federal employees in their *official* capacities is considered a suit against the United States and thus subject to the defense of sovereign immunity," and "such suits cannot be maintained unless Congress has explicitly waived the sovereign immunity of the United States."  *Multi Denominational Ministry*, 474 F. Supp. 2d at  1140 (emphasis in original) (citations omitted); *see also Balser v. Dep't. of Justice, Office of U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003) ("In sovereign immunity analysis, any lawsuit . . . against an officer of the United States in his or her official capacity is considered an action against the United States."), *cert. denied*, 541 U.S. 1041 (2004).

There can be little doubt that Section 1810 does not waive sovereign immunity for a damages action against the United States.  There is, of course, no mention of the United States as among the entities subject to suit in Section 1810, and this is highly significant because Congress has expressly authorized damage actions "against the United States" for certain violations of the FISA—but not in Section 1810.  Specifically, Congress has authorized an action "against the United States to recover money damages" for violations of sections 106(a), 305(a), and 405(a) of the FISA, 50 U.S.C. §§ 1806(a), 1825(a), and 1845(a), *see* 18 U.S.C. § 2712.  But

plaintiffs do not seek damages under any of these provisions,[9] and in specifying when damage remedies for FISA violations are available "against the United States," Congress has waived sovereign immunity only as to those violations of FISA.[10]

To the extent plaintiffs contend that the definition of "person" in the FISA includes federal officials acting in their official capacity, that too would be wrong.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989) ("in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it").  Indeed, one court has construed a closely analogous provision as not waiving sovereign immunity to sue the United States for damages related to alleged unlawful surveillance.  In *Asmar v. U.S. Dept. of Treasury, I.R.S.*, 680 F. Supp. 248 (E.D. Mich. 1987), the court considered whether 18 U.S.C. § 2520, which creates a civil damages cause of action to recover from "any person or entity" for the unlawful interception of wire, oral, or electronic communications, waives sovereign immunity for damage actions against the United States.[11]  While the court noted that a private cause of action clearly existed under this provision, it

---

[9]  These provisions of the FISA require that information obtained under the FISA concerning any United States person be used only in accordance with minimization procedures established by the FISA and for lawful purposes, whether obtained through electronic surveillance, *see* 50 U.S.C. § 1806(a), or a physical search, *see id.* § 1825, or a pen register trap and trace device, *see id.* § 1845.  Moreover, even if plaintiffs had sought damages under these provisions, and they were applicable in this case, and such claims could be adjudicated in the face of the state secrets privilege (since this would require the Government to confirm or deny the alleged surveillance), any such claim must first be presented to the appropriate department or agency under the Federal Tort Claims Act.  *See* 18 U.S.C. § 2712(b)(1); *see also* 28 U.S.C. § 2672 (setting forth the procedures for filing an FTCA claim).  Absent exhaustion of FTCA administrative procedures, the Court would lack jurisdiction over a damages claim based on these provisions of the FISA.

[10]  Similarly, under the Privacy Protection Act, Congress expressly permitted actions to be brought "against the United States" and went on to state that the United States "shall be liable for violations of this chapter by [] officers or employees while acting within the scope or under the color of [] office or employment." *See* 42 U.S.C. 2000aa-6(a).  The contrast between other statutes that do clearly waive the sovereign immunity of the United States and section 1810 could not be more apparent.

[11]  The applicable definition of the term "person" includes "any employee, or agent of the United States."  *See* 18 U.S.C. § 2510 (6).

concluded that this provision does "not create a cause of action against the government" and does not constitute the consent to suit by the United States. *See id.* at 250. For this reason, the court held that "plaintiffs' suit against the United States under 18 U.S.C. § 2520 is barred by sovereign immunity." Section 1810 authorizes a cause of action that is virtually identical to the one at issue in *Asmar*, and this Court should likewise find that this provision does not waive sovereign immunity for actions against the United States. *See United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (courts should "interpret similar language in different statues in a like manner when the two statutes address a similar subject matter.").

Finally, even if there were any doubt about whether Section 1810 waives sovereign immunity for plaintiffs' claims, a waiver of sovereign immunity "cannot be implied, but must be unequivocally expressed," and must "be strictly construed, in terms of its scope, in favor of the sovereign." *See Dunn & Black*, 492 F.3d at 1088. The absence of a clear and express waiver of sovereign immunity in Section 1810 requires the conclusion that sovereign immunity bars monetary damages claims against the Federal Government or its officers acting in their official capacity under this provision. Accordingly, plaintiffs' claim for damages against the United States must be dismissed and, absent any basis for prospective relief, the Complaint in this case should also be dismissed without reaching the question of whether the FISA preempts the state secrets privilege.

## II. THE STATE SECRETS PRIVILEGE IS NOT PREEMPTED BY FISA SECTION 106(f), AND ANY PROCEEDINGS UNDER THAT PROVISION IN THIS CASE WOULD INHERENTLY RISK HARM TO NATIONAL SECURITY.

Even if the Court finds it has some jurisdictional basis on which to proceed and reaches the issue remanded by the Ninth Circuit, the state secrets privilege is not preempted by Section 106(f) of the FISA, 50 U.S.C. §1806(f), and, pursuant to the Ninth Circuit's decision, this case should be dismissed. Indeed, the question presented here, more precisely, is whether the FISA authorizes an adjudication of the lawfulness of *alleged* surveillance *in the face* of the Government's state secrets privilege that has been upheld to preclude disclosure of whether or not the plaintiffs have been subject to surveillance. Section 1806(f) does not remotely purport to

supersede the state secrets privilege in these circumstances but applies to an entirely distinct

scenario: where surveillance has been acknowledged by the Government and surveillance

evidence is or may be used against an "aggrieved" person, *i.e.*, the "target of an electronic

surveillance" or a "person whose communications or activities were subject to electronic

surveillance." 50 U.S.C. 1801(k).  Moreover, in the particular circumstances of *this* case, any

effort to establish the threshold question of whether the plaintiffs are "aggrieved"—and thus

whether they may even have standing to proceed under Section 1806(f)—would inherently risk

or require disclosure of the very same information that the Ninth Circuit found could not be

disclosed without causing serious harm to national security, and it cannot possibly be a sound or

appropriate statutory construction to allow such harm to occur.

> **A.** **Congress Cannot Intrude on Executive Authority or Preempt
> the Common Law Without a Clear and Direct Action.**

The question of whether Section 1806(f) preempts the state secrets privilege turns on

whether Congress has spoken to the matter clearly and directly.  But nothing in the FISA

indicates any intention by Congress—let alone a clear directive—to abrogate the state secrets

privilege.  Two related doctrines govern this issue.

First, the state secrets privilege has "a firm foundation in the Constitution."  *El-Masri v.

United States*, 479 F.3d 296, 303-04 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007).  The

state secrets privilege derives from the President's authority under Article II of the Constitution

to protect national security.  *See United States v. Nixon*, 418 U.S. 683, 710-11 (1974)

(recognizing that the presidential privilege for protecting military, diplomatic, or sensitive

national security secrets is grounded in "areas of Art. II duties" to which "the courts have

traditionally shown the utmost deference to Presidential responsibilities") (citing *United States v.

Reynolds*, 345 U.S. 1 (1953)); *see also id.* at 711 (to the extent a claim of privilege "relates to the

effective discharge of the President's powers it is constitutionally-based"); *Department of the

Navy v. Egan*, 484 U.S. 518, 527 (1988) (the Executive's authority to control access to

information bearing on national security "exists quite apart from any explicit congressional

grant" of power because it flows primarily from the "constitutional investment of power in the President" found in Article II of the Constitution). For this reason, a clear expression of congressional intent is required before the Court can conclude that Congress intended to abrogate the Executive's authority. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992) (an express statement is required before concluding that Congress meant to regulate the President's exercise of his executive functions); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) ("When Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear."). In addition, any effort by Congress to regulate an exercise of the Executive's authority to protect national security through the state secrets privilege would plainly raise serious constitutional concerns, and it is well-established that courts should construe statutory law to avoid serious constitutional problems unless such construction is "plainly contrary to the intent of Congress." *See also Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 465-66 (1989) (quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988)).[12]

Second, in addition to its constitutional foundation, the state secrets privilege is rooted in the common law. *See Kasza v. Browner*, 133 F.3d at 1159, 1167 (9th Cir. 1998) (*citing In re United States*, 872 F.2d 472, 474 (D.C. Cir. 1989)); *see also Reynolds*, 345 U.S. at 6-7 (state secrets privilege is "well established in the law of evidence"). In order to abrogate such a

_____

[12] In *Public Citizen v. DOJ*, the Supreme Court held that Congress did not intend to apply the requirements of the Federal Advisory Committee Act ("FACA") to a committee of the American Bar Association that offers confidential advice to the Justice Department concerning Presidential appointments to the federal bench. *See* 491 U.S. at 465-67. In *Armstrong*, the D. C. Circuit held that the Administrative Procedure Act ("APA") did not create a cause of action for judicial review of the President's compliance with the Presidential Records Act because the President is not an "agency" within the meaning of the APA. *See* 924 F.2d at 288-90 (rejecting application of the APA to Presidential action "[i]n the absence of any affirmative evidence that these issues were considered in the legislative process and that Congress passed the APA with the understanding that it would regulate presidential as well as other executive branch action . . . ."). Likewise in *Franklin v. Massachusetts,* the Supreme Court held that the APA does not apply to the President, finding that "[o]ut of respect for the separation of powers and the unique constitutional position of the President, . . . textual silence is not enough to subject the President to the provisions of the APA. *Franklin*, 505 U.S. at 800.

well-established common law principle, a statute must "speak directly" to the question addressed by the common law. *United States v. Texas*, 507 U.S. 529, 534 (1993); *Kasza*, 133 F.3d at 1167; *see also County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236- 37 (1985); *City of Milwaukee v. Illinois*, 451 U.S. 304, 315 (1981). "Where a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except "when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (citation omitted).[13]

For these reasons, the question before the Court is not whether Section 1806(f) could arguably be read to preempt the state secrets privilege, but whether it in fact clearly and directly does so. As detailed below, that simply is not the case.

**B.      Section 1806(f) Serves a Fundamentally Different Purpose Than the State Secrets Privilege and Does Not Preempt the Privilege.**

A comparison of the scope and purpose of the state secrets privilege with the scope and purpose of Section 1806(f) demonstrates that Congress has not sought to preempt the privilege through this statutory provision.

As the Court is well aware, the purpose of the state secrets privilege is to enable the government "to withhold sensitive information within the context of litigation." *See Kasza*, 133 F.3d at 1167-68. Once properly invoked by the responsible agency head, the privilege must be given the "utmost deference" and honored whenever there is "a reasonable danger" that disclosure of the information in court proceedings would harm national security interests.[14]

---

[13]  *See also United States v. Texas*, 507 U.S. at 534 ("Statutes which invade the common law. . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.") (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952); *Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35 (1983) ("'The common law . . . ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.'" ); *In re Niles*, 106 F.3d 1456, 1461 (9th Cir. 1997) (same).

[14]  *See also Al-Haramain v. Bush*, 507 F.3d at 1203 ("[w]e acknowledge the need to defer to the Executive on matters of foreign policy and national security and surely cannot legitimately find ourselves second guessing the Executive in this arena").

When upheld, the privilege is absolute and the privileged information at issue is excluded from the case regardless of any showing of need for that information. *Kasza*, 133 F.3d at 1166 (citing *Reynolds*, 345 U.S. at 11). Upon the exclusion of privileged information, the case must either proceed without that information or be dismissed if either the plaintiff "cannot prove the *prima facie* elements of her claim with nonprivileged evidence," or the privilege "deprives the defendant of information that would otherwise give the defendant a valid defense to the claim." *See Kasza*, 133 F.3d at 1166. In addition, if state secrets are so central to the "very subject matter of the action," the case should be dismissed based solely on the invocation of the privilege. *See Id.*[15]

Section 1806(f) of the FISA is directed at fundamentally different circumstances: to determine the lawfulness of acknowledged surveillance in proceedings where surveillance evidence is or may be used against an "aggrieved" person. Nothing in the text of Section 1806(f), its legislative history, or applicable case law, indicates that this provision can be invoked by parties seeking to discover in the first instance *whether* they have been subject to alleged unlawful surveillance and, if so, to then adjudicate the lawfulness of any such surveillance. Indeed, the statute, legislative history, and case law are directly to the contrary.

Section 1806(f) of title 50 (FISA Section 106) is entitled "In camera and ex parte review by district court" and resides within a broader section of the FISA that governs the "[u]se of information" obtained from electronic surveillance conducted pursuant to the FISA. *See* 50 U.S.C. § 1806. Section 1806(f) authorizes procedures for the *in camera*, *ex parte* review of information to determine the lawfulness of FISA surveillance in three circumstances involving an aggrieved person:

> (1) when the Government provides notice that it "intends to enter into evidence or otherwise use or disclose" surveillance-based information in judicial or administrative proceedings against an

---

[15]  *See also Weston v. Lockheed Missiles & Space Co.*, 881 F.2d 814, 816 (9th Cir. 1989) (recognizing that state secrets privilege alone can be the basis of dismissal of a suit); *Al-Haramain*, 507 F.3d at 1197-1201 (declining to dismiss on basis that "very subject matter" is a state secret).

aggrieved person (*see* 50 U.S.C. 1806(c), (d));

(2) when an "aggrieved person" moves in such proceedings to suppress "evidence [or information] obtained or derived from an electronic surveillance" (*see* § 1806(e), (f)); or

(3) when an "aggrieved person" moves to "discover or obtain" "applications, orders, or other materials relating to electronic surveillance" or "evidence or information obtained or derived from electronic surveillance."

*See* 50 U.S.C. § 1806(f). When one of the foregoing circumstances exist, and Section 1806(f) is invoked by the Attorney General through an affidavit indicating that disclosure of the information sought or an adversary hearing would harm the national security of the United States, the district court is then required to review *in camera* and *ex parte* materials related to the surveillance as may be necessary to determine whether surveillance of the aggrieved person was lawfully authorized.

Assuming that Section 1806(f) even applies to plaintiffs' challenge to alleged surveillance outside of the FISA,[16]/ that provision is limited in its applicability to the particular circumstances described in that provision. Most notably, each of the circumstances in which Section 1806(f) applies is premised on the fact that electronic surveillance has already been acknowledged by the Government. Notice of the intended use of surveillance-based evidence under Sections 1806(c) and (d) necessarily discloses the fact of surveillance. Similarly, a motion to suppress such evidence under Section 1806(e) occurs only after the fact of surveillance is established.

Likewise, requests to "discover or obtain" evidence or information relating to or derived from electronic surveillance under Section 1806(f) are predicated on disclosed surveillance, since Congress specified that such requests must be "made by an aggrieved person," which, again, requires the movant to have established that he was a "target of an electronic surveillance" or a "person whose communications or activities were subject to electronic surveillance." *See* 50

---

[16] Section 1806 applies to electronic surveillance of an aggrieved person undertaken pursuant to the authority of "this subchapter" – *i.e.*, the FISA itself. *See* 50 U.S.C. § 1806(a), (b), (c), (d), (f).

U.S.C. 1801(k), 1806(f).[17/] To read this aspect of Section 1806(f) to allow litigants in any case to discover *whether* they are even subject to any surveillance would threaten grave harm to national security because any potential target of FISA-authorized or other surveillance could seek to force disclosure of sensitive intelligence information by simply alleging, on information and belief, to be aggrieved (much as plaintiffs have done here). Not a single case supports this radical theory. On the contrary, Section 1806(f) has been applied where the United States (or a State government) has acknowledged surveillance and/or sought to use evidence related to surveillance in judicial proceedings, and where the Government has invoked 1806(f) to protect against the unauthorized disclosure of FISA applications, orders and related information.[18/]

Indeed, the Court of Appeals for the D.C. Circuit has held that plaintiffs who merely alleged they were subject to surveillance under the FISA were not entitled to use FISA procedures to discover whether they were in fact subject to surveillance. *ACLU Foundation v. Barr*, 952 F.2d 457, 462 (D.C. Cir. 1991). The court noted that "if the government is forced to admit or deny such allegations, in an answer to the complaint or otherwise, it will have disclosed sensitive information that may compromise critical foreign intelligence activities." *Id.* at 469 & n.13. The court also held that, in a Rule 56 summary judgment proceeding, "the government would need only assert that plaintiffs do not have sufficient evidence to carry their burden of

---

[17] Because the other contexts to which Congress applied subsection (f) concern the Government's use of surveillance-based information in legal proceedings, the established canon of *noscitur a sociis* indicates that the final category in subsection (f)—concerning "motions to discover or obtain" information—is similarly limited. *See Washington Dep't of Soc. & Health Servs. v. Estate of Keffeler*, 537 U.S. 371, 384-85 (2003); *Adams v. United States*, 420 F.3d 1049, 1053-54 (9th Cir. 2005) (where "'several items in a list shar[e] an attribute,'" this canon "'counsels in favor of interpreting the other items as possessing that attribute as well'").

[18] *See, e.g.*, *United States v. Ott*, 827 F.2d 473, 474 (9th Cir. 1987) (Section 1806(f) applied where Government informed defendant it intended to introduce certain evidence obtained from FISA surveillance); *United States v. Cavanagh*, 807 F.2d 787, 789 (9th Cir. 1987) (government conceded plaintiff was an aggrieved person with standing to challenge compliance with the FISA); *see also United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005) (Section 1806(f) applied where Government admitted audio tapes of FISA surveillance during trial); *United States v. Johnson*, 952 F.2d 565, 571-73 (1st Cir. 1992) (same).

proving ongoing surveillance . . . ." *Barr*, 952 F.2d at 469.

That is precisely what has occurred in this case: the Court of Appeals has upheld the Government's privilege assertion and found that plaintiffs could not establish their standing to proceed. Indeed, this very lawsuit is effectively an effort to compel the Government to provide notice of whether or not alleged surveillance has occurred, and courts have clearly rejected such efforts. *See In re Grand Jury Investigation,* 431 F. Supp. 2d 584 (E.D. Va. 2006) (denying notice under FISA Section 1806(c) of whether grand jury witnesses had been subject to the Terrorist Surveillance Program); *In re Sealed Case*, 310 F.3d 717, 741 (For. Intel. Surv. Rev. 2002) (FISA does not require notice to a person whose communications were intercepted unless the government intends to enter into evidence or otherwise use or disclose such communications in a trial or other enumerated official proceedings); *In re Grand Jury Proceedings*, 856 F.2d 685, 688 (4th Cir. 1988) (grand jury witness not entitled to notice of alleged FISA surveillance).

The legislative history of the FISA firmly supports the Government's reading of the statute as limited to circumstances involving acknowledged surveillance against an aggrieved person, and does not suggest that Section 1806(f) was intended to supersede the state secrets privilege. Indeed, the legislative history does not even mention the state secrets privilege despite coming two decades after the Supreme Court's decision in *Reynolds*. Rather than seeking to preempt the privilege, Congress crafted Section 1806 to "set forth the permissible uses which may be had of information acquired by means of electronic surveillance conducted pursuant to this chapter." *See* S. Rep. No. 95-701 at 58, 1978 U.S.C.C.A.N. 4027 (Report of the Select Committee on Intelligence); *see also* S. Rep. No. 95-604, 1978 U.S.C.C.A.N. 3954 (Report of the Senate Committee on the Judiciary); *cf.* H.R. Conf. Rep. No. 95-1720, at 31-32 (1978) (adopting Senate's framework for Section 1806(f)). Congress indicated that Section 1806 sets forth procedures "whereby information acquired by means of electronic surveillance may be received in evidence or otherwise used or disclosed" in applicable proceedings. *See* S. Rep. 95-701 at 62, 1978 U.S.C.C.A.N. 4031. The purpose of these procedures is to strike a "balance" between the aggrieved person's "ability to defend himself" against the Government's use of

surveillance-based evidence, and the need to protect "sensitive foreign intelligence information" from disclosure. *See id.* at 64. Congress specifically recognized that the "need to preserve secrecy for sensitive counterintelligence sources and methods" would make "notice [of surveillance] to the surveillance target" inappropriate "unless the fruits are to be used against him in legal proceedings." *See id.* at 11-12. The legislative history also indicates that the question of whether a court may order materials related to surveillance disclosed to an aggrieved person pursuant to Section 1806(f), in response to a motion to suppress or a motion to discover such evidence, is expressly linked to whether "*the evidence is to be introduced*" against that person. Sen. Rep. 95-701 at 63-64 (emphasis added).[19]

The legislative history also indicates that Congress did not intend to compel the Government to disclose information related to surveillance that it wished to protect. Rather, where a court orders information disclosed to the aggrieved person, Congress gave the Government a choice: "either disclose the material or forgo the use of the surveillance-based evidence." *See* S. Rep. No. 95-701 at 65; *see also In re Sealed Case*, 310 F.3d at 741 (where the Government does not intend to use surveillance evidence,"'the need to preserve secrecy for sensitive counterintelligence sources and methods justifies elimination of the notice requirement.'") (citing S. Rep. 95-701, 95th Cong., 2d Sess., at 12 (1978), 1978 U.S.C.C.A.N. 3973, 3980); *see also Alderman*, 394 U.S. at 181-82, 184 (government had the option to disclose surveillance evidence or dismiss the case). By granting the United States the choice to use

---

[19] In addition, the legislative history discusses the procedures established by Section 1806(f) in the context of case law in which the Government had acknowledged surveillance and the disclosure of surveillance information was related to the suppression of potentially tainted evidence. *See id.* at 63-64 (discussing *Alderman v. United States*, 394 U.S. 165 (1969), *Taglianetti v. United States*, 394 U.S. 316 (1969)). In *Alderman*, the surveillance at issue had been acknowledged, *see*, 394 U.S. at 167-68, 170 n.3, and the "ultimate issue" was "whether the evidence against any petitioner" violated the Fourth Amendment, *see id.* at 181. In this context, the Court held that the Government must disclose transcripts of unlawfully intercepted conversations so that the aggrieved party could determine if any evidence admitted against him was derived from that unlawful surveillance. *See id.* at 182. In *Taglianetti*, the Supreme Court permitted the use of *ex parte* proceedings to "double-check" the accuracy of surveillance evidence that had been disclosed by Government to criminal defendant. *See* 394 U.S. at 317.

evidence or dismiss a prosecution, Congress plainly recognized that whether to reveal surveillance information is a matter within the Executive's discretion—and is a separate and distinct consideration from the procedures that would apply under Section 1806(f) should the Government choose to use such evidence.

Indeed, this very distinction was recognized in *Reynolds* itself, which contrasted the use of the state secrets privilege in civil litigation with "cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free." *See Reynolds*, 345 U.S. at 12. *Reynolds* noted that "since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *Id*. But *Reynolds* rejected this very approach in civil litigation where the privilege applies, noting that the rationale in criminal cases "has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented." *Id*. Where the Government is a defendant responding to allegations concerning surveillance and has asserted privilege to protect intelligence sources and methods, the circumstances in which Section 1806(f) would apply simply are not present.

Finally, and in any event, nothing in the text or legislative history of Section 1806(f) can be said to "speak directly" (or, indeed, at all) to the existence or exercise of the privilege. *See Kasza*, 133 F.3d at 1166. Absent a clear expression of Congressional intent to supersede the state secrets privilege in cases such as this, the privilege must still stand. Indeed, any reading of Section 1806(f) to permit litigants in any case to file a "motion to discover" whether they are subject to surveillance would be flatly contrary to a separate and clear directive of Congress in Section 6 of the National Security Agency Act of 1959, which mandates that "nothing in this Act or *any other law . . . shall be construed* to require the disclosure . . . of any information with respect to the activities" of the NSA. *See* 50 U.S.C. 402 note (emphasis added). This anti-disclosure provision is "absolute," *Linder v. National Security Agency*, 94 F.3d 693, 698 (D.C.

Cir. 1996), and its "plain text unequivocally demonstrates that Congress intended to prevent" the radical interpretation of the FISA that plaintiffs advance with respect to alleged surveillance activities undertaken by the NSA.  *See California v. United States*, 215 F.3d 1005, 1009 n.3, 1011 & n.4 (9th Cir. 2000) (construing similar text).  Section 1806(f) cannot be said to have repealed Section 6 of the National Security Act by implication, since the law is clear that the intention of the legislature to repeal must be "'clear and manifest.'"  *National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct.  2518, 2532 (2007) (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)).

> **C.** **Plaintiffs' Standing to Proceed Under Section 1806(f) Could Not be Established Without Causing the Same Harm to National Security Found by the Ninth Circuit.**

A final reason that Section 1806(f) should not be read to preempt the state secrets privilege warrants particular emphasis.  The question remanded by the Court of Appeals is not simply theoretical:  the privilege assertion in this case has been upheld by a unanimous panel, and this Court must proceed under a framework where it has been established that harm to national security would result from disclosure of whether or not the plaintiffs have been subject to surveillance.  As the Court of Appeals held, disclosure of "information concerning the Sealed Document and the means, sources and methods of intelligence gathering in the context of this case would undermine the government's intelligence capabilities and compromise national security."  *Al-Haramain*, 507 F.3d at 1203-04.  Indeed, the Court of Appeals described the Government's privilege assertion as "exceptionally well documented," and held that plaintiffs could not establish their standing without disclosing information protected by the state secrets privilege and thereby harming national security.  *See id.*

This serious concern would continue to apply to any further proceedings under Section 1806(f) on remand.  Assuming, *arguendo*, that Section 1806(f) preempts the state secrets privilege and applies here, the threshold question that must be resolved under that provision would be whether any of the plaintiffs have standing as an "aggrieved party" to obtain an adjudication of the lawfulness of alleged surveillance under that provision—*i.e.*, whether they

are someone who was the target or subject of the alleged electronic surveillance. *See* 50 U.S.C. § 1801(k) (defining "aggrieved person") and 50 U.S.C. § 1806(f) (limiting procedures to an aggrieved person).

But any effort to establish whether the plaintiffs are an aggrieved party for purposes of that provision would inherently risk or require the disclosure of state secrets to the plaintiffs and the public at large, and thus cause the very harm to national security identified by the Court of Appeals. For example, in attempting to apply Section 1806(f), the Court would first have to ascertain whether the individual plaintiffs are "aggrieved" parties as defined by the FISA. If none of the plaintiffs are aggrieved parties, the case could not proceed, but such a holding would reveal to plaintiffs and the public at large information that is protected by the state secrets privilege—namely, that certain individuals were not subject to alleged surveillance. Conversely, if the case did proceed, it could do so only as to an aggrieved party, which would confirm that a plaintiff *was* subject to surveillance.[20]

---

[20]    Contrary to what plaintiffs have previously asserted in this case and are apt to repeat again, plaintiffs do not "already know" whether they were subject to alleged warrantless surveillance under the TSP in 2004. Plaintiffs have conceded this point on the record during summary judgment proceedings before Judge King:

> THE COURT: . . . [H]ow are you going to show that any surveillance in this case was warrantless?
>
> MR. EISENBERG:  That is a very interesting question, and we pondered that a lot.  I would like to think that if they had a FISA warrant, that [the Government] would have told us quite a while back, so we wouldn't be wasting any more time.
>
> THE COURT:  Well, [the Government] may feel that's a state secret . . . .
>
> MR. EISENBERG:  It could be, and then we have a bit of a problem.  I believe the simple way, how do we know it was warrantless?  Discovery. . . . I think the simple answer is we ask them, "Did you have a FISA warrant?"

Transcript, 8/29/06 at 60:6-61:9; *see also id.* at 96:20-97:2 ([MR. EISENBERG]: "If there has been a warrant in this case, I have to *assume* that the Government would have told your Honor in

In addition, assuming there were an aggrieved party in this case, at some point the Court would have to grant or deny relief. If an aggrieved plaintiff were to lose on the merits, only that plaintiff could appeal—and that fact would be disclosed or become apparent on the public record even if the substance of the Court's underlying deliberations remained secret. Likewise, if the government were to lose on the merits under Section 1806(f) as to a particular aggrieved plaintiff, that too would either have to be disclosed or would become apparent upon any appeal. Thus, even if every effort were made to protect any underlying information concerning alleged surveillance, serious risks remain that basic facts concerning whether or not there had been any surveillance in this case would be inadvertently revealed in the process.

The foregoing underscores that Section 1806(f) was not intended to establish a means for adjudicating the lawfulness of surveillance where the very existence of surveillance has not been confirmed or denied, nor to require the Government to proceed in a manner that risks the disclosure of such information. It cannot possibly be a sound or appropriate statutory construction in which established harms to national security are put at risk. *Oregon Natural Resources Council, Inc. v. Kantor*, 99 F.3d 334, 339 (9th Cir. 1996) (statutory construction should not lead to "absurd or impracticable consequences") (quoting *Church of Scientology of California v. United States Department of Justice*, 612 F.2d 417, 421 (9th Cir. 1979)). Moreover, "[c]ourts are not required to play with fire and chance further disclosure— inadvertent, mistaken, or even intentional—that would defeat the very purpose for which the privilege exists." *Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005), *cert. denied*, 546 U.S. 1093 (2006); *see also Doe v. Tenet*, 544 U.S. 1, 11 (2005) (rejecting Ninth Circuit's holding that "*in camera* proceedings" were available to adjudicate underlying claims because of the risk of jeopardizing state secrets).

---

the secret declarations we are not privy to. And I am going to *assume further*, Your Honor, in light of what transpired here today, that the Government has not told Your Honor in classified confidence that there . . .were warrants in this case.") (emphasis added). Plaintiffs obviously do not know whether they were subject to warrantless surveillance and seek to use Section 1806(f) to discover whether they have been.

Because any further proceedings under Section 1806(f) would inherently risk or require disclosure of the privileged information at stake, and serious harm to national security, any conclusion that Section 1806(f) would apply to preempt the state secrets privilege in this case would be profoundly in error and raise serious constitutional concerns. These concerns can and should be avoided, since the FISA plainly does not purport to preempt the privilege in the circumstances presented here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of jurisdiction or, in the alternative, grant summary judgment for the defendants on the ground that Section 1806(f) does not, as a matter of law, preempt the state secrets privilege, and because, as the Ninth Circuit held, the state secrets privilege precludes plaintiffs from establishing whether there is any factual basis for their standing in this case.

Dated: March 14, 2008                  Respectfully Submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Branch Director

*s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

_s/ Alexander K. Haas_

1    ALEXANDER K. HAAS
     Trial Attorney

2    U.S. Department of Justice
     Civil Division

3    Federal Programs Branch
     20 Massachusetts Avenue, NW

4    Washington, D.C. 20001
     Phone: (202) 514-4782

5    Fax:    (202) 616-8460
     Attorneys for the Defendants