SIDLEY AUSTIN LLP
David W. Carpenter   (pro hac vice)
Bradford A. Berenson  (pro hac vice)
David L. Lawson     (pro hac vice)
Edward R. McNicholas (pro hac vice)
Eric A. Shumsky     #206164
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8010
Fax: (202) 736-8711
Email: dcarpenter@sidley.com

Attorneys for AT&T Corp.


WILMER CUTLER PICKERING HALE
  AND DORR LLP
John A. Rogovin     (pro hac vice)
Randolph D. Moss   (pro hac vice)
Samir C. Jain    # 181572
Brian M. Boynton  # 222193
Catherine M.A. Carroll (pro hac vice)
1875 Pennsylvania Ave, N.W.
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: john.rogovin@wilmerhale.com

Attorneys for the Verizon Defendants

PILLSBURY WINTHROP SHAW
  PITTMAN LLP
Bruce A. Ericson    #76342
David L. Anderson  #149604
Jacob R. Sorensen  #209134
Marc H. Axelbaum  #209855
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Tel.: (415) 983-1000
Fax: (415) 983-1200
Email: bruce.ericson@pillsburylaw.com


MUNGER, TOLLES & OLSON LLP
Henry Weissmann   # 132418
Susan R. Szabo    # 155315
Aimee A. Feinberg  # 223309
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
Tel.: (213) 683-9100
Fax: (213) 683-5150
Email: henry.weissmann@mto.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| )<br>)<br>IN RE:                    )<br>)<br>NATIONAL SECURITY AGENCY )<br>TELECOMMUNICATIONS       )<br>RECORDS LITIGATION       )<br>)<br>This Document Relates To:    )<br>)<br>*Al-Haramain Islamic Foundation, Inc. et* )<br>*al. v. Bush et al.* (No. 3:07-cv-00109) )<br>————————————————)| MDL NO. 06-1791 VRW<br><br>**AMICUS CURIAE BRIEF OF TELECOMMUNICATIONS CARRIER DEFENDANTS REGARDING WHETHER THE FOREIGN INTELLIGENCE SURVEILLANCE ACT PREEMPTS THE STATE SECRETS PRIVILEGE** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF INTEREST OF *AMICI* ....................................................................... 1

INTRODUCTION ............................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.     Section 1806(f) Does Not Displace The State Secrets Privilege In Civil Litigation
Challenging Merely Alleged Surveillance.................................................................. 3

     A.     Section 1806(f) Is Applicable Only When The Government Seeks To Use
Evidence Against A Person. ........................................................................3

     B.     Section 1806(f) Does Not Provide A Mechanism For A Person To Discover
Whether He Was Surveilled .......................................................................12

     C.     Section 1806(f) Does Not Displace The State Secrets Privilege And Compel
Disclosure Of Classified Information Because It Lacks A Clear Statement Of
Congressional Intent To Do So....................................................................17

II.    Consideration Of Whether § 1806(f) Displaces The State Secrets Privilege In Cases
In The MDL Against The Telecommunications Carriers Raises Distinct Issues That
Need Not And Should Not Be Decided In This Case............................................. 19

     A.     Section 1806(f) Is Not Applicable To Suits Against Third Parties. ............................19

     B.     The Court Need Not Decide In *Al-Haramain* Whether § 1806(f) Applies To
Claims Alleging Disclosure Of Telephone Call Records. ..........................................22

CONCLUSION.................................................................................................................. 22

**TABLE OF AUTHORITIES**

**CASES**

*ACLU Foundation of Southern California v. Barr*,
  952 F.2d 457 (D.C. Cir. 1991).................................................................14

*Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005) .................................4

*Al-Haramain Islamic Foundation, Inc. v. Bush*,
  507 F.3d 1190 (9th Cir. 2007) ....................................................................1

*Alderman v. United States*, 394 U.S. 165 (1969).......................4, 5, 9, 10

*Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991) ....................................17

*Bates v. United Parcel Service, Inc.*, 465 F.3d 1069 (9th Cir. 2006) .........7

*City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) ...................................19

*Clark v. Martinez*, 543 U.S. 371 (2005) ....................................................17

*Department of the Navy v. Egan*, 484 U.S. 518 (1988) ..............................17

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007)...........................17

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) .......................................17

*Gelbard v. United States*, 408 U.S. 41 (1972) ...........................................15

*In re Grand Jury Proceedings (Garrett)*, 773 F.2d 1071 (9th Cir. 1985) ...................................15

*Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958)................................19

*Jarecki v. J.D. Searle & Co.*, 367 U.S. 303 (1961) .....................................4

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998).......................................17

*Katz v. United States*, 389 U.S. 347 (1967) ................................................16

*In re Motion for Release of Court Records*,
  526 F. Supp. 2d 484 (FISA Ct. 2007)........................................................3

*National Association of Home Builders v. Defenders of Wildlife*,
  127 S. Ct. 2518 (2007)...............................................................................18

*Norfolk Redevelopment & Housing Authority v. Chesapeake & Potomac Telegraph Co.*,
  464 U.S. 30 (1983)...............................................................................17, 18

*United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) ...........................5

*United States v. Cavanagh*, 807 F.2d 787 (9th Cir. 1987)..........................14

*United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990) ............................16

- ii -

*United States v. Nixon*, 418 U.S. 683 (1974) ..............................................................17

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987) ...............................................13, 14

*United States v. Reynolds*, 345 U.S. 1 (1953) ......................................................7, 17

*United States v. Shelton*, 30 F.3d 702 (6th Cir. 1994) ..............................................15

*United States v. Texas*, 507 U.S. 529 (1993) ...............................................17, 18, 19

**STATUTES**

18 U.S.C. § 2510 ....................................................................................................15

18 U.S.C. § 2518 ......................................................................................................6

18 U.S.C. § 2520 ....................................................................................................15

18 U.S.C. § 2707 ....................................................................................................21

18 U.S.C. § 2712 ....................................................................................................21

18 U.S.C. § 3504 ..........................................................................................13, 15, 16

18 U.S.C. App. 3 § 5 ..............................................................................................10

18 U.S.C. App. 3 § 6 ..............................................................................................10

42 U.S.C. § 3602 ....................................................................................................13

50 U.S.C. § 403 note ..............................................................................................18

50 U.S.C. § 1801 ....................................................................................................12

50 U.S.C. § 1806 ...............................................................................................*passim*

50 U.S.C. § 1810 ...............................................................................................19, 21

**LEGISLATIVE HISTORY**

H.R. Rep. No. 95-1720 (1977) (Conf. Rep.) ......................................................5, 10

S. Rep. No. 95-604, pt. I (1977) .....................................................................*passim*

S. Rep. No. 95-701 (1977) ..............................................................................*passim*

**STATEMENT OF INTEREST OF *AMICI***

Under the terms of the Ninth Circuit's remand, this Court must determine whether the Foreign Intelligence Surveillance Act ("FISA") displaces the state secrets privilege and can be used to establish whether or not plaintiffs were surveilled—a fact the Court of Appeals confirmed to be a state secret. *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1203-06 (9th Cir. 2007). The *Al-Haramain* plaintiffs rely principally upon a provision of FISA—50 U.S.C. § 1806(f)—that also has been invoked by plaintiffs in the cases brought against telecommunications carriers. Accordingly, the undersigned carriers submit this brief as *amici curiae* to assist in the Court's consideration of § 1806(f).[1]

This brief serves two principal purposes. *First*, it supplements the submission of the United States concerning the meaning of § 1806(f) by providing the Court additional information concerning the legislative history and statutory context of that provision. It describes the circumstances that led to the enactment of the particular phrase within § 1806(f) upon which plaintiffs rely, as well as the relationship between § 1806(f) and FISA as a whole. This broader context makes clear that § 1806(f) cannot be invoked by a plaintiff in a civil suit for the purpose of discovering whether he was surveilled. *Second*, this brief discusses the important differences between this case, which is a suit against the government, and the cases in the MDL against the telecommunications carriers in which § 1806(f) is sought to be invoked in litigation against a private party. The brief explains the ways these differences may affect the proper application of § 1806(f). *Amici* hope thereby to assist the Court in reaching a ruling on the issues in this case that will not inadvertently address some of the related but quite different issues that might arise in the carrier cases, depending upon the Ninth Circuit's disposition of the *Hepting* appeal.

---

[1]  Verizon Communications Inc. and MCI, LLC continue to contest that they are subject to personal jurisdiction in the cases at issue in their motion to dismiss for lack of personal jurisdiction (Dkt. No. 268) and intend to re-notice that motion at an appropriate time in accordance with the Court's September 27, 2007 order (Dkt. No. 379). Because MCI, LLC is not subject to jurisdiction in the only case in the multidistrict litigation in which it was named, it does not join this brief.

# INTRODUCTION

Section 1806(f) applies only in cases where the government's surveillance of a person has already been established and the government is seeking to use against that person evidence that was or may have been obtained or derived from the surveillance. Section 1806(f) accommodates two competing interests: a person's interest in ensuring that evidence obtained from unlawful surveillance is not used against him and the government's compelling need to protect from disclosure sensitive foreign intelligence information. The provision balances these interests by allowing the court to determine the lawfulness of the surveillance in an *ex parte*, *in camera* hearing if the government invokes § 1806(f)'s procedures. Section 1806(f) leaves in place the government's prerogative not to disclose classified materials and instead to suffer the consequences, which may include dismissal of its case.

The portion of § 1806(f) upon which plaintiffs rely—applicable when a person files a "motion . . . to discover" certain materials relating to known FISA surveillance—does not provide a mechanism for a person to determine whether he has been subject to classified surveillance simply by filing a civil lawsuit and seeking discovery. Rather, it acknowledges that a person against whom the government seeks to introduce evidence in a proceeding is entitled to discovery of the contents of any surveillance determined to be unlawful in order to determine whether any evidence the government is attempting to use against him is derived from, or "tainted" by, the unlawful surveillance.

Plaintiffs' contrary interpretation of § 1806(f) ignores the structure, history, and purpose of the provision. Plaintiffs do not dispute that only a person who has been surveilled may invoke § 1806(f). But they nonetheless claim that § 1806(f) entitles a person to confirm his mere suspicion that he has been surveilled. This inconsistent reasoning must be rejected. Plaintiffs cannot use § 1806(f) to determine whether they are authorized to use § 1806(f) in the first instance.

In any event, the Court need not and should not address in *Al-Haramain* whether § 1806(f) displaces the state secrets privilege in the cases against the carriers, a question that raises issues distinct from those presented here. Section 1806(f) makes no provision for discovery in cases

between private parties, and nothing in the case law or legislative history suggests that § 1806(f) can be deployed in suits against private defendants. Moreover, unlike in some of the cases against the carriers, in *Al-Haramain*, the plaintiffs have not asserted claims based on alleged disclosures of telephone records. For this reason, the Court need not consider at this time whether § 1806(f) applies to claims involving call records, as opposed to surveillance resulting in the interception of communications content.

## ARGUMENT

### I. Section 1806(f) Does Not Displace The State Secrets Privilege In Civil Litigation Challenging Merely Alleged Surveillance

Section 1806(f) cannot displace the state secrets privilege in a civil case brought by a plaintiff who merely suspects that he was surveilled. As an initial matter, § 1806(f) could not possibly displace the privilege in such a case because § 1806(f) is applicable only where the government seeks to use evidence that was or may have been obtained or derived from surveillance against a person and the fact that the person was surveilled is already established. In any event, Congress could displace the privilege (if at all) only if it made its intent to do so unambiguous, and § 1806(f) lacks the requisite clear statement.

#### A. Section 1806(f) Is Applicable Only When The Government Seeks To Use Evidence Against A Person

Section 1806(f) applies only when the government seeks to use against an aggrieved person evidence that was or may have been obtained or derived from the electronic surveillance of him. As the Foreign Intelligence Surveillance Court recently explained, § 1806(f) is a limited aspect of "an elaborate statutory scheme to ensure that when the United States or a state intends to use FISA material in a proceeding against an 'aggrieved person,' the aggrieved person shall have an opportunity to contest the legality of the evidence through a suppression motion." *In re Mot. for Release of Ct. Records*, 526 F. Supp. 2d 484, 487 (FISA Ct. 2007).

Section 1806(f) provides that the district court shall review *ex parte* and *in camera* FISA applications, orders, and other materials relating to the surveillance if the Attorney General files an

affidavit stating that disclosure or an adversary hearing would harm national security and if one of three circumstances obtains:

- the government has given notice under subsection 1806(c) or (d) that it "intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding . . . against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to authority of this subchapter";

- an aggrieved person files a motion to suppress evidence obtained by electronic surveillance; or

- an aggrieved person files a "motion or request . . . pursuant to any other statute or rule of the United States or any State . . . to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under [FISA]."

As plaintiffs concede (at 15-16), the first two circumstances obviously arise only when the government seeks affirmatively to use evidence against an aggrieved person. Those circumstances are not present here or in the cases brought in the MDL against the carriers: The government has not notified the Court of its intention to use surveillance evidence against any plaintiff, and plaintiffs have not sought to suppress any evidence.

Therefore, to avail themselves of § 1806(f), plaintiffs must fit their claims into the third category: a "motion or request . . . to discover or obtain" specified information about FISA surveillance. But like the first two circumstances, that third category relates to the use of information by the government against an aggrieved person. As explained below, the provision merely acknowledges that a litigant may seek discovery in order to ensure that evidence derived from (or "tainted" by) unlawful surveillance of him is not used against him. The language, purpose, and history of this provision make this interpretation—which harmonizes the three different provisions of § 1806(f)[2]—plain.

Almost ten years prior to FISA's passage, the Supreme Court in *Alderman v. United States*, 394 U.S. 165 (1969), held that a criminal defendant is entitled to discovery of the contents of surveillance of him once a court determines that the surveillance was unlawful. This is to permit the

---

[2] *See Adams v. United States*, 420 F.3d 1049, 1054 (9th Cir. 2005) ("several items in a list shar[ing] an attribute counsels in favor of interpreting the other items as possessing that attribute as well"); *see also Jarecki v. J.D. Searle & Co.*, 367 U.S. 303, 307 (1961) (discussing the *noscitur a sociis* canon).

defendant to determine whether evidence should be excluded as fruit of the poisonous tree. *Id.* at 180-85. FISA likewise provides for suppression of evidence obtained or derived from unlawful surveillance, 50 U.S.C. § 1806(e), and Congress was aware of the need for discovery in light of the fruit of the poisonous tree doctrine. Citing *Alderman*, the Senate Select Committee on Intelligence report on FISA explained that "in the case of an illegal surveillance, the Government is constitutionally mandated to surrender to the defendant all the records of the surveillance in its possession in order for the defendant to make an intelligent motion on the question of taint." S. Rep. No. 95-701, at 65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973 (Senate Select Comm. on Intelligence); *see also* S. Rep. No. 95-604, pt. 1, at 59 n.61 (1977), *reprinted in* 1978 U.S.C.C.A.N. 3904 (Senate Comm. on the Judiciary) (raising question whether disclosure is required to address taint); H. R. Rep. No. 95-1720, at 31-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4048 (Conf. Rep.) (adopting Senate's framework for § 1806(f)).[3] The "motion . . . to discover" provision of § 1806(f) merely acknowledges and implements the *Alderman* rule. *See United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982) (government can invoke § 1806(f) when a criminal defendant seeks "the logs of the overhears to ensure that no fruits thereof are being used against him"). Accordingly, the "motion . . . to discover" provision creates no rights for aggrieved persons; it provides procedures to implement their existing right to seek discovery in support of efforts to suppress evidence obtained or derived from electronic surveillance.

The purpose, structure, and history of § 1806 make clear this understanding of the "motion . . . to discover" language. The overarching purpose of § 1806(f) was to permit adjudication of the legality of foreign intelligence surveillance that the government seeks to use against a defendant without unnecessarily disclosing classified information. Congress recognized the need to adjudicate the lawfulness of surveillance when the government seeks to use information obtained or derived

---

[3] In fact, the ACLU urged the Senate Judiciary Committee to amend the bill to address *Alderman*, arguing that "it is not sufficient for the court to suppress the evidence if illegally obtained; it must turn the evidence over to the defendant for a taint hearing." *Foreign Intelligence Surveillance Act of 1977: Hearings on S. 1566 Before the Subcomm. on Criminal Laws and Procedures of the S. Comm. on the Judiciary,* 95th Cong. 84 (June 14, 1977) (statement of John H.F. Shattuck, Director, Wash. Office, ACLU).

from the surveillance but also understood that adversarial proceedings would risk disclosure of sensitive national security information. Section 1806(f) was enacted to balance these competing considerations:

> The extent to which the Government should be required to surrender to the parties in a criminal trial the underlying documentation used to justify electronic surveillance raises delicate problems and competing interests. On the one hand, the broad rights of access to the documentation and subsequent intelligence information can threaten the secrecy necessary to effective intelligence practices. However, the defendant's constitutional guarantee of a fair trial could be seriously undercut if he is denied the materials needed to present a proper defense. The committee believes that a just, effective balance has been struck in this section [§ 1806].

S. Rep. No. 95-701, at 59; *see also* S. Rep. No. 95-604, pt. 1, at 53.

Instead of requiring automatic disclosure to the defendant of materials relating to the surveillance as part of adversarial litigation to test its legality, *compare* 18 U.S.C. § 2518(9), section 1806(f) permits review of the lawfulness of surveillance *ex parte* and *in camera*. Section 1806(f) provides that the district court "*shall*" review FISA surveillance materials *ex parte* and *in camera* upon the filing of a motion to suppress or request for discovery "*if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm*" national security. 50 U.S.C. § 1806(f) (emphases added). Disclosure of a FISA order, application, or other materials to the aggrieved person is permitted only if "necessary to make an accurate determination of the legality of the surveillance." *Id.* Through this mechanism, when a defendant brings a motion to suppress evidence obtained from unlawful surveillance, the government can protect the sensitive information underlying that surveillance by invoking § 1806(f)'s *ex parte* and *in camera* procedures. Similarly, when a defendant requests discovery to make a motion on "taint," the Attorney General is entitled to demand that the court first adjudicate the surveillance's legality under § 1806(f)'s *ex parte* and *in camera* procedures and determine that the surveillance was not "lawfully authorized or conducted" before giving the defendant access to any surveillance records.

Precisely because the provision is applicable only when the government seeks to use evidence against a person, § 1806(f) vests the Attorney General, who is ultimately responsible for

government litigation, with the exclusive authority to invoke its procedures. By contrast, the state secrets privilege has to be invoked by the "political head of the department" controlling the information, such as the Director of National Intelligence. *United States v. Reynolds*, 345 U.S. 1, 8 n.20 (1953). (Of course, the Attorney General has not invoked § 1806(f) in either *Al-Haramain* or the suits in the MDL brought against the telecommunications carriers.)

The structure of § 1806 further demonstrates that Congress intended for § 1806(f) to apply only when the government seeks to use evidence against an aggrieved person. Congress placed subsection (f) in § 1806, which it enacted to regulate the government's use of information derived from FISA surveillances. Section 1806 is entitled "Use of Information," and it sets forth the manner in which the government may use FISA surveillance evidence, defendants may resist that use, and courts can adjudicate the disputes between them, as the various subsections of the provision indicate.[4] *See Bates v. United Parcel Serv., Inc.*, 465 F.3d 1069, 1081 & n.15 (9th Cir. 2006) (courts may consider statutory headings to resolve ambiguous text). Subsection (f) fits comfortably with its neighboring subsections by providing a mechanism for adjudicating challenges to the use of evidence.

The legislative history of § 1806 also confirms that it regulates the government's use of information against an aggrieved person. The Senate committee reports on FISA explain that § 1806 "sets forth the permissible *uses* which may be made of information acquired by means of electronic

---

[4] Subsection (a) mandates that information acquired from electronic surveillance be used "by Federal officers and employees . . . only in accordance with [required] minimization procedures." Subsection (b) provides that "information acquired pursuant to this subchapter shall be disclosed for law enforcement purposes" only if accompanied by a statement that the information may be used in criminal proceedings only with the Attorney General's advance authorization. Subsections (c) and (d) require the government to provide notice if it "intends to enter into evidence or otherwise use or disclose . . . against an aggrieved person any information obtained or derived from an electronic surveillance of that aggrieved person." Subsection (e) allows a "person against whom evidence obtained or derived from an electronic surveillance to which he is an aggrieved person is to be, or has been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding" to move "to suppress the evidence." A court may suppress such evidence pursuant to subsection (g). Subsection (h) provides that orders granted under (g) that are adverse to the United States are final. Subsection (i) requires destruction of the contents of electronic surveillance in some circumstances. Subsection (j) allows courts to order the government to serve notice on subjects of emergency surveillances that a court does not subsequently approve. Finally, subsection (k) permits "[f]ederal officers who conduct electronic surveillance to acquire foreign intelligence information" to consult with law enforcement officers.

surveillance conducted pursuant to this chapter." S. Rep. No. 95-701, at 58 (emphasis added); *see* S. Rep. No. 95-604, pt. 1, at 52 (same). When § 1806(f) is invoked, the "court must then conduct an *ex parte*, *in camera* inspection of [the FISA application, order, and related documents] to determine whether the surveillance was authorized and conducted in a manner which did not violate any constitutional or statutory right of *the person against whom the evidence is sought to be introduced*." S. Rep. No. 95-701, at 63 (second emphasis added); S. Rep. No. 95-604, pt. 1, at 57 (second emphasis added). The committee reports also discuss the narrow circumstances in which "the court may order disclosed *to the person against whom the evidence is to be introduced* the court order or accompanying application, or portions thereof, or other materials relating to the surveillance." S. Rep. No. 95-701, at 64 (emphasis added); S. Rep. No. 95-604, pt. 1, at 57 (emphasis added).

The reports further explain that § 1806(f) was meant to "strike[] a reasonable balance between an entirely *in camera* proceeding which might adversely affect the *defendant's ability to defend himself*, and mandatory disclosure, which might occasionally result in wholesale revelation of sensitive foreign intelligence information." S. Rep. No. 95-701, at 64 (second emphasis added); S. Rep. No. 95-604, pt. 1, at 58 (same); *see also* S. Rep. No. 95-701, at 64 (discussing possible disclosure to "the defendant"); S. Rep. No. 95-604, pt. 1, at 58 (same); S. Rep. No. 95-701, at 65 (discussing "surrender to *the defendant* [of] all the records of the surveillance" if surveillance found to be unlawful (emphasis added)); S. Rep. No. 95-604, pt. 1, at 59 n.61 (same). The committee reports observe that "[a]lthough the primary purpose of electronic surveillance conducted pursuant to this chapter will not be the gathering of criminal evidence, it is contemplated that such evidence will be acquired and [§ 1806] establish[es] the procedural mechanisms by which such information may be used in formal proceedings." S. Rep. No. 95-701, at 62; S. Rep. No. 95-604, pt. 1, at 55.[5]

Plaintiffs argue that the broad language of the "motion . . . to discover" provision encompasses discovery in civil actions challenging the lawfulness of surveillance. But the

---

[5] *See also* S. Rep. No. 95-604, pt. 1, at 16-17 ("detailed provisions safeguard the right of the criminal defendant to challenge the validity and propriety of the surveillance"); S. Rep. No. 95-701, at 65 (discussing possibility that "the prosecution" would have to be dismissed if the government were unwilling to disclose certain materials); S. Rep. No. 95-604, pt. 1, at 58-59 (same).

legislative history shows that Congress included the language for an altogether different reason. The Senate Judiciary Committee, which added the "motion . . . pursuant to any other statute or rule . . . to discover" language, explained that it was intended to ensure that a party seeking to suppress evidence obtained or derived from allegedly unlawful surveillance did not "bypass[]" the bill's *in camera* and *ex parte* procedures by invoking "different procedures," such as under the Federal Rules of Criminal Procedure. S. Rep. No. 95-604, pt. 1, at 2-3, 57 ("The Committee wishes to make very clear that the procedures set out in [§ 1806(f)] apply whatever the underlying rule or statute referred to in the motion."); S. Rep. No. 95-701, at 63. In other words, Congress adopted the discovery language to make certain that procedural maneuvering did not deprive the government of its option to invoke § 1806(f)'s procedures for *ex parte* and *in camera* review of FISA surveillance when it seeks to use FISA-derived evidence against a person. Read in light of this congressional purpose, the "pursuant to *any other* statute or rule of the United States or any State" language of the "motion . . . to discover" provision, does not expand the circumstances to which § 1806(f) applies but rather clarifies that the § 1806(f) procedures cannot be evaded where applicable simply by invoking some "other statute or rule." 50 U.S.C. § 1806(f) (emphasis added).

A contrary interpretation of § 1806(f)—by which the provision could be used offensively in civil litigation to require the Executive to disclose information about alleged surveillance—would improperly impair the Executive Branch's significant interests in the control of classified information and conflict with Congress's clear intent to preserve the government's prerogative to protect national security information from disclosure. Instead of mandating disclosure of classified information, § 1806(f) puts the government to a choice when it uses evidence obtained or derived from FISA surveillance against a person. If classified materials must be disclosed to determine the lawfulness of the surveillance, the government must either accept disclosure, or forgo using the evidence. Section 1806(f) thus prevents the government from having it both ways: using FISA surveillance against a person while preventing a determination of the lawfulness of the surveillance. *See Alderman*, 394 U.S. at 181 (noting government's concession that disclosure was required "unless the United States would prefer dismissal of the case to disclosure of the information"). In

this way, § 1806(f) protects the Executive Branch's interest in controlling classified information, while also respecting litigants' interest in testing the lawfulness of any surveillance that resulted in evidence the government seeks to use against them.[6]

The legislative history of FISA demonstrates that § 1806(f) was meant to preserve the "dismiss option," *Alderman*, 394 U.S. at 181, rather than to eliminate the government's control over classified information altogether. The committee reports explain that under FISA, the government retains the choice whether to proceed with a case and permit possible disclosure of classified information:

> Cases may arise, of course, where the Court believes that disclosure is necessary to make an accurate determination of legality, but the Government argues that to do so, even given the court's broad discretionary power to excise certain sensitive portions, would damage the national security. In such situations, the Government must choose—either disclose the material or forgo the use of the surveillance-based evidence.

S. Rep. No. 95-701, at 65; *see* S. Rep. No. 95-604, pt. 1, at 58. This principle reflects what Congress considered "the obvious":

> [T]he Department of Justice always has the option of deciding whether to proceed with a criminal prosecution or forego it in the interests of national security. For example, the Department of Justice may decline to prosecute rather than disclose the names of important witnesses and key informants. Whether to go forward with a criminal prosecution remains in the exclusive hands of the executive branch and nothing in [today's § 1806(a)] changes that fact.

S. Rep. No. 95-701 at 61 (discussing Senate version of § 1806(a)).[7] Hearings on Senate Bill 3197, a

_____

[6] This approach—permitting the Executive Branch to determine whether to proceed in a case when doing so could result in the disclosure of classified information—also underlies the Classified Information Procedures Act ("CIPA"), which applies in certain criminal cases. Under CIPA, if a criminal defendant seeks to introduce classified evidence, he must notify the attorney for the United States. *See* 18 U.S.C. App. 3 § 5(a). The United States can then seek an order preventing the use of that information at trial. *See id.* § 6(a). If the court denies the United States' request, the United States can nonetheless block the disclosure of that evidence by filing "an affidavit of the Attorney General objecting to disclosure of the classified information at issue." *Id.* § 6(e)(1). But if it does so, the United States must face certain consequences, ranging from dismissal of the indictment to dismissal of certain counts, entry of findings against it, or the striking of testimony. *Id.* § 6(e)(2). Thus, CIPA likewise ensures that the Executive Branch retains control over the dissemination of classified information while preserving the rights of criminal defendants.

[7] The Senate version of what would become § 1806(a) authorized the use and disclosure of information only in accordance with minimization procedures, or for the enforcement of the criminal law if its use outweighed the possible harm to national security. H.R. Rep. No. 95-1720, at 30. The

predecessor to the bill that was adopted as FISA, provide further support:

> Senator Case. So the Government is not obliged to honor [an] order of the court [requiring it to disclose classified information]. It is just prohibited from using it in evidence.

> Mr. Madigan. That's right.

> Senator Case. There's no question about that, is there?

> Senator Garn. That way they would prevent disclosure by dropping the prosecution.

> Senator Case. . . . [T]he court can't require the Government to disclose something that [the] Government thinks would be harmful to the national security . . . .[8]

Indeed, by its terms, § 1806(f) does not authorize the court to compel the government to produce information pertaining to the lawfulness of the surveillance. If, as in this case, the Attorney General does not invoke § 1806(f), the statute does not say that the court may force the disclosure of any information. Even less does it say that the government is divested of its prerogative to invoke the state secrets privilege when it is confronted with a "motion or request" to discover sensitive information.

In light of its text and legislative history, and against the backdrop of *Alderman*, § 1806(f) is properly construed as putting the government to a choice when it seeks to use evidence obtained or derived from FISA surveillance. The government can risk limited disclosure or it can forgo use of that evidence. To apply § 1806(f) in cases where the government does not itself seek to use evidence against a person would deny the government that choice and undercut the essential structure of the provision.

---

House version authorized use and disclosure of information only in accordance with minimization procedures. *Id.* The Conferees adopted the House provision, noting "[t]he Conferees believe that, even without a statutory requirement, there will be an appropriate weighing of criminal law enforcement needs against possible harm to the national security." *Id.*

[8] *Electronic Surveillance within the United States for Foreign Intelligence Purposes: Hearings on S. 3197 Before the Subcomm. on Intelligence and the Rights of Americans of the S. Select Comm. on Intelligence*, 94th Cong. 253-54 (1976) ("*SCI Hearings on S. 3197*"); *see also id.* at 298 (noting that if the court orders disclosure, "at that point the prosecution has to determine whether they want to proceed, or whether in proceeding they are going to damage sources they don't want to damage" (Statement of Senator Bayh)).

11

Because § 1806(f) is not a general discovery tool for foreign intelligence surveillance but applies only where the government seeks to use evidence in a legal proceeding against a person, § 1806(f) does not operate to displace the state secrets privilege in this case. Further, as we explain next, § 1806(f) is not an avenue by which plaintiffs may seek to confirm their suspicions that they have been targeted for surveillance.

**B.**    **Section 1806(f) Does Not Provide A Mechanism For A Person To Discover Whether He Was Surveilled**

Even if § 1806(f) were not limited to situations in which the government seeks to use evidence against a person, it manifestly could not have the purpose that plaintiffs here (and in the MDL more broadly) would ascribe to it. Section 1806(f) never has been understood—not by any court, and not by Congress—as a tool for plaintiffs to discover *whether* they were surveilled. To permit litigants who satisfy the low standard of notice pleading to employ § 1806(f) to determine whether they were targeted for surveillance in classified intelligence programs would depart not only from the text of the provision, but also from years of consistent judicial interpretations, legislative history, and FISA's careful balancing of civil liberties and secrecy in matters of national security. To the contrary, the procedures set forth in § 1806(f) are available only when it is already established that a person was surveilled, such as when the government has sought to use evidence derived from acknowledged surveillance in a legal proceeding.

By the plain language of § 1806(f), requests to "discover or obtain" surveillance-related information must be "made by an aggrieved person," which the statute defines as one who has actually been either "the target of" or has been "subject[ed] to" "electronic surveillance," 50 U.S.C. § 1801(k). A person who merely suspects or alleges that he was surveilled is not an "aggrieved person" and thus cannot invoke § 1806(f).

Indeed, even beyond the limitation that § 1806(f) be invoked only by an "aggrieved person," it is clear that § 1806(f) may not be used to confirm suspected, but not proven or acknowledged, surveillance. The plain language of § 1806(f) does not authorize a court to adjudicate *whether* a person has been surveilled. The provision sets forth one narrow role for courts in employing its

procedures: The district court "shall . . . review . . . whether the surveillance . . . was lawfully authorized and conducted." *Id.* § 1806(f). The purpose of § 1806(f)'s *in camera*, *ex parte* procedures is to determine whether acknowledged surveillance was lawful, such that the evidence obtained or derived from it may be used as the government intends. Section 1806(g), which instructs a district court how to proceed following its inquiry under § 1806(f), reinforces that the court is authorized only to determine the lawfulness of known surveillance: The court may issue the prescribed remedies only after it (1) "determines that the surveillance was not lawfully authorized or conducted," or, alternatively, (2) "determines that the surveillance was lawfully authorized and conducted." *Id.* § 1806(g). Either determination presupposes that the fact of surveillance is not in dispute.

This plain reading of § 1806(f) is confirmed by the manner in which the statute refers to surveillance. It does not speak of "claimed," "alleged," or "possible" surveillance; rather, it uses the direct article "the," speaking of "the surveillance of the aggrieved person" and "materials relating to the surveillance." *Id.* § 1806(f). This formulation presupposes knowledge of the fact of the surveillance. If Congress had wished to grant the general public the means to force government disclosure of foreign intelligence surveillance merely on the basis of belief, it could have enacted legislation purporting to do so, as it did elsewhere in the U.S. Code. *See, e.g.*, 18 U.S.C. § 3504(a)(1) (procedures for discovering fact of "alleged" unlawful surveillance "upon a claim by a party aggrieved"); *cf.* 42 U.S.C. § 3602(i) ("'Aggrieved person' includes any person who— (1) *claims* to have been injured by a discriminatory housing practice; or (2) *believes* that such person will be injured by a discriminatory housing practice that is about to occur." (emphases added)); 18 U.S.C. § 2232(d) (criminal penalty for notifying electronic surveillance targets of "*possible* interception" (emphasis added)).

Consistent with § 1806(f)'s clear statutory text, every reported case under § 1806(f) has involved a party whom the government acknowledged surveilling, generally where the government has sought to use evidence gained from the admitted surveillance in a criminal or immigration proceeding. *See, e.g.*, *United States v. Ott*, 827 F.2d 473, 475 n.1 (9th Cir. 1987) ("Because Ott's

Amicus Curiae Brief of Telecommunications Carrier Defendants                    MDL No. 06:1791-VRW

communications were subject to surveillance, he is an aggrieved person with standing to bring a motion to suppress pursuant to section 1806(e)."); *United States v. Cavanagh*, 807 F.2d 787, 789 (9th Cir. 1987) ("Appellant was a party to an intercepted communication, and the government concedes he is an 'aggrieved person' within the meaning of the statute. The appellant has standing to challenge the government's compliance with [FISA]."). Litigants who suspect that they may have been surveilled, and who can do nothing more than allege as much, lack standing to invoke § 1806(f). *See ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 468-69 & n.13 (D.C. Cir. 1991). In *Barr*, the D.C. Circuit made clear that a plaintiff may not use FISA, including § 1806(f), to discover suspected ongoing surveillance, holding that "under FISA, [the government] has no duty to reveal ongoing intelligence surveillance." *Id.* at 469 n.13.

Nor would Congress have intended the statute to be used in the way plaintiffs propose. If, as plaintiffs suggest (at 17), the Court could use § 1806(f) to determine whether plaintiffs were surveilled and thus are aggrieved, then no matter how carefully the Court proceeded, it could not avoid disclosing sensitive information about the targeting of alleged intelligence-gathering activities. Even in the absence of any explanation or findings by the Court, plaintiffs, and the world, would know whether or not plaintiffs' communications had been intercepted, no matter how the Court ruled in the § 1806(f) proceeding. Simply deciding that plaintiffs were or were not entitled to a determination of lawfulness would reveal sensitive classified information—namely, whether they were the target of foreign intelligence surveillance—in direct contravention of the congressional intent behind § 1806(f) (and FISA as a whole), which was to preserve the Executive's ability to prevent public disclosure of sensitive information relating to the targeting of foreign intelligence surveillance, while preventing the government from making use of illegally obtained evidence.

FISA's legislative history further reinforces what logic and the language of § 1806(f) make plain: The statute was never intended to provide a discovery tool to those who fear or suspect that they may have been targeted for surveillance. The Senate reports contain no suggestion that § 1806(f) furnishes a means by which a person may confirm whether he has been a target of surveillance. Instead, the reports contemplate that such knowledge can come only from one of two

means: (1) voluntary acknowledgement of surveillance by the government in connection with notice that it intends to use evidence obtained or derived from the surveillance in a legal proceeding, or (2) through 18 U.S.C. § 3504(a)(1)—a unique statutory mechanism that, in limited circumstances, obligates the government to "affirm or deny the occurrence" of alleged unlawful electronic surveillance. *See* S. Rep. No. 95-701, at 63; *see also* S. Rep. No. 95-604, pt. I, at 56; *see generally In re Grand Jury Proceedings (Garrett)*, 773 F.2d 1071, 1072 (9th Cir. 1985) (per curiam) ("If the witness makes a preliminary showing that he was a victim of illegal electronic surveillance, [under § 3504] the government must unequivocally affirm or deny the use of such surveillance.").

Enacted in 1970 as an amendment to the Wiretap Act, § 3504 provides in pertinent part: "In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act." 18 U.S.C. § 3504(a)(1); *see also id.* § 3504(b) (defining "unlawful act" as use of a device as defined in 18 U.S.C. § 2510(5) in violation of the Constitution or federal law). As the statute states, its discovery mechanism is available only in circumstances involving a "claim by a party aggrieved that evidence is *inadmissible*." *Id.* § 3504(a)(1) (emphasis added). The statute is thus available only to those who seek to exclude evidence of suspected surveillance, not to those who seek to discover and admit it. *See Gelbard v. United States*, 408 U.S. 41, 54 (1972); *United States v. Shelton*, 30 F.3d 702, 707 (6th Cir. 1994) ("Section 3504 comes into play only on a claim that evidence is inadmissible."). Accordingly, a plaintiff could not file a civil action alleging unlawful domestic criminal surveillance, for instance under 18 U.S.C. § 2520, and then use § 3504(a)(1) to compel the government to acknowledge the surveillance to help the plaintiff establish his case. Section 3504 is instead a tool to preemptively discover surveillance evidence a party seeks to exclude from a legal proceeding. It has no application to cases where the government is not seeking to introduce evidence against a person. *Cf.* S. Rep. No. 95-701, at 11 (in FISA, "[t]he requirement of subsequent notice to the surveillance target is eliminated, unless the fruits are to be

1   used against him in legal proceedings"); *see generally Katz v. United States*, 389 U.S. 347, 355 n.22

2   (1967) ("[O]f course 'the usefulness of electronic surveillance depends on lack of notice to the

3   suspect.'").

4       The existence of the carefully circumscribed discovery right in § 3504 negates any

5   suggestion that § 1806(f) implicitly covers the same ground.  Congress itself made this clear.  The

6   Senate Intelligence Committee Report explains that: "The most common circumstance in which . . .

7   a motion [to suppress under 50 U.S.C. § 1806(e)] might be appropriate would be a situation in which

8   a defendant queries the Government under 18 U.S.C. § 3504 and discovers that he has been

9   intercepted by electronic surveillance even before the Government has decided whether evidence

10  derived from surveillance will be used in the presentation of its case."  S. Rep. No. 95-701, at 63; *see*

11  *also* S. Rep. No. 95-604, at 56.  *United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990), is

12  illustrative.  There, during deportation proceedings, the government admitted in response to a § 3504

13  motion that it had conducted FISA-authorized surveillance of certain aliens.  *Id.* at 1148-49.  Only

14  following that acknowledgement could § 1806(f) be used to obtain a determination regarding the

15  legality of the admitted surveillance.  *See id.* at 1149-50.

16      If Congress had meant to incorporate into § 1806(f) the same right to confirm the existence

17  of surveillance provided in § 3504(a)(1), it surely would have given some indication to that effect in

18  its discussion of both statutes.  Instead, the legislative history indicates that the two statutes provide

19  distinct procedural rights, and that Congress intended § 1806(f) to set forth a procedure for deciding

20  motions to suppress filed under § 1806(e) only after a defendant discovers—either through § 3504 or

21  other government acknowledgement—that he has been the target of surveillance.  It would make no

22  sense for Congress to have intended § 1806(f) to provide a more robust means of confirming highly

23  classified foreign intelligence surveillance than the limited mechanism applicable mostly in the more

24  commonplace criminal and immigration contexts through § 3504.

25      In short, § 1806(f)'s procedures cannot sensibly be applied where the fact of surveillance has

26  not already been established.  Any contrary reading would contravene both the text and structure of

27  the statute, as well as its traditional and accepted use.

28

**C.      Section 1806(f) Does Not Displace The State Secrets Privilege And Compel Disclosure Of Classified Information Because It Lacks A Clear Statement Of Congressional Intent To Do So**

If there were any ambiguity as to whether § 1806(f) could be used to compel the disclosure of classified information about whether a civil plaintiff has been surveilled, the provision would have to be read to preserve the Executive Branch's authority to control the dissemination of this information. For at least three reasons, Congress could displace the state secrets privilege and compel such a disclosure, if at all, only by expressing its intent to do so clearly. It has not done so here.

*First*, the state secrets privilege has a substantial constitutional component rooted in the Executive's control over classified information. *See Reynolds*, 345 U.S. at 6; *United States v. Nixon*, 418 U.S. 683, 710-11 (1974); *El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007); *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988).[9] Thus, plaintiffs' interpretation of § 1806(f) could be adopted only if the language of the provision clearly supported it. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (doctrine of constitutional avoidance); *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *see Egan*, 484 U.S. at 530; *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991).

*Second*, even if the state secrets privilege were exclusively a common law privilege, the common law should "not . . . be deemed repealed, unless the language of a statute be clear and explicit for this purpose." *Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35 (1983); *see also United States v. Texas*, 507 U.S. 529, 534 (1993) ("[i]n order to abrogate a common-law principle, [a] statute must 'speak directly' to the question addressed by the common law.").

*Third*, and finally, because plaintiffs' construction of § 1806(f) would permit disclosure of

---

[9]  Contrary to the Al-Haramain plaintiffs' assertion (at 9-10), neither the Ninth Circuit's decisions in *Al-Haramain* nor *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998), addressed the question whether the privilege was constitutionally based. The Ninth Circuit's reference to the state secrets privilege as a common law privilege does not constitute a rejection of the idea that it is also grounded in the Constitution. The common law and the Constitution can simultaneously recognize and protect the same interests.

information relating to alleged National Security Agency ("NSA") surveillance, it must be rejected unless Congress clearly intended to repeal § 6 of the National Security Agency Act of 1959, which mandates that "nothing in this Act *or any other law* . . . shall be construed to *require* the disclosure . . . of any information with respect to the activities" of the NSA, 50 U.S.C. § 403 note (emphases added). *See National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2532 (2007) ("[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal [is] clear and manifest." (internal quotation marks omitted)).

There can be no question that § 1806(f) lacks the clear statement that would be required to displace the state secrets privilege. Under constitutional avoidance principles, § 1806(f) clearly can—and therefore must—be read as not applying in civil cases challenging alleged but unconfirmed surveillance. As explained above, the text, structure, purpose, and legislative history make clear that Congress did not intend for § 1806(f) to apply in such a case, and the statute is certainly susceptible of such a construction.

In addition, § 1806(f) lacks the clarity needed to abrogate the state secrets privilege even if it is conceived of as only a common law doctrine. In *Norfolk Redevelopment & Housing Authority*, the Supreme Court held that a broadly worded statute could not be interpreted to apply in circumstances that would derogate the common law (there, the common law rule that a utility must bear the expense of relocating its facilities). Although the statute referred simply to a "displaced person," which could include a utility, *see* 464 U.S. at 35, application of the statutory rule to utilities would have changed the common law rule. The Court examined the legislative history and concluded that the statute was intended to address a different problem. *Id.* at 41. "At no point in the extensive hearings, congressional debates, or committee reports was it ever suggested" that the statute would alter the common law rules applicable to utilities. *Id.* at 42.

Likewise, § 1806(f) was intended to address a different problem than the state secrets privilege—namely, how to allow adjudication of the lawfulness of FISA surveillance when the government seeks to use evidence obtained or derived from that surveillance against an aggrieved person while permitting the government to retain control over classified information. *See United*

1   *States v. Texas*, 507 U.S. at 537 (holding that Debt Collection Act did not abrogate United States'

2   common law right to collect prejudgment interest on debts owed to it by the States because, *inter*

3   *alia*, Congress's purpose in passing the Act was to strengthen the government's hand in collecting its

4   debts, not weaken it). Moreover, nothing in the statute or its legislative history suggests that

5   Congress intended to displace the state secrets privilege in civil suits challenging alleged unlawful

6   surveillance. Like the text of § 1806(f) itself, the provision's legislative history nowhere mentions

7   the state secrets privilege, much less provides any reason to think Congress intended to eliminate

8   it.[10]

9   **II.    Consideration Of Whether § 1806(f) Displaces The State Secrets Privilege In Cases In
10          The MDL Against The Telecommunications Carriers Raises Distinct Issues That Need
            Not And Should Not Be Decided In This Case**

11           No matter how the Court decides *Al-Haramain*, the cases brought against private

12   telecommunications carriers present distinct considerations, and the Court should not address the

13   applicability of § 1806(f), or whether that provision displaces the state secrets privilege, in those

14   cases. This is especially so because those questions remain before the Ninth Circuit in *Hepting*.

15           **A.    Section 1806(f) Is Not Applicable To Suits Against Third Parties**

16           Section 1806(f) cannot displace the state secrets privilege in the cases against the carriers

17   because it makes no provision for suits against third parties. Section 1806(f) does not on its face

18   explain the role of a private defendant; the government and the "aggrieved person" are the only

19   parties mentioned in the provision. Section 1806(f) does not set forth any role for a private

20   defendant in any of its procedures, which perhaps explains why we have been unable to locate a

21   single case against a nongovernmental defendant in which § 1806(f) has ever been used.

22           Moreover, construing § 1806(f) to apply to cases against third parties would eliminate the

23   ────────────────────

24   [10] The cases cited by the Al-Haramain plaintiffs (at 9-11) are inapposite. In *City of Milwaukee v.
     Illinois*, 451 U.S. 304, 319-23 (1981), application of the common law was inconsistent with the

25   statute. As explained above, the state secrets privilege and FISA address different problems and
     therefore comfortably coexist. Even on its own terms, *Halpern v. United States*, 258 F.2d 36 (2d

26   Cir. 1958), is inapposite because the state secrets privilege does not apply in every potential suit
     under § 1810. For example, when the government has acknowledged that a person was surveilled

27   (such as when it seeks to use evidence obtained or derived from FISA surveillance against a person
     in a proceeding), litigation under § 1810 does not threaten to reveal secret surveillance-targeting

28   information.

government's option of dismissing a suit rather than disclosing classified information. As noted above, § 1806(f) was meant to give the government a choice: use evidence obtained or derived from surveillance against a person and permit disclosure as necessary to adjudicate the lawfulness of the surveillance, or forgo use of the evidence. *See, e.g.*, S. Rep. No. 95-701, at 65 ("the Government must choose—either disclose the material or forgo the use of the surveillance-based evidence"); S. Rep. No. 95-604, pt. 1, at 58 (same). But in a case filed by allegedly aggrieved persons against a third party, such as a telecommunications carrier, the government does not control whether the case goes forward. If a court were to determine under § 1806(f) that disclosure to plaintiffs of highly sensitive information was necessary to adjudicate the lawfulness of any surveillance, the government could not dismiss the case and protect the information (or even if plaintiffs are correct that § 1806(f) can be used offensively in civil actions against the government, take a default judgment). A central purpose of § 1806(f), therefore, would be eliminated by construing the provision to apply in a case against a third party. In light of the President's authority to control the dissemination of classified information, such a result would raise serious constitutional concerns. It is no answer that the classified information could be used in some sort of *ex parte* or secret proceeding to determine the merits of the claims against the telecommunications providers. Such an approach could raise significant constitutional issues of its own. Accordingly, under the canons of construction noted above, the Court should construe § 1806(f) not to apply to cases against nongovernmental defendants.

FISA's legislative history also shows that Congress did not intend § 1806(f) to apply in cases against third parties. Nowhere does the legislative history of § 1806(f) discuss the role of any potential third parties or hint that anyone other than the government and an aggrieved person would be involved in § 1806(f) proceedings. As explained above, the legislative history of § 1806(f) indicates that the provision applies when the government is using evidence obtained or derived from electronic surveillance against a person—not in litigation between private parties. Indeed, hearings on Senate Bill 3197, the predecessor to the bill that became FISA, reveal that Congress affirmatively did not intend § 1806(f) to apply in cases between private parties:

Amicus Curiae Brief of Telecommunications Carrier Defendants                    MDL No. 06:1791-VRW

Senator Case. . . . Is section (c) on page 14 intended to apply only to litigation to which the United States is a party?

Mr. Madigan. That is correct, Senator, the criminal prosecutions.

Senator Case. And more specifically, criminal prosecutions.

Senator Bayh. It could be a State court.

Mr. Madigan. It could be a prosecution in a State court.

Senator Case. In any case, it is a case in which the people versus John Doe are involved, *not a case between individuals*.

*SCI Hearings on S. 3197*, at 252 (emphasis added).

Other provisions of the electronic surveillance statutes that plaintiffs invoke in their complaints against the carriers also reinforce that § 1806(f) does not apply in those cases. As plaintiffs point out, § 2712 of the Electronic Communications Privacy Act ("ECPA"), which creates a cause of action against the United States for certain violations of ECPA, Title III, and certain provisions of FISA, specifies that § 1806(f) "shall be the exclusive means by which materials governed by [§ 1806(f)] may be reviewed" in cases brought against the United States under § 2712. 18 U.S.C. § 2712(b)(4). Congress's express reference to § 1806(f) in § 2712 demonstrates that § 1806(f) does not, of its own force, otherwise apply in civil actions challenging unlawful surveillance.

In addition, Congress's importation of § 1806(f) in cases against the United States brought under § 2712 is consistent with its intent to preserve the government's option not to disclose national security information in cases to which § 1806(f) applies. When the government is the defendant, as in actions brought under § 2712, it can choose to take a default judgment rather than disclose surveillance information if required to do so under § 1806(f). By contrast, Congress did not import § 1806(f) in the causes of action against nongovernmental entities where the government would not be in a position to forgo disclosure of the evidence and suffer the consequences to its action. *See, e.g.*, 50 U.S.C. § 1810; 18 U.S.C. § 2707(a). This omission is further evidence that § 1806(f) does not apply in such cases.[11]

---

[11] Moreover, because the carrier defendants could invoke defenses to liability in the cases against them even if the alleged electronic surveillance occurred and were determined to be unlawful in a

## B. The Court Need Not Decide In *Al-Haramain* Whether § 1806(f) Applies To Claims Alleging Disclosure Of Telephone Call Records

In *Al-Haramain*, plaintiffs allege the NSA "targeted, and engaged in electronic surveillance of communications between, a director or directors of plaintiff Al-Haramain Oregon and plaintiffs Below and Gafoor."  Compl., No. 3:06-cv-274, ¶ 19 (Feb. 28, 2006) (Dkt. # 1).  Based on these allegations, plaintiffs assert a claim for damages under 50 U.S.C. § 1810.  *See id.* ¶ 27.  Unlike in some of the cases against the carriers, plaintiffs in *Al-Haramain* do not assert claims for alleged disclosure of telephone records.  For this reason, the Court need not and should not address in *Al-Haramain* whether or how § 1806(f) would apply to the claims alleging unlawful disclosure of call records.

## CONCLUSION

The Court should conclude that § 1806(f) does not displace the state secrets privilege.

Respectfully submitted,

Dated:     April 7, 2008

PILLSBURY WINTHROP SHAW PITTMAN LLP

SIDLEY AUSTIN LLP

By:  /s/ Bradford A. Berenson
_____
      Bradford A. Berenson

Attorneys for AT&T Corp.

---

§ 1806(f) proceeding, *see, e.g.*, 18 U.S.C. § 2707(e); *id.* § 2520(d), plaintiffs' damages claims against the carriers still would be barred by the government's invocation of the state secrets privilege even if § 1806(f) applied in those cases as plaintiffs contend.

WILMER CUTLER PICKERING HALE
AND DORR LLP

MUNGER, TOLLES & OLSON LLP

Randal S. Milch        (pro hac vice)
VERIZON COMMUNICATIONS INC.
One Verizon Way
VC43E043
Basking Ridge, NJ  07920
Tel.:  908-559-1752
Fax:  908-696-2136


By:  /s/ John A. Rogovin

_____
        John A. Rogovin

Attorneys for the Verizon Defendants


## DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B

I, John A. Rogovin, hereby declare pursuant to General Order 45, § X.B that I have obtained

the concurrence in the filing of this document from the other signatory listed above.

I declare under penalty of perjury that the foregoing declaration is true and correct.


Executed on April 7, 2008, at Washington, DC.


By:  /s/ John A. Rogovin

_____
        John A. Rogovin