JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
CARL J. NICHOLS
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8460

*Attorneys for the Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION <br><br> This Document Solely Relates To: <br><br> *Al-Haramain Islamic Foundation et al.* <br> *v. Bush, et al.* (07-CV-109-VRW) | No. M:06-CV-01791-VRW <br><br> **DEFENDANTS' REPLY IN SUPPORT OF SECOND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT IN** *Al-Haramain Islamic Foundation et al. v. Bush et al.* <br><br> Date:         April 23, 2008 <br> Time:         10:00 a.m. <br> Courtroom:   6, 17th Floor <br> Honorable Vaughn R. Walker |

*Al-Haramain v. Bush* **(07-CV-109) (MDL-1791) Defs. Reply 2d Motion to Dismiss/Summary Judgment**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  PLAINTIFFS FAIL TO ESTABLISH STANDING FOR PROSPECTIVE
    RELIEF OR ANY WAIVER OF SOVEREIGN IMMUNITY FOR DAMAGES. . . . . . 2

    A.  Plaintiffs Fail to Establish Their Standing for Prospective Relief. . . . . . . . . . . . 3

    B.  Plaintiffs Fail to Demonstrate that Sovereign Immunity Has Been
        Waived as to Their Damages Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. PLAINTIFFS' CONTENTION THAT THE FISA PREEMPTS THE STATE
    SECRETS PRIVILEGE IN THIS CASE IS MERITLESS. . . . . . . . . . . . . . . . . . . . . . . 8

    A.  The State Secrets Privilege Is a Constitutionally Based, Common Law
        Privilege that Cannot be Preempted by Congress Absent a Clear
        and Direct Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.  Plaintiffs Are Wrong that the FISA Speaks Clearly or Directly to Preempt
        the State Secrets Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.  Section 1806(f) Applies to the Use or Admissibility of Evidence
            Related to Acknowledged Surveillance. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.  Amici Plaintiffs' Contention that Reference to "Motions to
            Discover Materials Related to Electronic Surveillance" In
            Section 1806(f) Was Specifically Intended to Apply in Civil
            Litigation to Preempt the State Secrets Privilege Is Without
            Foundation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        3.  Proceedings Under Section 3504 of Title 18 Underscore that
            Section 1806(f) Applies to the Admissibility of Evidence and
            Acknowledged Surveillance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        4.  Section 1810 Would Not Be Rendered a "Nullity" By Application
            of the State Secrets Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III. THE COURT SHOULD AVOID THE SERIOUS CONSTITUTIONAL
     ISSUES THAT WOULD ARISE FROM CONCLUDING THAT FISA
     SECTION 1806(f) PREEMPTS THE STATE SECRETS PRIVILEGE . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

**CASES**                                                                                        **PAGE(S)**

*ACLU Foundation v. Barr*, 952 F.2d 457 (D.C. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Alderman v. United States*, 394 U.S. 165 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190 (9th Cir. 2007). . . . . . . . . . . . . <u>passim</u>

*American Foreign Service Association v. Garfinkle,* 490 U.S. 153 (1989). . . . . . . . . . . . . <u>passim</u>

*American Foreign Service Association v. Garfinkle*, 732 F. Supp. 13
   (D.D.C. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Asmar v. Dept. of Treasury*, 680 F. Supp. 248 (E.D. Mich. 1987). . . . . . . . . . . . . . . . . . . . . 6

*Bowsher v. Synar*, 478 U.S. 714 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*City of Milwaukee v. Illinois*, 451 U.S. 304 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Clift v. United States*, 597 F.2d 826 (2d Cir.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Clift v. United States,* 808 F. Supp. 101 (D. Conn. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*County of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985). . . . . . . . . . . . . . . . . . . . . 10

*Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Department of the Navy v. Egan*, 484 U.S. 518 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dep't of Energy v. Ohio*, 503 U.S. 607 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*El-Masri v. United States*, 479 F.3d 296 (4th Cir.), *cert. denied*,
   128 S. Ct. 373 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Grand Jury Investigation (Doe)*, 437 F.3d 855 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . 18

*In re Grand Jury Proceedings (Garcia-Rosell)*, 889 F.2d 220 (9th Cir. 1989). . . . . . . . . . . . 18

*In re Grand Jury Proceedings (Garrett)*, 773 F.2d 1071 (9th Cir. 1985). . . . . . . . . . . . . . . . 18

*In re Grand Jury Witness (Whitnack),* 544 F.2d 1245 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . 18

*Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 659 F. Supp. 674
   (E.D.N.Y. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Hanford Nuclear Reservation Litig.,* 497 F.3d 1005 (9th Cir. 2007). . . . . . . . . . . . . . . . . 10

*Kasza v. Browner*, 133 F.3d at 1159 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21, 22

*Multi Denominational Ministry of Cannabis v. Gonzales,*
    474 F. Supp. 2d 1133 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*National Fed'n of Federal Employees v. United States,*
    688 F. Supp. 671 (D. D.C. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nuclear Control Institute v. N*RC, 563 F. Supp. 768 (D.D.C.) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Organizacion JD LTDA v. United States Dep't. of Justice,* 18 F.3d 91 (2d Cir. 1994). . . . . . . . . . 6

*Organizacion JD LTDA v. United States Dep't. of Justice,* 124 F.3d 354 (2d Cir. 1997). . . . . . . . 6

*Pittman v. Oregon, Employment Dept.*, 509 F.3d 1065 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . 5

*Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Sealed Case*, 310 F.3d 717 (For. Intel. Surv. Ct. Rev. 2002). . . . . . . . . . . . . . . . . . . . . . . 23

*Smith v. SEC*, 129 F.3d 356 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Tyler v. Cain*, 533 U.S. 656 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Hubbell*, 530 U.S. 27 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Morton*, 467 U.S. 822 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Nixon*, 418 U.S. 683 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Nordic Village*, 530 U.S. 30 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Reynolds*, 345 U.S. 1 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

*United States v. Texas*, 507 U.S. 529 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Tobias*, 836 F. 2d 449 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Vermont Agency of Nat. Resources v. United States*, 529 U.S. 765 (2000). . . . . . . . . . . . . . . . . . 5

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Worthington v. United States*, 799 F.2d 1321 (9th Cir, 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). . . . . . . . . . . . . . . . . . . . . . . . . 23

**STATUTES**

18 U.S.C. § 2520. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 2707(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2712. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 3504. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

50 U.S.C. § 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

50 U.S.C. § 403-1(i)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

50 U.S.C. § 1801(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

50 U.S.C. § 1801(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

50 U.S.C. § 1806(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20

50 U.S.C. § 1806(a)-(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 1806(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

50 U.S.C. § 1806(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

50 U.S.C. § 1809. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

50 U.S.C. § 1810. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


**LEGISLATIVE MATERIAL**

H.R. Rep. No. 95-1283 Pt. I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

H.R. Conf. Rep. No. 95-1720, 1978 U.S.C.C.A.N. 4048. . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

S. Rep. No. 95-701, 1978 U.S.C.C.A.N. 3973. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

S. Rep. No. 95-604, 1978 U.S.C.C.A.N. 3954. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20


**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 4(i)(3), (m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Second Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pls. Opp."), fails to establish that the Court has jurisdiction in this case or, even if there were jurisdiction, that the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*, preempts the state secrets privilege. Plaintiffs relegate to the last pages of their brief any discussion of the Court's jurisdiction and suggest that the Court need not even consider the question. But it is hornbook law that a federal court must satisfy itself, at every stage of the proceedings, that is has jurisdiction. It is apparent now that the Court lacks jurisdiction for both the prospective and the retrospective relief sought by Plaintiffs. Plaintiffs' assertion that they still have standing to obtain prospective relief because the President has not disclaimed his constitutional authority as to foreign intelligence surveillance is clearly wrong, and Plaintiffs also fail to show that Congress has expressly waived sovereign immunity to permit their damages claim under 50 U.S.C. § 1810.[1]

Assuming the Court proceeds to consider whether the FISA preempts the state secrets privilege, neither Plaintiffs nor their Amici demonstrate that Section 1806(f) reflects a sufficient clear and direct intent to preempt the privilege; indeed, Plaintiffs' arguments (like those of their Amici) rest on parsed phrases from the statute and legislative history pulled well out of context. Notably, however, Plaintiffs "do not advance" the radical argument that Section 1806(f) permits discovery into *whether* a person has been subject to surveillance. *See* Pls. Opp. at 17. Instead, Plaintiffs argue that the sealed document inadvertently disclosed to them establishes their standing to proceed under Section 1806(f), *see id.*, and they ask the Court to "recognize the mere fact" that they have been subject to alleged surveillance based on that document, *see id.* at 23. But Plaintiffs' position, as we have previously established, rests on nothing more than conjecture and speculation, and the Government's *in camera*, *ex parte* submissions show that the serious harms to national security recognized by the Ninth Circuit continue to be at stake in any attempt

---

[1] Defendants refer to particular FISA sections based on the section designations in Title 50 of the U.S. Code, for example Sections 106(f) and 110 of the FISA will be referred to as "Section 1806(f)" and "Section 1810" respectively.

to proceed under Section 1806(f).  *See* Dkt. 17 (07-CV-109), Def. MSJ at 22-25.

## ARGUMENT

## I. PLAINTIFFS FAIL TO ESTABLISH STANDING FOR PROSPECTIVE RELIEF OR ANY WAIVER OF SOVEREIGN IMMUNITY FOR DAMAGES.

The Court cannot address the question remanded by the Ninth Circuit unless the Court has jurisdiction, and Plaintiffs point to no authority for the proposition that this issue can be ignored.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (the requirement that jurisdiction be established is 'inflexible and without exception'").[2]  Indeed, in an analogous case that concerned whether Congress could restrict the Executive's authority over national security information, the Supreme Court directed the district court to consider whether changed circumstances had affected the Court's jurisdiction to grant equitable relief in order to avoid a serious constitutional question.  *See American Foreign Serv. Ass'n v. Garfinkle*, 490 U.S. 153 (1989) ("*AFSA*").

At issue in *AFSA* were statutory restrictions imposed by Congress on a confidentiality agreement required by the Executive branch before access is granted to classified information. *See id*. at 157.  Plaintiffs challenged the Government's compliance with those restrictions, and the district court held that the statute unconstitutionally interfered with the President's constitutional authority to protect national security information.  *See National Fed'n of Federal Employees v. United States*, 688 F. Supp. 671, 683-85 (D.D.C. 1988).   Upon a direct appeal,, the Supreme Court vacated and remanded "[i]n spite of the importance of the constitutional question of whether [the statute] impermissibly intrudes upon the Executive's constitutional authority to regulate the disclosure of national security information—indeed partly because of it . . . ."  *See AFSA*, 490 U.S. at 158.  The Court directed the district court on remand to "decide first whether the controversy is sufficiently live and concrete to be adjudicated and whether it is an appropriate case for equitable relief," and only then to consider whether the statute and Executive action could be reconciled and, if not, to consider the constitutional question.  *See id*.  This Court should

---

[2]  At the last case management conference, the Court did not appear to foreclose Defendants from raising these issues.  *See* Tr., 2/7/08 at 19 (THE COURT:  "I'm going to let you make your argument with respect to all of these other issues and you may persuade me.").

proceed similarly, starting with the issue of jurisdiction.[3]

### A. Plaintiffs Fail to Establish Their Standing for Prospective Relief.

Plaintiffs devote a mere paragraph to why they may obtain prospective relief as to a presidentially-authorized activity that lapsed nearly 15 months ago. Plaintiffs do not (and could not) contend that the Terrorist Surveillance Program ("TSP") is ongoing. Instead, they assert only that there is some possibility that it might be reinstated sometime in the future because the Government maintains that it was lawful and that the President continues to have authority to direct foreign intelligence surveillance. *See* Pls. Opp. at 27. But a statement of the Executive branch's position on principles of constitutional law simply does not establish that an alleged injury is "actual or imminent," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983), or that Plaintiffs face a "real and immediate threat" that an alleged prior injury would recur, *id.* at 105; *see also id.* at 108 n.8 ("It is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). Moreover, the question of whether a jurisdictional prerequisite for prospective injunctive relief exists is not an issue of mootness or an exception to the mootness doctrine. As the Court held in *Lyons*, "[t]he equitable doctrine that cessation of the challenged conduct does not bar an injunction is of little help in this respect, *for [plaintiffs'] lack of standing does not rest on the termination of the [challenged] practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued*." 461 U.S. at 108 (emphasis added).[4]

Because the Court lacks jurisdiction over Plaintiffs' claims for prospective relief, Plaintiffs must demonstrate that the Court has jurisdiction over their damages claim.

---

[3] On remand, the district court in *AFSA* found that the statute and legislative history were inconclusive as to whether the Executive's use of the confidentiality agreement had been barred by Congress and noted that the Government's reading of the statute at issue "allowed this Court to follow the Supreme Court's directive and to avoid the constitutional issue." *American Foreign Serv. Ass'n v. Garfinkle*, 732 F. Supp. 13, 16 (D.D.C. 1990).

[4] The Court in *Lyons* also observed that the "capable of repetition" exception to mootness is "likewise inapposite" in this situation, since it applies "only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Lyons*, 461 U.S. at 108.

## B. Plaintiffs Fail to Demonstrate that Sovereign Immunity Has Been Waived as to Their Damages Claim.

Plaintiffs are simply wrong that the cause of action on which they base their claim for damages against the United States—50 U.S.C. § 1810—waives the United States' sovereign immunity. *See* Pls. Opp. at 24-26. But the text of that provision makes clear that it does not authorize damages suits against the United States. If there were any doubt on the question, as the Court is aware, waivers of sovereign immunity must be explicit. *Multi Denominational Ministry of Cannabis v. Gonzales*, 474 F. Supp. 2d 1133, 1140 (N.D. Cal. 2007); *see also Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (waiver of sovereign immunity must be "unequivocal"). Ambiguous statutory language is not sufficient to waive sovereign immunity, nor is the existence of even a "plausible" interpretation that the statute might subject the United States to suit. *United States v. Nordic Village*, 530 U.S. 30, 34-37 (1992). Plaintiffs fail to meet this burden; indeed, their own argument, which is based entirely on inferences and deductions, establishes that Section 1810 is, at best, ambiguous on the matter.

Section 1810 authorizes a civil cause of action for damages based on violations of Section 1809, which an aggrieved person may bring against any "person" who committed the violation. *See* 50 U.S.C. § 1810. Plaintiffs argue that the definition of "person" in the FISA includes the term "entity;" that "entity" encompasses the United States; that Section 1810 does not expressly exclude the United States from the cause of action as do some statutory clauses; and thus that Section 1810 authorizes suits against the United States. *See* Pls. Opp. at 24.

Plaintiffs' argument is replete with errors. In the first place, Plaintiffs turn the established rule on its head: instead of an unequivocal waiver of sovereign immunity to *permit* suit against the United States, Plaintiffs contend that Congress must expressly *exclude* the United States from suit. This is not the law. *Nordic Village*, 530 U.S. at 34-37.

Second, Plaintiffs' contention that the term "entity" in the FISA definition of "person" must include the United States because, in other contexts, the term "entity" has been construed to include governmental entities, is without merit. The case on which Plaintiffs principally rely for this proposition, *Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001), holds simply that

*municipal* governments are among the entities that may be sued under 18 U.S.C. § 2520, and does not address or concern whether the term "entity" includes, and therefore would waive the sovereign immunity of the United States.[5] *See id.* at 985-86; *see also Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007) (municipalities not entitled to sovereign immunity in federal court). That the FISA definition of "person" would include the entities listed makes sense in the context of other provisions of the FISA not related to the civil cause of action. For example, the definition of an "agent of a foreign power" uses the term "person" which, as defined, would cover the entities listed as well. *See* 50 U.S.C. § 1801(b). Thus, including various entities among the definition of "person" serves a different purpose in the Act than subjecting the United States to suit.[6]

Third, Plaintiffs' contention that the term "person" as used in the FISA includes the United States also runs up against the general presumption that the term "person" does not include the sovereign. *See Vermont Agency of Nat. Res. v. United States*, 529 U.S. 765, 781 (2000). This presumption may be overcome "only upon some affirmative showing of statutory intent to the contrary." *Id.*; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Thus, the question here is not whether the term "entity," standing alone, could be read to include a governmental entity, but whether the inclusion of the term "entity" within the definition of "person" is sufficient to overcome the general presumption that "person" does not include the

---

[5] In any event, the statutory provision at issue in *Adams* differs from the FISA in an important respect. Under Section 2520 at the time of the *Adams* decision, a civil damages action could have been brought against a "person or entity." *See Adams*, 250 F.3d at 985 (citing amendment to 18 U.S.C. § 2520 adding "entity"). Section 1810, however, is limited to suits against any "person"—and the term "entity" is included within the FISA's general definition of "person" that applies to all provisions of the Act. *See* 50 U.S.C. § 1801(m) ("person" means "any individual, including any officer or employee of the Federal Government, or any group, entity, association, corporation, or foreign power").

[6] The report of the House Permanent Select Committee on Intelligence for the Foreign Intelligence Surveillance Act of 1978 indicates that the term "person" was "intended to make explicit that entities can be persons where the term "person" is used—in particular that "entities" could be targeted as agents of a foreign power—and specifically states that "[w]here it is intended that only natural persons are referred to, the term "individual" U.S. person or "individual" person is used." *See* H.R. Rep. No. 95-1283, Pt. 1, at 67, 95th Congress, 2d Session (Exhibit No. 1 submitted herewith).

sovereign. This analysis must occur in deciding whether sovereign immunity has been "unequivocally" waived, *Dep't of Energy*, 503 U.S. at 615—meaning that the presumption that "person" does not include the sovereign is even stronger in this particular context.

Fourth, as we established in our opening brief, where Congress did intend for the United States to be subject to civil liability for violations of the FISA, it said so expressly. *See* 18 U.S.C. § 2712 (authorizing suit against "the United States"). And the fact that Congress has expressly excluded the United States from causes of action under the Electronic Communications Privacy Act, *see* 18 U.S.C. § 2520 and § 2707, as Plaintiffs note, *see* Pls. Opp. at 24, reinforces the conclusion that prior versions of these provisions, which authorized suit against a "person or entity," were not intended to waive the sovereign immunity of the United States. *See Asmar v. Dep't of Treasury*, 680 F. Supp. 248, 250 (E.D. Mich. 1987).[7]

Plaintiffs' separate argument that the presence of the phrase "any officer or employee of the Federal Government" in Section 1801(m) constitutes a waiver of sovereign immunity, *see* Pls. Opp. at 25-26, is likewise untenable. The phrase "any officer or employee of the Federal Government" is included within the meaning of term "individual" in the FISA definition of "person." *See* 50 U.S.C. § 1801(m). It would be passing strange to conclude that there has been a waiver of sovereign immunity, and thus that the sovereign (which, according to Plaintiffs, is an "entity") can be sued for damages, simply because Congress defined an "individual" to include federal officers. Permitting *individual capacity* suits—that is, suits against such officers themselves—makes complete sense when it is considered that civil liability under Section 1810

---

[7] The Ninth Circuit has not "rejected" *Asmar*, as Plaintiffs contend. *See* Pls. Opp. at 25 (citing *Adams v. City of Battle Creek* ). *Adams* is a Sixth Circuit decision that has never been cited by the Ninth Circuit. Similarly, *Organizacion JD LTDA v. United States Dep't. of Justice*, 18 F.3d 91, 94-95 (2d Cir. 1994), which purports to hold that a cause of action against a "person or entity" under 18 U.S.C. § 2707(a) may be brought against a federal agency, also failed to address the sovereign immunity issue, and has never been relied upon by the Ninth Circuit. The Second Circuit later upheld dismissal of that case without considering the sovereign immunity issue. *See Organizacion JD LTDA v. United States Dep't of Justice*, 124 F.3d 354 (2d Cir. 1997). In addition, the Sixth Circuit vacated and withdrew a prior panel decision which had held, based in part on *Organizacion JD LTDA,* that Section 2520 waived the sovereign immunity of the United States, and left that issue open on remand. *See Smith v. SEC*, 129 F.3d 356, 364 (6th Cir. 1997).

is linked to violations of Section 1809, which imposes criminal liability against individuals who act "intentionally" (including officers or employees of the United States).[8] In this manner, civil liability under Section 1810 is linked to intentional misconduct by individual federal employees and officials.[9]

Plaintiffs' contention also suffers from the same flaw as their "entity" argument: because suit against an official in his or her *official* capacity is a suit against the sovereign, *see Will*, 491 U.S. at 71, an express waiver of sovereign immunity is required. Plaintiffs contend that the reference to "officers and employees of the United States" in Section 1801(m) is alone sufficient to waive sovereign immunity because, where suit has been authorized against "the United States" for FISA violations, the conduct of federal officers and employees is at issue, *see* Pls. Opp. at 26 (citing 18 U.S.C. § 2712, which authorizes an action "against the United States to recover money damages" for violations of 50 U.S.C. §§ 1806(a), 1825(a), and 1845(a)).[10] But those provisions merely show a congressional determination that "the United States" may be subject to civil liability for certain violations of the FISA by its employees, but not for all (such as those requiring criminal intent). The use of the term "the United States" serves to distinguish those circumstances, not "equate" them.[11]

---

[8] Section 1809(a) provides that a "person is guilty of an offense if he intentionally (1) engages in electronic surveillance under color of law except as authorized by statute; or (2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that that information was obtained through electronic surveillance not authorized by statute." 50 U.S.C. § 1809(a).

[9] *See also* H.R. Conf. Rep. 95-1720, at 33-34, *reprinted in* 1978 U.S.C.C.A.N. 4048, 4062-63 (indicating that the "conferees agree that the civil liability of intelligence agents under this Act should coincide with the criminal liability.") (Exhibit No. 2 submitted herewith).

[10] These provisions concern the use of information gathered through electronic surveillance, physical searches, or pen register/trap and trace devices, *see* 50 U.S.C. §§ 1806(a), 1825(a), 1845(a). And the remedy provided against the United States is the "exclusive remedy" for such violations. *See* 18 U.S.C. § 2712(d).

[11] Causes of action against officers or employees of the Government under Title VII of the Civil Rights Act, *see* Pls. Opp. at 25, are easily distinguished since such claims are expressly directed at "executive departments" of the United States as "employers." *See Rochon v. Gonzales*, 438 F.3d 1211, 1215-16 (D.C. Cir. 2006).

For the foregoing reasons, the Court has no jurisdiction to proceed in this case, and need not and should not reach the FISA preemption issue.[12/]

## II.  PLAINTIFFS' CONTENTION THAT THE FISA PREEMPTS THE STATE SECRETS PRIVILEGE IN THIS CASE IS MERITLESS.

To the extent the Court reaches the issue of whether the FISA preempts the state secrets privilege in this case, Plaintiffs' interpretation of the statute and its legislative history fails to demonstrate any clear and direct[13/] intent by Congress to abrogate that privilege.  Moreover, Plaintiffs' decision to rely on the sealed document as the basis for preemption in this case brings to the fore the serious national security harms recognized by the Ninth Circuit that would be at risk in further proceedings under Section 1806(f).

### A.  The State Secrets Privilege Is a Constitutionally Based, Common Law Privilege that Cannot be Preempted by Congress Absent a Clear and Direct Statement.

Plaintiffs begin their discussion of the preemption issue by calling into question the applicable standard.  Plaintiffs contend first that the state secrets privilege has no constitutional status, but is merely one of federal common law and, that a "clear and manifest purpose" to preempt a common law privilege is not required.  *See* Pls. Opp. at 9.  Rather, Plaintiffs contend, federal statutory law can preempt *federal* common law if Congress simply "occupies the field" with a "comprehensive regulatory program."  *See id.* (citing *City of Milwaukee v. Illinois*, 451 U.S. 304, 316-17 (1981).  All of these positions are wrong.

To begin with, Plaintiffs' reading of *United States v. Nixon*, 418 U.S. 683 (1974), is meritless.  *See* Pls. Opp. at 10.  The *Nixon* Court's statement that the presidential privilege for

---

[12]  Finally, Plaintiffs' assertion that their Complaint in this case "may be characterized as alleging both official and personal capacity claims," *see* Pls. Opp. at 26, is remarkable at this stage.  Plaintiffs are the master of their own complaint and should *know* who they sued and in what capacity.  It could not possibly constitute "good cause" for Plaintiffs to serve individual Defendants well after the 120 days permitted, *see* Fed. R. Civ. P. 4(i)(3), (m), to deal with a jurisdictional defect caused by their own mistaken reading of the law.

[13]  As set forth in our opening brief, the state secrets privilege is both (i) constitutionally based, requiring a clear expression of congressional intent where Congress seeks to abrogate such power, and (ii) has a firm foundation in the common law, requiring Congress to speak directly to if it intends to abrogate federal common law.  *See* Defs. Mem. at 13-15.  We refer to this standard throughout as the "clear and direct" standard.

protecting military, diplomatic, or sensitive national security secrets is grounded in "areas of Art. II duties," *Nixon*, 418 U.S. at 710-11 (citing *United States v. Reynolds*, 345 U.S. 1 (1953)), was central to its holding that a more general claim of Executive privilege was less compelling in the face of demands for evidence in a criminal proceeding. *See id.* at 706-07, 711. The distinction Plaintiffs advance—that a general Executive privilege may be constitutionally based, but the state secrets privilege is not, *see* Pls. Opp. at 10—is plainly inconsistent with the Court's discussion of the state secrets privilege in *Nixon*. But our argument is not based merely on *Nixon*. In *Department of Navy v. Egan*, 484 U.S. 518 (1988), the Supreme Court acknowledged that the President's authority to protect national security information is grounded in his Article II powers, *id.* at 527, and *Reynolds* itself recognized the state secrets privilege "to avoid the constitutional conflict that might have arisen had the judiciary demanded that the Executive disclose highly sensitive military secrets." *El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir.) (citing *Reynolds*, 345 U.S. at 6 & n.9 (noting constitutional foundation asserted by the United States for the privilege)), *cert. denied*, 128 S. Ct. 373 (2007). Thus, as the Court of Appeals for the Fourth Circuit recently held, "[a]lthough the state secrets privilege was developed at common law, it performs a function of constitutional significance because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affairs responsibilities." *Id.* at 303.[14/] For this reason, a clear expression of congressional intent is required before the Court can conclude that Congress intended to restrict the Executive's constitutional authority in the manner advanced by Plaintiffs.[15/] *See* Memorandum in Support of

---

[14] The Ninth Circuit has not ruled otherwise in observing that the privilege is a common law evidentiary privilege. *See Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998); *Al-Haramain*, 507 F.3d at 1196. A privilege may be of both constitutional and common law pedigree, s*ee, e.g.*, *United States v. Hubbell*, 530 U.S. 27, 51-53 (2000) (Thomas, J., concurring) (discussing common law origins of privilege against self-incrimination), and the Ninth Circuit did not need to address, and did not in fact address, the constitutional dimension of the privilege in prior cases. For this reason, the contention by Amici Plaintiffs that the common law origin of the privilege is "law of the case," *see* Pls. Amici (Dkt. 440, MDL-1791) at 21, is meritless.

[15] Other courts have therefore looked with an appropriately skeptical eye towards claims that statutory provisions abrogate the state secrets privilege. *See, e.g.*, *Salisbury v. United States*, 690 F.2d 966, 975 n.4 (D.C. Cir. 1982) (stating that "by promulgating the FTCA, Congress did

Defendants' Motion to Dismiss or for Summary Judgment ("Defs. Mem.") at 14 (collecting cases). In addition, the doctrine of constitutional avoidance counsels that statutes be construed with a "reconciling interpretation" where possible to avoid such serious constitutional concerns. *AFSA*, 490 U.S. at 161-62.

Even if the state secrets privilege were a "mere" common law privilege, a clear and direct statement of congressional intent is required for Congress to supplant federal common law, and Plaintiffs are wrong in contending that the Supreme Court's decision in *City of Milwaukee* established a lesser or different standard. *See* Pls. Opp. at 10. On the contrary, the Supreme Court has consistently applied the "evident purpose" and "direct statement" standards to decide if Congress has preempted federal common law. *See United States v. Texas*, 507 U.S. 529, 534 (1993); *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236-37 (1985) ("As we stated in [*City of Milwaukee*], federal common law is used as a 'necessary expedient' when Congress has not 'spoken to a *particular* issue.'") (original emphasis); *see also City of Milwaukee*, 451 U.S. at 318-19 (holding that the intent of Congress was "clearly to establish" a comprehensive federal statutory remedy to replace a federal common law remedy in addressing legal claims concerning water pollution).[16] Thus, the question here is not whether the FISA is a "comprehensive scheme," but whether it "speak[s] directly" to the "particular issue" of whether the state secrets privilege is preempted by Section 1806(f) in cases where the Government has not confirmed or denied alleged surveillance activities.

### B. Plaintiffs Are Wrong that the FISA Speaks Clearly and Directly to Preempt the State Secrets Privilege.

Plaintiffs' contention that the FISA preempts the state secrets privilege rests primarily on one clause in Section 1806(f) indicating that the provision applies whenever a motion or request is made by an aggrieved person "to obtain materials related to electronic surveillance . . . ." *See*

---

not and perhaps could not for constitutional reasons . . . abrogate the state secrets privilege of the executive.") (internal citation omitted).

[16] The Ninth Circuit has also applied the "evident purpose/direct statement" standard in holding that comprehensive statutory scheme supplanted federal common law. *See In re Hanford Nuclear Reservation Litig.*, 497 F.3d 1005, 1018-20 (9th Cir. 2007).

Pls. Opp. at 12. But, as detailed below, Plaintiffs (as well as their Amici) vastly over-read this clause outside the full context of section it resides in, and fail to establish that Congress clearly intended to preempt the state secrets privilege and permit adjudication of the lawfulness of surveillance that is merely alleged where the Government has asserted the state secrets privilege.

### 1. Section 1806(f) Applies to the Use or Admissibility of Evidence Related to Acknowledged Surveillance.

The first flaw in Plaintiffs' and Amici Plaintiffs' assessment of the preemption issue is that they disregard the context of the statutory provision at issue—50 U.S.C. § 1806, which concerns the use of information in judicial proceedings—and, instead, contend that one part of one clause in one sub-section of Section 1806 *sub silentio* abrogates the state secrets privilege. But "[s]tatutory language cannot be construed in a vacuum." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Rather, "it is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id*. (citing *United States v. Morton*, 467 U.S. 822, 828 (1984)); *see also Tyler v. Cain*, 533 U.S. 656, 662 (2001) (same). The location and role that Section 1806(f) plays within Section 1806 as a whole is crucial to understanding Section 1806(f)'s purpose. *See* Defs. Mem. at 16-17.

In brief, subsection (a) of Section 1806 requires that information acquired from electronic surveillance conducted pursuant to the FISA be handled in accord with minimization procedures; subsection (b) provides that such information may not be disclosed for law enforcement purposes unless accompanied by a statement that it may only be used in a criminal proceeding with the advance notice of the Attorney General; subsection (c) requires notice by the United States if it intends to use such information against an aggrieved person; subsection (d) imposes a similar notice requirement on states and political subdivisions; and subsection (e) authorizes a motion to suppress such information by a person against whom it is to be or has been introduced or otherwise used. *See* 50 U.S.C. § 1806(a)-(e). Each of these provisions expressly relates to the disclosure of surveillance information when it is being used by a governmental entity against a criminal defendant.

Subsection (f), of course, follows these earlier subsections. Subsection (f) establishes procedures that may be invoked by the Attorney General under which the district court shall review *in camera*, *ex parte* any surveillance related materials as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted. *See* 50 U.S.C. § 1806(f). The parties generally agree that Section 1806(f) applies in three circumstances, and Plaintiffs concede that the first two—whenever the Government provides notice under Sections 1806(c) or (d) that it intends to use surveillance-based evidence in a proceeding against an aggrieved person; or whenever an aggrieved person moves to suppress such evidence under Section 1806(e)—apply only where the surveillance at issue has been publicly acknowledged by the Government. *See* Pls. Opp. at 15. The dispute in this case focuses on the meaning of the third circumstance in which Section 1806(f) applies:

> [W]henever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States or any State before any court or other authority of the United States or any State to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this chapter.

*See* 50 U.S.C. § 1806(f).

Notably, neither Plaintiffs nor Amici Plaintiffs contend that this provision, as a whole, preempts the state secrets privilege but, rather, that just one aspect of it does. Through the use of ellipses, line breaks, or italics, Plaintiffs and Amici focus on a single phrase: "*whenever any motion or request is made by an aggrieved person . . . to discover or obtain applications or orders or other materials relating to electronic surveillance . . .*" *See* Pls. Opp. at 16; Pls. Amici at 3, 15. Plaintiffs and Amici discuss this clause as if it were a free-standing provision, and contend that it requires the use of *in camera*, *ex parte* procedures—and thus abrogates the state secrets privilege—whenever a party to a civil action seeks to discover or obtain materials related to alleged electronic surveillance in the face of a state secrets privilege assertion.

These few words cannot bear the meaning that Plaintiffs and their Amici ascribe to them, and certainly cannot be said to "speak directly" to preemption of the state secrets privilege. Nothing in the clause's relevant language indicates that the provision necessarily applies to civil

suits challenging the lawfulness of surveillance that is merely alleged, rather than acknowledged. Instead, an aggrieved party seeking to suppress evidence he contends was obtained or derived from unlawful surveillance might well seek discovery of precisely those materials. Thus, even if this language is examined in total isolation from the rest of Section 1806(f), it does not clearly support Plaintiffs' argument.

When examined in light of the remainder of Section 1806, the language even more plainly does not constitute the type of clear and direct statement that would be needed to displace the state secrets privilege. In particular, the very next subsection—Section 1806(g), entitled "suppression of evidence; denial of motion"—provides that "if the United States district court pursuant to subsection (f) of this section determines that the surveillance was not lawfully authorized or conducted, it shall . . . suppress the evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion of the aggrieved person" [or] "[i]f the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure." *See* 50 U.S.C. § 1806(g). This provision further demonstrates that Section 1806(f) establishes procedures for judicial review when invoked by the Attorney General in connection with notice by the Government or motions to discover or challenge the admissibility of surveillance evidence, in order for the court to determine, without compromising sensitive intelligence information, whether the surveillance was lawfully authorized and should be admitted or suppressed. And in all of these circumstances, where the use and admissibility of surveillance evidence is at stake, the surveillance itself must be acknowledged.

Plaintiffs do not dispute that the procedures under Section 1806(f) apply solely to an "aggrieved person," *see* Pls. Opp. at 17, and "do not advance" the radical theory that the phrase "motion to discover materials related to electronic surveillance" in Section 1806(f) permits discovery of *whether* someone has been subject to surveillance, *see id.* Instead, Plaintiffs rest on the *factual* contention that they *are* aggrieved parties as a result of the disclosure of the sealed document. *See id.* We address below the serious issues raised by that argument, but stress here

that Plaintiffs do not contend that Section 1806(f) should be read to require the disclosure of whether someone has been subject to surveillance—only that it would preempt the privilege where information concerning alleged surveillance purportedly has been disclosed to those individuals inadvertently. Even *that* distinction, however, is hardly clear from the statutory language or legislative history.[17]

> ### 2. Amici Plaintiffs' Contention that Reference to "Motions to Discover Materials Related to Electronic Surveillance" In Section 1806(f) Was Specifically Intended to Apply in Civil Litigation to Preempt the State Secrets Privilege Is Without Foundation.

Amici Plaintiffs, on the other hand, do advance the much broader reading of Section 1806(f) that it permits anyone in any civil case to force the adjudication of merely alleged surveillance (as well as the disclosure of whether or not the person was surveilled). Amici Plaintiffs contend that "motions to discover or obtain . . . materials related to electronic surveillance" refers to *civil* proceedings and has nothing to do with the Government's use of evidence, or the suppression thereof, in criminal cases. *See* Pls. Amici at 12-13. But this argument ignores the context in which this clause appears; fails to recognize that our reading harmonizes all of the relevant provisions; and requires the assumption that Congress intended to effect a radical change in civil suits through a single clause buried in a larger provision having nothing to do with such suits.

Perhaps recognizing that their statutory analysis is not compelling, Amici Plaintiffs retreat to legislative history, and contend that because this clause was imported from the House-passed version of the legislation, Defendants' reliance on the Senate committee reports to support its assessment of Section 1806(f) is "fatally flawed," *see id*. at 14. This argument is also meritless. Neither the House-passed version of Section 1806(f) nor the relevant House committee report

---

[17] Indeed, Plaintiffs attempt to equate an inadvertent "disclosure" with an "acknowledgment" of alleged surveillance, *see* Pls. Opp. at 17, is unsupported. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (unauthorized disclosure of classified information cannot result in declassification or official release); *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 659 F. Supp. 674, 684 (E.D.N.Y. 1987) (same); *Nuclear Control Inst. v. NRC* 563 F. Supp. 768, 771 (D.D.C.) (same). Indeed, in this very case, the Court of Appeals upheld the Government's privilege assertion as to the sealed document despite the inadvertent disclosure. *See Al-Haramain*, 507 F.3d at 1204.

supports Amici's position—indeed, they undercut it.

First, the actual *text* of the House-passed bill did *not* establish separate procedures for criminal and civil cases. The House bill contained two separate provisions that established special *in camera*, *ex parte* procedures, to be invoked by the Attorney General, for review of the legality of surveillance: Section 106(f) of the House bill would have established procedures for circumstances in which information obtained or derived from electronic surveillance had been, or was intended to be, introduced into evidence, or where a motion to suppress that evidence is brought; in turn Section 106(g) of the House bill would have established similar procedures for a motion or request "to discover or obtain applications or orders or other materials relating to electronic surveillance pursuant to the authority of this title or to discover, obtain, or suppress any information obtained or derived from electronic surveillance pursuant to the authority of this title." *See* H.R. Rep. No. 95-1283, Pt. 1, 95th Cong., 2d Sess., at 10 (setting forth House-passed bill); *see also* Exhibit 17 to Pls. Amici at 5-7. In short, the House bill contained virtually the same language as the enacted version of Section 1806(f) in two provisions instead of one—but neither Section 1806(f) nor the House Bill suggests that they were designed for criminal and civil cases respectively.[18]

Second, and contrary to Amici Plaintiffs' assertion, the plain language of Section 106(g) of the House bill made clear that it would have been applicable only when the government sought to introduce evidence against a person. As an initial matter, subsection (g) applies not only to a motion to discover an order, application, or other materials, but also to a motion to "discover, obtain or *suppress* any information obtained from electronic surveillance." H.R. Rep. No. 95-1283 Pt. I, at 10 (quoting § 106(g) (emphasis added)). Moreover, subsection (g) would have been applicable only in circumstances where the Attorney General files an affidavit stating "*that no information obtained from electronic surveillance pursuant to the authority of this title . . .*

---

[18] Notwithstanding the language of the conference report on "criminal and civil cases" that Amici cites, *see* Pls. Amici at 13, the committee report that accompanied the House bill—the more pertinent legislative history of the House bill—also does *not* indicate subsection (f) and (g) were separate provisions for criminal and civil cases respectively. *See* H.R. Rep. No. 95-1283, Pt. 1, at 91-94.

*has been or is about to be used by the Government in the case before the court.*" *Id.* If the Amici Plaintiffs were right that subsection (g) applies only in civil suits challenging the lawfulness of alleged surveillance, the italicized language would serve no purpose.

In addition, the House bill expressly indicates in section 106(h) that, whether raised pursuant to subsection (f) *or* (g), the special *in camera*, *ex parte* procedures established were intended to adjudicate the lawfulness of surveillance in order to decide whether evidence should be suppressed. *See* H.R. Rep. No. 95-1283, at 10. The legislative history in the House report also notes that subsection (g) applies "[w]here the Government states under oath that it does not intend to use evidence or information obtained or derived from electronic surveillance." *See id.* at 92. The report also states that subsection (g) provides for disclosure in some circumstances to "the person against whom the evidence is to be introduced." *See id.* at 91 (specifically referring to a "defendant"). Thus, any reading section 106(g) from the House bill to pertain solely to civil proceedings, and to apply outside the context where the use of evidence is at issue, is unsupported.

Amici Plaintiffs also misrepresent Defendants' position that Section 1806(f) could only apply "in a criminal case" by inserting those words where they do not appear in our brief, *see* Pls. Amici at 11 (citing Defendants' Motion at page 13, line 3), and then proceeding to discuss at length why Section 1806(f) could apply in a civil setting. *See id.* at 2, 4, 11-13. But we have never argued that Section 1806(f) could never apply in a civil case. Instead, our argument is that in *either* a criminal or civil setting, in order for Section 1806(f) to apply, the admissibility of evidence relating to acknowledged surveillance must be at issue. More important, Amici Plaintiffs mistakenly assume that because Section 1806(f) *may* apply in such civil cases, it *must* therefore apply in civil suits challenging the lawfulness of unacknowledged surveillance. This simply does not follow. For example, Section 1806(f) could be utilized in a civil setting where the Government has acknowledged surveillance and issues arise concerning the admissibility of evidence in such cases. *See*, *e.g.*, *United States v. Hamide*, 914 F.2d 1147, 1148-50 (9th Cir. 1990) (Section 1806(f) invoked by the United States where surveillance acknowledged in a civil deportation proceeding). And the conference report upon which Amici Plaintiffs rely nowhere

indicates that Section 1806(f) was meant to apply in any civil cases where the Government seeks to protect information concerning alleged intelligence activities, where the use or admissibility of surveillance evidence is not at issue. *See* Defs. Mem. at 21 (citing *Reynolds*, 345 U.S. at 12 (distinguishing between the use of evidence against someone and the need to protect state secrets where the Government is a defendant in a civil case).[19]/

In sum, the reading advanced by Amici Plaintiffs—that one phrase taken from one subsection of the House bill's overall "use" provision was inserted into the final version of Section 1806(f) to ensure that it applied *solely* to civil cases and *outside* of the "use" and "suppression" context of the statute and, specifically, to *preempt* any use of the state secrets to protect alleged surveillance activities—is without any clear textual support and cannot constitute the kind of "direct statement" necessary for the state secrets privilege to preempted. The conference report to the 1978 FISA indicated that it was adopting the Senate version of Section 1806(f) with only "technical changes," *see* H.R. Conf. Rep. No. 95-1720, at 31-32, 1978 U.S.C.C.A.N. 4060-61, and that would be an extraordinary weak foundation on which to find an express preemption of the long recognized Executive authority to protect national security information from disclosure.

### 3. Proceedings Under Section 3504 of Title 18 Underscore that Section 1806(f) Applies to the Admissibility of Evidence and Acknowledged Surveillance.

Amici Plaintiffs also contend that the reference to 18 U.S.C. § 3504 in the Senate legislative history demonstrates that the term "aggrieved person" in the FISA meant someone who merely has a "colorable basis for *believing* he or she had been surveilled." *See* Pls. Amici at 116. This argument is also wrong; indeed, Section 3504 reinforces our reading of Section 1806(f). As set forth below, a motion brought under Section 3504 of Title 18 applies solely

---

[19]  The House report also indicates that where the need to determine legality of surveillance arises "incident to discovery in a civil trial," the court should grant the discovery motion only in accordance with the requirements of law" which, the report says, would include law "respecting civil discovery." *See* H.R. Rep. No. 95-1283, at 90-94. Thus, even if Plaintiffs' reading of subsection (g) were correct, this passage of the report suggests that the disclosure of information in civil proceedings would nonetheless be governed by the discovery rules, and this would include evidentiary privileges such as the state secrets privilege.

where a claimant challenges the admissibility of evidence, and such a motion triggers proceedings under Section 1806(f) to adjudicate lawfulness only where the challenged surveillance has been acknowledged.

Section 3504 of Title 18, entitled "Litigation concerning the *sources of evidence*," applies only "upon a claim by a party aggrieved that *evidence is inadmissible*." 18 U.S.C. § 3504(a)-(c) (emphases added). The Ninth Circuit has repeatedly held that Section 3504 applies where the Government seeks to use against a witness evidence that is alleged to derive from unlawful surveillance. *See In re Grand Jury Investigation (Doe)*, 437 F.3d 855, 858 (9th Cir. 2006) ("A grand jury witness may refuse to answer questions based on illegal interception of his communication.") (quoting *In re Grand Jury Proceedings (Garrett)*, 773 F.2d 1071, 1072 (9th Cir. 1985).[20] Accordingly, Section 3504 requires the Government to affirm or deny the existence of surveillance only where the admissibility of evidence is challenged. The provision does not apply in any other circumstance. Moreover, even in this limited context, "because responding to ill-founded claims of electronic surveillance would place an awesome burden on the government," such claims must be "sufficiently concrete and specific before the government's affirmance or denial" is required. *United States v. Tobias*, 836 F.2d 449, 452-53 (9th Cir. 1988) (citing *United States v. Alter*, 482 F.2d 1016, 1027 (9th Cir. 1973)); *see also In re Grand Jury Proceedings (Garcia-Rosell)*, 889 F.2d at 223 (where claim of illegal surveillance is vague or unsupported, no need to address adequacy of Government's response).[21]

---

[20]  *See also In re Grand Jury Proceedings (Garcia-Rosell)*, 889 F.2d 220, 223 (9th Cir. 1989) (same); *Worthington v. United States*, 799 F.2d 1321, 1323 (9th Cir. 1986) (grand jury witness may refuse to answer questions "*derived* from illegal interception of his or her communications") (original emphasis)  *In re Grand Jury (Doe)*, 437 F.3d at 858 (there must be a causal connection between questions posed to the witness and alleged unlawful surveillance); *In re Grand Jury Witness (Whitnack)*, 544 F.2d 1245, 1247 (9th Cir. 1976) (Kennedy, C.J., concurring) (witness has no standing and Government has no duty to affirm or deny surveillance under Section 3504(a) where grand inquiry is based on independent evidence).

[21]  For example, the court in *Tobias* required a response to the allegation of surveillance where a government agent approached claimant while he was in a phone booth and was observed communicating official information to someone by simply remaining on the line. *Tobias*, 836 F.2d at 453. Thus, mere speculation that surveillance activities might be occurring is not enough to require a response by the Government even under Section 3504. Moreover, if the alleged

In addition, with respect to the interplay between Section 3504 and Section 1806(f), FISA's legislative history makes clear that Section 1806(f) itself does not provide a mechanism for a party to confirm suspected surveillance. The Senate reports indicate that "the *most common circumstance* in which" a motion for discovery of FISA materials governed by Section 1806(f) "might be appropriate would be *a situation in which a defendant queries the Government under 18 U.S.C. § 3504 and discovers* that he has been intercepted by electronic surveillance even before the Government has decided whether evidence derived from that surveillance will be used in the presentation of its case." S. Rep. No. 95-701, at 63 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973 (Report of the Select Committee on Intelligence); *see also* S. Rep. No. 95-604, at 56, 1978 U.S.C.C.A.N. 3954 (Report of the Senate Committee on the Judiciary) (Exhibits Nos. 3 and 4 submitted herewith) (emphasis added). Section 1806(f) thus applies only to motions for discovery filed *after* a person has already established under Section 3504 that he was surveilled. Section 1806(f) is not a procedure applicable to the antecedent motion under Section 3504 that, in the context of a challenge to the admissibility of evidence, seeks confirmation of surveillance.[22]/

Amici's reference to a sentence in the Senate committee report stating that Section 1806(f) "applies, for example, whenever an individual makes a motion . . . pursuant to 18 U.S.C. § 3504," *see* Pls. Amici at 15, does not address *how* the two provisions relate and operate in tandem. Read in its full context, this passage conveys a much different point than Amici suggest. The preceding sentence provides that Section 1806(f) "states in detail the procedure the court shall follow when it receives *a notification under subsection (c) or a suppression motion is filed*

---

surveillance does not concern the claimant's own conversations, he must make a *prima facie* showing that illegal surveillance has occurred. *See id.* at 453 (citing *Alter*, 482 F.2d at 1026).

[22] An example of the interplay between Section 3504 of Title 18 and Section 1806(f) may be seen in *Hamide*, 914 F.2d at 1148-49 and *ACLU Foundation v. Barr*, 952 F.2d 457 (D.C. Cir. 1991). In *Hamide*, the Government acknowledged FISA surveillance in response to a motion under 18 U.S.C. § 3504; Section 1806(f) was then invoked by the Attorney General to determine the lawfulness of that surveillance. *Barr*, in contrast, was a separate case brought by individuals involved in the same deportation proceeding, and the D.C. Circuit held as to those plaintiffs for whom surveillance had *not* been acknowledged by the Government that the Government was *not* required by the FISA to make such a disclosure. *See* 952 F.2d at 469 & n.13.

*under subsection (d).*" S. Rep. No. 95-701, at 63 (emphasis added); S. Rep. No. 96-604, at 57. It then goes on, in the sentence Amici cite, to describe when the procedure might apply: "for example, whenever an individual makes a motion pursuant to subsection (d) or 18 U.S.C. 3504, or any other statute or rule of the United States to discover, obtain or suppress evidence or information obtained or derived from electronic surveillance conducted pursuant to this chapter (for example, Rule 12 of the Federal Rules of Criminal Procedure)." Thus, the reference to Section 3504 of Title 18 is one "example" of a motion to suppress evidence acquired or derived from electronic surveillance conducted under the FISA, and in this circumstance, Section 1806(f) would apply to adjudicate any question of the lawfulness and admissibility of that evidence. This is consistent with the purpose of 18 U.S.C. § 3504—to challenge the admissibility of surveillance evidence and to obtain confirmation or denial of surveillance only in that context.[23]

For these reasons, the position Amici advance—that the reference to 18 U.S.C. § 3504 in the legislative history converts Section 1806(f) into a procedure for permitting anyone in a civil case to file a motion to discover whether they are "aggrieved" in the first place—is unfounded. Such a view is also contrary to a clear expression of congressional intent, in both the House and Senate committee reports, that the Government may choose to avoid disclosure of sensitive intelligence sources and methods by opting not to use surveillance acquired or derived from surveillance conducted under FISA or by declining to conduct judicial proceedings against an individual. *See* Defs. Mem. at 20-21 (citing S. Rep. No. 95-701, at 65); *see also* H.R. Rep. No. 95-1283, Pt. 1, at 92.[24]

---

[23]  This same passage of the legislative history explains that the phrase "notwithstanding any other law" means that Section 1806(f) would apply regardless of whether a motion to suppress is made "pursuant to any other statute or rule of the United States." *See* S. Rep. No. 95-701, at 63; S. Rep. No. 96-604, at 57. That phrase was not intended to address the applicability of the state secrets privilege, as the Plaintiffs contend, *see* Pls. Opp. at 13, 14, and viewed in its statutory context cannot be said to clearly waive the privilege in any civil case involving alleged surveillance.

[24]  Plaintiffs' contention that the "choice" granted the Government under Section 1806(f) is between the filing of an affidavit by the Attorney General to trigger Section 1806(f) or facing "mandatory" or "unrestricted" disclosure of surveillance information, *see* Pls. Opp. at 13, is therefore meritless. The reference to "mandatory disclosure" in the legislative history on which

### 4. Section 1810 Would Not Be Rendered a "Nullity" By Application of the State Secrets Privilege.

Finally, Plaintiffs and their Amici assert that the cause of action under Section 1810 would be rendered a "nullity" or "meaningless" if Section 1806(f) did not preempt the state secrets privilege. *See* Pls. Opp. at 7, 15; *see also* Pls. Amici at 22 (Section 1806(f) would be "stillborn" unless state secrets privilege preempted). This assertion is wrong primarily because it assumes that the FISA cause of action applies only in circumstances in which the state secrets privilege would apply. But as we previously have demonstrated, there have been, and will be, instances in which the Government discloses the existence of surveillance evidence (for example, under Section 1806(f) or 18 U.S.C. § 3504), and thus the Plaintiffs' civil claims under FISA are not foreclosed by the state secrets privilege. *See* Defs. Mem. at 18 n.18.

At the same time, however, the mere existence of a cause of action has never foreclosed application of a privilege to exclude information that may be needed to adjudicate the matter.[25/] The state secrets privilege is not invariably a rule of "outright dismissal" as Plaintiffs contend, *see* Pls. Opp. at 14-15, but excludes information from litigation where the Executive reasonably shows disclosure would harm national security. *See Kasza*, 133 F.3d at 1166. In some cases that might require dismissal, *see id.*, but that possibility does not render any cause of action in which the privilege might apply a nullity. Indeed, *Reynolds* and *Kasza* demonstrate that the state secrets privilege may apply to suits brought under statutory causes of action, and the existence of a cause of action says nothing about whether privileged information may be protected or the case can ultimately proceed. There simply is no inconsistency between Congress's creation of certain causes of action, on the one hand, and the applicability of the state secrets privileges to certain

---

Plaintiffs rely refers to the circumstances presented in *Alderman v. United States*, 394 U.S. 165 (1969). But *Alderman* involved the use of acknowledged surveillance and the question of whether records of unlawful surveillance "must be surrendered in order for the defendant to make an intelligent motion on the question of taint." S. Rep. No. 95-701, at 65; *see* Defs. Mem. at 20 n.19. *Alderman* certainly does not impose a mandatory disclosure obligation on the Government to disclose whether or not alleged surveillance has even occurred.

[25] There is nothing in FISA's long legislative history indicating that Section 1806(f) has anything to do with permitting claims under Section 1810 to proceed.

disputes where it must be raised.[26]

Similarly, the contention by Amici Plaintiffs that "an argument against preemption" necessarily means that the evidence to which Section 1806(f) applies is not evidence to which the state secrets privilege applies, *see* Pls. Amici at 23 n.9, is well off the mark. Section 1806(f) does operate to protect sensitive intelligence sources, methods, and information, as well as surveillance applications and court orders, in an adjudication *as to which that provision applies— i.e.* to determine the lawfulness of acknowledged surveillance-based evidence for admissibility purposes. The state secrets privilege would serve to protect similar information and similar national security interests in *different* contexts—such as in litigation like this where the Government is defending against challenges to alleged surveillance activities. *See* Defs. Mem. at 21 (citing *Reynolds*, 345 U.S. at 12 (explaining need to protect state secrets where the Government is a defendant)). Thus, while at times the purposes of the privilege and Section 1806(f) to protect national security information "may overlap," that does not mean Section 1806(f) "speaks directly" to the existence or exercise of the privilege in every case (let alone this case), nor encompasses all of the circumstances in which the privilege might apply to protect national security in litigation. *See Kasza*, 133 F.3d at 1168.

**III. THE COURT SHOULD AVOID THE SERIOUS CONSTITUTIONAL ISSUES THAT WOULD ARISE FROM CONCLUDING THAT SECTION 1806(f) PREEMPTS THE STATE SECRETS PRIVILEGE.**

Not only is Defendants' reading of Section 1806(f) the better one, and not only does Plaintiffs' alternative interpretation lack the clear and direct statement required to abrogate the state secrets privilege, but Plaintiffs' proposed reading of Section 1806(f) would raise serious

---

[26] Plaintiffs' reliance on *Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958), for the proposition that a statutory provision would be rendered a nullity if outweighed by the state secrets privilege is without merit. In *Clift v. United States*, 597 F.2d 826, 829 (2d Cir. 1979), the Second Circuit declined to follow *Halpern* and thus greatly distinguished *Halpern* when the state secrets privilege was again asserted by the Government in the same factual setting involving the protection of information concerning a cryptographic device under the Invention Secrecy Act, 35 U.S.C. § 183 *et seq.* On remand in *Clift*, the district court found that the information at issue was still subject to the state secrets privilege and dismissed the case. *See Clift v. United States*, 808 F. Supp. 101, 109-111 (D. Conn. 1991 (finding that "sweeping waiver language of *Halpern*" did not apply and interpreting the Invention Secrecy Act to waive the state secrets privilege would "turn an absolute privilege into a qualified one, which is unsupported by precedent or statute").

constitutional issues relating to the political branches' respective power to control access to national security information.[27/]  The law directs the Court to make every effort to avoid constitutional issues, let alone ones of this magnitude.  *See AFSA*, 490 U.S. at 161 (where congressional power to restrict Executive authority over national security information at issue, district court "should not pronounce upon the relative authority of Congress and the Executive Branch unless it finds it imperative to do so").  Where, as here, Section 1806(f) does not reflect a clear intent to restrict the President's authority to protect national security information.

In any event, Plaintiffs' argument that, in light of Section 1806(f), the Executive is operating at the "lowest ebb" of its authority in asserting the state secrets privilege here, *see Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-38 (1952) (Jackson, J., concurring), *see* Pls. Opp. at 19-20; Pls. Amici at 23-25, is meritless.  To the contrary, Congress has expressly and directly provided the Executive statutory authority that firmly supports the Government's state secrets and statutory privilege assertions in this case.[28/]  The Government's privilege assertion in this case is at the "highest ebb" of Executive authority.  *See Youngstown*, 343 U.S. at 635-36 (Jackson, J., concurring).[29/]

Finally, Plaintiffs' decision to rest their preemption argument on a factual assertion—that

---

[27]  There would be an additional serious constitutional issue to use the 1806(f) procedure outside the context of admissibility of evidence for which it was designed and instead use it for a secret trial on the merits.

[28]  Section 6 of the National Security Agency Act of 1959 mandates that "nothing in this Act or any other law . . . shall be construed to require the disclosure . . . of any information with respect to the activities" of the NSA.  *See* 50 U.S.C. 402 note.  Congress also granted to the Director of National Intelligence the statutory authority to protect intelligence sources and methods.  *See* 50 U.S.C. § 403-1(i)(1).

[29]  Plaintiffs' and Amici's assessment is also highly simplistic and fails to recognize that Congress itself may impermissibly intrude on presidential authority under the Constitution.  *See Bowsher v. Synar*, 478 U.S. 714, 727 (1986) ("[t]he dangers of congressional usurpation of Executive Branch functions have long been recognized").  Also, the Plaintiffs' broad references to other separation of powers disputes—such as whether the president's constitutional authority permits him to authorize warrantless foreign intelligence surveillance, *see In re Sealed Case*, 310 F.3d 717, 742 (For. Intel. Surv. Ct. Rev. 2002), or the adjudicatory process due enemy combatants—have little bearing on whether Congress may intrude on the president's well-recognized constitutional authority to protect national security information.

the sealed document should be found to establish their aggrieved status to proceed under Section 1806(f)—only heightens the serious constitutional concerns that would be raised by further proceedings. The Government's privilege assertion sets forth the content of the sealed document and why, despite its inadvertent disclosure, sensitive intelligence sources and methods remain at risk should Plaintiffs' standing be confirmed or rejected based on that document. Plaintiffs are simply speculating about the matter and ask the Court to confirm information that remains privileged: whether or not, based on the sealed document, they have been subject to alleged warrantless surveillance. *See* Pls. Opp. at 23. The notion that the "Ninth Circuit did not think such an adjudication would harm national security, or the court would not have remanded the case for a determination of whether the FISA preempts the state secrets privilege," *see* Pls. Opp. at 23, is unfounded. The Court of Appeals did not suggest that this Court proceed in a manner that might harm national security, nor even that the case proceed at all under Section 1806(f). And, contrary to Plaintiffs' contention, the Court of Appeals did clearly uphold the privilege assertion over whether the Plaintiffs were subject to alleged surveillance, and found that harm to national security would result from any such disclosure. *See Al-Haramain*, 507 F.3d at 1203-04.[30]

As Defendants have demonstrated, any further proceedings would inherently risk or require disclosure of information that the Ninth Circuit agreed would harm national security, *see* Defs. Mem. at 22-25, and any construction or application of FISA to permit this would thus raise serious constitutional concerns that can and should be avoided.

---

[30] *See Al-Haramain*, 507 F.3d at 1203 ("[W]e conclude that the Sealed Document is protected by the state secrets privilege, *along with the information as to whether the government surveilled Al-Haramain*.") and *id.* (addressing the question of "*whether Al-Haramain has been subject to NSA surveillance*" and holding that "judicial intuition about this proposition is no substitute for documented risks and threats posed by the potential disclosure of national security information") (emphasis added). Thus, the notion that the state secrets privilege extends only to protecting specific technical "methods" of gathering or "winnowing" intelligence information, *see* Pls. Opp. at 23; Pls. Amici at 18, is plainly meritless—the privilege encompasses whether or not alleged intelligence activities even exist, for such a disclosure would also reveal sensitive sources and methods.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Defendants' opening memorandum, the Court should dismiss this case for lack of jurisdiction or, in the alternative, grant summary judgment for the Defendants.[31]

Dated: April 14, 2008          Respectfully Submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Branch Director

    *s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

    *s/ Alexander K. Haas*
ALEXANDER K. HAAS
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:   (202) 616-8460
Attorneys for the Defendants

---

[31] The Amici Plaintiffs argue at length about the potential application of Section 1806(f) in the cases against the telecommunications carrier defendants. *See* Pls. Amici at 17-20. Because those issues are not raised in this case, Defendants have not addressed them at this time and the Court need not and should not do so either.