1  [THE NAMES, ADDRESSES AND
   TELEPHONE NUMBERS OF ALL
2  COUNSEL WHO HAVE SIGNED
   THIS JOINT STATEMENT ARE
3  LISTED ON THE SIGNATURE PAGES]

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION, MDL No. 1791<br><br>This Document Relates To All Cases Except<br><br>    *Al-Haramain Islamic Foundation, Inc. v. Bush*, No. 07-00109<br>    *Center for Constitutional Rights v. Bush*, No. 07-01115<br>    *Guzzi v. Bush*, No. 06-06225<br>    *Shubert v. Bush*, No. 07-00693<br>    *United States v. Adams*, No. 07-01323<br>    *United States v. Clayton*, No. 07-01242<br>    *United States v. Palermino*, No. 07-01326<br>    *United States v. Rabner*, No. 07-01324<br>    *United States v. Volz*, No. 07-01396[1] | MDL Docket No 06-1791 VRW<br><br>**JOINT CASE MANAGEMENT STATEMENT FOR CASES INVOLVING TELECOMMUNICATIONS CARRIER DEFENDANTS**<br><br>Courtroom:    6, 17th Floor<br>Judge:        The Hon. Vaughn R. Walker<br>Date:         September 12, 2008<br>Time:        11:00 a.m. |

---

[1]     The parties disagree as to whether the case management conference on September 12, 2008 should include one of the cases involving state government actions---*Clayton v. AT&T Commc'ns of the Southwest*, No. 07-01187-VRW.  This report does not exclude or address that case.  The parties will confer further about the matter prior to the case management conference.

---

Dockets.Justia.com

## INTRODUCTION

Pursuant to Civil Local Rule 16-9, the parties submit this joint case management statement in all actions brought against telecommunications carriers in MDL No. 06-1791. Its purpose is to advise the Court that the parties have conferred regarding further proceedings under the FISA Amendments Act of 2008, Pub. L. No. 110-261 ("FISAAA"),[2] and to set forth their respective positions about the proper course for such proceedings.

## PROCEDURAL HISTORY

Consolidated in the Multi-District Litigation before this Court are 38 cases in which telecommunications carriers have been named as defendants. Those include master consolidated complaints against the BellSouth Defendants, the MCI/Verizon Defendants, the Sprint Defendants, and Cingular Wireless/AT&T Mobility Defendants, as well as 23 cases against AT&T entities (which were not consolidated under a master complaint because of the pendency of the Ninth Circuit appeals in *Hepting v. AT&T Corp.*, 9th Cir. Nos. 06-17132, 06-17137). On August 21, the Ninth Circuit remanded *Hepting* to this Court "[i]n light of the FISA Amendments Act of 2008." *See Hepting*, Nos. 06-17132, 06-17137, 2008 WL 3863931, at *1 (9th Cir. Aug. 21, 2008).

The impetus for the case management conference is the enactment of FISAAA.

## PLAINTIFFS' POSITION

### I. Introduction and Description of FISAAA Statute

In enacting the FISA Amendments Act of 2008, Congress took the unprecedented step of seeking to empower the Executive to require this Court to summarily dismiss significant constitutional and statutory claims of millions of ordinary Americans in 36 lawsuits against communications carriers consolidated in this multi-district litigation. Because of the serious constitutional and statutory interpretation questions presented by this statute on its face, and the impossibility of applying the statute until the Court makes key decisions about whether the statute

---

[2] Relevant portions of the FISA Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2436, are attached as Exhibit A. The full text of the bill is available at http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=110_cong_public_laws&docid=f:publ261.110.pdf. The public law contains three sets of numbering: the enacted bill's own numbering, cross-references to codification in the United States Code, and numbering consistent with FISA itself. We have used the FISA numbering for ease of reference.

is constitutional and, if so, how the statute is to be applied, plaintiffs believe that the appropriate course for the Court is to decide those issues prior to permitting the Government to present its certifications and bring a supporting dispositive motion the case under the statute.[3]

## A. The FISAAA Statute

On July 9, 2008, Congress passed the FISA Amendments Act of 2008 (FISAAA), which the President signed into law the next day. Section 802 of the statute, codified at 50 U.S.C. § 1885a, authorizes the government to seek dismissal of any "covered action" against any person for "providing assistance to an element of the intelligence community" if the Attorney General makes a certification to the district court that one of the following five circumstances is true:

(1)    any assistance by that person was provided pursuant to an order of the court established under section 103(a) directing such assistance;

(2)    any assistance by that person was provided pursuant to a certification in writing under section 2511(2)(a)(ii)(B) or 2709(b) of title 18, United States Code;

(3)    any assistance by that person was provided pursuant to a directive under section 102(a)(4), 105B(e), as added by section 2 of the Protect America Act of 2007 (Public Law 110-55) or 702(h) directing such assistance;

(4)    in the case of a covered civil action, the assistance alleged to have been provided by the electronic communication service provider was–
    (A)    in connection with an intelligence activity involving communication that was—
       (i) authorized by the President during the period beginning on September 11, 2001 and ending on January 17, 2007; and
       (ii) designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack, against the United States; and

    (B)    the subject of a written request or directive, or a series of written requests or directives, from the Attorney General . . . to the electronic communication service provider indicating that the activity was—
       (i) authorized by the President; and
       (ii) determined to be lawful; or

---

[3] Additionally, the Court should consider whether the plaintiffs in the cases against AT&T should file a consolidated complaint (something that was done in the other carrier cases but not in the AT&T cases due to the pendency of the *Hepting* appeal) once the mandate issues in *Hepting* but prior to consideration of the new FISAAA statute.

(5)     the person did not provide the alleged assistance.

FISAAA § 802(a).

The statute is unprecedented, as far as plaintiffs are aware, in purporting to give the Executive discretion to command the Judiciary to dismiss pending litigation between private parties.  Congress imposed no limit and gave no direction to the Executive in whether or not to exercise this discretion.

**B.     Scope Of Section 802**

A "covered civil action" is defined as:  a civil action filed in a federal or state court that (1) alleges that an electronic communication service provider furnished assistance to an element of the intelligence community and (2) seeks monetary or other relief from the electronic communication service provider related to the provision of the assistance.  FISAAA § 801(5).

The statute expressly provides that any similar actions brought in state court "shall be removable under section 1441 of title 28, United States Code," FISAAA § 802(g) and expressly preempts any actions brought by states themselves. FISAAA § 803.  Thus it attempts to encompass all of the actions in this MDL that involve telecommunications carriers, including those brought originally in state court and those in which the federal government sued state officials seeking information from the carriers about their participation in warrantless surveillance of their citizens.

However, the statute does not reach any claims regarding current or future surveillance, as it is focused solely on past actions.  *See, e.g.,* FISAAA §§ 801(5) ("alleges that [Defendants] furnish<u>ed</u> assistance"); 802(a)(1-3) ("<u>was</u> provided"); 802(a)(4) (assistance alleged to "have been provid<u>ed</u>" pursuant to a program "ending January 17, 2007"); and 802(a)(5) ("<u>did</u> not provide").

Left out from Section 802's reach are 1) surveillance alleged to have occurred prior to September 11, 2001, which is alleged in one of the MDL actions and 2) ongoing surveillance, which is alleged in most, if not all of the MDL actions.

**C.     Standard Of Judicial Review Of The Government's Section 802(a) Certifications**

If the proper certification is made and "given effect" pursuant to Section 802(b), the Court is instructed to dismiss the litigation. However, Section 802(b) states that a "certification under

subsection (a) shall be given effect unless the court finds that such certification is not supported by substantial evidence provided to the court pursuant to this section." Substantial evidence review requires review of the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Attorney General's decision. Thus, the administrative record that this Court is to consider on a substantial evidence review is not limited to those documents that the Attorney General submits (*see* Section I (E) below) but rather, all documents and materials directly or indirectly considered by agency decision-makers and includes evidence that may tend to undermine or call into question the Attorney General's stated position.[4]

**D.    What The Government Must Show In Support Of Its Section 802(a) Certifications**

   1.    Section 802(a)(1) to 802(a)(3)

A certification under subsections (a)(1), (a)(2), or (a)(3) of Section 802 requires the Attorney General to certify that "any assistance by that person was provided pursuant to" one of three specific statutory provisions that authorize surveillance in limited circumstances and in accordance with specified procedures. For a certification under one of these subsections to be valid, the Court must be satisfied that the surveillance met all requirements of the specified statutory provision and that the specified statutory provision is a valid legal authority. Unlike pre-existing immunity provisions of FISA and Title III, the question here is not whether the defendant's provided information with a "good faith reliance on" such provisions (*compare* 18 U.S.C. § 2707), but rather whether whatever assistance occurred was actually "provided pursuant to" that authority, i.e., was no more than that authorized by the identified statutory provision. This will require the Court to construe and apply the identified statutory provision both factually and legally, albeit under only deferential "substantial evidence" standard of appellate review with respect to the facts. Thus, for example, the statute provides that a certification could be made that the surveillance complied with 18 U.S.C. § 2907(b), the National Security Letter provision,

---

[4] We anticipate that the government may raise national security other objections to some portions of the agency record, which could result in *ex parte, in camera* review under 50 U.S.C. § 1806(f) or some other mechanism to take those concerns into account, but this should not change the standard for review of agency action under the "substantial evidence" standard. *See, e.g.,* M:06-cv-01791-VRW Dkt. No. 453 (July 2, 2008, Section 1806(f) Order in Al Haramain).

although that statute has been declared unconstitutional. *Doe v. Gonzalez,* 500 F. Supp. 2d 379 (S.D.N.Y. 2007). Accordingly, no assistance could be properly certified as "provided pursuant to" the National Security Letter authority.

### 2. Section 802(a)(4)

To be valid under subsection (a)(4), the Attorney General's certification must show a number of facts regarding the illegal and unconstitutional warrantless surveillance program at issue in this litigation, such as when the program was authorized, and whether the DOJ provided the defendants with a note stating the program had been "determined to be legal."

A critical factual showing before this subsection is effective is whether the "intelligence activity involving communications" at issue was "designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack, against the United States." Section 802(a)(4)(A)(ii). Thus, Attorney General must make a satisfactory showing that the intelligence activities were designed for surveillance to detect and prevent terrorist attacks on the United States, not something broader, such as dragnet domestic surveillance, or for terrorist surveillance in general, if it is not specific to a "terrorist attack … against the United States." Likewise, intelligence activities designed for surveillance aimed at supporting military operations overseas, such as the Iraq war, do not qualify.

### 3. Section 802(a)(5)

To meet the requirements of subsection (a)(5), the Attorney General must show that "the person did not provide the alleged assistance." Thus, for each element of the plaintiffs' claims that alleges the "provision of, or the provision of access to, information (including communication contents, communications records, or other information relating to a customer or communication), facilities, or another form of assistance," the Attorney General must show substantial evidence to support his certification that such allegation did not occur for subsection (a)(5) to be effective.

### E. What The Court May Review To Determine Whether The Government Has Met Its Burden

FISAAA provides that the district court, in its review of a certification by the Attorney General, "may examine the court order, certification, written request or the directive" that was

given to the electronic communications service provider. These are defined as "supplemental materials." FISAAA § 802(b)(2).

In addition to the Attorney General, the parties to the action are also allowed to submit "any relevant court order, certification, written request or directive" to the court for review, and to participate in briefing or argument "of any legal issue." FISAAA § 802(d). While there are no statutory limitations on what else may be submitted to the Court pursuant to this section, Section 802(d) provides that "[t]o the extent that classified information is relevant to the proceeding … the court shall review such information *in camera* and *ex parte*…."

In addition to formally submitting the evidence currently in the record and seeking judicial notice of various admissions made by the government, Plaintiffs intend to seek discovery designed to assist this Court in its review of the newly enacted defense under the substantial evidence standard. *See* Fed. R. Civ. Proc. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."). In particular, plaintiffs believe that discovery will lead to evidence relevant to (1) whether the surveillance program at issue was designed for dragnet domestic surveillance, instead of prevention of a terrorist attack on the United States; and (2) whether Defendants "did not provide the alleged assistance."[5]

Thus, Section 802 empowers this Court to review the Supplemental Materials, but does not require it to review them. It does require, however, that this Court review whatever "classified information is relevant to the proceeding," albeit "in camera and ex parte."

### F. Secrecy of The Court's Review and The Court's Orders

Section 802 has two secrecy provisions, contained in subsections (c) and (d), that reach both the evidence provided to the court and, more troublingly, the court's orders. Subsection (c)

---

[5] Last year this Court stayed discovery pending the resolution of the interlocutory appeal of the *Hepting* case. *See* Feb. 20, 2007 Order (M:06-cv-01791-VRW Dkt. No. 172). On August 21, 2008, the Ninth Circuit remanded *Hepting* to this Court, so once the mandate issues, there no longer will be an interlocutory appeal pending.

prohibits disclosure of Supplemental Materials at the Attorney General's discretion, while subsection (d) prohibits disclosure of "classified information." Subsection (c) states that the Executive is authorized to require the court to:

> limit any public disclosure concerning . . . any public order following such in camera and ex parte review, to a statement as to whether the case is dismissed and a description of the legal standards that govern the order, without disclosing the paragraph of subsection (a) that is the basis for the certification.

FISAAA§ 802(c)(2). Subsection (d) states that:

> To the extent that classified information is relevant to the proceeding or would be revealed in the determination of an issue, the court shall review such information in camera and ex parte, and shall issue any part of the court's written order that would reveal classified information *in camera* and *ex parte* and maintain such part under seal.

FISAAA § 802(d). Subsection (d) also states that parties are allowed to participate in a hearing "in a judicial proceeding conducted pursuant to this section, but only to the extent that such participation does not require the disclosure of classified information to such party."

Neither subsections (c) nor (d) address judicial review of the *ex parte* procedures dictated by the statute nor recognize this Court's authority to control access to evidence as necessary to protect due process.

## II.     FISAAA is Fatally Flawed

While a full recital of the flaws in FISAAA is not necessary for purposes of this Case Management Conference Statement, many of them are readily apparent:

1. Congress violated the separation of powers by attempting to usurp judicial authority to decide the Fourth Amendment claims of millions of ordinary Americans who have been, and continue to be, subjected to dragnet surveillance for the past 7 years;[6]

---

[6] There is little dispute about the fact of this surveillance or that it was carried out without a warrant. The Senate Select Committee on Intelligence's October 2007 Report on an earlier version of the FISA Amendments Act, Senate Report No. 110-209 ("Senate Report") states:

> . . . beginning soon after September 11, 2001, the Executive branch provided written requests or directives to U.S. electronic communication service providers to obtain their assistance with communications intelligence activities that had been authorized by the President.

2. Congress exceeded its constitutional authority by passing legislation that grants to the Executive the discretion to essentially dictate the outcome of specific, pending litigation;

3. The statute improperly requires dismissal of claims of illegal surveillance between September 11, 2001 and January 17, 2007, based *not* on a judicial finding about the facts of the surveillance or the legality or constitutionality of the surveillance, but instead merely based on a "certification" from the Attorney General that that some unknown member of the Executive branch told the carriers that some undescribed surveillance was "lawful";

4. FISAAA denies due process to the plaintiffs by granting to the Executive, rather than the courts, the essential decisionmaking about their constitutional and statutory rights; and

5. FISAAA purports to grant to the Executive a unilateral right to require that the Court keep secret not only the evidence, but its own decisions.

In short, the statute unconstitutionally attempts to take the factual and legal decisionmaking away from the courts, for both statutory and constitutional claims. And to the extent that the FISAAA statute purports to retain the Court's role in these cases, it does so only by turning the Court, and the process of adjudication, into a shadow-play of empty gestures hidden by Executive-controlled secrecy.

**III. The Court Should Determine Constitutional And Statutory Interpretation Questions Prior To Applying The Statute**

Initial consideration of constitutional and key statutory interpretation questions prior to the application of the statute makes sense for three reasons.

First, this process serves judicial economy. If the Court determines that the statute is unconstitutional or otherwise improper, it need not reach the more complicated questions arising

---

S. Rep No. 110-209, at 10 (October 26, 2007)(available at <http://intelligence.senate.gov/071025/report.pdf>); *see also,* Siobhan Gorman, NSA's Domestic Spying Grows As Agency Sweeps Up Data, The Wall Street Journal (March 10, 2008), at p. A1, available at http://online.wsj.com/article print/SB120511973377523845.html; Michael Isikoff, Uncle Sam Is Still Watching You, Newsweek (July 21, 2008).

from the application of the statute. This accords with the Court's longstanding policy in these actions of determining legal, largely nonevidentiary motions to dismiss before more complicated, fact-based dispositive motions such as summary judgment. In addition, if there is concern that this will slow the process, Plaintiffs can conduct targeted discovery relating to the certifications while the constitutional and statutory issues are being briefed. Should the statute survive this constitutional review, the evidence gathered and submitted pursuant to Section 802 will enhance this Court's the consideration of whether Attorney General's certification are supported by substantial evidence.

Second, this order of decisionmaking is the most protective of due process. While the parties will likely disagree about the nature of the evidence that the court can consider under Section 802 (see below), there is no question that key evidence and argument in that determination will be presented by the government *ex parte, in camera*. Similarly, it is likely that the Attorney General will demand that the key portion of any decision rendered by this Court be kept secret under the FISAAA. FISAAA § 802(c). This Court has long been rightly concerned that such secret processes threaten due process, and as a result, has endeavored to render decisions in this case without resort to such secret evidence and argument. *See, e.g., Hepting v. AT&T*, 439 F.Supp.2d 974, 979 (N.D. Ca. 2006) ("At a May 17, 2006, hearing, the court requested additional briefing from the parties addressing (1) whether this case could be decided without resolving the state secrets issue, thereby obviating any need for the court to review the government's classified submission"). By considering the threshold questions of constitutionality and statutory construction first, the court may be able to address the impact of the FISAAA without any review of additional classified submissions.

Third, even if the Court determines that the statute is constitutional and may be applied to these cases, there are still serious questions about *how* to apply the statute that, if not addressed initially, will make the briefing on the government's dispositive motion extremely burdensome and complicated for the parties and the Court. As the Court knows, the constitutional considerations will play a crucial role in interpreting the statutes, even if only by requiring particular constructions to avoid constitutional tensions. Of particular importance is the scope of evidence that will be

admitted for the Court's exercise of its appointed role as envisioned in Section 802.

For example, the Court must decide whether to consider the Klein evidence of the dragnet surveillance facility on Folsom Street in San Francisco and elsewhere, the large number of admissions by the Executive about the surveillance, and the even greater number of admissions by members of Congress and congressional committee reports—many more of which were made during the recent congressional battle that led to the passage of FISAAA. The government and the defendants' assert that the parties can address the "relevance and propriety" of considering this evidence as part of the briefing on the application of the statute, but that course would require the parties to present, build argument around and respond to a huge amount of evidence without knowing whether the court will even decide to consider it. This would be grossly inefficient for both the parties and the court. It makes sense, before proceeding to adjudicate whether there is substantial evidence to support a claim, to first determine what evidence should be—or, in order to preserve constitutionality, must be—admitted.

Fourth, Plaintiffs' view is that discovery permitted by Federal Rule of Civil Procedure 26(b)(1) has not been eliminated by FISAAA; defendants and the government disagree.. Determining what discovery is permissible, as a matter of statutory interpretation and as required to avoid constitutional infirmity, should logically occur before briefing occurs on whether the certifications are supported by substantial evidence, the issue to which the discovery is relevant.

Defendants and the government are fundamentally confused when they argue that "nowhere does [Section 802] grant plaintiffs any right to discovery," or that Congress was not "simultaneously permitting civil discovery of the very same information." Congress did not need to "permit" or "grant" discovery in FISAAA. Rule 26 already does that for FISAAA as it does for all other statutes. Instead, Congress needed to clearly and affirmatively deny discovery in FISAAA if it wanted to displace Federal Rule of Civil Procedure 26. Plainly, Congress did not do so.

Since the statute itself is silent about discovery, the government and Defendants' argument is based entirely on floor statements by three Senators and a letter to Congress from the Attorney General. It would be extraordinary and unprecedented for a court to graft an entirely new provision onto a statute based on a selection of floor statements and a letter from the Attorney General, who

is counsel to a party to this lawsuit. At best, the defendants and government have an argument that Congress intended to prevent classified information from being disclosed to *the plaintiffs*. As to the Court, the statute not only authorizes the court to look at classified information, it requires the court to do so: "To the extent that classified information is relevant to the proceeding or would be revealed in the determination of an issue, the court **shall review** such information in camera and ex parte." FISAAA § 802(d) (emphasis added).

This procedure is consistent with 50 U.S.C. § 1806(f), and Congress was aware at the time it enacted FISAAA that the Court had ruled that section 1806(f) preempts the state secrets privilege with respect to electronic surveillance. 154 Cong. Rec. S6381 (Statement of Sen. Feingold describing the Court's ruling: "A Federal Court has now held that the State secrets privilege does not apply to claims brought under FISA. Rather, more specific evidentiary rules in FISA govern in situations such as that."), S6382 (statement of Sen. Feingold: "It says that FISA is in fact the exclusive means and that the evidentiary rules regarding FISA should control, rather than State secrets."), S6386 (statement of Sen. Boxer quoting this Court's ruling), S6464 (statement of Sen. Dodd quoting this Court's ruling), S6472 (statement of Sen. Feinstein quoting this Court's ruling). Thus, the government and defendants' argument ultimately may result in a situation in which at least some of the information sought in discovery is reviewed by the court *in camera*, consistent with section 802(d) and 50 U.S.C. § 1806(f), but this argument does not support dispensing with discovery entirely.[7]

_____

[7] Defendants and the government also erroneously assert that discovery would be inconsistent with the Ninth Circuit's recent remand of the interlocutory appeal in *Hepting*. As they are both well aware, the government's position before the Ninth Circuit was that the "very subject matter" of the *Hepting* case was barred by the state secrets privilege, not whether any particular piece of evidence was barred. Moreover, by exercising its discretion under FISAAA, the government will waive the states secrets privilege as to the very information it claimed created the "very subject matter" bar – it will tell the court whether there was a secret espionage relationship between the carriers and the government and, if the court seeks it, must provide documentation was given to the carriers to support the government's request for the information. This state secrets waiver under FISAAA, and the Court's recent ruling that 50 U.S.C. § 1806(f) preempts the state secrets privilege, is the basis on which Plaintiffs asked for the appeal to be dismissed. The government sought a stay ("abeyance") of the appeal rather than remand, but the Ninth Circuit rejected the government's request and instead granted Plaintiffs' request to dismiss the appeal without ruling on the merits of the appeal. The Ninth Circuit made no determination regarding the application of FISAAA here,

Further supporting the conclusion that Plaintiffs are entitled to discovery is the fact that the Government's motion will necessarily be a summary judgment motion. The government sometimes refers to the motion it plans to bring as a "motion to dismiss" and sometime refers to it as a "dispositive motion." Since FISAAA requires the government to submit extrinsic evidence to the court, however, and since in opposition plaintiffs cannot rest merely on the allegations of their complaints, the government's motion will necessarily be a summary judgment motion rather than a motion to dismiss. *See* Fed. R. Civ. Proc. 12(d). Accordingly, Plaintiffs "must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Ibid.*; *see also* Fed. R. Civ. Proc. 56(f) (providing for continuances of summary judgment motions "to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken" so that opposing party can obtain "facts essential to justify its opposition").

If the Court were faced with the government's attempt to apply the statute in a motion for summary judgment before the Court had first determined the extent of discovery available, Plaintiffs' opposition to the motion would have to include extensive arguments about why Plaintiffs are entitled to discovery despite the government's anticipated objections, what discovery they would have issued, and what that discovery may show. Threshold statutory interpretation decisions by the Court presents a far superior alternative.

Defendants' response is that consideration of constitutional and statutory interpretation issues first would be premature, since there would be no "live and concrete controversy" regarding FISAAA's dismissal procedure. But the controversy is sufficiently live now – the government has unequivocally stated its intention to invoke the procedure provided in FISAAA – and given the secret nature of the proceedings, there is no benefit in requiring the plaintiffs to wait until after a secret filing of secret evidence before attacking the threshold problems with the statute that do not

---

nor could it have, given that the limited scope of its 28 U.S.C. § 1292(b) appellate jurisdiction was strictly limited to the Court's July 20, 2006 order. *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996); *United States v. Stanley*, 483 U.S. 669, 676 (1987).

turn on the specifics of that secret filing.[8]

IV.    **Proposed Briefing Schedule**

Plaintiffs propose the following briefing schedule, which contemplates that the Court will lift the current stays in place in the various cases:

| | |
|---|---|
| Plaintiffs' Opening Brief on Constitutionality and Statutory Interpretation | October 9, 2008 |
| Defendant and Government Opposing Briefs | November 6, 2008 |
| Amicus briefs in support of Plaintiffs or Defendants | November 20, 2008 |
| Plaintiffs' Reply Brief | November 26, 2008 |
| Response of Plaintiffs and Defendants to any amicus | December 4, 2008 |
| Hearing | December 18, 2008 |

Once the Court has ruled on the constitutionality of the statute and the key statutory interpretation questions, it can then, if necessary, set a briefing schedule for the filing of the government's certifications and its dispositive motion. Alternatively, if the Court determines that, although the filing of the government's dispositive motion should be deferred, the government may nonetheless file its certifications before briefing occurs on the constitutional and statutory interpretation issues, Plaintiffs ask that filing of the certifications occur on or about October 1, 2008, and that the briefing schedule set forth above follow.

A.    **Proposed Page Limits**

The issues before the court are complex, encompassing weighty and unprecedented issues of separation of powers, due process and the application of the Fourth Amendment, along with issues of access to discovery and publication of court orders under the First Amendment and other questions of how to interpret a novel and unique statute. Plaintiffs seek leave to file a 60 page

---

[8] The Government characterizes plaintiffs' challenge as a "facial" one, but that is incorrect. Plaintiffs intend to challenge the statute as it would be applied to their cases, not under the legal standards of "facial" challenges.

opening brief and a 30 page reply.[9]

Plaintiffs also request that the government and the carriers combined should similarly be granted leave to file no more than 60 page in opposition, divided as they see fit. This makes the initial briefing even on both sides of the issue, as it is in a regular motion. This is the arrangement of page limits that the court ordered during the similarly three-sided motion to dismiss in *Hepting* in May and June 2006. Moreover, unlike in that briefing (where AT&T separately moved to dismiss and raised its own immunities and other arguments separate from the states secrets privilege arguments on which the government based its motion to dismiss) the government here is the only party granted the authority to seek dismissal under the statute. The carriers have no separate grounds for invoking the statute, and thus no separate motion to make or unique arguments. As such, their presentation will be wholly derivative of the government's possible arguments, and it would be especially unfair to allow more pages to Defendants and government combined for such a presentation than the Plaintiffs receive to respond to them.

Plaintiffs suggest that amici be granted 15 pages each and the parties be granted 15 pages to respond to any amicus brief filed.

**B.** **Alternative Schedule and Page Limits if Government is Allowed to Move to Dismiss Prior to Consideration of Constitutional Issues**

Alternatively, if the Court determines that the government should be allowed to make its dispositive motion before the Court considers the constitutional and statutory interpretation issues, Plaintiffs seek a schedule that allows them to cross-move for a determination that the statute is unconstitutional and cannot be applied to the MDL actions and for a determination on the statutory interpretation questions separately from the application of the statute. The schedule we propose is longer than the schedule above because the parties will be briefing cross-motions rather than a single motion. It is as follows:

---

[9] If the Court permits the government and Defendants to file significantly more total pages than those proposed here, Plaintiffs will seek an extended schedule to allow reasonable time to consider and respond to the expanded presentation by Defendants and the government.

| | |
|---|---|
| Government Opening Brief in support of its Dispositive Motion | Date chosen by government and Defendants |
| Plaintiffs' Opposition Brief to Dispositive Motion and separate Cross-Motion on Constitutionality and Statutory Interpretation issues | 6 weeks after Opening Briefs |
| Government Reply Briefs in support of its Dispositive Motion and separate Government and Defendant Oppositions to Plaintiffs' Cross-Motion | 6 weeks after Opposition and Cross-Motion |
| Amicus briefs in support of either party | 1 week after government and Defendants' Reply Briefs and Opposition to Cross-Motion |
| Plaintiffs' Reply Brief on Cross-Motion and responses to any amicus briefs by either party | 3 weeks after amicus briefs |
| Hearing | 2 weeks after Plaintiffs' Reply on Cross-Motion and responses to amicus briefs |

In the event that the Court adopts this process, Plaintiffs request that government have no more than 25 pages combined for its opening briefs on its dispositive motion, that Plaintiffs be granted 25 pages to oppose the government dispositive motion,[10] and 60 pages for Plaintiffs' cross-motion. The government and Defendants should have 60 combined pages for opposition to Plaintiffs' cross-motion and the government should be granted 15 pages for its separate reply in support of its dispositive motion. Plaintiffs then should be granted 30 pages for reply in support of their cross-motion. Both amicus briefs and replies to amicus briefs should be limited to 15 pages.

**C.** **Response to Defendants and Government's Suggestions.**

    1.    The MDL Cases Are Stayed: No Filings Can be Made Until The Stays Are Lifted

The government asserts that it "is prepared to" file its certifications under FISAAA and an accompanying dispositve motion no later than September 12, 2008," seemingly *prior to* the Case

---

[10] Note that, in the event that the government seeks dismissal under different provisions of Section 802 for different carriers, Plaintiffs will likely need additional pages to respond to such carrier-by-carrier arguments.

Management Conference.[11] Such a preemptive filing would be improper for several reasons. First, these MDL cases are all effectively stayed in various ways. *Hepting* and the State Official cases are stayed pending the issuance of the mandate from the Ninth Circuit. (M:06-cv-01791-VRW Dkt. Nos. 172 (*Hepting*) and 334 (State Officials)). Under ordinary court rules, the mandate will not issue until 52 days after August 21, when the order of remand was issued by the Court of Appeals, or October 12, 2008. Fed. R. App. Pro. 40, 41. The BellSouth consolidated cases are stayed pending the court's determination of the motions to dismiss brought in the Verizon cases. M:06-cv-01791-VRW Dkt. Nos. 209. And those motions to dismiss brought in the Verizon cases have been terminated (M:06-cv-01791-VRW Dkt. No. 438) pending petition by the parties to reopen them at a case management conference. The Sprint and Cingular consolidated cases are stayed until 60 days after the Ninth Circuit's mandate in *Hepting* issues and is filed in this Court. M:06-cv-01791-VRW Dkt. Nos 163, 177. Thus, this Court must grant leave to the parties before *any* action can be taken by any party in the MDL.

The first step that must be taken before any substantive filing by any party, then, is for the court to lift the various stays and set a schedule. That is what the Case Management Conference is for. And a key question for the Court at that Conference is whether the constitutional and statutory interpretation issues presented by FISAAA should be decided prior to application of the statute through secret court submissions. The government threatens to upend this process, and apparently force its view of the proper process on plaintiffs and the Court, by filing its intended motion on September 12, presumably prior to the CMC. This sort of gamesmanship is improper and the Court should reject any such attempted filing.

> ### 2. Defendants' And The Government's Proposed Briefing Schedule And Page Limits Are Unfair.

As argued above, the appropriate order of briefing is for the Court to hear and decide the constitutionality and the statutory interpretation issues before considering the application of the

---

[11] The government originally said that it would be filing its certification and motion by September 10, 2008, two days prior to the CMC, but changed its position during the course of the meet and confer on this joint statement. Given this, plaintiffs remain concerned that the government intends to file its certifications before giving the court a chance to consider the proper order of matters in the Case Management Conference.

statute. Yet even if the Court disagrees and adopts the government's basic proposal, the actual briefing schedule and page limits proposed by Defendants and the government are manifestly unfair. At the outset, it is important to recall that the FISAAA grants only to the government the right to present certifications and require dismissal. Likewise, Plaintiffs' motion on the constitutionality and statutory interpretation issues is directed at the government, not at Defendants. Defendants are neither the moving nor the opposing parties on any of these motions. As a result, while Section 802 does provide Defendants with a statutory right "to participate in the briefing or argument of any legal issue," *see* Section 802(d)),[12] this does not mean that Defendants and the government are entitled to *double* the amount of briefing that the Plaintiffs may submit on the issues arising from the constitutionality and interpretation of FISAAA Section 802. To the contrary, for purposes of determining page limits for briefs, the Defendants briefs should be considered as an extension of the government's presentation.

Yet their proposed briefing schedule is hugely lopsided. It contemplates that the government and the carriers will each receive 50 pages to brief the constitutional and statutory interpretation issues arising in plaintiffs' cross-motion, for 100 pages total. It then provides that the plaintiffs will only receive 30 pages to respond. Since Plaintiffs file the first brief on the constitutionality and statutory interpretation, this proposal allows Plaintiffs only one page to respond to every three pages of argument brought by the government and Defendants. Defendants and the government had originally proposed a mere 80 pages total for plaintiffs in response to their 125 pages, but then unilaterally added 20 more pages to their proposal for plaintiffs' opening briefs, bringing the total count to 125 pages from government and Defendants to 100 from plaintiffs. Yet the addition of twenty additional pages *before* defendants and the governments brief, while welcome, does not cure the more serious problem that plaintiffs have a mere 30 pages to respond to 100 pages of briefing by two adversaries.

Compounding the problem, the schedule proposed by the government and the Defendants

---

[12] In addition, Section 802 provides that Defendants may present "any relevant court order, certification, written request, or directive." *Id.* Presumably Defendants will do so as part of the initial filing, not as part of any opposition on constitutional or statutory interpretation issues.

contemplates that Plaintiffs will respond to this 100 pages of combined briefing in just over two weeks (16 days). For comparison, Defendants and the government seek to grant themselves a full four weeks to respond to Plaintiffs' opposition and constitutional challenge.[13] Plaintiffs also note that the schedule proposed by the Defendants and the government appears to shortchange the Court in its time to consider the issues raised in the motion and cross-motion, since it sets the final brief to be filed the day before the Thanksgiving holiday and the hearing only 2 weeks later without allowing the Court any additional time due to the holiday. Presumably it was due to this observation by plaintiffs that defendants added "or December 18, 2008" to their proposed briefing schedule.

In contrast, Plaintiffs propose schedules that are fair to all parties (and the Court). It provides extra time and extra pages evenly to both parties. It is consistent with the briefing schedules and page limits that are routinely set in the Northern District when courts are faced with complex, constitutional and statutory interpretation issues first impression such as FISAAA presents. Indeed, in this case the briefing schedule on Verizon's motions to dismiss, which were not nearly so complex and largely duplicative of the AT&T motions filed the year before, stretched much longer, over four months from April through August, 2006.

### 3. Defendants' Request For A Stay

Defendants seek a stay of all litigation activities in all of the carrier MDL cases other than the resolution of the immunity issue. As described above, however, most matters in the various MDL carrier cases are already stayed, or at least halted, and will continue to be halted until after the Verizon motions to dismiss are decided or the mandate issues in *Hepting*. However, for those cases where a duty to serve a responsive pleading or a motion under Rule 12 are triggered by the upcoming issuance of the mandate by the Ninth Circuit in *Hepting*, Plaintiffs are agreeable to stipulate to extend those deadlines until after resolution of the FISAAA immunity questions. Plaintiffs are not willing to stipulate to stay discovery or other matters, however. As described above, Plaintiffs affirmatively require discovery specific to the immunity issue.

---

[13] And of course the defendants and the government have also had two months to consider the new statute since it's passage.

# THE POSITION OF THE GOVERNMENT AND THE CARRIER DEFENDANTS

## A.    Overview of FISAAA

On July 10, 2008, the President signed into law Public Law No. 110-261, the FISA Amendments Act of 2008, which passed both houses of Congress with substantial bipartisan majorities. The statute's express purpose is to require the "prompt[] dismiss[al]" of "a civil action … against any person for providing assistance to an element of the intelligence community," where specified criteria are met. *See* FISA § 802(a). The statute is clear in establishing the procedure that the government and this Court must follow to determine whether such an action must be dismissed: the statutorily designated first step is the filing by the Attorney General of certifications, which are a mechanism for dismissal. If in response plaintiffs wish to challenge the constitutionality of FISAAA, as they indicate that they intend to do, they may raise any such challenge in opposition to the motions to dismiss.

*First*, the Attorney General must certify to the court that the cases he would seek to dismiss meet designated criteria. *See id.* § 802(a)(1) - (5).[14] We leave for another day a response to

---

[14] Specifically, the Attorney General must certify that

> (1) any assistance by that person was provided pursuant to an order of the court established under section 103(a) directing such assistance;
> (2) any assistance by that person was provided pursuant to a certification in writing under section 2511(2)(a)(ii)(B) or 2709(b) of title 18, United States Code;
> (3) any assistance by that person was provided pursuant to a directive under section 102(a)(4), 105B(e), as added by section 2 of the Protect America Act of 2007 (Public Law 110–55), or 702(h) directing such assistance;
> (4) in the case of a covered civil action, the assistance alleged to have been provided by the electronic communication service provider was—
> (A) in connection with an intelligence activity involving communications that was—
> (i) authorized by the President during the period beginning on September 11, 2001, and ending on January 17, 2007; and
> (ii) designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack, against the United States; and
> (B) the subject of a written request or directive, or a series of written requests or directives, from the Attorney General or the head of an element of the intelligence community (or the deputy of such person) to the electronic communication service provider indicating that the activity was—
> (i) authorized by the President; and
> (ii) determined to be lawful; or
> (5) the person did not provide the alleged assistance.

FISA § 802(a)(1) - (5).

plaintiffs' demonstrably incorrect suggestion that the statute does not cover pre-9/11 conduct or ongoing surveillance. It suffices to note here that the orders, certifications and directives referenced in § 802(a)(1) - (3), as well as the non-occurrence of the alleged activity described in § 802(a)(5), are sufficient to cover pre-9/11 or ongoing foreign intelligence surveillance.

*Second*, the submission of a certification triggers court review: the certification "shall be given effect unless the court finds that such certification is not supported by substantial evidence provided to the court pursuant to this section." *Id.* § 802(b)(1). In reviewing the certification, the court may consider certain materials, which again are specified by the statute itself. *Id.* § 802(b)(2), (d). The statute also sets forth security procedures to govern the handling and nondisclosure of such materials. *Id.* § 802(c), (d). These security procedures embody the same types of protections required by the state secrets privilege in cases of this sort. And, pertinent here, the statute permits "[a]ny plaintiff or defendant in a civil action" to "participate in the briefing or argument of any legal issue in a judicial proceeding conducted pursuant to this section." *Id.* § 802(d).

*Third*, the statute specifies the terms of dismissal. Unless the certification is unsupported by substantial evidence, the "civil action may not lie or be maintained … , and shall be promptly dismissed." *Id.* § 802(a). Contrary to plaintiffs' hyperbolic assertions that the judiciary simply responds to executive "command" under this procedure, and that the executive "dictate[s] the outcome" and "usurp[s] judicial authority," this well-recognized mode of judicial review presents no special threat to the proper function of a reviewing court.

*Fourth*, and finally, the statute permits immediate interlocutory review of the court's ruling: "The courts of appeals shall have jurisdiction of appeals from interlocutory orders of the district courts of the United States granting or denying a motion to dismiss or for summary judgment under this section." *Id.* § 802(f).[15]

---

[15] Plaintiffs forecast a variety of constitutional objections to this procedure. These issues are far beyond the proper scope of this Case Management Statement, the purpose of which is to discuss a schedule and process for briefing these same issues at a later date. At the appropriate time, the government and the carriers will demonstrate that each of plaintiffs' constitutional objections is without merit. FISAAA represents an unobjectionable exercise by Congress of its power to enact rules of law in the national interest to define who shall be liable under what circumstances.

## B.     The Government's Motion

Consistent with the statute, the government is prepared to file certifications and supporting motions to dismiss no later than September 12, 2008.  Congress left the issue of whether and when to file a certification to the discretion of the Attorney General, and provided that a certification "shall be given effect" if supported by substantial evidence.  FISA § 802(b)(1).  In so doing, Congress unambiguously granted the Attorney General the right to file a certification and to seek dismissal of the covered civil actions.  The United States anticipates that this initial filing will be relatively short.

Plaintiffs make the remarkable suggestion that the filing of the Attorney General's certification and dispositive motions would be "gamesmanship" and "improper" because, they argue, these MDL proceedings are "effectively stayed" until the mandate issues in *Hepting*.  But plaintiffs themselves have proposed that *they* be permitted to file briefs on October 9 before any mandate issues, which they believe will be on October 12.  In any event, the existing stays are not linked to the issuance of a "mandate" from the Ninth Circuit.  *See* Dkt. 172 (*Hepting* stay); Dkts. 163, 177, 199 (stays pending resolution of the *Hepting* appeals); Dkt. 209 (BellSouth stay linked to disposition of motion to dismiss MCI/Verizon cases (which were not stayed)).  It is hardly apparent that a mandate will issue in *Hepting*; and the Ninth Circuit has already made clear that it is remanding *Hepting* to this court.

## C.     Suggested Briefing Schedule

The joint position of the government and the carrier defendants regarding further briefing on the government's dispositive motions is as follows.  Following the government's certifications and accompanying motions, plaintiffs may oppose the motion to dismiss on whatever basis they deem appropriate, including the constitutional arguments they have previewed herein.  The government and the carrier defendants then will file reply briefs in support of the initial motions to dismiss, which also would function as opposition briefs on the constitutional arguments raised in plaintiffs' opposition brief.  Finally, plaintiffs have argued that, because their opposition brief would be the first presentation of their constitutional objections, they should be permitted to file a surreply.  The government and carrier defendants have no objection to that request.

-21-

We respectfully propose the following schedule for briefing and a hearing on the government's dispositive motions, which approximates the overall timetable, although not the structure, envisioned by the plaintiffs:

| Filing/event | Page limit | Date |
|---|---|---|
| Plaintiffs' opposition with constitutional challenge | 70 pages | Friday, Oct. 10 |
| United States and carrier replies | 50 pages for the government; 50 pages for the carrier defendant group | Monday, Nov. 10 |
| Plaintiffs' surreply | 30 pages | Wednesday, Nov. 26 |
| Hearing | | Thursday, Dec. 11, or Thursday, Dec. 18 |

Plaintiffs' proposal to litigate and decide constitutional issues first in the absence of any concrete application or invocation of the statutory dismissal mechanism would turn the statutory scheme on its head and contravene basic principles of judicial process. Plaintiffs propose to begin the briefing with a facial challenge to the statute's constitutionality, even before that statute has been invoked, implemented or applied in this case.[16] The first step contemplated by Congress, however, is the filing of certifications and motions to dismiss. Such filings are the necessary starting point for considering the statute's application and validity. To permit plaintiffs to raise a constitutional challenge before the certifications and motions to dismiss are filed would be premature; absent a certification there is no live and concrete controversy regarding the applicability of FISAAA's dismissal procedure.

In addition, whatever arguments plaintiffs might raise regarding "key statutory interpretation questions" are properly raised in the course of applying the statute. Plaintiffs argue

---

[16] Nothing in the Act requires the Attorney General to exercise his discretion to make the authorized certifications, and until he actually decides to invoke the procedures authorized by Congress, the Act would have no impact on this litigation.

that two issues of "statutory interpretation" require consideration in advance of any certification: whether discovery is permitted and what evidence may be considered in connection with a certification under the Act. But plaintiffs' contention as to each issue is extremely weak, and both arguments are properly addressed in response to a dispositive motion.

### D. Plaintiffs' Request For Discovery

This is especially true of plaintiffs' extraordinary request to delay prompt consideration of the Attorney General's certifications in order to permit them to engage in discovery. That request is flatly inconsistent with the statute. The statute is directed in plain terms at resolving this litigation without the kind of discovery that the plaintiffs now demand. Section 802 details the "procedures for implementing statutory defenses," but nowhere does it grant plaintiffs any right to discovery. To the contrary, in defining the "Role of the Parties," FISAAA provides no opportunity, or reason, for discovery. It authorizes the parties to "submit any relevant court order, certification, written request, or directive to the district court," and permits them to participate in "briefing or argument of any legal issue in" the proceeding. FISA § 802(d). Discovery is neither necessary nor appropriate for the parties to perform this significant but defined role.

The legislative history confirms what the statute makes clear: Congress did not intend to open the door to discovery. Senator Rockefeller – the bill's Senate manager and Chairman of the Senate Select Committee on Intelligence – explained that "the parties *cannot seek discovery* to provide the court with information as to whether the substantial evidence test is met." 154 Cong. Rec. S6386, S6405 (daily ed. July 8, 2008) (emphasis added). Indeed, plaintiffs' request for discovery is contrary to one of FISAAA's fundamental purposes – to provide a means to resolve these cases without compromising classified national security information.[17] This purpose is reflected in multiple provisions of the statute. *See, e.g.*, FISA § 802(d) (private parties may

---

[17] *See, e.g.,* 154 Cong. Rec. H5743, H5757 (daily ed. June 20, 2008) ("allowing litigation over these matters risks the disclosure of highly classified information regarding intelligence sources and methods" (letter from Attorney General Mukasey and Director of National Intelligence McConnell)); 154 Cong. Rec. S6454, S6456 (July 9, 2008) ("The possible disclosure of classified materials from ongoing court proceedings is a grave threat to national security…." (statement of Sen. Hatch)).

participate in legal briefing and argument "only to the extent that such participation does not require the disclosure of classified information to such party"); *id.* § 802(c) (authorizing the Attorney General to protect classified information included in the government's submission by declaring that disclosure of the information "would harm the national security of the United States"). These provisions were adopted to protect classified information, including which, if any, providers assisted the government in the manner alleged. *See* 154 Cong. Rec. S6386, S6393 (daily ed. July 8, 2008) (statement of Sen. Bond); S. Rep. No. 110-209, at 23 (2007).[18] Here, plaintiffs seek discovery regarding highly classified information: (1) the nature of any surveillance program at issue (including whether it was designed to detect or prevent a terrorist attack, or activities in preparation for such an attack, against the United States), and (2) whether the defendants provided the alleged assistance. *See supra*. It is inconceivable that Congress would have gone to such lengths to protect that information while simultaneously permitting civil discovery of the very

---

[18] Consistent with this purpose, following enactment of FISAAA, the Court of Appeals remanded the *Hepting* state secrets appeal. *See Hepting*, Nos. 06-17132, 06-17137, 2008 WL 3863931 (Aug. 21, 2008). Plaintiffs' contention that discovery – and the inevitable state secrets issues that discovery would raise – should precede application of FISAAA cannot be reconciled with the Ninth Circuit's determination that, "[i]n light of" FISAAA's enactment, it need not now decide whether and how the state secrets privilege should apply to this case. *Id.* at *1. And plaintiffs' overall position – that the government cannot seek to implement the statute by motion, but that plaintiffs may seek *discovery* that will undoubtedly implicate the very state secrets privilege issues that arose previously – turns the statute completely upside down and is a prescription for the very litigation burdens that the statute expressly seeks to preclude.

Aside from their erroneous reading of the issues that were raised in the *Hepting* appeal, plaintiffs' suggestion that the state secrets privilege would be waived by any certification under the Act is obviously wrong. FISAAA expressly preserves privilege assertions, *see* FISA § 802(h), and also plainly protects from public disclosure (and from the plaintiffs) the basis of any certification, including whether or not particular defendants assisted the NSA with respect to alleged activities – i.e., the very information subject to the government's privilege assertion. *See id.* § 802(c), (d). Also, the fact that plaintiffs would seek to invoke proceedings under § 1806(f) of FISA, when Congress has now enacted distinct procedures for addressing the specific claims in this case through § 802(a), underscores that plaintiffs' approach would lead immediately to protracted litigation over disputed issues.

---

same information. In any event, argument on this score is properly presented in the course of briefing on the Government's dispositive motion.[19]

In addition, the question of whether plaintiffs may submit evidence in connection with the certification is also properly addressed in response to the Government's motion. The Act defines the materials that the Court may examine in connection with a certification. *See* FISA § 802(b)(2). If plaintiffs wish to introduce materials in opposition to the government's motion to dismiss – whether "the Klein evidence" or the "admissions by members of Congress" – they can seek to do so, and the parties can brief the relevance and propriety of considering that evidence in the course of a concrete adjudication of the application of the statute.

### E. Problems With Plaintiffs' Proposed Briefing Schedule And Page Limits

Regarding the briefing schedule and page limits, plaintiffs' primary proposal closely tracks the briefing schedule we have proposed. For unexplained reasons, however, they would substantially extend the briefing schedule if the government's motion to dismiss rather than their constitutional challenge is filed first. This makes little sense. Plaintiffs do not propose to make their constitutional argument until October 9 in any event, and as noted above, the government is prepared to file its certification and motion to dismiss by September 12. And the suggestion that our "proposed briefing schedule is hugely lopsided" is inaccurate. Plaintiffs will have had two *months* since FISAAA's passage to prepare their constitutional arguments, whereas the government and carrier defendants will have just 30 days to respond to whatever arguments plaintiffs may make. A period in excess of two weeks for their surreply is hardly uncommonly short. As to page limits, 100 pages for plaintiffs and 125 pages for the government and carrier defendants combined cannot be characterized as "hugely lopsided," as it is standard practice for the moving party to have

---

[19] Even if the government were required to seek summary judgment, as plaintiffs contend, such a motion would not "further support the conclusion that Plaintiffs are entitled to discovery" – let alone discovery sought *before* the filing of the government's motion. On the contrary, in any Rule 56(f) proceeding, a party opposing summary judgment must demonstrate "by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," and seek either denial of the motion or a continuance for discovery relevant to a genuine issue of material fact. *See* Fed. R. Civ. P. 56(f). Thus, even under plaintiffs' analysis, whether discovery were proper under the applicable standard of review and governing law could only be determined *after* the government's motion is filed and challenged by plaintiffs in any opposition, including under Rule 56(f).

additional pages – which of course is what plaintiffs seek in their primary proposal. Moreover, as a matter of long-standing practice, the government does not file joint briefs with private parties and thus it is unfair to charge the carriers with the pages that the government may take to brief an issue.

Plaintiffs' suggestion that the carriers are merely an "extension" of the government is incorrect. The carriers are the defendants here. They have been sued by these plaintiffs for billions of dollars. The statute, although it must be invoked by the government, creates a bar to *the carriers'* liability. And, most critically, the statute expressly recognizes this by giving the carriers the same statutory right to brief legal issues as plaintiffs. Whatever plaintiffs may mean to suggest by asserting that their constitutional arguments are "directed at the government," Congress plainly felt that the parties should be heard from and said so in the statutory text. The suggestion that the carriers are not full actors in this process, with full rights to participate and a full opportunity to be heard separate from the government, is mistaken.

In addition, the government and carrier defendants do not believe that the briefing schedule needs to be extended to accommodate separate amicus briefs and related responsive filings. Amicus filings, if any, should be submitted at the same time as the briefs of the parties they support, and if the parties wish to respond to arguments made solely by amici, they can do so in their principal filings rather than in separate briefs. The government and the carriers agree with plaintiffs that a 15-page limit for amicus briefs is appropriate and that, if amicus briefs are permitted, extra pages should be provided as appropriate to respond to that additional briefing.

**F.     The Need For A Stay Of Other Proceedings**

Finally, the United States and the carriers submit that further proceedings in these cases should be stayed pending resolution of the United States' motions to dismiss. Under the terms of existing stay orders in these cases, the Ninth Circuit's remand triggers various obligations, such as the requirement for certain defendants to move to dismiss or otherwise answer, and prudence dictates that no such further steps, or any steps, be taken to litigate these cases until the Court has applied the statutory procedures in title II of FISAAA to determine whether they may be continued at all. Title II of FISAAA was enacted for the very purpose of eliminating the burdens of litigation on parties who meet the specified criteria for certification and to eliminate the risks that litigation

of this sort might pose to sensitive national security information.  *See* FISA § 802(a) (providing that these actions may not "be maintained" if the Attorney General makes the specified certification to the district court); *id.* § 802(b)(1) (providing that any such certification "shall be given effect" unless the court finds the certification is unsupported by substantial evidence); *id.* § 802(f) (permitting interlocutory appeals as of right).  Accordingly, the only litigation that should proceed after certifications are filed is litigation concerning the validity of the statute and effect of the certifications, and the United States and the carrier defendants respectfully request that the case management order governing further proceedings in these matters so provide.

DATED: September 2, 2008

**FOR THE PLAINTIFFS**

ELECTRONIC FRONTIER FOUNDATION

By _____/s/_____
    Cindy A. Cohn, Esq. (SBN 145997)
    Lee Tien, Esq. (SBN 148216)
    Kurt Opsahl, Esq. (SBN 191303)
    Kevin S. Bankston, Esq. (SBN 217026)
    Corynne McSherry, Esq. (SBN 221504)
    James S. Tyre, Esq. (SBN 083117)
    454 Shotwell Street
    San Francisco, CA 94110
    Telephone:   (415) 436-9333 x108
    Facsimile:   (415) 436-9993

ATTORNEYS FOR AT&T CLASS
PLAINTIFFS AND CO-CHAIR OF
PLAINTIFFS' EXECUTIVE COMMITTEE

Additional Plaintiffs' Counsel on Executive
Committee and Liaison Counsel:

ROGER BALDWIN FOUNDATION OF
ACLU
HARVEY GROSSMAN
ADAM SCHWARTZ
180 North Michigan Avenue
Suite 2300
Chicago, IL 60601
Telephone:  (312) 201-9740
Facsimile:  (312) 201-9760

PLAINTIFFS' COUNSEL FOR AT&T
SUBSCRIBER CLASS AND CO-CHAIR OF
PLAINTIFFS' EXECUTIVE COMMITTEE

HAGENS BERMAN SOBEL SHAPIRO LLP
REED R. KATHREIN
JEFFREY FRIEDMAN
SHANA E. SCARLETT
715 Hearst Avenue, Suite 202
Berkeley, CA
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

LAW OFFICE OF ARAM ANTARAMIAN
ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone: (510) 841-2369

ATTORNEYS FOR AT&T CLASS
PLAINTIFFS AND PLAINTIFFS' LIAISON
COUNSEL

COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP
ERIC ALAN ISAACSON
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

RICHARD R. WIEBE
LAW OFFICE OF RICHARD R. WIEBE
425 California Street
Suite 2025
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

ATTORNEYS FOR AT&T CLASS
PLAINTIFFS AND PLAINTIFFS' LIAISON
COUNSEL

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
ELIZABETH J. CABRASER
BARRY R. HIMMELSTEIN
ERIC B. FASTIFF
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

PLAINTIFFS' COUNSEL FOR MCI
SUBSCRIBER CLASS

MOTLEY RICE LLC
RONALD MOTLEY
DONALD MIGLIORI
JODI WESTBROOK FLOWERS
JUSTIN KAPLAN
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9163
Facsimile: (843) 216-9680

PLAINTIFFS' COUNSEL FOR VERIZON
SUBSCRIBER CLASS AND
MISCELLANEOUS SUBSCRIBER
CLASSES

THE MASON LAW FIRM, PC
GARY E. MASON
NICHOLAS A. MIGLIACCIO
1225 19th St., NW, Ste. 500
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

PLAINTIFFS' COUNSEL FOR SPRINT
SUBSCRIBER CLASS

BRUCE I AFRAN, ESQ.
10 Braeburn Drive
Princeton, NJ 08540
609-924-2075

PLAINTIFFS' COUNSEL FOR
BELLSOUTH SUBSCRIBER CLASS

GEORGE & BROTHERS, L.L.P.
R. JAMES GEORGE, JR.
DOUGLAS BROTHERS
1100 Norwood Tower
114 W. 7th Street
Austin, Texas 78701
Telephone: (512) 495-1400
Facsimile: (512) 499-0094

PLAINTIFFS' COUNSEL FOR CINGULAR
SUBSCRIBER CLASS

MAYER LAW GROUP
CARL J. MAYER
66 Witherspoon Street, Suite 414
Princeton, New Jersey 08542
Telephone: (609) 921-8025
Facsimile: (609) 921-6964

PLAINTIFFS' COUNSEL FOR BELLSOUTH
SUBSCRIBER CLASS

LISKA, EXNICIOS & NUNGESSER
ATTORNEYS-AT-LAW
VAL PATRICK EXNICIOS
One Canal Place, Suite 2290
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

PLAINTIFFS' COUNSEL FOR BELLSOUTH
SUBSCRIBER CLASS

KRISLOV & ASSOCIATES, LTD.
CLINTON A. KRISLOV
20 North Wacker Drive
Suite 1350
Chicago, IL  60606
Telephone: (312) 606-0500
Facsimile: (312) 606-0207

PLAINTIFFS' COUNSEL FOR
BELLSOUTH SUBSCRIBER CLASS

THE LAW OFFICES OF STEVEN E.
SCHWARZ, ESQ.
STEVEN E. SCHWARZ
2461 W. Foster Ave., #1W
Chicago, IL 60625
Telephone:  (773) 837-6134

PLAINTIFFS' COUNSEL FOR BELLSOUTH
SUBSCRIBER CLASS

Dated: September 2, 2008

**FOR THE UNITED STATES**

GREGORY G. KATSAS
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Principal Deputy Associate Attorney
General

JOHN C O'QUINN
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

ALEXANDER K. HAAS
PAUL G. FREEBORNE
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Rm. 6102
Washington, D.C. 20001
202-514-5782
Fax: 202-616-8460

By: _____/s/_____
        Anthony J. Coppolino

*Attorneys for the United States*

**FOR THE DEFENDANTS**

WILLIAMS & CONNOLLY LLP
BRENDAN V. SULLIVAN, JR.
JOHN G. KESTER
GILBERT GREENMAN
725 Twelfth Street, N.W.
Washington, D.C. 20005
202-434-5000

By: _____/s/_____
        John G. Kester

*Attorneys for the Sprint Defendants*

**FOR THE DEFENDANTS**

WILMER CUTLER PICKERING
    HALE AND DORR LLP
RANDOLPH D. MOSS*
SAMIR C. JAIN
BRIAN M. BOYNTON
1875 Pennsylvania Ave, N.W.
Washington, D.C. 20006
202-663-6000
Fax: 202-663-6363

MUNGER, TOLLES & OLSON LLP
HENRY WEISSMANN
SUSAN R. SZABO
AIMEE A. FEINBERG
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
213-683-9100
Fax: 213-683-5150

By: _____/s/_____
        Randolph D. Moss

*Attorneys for the Verizon Defendants*

**FOR THE DEFENDANTS**

SIDLEY AUSTIN LLP
DAVID W. CARPENTER*
BRADFORD A. BERENSON*
DAVID L. LAWSON*
EDWARD R. MCNICHOLAS*
ERIC A. SHUMSKY
1501 K Street, N.W.
Washington, DC 20005

PILLSBURY WINTHROP
    SHAW PITTMAN LLP
BRUCE A. ERICSON
JACOB R. SORENSEN
MARC H. AXELBAUM
DANIEL J. RICHERT
50 Fremont Street
Post Office Box 7880

San Francisco, CA 94120-7880

By: _____/s/_____
     Bradford A. Berenson

*Attorneys for the AT&T, Cingular, and
BellSouth Defendants*

## DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B

I, ANTHONY J. COPPOLINO, hereby declare pursuant to General Order 45,

§ X.B, that I have obtained the concurrence in the filing of this document from the other

signatories listed above.

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed on September 2, 2008, at San Francisco, California.

GREGORY G. KATSAS
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Principal Deputy Associate Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

ALEXANDER K. HAAS (SBN 220932)
PAUL G. FREEBORNE
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm. 6102
Washington, DC 20001
Telephone:  (202) 514-4782 – Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov


By:     *s/ Anthony J. Coppolino*
        Anthony J. Coppolino

*Attorneys for the United States of America*

**ATTACHMENT**

## Public Law 110–261
## 110th Congress

## An Act

July 10, 2008

[H.R. 6304]

To amend the Foreign Intelligence Surveillance Act of 1978 to establish a procedure for authorizing certain acquisitions of foreign intelligence, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008.
50 USC 1801 note.

### SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) SHORT TITLE.—This Act may be cited as the "Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008" or the "FISA Amendments Act of 2008".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I—FOREIGN INTELLIGENCE SURVEILLANCE

Sec. 102. Statement of exclusive means by which electronic surveillance and inter-
ception of certain communications may be conducted.
Sec. 103. Submittal to Congress of certain court orders under the Foreign Intel-
ligence Surveillance Act of 1978.
Sec. 104. Applications for court orders.
Sec. 105. Issuance of an order.
Sec. 106. Use of information.
Sec. 107. Amendments for physical searches.
Sec. 108. Amendments for emergency pen registers and trap and trace devices.
Sec. 109. Foreign Intelligence Surveillance Court.
Sec. 110. Weapons of mass destruction.

TITLE II—PROTECTIONS FOR ELECTRONIC COMMUNICATION SERVICE
PROVIDERS

Sec. 201. Procedures for implementing statutory defenses under the Foreign Intel-
ligence Surveillance Act of 1978.
Sec. 202. Technical amendments.

TITLE III—REVIEW OF PREVIOUS ACTIONS

Sec. 301. Review of previous actions.

TITLE IV—OTHER PROVISIONS

Sec. 401. Severability.
Sec. 402. Effective date.
Sec. 403. Repeals.
Sec. 404. Transition procedures.

(2) in section 301(1) (50 U.S.C. 1821(1)), by inserting "weapon of mass destruction," after "person,"; and

(3) in section 304(d)(2) (50 U.S.C. 1824(d)(2)), by striking "section 101(a) (5) or (6)" and inserting "paragraph (5), (6), or (7) of section 101(a)".

# TITLE II—PROTECTIONS FOR ELEC-TRONIC COMMUNICATION SERVICE PROVIDERS

### SEC. 201. PROCEDURES FOR IMPLEMENTING STATUTORY DEFENSES UNDER THE FOREIGN INTELLIGENCE SURVEILLANCE ACT OF 1978.

The Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.), as amended by section 101, is further amended by adding at the end the following new title:

# "TITLE VIII—PROTECTION OF PERSONS ASSISTING THE GOVERNMENT

### "SEC. 801. DEFINITIONS.

50 USC 1885.

"In this title:

"(1) ASSISTANCE.—The term 'assistance' means the provision of, or the provision of access to, information (including communication contents, communications records, or other information relating to a customer or communication), facilities, or another form of assistance.

"(2) CIVIL ACTION.—The term 'civil action' includes a covered civil action.

"(3) CONGRESSIONAL INTELLIGENCE COMMITTEES.—The term 'congressional intelligence committees' means—

"(A) the Select Committee on Intelligence of the Senate; and

"(B) the Permanent Select Committee on Intelligence of the House of Representatives.

"(4) CONTENTS.—The term 'contents' has the meaning given that term in section 101(n).

"(5) COVERED CIVIL ACTION.—The term 'covered civil action' means a civil action filed in a Federal or State court that—

"(A) alleges that an electronic communication service provider furnished assistance to an element of the intelligence community; and

"(B) seeks monetary or other relief from the electronic communication service provider related to the provision of such assistance.

"(6) ELECTRONIC COMMUNICATION SERVICE PROVIDER.—The term 'electronic communication service provider' means—

"(A) a telecommunications carrier, as that term is defined in section 3 of the Communications Act of 1934 (47 U.S.C. 153);

"(B) a provider of electronic communication service, as that term is defined in section 2510 of title 18, United States Code;

"(C) a provider of a remote computing service, as that term is defined in section 2711 of title 18, United States Code;

"(D) any other communication service provider who has access to wire or electronic communications either as such communications are transmitted or as such communications are stored;

"(E) a parent, subsidiary, affiliate, successor, or assignee of an entity described in subparagraph (A), (B), (C), or (D); or

"(F) an officer, employee, or agent of an entity described in subparagraph (A), (B), (C), (D), or (E).

"(7) INTELLIGENCE COMMUNITY.—The term 'intelligence community' has the meaning given the term in section 3(4) of the National Security Act of 1947 (50 U.S.C. 401a(4)).

"(8) PERSON.—The term 'person' means—

"(A) an electronic communication service provider; or

"(B) a landlord, custodian, or other person who may be authorized or required to furnish assistance pursuant to—

"(i) an order of the court established under section 103(a) directing such assistance;

"(ii) a certification in writing under section 2511(2)(a)(ii)(B) or 2709(b) of title 18, United States Code; or

"(iii) a directive under section 102(a)(4), 105B(e), as added by section 2 of the Protect America Act of 2007 (Public Law 110–55), or 702(h).

"(9) STATE.—The term 'State' means any State, political subdivision of a State, the Commonwealth of Puerto Rico, the District of Columbia, and any territory or possession of the United States, and includes any officer, public utility commission, or other body authorized to regulate an electronic communication service provider.

50 USC 1885a.  "SEC. 802. PROCEDURES FOR IMPLEMENTING STATUTORY DEFENSES.

"(a) REQUIREMENT FOR CERTIFICATION.—Notwithstanding any other provision of law, a civil action may not lie or be maintained in a Federal or State court against any person for providing assistance to an element of the intelligence community, and shall be promptly dismissed, if the Attorney General certifies to the district court of the United States in which such action is pending that—

"(1) any assistance by that person was provided pursuant to an order of the court established under section 103(a) directing such assistance;

"(2) any assistance by that person was provided pursuant to a certification in writing under section 2511(2)(a)(ii)(B) or 2709(b) of title 18, United States Code;

"(3) any assistance by that person was provided pursuant to a directive under section 102(a)(4), 105B(e), as added by section 2 of the Protect America Act of 2007 (Public Law 110–55), or 702(h) directing such assistance;

"(4) in the case of a covered civil action, the assistance alleged to have been provided by the electronic communication service provider was—

"(A) in connection with an intelligence activity involving communications that was—

"(i) authorized by the President during the period beginning on September 11, 2001, and ending on January 17, 2007; and

"(ii) designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack, against the United States; and

"(B) the subject of a written request or directive, or a series of written requests or directives, from the Attorney General or the head of an element of the intelligence community (or the deputy of such person) to the electronic communication service provider indicating that the activity was—

"(i) authorized by the President; and

"(ii) determined to be lawful; or

"(5) the person did not provide the alleged assistance.

"(b) JUDICIAL REVIEW.—

"(1) REVIEW OF CERTIFICATIONS.—A certification under subsection (a) shall be given effect unless the court finds that such certification is not supported by substantial evidence provided to the court pursuant to this section.

"(2) SUPPLEMENTAL MATERIALS.—In its review of a certification under subsection (a), the court may examine the court order, certification, written request, or directive described in subsection (a) and any relevant court order, certification, written request, or directive submitted pursuant to subsection (d).

"(c) LIMITATIONS ON DISCLOSURE.—If the Attorney General files a declaration under section 1746 of title 28, United States Code, that disclosure of a certification made pursuant to subsection (a) or the supplemental materials provided pursuant to subsection (b) or (d) would harm the national security of the United States, the court shall—

"(1) review such certification and the supplemental materials in camera and ex parte; and        Review.

"(2) limit any public disclosure concerning such certification and the supplemental materials, including any public order following such in camera and ex parte review, to a statement as to whether the case is dismissed and a description of the legal standards that govern the order, without disclosing the paragraph of subsection (a) that is the basis for the certification.

"(d) ROLE OF THE PARTIES.—Any plaintiff or defendant in a civil action may submit any relevant court order, certification, written request, or directive to the district court referred to in subsection (a) for review and shall be permitted to participate in the briefing or argument of any legal issue in a judicial proceeding conducted pursuant to this section, but only to the extent that such participation does not require the disclosure of classified information to such party. To the extent that classified information is relevant        Review.
to the proceeding or would be revealed in the determination of an issue, the court shall review such information in camera and ex parte, and shall issue any part of the court's written order that would reveal classified information in camera and ex parte and maintain such part under seal.

"(e) NONDELEGATION.—The authority and duties of the Attorney General under this section shall be performed by the Attorney General (or Acting Attorney General) or the Deputy Attorney General.

"(f) APPEAL.—The courts of appeals shall have jurisdiction of appeals from interlocutory orders of the district courts of the United States granting or denying a motion to dismiss or for summary judgment under this section.

"(g) REMOVAL.—A civil action against a person for providing assistance to an element of the intelligence community that is brought in a State court shall be deemed to arise under the Constitution and laws of the United States and shall be removable under section 1441 of title 28, United States Code.

"(h) RELATIONSHIP TO OTHER LAWS.—Nothing in this section shall be construed to limit any otherwise available immunity, privilege, or defense under any other provision of law.

"(i) APPLICABILITY.—This section shall apply to a civil action pending on or filed after the date of the enactment of the FISA Amendments Act of 2008.

50 USC 1885b.

**"SEC. 803. PREEMPTION.**

"(a) IN GENERAL.—No State shall have authority to—

"(1) conduct an investigation into an electronic communication service provider's alleged assistance to an element of the intelligence community;

"(2) require through regulation or any other means the disclosure of information about an electronic communication service provider's alleged assistance to an element of the intelligence community;

"(3) impose any administrative sanction on an electronic communication service provider for assistance to an element of the intelligence community; or

"(4) commence or maintain a civil action or other proceeding to enforce a requirement that an electronic communication service provider disclose information concerning alleged assistance to an element of the intelligence community.

"(b) SUITS BY THE UNITED STATES.—The United States may bring suit to enforce the provisions of this section.

"(c) JURISDICTION.—The district courts of the United States shall have jurisdiction over any civil action brought by the United States to enforce the provisions of this section.

"(d) APPLICATION.—This section shall apply to any investigation, action, or proceeding that is pending on or commenced after the date of the enactment of the FISA Amendments Act of 2008.

50 USC 1885c.

**"SEC. 804. REPORTING.**

"(a) SEMIANNUAL REPORT.—Not less frequently than once every 6 months, the Attorney General shall, in a manner consistent with national security, the Rules of the House of Representatives, the Standing Rules of the Senate, and Senate Resolution 400 of the 94th Congress or any successor Senate resolution, fully inform the congressional intelligence committees, the Committee on the Judiciary of the Senate, and the Committee on the Judiciary of the House of Representatives concerning the implementation of this title.

"(b) CONTENT.—Each report made under subsection (a) shall include—

"(1) any certifications made under section 802;

"(2) a description of the judicial review of the certifications made under section 802; and

"(3) any actions taken to enforce the provisions of section 803.".