1  GREGORY G. KATSAS
   Assistant Attorney General, Civil Division
2  CARL J. NICHOLS
   Principal Deputy Associate Attorney General
3  JOHN C. O'QUINN
   Deputy Assistant Attorney General
4  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
5  JOSEPH H. HUNT
   Director, Federal Programs Branch
6  ANTHONY J. COPPOLINO
   Special Litigation Counsel
7  ALEXANDER K. HAAS (SBN 220932)
   Trial Attorney
8  U.S. Department of Justice
   Civil Division, Federal Programs Branch
9  20 Massachusetts Avenue, NW, Rm. 6102
   Washington, D.C. 20001
10 Phone: (202) 514-4782—Fax: (202) 616-8460
   *Attorneys for the Government Defendants*

11

12                  **UNITED STATES DISTRICT COURT**

13                **NORTHERN DISTRICT OF CALIFORNIA**

14 IN RE NATIONAL SECURITY AGENCY          )   No. M:06-CV-01791-VRW
   TELECOMMUNICATIONS RECORDS             )
15 LITIGATION                             )   **DEFENDANTS' NOTICE OF MOTION
                                          )   AND THIRD MOTION TO DISMISS
16 This Document Solely Relates To:       )   OR, IN THE ALTERNATIVE, FOR
                                          )   SUMMARY JUDGMENT IN**
17 *Al-Haramain Islamic Foundation et al.* )   ***Al-Haramain Islamic Foundation et al.***
       *v. Bush, et al.* (07-CV-109-VRW)   )   ***v. Bush et al.***
18                                         )
                                          )   Date:        December 2, 2008
19                                         )   Time:        10:00 a.m.
                                          )   Courtroom:   6, 17th Floor
20                                             Honorable Vaughn R. Walker

21         PLEASE TAKE NOTICE that on December 2, 2008 at 10:00 a.m., before Chief Judge

22 Vaughn R. Walker, the Government Defendants will move, pursuant to Rules 12(b)(1) and 56 of

23 the Federal Rules of Civil Procedure, for dismissal of plaintiffs' First Amended Complaint

24 ("FAC"), *see* Dkt. 35 (07-cv-109-VRW), or, in the alternative, for summary judgment.  The

25 Government Defendants seek dismissal of the First Amended Complaint or summary judgment

26 in their favor for all the reasons set forth in the instant motions and accompanying memorandum

27 of law in support thereof, as well as the additional reasons on which they have previously sought

28
   ──────────────────────────────────────────────────────────
   Government Defendants' Third Motion to Dismiss or, in the alternative, for Summary Judgment
   *Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)

dismissal and summary judgment in this case.

First, assuming, *arguendo*, Section 1806(f) of the FISA is applicable to consider plaintiffs' claims set forth in the First Amended Complaint, the Government Defendants are now entitled to summary judgment on the grounds that the evidence set forth in plaintiffs' First Amended Complaint fails to establish that the plaintiffs are "aggrieved persons" as defined in the FISA and, thus, that plaintiffs have standing to adjudicate any claim under Section 1806(f).

In addition, as set forth in the Government's first motion to dismiss or for summary judgment, the Government's successful assertion of the state secrets privilege in this case requires dismissal of all the claims in the FAC, or summary judgment for the Government Defendants, on the ground that the plaintiffs cannot establish their standing, *see Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1201-05 (9th Cir. 2007), and because the facts otherwise needed to adjudicate this case are excluded by the Government's privilege assertion. In addition, as set forth on remand in the Government's second motion to dismiss or for summary judgment, the Foreign Intelligence Surveillance Act does not preempt the Government's state secrets privilege assertion upheld by the Ninth Circuit and, specifically, Section 1806(f) of the FISA, 50 U.S.C. § 1806(f), neither preempts the state secrets privilege nor applies in this case. Accordingly, all claims in the FAC should be dismissed in accord with the Ninth Circuit's decision that the state secrets privilege precludes plaintiffs from establishing their standing. In addition, plaintiffs lack standing to obtain prospective declaratory or injunctive relief with respect to alleged warrantless surveillance under the Terrorist Surveillance Program, which lapsed in January 2007, and the Court lacks jurisdiction to review plaintiffs' claim for retrospective damages against the United States, brought under 50 U.S.C. § 1810, because Section 1810 does not expressly waive the sovereign immunity of the United States for this claim. All of the foregoing grounds for dismissal of this case, or the entry of summary judgment for the Government Defendants, previously raised in this case continue to apply with respect to the First Amended Complaint.

This motion is supported by the accompanying Memorandum of Points and Authorities in

Support of the Government Defendants' Third Motion to Dismiss or for Summary Judgment as well as by all prior submissions by the Government's in support of its first and second motions to dismiss or for summary judgment, including: (i) Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment in light of the United States' Assertion of the Military and State Secrets Privilege (*see* Dkt. 59, Case No. 06-274-KI (D. Or. June 21, 2006)) and Reply in support of that motion (*see* Dkt. 67, Case No. 06-274-KI (D. Or. July 25, 2006)); and (ii) Defendants' Second Motion to Dismiss or, in the Alternative, for Summary Judgment (*see* Dkt. 17, Case No. 07-109-VRW (N.D. Cal. Mar. 14, 2008)) and Reply in support of that motion (*see* Dkt. 29, Case No. 07-109-VRW (N.D. Cal. Apr. 14, 2008)).

Dated:  September 30, 2008                     Respectfully Submitted,

GREGORY G. KATSAS
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Principal Deputy Associate Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

  *s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

  *s/ Alexander K. Haas*
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
*Attorneys for the Government Defendants*

GREGORY G. KATSAS
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Principal Deputy Associate Attorney General
JOHN C. O'QUINN
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS (SBN 220932)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Solely Relates To:<br><br>*Al-Haramain Islamic Foundation et al.*<br>*v. Bush, et al.* (07-CV-109-VRW) | No. M:06-CV-01791-VRW<br><br>**DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT IN** *Al-Haramain Islamic Foundation et al. v. Bush et al.*<br><br>Date:         December 2, 2008<br>Time:          10:00 a.m.<br>Courtroom:   6, 17th Floor<br>Honorable Vaughn R. Walker |

# TABLE OF CONTENTS

PAGE

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES TO BE DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Initial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Remand Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    Plaintiffs' Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    PLAINTIFFS HAVE FAILED TO ESTABLISH THEIR STANDING AS
AGGRIEVED PERSONS UNDER THE FISA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Plaintiffs Bear the Burden of Proving an Actual Concrete Injury to Establish
Standing Under Article III of the Constitution.. . . . . . . . . . . . . . . . . . . . . . . 9

    B.    The Evidence Cited by Plaintiffs Fails to Establish That They
Have Been Subject to the Alleged Warrantless Surveillance
Challenged in This Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.    Assuming Plaintiffs Have Accurately Described the Public
Information Cited in the First Amended Complaint, They
Have Failed to Establish that They Are Aggrieved Persons
Under the FISA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.    The Evidence Cited by Plaintiffs in the First Amended
Complaint Does Not Establish Their Standing as Aggrieved
Persons Under the FISA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.    THE LAW DOES NOT SUPPORT THIS ATTEMPT TO ADJUDICATE
MATTERS SUBJECT TO THE STATE SECRETS PRIVILEGE WITH
"PUBLIC" EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.    THE PRIOR GROUNDS FOR DISMISSAL SET FORTH BY THE
GOVERNMENT UNDERSCORE THAT THERE IS NO JURISDICTION
OR BASIS IN LAW TO FIND THAT FIND THAT PLAINTIFFS ARE
AGGRIEVED UNDER THE FISA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

CASES                                                                 PAGE(S)

*ACLU Found. v. Barr*, 952 F.2d 457 (D.C. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Alderman v. United States*, 394 U.S. 165 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190 (9th Cir. 2007). . . . . . . . . . . . . . . . passim

*Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109 (N.D. Cal. July 2, 2008). . . . . passim

*Al-Haramain v. Bush*,
    451 F. Supp. 2d 1215 (D. Or. 2006), *rev'd*, 507 F. 3d 1190 (9th Cir. 2007). . . . . . . . . . .  4

*American Civil Liberties Union v. National Security Agency*,
    493 F.3d 644 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Baker v. Carr*, 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24, 25

*Doe v. Tenet*, 544 U.S. 1 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Grace v. American Central Ins. Co.*, 109 U.S. 278 (1883). . . . . . . . . . . . . . . . . . . . . . . . .  14

*In re Grand Jury Investigation*, 431 F. Supp. 2d 584 (E.D. Va. 2006). . . . . . . . . . . . . . . . . .  22

*In re Grand Jury Investigation (Doe)*, 437 F.3d 855 (9th Cir. 2006). . . . . . . . . . . . . . . . . . .  21

*In re Grand Jury Proceedings*, 856 F.2d 685 (4th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . .  22

*In re Grand Jury Witness (Whitnack)*, 544 F.2d 1245 (9th Cir. 1976). . . . . . . . . . . . . . . . .  21

*Loux v. Rhay*, 375 F.2d 55 (9th Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12

*In re Sealed Case*, 310 F.3d 717 (For. Intel. Surv. Rev. 2002). . . . . . . . . . . . . . . . . . . . . . .  22

*Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . .  10

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Sterling v. Tenet*,
    416 F.3d 338 (4th Cir. 2005), *cert. denied*, 546 U.S. 1093 (2006). . . . . . . . . . . . . . . . .  23

*United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*United States v. Tobias*, 836 F.2d 449 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Warth v. Seldin*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Whitmore v. Arkansas*, 495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTORY LAW**

18 U.S.C. § 3504. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

50 U.S.C. § 1801(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 12

50 U.S.C. § 1806(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

50 U.S.C. § 1810. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**LEGISLATIVE HISTORY**

H.R. Rep. No. 95-1283, 95th Cong. 2d Sess (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

S. Rep. No. 95-604, 95th Cong. 2d Sess., pt. 1 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

S. Rep. 95-701, 1978 U.S.C.C.A.N. 3973 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

S. Rep. No. 95-701, 1978 U.S.C.C.A.N. 4027 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**<u>INTRODUCTION</u>**

This is the Government Defendant's[1] third motion to dismiss or for summary judgment since this case was filed in February 2006.  Plaintiffs, the Al-Haramain Islamic Foundation of Oregon and two lawyers associated with it, allege that they were subject to warrantless surveillance authorized by the President after the 9/11 attacks under a program that was referred to as the Terrorist Surveillance Program ("TSP").  Pursuant to the Court's July 2 Order in this case,[2] this motion primarily addresses whether the evidence presented by plaintiffs in their First Amended Complaint ("FAC") establishes that they are "aggrieved persons" under the Foreign Intelligence Surveillance Act ("FISA")—*i.e*, the "target of an electronic surveillance" or persons "whose communications or activities were subject to electronic surveillance," *see* 50 U.S.C. § 1801(k)— and, thus, have standing to utilize the special procedures set forth in Section 1806(f) of the FISA, *see id*. § 1806(f), to challenge the alleged warrantless surveillance.

As set forth below, nothing in the First Amended Complaint comes close to establishing that plaintiffs are "aggrieved persons" under the FISA and thus have standing to proceed under Section 1806(f) to litigate any claim.  Plaintiffs offer nothing but speculation and unfounded inferences drawn from facts on the public record that do not remotely demonstrate that any of the plaintiffs has been subject to the alleged warrantless surveillance they challenge.  The mere fact that the President authorized the Terrorist Surveillance Program, or that the Government has investigated terrorist financing by charitable organizations like the Al-Haramain Islamic Foundation of Saudi Arabia and its worldwide branches, or that plaintiff Al-Haramain Islamic Foundation of Oregon had been designated as Specially Designated Global Terrorist or, indeed, that this designation had been supported by "classified" "intelligence" or "surveillance" information, does not establish that the *plaintiffs* were targeted by or subject to the alleged

---

[1]  This motion is brought on behalf of the Government Defendants sued in their official capacity (hereafter "Defendants" or "Government Defendants").  The response of the one defendant sued in his personal capacity (FBI Director Mueller) to the First Amended Complaint has been deferred by stipulation, *see* Dkt. 461 (07-cv-1791-VRW).

[2]  *See* Dkt. 35 (07-cv-109-VRW).  The Court's decision is published at *Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109 (N.D. Cal. July 2, 2008).

warrantless surveillance they challenge in their complaint. At most, plaintiffs' evidence would support a finding that *some* classified intelligence information obtained through *some* form of surveillance of *some* persons under *some* authority may have contributed to the designation of Al-Haramain Oregon. But nothing in the complaint establishes the communications of these plaintiffs were intercepted, or if they were, that they were intercepted through electronic surveillance on a wire in the United States under the TSP without a warrant in violation of the FISA. Plaintiffs simply stitch together their own inferences drawn from certain public facts to support their pre-determined conclusion, but have not established (and, indeed cannot establish) that what they allege has in fact occurred.

This fundamental problem does not relate to the mere sufficiency of plaintiffs' allegations; rather, plaintiffs cannot meet their burden of proof at the summary judgment stage to actually establish that they have been subject to the alleged warrantless surveillance. As the Court has held, such proof must be established before Section 1806(f) proceedings might delve into any classified evidence on the matter. *See Al-Haramain*, 564 F. Supp. 2d at 1134.

In assessing plaintiffs' purported evidentiary showing, it is important to stress that no court has applied Section 1806(f) of the FISA to permit a party to attempt to prove their "aggrieved" status under the FISA, with purportedly public evidence, in the face of a successful state secrets privilege assertion on that very question. The Court of Appeals held that the national security concerns that would result from adjudicating whether or not the plaintiffs were subject to alleged warrantless surveillance were "exceptionally well-documented." *See Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007). Allowing a party to attempt to establish the matter anyway, even with purportedly public evidence, is contrary to both the purpose and operation of Section 1806(f), as well as the state secrets privilege. Whether or not a party has been subject to surveillance, or when, how, and under what authority, is information that is uniquely available to the Government, can only be confirmed or denied by the Government, and is not susceptible to proof based on extraneous public information. The Court can only exercise Article III jurisdiction based on the actual facts—facts that have been properly protected in this case—not a party's conjecture based on public evidence. Any attempt to do

otherwise would result either in an exercise of jurisdiction based on an erroneous foundation, or would necessarily risk or entail disclosure of the actual privileged facts.

For these reasons, set forth more fully below, the Government Defendants are entitled to summary judgment and plaintiffs' First Amended Complaint must be dismissed.

## ISSUES TO BE DECIDED

1.   Whether summary judgment should be granted to the Government Defendants and the complaint dismissed on the ground that plaintiffs have not established that they are "aggrieved parties" under the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801(k) and, thus, that they have standing to challenge alleged warrantless surveillance of them at issue in this case?

2.   Whether the First Amended Complaint should be dismissed, or summary judgment should be granted for the Government Defendants, based on grounds set forth by the Government Defendants in prior motions, including that: (i) the Government Defendants have successfully asserted of the military and state secrets privilege, which precludes plaintiffs from establishing standing; (ii) the plaintiffs cannot establish standing for prospective relief; and (iii) the United States has not waived sovereign immunity with respect to plaintiffs' claim for damages against the United States under 50 U.S.C. § 1810.

## BACKGROUND

### A.   Initial Proceedings

Plaintiffs are the Al-Haramain Islamic Foundation of Oregon ("AHIF-Oregon"), an entity designated by the United States as a "Specially Designated Global Terrorist," *see* Complaint ¶¶ 4, 21 (Dkt. 07-cv-109, No. 1, Part # 1), and two U.S. citizens (Wendell Belew and Asim Ghafoor) who averred that they are attorneys that have "business and other relationships" with AHIF-Oregon, *see id*. ¶¶ 4-6. Plaintiffs allege that, in March and April 2004, they were subject to warrantless foreign intelligence surveillance by the NSA authorized by the President after the September 11, 2001 attacks. *See id*. ¶¶ 5, 6, 19. Plaintiffs specifically allege that the designation of AHIF-Oregon was based in part on evidence derived from the alleged surveillance, *see id*. ¶¶ 1, 18, and they seek to rely upon the inadvertent release of a classified document (the "sealed document") to support their allegations. Plaintiffs contend that the alleged surveillance violated the FISA, the separation of powers doctrine, the Constitution and International law, *see id*. ¶¶ 26-37, seek declaratory and injunctive relief, as well as money damages under 50 U.S.C. § 1810. *See id*. at 7 (Prayer for Relief) ¶ 1.

In June 2006, the Director of National Intelligence ("DNI") asserted the state secrets

privilege over information implicated by this case, including information that would reveal whether or not the plaintiffs have been subject to alleged surveillance under the TSP or any other program as well as information pertaining to the sealed document. *See* Public Declaration of John D. Negroponte, Director of National Intelligence, ¶ 11(iii), (iv), ¶ 14 (Dkt. No. 59, Item #1) (Civ. 06-274-KI) (D. Or.). The Government then moved to dismiss on the grounds that evidence protected by the state secrets privilege is necessary to litigate the case. In September 2006, Judge King of the District of Oregon upheld the Government's state secrets privilege assertion with respect to any information confirming or denying whether plaintiffs' communications have been or continue to be intercepted—except with respect to any prior communications allegedly reflected in the sealed document. *See Al-Haramain v. Bush*, 451 F. Supp. 2d 1215, 1224 (D. Or. 2006), *rev'd*, 507 F. 3d 1190 (9th Cir. 2007). Judge King concluded that the content of the sealed document would not be a secret to the plaintiffs in light of its inadvertent disclosure, and held that the plaintiffs should be granted an opportunity to attempt to establish their standing as to any alleged surveillance reflected in the sealed document through special *in camera* procedures if necessary. *See id.* at 1226, 1229. Judge King therefore declined to dismiss the case, but certified his decision for interlocutory review. The Government appealed to the Ninth Circuit, which granted the petition for review. *See* December 21, 2006 Order, Dkt. No. 96 (Civ. 06-274-KI) (D. Or.).

In November 2007, the Ninth Circuit reversed the denial of the Government Defendants' motion to dismiss and upheld the Government's state secrets privilege assertion to protect from disclosure information concerning whether or not the plaintiffs had been subject to the alleged surveillance, as well information contained in the sealed document. *See Al-Haramain*, 507 F.3d at 1202-04. The Ninth Circuit went on to hold that, without the privileged information, plaintiffs could not establish their standing to litigate their claims. *See id.* at 1205. In upholding the Government's assertion of the state secrets privilege, the Ninth Circuit stated, after conducting "a very careful" review of the classified record, that the basis for the privilege was "exceptionally well documented" in "[d]etailed statements." *Id.* at 1203. The Ninth Circuit's decision did not pertain solely to the use of the sealed document in this case. Rather, it covered information

concerning "whether Al-Haramain was subject to surveillance." *See id*. at 1202 (identifying these two separate state secret privilege issues and resolving both in the Government's favor). The Court of Appeals declined to decide a separate issue raised on appeal—whether the FISA preempts the state secrets privilege, and remanded for the district court to consider that limited issue and any proceedings collateral to that determination. *See id*. at 1205.

**B.      Remand Proceedings**

Following the Ninth Circuit's remand, the Government again moved to dismiss or for summary judgment, and addressed not only the FISA preemption issue remanded by the Court of Appeals but other threshold jurisdictional issues as well.  Specifically, the Government argued that plaintiffs' complaint seeks prospective relief concerning alleged warrantless surveillance authorized by the President under the TSP—a program that lapsed in January 2007.  As a result of the lapse, plaintiffs could not establish standing to obtain prospective declaratory and/or injunctive relief with respect to the alleged surveillance at issue.  *See* Defs. 2d MSJ Mem. (Dkt. 17 in 07-109-VRW) at 6-8.  In addition, Government Defendants argued that the Court lacks jurisdiction to consider plaintiffs' retrospective claim for damages against the United States under 50 U.S.C. § 1810 because that provision does not waive the sovereign immunity of the United States.  Defs. 2d MSJ Mem. at 8-12.  Finally, the Government Defendants argued that even if jurisdiction exists, the FISA does not preempt the state secrets privilege and, in particular, argued that Section 1806(f) of the FISA applies solely to those cases where the use of evidence based on electronic surveillance is at issue and the Government has acknowledged the existence of such surveillance, and that the FISA cannot be read to compel the Government to disclose (or risk the disclosure of) information concerning intelligence sources and methods that the Government chooses to protect.  Defs. 2d MSJ Mem. at 12-24.

In its July 2 decision, the Court held that FISA preempts the state secrets privilege and also rejected Defendants' jurisdictional arguments.  But the Court noted that its holding did "not necessarily clear the way for plaintiffs to pursue their claim for relief against these defendants under FISA's section 1810," because only a litigant who establishes that they are "aggrieved person" may take advantage of procedures under section 1806(f) of the FISA.  *See Al-Haramain*,

564 F. Supp. 2d at 1125. The Court rejected the Government's contention that the special procedures for judicial review established in Section 1806(f) applied solely when invoked by the Attorney General in discovery matters concerning the use of evidence of acknowledged surveillance. *See id*. at 1132-34. At the same time, the Court rejected the view that a litigant could use Section 1806(f) to discover in the first instance whether it was "aggrieved"—*i.e.*, the target of or subject to surveillance, *see id*. at 1134-35—and, instead, held that "a litigant must first establish himself as an 'aggrieved person' *before* seeking to make a 'motion or request'" under 1806(f). *See id.* at 1134 (emphasis added). In light of the Ninth Circuit's decision upholding the Government's state secrets privilege assertion, the Court also precluded the plaintiffs from attempting to make this showing through the use of the classified sealed document that had been inadvertently disclosed to them, *see id*., and stated that "it is certain that plaintiffs' showing thus far with the Sealed Document excluded falls short of the mark," *see id*. at 1135. The Court did not determine what standard would govern the standing inquiry as to whether a party was an "aggrieved person" under the FISA, but noted that "independent evidence disclosing that plaintiffs have been surveilled" was required. *Id*. Specifically, the Court stated that "[t]o proceed with their FISA claim, plaintiffs must present to the court enough specifics based on non-classified evidence to establish their 'aggrieved person' status under FISA." *Id*. The Court then dismissed plaintiffs' complaint without prejudice and permitted plaintiffs to amend within thirty days.

C.    **Plaintiffs' Amended Complaint**

On July 29, 2008, plaintiffs filed an amended complaint seeking to meet their burden under the Court's July 2 Order. *See* Dkt. 35 (07-109-VRW). In the FAC, plaintiffs refer to various public statements and reports in an effort to establish that they have been subject to alleged warrantless surveillance in violation of the Foreign Intelligence Surveillance Act.

First, plaintiffs refer to various public statements indicating that the President authorized the Terrorist Surveillance Program after the 9/11 attacks. *See* FAC ¶¶ 16-19. Plaintiffs also cite public statements indicating that the program ended in January 2007, *see id*. ¶ 21, but contend based on public testimony by Government officials that "it is not clear that defendants' unlawful

behavior could not reasonably be expected to recur," *see id*. ¶¶ 22-23.

Next, plaintiffs refer to public testimony from officials of the Treasury Department's Office of Foreign Assets Control ("OFAC") and the Federal Bureau of Investigation ("FBI") starting in 2002 concerning the Government's effort to track the financing of terrorist activities by charitable organizations, including of four branches of the Al-Haramain Islamic Foundation of Saudi Arabia and, thus, the Al-Haramain Islamic Foundation of Oregon. *See* FAC ¶¶ 24-25. Plaintiffs refer to statements by FBI and Treasury Department officials that the Government has access to classified information from the intelligence community in their investigation of terrorist financing. *See id*. ¶¶ 27, 28. Plaintiffs then juxtapose public information concerning the designation of AHIF-Oregon with phone conversations that they aver occurred between plaintiffs and individuals associated with AHIF. They note, for example, that the Treasury Department blocked the assets of AHIF-Oregon in February 2004 but made no mention of any link between AHIF-Oregon and Usama bin-Laden at that time. *See id*. ¶¶ 30-31. Plaintiffs then aver that they had conversations from March through June of 2004 that, among other things, refer to the coordination of payments for attorney fees for defendants in a lawsuit against Saudi entities and citizens on behalf of victims of the 9/11 attacks, and that also reference individuals associated in some way to Usama bin-Laden, including an individual who was married to one of bin Laden's daughters, and others clerics who bin-Laden had claimed had inspired him. *See id*. ¶¶ 32-35.

Plaintiffs then refer to subsequent correspondence to counsel for AHIF-Oregon indicating that the Treasury Department was considering the designation of AHIF-Oregon as a Specially Designated Global Terrorist Organization based in part on classified information, *see* FAC ¶¶ 36-37, and, after AHIF-Oregon was so designated in September 2004, to a Treasury Department press released indicating the AHIF-Oregon had "direct links" to Usama bin-Laden, *see id*. ¶¶ 38-40. Plaintiffs also cite a public declaration filed in this litigation indicating that the classified sealed document "was related to the terrorist designation" of AHIF-Oregon. *See id.* ¶ 41.

Next, plaintiffs refer to a speech by an FBI official in October 2007 purportedly indicating that, although the FBI "used . . . surveillance" in connection with the Treasury Department's 2004 investigation of AHIF-Oregon, it was financial evidence that provided the

basis for the initial designation of AHIF-Oregon, *see id.* ¶¶ 42-43.  But, citing a document filed in a criminal proceeding, which distinguishes between the "preliminary-designation of AHIF-US" in February 2004 and the "formal designation" of AHIF-US as an SDGT in September 2004, plaintiffs allege that the Government relied on "surveillance evidence" for the subsequent formal designation. *See id.* ¶¶ 44-45.  Plaintiffs then contend that the FBI's reference to the use of surveillance evidence in the designation of AHIF-Oregon confirms that "plaintiffs were surveilled." *See id.* ¶ 46.

Plaintiffs then refer to a series of statements made in public testimony by U.S. officials about how certain international communications pass on a wire through the United States and, based on changes in technology, a warrant is required for their interception.  *See* FAC ¶ 48. Plaintiffs assert that these statements establish that the particular one-end foreign telephone communications cited by plaintiffs in paragraphs 32-33 "were wire communications and were intercepted by defendants within the United States." *Id.* ¶ 47.

Plaintiffs also refer to a statement made by Government counsel during a court proceeding to the effect that "attorneys who represent terrorist clients . . . come closer to being in the ballpark of the terrorist surveillance program," *see* FAC ¶ 49, as well as to a brief by the Government in the appeal in this case which refers to AHIF-Oregon and plaintiffs Belew and Ghafoor as "a terrorist organization and two lawyers affiliated with it." *See id.* ¶ 50.

Plaintiffs also cite a memorandum by the Treasury Department dated February 6, 2008, indicating that the Government had acknowledged surveillance of four telephone conversations between an officer of AHIF-Oregon (al-Buthi) and a criminal defendant in a separate proceeding (Ali al-Timimi). *See* FAC ¶ 51.

Based on the foregoing, plaintiffs allege that the conversations referred to in paragraph 35 of the FAC between plaintiff Ghafoor and al-Buthi and between plaintiff Belew and al-Buthi were intercepted by means of a wire in the United States, without a warrant obtained pursuant to the FISA, that the Treasury Department relied on this surveillance to declare that AHIF-Oregon had direct links to bin-Laden and to formally declare AHIF-Oregon an SDGT, and thus that plaintiffs AHIF-Oregon, Belew and Ghafoor are "aggrieved persons" under FISA, 50 U.S.C. §

1801(k).  *See* FAC ¶ 52.

**ARGUMENT**

**I.    PLAINTIFFS HAVE FAILED TO ESTABLISH THEIR STANDING AS
         AGGRIEVED PERSONS UNDER THE FISA**.

As set forth below, the evidence plaintiffs proffer in their Fist Amended Complaint does
not remotely establish they are "aggrieved persons" under the FISA and thus have standing to
challenge alleged warrantless surveillance.  Plaintiffs' "evidence" is little more than conjecture
and unfounded inferences based on a limited amount of public information that simply is not
sufficient to carry plaintiffs' burden of proof at this summary judgment stage.

**A.    Plaintiffs Bear the Burden of Proving an Actual Concrete Injury
         to Establish Standing Under Article III of the Constitution.**

It is well established that the "judicial power of the United States defined by Article III of
the Constitution is not an unconditioned authority to determine the constitutionality of legislative
or executive acts" but, rather, is limited to the resolution of "cases" and "controversies."  *Valley
Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S.
464, 471 (1982); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  To establish
standing, plaintiffs must satisfy three requirements.  "At an irreducible minimum, Art. III
requires the party who invokes the court's authority to show [1] that he personally has suffered
some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and
that [2] the injury fairly can be traced to the challenged action, and [3] is likely to be redressed by
a favorable decision."  *Valley Forge*, 454 U.S. at 472 (internal citations omitted); *see also Steel
Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998); *Lujan*, 504 U.S. at 560.  The
elements of injury, traceability, and redressability present distinct considerations, *Steel Co.*, 523
U.S. at 103, 107 n.7, and a party must satisfy all three elements.  In addition, the requisite injury
must be "concrete and particularized," and "actual or imminent," not "conjectural" or
"hypothetical."  *Lujan*, 504 U.S. at 560; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *City of
Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  Only a plaintiff who identifies this sort of
concrete injury-in-fact has "'such a personal stake in the outcome of the controversy' as to
warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial

powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

A party who seeks to invoke the jurisdiction of the court bears the burden of establishing Article III standing. *Steel Co.*, 523 U.S. at 104; *Lujan*, 504 U.S. at 561; *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Warth*, 422 U.S. at 508. Since the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," for on a motion to dismiss the Court may "presume that general allegations embrace those specific facts that are necessary to support the claim." *See id.* In response to a summary judgment motion, however, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" establishing their standing, which for purposes of the summary judgment motion will be taken to be true unless controverted. *See id.* (citing Fed. R. Civ. Proc. 56(e)). Standing cannot be "'inferred argumentatively from averments in the pleadings,' . . . but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc*, 493 U.S. at 231. And if "the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth*, 422 U.S. at 502. Purported evidence that "contains only conclusory allegations, not backed up by statements of fact . . . cannot defeat a motion for summary judgment." *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989).[3/]

---

[3] The foregoing Article III requirements for establishing standing directly apply to determine whether a party is "aggrieved" for purposes of the FISA. The phrase "aggrieved person" was imported into FISA from section 2510 of Title III, Omnibus Crime Control and Safe Streets Act of 1968. *See* S. Rep. No. 95-604, 95th Cong. 2d Sess., pt. 1, at 56 (1978) (an "aggrieved person" in FISA is "defined to coincide with the definition . . . in section 2510 of title III."); S. Rep. 95-701, 1978 U.S.C.C.A.N. 3973, 4031 (1978). And the Supreme Court has recognized that the term "aggrieved person" in Title III "should be construed in accordance with existent standing rules." *See Alderman v. United States*, 394 U.S. 165, 176 n.9 (1969). Likewise, when Congress enacted FISA's "aggrieved person" provision it clearly contemplated that only those with constitutional standing could possibly be aggrieved. *See* H.R. Rep. No. 95-

Thus, to establish their "aggrieved" status under the FISA, plaintiffs must establish that they have suffered an actual personal, concrete, particularized injury—that is, that they were the "target" of warrantless electronic surveillance or that their communications were intercepted and they were thus "subject to" warrantless electronic surveillance. Inferences and conjecture are not sufficient. Plaintiffs cannot rest on a showing that they might be aggrieved, or that there is a even a likelihood they are aggrieved—they must establish that fact through "independent evidence disclosing that plaintiffs have been surveilled." *See Al-Haramain*, 564 F. Supp. 2d at 1125.

**B.  The Evidence Cited by Plaintiffs Fails to Establish That They Have Been Subject to the Alleged Warrantless Surveillance Challenged in This Case.**

There can be little doubt that the evidence cited by plaintiffs in their First Amended Complaint fails to establish that they have been subject to the alleged warrantless surveillance at issue. Even assuming that plaintiffs have accurately described the public information they cite in the FAC, they are relying on speculation, conjecture, and unfounded inferences drawn from that information which does not establish that plaintiffs have been the target of or subject to the alleged surveillance. In addition, however, plaintiffs' characterization of the public information they cite (but do not attach to the FAC) is not accurate, and examination of this evidence demonstrates further that the plaintiffs have not established their standing.[4]

The public "evidence" on which plaintiffs rely to establish that they were subject to alleged warrantless surveillance in violation of the FISA can be summarized as follows:

- The Government admitted the existence of the Terrorist Surveillance Program, under which the National Security Agency was authorized by the President to intercept certain one-end international communications where one party was reasonably believed to be a member of agent of al Qaeda or affiliated terrorist organization. *See* FAC ¶¶ 16-18.

- The assets of plaintiff AHIF-Oregon were blocked by the Treasury Department in

1283, 95th Cong. 2d Sess., pt.1, at 66 (1978) ("As defined, the term [aggrieved person] is intended to be *coextensive*, but no broader than, those persons who have standing to raise claims under the Fourth Amendment with respect to electronic surveillance.").

[4] The Government Defendants submit herewith some of the public statements and information cited by plaintiffs in the FAC, specifically those statements that are referred to below as Defendants discuss the inadequacy of plaintiffs' evidence. *See* Exhibits 1 to 19.

February 2004 pending an investigation of AHIF-Oregon's financial support of international terrorism.  *See* FAC ¶¶ 24-25.

•       After phone conversations between plaintiffs and a director of AHIF-Oregon located in Saudi Arabia (Mr. al-Buthi) between March and June of 2004 included references to people associated with Usama bin-Laden, the Government later "formally designated" AHIF-Oregon in September 2004 as a Specially Designated Global Terrorist Organization and specifically cited "direct links" it had with bin-Laden.  *See* FAC ¶¶ 30-35, 39-40.

•       The FBI and the Treasury Department have stated publicly that they relied on classified information, including "surveillance" information, to designate AHIF-Oregon as a terrorist organization associated with al Qaeda and bin-Laden.  *See* FAC ¶¶ 36-43.

•       In testimony before Congress, the Government stated that a warrant is required before certain communications that transit a wire in the United States can be intercepted.  *See* FAC ¶ 48.

•       In a separate criminal proceeding, the Government acknowledged that it had intercepted communications between the defendant (Ali al-Timimi) and an AHIF official, Mr. Al-Buthi.  *See* FAC ¶ 51.

•       Government counsel indicated at oral argument in *ACLU v. National Security Agency* that lawyers for terrorists are "closer to the ballpark" of being subject to the TSP.  *See* FAC ¶ 49.

These points, in sum, constitute the key public evidence on which plaintiffs rely in the FAC to establish that their communications were intercepted off of a wire in the United States under authority of the TSP and in violation of the FISA, thus rendering them "aggrieved persons" as defined in the FISA, *see* 50 U.S.C. § 1801(k).  *See* FAC ¶ 52.  But it should be apparent, upon even a cursory review, that the evidence cited by the plaintiffs establishes no such thing.

      **1.       Assuming Plaintiffs Have Accurately Described the Public Information Cited in the First Amended Complaint, They Have Failed to Establish That They Are Aggrieved Persons Under the FISA.**

Assuming, *arguendo,* that plaintiffs have accurately described the public statements cited in the First Amended Complaint, the pieces of evidence plaintiffs advance do not establish, individually or collectively, that they were subject to surveillance at all, let alone warrantless surveillance whereby their communications were intercepted on a wire in the United States in violation of the FISA.  Plaintiffs are attempting to draw a string of inferences from limited public facts to support a pre-determined conclusion.  The very exercise is inherently speculative and conjectural and, thus, fails to meet their burden of proof.  *See Lujan*, 504 U.S. at 560.  Plaintiffs speculate that because AHIF-Oregon was found to be associated with al Qaeda, individuals

associated with it must have been subject to surveillance under the TSP, which was directed at agents or affiliates of al Qaeda. Plaintiffs speculate that, because they had phone conversations with an officer of AHIF-Oregon located overseas (Mr. Al-Buthi) that made references to individuals associated with Usama bin-Laden, the Treasury Department's subsequent formal designation of AHIF-Oregon, which referred to "direct links" between AHIF-Oregon and bin-Laden, must have resulted from surveillance of those conversations. Plaintiffs add that OFAC and the FBI have stated that they relied on "classified" information in designating AHIF-Oregon, including "surveillance" information, and speculate that this must include surveillance evidence *of them*. Finally, citing Government statements that, under the TSP, the NSA was authorized to intercept certain one-end communications involving members of agents of al Qaeda, and public statements that the interception of certain international communications required a warrant under the FISA, plaintiffs infer further that any interception of them must have occurred off a wire in the United States under the TSP.

The flaws with plaintiffs' presentation should be apparent. The existence of the TSP and its focus on al Qaeda-related communications does not establish that *plaintiffs'* communications were subject to surveillance, nor, indeed, that any particular person or entity associated with al Qaeda was necessarily subject to surveillance, or that any surveillance of individuals who were associated with al Qaeda, or who spoke with people associated with al Qaeda, necessarily occurred under just one method or authority. Also, the fact that OFAC stated it relied on classified evidence to designate al-Haramain does not, in isolation or viewed with other information, establish that plaintiffs were subject to surveillance, let alone under the TSP. Likewise, the fact that the FBI referred to the use of surveillance evidence in its investigation of AHIF-Oregon does not establish that these plaintiffs had been subject to any such surveillance, let alone electronic surveillance, or electronic surveillance under the TSP. And the fact that OFAC's "formal" designation of AHIF-Oregon referred to direct links to Usama bin-Laden does not demonstrate that the source of this information must have been an interception of plaintiffs' conversations. What plaintiffs' string of conjecture amounts to is an argument that they *could* have been subject to surveillance under the TSP based on the focus of that program, their own

association with AHIF-Oregon and communications with AHIF-Oregon officials overseas, and their own inferences drawn from public statements that the designation of AHIF-Oregon was based in part on classified information and surveillance, and referred to direct-links to Usama bin-Laden. This simply does not constitute "independent evidence disclosing that plaintiffs have been surveilled." *See Al-Haramain*, 564 F. Supp. 2d at 1125. Standing cannot be "inferred argumentatively from averments in the pleadings," *FW/PBS, Inc.*, 493 U.S. at 231 (citing *Grace v. American Central Ins. Co.*, 109 U.S. 278, 284, (1883)), but rather "must affirmatively appear in the record." *Id*. (citations omitted). The facts cited by plaintiffs do not meet their burden of proof on summary judgment.

In addition, it bears separate emphasis that nothing plaintiffs cite would establish that any alleged surveillance of plaintiffs (if any) would necessarily have occurred on a wire in the United States in violation of the FISA. *See* FAC ¶ 52(a)-(c). The Government has many means of surveillance of al Qaeda-affiliated organizations and individuals at its disposal, including surveillance under authority of the FISA itself, surveillance information obtained from foreign or human sources, or surveillance undertaken overseas—that is, collected outside the United States and not on a wire in this country. Thus, even if the plaintiffs had been subject to surveillance (which itself is not established by the evidence cited), nothing separately establishes how such surveillance may have occurred. The mere fact that the TSP focused on certain one-end international communications involving al Qaeda, or that the Government officials have stated that certain communications intercepted in this country would require a warrant under the FISA, does not establish that, even if plaintiffs had been subject to surveillance, it necessarily occurred under the TSP.

In short, assuming the accuracy of plaintiffs' description of public information cited in the FAC, whether or not plaintiffs have been subject to the alleged surveillance is simply not established, and the actual facts would still have to be confirmed or denied by the Government but have been protected by its successful assertion of the state secrets privilege.

### 2. The Evidence Cited by Plaintiffs in the First Amended Complaint Does Not Establish Their Standing as Aggrieved Persons Under the FISA.

A closely related, but distinct, response must be made to the specific evidence cited by plaintiffs in the FAC: that information does not support the inferences that plaintiffs seek to draw from it to establish their standing.

First, plaintiffs' attempt to juxtapose conversations that allegedly occurred at a time between OFAC's initial blocking action against AHIF-Oregon pending investigation, and subsequent designation of AHIF-Oregon as a Specially Designated Global Terrorist, *see* FAC ¶¶ 30-46, is not only wholly speculative, but is undercut by the record on which plaintiffs seek to rely. In particular, the notion that the Government's reference to "direct links" between AHIF-Oregon and bin-Laden must have been based on the interception of plaintiffs' alleged conversations is not supported by the very information plaintiffs cite. The Treasury Department press release of February 19, 2004, which announced that a search warrant had been executed against AHIF-Oregon and that its assets had been blocked pending further investigation, illustrates longstanding ties between AHIF as a whole, al Qaeda, and Usama bin-Laden. The press release makes specific reference to the fact that in March 2002—long before plaintiffs' alleged conversations—several branches of AHIF worldwide (in Bosnia, Somalia, Indonesia, Tanzania, Kenya, and Pakistan) had long been designated as associated with terrorism, including pursuant to UN Security Council Resolution 1267. *See* Exhibit 9. That UN Resolution, in particular, linked these AHIF entities to al Qaeda, Usama bin-Laden, and the Taliban, and subjected these organizations to international sanctions. *See id.* Indeed, the September 2004 Treasury Department press release, which plaintiffs cite to support their claim that they were surveilled, itself refers to extensive documentation linking AHIF and al Qaeda going back as far as 1997, and including AHIF-Oregon's link to funds provided to Chechen leaders associated with al Qaeda, as well as links between other AHIF branches and al Qaeda terrorists responsible for the 1998 embassy bombings in Kenya and Tanzania. *See* Exhibit 12. Other public evidence plaintiffs cite states that AHIF-Oregon "was an active arm in this worldwide organization, and its operations, including its direct funding to AHIF in Saudi Arabia, enabled the global AHIF to

continue supporting terrorist activities." *See* Exhibit 14 (Feb. 6, 2008 Letter from OFAC to Plaintiffs' Counsel cited in ¶ 47 of the FAC). The full record of OFAC's designation of AHIF-Oregon includes a classified component, as OFAC's correspondence to plaintiffs indicates. *See*, *e.g.*, Exhibits 14, 19. But based on the publicly available information cited in the FAC on which plaintiffs rely to establish their standing, the notion that links between AHIF-Oregon and al Qaeda or bin-Laden must be based on an interception of plaintiffs' communications is simply unfounded.

Similarly, plaintiffs' assertion that reference by OFAC to reliance on classified information in the designation record, *see* FAC ¶¶ 28, 36, 37, 47, also must indicate that the plaintiffs were subject to surveillance—and surveillance under the TSP—is also wholly unsupported. OFAC's designation of AHIF-Oregon, before and after plaintiffs' alleged conversations, was based on a range of classified information concerning the various branches of AHIF-Saudi Arabia and numerous individuals associated with AHIF. *See* Exhibit 19 (Feb. 6, 2008 Memorandum for the Director of OFAC, referred to in ¶ 51 of the FAC). Thus, the notion that OFAC's reference to the classified record supporting its designation somehow establishes that the plaintiffs were subject to surveillance, or surveillance under the TSP, is again simply without any foundation.

Likewise, plaintiffs' reference to public statements by FBI officials about terrorist-financing investigations not only fails to establish that plaintiffs were subject to alleged warrantless surveillance, but undermines that contention. Plaintiffs cite a speech by FBI Deputy Director John S. Pistole on October 22, 2007, *see* Exhibit 13, for the proposition that "the FBI 'used . . . surveillance' in connection with defendant OFAC's 2004 investigation of plaintiff al-Haramain Oregon." FAC ¶ 42. Here is what Deputy Director Pistole said about Al-Haramain in the speech cited (beyond the four words quoted by plaintiffs with ellipses in between):

> Some of you may have heard of the Al Haramain Islamic Foundation. It was a charity based in Saudi Arabia, with branches all over the world. Its U.S. branch was established in Oregon in 1997 and in 1999, it registered as a 501(c)(3) charity.

> In 2000, the FBI discovered possible connections between Al Haramain and al Qaeda and began an investigation. We started where we often start—by following the money. And we uncovered criminal tax and money laundering violations.

Al Haramain claimed that money was intended to purchase a house of prayer in Missouri—but in reality, the money was sent to Chechnya to support al Qaeda fighters. In 2004, the Treasury Department announced the designation of the U.S. branch of Al Haramain, as well as two of its leaders, and several other branch offices. In 2005, a federal grand jury indicted Al Haramain and two of its officers on charges of conspiring to defraud the U.S. government.

We relied on BSA information and cooperation with financial institutions for both the predication and fulfillment of the investigation. Because of reporting requirements carried out by banks, we were able to pursue leads and find rock-solid evidence.

Yes, we used other investigative tools—like records checks, surveillance, and interviews of various subjects. But it was the financial evidence that provided justification for the initial designation and then the criminal charges.

Nothing in this passage remotely establishes that *plaintiffs* were subject to surveillance, let alone *electronic* surveillance, or electronic surveillance under the TSP. Notably, in its full context, the passage indicates that the link between AHIF-Oregon and al Qaeda was first discovered in 2000—before the TSP even began and well before plaintiffs' alleged conversations in March 2004. In addition, nothing indicates that the investigative tool of "surveillance" referred to by Deputy Director Pistole concerned either surveillance of AHIF-Oregon or even electronic surveillance or surveillance under the TSP. This reference obviously could refer to broader intelligence gathering activities directed at AHIF worldwide. Moreover, if there had been surveillance of AHIF-Oregon, this passage in no way indicates what kind of surveillance may have occurred—such as whether it occurred under the TSP, or was undertaken under the FISA, or outside the United States, or involved the collection of information from foreign sources or human sources. The mere statement that "surveillance . . . was used" in investigating the connections between al Qaeda and AHIF's world-wide activities establishes nothing as to who, where, when, and how any such surveillance was directed. That is why plaintiffs must add the wholly conjectural conclusion that any such surveillance must have been of them, and must have occurred under the TSP. But that is nowhere established by the evidence cited and would have to be confirmed or denied by the Government with information that has been protected in the Government's successful state secrets privilege assertion.[5]

---

[5] Likewise, plaintiffs' citation to a public memo indicating that the Government acknowledged surveillance of another individual—Ali al-Timimi—and that conversations were

In addition, plaintiffs attempt to draw a purported link between the classified evidence used in the AHIF designation and surveillance under the TSP, based on public testimony by the Government about legislative efforts to amend the Foreign Intelligence Surveillance Act, also fails. *See* FAC ¶¶ 48(a)-(d). The testimony plaintiffs cite (but again, do not provide) addresses broad issues concerning the modernization of the Foreign Intelligence Surveillance Act to enable the Government to intercept communications in the United States of targets located overseas. In the course of that debate, the Government indicated that the interception of certain communications emanating overseas would require a warrant under the FISA. *See* generally Exhibits 4, 15-17 (Testimony by the Director National Intelligence and Department of Justice cited by plaintiffs at ¶ 48(b)-(d) of the FAC). But, obviously, nothing in this testimony establishes that the communications of the plaintiffs were intercepted, or were intercepted on a wire in the United States without a warrant in violation of the FISA.[6] Again, plaintiffs are simply drawing their own speculative inference from general testimony about how the FISA operates in certain circumstances to support their predetermined conclusion.

Finally, plaintiffs' reference to a statement made by Government counsel during a court proceeding in *American Civil Liberties Union v. National Security Agency*, 493 F. 3d 644 (6th Cir. 2007) to the effect that "attorneys who represent terrorist clients . . . come closer to being in the ballpark of the terrorist surveillance program," *see* FAC ¶ 49, is taken out of context and ultimately negates their claim to standing. The full context of that quoted excerpt is attached at Exhibit 18. Government counsel made the point that, in the *ACLU* case, there were two broad

intercepted between Mr. Al-Timimi and Mr. al-Buthi, *see* FAC ¶ 51, does not establish plaintiffs' standing in this case. That Mr. Al-Timimi was the target of interception and was overheard speaking with Mr. Al-Buthi, a Saudi national, does not indicate that any of the named plaintiffs in this case were the target of or subject to surveillance, or where or how any such surveillance had occurred, including whether or not it was warrantless surveillance off of a wire in the United States or authorized under the FISA. In fact, plaintiffs' citation to this example illustrates that surveillance evidence related to AHIF may *not* have come from surveillance of the plaintiffs.

[6] Likewise, nothing in the public testimony concerning a dispute in Executive Branch deliberations in March 2004, *see* FAC ¶¶ 19, 20, in any way indicates that the plaintiffs were subject to warrantless surveillance or, indeed, what that matter was specifically about. *See also* Exhibits 1-2 (excerpts of the testimony cited in ¶¶ 19, 20 of the FAC).

categories of plaintiffs: (i) individuals who claimed to be subject to the TSP merely because they spoke with people overseas; and (ii) other plaintiffs in that case who were lawyers representing al Qaeda suspects. The first group obviously could not even credibly allege they might be subject to the TSP, which was directed at al Qaeda communications. *See id*. at pp. 37-39. The "closer to the ballpark" comment referred specifically to the second group of plaintiffs in the *ACLU* case who alleged that they *did* speak to al Qaeda suspects. *See id*. at pp. 46-47. But as to this category of plaintiffs, as the actual transcript indicates, the Government argued that standing was lacking because even individuals who might be more likely subject to surveillance do not thereby establish their standing. *See id*. at pp. 47-48 (citing, *inter alia*, *United Presbyterian Church v Reagan*, 738 F.2d 1375 (D.C. Cir. 1984)).

More importantly, the Court of Appeals for the Sixth Circuit *agreed* with the Government's position in that case and held that plaintiffs who merely allege their conversations with individuals associated with al Qaeda may have been subject to surveillance under the TSP did *not* establish their standing to sue. *See ACLU*, 493 F.3d at 691 (Gibbons, J. concurring) ("There is no relevant factual difference between the *United Presbyterian Church* plaintiffs, whose activities the D.C. Circuit conceded made them more likely to be subject to surveillance, *id.*, and the attorney-plaintiffs in this case, whose representations of 'exactly the types of clients' targeted by the TSP make them more likely to be targeted by the TSP."); and *id*. ("As this case was decided on the government's motion for summary judgment, the plaintiffs must set forth by affidavit or other evidence specific facts," but "plaintiffs have failed to meet this burden because there is no evidence in the record that any of the plaintiffs are personally subject to the TSP.") (citations and internal quotation marks omitted). And, like the Ninth Circuit in this case, the Sixth Circuit held that the actual facts concerning such surveillance are properly protected by the state secrets privilege. *See id*. at 660 (Batcheholder, J.) (information covered by the state secrets privilege was needed for the *ACLU* plaintiffs to establish standing).

At bottom, plaintiffs rely on their own speculative inferences drawn from public information that does not establish their standing: speculation about whether they were surveilled at all and, if so, speculation concerning whether it occurred through electronic surveillance under

the TSP, and speculation about whether their conversations formed the basis of public statements by OFAC and the FBI in the designation of AHIF-Oregon. But such speculation and conjecture establishes nothing. The Government is not required to confirm of deny whether any such surveillance has in fact occurred even either Section 1806(f) of the FISA, *see ACLU Found. v. Barr*, 952 F.2d 457, 469 (D.C. Cir. 1991), or the state secrets privilege, *see Al-Haramain*, 507 F.3d at 1202-04, and the information cited by plaintiffs is simply not "independent evidence disclosing that plaintiffs have been surveilled." *See Al-Haramain*, 564 F. Supp. 2d at 1125.[7]

## II. THE LAW DOES NOT SUPPORT THIS ATTEMPT TO ADJUDICATE MATTERS SUBJECT TO THE STATE SECRETS PRIVILEGE WITH "PUBLIC" EVIDENCE.

Beyond the insufficiency of the evidence plaintiffs present, an even more fundamental point must be emphasized: the law does not support an attempt to adjudicate whether the plaintiffs are "aggrieved persons" under the FISA in the face of the Government's successful state secrets privilege assertion. That privilege assertion reflects a judgment by Executive Branch officials with responsibility under the law to protect intelligence sources and methods that national security would be harmed if a particular matter is litigated—in this case, whether the plaintiffs have been subject to the alleged surveillance—and further proceedings on that issue will continue to risk such harm, even if based on public information and even if every effort is made to protect the actual underlying facts subject to the Government's successful privilege assertion.

---

[7] The Government has previously provided the Court, for *in camera*, *ex parte* review, classified information in support of the state secrets privilege which sets forth the actual facts regarding whether or not plaintiffs have been subject to surveillance. *See* Defendants' Notice of Lodging of *In Camera*, *Ex Parte* Submission in *Al-Haramain et al. v. Bush et al.* (Dkt. 18) (07-cv-109-VRW) (submitting for the Court's *in camera*, *ex parte* review a Classified Supplemental Memorandum in Support of Defendants' Second Motion To Dismiss Or For Summary Judgment and the classified Declarations of the Director of National Intelligence and the Director of the National Security Agency in support of the state secrets and statutory privilege assertions previously submitted in this case with Defendants' [First] Motion to Dismiss or for Summary Judgment). But as both this Court and the Ninth Circuit have held, the Court's conclusions on standing cannot be based on the classified sealed document, *see Al-Haramain*, 507 F.3d at 1204; *Al-Haramain*, 564 F. Supp. 2d at 1134. Accordingly, the Government does not presently rely on classified information to address the evidentiary basis of plaintiffs' standing, and the public evidence on which plaintiffs rely plainly does not support their standing.

The Court cannot exercise jurisdiction based on anything less than the actual facts, and if the actual facts at issue in the Government's privilege assertion are that *none* of the plaintiffs were aggrieved, plaintiffs' claims could not proceed under Section 1806(f) regardless of whatever conclusions may be drawn from "public" evidence.  And, if the actual facts were that *one* of the plaintiffs was "aggrieved" but not the others, the case still could not proceed as to any plaintiff that may have standing, since attempting to make any such distinction would reveal precisely the kind of information concerning intelligence sources and methods at issue in the Government's state secrets privilege assertion (*i.e.*, who may or may not have been subject to surveillance, when, and how).  Also, if the Court found that *all* the plaintiffs were aggrieved based purportedly on public evidence, that too would tend to reveal the very privilege information at stake because, again, the Court could not proceed unless jurisdiction was in fact established.  Thus, the mere fact that standing might be found, and the case might proceed, could tend to reveal privileged information.

The Court has already held that statutory law that, in some circumstances, requires the Government to confirm or deny alleged surveillance does *not* apply to FISA Section 1806(f).  Specifically, under 18 U.S.C. § 3504, a party against whom evidence is being used in certain proceedings may attempt to adduce enough evidence to require the Government to confirm or deny alleged surveillance.[8/]  Although inapplicable here, Section 3504 demonstrates that the Government holds the dispositive evidence on this question, and among the matters that would have to be confirmed or denied to establish whether plaintiffs are "aggrieved" under the FISA in

---

[8]  The Ninth Circuit has made clear that this provision only applies where the Government seeks to use evidence against a witness that is alleged to derive from unlawful surveillance.  *See, e.g.*, *In re Grand Jury Investigation (Doe)*, 437 F.3d 855, 858 (9th Cir. 2006) ("A grand jury witness may refuse to answer questions based on illegal interception of his communication."); *see also In re Grand Jury Witness (Whitnack)*, 544 F.2d 1245, 1247 (9th Cir. 1976) (Kennedy, C.J., concurring) (Government has no duty to affirm or deny surveillance under Section 3504(a) where grand inquiry is based on independent evidence).  Even in this limited context, "because responding to ill-founded claims of electronic surveillance would place an awesome burden on the government," such claims must be "sufficiently concrete and specific before the government's affirmance or denial" is required.  *United States v. Tobias*, 836 F.2d 449, 452-53 (9th Cir. 1988) (citing *United States v. Alter*, 482 F.2d 1016, 1027 (9th Cir. 1973)).

this case includes not only whether or not some or all of the plaintiffs were the target of or subject to surveillance, but whether or not they were subject to a particular kind of surveillance (electronic surveillance as defined by FISA or some other type of surveillance, where any such surveillance occurred (overseas or on a wire in the United States), and under what legal authority (the TSP, the FISA, or some other authority). This is precisely the kind of information protected by the Government's successful privilege assertion, and Section 1806(f) of the FISA does not contain any provision comparable to Section 3504 that could, in some circumstances, require its disclosure.[9]

Indeed, the only circuit court decisions that appear to have dealt with the interplay between Section 3504 of Title 18 and Section 1806(f) of the FISA indicate that confirmation of surveillance by the Government is *not* required by the FISA. In *United States v. Hamide*, 914 F.2d 1147, 1148-50 (9th Cir. 1990), Section 1806(f) proceedings were invoked by the United States where surveillance was acknowledged in a civil deportation proceeding. But in a related case involving individuals from the same deportation proceeding as to whom the Government had not acknowledged surveillance, the D.C. Circuit held that the Government was not required by the FISA to make such a disclosure. *See ACLU Found. v. Barr*, 952 F.2d at 469 ("if the government is forced to admit or deny such allegations, in an answer to the complaint or otherwise, it will have disclosed sensitive information that may compromise critical foreign intelligence activities.").[10]

---

[9]    On the contrary, Congress gave the Government a choice under Section 1806(f) to either disclose *or* forgo the use of the surveillance-based evidence and protect sensitive intelligence sources and methods. *See* Defs. 2d MSJ Mem. at 20-21 (citing S. Rep. No. 95-701 at 65, 1978 U.S.C.C.A.N. 4027 (1978) (Report of the Select Committee on Intelligence)); *see also In re Sealed Case*, 310 F.3d 717, 741 (For. Intel. Surv. Rev. 2002) (where the Government does not intend to use surveillance evidence,"the need to preserve secrecy for sensitive counterintelligence sources and methods justifies elimination of the notice requirement.").

[10]    Other courts have held that he Government is not required under the FISA to confirm alleged surveillance. *See In re Grand Jury Investigation*, 431 F. Supp. 2d 584 (E.D. Va. 2006) (notice not required under FISA Section 1806(c) of whether grand jury witnesses had been subject to the Terrorist Surveillance Program); *In re Grand Jury Proceedings*, 856 F.2d 685, 688 (4th Cir. 1988) (grand jury witness not entitled to notice of alleged FISA surveillance).

The foregoing demonstrates that Section 1806(f) is not intended to permit a party to adjudicate whether they are "aggrieved persons" under the FISA where the very existence of surveillance has not been confirmed or denied, nor to require the Government to proceed in a manner that risks the disclosure of such information. The Executive's judgment as to the serious harm to national security at stake in this case have been recognized and upheld by the Ninth Circuit. *See Al-Haramain*, 507 F.3d at 1205 (disclosure of sources and methods of intelligence gather in the context of this case "would undermine the government's intelligence capabilities and compromise national security."). Courts are "not required to play with fire and chance further disclosure—inadvertent, mistaken, or even intentional—that would defeat the very purpose for which the privilege exists." *Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005), *cert. denied*, 546 U.S. 1093 (2006); *see also Doe v. Tenet*, 544 U.S. 1, 11 (2005) (rejecting "in camera proceedings" proposed by the Ninth Circuit to adjudicate claims because of the risk of jeopardizing state secrets).

These concerns can and should be avoided in this case since public evidence advanced by the plaintiffs plainly does not—and could not—establish their standing. And if the Court were inclined to consider finding that public evidence somehow supports plaintiffs' alleged aggrieved status under the FISA, it should not do so given the underlying national security considerations that already have been upheld in this case, which would be put inherently at risk with any such finding.

**III. THE PRIOR GROUNDS FOR DISMISSAL SET FORTH BY THE GOVERNMENT UNDERSCORE THAT THERE IS NO JURISDICTION OR BASIS IN LAW TO FIND THAT FIND THAT PLAINTIFFS ARE AGGRIEVED UNDER THE FISA.**

Finally, the Government Defendants have previously sought dismissal and summary judgment in this action based on several grounds set forth in prior motions, all of which would apply to plaintiffs' First Amended Complaint. Because the amended complaint "supersedes the original, the latter being treated thereafter as non-existent," *Loux v. Rhay*, 375 F.2d 55 (9th Cir. 1967), the Government Defendants expressly preserve and incorporate all grounds for dismissal and summary judgment set forth in their prior motions, and briefly summarize those grounds.

(1) *State Secrets Privilege and FISA Preemption:*  First, the Government's state secrets privilege assertion,[11/] upheld by the Ninth Circuit, requires dismissal of all claims in this case unless the FISA preempts that privilege.  *See Al-Haramain*, 507 F.3d at 1201-06.  Defendants reserve their position that the FISA does not preempt that privilege.[12/]  Further proceedings under Section 1806(f) in the face of the Government's state secrets privilege assertion—which would otherwise now require complete dismissal of this case—are contrary to law and would be especially erroneous to the extent they may risk or result in the inadvertent disclosure or confirmation of information properly protected by the privilege assertion, as Defendants submit they inherently would.  *See* Defs. 2d MSJ Reply at 24.

(2) *Prospective Relief and Sovereign Immunity*: The Court also lacks jurisdiction to even reach the application of Section 1806(f) of the FISA, including whether the plaintiffs are "aggrieved" under the FISA.  Plaintiffs' claim for prospective relief challenges alleged surveillance under a program that has lapsed, and under *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983), there is no basis for standing to obtain prospective relief, and thus no jurisdiction for the Court to enter any such relief.[13/]  The Court's July 2 decision concluded that if plaintiffs can show they are "aggrieved as [FISA] section 1810" contemplates, then plaintiffs have adequately demonstrated injury for purposes of establishing Article III standing."  *See Al-Haramain*, 564 F. Supp. 2d at 1124.  But the Court did not address the *Lyons* doctrine at all and what remedy would be available to the plaintiffs, regardless of whether they are "aggrieved persons" under the FISA.  Section 1810 of the FISA concerns retrospective damages, which

---

[11]  *See* Memorandum of Points and Authorities in Support of Defendants' [First] Motion to Dismiss or for Summary Judgment (*see* Dkt. 59, Case No. 06-274-KI (D. Or. June 21, 2006) and Declaration of John D. Negroponte, Director of National Intelligence, ¶ 11(iii), (iv) (Dkt. No. 59, Item #1) (Civ. 06-274-KI) (D. Or).

[12]  *See* Memorandum of Points and Authorities in Support of Defendants' Second Motion to Dismiss or for Summary Judgment (*see* Dkt. 17, Case No. 07-109-VRW (N.D. Cal. Mar. 14, 2008)) ("Defs. 2d MSJ Mem.") at 12-24; *see also* Defendants' Reply in Support of Defendants' Second Motion to Dismiss or for Summary Judgment (*see* Dkt. 29, Case No. 07-109-VRW (N.D. Cal. Apr. 14, 2008)) ("Defs. 2d MSJ Reply") at 8-24.

[13]  Defs. 2d MSJ Mem. at 6-8; Defs. 2d MSJ Reply at 3-4.

would not address or satisfy standing requirements set forth in *Lyons* for obtaining prospective relief as to alleged conduct that is no longer occurring. *See* Defs. 2d MSJ Reply at 3-4.

As for retrospective damages, Defendants reserve our position that Section 1810 of the FISA does not waive the sovereign immunity of the United States. Congress expressly waived sovereign immunity of the United States in several provisions of the FISA that authorize damages against the Government, but not in Section 1810.[14] While the Court ruled that such a waiver is "implicit" in Section 1810, *see Al-Haramain*, 564 F. Supp. 2d at 1125, the law requires that such waivers be explicit. *See* Defs. 2d MSJ Reply at 4 (citing *Multi Denominational Ministry of Cannabis v. Gonzales*, 474 F. Supp. 2d 1133, 1140 (N.D. Cal. 2007)). At most, the text of Section 1810 is ambiguous on the matter (as finding an "implicit" waiver would indicate), and hence no waiver of sovereign immunity can be found under the law. *See* Defs. 2d MSJ Reply at 4 (citing *United States v. Nordic Village*, 530 U.S. 30, 34-37 (1992)).

The foregoing grounds for dismissal or summary judgment for the Government provide important context for considering the arguments set forth above that the plaintiffs have not established that they are "aggrieved persons" under the FISA and likewise underscore the lack of any jurisdictional basis on which this case may proceed.[15]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the plaintiffs' First Amended Complaint or, in the alternative, grant summary judgment for the Government Defendants.

---

[14] Defs. 2d MSJ Mem. at 8-12; Defs. 2d MSJ Reply at 4-8.

[15] If the Court were inclined to proceed under FISA Section 1806(f), the parties should address first whether it would be appropriate for the Court to certify the case for appellate review that would address several jurisdictional questions, including whether the FISA preempts the Government's successful state secrets privilege assertion; whether FISA Section 1806(f) permits a party to prove their aggrieved status with public evidence in the face of a state secrets privilege assertion; whether there is even a continued jurisdictional basis for plaintiffs' demand for prospective relief as to a lapsed program; and whether sovereign immunity has been waived for plaintiffs' damages claim.

Dated: September 30, 2008                    Respectfully Submitted,

                                             GREGORY G. KATSAS
                                             Assistant Attorney General, Civil Division

                                             CARL J. NICHOLS
                                             Principal Deputy Associate Attorney General

                                             JOHN C. O'QUINN
                                             Deputy Assistant Attorney General

                                             DOUGLAS N. LETTER
                                             Terrorism Litigation Counsel

                                             JOSEPH H. HUNT
                                             Director, Federal Programs Branch

                                             _s/ Anthony J. Coppolino_
                                             ANTHONY J. COPPOLINO
                                             Special Litigation Counsel

                                             _s/ Alexander K. Haas_
                                             ALEXANDER K. HAAS (SBN 220932)
                                             Trial Attorney

                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Avenue, NW, Rm. 6102
                                             Washington, D.C. 20001
                                             Phone: (202) 514-4782—Fax: (202) 616-8460
                                             Email: tony.coppolino@usdoj.gov

                                             *Attorneys for the Government Defendants*