| | |
|---|---|
| CINDY COHN | HARVEY GROSSMAN |
| LEE TIEN | ADAM SCHWARTZ |
| KURT OPSAHL | ROGER BALDWIN FOUNDATION OF ACLU |
| KEVIN S. BANKSTON | 180 North Michigan Avenue |
| CORYNNE MCSHERRY | Suite 2300 |
| JAMES S. TYRE | Chicago, IL 60601 |
| ELECTRONIC FRONTIER FOUNDATION | Telephone: (312) 201-9740 |
| 454 Shotwell Street | Facsimile: (312) 201-9760 |
| San Francisco, CA 94110 | |
| Telephone: (415) 436-9333 | Counsel For AT&T Class Plaintiffs And |
| Facsimile: (415) 436-9993 | Co-Lead Coordinating Counsel |

Counsel For AT&T Class Plaintiffs And
Co-Lead Coordinating Counsel

ARAM ANTARAMIAN
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
RICHARD R. WIEBE
Berkeley, CA 94703
LAW OFFICE OF RICHARD R. WIEBE
Telephone: (510) 841-2369
425 California Street, Suite 2025
San Francisco, CA 94104
Counsel For AT&T Class Plaintiffs
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
[Additional Counsel On Signature Page]

Counsel for AT&T Class Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION, MDL No. 1791 <br><br> This Document Relates To: All Cases Except: *Al-Haramain Islamic Foundation, Inc. v. Bush*, No. 07-0109; *Center for Constitutional Rights v. Bush*, No. 07-1115; *Guzzi v. Bush*, No. 06-06225; *Shubert v. Bush*, No. 07-0693; *Clayton v. AT&T Commc'ns of the Southwest*, No. 07-1187; *U. S. v. Adams*, No. 07-1323; *U. S. v. Clayton*, No. 07-1242; *U. S. v. Palermino*, No. 07-1326; *U. S. v. Rabner*, No. 07-1324; *U. S. v. Volz*, No. 07-1396 | MDL Docket No. 06-1791 VRW <br><br> **PLAINTIFFS' EVIDENTIARY OBJECTIONS TO CERTIFICATIONS (PUBLIC AND *EX PARTE IN CAMERA*) BY THE ATTORNEY GENERAL OF THE UNITED STATES; and to MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** <br><br> Date: December 2, 2008 <br> Time: 10:00 a.m. <br> Courtroom: 6, 17th Floor <br> Judge: The Hon. Vaughn R. Walker |

No. M-06-01791-VRW    PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
               CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

Dockets.Justia.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

    I.   The Government Must Make Its Case With Admissible Evidence. ..................................... 2

    II.  The SSCI Report is Inadmissible. ....................................................................................... 5

        A.   The SSCI Report is Hearsay. ..................................................................................... 5

        B.   Even if Initially Admissible, the SSCI Report is Based on Inadmissible Multiple Hearsay. ...................................................................................................................... 11

    III.  The Classified Declarations of the DNI and the Director of the NSA are Inadmissible. ... 12

    IV.  The Public and Classified Certifications of the Attorney General are Inadmissible. .......... 12

    V.   Even If The Government's Evidence Is Otherwise Admissible, It Should Be Excluded Under FRE 403. ................................................................................................................. 13

CONCLUSION ............................................................................................................................. 14

i

No. M-06-01791-VRW    PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of New York*, 657 F. Supp. 1571 (S.D.N.Y. 1987) .................................................. 8

*Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196 (11th Cir. 1986) ..................................... 7, 8

*Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers and Employees of Outside Loc. Unions and Dist. Counsel (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91 (D.D.C. 2006) ............. 9, 11

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) ........................................................................ 6

*Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665 (9th Cir. 1980) .................................. 4, 12

*Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19 (6th Cir.1984) (*per curiam*) ................... 6, 7, 8

*Denny v. Hutchinson Sales Corp.*, 649 F.2d 816 (10th Cir. 1981) ..................................................... 10

*Ellis v. International Playtex, Inc.*, 745 F.2d 292 (4th Cir. 1984) ..................................................... 12

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003) ............................................................................. 4

*Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299 (11th Cir. 1989) .......................................... 6, 12

*Hobson v. Wilson*, 556 F.Supp. 1157 (D.D.C.1982) ........................................................................ 7

*Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980) ........................... 4

*Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848 (9th Cir. 1977) .............................. 4, 12

*McCarthy v. Apfel*, 221 F.3d 1119 (9th Cir. 2000) ........................................................................ 3, 4

*Miranda-Ortiz v. Deming*, 1998 U.S. Dist. LEXIS 3260 (S.D.N.Y. 1998) ....................................... 6

*Pal v. INS*, 204 F.3d 935 (9th Cir. 2000) ............................................................................................ 4

*Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810 (D.D.C. 1987) ...................................... 6, 7, 11

*Richardson v. Perales,* 402 U.S. 389 (1971) ................................................................................. 2, 3

*Richmond Medical Ctr for Women v. Hicks*, 301 F. Supp. 2d 499 (E.D.Va. 2004) .......................... 9

*United States v. American Tel. & Tel. Co.*, 498 F. Supp. 353 (D.D.C. 1980) .................................. 6

*United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970) ............................................................... 4, 12

**Statutes**

42 U.S.C. § 405(b) ............................................................................................................................ 3

50 U.S.C. § 1885a(b)(1) ............................................................................................................ 1, 2, 14

ii

No. M-06-01791-VRW  PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

50 U.S.C. § 1885a(b)(2) .......................................................................................................... 2, 12

50 U.S.C. § 1885a(c) ................................................................................................................... 2

**Rules**

Federal Rules of Civil Procedure 12(d) ....................................................................................... 4

Federal Rules of Civil Procedure 26(a)(2)(B) ........................................................................... 13

Federal Rules of Civil Procedure 56(e)(1) ................................................................................... 4

Federal Rules of Civil Procedure 56(f) ...................................................................................... 13

Federal Rules of Evidence 403 ............................................................................................ 13, 14

Federal Rules of Evidence 703 ................................................................................................... 13

Federal Rules of Evidence 801(c) ................................................................................................ 2

Federal Rules of Evidence 801(d)(1) ........................................................................................... 2

Federal Rules of Evidence 801(d)(2) ........................................................................................... 2

Federal Rules of Evidence 802 .................................................................................................... 2

Federal Rules of Evidence 803(8)(C) ...................................................................................passim

Federal Rules of Evidence 805 .................................................................................................. 11

Federal Rules of Evidence 1101(b) .............................................................................................. 2

**Treatises**

29 C. Wright & V. Gold, *Federal Practice and Procedure*, § 6294 (1997) .................................. 13

**Legislative Materials**

Pub. L. 110-261, 122 Stat. 2467, Title II, § 201 (July 10, 2008) ........................................1, 2, 12

**Legislative History**

S. Rep. 110-209 (2007), accompanying S. 2248, Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, Senate Select Committee on Intelligence ..................................passim

iii

No. M-06-01791-VRW    PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

# INTRODUCTION

The Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008, Pub. L. 110-261, 122 Stat. 2467, Title II, § 201 (July 10, 2008) ("the Act") sets forth, among other things, the procedures that the Attorney General must follow to attempt to have these actions dismissed. Section 802(b)(1) of the Foreign Intelligence Surveillance Act ("FISA") as amended by the Act (50 U.S.C. § 1885a(b)(1)) specifically requires the Government to meet its burden with "substantial evidence." But inadmissible evidence is no evidence at all. Nothing in the Act changes the meaning of "evidence" in particular, or the Federal Rules of Evidence ("FRE") or Federal Rules of Civil Procedure ("FRCP") in general. These evidentiary objections will argue that so-called evidence relied on in the Public Certification of the Attorney General of the United States (MDL Dkt. No. 469-3, hereinafter simply the "Public Certification"), and, by logical inference, in his *ex parte in camera* certification as well, are inadmissible hearsay and/or otherwise inadmissible evidence. These objections also pertain to so-called evidence relied on by the Government in its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (MDL Dkt. No. 469, hereinafter simply the "Government Motion"). Because the Government, just like any other litigant, must make its case with admissible evidence, the Government cannot prevail.[1]

In short, our arguments are:

1. The SSCI Report on which the Government relies is inadmissible, both because the report itself is hearsay not subject to any hearsay exception and because the report contains significant hearsay that runs afoul of the hearsay on hearsay rule;

2. The classified declarations of the Director of National Intelligence and the Director of the NSA are inadmissible; and

3. The public and classified certifications of the Attorney General are inadmissible.

---

[1] Plaintiffs' main opposition memorandum will demonstrate that the Government cannot prevail even if all of these evidentiary objections are overruled.

1

No. M-06-01791-VRW  PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

**ARGUMENT**

**I. The Government Must Make Its Case With Admissible Evidence.**

Hearsay is " … a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE 801(c). "Hearsay is not admissible except as provided by [FRE 803-807 hearsay exceptions] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." FRE 802.[2]

50 U.S.C. § 1885a(b)(1) provides that the Government must make its case with "substantial evidence."[3] FRE 1101(b) provides that the Federal Rules of Evidence govern these actions, including the government's motion. Even assuming that Congress could relax evidentiary standards in these actions without running afoul of the separation of powers and due process principles set forth in plaintiffs' main opposition memorandum, there is nothing to indicate that it tried to do so in the Act. The Act does not define either "evidence" or "substantial evidence." Therefore, those terms must be given their normal meaning in accordance with the rules and applicable case law, including rules pertaining to hearsay.

Indeed, Congress' use of the words "substantial evidence" in section 1885a(b)(1) contrasts sharply with its use of the words "supplemental materials" in the next subsection, 1885a(b)(2). "Supplemental materials" are materials which the court "may examine" and the Attorney General may submit them *in camera* and *ex parte*. 50 U.S.C. §§ 1885a(b)(2) and (c). However, those materials are "supplemental" only; they do not qualify as "evidence" unless they are admissible. Only that which is evidence can serve to carry the Government's burden of demonstrating that substantial evidence supports the Attorney General's certification.

Further, even if Congress had the power to lower the evidentiary standards applicable to these actions and had in fact lowered those standards, which it did not, hearsay or other inadmissible evidence can be admitted against the Plaintiffs only if Plaintiffs have cross-examined the hearsay declarants or have waived their right to do so. In *Richardson v.*

---

[2] There are also two categories of non-hearsay, neither applicable here: (1) a prior statement by a witness (FRE 801(d)(1)); and (2) an admission by a party opponent. FRE 801(d)(2).

[3] "A certification under subsection (a) shall be given effect unless the court finds that such certification is not supported by substantial evidence provided to the court pursuant to this section."

2

No. M-06-01791-VRW PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

*Perales,* 402 U.S. 389 (1971), cited in the Government Motion at 15:3-4, the Supreme Court described what does or does not comprise substantial evidence in the context of a disability benefits administrative hearing under the Social Security Act. The evidentiary issue was the admissibility of unsworn medical reports pertaining to the claimant's condition.

The Court pointed out that Congress had eased the evidentiary requirements applicable to right-to-benefits administrative hearings.

> Section 205(b) [42 U.S.C. § 405(b)] directs the Secretary to make findings and decisions; on request to give reasonable notice and opportunity for a hearing; and in the course of any hearing to receive evidence. It then provides:
>
> 'Evidence may be received at any hearing before the Secretary *even though inadmissible under rules of evidence applicable to court procedure.*'

*Id.* at 400 (emphasis added). However, even with the relaxed evidentiary standards, hearsay evidence would be admissible only if the party against whom it is offered either has cross-examined the hearsay declarant or has waived the right to do so:

> We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.

*Id.* at 402.

*McCarthy v. Apfel*, 221 F.3d 1119 (9th Cir. 2000), cited in the Government Motion at 15:1-3, is in accord. There, the issue was whether McCarthy had been overpaid Social Security benefits. The rules of evidence in such proceedings also are governed by 42 U.S.C. § 405(b) (*id.* at 1125 n.8), and the Commissioner of the Social Security Administration ("SSA") bears the burden of proving both the fact and the amount of the alleged overpayment. *Id.* at 1124-25. McCarthy undercut most of his case by his own admissions, but with respect to a specific alleged

overpayment of $10,207.00, the only evidence offered by the Commissioner was an initial determination letter by the SSA.  At 221 F.3d 1126, the Court held:

> When a claimant challenges the SSA's initial determination of the amount that he was overpaid, the Commissioner must present reliable evidence of the particular overpayments.  The Commissioner's unsubstantiated belief that particular payments were made is not enough.  The letter, standing alone, does not constitute substantial evidence of the amount of the overpayments.  The district court erred in relying exclusively on this letter in rejecting McCarthy's challenge to the amount of overpayments.[4]

Moreover, the Government's motion is properly one for summary judgment since it relies on "matters outside the pleadings."  FRCP 12(d).  The fact that this matter comes before the Court on the Government's summary judgment motion instead of at trial actually serves to increase the burden the Government must meet.  FRCP 56(e)(1) provides in part that affidavits in support of a summary judgment motion must be based on admissible evidence, and must show that the affiant is competent to testify to the matters stated therein.[5]  Hearsay in affidavits, declarations (or here, the Certification by the Attorney General) is inadmissible and should not be considered.  *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980); *Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848, 859 (9th Cir. 1977).  "Testimony presented by affidavit is different from testimony orally delivered, because the affiant is not subject to cross-examination.  But that fact leads to greater, not lesser, strictures imposed on the testimony presented by affidavit."  *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970); *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n.9 (9th Cir. 1980).

---

[4] The Government also cites to *Pal v. INS*, 204 F.3d 935 (9th Cir. 2000).  An Immigration Judge had denied the Pals' asylum application on the basis that their testimony was incredible.  The Board of Immigration Appeals affirmed, both on credibility grounds and because a State Department report rebutted Mrs. Pal's fear of future persecution.  *Id*. at 937.  The Ninth Circuit affirmed, but only on the basis of credibility, not on the State Department report.  *Id*. at 939.

[5] Note that, because a party opposing summary judgment does not seek a final judgment in its favor, but merely the right to proceed to trial, the evidentiary standards are properly asymmetric.  While the party seeking summary judgment must submit admissible evidence and thus may not rely on hearsay, the party opposing summary judgment need only present evidence which could be presented in an admissible form at trial, and thus may rely on hearsay.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

**II.     The SSCI Report is Inadmissible.**

   **A.     The SSCI Report is Hearsay.**

The Government relies extensively on the SSCI Report (S. Rep. 110-209 (2007), accompanying S. 2248, Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, Senate Select Committee on Intelligence, Exhibit 1 [MDL Dkt. No. 469-2] to the Government Motion) to prove the truth of the matters stated therein. For example, the Government argues that:

> …[T]he Senate Select Committee on Intelligence ("SSCI") concluded that "electronic surveillance for law enforcement and intelligence purposes depends in great part on the cooperation of the private companies that operate the Nation's telecommunication system," […] and that, if litigation is allowed to proceed against telecommunication companies alleged to have assisted in such activities, "the private sector might be unwilling to cooperate with lawful Government requests in the future," and the "possible reduction in intelligence that might result from this delay is simply unacceptable for the safety of our Nation." *Id*. at 10 (emphasis added). Accordingly, the special procedures established under the Act for obtaining review and, where the Act is satisfied, prompt dismissal of such litigation, is vital to the public interest.

Government Motion at 1:22-2:6. The Government continues that:

> The SSCI found that the "details of the President's program are highly classified" and that, as with other intelligence matters, the identities of persons or entities who provide assistance to the U.S. Government are protected as vital sources and methods of intelligence." *See* S. Rep. 110-209 at 9. Notably, the SSCI expressly stated that "[i]t would be inappropriate to disclose the names of the electronic communication service providers from which assistance was sought, the activities in which the Government was engaged or in which providers assisted, or the details regarding any such assistance." *Id*.; *see also id*. ("identities of persons or entities who provide assistance to the intelligence community are properly protected as sources and methods of intelligence"). Thus, Section 802(a) is designed to protect information that is also subject to the Government's privilege assertions in this proceeding, but authorizes judicial review to determine, through special ex parte, in camera proceedings, under a deferential standard of review, if particular facts and circumstances exist with respect to alleged assistance by the provider-defendants that would warrant dismissal under the Act.

Government Motion at 11:25-12:11.[6] As such, the SSCI Report is inadmissible unless subject to a hearsay exception. The only exception that might apply is the public records and report exception

---

[6] Plaintiffs use the two quoted passages only as examples. Plaintiffs object to each and all of the following portions of the Government Motion on the same grounds: 1:22-2:6; 9:n.6; 9:11-12:15.

5

No. M-06-01791-VRW         PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
                           CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

of FRE 803(8)(C).[7]  However, the SSCI Report cannot satisfy the requirements of that exception.

In *Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810 (D.D.C. 1987), the court considered carefully the admission of, among other things, a draft report of the Subcommittee on Crime of the House Judiciary Committee and a statement by the Chairman of the Subcommittee. *Id*. at 812.  The court found the Report did not satisfy the requirements of the hearsay exception for three reasons, two of which apply here.

First, to be admissible under the exception, a report must consist of factual findings.  FRE 803(8)(C) ; *Pearce*, 653 F. Supp. at 813; *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22 (6th Cir.1984) (*per curiam*).  The Report in *Pearce* contained no factual findings, 653 F. Supp. at 813, while the SSCI Report contains a broad amalgam of purported factual findings, legal conclusions, opinions and forward-looking statements that the Government makes no attempt to segregate.[8]

Second, *Pearce* found that the factual findings must be made by a Government agency whose findings are deemed trustworthy.  In that regard, *Pearce* has a great deal of discussion of *United States v. American Tel. & Tel. Co.*, 498 F. Supp. 353 (D.D.C. 1980)  (hereinafter simply "*AT&T*").  In *AT&T*, after a thorough review of a number of FCC and State regulatory commission dockets that the United States wanted to admit against AT&T, the Court found that, for the most part, the dockets would be admissible.  Quoting *AT&T*, *Pearce* stated:

---

[7] "(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth […] (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

[8] In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), the Court held that opinions and conclusions stated in an investigatory report are not inadmissible as long as they are based on a factual investigation and otherwise satisfy the Rule's trustworthiness requirement. *Id*. at 170.  The Court expressly declined to reach the question of legal conclusions, such as those in the SSCI Report.  Post-*Rainey*, courts have held that legal conclusions in a report are not admissible under Rule 803(8)(C) .  *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302-303 (11th Cir. 1989) (" '[t]he common meaning of finding . . . comports with investigative conclusions (i.e., the results derived from the examination of facts), but not with idle speculation or legal conclusions' "); *Miranda-Ortiz v. Deming*, 1998 U.S. Dist. LEXIS 3260, *3 to *4 (S.D.N.Y. 1998), ("[T]he consensus from other jurisdictions strongly favors the view that legal conclusions are not admissible as 'findings of fact' under the Rule.").

> [I]t is significant that the public agency which made these findings is an independent regulatory commission ... operating under stringent procedural guidelines on a public record.... *That circumstance provides an element of trustworthiness which might not be present with respect to a public record generated by a person or body lacking these characteristics.*
>
> *Id*. at 366 [emphasis by *Pearce*]. In the case at bar, the court is presented with documents produced by the Congress--a politically-motivated, partisan body.

653 F. Supp. at 813-14. *Pearce* continued:

> Finally, even if there were factual findings, and even if they had been made pursuant to authority granted by law, this court concludes that the Draft Report lacks sufficient trustworthiness to be admitted under an exception to the hearsay rule. This determination is within the discretion of the trial court. *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d at 22. Rule 803(8)(C) only permits the introduction into evidence of "the factual findings of an *objective* government investigation." *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir.1986). Given the obviously political nature of Congress, it is questionable whether any report by a committee or subcommittee of that body could be admitted under rule 803(8)(C) against a private party. There would appear to be too great a danger that political considerations might affect the findings of such a report.

*Id*. at 814 (citations omitted) (emphasis by the Court).[9]

To similar effect is *Bright*, 756 F.2d 19. Plaintiffs attempted to introduce evidence of, among other things, portions of a report of the Moss Committee, a subcommittee of the Committee of the House of Representatives on Interstate and Foreign Commerce. *Id*. at 21-22. Plaintiffs argued that they were admissible under the public records hearsay exception. *Id*. at 22. The trial court refused to admit them, and the Court of Appeals affirmed. First, the Court stated that "[m]uch of the proffered evidence comprises the Committee's subjective conclusions regarding Firestone's culpability, rather than factual findings." *Id*. Second, the Court stated:

---

[9] In the next few paragraphs, *Pearce* discusses *Hobson v. Wilson*, 556 F.Supp. 1157, 1181 (D.D.C.1982), in which a minor piece of evidence from a special Senate Select Committee created for a specific investigation (The Church Committee) was admitted. However, though the Senate Select Committee on Intelligence ("SSCI") is designated as a Select Committee, it is a regular, ongoing committee, not a one-time committee. It was created in 1976 and has been in existence continuously since. SSCI Report at 1; SSCI web site, "Jurisdiction," http://intelligence.senate.gov/jurisdiction.html.

7

No. M-06-01791-VRW    PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
                     CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

> The report was based on hearsay regarding lawsuits and customer complaints without any investigation into the ground for those complaints. Defendant attached to its memorandum regarding admissibility of the report a copy of an order of the United States District Court for the District of South Carolina that found that one Firestone dealer had submitted approximately 600 false complaint forms to Firestone as part of a scheme to defraud Firestone. The unverified nature of the evidence relied on by the Committee is sufficient reason for the District Court to find in its discretion that the report is not trustworthy enough to be admissible.

*Id*. at 22-23.

In *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986), a different Circuit reached a similar conclusion:

> The rule permits the introduction into evidence of the factual findings of an objective government investigation. The subcommittee report did not contain the factual findings necessary to an objective investigation, but consisted of the rather heated conclusions of a politically motivated hearing. As such, the report was properly omitted from evidence. (Citations omitted.)

*Anderson v. City of New York*, 657 F. Supp. 1571 (S.D.N.Y. 1987) is to the same effect. There, the Court considered a report of a subcommittee of the House Judiciary Committee. *Id*. at 1577. The Court held that the report was unreliable and thus inadmissible hearsay. *Id*. at 1578. The Court questioned whether even veteran Committee members have the appropriate expertise in, among other things, evaluating the credibility of witnesses, particularly if the Committee is hearing primarily from only one side. The Court stated that "…[c]ongressional hearings […] do not fit closely the judicial meaning of hearings, at least in comparison to the hearings held by administrative agencies in their quasi-judicial capacity." *Id*. at 1579. At 1579-80, the Court concluded its discussion:

> In sum, because the Report is the result of hearings which lack procedural due process protections, because the Report articulates findings based upon a dubious, highly charged process of essentially "interviewing" interested parties, and because of the serious policy implications of admitting the Report in evidence, this Report has no place as evidence in the instant action. The Report lacks the ordinary indicias of reliability, is not based on the personal knowledge of the reporter, and contains the testimony of interested parties, not experts. This Court, therefore, rules it inadmissible and will not consider it in deciding the instant motion for summary judgment. (Footnote omitted.)

*Richmond Medical Ctr for Women v. Hicks*, 301 F. Supp. 2d 499 (E.D.Va. 2004), *vacated on other grounds,* 127 S. Ct. 2094 (2007), *aff'd* 527 F.3d 128 (4th Cir. 2008), is similar:

> The four documents related to H.R. 760, which was a bill in the United States Congress later passed by both houses with slightly altered text (Exhibits L, M, N, and O), are also irrelevant and contain hearsay not covered by an exception. These documents may not be admitted under Federal Rule of Evidence 803(8)(C) . Each of the exhibits lacks an indicia of trustworthiness. Courts have consistently excluded congressional reports, finding that they did not satisfy the requirements of Rule 803(8)(C) because of the inherently political nature of the reports. The House Report (Exhibit L) represents the political position of the representatives who voted for it. It is untrustworthy and inadmissible. Defendants also submitted the first 26 pages of House Report 108-58 (Exhibit M), a 154-page report. It is also political, untrustworthy, and inadmissible. (Citations omitted.)

*Id*. at 512. The clear weight of authority is that reports of Congressional committees do not satisfy the requirements to be admitted as a hearsay exception under FRE 803(8)(C).

The Government may cite to *Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers and Employees of Outside Loc. Unions and Dist. Counsel (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91 (D.D.C. 2006). In *Barry*, the court ruled on a motion *in limine* to exclude a Senate Report and a House Report prior to an expected bench trial. After surveying various cases on the admissibility of Congressional reports as public records, the *Barry* court concluded that the critical issue was the trustworthiness of the particular report. Specifically, the court found that:

> The courts focused on (1) whether the findings and conclusions are the product of serious investigation rather than political grandstanding and relatedly, (2) whether members of the minority party refused to join in the report or otherwise noted their dissent.

*Id*. at 100. The court admitted the Senate Report and excluded the House Report. The key difference was the seriousness of the investigative process undertaken in each body and the indication of serious dissent to the House Report.

The SSCI Report does not reflect the trustworthiness necessary to be admitted under the public record exception to the hearsay rule. The issue of the renewal of FISA and the issue of telecom immunity were deeply political. Moreover, the seriousness of the Senate's investigation was undermined by Administration brinksmanship. The SSCI Report itself acknowledges the point at page 2. Even more forcefully, Senator Rockefeller, the Chairman of SSCI, wrote:

9

No. M-06-01791-VRW  PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.

> Even now, six years after the warrantless surveillance program was initiated, the Administration continues to withhold from Congress without justification the documents and information it needs to have a full accounting of what happened under the program. The Administration's unwillingness to provide a complete disclosure of these facts is short-sighted and untenable.

Additional Views of Chairman Rockefeller, SSCI Report at 28. Similarly, Senator Nelson noted:

> I am sympathetic to the notion that companies may have acted in good faith to provide the government with assistance during a national security crisis, but I believe it's premature to grant them immunity. The committee received critical documents only 48 hours before the vote. I believe we need more time to gain a full understanding of the President's warrantless surveillance program before deciding whether the companies should receive retroactive immunity.

Additional Views of Senator Nelson, SSCI Report at 42. In their Minority View, Senators Feingold and Wyden wrote that:

> We strongly supported Senator Nelson's amendment to strip from the bill a provision providing blanket immunity to private entities alleged to have cooperated with the Administration's warrantless wiretapping program. The arrangements made by the Administration the week of the mark-up to provide limited access to certain documents related to the program were unfortunately inadequate. More importantly, nothing in the documents, or anything else that we have seen in the course of our review of the program, has convinced us that a sweeping grant of immunity for private entities should have been included in this legislation.

Minority Views of Senators Feingold and Wyden, SSCI Report at 48. In short, the Administration cannot undermine the integrity of the Senate's investigation and then advocate the trustworthiness of the resulting report.[10]

---

[10] Also relevant are the Tenth Circuit's observations on the analysis of "trustworthiness" required by Rule 803(8)(C) : "The lack of formal procedures and an opportunity to cross-examine witnesses are proper factors in determining the trustworthiness of the finding. . . . the trustworthiness of a report is particularly questionable when its conclusion would not be admissible by the direct testimony of the maker or the opportunity to cross-examination had been denied." *Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 822 (10th Cir. 1981). The Court further noted that trustworthiness was suspect when a report's findings are " 'merely the opinion of one whose official office and duty does not rise to the dignity of an adjudicator of causes and effects.' " *Id.*.

### B. Even if Initially Admissible, the SSCI Report is Based on Inadmissible Multiple Hearsay.

The SSCI asserts that it held a number of hearings, had many classified briefings, interviewed several Executive Branch attorneys, received formal testimony from companies alleged to have participated, and reviewed correspondence between the Executive Branch and those companies. SSCI Report at 2. "Based on its inquiry" (*Id*.), the SSCI reached a number of conclusions, including that a form of civil immunity should be granted to companies that may have participated in the warrentless surveillance program. *Id*. at 2-3. "The Committee's decision to include liability relief for providers was based in significant part on its examination of the written communications from U.S. Government officials to certain providers. The Committee also considered the testimony of relevant participants in the program." *Id*. at 9.

Hearsay within hearsay is admissible only if each part of the combined statements conforms to a hearsay exception. FRE 805. Plaintiffs in these cases have had no opportunity to see those written communications or to cross-examine those witnesses.

> Furthermore, even if the Draft Report had been admissible, testimony before a congressional committee is manifestly hearsay. No opportunity for cross-examination of the Subcommittee's witnesses was ever given to Mr. Bell. It is one of the most fundamental rules of evidence that such testimony is inadmissible. Under no stretch of the imagination could such evidence fit within one of the exceptions to the hearsay rule-least of all rule 803(8)(C) which only applies to a government report of factual findings, not to witness testimony.

*Pearce*, 653 F. Supp. at 815.[11] In the typical case of a government investigative report admitted under Rule 803(8)(C), most if not all of the relevant witnesses will be available for examination by the party against whom the report is admitted, either by deposition or at trial. Even if the report is admitted, the party against whom the report is admitted can thus challenge the report's findings by presenting testimony from witnesses heard by the investigative body, or what is often more

---

[11] *Barry* specifically did not decide the hearsay within hearsay issues: the Senate report came before the Court on defendant's motion *in limine* before the plaintiff had specified which specific parts of the report on which he intended to rely. 467 F. Supp. 2d at 102. The Court agreed with the rule that hearsay within hearsay is not admissible unless each component part qualifies for its own exception to the hearsay rule. The defendant gave a number of examples of hearsay within hearsay. However until such later time as plaintiff would be required to designate the portions of the report that he sought to have admitted for the truth of the matters stated therein, the Court could not, and thus did not, make a specific ruling. *Id*.

important, testimony from witnesses the investigative body never heard. *See Ellis v. International Playtex, Inc.*, 745 F.2d 292, 303 (4th Cir. 1984). Plaintiffs have no such opportunity here.[12]

### III. The Classified Declarations of the DNI and the Director of the NSA are Inadmissible.

In his Public Certification, the Attorney General states that he reviewed "… the classified declarations submitted for *in camera, ex parte* review by the Director of National Intelligence ("DNI") and the Director of the NSA…" in both *Hepting* and the *Verizon/MCI* actions. Public Certification at 3:9-12. Without regard to whether the classified declarations were appropriate for consideration in the context of the Government motions regarding the state secrets privilege, they are merely "supplemental materials" and constitute inadmissible hearsay here. As we argued earlier in these objections, the Government must make its case with substantial evidence, and nothing in the Act has changed the common meaning of that phrase. Though the Act authorizes the Attorney General to submit to the court unspecified supplemental materials, 50 U.S.C. § 1885a(b)(2), neither the Act nor the FRE allow evidence to be used against a party when the party has not even had the opportunity to see the evidence, let alone to cross-examine the hearsay declarant. *Blair Foods, supra,* 610 F.2d at 667; *Janich Bros.,* 570 F.2d at 859; *Dibble,* 429 F.2d at 602.

### IV. The Public and Classified Certifications of the Attorney General are Inadmissible.

Obviously, we cannot know what is stated in the classified certification of the Attorney General, or what supplemental materials, if any, may have been submitted with it. For precisely that reason, the classified certification is inadmissible, as argued in Part III, *supra*.

As to the Public Certification, we note that the Attorney General does not claim to know everything he states of his own firsthand knowledge. Rather, he states in paragraph 3 that his statements "are based on my personal knowledge *and* information made available to me in the course of my official duties …." (Emphasis added.) The SSCI Report is hearsay to the Attorney General. So too are the classified declarations of the DNI and the Director of the NSA filed in

---

[12] Nor do they have the opportunity to cross-examine those who prepared the SSCI Report. *See Hines*, 886 F.2d at 303 ("While the inability to cross-examine the investigator cannot *per se* invalidate the report since Rule 803(8) does not depend on the availability of the declarant, it is nonetheless a proper factor to take into consideration when deciding trustworthiness.").

the *Hepting* and *Verizon/MCI* cases. The Attorney General did not reach his conclusions without them; to the contrary, at 7:1-9, the Attorney General relies expressly on them.

The Government might contend that the Attorney General's Public Certification is in the nature of expert testimony. Under FRE 703, the facts or data on which an expert bases his opinion need not themselves be admissible in evidence. There is an important caveat, however. The facts or data must be supplied to the other side:

> Since pretrial discovery of an expert's underlying facts and data is often essential to preparing an effective cross-examination, failure to provide such discovery may be a sufficient basis for requiring prior disclosure on direct examination or even barring the expert's testimony entirely.

29 C. Wright & V. Gold, *Federal Practice and Procedure*, § 6294, p. 428-9 (1997). FRCP 26(a)(2)(B) requires specifically that the expert must disclose, among other things, the data or other information considered in forming the expert's opinion.

As noted in the preceding section, the bulk of the materials on which the Attorney General purports to rely have not been made available to the plaintiffs. Without them, the plaintiffs are unfairly disadvantaged with respect to any opportunity to rebut them, and the Attorney General's Public Certification is no more than conclusory and inadmissible. [13]

**V.     Even If The Government's Evidence Is Otherwise Admissible, It Should Be Excluded Under FRE 403.**

In pertinent part, FRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice …." Plaintiffs acknowledge that FRE 403 objections are more likely to be sustained if the proffered evidence is to go to a jury.

Here, however, Plaintiffs face a unique situation. It is not common that a party offers evidence, especially evidence exclusively within its control, when the opposing party can not see the evidence, can not do discovery attacking the credibility and probative value of the evidence and can not do discovery aimed at uncovering other, independent evidence. There can be little

---

[13] As the Court is aware, Plaintiffs have on many occasions requested the right to do targeted discovery, including most recently at the September 12, 2008 Case Management Conference. See also the FRCP 56(f) Declaration of Cindy Cohn, filed concurrently herewith.

doubt that Plaintiffs will be prejudiced unfairly if the Government's proffered evidence is admitted under such circumstances. Thus, in addition to the grounds previously stated, Plaintiffs object to all of the Government's evidence discussed in these objections on the grounds of FRE 403.

## CONCLUSION

50 U.S.C. § 1885a(b)(1) requires the Government to make its case with substantial evidence. Stripped of hearsay and other inadmissible evidence, the Government has offered no evidence at all against the Plaintiffs. These evidentiary objections should be sustained and the Government's motion should be denied.

DATED: October 16, 2008

Respectfully submitted,

_____/s/_____

ROGER BALDWIN FOUNDATION OF ACLU
HARVEY GROSSMAN
ADAM SCHWARTZ
180 North Michigan Avenue
Suite 2300
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 201-9760

COUNSEL FOR AT&T CLASS PLAINTIFFS AND CO-CHAIR OF PLAINTIFFS' EXECUTIVE COMMITTEE

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
ANN BRICK
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

COUNSEL FOR PLAINTIFFS IN CAMPBELL v. AT&T AND RIORDAN v. VERIZON COMMUNICATIONS INC.

ELECTRONIC FRONTIER FOUNDATION
CINDY A. COHN, ESQ.
LEE TIEN, ESQ.
KURT OPSAHL, ESQ.
KEVIN S. BANKSTON, ESQ.
CORYNNE MCSHERRY, ESQ.
JAMES S. TYRE, ESQ.
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x108
Facsimile: (415) 436-9993

COUNSEL FOR
AT&T CLASS PLAINTIFFS AND
CO-CHAIR OF PLAINTIFFS' EXECUTIVE COMMITTEE

LAW OFFICE OF RICHARD R. WIEBE
RICHARD R. WIEBE
425 California Street
Suite 2025
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

COUNSEL FOR AT&T CLASS PLAINTIFFS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA<br>PETER J. ELIASBERG<br>1313 West Eighth St.,<br>Los Angeles, CA 90026<br><br>Telephone: (213) 977-9500<br>Facsimile: (213) 977-5299<br><br>COUNSEL FOR PLAINTIFFS IN CAMPBELL v. AT&T AND RIORDAN v. VERIZON COMMUNICATIONS INC.<br><br>FENWICK & WEST LLP<br>LAURENCE F. PULGRAM<br>JENNIFER KELLY<br>CANDACE MOREY<br>555 California Street, 12th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 875-2300<br>Facsimile: (415) 281-1350<br><br>COUNSEL FOR PLAINTIFFS IN CAMPBELL v. AT&T AND RIORDAN v. VERIZON COMMUNICATIONS INC.<br><br>MOTLEY RICE LLC<br>RONALD MOTLEY<br>DONALD MIGLIORI<br>JODI WESTBROOK FLOWERS<br>VINCENT I. PARRETT<br>28 Bridgeside Boulevard<br>P.O. Box 1792<br>Mt. Pleasant, SC 29465<br>Telephone: (843) 216-9000<br>Facsimile: (843) 216-9450<br><br>PLAINTIFFS' COUNSEL FOR VERIZON SUBSCRIBER CLASS<br><br>THE MASON LAW FIRM, PC<br>GARY E. MASON<br>NICHOLAS A. MIGLIACCIO<br>1225 19th St., NW, Ste. 500<br>Washington, DC 20036<br>Telephone: (202) 429-2290<br>Facsimile: (202) 429-2294<br><br>PLAINTIFFS' COUNSEL FOR SPRINT SUBSCRIBER CLASS | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>ELIZABETH J. CABRASER<br>BARRY R. HIMMELSTEIN<br>ERIC B. FASTIFF<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br><br>PLAINTIFFS' COUNSEL FOR MCI SUBSCRIBER CLASS<br><br>LISKA, EXNICIOS & NUNGESSER ATTORNEYS-AT-LAW<br>VAL PATRICK EXNICIOS<br>One Canal Place, Suite 2290<br>365 Canal Street<br>New Orleans, LA 70130<br>Telephone: (504) 410-9611<br>Facsimile: (504) 410-9937<br><br>PLAINTIFFS' COUNSEL FOR BELLSOUTH SUBSCRIBER CLASS<br><br>MAYER LAW GROUP LLC<br>CARL J. MAYER<br>66 Witherspoon Street, Suite 414<br>Princeton, New Jersey 08542<br>Telephone: (609) 921-8025<br>Facsimile: (609) 921-6964<br><br>PLAINTIFFS' COUNSEL FOR BELLSOUTH SUBSCRIBER CLASS<br><br>THE LAW OFFICES OF STEVEN E. SCHWARZ, ESQ.<br>STEVEN E. SCHWARZ<br>2461 W. Foster Ave., #1W<br>Chicago, IL 60625<br>Telephone: (773) 837-6134<br><br>PLAINTIFFS' COUNSEL FOR BELLSOUTH SUBSCRIBER CLASS |

| | |
|---|---|
| 1 | BRUCE I AFRAN, ESQ. |
| 2 | 10 Braeburn Drive<br>Princeton, NJ 08540 |
| 3 | 609-924-2075 |
| 4 | PLAINTIFFS' COUNSEL FOR |
| 5 | BELLSOUTH SUBSCRIBER CLASS |
| 6 | KRISLOV & ASSOCIATES, LTD.<br>CLINTON A. KRISLOV |
| 7 | 20 North Wacker Drive<br>Suite 1350 |
| 8 | Chicago, IL 60606<br>Telephone: (312) 606-0500<br>Facsimile: (312) 606-0207 |
| 9 | |
| 10 | PLAINTIFFS' COUNSEL FOR<br>BELLSOUTH SUBSCRIBER CLASS |

16

No. M-06-01791-VRW   PLAINTIFFS' EVIDENTIARY OBJECTIONS TO
CERTIFICATIONS OF ATTORNEY GENERAL OF THE U.S.