**Jon B. Eisenberg, California Bar No. 88278** (jon@eandhlaw.com)
**William N. Hancock, California Bar No. 104501** (bill@eandhlaw.com)
**Eisenberg & Hancock LLP**
1970 Broadway, Suite 1200 • Oakland, CA 94612
510.452.2581 – Fax 510.452.3277

**Steven Goldberg, Oregon Bar No. 75134** (steven@stevengoldberglaw.com)
River Park Center, Suite 300 • 205 SE Spokane St.• Portland, OR 97202
503.445-4622 – Fax 503.238.7501

**Thomas H. Nelson, Oregon Bar No. 78315** (nelson@thnelson.com)
P.O. Box 1211, 24525 E. Welches Road • Welches, OR 97067
503.622.3123 - Fax: 503.622.1438

**Zaha S. Hassan, California Bar No. 184696** (zahahassan@comcast.net)
8101 N.E. Parkway Drive, Suite F-2.• Vancouver, WA 98662
360.213.9737 - Fax 866.399.5575

**J. Ashlee Albies, Oregon Bar No. 05184** (ashlee@sstcr.com)
**Steenson, Schumann, Tewksbury, Creighton and Rose, PC**
815 S.W. Second Ave., Suite 500 • Portland, OR 97204
503.221.1792 – Fax 503.223.1516

**Lisa R. Jaskol, California Bar No. 138769** (ljaskol@earthlink.net)
610 S. Ardmore Ave.• Los Angeles, CA 90005
213.385.2977 – Fax 213.385.9089

Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew and Asim Ghafoor

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates Solely To:<br><br>*Al-Haramain Islamic Foundation, Inc., et al. v. Bush, et al.* (C07-CV-0109-VRW)<br><br>**AL-HARAMAIN ISLAMIC FOUNDATION, INC., et al.,** | ) MDL Docket No. 06-1791 VRW<br>)<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **DEFENDANTS' THIRD MOTION TO**<br>) **DISMISS OR, IN THE**<br>) **ALTERNATIVE, FOR SUMMARY**<br>) **JUDGMENT**<br>)<br>)<br>) Date:      Tuesday, December 2, 2008<br>) Time:     10:00 a.m.<br>) Court:    Courtroom 6, 17th Floor<br>)              Honorable Vaughn R. Walker |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

| | |
|---|---|
| 1 | Plaintiffs, )
| | vs. )
| 2 | )
| 3 | **GEORGE W. BUSH, President of the** )
| | **United States, et al.,** )
| 4 | )
| | Defendants. )
| 5 | _____ )
| 6 |
| 7 |
| 8 |
| 9 |
| 10 |
| 11 |
| 12 |
| 13 |
| 14 |
| 15 |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |
| 26 |
| 27 |
| 28 |

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    DEFENDANTS' MOTION PLACES AT ISSUE PLAINTIFFS' STANDING
      AS "AGGRIEVED PERSONS" TO INVOKE SECTION 1806(f), NOT THEIR
      ARTICLE III STANDING TO SUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Defendants' motion makes clear that it challenges plaintiffs' standing to invoke
            section 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    FISA's legislative history confirms that 1806(f) standing is not the same as
            Article III standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   DEFENDANTS' MOTION FAILS AS A FACIAL ATTACK ON PLAINTIFFS'
      STANDING TO INVOKE SECTION 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Defendants' motion is a facial attack on plaintiffs' 1806(f) standing,
            in which all reasonable inferences are drawn in favor of standing . . . . . . . . . . . . 5

      B.    The elements of plaintiffs' standing to invoke section 1806(f) can be
            reasonably inferred from the facts alleged in the amended complaint . . . . . . . . . 7

III.  IF THIS COURT TREATS DEFENDANTS' MOTION AS PUTTING
      ARTICLE III STANDING AT ISSUE, THE COURT SHOULD DENY THE
      MOTION AS FACIAL AND HOLD IT IN ABEYANCE AS FACTUAL . . . . . . . . . . . . 13

      A.    As a facial attack on Article III standing, defendants' motion fails because
            all the elements of Article III standing may be reasonably inferred from the facts
            alleged in plaintiffs' amended complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    As a factual attack on Article III standing, defendants' motion should be
            held in abeyance pending this Court's determination of plaintiffs'
            1806(f) motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            1.    The resolution of any disputed factual issues requires a full and fair
                  evidentiary hearing, which cannot yet occur without plaintiffs' use of the
                  Sealed Document under section 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . 15

            2.    In a factual attack, plaintiff may rely on reasonable inferences . . . . . . . . 16

            3.    On an evidentiary hearing, the burden should shift to defendants to
                  disprove the warrantless nature of plaintiffs' electronic surveillance . . . . 18

i

IV.  THIS COURT MAY DETERMINE THE UNLAWFULNESS OF
     PLAINTIFFS' SURVEILLANCE – AND THUS THEIR ARTICLE III
     STANDING TO SUE – BY ALTERNATIVE PROCEDURES
     OTHER THAN ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT . . . . . 19

     A.  Subsections (f) and (g) of FISA section 1806 authorize this Court to
         determine the unlawfulness of plaintiffs' surveillance upon granting them
         access to the Sealed Document . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     B.  If defendants have secretly told this Court that plaintiffs were surveilled
         in violation of FISA, then the Court can forthwith find Article III standing
         on the 1806(f) motion and proceed to decide whether the President has
         power to disregard FISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     C.  The court may defer adjudication of Article III standing until the close of
         evidence in a trial on the merits or until decision on a motion by plaintiffs for
         summary judgment or adjudication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.   DEFENDANTS HAVE NOT TIMELY REQUESTED CERTIFICATION
     OF AN INTERLOCUTORY APPEAL FROM THE ORDER OF JULY 2, 2008 . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

# TABLE OF AUTHORITIES

CASES

**Page**

*ACLU Foundation of Southern California v. Barr*
    952 F.2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Alderson v. United States*
    394 U.S. 165 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*
    436 F.3d 82 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 22

*American Canine Foundation v. Sun*
    2007 WL 5497491 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*American Civil Liberties Union v. National Security Agency*
    493 F.3d 644 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Barrett Computer Services, Inc. v. PDA, Inc.*
    884 F.2d 214 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bischoff v. Osceola County, Fla.*
    222 F.3d 874 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 15, 17

*Brentwood Academy v. Tennessee Secondary School*
    531 U.S. 288 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brunette v. Humane Society of Ventura County*
    294 F.3d 1205 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Campbell v. United States*
    365 U.S. 85 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Century Pacific, Inc. v. Hilton Hotels Corp.*
    2008 WL 2276701 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Daniels v. Twin Oaks Nursing Home*
    692 F.2d 1321 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Dennis v. Sparks*
    449 U.S. 24 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fenner v. General Motors Corp.*
    657 F.2d 647 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

*Ferraro v. Secretary of HHS*
    780 F.Supp. 978 (E.D.N.Y. 1992) ........................................ 23

*Finstuen v. Crutcher*
    496 F.3d 1139 (10th Cir. 2007) ........................................ 16

*FWI/PBS, Inc. v. Dallas*
    493 U.S. 215 (1990) ........................................ 17

*Goldstein v. United States*
    316 U.S. 114 (1942) ........................................ 4

*Grace v. American Central Ins. Co.*
    109 U.S. 278 (1883) ........................................ 17

*Green v. City of New York*
    2006 WL 3335051 (E.D.N.Y. 2006) ........................................ 23

*ITSI TV Productions, Inc. v. Agricultural Associations*
    3 F.3d 1289 (9th Cir. 1993) ........................................ 18

*Jones v. United States*
    362 U.S. 257 (1960) ........................................ 4

*Lee v. City of Chicago*
    330 F.3d 456 (7th Cir. 2003) ........................................ 7

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ........................................ 2, 15

*Morris v. Flaig*
    511 F.Supp.2d 282 (E.D.N.Y. 2007) ........................................ 23

*National Communications Assn. v. AT & T Corp.*
    238 F.3d 124 (2d Cir. 2001) ........................................ 18

*Poppell v. City of San Diego*
    149 F.3d 951 (9th Cir. 1998) ........................................ 7

*Rawoof v. Texor Petroleum Co., Inc.*
    521 F.3d 750 (7th Cir. 2008) ........................................ 16

*Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania*
    202 F.3d 957 (7th Cir. 2000) ........................................ 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

*Rome Ambulatory Surgical Center, LLC v Rome Memorial Hospital, Inc.*
    349 F.Supp.2d 389 (N.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Strickland v. Washington*
    466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Strickler v. Greene*
    527 U.S. 263 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thornhill Pub. Co., Inc. v. General Tel. & Electric Corp.*
    594 F.2d 730 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tose v. First Pennsylvania Bank, N.A.*
    648 F.2d 879 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*United States v. 1998 BMW "I" Convertible*
    235 F.3d 397 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*United States v. Arteaga*
    117 F.3d 388 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Denman*
    100 F.3d 399 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Denver & Rio Grand Railroad Company*
    191 U.S. 84 (1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Ferrara*
    771 F.Supp. 1266 (D. Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*U.S. v. Galbraith*
    20 F.3d 1054 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*United States v. Jennings*
    726 F.2d 189 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Lavin*
    604 F.Supp. 350 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Luong*
    471 F.3d 1107 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

*United States v. Morton*
    400 F.Supp.2d 874 (E.D. Va. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Ramirez*
    112 F.3d 849 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Rodriguez*
    968 F.2d 130 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Salvucci*
    448 U.S. 83 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Warth v. Seldin*
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Weir v. Probst*
    915 F.2d 283 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*Wolfe v. Strankman*
    392 F.3d 359 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 14

**STATUTES AND COURT RULES**

United States Constitution, Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. section 2510(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. section 2518(10)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. section 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

50 U.S.C. section 1801(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

50 U.S.C. section 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

50 U.S.C. section 1806(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

50 U.S.C. section 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

50 U.S.C. section 1806(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

50 U.S.C. section 1809(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

50 U.S.C. section 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Federal Rule of Civil Procedure 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## MISCELLANEOUS

JAMES BAMFORD, THE SHADOW FACTORY (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

H.R. REP. NO. 95-1283 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

S. REP. NO. 90-1097 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

S. REP. NO. 95-604(I) (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

S. REP. NO. 95-701 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

S. 1566, 95th Cong. 2d Sess., § 2526(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

S.C. Res. 1267 (Oct. 15, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9 J. WIGMORE, EVIDENCE § 2486, p. 290 (J. Chadbourn rev. ed. 1981) . . . . . . . . . . . . . . . 18

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

# INTRODUCTION

Plaintiffs have filed a motion under 50 U.S.C. section 1806(f) seeking access to portions of the Sealed Document filed with the Court at the outset of this litigation. At the same time, defendants have filed a motion (their third) for dismissal or summary judgment. Defendants' motion is fundamentally flawed by a failure to distinguish between two different types of "standing" – standing to request access to materials relating to electronic surveillance under section 1806(f), and standing under Article III of the United States Constitution to sue defendants for violating the Foreign Intelligence Surveillance Act (FISA).

Defendants' motion challenges plaintiffs' standing to proceed under section 1806(f), not their Article III standing to sue. As such, the motion is a *facial* attack on the sufficiency of plaintiffs' amended complaint. And, as such, it fails, because this Court must draw all reasonable inferences in plaintiffs' favor, and essential elements of plaintiffs' standing to invoke section 1806(f) can be reasonably inferred from the facts alleged in the amended complaint – all of which are now in the public record, and none of which are classified. Those facts, and the reasonable inferences therefrom, establish that plaintiffs were subjected to *surveillance* and that their surveillance was *electronic*, which is all that is required to show plaintiffs' status as "aggrieved persons" under section 1806(f).

If this Court chooses to treat defendants' motion as also putting plaintiffs' Article III standing at issue, the motion similarly fails as a facial attack on such standing – again, because essential elements of plaintiffs' Article III standing can be reasonably inferred from the facts alleged in the amended complaint. Those facts raise the reasonable inference of the further fact, in addition to electronic surveillance, that is essential to plaintiffs' Article III standing – that their electronic surveillance was *warrantless*.

If the Court chooses to treat defendants' motion as a *factual* attack on Article III standing – which disputes the truth of a complaint's allegations and requires an evidentiary hearing to resolve any contested factual issues – the Court should hold the motion in abeyance pending the Court's determination of plaintiffs' motion under section 1806(f), because a full and fair evidentiary hearing cannot yet occur without plaintiffs' use of the Sealed Document under section 1806(f) as part of an effort to show Article III standing. Alternatively, the Court may determine the unlawfulness of plaintiffs' surveillance by alternative procedures, explained herein, other than on defendants' motion.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

# ARGUMENT

I.   **DEFENDANTS' MOTION PLACES AT ISSUE PLAINTIFFS' STANDING AS "AGGRIEVED PERSONS" TO INVOKE SECTION 1806(f), NOT THEIR ARTICLE III STANDING TO SUE.**

   A.   **Defendants' motion makes clear that it challenges plaintiffs' standing to invoke section 1806(f).**

   We begin by explaining what defendants' motion is, and what it is not: It is a motion to dismiss (or alternatively for summary judgment) on the ground plaintiffs lack *standing to proceed under section 1806(f)*. It is *not* a motion to dismiss (or alternatively for summary judgment) on the ground plaintiffs lack *Article III standing to sue*. In the context of this case, the difference is significant.

   As we explain in our pending Motion Pursuant To 50 U.S.C. § 1806(f) To Discover Or Obtain Material Relating To Electronic Surveillance (hereafter "1806(f) Motion"), plaintiffs' standing as "aggrieved persons" to gain access to information under section 1806(f), which we shall call *1806(f) standing*, is not the same as their constitutional standing under Article III to sue defendants, which is commonly called *Article III standing*. To demonstrate *1806(f) standing*, a plaintiff need only present *prima facie evidence* of electronic surveillance. *See* 1806(f) Motion at 10-13. The prima facie showing is sufficient if it raises a *reasonable inference* of electronic surveillance. *See id.* at 14-15. There is no resolution of contested factual issues when a court decides whether to proceed under section 1806(f). *See id.* at 13-14.

   In contrast, to demonstrate *Article III standing*, it may not be enough for the plaintiff to present evidence of *electronic surveillance*. If the defendant disputes the plaintiff's factual allegations, the plaintiff must present evidentiary proof of all the elements of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). This includes the additional fact that the electronic surveillance was *warrantless*. *See* 1806(f) Motion at 10-11. The Court then decides any contested factual issues (whether raised by motion to dismiss or by motion for summary judgment) after holding an evidentiary hearing. *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 878-80 (11th Cir. 2000); *see* 1806(f) Motion at 13-14.[1/]

   Here, defendants' motion makes plain, in express language, that it challenges plaintiffs' *1806(f)*

---

[1/]   In this respect, motions for dismissal or summary judgment based on Article III standing are unique in that, unlike other motions for dismissal or summary judgment, they may require resolution of disputed factual issues on an evidentiary hearing. *See Bischoff,* 222 F.3d at 878-80.

*standing*. Their notice of motion states that they seek dismissal (or alternatively summary judgment) on the ground "the evidence set forth in plaintiffs' First Amended Complaint fails to establish that the plaintiffs are 'aggrieved persons' as defined in the FISA and, thus that plaintiffs have *standing to adjudicate any claim under Section 1806(f)*." Defs.' Notice of Motion at 2 (emphasis added). Their supporting memorandum of points and authorities states that "this motion primarily addresses whether the evidence presented by plaintiffs in their First Amended Complaint ('FAC') establishes that they are 'aggrieved persons'" under FISA "and, thus, have *standing to utilize the special procedures set forth in Section 1806(f)* . . . ." Defs.' Memo. of Pts. & Auth. at 1 (emphasis added).

Consequently, defendants' motion places at issue plaintiffs' 1806(f) standing, not their Article III standing. The legal authorities defendants cite regarding the burden of establishing Article III standing, *see* Defs.' Memo. of Pts. & Auth. at 9-10, are inapposite. To defeat defendants' motion challenging 1806(f) standing, plaintiffs need only sustain their burden of establishing "aggrieved person" status under section 1806(f).

**B.      FISA's legislative history confirms that 1806(f) standing is not the same as Article III standing.**

Defendants cite FISA's legislative history for their proposition that "Article III requirements for establishing standing directly apply to determine whether a party is 'aggrieved' for purposes of the FISA." Defs.' Memo. of Pts. & Auth. at 10 n. 3. Defendants are wrong. FISA's legislative history demonstrates the opposite, confirming that the requirements for Article III standing *differ* from the requirements for 1806(f) standing. As we explain in plaintiffs' 1806(f) motion, Article III standing requires *injury*, whereas 1806(f) standing requires only *electronic surveillance*, which is not injurious unless it is *unlawful*. *See* 1806(f) Motion at 10.

Defendants correctly point out that FISA's definition of "aggrieved person," *see* 50 U.S.C. § 1801(k), is derived from a similar (but not identical) definition of "aggrieved person" in Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (hereafter "the OCCSSA"), 18 U.S.C. § 2510(11).[2] *See* S. REP. NO. 95-604(I), at 56 (1977) (the word "subject" in an early draft of FISA (*see*

----

[2]      The OCCSSA defines "aggrieved person" as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). FISA defines "aggrieved person" as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to

3

1  S. 1566, 95th Cong. 2d Sess., § 2526(d)), which was later changed to "aggrieved person," "is defined

2  to coincide with the definition of 'aggrieved person' in section 2510 of title III"); S. REP. NO. 95-701,

3  at 62 (1978) (the word "subject" in the early draft "would include an 'aggrieved person' as defined in

4  section 2510 of title III"). But to establish "aggrieved person" status under the OCCSSA does *not*

5  require a showing that challenged surveillance was unlawful. The legislative history of the OCCSSA

6  explains that its definition of "aggrieved person" is intended to "define[] the class of those who are

7  entitled to invoke the suppression sanction of [18 U.S.C.] section 2515 . . . through the motion to

8  suppress provided for by section 2518" and "is intended to reflect existing law." S. REP. NO. 90-1097,

9  at 62 (1968). The "existing law" cited in this legislative history included *Jones v. United States*, 362

10  U.S. 257 (1960) (overruled on another point in *United States v. Salvucci*, 448 U.S. 83 (1980)) and

11  *Goldstein v. United States*, 316 U.S. 114 (1942). *See* S. REP. NO. 90-1097, at 62. *Jones* stated, among

12  other things, the general rule that in order to have standing as an "aggrieved person" to file a

13  suppression motion, *see* 18 U.S.C. § 2518(10)(a), "one must have been a victim" of the challenged

14  conduct. *Jones*, 362 U.S. at 261. *Goldstein* similarly observed that "the federal courts in numerous

15  cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search

16  and seizure to object to the introduction in evidence of that which was seized." *Goldstein*, 316 U.S.

17  at 121. For there to be standing to file the suppression motion, the moving party must have been a

18  victim of the challenged conduct. But the moving party need not first demonstrate the conduct's

19  *unlawfulness* in order to have standing to file the motion. Indeed, the purpose of the motion is to

20  *determine* lawfulness.

21       Thus, for example, in *Jones* itself, the Supreme Court found "aggrieved person" status – that

22  is, standing to file a suppression motion – without yet deciding the legality of the challenged conduct,

23  instead remanding the case to the district court for a decision on the moving party's claim of

24  unlawfulness "in light of our decision that petitioner had standing to make it." *Jones*, 362 U.S. at 273.

25  Accordingly, courts have found standing to make an OCCSSA suppression motion and then have

26  subsequently determined that the challenged conduct was *lawful*. *See, e.g., United States v. Ferrara*,

27

28  ─────────────────────────
    electronic surveillance." 50 U.S.C. § 1801(k).
─────────────────────────────────────────────
PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

1   771 F.Supp. 1266, 1281, 1290, 1319 (D. Mass. 1991); *United States v. Lavin*, 604 F.Supp. 350, 356-

2   57 (E.D. Pa. 1985).

3           This explains what the Supreme Court meant in *Alderson v. United States*, 394 U.S. 165, 176

4   n. 9 (1969), when commenting that the OCCSSA's legislative history "indicates that 'aggrieved

5   person' . . . should be construed in accordance with existent standing rules." *See* Defs.' Memo. of Pts.

6   & Auth. at 10 n. 3. The "existent standing rules" to which *Alderson* referred are the rules for *standing*

7   *to file a suppression motion*, not Article III standing. The Court was making the point that the

8   exclusionary rule can be invoked only by "the person aggrieved by the invasion" rather than "anyone."

9   *Alderson*, at 175-76.

10          This also explains the comment in FISA's legislative history that the phrase "aggrieved person"

11  in FISA "is intended to be coextensive, but no broader than, those persons who have standing to raise

12  *claims under the Fourth Amendment with respect to electronic surveillance*." H.R. REP. NO. 95-1283,

13  at 66 (1978) (emphasis added); *see* Defs.' Memo. of Pts. & Auth. at 10-11 n. 3. The referenced "claim

14  under the Fourth Amendment with respect to electronic surveillance" is an *OCCSSA suppression*

15  *motion*, not a challenge to Article III standing.

16          Motions under FISA section 1806 are akin to OCCSSA suppression motions. Indeed, the

17  motion under section 1806(e) *is* a suppression motion. The motion under section 1806(f) is a close

18  cousin to that suppression motion. If, as defendants contend (and plaintiffs agree), this Court should

19  look to the OCCSSA, its legislative history, and cases addressing OCCSSA suppression motions for

20  guidance in determining the nature of 1806(f) standing, then the Court should conclude that section

21  1806(f) standing differs from Article III standing and requires only a prima facie showing of electronic

22  surveillance.

23  **II.    DEFENDANTS' MOTION FAILS AS A FACIAL ATTACK ON PLAINTIFFS'
        STANDING TO INVOKE SECTION 1806(f) .**

24
        **A.    Defendants' motion is a facial attack on plaintiffs' 1806(f) standing, in which all
25              reasonable inferences are drawn in favor of standing.**

26          With the understanding that defendants' motion challenges plaintiffs' 1806(f) standing, we next

27  address the nature of that challenge and the reason why it fails.

28          There are two types of challenges to *Article III standing*: facial and factual. *See Wolfe v.*

                                                        5

1   *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air For Everyone,* 373 F.3d at 1039; *White v. Lee*,

2   227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations

3   contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air For*

4   *Everyone,* 373 F.3d at 1039. The defendant assumes the complaint's allegations to be true – as does

5   the court. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Wolfe,* 392 F.3d at 362. "By contrast, in a

6   factual attack, the challenge disputes the truth of the allegations that, by themselves, would otherwise

7   invoke federal jurisdiction." *Safe Air For Everyone*, 373 F.3d at 1039. The court need not assume the

8   truth of the complaint's allegations; rather, the plaintiff must present evidence sufficient to

9   demonstrate standing, and the court resolves any disputed factual issues. *Wolfe*, 392 F.3d at 362; *see*

10  *Thornhill Pub. Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Bischoff*,

11  222 F.3d at 878-80.

12       An attack on *1806(f) standing*, however, is always facial and is never factual. On a section

13  1806(f) motion, the plaintiff's burden is limited to pleading a prima facie case of electronic

14  surveillance, and the court does not decide any contested factual issues. *See* 1806(f) Motion at 12-14.

15  Thus, on defendants' motion here – which defendants call an attack on 1806(f) standing – this Court

16  must assume the allegations in plaintiffs' amended complaint to be true.

17       Defendants candidly characterize their motion as a facial attack on 1806(f) standing, asserting

18  that the allegations contained in plaintiffs' amended complaint are insufficient on their face to invoke

19  section 1806(f). Their notice of motion states that "the evidence set forth in plaintiffs' First Amended

20  Complaint fails to establish . . . that plaintiffs have standing to adjudicate any claim under Section

21  1806(f)." Defs.' Notice of Motion at 2. Their memorandum of points and authorities similarly states

22  that "nothing in the First Amended Complaint comes close to establishing that plaintiffs . . . have

23  standing to proceed under Section 1806(f) . . . ." Defs.' Memo. of Pts. & Auth. at 1. Defendants

24  expressly disclaim any factual attack, stating that "the Government does not presently rely on classified

25  information to address the evidentiary basis of plaintiffs' standing." *Id.* at 20 n. 7. This is a facial

26  attack, in which defendants challenge the sufficiency of the amended complaint's allegations.

27       Further, defendants expressly assume the truth of the amended complaint's allegations. Their

28  memorandum of points and authorities states that defendants "[a]ssum[e], *arguendo*, that plaintiffs

have accurately described the public statements cited in the First Amended Complaint," Defs.' Memo. of Pts. & Auth. at 12, and "assum[e] the accuracy of plaintiffs' description of public information cited in the FAC," *id.* at 14. Again, this is a facial attack, in which defendants assume the amended complaint's allegations to be true.

In a facial attack, the district court must "draw all reasonable inferences in [plaintiffs'] favor." *Wolfe*, 392 F.3d at 362; *accord, Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *American Canine Foundation v. Sun*, 2007 WL 549749, *1 (N.D. Cal. 2007). The central question here, therefore, is whether plaintiffs' amended complaint raises a *reasonable inference* of the two elements of 1806(f) standing – that plaintiffs were subjected to surveillance, and that the surveillance was electronic. *See* 1806(f) Motion at 10-11. If the answer is yes, this Court must draw those inferences, which establish 1806(f) standing.

## B. The elements of plaintiffs' standing to invoke section 1806(f) can be reasonably inferred from the facts alleged in the amended complaint.

What does it mean for an inference to be *reasonable*? The federal appellate courts tell us that "[t]he line is drawn by the laws of logic," and an inference is reasonable "[i]f there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact." *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 895 (3d Cir. 1981); *accord, e.g., Poppell v. City of San Diego*, 149 F.3d 951, 954 (9th Cir. 1998). "The key to a logical inference is the reasonable probability that the conclusion flows from the evidentiary datum because of past experiences in human affairs." *Poppell*, 149 F.3d at 954. The phrase "reasonable probability" (unlike the word "probably") does *not* mean "more likely than not," but is more akin to "reasonable possibility, "reasonable likelihood," or "significant possibility." *See Strickler v. Greene*, 527 U.S. 263, 298-300 (1999) (Souter, J., concurring and dissenting); *cf. Strickland v. Washington*, 466 U.S. 668, 693-94 (1984) (prejudice from ineffective assistance of counsel need only be shown as a "reasonable probability" rather than as "more likely than not").

What this means, in our view, is that whether an inference is reasonable – whether there is an experience of logical probability that an ultimate fact will follow a stated narrative – is simply a matter of common sense. For example, as a matter of common sense, "there is both a reasonable and logical

---
7

probability that a person who is in his home state two days before and two days after a given date would have been there on the given date." *U.S. v. Galbraith*, 20 F.3d 1054, 1057 (10th Cir. 1994). Similarly, as a matter of common sense, there is a reasonable and logical probability that the ultimate fact of plaintiffs' electronic surveillance follows the narrative stated in plaintiffs' amended complaint. Here is some of that narrative:

• Under the President's warrantless electronic surveillance program, during 2001-2007, defendants surveilled international telecommunications of persons believed to be "linked" or "affiliated" with al-Qaeda. *See* 1806(f) Motion at 2.

• Upon the "preliminary designation" order blocking plaintiff Al-Haramain's assets on February 19, 2004, defendants announced in a press release that they had begun investigating Al-Haramain, mentioning only possible crimes relating to currency and tax laws – with no mention of Osama bin-Laden. *See id.* at 4.

• During this investigation, defendants used classified information produced by the intelligence community, and at that time the FBI was using information produced by the NSA under the warrantless surveillance program. *See id.* at 4, 6.

• FBI Deputy Director John S. Pistole has publicly admitted that the FBI used surveillance in connection with this investigation. *See id.* at 6-7.

• In the midst of the investigation, in March and April of 2004, plaintiffs Belew and Ghafoor participated in international telecommunications with Soliman al-Buthi where they discussed Ghafoor's representation of plaintiff Al-Haramain and several persons who were linked with Osama bin-Laden (but who had no links with plaintiff Al-Haramain). *See id.* at 5-6.

• Subsequently, on September 9, 2004, upon Al-Haramain's "formal designation" as a Specially Designated Global Terrorist (SDGT) organization, defendants declared publicly that the investigation had shown "direct links" between Al-Haramain and Osama bin-Laden – the first instance of a claim of such links. *See id.* at 6.

As a matter of common sense, this narrative presents a *logical probability* that defendants surveilled Belew's and Ghafoor's international communications with al-Buthi in March and April of 2004 (relying on that surveillance to issue the formal designation of Al-Haramain as an SDGT

1   organization based on purported "direct links" with Osama bin-Laden). Defendants insist that the

2   ultimate fact of plaintiffs' telephonic surveillance "must" follow the narrative in the amended

3   complaint for the inference of the ultimate fact to be reasonable. Defs.' Memo. of Pts. & Auth. at 13,

4   15-16. They are wrong. There need only be an "experience of logical probability" – not even more

5   likely than not – that the ultimate fact follows the narrative. *Tose*, 648 F.2d at 895; *see supra* p. 7.

6        Similarly, defendants insist that nothing in the public record "establishes" that plaintiffs'

7   telephonic communications "were intercepted on a wire in the United States," Defs. Memo. of Pts. &

8   Auth. at 18 – which makes surveillance "electronic" within the meaning of FISA. *See* 50 U.S.C. §

9   1801(f)(2). But there need only be a *logical probability* of interception on a wire in the United States.

10  The various public statements by government officials that *most* telecommunications between the

11  United States and abroad are transmitted by wire through routing stations located within the United

12  States from which they are intercepted, *see* 1806(f) Motion at 8, 18-19, demonstrate the logical

13  probability that *plaintiffs'* telecommunications were transmitted and intercepted in that manner.

14       Defendants also complain that plaintiffs are relying on what defendants variously call

15  "stitch[ed] together" inferences and a "string of inferences" to make the prima facie case of 1806(f)

16  standing. Defs.' Memo. of Pts. & Auth. at 2, 12. The law is clear, however, that "there is no rule

17  against resting convictions on lengthy chains of circumstantial proof," and there is no rule against

18  "'drawing an inference upon an inference.'" *United States v. Arteaga*, 117 F.3d 388, 399 (9th Cir.

19  1997) (quoting *Fenner v. General Motors Corp.*, 657 F.2d 647, 650 (5th Cir. 1981)). If a criminal

20  conviction can rest on a string of reasonable inferences, then certainly 1806(f) standing can rest on a

21  string of reasonable inferences.

22       Defendants further insist it is possible to infer that plaintiffs were surveilled other than on a

23  wire, or under the authority of FISA, or by human or foreign sources, or from overseas,[3] or perhaps

24

---

25  [3]      Even if plaintiffs were surveilled by foreign sources or from overseas – for example, as part
26  of an intelligence-sharing agreement with a foreign government (*see* JAMES BAMFORD, THE SHADOW
    FACTORY 212-33 (2008)) – the defendants could still be held liable under 50 U.S.C. § 1810 if the
27  surveillance was unlawful and the perpetrators committed it as willful participants in joint action
    with defendants. Under 50 U.S.C. § 1809(a)(2), it is unlawful to use "information obtained under
28  color of law by electronic surveillance, knowing or having reason to know that the information was

1  were not surveilled at all – rather than in violation of FISA. *See* Defs.' Memo. of Pts. & Auth. at 14,

2  17. In effect, defendants invoke the now-discredited "rule of equally probable inferences," which

3  posited that "if there are two or more equally probable inferences only one of which supports the

4  plaintiff a verdict must be directed for the defendant." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d

5  1321, 1324 (11th Cir. 1983). As explained in *Daniels*, however, the notion of equally probable

6  inferences has been rejected by the federal courts and "is no longer sound." *Id.* "It is immaterial that

7  evidence may equally support an inconsistent inference, if in fact fairminded men might draw from

8  the evidence the inference sought by [the opposing party]." *Id.* at 1325. "[I]t is no answer . . . to say

9  that a conflicting inference might with equal probability have been drawn." *Id.*

10      Thus, it is no answer for defendants to suggest that, when FBI Deputy Director Pistole admitted

11  publicly last year that the FBI used surveillance in connection with the 2004 investigation of Al-

12  Haramain, *see* 1806(f) Motion at 6-7, he might have been referring to surveillance of someone other

13  than plaintiffs. *See* Defs.' Memo. of Pts. & Auth. at 17. That is only, at best, an "equally probable

14  inference" (although common sense tells us it is not even that). It is at least as much a logical

15  probability (and common sense tells us it is closer to a certainty) that Pistole was referring to

16  surveillance of plaintiffs Al-Haramain, Belew and Ghafoor. This ultimate fact follows the amended

17  complaint's narrative describing the sequence of events from the commencement of the 2004

18  investigation of Al-Haramain, through the telephonic discussions between plaintiff Al-Haramain's

19  _____

20  obtained through electronic surveillance not authorized" by statute. Conduct "under color of law"
    includes situations where "private actors are willful participants in joint action with the government

21  or its agents." *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1210 (9th Cir. 2002);
    *see, e.g., Brentwood Academy v. Tennessee Secondary School*, 531 U.S. 288, 296 (2001); *Dennis*

22  *v. Sparks*, 449 U.S. 24, 27-28 (1980). This means defendants can be held liable for using foreign-
    sourced intelligence obtained through joint action if the surveillance was "electronic" as defined by

23  FISA, which includes acquisition of a wire communication "if such acquisition occurs in the United

24  States." 50 U.S.C. § 1801(f)(2). The law treats the location of a telecommunication's "acquisition"
    by electronic surveillance as being not only the location of the listening post, but also the location

25  of the telephones themselves. *See United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006);
    *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997); *United States v. Denman*, 100 F.3d 399,

26  402-03 (5th Cir. 1996); *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992). Consequently,

27  if defendants used foreign-sourced surveillance of wire telecommunications by Belew and Ghafoor
    on telephones located in the United States, then defendants violated FISA despite their outsourcing

28  of the surveillance itself.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

former director al-Buthi and plaintiffs Belew and Ghafoor concerning Ghafoor's representation of persons linked with Osama bin-Laden, to the government's subsequent declaration of direct links between Al-Haramain and Osama bin-Laden. That inference is no less reasonable than the inference that "a person who is in his home state two days before and two days after a given date would have been there on the given date." *U.S. v. Galbraith*, 20 F.3d at 1057.[4/]

It also is not enough for defendants to complain, as they do repeatedly, that plaintiffs are relying on "conjecture." Defs. Memo. of Pts. & Auth. at 2, 11, 12, 13, 17. "An inference is not unreasonable simply because it is based in part on conjecture, for an inference by definition is at least partially conjectural." *Daniels*, 692 F.2d at 1326.

Defendants contend the inference of the government's reliance on surveillance of the 2004 telephonic communications between al-Buthi and plaintiffs Belew and Ghafoor to link plaintiff Al-Haramain with al-Qaeda "is undercut by the record on which plaintiffs seek to rely." Defs. Memo. of Pts. & Auth. at 15. According to defendants, because the Treasury Department's press release of February 19, 2004, mentioned prior terrorist designations of the Bosnia, Somalia, Indonesia, Tanzania, Kenya, and Pakistan branches of the Saudi Arabia-based Al-Haramain Islamic Foundation, *see* Defs.' Exh. 9, a prior link had already been drawn between plaintiff Al-Haramain and Osama bin-Laden – as demonstrated by the press release's reference to United Nations Security Council Resolution 1267 (Oct. 15, 1999), which, defendants claim, "linked these AHIF entities to al Qaeda, Usama bin-Laden, and the Taliban." Defs.' Memo. of Pts. & Auth. at 15. Defendants similarly rely on references in the Treasury Department's press release of September 9, 2004, to 11 foreign Al-Haramain branches. *Id.*, *see* Defs.' Exh. 12.

There are two reasons why this contention is meritless. First, defendants have mischaracterized United Nations Security Council Resolution 1267. It says nothing at all about any of the Al-Haramain entities, much less linking them to Osama bin-Laden. *See* S.C. Res. 1267 (Oct. 15, 1999), *available at* http://www.state.gov/s/ct/rls/other/5110.htm. Second, the "Al-Haramain" plaintiff in this case is

---

[4/]      Nor does it help defendants to suggest that perhaps "*one* of the plaintiffs was 'aggrieved' but not the others." Defs' Memo. of Pts. & Auth. at 21 (emphasis in original). That, too, is at best just an equally probable inference.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

the *Oregon branch* of the Al-Haramain Islamic Foundation, separately organized and run as an Oregon nonprofit corporation. *See* First Amended Complaint at 1. What might have been true of the foreign branches of Al-Haramain Islamic Foundation is not necessarily true of the domestic Oregon branch. If the Oregon branch and the foreign branches had all been one and the same, their terrorist designations would have occurred simultaneously, instead of on multiple occasions over a period of years (including Bosnia and Somalia in March of 2002; Indonesia, Tanzania, Kenya, and Pakistan in January of 2004; and Oregon and the Union of the Comoros in September of 2004, *see* Defs.' Exhs. 9 & 12).[5/]

A similar problem infects defendants' discussion of FBI Deputy Director Pistole's public admission about the use of surveillance in the 2004 investigation of plaintiff Al-Haramain. Quoting Pistole's comment that "'[i]n 2000, the FBI discovered possible connections between Al Haramain and al Qaeda,'" defendants argue that this "passage indicates that the link between AHIF-Oregon and al Qaeda was first discovered in 2000." Defs.' Memo. of Pts. & Auth. at 16-17; *see* Defs.' Exh. 13. Nowhere in the quoted passage, however, did Pistole indicate that he was speaking of the *Oregon branch* of the Al-Haramain Islamic Foundation when he mentioned "possible connections" to al-Qaeda in 2000. Indeed, the contrary is suggested by Pistole's immediately-preceding reference in the quoted passage to "the Al Haramain Islamic Foundation" as "a charity based in Saudi Arabia, with branches all over the world." Defs.' Exh. 13. Moreover, it is clear from the full context of Pistole's statement that, when he admitted that the FBI "used . . . surveillance" in the investigation of plaintiff Al-Haramain, he was referring to "surveillance" as contrasted with "financial evidence" – with the financial evidence providing justification for plaintiff Al-Haramain's preliminary terrorist designation on February 19, 2004, and the surveillance providing justification for plaintiff Al-Haramain's formal terrorist designation on September 9, 2004. *Id.*; *see* 1806(f) Motion at 6-8, 16. Pistole was admitting the commission of surveillance not in 2000, but in 2004 – at precisely the time of the telephonic

---

[5/]     In a lawsuit currently pending in the Oregon federal district court – *Al-Haramain Islamic Foundation, Inc. v. United States Dept. of Treasury, et al.*, Civil Case No. 07-CV-1155-KI (D. Or. 2007) – plaintiff Al-Haramain is challenging its SDGT designation as violating due process and other constitutional rights as well as the Administrative Procedures Act.

12

discussions of Ghafoor's representations of plaintiff Al-Haramain and persons linked with Osama bin-Laden, and immediately prior to the government's declaration of links between plaintiff Al-Haramain and Osama bin-Laden.

Ultimately, defendants offer only the faulty logic of tautology and ipse dixit. The tautology is in their circular argument that the inferences plaintiffs assert are unreasonable because they are "speculation," "conjecture," and "unfounded inference" and are therefore unreasonable. Defs.' Memo. of Pts. & Auth. at 1-2, 11-20. The ipse dixit is in defendants' insistence, based on nothing more than the strength of their own claims, that "[t]here can be little doubt" that the public facts alleged in the amended complaint do not "come[] close to establishing," "do[] not remotely establish," and "do not remotely demonstrate" electronic surveillance. *Id.* at 1, 9, 11, 17. Neither approach is helpful. Both defy common sense, which tells us there is a logical probability that the ultimate fact of plaintiffs' electronic surveillance follows the narrative stated in the amended complaint.

## III. IF THIS COURT TREATS DEFENDANTS' MOTION AS PUTTING ARTICLE III STANDING AT ISSUE, THE COURT SHOULD DENY THE MOTION AS FACIAL AND HOLD IT IN ABEYANCE AS FACTUAL.

As we have explained, defendants' motion makes clear that it challenges plaintiffs' 1806(f) standing. *See supra* pp. 2-3. What is not so clear is whether defendants might have intended for their motion also to challenge plaintiffs' *Article III standing*. The reason for this ambiguity is that defendants mistakenly conflate 1806(f) standing and Article III standing, on their erroneous premise that "Article III requirements for establishing standing directly apply to determine whether a party is 'aggrieved' for purposes of the FISA." Defs.' Memo. of Pts. & Auth. at 10 n. 3. In the event this Court chooses to treat defendants' motion as also putting plaintiffs' Article III standing at issue, we next address the matter of Article III standing.

### A. As a facial attack on Article III standing, defendants' motion fails because all the elements of Article III standing may be reasonably inferred from the facts alleged in plaintiffs' amended complaint.

Here again, proper analysis turns on the distinction between facial and factual attacks on standing. *See supra* pp. 5-6. Defendants' motion is patently a *facial* attack, in which they assume the amended complaint's allegations to be true. *See supra* pp. 6-7. Consequently, upon treating the motion as a facial attack on Article III standing, this Court must assume the truth of the factual

13

allegations in plaintiffs' amended complaint and draw all reasonable inferences in plaintiffs' favor. *Warth*, 422 U.S. at 501; *Wolfe*, 392 F.3d at 362; *Lee*, 330 F.3d at 468; *American Canine Foundation*, 2007 WL at 549749, *1; *see supra* pp. 6-7.

As we have explained in plaintiffs' 1806(f) motion, plaintiffs' *1806(f) standing* consists of two elements – there must have been *surveillance*, and it must have been *electronic* – while *Article III standing* requires the third element that plaintiffs' electronic surveillance was *warrantless*. *See* 1806(f) Motion at 10-11. We have already addressed how the elements of *electronic surveillance* follow from the narrative stated in the amended complaint. *See supra* pp. 8-9. For plaintiffs to survive a facial attack on *Article III standing*, all that remains is for us to show additionally how the *warrantless* element also follows from the amended complaint's narrative. Here we make that showing, with the following facts taken from that narrative:

• The President's warrantless surveillance program – which defendants call the "Terrorist Surveillance Program" or "TSP" – was conducted without obtaining FISA warrants. *See* First Amended Complaint at 2.

• The President's warrantless surveillance program targeted persons whom defendants "believe[d]" to be "linked" or "affiliated" with al-Qaeda or related terrorist organizations. *See id.* at 2-3.

• Defendants believed that plaintiff Al-Haramain had "direct links" to Osama bin-Laden. *See id.* at 8-9.

• Defendants believed that plaintiffs Al-Haramain, Belew and Ghafoor were "a terrorist organization and two lawyers affiliated with it." *See id.* at 11.

• Defense counsel Anthony Coppolino has stated that "attorneys who would represent terrorist clients . . . come closer to being in the ballpark with the terrorist surveillance program." *See id.* at 11.[6]

---

[6] Defendants insist Mr. Coppolino was speaking only of certain plaintiffs in *American Civil Liberties Union v. National Security Agency*, 493 F.3d 644 (6th Cir. 2007). *See* Defs.' Memo. of Pts. & Auth. at 19. Mr. Coppolino's statement, however, speaks for itself. It was not limited to any particular individuals.

1   If, as this Court must accept as true on a facial attack, defendants believed that plaintiff Al-

2   Haramain was a terrorist organization with direct links to Osama bin-Laden, and defendants believed

3   that plaintiffs Belew and Ghafoor were attorneys who represented terrorist clients, and the President's

4   *warrantless* electronic surveillance program targeted organizations believed to have links to al-Qaeda

5   or related terrorist organizations and also targeted attorneys who represented terrorist clients, then it

6   logically follows that plaintiffs' electronic surveillance took place under that *warrantless* program –

7   and thus was *warrantless*. This is just plain common sense – what the law calls a reasonable inference.

8   Along with the evidence and reasonable inferences of plaintiffs' *electronic surveillance*, the

9   reasonable inference that plaintiffs' surveillance was *warrantless* dooms any facial challenge to their

10  Article III standing.

11  **B.     As a factual attack on Article III standing, defendants' motion should be held in abeyance pending this Court's determination of plaintiffs' 1806(f) motion.**

12

13  **1.     The resolution of any disputed factual issues requires a full and fair evidentiary hearing, which cannot yet occur without plaintiffs' use of the Sealed Document under section 1806(f).**

14

15  Defendants characterize their motion as being for dismissal "or, in the alternative, for summary

16  judgment." Defs.' Notice of Motion at 1. If the motion is construed as being for summary judgment

17  on plaintiffs' Article III standing, it is necessarily a *factual* attack – meaning plaintiffs must present

18  evidentiary proof of the elements of Article III standing, *Lujan*, 504 U.S. at 561, and this Court must

19  resolve any contested factual issues after holding an evidentiary hearing, *Bischoff*, 222 F.3d at 878-80;

20  *see supra* p. 2 n. 1.[7]  Plaintiffs have presented the requisite evidentiary proof in their amended

21  complaint and in the exhibits supporting their 1806(f) motion – which include direct and circumstantial

22  evidence that, along with the reasonable inferences arising therefrom, demonstrate plaintiffs'

23  warrantless electronic surveillance and thus Article III standing.[8]  Consequently, if defendants dispute

24

25  [7]     The Court can also treat defendants' dismissal motion as a factual attack on standing "without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242.

26

27  [8]     For purposes of opposing defendants' motion, plaintiffs respectfully request the Court to consider the declarations and exhibits filed in support of plaintiffs' 1806(f) motion on September 30, 2008, in lieu of a duplicative filing of identical declarations and exhibits simultaneous with the

28  filing of this opposition to defendants' motion.

15

1   any of that evidence or any of those inferences, this Court must hold an evidentiary hearing to resolve

2   those disputes.

3        Defendants' motion does not clearly indicate what, if any, factual disputes they might want this

4   Court to resolve in an evidentiary hearing. We can fairly speculate, however, from defendants'

5   assertion of "equally probable inferences," *see supra* pp. 9-10, that defendants might want to dispute,

6   for example, whether plaintiffs' communications were intercepted pursuant to a FISA warrant, or by

7   foreign sources, or from overseas, or not at all. *See* Defs.' Memo. of Pts. & Auth. at 14, 17. As to any

8   one of those potential disputed factual issues, the Sealed Document might prove to be dispositive.

9   Consequently, plaintiffs cannot have a full and fair evidentiary hearing until after this Court rules on

10  plaintiffs' 1806(f) motion and determines whether plaintiffs may use the Sealed Document as part of

11  an effort to show their Article III standing. For this reason, the Court should hold in abeyance the

12  resolution of any factual attack on plaintiffs' Article III standing pending the Court's determination

13  of plaintiffs' 1806(f) motion.

14          **2.      In a factual attack, plaintiffs may rely on reasonable inferences.**

15       Defendants contend that, in opposing a defense motion for summary judgment based on lack

16  of Article III standing, the plaintiff may not rely on inferences. *See* Defs.' Memo. of Pts. & Auth. at

17  11 ("Inferences and conjecture are not sufficient."). Again, defendants are wrong. On a summary

18  judgment motion for lack of Article III standing – as with *any* summary judgment motion – all

19  reasonable inferences from the evidence as presented are drawn in plaintiffs' favor. *See, e.g., Rawoof*

20  *v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 755 (7th Cir. 2008) (on a summary judgment motion for

21  lack of standing, courts "construe all facts and inferences drawn from them in the light most favorable

22  to the nonmoving party"); *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007) ("'we must

23  view the inferences to be drawn from the affidavits, attached exhibits and depositions in the light most

24  favorable to'" the nonmoving party); *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 219

25  (5th Cir. 1989) ("the nonmovant is granted all reasonable factual inferences"); *Rome Ambulatory*

26  *Surgical Center, LLC v. Rome Memorial Hospital, Inc.*, 349 F.Supp.2d 389, 405-06 (N.D.N.Y. 2004)

27  (summary judgment motion based on lack of standing denied because "[p]laintiff has set forth

28  sufficient facts to allow a fact finder a reasonable inference" of the elements of standing).

---
16

1    Defendants have gone astray by misinterpreting a statement in *FW/PBS, Inc. v. Dallas*, 493

2    U.S. 215 (1990), that on a motion for summary judgment based on lack of Article III standing,

3    "standing cannot be 'inferred argumentatively from averments in the pleadings,' . . . but rather 'must

4    appear affirmatively in the record.'" *Id.* at 231; *see* Defs.' Memo. of Pts. & Auth. at 10, 14.

5    Defendants construe this statement as a pronouncement that, in opposing the motion, the plaintiff may

6    not rely on reasonable inferences from the evidence. *See id.* at 11. But the case *FWI/PBS* quoted for

7    the proposition that standing cannot be "inferred argumentatively from averments in the pleadings,"

8    *Grace v. American Central Ins. Co.*, 109 U.S. 278, 284 (1883), makes clear what this statement means,

9    explaining further that "the averments *should be positive*." *Id.* (emphasis added). This means simply

10   that the complaint must *positively* – or, in more contemporary argot, *affirmatively* – allege the facts

11   necessary to show Article III standing. The *FWI/PBS* opinion even says this expressly: "Thus,

12   petitioners in the case must 'allege . . . facts essential to show jurisdiction.'" *FWI/PBS*, 493 U.S. at

13   231; *see also Bischoff,* 222 F.3d at 881 (where elements of Article III standing "are not obvious, the

14   plaintiff must plead their existence in his complaint with a fair degree of specificity"). Plaintiffs'

15   amended complaint in the present case does that: It affirmatively alleges, with ample specificity, facts

16   essential to show Article III standing – facts from which can be drawn the reasonable inferences that,

17   along with direct and circumstantial evidence, add up to the fact of plaintiffs' warrantless electronic

18   surveillance.

19       If this Court holds an evidentiary hearing to resolve disputed factual issues, the Court will not

20   be *required* to give plaintiffs the same degree of deference as on a normal summary judgment motion

21   with regard to conflicting inferences that may be drawn from the facts as resolved. *See Barrett*, 884

22   F.2d at 220 (in an evidentiary hearing on standing, "the district court is given greater latitude and

23   discretion than in a summary judgment proceeding where the district court must give deference on fact

24   questions to the nonmovant"); *supra* p. 2 n.1. But, as fact-finder, the Court *may* resolve any such

25   conflicts in plaintiffs' favor and rely on the reasonable inferences favorable to plaintiffs as a basis for

26   finding Article III standing. That is one of the fact-finder's roles in the judicial process – to resolve

27   conflicting inferences. *See, e.g., United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984) ("To the

28   trial court as trier of fact is entrusted the function of selecting from among conflicting inferences as

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

to which reasonable minds could differ.").

And that is why an evidentiary hearing on Article III standing should await the Court's decision on plaintiffs' 1806(f) motion: The Sealed Document will assist the Court in its resolution of any conflicting inferences.

### 3. On an evidentiary hearing, the burden should shift to defendants to disprove the warrantless nature of plaintiffs' electronic surveillance.

If this Court treats defendants' motion as a factual attack on Article III standing requiring an evidentiary hearing to resolve disputed factual issues, the burden should shift to defendants to prove matters that are peculiarly within their exclusive knowledge – such as whether defendants had a FISA warrant for plaintiffs' electronic surveillance. Such burden-shifting is the rule for matters peculiarly within a party's knowledge. *See, e.g., Campbell v. United States*, 365 U.S. 85, 96 (1961) ("the ordinary rule . . . does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary"); *National Communications Assn. v. AT & T Corp.*, 238 F.3d 124, 130 (2d Cir. 2001) ("all else being equal, the burden is better placed on the party with easier access to relevant information"); 9 J. WIGMORE, EVIDENCE § 2486, p. 290 (J. Chadbourn rev. ed. 1981) ("the burden of proving a fact is said to be put on the party who presumably has peculiar means of knowledge" (emphasis deleted)). Where, as here,

> 'the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party.' When a negative is averred in pleading, or plaintiff's case depends upon the establishment of a negative, . . . but when the opposite party must, from the nature of the case, himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is *manifestly just and reasonable* that the party which is in possession of the proof should be required to adduce it; or, upon his failure to do so, we must presume it does not exist, which of itself establishes a negative.

*United States v. Denver & Rio Grande Railroad Company*, 191 U.S. 84, 92 (1903) (emphasis added); *accord, United States v. Morton*, 400 F. Supp.2d 874, 879 (E.D. Va. 2005).

There is no reason to create an exception to this burden-shifting rule where the issue is Article III standing and plaintiff bears the burden of showing injury. The overarching principle behind this burden-shifting rule is *fairness*. *See ITSI TV Productions, Inc., v. Agricultural Associations*, 3 F.3d 1289, 1292 (9th Cir. 1993) ("we note the familiar principle that, 'when the true facts relating to [a]

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

disputed issue lie peculiarly within the knowledge of' one party, the burden of proof may properly be assigned to that party 'in the interests of fairness'"). It is unfair to demand that a plaintiff disprove something within the defendant's exclusive knowledge. Fairness should not be jettisoned in proceedings to determine standing. If defendants had a FISA warrant for plaintiffs' electronic surveillance, which is something only they could know, then they can simply say so – if necessary, under secure conditions as provided by section 1806(f).[2]

Defendants have not sustained this shifted burden in any of their previous public filings in this Court or the Ninth Circuit – and we assume defendants have not done so in any of their *ex parte* and *in camera* filings, or this case would have been dismissed by now. That is yet another reason for this Court to hold in abeyance any decision on a factual attack on plaintiffs' Article III standing – in order to give defendants a chance to sustain their shifted burden, rebut the evidence in the Sealed Document indicating that plaintiffs' electronic surveillance was warrantless, and produce proof (if they can) that they had a FISA warrant for plaintiffs' electronic surveillance.

## IV.  THIS COURT MAY DETERMINE THE UNLAWFULNESS OF PLAINTIFFS' SURVEILLANCE – AND THUS THEIR ARTICLE III STANDING TO SUE – BY ALTERNATIVE PROCEDURES OTHER THAN ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

No statute or rule prescribes any particular procedure for holding an evidentiary hearing to resolve factual disputes regarding Article III standing. *United States v. 1998 BMW "I" Convertible*, 235 F.3d 397, 400 (8th Cir. 2000). Thus, "the District Court has leeway as to the procedure it wishes to follow." *Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006). Here we propose several alternative procedures – other than on defendants' motion for summary judgment – that this Court might wish to consider for resolving any disputed factual issues regarding plaintiffs' Article III standing.

//

//

//

---

[2] Defendants cannot invoke the state secrets privilege as trumping such burden-shifting, now that this Court has ruled that section 1806(f) preempts the state secrets privilege.

**A.    Subsections (f) and (g) of FISA section 1806 authorize this Court to determine the unlawfulness of plaintiffs' surveillance upon granting them access to the Sealed Document.**

One possible procedural alternative in the context of the present case is unique to FISA litigation – a determination whether surveillance "was lawfully authorized and conducted," pursuant to procedures prescribed by subsections (f) and (g) of FISA section 1806.

Plaintiffs' 1806(f) motion seeks access to the Sealed Document for the purpose of showing Article III standing.  Section 1806(f) authorizes this Court, in deciding that motion, not only to grant plaintiffs such access under secure conditions, but also to review the Sealed Document *in camera* and *ex parte* "as may be necessary to determine whether the surveillance of the aggrieved person *was lawfully authorized and conducted*." 50 U.S.C. § 1806(f) (emphasis added).  This language indicates that the Court may *actually decide* on an 1806(f) motion whether electronic surveillance was unlawful. That indication is confirmed by section 1806(g), which states that if the court "*determines* that the surveillance was not lawfully authorized or conducted, it shall . . . grant the [1806(f)] motion of the aggrieved person." 50 U.S.C. § 1806(g) (emphasis added).  As explained in *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991), a plaintiff is entitled to obtain materials relating to electronic surveillance if "the district court, in an *ex parte, in camera* proceeding, first *determined* that the surveillance was not 'lawfully authorized and conducted,'" which "could mean that the ultimate issue in the case *would be decided* before discovery." *Id.* at 469 (emphasis added).[10/]

---

[10/]    Defendants note that the court in *Barr* refused to require disclosure of surveillance under section 1806(f). *See* Defs.' Memo. of Pts. & Auth. at 22.  That refusal, however, was in the context of an attempt to obtain injunctive relief against *ongoing* surveillance – not damages for past surveillance, which a district court in a related case had already found to have been lawful. *See Barr*, 952 F.2d at 465, 467. The *Barr* court observed: "Insofar as FISA is concerned, however, problems of a different sort arise when plaintiffs file actions seeking injunctive relief against allegedly *ongoing* foreign security surveillance.  If the government is forced to admit or deny such allegations, in an answer to the complaint or otherwise, it will have disclosed sensitive information that may compromise critical foreign intelligence activities." *Id.* at 468 (emphasis added).  (Defendants have quoted only the latter sentence, not the former. *See* Defs.' Memo. of Pts. & Auth. at 22.)  That observation casts no doubt on the notion that a district judge may determine the lawfulness of *past* surveillance on an 1806(f) motion – which is in effect what the *Barr* court said in the very next paragraph of its opinion by observing that a plaintiff is entitled to obtain materials relating to unlawful surveillance if "the district court, in an *ex parte, in camera* proceeding, first determined that the surveillance *was not 'lawfully authorized and conducted*.'" 952 F.2d at 469 (emphasis added).

20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

Consequently, if this Court grants plaintiffs access to the Sealed Document under section 1806(f), the Court can proceed to decide – still on the 1806(f) motion – whether plaintiffs were subjected to unlawful electronic surveillance in violation of FISA. The evidentiary hearing essential to resolve any disputed factual issues pertaining to Article III standing can occur in conjunction with the 1806(f) proceedings – as easily as in conjunction with defendants' alternative motion for summary judgment – under the guiding principle that "the District Court has leeway as to the procedure it wishes to follow," *Alliance For Environmental Renewal*, 436 F.3d at 88, and "'any rational mode of inquiry will do,'" *1998 BMW "I" Convertible*, 235 F.3d at 400.

**B.    If defendants have secretly told this Court that plaintiffs were surveilled in violation of FISA, then the Court can forthwith find Article III standing on the 1806(f) motion and proceed to decide whether the President has power to disregard FISA.**

There is another possible procedural alternative here, one which had not become apparent to plaintiffs until defendants filed their present motion. Defendants' memorandum of points and authorities contains something that defendants have only now made public – a description of the substantive contents of their previous secret filings with this Court: "The Government has previously provided the Court, for *in camera, ex parte* review, classified information in support of the state secrets privilege which *sets forth the actual facts regarding whether or not plaintiffs have been subject to surveillance.*" Defs.' Memo. of Pts. & Auth. at 20 n. 7 (emphasis added). Evidently, defendants may have *already told this Court*, in secret, "whether or not plaintiffs have been subject to surveillance." *Id.*

We do not know quite what to make of this new revelation. One would think that if defendants had already told the Court that plaintiffs have *not* been subjected to surveillance, the Court would not have found it necessary to decide the issues the Court decided in its order of July 2, 2008. Logic suggests that, if anything, defendants have told the Court that plaintiffs *have* been subjected to surveillance, and perhaps even that the surveillance was warrantless. If that is the case, then this Court may already have all the information it needs to rule forthwith – without any further proceedings on the 1806(f) motion, and without an evidentiary hearing – that plaintiffs have Article III standing, and to proceed to adjudicate this lawsuit on the merits and decide whether the President has power to

1   disregard FISA. If the Court wishes to proceed in that manner, plaintiffs will of course have no
2   objection.

3       **C.      The Court may defer adjudication of Article III standing until the close of
                  evidence in a trial on the merits or until decision on a motion by plaintiffs for
4                 summary judgment or adjudication.**

5       Yet another procedural alternative is for the Court to defer adjudication of Article III standing
6   until the close of evidence in a trial on the merits. This procedure is preferred "where the evidence
7   concerning standing overlaps with evidence on the merits." *Alliance For Environmental Renewal*, 436
8   F.3d at 88. That is the situation here: If the "warrantless," "electronic," and "surveillance" elements
9   of Article III standing are demonstrated, then defendants' liability on the merits will likewise be
10  demonstrated.

11      We do not, however, believe that this case need ever go to trial on the merits. Defendants'
12  liability on the merits can be summarily decided on a motion for partial summary judgment of liability
13  pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. That means plaintiffs' Article III
14  standing likewise can be decided on a Rule 56(c) motion, since the evidence concerning Article III
15  standing and liability overlaps. Analogous to a decision on standing at the close of evidence in a trial
16  on the merits – that is, immediately *before* a decision on the merits, which can never precede the
17  determination of standing – this Court can determine Article III standing on a Rule 56(c) motion
18  immediately before ruling on liability.

19      A similar procedural alternative would be summary adjudication of standing under Rule 56(d)
20  of the Federal Rules of Civil Procedure, which we anticipated in our 1806(f) motion. *See* 1806(f)
21  Motion at 11. That procedure, however, would not seem to be much different, as a practical matter,
22  than going forward on defendants' alternative summary judgment motion after a decision on plaintiffs'
23  1806(f) motion.

24  **V.      DEFENDANTS HAVE NOT TIMELY REQUESTED CERTIFICATION OF AN
              INTERLOCUTORY APPEAL FROM THE ORDER OF JULY 2, 2008.**
25
        Finally, we briefly address defendants' re-argument of the issues this Court previously decided
26
    in its order of July 2, 2008 – FISA preemption of the state secrets privilege, sovereign immunity, and
27
    prospective relief. *See* Defs. Memo. of Pts. & Auth. at 23-25. We assume the Court does not wish
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

1   to reconsider its prior rulings – or at least does not desire further briefing on those issues – and thus

2   we stand on our prior briefing of those issues and on the Court's order of July 2, 2008.

3           We do note, however, that defendants have now – and not until now – suggested that if this

4   Court is "inclined to proceed under FISA Section 1806(f), the parties should address first whether it

5   would be appropriate for the Court to certify the case for appellate review" under 28 U.S.C. section

6   1292(b), for the Ninth Circuit to address the issues this Court decided on July 2, 2008. Defs.' Memo.

7   of Pts. & Auth. at 25 n. 15. Defendants have not actually *requested* this Court's permission to appeal

8   under section 1292(b) – they only indicate that they might do so later. As of this writing, however, it

9   has been *three and a half months* since this Court ruled on those issues, yet defendants have offered

10  no explanation for their delay in pursuing an interlocutory appeal.

11          Although section 1292(b) does not prescribe a time limit for requesting a district judge's

12  permission to appeal under section 1292(b), the judge "should not grant an inexcusably dilatory

13  request." *Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957,

14  958 (7th Cir. 2000). Any delay in seeking such permission "'must be reasonable.'" *Century Pacific,*

15  *Inc. v. Hilton Hotels Corp.*, 2008 WL 2276701, *2 (S.D.N.Y. 2008) (quoting *Morris v. Flaig*, 511

16  F.Supp.2d 282, 314 (E.D.N.Y. 2007)). Courts have found unexplained delays of two to five months

17  to be unreasonable. *See, e.g., Richardson Electronics,* 202 F.3d at 958 (two months); *Weir v. Probst,*

18  915 F.2d 283, 287 (7th Cir. 1990) (five months); *Century Pacific,* 2008 WL at 2276701, *2 ("almost

19  four months"); *Green v. City of New York*, 2006 WL 3335051, *2 (E.D.N.Y. 2006) ("more than two

20  month[s]"); *Ferraro v. Secretary of HHS*, 780 F.Supp. 978, 979 (E.D.N.Y. 1992) ("nearly two and a

21  half months").

22          Defendants have had more than enough time to pursue a section 1292(b) appeal from this

23  Court's order of July 2, 2008. Given defendants' unexplained delay, the Court should deny any future

24  request by defendants for permission to appeal on the issues the Court decided in that order.

25  //

26  //

27  //

28  //

## CONCLUSION

For the foregoing reasons, we respectfully request this Court to deny defendants' motion as a facial attack on plaintiffs' standing to invoke section 1806(f). If the Court treats defendants' motion as a facial attack on plaintiffs' Article III standing, we likewise ask the Court to deny the motion. If the Court treats defendants' motion as a factual attack on plaintiffs' Article III standing, we ask the court to hold the motion in abeyance until after the Court's decision on plaintiffs' pending 1806(f) motion, and to consider the alternative procedures proposed in this memorandum for determining the unlawfulness of plaintiffs' surveillance.

DATED this 23rd day of October, 2008.

_/s/ Jon B. Eisenberg_

Jon B. Eisenberg, Calif. Bar No. 88278
William N. Hancock, Calif. Bar No. 104501
Steven Goldberg, Ore. Bar No. 75134
Thomas H. Nelson, Oregon Bar No. 78315
Zaha S. Hassan, Calif. Bar No. 184696
J. Ashlee Albies, Ore. Bar No. 05184
Lisa Jaskol, Calif. Bar No. 138769

**Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew, and Asim Ghafoor**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW

# CERTIFICATE OF SERVICE

**RE:** **In Re National Secrurity Agency Telecommunications Records Litigation**
**MDL Docket No. 06-1791 VRW**

I am a citizen of the United States and employed in the County of San Francisco, State of California. I am over eighteen (18) years of age and not a party to the above-entitled action. My business address is Eisenberg and Hancock, LLP, 180 Montgomery Street, Suite 2200, San Francisco, CA, 94104. On the date set forth below, I served the following documents in the manner indicated on the below named parties and/or counsel of record:

• **PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

____ **Facsimile** transmission from (415) 544-0201 during normal business hours, complete and without error on the date indicated below, as evidenced by the report issued by the transmitting facsimile machine.

____ **U.S. Mail**, with First Class postage prepaid and deposited in a sealed envelope at San Francisco, California.

<u>XX</u> **By ECF:** I caused the aforementioned documents to be filed via the Electronic Case Filing (ECF) system in the United States District Court for the Northern District of California, on all parties registered for e-filing in In Re National Secrurity Agency Telecommunications Records Litigation, Docket Number M:06-cv-01791 VRW, and *Al-Haramain Islamic Foundation, Inc., et al. v. Bush, et al.*, Docket Number C07-CV-0109-VRW.

I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service, and said correspondence would be deposited with the United States Postal Service at San Francisco, California that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 23, 2008 at San Francisco, California.

_____
JESSICA DEAN

PLAINTIFFS' OPPOSITION TO DEFENDANTS' THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
MDL DOCKET NO. 06-1791 VRW