1  GREGORY G. KATSAS
   Assistant Attorney General, Civil Division
2  CARL J. NICHOLS
   Principal Deputy Associate Attorney General
3  JOHN C. O'QUINN
   Deputy Assistant Attorney General
4  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
5  JOSEPH H. HUNT
   Director, Federal Programs Branch
6  ANTHONY J. COPPOLINO
   Special Litigation Counsel
7  ALEXANDER K. HAAS
   Trial Attorney
8  U.S. Department of Justice
   Civil Division, Federal Programs Branch
9  20 Massachusetts Avenue, NW, Rm. 6102
   Washington, D.C. 20001
10 Phone: (202) 514-4782—Fax: (202) 616-8460

11 *Attorneys for the Government Defendants*

12

           UNITED STATES DISTRICT COURT
13
           NORTHERN DISTRICT OF CALIFORNIA
14

15 IN RE NATIONAL SECURITY AGENCY          ) No. M:06-CV-01791-VRW
   TELECOMMUNICATIONS RECORDS              )
16 LITIGATION                              ) **GOVERNMENT DEFENDANTS'**
                                           ) **OPPOSITION TO PLAINTIFFS'**
17 This Document Solely Relates To:        ) **MOTION PURSUANT TO**
                                           ) **50 U.S.C. § 1806(f) TO DISCOVER**
18 *Al-Haramain Islamic Foundation et al.* ) **OR OBTAIN MATERIAL RELATED**
      *v. Bush, et al.*  (07-CV-109-VRW)   ) **TO ELECTRONIC SURVEILLANCE**
19                                         )
                                           ) Date:        December 2, 2008
20                                         ) Time:        10:00 a.m.
                                           ) Courtroom:   6, 17th Floor
21 _____) Honorable Vaughn R. Walker

22

23

24

25

26

27

28  **Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
    **50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
    ***Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)**

Dockets.Justia.com

# TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY HAVE FAILED
    TO ESTABLISH THEIR STANDING TO PROCEED. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Plaintiffs' Motion to Invoke Section 1806(f) Proceedings Cannot be
        Considered Until After They Establish That They Are Aggrieved
        Persons Under the FISA and Satisfy Article III Standing Requirements. . . . . . 3

    B.  Plaintiffs Must Satisfy Article III Standing Requirements to Establish
        Whether They Are Aggrieved Persons Under the FISA. . . . . . . . . . . . . . . . . . . 4

    C.  Plaintiffs' Proposed Standard of Review for Establishing Whether
        They Are Aggrieved Persons Under the FISA Would Conflict With
        Section 1806(f), Article III Requirements, and the State Secrets Privilege. . . . 7

    D.  Evidence on The Public Record Cited by Plaintiffs Does Not Establish
        that They Are Aggrieved Persons Under the FISA and Have Article III
        Standing to Proceed Under Section 1806(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II. PLAINTIFFS' SECTION 1806(f) MOTION SHOULD ALSO BE
    DENIED BECAUSE SECTION 1806(f) OF THE FISA DOES NOT
    APPLY TO PERMIT AN ADJUDICATION OF PLAINTIFFS'
    STANDING IN THE CIRCUMSTANCES OF THIS CASE. . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)**          -i-

**CASES**                                                                                    **PAGE(S)**

*ACLU Foundation v. Barr,* 952 F. 2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Al-Haramain v. Bush*, 507 F. 3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 12

*Alderman v. United States,* 394 U.S. 165 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 21, 22

*Allen v. Wright*, 468 U.S. 737(1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*American Civil Liberties Union v. National Security Agency,*
        493 F.3d 644 (6th Cir. 2007), *cert. denied*, 128 S.Ct. 1334 (2008) . . . . 5, 6, 12, 13, 14, 17

*American Foreign Serv. Ass'n v. Garfinkle,* 490 U.S. 153 (1989) . . . . . . . . . . . . . . . . . . . . . . .  20

*American Foreign Serv. Ass'n v. Garfinkle*, 732 F. Supp. 13 (D.D.C. 1990) . . . . . . . . . . . . . . 21

*Campbell v. United States*, 365 U.S. 85 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dep't of Navy v. Egan,* 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Dorfmont v. Brown,* 913 F.2d 1399 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ellsberg v. Mitchell,*
        709 F.2d 51 (D.C. Cir. 1983),  *cert. denied*, 465 U.S. 1038 (1984) . . . . . . . . . . . . . . .  23

*FW/PBS, Inc. v. Dallas,* 493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 11

*Goldstein v. United States*, 316 U.S. 114 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Halkin v. Helms,* 598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Grand Jury Investigation,* 431 F. Supp. 2d 584 (E.D. Va. 2006) . . . . . . . . . . . . . . . . . . . 10

*In re Grand Jury Investigation (Doe),* 437 F.3d 855 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 8

*In re Grand Jury Proceedings,* 856 F.2d 685 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Grand Jury Proceedings (Garcia-Rosell),* 889 F.2d 220 (9th Cir.1989) . . . . . . . . . . . . . . 8

*In re Grand Jury Proceedings (Garrett),*773 F.2d 1071 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . 8

*In Re: Grand Jury Proceedings of the Special April 2002 Grand Jury,*
        347 F.3d 197 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*In re Grand Jury Witness (Whitnack),* 544 F.2d 1245 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . 8

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C.  §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
***Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)**                                    -ii-

*In re Grand Jury (Worthington),* 799 F.2d 1321 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re: Guantanamo Detainee Cases,* 2008 WL 4181249 (D. D.C. Sept. 11, 2008) . . . . . . . . . 23

*In re National Security Agency Telecommunications Records Litigation, Al-Haramain Islamic Found. v. Bush,* 564 F. Supp. 2d 1109 (N.D. Cal. July 2, 2008) . . . . . . . passim

*In re Sealed Case,* 310 F.3d 717 (For. Intel. Surv. Rev. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Sealed Case (Horn),* 494 F.3d 139 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14

*ITSI TV Productions Inc. v. Agricultural Associations,* 3 F.3d 1289 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kasza v. Browner,* 133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*National Fed'n of Federal Employees v. United States,* 688 F. Supp. 671 (D. D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rakas v. Illinois,* 439 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . 6, 11

*Sterling v. Tenet,* 416 F.3d 338 (4th Cir. 2005), *cert. denied,* 126 S. Ct. 1052 (2006) . . . . . . . . . . . . . . . 23

*Stillman v. Central Intelligence Agency,* 319 F.3d 546 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . 23

*United States v. Abu-Jihaad,* 531 F. Supp. 2d 299 (D. Conn. 2008) . . . . . . . . . . . . . . . . . . . 9, 22

*United States v. Alter,* 482 F. 2d 1016 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Belfield,* 692 F.2d 141 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Cavanagh,* 807 F.2d 787 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Damrah,* 412 F.3d 618 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Denver & Rio Grade Railroad Company,* 191 U.S. 84 (1903) . . . . . . . . . . . . 14

*United States v. Duggan,* 743 F.2d 59 (2nd Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Hamide,* 914 F.2d 1147 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Johnson,* 952 F.2d 565 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Mubayyid,* 521 F. Supp. 2d 125 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Ott,* 827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)** -iii-

*United States v. Posey*, 864 F.2d 1487 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*United States v. See*, 505 F.2d 845 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Warsame*, 547 F. Supp. 2d 982 (D. Minn. 2008) . . . . . . . . . . . . . . . . . . . . . 9, 22

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
     454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Warth v. Seldin*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTORY LAW

18 U.S.C. § 3504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

50 U.S.C. § 1801(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

50 U.S.C. § 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## LEGISLATIVE HISTORY

H.R. Rep. No. 95-1283, 95th Cong. 2d Sess . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

S. Rep. No. 95-604, 95th Cong. 2d Sess., pt. 1, at 56 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

S. Rep. 95-701, 1978 U.S.C.C.A.N. 3973, 4031 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9-10, 21

## ORDERS

Exec. Order No. 12,958, §§ 4.1(a), 4.2(a), 5.4(d)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Exec. Order No. 13,292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)** -iv-

# INTRODUCTION

The Government Defendants oppose plaintiffs' Motion Pursuant to 50 U.S.C. § 1806(f) to Discover or Obtain Material Related to Electronic Surveillance (hereafter "Pls. Mem.") for the same reasons set forth in the Government's pending motion to dismiss or for summary judgment: plaintiffs have not established their standing to proceed, and Section 1806(f) does not apply when the state secrets privilege prevents the disclosure of information relating to whether or not plaintiffs have been subjected to the alleged surveillance they challenge. *See* Memorandum in Support of Defendants' Third Motion to Dismiss or for Summary Judgement (hereafter "Defs. Third MSJ").

Far from establishing their standing with public information as the Court has required, plaintiffs choose to present a series of untenable arguments. Plaintiffs contend that whether they are "aggrieved persons" under the Foreign Intelligence Surveillance Act ("FISA"), *see* 50 U.S.C. § 1801(k), is not an issue of standing at all; that standing be adjudicated "later"; and, relying on a proposed "prima facie" standard, that they be allowed to proceed for now based on "reasonable inferences" drawn from "circumstantial evidence" and to shift the burden of proof on standing to the defendants to require the disclosure of whether or not plaintiffs have been subject to surveillance under the FISA. Plaintiffs also demand access to and the use of the classified sealed document to attempt to prove their standing.

Plaintiffs' position at this stage is meritless. Whether plaintiffs are "aggrieved persons" under the FISA is unquestionably an issue of Article III standing, and even if it were a distinct statutory issue, plaintiffs still bear the burden of satisfying Article III standing requirements at an "irreducible minimum" before the case can proceed under the FISA. Moreover, the question of standing is before the Court now, and the conjectural inferences and speculation on which plaintiffs seek to rely clearly do not satisfy Article III requirements, particularly at the summary judgment stage. It is plaintiffs' burden of proof to establish their standing; it is not the Government's burden to *disprove* their standing. And plaintiffs' demand to use the classified sealed document in an effort to prove their standing under Section 1806(f) has already been

---

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)**

precluded by the Ninth Circuit and by this Court.

Ultimately, plaintiffs fail to present any public evidence establishing they were subject to the alleged warrantless surveillance they challenge in this case—indeed, they effectively concede that they have no such evidence. The Court held in its July 2 decision that plaintiffs had failed to establish their standing based on publicly available information, and the additional public evidence now cited by plaintiffs certainly does not compel a different result. In conjunction with the Ninth Circuit's decision upholding the Government's state secrets privilege assertion, that should now be the end of this case.

To the extent the Court contemplates further proceedings, the Government Defendants continue to oppose application of Section 1806(f) of the FISA in this case. *See* Defs. Third MSJ Mem. at 20-23, 24. The Government objects in particular to any disclosure of classified information to the plaintiffs, including the sealed document excluded by the Ninth Circuit, and to any further use of that document. Plaintiffs' motion underscores the serious risks presented by further proceedings under Section 1806(f)—indeed, plaintiffs *seek* the disclosure of privileged information to them in an effort to prove their standing. *See Al-Haramain v. Bush*, 507 F.3d at 1190, 1204 (9th Cir. 2007) (disclosure of sources and methods of intelligence gathering in the context of this case "would undermine the government's intelligence capabilities and compromise national security.").

The discretion to invoke Section 1806(f) belongs to the Attorney General, and under the present circumstances—where there has been no final determination that those procedures apply in this case to overcome the Government's successful assertion of the state secrets privilege, and where serious risks of harm to national security are at stake—the Attorney General has not done so. The Court can and should avoid the significant and complex issues raised by any attempt to apply Section 1806(f) here by finding that the public evidence on which plaintiffs seek to rely simply does not establish their standing. Otherwise, the appropriate course would be to certify the matter for further review to avoid any potential for an improper disclosure of privileged information and the resulting harm to national security.

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)**                    -2-

## I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY HAVE FAILED TO ESTABLISH THEIR STANDING TO PROCEED.

### A. Plaintiffs' Motion to Invoke Section 1806(f) Proceedings Cannot be Considered Until After They Establish That They Are Aggrieved Persons Under the FISA and Satisfy Article III Standing Requirements.

The first and most obvious response to plaintiffs' Section 1806(f) motion is that the relief plaintiffs seek cannot be considered until *after* plaintiffs have established their standing as "aggrieved persons" based on public evidence, as the Court has previously required. The Court held in its July 2 decision that a litigant could not use Section 1806(f) to discover in the first instance whether it was "aggrieved"—*i.e.*, the target of or subject to surveillance—but, instead, "must first establish himself as an 'aggrieved person' before seeking to make a 'motion or request'" under 1806(f). *See In re National Security Agency Telecommunications Records Litigation, Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109, 1134-35 (N.D. Cal. July 2, 2008).

Moreover, in light of the Ninth Circuit's decision upholding the Government's state secrets privilege assertion, this Court precluded the plaintiffs from attempting to establish their aggrieved status through the use of the classified sealed document that had been inadvertently disclosed to them.

> [T]he court of appeals, applying the state secrets privilege, has unequivocally ruled that plaintiffs in the current posture of the case may not use "the Sealed Document, its contents, and any individuals memories of its contents, even well reasoned speculation as to its contents." [*Al-Haramain v. Bush*, 507 F. 3d 1190, 1204 (9th Cir. 2007)]. ***Plaintiffs must first establish "aggrieved person" status without the use of the Sealed Document and may then bring a "motion or request" under § 1806(f) in response to which the attorney general may file an affidavit opposing disclosure.***

*Al-Haramain*, 564 F. Supp. 2d at 1134 (emphasis added). The Court held that "independent

---

[1] The Government Defendants' Third Motion to Dismiss or for Summary Judgment and Memorandum in Support at 3-8 sets forth the pertinent background of the case. *See* Dkt. 475 (MDL 06-cv-1791-VRW) (Sept. 30, 2008). Because Government Defendants anticipated and addressed many of the arguments plaintiffs raise in their Section 1806(f) Motion, this Opposition should be read in conjunction with the Government's pending motion.

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -3-

evidence disclosing that plaintiffs have been surveilled" is required, and that "[t]o proceed with their FISA claim, plaintiffs must present to the court enough specifics based on non-classified evidence to establish their 'aggrieved person' status under FISA." *Id*. at 1135.

Accordingly, plaintiffs' Section 1806(f) motion cannot be considered until *after* they have established that they are "aggrieved persons" under the FISA and, thus, have Article III standing. Moreover, plaintiffs cannot use this very motion to seek leave to use the sealed document to attempt to make that showing. Instead, relying solely on public information as the Court required, plaintiffs must establish their Article III standing with non-speculative proof that they actually suffered the alleged injury. As set forth below, plaintiffs clearly have failed to do so.

> **B. Plaintiffs Must Satisfy Article III Standing Requirements to Establish Whether They Are Aggrieved Persons Under the FISA.**

In order to avoid their burden of proof on summary judgment, plaintiffs argue that status as an "aggrieved person" under Section 1806(f) "is not the same as the broader requirement of *standing to sue* under FISA." *See* Pls. Mem. at 10. Plaintiffs cite no authority for this proposition and they are wrong. As noted in the Government's opening motion, *see* Defs. Third MSJ at 10, n.3, the phrase "aggrieved person" was imported into FISA from section 2510 of Title III, Omnibus Crime Control and Safe Streets Act of 1968. *See* S. Rep. No. 95-604, 95th Cong. 2d Sess., pt. 1, at 56 (1978) (an "aggrieved person" in FISA is "defined to coincide with the definition . . . in section 2510 of title III."); S. Rep. 95-701, 1978 U.S.C.C.A.N. 3973, 4031 (1978). And the Supreme Court has recognized that the term "aggrieved person" in Title III "should be construed in accordance with existent standing rules." *See Alderman v. United States*, 394 U.S. 165, 176 n.9 (1969). When Congress enacted FISA's "aggrieved person" provision it expressly contemplated that only those with standing could possibly be aggrieved. *See* H.R. Rep. No. 95-1283, 95th Cong. 2d Sess., pt.1, at 66 (1978) ("As defined, the term [aggrieved person] is intended to be *coextensive*, but no broader than, those persons who have *standing* to raise claims under the Fourth Amendment with respect to electronic surveillance.") (emphasis added).

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -4-

Thus, contrary to plaintiffs' suggestion, it is precisely the principles of standing that give meaning to the term "aggrieved persons" under Title III and the FISA. Among the issues addressed by the Supreme Court in *Alderman* was whether individuals could invoke the exclusionary rule to suppress evidence against them that was the product of unlawful surveillance of someone else. The Court rejected such an expansion of that rule, relying on several prior decisions holding that only a person "aggrieved" by an unlawful search or seizure had standing to challenge a search as in violation of the Fourth Amendment. *See* 394 U.S. at 966 (citing, *inter alia*, *Goldstein v. United States*, 316 U.S. 114, 121 (1942) ("federal courts in numerous cases have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction of evidence of that which was seized")). The Court in *Alderman* noted that the term "aggrieved person" was derived from Fed. Rule Crim. Proc. 41(e), and that Congress expressly intended that it "should be construed in accordance with existing standing rules." *See id.* at 176, n.9; *see also United States v. Ott*, 827 F.2d 473, 474 (9th Cir. 1987) (where Government sought to introduce FISA surveillance evidence, defendant is an "aggrieved person *with standing* to bring a motion to suppress" pursuant to Section 1806(e) of the FISA) (emphasis added); *American Civil Liberties Union v. National Security Agency*, 493 F.3d 644, 683 (6th Cir. 2007) (finding that plaintiffs lacked standing to raise claims under the FISA because they cannot establish that are "aggrieved persons"—a requirement that is coextensive with those persons who have standing), *cert. denied*, 128 S.Ct. 1334 (2008); *United States v. Posey*, 864 F.2d 1487, 1491 (9th Cir. 1987) (plaintiff challenging an application of the FISA as violation of the Fourth Amendment "must show that the particular search in his case violated the Fourth Amendment").[2]

More fundamentally, the notion plaintiffs advance—that a party may proceed in litigation if they can satisfy a statutory requirement (such as the definition of "aggrieved person" under the

---

[2] This Court itself stated that "[a]n aggrieved party must be able to produce evidence sufficient to establish *standing* to proceed as an 'aggrieved party' and, later, to withstand motions for dismissal or summary judgment." *Al-Haramain*, 564 F. Supp. 2d at 1131 (emphasis added).

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -5-

FISA) without also satisfying Article III standing requirements—is clearly wrong.  Wholly apart from the meaning of "aggrieved person" under the FISA—indeed, even if plaintiffs were correct that this is not an issue of Article III "standing"—Article III standing requirements still would have to be satisfied for this case to proceed.  The Supreme Court has long made clear that "at an irreducible minimum," Article III standing requirements apply in any case.  *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Even where courts specifically consider the distinct question of prudential standing, which concerns whether the "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief," Article III standing requirements remain and must be satisfied.  *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975).  That is, even if a party could show that the interest they seek to vindicate falls within the interest protected or regulated by statute, that would not be "an affirmative means of establishing standing."  *ACLU v. NSA*, 493 F.3d at 677 n. 35 (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984); *Valley Forge*, 454 U.S. at 474-75).  Where the actual or threatened injury "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing," the minimum Article III standing requirements still apply and "serve to limit the role of the courts in resolving public disputes." *See Warth,* 422 U.S. at 500.   Accordingly, Article III standing requirements must be satisfied before this case can proceed, even if that question were somehow distinct from whether plaintiffs are "aggrieved persons" under the FISA (which it clearly is not).

As the Government Defendants have set forth in detail, to establish Article III standing, the requisite injury must be "concrete and particularized," and "actual or imminent," not "conjectural" or "hypothetical."  *See* Defs. Third MSJ at 9-10 (citing *Lujan*, 504 U.S. at 560; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).  Moreover, this is not an issue to be adjudicated "later" as plaintiffs contend.  A party who seeks to invoke the jurisdiction of the court bears the burden of establishing Article III standing, *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998); *FW/PBS,*

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                                    -6-

*Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Warth*, 422 U.S. at 508, and must do so at each "successive stages of the litigation," *Lujan*, 504 U.S. at 561, including in particular by supporting their standing with non-speculative evidence at the summary judgment stage, *see id.* As the Government made clear in its opening motion, we do not merely challenge the sufficiency of plaintiffs' *allegations* of standing in their First Amended Complaint, but also challenge on summary judgment the sufficiency of the facts on which plaintiffs as wholly inadequate to establish their standing. *See* Defs. Third MSJ at 2, 10, 14; *see also* Defendants' Notice of Motion at 2 ("Government Defendants are now entitled to summary judgment on the grounds that the evidence set forth in plaintiffs' First Amended Complaint fails to establish that the plaintiffs are "aggrieved persons" under the FISA and, thus, have standing to adjudicate any claim under Section 1806(f).").

As set forth below, the alternative standard of review that plaintiffs propose is unfounded as a matter of law, and the public evidence on which plaintiffs rely is built on conjecture and speculation and, thus, fails to establish their Article III standing.

C.    **Plaintiffs' Proposed Standard of Review for Establishing Whether They Are Aggrieved Persons Under the FISA Would Conflict With Section 1806(f), Article III Requirements, and the State Secrets Privilege.**

In lieu of Article III standing requirements, plaintiffs propose a different standard for establishing whether they are "aggrieved persons" under the FISA: that they must produce "unclassified prima facie evidence, direct and/or circumstantial, sufficient to raise a reasonable inference on a preponderance of evidence that they were subject to electronic surveillance." *See* Pls. Mem. at 12. Plaintiffs come up with this proposed standard by stitching together phrases and concepts that are not applicable to either Section 1806(f) or Article III standing requirements. Indeed, so far as we are aware, no court has ever used Section 1806(f) in the manner plaintiffs now propose—to seek discovery of evidence that is alleged to relate to electronic surveillance, in the face of a successful state secrets privilege assertion, based on a mere assertion of "reasonable inferences" that may amount to no more than a "prima facie" case of "aggrieved" status. If this were a proper application of Section 1806(f), it would open a

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)**                                    -7-

floodgate of litigation whereby anyone who believes he can "infer" from "circumstantial evidence" that he was subject to electronic surveillance could compel a response by the Attorney General under Section 1806(f) and seek discovery of the matter through *ex parte*, *in camera* proceedings. That simply is not how Section 1806(f) works and never has worked.[3]

Plaintiffs first rely on cases applying 18 U.S.C. § 3504, *see* Pls. Mem. at 12 (citing *United States v. See*, 505 F.2d 845 (9th Cir. 1974), and *United States v. Alter*, 482 F. 2d 1016 (9th Cir. 1973)). Plaintiffs specifically cite *Alter* for the proposition that they need only make a "prima facie" showing of electronic surveillance under Section 1806(f). But the standards for applying Section 3504 do not apply to Section 1806(f). As the Government has set forth previously, Section 3504 applies where the Government seeks to use evidence against a witness that is alleged to derive from unlawful surveillance[4] and, in that context, permits a party against whom evidence is being used to attempt to adduce enough evidence to require the Government to confirm or deny alleged surveillance. *See* 18 U.S.C. § 3504; *see also* Defs. Third MSJ at 21-22; Defs. Second MSJ Reply at 17-20.

Section 1806(f) of the FISA contains no comparable provision that would require the Government to confirm or deny alleged surveillance based upon some sort of prima facie showing. As defendants have set forth, Section 1806(f) establishes procedures to determine the lawfulness of acknowledged surveillance in proceedings where surveillance evidence is or may be used against an aggrieved person. *See* Defs. Second MSJ Mem. at 16-22. This occurs where

---

[3] The very exercise of fabricating a standard for utilizing a statutory provision that has been on the books for 30 years and has never been used in the manner that plaintiffs now propose should itself demonstrate that the provision does not apply in this manner.

[4] *See, e.g.*, *In re Grand Jury Investigation (Doe)*, 437 F.3d 855, 858 (9th Cir. 2006) (Under 18 U.S.C. § 3504, "[a] grand jury witness may refuse to answer questions based on illegal interception of his communication."); *In re Grand Jury Proceedings (Garcia-Rosell)*, 889 F.2d 220, 223 (9th Cir.1989) (per curiam) (same); *In re Grand Jury (Worthington)*, 799 F.2d 1321, 1323 (9th Cir. 1986); *In re Grand Jury Proceedings (Garrett)*, 773 F.2d 1071, 1072 (9th Cir. 1985) (per curiam) (same); *see also In re Grand Jury Witness (Whitnack)*, 544 F.2d 1245, 1247 (9th Cir. 1976) (Kennedy, C.J., concurring) (Government has no duty to affirm or deny surveillance under Section 3504(a) where grand jury inquiry is based on independent evidence).

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -8-

the Government itself provides notice pursuant to Section 1806(c) of the FISA, 50 U.S.C.

§ 1806(c), that it will use surveillance evidence in a proceeding, or acknowledges surveillance in

response to a motion to suppress evidence.  *See* 50 U.S.C. § 1806(g).[5]  In addition, a motion "to

discover or obtain . . . materials related to electronic surveillance" under Section 1806(f) cannot

be read, in the context of Section 1806, to permit a party to discover *whether* they have been

subject to surveillance.  *See* 50 U.S.C. § 1806; Defs. Second MSJ Reply at 11-22.  On the

contrary, such motions fit neatly within the statutory scheme after notice is provided by the

Government of the use of surveillance in a proceeding or in support of suppression motions.

*See*, *e.g. United States v. Warsame*, 547 F. Supp. 2d 982, 984-86 (D. Minn. 2008) (motion to

disclose materials related to FISA surveillance brought after Government provides notice of use

of FISA surveillance evidence); *United States v. Abu-Jihaad*, 531 F. Supp. 2d 299, 300-301 (D.

Conn. 2008) (same).

A different interpretation that allows a party to use Section 1806(f) to discover whether

they have been subject to surveillance, as plaintiffs now propose, would read the notice

requirement out of Section 1806 of the FISA—contrary to the clear intent of Congress and

authority applying that provision.  Congress gave the Government the discretion to protect

sensitive intelligence sources and methods by choosing not to use of any surveillance-based

evidence in a proceeding.  *See* Defs. Second MSJ Mem. at 20-21 (citing S. Rep. No. 95-701 at

---

5   *See*, *e.g.*, *Ott*, 827 F.2d at 474 (Section 1806(f) applied where Government informed defendant it intended to introduce certain evidence obtained from FISA surveillance); *United States v. Cavanagh*, 807 F.2d 787, 789 (9th Cir. 1987) (government acknowledged that plaintiff was an aggrieved person with standing to challenge compliance with the FISA); *United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005) (Section 1806(f) applied where Government admitted audio tapes of FISA surveillance during trial); *United States v. Johnson*, 952 F.2d 565, 571-73 (1st Cir. 1992) (same); *United States v. Duggan*, 743 F.2d 59 (2nd Cir. 1984) (Government provided notice of use of surveillance evidence under Section 1806(c) and Section 1806(f) applied in response to motion to suppress); *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) (Section 1806(f) applied where Government acknowledges FISA surveillance in response to criminal defendants' request for disclosure).

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)**                          -9-

65, 1978 U.S.C.C.A.N. 4027 (1978) (Report of the Select Committee on Intelligence)).[6/]

Moreover, the Foreign Intelligence Surveillance Court of Review has observed that where the Government does not intend to use surveillance evidence, "the need to preserve secrecy for sensitive counterintelligence sources and methods justifies elimination of the notice requirement." *In re Sealed Case*, 310 F.3d 717, 741 (For. Intel. Surv. Rev. 2002). Other courts have also held that the FISA does not operate to compel the Government to provide notice of surveillance. *See ACLU Foundation v. Barr*, 952 F. 2d 457, 469 n. 13 (D.C. Cir. 1991); *see also In re Grand Jury Investigation,* 431 F. Supp. 2d 584 (E.D. Va. 2006) (denying notice under FISA Section 1806(c) of whether grand jury witnesses had been subject to the Terrorist Surveillance Program); *In re Grand Jury Proceedings*, 856 F.2d 685, 688 (4th Cir. 1988) (grand jury witness not entitled to notice of alleged FISA surveillance). Thus, Section 1806(f) cannot be read to operate like Section 3504 as plaintiffs now propose. Section 1806(f) applies only where the Government has decided to acknowledge surveillance either under Section 1806(f) itself or in response to a Section 3504 motion, *see, e.g.*, *United States v. Hamide*, 914 F.2d 1147, 1148-50 (9th Cir. 1990), but not otherwise, *see Barr*, 952 F. 2d at 469 n.13; *see also* Defs. Third MSJ at 21-22; Defs. Second MSJ at 18; Defs. Second MSJ Reply at 16-19 & n. 22.

For these reasons, plaintiffs' contention that it would "make nonsense" of Section 1806(f) to require that, in order to "get evidence that proves you were surveilled, you must first prove you were surveilled," misses the point. Section 1806(f) is not designed or intended to allow someone "to get evidence that proves you were surveilled"—particularly where evidence on the matter has been successfully protected in order to prevent harm to national security.

---

[6] Indeed, the Report of the House Permanent Select Committee on Intelligence that accompanied the House version of the Foreign Intelligence Surveillance Act of 1978 indicates that, where the need to determine legality of surveillance arises "incident to discovery in a civil trial," the court should grant the discovery motion only in accordance with the requirements of law" which, the report says, would include law "respecting civil discovery." *See* H.R. Rep. No. 95-1283, Pt. 1, 95th Cong., 2d Sess., at 90-94. This passage of the report indicates that the disclosure of information concerning alleged surveillance in civil cases would be governed in part by applicable privileges, such as the state secrets privilege, that would protect information from disclosure.

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)**                    -10-

Indeed, the Court already has held that plaintiffs must establish their aggrieved status through independent, publicly available evidence. *See Al-Haramain*, 564 F. Supp. 2d at 1135.

As part of their unfounded effort to impute Section 3504 principles to Section 1806(f), plaintiffs specifically argue that the burden of proof to disprove standing must be shifted to the Government Defendants. *See* Pls. Mem. at 10 (arguing that "when the time comes" to adjudicate standing "the burden of proof must be shifted to *defendants* to show that the electronic surveillance was *not* warrantless—*i.e.*, that it was authorized by the FISA—because it is within defendants' exclusive knowledge whether they had a FISA warrant."). But the law is clear that a party seeking to invoke a court's subject matter jurisdiction must bear the burden of proof, including by showing that he has Article III standing at each successive stage of proceedings. *Steel Co.*, 523 U.S. at 104; *FW/PBS*, 493 U.S. at 231; *Warth*, 422 U.S. at 508. This burden cannot be shifted to defendants to disprove standing in response to a prima facie showing by plaintiffs, even where the evidence may be within the defendants' exclusive knowledge, and especially where that information has been properly protected by an assertion of privilege. The cases on which plaintiffs rely for this proposition are either inapposite or support the Government's position.

Plaintiffs first rely on *In re Sealed Case* (*Horn*), 494 F.3d 139 (D.C. Cir. 2007) (hereafter "*Horn*") as a example of a case in which a plaintiff "was able to overcome the state secrets privilege by making a prima facie showing without using privileged information" based on "circumstantial evidence" and "reasonable inferences." *See* Pls. Mem. at 14-15. That description of *Horn* is wide of the mark. *Horn* did not involve an issue of standing; the state secrets privilege assertion was upheld in that case, not "overcome"; and the court ruled that, if state secrets were needed to present a prima facie case, then the case must be dismissed.

In *Horn*, plaintiff was an official of the Drug Enforcement Agency stationed in Burma, who filed a *Bivens* action against Government officials for alleged electronic eavesdropping of a private phone call after plaintiff discovered a classified cable that allegedly contained a transcript of the call. *See* 494 U.S. at 141. The Government intervened and asserted the state secrets

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                      -11-

privilege with respect to portions of two classified investigations that had been conducted in response to plaintiffs' allegations, and moved to dismiss on the grounds that (i) plaintiff could not make out a prima facie case without the privileged material; (ii) the state secrets privilege deprived the defendants of information required in their defense; and (iii) the very subject matter of plaintiffs' complaint is a state secret. *See id*. at 142. The Government's privilege assertion was upheld by the district court and not challenged on appeal. *See id*. at 141, 144-45. The issue considered by the D.C. Circuit to which plaintiffs refer was whether the excluded state secrets were so central to plaintiffs' prima facie case that dismissal was required. The court held that, based on the non-privileged evidence about the incident available to the plaintiff, including non-privileged details of the matter in the investigative reports that were not subject to the Government's privilege assertion, the plaintiff had alleged sufficient facts to survive a motion to dismiss under Rule 12(b)(6) as to one defendant. *See id*. at 145-48. But the court also made clear that the case still may be dismissed if state secrets are found to be necessary for plaintiffs to establish a prima facie case or for a valid defense, *see id*. at 153.

This case is in a much different posture than *Horn* and specifically concerns the proof required to establish standing. The Ninth Circuit has already held that information concerning whether or not plaintiffs were subject to the alleged surveillance must be excluded from this case and that, accordingly, plaintiffs cannot establish their standing unless Section 1806(f) is somehow applicable. *Al-Haramain*, 507 F. 3d at 1204-05. This Court has ruled that, in attempting to establish their standing under Section 1806(f), plaintiffs cannot rely on privileged information but must establish standing with non-classified, public information. *Al-Haramain*, 564 F. Supp. 2d at 1134-35. *Horn* clearly does not support the proposition that, where actual proof needed to establish standing is excluded under the state secrets privilege, a plaintiff could still proceed based on "reasonable inferences" drawn from circumstantial evidence and shift the burden to the Government to disprove standing by *revealing* information subject to the state secrets privilege.

Likewise, plaintiffs' reliance on *ACLU v. NSA*, *supra*, for the proposition that it need

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                                    -12-

only show a "probability" of surveillance by a preponderance of the evidence, is both puzzling and meritless; indeed, application of the holding in that case would require dismissal of plaintiffs' claims. In *ACLU*, the Sixth Circuit held—like the Ninth Circuit in this case—that plaintiffs could not establish standing to challenge alleged warrantless surveillance under the Terrorist Surveillance Program because information concerning whether or not they were subject to the TSP was protected by the state secrets privilege. *See ACLU*, 493 F.3d at 650, 655, 673 n.32, 675 n.33 (Batchelder, J.) and at 692-93 (Gibbons, J.). As Judge Gibbons put it: "[t]he disposition of all of the plaintiffs' claims depends upon the single fact that the plaintiffs have failed to provide evidence that they are personally subject to the TSP. Without this evidence, on a motion for summary judgment, the plaintiffs cannot establish standing for any of their claims, constitutional or statutory." *See id.* at 689; *see also id.* at 691 ("On summary judgment, however, the plaintiffs mere allegations are insufficient, and although the publicly admitted information about the TSP "supports" them . . . it does not satisfy the plaintiffs' burden.").[7]

The Court in *ACLU* also rejected standing based on plaintiffs' attempt to establish by affidavit that they had a "reasonable . . . well founded belief" that they were being intercepted under the TSP on the ground, *inter alia*, that they represented individuals suspected by the Government of being associated with al Qaeda, and talked to those individuals overseas in connection with that representation, and, thus, were "the types of people targeted by the NSA" under the TSP. *See id.* at 653. Plaintiffs here make a similar argument with respect to their March 2004 communications. *See* Pls. Mem. at 5-6, 17 (alleging that plaintiffs spoke with an official of AHIF-Oregon about the financing of attorney fees for defendants in a lawsuit brought by families of 9/11 victims, and their conversations included references to Osama bin-Laden). But, as the court held in *ACLU*, the mere possibility that a party may have been subject to TSP surveillance based on such a showing, or fell within a group of people that may be more likely to

---

[7] In particular, the court in *ACLU* recognized that a party asserting a Fourth Amendment violation as a result of an alleged unlawful surveillance must specifically establish that he was *personally* subject to the alleged surveillance. *See ACLU*, 493 F.3d at 673 (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)); *accord Posey*, 864 F.2d at 1491.

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -13-

be subject to TSP surveillance, still does not establish that there were in fact subject to the TSP and, thus, have standing to challenge alleged surveillance under that program. *See ACLU*, 493 F.3d at 662 (possibility that plaintiffs' overseas contacts were subject to the TSP "is still a tenuous basis for proving a *concrete* and *actual* injury") (original emphasis).

The *ACLU* case also demonstrates that, even if information that may establish standing is within the exclusive control of the Government, the burden of proof for establishing standing is not shifted. Indeed, even if a "prima facie" standard were applicable to establish standing at the summary judgment stage, the mere fact that the burden of proof may shift still would not negate a party's right to protect privileged information or serve to require its disclosure. Privileged evidence is "completely removed from the case," and, where needed to make a prima facie case or defend against such a case, dismissal is required. *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998); *Horn*, 494 F.3d at 153. Thus, where evidence has been properly protected by privilege, the burden cannot be shifted in any event to require its disclosure, and nothing in Section 1806(f) would require such an outcome.[8]

> **D.     Evidence on the Public Record Cited by Plaintiffs Does Not Establish that They Are Aggrieved Persons Under the FISA and Have Article III Standing to Proceed Under Section 1806(f).**

The Court stated in its July 2 decision dismissing plaintiffs' original complaint that

---

[8]  Other authority plaintiffs cite for their "burden shifting" theory has nothing to do with establishing subject matter jurisdiction and is equally inapposite. *Campbell v. United States*, 365 U.S. 85, 86-98 (1961), concerned whether the Jencks Act required disclosure of an FBI interview report in a criminal case and whether, in deciding that question, an FBI agent who made the report should have been called to testify about a matter peculiarly within his knowledge, as opposed to requiring the defendant to rely solely on examination of the interviewee. *United States v. Denver & Rio Grade Railroad Company*, 191 U.S. 84, 89-92 (1903), involved whether, under applicable statutory provisions, the burden of proof on the merits of a conversion claim concerning whether the destruction of timber was necessary for the construction and repair of a railway was on the timber company or the Government bringing the claim. *ITSI TV Productions Inc. v. Agricultural Associations*, 3 F.3d 1289, 1291-92 (9th Cir. 1993), concerned whether the burden of proof for sustaining an Eleventh Amendment immunity assertion was on the defendant state government agencies, and the court held that it was because such an immunity claim was in the nature of an affirmative defense and did not relate to subject matter jurisdiction. None of this authority suggests that the burden of proof for establishing standing under Article III can be shifted to the defendants.

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                                    -14-

plaintiffs had failed to establish their standing based on public information, but granted plaintiffs an opportunity to cite further information on the public record in an effort to do so. *See Al-Haramain,* 564 F. Supp. 2d at 1135. It should now be apparent, however, that none of the additional public evidence plaintiffs cite in their First Amended Complaint or in their pending motion, even if take as true, remotely establishes that plaintiffs have been subject to the alleged warrantless surveillance at issue in this case. Indeed, plaintiffs acknowledge, as they must, that they are merely "inferring" that conclusion from this public information and demand that the Government confirm or deny their inferences in Section 1806(f) proceedings. *See id.* at 17, 18. But the kind of speculation and conjecture on which plaintiffs rely is clearly insufficient under Article III standing requirements, particularly at the summary judgment stage, and the law neither shifts the burden to the defendants nor permits the discovery of classified evidence under Section 1806(f).[9]

Plaintiffs begin by asserting that the Deputy Director of the FBI, John Pistole, "publicly *admitted* . . . that the defendants used surveillance in 2004 in the investigation of Al-Haramain." *See* Pls. Mem. at 16 (original emphasis). But that simply is not a complete or accurate rendition of what the Deputy Director Pistole said. *See* Defs. Third MSJ Mem. at 16-17.[10] As Defendants have previously demonstrated, those statements did not indicate whether any surveillance evidence used in the investigation of Al-Haramain-Oregon included surveillance of the *plaintiffs* rather than some other person or persons, let alone that there had been electronic surveillance of the plaintiffs under the TSP or the FISA in March 2004. *See id.* There is a significant and material difference between acknowledging that some form of "surveillance" of some person or persons was among the tools used in some undisclosed fashion at some point in an investigation

_____

[9] The Government Defendants have already analyzed at length the public evidence on which plaintiffs now rely, *see* Defs. Third MSJ Mem. at 3-8; 11-20, and respond herein to the main points raised in plaintiffs' motion.

[10] The full of the quote of Deputy Director Pistole's speech indicates that the FBI began developing evidence linking Al-Haramain to al Qaeda as far back as 2000, well before the TSP and the alleged conversations. *See* Defs. Third MSJ Mem. at 16-17.

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -15-

of an entity with world-wide connections, and confirming or denying whether or not particular individuals or entities were targeted for electronic surveillance, which would reveal specific intelligence sources and methods. Plaintiffs concede they are speculating as to what Deputy Director Pistole's general reference to "surveillance" must mean. *See* Pls. Mem. at 16 ("Pistole did not tell is *what* was surveilled" and "for that piece of the puzzle" plaintiffs rely on other evidence, discussed *infra*). But none of the other public evidence that plaintiffs seek to draw together supplies any missing "proof" of the alleged surveillance of the plaintiffs. Plaintiffs cite public statements indicating that:

* The TSP targeted al-Qaeda communications; *see* Pls. Mem. at 2, 17.

* The preliminary designation of Al-Haramain did not refer to Osama bin-Laden, *see id*. at 4, 17.

* Classified information was relied upon in the investigation of Al-Haramain during a time when the TSP was operative. *See id.* at 4, 6, 17.

* During the time of the investigation of Al-Haramain, in March and April of 2004, plaintiffs Belew and Ghafoor participated in international calls with representatives of Al-Haramain and discussed attorney fees associated with a case brought by families of the 9/11 victims, as well as persons linked to Osama bin-Laden. *See id.* at 5-6, 17.

* Subsequently, the formal designation of Al-Haramain in September 2004 referred to a direct link between AHIF-Oregon and bin-Laden. *See id.* at 6, 17.

*See* Pls. Mem. at 17.

From these facts, plaintiffs conclude that the Government "surveilled *Belew and Ghafoor's international communications with al-Buthi in March and April 2004*, relied on that information to issue the formal designation of Al-Haramain as an SDGT organization based on purported 'direct links' to bin-Laden." *See* Pls. Mem. at 17-18 (original emphasis). But nothing plaintiffs cite comes close to establishing this conclusion. Plaintiffs' "inference" is pure speculation that does not establish that they were subject to the alleged surveillance and cannot support Article III standing.

Plaintiffs also continue to cite a statement by the undersigned counsel concerning the scope of the TSP during district court proceedings in *ACLU v. NSA*. *See* Pls. Mem. at 18. But, as we have previously explained, *see* Defs. Third MSJ at 18-19, that statement concerned one set

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                                    -16-

of plaintiffs in the *ACLU* case—the attorney-plaintiffs in that case who alleged that they did speak directly with al-Qaeda—and goes on to indicate that, even if the communications of some of the *ACLU* plaintiffs were in the "ballpark" of what the TSP targeted (communications related to al Qaeda), this still was not sufficient to establish standing—a position upheld by the Sixth Circuit. *See ACLU v. NSA, supra.*

Plaintiffs' related contention that, if there were any surveillance, it had to be *electronic* surveillance subject to the FISA,[11] is based entirely on plaintiffs' own interpretation of public testimony by Government officials concerning legislation to revise the Foreign Intelligence Surveillance Act concerning how the interception of communications that pass through the United States on a wire would fall within the definition of electronic surveillance under the FISA. *See* Pls. Mem. at 18. The notion that these statements establish that *plaintiffs* were intercepted, or, if they were, that the interception occurred on a wire in the United States in accord with the precise definition of electronic surveillance under the FISA, or, if that did occur, that such an interception was undertaken without a warrant, is specious. *Nothing* in the cited public statements remotely establishes whether, where, when, how, or against whom any surveillance under the TSP occurred. Such information is protected by the Government's

---

[11] *See* 50 U.S.C. § 1801(f) defining electronic surveillance to mean: (1) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire or radio communication sent by or intended to be received by a particular, known United States person who is in the United States, if the contents are acquired by intentionally targeting that United States person, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes; (2) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire communication to or from a person in the United States, without the consent of any party thereto, if such acquisition occurs in the United States, but does not include the acquisition of those communications of computer trespassers that would be permissible under section 2511(2)(i) of Title 18; (3) the intentional acquisition by an electronic, mechanical, or other surveillance device of the contents of any radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, and if both the sender and all intended recipients are located within the United States; or (4) the installation or use of an electronic, mechanical, or other surveillance device in the United States for monitoring to acquire information, other than from a wire or radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes.

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -17-

privilege assertion, and plaintiffs admit that they are simply speculating as to what they believe is "probable."

Finally, plaintiffs try to give themselves a "pass" on attempting to prove whether any alleged surveillance of them in March 2004 (if any) was *warrantless* surveillance under the TSP. As indicated above, even assuming there had been surveillance in this case—which again the Government cannot confirm or deny—plaintiffs concede they do not know if any such surveillance was warrantless, and argue that they need not prove this to establish their standing to proceed. *See* Pls. Mem. at 10. But the *very injury alleged in this case* is having been subjected to alleged warrantless surveillance. Plaintiffs are not challenging alleged surveillance that occurred under the FISA; they are not challenging any alleged surveillance that may have occurred outside the United States and not subject to the specific definition of electronic surveillance under the FISA. Their claim instead is that plaintiffs Belew and Ghafoor were intercepted under the TSP without a warrant in March 2004. *See* First Amended Complaint ¶ 17, 52(a), 58, 60, 62, 64, 66 (challenging alleged warrantless surveillance of the plaintiffs under the TSP). Despite this, plaintiffs would leave for "later" whether they have standing to raise this claim, and seek to compel defendants to prove or disprove the matter in Section 1806(f) proceedings on the theory that information is within the Governments exclusive control.

In so doing, plaintiffs again concede they do not know whether they have been injured by the alleged warrantless surveillance they challenge;[12] they concede that only the Government

_____

[12] Plaintiffs have previously conceded this point on the record during summary judgment proceedings before Judge King:

> THE COURT: . . . [H]ow are you going to show that any surveillance in this case was warrantless?
>
> MR. EISENBERG: That is a very interesting question, and we pondered that a lot. I would like to think that if they had a FISA warrant, that [the Government] would have told us quite a while back, so we wouldn't be wasting any more time.
>
> THE COURT: Well, [the Government] may feel that's a state secret . . . .

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -18-

can prove or disprove this claimed injury; they thus concede they have not—and cannot—establish whether they have been subject to the alleged surveillance at issue based on public evidence; and they seek to invoke Section 1806(f) to discover information protected by the states secrets privilege in order to attempt to do so. In short, plaintiffs have plainly failed to establish their standing under Article III with public evidence as required by the Court. And, as reiterated herein, Section 1806(f) of the FISA does not apply to permit plaintiffs to discover whether or not they have been subject to surveillance.

## II. PLAINTIFFS' SECTION 1806(f) MOTION SHOULD ALSO BE DENIED BECAUSE SECTION 1806(f) OF THE FISA DOES NOT APPLY TO PERMIT AN ADJUDICATION OF PLAINTIFFS' STANDING IN THE CIRCUMSTANCES OF THIS CASE.

Finally, aside from the fact that plaintiffs have failed to establish their standing to proceed as "aggrieved persons" under the FISA, their motion should also be denied because Section 1806(f) does not apply in this case—and should not be applied—for all the reasons previously set forth by the Government. Specifically, the Government holds to its position that Section 1806(f) of the FISA does not preempt the state secrets privilege, but applies solely where the Government has acknowledged the existence of surveillance in proceedings where the lawfulness of evidence being used against someone is at issue. *See* Defs. Second MSJ Mem. at 16-22. In addition, the Government maintains that a motion "to discover or obtain . . . materials related to electronic surveillance" under Section 1806(f) cannot be read, in the full context of Section of 1806, to permit a party to discover whether they have been subject to surveillance.

---

> MR. EISENBERG: It could be, and then we have a bit of a problem. I believe the simple way, how do we know it was warrantless? Discovery. . . . I think the simple answer is we ask them, "Did you have a FISA warrant?"

Transcript, 8/29/06 at 60:6-61:9; *see also id*. at 96:20-97:2 ([MR. EISENBERG]: "If there has been a warrant in this case, I have to *assume* that the Government would have told your Honor in the secret declarations we are not privy to. And I am going to *assume further*, Your Honor, in light of what transpired here today, that the Government has not told Your Honor in classified confidence that there . . .were warrants in this case.") (emphasis added). Plaintiffs obviously do not know whether they were subject to warrantless surveillance and seek to use Section 1806(f) to discover whether they have been.

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -19-

*See* Defs. Second MSJ Reply at 11-22. Likewise, the Government maintains that Section 1806(f) does not permit a party to establish its "aggrieved" status under the FISA based on public evidence in face of a successful state secrets privilege, which excludes from evidence whether or not that party has been subject to surveillance. *See* Defs. Third MSJ at 20-23.

Most importantly, further proceedings under Section 1806(f) would inherently risk or require disclosure of the very information that has been excluded from this case and, thus, cause the harms to national security that have already been recognized by the Ninth Circuit. *See Al-Haramain*, 507 F.3d at 1204 (disclosure of sources and methods of intelligence gathering in the context of this case "would undermine the government's intelligence capabilities and compromise national security."); *see also* Defs. Second MSJ at 22-25 (attempting to decide standing or the merits even in secret proceedings under Section 1806(f) would inherently risk or require disclosure of the very facts protected by privilege).

Because plaintiffs have failed to establish Article III standing, the Court can and should continue to avoid the parties' significant dispute over application of Section 1806(f) in this case. Indeed, in an analogous circumstances, the Supreme Court directed a district court to consider whether changed circumstances had affected the Court's jurisdiction in order to avoid a serious constitutional question. *See American Foreign Serv. Ass'n v. Garfinkle*, 490 U.S. 153, 158 (1989) ("*AFSA*") ("[i]n spite of the importance of the constitutional question of whether [the statute] impermissibly intrudes upon the Executive's constitutional authority to regulate the disclosure of national security information—indeed partly because of it . . ."—the Supreme Court directed the district court on remand to "decide first whether the controversy is sufficiently live and concrete to be adjudicated and whether it is an appropriate case for equitable relief").[13]/

---

[13] At issue in *AFSA* were statutory restrictions imposed by Congress on a confidentiality agreement required by the Executive branch before access is granted to classified information. *See id*. at 157. Plaintiffs challenged the Government's compliance with those restrictions, and the district court held that the statute unconstitutionally interfered with the President's constitutional authority to protect national security information. *See National Fed'n of Federal Employees v. United States*, 688 F. Supp. 671, 683-85 (D. D.C. 1988). Upon a direct appeal, the Supreme Court vacated and remanded and, on remand, the district court found that the statute

**Government Defendants' Opposition to Plaintiffs' Motion Pursuant to**
**50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance**
*Al-Haramain v. Bush* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)** -20-

The appropriate course here would be for the Court to first consider the issue of standing and grant summary judgment for defendants on that issue.

However, if the case is not dismissed for lack of standing at this point, the impact of the Court's July 2 decision would come to the fore, and further proceedings would necessarily hinge on the Court's conclusion that FISA Section 1806(f) preempts the Government's successful privilege assertion. The Government respectfully requests that the Court not proceed down this risky and unchartered path. This is not a routine case that can proceed to the merits where important legal questions decided in interlocutory orders can remain in the background until any appeal after final judgment, if necessary. At stake now is whether a successful privilege assertion that would otherwise require dismissal is preempted by statutory procedures that, in the Government's view, not only do not apply as a matter of law, but would inherently risk or require the very harms to national security recognized by the Ninth Circuit.

The discretion to invoke Section 1806(f) belongs to the Attorney General, and under the present circumstances—where there has been no final determination that those procedures apply in this case to overcome the Government's successful assertion of privilege and where serious harm to national security is at stake—the Attorney General has not done so.[14] Section 1806(f)

_____

and legislative history were inconclusive as to whether the Executive's use of the confidentiality agreement had been barred by Congress and noted that the Government's reading of the statute at issue "allowed this Court to follow the Supreme Court's directive and to avoid the constitutional issue." *American Foreign Serv. Ass'n v. Garfinkle*, 732 F. Supp. 13, 16 (D.D.C. 1990).

[14] Plaintiffs have previously argued that the "choice" granted the Government under Section 1806(f) is between the filing of an affidavit by the Attorney General to trigger Section 1806(f) or facing "mandatory" or "unrestricted" disclosure of surveillance information, *see* Plaintiffs Opposition to Defendants Second Motion to Dismiss or for Summary Judgment, (Dkt. 435, MDL-06-cv-1791-VRW) (March 28, 2008) at 13. This is not correct. The reference to "mandatory disclosure" in the legislative history of Section 1806(f) refers to the circumstances presented in *Alderman v. United States*, 394 U.S. 165 (1969), which involved the use of acknowledged surveillance and the question of whether records of unlawful surveillance "must be surrendered *in order for the defendant to make an intelligent motion on the question of taint*." *See* S. Rep. No. 95-701, at 65 (emphasis added). Any disclosure to a moving party of materials related to electronic surveillance under Section 1806(f) would apply solely in the that circumstance—where a court is evaluating the lawfulness of acknowledged surveillance in

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -21-

does not grant the Court jurisdiction to invoke those procedures on its own to decide a claim or grant a moving party access to classified information, and any such proceedings would raise would raise serious constitutional concerns. *See Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) (the protection of national security information lies within the discretion of the President under Article II). In particular, the Government would oppose and seek to litigate plaintiffs access to classified information in this case, including the sealed document. *See id.* (the decision to grant or deny access to such information rests exclusively within the discretion of the Executive); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990). So far as we are aware, no Court has ever granted a moving party access to information concerning electronic surveillance in a Section 1806(f) proceeding, even where that provision is applicable to adjudicate the lawfulness of surveillance evidence being used against someone.[15]

In addition, Executive Orders governing access to classified information provide that such information may be disclosed only where an agency is able to determine that doing so is "'clearly consistent with the interests of the national security,'" *see Dorfmont*, 913 F.2d at 1401 (quoting *Egan*, 484 U.S. at 528), and where an agency official with appropriate authority concludes that an individual has a demonstrated "need to know" the information in connection with the performance of a "governmental function" that is "lawful and authorized" by the agency. *See* Exec. Order No. 12,958, §§ 4.1(a), 4.2(a), 5.4(d)(5), 6.1(z), *as amended by* Exec. Order No. 13,292. The act of bringing a civil suit against the United States does not create a

connection with the use of evidence against the moving party. *See, e.g.,United States v. Mubayyid*, 521 F. Supp. 2d 125, 130-31 (D. Mass. 2007). And, as noted above, no court has ever ordered the disclosure of such materials even in this context. *See Warsame*, 547 F. Supp. 2d at 987; *Abu-Jihaad*, 531 F. Supp. 2d at 310. Neither *Alderman* nor the FISA imposes a mandatory obligation on the Government to disclose whether or not alleged surveillance has even occurred where Section 1806(f) is not invoked or otherwise. Any such statutory requirement or application of Section 1806(f) would plainly conflict with the state secrets privilege and present serious constitutional concerns.

[15] *See In Re: Grand Jury Proceedings of the Special April 2002 Grand Jury,* 347 F.3d 197, 203 (7th Cir. 2003) (recognizing that no courts applying Section 1806(f) have ordered the disclosure of surveillance materials); *Warsame*, 547 F. Supp. 2d at 987 (same); *Abu-Jihaad*, 531 F. Supp. 2d 299 at 310 (same).

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -22-

"need to know" classified information that might be involved in the case,[16/] and courts in similar circumstances have rejected the kind of request for access to classified information that the plaintiffs now make.[17/]

The Court can and should avoid the inherent risks of disclosure and serious constitutional questions that would be raised in any Section 1806(f) proceeding by finding, as it should, that the public evidence on which plaintiffs seek to rely does not establish their standing under Article

---

[16] The Government's decision to grant security clearances to counsel for detainees at Guantanamo Bay in connection with pending habeas proceedings, *see* Pls. Mem. at 20 and the Declaration of Shayana Kadidal, is irrelevant to this case. Those proceedings concern whether individuals will continued to be detained by the Government, and the Government has voluntarily permitted access to certain limited classified information that will be used in evidence as it deems appropriate—a markedly different circumstance from this case, where a party has filed a civil action to compel disclosure of classified information. Security clearances were also granted in part because counsel for the detainees would be receiving sensitive information pertaining to national security from the detainees themselves that could not be disclosed—and the court entered a protective order to bar counsel for the detainees from disclosing any of the classified information they receive. *See In re: Guantanamo Detainee Cases*, 2008 WL 4181249 * 9 (D. D.C. Sept. 11, 2008). In addition, regardless of the type of evidence, security clearances were also required for practical reasons: Guantanamo Bay is a secure military facility and could not be accessed by private counsel without a clearance. The protective order entered in the Guantanamo habeas cases specifically provides that the Government is not required to disclose classified information in that matter, as plaintiffs in this case now demand. *See id.* ¶ 48 of Protective Order ("Nothing herein shall require the government to disclose classified information."). Accordingly, the fact that the Government has granted private counsel access to certain classified information in the habeas cases has no bearing on whether the Government should or must grant access in this case involving an entirely different type of proceeding, different issues of law, and different national security information.

[17] *See Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005) (denying special accommodations such as, *inter alia*, giving private counsel access to classified information), *cert. denied*, 126 S. Ct. 1052 (2006); *Stillman v. Central Intelligence Agency*, 319 F.3d 546, 548 (D.C. Cir. 2003) (district court abused its discretion by unnecessarily deciding that a plaintiff has a First Amendment right for his attorney to receive access to classified information to assist the court in resolving the plaintiff's challenge to the classification"); *Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983) (finding that the rule denying access to classified information to private counsel is "well settled" and that "our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer . . . or to the coercive power of a protective order."), *cert. denied*, 465 U.S. 1038 (1984); *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) (rejecting plaintiffs' argument that counsel should have been permitted to participate in the *in camera* proceedings below).

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)                    -23-

III.  And to the extent the Court concludes that the case should proceed under Section 1806(f), the appropriate course would be to certify the matter for further review to avoid any potential for an improper disclosure of the privileged information and resulting harm to national security.  *See* Defs. Third MSJ at 25, n.15.

## CONCLUSION

For the foregoing reasons, plaintiffs' Section 1806(f) motion should be denied, the Government Defendants' Third Motion to Dismiss or for Summary Judgment should be granted, and this case should now be dismissed.

Dated: October 23, 2008              Respectfully Submitted,

GREGORY G. KATSAS
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Principal Deputy Associate Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

   *s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

ALEXANDER K. HAAS
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

Government Defendants' Opposition to Plaintiffs' Motion Pursuant to
50 U.S.C. §1806(f) to Discover or Obtain Materials Related to Electronic Surveillance
*Al-Haramain v. Bush* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)      -24-