SIDLEY AUSTIN LLP
David W. Carpenter*
Bradford A. Berenson*
David L. Lawson*
Edward R. McNicholas*
Eric A. Shumsky #206164
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
bberenson@sidley.com

WILMER CUTLER PICKERING
HALE AND DORR LLP
Randolph D. Moss*
Samir C. Jain # 181572
Brian M. Boynton # 222193
Catherine M.A. Carroll*
1875 Pennsylvania Ave, N.W.
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
randolph.moss@wilmerhale.com

WILLIAMS & CONNOLLY
LLP
Brendan V. Sullivan, Jr. *
John G. Kester
Gilbert Greenman*
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
jkester@wc.com

Attorneys for the Sprint
Defendants

* admitted pro hac vice

PILLSBURY WINTHROP
SHAW PITTMAN LLP
Bruce A. Ericson  #76342
Jacob R. Sorensen #209134
Marc H. Axelbaum #209855
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120
Tel.: (415) 983-1000
Fax: (415) 983-1200
bruce.ericson@pillsburylaw.com

MUNGER, TOLLES & OLSON
LLP
Henry Weissmann # 132418
Susan R. Szabo # 155315
Aimee A. Feinberg # 223309
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071
Tel.: (213) 683-9100
Fax: (213) 683-5150
henry.weissmann@mto.com

Attorneys for AT&T Corp.          Attorneys for the Verizon Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: | MDL NO. 06-1791 VRW |
| NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | **BRIEF OF TELECOMMUNICATIONS CARRIER DEFENDANTS IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |
| This Document Relates To All Cases Except: | |
| *Al-Haramain Islamic Foundation, Inc. v. Bush*, No. 07-00109; *Center for Consti-tutional Rights v. Bush*, No. 07-01115; *Guzzi v. Bush*, No. 06-06225; *Shubert v. Bush*, No. 07-00693; *Clayton v. AT&T Commc'ns of the Southwest*, No. 07-01187; *United States v. Adams*, No. 07-01323; *United States v. Clayton*, No. 07-01242; *United States v. Palermino*, No. 07-01326; *United States v. Rabner*, No. 07-01324; *United States v. Volz*, No. 07-01396* | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION AND SUMMARY ............................................................................ 1

ARGUMENT ................................................................................................................ 3

I.  SECTION 802 DOES NOT VIOLATE THE SEPARATION OF POWERS .................... 3

    A.  Section 802 Does Not Deprive Plaintiffs Of A Remedy For Claimed Constitutional Violations Or Prevent This Court From Adjudicating Such Claims ......................................................................................... 3

        1.  Congress May Alter Or Eliminate Remedies For Constitutional Violations Against Private Parties ................................................. 3

        2.  Section 802 Does Not Prevent The Courts From Interpreting The Constitution ...................................................................... 7

    B.  Congress Has Permissibly Enacted A New Immunity Law That Does Not Endow The Executive Branch With Either Legislative Or Judicial Authority ....................................................................................... 8

        1.  Congress Has Changed The Law ............................................. 8

        2.  Section 802 Does Not Vest The Attorney General With Legislative Power ................................................................. 10

        3.  Section 802 Does Not Impermissibly Direct Judicial Fact-finding ....................................................................................... 14

II.  SECTION 802'S SUBSTANTIAL EVIDENCE STANDARD DOES NOT VIOLATE DUE PROCESS ...................................................................................... 16

III. SECTION 802'S NONDISCLOSURE PROVISIONS ARE CONSTITU-TIONAL .......................................................................................................... 23

    A.  The Challenged Provisions Comport With Due Process ...................... 24

    B.  The Challenged Provisions Do Not Violate The First Amendment Or Article III ....................................................................................... 27

CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

## CASES

*Abdulaziz v. Metropolitan Dade County*, 741 F.2d 1328 (11th Cir. 1984) ...................................18

*Abourezk v. Reagan*, 785 F.2d 1043 (D.C. Cir. 1986)..........................................................25, 26

*Addington v. Texas*, 441 U.S. 418 (1979)...............................................................................19

*Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007)...................18, 27

*Alexander v. Americans United Inc.*, 416 U.S. 752 (1974) ........................................................6

*Alpha Epsilon Phi Tau v. City of Berkeley*, 114 F.3d 840 (9th Cir. 1997) ...................................22

*American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995)...................26

*American Grain Trimmers, Inc. v. Office Workers Compensation Programs*,
181 F.3d 810 (7th Cir. 1999) (en banc) ................................................................................18

*Anniston Manufacturing Co. v. Davis*, 301 U.S. 337 (1937)........................................................5

*Apache Survival Coalition v. United States*, 21 F.3d 895 (9th Cir. 1994).....................................9

*Association for Reduction of Violence v. Hall*, 734 F.2d 63 (1st Cir. 1984) ...............................26

*Atchison, Topeka & Santa Fe Railway v. O'Connor*, 223 U.S. 280 (1912) ...................................5

*Bane v. Spencer*, 393 F.2d 108 (1st Cir. 1968)........................................................................26

*Baran v. Port of Beaumont Navigation District*, 57 F.3d 436 (5th Cir. 1995) .............................22

*Berman v. CIA*, 501 F.3d 1136 (9th Cir. 2007) .......................................................................18

*Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988) ...............................................22

*Boumediene v. Bush*, 128 S. Ct. 2229 (2008) ...........................................................................7

*Burrill v. Locomobile Co.*, 258 U.S. 34 (1922).......................................................................5, 7

*Bush v. Lucas*, 462 U.S. 367 (1983) .........................................................................................5

*Cary v. Curtis*, 44 U.S. 236 (1845).........................................................................................6

*Central Intelligence Agency v. Sims*, 471 U.S. 159 (1985) .......................................................18

*Chicago & Southern Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103 (1948) ......................18, 20

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ..........................................................................8

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008)........................................2

*Clinton v. City of New York*, 524 U.S. 417 (1998) ...............................................................12, 14

*Concrete Pipe & Products v. Construction Laborers Pension Trust*,
    508 U.S. 602 (1993)......................................................................................20, 21, 23

*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) ....................................5, 6

*Crowell v. Benson*, 285 U.S. 22 (1932) ................................................................8, 15

*Currin v. Wallace*, 306 U.S. 1 (1939)................................................................12, 13

*Day v. Massachusetts Air National Guard*, 167 F.3d 678 (1st Cir. 1999) ...................21

*Defenders of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007)...................12, 14

*Department of Navy v. Egan*, 484 U.S. 518 (1988) ................................................23, 24

*Dickerson v. United States*, 530 U.S. 428 (2000) ........................................................8

*Dickinson v. United States*, 346 U.S. 389 (1953) .....................................................23

*District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2007) .....................2

*Doe v. Ashcroft*, 334 F. Supp. 2d 471 (S.D.N.Y. 2004) ............................................29

*Doe v. Gonzales*, 386 F. Supp. 2d 66 (D. Conn. 2005) ............................................29

*Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007) ..........................................29

*Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) ..........................................................6

*Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59 (1978)............2

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007)...........................................27

*Ecology Center, Inc. v. Castenada*, No. CV-02-200-M (D. Mont. Aug. 20, 2004) .....15

*Ecology Center v. Castaneda*, 426 F.3d 1144 (9th Cir. 2005) .........................10, 14, 15

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983) ..................................................25

*Environmental Protection Agency v. Mink*, 410 U.S. 73 (1973) ................................24

*Federal Trade Commission v. Cement Institute*, 333 U.S. 683 (1948)........................23

*Franchise Tax Board of California v. Alcan Aluminum Ltd.*, 493 U.S. 331 (1990).......6

*Freedman v. Maryland*, 380 U.S. 51 (1965).............................................................30

*Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996) ..................14

*Gilmore v. California*, 220 F.3d 987 (9th Cir. 2000).................................................15

*Global Relief Foundation, Inc. v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) ...............24-25

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) ........................27, 28, 30

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995) ...................................21

*Halperin v. Kissinger*, 424 F. Supp. 838 (D.D.C. 1976), *rev'd on other grounds*, 606 F.2d 1192 (D.C. Cir. 1979) .............................................................................................9

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) .............................................................23

*Heckler v. Chaney*, 470 U.S. 821 (1985) ...............................................................14

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006) ............................8

*Holy Land Foundation for Relief & Development v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003) ............................................................................24

*Hortonville Joint School District No. 1 v. Hortonville Education Ass'n*,
    426 U.S. 482 (1976) .............................................................................................23

*Hunt v. Central Intelligence Agency*, 981 F.2d 1116 (9th Cir. 1992) ....................18

*In re Consolidated U.S. Atmospheric Testing Litigation*, 820 F.2d 982 (9th Cir. 1987) ...............19

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) ......................................28

*In re Grand Jury Proceedings*, 856 F.2d 685 (4th Cir. 1988) ..............................25

*In re Motion for Release of Court Records*, 526 F. Supp. 2d 484 (FISA Ct. 2007) ...............28

*In re Sealed Case*, 494 F.3d 139 (D.C. Cir. 2007) ...............................................25

*In re United States*, 872 F.2d 472 (D.C. Cir. 1989) .............................................25

*Jifry v. Federal Aviation Administration,* 370 F.3d 1174 (D.C. Cir. 2004) ...........25

*Jones v. United States*, 137 U.S. 202 (1890) .......................................................12

*Kashin v. Kent*, 457 F.3d 1033 (9th Cir. 2006) ....................................................21

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) ...........................................18, 25

*Kasza v. Whitman*, 325 F.3d 1178 (9th Cir. 2003) ...............................................29

*Kinoy v. Mitchell*, 67 F.R.D. 1 (S.D.N.Y 1975) ...................................................26

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) ..................6

*Los Angeles Police Department v. United Reporting Publishing Corp.*,
    528 U.S. 32 (1999) ..........................................................................................29, 30

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...........................................16

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ................................................20, 22

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..........................................................19

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) ............................................30

iv

*McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990) .................5

*Meridian International Logistics, Inc. v. United States*, 939 F.2d 740 (9th Cir. 1991).................21

*Mistretta v. United States*, 488 U.S. 361 (1989)..................................................................13

*Molerio v. Federal Bureau of Investigation*, 749 F.2d 815 (D.C. Cir. 1984)..............................25

*Mt. Graham Coalition v. Thomas*, 89 F.3d 554 (9th Cir. 1996) ....................................................10

*National Council of Resistance of Iran v. Department of State*,
    251 F.3d 192 (D.C. Cir. 2001)..................................................................................24, 27

*North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198 (3d Cir. 2002)..................................28

*Owens v. Republic of Sudan*, 531 F.3d 884 (D.C. Cir. 2008) ....................................................11

*Pauly v. United States Department of Agriculture*, 348 F.3d 1143 (9th Cir. 2003) ....................21

*People's Mojahedin Organization of Iran v. Department of State*,
    182 F.3d 17 (D.C. Cir. 1999) ............................................................................19, 27

*People's Mojahedin Organization of Iran v. Department of State*,
    327 F.3d 1238 (D.C. Cir. 2003)......................................................................17, 24

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007) ....................................................27

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) ....................................................9, 10

*Pollard v. Federal Board of Investigation*, 705 F.2d 1151 (9th Cir. 1983)..................................24

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986)....................................................28, 29

*Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005)........................................................18

*Republic of Mexico v. Hoffman*, 324 U.S. 30 (1945)........................................................18

*Richardson v. Perales*, 402 U.S. 389 (1971) ....................................................................22

*Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992)........................................9, 10

*Saltany v. Reagan*, 702 F. Supp. 319 (D.D.C. 1988)....................................................18

*Saucier v. Katz*, 533 U.S. 194 (2001) ....................................................................7

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ....................................................................5

*Schweiker v. McClure*, 456 U.S. 188 (1982) ....................................................................22

*Seattle Times Co. v. United States District Court*, 845 F.2d 1513 (9th Cir. 1988) ....................28

*Smith v. Federal Reserve Bank of New York*, 280 F. Supp. 2d 314 (S.D.N.Y. 2003) ..................12

*Smith v. Nixon*, 606 F.2d 1183 (D.C. Cir. 1979) ....................................................................7, 9

*Snepp v. United States*, 444 U.S. 507 (1980)..................................................................23

*Steadman v. Securities and Exchange Commission*, 450 U.S. 91 (1981)...............................17, 19

*Tenenbaum v. Simonini*, 372 F.3d 776 (6th Cir. 2004).........................................................25

*Terran v. Secretary of Health & Human Services*, 195 F.3d 1302 (Fed. Cir. 1999).............. 12-13

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)..............................................28

*United Farm Workers of America, AFL-CIO v. Arizona Agricultural Employment Relations Board*, 727 F.2d 1475 (9th Cir. 1984) .................................................21

*United States v. Al-Hamdi*, 356 F.3d 564 (4th Cir. 2004) ........................................................18

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) .................................................................29

*United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976)...........................................................7

*United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) .......................................................25

*United States v. Brown*, 484 F.2d 418 (5th Cir. 1973) ............................................................8

*United States v. Butenko*, 494 F.2d 593 (3d Cir. 1974) ..........................................................8

*United States v. Damrah*, 412 F.3d 618 (6th Cir. 2005)..........................................................25

*United States v. Hickey*, 185 F.3d 1064 (9th Cir. 1999) ........................................................27

*United States v. Kaluna*, 192 F.3d 1188 (9th Cir. 1999) .......................................................17

*United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871) ............................................................9

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987).........................................................22, 25

*United States v. Raddatz*, 447 U.S. 667 (1980) ...................................................................15

*United States v. Reynolds*, 345 U.S. 1 (1953).......................................................2, 18, 27

*United States v. Sioux Nation of Indians*, 448 U.S. 371 (1980)..............................................15

*United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980) ...............................................8

*United States v. United States District Court*, 407 U.S. 297 (1972) ........................................8

*Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474 (1951)....................15

*Vance v. Terrazas*, 444 U.S. 252 (1980)...........................................................................20

*Weberman v. National Security Agency*, 668 F.2d 676 (2d Cir. 1982) .......................................26

*Weinberger v. Salfi*, 422 U.S. 749 (1975)............................................................................6

*Whitman v. American Trucking Ass'n*, 531 U.S. 457 (2001) ...................................................13

*Wilkinson v. Austin*, 545 U.S. 209 (2005)........................................................17

*Withrow v. Larkin*, 421 U.S. 35 (1975) ..........................................................22

*Wolf v. Central Intelligence Agency*, 473 F.3d 370 (D.C. Cir. 2007)..............18

*Wolkenstein v. Reville*, 694 F.2d 35 (2d Cir. 1982) .......................................17

*Yakus v. United States*, 321 U.S. 414 (1944)....................................................6

*Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004) ....................................................18

*Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991)............25

## CONSTITUTIONAL PROVISIONS, LAWS, AND STATUTES

United States Constitution, Art. I, § 7............................................................10

United States Constitution, Art. III...........................................................15, 30

Antiterrorism and Effective Death Penalty Act of 1996, 8 U.S.C. § 1189.....................24

Electronic Surveillance Modernization Act, H.R. 5825, 109th Cong. (2006)................1

Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008,
   Pub. L. No. 110-261, 122 Stat. 2436 ..............................................*passim*

International Emergency Economic Powers Act, 50 U.S.C. § 1702(c)........................24

Protect America Act of 2007, Pub. L. No. 110-55, 121 Stat. 552 .....................9

Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095 (2005)...........2

Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2436,

    § 301 ................................................................................15

    § 402 ................................................................................30

    § 802 ...........................................................................*passim*

5 U.S.C. § 556............................................................................17

5 U.S.C. § 702..............................................................................6

10 U.S.C. § 433............................................................................14

15 U.S.C. § 2621............................................................................14

18 U.S.C. § 2511.............................................................................9

18 U.S.C. § 2520.............................................................................9

18 U.S.C. § 2703.............................................................................9

18 U.S.C. § 2707........................................................................................9

18 U.S.C. § 2709......................................................................................29

18 U.S.C. § 5032......................................................................................11

20 U.S.C. § 7426......................................................................................14

22 U.S.C. § 7207......................................................................................14

28 U.S.C. § 2679......................................................................................11

42 U.S.C. § 1973b....................................................................................11

50 U.S.C. § 1805........................................................................................9

50 U.S.C. § 1806......................................................................................25

50 U.S.C. § 1842........................................................................................9

50 U.S.C. § 1861........................................................................................9

50 U.S.C. § 1885......................................................................................12

50 U.S.C. § 1885a................................................................................*passim*

## LEGISLATIVE HISTORY

Senate Report No. 110-209 (2007)....................................................*passim*

154 Cong. Rec. H5756 (daily ed. June 20, 2008)....................................4

154 Cong. Rec. H5758 (daily ed. June 20, 2008)....................................4

154 Cong. Rec. H5770 (daily ed. June 20, 2008)....................................4

154 Cong. Rec. H5772 (daily ed. June 20, 2008)....................................4

154 Cong. Rec. S6135 (daily ed. June 25, 2008).....................................1

154 Cong. Rec. S6178 (daily ed. June 26, 2008).....................................4

154 Cong. Rec. S6383 (daily ed. July 8, 2008) ................................14, 17

## MISCELLANEOUS

Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise In Dialectic,* 66 Harv. L. Rev. 1362 (1953) ...........................7

Charles A. Wright & Charles H. Koch, Jr., *Federal Practice and Procedure,* § 8258 (2008)......................................................................................23

## INTRODUCTION AND SUMMARY

After two years of hearings, classified briefings, expert consultations, and extensive debate, Congress enacted the Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2436 ("FISAAA" or "Act") on July 10, 2008. In doing so, Congress made "no statement on the legality of the [alleged NSA surveillance] program." 154 Cong. Rec. S6135 (daily ed. Jun. 25, 2008). Nor did it "in any way affect[ ] pending or future suits against the Government as to the legality of the President's program." S. Rep. No. 110-209, at 8 (2007). Rather, Congress concluded that private companies that allegedly responded to requests for assistance from the government "in the unique historical circumstances of the aftermath of September 11, 2001" should not be put to the burden of litigation, particularly in light of the overwhelming difficulty of defending a lawsuit involving state secrets. *Id.* at 8-9, 12. Congress enacted the immunity provision—added as § 802 to FISA—with bipartisan support and by substantial majorities in both the House of Representatives (293-129) and the Senate (69-28).

Section 802 does two things: *First*, it enacts *substantive* rules of immunity for telecommunications providers who are sued and either did not assist the "intelligence community" or did so pursuant to a court order or a written certification, directive, or request from a responsible government official. These immunities apply to pending or future cases brought against providers based upon alleged past, present, or future conduct (or the absence thereof) that meets the statutory standards. 50 U.S.C. § 1885a(i). In enacting the substantive immunities, Congress concluded (among other things) that it would be inappropriate to subject a private company to suit if it had not assisted the government or received "written representations that high-level Government officials had assessed the program to be legal." S. Rep. No. 110-209, at 10. Congress accordingly included a "focused retroactive immunity for electronic communication service providers that were alleged to have cooperated with the intelligence community in implementing the President's surveillance program," but rejected proposals to provide immunity to government officials or agencies. *Id.* at 8; *see also id.* at 29 (additional views of Sen. Rockefeller); Electronic Surveillance Modernization Act, H.R. 5825, 109th Cong. § 10 (2006) (prior version with immunity for government officials).

*Second*, § 802 establishes "a *procedural* mechanism [to] give courts an appropriate role in

1

assessing statutory immunity provisions that would otherwise be subject to the state secrets privilege." S. Rep. No. 110-209, at 8 (emphasis added). Recognizing that the government's assertion of the state secrets privilege "would likely prevent all judicial review over whether and under what authorities, an individual assisted the Government," Congress took steps "to *expand* judicial review to an area that may have been previously non-justiciable." *Id.* at 12 (emphasis added); *see also id.* at 8, 11. This "expand[ed]" process begins with an Attorney General certification that the defendant either received a statutorily defined court order, certification, directive, or written request or "did not provide the alleged assistance." 50 U.S.C. § 1885a(a). Because this information is classified, Congress reasonably expected that it would be in the government's exclusive control. Congress therefore imposed on the Attorney General the responsibility to determine when evidence exists that would satisfy the statutory standards and to submit that evidence to a court. *Id.* Congress did not require the court merely to accept the Attorney General's word. Instead, the Act "preserves an important role for the courts," S. Rep. No. 110-209, at 10, by providing that the Attorney General's certification is not given effect if the Court "finds" that it is "not supported by substantial evidence provided to the court," 50 U.S.C. § 1885a(b)(1). Congress also specified the "role of the parties" in the litigation, *id.* § 1885a(d), and provided for "limitations on disclosure" of information the release of which would likely harm national security, *id.* § 1885a(c). These procedures were based on existing court-developed rules for resolving similar issues in state secrets litigation. *See United States v. Reynolds*, 345 U.S. 1, 8 (1953) (courts must evaluate state secrets "without forcing a disclosure of the very thing the privilege is designed to protect").

Congress acted well within constitutional bounds in enacting § 802. Congress may adopt defenses or immunities that affect pending lawsuits, as it has done on many occasions.[1] As long as such statutes alter substantive law and do not overturn a final judgment, application of the new law to pending cases raises no separation of powers issue. *See infra* Section I.B. And because nothing

_____

[1] *See Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 88 n.32 (1978); *e.g.*, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 395 (2d Cir. 2008); *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 172 (D.C. 2007); Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095 (2005) (conferring immunity on firearms manufacturers and dealers from certain claims, pending or otherwise); Exhibit 1 (listing examples).

2

in § 802 prevents Plaintiffs from pursuing the claims they have filed against government officers and agencies, their contention that they have been denied "absolutely any judicial remedy for [their] constitutional claims," Opp. 1, is incorrect. *See, e.g.*, Compl., *Jewel v. NSA*, No. 08-04373 (N.D. Cal. filed Sept. 18, 2008). *See infra* Section I.A.

Procedurally, Congress did not "abdicate to the Executive the authority to change the law." Opp. 1. Nor does the Act permit the Attorney General to "direct" that the Court make particular findings. *Id.* at 21. Rather, as with a multitude of other laws, Congress created rules that require some executive action to trigger judicial enforcement, but which leave ultimate review of the facts and law to the courts. *See infra* Sections I.B.1-2. Similarly, Plaintiffs' due process claim ignores both the substantial role of this Court and the context in which this legislation arose and against which its procedural protections must be measured. *See infra* Section II. Nor is at all unusual—or unconstitutional—for Congress or the courts to adopt procedures that prevent the disclosure of classified information. *See infra* Section III. In § 802, Congress actually provided the parties with *more* process than *the courts* have provided under the state secrets privilege.

Plaintiffs undoubtedly disagree with the policy judgment that Congress made in enacting the FISAAA, but there can be little doubt that Congress acted within constitutional bounds, based on a careful assessment of the national interest and with due sensitivity for the rights of the parties and the role of each of the branches of government.

## ARGUMENT

## I. SECTION 802 DOES NOT VIOLATE THE SEPARATION OF POWERS

Plaintiffs attack an imagined statute that wholly deprives them of the ability to seek redress for alleged constitutional harms and surrenders to the executive branch Congress's power to amend laws, while nullifying the judiciary's power to decide cases. Section 802 does none of these things.

### A. Section 802 Does Not Deprive Plaintiffs Of A Remedy For Claimed Constitutional Violations Or Prevent This Court From Adjudicating Such Claims

#### 1. Congress May Alter Or Eliminate Remedies For Constitutional Violations Against Private Parties

Section 802 does not deny Plaintiffs "any judicial remedy whatsoever" for their alleged constitutional injuries. Opp. 2. To the contrary, Congress left Plaintiffs with fully effective relief: Sec-

tion 802 in no way affects suits against the authors of any constitutional violation they believe occurred—the federal officers and agencies who would have instigated and conducted any alleged surveillance activities.

Indeed, Plaintiffs have already brought such suits. Multiple complaints in the MDL currently seek relief against government actors under the First Amendment[2] and the Fourth Amendment,[3] including claims for injunctive and declaratory relief[4] and *Bivens* claims for damages.[5] Moreover, after the FISAAA's passage, Plaintiffs filed a new lawsuit seeking relief against government actors for alleged constitutional violations. Compl., *Jewel v. NSA* No. 08-04373, ¶¶ 108-142 (N.D. Cal. filed Sept. 18, 2008). Plaintiffs themselves represent that *Jewel* "raises identical legal questions [as the cases against the carriers], *i.e.* and *e.g.*, whether the Program violated or violates plaintiffs' rights under the U.S. Constitution." Admin. Mot. by Pls. to Consider Whether Cases Should Be Related, *Hepting v. AT&T Corp.*, 06-0672, at 3 (N.D. Cal. filed Oct. 21, 2008) (Dkt. 383).

"Nothing in [the FISAAA] is intended to affect these suits against the Government or individual Government officials." S. Rep. No. 110-209, at 8. The decision not to limit suits against the government or government officials was a deliberate policy choice arrived at during the lengthy and careful legislative process and was one reason for the bill's broad bipartisan support.[6]

When, as here, Congress merely limits remedies against particular private defendants alleged

---

[2] Am. Compl. ¶ 125a, *McMurray (Mayer) v. AT&T*, No. 06-3650 (S.D.N.Y. filed June 23, 2006) ("*Mayer* Compl."); Compl. ¶¶ 51-52, *CCR v. Bush*, No. 06-313 (S.D.N.Y. filed Feb. 23, 2007) ("*CCR v. Bush* Compl."); Compl. ¶ 53, *Guzzi v. Bush*, No. 06-136 (N.D. Ga. filed Jan 20, 2006) ("*Guzzi* Compl."); First Am. Compl. ¶¶ 63-64, *Al-Haramain Islamic Found., Inc. v. Bush*, No. 06-1791 (N.D. Cal. filed Jul. 29, 2008) (Dkt. 458) ("*Al-Haramain* Compl.").

[3] Compl. ¶¶ 105-107, *Shubert v. Bush*, No. 06-2282 (E.D.N.Y. filed May 17, 2006) ("*Shubert* Compl."); *Mayer* Compl. ¶ 125c; *CCR v. Bush* Compl. ¶¶ 49-50; *Guzzi* Compl. ¶ 54; *Al-Haramain* Compl. ¶¶ 61-62.

[4] *CCR v. Bush* Compl. at 15 (prayer for relief); *Guzzi* Compl. at 13 (prayer for relief); *Al-Haramain* Compl. at 15 (prayer for relief).

[5] *Shubert* Compl. at 21 (prayer for relief); *Mayer* Compl. ¶ 131 (request for damages); *Al-Haramain* Compl. ¶¶ 62, 64.

[6] *See, e.g.*, 154 Cong. Rec. S6178 (daily ed. Jun. 26, 2008) ("[W]e did not ban civil suits against the Government or against any officer of the Government.") (Sen. Bond); 154 Cong. Rec. H5756 (daily ed. Jun. 20, 2008) ("Nothing in this bill is intended to affect … any litigation against the Government or Government employees.") (Rep. Conyers); *id.* at H5758 (Rep. Reyes); *id.* at H.5770 (Rep. Hoyer); *id.* at H5772 (Rep. Udall).

4

to have participated in unconstitutional government action, there is no constitutional problem. The Supreme Court has squarely held that Congress may alter or eliminate constitutional remedies against particular defendants when claims against the government remain available. *See Anniston Mfg. Co. v. Davis*, 301 U.S. 337, 348 (1937) ("[T]he substitution of an exclusive remedy directly against the government" for a constitutional claim against a particular state actor "is not an invasion of [a] constitutional right.").[7] Indeed, *Anniston* is particularly notable because it arose in the context of claimed refunds of unconstitutional taxes, where due process requires a "clear and certain remedy."[8]

Congress acted well within its authority to eliminate any *damages* claims against the carriers, particularly where remedies against the government remain. The courts will not infer a *Bivens* remedy when Congress "indicate[s] its intent, by statutory language, by clear legislative history, or perhaps even by [a] statutory remedy itself, that the Court's power should not be exercised." *Bush v. Lucas*, 462 U.S. 367, 378 (1983); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (*Bivens* remedy premised on "'the absence of affirmative action by Congress,' [and] no explicit statutory prohibition against the relief sought"). Congress may eliminate *Bivens* remedies even when the alternative remedies are "not as effective" and "do not provide complete relief for the plaintiff" for a constitutional violation. *Bush*, 462 U.S. at 372, 388; *see also Schweiker*, 487 U.S. at 425.

Congress's elimination of a *Bivens* damages remedy against the carriers is especially unproblematic because no such remedy existed before the FISAAA was enacted. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 65-66, 74 (2001), squarely held that *Bivens* claims cannot be brought against private corporations accused of acting as instruments or agents of the government, as is the

---

[7] In that case, as here, the plaintiff argued that the statute "destroy[ed]" his right of action, *id.* at 341-42, but, in language tailor-made for Plaintiffs' current allegations, the Court did "'not perceive why the State may not provide that only the author of the wrong shall be liable for it, at least when, as here, the remedy offered is adequate.'" *Id.* at 342-343 (quoting *Burrill v. Locomobile Co.*, 258 U.S. 34, 38 (1922) (Holmes, J.)). And, when the plaintiff can sue the government, there is "no serious question … as to the adequacy of the remedy." *Id.* at 343; *see also Burrill*, 258 U.S. at 38 (the "Constitution standing alone without more does not create a paramount unchangeable liability to an action of tort on the part of all persons who may take part in enforcing a … law" later invalidated).

[8] *Atchison, Topeka & Santa Fe Ry. v. O'Connor*, 223 U.S. 280, 285 (1912); *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 32-39 (1990).

case here.[9]  Such remedies would not serve the purpose of *Bivens*, which is "to deter individual federal officers from committing constitutional violations," because plaintiffs would "focus their collection efforts" on "corporate defendants … and not the individual directly responsible for the alleged injury"—*i.e.*, the federal officer.  *Id.* at 70-71.

Congress likewise could block constitutional claims for *equitable* relief against the carriers in these circumstances.  Congress undoubtedly has the power to limit or eliminate some equitable remedies for constitutional claims when adequate alternative relief remains available.[10]  Eliminating injunctive relief directly against the carriers falls well within this power and raises no constitutional concerns because Plaintiffs still may obtain adequate relief from the government for their constitutional claims.  If Plaintiffs' factual allegations were true, federal officers and agencies—not the carriers—would have instigated, directed, and controlled the electronic surveillance activities giving rise to the claimed constitutional injuries.  (Indeed, absent government direction sufficient to render private companies state actors, there can be no *constitutional* claim against such companies.)  Government actors, therefore, would be the parties best situated to guarantee the cessation of any unconstitutional behavior.  The United States and its officers enjoy no immunity from suits seeking to enjoin them from violating the Constitution.  *See, e.g.*, 5 U.S.C. § 702; *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949).  If Plaintiffs were to succeed on their claims, an injunction against those parties would constitute a far more complete and effective remedy for the alleged constitutional injuries than an injunction against private telephone companies.

Against this backdrop, Congress's enactment of immunity defenses for electronic communications service providers is constitutionally unremarkable.[11]  Simply put, even as to constitutional

---

[9] *See, e.g.*, *Hepting* Compl. ¶ 85 (Dkt. 8); Verizon Master Compl. ¶ 260 (Dkt. 125); BellSouth Master Compl. ¶ 158 (Dkt. 126); *see also* Order at 15-18, *In re Nat'l Sec. Agency Telecomms. Records Litig.*, No. 06-1791 (Jan. 18, 2007) (Dkt. 130) (addressing federal officer removal).

[10] *See, e.g.*, *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 338-339 (1990) (Tax Injunction Act forecloses Foreign Commerce Clause claim for equitable relief); *Alexander v. Americans United Inc.*, 416 U.S. 752, 759 (1974) ("[T]he constitutional nature of a taxpayer's claim … is of no consequence under the Anti-Injunction Act."); *Dotson v. Griesa*, 398 F.3d 156, 180 (2d Cir. 2005) ("Congress's power to restrict the availability of equitable relief cannot be disputed."); *see also Weinberger v. Salfi*, 422 U.S. 749, 762-763 & n.8 (1975); *Yakus v. United States*, 321 U.S. 414, 434 (1944); *Cary v. Curtis*, 44 U.S. 236, 245, 250 (1845).

[11] Contrary to Plaintiffs' assertions (at 46-49), under the plain terms of § 802(a)(1)-(3), a carrier's receipt of the requisite court order, certification, directive, or request entitles it to immunity, regard-

claims, "[t]he Constitution …. leaves the remedies to Congress." *Burrill*, 258 U.S. at 38. As Professor Hart remarked, "the denial of one remedy while another is left open, or the substitution of one for another" is constitutionally unproblematic: "It must be plain that Congress necessarily has a wide choice in the selection of remedies, and that a complaint about action of this kind can rarely be of constitutional dimension." Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise In Dialectic*, 66 Harv. L. Rev. 1362, 1366 (1953).[12]

### 2. Section 802 Does Not Prevent The Courts From Interpreting The Constitution

By limiting the availability of remedies against private parties with respect to constitutional claims, § 802 does not, as Plaintiffs argue (at 6-13), change the meaning of the First and Fourth Amendments. Nothing about § 802 purports to reinterpret the First or the Fourth Amendment, or empowers the Attorney General to do so. S. Rep. No. 110-209, at 9 (the bill "makes no assessment about the legality of the President's program"). Rather, § 802 creates immunity defenses for certain alleged conduct and a procedure by which the Attorney General may place that immunity at issue. In so doing, § 802 merely alters the remedies available against certain private defendants. It remains exclusively the Judiciary's province to interpret the First and Fourth Amendments, including in Plaintiffs' suits against the government. In this regard, § 802 operates no differently than numerous other privileges, defenses, or immunities, which, although they may prevent a plaintiff from prevailing on a constitutional claim in a particular case, have never been thought to alter the substance of underlying constitutional rights. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (qualified immunity); *Smith v. Nixon*, 606 F.2d 1183, 1191 & n.47 (D.C. Cir. 1979) (expectation of legality); *United States v. Barker*, 546 F.2d 940, 944 (D.C. Cir. 1976) (mistake of law).

If Plaintiffs were correct, it would pose a separation of powers difficulty every time Congress amended a statute of limitations or enacted a defense to liability for a constitutional tort. That cer-

---

less of whether the surveillance at issue is later determined to be unconstitutional or otherwise contrary to law. As explained above, that raises no constitutional concern.

[12] This case is utterly unlike *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), which found that the Detainee Treatment Act violated the Suspension Clause because it did not furnish an adequate substitute for habeas corpus proceedings to test the detention of individuals. *Boumediene* focused exclusively on "the historic function and province of the writ." *Id.* at 2270, 2272-2273. No similar issue is presented in this very different legal and factual context: Section 802 does not alter the procedures for adjudicating Plaintiffs' constitutional claims against the government.

7

tainly is not the law.  The courts remain the final arbiters of the Constitution:  Section 802 does not change the substantive scope of the Fourth Amendment[13] or the courts' power to decide "all questions, both of fact and law" necessary to their jurisdiction to "enforce constitutional rights," *Crowell v. Benson*, 285 U.S. 22, 60 (1932).[14]

**B.      Congress Has Permissibly Enacted A New Immunity Law That Does Not Endow The Executive Branch With Either Legislative Or Judicial Authority**

Section 802 specifies circumstances under which Congress concluded that it is contrary to the national interest to allow certain litigation against a defined class of defendants.  Because the existence of those circumstances turns on facts that are generally classified and uniquely in the control of the Executive, Congress empowered the Attorney General to present those facts to a court in a manner that allows for both the protection of intelligence sources and methods and meaningful judicial review.  Contrary to Plaintiffs' contentions, this arrangement does not authorize the Attorney General to act as lawmaker, thereby usurping the legislative function, Opp. 13-20, or to act as factfinder, thereby usurping the role of the courts, *id.* at 20-22.

1.      <u>Congress Has Changed The Law</u>

Plaintiffs premise their separation of powers arguments on the puzzling assertion that "the Executive and not Congress is changing the law applicable to these actions."  Opp. 15.  (The Brennan Center goes further and insists (at 3-7) that no change in law has been effected at all.)  But a simple review of § 802 compels the conclusion that Congress itself changed the law.

---

[13] Although Plaintiffs argue at length (at 7-8) that the alleged surveillance violated the Fourth Amendment, that issue is irrelevant here, since nothing about the government's motion requires the Court to assess the legality of any such surveillance.  In any case, Plaintiffs' suggestion that the courts have decided that warrantless foreign intelligence surveillance necessarily violates the Fourth Amendment is incorrect.  *See, e.g., United States v. Truong Dinh Hung*, 629 F.2d 908, 914 (4th Cir. 1980); *United States v. Butenko*, 494 F.2d 593, 602-605 (3d Cir. 1974); *United States v. Brown*, 484 F.2d 418, 426 (5th Cir. 1973).  This Court's brief discussion of *United States v. United States District Court*, 407 U.S. 297 (1972) ("*Keith*"), is not to the contrary:  It specifically noted that the Supreme Court "did not pass judgment 'on the scope of the President's surveillance power with respect to the activities of foreign powers, *within or without this country*.'"  *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 1010 (N.D. Cal. 2006) (quoting *Keith*, 407 U.S. at 308) (emphasis added).

[14] For the same reason, *City of Boerne v. Flores*, 521 U.S. 507 (1997), and *Dickerson v. United States*, 530 U.S. 428 (2000), are irrelevant.  Opp. 8-9.  The statute at issue in *Boerne* was unconstitutional because the legislation exceeded Congress's power under section 5 of the Fourteenth Amendment, *see* 521 U.S. at 519-520, 529; the statute in *Dickerson* was unconstitutional because it sought directly to diminish the *substance* of a constitutional right, *see* 530 U.S. at 444.

8

Congress debated at length whether and how to change the law, and it ultimately enacted new immunity defenses that apply generally to claims of unlawful electronic surveillance against a specified class of private defendants. Section 802's "procedures for implementing statutory defenses" became law when they were passed by both houses of Congress and signed by the President. 50 U.S.C. § 1885a. And they apply whenever § 802's requirements are met, whether here or in another case years from now. In this regard, § 802 adds to the numerous defenses and immunities— both statutory and common-law—that have traditionally protected carriers alleged to have assisted in electronic surveillance.[15] In the same way that these defenses and immunities are defined by a general articulation of circumstances in which carriers may not be subject to litigation or held liable, § 802 provides for new rules of immunity that depend on certain conditions being met.

Against this backdrop, there can be no viable claim that § 802 violates the separation of powers under *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871), and its progeny. It is black-letter law that "[*Klein*'s] prohibition does not take hold when Congress 'amend[s] applicable law,'" and does so in a way that does not alter final judgments in the courts. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) (quoting *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 441 (1992)). "[W]hen the statute changes the underlying law in a manner that is not independently unconstitutional, the rule of *Klein* as interpreted by [the Ninth] circuit is inapplicable." *Apache Survival Coal. v. United States*, 21 F.3d 895, 904 (9th Cir. 1994).

This inquiry does not turn on whether Congress directly modifies the statutory provisions creating the causes of action at issue or instead embodies its changes in a new statute. *Robertson*, 503 U.S. at 439-440 (*Klein* analysis is the same whether Congress amended underlying law or "enacted an entirely separate statute"). Nor does it matter whether Congress acted with pending litigation in mind; Congress always acts in light of the concerns of the day. *See id.* at 434-440; *see also* Exhibit 1. A new statute may "affect[] the adjudication of [pending] cases," so long as Congress "compelled changes in law, not findings or results under old law." *Id.* at 438. The applicable test

---

[15] *See, e.g.*, 18 U.S.C. §§ 2511(2)(a)(ii), 2520(d), 2703(e), 2707(e); 50 U.S.C. §§ 1805(h), 1842(f), 1861(e); Protect America Act of 2007, Pub. L. No. 110-55, 121 Stat. 552 § 105B(l); *Smith*, 606 F.2d at 1191; *Halperin v. Kissinger*, 424 F. Supp. 838, 846 (D.D.C. 1976), *rev'd on other grounds*, 606 F.2d 1192 (D.C. Cir. 1979).

9

reflects "a high degree of judicial tolerance for an act of Congress that is intended to affect litiga-

tion": Legislation affecting pending cases is permissible "so long as it changes the underlying sub-

stantive law *in any detectable way.*" *Ecology Center v. Castaneda*, 426 F.3d 1144, 1150 (9th Cir.

2005) (emphasis added, internal quotation marks omitted); *see also Robertson*, 503 U.S. at 441

(where a statute "would be unconstitutional unless it modified previously existing law," a court is

"obliged to impose" any "possible" saving interpretation).

The fact that Congress enacted § 802 in response to lawsuits against the carriers does not al-

ter the conclusion that § 802 articulates legal rules of general applicability that work a change in the

law. Similarly, Congress's awareness of the classified facts that may bear on these cases, and how

its new legal rules would likely apply, does not transform § 802 into a non-legislative direction to

this Court to find certain facts or decide this case in a particular way. *See Robertson*, 503 U.S. at

434-435. Contrary to the Brennan Center's suggestion (at 3), "it is of no constitutional consequence

that [legislation] affects, or is even directed at, a specific judicial ruling so long as the legislation

modifies the law." *Ecology Center*, 426 F.3d at 1149 (internal quotation marks omitted). Indeed, in

*Robertson*, the Court found no constitutional defect notwithstanding the fact that the statute at issue

identified pending litigation by case name and docket number and "determine[d] and direct[ed]" that

certain "statutory requirements that are the basis" of the underlying litigation were satisfied by com-

pliance with a new standard. *Id*. at 434-435.[16] Here, the substantive change in the law governing

carrier liability for alleged assistance to the U.S. intelligence community that is reflected in the new

immunities in § 802 is more than merely "detectable" or "possible"—it is plain.

> 2. <u>Section 802 Does Not Vest The Attorney General With Legislative Power</u>

Plaintiffs also argue that § 802 impermissibly delegates Congress's lawmaking function to

the Attorney General in violation of both Article I, Section 7 of the Constitution, Opp. 13-19, and

the nondelegation doctrine, *id*. at 19-20. Both arguments fail.

a. Plaintiffs' contention (*e.g.*, at 15) that § 802 violates the Presentment Clause by al-

---

[16] *See also Mt. Graham Coal. v .Thomas*, 89 F.3d 554, 557 (9th Cir. 1996) ("Nor is the rider here rendered suspect because it is targeted at a single controversy."); *see generally Plaut*, 514 U.S. at 239 n.9 (rejecting the "premise that there is something wrong with particularized legislative action").

lowing the Attorney General to change the law is without merit. Both houses of Congress passed, and the President signed, a statute containing new immunity defenses whose application depends on the existence of certain facts the Attorney General is empowered to gather and present.

In so doing, the Attorney General plays a traditional executive role, not a legislative one. Because § 802 by its terms relates to "assistance to … the intelligence community," § 802(a), Congress anticipated that the facts bearing on the existence of the specified conditions for immunity would generally be under the control of the Executive or subject to assertion of the state secrets privilege. It therefore empowered the Attorney General to present the facts to a court in a manner that would protect their secrecy while allowing the court to verify their truth. Congress decided on and enacted the legal standards; the Attorney General is given the power to make a factual demonstration to the courts when he believes the standards have been satisfied so that the courts, after review, may give effect to Congress's will.

This is archetypal execution of the law. Congress can and frequently has enacted statutes that attach legal consequences to factual submissions by the Executive.[17] "The Supreme Court has consistently upheld delegations … that predicate the operation of a statute upon some Executive Branch factfinding." *Owens v. Republic of Sudan*, 531 F.3d 884, 891 (D.C. Cir. 2008). In making such factual determinations, the Executive exercises no legislative function but acts as the "mere agent of the law-making department to ascertain and declare the event upon which [Congress's] expressed will was to take effect." *Id.* at 891-892 (internal quotation marks omitted). So long as Congress itself has prescribed the consequences of the facts gathered and presented by the Executive— as it has done here—the Executive does not exercise legislative power in forming judgments about when to invoke the legal rules. *See id.* at 889-893 (Congress validly delegated authority to Secretary

---

[17] *See, e.g.*, 18 U.S.C. § 5032 (jurisdiction over trial of juvenile defendant in federal court triggered by Attorney General certification of several predicate facts); 28 U.S.C. § 2679(d)(1) (substitution of United States as defendant in tort suit against federal employee triggered by Attorney General certification that employee acted within scope of employment); 42 U.S.C. § 1973b(b) (applicability of provisions of Voting Rights Act to particular jurisdiction triggered by Attorney General's and Census Director's unreviewable factual determinations); *see also infra* note 27 and cases cited therein (diplomatic and foreign sovereign immunity predicated on Executive certification).

Brief of Telecommunications Carrier Defendants                    MDL No. 06:1791-VRW

of State to make finding upon which operation of statute or court's jurisdiction is predicated).[18]

Plaintiffs' argument that § 802 is instead like the Line Item Veto struck down in *Clinton v. City of New York*, 524 U.S. 417 (1998), ignores the fact that § 802 lacks the very feature that made the Line Item Veto Act unconstitutional. That statute gave the President "the unilateral power to change the text of duly enacted statutes." *Id.* at 447. For instance, although Congress had passed a tax benefit that the President signed into law, the President subsequently used the line item veto to "cancel[]" that benefit. *Id.* at 422-425. It was this unilateral repeal of duly enacted law that the Court held unconstitutional. *Id.* at 448 ("If the [Act] were valid, it would authorize the President to create a different law—one whose text was not voted on by either House of Congress or presented to the President for signature."); *see also id.* at 438-439. Section 802 does no such thing. Plaintiffs assert that "[b]y the act of filing certifications in this Court, the Attorney General has purported to amend the statutes governing plaintiffs' actions long after Congress enacted the FISAAA and the President signed it." Opp. 15-16. But it was clearly Congress that altered the rules governing Plaintiffs' claims by creating a new set of immunity defenses; a valid certification does nothing more than invoke the new rule Congress passed. By certifying certain facts for judicial review, the Attorney General merely gives effect to the policy choices embodied in the law enacted by Congress.[19]

---

[18] *See also, e.g.*, *Currin v. Wallace*, 306 U.S. 1, 15-16 (1939) (explaining that statute may leave to Executive "the determination of facts to which the policy as declared by the Legislature is to apply" (internal quotation marks omitted)); *Jones v. United States*, 137 U.S. 202, 209-211, 217 (1890) (upholding against constitutional challenge statute extending U.S. law and admiralty jurisdiction over certain islands only upon a discretionary determination by the President that the islands appertained to the U.S.; President exercised "strictly executive power").

[19] Plaintiffs ignore the central holding of *Clinton*—which rested on "narrow" procedural grounds, 524 U.S. at 448—and suggest instead that it establishes a multi-factor test for Presentment Clause violations. But *Clinton* merely identified three bases for distinguishing previous cases from the question of the President's "power to cancel portions of a duly enacted statute," 524 U.S. at 443; it "did not purport to adopt a three-part test based on these distinctions to determine whether a particular [statute] is constitutional." *Defenders of Wildlife v. Chertoff*, 527 F. Supp. 2d 119, 125 (D.D.C. 2007), *cert. denied*, 128 S. Ct. 2962 (2008). When, as here, a statute does not implicate "the power to amend or repeal duly enacted laws, … the holding of *Clinton* is inapplicable." *Id.* at 126. In any event, these factors confirm the absence of a constitutional problem here. For example, whereas the line-item veto contravened congressional policy, *see* 524 U.S. at 444, the Attorney General's certification merely implements the legislative will. *See Smith v. Federal Reserve Bank of N.Y.*, 280 F. Supp. 2d 314, 324 (S.D.N.Y. 2003) ("Unlike in *Clinton*, President Bush is carrying out, not rejecting, a policy made by Congress"). And whereas the line-item veto provided little restriction on what laws the President could unilaterally invalidate, *see* 524 U.S. at 443-444, here, a certification may be given effect only when substantial evidence establishes that congressionally specified factual circumstances exist, *see* 50 U.S.C. § 1885a(a)(1)-(5); *see also id.* § 1885(5); *Terran v. Secretary of*

b.     Plaintiffs also argue (at 20) that § 802 impermissibly delegates to the Attorney General unfettered discretion to determine when a certification should be furnished. Their resort to this argument merely highlights the weakness of their position: Since 1935, the Supreme Court has never invalidated a statute under the nondelegation doctrine. *See Mistretta v. United States*, 488 U.S. 361, 373 (1989). And a nondelegation argument is wholly inapt in this context, where the Attorney General is simply performing the executive function of making a factual certification on which the applicability of congressionally enacted legislation turns.

Even when the Executive is promulgating rules (not, as here, merely carrying out rules enacted by Congress), to avoid a nondelegation infirmity, Congress need only provide an "intelligible principle," *i.e.*, it must "clearly delineate[] … the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Id.* at 372-373 (internal quotation marks omitted). Section 802 easily satisfies this standard. Congress expressed its policy judgment that no suits should lie against carriers in certain carefully defined circumstances. And it confined the Attorney General's authority to submit a certification to situations in which he could tender substantial evidence to a court demonstrating that one or more of those circumstances exist.

That the Attorney General might exercise discretion as to whether to tender a certification is both purely conjectural—he has done so here—and not a matter of constitutional significance. *See Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 475 (2001) ("[A] certain degree of discretion, and thus of lawmaking, inheres in most executive or judicial action." (internal quotation marks omitted)). Indeed, the Supreme Court has rejected as "untenable" a nondelegation challenge to legislation whose application was made to turn not only upon discretionary factual determinations by the Executive, but also upon the favorable vote of *private citizens*. *Currin*, 306 U.S. at 15-16. If such a scheme presents no nondelegation problem, then § 802 certainly does not. "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process," far from amounting to a separation of powers or nondelegation violation, "is a decision generally committed to an agency's

*HHS*, 195 F.3d 1302, 1314 (Fed. Cir. 1999). To the extent the Attorney General has discretion whether to issue a certification, courts have consistently held that such discretion does not constitute a delegation of lawmaking authority. *See infra* Section I.B.2.b.

absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Such flexibility is a feature of innumerable laws—including many where the Executive has been granted far more discretion than in § 802. This is especially so in matters relating to national security and foreign intelligence, where the Executive may properly be given "a degree of discretion and freedom from statutory restriction which would not be admissible were domestic affairs alone involved." *Clinton*, 524 U.S. at 445 (internal quotation marks omitted).[20]

### 3.    Section 802 Does Not Impermissibly Direct Judicial Fact-finding

Plaintiffs likewise err in suggesting that § 802 impinges on the judicial function by purportedly forbidding "the Court from engaging in independent fact-finding." Opp. 21. Plaintiffs acknowledge, as they must, that § 802 expressly authorizes courts to reject a certification that is unsupported by substantial evidence provided to the court. *See* § 802(b)(1); 154 Cong. Rec. S6383 (daily ed. July 8, 2008) (Sen. Rockefeller) ("This bill … gives the district court both an important role in determining whether statutory requirements for liability protection have been met and the tools to make that assessment."). Plaintiffs insist, however, that the substantial evidence standard effectively empowers the Attorney General, rather than the courts, to find the facts. In *Ecology Center*, they say, the Ninth Circuit "particularly emphasized that, although the applicable law had changed, the district court retained plenary authority to find the facts *de novo* and then apply those facts to determine whether the new law was satisfied." Opp. 21.

Plaintiffs ignore decades of law recognizing that courts perform a judicial function when they review executive branch determinations under deferential standards. Far from requiring non-

---

[20] For example, courts have upheld against nondelegation challenges statutes that permit the President to extend embargoes against foreign nations if, in his discretion, it is in "the national interest of the United States," *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1437 (9th Cir. 1996), and that empower the Secretary of Homeland Security, in his "sole discretion," to waive "all legal requirements … necessary to ensure" the construction of a physical barrier on the U.S.-Mexican border, *Defenders of Wildlife*, 527 F. Supp. 2d at 119. *See also, e.g.*, 10 U.S.C. § 433(b) (Secretary of Defense may waive compliance with certain federal laws or regulations if they "create an unacceptable risk of compromise of an authorized intelligence activity"); 15 U.S.C. § 2621 (EPA may waive compliance with Toxic Substances Act upon determination by President that waiver is "necessary in the interest of national defense"); 20 U.S.C. § 7426(e) (designated cabinet secretaries authorized to "waive any regulation, policy, or procedure promulgated by [their] department[s]" necessary for integration of education and related services provided for Indian students); 22 U.S.C. § 7207(a)(3) (President may waive statutory prohibition on assistance to certain countries if he determines waiver "is in the national security interest of the United States … or for humanitarian reasons").

deferential review of any and all adjudicative facts, the Ninth Circuit has held that a statute does not impermissibly trench upon the judicial function so long as it "leav[es] … room for adjudication" by a district court. *Gilmore v. California*, 220 F.3d 987, 1005 (9th Cir. 2000); *see also United States v. Sioux Nation of Indians*, 448 U.S. 371, 392 (1980) (separation of powers problem could arise if a law "left the court no adjudicatory function to perform").[21] Substantial evidence review under § 802(b) plainly does that. As Plaintiffs acknowledge (at 24), the Attorney General performs no adjudicatory functions, makes no conclusive finding of fact, and imposes no immediate legal consequence on Plaintiffs. Those roles are left to the Court.

Contrary to Plaintiffs' argument, the Ninth Circuit's decision in *Ecology Center* did not hold that *de novo* review was constitutionally required. The court upheld a statute designed by Congress to terminate specific pending environmental litigation because the district court there, as here, retained the power to determine whether the standards Congress laid out in the statute had been met. 426 F.3d at 1149. The district court made its determination under the deferential APA standard of review. *See Ecology Center, Inc. v. Castenada*, No. CV-02-200-M, slip op. at 7-8 (D. Mont. Aug. 20, 2004) (Exhibit 2). Neither the Ninth Circuit nor the Supreme Court has ever held that *de novo* fact-finding is required to avoid a separation of powers violation.[22] This radical rule would call into question the numerous statutes providing standards more deferential than plenary review, including the APA. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490 (1951) (courts reviewing for substantial evidence do not "abdicate the conventional judicial function").

---

[21] The Brennan Center (at 8) attempts to derive a new species of *Klein* violation from a broad and irrelevant dictum—namely, that Congress cannot "decide the controversy at issue in the Government's own favor"—in a case that in fact upheld the challenged statute as constitutional. *Sioux Nation*, 448 U.S. at 405. No case, including *Sioux Nation*, stands for this proposition. And far from deciding claims in the government's favor, § 802 both preserves all claims against governmental actors and requires the Inspectors General of DOJ, the ODNI, the NSA, and DOD, among others, to investigate the alleged programs, including any private sector involvement. FISAAA § 301.

[22] *See, e.g.*, *Crowell v. Benson*, 285 U.S. 22, 51 (1932) (Article III does "no[t] require[] that … all determinations of fact in constitutional courts shall be made by judges"); *United States v. Raddatz*, 447 U.S. 667, 682 n.10 (1980) ("The *Crowell* Court rejected a wholesale attack on any delegation of factfinding to the administrative tribunal.").

## II. SECTION 802'S SUBSTANTIAL EVIDENCE STANDARD DOES NOT VIOLATE DUE PROCESS

Plaintiffs' contention that § 802 deprives them of due process because it provides for some level of deferential review by this Court is equally baseless. Plaintiffs are receiving all that due process requires—"a hearing before an impartial adjudicator empowered to receive evidence and argument and to decide all the facts and law relevant to" their claims. Opp. 23. Plaintiffs concede that this Court "gives notice and conducts hearings and is unbiased." *Id.* They are, moreover, plainly being heard: They have submitted extensive briefing and over 3000 pages of exhibits for the Court's consideration.[23] As a result, Plaintiffs' complaint reduces to the claim that § 802(b)'s "substantial evidence" standard is unconstitutional because of an alleged "structural bias" in the roles played by the Attorney General as certifier and counsel for the United States and his alleged pre-judgment of the issues. But § 802 permits meaningful judicial inquiry that is plainly sufficient to satisfy due process. Indeed, it is far from unusual for courts to show the type of deference contemplated by § 802—or even greater deference—to executive branch determinations on issues of foreign policy or national security. Plaintiffs' due process claim cannot be reconciled with these cases or with the equally well-settled precedent approving the dual role of executive branch agencies in administering the law and advancing policy positions.

1. As an initial matter, the Court need not even reach Plaintiffs' constitutional challenge to the substantial evidence standard because they do not and cannot show that the standard would make a difference. The factual questions at issue under § 802—whether a company provided the alleged assistance or received the requisite written authorization as part of a counter-terrorism program—are straightforward. Plaintiffs' "as-applied" challenge (*see* Joint Case Management Statement 13 n.8 (Dkt. 466)) can succeed only if application of the substantial evidence standard in this case actually would injure them. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because Plaintiffs cannot show that the Attorney General's certification would be rejected under some other standard, the Court need not resolve Plaintiffs' claim that the standard in § 802 violates due

---

[23] Defendants do not concede that the materials submitted by Plaintiffs are probative, admissible, or sufficient to call into question the certification of a government official with knowledge of the actual facts, which pertain to classified intelligence activities.

process. *See, e.g., United States v. Kaluna*, 192 F.3d 1188, 1197-1198 (9th Cir. 1999) (en banc) (declining to rule on due process challenge to "clear and convincing evidence" standard because even if due process required lower standard of proof, the result would have been the same); *People's Mojahedin Org. of Iran v. Department of State*, 327 F.3d 1238, 1243-1244 (D.C. Cir. 2003).

2.    In any event, Plaintiffs' challenge fails on the merits. The "requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands.'" *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see Wolkenstein v. Reville*, 694 F.2d 35, 41 (2d Cir. 1982) (Friendly, J.). As explained below, in lawsuits challenging alleged classified intelligence activities, Congress's choice to have Article III courts test the Attorney General's certification under a "substantial evidence" standard provides all the process that is due. Indeed, as Congress itself recognized, § 802 provides more process than Plaintiffs would have received had these cases instead been dismissed based upon the state secrets privilege. S. Rep. 110-209, at 12 (the FISAAA would "expand judicial review").

Although § 802 provides for some deference to the Executive, the statute permits the Court to make a meaningful, independent assessment of the facts at issue.[24] The Attorney General's certification shall not be given effect if the Court "finds" that it is "not supported by substantial evidence." 50 U.S.C. § 1885a(b)(1). In making that finding, the Court is to consider the evidence "*provided to the court* pursuant to this section." *Id.* (emphasis added). As Plaintiffs concede (at 24), it is this Court, not the Attorney General, that adjudicates whether the requirements of § 802 are met. Because there was no adjudication by the Attorney General, the "substantial evidence" standard of § 802 differs from an APA-style standard of review on an agency record. Section 802 requires that the Court independently review the evidence presented to it, while giving appropriate deference to the Executive on matters of national security.[25]

---

[24] *See* 154 Cong. Rec. S6383 (daily ed. July 8, 2008) (noting court's "important role in determining whether statutory requirements for liability protection have been met") (Sen. Rockefeller); *id.* (The "substantial evidence" standard "is a higher, tougher standard than the 'abuse of discretion' test we had in the Senate bill.") (Sen. Rockefeller); *id.* (Plaintiffs "are provided the opportunity to brief the legal and constitutional issues before the court and may submit documents to the court for review. Whatever it is they want to submit, they can submit.") (Sen. Rockefeller).

[25] *Cf., e.g., Steadman v. SEC*, 450 U.S. 91, 102 (1981) (concluding that the "substantial evidence" standard of 5 U.S.C. § 556(d) "was intended to establish a standard of proof," not a standard of ap-

17

1  Nothing about that deference raises due process concerns. To the contrary, § 802's substan-

2  tial evidence standard reflects the traditional deference owed to the political branches with respect to

3  matters of national security and foreign affairs. *See, e.g., Al-Haramain Islamic Found., Inc. v. Bush*,

4  507 F.3d 1190, 1203 (9th Cir. 2007); *Chicago & Southern Air Lines v. Waterman S.S. Corp.*, 333

5  U.S. 103, 111 (1948). For example, in determining whether documents are exempt from disclosure

6  under the Freedom of Information Act because they would reveal intelligence sources and methods,

7  courts must give "great deference" to the government's position, *CIA v. Sims*, 471 U.S. 159, 179

8  (1985), and accord "substantial weight" to government affidavits, *Hunt v. CIA*, 981 F.2d 1116, 1119

9  (9th Cir. 1992).[26] Going well beyond the deference contemplated under § 802, courts have given

10  *conclusive* weight to the views of the State Department in matters involving immunities related to

11  foreign affairs.[27] Executive submissions invoking the state secrets privilege are, likewise, entitled to

12  greater deference than are certifications under § 802(b). *See Kasza v. Browner*, 133 F.3d 1159, 1166

13  (9th Cir. 1998) (state secrets assertion is accorded the "utmost deference" (internal quotation marks

14  omitted)); *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953). Yet no court has ever suggested that

15  the deferential review that applies in these contexts violates due process, including in cases where

16  the Executive's submission operates to bar a plaintiff's claims altogether. If such review is constitu-

17  tionally adequate in these judicially recognized contexts, then *a fortiori*, the careful procedures Con-

18  gress specified in § 802 are as well.

---

19  pellate review); *American Grain Trimmers, Inc. v. Office Workers Comp. Programs*, 181 F.3d 810,
20  817-818 (7th Cir. 1999) (en banc) (applying "substantial evidence" standard as a standard of proof);
   *Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir. 2005) (same).

21  [26] *See also Berman v. CIA*, 501 F.3d 1136, 1140-1142 (9th Cir. 2007) (noting "broad deference"
22  owed to the CIA); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) ("[I]n conducting *de novo* review
   in the context of national security concerns, courts must accord substantial weight to an agency's
23  affidavit . . . ." (internal quotation marks omitted)).

   [27] *See United States v. Al-Hamdi*, 356 F.3d 564, 573 (4th Cir. 2004) (giving conclusive weight to
24  State Department certification that criminal defendant did not have diplomatic status and rejecting
   argument that procedures violated due process); *Abdulaziz v. Metropolitan Dade County*, 741 F.2d
25  1328, 1331 (11th Cir. 1984) ("[C]ourts have generally accepted as conclusive the views of the State
   Department as to the fact of diplomatic status."); *Ye v. Zemin*, 383 F.3d 620, 625 (7th Cir. 2004)
26  ("[T]he Executive Branch's suggestion of [head-of-state] immunity is conclusive and not subject to
   judicial inquiry."); *Saltany v. Reagan*, 702 F. Supp. 319, 320 (D.D.C. 1988) (State Department certi-
27  fication regarding head of state immunity conclusive), *rev'd in part on other grounds*, 886 F.2d 438
   (D.C. Cir. 1989); *Republic of Mexico v. Hoffman*, 324 U.S. 30, 34-36 (1945) (State Department cer-
28  tification that foreign-owned vessel immune from suit conclusive).

18

In addition to being consistent with well-established precedent in the national security arena, affording some deference to the Attorney General's certification also makes eminent sense and poses no constitutionally unacceptable risk of an erroneous decision. *See Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976); *Addington v. Texas*, 441 U.S. 418, 425 (1979) (analyzing due process challenge to standard of proof under *Mathews*). Because the questions at issue under § 802 pertain to alleged classified intelligence activities, virtually all probative evidence is in the exclusive control of the government. Section 802, moreover, calls on the Attorney General to make assessments that the Executive is uniquely positioned to provide. *Compare, e.g.*, 50 U.S.C. § 1885a(4)(A)(ii) (whether alleged surveillance was "designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack, against the United States"), *with People's Mojahedin Org. of Iran v. Department of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) (whether terrorist activity of designated organization "threatens the security of United States" is "nonjusticiable"). Furthermore, the truth or falsity of the factual representations in a § 802 certification should be readily and reliably ascertainable; a particular carrier either will or will not have received one of the forms of written authorization specified in § 802, or will or will not have participated in the alleged surveillance activities. A more probing standard would not therefore be useful in reducing the risk of error and is certainly not so indispensable as to be constitutionally required.[28]

Not only is there little risk that the application of § 802's procedures will result in an erroneous deprivation of Plaintiffs' interests, those interests are extremely attenuated in the present context. Plaintiffs' asserted "property" interest is merely in an inchoate cause of action, and ultimately reduces to *whom,* rather than *whether*, they may sue. *See In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 989 (9th Cir. 1987). Similarly, because § 802 does not foreclose Plaintiffs from litigating their constitutional claims against the government, no "liberty" interest (Opp. 22) is ultimately at stake here. *See supra* Section I.A. By contrast, § 802's substantial evidence standard furthers an important governmental interest by protecting the appropriate roles of the political and judi-

---

[28] In any event, courts have interpreted the "substantial evidence" standard to have a wide range of meanings, *see, e.g., Steadman*, 450 U.S. at 102, and, under the canon of constitutional avoidance, the Court should not construe it in a manner that would render the statute unconstitutional.

cial branches in matters relating to foreign affairs and national security and ensuring that courts give due weight to the views of the executive branch on matters that fall distinctly within its area of core responsibility and competence. *See*, *e.g.*, *Chicago & Southern Air Lines*, 333 U.S. at 111. Under the circumstances, the adoption of the substantial evidence standard in § 802(b) is simply an exercise of the "traditional powers of Congress to prescribe rules of evidence and standards of proof in the federal courts," *Vance v. Terrazas*, 444 U.S. 252, 265 (1980), and raises no due process concerns.

Because Plaintiffs can cite no authority suggesting that deference to the Executive in matters of foreign affairs and national security raises constitutional concerns, they are left to claim that this case is different because the Attorney General is allegedly "biased," attempting to shoehorn this claim into the narrow holding of *Concrete Pipe & Products v. Construction Laborers Pension Trust*, 508 U.S. 602 (1993). *Concrete Pipe* involved a challenge to an assessment imposed on a company that withdrew from a multi-employer pension plan. The Court concluded that the plan trustees who imposed the assessment were biased. The trustees had "fiduciary obligations" to "maximize assets available for the beneficiaries of the trust," which gave them an "obvious" incentive to "mak[e] findings to enhance withdrawal liability." *Id.* at 617. Moreover, they faced "*personal liability*" in the event the plan had insufficient resources, providing additional motivation to impose heightened withdrawal liability. *Id.* (emphasis added). Additionally, as appointees of the employees and the companies remaining in the plan, the trustees had additional financial incentives to maximize withdrawal liability. *Id.* In these circumstances, the Court invoked constitutional avoidance to construe a uniquely "incoherent" statute "to place the burden on the employer to disprove a challenged factual determination by a preponderance." *Id.* at 625, 629.[29] Even discounting the lack of a constitutional holding and the idiosyncratic nature of the statute at issue in *Concrete Pipe*, the proper yardstick against which to measure the procedures in § 802 is not the procedure applicable to multi-employer pension plan withdrawal liability but the procedure employed in other litigation involving

---

[29] Plaintiffs' reliance on *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980), is also similarly misplaced. In that case, the Court rejected a due process challenge to an agency enforcement scheme because it concluded that the agency officers did not, in fact, have a significant financial interest in the bringing of enforcement actions. *Id.* at 250-251. The case did not turn on the presence of *de novo* review, which the Court noted only in passing. *Id.* at 245, 247.

1    intelligence activities, such as those involving state secrets discussed above.  By that measure, § 802

2    is more than sufficient.

3          Even if *Concrete Pipe* applied, however, it would not cast constitutional doubt on § 802, be-

4    cause Plaintiffs allege a form of purported "bias" far different than that in *Concrete Pipe*.  Unlike the

5    trustees in *Concrete Pipe*, Attorney General Mukasey owes no "fiduciary obligation[]" to the carri-

6    ers.  And Plaintiffs concede that, unlike the trustees, the Attorney General does not "stand to gain

7    personally" in this case.  Opp. 24.  Plaintiffs also do not assert that the Attorney General has any

8    cognizable institutional financial interest in the claims against the carriers.  The absence of fiduciary

9    obligation and any financial interest by the Attorney General, personal or institutional, makes *Con-*

10   *crete Pipe* inapplicable by its own terms.  *See generally United Farm Workers of Am., AFL-CIO v.*

11   *Arizona Agric. Employment Relations Bd.*, 727 F.2d 1475, 1478 (9th Cir. 1984) (en banc) ("The cor-

12   nerstone of unconstitutional bias in the adjudicatory context … is the existence of the decision-

13   maker's financial interest in the outcome of a case.").[30]

14         Nevertheless, Plaintiffs allege that Attorney General Mukasey has an institutional "bias"

15   arising from the office he holds and the policy views of the Administration.  But these do not impli-

16   cate *Concrete Pipe* in particular or due process concerns more generally.  As an initial matter, Plain-

17   tiffs concede that under § 802 the Attorney General "performs no judicial or quasi-judicial func-

18   tions."  Opp. at 24 (quoting *Concrete Pipe*, 508 U.S. at 619).  For this reason, the "rigid require-

---

[30] *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995), cited by the Brennan Center (at 10-11),
also does not apply.  The Westfall Act does not specify whether certifications—which "cus-
tomar[ily] … state[] no reasons for the … scope-of-employment determination," *id.* at 422 & n.2—
are subject to *any* judicial review.  The Court in *Gutierrez* interpreted the Act to permit it.  *See id.* at
434.  The Court's statutory construction was influenced by the concern that the U.S. Attorney's cer-
tification would terminate litigation against both the federal employee and the government, which is
not true of § 802.  *Gutierrez* did not address the standard of review, which, unlike here, was not set
by statute.  In the absence of a statutory standard, the Ninth Circuit has held that a Westfall Act cer-
tification is "prima facie evidence that a federal employee was acting in the scope of her employ-
ment at the time of the incident."  *Pauly v. United States Dep't of Agric.*, 348 F.3d 1143, 1151 (9th
Cir. 2003) (internal quotation marks omitted).  If a certification is challenged, review is *de novo*, but
the party challenging the certification "bears the burden of disproving the certification by a prepon-
derance of the evidence."  *Id.*; *see also Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006) (*de novo*
review); *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991) (same).
We are aware of no case holding that constitutional considerations would preclude Congress from
employing a substantial evidence standard, especially in the national security area.  *See Day v. Mas-*
*sachusetts Air Nat'l Guard*, 167 F.3d 678, 685 (1st Cir. 1999) (Westfall Act certification implicating
military should be accorded "the deference ordinarily shown to the executive in military matters").

ments [of neutrality] … designed for officials performing judicial or quasi-judicial functions[] are not applicable." *Marshall*, 446 U.S. at 248. Because he is not an adjudicator, the Attorney General is required only to act in furtherance of "public interests, within the confines of the law and untainted by any substantial personal interest." *Baran v. Port of Beaumont Navigation Dist.*, 57 F.3d 436, 445 (5th Cir. 1995). There is no dispute that is the case here.

In any event, Plaintiffs could not meet the heavy burden of demonstrating that the Attorney General was biased even under the standards applicable to adjudicators. *See Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982). Plaintiffs argue (at 24) that Attorney General Mukasey is biased because "he is an advisor to the Administration and is counsel to the United States, [and] a party intervenor to this lawsuit." The case law forecloses this sort of "structural bias" argument arising from the Attorney General's dual roles as head of the Department of Justice and certifier under § 802. In *Withrow v. Larkin*, 421 U.S. 35 (1975), the Supreme Court held that the exercise of dual functions by an agency decision maker does not violate due process. Contrasting such a structural "bias" with cases involving a financial interest or personal attacks on the adjudicator, the Court explained:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that … conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47; *see also Richardson v. Perales*, 402 U.S. 389, 410 (1971); *United States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987). Indeed, an agency may simultaneously litigate against a party in court and adjudicate the same issue against the same party without offending due process. *See, e.g., Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104-1106 (D.C. Cir. 1988).[31]

Plaintiffs' contention (at 24) that "the Attorney General has an actual bias in this matter and has prejudged it" is similarly unfounded. A "decisionmaker [is not] disqualified simply because he

---

[31] Plaintiffs cite *Alpha Epsilon Phi Tau v. City of Berkeley*, 114 F.3d 840 (9th Cir. 1997), but that case did not address allegations of structural bias due to overlapping agency functions, and it *rejected* a due process challenge even though the rent board at issue had "had some financial interest in its coverage decisions." *Id.* at 844.

22

has taken a position, even in public, on a policy issue related to [a] dispute, in the absence of a show-ing that he is not 'capable of judging a particular controversy fairly on the basis of its own circum-stances.'" *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n.*, 426 U.S. 482, 493 (1976) (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)); *see also* Wright et al., *Federal Prac-tice & Procedure* § 8258 (2008) ("Courts generally will not examine an action based on alleged bias or prejudgment as to law or policy."); *FTC v. Cement Inst.*, 333 U.S. 683, 700 (1948). All of the statements cited by Plaintiffs addressed a matter of policy: whether Congress should enact legisla-tion such as § 802. *See* Opsahl Decl. Exs. 69-75. None of the statements prejudged the *factual* questions addressed in Attorney General Mukasey's certification—whether particular companies engaged in the specific conduct alleged and whether any that did so received the requisite order, cer-tification, directive, or request. At bottom, the Attorney General's alleged "bias" is at most a policy position—and one with which Congress agreed and embodied in the law he now invokes. Such a "bias" is not only far outside the concerns underlying the Court's statutory holding in *Concrete Pipe*, it implicates no genuine due process concern at all.[32]

## III.    SECTION 802'S NONDISCLOSURE PROVISIONS ARE CONSTITUTIONAL

As Congress recognized, *see* S. Rep. No. 110-209, at 9-11, the nondisclosure provisions Plaintiffs challenge further the government's paramount interest in safeguarding the confidentiality of its intelligence-gathering sources and methods. *See Department of Navy v. Egan*, 484 U.S. 518, 527 (1988); *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980). In that respect, it is identical to

---

[32] *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), is far off point. Most obviously, the liberty interest at stake there is incomparable to whatever limited interests are at issue here. *Hamdi* involved a due process challenge by a U.S. citizen that the government sought to detain indefinitely as an enemy combatant. *Id.* at 509. Despite having a substantially less significant interest, Plaintiffs here are re-ceiving considerably more process than Mr. Hamdi was afforded. The Court in *Hamdi* rejected the government's proposed "some evidence" standard, under which a reviewing court would have been required to "assume the accuracy" of the basis for detention articulated in an affidavit from a subor-dinate Department of Defense officer. *Id.* at 512, 527-528. Here, by contrast, the Attorney General (or his Deputy) has a non-delegable obligation personally to certify the facts upon which immunity depends, 50 U.S.C. § 1885a(e), and the court, far from being required to accept that certification, is obliged to test it against evidence submitted to it, and to reject it if it is unsupported by substantial evidence, *id.* § 1885a(b). *See Dickinson v. United States*, 346 U.S. 389, 396 (1953). Finally, despite the paramount liberty interest at stake, the Court in *Hamdi* made clear that "the Constitution would not be offended by a presumption in favor of the Government's evidence." 542 U.S. at 534. Surely the deference § 802 embodies is similarly permissible.

23

other statutes and procedures providing for *in camera*, *ex parte* review of national security information in court proceedings, the constitutionality of which have been consistently upheld. Section 802's nondisclosure provisions create no new burden on Plaintiffs' constitutional rights and do not prevent them from gaining access to information they otherwise would be entitled to see.

**A.     The Challenged Provisions Comport With Due Process**

Far from infringing Plaintiffs' due process rights, § 802, like numerous other statutory schemes, seeks to protect sensitive information while allowing the district court to adjudicate Plaintiffs' claims. It affords Plaintiffs greater process than would obtain under the state secrets privilege, the procedural constitutionality of which is unquestioned.

1.     Congress has fashioned numerous statutory schemes providing for *in camera*, *ex parte* review of national security information, and courts have consistently rejected claims that these schemes violate due process. Courts of appeals have sustained against due process challenges provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 8 U.S.C. § 1189, and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1702(c), authorizing the *ex parte*, *in camera* use of classified evidence in proceedings to freeze the assets of organizations that assist or sponsor terrorism. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (rejecting plaintiff's complaint that due process prevented its designation as a global terrorist based upon classified evidence to which it had no access); *People's Mojahedin Org. of Iran*, 327 F.3d at 1242 (rejecting claim that use of classified information disclosed only to the court in the designation of a foreign terrorist organization violates due process).[33] Courts have also approved the *in camera*, *ex parte* inspection of documents and affidavits in litigation concerning the propriety of a claimed exemption to FOIA disclosure, particularly when, as here, the government interest at stake relates to national security.[34] And they have uniformly rejected due process chal-

---

[33] *See also Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) ("Administration of the IEEPA is not rendered unconstitutional because that statute authorizes the use of classified evidence that may be considered *ex parte* by the district court."); *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192, 208 (D.C. Cir. 2001) (notice to entities under consideration for designation as foreign terrorist organizations "need not disclose the classified information to be presented *in camera* and *ex parte* to the court under the statute").

[34] *E.g.*, *Pollard v. FBI*, 705 F.2d 1151, 1154 (9th Cir. 1983); *EPA v. Mink*, 410 U.S. 73, 93 (1973).

24

lenges by defendants in criminal proceedings to *ex parte*, *in camera* judicial review under 50 U.S.C. § 1806(f) to determine whether surveillance under FISA was lawfully authorized.[35]

Similarly, *in camera*, *ex parte* review of classified materials is "unexceptionable" in cases in which the state secrets privilege is invoked. *Kasza*, 133 F.3d at 1169. Nor, as Plaintiffs contend, does due process forbid a court from relying on such evidence in reaching a merits determination. To the contrary, courts of appeals have permitted use of privileged evidence "to avoid the inequity caused when the United States asserts its privilege at the possible expense of a civilian defendant." *In re Sealed Case*, 494 F.3d 139, 148 (D.C. Cir. 2007). As the Ninth Circuit has held, "if the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant." *Kasza*, 133 F.3d at 1166 (internal quotation marks omitted); a*ccord Tenenbaum v. Simonini*, 372 F.3d 776, 777-778 (6th Cir. 2004); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991); *Molerio v. FBI*, 749 F.2d 815, 825 (D.C. Cir. 1984). In such circumstances, "the trial court may … consider the merits of the privileged defense on an *ex parte*, *in camera* basis." *In re United States*, 872 F.2d 472, 481 (D.C. Cir. 1989). Thus, in *Molerio*, the court upheld the dismissal of plaintiff's First Amendment claim where *in camera*, *ex parte* consideration of privileged materials revealed that the claim lacked merit. 749 F.2d at 825.[36]

In this case, if § 802 did not contain a nondisclosure provision, Attorney General Mukasey could have invoked the state secrets privilege as to his certification and the supporting supplementary materials. If, upon review of these materials *in camera* and *ex parte*, the Court concluded that they provided the carrier defendants with a defense under § 802, then under the valid-defense rule, the carriers would be entitled to summary judgment. In this respect, the procedures mandated by

---

[35] *See, e.g.*, *Ott*, 827 F.2d at 476-477; *United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005); *In re Grand Jury Proceedings*, 856 F.2d 685, 688 n.3 (4th Cir. 1988); *United States v. Belfield*, 692 F.2d 141, 147-148 (D.C. Cir. 1982). *See also Jifry v. FAA*, 370 F.3d 1174, 1182-1184 (D.C. Cir. 2004) (aviation regulations permitting revocation of airman certificates based on classified intelligence reports reviewed by the court *in camera* and *ex parte* comport with due process).

[36] *See also Ellsberg v. Mitchell*, 709 F.2d 51, 70 (D.C. Cir. 1983) (when the state secrets privilege applies, the court may adjudicate the merits of a qualified immunity defense based on *in camera* evidence); *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986) ("reliance upon *ex parte* evidence to decide the merits of a dispute" appropriate under *Molerio* in cases involving "acute national security concerns" and risk of unjust result if case proceeded).

25

§ 802(c) are quite similar; in effect, they merely codify a version of the state secrets valid-defense rule. Because these provisions deprive Plaintiffs of nothing to which they would otherwise have been entitled, Plaintiffs' assertion that they violate due process is plainly wrong.

*American-Arab Anti-Discrimination Committee v. Reno* ("*AADC*"), 70 F.3d 1045 (9th Cir. 1995), is not to the contrary. In *AADC*, the court balanced the government's interest in using secret information as a "sword" to deny legalization to resident aliens against the aliens' interest and the risk of an erroneous decision. *Id.* at 1068-1070. In the circumstances of that case, the balance tilted decisively against the government. The aliens, who had resided in the United States for more than a decade, had a "strong liberty interest" in remaining in their homes. *Id.* at 1068-1069. The government offered "no evidence" in support of its claimed national security interest. *Id.* at 1069. And there was an "exceptionally high risk" of an erroneous decision regarding whether the aliens could be denied legalization under an amorphous statutory provision because they were members of a group that "advocate[d] prohibited doctrines." *Id.* at 1069-1070; *see also id.* at 1054 n.4. Here, Plaintiffs' interest in pursuing inchoate causes of action against the carriers, where suits against the government remain, does not compare with the liberty interest at issue in *AADC*; the Attorney General has submitted a classified certification demonstrating the government's national security interest in nondisclosure; and the risk of error in the Court's determination of the straightforward facts at issue is low. *See supra* at 18-20. Moreover, unlike here, in *AADC, in camera, ex parte* review was not permitted by statute. *See* 70 F.3d at 1067; *Abourezk*, 785 F.2d at 1061 (*ex parte* resolution of merits may be appropriate when Congress has enacted a "statutory scheme permitting closeted inspection of evidence"). In these circumstances, *AADC* is inapposite. Section 802's *in camera, ex parte* procedures do not deprive Plaintiffs of due process.[37]

_____

[37] Plaintiffs' invocation of *Kinoy v. Mitchell*, 67 F.R.D. 1 (S.D.N.Y 1975), is similarly unavailing. The court there did not purport to decide whether a statute permitting *in camera, ex parte* review would violate due process. Moreover, the case predates numerous decisions (including by the Second Circuit) upholding *in camera, ex parte* merits determinations under the state secrets valid-defense rule, AEDPA and IEEPA, and FOIA. *See supra* at 24-25; *Weberman v. National Sec. Agency*, 668 F.2d 676, 678 (2d Cir. 1982) (FOIA). Likewise, neither *Association for Reduction of Violence v. Hall*, 734 F.2d 63, 67 (1st Cir. 1984), nor *Bane v. Spencer*, 393 F.2d 108, 109 (1st Cir. 1968), involved a valid invocation of the state secrets privilege, a statutory scheme expressly authorizing *in camera, ex parte* review, or national security interests of the sort at issue here.

2.     Plaintiffs are also wrong in claiming that § 802 violates due process by limiting the contents of the Court's order deciding the government's § 802 motion. Opp. 31. As demonstrated above, this Court's *ex parte*, *in camera* consideration of Attorney General Mukasey's certification and related materials in adjudicating the merits of a § 802(a) immunity defense comports with due process. It necessarily follows that due process does not require this Court's order disposing of the government's motion to reveal the content of any protected materials that prove relevant to the Court's decision. A rule requiring such disclosure would render § 802's *ex parte*, *in camera* proce-dures pointless. Thus, in the state secrets and other contexts calling for *in camera* review of classi-fied information, courts have repeatedly emphasized that the secret information at issue should not be disclosed in the course of deciding the case or the government's claim of privilege. *See, e.g.*, *Reynolds*, 345 U.S. at 7-8; *Al-Haramain*, 507 F.3d at 1203; *People's Mojahedin Org. of Iran*, 182 F.3d at 19; *accord National Council of Resistance of Iran*, 251 F.3d at 199.

3.     Finally, even if there were merit to Plaintiffs' attack on the nondisclosure provisions of § 802, Plaintiffs draw precisely the wrong conclusion. If the Court were unable to consider the pending FISAAA immunity defense due to the secrecy of the relevant evidence, the proper resolu-tion would be dismissal of Plaintiffs' claims on the ground (among others) that "defendants could not properly defend themselves without using privileged evidence." *Cf. El-Masri v. United States*, 479 F.3d 296, 309 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 127 S. Ct. 1057, 1063 (2007) ("[T]he Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." (internal quotation marks omitted)).

**B.     The Challenged Provisions Do Not Violate The First Amendment Or Article III**

Finally, Plaintiffs contend that the qualified First Amendment right of press and public ac-cess to certain court proceedings gives the public a right to see the Attorney General's classified fil-ings. Tellingly, however, Plaintiffs have cited *no* case holding anything even close.[38] That is not

---

[38] Plaintiffs have not even shown that they have standing to assert a First Amendment right of ac-cess. To the extent such a right exists, it belongs to the public and the press. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982). Parties to litigation who seek access to closed pro-ceedings or sealed documents simply for use in litigating their case lack third-party standing to raise a First Amendment claim. *See United States v. Hickey*, 185 F.3d 1064, 1066 (9th Cir. 1999).

surprising, because the First Amendment does not provide a right of access to classified material.

1.    The First Amendment's right to access documents filed in judicial proceedings does not extend to classified and highly sensitive national security information in civil cases.  Neither the Supreme Court nor the Ninth Circuit has ever recognized a First Amendment right of access in the civil context.[39]  Moreover, it is not sufficient for Plaintiffs to show merely a right of access to "proceedings and documents" in civil cases generally.  Opp. 33.  Rather, they must demonstrate at a high level of specificity that (1) "historical experience counsels in favor of recognizing a qualified First Amendment right of access to" the particular proceeding or document at issue, and (2) "public access would play a 'significant positive role in the functioning of the particular process in question.'"  *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213-1216 (9th Cir. 1989) (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986)); *see also In re Copley Press, Inc.*, 518 F.3d 1022, 1026-1028 (9th Cir. 2008) (different types of documents analyzed separately); *Seattle Times Co. v. United States Dist. Court*, 845 F.2d 1513, 1516-1517 (9th Cir. 1988).

Plaintiffs can make neither showing.  First, they cannot show that classified materials that would harm national security if disclosed "historically ha[ve] been open to the press and general public."  *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982).  To the contrary, courts have repeatedly and consistently recognized that the government has the right to control access to classified and national security information, and the law provides for *in camera* and *ex parte* review of such materials when their use in civil proceedings is required.  *See supra* Section III.A.  Second, public disclosure of these materials would not play a "positive role in the functioning" of any governmental process.  Even where judicial proceedings concern matters of high public interest, the second prong of the First Amendment test is not met where disclosure would jeopardize national security, as Congress and the Attorney General have concluded it would here.  *See, e.g.*, *North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 217-220 (3d Cir. 2002); *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 494-495 (FISA Ct. 2007).

2.    Even if the First Amendment were implicated, Plaintiffs' claims would fail.  "[E]ven

---

[39] As Plaintiffs concede (at 33 n.9), the Ninth Circuit has recognized only a common-law right of access to civil judicial proceedings, which would, of course, be displaced by § 802 itself.

when a right of access attaches, it is not absolute." *Press-Enterprise*, 478 U.S. at 9. Proceedings subject to the First Amendment may be closed to the public when closure is "essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 13-14 (internal quotation marks omitted). Plaintiffs have not shown that sealing the Attorney General's certification and related materials fails to serve the compelling government interest in maintaining the secrecy of national security information and indeed seem to concede it does, at least for the present. Opp. 32 ("Even if there is at the present time a compelling interest in a ban on disclosure ….").[40]

Rather, Plaintiffs contend that § 802 is not narrowly tailored because it purportedly imposes a "perpetual ban" on access. This argument fails for at least two reasons. First, because Plaintiffs have not attempted to counter the Attorney General's certification regarding the current need for confidentiality, Plaintiffs' challenge rests entirely on objections to the hypothetical operation of § 802 at some future date when disclosure might "no longer harm national security" (Opp. 36). But "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38, 39, 40-41 (1999) (rejecting "overbreadth" challenge where statute implicated only a purported right of access to information, not right of speech) (internal quotation marks omitted). Second, nothing in § 802 imposes a perpetual ban. If the government's compelling interest in the confidentiality of the *in camera* submissions expires (*e.g.*, if classified information submitted to the Court is subsequently declassified in accordance with declassification procedures), a party with standing is free to seek their disclosure. The Court could decide at that time whether the First Amendment applied to the submissions and, if so, whether the First Amendment required disclosure notwithstanding the terms of § 802. But this contention is wholly unripe today.

Plaintiffs' reliance on cases addressing 18 U.S.C. § 2709(c) is misplaced.[41] That statute imposed a permanent prior restraint on citizens wishing to disclose their receipt of a National Security

---

[40] *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 82-83 (2d Cir. 2008) (closure was appropriate to protect national security); *Kasza v. Whitman*, 325 F.3d 1178, 1181 (9th Cir. 2003) (same).

[41] *Doe v. Ashcroft*, 334 F. Supp. 2d 471 (S.D.N.Y. 2004); *Doe v. Gonzales*, 386 F. Supp. 2d 66 (D. Conn. 2005); *Doe v. Gonzales*, 500 F. Supp. 2d 379 (S.D.N.Y. 2007).

Letter. Such a prior restraint on speech "bear[s] a heavy presumption against [its] constitutional va-lidity." *Freedman v. Maryland*, 380 U.S. 51, 57 (1965) (internal quotation marks omitted). While a prior restraint imposes immediate burdens on the right of expression, Plaintiffs may freely seek ac-cess to judicial materials "without incurring any burden other than the prospect that their request will be denied." *United Reporting*, 528 U.S. at 41; *see McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983). Plaintiffs remain free to speak all they wish; their complaint is that they are unable to force information from U.S. intelligence agencies. This is not a First Amendment problem.

Finally, Plaintiffs' argument that subsections (c) and (d) of § 802 violate the First Amend-ment and Article III because they "deny[] the Court the ability to determine whether the disclosure ban satisfies the strict scrutiny test" is similarly off base. Opp. 33. Plaintiffs are themselves cur-rently challenging the constitutionality of these provisions, and nothing in the Act precludes the Court from adjudicating that challenge. The single case Plaintiffs cite in which a court invalidated a statute based on a First Amendment right of access to judicial proceedings involved a state statute that had been interpreted by the highest state court to preclude any case-by-case challenge of the sort Plaintiffs raise here. *See Globe Newspaper*, 457 U.S. at 598, 600, 602, 610-611. Moreover, the stat-ute in *Globe* required closure of the courtroom in all cases when a minor victim testified concerning an alleged sex offense regardless of whether any need for confidentiality existed in the particular case. *Id.* at 608-609. Here, by contrast, the nondisclosure provisions are triggered only when the Attorney General files a declaration that disclosure of particular, identified materials in a specific case would harm the national security or when the information at issue is classified—circumstances in which the First Amendment would never require access. The nondisclosure provisions in § 802 of the FISAAA are constitutional.[42]

## CONCLUSION

For the foregoing reasons, the government's motion should be granted.

---

[42] Plaintiffs assert (at 36) that the Act's secrecy provisions are not severable, but they ignore § 402 of the FISAAA, which provides that "[i]f any provision of this Act … or the application thereof to any person or circumstances is held invalid, the validity of the remainder of the Act … and of the application of such provisions to other persons and circumstances shall not be affected thereby."

1

Dated:    November 5, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SIDLEY AUSTIN LLP
David W. Carpenter    (pro hac vice)
Bradford A. Berenson  (pro hac vice)
David L. Lawson        (pro hac vice)
Edward R. McNicholas (pro hac vice)
Eric A. Shumsky          #206164
1501 K Street, N.W.
Washington, DC  20005
Tel: (202) 736-8010
Fax: (202) 736-8711
bberenson@sidley.com

By:  /s/ Bradford A. Berenson
     _____
          Bradford A. Berenson

PILLSBURY WINTHROP SHAW
   PITTMAN LLP
Bruce A. Ericson        #76342
Jacob R. Sorensen       #209134
Marc H. Axelbaum        #209855
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120
Tel.: (415) 983-1000
Fax: (415) 983-1200
bruce.ericson@pillsburylaw.com

Attorneys for AT&T Corp.[43]

---

[43] The submission of this brief does not constitute a waiver of any defenses that may be available to the AT&T, BellSouth or Cingular defendants, including, but not limited to, lack of personal jurisdiction or insufficient service of process.  *See, e.g.*, AT&T Inc. Motion to Dismiss, No. 06-672 (Dkt. 79); Joint Case Management Statement, No. 06-1791 (Dkt. 61-1) at 51-52.

WILMER CUTLER PICKERING HALE
    AND DORR LLP
Randolph D. Moss      (pro hac vice)
Samir C. Jain        # 181572
Brian M. Boynton     # 222193
Catherine M.A. Carroll  (pro hac vice)
1875 Pennsylvania Ave, N.W.
Washington, DC  20006
Tel.:  (202) 663-6000
Fax:   (202) 663-6363
randolph.moss@wilmerhale.com

By:  /s/ Brian M. Boynton
_____
      Brian M. Boynton

MUNGER, TOLLES & OLSON LLP
Henry Weissmann      # 132418
Susan R. Szabo       # 155315
Aimee A. Feinberg    # 223309
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071
Tel.:  (213) 683-9100
Fax:  (213) 683-5150
henry.weissmann@mto.com

Attorneys for the Verizon Defendants[44]


WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr.      (pro hac vice)
John G. Kester
Gilbert Greenman      (pro hac vice)
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Fax:  (202) 434-5029
jkester@wc.com

By:  /s/ John G. Kester
_____
      John G. Kester

Attorneys for Sprint Defendants[45]

---

[44] The submission of this brief is not a waiver of any defenses that may be available to the Verizon Defendants, including, but not limited to, lack of personal jurisdiction or insufficient service of process.  *See, e.g.*, Verizon Communications Inc. and MCI, LLC Motion to Dismiss (Dkt. 268); Joint Case Management Statement, No. 06-1791 (Dkt. 61-1) at 51-52.  Verizon Communications Inc. and MCI, LLC continue to contest that they are subject to personal jurisdiction in the cases at issue in their motion to dismiss for lack of personal jurisdiction (Dkt. 268).

[45] The submission of this brief is not a waiver of any defenses that may be available to the Sprint Defendants, including, but not limited to, lack of personal jurisdiction or insufficient service of process. *See, e.g.*, Joint Case Management Statement, No. 06-1791 (Dkt. 61-1) at 51-52.

32

**DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B**

I, Brian M. Boynton, hereby declare pursuant to General Order 45, § X.B, that I have ob-

tained the concurrence in the filing of this document from the other signatories listed above.

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed on November 5, 2008, at Washington, D.C.

By: /s/ Brian M. Boynton
    _____
          Brian M. Boynton

Attorney for the Verizon Defendants