1 | GREGORY G. KATSAS
Assistant Attorney General, Civil Division
2 | CARL J. NICHOLS
Principal Deputy Associate Attorney General
3 | JOHN C. O'QUINN
Deputy Assistant Attorney General
4 | DOUGLAS N. LETTER
Terrorism Litigation Counsel
5 | JOSEPH H. HUNT
Director, Federal Programs Branch
6 | ANTHONY J. COPPOLINO
Special Litigation Counsel
7 | CAROLINE LEWIS WOLVERTON
ALEXANDER K. HAAS
8 | PAUL G. FREEBORNE
Trial Attorneys
9 | U.S. Department of Justice
Civil Division, Federal Programs Branch
10 | 20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
11 | Phone: (202) 514-4782—Fax: (202) 616-8460
*Attorneys for the United States*

12

## UNITED STATES DISTRICT COURT

13 | ## NORTHERN DISTRICT OF CALIFORNIA

14 | IN RE NATIONAL SECURITY AGENCY          )   MDL Docket No. 06-cv-1791-VRW
TELECOMMUNICATIONS RECORDS              )
15 | LITIGATION                               )
                                          )
16 | This Document Relates To:                )   **UNITED STATES' REPLY IN**
ALL CLAIMS AGAINST ELECTRONIC           )   **SUPPORT OF MOTION TO DISMISS**
17 | COMMUNICATION SERVICE PROVIDER          )   **OR, IN THE ALTERNATIVE, FOR**
DEFENDANTS (including *AT&T, MCI/*       )   **SUMMARY JUDGMENT**
18 | *Verizon, Sprint/Nextel, Cingular*      )
*Wireless/AT&T Mobility, and BellSouth*  )
19 | Defendants) including in:                )   Date:        December 2, 2008
06-00672 06-05268 06-06253 06-07934     )   Time:        10 a.m.
20 | 06-03467 06-05269 06-06295 07-00464    )   Courtroom:   6, 17th Floor
06-03596 06-05340 06-06294 07-01243     )
21 | 06-04221 06-05341 06-06313 07-02029    )   Chief Judge Vaughn R. Walker
06-03574 06-05343 06-06388 07-02538     )
22 | 06-05067 06-05452 06-06385             )
06-05063 06-05485 06-06387              )
23 | 06-05064 06-05576 06-06435             )
06-05065 06-06222 06-06434              )
24 | 06-05066 06-06224 06-06924             )
06-05267 06-06254 06-06570; and         )
25 | Master *MCI/Verizon* Compl. (Dkt. 125); )
Master *Sprint* Compl. (Dkt. 124); Master )
26 | *BellSouth* Complaint (Dkt. 126); Master )
*Cingular* Amended Complaint (Dkt. 455) )

27

28 | **United States' Reply in Support of Motion to Dismiss and for Summary Judgment**
**(MDL No. 06-CV-1791-VRW)**

# TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    SECTION 802 IS A CONSTITUTIONAL EXERCISE OF CONGRESS'
      AUTHORITY TO AMEND APPLICABLE LAW WITH RESPECT TO A
      PENDING CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Section 802 Does Not Foreclose Plaintiffs From Pursuing Their
            Constitutional Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Section 802 Does Not Violate the Separation of Powers . . . . . . . . . . . . . . . . . . 6

            1.    Section 802 Establishes a Change in Law That Does Not
                  Impermissibly Intrude on the Role of the Court Under Article III . . . . . . 6

            2.    Section 802 Does Not Authorize the Executive Branch To
                  Legislate Nor Violate the Non-Delegation Doctrine. . . . . . . . . . . . . . . . 10

II.   SECTION 802 COMPORTS WITH DUE PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . 13

III.  THE CONSIDERATION OF CLASSIFIED INFORMATION *EX PARTE*,
      *IN CAMERA* PRESENTS NO CONSTITUTIONAL CONCERNS . . . . . . . . . . . . . . . . 17

      A.    Review of the Attorney General's Classified Certification *In Camera*,
            *Ex Parte* Does Not Violate Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      B.    Section 802 Procedures Governing Classified Information Also Do
            Not Violate the First Amendment or Article III . . . . . . . . . . . . . . . . . . . . . . 20

IV.   THE ATTORNEY GENERAL'S CERTIFICATION SATISFIES THE
      REQUIREMENTS OF THE ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      A.    There Are No Evidentiary Obstacles to Considering the Attorney General's
            Certification Under Section 802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      B.    Plaintiffs' Evidentiary Submission Is Improper . . . . . . . . . . . . . . . . . . . . . . . 25

      C.    The Attorney General's Certification Is Properly Supported as to Every
            Claim and Allegation Against the Provider-Defendants . . . . . . . . . . . . . . . . . . 28

            1.    Substantial Evidence Supports the Attorney General's Certification
                  Regarding Plaintiffs' Alleged Content Dragnet. . . . . . . . . . . . . . . . . . . 30

2.    Substantial Evidence Supports the Attorney General's
      Certification Under Section 802(a)(4) as to Any Written
      Requests for Assistance Designed to Detect or Prevent
      Terrorist Attacks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

3.    Substantial Evidence Supports the Attorney General's Certification
      On Other Grounds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

D.    Plaintiffs Demands for Discovery Are Not Consistent With Section
      802 Nor, to the Extent Applicable, Rule 56(f). . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE(S)**

*Al-Haramain v. Bush*, 507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) . . . . . . . . 19

*American Power & Light Co. v. SEC*, 329 U.S. 90 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Anniston Mfg. Co. v. Davis*, 301 U.S. 337 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Apache Survival Coalition v. United States*, 21 F.3d 895 (9th Cir. 1994) . . . . . . . . . . . . . . . . 3, 7

*Barry v. Trustees of Int'l Assn Full-Time Salaried Officers & Employees*
   *(Iron Workers) Union*, 467 F. Supp. 2d 91 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . 4, 5

*Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*CIA v. Sims*, 471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Camp v. Pitts*, 411 U.S. 138 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 33

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . 27

*City of Boerne v. Flores*, 521 U.S. 507 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*City of New York v. Beretta*, 524 F.3d 384 (2d Cir 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Clinton v. City of New York*, 524 U.S. 417 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust*,
   508 U.S. 602 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cook Inlet Treaty Tribes*, 166 F.3d 986 (9th Cir. 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Correctional Serv. Corp. v. Malesko*, 534 U.S. 61 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Department of the Navy v. Egan*, 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

*Dickerson v. United States*, 530 U.S. 428 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*District of Columbia v. Beretta*, 940 A.2d 163 (D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ducharme v. Merrill-National Lab.*, 574 F.2d 1307 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*FCC v. Beach Comm.*, 508 U.S. 307 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fagolia v. Nat'l Gypsum Co.*, 906 F.2d 53 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*,
    953 F.2d 478 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Fields v Legacy Health Sys.*, 413 F.3d 943 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Flores-Miramontes v. INS*, 212 F.3d 1133 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Global Relief Found. v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gray v. First Winthrop*, 989 F.2d 1564 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Grimesy v. Huff*, 876 F.2d 738 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Haig v. Agee*, 453 U.S. 280 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hancock v. Montgomery Ward Long Term Disability Trust*,
    787 F.2d 1302 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Heller v. Doe*, 509 U.S. 312 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . 29

*Holy Land Found. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 2, 18

*Hortonville Joint Sch. Dist. v. Hortonville Educ. Assn*, 426 U.S. 482 (1976) . . . . . . . . . . . . . 15

*Ileto v. Glock*, 421 F. Supp. 2d 1274 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*In re Consolidated United States Atmos. Testing Litig. v. Livermore Labs.*,
    820 F.2d 982 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*In re Motion for Release of Court Records*,
    526 F. Supp. 2d 484 (For. Intel. Surv. Ct. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re National Security Agency Telecommunications Records Litigation, Al-Haramain Islamic Found. v. Bush,*
    564 F. Supp. 2d 1109 (N.D. Cal. July 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Three Mile Island*, 89 F.3d 1106 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Islamic Am. Relief Agency v. Unidentified FBI Agents,*
    394 F. Supp. 2d 34 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*J.W. Hampton, Jr. Co. v. United States*, 276 U.S. 394 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

*Lyons v. Agusta*, 252 F.3d 1078 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Martinez v. California*, 44 U.S. 277 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mathews v. Eldridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McCarthy v. Apfel*, 221 F.3d 1119 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Miller v. French*, 530 U.S. 327 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Mistretta v. United States*, 488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Morrissey v. Brewer*, 408 U.S. 471 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*National Ass'n of Home Builders v. Defenders of Wildlife,*
    __ U.S.__, 127 S. Ct. 2518 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*National Coalition to Save Our Mall v. Norton*, 269 F.3d 1092 (D.C. Cir. 2001) . . . . . . . . . . . 8

*National Council of Resistance of Iran v. Dep't of State,*
    251 F.3d 192 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Oregonian Pub. Co. v. United States Dist. Court for Dist. of Oregon,*
    920 F.2d 1462 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*,
    467 U.S. 717 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People's Mojahedin Organ. of Iran v. Department of State,*
    327 F.3d 1238 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Phoenix Newspapers, Inc. v. United States Dist. Court for Dist. of Arizona,*
    156 F.3d 940 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Plaut v. Spendthrift Farms*, Inc., 514 U.S. 211 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8

*Press-Enterprise Co. v. Superior Court,* 478 U.S. 1 (1986) . . . . . . . . . . . . . . . . . . . . . . . . .20, 21

*Ramo v. Dep't of Navy,*
        487 F. Supp. 127 (N.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Richardson v. Perales*, 402 U.S. 389 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Robertson v. Seattle Audubon Soc.*, 503 U.S. 429 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . passim

*San Jose Mercury News v. United States Dist. Court,*
        187 F.3d 1096 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
        206 F.3d 1322 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Snepp v. United States*, 444 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*State of Cal. ex rel. Cal. Dep' of Toxic Substances Control v. Campbell,*
        138 F.3d 772 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Terrell v. Brewer*, 935 F.2d 1015 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*The Ecology Center v. Castenada*, 426 F.3d 1144 (9th Cir. 2005) . . . . . . . . . . . . . . . . . 4, 7, 10

*The News-Journal Co. v. NLRB*, 447 F.2d 65 (3d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Touby v. United States*, 500 U.S. 160 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Twardowski v. Am. Airlines*, 535 F.3d 952 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Klein*, 80 U.S. 128 (1872) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Milkiewicz*, 470 F.3d 390 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Morgan*, 313  U.S. 409 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Vote v. United States,*
        753 F. Supp. 866 (D. Nev. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Whitman v. American Trucking Ass'n.*, 531 U.S. 457 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Withrow v. Larkin*, 421 U.S. 35 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**United States' Reply in Support of Motion to Dismiss and for Summary Judgment**
**(MDL No. 06-CV-1791-VRW)**

*Yakus v. United States*, 321 U.S. 414 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Youngstown Sheet & Tube Co. v. Sawyer*,
       343 U.S. 579 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATUTES

5 U.S.C. § 551 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2511(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

50 U.S.C. § 402 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

50 U.S.C. § 403-1(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

50 U.S.C. § 1702(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

50 U.S.C. § 1885a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## FEDERAL RULES

Fed. R. Civ. P. 56(e), (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 801(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Evid. 803(8)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Evid. 1006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 27

## LEGISLATIVE MATERIALS

S. Rep. 110-209 (2007), accompanying S. 2248, Foreign Intelligence Surveillance Act of 1978
       Amendments Act of 2007, Senate Select Committee on Intelligence . . . . . . . . passim

**<u>INTRODUCTION</u>**

Section 802 of the Foreign Intelligence Surveillance Act ("FISA") Amendments of 2008 ("FAA" or "Act"), *see* 50 U.S.C. § 1885a, represents the considered judgment of our Nation's political branches that, in the unique historical circumstances following the 9/11 attacks, telecommunications companies should not bear the burden of defending against claims that those companies assisted the Government in its efforts to detect and prevent further terrorist attacks. Following numerous public and classified hearings, extensive briefings, and significant public debate, Congress concluded that those companies should not face further litigation if they provided such assistance pursuant to a court order or a written certification, directive, or request from a senior government official, or did not provide the alleged assistance. Congress also concluded that it should create a procedure that protects national security while affording meaningful judicial review of the issues presented by Section 802. Accordingly, cases shall be dismissed if the Attorney General – the nation's senior legal official–certifies that at least one of the conditions set forth in Section 802(a) has been met, unless the Court finds that the certification is not supported by substantial evidence provided to the Court under that provision. As Congress concluded, this procedure would "expand judicial review to an area that may have been previously non-justiciable" because of the Government's assertion of the state secrets privilege assertion. SSCI Rep. 110-209 at 12 ("SSCI Rep").[1]

Plaintiffs attempt to portray a statute that does not exist, and contend that it constitutes a radical, unconstitutional empowerment of the Executive Branch to secretly extinguish constitutional claims, determine the law, and engage in judicial fact-finding. Even a cursory review of Plaintiffs' arguments, however, demonstrates that Section 802–and the considered policy judgment it represents–is wholly constitutional.

---

[1]     *See* S. Rep. 110-209 (2007), accompanying S. 2248, Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, Senate Select Committee on Intelligence ("SSCI Report") (Dkt. 469-2).

**United States' Reply in Support of Motion to Dismiss and for Summary Judgment
(MDL No. 06-CV-1791-VRW)**

For example, Plaintiffs argue that Congress "abdicate[d] to the Executive the authority to change the law." *See* Pls. Opp. at 1. But Congress did no such thing. *Congress* amended the applicable law in a way that has an effect on pending cases—something Congress has done before and, under well-established authority, plainly may do. *See Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 440-41 (1992). To be sure, the Attorney General has a role under the statutory scheme, but that is true of numerous statutes, and here the Attorney General's role is limited to placing certain facts before the Court through a sworn certification—a procedure that does no more than demonstrate to the Court that the circumstances in which Congress has decided there shall be immunity exist. Because the Court must review that certification to determine whether it is supported by substantial evidence, 50 U.S.C. § 1885a(b)(1), Plaintiffs are also wrong to contend that Section 802 somehow permits the Attorney General to direct this Court to reach particular conclusions, *see* Pls. Opp. 21, or otherwise violates Due Process. And in light of the important national security interests at stake, requiring the Court's review to be conducted *ex parte*, *in camera* is wholly constitutional. *See Holy Land Found. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003).

In addition to challenging the constitutionality of Section 802, Plaintiffs also argue that the Attorney General's certification is not supported by substantial evidence. But Plaintiffs' arguments are based on pure speculation and conjecture, and do not undermine the Attorney General's *ex parte*, *in camera* submission. Because we cannot respond to Plaintiffs' claims on the public record, we respectfully submit a supplemental classified response for the Court's *ex parte*, *in camera* review to Plaintiffs so-called "Summary of Evidence."[2]

In sum, Section 802 of the FAA is a straightforward application of well-established congressional authority to amend applicable law and to provide special procedures governing how courts should apply that law. Because the Attorney General's well-documented certification establishes that one or more of the circumstances set forth in Section 802(a) exist,

---

[2]    As set forth below, Plaintiffs' document is not evidence under Rule 1006 of the Federal Rules of Evidence or Rule 56 of the Federal Rules of Procedure. The Government's response treats this material as allegation.

these cases must be dismissed.

**ARGUMENT**

**I.    SECTION 802 IS A CONSTITUTIONAL EXERCISE OF CONGRESS'
      AUTHORITY TO AMEND APPLICABLE LAW WITH RESPECT TO A
      PENDING CAUSE OF ACTION.**

Because each of Plaintiffs' constitutional arguments is based on a distorted view of the nature and impact of Section 802, it is useful to begin with a reminder of what the provision provides and how it operates.  Section 802(a) creates a statutory defense for persons alleged to have assisted an element of the intelligence community, and provides that "a civil action may not lie" against such persons, and "shall be promptly dismissed," if the Attorney certifies to the district court" that the provider assisted pursuant to a court order, statutory certification or directive, or a written request described in Section 802(a)(4), or did not assist at all.  *See* 50 U.S.C. § 1885a(a)(1)-(5).  Under Section 802, the Attorney General is responsible for presenting facts in his certification that the provider-defendants' participation or non-participation fits within one of those circumstances.  *Id*.  Upon the Attorney General's certification, the Court must determine whether at least one of the five circumstances described in Section 802(a) exists and is supported by "substantial evidence" based on information provided to the Court under Section 802.  *Id*. §§ 1885a(a); 1885a(b)(1).  A case may be dismissed only after the Court has conducted this inquiry.

Contrary to assertions by Plaintiffs and their Amicus, Section 802 is therefore not "novel" or in any way "unprecedented."  *See* Pls. Opp. at 1; Brennan Ctr. Amicus at 1.  As set forth below, Congress has often amended substantive law in a variety of ways applicable to pending litigation—including by modifying substantive legal standards at issue in a case, eliminating claims, establishing defenses and immunities, or substituting the Government for private parties—and such legislation has repeatedly been upheld as consistent with the separation of powers and Due Process Clause, even where the application of the law has resulted in the dismissal of pending claims.  *See, e.g.*, Robertson, 503 U.S. at 441; *see also Apache Survival Coalition v. United States*, 21 F.3d 895, 904 (9th Cir. 1994); *In re Consolidated United*

*States Atmos. Testing Litig. v. Livermore Labs. ("Atmos. Testing")*, 820 F.2d 982, 992 (9th Cir. 1987). So long as Congress has amended the law to be applied by the courts, and is not otherwise attempting to overturn prior final judgments, *see Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211, 218 (1995), there is nothing unconstitutional about such legislation. Indeed, the fact that a statute is directed specifically at certain cases (or even a specific court ruling), is of no constitutional significance. *See, e.g.*, *The Ecology Center v. Castenada*, 426 F.3d 1144, 1148-50 (9th Cir. 2005) (holding statute does not offend separation of powers because it modified existing law at issue in a specific case pending before a district court); *see also Gray v. First Winthrop*, 989 F.2d 1564, 1569-70 (9th Cir. 1993). It is against this backdrop that Plaintiffs' constitutional arguments must be considered.

### A. Section 802 Does Not Foreclose Plaintiffs From Pursuing Their Constitutional Claims.

Plaintiffs begin their attack on Section 802 with a long but unavailing argument that this provision somehow eliminates their remedy for alleged constitutional violations by denying them "any judicial forum" to present their constitutional claims. Pls. Opp. at 4, 2-13. Plaintiffs contend that Congress has unlawfully foreclosed their right to seek equitable remedies for alleged Fourth and First Amendment violations, *see id.* at 2-3, or to seek damages under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Pls. Opp. at 3-6. But Section 802 does no such thing—it merely precludes Plaintiffs from seeking remedies for alleged constitutional violations from a certain group of private entities (the provider-defendants).

Because Section 802 does not apply to claims against Government defendants, Plaintiffs remain free to seek such relief against Government actors; in fact, Plaintiffs in several cases consolidated in this MDL proceeding have sued Government defendants. Indeed, in their most recently filed action, *Jewel v. NSA, et al.*, No. 08-cv-4373 (N.D. Cal.) ("*Jewel* Compl."), these very same Plaintiffs have brought both constitutional and statutory claims against the government and government officials in both their official and personal capacity, seeking injunctive relief, declaratory relief, and damages. Section 802 is entirely inapplicable to those

claims.[3] Where, as here, a statute does not foreclose the litigation of claims against the government for alleged constitutional violations, the preclusion of such claims against a particular alleged state actor does not violate the Constitution. *See Anniston Mfg. Co. v. Davis*, 301 U.S. 337, 342-343 (1937). After all, not "all avenues to the courthouse [are] otherwise . . . foreclosed" for the presentation of those claims. *Flores-Miramontes v. INS*, 212 F.3d 1133, 1136 (9th Cir. 2000).[4]

Moreover, Plaintiffs have never had a viable *Bivens* claim against the provider-defendants for damages. In *Correctional Serv. Corp. v. Malesko*, 534 U.S. 61 (2001), the Supreme Court expressly held that extending *Bivens* liability to corporate defendants would not serve the purpose of *Bivens*, which is "to deter individual federal officers from committing constitutional violations." *Id.* at 70. Section 802 therefore does not deprive Plaintiffs of the right to seek damages under *Bivens* from the provider-defendants; Plaintiffs never had such a right.[5]

---

[3]   Other complaints in this MDL proceeding seek declaratory and injunctive relief or damages against the Government or Government officials based on similar claims of alleged unlawful surveillance. *See, e.g., Shubert v. Bush*, (07-CV-00693-VRW); *Al-Haramain Islamic Found., Inc. v. Bush*, (07-cv-000109-VRW); *CCR v. Bush*, (07-cv-01115-VRW). We do not suggest that the Plaintiffs would *succeed* in obtaining relief in their constitutional claims against the Government or individual officials, which may be foreclosed by various defenses including the state secrets privilege. But because Section 802 does not foreclose the litigation of such claims, Plaintiffs' objection to it lacks merit.

[4]   Plaintiffs' reliance on *Dickerson v. United States*, 530 U.S. 428, 437 (2000), and *City of Boerne v. Flores*, 521 U.S. 507, 517-21, 532 (1997), *see* Pls. Opp. at 8-9, is misplaced. Both cases involved attempts by Congress to alter or override the Supreme Court's earlier interpretations of the Constitution's requirements. *See Dickerson*, 530 U.S. at 436-44 (striking down 18 U.S.C. § 3501 as an attempt to override *Miranda v. Arizona*, 384 U.S. 436 (1966), by legislation); *City of Boerne*, 521 U.S. at 516-35 (invalidating the Religious Freedom Restoration Act as an attempt to effect a substantive change in the constitutional protections afforded by the Free Exercise Clause of the First Amendment, as earlier interpreted by the Court). In this case, by contrast, Congress has made no effort to alter a constitutional standard, but merely exercised its legitimate authority to establish a defense to a civil action for certain persons.

[5]   There should be no need to address Plaintiffs' unnecessary discussion of whether Section 802 violates the Fourth Amendment, or vests in the Government the authority to decide what may violate the Fourth Amendment. Pls. Opp. at 6-13. Section 802 merely forecloses a remedy against certain private persons and does not in application even concern or involve

## B.    Section 802 Does Not Violate the Separation of Powers.

Plaintiffs next contend that Section 802 violates the separation of powers doctrine on two grounds: (1) that it violates Article III by permitting the other political branches to "dictate" to the judicial branch the outcome of individual cases; and (2) that it violates Article I by delegating lawmaking power to the executive, in purported violation of the so-called "non-delegation" doctrine.  Neither claim has merit.

### 1.    Section 802 Establishes a Change in Law That Does Not Impermissbly Intrude on the Role of the Court Under Article III.

Relying on the doctrine enunciated in *United States v. Klein*, 80 U.S. 128 (1872), Plaintiffs contend that Section 802 "violates the separation of powers because it permits the Executive to dictate that the Judiciary dismiss these actions without allowing the Judiciary to make an independent determination of the facts on which the dismissal is based."  *See* Pls. Opp. at 20.  *Klein* invalidated an 1870 statute that directed the Supreme Court to resolve pending suits in a manner that directly conflicted with the Court's own prior constitutional interpretations, and the Court held that Congress may not "prescribe a rule for the decision of a cause in a particular way."  *See id*. at 146.  As the Supreme Court has made clear, whatever the precise scope and meaning of *Klein*, "its prohibition does not take hold when Congress 'amend[s] applicable law.'"  *Plaut*, 514 U.S. at 218 (quoting *Robertson*, 503 U.S. at 441).  The Supreme Court has repeatedly made clear that nothing in Article III forbids Congress from enacting new law or amending the law applicable to a pending cause of action, even if that action has been resolved by a trial court and awaits a ruling by an appellate court.[6]  *See Robertson*, *supra* (holding that because Congress had amended the law applicable to timber harvesting in old growth forests for both pending cases and cases commenced after the date of enactment, the measure "compelled changes in law,

---

consideration of whether any alleged conduct violated the Constitution.  SSCI Rep. 110-209 at 8 ("The committee does not intend for [Section 802] to apply to, or in any way affect, pending or future suits against the Government as to the legality of the President's program").

[6]    In *Plaut*, the Court held that an attempt by Congress to reopen *final* judgments violated the separation of powers doctrine.  *See* 514 U.S. at 218.

not findings or results under old law," and was therefore constitutional); *Miller v. French*, 530 U.S. 327 (2000) (holding that because a provision of the Prison Litigation Reform Act "simply imposed the consequences of the court's application of the new legal standard," the Act was constitutional); *see also The Ecology Center*, 426 F.3d at 1148 (modification to underlying law in pending lawsuit did not direct a rule of decision in violation of the separation of powers doctrine); *Cook Inlet Treaty Tribes*, 166 F.3d 986, 990-91 (9th Cir. 1999); *Apache Survival Coalition*, 21 F.3d at 904; *Gray*, 989 F.2d at 1569-70 (same). The fact that a change in law may be directed at certain cases is not unusual and is of no constitutional significance. *See, e.g., The Ecology Center*, 426 F.3d at 1148-50 (finding statute does not offend separation of powers where it is directed "at a specific case pending before a district court"); *Gray*, 989 F.2d at 1569-70 ("it is of no constitutional consequence that [legislation] affects, or is even directed at, as a specific judicial ruling so long as the legislation modifies the law").

Nor can it be argued that Section 802 is different because it creates a statutory defense to litigation. In numerous cases, the courts have held that a change in applicable substantive law does not violate the separation of powers even though Congress has affected an existing cause of action, either by imposing new legal standards, by substituting remedies against the Government, or even by eliminating a cause of action. In *City of New York v. Beretta*, 524 F.3d 384, 395-96 (2d. Cir 2008), for example, the Second Circuit recently held that the protection of the Lawful Commerce in Arms Act was constitutional even though it required that any "qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending." 15 U.S.C. §§ 7902(b); 7903(5)(A) (defining "qualified civil liability action"). The court in *Beretta* held that the definition of qualified civil liability action permissibly sets forth a new legal standard to be applied to all actions and, although the statute expressly directed that certain actions be dismissed, it did not merely direct the outcome of cases but changed the applicable law, and thus did not violate the doctrine of separation of powers. *See* 524 F.3d at 395-96 (citing *Miller*, 530 U.S. at 348-49, and *Robertson*, 503 U.S. at 438-39); *see also Ileto v. Glock*, 421 F. Supp. 2d 1274, 1299-1304 (C.D.

Cal. 2006) (upholding same statute addressed in *Beretta* against due process and separation of powers challenge) (appeal pending); *District of Columbia v. Beretta*, 940 A.2d 163, 172-80 (D.C. 2007) (same). Other examples abound where courts have held that a statute is constitutional even though dismissal or the loss of a claim resulted from a change in substantive law during pending litigation.[7/]

Section 802 of the FAA quite plainly constitutes an amendment of applicable law that does not mandate or direct a rule of decision in this case, even if its *application* results in dismissal here. As outlined above, Congress has established a new statutory defense of immunity that may apply to claims against certain persons alleged to have assisted an element of the intelligence community. Moreover, whether that defense applies in this case turns on a "substantive legal standard[] for the Judiciary to apply." *Plaut*, 514 U.S. at 218. Specifically, the Court must assess whether substantial evidence supports the Attorney General's certification that at least one of the particular conditions requiring dismissal under the Act exists.

Moreover, Plaintiffs' contention that Section 802(a) does not amend the actual underlying causes of action on which they have sued is irrelevant. A similar argument was made and rejected by the Supreme Court in *Robertson*, which found that the statute enacted by Congress (designating specific areas in which logging would be prohibited but also providing that other harvesting would meet the statutory requirements that were the basis for the pending

---

[7]        See *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955-58 (9th Cir. 2005) (statute of limitations and repose upheld to prevent negligence action from proceeding); *Lyons v. Agusta*, 252 F.3d 1078, 1085-89 (9th Cir. 2001) (retroactive application of statute of repose upheld to bar plaintiffs' negligence claims against aircraft manufacturer); *Atmos. Testing*, 820 F.2d at 989-92 (9th Cir. 1987) (finding statute eliminating claims against private contractors alleging exposure to nuclear radiation to comport with due process and separation of powers); *see also National Coalition to Save Our Mall v. Norton*, 269 F.3d 1092, 1096-97 (D.C. Cir. 2001) (upholding on separation of powers grounds statute that precluded statutory claims brought by plaintiffs seeking to prevent construction of World War II memorial) *In re Three Mile Island* ("TMI"), 89 F.3d 1106, 1113-15 (3d Cir. 1996) (retroactive application of choice of law provision enacted in Price-Anderson Act Amendments of 1988 upheld in due process challenge where provision subjected certain pending claims to statute of limitations that barred claims against private entities); *Ducharme v. Merrill-National Lab.*, 574 F.2d 1307, 1310 (5th Cir. 1978) (finding statute requiring all challenges to government's vaccination program to proceed against government to comport with due process).

lawsuits) did not need to amend the prior statutory requirements because the new standard "provided by its terms that compliance with certain new law constituted compliance with certain old law"; the Court explained that there was no need to make this clear in a separate provision where Congress' "intent to modify was not only clear, but express." 503 U.S. at 439-41. Here, the statutory requirement that "a civil action cannot lie or be maintained" against the providers if the conditions in that provision are satisfied "[n]otwithstanding any other provision of law," 50 U.S.C. § 1885a(a), is equally clear and express in amending applicable law. There was no need for Congress to separately repeal the other statutes upon which Plaintiffs' causes of action are based, and indeed it would have made no sense for Congress to do so: Congress intended Section 802(a) to be "limited in scope" and only to apply to "the particular set of circumstances" set forth in that provision, SSCI Report, at 10. Congress thus retained existing statutory provisions (and their causes of action), but made it clear that dismissal was required where provider assistance or non-assistance satisfied the conditions in Section 802(a).

Plaintiffs' contention that Section 802 violates the separation of powers by "directing the courts to make particular findings of facts" and "forbidding the court from engaging in independent fact-finding" by utilizing the substantial evidence standard, *see* Pls. Opp. at 20-21, is simply wrong. Section 802 is clear that, while the Attorney General submits a certification, it is the Court that "finds" whether the Attorney General's certification is supported by substantial evidence provided under Section 802 and, thus, whether dismissal will be granted. *See* 50 U.S.C. § 1885a(b)(1).[8/] Nor does it matter that the Attorney General's certification is "coupled" with the substantial evidence standard. Pls. Opp. at 21-22. The substantial evidence standard does not reduce the courts' role to that of a "judicial echo" for the government's position, *The*

---

[8] In this respect, the procedure is similar to that used and upheld by the Ninth Circuit in *Atmospheric Testing*. Suit was brought there against both the United States and federal contractors asserting claims arising out of the alleged exposure to nuclear radiation. Congress enacted a statute providing that an action against the government shall be the exclusive remedy for the alleged exposure, and requiring the Attorney General to certify the fact that the defendant was a contractor entitled to protection under the statute. *See* 820 F.2d at 991, 986. The court held that the certification procedure did not "deprive a party of the benefit of a judgment" or "mandate the outcome of particular cases." *Id*. at 992.

*News-Journal Co. v. NLRB*, 447 F.2d 65, 66 (3d Cir. 1971), nor render the judicial role in any way "less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole[.]" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490 (1951).[9/]  To the extent dismissal is required under the Act, that is not a function of the Attorney General "directing" that the Court find certain facts but "simply impose[s] the consequences of the court's application of the new legal standard," *Miller*, 530 U.S. at 349, that Congress has now set forth in Section 802(a) of the Act.  Plaintiffs' objection is not that Section 802 permits the Attorney General to "find facts" that the Court must follow, but that the Congress has changed substantive law to require dismissal of this case where substantial evidence supports the existence of one of five circumstances—a discrete and narrow inquiry that would, under the new law, resolve the case without adjudication of Plaintiffs' legal theories.  But that is an objection to the law itself, not to any intrusion on Article III functions.

> **2.** **Section 802 Does Not Authorize the Executive Branch To Legislate Nor Violate the Non-Delegation Doctrine.**

Plaintiffs also contend at length that Section 802 violates the separation of powers doctrine by impermissibly granting legislative power to the Attorney General in violation of Article I and, in particular, the non-delegation doctrine.  *See* Pls. Opp. at 13-20.  These theories are meritless and should be passed over quickly.

Plaintiffs rely primarily on the Supreme Court's decision in *Clinton v. City of New York*, 524 U.S. 417 (1998), in which the Line Item Veto Act was invalidated.  But the differences between that Act and Section 802 are manifest.  The Line Item Veto Act gave the President "unilateral power" to effectively *eliminate* provisions of statutory law already passed by

---

[9]    Contrary to Plaintiffs' assertion, the Ninth Circuit did not require *de novo* review in *The Ecology Center*.  *See* Pls. Opp. at 21.  The only *de novo* review undertaken there was to the constitutionality of the statute, *see* 426 F.3d at 1148, as would occur in this case.  The Forest Service's decision to approve the timber sales that were the subject of the underlying lawsuit was governed by the  arbitrary and capricious standard, *see id*. at 1147, which is also a deferential standard of review.  *See National Ass'n of Home Builders v. Defenders of Wildlife*, __ U.S.__, 127 S. Ct. 2518, 2529 (2007) (recognizing deferential nature of that standard of review).

Congress, without adherence to the required process under the Constitution: approval by the House and Senate and presentment to the President. *See id.* at 446-47. Indeed, the President's veto of provisions of law *after* they became law entirely circumvented those constitutional requirements as to how laws are passed. Section 802 of the FAA is not remotely similar to the line item veto. The Attorney General's role under the statute is limited to providing a certification setting forth a narrow set of facts necessary to implement a policy decision already made by Congress. Congress has not authorized the Attorney General to substitute his policy decision for that of Congress, but has simply directed that the facts establishing the basis for immunity be presented by the Attorney General—which should hardly be remarkable since they are facts concerning alleged intelligence activities of the type that are possessed and controlled by the Executive branch. The mere presentation of evidence does not require or effect changes in existing law, but is rather a quintessential executive action–to supply facts that would trigger a court's review and application of those facts under statutory law. The fact that the Attorney General is not *required* to make the certification does not establish that his doing so "legislates" policy but, rather, constitutes an exercise of executive discretion to determine when, where, and how to disclose national security information; the Supreme Court has long recognized such power over national security information is within the discretion of the Executive branch. *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988).[10]

For similar reasons, Section 802 does not violate the non-delegation doctrine. Under this doctrine, "Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Congress is not precluded, however, "from obtaining the assistance of its coordinate Branches," and may delegate authority to another Branch "[s]o long as [it] 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Id.* (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)). Contrary to Plaintiffs'

---

[10]     Conversely, if the Attorney General had exercised his discretion not to invoke Section 802 in this litigation and rested instead on the state secrets privilege, that would not have changed the law or legislative policy at all.

suggestion, moreover, the Supreme Court construes "intelligible principle" quite broadly. *Whitman v. American Trucking Ass'n.*, 531 U.S. 457, 474-75 (2001) (noting that Supreme Court has only found "intelligible principle" to be lacking two times in history, "one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition'"); *Mistretta*, 488 U.S. at 373 ("our jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives") (citing cases); *id.* at 374 (recognizing many instances since 1935 where "we have upheld, again without deviation, Congress' ability to delegate power under broad standards") (citing cases). *Mistretta* explained that, for non-delegation purposes, the Court has "deemed it 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Id.* at 372-73 (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)); *accord Yakus v. United States*, 321 U.S. 414, 424-25 (1944) ("The[] essentials [of the legislative function] are preserved when Congress has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective. It is no objection that the determination of facts and the inferences to be drawn from them in the light of the statutory standards and declaration of policy call for the exercise of judgment, and for the formulation of subsidiary administrative policy within the prescribed statutory framework.") (citing cases). Consequently, the bar for finding violation of non-delegation principles is high.

The certification authority provided to the Attorney General in Section 802 easily complies with the non-delegation doctrine. This provision establishes highly specific and narrow circumstances in which the Attorney General may present evidence under the Act—in a civil action where a person is alleged to have "provid[ed] assistance to an element of the intelligence community"—and only where one of five specific and limited facts exists. Thus,

Section 802 incorporates the necessary "standards for the guidance of the [Attorney General's] action" and enables a reviewing court "to ascertain whether the will of Congress has been obeyed." *Yakus*, 321 U.S. at 426. For this reason, Congress has "clearly delineate[d] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta*, 488 U.S. at 372-73.[11/]

## II.    SECTION 802 COMPORTS WITH DUE PROCESS.

Plaintiffs also contend that Section 802 violates due process because the Attorney General, they allege, is a biased decisionmaker, and because the Court must review the Attorney General's certification under the substantial evidence standard. These claims are meritless.

First, Plaintiffs' reliance on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), for the proposition that their causes of action is a property interest protected by the due process clause is misplaced. The Court in *Logan* did not decide that question, but instead decided the very different question of whether specific adjudicatory procedures established by a state government for addressing fair employment practices constituted a property interest (and whether a persons's right to use those procedures could not be deprived to someone without a fair hearing). *See Logan*, 455 U.S. at 431 (describing the property interest recognized as "[t]he right to use the [Illinois Fair Employment Practices Act ]'s adjudicatory procedures"); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (state law providing for settlement of common trust fund accounts by fiduciaries failed to provide adequate notice and deprived due process). Indeed, the Court in *Logan* made clear that the Due Process Clause leaves the government:

---

[11]    Notably, in *Touby v. United States*, 500 U.S. 160 (1991), the Supreme Court upheld a far more generous delegation of authority to the Attorney General under the Controlled Substances Act. Section 201(h) of the Act authorizes the Attorney General to temporarily schedule a substance when "necessary to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h). *Touby* recognized that section 201(h)'s "imminent hazard" to the public safety standard provision supplied the necessary intelligible principle and was a sufficient restriction of the Attorney General's discretion to "satisfy the constitutional requirements of the non-delegation doctrine." *See Touby*, 500 U.S. at 166-67. Section 802 establishes far more specific statutory criteria than this to support a certification by the Attorney General.

free to create substantive defenses or immunities for use in adjudication or to eliminate its statutorily created causes of action altogether just as it can amend or terminate its welfare or employment programs. The Court held as much in *Martinez v. California,* [444 U.S. 277] (1980), where it upheld a California statute granting officials immunity from certain types of state tort claims. We acknowledged that the grant of immunity arguably did deprive the plaintiffs of a protected property interest. But they were not thereby deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels.

*Id.* at 432.[12/] Accordingly, Plaintiffs have no claim under *Logan* that implementation of Section 802 to dismiss their claims would violate due process.[13/]

Plaintiffs are thus left to argue only that the procedures set forth in Section 802 for *applying* the immunity defense violate due process. Plaintiffs specifically contend that the standard for reviewing a certification under Section 802 must be *de novo* because the Attorney General did not conduct an adversarial adjudication on the matter and because, they contend, the Attorney General is institutionally and actually biased against plaintiffs. *See* Pls. Opp. at 23-24. But this is likewise without merit. The hallmark of due process is notice and an opportunity to

---

[12]     It is well established that "a party's property right in any cause of action does not vest until final unreviewable judgment is obtained." *Fields v. Legacy Health Sys.*, 413 F.3d at 956; *Lyons*, 252 F.3d at 1086 ("We have squarely held that although a cause of action is a 'species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained.'" (citation omitted)); *Grimesy v. Huff*, 876 F.2d 738, 743 44 (9th Cir. 1989) (Although the Supreme Court has suggested that a cause of action is a "species of property," . . . "a party's property right in any cause of action does not vest 'until a final unreviewable judgment is obtained.'" (citations omitted)); *Atmos. Testing*, 820 F.2d at 989 (same).

[13]     And to the extent their claims are dismissed, Section 802 easily satisfies the requirements of substantive due process under the highly deferential standard that it reflects "a rational legislative purpose." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 30 (1984); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976); *see also Heller v. Doe*, 509 U.S. 312, 321 (1993); *FCC v. Beach Comm.* 508 U.S. 307, 315 (1993). Here, of course, Congress has articulated a clear rational basis for the immunity defense and procedures in Section 802—in sum, to ensure that providers who may have assisted the Government in the unique circumstances after the 9/11 attacks pursuant to written requests are not subject to the extensive burdens of litigation, and that carriers will not be deterred by the threat of costly litigation from providing vital assistance to the government in national security matters. *See* SSCI Rep. 110-209 at 9 (Dkt. 469-2); *see also Atmos. Testing*, 820 F.2d at 991 (recognizing similar national security interest in protecting private contractors from liability for alleged radiation injuries resulting from atomic testing). Plaintiffs do not seriously contend otherwise.

be heard *Logan*, 455 U.S. at 429. Plaintiffs are on notice that the Government has invoked Section 802, and they have objected to its application in this case, presenting various legal arguments and factual allegations as to why their claims should not be dismissed.

Furthermore, as Plaintiffs concede, the Attorney General's role under Section 802 is not to adjudicate or otherwise make findings of fact, but to present to the Court those facts identified in Section 802—whether or not a telecommunications company provided assistance to the Government in order to detect and prevent further terrorist attacks and, if so, whether it was provided pursuant to court order or some other formal written request. Under Section 802, it is this Court that plays the adjudicative role by determining whether the circumstances presented by the Attorney General are supported by substantial evidence, and there is noting about this procedure or standard of review that violates the Due Process Clause.

The fact that the Attorney General is the head of the Department of Justice, which seeks dismissal of the cases against the carriers, and spoke in favor of the immunity policy enacted in Section 802, *see* Pls. Opp. at 24 and Sum. Evid. at 58-61, is irrelevant. The Attorney General's role under the statutory scheme is distinct from the policy decision made by Congress to enact Section 802 and to require the Attorney General (the nation's senior legal official) to present the information necessary for the Court to make a determination under the Act. And in any event, the Supreme Court has noted that allegations of bias even in an administrative proceeding (which this is not) "must overcome a presumption of honesty and integrity" and that there must be "such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). An official will not be "disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not '"capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Hortonville Joint Sch. Dist. v. Hortonville Educ. Assn*, 426 U.S. 482, 493 (1976) (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)). In light of the Attorney General's actual role under Section 802, such a

showing is not possible.[14/]

Thus, Plaintiffs' due process argument boils down to an objection to the substantial evidence standard decided upon by Congress. This objection is largely a reprise of Plaintiffs' separation of powers challenge to the Attorney General's role and the substantial evidence standard, and presents no separate due process concern. It is well established that the substantial evidence standard comports with due process and, again, this does not diminish role of a court. *See Universal Camera Corp.*, 340 U.S. at 490. The requirements of due process are "flexible" and call for "such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In determining what process is constitutionally required, courts must consider not only the private interests that will be affected and the risk of an erroneous deprivation of those interests, but also the particular "Government[al] interest, including the function involved" and the "burdens that the additional or substitute procedural requirements would entail." *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In connection with Section 802, among the Governmental interests at stake are to ensure that information concerning intelligence sources and methods not be disclosed and that harm to national security not result from full-blown litigation of allegations against persons alleged to have assisted the Government. Courts have regularly deferred to judgments by the Executive as to what may harm national security, including through the disclosure of intelligence sources and methods in judicial proceedings. *See, e.g. El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007) (for both "constitutional" and "practical" reasons, the court must defer to "the Executive and the

---

[14]     The principal case on which Plaintiffs' rely for the proposition that due process requires *de novo* review in the face of an initial decision-maker's alleged bias, *see Concrete Pipe and Prods. of California, Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602 (1993), holds no such thing. That case, which involved an "incomprehensi[ble]" statutory scheme, concerned whether an initial determination of how much a company withdrawing from a pension plan owed could be made by the plan's trustees—private parties who had an obvious *financial* interest and, hence, bias in the determination. *See* 508 U.S. at 624-25. The Court did not resolve the concern by holding that due process requires a subsequent *de novo* review in these circumstances, but simply concluded that the confusing statute there should be construed to permit an arbitrator (also a private party) to decide the matter under the preponderance standard of review. *See id*. at 629-30.

intelligence agencies under his control [which] occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information" particularly as to intelligence matters). Such deference is consistent with the substantial evidence standard, which under Section 802 requires that the reviewing court find that the Attorney General's certification is supported by "such relevant evidence as a reasonable mind might, upon consideration of the entire record, accept as adequate to support a conclusion." *McCarthy v. Apfel*, 221 F.3d 1119, 1125 (9th Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This standard affords Plaintiffs a proper measure of independent judicial review that is consistent with due process in a case such as this.[15/]

## III. THE CONSIDERATION OF CLASSIFIED INFORMATION *EX PARTE*, *IN CAMERA* PRESENTS NO CONSTITUTIONAL CONCERNS.

Plaintiffs finally present two related objections to Section 802 that authorizes the Attorney General to submit a classified certification for *in camera*, *ex parte* review, and that precludes disclosure of classified information in any court order, on both due process and First Amendment grounds. Neither constitutional challenge has merit.

### A. Review of the Attorney General's Classified Certification *In Camera*, *Ex Parte* Does Not Violate Due Process.

Plaintiffs contend that Section 802(c) of the Act violates due process because it authorizes the submission of the Attorney General's certification, and any supplementary materials, for *in camera* and *ex parte* review. But courts have uniformly upheld similar procedures in which Congress authorized, as it has here, *in camera*, *ex parte* submission of classified evidence because of national security concerns. For example, the courts have rejected due process challenges to provisions of the International Emergency Economic Powers Act ("IEEPA."), *see* 50 U.S.C. § 1702(c), that authorize *in camera*, *ex parte* submissions by the

---

[15]     Plaintiffs' contention that this is a standard of appellate review, not a standard of proof, *see* Pls. Opp. at 25-26, ignores that fact that the Attorney General is not conducting an adjudication (which Plaintiffs concede), and that the language of Section 802 is directed at the information submitted to the court pursuant to Section 802. *See* 50 U.S.C. § 1885a(b)(1). In any event, the standard requires deference to the Attorney General's submission and does not violate due process.

Government containing classified evidence as to why a particular entity has been designated as a terrorist organization. In *Holy Land Found.,* 333 F.3d 156, the court rejected a due process challenge to the use of classified evidence to support a foreign terrorist organization determination, holding that "HLF's complaint, like that of the Designated Foreign Terrorist Organizations in the earlier cases, that due process prevents its designation based upon classified information to which it has not had access is of no avail." *Id.* at 164. Similarly, the Seventh Circuit rejected a due process challenge in *Global Relief Found. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002), holding that "IEEPA is not rendered unconstitutional because that statute authorizes the use of classified evidence" that may be considered *ex parte* by the district." *Id.* (internal citations omitted). *See also Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 45 (D.D.C. 2005) (relying on classified record to reach a decision even though it was considered *ex parte*).

As the courts have recognized, *in camera*, *ex parte* review comports with due process because of the "'compelling interest' in withholding national security information from unauthorized persons in the course of executive business.'" *Holy Land Found*. at 164 (citing *People's Mojahedin Organ. of Iran v. Department of State ("PMOI")*, 327 F.3d 1238, 1242 (D.C. Cir. 2003)). It cannot be disputed that "no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). Indeed, the Supreme Court has recognized that "[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980). Moreover, "that strong interest of the government [in protecting against the disclosure of classified information] clearly affects the nature . . . of the due process which must be afforded petitioners." *National Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 207 (D.C. Cir. 2001) ("*NCRI*"). As the *NCRI* Court held, disclosure of classified information "is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect." *See id.* at 208-09. In addition, courts

considering the permissibility of *ex parte* procedures have also reasoned that the "risk of erroneous deprivation" is mitigated by the "*ex parte*, *in camera* judicial review of the [classified] record." *Jifry v. FAA*, 370 F.3d 1174, 1183 (D.C. Cir. 2004) (courts have "inherent authority to review classified material *ex parte* and *in camera* as part of [their] judicial review function.").

Despite the need for *in camera*, *ex parte* submissions, Plaintiffs are receiving the process they are due—notice and an opportunity to be heard— and their limited, inchoate interest in maintaining a cause of action against one party is far less than the interest of plaintiffs in the designation cases. *See POMI*, 327 F.3d at 1239 (terrorist designation carries with it very "serious[] . . . consequences": the "blocking of any funds . . . on deposit with any financial institution in the United States," the "exclusion from the United States of representatives of the organization," and "criminal penalties on any persons 'knowingly provid[ing] material support or resources' to such organization"). Plaintiffs' limited interests—continued litigation against these defendants—do not outweigh the governmental interests at stake, and the Court's review of the classified certification under Section 802 presents no due process concern.[16]

---

[16]     Plaintiffs' reliance on *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) is misplaced. In that case, the Ninth Circuit held that classified information submitted for *in camera*, *ex parte* review in certain INS proceedings could not be considered because there was not a sufficiently clear statutory basis for such review. *Id*. at 1068. Section 802 presents no such concern—it expressly authorizes the submission of the Attorney General's classified certification. Also, weighing the relative interests at stake, the Court concluded that the Government had presented no evidence that the particular aliens posed a threat to national security—indeed, they had lived free for eight years during the litigation and there was no evidence they had participated in terrorist activities. *See* 70 F.3d at 1070. In contrast here, the Government has, since the outset of this litigation, presented extensive evidence of the national security harms at stake and has expressly sought to protect such information from disclosure under the state secrets privilege. *See id*. (recognizing greater Governmental interest where it is seeking to protect information). The procedures in Section 802 are simply a statutory mechanism for the Government to protect privileged information while the Court determines if the requirements of this immunity provision have been met.

## B. Section 802 Procedures Governing Classified Information Also Do Not Violate the First Amendment or Article III.

Plaintiffs' related contention that the prohibition on disclosure of the Attorney General's classified certification, and any court order containing classified information, violates the First Amendment and Article III separation of powers principles, *see* Pls. Opp. at 31-36, is likewise meritless.

As a threshold matter, under the separation of powers established by the Constitution, the Executive Branch is responsible for the protection and control of national security information. *See Egan*, 484 U.S. at 527; *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990). These recognized, inherent powers of the President, *see Egan*, 484 U.S. at 527, are only strengthened by Congress' passage of a statute that expressly authorizes the Executive branch to protect certain national security information. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-36 (1952) (Executive authority is "at its maximum" and enjoys the "strongest of presumptions and the widest latitude of judicial interpretation" where supported by an Act of Congress, and the burden of persuasion would rest heavily upon any who might attack it.") (Jackson, J., concurring). The Executive branch has not authorized any of the Plaintiffs to access these materials, and Plaintiffs point to no authority requiring them to be granted such access.

Moreover, no First Amendment right exists to receive or disclose classified information in general, let alone the classified information filed in this Court under express congressional authorization. As Plaintiffs note, the Ninth Circuit has not extended the qualified First Amendment right of access to judicial proceedings to the civil context. *See* Pls. Opp. at 33 n.9.[17] But even if the qualified First Amendment right of access applied and provided "a presumed right of access to court proceedings and documents," *see Oregonian Pub. Co. v. United Statse Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1465 (9th Cir. 1990), it would do nothing for plaintiffs in this context. In *Press-Enterprise Co. v. Superior Court*, the Supreme Court held that

---

[17]     *See San Jose Mercury News v. United States Dist. Court*, 187 F.3d 1096, 1102 (9th Cir. 1999) ("We leave for another day the question of whether the First Amendment also bestows on the public a prejudgment right of access to civil court records.")

a qualified First Amendment right of public access attaches, if at all, only where "the particular proceeding in question passes these tests of experience and logic." 478 U.S. 1, 9 (1986); *see also Oregonian Pub. Co.*, 920 F.2d at 1466.

The "experience" prong of the test questions "whether the place and process have historically been open to the press and general public," while the second element inquires "whether public access plays a significant positive role in the functioning of the particular process in question." *Phoenix Newspapers, Inc. v. United States Dist. Court for Dist. of Arizona*, 156 F.3d 940, 946 (9th Cir. 1998). Plaintiffs fail on both points: In the foreign intelligence surveillance context, there is, and could be, no tradition of public access to information concerning intelligence proceedings, but rather "there is an unquestioned tradition of secrecy, based on the vitally important need to protect national security." *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484 (For. Intel. Surv. Ct. 2007) (rejecting common law and First Amendment claims to access to FISC-related information). Indeed, such "records are being maintained under a comprehensive statutory scheme designed to protect FISC records from routine public disclosure." *Id.*; *see generally United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997) ("There can hardly be a historical tradition of access to the documents accompanying a procedure that did not exist until . . . 1991."). If anything, where foreign intelligence surveillance is concerned, there is a tradition of *closed* proceedings. *See In re Motion for Release of Court Records*, 526 F. Supp. 2d at 492-94 (rejecting First Amendment claim to FISC records).

In light of clear "detrimental consequences of broad public access" and other "possible harms" in the national security concerning foreign intelligence-related matters that would result from the disclosure of information, moreover, the logic prong of *Press-Enterprise* test clearly favors non-disclosure because public access to such information "does not and would not play 'a significant positive role in the functioning of the particular process in question.'" *Id*. at 494, quoting *Press-Enterprise*, 478 U.S. at 8. Thus, Judge Bates (sitting as a member of the FISC) recently concluded in the foreign intelligence surveillance context that information related to

1  such activities failed both the experience and logic portions of the *Press-Enterprise* test. *See id.*

2  at 494-96.

3      For the foregoing reasons, Plaintiffs' contention that the restrictions in Section 802 on the

   disclosure of classified information submitted under this provision are meritless.

4

5  **IV.   THE ATTORNEY GENERAL'S CERTIFICATION SATISFIES THE
        REQUIREMENTS OF THE ACT.**

6      Finally, in the last section of their brief, Plaintiffs contend that, even assuming that

7  Section 802 of the FAA is constitutional, the Government has not met its burden of justifying

8  dismissal under this provision. *See* Pls. Opp. at 36-48. Plaintiffs raise several insubstantial

9  procedural objections to dismissal of this case based on the Attorney General's certification, and

10 then attempt to challenge the basis of that determination. Plaintiffs argue that the Court cannot

11 consider the very information that Section 802 expressly authorizes the Attorney General to

12 submit, while simultaneously arguing that the Court must consider their own hearsay evidence,

13 even though Section 802 does not authorize such review. Plaintiffs also argue that they should

14 be permitted extensive discovery, despite the clear intent of Congress to provide a mechanism

15 for the threshold resolution of the defenses included in Section 802. All of these contentions are

16 without merit.

17      **A.   There Are No Evidentiary Obstacles to Considering the
              Attorney General's Certification Under Section 802.**

18

19     Plaintiffs contend that the Attorney General's public and classified certifications, as well

20 as the declarations of the Director of National Intelligence and the Director of the National

21 Security Agency referenced therein, and any materials submitted therewith, are hearsay that

22 cannot be considered on summary judgment. *See id*. at 38 and Plaintiffs' Evidentiary Objections

23 to Certifications ("Pls. Ev. Obj.") (Dkt. 477, MDL 06-cv-1791-VRW). This argument ignores

24 the fact that Congress expressly *authorized* the Attorney General to submit a certification

25 explaining why the statutory conditions for dismissal have been satisfied. *See* 50 U.S.C.

26 § 1885a(a)(1)-(5). Section 802 specifically provides that such a certification shall be given

27 effect unless the court finds it is not supported by substantial evidence provided to the court

pursuant to this section and, in making this determination, that the court may examine any applicable court order, certification, written request or directive. *See id*. § 1885a(b)(2) (defining "supplemental materials" that the court may review with a certification under Section 802). Plaintiffs' reading of this provision—that the court may examine the materials but not treat them as "substantial evidence"—would render Section 802 completely inoperative. The entire *purpose* of Section 802 is to establish these very specific procedures for implementing a new statutory defense through the submission of evidence by the Attorney General.[18]

In the alternative, assuming *arguendo* that the specific terms of Section 802 somehow do not govern here, Plaintiffs' contention that the operation of Rule 56 and the hearsay rules foreclose submission of the Attorney General's certification is wrong. Fed. R. Civ. P. 56(e) provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." The Attorney General's certification, and the declarations by the DNI and NSA Director to which it refers, are sworn affidavits based on personal knowledge and admissible under Rule 56(e), along with any documents they refer to. *See* Fed. R. Civ. P. 56(e). The Ninth Circuit has specifically recognized that "[p]ersonal knowledge can be inferred from an affiant's position." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000). In fact, the information an employee is "expected to know" as a result of his position constitutes personal knowledge under Rule 56(e). *Id.*; *see also Ramo v. Dep't of Navy*, 487 F. Supp. 127, 130 (N.D. Cal. 1979) ("The affidavit or testimony of an agency official, who is knowledgeable [about the issue to which he testifies] . . . complies with this [personal knowledge] standard."), *aff'd*, 692 F.2d 765 (9th Cir. 1982). Furthermore, an agency official may testify as to matters he learns upon review of agency documents and

---

[18]     This process is similar to other circumstances in which Congress has directed the Attorney General to certify certain facts governing whether claims against a particular party may proceed. *See Atmos. Testing*, 820 F.2d at 986-87 (Attorney General certifies that suit against private contractor falls within 42 U.S.C. § 2212(a)(1) providing that exclusive remedy for claims related to radiation exposure lie against United States under Federal Tort Claims Act).

information made available to him in the course of his duties.  *See Vote v. United States*, 753 F. Supp. 866, 868 (D. Nev. 1990) (Rule 56(e) "personal knowledge" requirement met when affidavit is based on affiant's review of records and files), *aff'd*, 930 F.2d 31 (9th Cir. 1991) (unpublished).[19]  Thus, there is no hearsay impediment to consideration of the information presented in the Attorney's General's certification or, for that matter, in the declarations of the DNI or NSA Director.[20]

---

[19]     Although the matter cannot be addressed on the public record, to the extent the Attorney General's classified certification is accompanied by supplemental materials, such as court orders, directives, certifications, or written requests, this also would be consistent with Rule 56(e), which provides that a certified copy of any "paper or part of a paper" referred to in an affidavit be attached thereto.  In addition, any such documents may themselves be subject to an exception to the hearsay rule, *see e.g.*, FRE 803(8)(A) (records of public offices or agencies), or may not constitute hearsay if considered solely for the fact of their existence, not the truth of their content, *see* FRE 801(c).

[20]     Plaintiffs' long foray into when a congressional committee report is hearsay, *see* Pls.' Ev. Obj. at 5-12, is well off the mark.  Legislative history explaining the background, structure, purpose, and meaning of a statute–the purposes for which we have cited the SSCI report–is not hearsay evidence.  Courts routinely analyze statutes by reference to such materials. *See*, *e.g. In re Atmos. Testing*, 820 F.2d at 986-87 (discussing Senate Armed Services Committee report explaining rationale for substituting United States for claims against private contractor related to atomic testing); *In re National Security Agency Telecommunications Records Litigation, Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109, 1116-17 (N.D. Cal. July 2, 2008) (discussing legislative history of the Foreign Intelligence Surveillance Act in deciding whether the FISA preempts the state secrets privilege).  All of the cases cited by plaintiffs involved situations where facts in congressional reports were offered as evidence in support of dispositive issues of fact at trial. *See* Pls. Ev. Obj. at 6-8 (citing cases).  Here, in contrast, the actual facts necessary to *implement* Section 802 have been properly submitted by the Attorney General under the Act; we do not rely on the SSCI report to establish facts relevant to the Section 802 inquiry.  Also, to the extent averments in the SCCI report are evidentiary in nature, the report does have strong indicia of trustworthiness necessary to fall within FRE 803(8)(c), since it recounts the findings of a detailed investigation by the Senate's principal intelligence oversight committee with access to classified facts in support of legislation that garnered substantial bipartisan support in the SSCI.  *See* S. Rep. 110-209 (Dkt. 469-2) at 2 (describing extensive investigation) and at 25 (Senate version of Act approved by 13 to 2 vote). *Barry v. Trustees of Int'l Assn Full-Time Salaried Officers & Employees (Iron Workers) Union*, 467 F. Supp. 2d 91, 100-01 (D.D.C. 2006)(admitting Senate committee report reflecting a "carefully prepared, balanced, and hyperbole-free recitation of all of the available information").

**B.**     **Plaintiffs' Evidentiary Submission Is Improper**.

While seeking to strike information that the Act expressly authorizes the Attorney General to submit, Plaintiffs seek to expand the record with thousands of pages of media reports, books, and other public statements that the Act does not authorize this Court to review, and the consideration of which would be inconsistent with the rules of evidence and civil procedure.

Section 802 expressly establishes a limited scope of judicial review.  The narrow question presented under this provision is whether one of five circumstances exists with respect to claims made against persons alleged to have assisted an element of the intelligence community, ranging from no assistance to assistance under a court order or other directive, certification or written request.  *See* 50 U.S.C. § 1885a(a)(1)-(5).  Section 802 provides that the Court shall give a certification effect if supported by substantial evidence "provided to the Court pursuant to this subsection," *see id.* § 1885a(b)(1), and expressly states that Court may examine any order, certification, directive, or written request submitted by the parties (which Section 802 defines as "supplemental materials").  *See id.* § 1885a(b)(2), (d).  The Act plainly does not contemplate the submission and review of other materials through the creation of a new record submitted into evidence in the district court.[21/]

Moreover, in contrast to the Attorney General's certification (and DNI and NSA declarations), and any material that may have been submitted in support of that certification, the bulk of the material Plaintiffs proffer is not supported by an affidavit attesting under Rule 56(e) to the personal knowledge of the affiant as to the information Plaintiffs seek to admit.  Other

---

[21]     The court need not reach the question of whether Section 802 would violate due process to the extent it is read as foreclosing submission of plaintiffs' material because, as set forth herein, the standard of review affords them adequate due process, and the information they seek to submit is not otherwise properly before the court and would be irrelevant in light of the narrow inquiry at issue under Section 802 and the information provided in the Attorney General's certification itself.  In any event, because Congress has the authority to eliminate causes of action not yet reduced to final judgment, Congress certainly can take the more limited step of circumscribing the procedures to be used in deciding whether the circumstances warranting elimination of a cause of action are present.

than the declarations previously submitted in the *Hepting* action concerning an AT&T facility,[22/] Plaintiffs present the Declaration of Kurt Opsahl (Dkt. 479 MDL 06-cv-1791-VRW)—which is no more than an index of hearsay exhibits which the declarant attests are "true and correct copies." This does not remotely satisfy Rule 56(e) and allow for consideration of the referenced hearsay. While "a party does not necessarily have to produce evidence in a form that would be admissible at trial" to survive summary judgment, it must still satisfy the requirements of Rule 56(e) by submitting an affidavit based on personal knowledge. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). That is, a Rule 56(e) affidavit must show that "the *affiant* is competent to testify as to the matters stated therein." *Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1992) (emphasis added).[23/]

Mr. Opsahl, a counsel for the plaintiffs, obviously cannot attest under Rule 56(e) to the contents of the myriad books, media reports, and other similar materials Plaintiffs have proffered, and it is no answer to argue that the information therein would be admissible *if* the reporter or author or other person appeared and testified as to the content of their writing, since they are not the Rule 56(e) affiants. That, of course, would be true of a vast array of hearsay referenced as a "true and correct copy" by a Rule 56(e) affiant, and thus Plaintiffs' approach, if credited, would obliterate the rule. Moreover, even if the author of books and media reports did appear to testify, the content of their work would still constitute inadmissible hearsay, since they are reporting not on matters within their personal knowledge but on what others have told them.

---

[22]     The Government does not concede that even these affidavits satisfy Rule 56(e) or present a genuine issue of material fact—just that they are affidavits that purport to be based in part on personal knowledge in contrast to everything else plaintiffs referenced in the Opsahl declaration.

[23]     For example, in *Fraser*, the court held that the contents of diary could be considered in response to a motion for summary judgment where it was the affiant's diary and she could testify to its contents at trial based on personal knowledge. *See Fraser*, 342 F.3d at 1036-37. In contrast, in *Block*, a Rule 56(e) affidavit was rejected where the affiant had no personal involvement and knowledge of the facts and circumstances. *See Block*, 253 F.3d at 418-19.

See, e.g., *Twardowski v. Am. Airlines*, 535 F.3d 952, 961 (9th Cir. 2008) (rejecting as hearsay newspaper article submitted in response to summary judgment).[24/]

Finally, Plaintiffs' citation to a number of cases involving record review, *see* Pls. Opp. at 36-37, and their effort to challenge the Attorney General's certification under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, *see id.* at 48-49, is likewise unavailing. Again, Section 802 and its express terms, including the procedures applicable to these proceedings, govern these cases. In addition, Plaintiffs' suggestion that APA review of the Attorney General's action would involve whether the Attorney General had reasonably determined that any alleged surveillance activities were lawful, *see* Pls. Opp. at 48-49, would read a wholly new requirement into Section 802 that Congress made clear was no part of the consideration in applying that provision. *See* SSCI Report 110-209 (Dkt. 469-2) at 9-10. And even if APA review were applicable in lieu of Section 802 (again, a point the Government contests), the Court could only review the action at issue—certification as to the existence of certain facts---and as set forth in the cases on which Plaintiffs rely, "the focal point for judicial review" is the administrative record presented to the reviewing court, not some *new* record created in the reviewing court. S*ee Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971). If the reviewing court needs more information to evaluate the matter, "the proper

---

[24] Plaintiffs' attempt to use Fed. R. Evid. 1006 to submit a summary of evidence is also plainly improper. Plaintiffs' summary is inadmissible not only because it mis-applies the rule to summarize material that is not admissible, but because it is not summary of evidence at all—it is an advocacy piece that strings together bits of information and allegation in an effort to support Plaintiffs' position. Because a proper summary of evidence under FRE 1006 is itself admitted into evidence, the evidence it summarizes "must be otherwise admissible and remains subject to the usual objections under the rules of evidence" including "'if the voluminous material on which it is based is inadmissible.'" *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006) (quoting 31 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 8043, at 521-22 (2000)). FRE 1006 cannot be used, as Plaintiffs have here, to summarize evidence that has not been admitted into evidence and, for the reason outlined above, is not admissible and likely would never be admissible. Furthermore, a summary of evidence under FRE 1006 must "accurately summarize[] the source materials." *Milkiewicz*, 470 F.3d at 396; *see also Fagolia v. Nat'l Gypsum Co.* 906 F.2d 53, 57 (2d Cir. 1990). Here, Plaintiffs' summary is no more than an extension of Plaintiffs' brief (and the page limits for that filing), citing information and unconfirmed speculation Plaintiffs contend supports their position. Plaintiffs' "Summary of Evidence" is not close to being the kind of document permitted by FRE 1006.

course, except in rare circumstances, is to remand to the agency for additional investigation or explanation and *not* to conduct a *de novo* inquiry into the matter being reviewed." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

C.   **The Attorney General's Certification Is Properly Supported as to Every Claim and Allegation Against the Provider-Defendants**.

Plaintiffs also attempt to challenge the basis for the Attorney General's certification in these cases, raising three major objections:  (i) that substantial evidence cannot support dismissal under Section 802(a)(5), because there was in fact a dragnet as alleged by Plaintiffs; *see* Pls. Opp. at 39-43; (ii) that substantial evidence cannot support dismissal under Section 802(a)(4), because Plaintiffs' alleged dragnet could not have been designed to detect or prevent a terrorist attack; *see id*. at 43-46; and (iii) that substantial evidence cannot support dismissal under any other provision of Section 802 because such an alleged dragnet could not be supported by a court order, certification under 18 U.S.C. § 2511(2)(a)(ii)(B), or statutory directive under the Protect America Act and FISA Act Amendments themselves, *see id*. at 46-47.  Each of these assertions turns on Plaintiffs' conjecture about the existence and scope of alleged intelligence activities, and the provider-defendants' alleged participation in those activities.  Throughout their discussion, plaintiffs seek to support these assertions with their purported "summary of evidence" under FRE 1006.  Drawing inferences from newspaper articles, TV interviews, books, and Government statements, Plaintiffs speculate about a range of matters.[25]  None of this conjecture can be addressed on the public record under Section 802 (and the Government's prior

---

[25]   *See* Pls. Sum. Evid. at 11-14 (speculating that "the Program" authorized by the President after 9/11 included the dragnet they alleged on the wholesale acquisition of domestic communications content and non-content); at 11-12, 34-35 (speculating that this is among the activities occurring at the Folsom Street facility in San Francisco); at 14-18 (speculating that the program involves the datamining of content and non-content stored in a database); at 26-33 (speculating that the AT&T and Verizon provider-defendants allegedly assisted in the alleged dragnet and alleged communications records collection); at 41-46 (speculating that an Executive branch dispute in March 2004 must have concerned the alleged dragnet); at 49-50 (speculating that FISC orders issued in January 2007 initially continued the alleged dragnet, but that this order was later rejected); at 46-49 (speculating that alleged activities "continue [] to this day" after enactment of the Protect America Act and FISA Act Amendments under supposedly unacknowledged separate aspects of the so-called Terrorist Surveillance Program).

assertions of privilege).  Congress has made clear that Section 802 must be implemented in a manner that does not disclose classified national security information identifying any providers that may have assisted the Government or information concerning alleged intelligence activities.[26/]  Congress granted the Attorney General statutory authority to present the basis for his certification as to the Plaintiffs' claims and allegations for the Court's *ex parte*, *in camera* review based on the Attorney General's determination that harm to national security would result from public disclosure.  *See* 50 U.S.C. § 1885a(c)(1).  Such determinations fall within the constitutional responsibility and expertise of the Executive branch and are entitled to substantial deference.  *See Al-Haramain v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007) ("[w]e acknowledge the need to defer to the Executive on matters of foreign policy and national security and surely cannot legitimately find ourselves second guessing the Executive in this arena").[27/]  The Attorney General's classified certification addresses all allegations that plaintiffs raise in their summary of evidence, as summarized by the Government in its classified supplemental response to this filing, and is fully supported by substantial evidence.

---

[26]    The SSCI found that the "details of the President's program are highly classified" and that, as with other intelligence matters, the identities of persons or entities who provide assistance to the U.S. Government are protected as vital sources and methods of intelligence." *See* S. Rep. 110-209 at 9 (Dkt. 469-2).  Notably, the SSCI expressly stated that "[i]t would be inappropriate to disclose the names of the electronic communication service providers from which assistance was sought, the activities in which the Government was engaged or in which providers assisted, or the details regarding any such assistance." *Id.*; *see also id.* ("identities of persons or entities who provide assistance to the intelligence community are properly protected as sources and methods of intelligence").

[27]    *See also Ellsberg v. Mitchell*, 709 F.2d 51, 57 n.31 (D.C. Cir. 1983); *Halkin I*, 598 F.2d at 9 ("The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area.") (quoting *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972)); *accord Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) ("[W]e have unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations."); *CIA v. Sims*, 471 U.S. 159, 180 (1985) ("[i]t is the responsibility of the [intelligence community], not that of the judiciary to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process.").

**1.** **Substantial Evidence Supports the Attorney General's**
**Certification Regarding Plaintiffs' Alleged Content Dragnet.**

Plaintiffs specifically contend that the Attorney General's certification with respect to their alleged content-dragnet does not address the full scope of plaintiffs' allegations. *See* Pls. Opp. at 39-43; Sum. Evid. at 9-14 (alleging dragnet involving the acquisition of content and non-content information). The Attorney General's certification is not limited to one paragraph of the various complaints against the provider-defendants. The Attorney General's public certification summarized the various allegations in these cases, *see* Public Attorney General Certification ¶ 4 (entitled "Summary of Allegations"), including those allegations related to the content-dragnet claim—namely that millions of domestic communications have been intercepted under the President's authority in order for their content to be data mined. *See id.* The Attorney General's classified certification explains the basis for his certification as to a content dragnet and otherwise addresses all of Plaintiffs' claims and allegations under Section 802(a).

Plaintiffs' argument that the Attorney General's certification does not address all of their allegations illustrates the very point that Government has made over the past three years concerning this allegation. In proceedings in the *Verizon* cases, the Government specifically asserted the state secrets privilege over any facts that would be needed to further address Plaintiffs' allegations concerning an alleged dragnet of content surveillance. *See* Public Declaration of J. Michael McConnell, Director of National Intelligence (Dkt. 254) ¶¶ 11(D)(1), 15, 16; *see also* Public Declaration of Lt. Gen. Keith B. Alexander, Director of the National Security Agency (Dkt 254) ¶¶ 12(c)(1), 16, 17. In his public certification, the Attorney General reiterated that "specific information demonstrating that the alleged content dragnet has not occurred cannot be disclosed on the public record without causing exceptional harm to national security." *See* Public Attorney General Certification (Dkt. 469-3) ¶ 6. Yet plaintiffs challenge that certification precisely on the ground that it does not discuss or reveal what may or may not be occurring, seek to litigate the very issue in challenging the certification, and demand security clearances and the depositions of nine current or former agency heads (among others) in order to find out the facts. *See* Rule 56(f) Declaration of Cindy A. Cohn ¶¶ 7-8. This is not permitted

under Section 802.  As set forth for the Court's *ex parte*, *in camera* review, the Attorney General's classified certification explains the basis for his certification as to a content dragnet and otherwise addresses all of plaintiffs' claims and allegations under Section 802(a).  *See* Notice of Lodging Classified Supplemental Reply in Support of the Government's Motion to Dismiss or for Summary Judgment.

> **2.**  **Substantial Evidence Supports the Attorney General's Certification Under Section 802(a)(4) as to Any Written Requests for Assistance Designed to Detect or Prevent Terrorist Attacks.**

Plaintiffs also contend that, to the extent the provider-defendants did assist the Government pursuant to written requests after the 9/11 attacks and the Attorney General certified this fact (facts that have not been confirmed or denied as to any particular provider-defendant), such a certification would be improper because Plaintiffs' allegations of a dragnet of surveillance (including content and non-content information) could not possibly, in their view, be "designed" to detect or prevent a terrorist attack.  *See* Pls. Opp. at 43-46.  But this argument again simply assumes Plaintiffs' allegations are true and then argues, based on that assumption, that the criteria under Section 802(a)(4) could not be met.  Assuming *arguendo* that the Attorney General's classified certification certifies dismissal under Section 802(a)(4) based on written requests after the 9/11 attacks, we respectfully refer the Court to the Attorney General's *ex parte*, *in camera* certification so that the Court can assess whether any assistance requested and provided (if any) was in connection with an intelligence activity that was designed to detect or prevent another terrorist attack.

> **3.**  **Substantial Evidence Supports the Attorney General's Certification On Other Grounds.**

Finally, Plaintiffs make a series of arguments, again based on their own assumptions and conjecture, that there could not be any basis for the Attorney General to have certified that any other provision of Section 802(a) applies in these cases.  This argument again assumes that the Plaintiffs' alleged dragnet occurred and is still occurring, and that it could not properly be

United States' Reply in Support of Motion to Dismiss and for Summary Judgment
(MDL No. 06-CV-1791-VRW)                                                                                      31

subject to either a court order or Section 2511 certification.[28/] Again, however, the issues of what if any alleged undisclosed activities exist, how they may have operated, whether particular provider- defendants assisted, whether that assistance occurred pursuant to a court order, or 2511 certification, or other statutory directive, are all matters addressed in the Attorney General's certification, and whatever certification may be applicable is supported by substantial evidence.[29/]

### D. Plaintiffs' Demands for Discovery Are Not Consistent With Section 802 Nor, to the Extent Applicable, Rule 56(f).

Finally, Plaintiffs' assertion that they are "entitled" to extensive discovery pursuant to Rule 56(f) in order to test the substantial evidentiary basis of the Attorney General's certification is meritless. *See* Declaration of Cindy A. Cohn Pursuant to Fed. R. Civ. P. 56(f) (Dkt. 478, MDL 06-cv-1791-VRW).

First, the discovery Plaintiffs demand would be wholly inconsistent with the purpose of Section 802, which was designed to effectuate a prompt dismissal of cases in which the Attorney General certifies that one or more provisions of Section 802(a) apply and the Court upholds that certification following judicial review. Plaintiffs' discovery demands are wholly consistent with congressional intent, and would inevitably be met with the need to protect intelligence sources

---

[28] Plaintiffs also argue that because of the limited scope of surveillance authorized under the Protect America Act and Section 702(h) of the new FISA Act Amendments, their alleged dragnet could not be occurring under that authority. *See* Pls. Opp. at 47.

[29] Plaintiffs' position is also facially invalid: if the provider-defendants had acted pursuant to a court order, 2511 certification, or other statutory directive, the mere existence of that authority would be sufficient under Section 802 to establish their grounds for immunity (as would a written request under Section 802(a)(4)). Plaintiffs are not entitled to adjudicate the lawfulness of any alleged assistance undertaken under such authority—that is the very purpose of Section 802. The fact that this provision may operate to foreclose adjudication of Plaintiffs' constitutional claims against the provider-defendants does not render the provision unlawful. *See* Part I, *supra*. Also, Plaintiffs' specific suggestion that they could challenge the lawfulness of any court order under which the defendants may have acted (if any) is meritless. All of the claims in this litigation are premised on the alleged absence of court orders in support of the alleged activities, and plaintiffs cite no authority that any provider-defendant would be acting in violation of the Constitution by following a court order.

United States' Reply in Support of Motion to Dismiss and for Summary Judgment
(MDL No. 06-CV-1791-VRW)                                                                32

and methods through an assertion of the state secrets privilege.[30]/ Morever, Plaintiffs'

speculation about the facts cannot support their right to discovery, particularly where the

Government has properly protected information concerning the allegations under both Section

802, the state secrets privilege, and other statutory protections that bar the disclosure of

information concerning intelligence sources and methods. *See* 50 U.S.C. § 403-1(i)(1); 50

U.S.C. § 402 note. As noted above, if the Court requires additional information concerning the

certification, the proper course would be to address those issues with the Government *ex parte*,

*in camera* .

Moreover, even assuming *arguendo* that Rule 56(f) applies in this case notwithstanding

Section 802, Plaintiffs are not "entitle[d]" to discovery under Rule 56(f), which permits

discovery only if "[t]he party opposing summary judgment bears the burden of showing 'what

facts she hopes to discover to raise a material issue of fact.'" *Terrell v. Brewer*, 935 F.2d 1015,

1018 (9th Cir. 1991) (quoting *Hancock v. Montgomery Ward Long Term Disability Trust*, 787

F.2d 1302, 1306 n.1 (9th Cir. 1986)); *see Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161

(9th Cir. 2001). In addition, "[t]he party seeking additional discovery bears the burden of

showing that the evidence sought exists." *Terrell*, 935 F.2d at 1018; *see Chance*, 242 F.3d at

1161 (similarly). Accordingly, "[d]enial of a Rule 56(f) application is proper where it is clear

that the evidence sought is almost certainly nonexistent or is the object of pure speculation."

*Terrell*, 935 F.2d at 1018; *accord State of Cal. ex rel. Cal. Dep' of Toxic Substances Control v.*

*Campbell*, 138 F.3d 772, 779-80 (9th Cir. 1998). For the reasons set forth in the Attorney

---

[30]     For example, as set forth in the Rule 56(f) Declaration of Cindy Cohn (Dkt. 478) plaintiffs demand that their counsel be granted security clearances (¶ 7) and the right to depose numerous agency heads, including the Director of National Intelligence, the Director of the National Security Agency, the Director of the Central Intelligence Agency, the Secretary of Homeland Security, the Director of the Federal Bureau of Investigation, and the Attorney General (¶ 8), and seek to probe into whether certain facilities are allegedly begin used to assist the Government in intelligence matters (¶¶ 16, 19, 23). The state secrets privilege has been not waived in this case by the Government's application of Section 802 as plaintiffs suggest, *see* Pls. Mem. at 50; *see also* 50 U.S.C. § 1885a(h) (Section 802 expressly preserves such privilege assertions), and Congress recognized that the alternative to granting limited review under Section 802 would be application of the privilege. *See* SSCI. Rep. 110-209 at 7 (Dkt. 469-2).

General's *ex parte*, *in camera* certification, as well as the supplemental classified response, Plaintiffs have not and cannot make such a showing.

## <u>CONCLUSION</u>

For the foregoing reasons, all claims against the electronic communication service providers in this proceeding should be promptly dismissed.

November 5, 2008                    Respectfully Submitted,

GREGORY G. KATSAS
Assistant Attorney General

CARL J. NICHOLS
Principal Deputy Associate Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

 *s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

 *s/ Caroline Lewis Wolverton*
CAROLINE LEWIS WOLVERTON

 *s/ Alexander K. Haas*
ALEXANDER K. HAAS

 *s/ Paul G. Freeborne*
PAUL G. FREEBORNE

Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

*Attorneys for the United States*