**Jon B. Eisenberg, California Bar No. 88278** (jon@eandhlaw.com)
**William N. Hancock, California Bar No. 104501** (bill@eandhlaw.com)
**Eisenberg & Hancock LLP**
1970 Broadway, Suite 1200 • Oakland, CA 94612
510.452.2581 – Fax 510.452.3277

**Steven Goldberg, Oregon Bar No. 75134** (steven@stevengoldberglaw.com)
River Park Center, Suite 300 • 205 SE Spokane St.• Portland, OR 97202
503.445-4622 – Fax 503.238.7501

**Thomas H. Nelson, Oregon Bar No. 78315** (nelson@thnelson.com)
P.O. Box 1211, 24525 E. Welches Road • Welches, OR 97067
503.622.3123 - Fax: 503.622.1438

**Zaha S. Hassan, California Bar No. 184696** (zahahassan@comcast.net)
8101 N.E. Parkway Drive, Suite F-2.• Vancouver, WA 98662
360.213.9737 - Fax 866.399.5575

**J. Ashlee Albies, Oregon Bar No. 05184** (ashlee@sstcr.com)
**Steenson, Schumann, Tewksbury, Creighton and Rose, PC**
815 S.W. Second Ave., Suite 500 • Portland, OR 97204
503.221.1792 – Fax 503.223.1516

**Lisa R. Jaskol, California Bar No. 138769** (ljaskol@earthlink.net)
610 S. Ardmore Ave.• Los Angeles, CA 90005
213.385.2977 – Fax 213.385.9089

**Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew and Asim Ghafoor**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates Solely To:<br><br>*Al-Haramain Islamic Foundation, Inc., et al. v. Bush, et al.* (C07-CV-0109-VRW)<br><br>AL-HARAMAIN ISLAMIC FOUNDATION, INC., et al.,<br>             Plaintiffs, | MDL Docket No. 06-1791 VRW<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C. § 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE**<br><br>Date:    Tuesday, December 2, 2008<br>Time:    10:00 a.m.<br>Court:   Courtroom 6, 17th Floor<br>             Honorable Vaughn R. Walker |

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C.
§ 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE
MDL DOCKET NO. 06-1791 VRW

|   |   |   |
|---|---|---|
| 1 | vs. | ) |
| 2 | **GEORGE W. BUSH, President of the** | ) |
| 3 | **United States, et al.,** | ) |
| 4 | Defendants. | ) |
| 5 | | ) |

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

ARGUMENT .................................................................... 2

I.    THE COURT MAY RULE ON 1806(f) STANDING BEFORE
      ADJUDICATING ARTICLE III STANDING ................................ 2

II.   THE BURDEN OF PROVING ARTICLE III STANDING IS AN
      ORDINARY BURDEN OF PROOF AND THUS IS SUBJECT TO
      THE BURDEN-SHIFTING EXCEPTION ................................... 5

III.  THE BURDEN OF PROVING 1806(f) STANDING IS ON A
      PREPONDERANCE OF THE EVIDENCE .................................. 7

IV.  THE STATE SECRETS PRIVILEGE DOES NOT PREVENT PLAINTIFFS
      FROM ESTABLISHING THEIR "AGGRIEVED PERSON" STATUS
      UNDER SECTION 1806(f) .................................................. 8

V.    PLAINTIFFS SEEK ONLY TO USE INFORMATION ALREADY
      DISCLOSED TO THEM IN ORDER TO RESIST A FACTUAL ATTACK
      ON THEIR ARTICLE III STANDING, NOT TO DISCOVER WHETHER
      THEY WERE SURVEILLED OR TO OBTAIN CONFIRMATION THAT
      THEY WERE SURVEILLED ................................................ 9

VI.  THE DOCTRINE OF CONSTITUTIONAL AVOIDANCE DOES NOT
      APPLY HERE ............................................................... 11

VII. DEFENDANTS' CLAIM OF EXCLUSIVE CONTROL OVER
      THE SEALED DOCUMENT DESPITE SECTION 1806(f) DEPENDS
      ON THE VERY THEORY OF PRESIDENTIAL POWER THAT
      THIS LITIGATION CHALLENGES AND THIS COURT HAS
      ALREADY REJECTED ..................................................... 12

VIII. THE OREGON DISTRICT COURT HAS NOW FOUND THAT THERE
      IS NO SUPPORT IN THE NON-CLASSIFIED RECORD FOR THE 2004
      CLAIM OF "DIRECT LINKS" BETWEEN PLAINTIFF AL-HARAMAIN
      AND OSAMA BIN-LADEN ............................................... 13

CONCLUSION ................................................................. 14

i

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C.
§ 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE
MDL DOCKET NO. 06-1791 VRW

# TABLE OF AUTHORITIES

Page

## CASES

*Al-Haramain Islamic Foundation, Inc. v. Bush*
    507 F.3d 1190 (9th Cir. 2007) ................................................. 9, 12

*Al-Haramain Islamic Foundation, Inc. v. United States Dept. of Treasury*
    2008 WL 4849471 (D. Or. 2008) ................................................. 13

*Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*
    436 F.3d 82 (2d Cir. 2006) ................................................. 3, 4

*American Civil Liberties Union v. National Security Agency*
    493 F.3d 644 (6th Cir. 2007) ................................................. 7

*American Foreign Service Ass'n v. Garfinkle*
    490 U.S. 153 (1989) ................................................. 11, 12

*Campbell v. United States*
    365 U.S. 85 (1961) ................................................. 6

*Clark v. Martinez*
    543 U.S. 371 (2005) ................................................. 11

*Dep't of Navy v. Egan*
    484 U.S. 518 (1988) ................................................. 12

*Halpern v. U.S.*
    258 F.2d 36 (2d Cir. 1958) ................................................. 11

*In re National Security Agency Telecommunications Records Litigation*
    564 F.Supp.2d 1109 (N.D. Cal. 2008) ................................................. 9, 11, 13

*In re Sealed Case*
    310 F.3d 717 (For. Intel. Surveil. Ct. of Rev. 2002) ................................................. 6

*In re Sealed Case (Horn)*
    494 F.3d 139 (D.C. Cir. 2007) ................................................. 8

*Intec U.S.A., LLC v. Engle*
    467 F.3d 1038 (7th Cir. 2006) ................................................. 2

*Lee v. City of Chicago*
    330 F.3d 456 (7th Cir. 2003) ................................................. 7

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C.
§ 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE
MDL DOCKET NO. 06-1791 VRW

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) .................................................. 4

*Retired Chicago Police Association v. City of Chicago*
    76 F.3d 856 (7th Cir. 1996) .......................................... 7

*Schaffer v. Weast*
    546 U.S. 49 (2005) ................................................ 5, 6

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*
    127 S.Ct. 1184 (2007) ............................................. 2, 3

*United States v. New York, N.H. & H.R. Co.*
    355 U.S. 253 (1957) .................................................. 6

*United States v. Real Property Located at Section 18*
    976 F.2d 515 (9th Cir. 1992) ......................................... 7

*Valentin v. Hospital Bella Vista*
    254 F.3d 358 (1st Cir. 2001) ......................................... 3

*Zavadzan v. City of New York*
    2008 WL 2074087 (E.D.N.Y. 2008) ...................................... 3

## CONSTITUTION AND STATUTES

United States Constitution, Article III ................................. *passim*

50 U.S.C. section 1801(k) .................................................. 1

50 U.S.C. section 1806(f) ............................................ *passim*

## MISCELLANEOUS

H.R. REP. No. 95-1283 (1978) ............................................... 9

ERIC LICHTBLAU, BUSH'S LAW (2008) .......................................... 6

U.S. Dept. of Justice, Office of the Inspector General
    *A Review of the FBI's Handling of Intelligence Information
    Related to the September 11 Attacks* (2004) .......................... 6

## INTRODUCTION

There is much about the current competing motions in this case on which the plaintiffs and the defendants agree.

We agree that a plaintiff in a civil action under the Foreign Intelligence Surveillance Act (FISA) may not use 50 U.S.C. section 1806(f) as a fishing expedition in an effort to discover whether the plaintiff was subjected to electronic surveillance or to force a government defendant to confirm whether the plaintiff was surveilled. The present 1806(f) motion, however, is no such effort. We seek neither discovery nor confirmation of plaintiffs' electronic surveillance, but simply to use portions of a document that we have already seen to help establish something that we already know and that is now shown as a prima facie matter by a rich lode of non-classified evidence.

We also agree that a plaintiff in a civil FISA action may not invoke section 1806(f) absent a showing that the plaintiff was actually subjected to electronic surveillance, and that it is not enough for the plaintiff merely to be a type of person targeted by the President's warrantless surveillance program. But the public record and other non-classified evidence described in plaintiffs' amended complaint demonstrates that they are not just likely targets. Plaintiffs' amended complaint sets forth direct and circumstantial evidence sufficient to raise a reasonable inference on a preponderance of the evidence that plaintiffs were actually surveilled.

Where we disagree with defendants is in the "what" and the "when" of the showing required to invoke section 1806(f).

Defendants contend that the "what" to be shown on this 1806(f) motion includes the *warrantless* nature of plaintiffs' electronic surveillance. But section 1806(f) gives an "aggrieved person" the standing necessary to invoke its provisions. 50 U.S.C. § 1806(f). FISA's definition of "aggrieved person" sets forth only two requirements: There must have been *surveillance* of the person, and the surveillance must have been *electronic*. 50 U.S.C. § 1801(k). Plaintiffs have now made the requisite prima facie showing of their electronic surveillance with the non-classified evidence set forth in the amended complaint. That the electronic surveillance was *warrantless* is essential to plaintiffs' Article III standing to sue defendants for violating FISA, but it is not necessary to demonstrate plaintiffs' standing to invoke section 1806(f).

Defendants contend that the "when" for the showing of 1806(f) standing can only be *after* the plaintiffs establish their Article III standing. The law says otherwise: This Court may rule on plaintiffs' 1806(f) standing before adjudicating their Article III standing, because this 1806(f) motion is a non-merits motion which the Court may address before making a definitive ruling on the merits of this lawsuit.

The sequence for adjudicating plaintiffs' 1806(f) standing and their Article III standing is not the only thing defendants get wrong in their opposition to plaintiffs' 1806(f) motion. Defendants fail to understand that the burden of proving Article III standing is an ordinary burden of proof and, as such, is subject to burden-shifting for matters that are peculiarly within defendants' exclusive knowledge. They fail to understand that the burden of proving standing – whether 1806(f) standing or Article III standing – is on a preponderance of the evidence. And they fail to understand that, because plaintiffs can establish their "aggrieved person" status under section 1806(f) with non-classified evidence, the state secrets privilege does not prevent this Court from going forward on this 1806(f) motion. This reply memorandum addresses these and other flaws in defendants' opposition to the 1806(f) motion.

## ARGUMENT

### I. THE COURT MAY RULE ON 1806(f) STANDING BEFORE ADJUDICATING ARTICLE III STANDING.

Defendants contend this Court may not rule on plaintiffs' 1806(f) motion until after the Court adjudicates plaintiffs' Article III standing. *See* Defs.' Oppo. to Pls.' 1806(f) Motion at 3. Defendants argue that "Article III standing requirements must be satisfied before this case can proceed" under section 1806(f), and that Article III standing "is not an issue to be adjudicated 'later' as plaintiffs contend." *Id.* at 6. Defendants are wrong.

The pertinent legal principle is that "a federal court generally may not rule *on the merits* of a case without first determining that it has jurisdiction . . . ." *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 127 S.Ct. 1184, 1191 (2007) (emphasis added). "'[J]urisdiction is vital only if the court proposes to issue a judgment *on the merits*.'" *Id.* at 1191-92 (quoting *Intec U.S.A., LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006)) (emphasis added). This rule

2

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C.
§ 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE
MDL DOCKET NO. 06-1791 VRW

only "prohibit[s] the court from deciding the *merits* of claims before determining that it has jurisdiction." *Zavadzan v. City of New York*, 2008 WL 2074087, *1 (E.D.N.Y. 2008) (emphasis added.) *"Non-dispositive* matters, on the other hand, may be addressed" prior to an adjudication of jurisdiction. *Id.* (emphasis added).

Thus, for example, in *Sinochem International*, the Supreme Court held that a district court may decide a *forum non conveniens* dismissal motion *before* adjudicating jurisdiction, because *forum non conveniens* is a *non-merits* ground for dismissal. 127 S.Ct. at 1192. Similarly, in *Zavadzan*, the district court denied a motion to stay discovery during the pendency of a motion to dismiss for want of subject matter jurisdiction, because "decisions concerning discovery are clearly non-dispositive." 2008 WL at 2074087, *1. Likewise here, this Court may rule on plaintiffs' 1806(f) motion prior to adjudicating the jurisdictional issue of Article III standing, because the 1806(f) motion is a *non-merits* motion, akin to the non-dispositive discovery motion in *Zavadzan*.

In *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82 (2d Cir. 2006), the court posited that a "statutory standing issue" may be adjudicated "so long as Article III standing is adequately pleaded" – that is, prior to an adjudication of Article III standing – "even though Article III standing might turn out to be absent upon subsequent fact-finding." *Id.* at 86. Here, the issue whether plaintiffs have standing to proceed under section 1806(f) – what we call *1806(f) standing, see* Pls.' Oppo. to Defs.' Third Dism. Motion at 2 – is one of statutory standing. As such, the issue may be decided prior to adjudication of Article III standing.

*Sinochem, Zavadzan,* and *Alliance for Environmental Renewal* explain why one of the procedural alternatives for adjudicating a factual attack on Article III standing is to defer the standing adjudication until the close of evidence in a trial on the merits. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 22; *accord, Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 n. 3 (1st Cir. 2001) ("for cases in which the jurisdictional facts . . . are inextricably intertwined with the merits of the case . . . the court may defer resolution of the jurisdictional issue until the time of trial"). The line of demarcation for adjudicating Article III standing is a *decision on the merits*. The jurisdictional determination need *not* precede a *non-merits* decision like a *forum non conveniens* dismissal or a discovery ruling. A court may even give some degree of "consideration" to the merits of a case before

3

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C. § 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE
MDL DOCKET NO. 06-1791 VRW

adjudicating Article III standing, as long as the court does not make "a definitive ruling on the merits" before ruling on Article III standing. *Alliance for Environmental Renewal*, 436 F.3d at 88. The law of federal jurisdiction "is not concerned with the ordering of a district court's receipt of evidence or any other aspect of procedure; it seeks to guard only against *a definitive ruling on the merits* by a court that lacks jurisdiction because of the absence of an Article III requirement, such as Article III standing." *Id.* at 87 (emphasis added). Thus, where evidence of Article III standing overlaps with evidence on the merits, it is permissible for a court to defer the standing adjudication until the close of evidence in a trial on the merits – or until immediately prior to ruling on a motion for summary adjudication or summary adjudication, *see* Pls.' Oppo. to Defs.' Third Dism. Motion at 22 – as long as the standing adjudication precedes the merits ruling. *Id.* at 88.

In short, this Court may adjudicate defendants' factual attack on plaintiffs' Article III standing "later" – after ruling on plaintiffs' 1806(f) motion – because the 1806(f) motion is a *non-merits* motion which the Court may address before making a definitive ruling on the merits of this lawsuit.

Defendants quote *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), for the proposition that a plaintiff must establish Article III standing "at each [sic] 'successive stages of the litigation.'" Defs. Oppo. to Pls.' 1806(f) Motion at 7 (quoting *Lujan* at 561). The quotation is incomplete. What *Lujan* actually says is that the elements of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with *the manner and degree of evidence* required at the successive stages of the litigation." *Lujan* at 561 (emphasis added). This means that the nature of a plaintiff's burden of establishing Article III standing at a particular stage of the litigation depends on *the manner and degree of evidence* required at that stage. At the stage of a facial attack on Article III standing – whether on a motion for dismissal or for summary judgment – the plaintiff's complaint need only allege the degree of evidence sufficient to invoke federal jurisdiction. The amended complaint here has done that. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 5-15. At the stage of a factual attack on Article III standing, "the District Court has leeway as to the procedure it wishes to follow," *Alliance for Environmental Renewal*, 436 F.3d at 88 – that is, as to the manner in which to proceed with an evidentiary hearing to resolve disputed factual issues. This Court may and should defer such a hearing until after the Court adjudicates plaintiffs' 1806(f)

motion. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 15-19.

## II. THE BURDEN OF PROVING ARTICLE III STANDING IS AN ORDINARY BURDEN OF PROOF AND THUS IS SUBJECT TO THE BURDEN-SHIFTING EXCEPTION.

In our opposition to defendants' third dismissal motion, we observed that, in a factual attack on plaintiffs' Article III standing, the Sealed Document might be dispositive of potential disputed fact issues. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 16. More specifically, as we noted in our 1806(f) motion, the Sealed Document includes evidence that plaintiffs' electronic surveillance was warrantless. *See* Pls.' 1806(f) Motion at 11.

We have also explained why, even if the Sealed Document were *not* dispositive of potential disputed factual issues, the burden should shift to defendants to prove matters that are peculiarly within their exclusive knowledge, such as whether plaintiffs' surveillance was warrantless. *See* 1806(f) Motion at 10-11; Pls.' Oppo. to Defs. Third Dism. Motion at 18-19. In their opposition to plaintiffs' 1806(f) motion, defendants contend "[t]his burden cannot be shifted to defendants" because "the law is clear that a party seeking to invoke a court's subject matter jurisdiction must bear the burden of proof, including that he has Article III standing . . . ." Defs.' Oppo. to Pls.' 1806(f) Motion at 11. As for the legal authorities we have cited that state the burden-shifting rule, defendants say "[n]one of this authority suggests that the burden of proof for establishing *standing under Article III* can be shifted to the defendants." *Id.* at 14 n. 8 (emphasis added). Defendants seem to think there is something unique about the burden of proving Article III standing that precludes burden-shifting where evidence is peculiarly within defendants' exclusive knowledge. Again, defendants are wrong.

The Supreme Court made clear in *Schaffer v. Weast*, 546 U.S. 49 (2005), that the burden of proving Article III standing is no different than the ordinary burden of proof with its burden-shifting exceptions. In *Schaffer*, after observing that "the *ordinary default rule* [is] that plaintiffs bear the risk of failing to prove their claims," the Court described "numerous . . . areas" where "we have presumed or held that the default rule applies." *Id.* at 56-57 (emphasis added). One of the "areas" the Court enumerated is Article III standing: The Court cited *Lujan* as an example where the "ordinary default rule" applies. *Id.* at 57. The Court went on to explain that "[t]he ordinary default rule, of course, admits of exceptions." *Id.* One of those exceptions is that "'[t]he ordinary rule, based on

considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary.'" *Id.* at 60 (quoting *United States v. New York, N.H. & H.R. Co.*, 355 U.S. 253, 256 n. 5 (1957)); *accord, e.g., Campbell v. United States*, 365 U.S. 85, 96 (1961).

*Schaffer* thus debunks defendants' misconception that the burden of proving Article III standing is not subject to burden-shifting for evidence peculiarly within defendants' exclusive knowledge. According to *Shaffer*, the burden of proving Article III standing is just one manifestation of the "ordinary default rule," *Shaffer* at 56, which "admits of exceptions," *id.* at 57, and which "'does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary,'" *id.* at 60.[1]

//

//

//

---

[1] Regardless of burden-shifting, there may be ways to determine from a writing whether information contained therein is the product of FISA-warranted surveillance. For example: During 2000-2002, documents that contained information derived from FISA-warranted surveillance for use in intelligence investigations contained a so-called "wall" to prevent the use of that information in criminal investigations. The "wall" consisted of the following caveat inserted into such FISA-derived documents: "'Except for information reflecting a direct threat to life, neither this product nor any information contained in this product may be disseminated to U.S. criminal investigators or prosecutors without prior approval of NSA. All subsequent product which contains information obtained or derived from this product must bear this caveat. Contact the Office of General Counsel of NSA for guidance concerning this caveat.'" U.S. Dept. of Justice, Office of the Inspector General, *A Review of the FBI's Handling of Intelligence Information Related to the September 11 Attacks* 36-38 (2004). In March of 2002, the Attorney General issued guidelines on intelligence-sharing procedures which removed the "wall" between intelligence and criminal investigations, based on a provision of the USA PATRIOT Act which allowed FISA to be used for a law-enforcement purpose in any case where there was also a significant foreign intelligence purpose. *Id.* at 42-43; *see In re Sealed Case*, 310 F.3d 717, 743 (For. Intel. Surveil. Ct. of Rev. 2002) (holding that FISA does not prohibit the use of intelligence information in a criminal prosecution). Consequently, after 2002, there was no need for any "wall"-type language in documents that contained information derived from FISA-warranted surveillance. Thus, if a writing after 2002 were to contain a "wall" restricting the dissemination of the information contained therein, the presence of that "wall" would indicate that the information was not derived from FISA-warranted surveillance. *See generally* ERIC LICHTBLAU, BUSH'S LAW 171-173 (2008) (describing efforts of Foreign Intelligence Sureveillance Court Chief Judge Royce Lamberth and Department of Justice lawyer James Baker to create a "firewall" to prevent information from warrantless surveillance program from being used to apply for FISA warrants).

## III. THE BURDEN OF PROVING 1806(f) STANDING IS ON A PREPONDERANCE OF THE EVIDENCE.

In our 1806(f) motion, we cited *American Civil Liberties Union v. National Security Agency*, 493 F.3d 644, 674-75 (6th Cir. 2007), as well as defendants' own opposition to certiorari in that case, for the proposition that the prima facie showing of "aggrieved person" status under section 1806(f) may be made on a preponderance of the evidence. *See* Pls.' 1806(f) Motion at 15-16. Defendants call this proposition "meritless." *See* Defs.' Oppo. to Pls.' 1806(f) Motion at 13. They are wrong yet again.

Any possible doubt on this point is resolved by analogy to the standard of proof upon a factual attack on Article III standing: It is "a showing by a preponderance of the evidence . . . that standing exists." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *Retired Chicago Police Association v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996); *see also United States v. Real Property Located at Section 18*, 976 F.2d 515, 520 (9th Cir. 1992) (to show standing to contest a forfeiture, "[t]he claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property"). If that is the standard of proof for a jurisdictional matter like Article III standing, there is no fathomable reason to impose a higher standard of proof for a non-jurisdictional matter like statutory 1806(f) standing.[2]

Defendants argue that "application of the holding in [*American Civil Liberties Union v. National Security Agency*] would require dismissal of plaintiffs' claims." Defs.' Oppo. to Pls.' 1806(f) Motion at 13. In that case, the Sixth Circuit held that the plaintiffs could not establish Article III standing merely by showing that they had contacts with "the types of people targeted by" the warrantless surveillance program, 493 F.3d at 653, because they "have failed to provide evidence that they are personally subject to" the program, *id.* at 688 (Gibbons, J., concurring). On the present motion, in contrast, plaintiffs have provided prima facie evidence – in the amended complaint and on this 1806(f) motion, and all of it non-classified – not just that they were typical of persons targeted by

---

[2] Although the prima facie showing of "aggrieved person" status under section 1806(f) must be sufficient to sustain a finding of such status on a preponderance of the evidence, any inferences that contribute to that showing need not be *more likely than not*, but only *reasonable*. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 7.

7

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C.
§ 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE
MDL DOCKET NO. 06-1791 VRW

the program, but also that they *actually were* personally subjected to warrantless electronic surveillance. Thus, *American Civil Liberties Union v. National Security Agency* is useful here *only* to the extent it prescribes the preponderance of evidence standard of proof. Factually, the two cases are not analogous.

## IV. THE STATE SECRETS PRIVILEGE DOES NOT PREVENT PLAINTIFFS FROM ESTABLISHING THEIR "AGGRIEVED PERSON" STATUS UNDER SECTION 1806(f).

Defendants repeatedly insist that the Ninth Circuit's ruling on defendants' assertion of the state secrets privilege precludes plaintiffs from using the Sealed Document to establish their "aggrieved person" status under section 1806(f). *See* Defs.' Oppo. to Pls.' 1806(f) Motion at 1, 2, 3, 7, 12, 17-18, 20, 22 n. 14. But we are not attempting to use the Sealed Document to show such "aggrieved person" status. In accordance with this Court's ruling of July 2, 2008, we endeavor to make that showing – and we believe successfully – solely with non-classified evidence. *See* Pls.' 1806(f) Motion at 16-19. State secrets are not necessary for us to make the prima facie showing of plaintiffs' electronic surveillance and hence their "aggrieved person" status under section 1806(f).

Thus, defendants misplace their reliance on *In re Sealed Case (Horn)*, 494 F.3d 139 (D.C. Cir. 2007), for their proposition that a case "may be dismissed if state secrets are found to be necessary for plaintiffs to establish a prima facie case." Defs.' Oppo. to Pls.' 1806(f) Motion at 12. State secrets are not necessary for plaintiffs to establish their prima facie case. Plaintiffs have now done so with non-classified evidence, just as the plaintiff in *In re Sealed Case (Horn)* was able to make a prima facie showing of electronic surveillance using non-classified evidence, *see* 494 F.3d at 145, 147-48.[3/]

---

[3/] We stated in our 1806(f) motion that "[t]he issue in *In re Sealed Case [(Horn)]* was whether the plaintiff was able to overcome the state secrets privilege by making a prima facie showing without using privileged information." Pls.' 1806(f) Motion at 14. Defendants object that "the state secrets privilege assertion was upheld in that case, not 'overcome.'" Defs.' Oppo. to Pls.' 1806(f) Motion at 11. Defendants have misconstrued our description of the case. We never said that *In re Sealed Case (Horn)* rejected the government's assertion of the state secrets privilege. What happened there was that the D.C. Circuit upheld the district court's exclusion of certain evidence under the state secrets privilege, but held that the plaintiff had nevertheless presented unprivileged evidence sufficient to establish a prima facie case of electronic surveillance as to one of two defendants. *In re Sealed Case (Horn)*, 494 F.3d at 144-45, 147-48. When we said that the plaintiff

1    Defendants further insist that the Ninth Circuit's ruling precludes "*any* further use" of the
2    Sealed Document, see Defs. Oppo. to Pls.' 1806(f) Motion at 2 (emphasis added) – by which we
3    presume defendants mean to include use of the Sealed Document to establish Article III standing. But
4    there is a proviso in the Ninth Circuit's ruling: The state secrets privilege precludes plaintiffs' use of
5    the Sealed Document *provided that* section 1806(f) does not *preempt* the state secrets privilege. That
6    is why the Ninth Circuit remanded the case to this Court "to consider whether FISA preempts the state
7    secrets privilege." *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1206 (9th Cir.
8    2007). This Court ruled on July 2, 2008, that FISA *does* preempt the state secrets privilege. *In re*
9    *National Security Agency Telecommunications Records Litigation*, 564 F.Supp.2d 1109, 1111 (N.D.
10   Cal. 2008). That means the state secrets privilege does *not* preclude plaintiffs from using the Sealed
11   Document to help establish their Article III standing if they can make their prima facie showing of
12   "aggrieved person" status under section 1806(f) with non-classified evidence.[4/]

V. **PLAINTIFFS SEEK ONLY TO USE INFORMATION ALREADY DISCLOSED TO THEM IN ORDER TO RESIST A FACTUAL ATTACK ON THEIR ARTICLE III STANDING, NOT TO DISCOVER WHETHER THEY WERE SURVEILLED OR TO OBTAIN CONFIRMATION THAT THEY WERE SURVEILLED.**

    Defendants persist in arguing that plaintiffs may not use section 1806(f) to "discover" or to
obtain "discovery" as to whether they were surveilled or to force defendants to "confirm" the fact of

---

was able to "overcome" the state secrets privilege, we meant that the plaintiff was able to overcome the government's *successful assertion* of the state secrets privilege by using unprivileged information to make a prima facie showing of electronic surveillance.

[4/]    As in their third dismissal motion, defendants re-argue the question of FISA preemption in their opposition to plaintiffs' 1806(f) motion. Defs.' Oppo. to Pls.' 1806(f) Motion at 19-20; *see* Defs.' Third Dism. Motion at 23-25. For example, defendants contend that a snippet of FISA's legislative history addressing determinations of a surveillance's legality incident to section 1806(f) discovery "indicates that the disclosure of information concerning alleged surveillance would be governed in part by applicable privileges, such as the state secrets privilege . . . ." Defs.' Oppo. to Pls.' 1806(f) Motion at 10 n. 6. Ironically, that snippet of legislative history supports plaintiffs' point that the Court may decide on this 1806(f) motion, under appropriate security measures, whether plaintiffs' electronic surveillance was unlawful. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 20-21; H.R. REP. NO. 95-1283, at 93 (1978) ("A decision of illegality may not always arise in the context of suppression; rather, it may, for example, arise incident to a discovery motion in a civil trial."). In any case, as we noted in our opposition to defendants' third dismissal motion, we assume this Court does not wish to reconsider its FISA preemption ruling. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 22-23.

plaintiffs' surveillance. *See* Defs.' Oppo. to Pls.' 1806(f) Motion at 7, 8, 9, 10, 15, 19. We agree that nobody may use section 1806(f) for such purposes. But that is not how we propose to use section 1806(f). We do not seek to "discover" whether plaintiffs were surveilled, for we already know it. We do not seek "discovery" of the Sealed Document, for we have already seen it and submitted it to the Court. We are not asking the government to "confirm" plaintiffs' surveillance, for we can establish that surveillance without any need for such confirmation. We seek only to use portions of a document we have already seen to help establish what we already know, in order to resist a factual attack on plaintiffs' Article III standing.

We never asked FBI Deputy Director John Pistole to "confirm" that the FBI used surveillance in the 2004 investigation of plaintiff Al-Haramain. He did that all by himself in his public speech on October 22, 2007, and to this day the text of that speech remains posted on the FBI's official Internet website. *See* Pls.' 1806(f) Motion at 6-7. It ill-serves defendants' credibility for them to continue to insist that they "cannot confirm or deny" whether "there has been surveillance in this case," Defs.' Oppo. to Pls.' 1806(f) Motion at 18, after one of their own has done precisely that.

Defendants have recycled an argument from their second dismissal motion that plaintiffs' counsel "conceded" in oral argument more than two years ago before the Oregon district court that "they do not know" whether their surveillance was warrantless. *See* Defs.' Oppo. to Pls.' 1806(f) Motion at 18-19 & n. 12. We repeat the response we presented in our opposition to the second dismissal motion: "As this litigation has subsequently unfolded, we have demonstrated in public and sealed filings how the [Sealed] Document and other materials show the warrantless nature of the surveillance . . . ." Pls.' Memo. in Oppo. to Defs.' Second Dism. Motion at 18 n.7. We – and this Court – can now reasonably infer that there was no FISA warrant for plaintiffs' electronic surveillance. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 14-15. We do not concede otherwise.

Defendants have also recycled an argument from their second dismissal motion that "[s]ection 1806(f) applies only where the Government has decided to acknowledge surveillance . . . ." Defs.' Oppo. to Pls.' 1806(f) Motion at 10. This Court has already rejected that argument in its July 2, 2008 ruling on defendants' second dismissal motion: "The court disagrees with defendants' proposed limitation of section 1806(f) to cases in which the government has acknowledged the surveillance at

issue." *In re National Security Agency Telecommunications Records Litigation*, 564 F.Supp.2d at 1133-34. Congress cannot have intended such a limitation on section 1806(f), for it would deprive section 1810's civil remedy of all practical meaning, making the civil cause of action "completely illusory, existing only at the mercy of government officials." *Halpern v. U.S.*, 258 F.2d 36, 43 (2d Cir. 1958).

Defendants protest that section 1806(f) "has been on the books for 30 years and has never been used in the manner that plaintiffs now propose." Defs.' Oppo. to Pls.' 1806(f) Motion at 8 n. 3. That is certainly true, because no previous President has committed the wholesale violations of FISA that the current President has committed. But it is equally true that there has never before been a case like this, with its unprecedented confluence of government gaffes and public disclosures – from the accidental disclosure of the Sealed Document in 2004, through the government's public descriptions of the warrantless surveillance program from December 2005 onward, to Deputy Director Pistole's remarkable public admission late last year. This case is, indeed, one for "the books." That this is the first occasion for using section 1806(f) in the manner plaintiffs wish does not, as defendants claim, "demonstrate that the provision does not apply in this manner." Defs.' Oppo. to Pls.' 1806(f) Motion at 8 n. 3. It just underscores how extraordinary this case is.

## VI. THE DOCTRINE OF CONSTITUTIONAL AVOIDANCE DOES NOT APPLY HERE.

Defendants cite *American Foreign Service Ass'n v. Garfinkle*, 490 U.S. 153, 161 (1989), for their proposition that this Court should decide Article III standing before addressing 1806(f) standing – and dismiss this case for want of Article III standing – in order to avoid the purported "serious constitutional question" whether Congress has authority to preempt the state secrets privilege via section 1806(f). *See* Defs.' Oppo. to Pls.' 1806(f) Motion at 20. There are three reasons why the doctrine of constitutional avoidance does not apply here.

First, this Court has already decided the question of FISA preemption, so avoidance is now a moot point. Second, "[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction, and the canon functions *as a means of choosing between them*." *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (emphasis in original). This Court has determined that section 1806(f) is not

11

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C.
§ 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE
MDL DOCKET NO. 06-1791 VRW

susceptible of competing preemptive and non-preemptive constructions. Third, *American Foreign Service Ass'n* itself explains that the doctrine only operates to avoid *unnecessary* constitutional rulings. *American Foreign Service Ass'n*, 490 U.S. at 161 ("Particularly where, as here, a case implicates the fundamental relationship between the Branches, courts should be extremely careful not to issue unnecessary constitutional rulings."). This Court's decision of the FISA preemption question was necessary to the extent plaintiffs might need to use the Sealed Document under section 1806(f) to help resolve potential disputed factual issues in a factual attack on plaintiffs' Article III standing. *See* Pls.' Oppo. to Defs.' Third Dism. Motion at 16. Indeed, the FISA preemption decision was not just necessary; it was *mandated* by the Ninth Circuit. *See Al-Haramain Islamic Foundation, Inc.*, 507 F.3d at 1206 ("we remand to the district court to consider whether FISA preempts the state secrets privilege").

As for defendants' worry that "further proceedings under Section 1806(f) would inherently risk or require disclosure of" sensitive national security information, Defs.' Oppo. to Pls.' 1806(f) Motion at 20, any potential threat to national security in this 1806(f) proceeding can be avoided through the various security measures available to this Court. *See* Pls.' 1806(f) Motion at 19-20.

### VII. DEFENDANTS' CLAIM OF EXCLUSIVE CONTROL OVER THE SEALED DOCUMENT DESPITE SECTION 1806(f) DEPENDS ON THE VERY THEORY OF PRESIDENTIAL POWER THAT THIS LITIGATION CHALLENGES AND THIS COURT HAS ALREADY REJECTED.

Finally, we address a passage near the end of defendants' opposition to plaintiffs' 1806(f) motion: Defendants insist that "Executive Orders governing access to classified information" preclude plaintiffs' access to the Sealed Document, and defendants cite *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) for the proposition that "the decision to grant or deny access to such information rests exclusively within the discretion of the Executive." Defs.' Oppo. to Pls.' 1806(f) Motion at 22.

Do defendants mean to assert their theory of unfettered presidential power over matters of national security – the very theory plaintiffs seek to challenge in this case – as a basis for disregarding this Court's FISA preemption ruling and defying the current access proceedings under section 1806(f)? So it seems. This Court, however, in its order of July 2, 2008, has already rejected defendants' theory of presidential power, stating: "*Egan* recognizes that the authority to protect national security

information is neither exclusive nor absolute in the executive branch. When Congress acts to contravene the president's authority, federal courts must give effect to what Congress has required." *In re National Security Agency Telecommunications Records Litigation,* 564 F.Supp.2d at 1121.

If defendants now intend merely to re-argue this point, then we simply stand on our prior briefing in opposition to defendants' second dismissal motion and on the Court's order of July 2, 2008. But if defendants are claiming power to defy this Court in the name of national security – just as they claim power to defy Congress in the name of national security – then every American should be alarmed, for that is the very abuse of power this lawsuit challenges. It would be ironic indeed – and a constitutional travesty – if the President could use a dubious theory of presidential power to squelch a lawsuit that asks the judicial branch to determine the validity of that theory.

### VIII. THE OREGON DISTRICT COURT HAS NOW FOUND THAT THERE IS NO SUPPORT IN THE NON-CLASSIFIED RECORD FOR THE 2004 CLAIM OF "DIRECT LINKS" BETWEEN PLAINTIFF AL-HARAMAIN AND OSAMA BIN-LADEN.

There has been a development of significance for plaintiffs' 1806(f) motion since its filing: On November 6, 2008, Judge Garr M. King of the Oregon federal district court issued an opinion and order in Al-Haramain's challenge to its designation as a Specially Designated Global Terrorist (SDGT) organization. *See Al-Haramain Islamic Foundation, Inc. v. United States Dept. of Treasury,* 2008 WL 4849471 (D. Or. 2008). Among other things, in addition to holding that the government violated Al-Haramain's due process rights when re-designating Al-Haramain as an SDGT in 2008, Judge King addressed the statement in the Treasury Department's press release of September 9, 2004, that the 2004 investigation had revealed "direct links" between plaintiff Al-Haramain and Osama bin-Laden. Judge King found that this "is not a statement supported by the unclassified record." *Id.* at *17. This finding is yet further support for the inference that defendants' claim of such "direct links" depended on secret surveillance of Wendell Belew's and Asim Ghafoor's international telecommunications with Soliman al-Buthi in March and April of 2004. *See* 1806(f) Motion at 17-18.

Although Judge King found a violation of Al-Haramain's due process rights in the SDGT re-designation process, Judge King also found sufficient evidence in that case's administrative record to support the re-designation. *See id.* at *13, *33. This finding highlights a point we have repeatedly

13

made in the present case: Given what defendants have believed about Al-Haramain since at least February of 2004, defendants surely would have obtained a FISA warrant for plaintiffs' electronic surveillance if only defendants had sought it. Defendants did not violate FISA because they *had* to; they violated FISA because they *wanted* to.

## CONCLUSION

For the foregoing reasons, and for those set forth in our memorandum supporting this 1806(f) motion and in our opposition to defendants' third dismissal motion, we respectfully request this Court to grant the 1806(f) motion and give us access to the Sealed Document under such security measures as the Court deems appropriate.

DATED this 14th day of November, 2008.

       /s/ Jon B. Eisenberg

Jon B. Eisenberg, Calif. Bar No. 88278
William N. Hancock, Calif. Bar No. 104501
Steven Goldberg, Ore. Bar No. 75134
Thomas H. Nelson, Oregon Bar No. 78315
Zaha S. Hassan, Calif. Bar No. 184696
J. Ashlee Albies, Ore. Bar No. 05184
Lisa Jaskol, Calif. Bar No. 138769

**Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew, and Asim Ghafoor**

# CERTIFICATE OF SERVICE

RE: In Re National Secrurity Agency Telecommunications Records Litigation
MDL Docket No. 06-1791 VRW

I am a citizen of the United States and employed in the County of San Francisco, State of California. I am over eighteen (18) years of age and not a party to the above-entitled action. My business address is Eisenberg and Hancock, LLP, 180 Montgomery Street, Suite 2200, San Francisco, CA, 94104. On the date set forth below, I served the following documents in the manner indicated on the below named parties and/or counsel of record:

- **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION PURSUANT TO 50 U.S.C. § 1806(f) TO DISCOVER OR OBTAIN MATERIAL RELATING TO ELECTRONIC SURVEILLANCE**

___ **Facsimile** transmission from (415) 544-0201 during normal business hours, complete and without error on the date indicated below, as evidenced by the report issued by the transmitting facsimile machine.

___ **U.S. Mail**, with First Class postage prepaid and deposited in a sealed envelope at San Francisco, California.

XX **By ECF:** I caused the aforementioned documents to be filed via the Electronic Case Filing (ECF) system in the United States District Court for the Northern District of California, on all parties registered for e-filing in In Re National Security Agency Telecommunications Records Litigation, Docket Number M:06-cv-01791 VRW, and *Al-Haramain Islamic Foundation, Inc., et al. v. Bush, et al.*, Docket Number C07-CV-0109-VRW.

I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service, and said correspondence would be deposited with the United States Postal Service at San Francisco, California that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 14, 2008 at San Francisco, California.

JESSICA DEAN