Lycos, Inc. v. Verizon Communications, Inc.

Doc. 516

GREGORY G. KATSAS
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Principal Deputy Associate Attorney General
JOHN C. O'QUINN
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br><u>This Document Solely Relates To</u>:<br><br>*Al-Haramain Islamic Foundation <u>et</u> <u>al</u>. v. Bush, <u>et</u> <u>al</u>.* (07-CV-109-VRW) | ) | No. M:06-CV-01791-VRW<br><br>**GOVERNMENT DEFENDANTS' REPLY IN SUPPORT OF THIRD MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>Date: December 2, 2008<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Honorable Vaughn R. Walker |



Dockets.Justia.com

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. THE GOVERNMENT HAS CHALLENGED ON SUMMARY JUDGMENT THE PUBLIC EVIDENCE PLAINTIFFS ADVANCE AS INSUFFICIENT TO ESTABLISH THEIR STANDING UNDER ARTICLE III . . . . . . . . . . . . . . . . . . . . . . . 2

II. WHETHER PLAINTIFFS ARE "AGGRIEVED" UNDER THE FISA IS A QUESTION OF ARTICLE III STANDING, AND ARTICLE III REQUIREMENTS MUST BE SATISFIED IN ANY EVENT . . . . . . . . . . . . . . . . . . . 4

III. UNDER ANY STANDARD, PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE AGGRIEVED PERSONS UNDER SECTION 1806(f) AND HAVE STANDING TO PROCEED UNDER ARTICLE III . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. SECTION 1806(F) DOES NOT PERMIT PLAINTIFFS TO DISCOVER WHETHER OR NOT THEY HAVE BEEN SUBJECT TO THE ALLEGED SURVEILLANCE IN AN ATTEMPT TO ESTABLISH STANDING . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

CASES

*Alderman v. United States*,
394 U.S. 165 (1969) . . . . . 5

*Al-Haramain Islamic Foundation et al. v. Bush*,
507 F.3d 1190 (9th Cir. 2007) . . . . . 13

*Al-Haramain Islamic Foundation et al. v. Dept. of Treasury*,
Slip. op. 07-cv-1115-KI (Nov. 6, 2008, D. Or.) . . . . . 11

*Allen v. Wright*,
468 U.S. 737 (1984) . . . . . 4,

*American Civil Liberties Union v. NSA*,
493 F. 3d 644 (6th Cir. 2007), *cert. denied*, 128 S.Ct. 1334 (2007) . . . . . 4, 9, 13

*Daniels v. Twin Oaks Nursing Home*,
692 F.2d 1321 (11th Cir. 1983) . . . . . 11

*EOTT Energy Operating Ltd. Partnership v. Winterthur Swiss Ins. Co.*,
257 F.3d 992 (9th Cir. 2001) . . . . . 8

*In re NSA Telecomm. Records Litig., Al-Haramain Islamic Found. v. Bush*,
564 F. Supp. 2d 1109, 1134-35 (N.D. Cal. July 2, 2008) . . . . . passim

*Jones v. United States*,
362 U.S. 257 (1960) . . . . . 5-6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) . . . . . 3, 4, 6

*Poppell v. City of San Diego*,
149 F.3d 961 (9th Cir. 1998) . . . . . 11

*Rakas v. Illinois*,
439 U.S. 128 (1978) . . . . . 6

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) . . . . . 4

*United Presbyterian Church v. Reagan*,
738 F.2d 1375 (D.C. Cir. 1984) . . . . . 9

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) . . . . . 5

*Warth v. Seldin*,
422 U.S. 490 (1975) . . . . . 4, 5, 6

U.S. CONSTITUTION

U.S. Const. art. III . . . . . . . . . . passim

U.S. Const. amend IV . . . . . . . . . . 1, 5, 6

STATUTORY LAW

28 U.S.C. § 1292(b) . . . . . . . . . . 14

50 U.S.C. § 1801(k) . . . . . . . . . . 1, 9

50 U.S.C. § 1806(f) . . . . . . . . . . passim

FEDERAL RULES

Fed. R. Crim. P. 41(e) . . . . . . . . . . 5

Fed. R. Civ. Proc. 56(e) . . . . . . . . . . 3

OTHER MATERIALS

H.R. Rep. No. 95-1283, 95th Cong. 2d Sess., pt.1 (1978) . . . . . . . . . . 5

## INTRODUCTION

In dismissing plaintiffs' original complaint, the Court permitted plaintiffs another opportunity to establish their standing to proceed under Section 106(f) of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1806(f),[1] if they could show they are "aggrieved persons" under the FISA—that is, the target of or subject to electronic surveillance, *see id*. § 1801(k)—based on *public* evidence and without reliance on the so-called sealed document that has been excluded from this case by the Ninth Circuit. *See In re NSA Telecomm. Records Litig., Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109, 1134-35 (N.D. Cal. July 2, 2008). Plaintiffs then filed an amended complaint setting forth various public facts in an attempt to establish their standing. *See* First Amended Complaint ("FAC") (Dkt. 35).[2] The Government promptly filed a motion that clearly sought summary judgment by challenging the evidence plaintiffs presented as insufficient to establish their standing under Article III requirements. *See* Government Defendants' Third Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. 49) ("Defs. 3d MSJ").

Plaintiffs' Opposition ("Pls. Opp.") (Dkt. 50) presents a series of plainly erroneous contentions and seeks to disregard the Court's July 2 decision. First, plaintiffs contend that standing as an "aggrieved person" under the FISA is not the same as Article III standing. But that is wrong—the relevant case law makes clear that Congress intended that "aggrieved persons" would be solely those litigants that meet Article III standing requirements to pursue Fourth Amendment claims. And even if these standing inquiries were distinct, plaintiffs concede (as they must) that they still must establish Article III standing. Plaintiffs argue that, at this stage in the litigation, the Government has made only a so-called "facial" challenge to their allegations of injury in the First Amended Complaint, as to which the Court may assume their allegations of injury are true. That also is wrong; the Government anticipated this very argument and has not

[1] Hereafter referred to as "Section 1806(f)" of the FISA based on its designation in Title 50 of the United States Code.

[2] Docket numbers herein refer to the docket at 07-cv-00109-VRW).

merely contended that plaintiffs' allegations of injury were insufficient, but has specifically sought summary judgment on the issue of standing by arguing that the public evidence cited by plaintiffs in their First Amended Complaint did not satisfy their burden of establishing standing under Article III requirements. Moreover, by *any* standard, plaintiffs have failed to establish their "aggrieved" status under the FISA or Article III standing. The "evidence" they advance, whether viewed most favorably to plaintiffs, assumed to be true, or given every reasonable inference, does not establish that they were subject to alleged surveillance, let alone the alleged warrantless surveillance in 2004 that they assert occurred in this case

Finally, the law does not remotely support plaintiffs' demand that the Court hold the Government's motion in abeyance and proceed under Section 1806(f), grant them access to the sealed document, adjudicate the issue of standing under those procedures, and shift the burden of proof to require the Government to confirm or deny information protected by the Government's successful privilege assertion. Plaintiffs have no answer to the fact that Section 1806(f) does not permit a party to discover whether it has been subject to alleged surveillance—that is precisely why the Court ordered plaintiffs to attempt to establish their standing with public evidence *before* Section 1806(f) could be invoked. *See* 564 F. Supp. 2d at 1134. Further proceedings under Section 1806(f) would inherently risk the improper disclosure of information protected by the Ninth Circuit—indeed, plaintiffs *demand* that such information be disclosed to them. But because plaintiffs have failed to establish their standing based on the public evidence, as the Court directed, this case should now be dismissed before any Section 1806(f) proceedings.

## ARGUMENT

### I. THE GOVERNMENT HAS CHALLENGED ON SUMMARY JUDGMENT THE PUBLIC EVIDENCE PLAINTIFFS ADVANCE AS INSUFFICIENT TO ESTABLISH THEIR STANDING UNDER ARTICLE III.

Plaintiffs' central argument is that the Government has not challenged plaintiffs' standing on Article III grounds, and does not seek to challenge the factual basis of plaintiffs' standing, and, thus, that such an adjudication should be deferred for Section 1806(f) proceedings. *See* Pls. Opp. (Dkt. 50) at 2, 5. This argument is plainly wrong. The Government's motion specifically

sought summary judgment with respect to whether plaintiffs have established standing as a factual matter under Article III requirements. The Government's Notice of Motion states:

> First, assuming, *arguendo*, Section 1806(f) of the FISA is applicable to consider plaintiffs' claims set forth in the First Amended Complaint, *the Government Defendants are now entitled to summary judgment on the grounds that* the evidence set forth in plaintiffs' First Amended Complaint fails to establish that the plaintiffs are "aggrieved persons" as defined in the FISA and, thus, that plaintiffs have standing to adjudicate any claim under Section 1806(f).

*See* Defs. Notice of Motion (Dkt. 49) at 2 (emphasis added). We also argued that the "fundamental problem" with the evidence cited in plaintiffs complaint "does not relate to the mere sufficiency of plaintiffs' allegations; rather, *plaintiffs cannot meet their burden of proof at the summary judgment stage* to actually establish that they have been subject to the alleged warrantless surveillance. *See* Defs. MSJ (Dkt. 49) at 2 (emphasis added). We thus listed among the "Issues to be Decided":

> *Whether summary judgment should be granted to the Government Defendants* and the complaint dismissed on the ground that plaintiffs have not established that they are "aggrieved parties" under the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801(k) and, thus, that they have standing to challenge alleged warrantless surveillance of them at issue in this case?

*See id*. at 3 (emphasis added). We then set forth Article III requirements for standing, including that the burden of proof is on the plaintiffs at the summary judgment stage. *See id*. at 10 ("In response to a summary judgment motion, however, 'the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts' establishing their standing, which for purposes of the summary judgment motion will be taken to be true unless controverted.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) and Fed. R. Civ. Proc. 56(e)). And we specifically argued that Congress incorporated Article III standing requirements in any determination as to whether a party is an "aggrieved person" under the FISA. *See id*. at 10, n.3.

We went on to discuss the evidence that plaintiffs describe in their First Amended Complaint, *see* Defs. MSJ (Dkt. 49) at 11-20, and explained that the "facts cited by plaintiffs *do not meet their burden of proof on summary judgment*," *see id.* at 14 (emphasis added); *see also*

*id*. at19 (citing *American Civil Liberties Union v. NSA*, 493 F. 3d 644, 691 (6th Cir. 2007) (Gibbons, J.), *cert. denied*, 128 S.Ct. 1334 (2007), for the proposition that, on summary judgment, plaintiffs must set forth by affidavit or otherwise specific facts demonstrating the alleged surveillance). The fact that the Government assumed plaintiffs' public evidence to be true for purposes of summary judgment is precisely how to obtain summary judgment under *Lujan*. *See* 504 U.S. at 561. As plaintiffs note, the Government did not dispute this evidence with classified information, *see* Pls. Opp. at 6 (citing Defs. MSJ at 20, n.7), because we are challenging plaintiffs' *public* evidence as insufficient on summary judgment—and not seeking to create a dispute of fact that could not be resolved on the public record.

For these reasons, plaintiffs' effort to avoid the consequences of the Government's motion for summary judgment, as well as their burden of proof at this stage of the litigation, is quite clearly unfounded. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998) (party who seeks to invoke the jurisdiction of the court bears the burden of establishing Article III standing); *Lujan*, 504 U.S. AT 561 (same).

## II. WHETHER PLAINTIFFS ARE "AGGRIEVED" UNDER THE FISA IS A QUESTION OF ARTICLE III STANDING, AND ARTICLE III REQUIREMENTS MUST BE SATISFIED IN ANY EVENT.

Plaintiffs' separate contention—that "there are two different types of standing" and that "1806(f) standing is not the same as Article III standing," *see* Pls. Opp. at 3-4, is also wrong and ultimately unavailing since Article III requirements must be satisfied in any event. As we have previously pointed out,[3] it is certainly true that a court should consider, as a prudential limitation on its exercise of jurisdiction, whether a "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *See* *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975). But even if a party could show that it falls within an interest protected or regulated by statute, that is not "an affirmative means of establishing standing." *ACLU v. NSA*, 493 F.3d at 677 n.35 (citing *Allen v. Wright*, 468 U.S. 737, 752

---

[3] *See* Government Defendants' Opposition to Plaintiffs' Motion for Discovery under Section 1806(f) (Dkt. 51) ("Defs. 1806(f) Opp.") at 4-6.

(1984); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982)). Instead, the minimum Article III standing requirements still apply and "serve to limit the role of the courts in resolving public disputes." *See Warth,* 422 U.S. at 500. Thus, even if the question of standing as an "aggrieved person" were distinct from the Article III standing inquiry, plaintiffs must still satisfy Article III requirements as well.

In any event, contrary to plaintiffs' contention, *see* Pls. Opp. at 3-5, these standing issues are not distinct. Whether a party can establish that it is "aggrieved" for purposes of the FISA is itself an issue of Article III standing. *See* Defs. 1806(f) Opp. (Dkt. 51) at 4-5. The legislative history of the FISA makes clear that the meaning of an "aggrieved person" is based on standing principles and, specifically, "intended to be *coextensive*, but no broader than, those persons who have *standing* to raise claims under the Fourth Amendment with respect to electronic surveillance." *See* H.R. Rep. No. 95-1283, 95th Cong. 2d Sess., pt.1, at 66 (1978). Plaintiffs cite this passage, *see* Pls. Opp. (Dkt. 50) at 5, but misconstrue its meaning. "Standing" to raise a claim under the Fourth Amendment means the right to invoke the Article III jurisdiction of the federal courts to vindicate a party's constitutional rights against an alleged intrusion.

In *Alderman v. United States*, 394 U.S. 165, 176 n.9 (1969), for example, the Supreme Court held that an individual lacked standing to invoke the exclusionary rule to suppress evidence that was the product of unlawful surveillance of someone else, holding that an only a person against whom an unlawful search was undertaken was "aggrieved" and, thus, had standing to invoke the authority of the Court to suppress that evidence. *See* 394 U.S. at 173-74. The Court in *Alderman* made clear that the term "aggrieved person" in Fed. R. Crim. P. 41(e) (which was incorporated into the FISA) "is no broader than the constitutional rule," *see id*. at 172 n.6,— and the rule is that "[i]n order to qualify as 'a person aggrieved by an unlawful search and seizure' one must have been the victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *See id*. at 173 (quoting *Jones v. United States*, 362 U.S. 257, 261 (1960)). For this reason, "'it is entirely

proper to require" the person challenging the legality of a search to establish "that he himself was the victim of an invasion of privacy." *Id*.

That this rule of standing reflects Article III *constitutional* underpinnings was confirmed by the Supreme Court in *Rakas v. Illinois*, 439 U.S. 128 (1978). There, the issue arose again as to whether certain individuals (passengers in an automobile) had standing to seek suppression of evidence, and in the course of holding that the defendants there did not have the requisite property or privacy interests to challenge the search under the Fourth Amendment, the Court specifically alluded to Article III standing principles underlying the rule set forth in *Jones*:

> There is an aspect of traditional standing doctrine that was not considered in *Jones* and which we do not question. It is the proposition that a party seeking relief must allege such a personal stake or interest in the outcome of the controversy as to assure the concrete adverseness *which Art. III requires*.

*Rakas*, 439 U.S. at 132 n.2 (citations omitted) (emphasis added). The Court also went on to "emphasize[] that nothing we say here casts the least doubt on cases which recognize that, as a general proposition, the issue of standing involves two inquiries: first, whether the proponent of a particular legal right has alleged "injury in fact," and, second, whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties. *Id*. at 139-40 (citing, *inter alia*, *Warth*, 422 U.S. at 499). Thus, there is little doubt that establishing "aggrieved person" status for purpose of alleged Fourth Amendment violations requires satisfaction of Article III standing requirements.

Indeed, plaintiffs concede that they ultimately must establish Article III standing to proceed in this case. *See* Pls. Opp. (Dkt. 50) at 15 ("[i]f the Government's motion is construed as being for summary judgment on plaintiffs' Article III standing, it is necessarily a *factual* attack—meaning plaintiffs must present evidentiary proof of the elements of Article III standing . . .") (citing *Lujan*, 504 U.S. at 561). But plaintiffs then contend that this inquiry should be held in abeyance until resolution of their Section 1806(f) motion and disclosure of the sealed document to them, and then should proceed under Section 1806(f) with the burden of proof shifted to the Government. *See* Pls. Opp. (Dkt. 50) at 13-19. Aside from the impropriety of

utilizing Section 1806(f) in this manner (discussed *infra*), the law is clear that the inquiry into whether plaintiffs are "aggrieved" for purposes of the FISA includes whether they have satisfied Article III requirements, and the Government has put this question at issue now on summary judgment with respect to the public evidence on which plaintiffs rely. Plaintiffs' contention that adherence to Article III requirements to establish whether or not they are "aggrieved persons" under the FISA would require plaintiffs to demonstrate the alleged conduct's *unlawfulness* in order to have standing, *see* Pls. Opp. at 4, is wrong. In order to establish their standing, plaintiffs must bear the burden of proof to show that they have been the target of or subject to the alleged warrantless surveillance under the TSP as a factual matter. As set forth next, plaintiffs clearly have failed to establish their standing.

## III. UNDER ANY STANDARD, PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE AGGRIEVED PERSONS UNDER SECTION 1806(f) AND HAVE STANDING TO PROCEED UNDER ARTICLE III.

Proceeding from their erroneous procedural theories, plaintiffs then present various arguments as to why public record evidence they have proffered allows them to proceed for now in the face of (i) an alleged "facial" challenge to their standing under Section 1806(f), and (ii) an alleged "facial" challenge to their standing under Article III, before arguing that (iii) a "factual" challenge be deferred. *See* Pls. Opp. at 5-13; 13-15; 15-17. But there is only one question before the Court at this stage: have plaintiffs mustered enough evidence on the public record to establish their Article III standing as aggrieved persons under the FISA in the face of the Government's summary judgment motion? The answer is clearly "no." Through their different permutations of argument, plaintiffs acknowledge that their evidence does not actually establish that they were subject to the alleged warrantless surveillance that they challenge in this case. Instead, plaintiffs seek proceed with this lawsuit based on "reasonable inferences" and "logical probabilities." But plaintiffs cannot satisfy Article III standing requirements based on conjecture or speculation. And even if the relevant question at this stage in the litigation were whether plaintiffs' allegations were sufficient to withstand a "facial" attack on the complaint, and whether inferences from public facts were "reasonable" or "logical probabilities"—*i.e.*,

approaches we do not concede apply in the current summary judgment posture— plaintiffs still would not have established their standing. Under any standard, the evidence plaintiffs present does not sufficiently allege the injury at issue, or give rise to a reasonable inference that such an injury exists, let alone factually establish that injury as plaintiffs must at this stage. *See* Defs. 3d MSJ (Dkt. 49) at 11-20; Defs. 1806(f) Opp. (Dkt. 51) at 14-19.

As we have previously set forth,[4] the sum and substance of plaintiffs' factual allegations are that: (i) the Terrorist Surveillance Program ("TSP") targeted communications with individuals reasonably believed to be associated with al Qaeda; (ii) in February 2004, the Government blocked the assets of AHIF-Oregon based on its association with terrorist organizations; (iii) in March and April of 2004, plaintiffs Belew and Ghafoor talked on the phone with an officer of AHIF-Oregon in Saudi Arabia (Mr. al-Buthe) about, *inter alia*, persons linked to bin-Laden; (iv) in the September 2004 designation of AHIF-Oregon, the Office of Foreign Assets Control ("OFAC") of the Treasury Department cited the organization's direct links to bin-Laden as a basis for the designation; (v) the OFAC designation was based in part on classified evidence; and (vi) the FBI stated it had used surveillance in an investigation of the Al-Haramain Islamic Foundation. *See* Pls. Opp. at 8, 12, 14. Plaintiffs specifically allege that interception of their conversations in March and April 2004 formed the basis of the September 2004 designation, *see id*. at 8, and that any such interception was electronic surveillance as defined by the FISA conducted without a warrant under the TSP. *See* Pls. 1806(f) Motion (Dkt. 46) at 17-18.[5]

As a factual matter, these allegations, and the evidence on which they are based,

---

4 *See* Defs. 3d MSJ (Dkt. 49) at 6-8 and Defs. 1806(f) Opp. (Dkt. 51) at 14-19.

5 Plaintiffs also continue to baldly mischaracterize statements made in oral argument by counsel as alleged "evidence" that "lawyers" were allegedly special targets under the TSP. *See* Pls. Opp. at 14, n. 9. We have explained that this statement addressed allegations made by the particular attorney-plaintiffs in the *ACLU* action whose standing was later rejected by the Sixth Circuit. *See* Defs. 3d MSJ (Dkt. 49) at 18-19. In any event, statements of counsel in briefs or oral argument are not evidence. *EOTT Energy Operating Ltd. Partnership v. Winterthur Swiss Ins. Co*., 257 F.3d 992, 999 (9th Cir. 2001).

obviously do not establish that plaintiffs were subject to surveillance at all, let alone electronic surveillance as defined by the FISA or any alleged surveillance conducted without a warrant. *See* Defs. 3d MSJ (Dkt. 49) at 11-20. Even as a matter of allegation, the public record information from which plaintiffs draw inferences is insufficient to establish standing. Labeling speculative inferences as "reasonable" or even "logically probable" does not render them less speculative. Viewed individually or as a whole, the mere fact that the TSP targeted al Qaeda, and that AHIF-Oregon was designated for providing support to al Qaeda or bin-Laden, and that plaintiffs allegedly had a phone conversation with an AHIF-Oregon officer who mentioned bin-Laden associates, does not sufficiently allege, let alone establish, facts that these plaintiffs have been the target of or subject to surveillance, never mind the alleged warrantless surveillance under the TSP at issue here. Indeed, the public evidence neither adequately supports an allegation nor factually establishes that plaintiffs have been the target of or subject to electronic surveillance for purposes of the FISA, *see* 50 U.S.C. § 1801(k), even if that definition is considered in isolation from Article III requirements, as plaintiffs contend it should.

Rather, the only reasonable inference to draw from plaintiffs' public evidence is that it is *possible* that plaintiffs may have been targets of the TSP because they claim to have spoken with an individual associated with an entity associated with al-Qaeda and, thus, were theoretically more likely than others to be subject to the TSP. But that is not sufficient either to allege or factually establish an injury that supports Article III standing in the face of a motion to dismiss or for summary judgment. *See ACLU*, 493 F.3d at 653 ("reasonable . . . well founded belief" of interception under the TSP on the ground, *inter alia*, that plaintiffs represented individuals suspected by the Government of being associated with al Qaeda, and talked to those individuals overseas in connection with that representation, and, thus, were "the types of people targeted by the NSA" under the TSP established only mere possibility of TSP surveillance and not sufficient to establish standing); *see also United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (greater likelihood or risk than the populace at large of being the type of person subject to surveillance insufficient to establish standing). Accordingly, even if on summary

judgment the Court must construe all facts and inferences drawn from those facts in a light most favorable to the non-moving party, *see* Pls. Opp. (Dkt. 50) at 16, the Court cannot fill in speculative gaps by creating new facts that do not exist in the public record on which plaintiffs rely.

In particular, the speculative inferences plaintiffs draw from parts of the public record simply cannot sustain their standing. For example, their contention that FBI Deputy Director Pistole "was admitting the commission of surveillance . . . in 2004—at precisely the time of" the plaintiffs' alleged March/April 2004 telephone discussions with Mr. al-Buthe, which made reference to persons linked to bin-Laden, and "immediately prior" to the September 2004 designation, *see* Pls. Opp. (Dkt. 50) at 12-13, is nothing more than self-serving conjecture that is not reflected in or established by Mr. Pistole's statement. *See* Defs. 3d MSJ at 16-17 (full relevant quote) and Exhibit 13 to Defs. 3d MSJ (Dkt. 49-4) at 5-6. That statement refers to the "Al Haramain Islamic Foundation" based in Saudi Arabia, which had "branches all over the world," including a "U.S. Branch" in established in Oregon in 1997, and indicates further that the FBI discovered links in 2000 between "Al-Haramain" and al Qaeda, that "Al-Haramain" sent money to Chechnya to support al Qaeda fighters, and that "surveillance" was used in the FBI investigation. *See id*. It is impossible to reasonably infer, let alone establish, from anything in this statement that *plaintiffs* have been subject to the alleged surveillance, since it does not indicate when, where, how, or against whom any surveillance was utilized by the FBI, let alone what kind of surveillance or under what authority. Similarly, the Treasury Department's September 2004 press statement on the designation of AHIF-Oregon calls attention to connections found by the United Nations between AHIF's other worldwide branches and al Qaeda, *see* Exhibit 9 to Defs. MSJ (Dkt. 49-3 at 208), and in any event its reference to direct links between AHIF-Oregon and bin-Laden does not support a "reasonable inference," let alone establish, that the designation was based on the alleged surveillance of the plaintiffs.[6/]

---

[6] As plaintiffs note, *see* Pls. Opp. (Dkt. 50) at 12, n.5, they have filed a separate lawsuit challenging the designation of AHIF-Oregon as a "Specially Designated Global Terrorist" ("SDGT") and, in particular, the use of evidence allegedly derived from the alleged surveillance

Accordingly, plaintiffs' contention that standing may be found where there are "equally probable inferences" to be drawn from circumstantial evidence, *see* Pls. Opp. (Dkt. 50) at 10, is unavailing. As the very authority on which plaintiffs rely indicates, "an inference is not reasonable 'if it is only a guess or possibility,' for such an inference is not based on the evidence but is pure conjecture or speculation." *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1324 (11th Cir. 1983) (citation omitted). Assuming, *arguendo*, that rules regarding when inferences can properly be drawn from circumstantial evidence are applicable to a question of Article III standing, *Daniels* confirms that reliance on conjecture, and the mere possibility of injury, is not sufficient.[7/]

---

at issue in this case and purportedly reflected in the sealed document. *See* Complaint (Dkt. 1) ¶ 45 in *Al-Haramain Islamic Foundation et al. v. Dep't. of Treasury*, (07-cv-1115-KI) (D. Or.) (alleging that the inadvertently disclosed classified document related to intercepted communications between Mr. Al-Buthe and plaintiffs' attorneys in Washington, D.C.). On November 6, 2008, Judge King of the District of Oregon issued a decision that, *inter alia*, granted summary judgment for the Government with respect to OFAC's February 2008 redesignation of AHIF-Oregon, which did not rely on the classified sealed document. *See Al-Haramain Islamic Foundation et al. v. Dep't. of Treasury*, slip. op. at **20-26 (Dkt. 95), 07-cv-1115-KI (Nov. 6, 2008, D. Or.). Judge King also dismissed plaintiffs' challenge in that case to the alleged use of alleged surveillance evidence. *See id* at 16-17 n. 7. The court found that OFAC's 2008 re-designation was supported by other evidence indicating that AHIF-Oregon, as a branch of AHIF of Saudi Arabia, had supported other SDGTs, including that Mr. Al-Buthe had personally delivered $150,000 to AHIF from AHIF-Oregon's bank account for support of the Chechen mujahideen. *See id*. at ** 25-26. The court also found that OFAC reached a rational conclusion that AHIF-Oregon was under Mr. Al-Buthe's ownership or control, and that "[t]here is evidence in the classified record to give the government reasonable concern about Al-Buthe's activities." *See id*. at * 25. The court did not enter final judgment pending further briefing on other issues. *See id*. at * 62.

[7] *Daniels* concerned whether circumstantial evidence supported an inference of negligence in a case involving the death of a patient who wandered off from a nursing home, and the court rejected as insufficient inferences that were drawn from circumstantial evidence in that case. *See* 692 F.2d at 1326-27; *see also Poppell v. City of San Diego*, 149 F.3d 961, 954 (9th Cir. 1998) (in a case where "motive-based constitutional claims" of malicious and selective prosecution "depends entirely on inferences," the court noted that "[t]he *essential requirement is that mere speculation not be allowed to do duty for probative facts* after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.") (citation omitted) (emphasis added).

## IV. SECTION 1806(F) DOES NOT PERMIT PLAINTIFFS TO DISCOVER WHETHER OR NOT THEY HAVE BEEN SUBJECT TO THE ALLEGED SURVEILLANCE IN AN ATTEMPT TO ESTABLISH STANDING.

Recognizing that they have not and cannot establish their standing as a factual matter based on the public record they advance, plaintiffs are left to argue that they should not be required to do so. Rather, they request that any factual adjudication of whether they have Article III standing be held "in abeyance" until after the Court decides their motion under Section 1806(f) to grant them access to the sealed document, and then that the Court should proceed to hold an evidentiary hearing "under secure conditions as provided by Section 1806(f)" if necessary, whereby the burden of proof can be shifted to the Government to disprove their standing. *See* Pls. Opp. (Dkt. 50) at 15-21. This approach has it exactly backwards, disregards the Court's July 2 Order, and is contrary to law.

First, of course, the Court held that plaintiffs must establish whether they are aggrieved persons *before* any proceedings under Section 1806(f). *See Al-Haramain*, 564 F. Supp. 2d at 1134. The Court also held that plaintiffs cannot use the classified sealed document to attempt to establish their standing, but must do so based on public information only. *See id*.

Second, the Government has clearly challenged the factual basis of plaintiffs' standing based on the public evidence proffered. That issue is before the Court now. Plaintiffs' procedural arguments for avoiding the issue are meritless, and there is nothing to hold in "abeyance"—plaintiffs were obligated to satisfy their burden of proof on standing based on public evidence, and, since they have not done so, summary judgment should be entered for the Government.[8]

---

[8] Plaintiffs contend that any factual challenge to their standing necessarily means there is a dispute of fact precluding summary judgment. *See* Pls. Opp. (Dkt. 50) at 15-16. That is not so with respect to the Government's pending motion, which seeks summary judgment based on plaintiffs' failure to establish their standing as a factual matter with public evidence. And with respect to whether there are any disputed facts concerning the sealed document or related materials on which plaintiffs seek to rely, *see id*. at 15 and n.8, that information is not before the Court under the July 2 Order, and for the reasons set forth herein, any application of Section 1806(f) to adjudicate the issue of standing would not be proper and could not occur without risking the very harm to national security identified by the Ninth Circuit. *See Al-Haramain Islamic Foundation et al. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007) (finding the basis for the

Third, again as the Government has previously set forth, Section 1806(f) does not apply to adjudicating factual disputes concerning whether a person is "aggrieved" under the FISA. *See* Defs. 3d MSJ (Dkt. 49) at 20-23; *see also* Defs. 2d MSJ (Dkt. 17) at 15-22. That provision does not shift the burden of proof to the Government to disclose information concerning intelligence sources and methods. *See* Defs. 1806(f) Opp. (Dkt. 51) at 7-14. The burden of proof with respect to standing is on plaintiffs and plaintiffs alone, and if they cannot meet it because information is properly protected as privileged, the case must be dismissed. *See id*. at 14; *see also Al-Haramain*, 507 F.3d at 1205; *ACLU*, 493 F.3d at 683.[9]

Finally, if this case is not dismissed now for lack of standing, serious constitutional questions concerning application of Section 1806(f) will arise in light of the Court's July 2 ruling that the state secrets privilege is preempted by the FISA and any attempt to apply Section 1806(f) in further proceedings. The evidentiary proceedings that plaintiffs demand would not only risk improper disclosure of information successfully upheld as privileged, plaintiffs demand that they be used improperly to *require* disclosure to them—and not just disclosure of the sealed document, but disclosure of whether or not plaintiffs had been subject to surveillance and, if so, whether any such surveillance occurred under the TSP or the FISA. Such a course would quite clearly be erroneous. *See* Defs. 1806(f) Opp. (Dkt. 51) at 22-23. And even apart from plaintiffs' demand for access to state secrets, proceedings under Section 1806(f) that may be purely *ex parte*, *in camera* still would inherently risk the improper disclosure of privileged information. *See id.* at 20; Defs. 3d MSJ (Dkt. 49) at 20-21.[10]

---

Government's privilege assertion to be "exceptionally well documented" in "[d]etailed statements.")

[9] The authority cited by plaintiffs for shifting the burden of proof where facts are held within the exclusive control of the Government is inapposite, *see* Defs. 1806(f) Opp. (Dkt. 51) at 14, n.8, and does not apply to either the state secrets privilege or proceedings under Section 1806(f).

[10] Plaintiffs' contention that the Court could proceed to determine the lawfulness of any alleged surveillance based on facts purportedly presented to the Court in the state secrets privilege is meritless. Section 1806(f) applies solely where the lawfulness of alleged surveillance must be determined in connection with the use of evidence of acknowledged

These concerns can and should be avoided by finding that plaintiffs have failed to establish their standing with public evidence, as they were directed by the Court. Otherwise, the Government submits that further appellate review would be warranted to avoid destruction of a national security privilege already upheld in this case that would result from attempting to proceed under statutory provisions that do not apply and cannot safely be applied in the circumstances presented here.[11]

**CONCLUSION**

For the foregoing reasons, as well as those set forth in the Government Defendants' Third Motion to Dismiss or, in the Alternative, for Summary Judgment, the Court should dismiss the First Amended Complaint or, in the alternative, grant summary judgment for the Government Defendants.

Dated: November 14, 2008

Respectfully Submitted,

GREGORY G. KATSAS
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Principal Deputy Associate Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

---

surveillance to decide an issue of suppression or taint, and the Government may choose not to rely on such evidence in order to protect intelligence sources and methods. *See* Defs. 1806(f) Opp. (Dkt. 51) at 21-22, n.14.

[11] Plaintiffs' contention that certification under 28 U.S.C. § 1292(b) would be untimely at this stage because the Government did not seek to appeal the Court's July 2 decision is specious. The Court's Order dismissed the plaintiffs' lawsuit. There was nothing for the Government to appeal and no need to appeal. If the Court decides to proceed under Section 1806(f), further review would be warranted, but that circumstance would not arise if the Court entered summary judgment for the Government dismissing this case for lack of standing.

*s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

ALEXANDER K. HAAS
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

*Attorneys for the Government Defendants*