CINDY COHN
cindy@eff.org
LEE TIEN
KURT OPSAHL
KEVIN S. BANKSTON
CORYNNE MCSHERRY
JAMES S. TYRE
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Counsel For AT&T Class Plaintiffs And
Co-Lead Coordinating Counsel

RICHARD R. WIEBE (SBN 121156)
LAW OFFICE OF RICHARD R. WIEBE
425 California Street, Suite 2025
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

Counsel for AT&T Class Plaintiffs

ARAM ANTARAMIAN
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone: (510) 841-2369

Counsel For AT&T Class Plaintiffs

HARVEY GROSSMAN
ADAM SCHWARTZ
ROGER BALDWIN FOUNDATION OF
ACLU
180 North Michigan Avenue
Suite 2300
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 201-9760

Counsel For AT&T Class Plaintiffs And
Co-Lead Coordinating Counsel

ANN BRICK
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Counsel for Plaintiffs in *Campbell v. AT&T* and
*Riordan v. Verizon Communications Inc.*

[Additional Counsel on Last Page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION, MDL No. 1791<br><br>This Document Relates To: All Cases Except: *Al-Haramain Islamic Foundation, Inc. v. Bush*, No. 07-0109; *Center for Constitutional Rights v. Bush*, No. 07-1115; *Guzzi v. Bush*, No. 06-06225; *Shubert v. Bush*, No. 07-0693; *Clayton v. AT&T Commc'ns of the Southwest*, No. 07-1187; *U.S. v. Adams*, No. 07-1323; *U.S. v. Clayton*, No. 07-1242; *U.S. v. Palermino*, No. 07-1326; *U.S. v. Rabner*, No. 07-1324; *U.S. v. Volz*, No. 07-1396 | MDL Docket No. 06-1791 VRW<br><br>**MDL PLAINTIFFS' REPLY TO BRIEFS OF THE CARRIERS AND OF THE UNITED STATES SEEKING TO APPLY 50 U.S.C. § 1885a TO DISMISS THESE ACTIONS**<br><br>Date: December 2, 2008<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge: The Hon. Vaughn R. Walker |

Dockets.Justia.com

**TABLE OF CONTENTS**

                                                                                         **Page**

INTRODUCTION ................................................................................ 1

ARGUMENT .................................................................................... 1

I.    SECTION 802 CANNOT TRUMP THE CONSTITUTION ..................... 1

        A.   Section 802 Prevents Courts From Deciding Whether The Carriers Violated The Constitution ............................................................ 2

        B.   The Possibility Of An Action Against The Government Cannot Justify Foreclosure Of Plaintiffs' Constitutional Claims Against The Carriers ................................................................................. 5

II.   SECTION 802 VIOLATES THE DOCTRINE OF SEPARATION OF POWERS ............................................................................... 7

        A.   Section 802 Violates The Lawmaking Procedures Of Article I, Section 7 By Giving The Attorney General Plenary Power To Change The Law Governing Plaintiffs' Lawsuits .......................... 7

        B.   The Government And The Carriers Misdescribe Section 802's Terms ........ 9

        C.   Other Statutes In Which Congress Has Unconditionally Modified Or Eliminated A Cause Of Action Are Irrelevant ............................... 11

        D.   Section 802 Violates The Nondelegation Doctrine By Providing No Intelligible Principle To Govern The Attorney General's Plenary Power To Change The Law Governing Plaintiffs' Actions .................. 13

        E.   Section 802 Unconstitutionally Permits The Other Branches To Dictate The Outcome-Determinative Facts In Individual Lawsuits ................. 14

III.  SECTION 802 VIOLATES DUE PROCESS ..................................... 16

IV.  THE SECRECY PROVISIONS OF SECTION 802 ARE UNCONSTITUTIONAL ............................................................... 22

V.   THE COURT MAY CONSIDER PLAINTIFFS' EVIDENCE ................. 26

        A.   Plaintiffs Have Provided Admissible Evidence ........................... 28

        B.   Plaintiffs Need Not Provide Evidence Admissible At Trial At This Stage .................................................................................. 30

        C.   The Government Has Conceded Key Legal Issues Relevant To The Evaluation Of The Attorney General's Certification .................... 32

VI.  THE GOVERNMENT HAS NOT MADE ITS CASE WITH ADMISSIBLE EVIDENCE ............................................................................. 33

CONCLUSION .............................................................................. 35

No. M-06-01791-VRW     MDL Plaintiffs' Reply to Briefs of the Carriers and of the United States Seeking to Apply 50 U.S.C. § 1885a to Dismiss These Actions

# TABLE OF AUTHORITIES

Pages(s)

## Cases

*Agyeman v. Corr. Corp. of Am.*,
   390 F.3d 1101 (9th Cir. 2004) ............................................................. 6

*Alaska Airlines v. Brock*,
   480 U.S. 678 (1984) ............................................................................ 7

*Am. Fed. Gov't Employees v. Stone*,
   502 F.3d 1027 (9th Cir. 2007) ............................................................. 3

*American-Arab Anti-Discrimination Comm. v. Reno*,
   70 F.3d 1045 (9th Cir. 1995) ............................................................. 21

*Anniston Mfg. Co. v. Davis*,
   301 U.S. 337 (1937) ........................................................................ 5, 6

*Assoc. Press v. U.S. Dist. Ct.*,
   705 F.2d 1143 (9th Cir. 1983) ........................................................... 22

*Bivens v. Six Unknown Named Agents*,
   403 U.S. 388 (1971) ..................................................................... 5, 6, 7

*Bob Jones Univ. v. Simon*,
   416 U.S. 725 (1974) ............................................................................ 3

*Boumediene v. Bush*,
   __ U.S. __, 128 S. Ct. 2229 (2008) ..................................................... 4

*Brock v. Roadway Express, Inc.*,
   481 U.S. 252 (1987) .......................................................................... 20

*Burch v. Regents of Univ. of Calif.*,
   433 F. Supp. 2d 1110 (E.D. Cal. 2006) ............................................. 28

*Burrill v. Locomobile Co.*,
   258 U.S. 34 (1922) .......................................................................... 5, 6

*Bush v. Lucas*,
   462 U.S. 367 (1983) ............................................................................ 6

*Carlson v. Green*,
   446 U.S. 14 (1980) ............................................................................. 5

*Church of Scientology of San Francisco v. I.R.S.*,
   991 F.2d 560 (9th Cir. 1993) ......................................................... 31, 32

-iii-

*City of New York v. Beretta,*
    524 F.3d 384 (2d Cir. 2008) ................................................................ 11

*Clark v. Capital Credit & Collection Serv., Inc.,*
    460 F.3d 1162 (9th Cir. 2006) .............................................................. 31

*Clinton v. City of New York,*
    524 U.S. 417 (1998) ..................................................................... passim

*Concrete Pipe & Prods. v. Constr. Laborers Pension Trust,*
    508 U.S. 602 (1993) ............................................................................ 16

*Corr. Services Corp. v. Malesko,*
    534 U.S. 61 (2001) ................................................................................ 6

*Currin v. Wallace,*
    306 U.S. 1 (1939) ................................................................................ 13

*Detroit Free Press v. Ashcroft,*
    303 F.3d 681 (6th Cir. 2003) .............................................................. 24

*Doe v. Ashcroft,*
    334 F. Supp. 2d 471 (S.D.N.Y. 2004) ................................................ 25

*Doe v. Gonzales,*
    386 F. Supp. 2d 66 (D. Conn. 2005) ................................................... 25

*Doe v. Gonzales,*
    449 F.3d 415 (2d Cir. 2006) ............................................................... 25

*Dotson v. Griesa,*
    398 F.3d 156 (2d Cir. 2005) ................................................................. 3

*Ducharme v. Merrill-National Lab.,*
    574 F.2d 1307 (5th Cir. 1978) ............................................................ 12

*Eastman Kodak Co. v. Image Tech. Serv., Inc.*
    504 U.S. 451 (1992) ........................................................................... 30

*Ecology Ctr. v. Castaneda,*
    426 F.3d 1144 (9th Cir. 2005) ....................................................... 15, 16

*Ecology Ctr. v. Castaneda,*
    No. CV-02-200-M (D. Mont. 2004) .................................................... 15

*Edwards v. Kearzey,*
    96 U.S. 595 (1878) ............................................................................... 4

*Ex parte Peterson,*
    253 U.S. 300 (1920) ........................................................................... 32

-iv-

No. M-06-01791-VRW    MDL Plaintiffs' Reply to Briefs of the Carriers and of
the United States Seeking to Apply 50 U.S.C. § 1885a to
Dismiss These Actions

*Fields v. Legacy Health Sys.*,
 413 F.3d 943 (9th Cir. 2005)........................................................................ 12, 17

*Flores-Miramonte v. INS*,
 212 F.3d 1133 (9th Cir. 2000) ................................................................................ 5

*Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*,
 493 U.S. 331 (1990) ................................................................................................ 3

*Fraser v. Goodale*,
 342 F.3d 1032 (9th Cir. 2003) .............................................................................. 30

*Globe Newspaper Co. v. Super. Ct.*,
 457 U.S. 596 (1982) ....................................................................... 23, 24, 25, 26

*Gordon v. Kidd*,
 971 F.2d 1087 (4th Cir. 1992) .............................................................................. 30

*Grimesy v. Huff*,
 876 F.2d 738 (9th Cir. 1989) ................................................................................ 17

*Grove Fresh Distrib. v. Everfresh Juice Co.*,
 24 F.3d 893, 898 (7th Cir. 1994) .......................................................................... 22

*Hamdi v. Rumsfeld*,
 542 U.S. 507 (2004) .............................................................................................. 21

*Heffelfinger v. Electronic Data Sys. Corp.*,
 __ F. Supp. 2d __, 2008 WL 2444690 (C.D. Cal. 2008) ...................................... 33

*Hepting v. AT&T Corp.*,
 439 F. Supp. 2d 974 (N.D. Cal. 2006) .............................................................. 4, 23

*Hill v. Wallace*,
 259 U.S. 44 (1922) .................................................................................................. 7

*Hortonville Jt. Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*,
 426 U.S. 482 (1976) .............................................................................................. 19

*I.N.S. v. Chadha*,
 462 U.S. 919 (1983) ............................................................................................ 1, 8

*In re Consol. United States Atmos. Testing Litig. v Livermore Labs*,
 820 F.2d 982 (9th Cir. 1987) .......................................................................... 12, 17

*In re Copley Press*,
 518 F.3d 1022 (9th Cir. 2008) .............................................................................. 24

*In re Motion for Release of Court Records*,
 526 F. Supp. 2d 484 (FISA Ct. 2007) ............................................................. 23, 24

-v-

No. M-06-01791-VRW    MDL Plaintiffs' Reply to Briefs of the Carriers and of
                       the United States Seeking to Apply 50 U.S.C. § 1885a to
                       Dismiss These Actions

*In re Washington Post,*
   807 F.2d 383 (4th Cir. 1986)................................................................ 24

*ITT Community Dev. Corp. v. Barton,*
   569 F.2d 1351 (5th Cir. 1978)............................................................. 32

*Joint Anti-Fascist Comm. v. McGrath,*
   341 U.S. 123 (1951)............................................................................. 21

*Kasza v. Browner,*
   133 F.3d 1159 (9th Cir. 1998)............................................................. 25

*Kasza v. Whitman,*
   325 F.3d 1178 (9th Cir. 2003)............................................................. 25

*Keene Corp. v. U.S.,*
   508 U.S. 200 (1993)............................................................................. 27

*Levine v. U.S. Dist. Court,*
   764 F.2d 590 (9th Cir. 1985)............................................................... 26

*Logan v. Zimmerman Brush Co.,*
   455 U.S. 422 (1982)............................................................................. 17

*Lynn v. Regents of Univ. of Cal.,*
   656 F.2d 1337 (9th Cir. 1981)............................................................. 21

*Lyons v. Agusta,*
   252 F.3d 1078 (9th Cir. 2001)............................................................. 12

*Marshall Field & Co. v. Clark,*
   143 U.S. 649 (1892)............................................................................. 13

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise,*
   501 U.S. 252 (1991)............................................................................... 8

*Mitchell v. Clark,*
   110 U.S. 633 (1884)............................................................................... 3

*Morgan v. U.S.,*
   304 U.S. 1 (1938)............................................................................... 21

*North Jersey Media Group v. Ashcroft,*
   308 F.3d 198 (6th Cir. 2002)............................................................... 24

*Ornelas v. U.S.,*
   517 U.S. 690 (1996)............................................................................... 4

*Owens v. Republic of the Sudan,*
   531 F.3d 884 (D.C. Cir. 2008)....................................................... 12, 13

-vi-

*Press Enterprise Co. v. Super. Ct.*,
   478 U.S. 1 (1986)................................................................................ 23, 24

*Producers Releasing Corp. de Cuba v. PRC Pictures, Inc.*,
   176 F.2d 93 (2d Cir. 1949)....................................................................... 32

*Publicker Indus. v. Cohen*,
   733 F.2d 1059 (3d Cir. 1984)................................................................... 24

*Reno v. A.C.L.U.*,
   521 U.S. 844 (1997).................................................................................. 7

*Richmond Newspapers Inc. v. Virginia*,
   448 U.S. 555 (1980)................................................................................ 23

*Robertson v. Seattle Audubon Society*,
   503 U.S. 429 (1992)................................................................................ 15

*Rushford v. New Yorker Magazine, Inc.*,
   846 F.2d 249 (4th Cir. 1988)................................................................... 24

*Ryan v. Comm'r of Soc. Sec.*,
   528 F.3d 1194 (9th Cir. 2008)................................................................. 19

*S.E.C. v. Merrill Scott & Associates, Ltd.*,
   505 F. Supp. 2d 1193 (D. Utah 2007)...................................................... 28

*Saucier v. Katz*,
   533 U.S. 194 (2001).............................................................................. 3, 4

*Seattle Times Co. v. U.S. Dist. Ct.* (9th Cir. 1988),
   845 F.2d 1513.................................................................................... 23, 24

*Steadman v. S.E.C.*,
   450 U.S. 91 (1981).............................................................................. 4, 18

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987)................................................................... 30

*Times Mirror Co. v. U.S.*,
   873 F.2d 1210 (9th Cir. 1989)................................................................. 24

*Tulsa Prof'l Collection Services, Inc. v. Pope*,
   485 U.S. 478 (1988)................................................................................ 17

*Twardowski v. American Airlines*,
   535 F.3d 952 (9th Cir. 2008)................................................................... 30

*U.S. v. Aref*,
   533 F.3d 72 (2d Cir. 2008)...................................................................... 25

-vii-

*U.S. v. Decoud,*
    456 F.3d 996 (9th Cir. 2006)............................................................... 28

*U.S. v. Dibble,*
    429 F.2d 598 (9th Cir. 1970)............................................................... 34

*U.S. v. Fausto,*
    484 U.S. 439 (1988)............................................................................ 30

*U.S. v. Jackson,*
    390 U.S. 570 (1968).............................................................................. 7

*U.S. v. Klein,*
    80 U.S. 128 (1872)............................................................................. 15

*U.S. v. Moussaoui,*
    65 Fed. Appx. 881 (4th Cir. 2003)..................................................... 25

*U.S. v. Nixon,*
    418 U.S. 683 (1974)............................................................................ 31

*U.S. v. Nobles,*
    422 U.S. 225 (1975)............................................................................ 32

*U.S. v. U.S. Dist. Ct. (Keith),*
    407 U.S. 297 (1972).............................................................................. 4

*Universal Camera Corp. v. N.L.R.B.,*
    340 U.S. 474 (1951)............................................................................ 19

*Webster v. Doe,*
    486 U.S. 592 (1988)............................................................................ 31

*Westmoreland v. Columbia Broad. Sys., Inc.,*
    752 F.2d 16 (2d Cir. 1984)................................................................. 22

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001)............................................................................ 14

*Withrow v. Larkin,*
    421 U.S. 35 (1975).............................................................................. 20

*Yakus v. U.S.,*
    321 U.S. 414 (1944)............................................................................ 14

**Statutes**

10 U.S.C. § 2798................................................................................... 12

15 U.S.C. § 6601-§ 6617....................................................................... 12

-viii-

No. M-06-01791-VRW    MDL Plaintiffs' Reply to Briefs of the Carriers and of
                      the United States Seeking to Apply 50 U.S.C. § 1885a to
                      Dismiss These Actions

15 U.S.C. § 7902 ............................................................................................. 11, 12

18 U.S.C. § 1001 ................................................................................................... 29

18 U.S.C. § 2709 ............................................................................................. 25, 26

28 U.S.C. § 2402 ..................................................................................................... 5

28 U.S.C. § 2679(b)(1) .......................................................................................... 12

28 U.S.C. § 2679(d)(1) .......................................................................................... 12

28 U.S.C. § 2679(d)(3) .......................................................................................... 12

29 U.S.C. § 1854(d)(1) .......................................................................................... 12

29 U.S.C. § 216 ...................................................................................................... 12

29 U.S.C. § 252 ...................................................................................................... 12

49 U.S.C. § 10701(f) .............................................................................................. 12

50 U.S.C. § 1806(f) .......................................................................................... 29, 32

50 U.S.C. § 1885a ............................................................................................ passim

50 U.S.C. § 1885a(a) ....................................................................................... passim

50 U.S.C. § 1885a(a) .............................................................................................. 33

50 U.S.C. § 1885a(a)(3) ......................................................................................... 33

50 U.S.C. § 1885a(a)(5) ..................................................................................... 2, 26

50 U.S.C. § 1885a(b) ..................................................................... 21, 26, 27, 31

50 U.S.C. § 1885a(b)(1) .......................................................... 15, 18, 26, 34

50 U.S.C. § 1885a(b)(2) ......................................................................................... 34

50 U.S.C. § 1885a(c) ....................................................................................... passim

50 U.S.C. § 1885a(c)(2) ......................................................................................... 21

50 U.S.C. § 1885a(d) ....................................................................................... passim

50 U.S.C. § 1885a(g) ............................................................................................... 2

50 U.S.C. § 1885a(h) ........................................................................................ 30, 31

50 U.S.C. § 2783(b) ............................................................................................... 12

-ix-

50 U.S.C. § 2783(c) .................................................................................. 12

**Rules**

Fed. R. Civ. P. 26 ..................................................................................... 30

Fed. R. Civ. P. 26(b)(1) ............................................................................ 31

Fed. R. Civ. P. 56 ..................................................................................... 30

Fed. R. Civ. P. 56(f) ............................................................................ 31, 32

Fed. R. Civ. P. 56(f)(2) ............................................................................. 32

Fed. R. Evid. 103(a)(1) ............................................................................. 28

Fed. R. Evid. 801(d)(2) ............................................................................. 29

Fed. R. Evid. 804(a)(1) ............................................................................. 29

Fed. R. Evid. 804(b)(3) ............................................................................. 29

Fed. R. Evid. 807 ..................................................................................... 29

**Other Authorities**

BLACK'S LAW DICTIONARY
   (7th Ed., Abridged, 2000) ..................................................................... 2

S. Rep. 110-209 (2007) ......................................................................... 7, 35

U.S. CONSTITUTION, amend. I .................................................. 22, 23, 24, 25

U.S. CONSTITUTION, art. I, § 1 ..................................................................... 8

U.S. CONSTITUTION, art. I, § 7 ............................................................... 7, 8, 9

U.S. CONSTITUTION, art. III ....................................................................... 24

No. M-06-01791-VRW    MDL PLAINTIFFS' REPLY TO BRIEFS OF THE CARRIERS AND OF
THE UNITED STATES SEEKING TO APPLY 50 U.S.C. § 1885a TO
DISMISS THESE ACTIONS

## INTRODUCTION

Section 802 of the Foreign Intelligence Surveillance Act of 1978 ("FISA") Amendments Act of 2008, ("FISAAA"), codified at 50 U.S.C. § 1885a, is a blatant attempt to prevent this Court—and every other court, federal or state—from deciding whether the carrier defendants conducted dragnet, warrantless surveillance of millions of Americans' communications and communications records in violation of the Constitution and numerous statutes.

The carriers and the government portray section 802 as merely a decision by Congress about plaintiffs' remedies; after all, they say, plaintiffs may instead sue the government. But statutes cannot override the constitutional protections all Americans enjoy from the government's agents any more than the government itself can. This attempt to destroy plaintiffs' constitutional claims alone dooms section 802. Moreover, the sham proceeding established by section 802 violates due process in myriad ways.

But section 802 is far, far more: it is an attempt to manipulate the judiciary and subvert the Constitution. Underlying the Constitution lies the bedrock, structural principle of the separation of powers, by which the Framers sought "to assure as nearly as possible, that each branch of government would confine itself to its assigned responsibility. The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." *I.N.S. v. Chadha*, 462 U.S. 919, 951 (1983).

Section 802 crosses those limits by explicitly giving the Attorney General the power to partially repeal previously enacted law, delegating standardless discretion to the Attorney General, and requiring courts to accept the Attorney General's factual findings without independent judicial review. It also violates the Constitution by giving the Attorney General the unilateral authority to gag the court and hide court processes from the plaintiffs and the public. Accordingly, this Court must find section 802 unconstitutional.

## ARGUMENT

### I.     Section 802 Cannot Trump The Constitution

The Court should strike down section 802 because it would extinguish plaintiffs' substantive constitutional claims against the carriers without permitting any court to assess whether

-1-

the carriers violated the Constitution.[1]  The carriers agree that under section 802 whether "the alleged surveillance violated the Fourth Amendment ... is irrelevant ... since nothing about the government's motion requires the Court to assess the legality of any such surveillance." Carriers' Br. (Dkt. 506) at 8, n.13. Section 802 therefore forecloses adjudication of plaintiffs' claims that the *carriers* are committing massive constitutional violations. It also creates a model for barring any judicial relief against private entities violating the Constitution at the government's behest.

The carriers respond with two specious arguments. First, they argue that section 802 neither creates a new constitutional standard nor allows the Attorney General to override judicial interpretations of the Constitution. But section 802 overrides the scope and substance of constitutional protections through newly created statutory "defenses" to constitutional claims.[2] Indeed, the carriers' argument is belied by their other arguments that section 802 works a *substantive* change in the underlying law.[3]

Second, implicitly conceding plaintiffs' main point—that Congress may not abrogate constitutional claims—the carriers argue that plaintiffs may still sue the government. Yet, tellingly, they cite no authority providing that Congress can eliminate all claims for relief against the carriers simply because other claims may exist against the government.

## A.    Section 802 Prevents Courts From Deciding Whether The Carriers Violated The Constitution

The carriers argue that section 802 "merely alters the remedies available against" them, Carriers' Br. at 7:14, and does not prevent courts from interpreting the Constitution. This argument

---

[1] Section 802 also eliminates state jurisdiction over these claims. *See* 50 U.S.C. § 1885a(g).

[2] *See* Gov't Reply at 5, n.4 (section 802 "establish[ed] a defense" to plaintiffs' constitutional claims). Section 802(a), however, does not create affirmative defenses. An affirmative defense is "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff or prosecutor's claim, even if all the allegations in the complaint are true." BLACK'S LAW DICTIONARY 343 (7th Ed., Abridged, 2000). Section 802(a), by contrast, (1) is asserted at the sole discretion of the Attorney General; (2) is inoperative, even if the underlying facts are true, *unless* asserted by the Attorney General; and (3) depends in part upon the relevant allegations in the complaint being false (especially with respect to subsection 802(a)(5)).

[3] *See* Carriers' Br. at 8-10, 10:7-9 ("§ 802 articulates rules … that work a change in the law"), 10:18-20 ("the substantive change in the law governing carrier liability for alleged assistance to the U.S. intelligence community that is reflected in the new immunities … is plain").

-2-

is sophistry. Elsewhere, the carriers and the government agree that section 802 eliminates constitutional inquiry. Carriers' Br. at 8, n.13; Corrected Gov't Reply Br. (Dkt. 560) ("Gov't Reply") at 5-6, n.5. Indeed, this is exactly what the Attorney General seeks from FISAAA: to eliminate a "merits adjudication of the plaintiffs' constitutional claims." Summary of Evidence (Dkt. 481) ("Summary") at 60:25-28. Thus, the carriers' argument is that courts may interpret the Constitution in other cases—but not this one.

Section 802 is therefore invalid. Because Congress can never authorize violations of the Constitution, section 802 cannot shield the carriers' unconstitutional acts. An immunity grant can only shield acts that, though unlawful when committed, could have been made legal had Congress "acted ... in advance" to authorize them. *Mitchell v. Clark*, 110 U.S. 633, 640 (1884).

Section 802's elimination of constitutional review of the carriers' acts distinguishes the qualified immunity cases, where courts first decide the merits of a constitutional claim and only then decide whether *damages* liability is barred because the right was not clearly established at the time of violation.[4] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[5] Further distinguishing them is the fact that, under qualified immunity, violations of clearly established constitutional rights, like those

---

[4] The carriers' argument that Congress "could block constitutional claims for *equitable* relief against the carriers," Carriers' Br. at 6:5 & n. 10, suffers from a similar flaw. For instance, even under the Anti-Injunction Act courts have maintained control over equitable relief, including finding many exceptions. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 742-46 (1974) (detailing history). The Tax Injunction Act, which prohibits federal injunctions against the collection of state taxes, rests on considerations of federalism absent here, and assumes that the same claims can be litigated in state courts. *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 338 (1990); *id.* at 339 (the result "might well" be different were there no state remedy). Finally, *Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005), is irrelevant. The plaintiff in *Dotson* could obtain the precise equitable relief at issue through the judiciary's administrative process. *Id.* at 180-181. The Ninth Circuit distinguished *Dotson* on precisely this basis, noting that "the employee had other remedial mechanisms available." *Am. Fed. Gov't Employees v. Stone*, 502 F.3d 1027, 1038 (9th Cir. 2007) (statutory scheme governing TSA security screeners did not preclude judicial review of screeners' constitutional challenges to their termination); *id.* ("The power of the federal courts to grant equitable relief for constitutional violations has long been established."). In short, the defendants cite no case, and plaintiffs know of none, where a statute denying all judicial review of constitutional claims against a particular defendant was upheld in the absence of alternative proceedings that could provide the relief sought against that defendant.

[5] The Supreme Court currently has under submission *Pearson v. Callahan*, No. 07-751 (argued Oct. 14, 2008) in which it is considering modifying or overruling the *Saucier* test.

-3-

alleged by plaintiffs, are always adjudicated on the merits. *See Hepting v. AT&T Corp.,* 439

F. Supp. 2d 974, 1010 (N.D. Cal. 2006) ("AT&T's alleged actions here violate the constitutional

rights clearly established in *Keith*."). Nor is section 802 like a statute of limitations. Congressional

power over procedures does not allow Congress to exceed constitutional limits. *Steadman v.*

*S.E.C.,* 450 U.S. 91, 96 (1981) (courts defer to Congress's power to prescribe procedural rules in

federal courts "absent countervailing constitutional constraints"); *Edwards v. Kearzey*, 96 U.S. 595,

603 (1878) (unreasonably short statutes of limitations "designed to defeat the remedy" are

unconstitutional).

Section 802 not only deprives plaintiffs of their constitutional claims against the carriers,

but also prevents the constitutional adjudication that keeps government within the bounds of law.

*See Saucier,* 533 U.S. at 201 (requiring courts to rule on "whether a constitutional right was

violated on the premises alleged" so that the court may "set forth principles which will become the

basis for a holding that a right is clearly established," even if there ultimately is no liability).

Provisions like section 802, if valid, would permit the political branches to strategically

"switch the Constitution on or off at will." *Boumediene v. Bush*, __ U.S. __, 128 S. Ct. 2229, 2259

(2008). This danger is especially grave for the Fourth Amendment. The Warrant Clause expressly

commands that courts authorize and supervise the Executive's exercise of the power to search and

seize. Section 802 effectively nullifies the judicial role in enforcing *Keith*'s warrant requirement for

domestic searches.[6] Also, warrantless searches are subject to *de novo* appellate review. *Ornelas v.*

*U.S.,* 517 U.S. 690, 697 (1996) ("[T]he legal rules for probable cause and reasonable suspicion

acquire content only through application. Independent review is therefore necessary if appellate

courts are to maintain control of, and to clarify, the legal principles."). Yet under section 802, the

Attorney General can retroactively shield the carriers from any judicial scrutiny of their

---

[6] The carriers' attempt to portray their acts as warrantless "foreign intelligence" surveillance, Carriers' Br. at 8, n.13, is foreclosed by this Court's finding that "[b]ecause the alleged dragnet here encompasses the communications of 'all or substantially all of the communications transmitted through [AT&T's] key domestic telecommunications facilities,' it cannot reasonably be said that the program as alleged is limited to tracking foreign powers." *Hepting,* 439 F. Supp. 2d at 1010.

-4-

unconstitutional conduct.

**B.** **The Possibility Of An Action Against The Government Cannot Justify Foreclosure Of Plaintiffs' Constitutional Claims Against The Carriers**

A claim seeks relief against a specific party or parties. Plaintiffs' claims are aimed at what the carriers did, not at what the government did. The carriers' acts were the direct and immediate cause of plaintiffs' injuries, and there is independent constitutional value in addressing their conduct. *See* Summary at 21-41. Indeed, the carriers have the primary duty to protect their customers' constitutional rights from the government, since the carriers control access to their customers' communications and communications records. The carriers' decision to ignore that duty, accede to patently unconstitutional requests, and build a vast surveillance infrastructure in order to do so, demonstrates why private parties have long been held accountable for their own unconstitutional acts done as agents to the government. Only relief against the carriers can deter such future constitutional violations.[7]

Defendants cite only two cases for the proposition that suing the government avoids the constitutional error that would arise if section 802 were to preclude plaintiffs' constitutional claims against defendants, *Anniston Mfg. Co. v. Davis*, 301 U.S. 337 (1937) and *Burrill v. Locomobile Co.*, 258 U.S. 34 (1922).[8] Those cases, each relating to improperly collected taxes, are easily distinguished.

First, neither case involved claims against private actors nor foreclosed any relief that the

---

[7] *Bivens* remedies against federal officials would not reach carrier officials or employees who directed and implemented the warrantless dragnet, and thus could not deter constitutional violations by the carriers or their employees. Moreover, suits against the government, such as under the Federal Tort Claims Act, are less effective remedies. *Carlson v. Green*, 446 U.S. 14, 21 (1980) ("Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States. It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability.") (citations and footnote omitted); *id.* at 22 ("a plaintiff cannot opt for a jury in an FTCA action, 28 U.S.C. § 2402, as he may in a *Bivens* suit.") (footnote omitted).

[8] The government also cites *Flores-Miramonte v. INS*, 212 F.3d 1133, 1134 (9th Cir. 2000), where the Ninth Circuit found that it lacked jurisdiction to review a Board of Immigration Appeal decision, but that petitioner could file a habeas petition "raising the same claims." The case is inapposite because both the foreclosed and permitted actions were against the government and neither the claims raised nor the relief sought by the petitioner was foreclosed.

-5-

plaintiff was seeking. *Anniston* and *Burrill* were damages actions against the tax collectors themselves, and the statutes substituted the government for the collectors. *Anniston,* 301 U.S. at 342-43; *Burrill,* 258 U.S. 34. Substituting a public entity for a public employee while fully preserving the availability of the relief sought by the plaintiff is far different from section 802, which wipes out any possible claims or relief against the carriers or their employees without substituting any other party.

Second, in *Anniston*, Congress created a comprehensive and procedurally adequate administrative scheme to adjudicate the very claims asserted by the plaintiffs. 301 U.S. at 343. The government recognized its obligation to refund the unconstitutional taxes, and the substitute remedy embraced "whatever right of refund the claimant is entitled to assert under the Federal Constitution." *Id*. at 343. The Court upheld the procedure because it provided "for the judicial determination of every question of law which the claimant is entitled to raise .... The 'law,' with which the decision of the Board may be in conflict, may be the fundamental law." *Id*. at 345.

Section 802 creates no alternative administrative scheme for adjudicating plaintiffs' claims against the carriers. Rather, it blocks those claims and eliminates judicial review of the carriers' conduct, even under "the fundamental law"—the Constitution. Finally, plaintiffs are left, not with a guaranteed remedy against the government, but with merely their original right to sue the government subject to all of the government's defenses and immunities.

The carriers also prematurely argue that plaintiffs cannot state *Bivens* claims against them as corporate entities, although they do not attack the viability of *Bivens* claims against their employees.[9] Carriers' Br. at 5-6. Plaintiffs disagree, but regardless, this is not a motion to dismiss

---

[9] *See, e.g., Hepting* Amended Complaint (*Hepting* Dkt. 8) at ¶ 31 (naming "Doe" private employees as defendants). In the decision relied on by the carriers, injunctive relief and alternative state-law remedies were available against the corporation and its employees. *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 72-74 (2001); *see also Bush v. Lucas*, 462 U.S. 367, 385 (1983) (federal employees whose First Amendment rights were allegedly violated had alternative remedy because Congress had created an "elaborate, comprehensive [civil service review] scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and employees ... by which improper action may be redressed"); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103-04 (9th Cir. 2004). Here, section 802 destroys all alternative remedies against the carriers and their employees, including any *Bivens* action against the employees. *See Agyeman*, 390 F.3d at 1104.

-6-

for failure to state a *Bivens* claim. More importantly, failure to state a *Bivens* claim is not a ground under section 802 for terminating plaintiffs' lawsuits.

Neither the government nor the carriers argue that section 802 can be saved from unconstitutionality by preserving only plaintiffs' constitutional claims and dismissing their non-constitutional claims. They are correct not to do so. First, section 802's termination of plaintiffs' non-constitutional claims is equally unconstitutional. Second, severance is not possible here because Congress intended that whenever the Attorney General chose to change the law and invoke section 802 it would terminate the entire action, not just a portion of it. Section 802(a) provides that the "action," and not just some of the claims in the action "shall be promptly dismissed." *See also* S. Rep. 110-209 at 10, 11 (2007) (Dkt. 469-2) ("SSCI Report") (referring to "alleged statutory and constitutional violations"). The "relevant inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress." *Alaska Airlines v. Brock,* 480 U.S. 678, 681 (1984) (emphasis original). An interpretation of section 802 requiring dismissal of only non-constitutional claims would be inconsistent with Congress' intent.[10]

## II.    Section 802 Violates The Doctrine Of Separation of Powers

### A.    Section 802 Violates The Lawmaking Procedures Of Article I, Section 7 By Giving The Attorney General Plenary Power To Change The Law Governing Plaintiffs' Lawsuits

Under the lawmaking procedures of Article I, section 7 of the Constitution, any change in previously enacted law must be enacted by Congress. *Clinton v. City of New York*, 524 U.S. 417, 445 (1998). Congress may not give the Executive the power to change law that Congress has previously enacted; Congress itself must make the decision to change the law. *Id.* To do otherwise would impermissibly combine two powers in a single branch. "These provisions of Art. I are

---

[10] Although the statute contains a severability clause, FISAA § 401, "the ultimate determination of severability will rarely turn on the presence or absence of … a [severability] clause." *U.S. v. Jackson*, 390 U.S. 570, 586 (1968). Congress's clear intent makes it impossible to construe section 802 to permit dismissal only of plaintiffs' non-constitutional claims. Courts " 'will not rewrite a ... law to conform it to constitutional requirements.' " *Reno v. A.C.L.U.*, 521 U.S. 844, 884 (1997) (addressing similar severability clause); *see also id.* at 882 ("A severability clause requires textual provisions that can be severed."); *Hill v. Wallace*, 259 U.S. 44, 49 (1922) (court may not "dissect an unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain").

-7-

integral parts of the constitutional design for the separation of powers." *Chadha*, 462 U.S. at 946. "[T]he prescription for legislative action in Art. I, §§ 1, 7, represents the Framers' decision that the legislative power of the Federal Government be exercised in accord with a single, finely wrought and exhaustively considered, procedure." *Id*. at 951.

Here, plaintiffs sued under previously-enacted statutes that applied to these actions until the Attorney General chose to nullify those statutes and change the law governing these actions by filing his certification. But for the Attorney General's decision to change the law, those previously-enacted statutes would still govern plaintiffs' actions.

As was true of the appropriations statute in *Clinton*, it is the Attorney General's certification, not Congress' enactment of section 802, that deprives the statutes under which plaintiffs sued of any " 'legal force or effect' " (*Clinton*, 524 U.S. at 438) as to these lawsuits. The certification is thereby "the functional equivalent of partial repeals of Acts of Congress." *Id.* at 444. This is because section 802 provides that "[n]otwithstanding any other provision of law, a civil action may not lie or be maintained in a Federal or State court against any person for providing assistance to an element of the intelligence community, and shall be promptly dismissed, if the Attorney General certifies to the district court" that one of the requirements of subsections (a)(1)-(5) is satisfied. Whether or not to file a certification is entirely within the Attorney General's power. Even where one of the requirements of subsections (a)(1)-(5) is satisfied, he has no duty to file a certification. If the Attorney General does file a certification, then the law changes and section 802 governs the action. If he does not file a certification, section 802 does not apply and the law governing the action remains unchanged.

Section 802 thus authorizes the Attorney General "himself to effect the repeal of laws, for his own policy reasons, without observing the procedures set out in Article I, § 7. The fact that Congress intended such a result is of no moment." *Clinton*, 524 U.S. at 445; *accord*, *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise*, 501 U.S. 252, 274 n.19 (1991) (" 'Rather than turning the task over to its agent, if the Legislative Branch decides to act with conclusive effect, it must do so ... through enactment by both Houses and presentment to the President.' "). With respect to plaintiffs' state-law causes of action, the Attorney General's

-8-

certification similarly changes the law by preempting them.

The Attorney General's decision to change the law governing plaintiffs' actions is a straightforward violation of the lawmaking procedures of Article I, section 7. Just as in *Clinton*, where nothing in the statute required the President to veto or leave standing a particular appropriation, nothing in section 802 requires the Attorney General to file a certification. Just as in *Clinton*, it is the Attorney General, not the Congress, who decides whether to supplant the existing law with new law. Congress' decision to give over its power to change the law to the Attorney General violates Article I, section 7.

**B.      The Government And The Carriers Misdescribe Section 802's Terms**

The government and the carriers have no response other than to misdescribe section 802. They attempt to avoid the inevitable conclusion that section 802 runs afoul of Article I, section 7 and other separation of powers principles by defending section 802 as they wish it were written rather than addressing the statute enacted by Congress. They describe an imaginary statute, one in which Congress directed that new rules should apply to plaintiffs' actions. But Congress made no such decision; instead it is the Attorney General's filing of a certification that has changed the law governing these actions. Section 802 grants to the Executive the power to replace the law that currently applies to these lawsuits with a statute designed to lead to their dismissal.

The government's and the carriers' mischaracterizations of section 802 contradict their previous descriptions of section 802. Previously, the government and the carriers had conceded that "Congress left the issue of whether and when to file a certification to the discretion of the Attorney General." Joint Case Mgmt. Stmt. (Dkt. 466) at 21:3-5. They asserted: "Nothing in the Act requires the Attorney General to exercise his discretion to make the authorized certifications, and until he actually decides to invoke the procedures authorized by Congress, the Act would have no impact on this litigation." *Id.* at 22, n.16.

Now that the constitutional infirmity of this scheme is manifest, however, the carriers and the government paint a far different picture of section 802. The carriers now contend that Congress, not the Attorney General, mandated that section 802 should govern plaintiffs' actions and imposed a mandatory duty on the Attorney General to submit evidence necessary to demonstrate that the

-9-

requirements of subsections (a)(1)-(5) are satisfied. They contend that in section 802 Congress created mandatory "new immunity defenses" that "apply *whenever* § 802's requirements are met." Carriers' Br. at 9:2-3, 9:5-6 (emphasis added). They assert that "Congress ... imposed on the Attorney General the responsibility to determine when evidence exists that would satisfy the statutory standards and to submit that evidence to a court." (*id*. at 2:9-11).

The government has similarly reversed its position, now contending that "Congress concluded that those companies [*i.e.*, the carriers] should not face further litigation if they provided such assistance pursuant to a court order or a written certification, directive, or request from a senior government official, or did not provide the alleged assistance" (Gov't Reply at 1:7-10) and that "Congress ... made it clear that dismissal was *required* where provider assistance or non-assistance satisfied the conditions in Section 802(a)" (*id*. at 9:10-13 (emphasis added)).

All of these erroneous assertions ignore the blunt reality that Congress did *not* decide whether section 802's provisions should apply to plaintiffs' lawsuits or whether instead these lawsuits should continue to be governed by old law. To the contrary, even where the requirements of subsections (a)(1)-(5) are satisfied, it is the Attorney General who decides whether a lawsuit should be governed by the law as it existed before section 802 was enacted or whether to repeal pre-existing law that would otherwise apply to that particular lawsuit.

Section 802's grant of authority to the Attorney General, like Congress' grant of authority to the President in *Clinton*, is plenary and unlimited. Just as the President could decide to amend an appropriations bill on an appropriation-by-appropriation basis, the Attorney General may amend the substantive law governing surveillance on a lawsuit-by-lawsuit basis. The government and the carriers were correct the first time: "Nothing in the Act requires the Attorney General to exercise his discretion to make the authorized certifications." Joint Case Mgmt. Stmt. (Dkt. 466) at 22, n.16. It is the Attorney General who has the power to change the law.[11]

_____

[11] Nor is section 802 simply a statute "whose application depends on the existence of certain facts." Carriers' Br. at 11:2-3. Even when the facts necessary for subsections (a)(1)-(5) exist, the law that applies remains the law previously enacted by Congress unless and until the Attorney General exercises his power to change the law and make section 802 apply. Because the Attorney General need not certify even when the facts necessary for subsections (a)(1)-(5) exist, the
*(footnote continued on following page)*

-10-

**C.     Other Statutes In Which Congress Has Unconditionally Modified Or Eliminated A Cause Of Action Are Irrelevant**

The government and the carriers devote much attention to statutes in which Congress has unequivocally and unconditionally imposed a limitation upon a cause of action or eliminated a cause of action entirely. These statutes, and the cases interpreting them, have no relevance here, because section 802 is fundamentally different in the unlimited discretion it grants to the Attorney General to change the law governing these actions.

The statute prohibiting lawsuits against gun manufacturers at issue in *City of New York v. Beretta*, 524 F.3d 384, 395 (2d Cir. 2008), on which the government, the carriers, and the *amici* professors all rely, starkly illustrates the difference between statutes unconditionally modifying a cause of action and section 802. *See* Gov't Reply at 7; Carriers' Br. at 2, n.1; Profs. Br. at 13-14. That statute, 15 U.S.C. § 7902, provides:

> (a)  In general. A qualified civil liability action may not be brought in any Federal or State court.
>
> (b)  Dismissal of pending actions. A qualified civil liability action that is pending on the date of enactment of this Act shall be immediately dismissed by the court in which the action was brought or is currently pending.

Unlike section 802, section 7902 of title 15 does not grant any discretion to the Attorney General or any other executive branch official to decide whether to apply the statute in a particular lawsuit to change the law governing that lawsuit. Instead, Congress itself has "set[] forth a new legal standard to be applied to *all* actions." *Beretta*, 524 F.3d at 395 (emphasis added). In section 802, by contrast, Congress did not set forth a new legal standard to be applied to all surveillance actions, or even to a subset of those actions; the Attorney General decides for each case whether to repeal existing law and apply new law.

Congress could have easily structured section 802 as it structured section 7902 of title 15, mandating that it apply to every civil action falling within the class of cases defined by subsections (a)(1)-(5). Congress did not do so, however, and that fact fundamentally alters the separation of

---

*(footnote continued from preceding page)*
government is similarly incorrect when it argues that section 802 is merely a production-of-evidence statute in which Congress "has simply directed that the facts establishing the basis for the immunity be presented by the Attorney General." Gov't Reply at 11:7-9.

powers analysis, since Congress vested the power to choose whether to change the law in the Executive rather than the Legislative branch.[12]

Section 802 is also fundamentally different from the statute at issue in *Owens v. Republic of the Sudan*, 531 F.3d 884, 890 (D.C. Cir. 2008). *See* Carriers' Br. at 11. *Owens* was a nondelegation case addressing a statute that waived a foreign state's sovereign immunity for terrorism-related causes of action if, prior to the occurrence of the acts giving rise to the cause of action, the Secretary of State had designated the foreign state a state sponsor of terrorism. *Id.* at 888. The statute operated automatically once the Secretary of State made a terrorism designation; the waiver

---

[12] Other statutes on which the government and the carriers rely are similarly irrelevant because, like section 7902 of title 15 and unlike section 802, they are statutes in which Congress *unconditionally* modified or eliminated a cause of action, rather than leaving that choice to the Executive. The statutes in Exhibit 1 to the carriers' brief show how section 802 differs from other statutes in which Congress, and not the Executive, has modified or eliminated a cause of action. They generally fall into two categories: (1) statutes that unequivocally limit or eliminate causes of action that fit particular criteria, *see, e.g.,* 10 U.S.C. § 2798 ("No civil action may be brought against the United States on the basis of the content of a navigational aid prepared or disseminated by the Defense Mapping Agency."); 49 U.S.C. former § 10701(f) (exempting small business from undercharge suits); 15 U.S.C. §§ 6601-6617 (limiting damages claims arising from Year 2000 computer problems); 29 U.S.C. § 1854(d)(1) (limiting remedy to state workers' compensation laws for death or injury of migrant agricultural workers), and (2) statutes of limitation or repose, *see, e.g.,* 29 U.S.C. § 252 ("No employer shall be subject to any liability or punishment ... on account of the failure of such employer to pay an employee minimum wages … or for or on account of any activity of any employee engaged in prior to May 14, 1947."); 29 U.S.C. § 216 ("No State ... shall be liable under section 16 of the FLSA for a violation ... occurring before April 15, 1986.") The Westfall Act (28 U.S.C. § 2679(b)(1)) unconditionally bars tort suits against government employees; it may be invoked either by the government or by the employee (*id.* at §§ 2679(d)(1), (d)(3)). None of these statutes empowers the Executive, as section 802 does, to modify or eliminate a cause of action.

The statutes in the decisions cited by the government (Gov't Reply at 8, n.7) also generally fall into these two categories (statutes of limitation, statutes unequivocally precluding a specific cause of action) and are distinguishable from section 802 on the same grounds. *See, e.g., Fields v. Legacy Health Sys.*, 413 F.3d 943, 955-58 (9th Cir. 2005) (statute of limitations and repose); *Lyons v. Agusta*, 252 F.3d 1078, 1085-89 (9th Cir. 2001) (statute of repose); *Ducharme v. Merrill-National Lab.*, 574 F.2d 1307, 1310 (5th Cir. 1978) (statute precluding all challenges to government's vaccination program). The Atomic Testing Liability Act at issue in *In re Consol. United States Atmos. Testing Litig. v. Livermore Labs*, 820 F.2d 982 (9th Cir. 1987), *see* Gov't Reply at 9, n.8, is similar to the Westfall Act. It unconditionally bars tort suits against government contractors arising out of atomic testing, 50 U.S.C. § 2783(b); its certification procedures pertain only to removal, 50 U.S.C. § 2783(c). None of the statutes at issue in these cases grants the Executive the power to decide what law should apply in a particular lawsuit.

-12-

MDL Plaintiffs' Reply to Briefs of the Carriers and of the United States Seeking to Apply 50 U.S.C. § 1885a to Dismiss These Actions

of sovereign immunity did not depend upon the Secretary of State making a submission of the designation to the court and the Secretary had no discretion over whether or not the designation should have jurisdictional consequences. *Id.*

As the *Owens* court noted (531 F.3d at 891), the statute at issue there was similar to the tariff suspension statute found constitutional in *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892), and discussed in Plaintiffs' Opposition at 14-17. The statute in *Field* was constitutional because it compelled the President to suspend certain tariffs upon the occurrence of certain triggering facts; once they occurred, he had no discretion whether to suspend the tariffs. "[W]hen enacting the statutes discussed in *Field*, Congress itself made the decision to suspend or repeal the particular [tariff] provisions at issue upon the occurrence of particular events subsequent to enactment, and it left only the determination of whether such events occurred up to the President." *Clinton*, 524 U.S. at 445; *see also id.* at 443 ("when the President determined that the contingency had arisen, he had a duty to suspend"). So, too, in *Owens*, Congress decided to extend jurisdiction upon the occurrence of triggering events—that a foreign state " 'repeatedly provide[s] support for acts of international terrorism' " (*Owens*, 531 F.3d at 888)—and "left only the determination of whether such events occurred up to the" (*Clinton*, 524 U.S. at 445) Secretary of State.

Section 802 is different from the statute in *Owens* for the same reason that, as explained in Plaintiffs' Opposition at 15-18, it is different from the tariff suspension statute at issue in *Field*. Unlike both the tariff statute of *Field* and the statute in *Owens*, section 802 does not change the law automatically where the requirements of subsections 802(a)(1)-(5) are met. The change in law occurs only if the Attorney General decides the law should change.[13]

### D. Section 802 Violates The Nondelegation Doctrine By Providing No Intelligible Principle To Govern The Attorney General's Plenary Power To Change The Law Governing Plaintiffs' Actions

The government and the carriers again rely on a misdescription of the Attorney General's power under section 802 in making their nondelegation argument. The aspersions they cast on the

---

[13] Other decisions on which the carriers rely similarly involve *Field*-type statutes that lack any element of executive discretion as to the legal consequences of events. *E.g.*, in *Currin v. Wallace*, 306 U.S. 1, 15-16 (1939), certain tobacco-grower regulations took effect automatically upon a vote of the affected growers, without any executive discretion.

-13-

nondelegation doctrine cannot change the fact that they can point to no other statute giving the Executive absolutely standardless discretion in deciding whether or not to terminate litigation between private parties.

The government (Gov't Reply at 11-13) asserts that the requirements of subsections (a)(1)-(5) provide "an intelligible principle to which the person or body authorized to [act] [*i.e.*, the Attorney General] is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (internal quotation marks omitted; first bracketed material original). Subsections (a)(1)-(5), however, only define the class of lawsuits in which the Attorney General may exercise his discretion to change the law. Those subsections provide no guidance—no intelligible principle to which the Attorney General must conform—as to whether or not the Attorney General should exercise his discretion to invoke section 802 in any particular lawsuit within that class.

The carriers also misdescribe section 802, asserting that "Congress expressed its policy judgment that no suits should lie against carriers in certain carefully defined circumstances" and thereby provided the Attorney General with the required intelligible principle. Carriers' Br. at 13:12-13. Congress, however, expressed no such judgment in the statutory text because it did not mandate or even suggest the Attorney General should exercise his power to change the law and cause the dismissal of all, or any, of the lawsuits satisfying one of the requirements of 802(a).

Because section 802 lacks any intelligible principle telling the Attorney General under what conditions he should or should not file a certification, "it [is] impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed." *Yakus v. U.S.*, 321 U.S. 414, 426 (1944). Section 802 accordingly violates the nondelegation doctrine.[14]

**E.    Section 802 Unconstitutionally Permits The Other Branches To Dictate The Outcome-Determinative Facts In Individual Lawsuits**

Notwithstanding the eagerness of the government, the carriers, and the *amici* professors to

---

[14] The carriers' invocation of the doctrine of prosecutorial discretion (Carrier Br. at 14) is irrelevant to the nondelegation question here. A government decision not to prosecute or enforce a statutory duty on a private party does not change the law governing relations between private parties and works no deprivation on any private party. By contrast, the Attorney General's exercise of discretion here to file a certification does change the law governing relations between plaintiffs and the carriers and does deprive plaintiffs of their causes of action against the carriers.

-14-

attack *U.S. v. Klein*, 80 U.S. 128 (1872), plaintiffs do not rest their analysis on the Delphic

pronouncements of that case. Instead, as plaintiffs explained in their opposition at 20-21,

section 802 transgresses the clear and explicit boundaries set forth in *Robertson v. Seattle Audubon*

*Society*, 503 U.S. 429, 438-39 (1992) and *Ecology Center v. Castaneda*, 426 F.3d 1144, 1149-50

(9th Cir. 2005) that protect the Judiciary from intrusion by the other branches.

Under *Robertson* and *Ecology Center*, Congress may not "direct any particular findings of

fact or applications of law, old or new, to fact." *Robertson*, 503 U.S. at 438; *Ecology Ctr.*, 426 F.3d

at 1149-50. Section 802 violates this command because it forbids the Court from engaging in

independent fact-finding. Instead, it is the Attorney General, not the Court, who determines

whether "the statutory requirements ... are met" for dismissal. *Ecology Ctr.*, 426 F.3d at 1149. The

Court must defer to the Attorney General's findings of fact, which it may review only under the

"substantial evidence" standard of review. 50 U.S.C. § 1885a(b)(1). The Attorney General's

certification, when coupled with the "substantial evidence" standard of review, is an

unconstitutional attempt to "direct ... particular findings of fact," *Robertson*, 503 U.S. at 438;

*Ecology Center*, 426 F.3d at 1149-50, and thereby compel the Court to dismiss these actions.

The contention that the district court in *Ecology Center* did not engage in *de novo*

factfinding on the crucial factual issue in that case—whether the timber sales at issue preserved

10% of the project areas as old-growth timber—lacks merit. The Ninth Circuit expressly held that

the new statute at issue there was constitutional because "it is still the district court that determines

whether there is 10% old growth on the project areas at issue." *Ecology Ctr.*, 426 F.3d at 1149. The

district court understood its duty to determine *de novo* under the new statute whether 10% of the

project area was old growth: "The court still has the discretion [under the new statute] to determine

that there is not 10% on the project areas." *Ecology Ctr. v. Castenada*, No. CV-02-200-M, slip. op.

at 5 (D. Mont. 2004) (Carriers' Br., Ex. 2 at 5). The district court thus was not required to defer to

administrative fact-finding; instead, if the district court determined *de novo* that the timber sales

preserved 10% of the project area as old growth, then as a matter of law the sales complied with

Congress' new legal standard, which provided that the timber sale decisions " 'shall not be deemed

arbitrary and capricious under the NFMA, NEPA or other applicable law as long as each project

-15-

area retains 10 percent designated old growth.' " *Ecology Ctr.*, 426 F.3d at 1147 (original emphasis omitted).

## III. Section 802 Violates Due Process

Due process requires more than what section 802 provides: "[D]ue process may be satisfied by providing for a neutral adjudicator to 'conduct a *de novo* review of all factual and legal issues.' " *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 618 (1993). By denying the Court the opportunity to determine the facts and law *de novo*, by requiring the Court to base its decisions on factual and legal findings that were not the product of an adversary adjudication and that were made by a biased decisionmaker, and by limiting review of the correctness of those findings to application of the deferential "substantial evidence" standard of review, section 802 violates due process.

Plaintiffs, the government, and the carriers all agree that, as explained in Plaintiffs' Opposition at 23-24, the Attorney General's determination that one or more of the requirements of subsections (a)(1)-(5) is satisfied and his decision to exercise his discretion to file a certification in plaintiffs' actions is not an adversary adjudication before an unbiased decisionmaker empowered to decide facts and law *de novo*.[15] *See* Gov't Reply at 15:3-5; Carriers' Br. at 15:6-7 & 21:16 to 22:5. Nor is it disputed that plaintiffs never receive an adversary adjudication before an unbiased decisionmaker empowered to decide facts and law *de novo* under section 802. Instead, the Court is bound by the Attorney General's factual determinations, which it may review only under the deferential "substantial evidence" test.

The government and the carriers argue nevertheless that due process is not violated here. They argue that due process is so " 'flexible' " (Gov't Reply at 16:6-7; Carriers' Br. at 17:6) that it can be twisted into a knot restraining this Court from exercising its full powers and compelling it

---

[15] The Government incorrectly asserts that the Attorney General does not "otherwise make findings of fact." Gov't Reply at 15:4-5. Whether the requirements of subsections (a)(1)-(5) are satisfied presents factual questions, and the Attorney General's certification under any of those subsections necessarily makes factual findings. For example, the Attorney General asserts in his certification that "there was no such alleged content-dragnet" and that "no provider participated in that alleged activity." Attorney General's Certification (Dkt. 469-3) at 5:18-19.

-16-

instead to issue a judgment based on facts that have never been determined *de novo* in an adversary proceeding before an unbiased adjudicator.[16]

In a bid to salvage section 802, the government and the carriers obscure the nature of the Court's inquiry under the "substantial evidence" test. Seeking to suggest that this inquiry is not a review of the Attorney General's determination that the factual and legal requirements for certification are satisfied but a *de novo* inquiry into whether those requirements are satisfied, the government describes the Attorney General's role as only "to present the information necessary for the Court to make a determination under the Act." Gov't Reply at 15:15-17. The carriers in turn assert that the Court "make[s] a meaningful independent assessment of the facts at issue" (Carriers' Br. at 17:15), "that the Court independently review[s] the evidence presented to it" (*id.* at 17:22), and that "this Court ... adjudicates whether the requirements of § 802 are met" (*id.* at 17:19).

---

[16] The government and the carriers do not dispute that plaintiffs have a fundamental liberty interest in their right to be free from unconstitutional surveillance. The carriers contend (Carriers' Br. at 19:22-24), however, that plaintiffs' liberty interests are not at stake here because plaintiffs could seek relief against the government. This contention ignores that plaintiffs are entitled to protect their liberty interests by seeking relief against those who are the direct and immediate cause of their deprivation, *i.e.*, the carriers.

The government and the carriers, while denigrating plaintiffs' property interest in their causes of action as "inchoate" (Carriers' Br. at 19:20) and not "vested" (Gov't Reply at 14, n.12), appear to concede that it is indeed a property interest protected by due process. "[A] cause of action is a species of property protected by the ... Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *accord, Tulsa Prof'l Collection Services, Inc. v. Pope*, 485 U.S. 478, 485 (1988) ("[i]n *Logan*, the Court held that a cause of action under Illinois' Fair Employment Practices Act was a protected property interest"); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 956 (9th Cir. 2005) ("Causes of action are a species of property protected by the Fourteenth Amendment's Due Process Clause."); *Atmos. Testing Litig.*, 820 F.2d at 989 ("a cause of action has been recognized as a species of property protected by the ... due process clause"). *Grimesy v. Huff*, 876 F.2d 738, 743 44 (9th Cir. 1989), was a takings case, not a due process case. Whether a cause of action has become a vested final judgment does not matter for a due process claim. *See Atmos. Testing Litig.*, 820 F.2d at 988-90 (Takings Clause did not apply to cause of action that had not been reduced to final judgment, but Due Process Clause did apply).

The related assertion that " the *government* [is] 'free to create substantive defenses or immunities' " (Gov't Reply at 13:20 to 14:2, emphasis added) overstates the law. As explained in Plaintiffs' Opposition at 31, n.7, only Congress, not the Executive, is free to create defenses or immunities to statutory causes of action because it is "the *legislative* determination [that] provides all the process that is due." *Logan*, 455 U.S. at 430 (emphasis added). Here, however, the Attorney General, and not Congress, is changing the law governing plaintiffs' lawsuits; thus, there is no "legislative determination" that could satisfy due process.

-17-

No. M-06-01791-VRW    MDL Plaintiffs' Reply to Briefs of the Carriers and of
the United States Seeking to Apply 50 U.S.C. § 1885a to
Dismiss These Actions

The government and the carriers ignore the fundamental difference between a judicial inquiry that finds facts and applies law to facts *de novo*, and a judicial inquiry that reviews someone else's findings of fact and applications of law to fact. This Court's role under section 802 is the latter, not the former. Section 802(b) only permits this Court to review whether substantial evidence supports the Attorney General's determination that the requirements of one or more of subsections (a)(1)-(5) are satisfied and prohibits the Court from making a *de novo* determination of whether any of those requirements are satisfied: "A certification under subsection (a) shall be given effect unless the court finds that such certification is not supported by substantial evidence ...." 50 U.S.C. § 1885a(b)(1) (for emphasis, Congress entitled subsection (b) "Judicial Review" and subsection (b)(1) "Review of Certifications"). The lulling assurances and artfully inaccurate descriptions deployed by the government and the carriers cannot conceal that under section 802(b) the Court reviews only whether the Attorney General's determinations are supported by substantial evidence and is prohibited from independently determining the facts.[17]

Nor is the substantial evidence review dictated by section 802 analogous to situations in which a court defers as an evidentiary matter to testimony of government officials on national security issues. Carriers' Br. at 18:1-9. Such deference at most amounts to an evidentiary presumption applied by a trier of fact, which is a far different matter than the review of another decisionmaker's decision under the "substantial evidence" standard. Under an evidentiary presumption, the trier of fact is still weighing the evidence and finding the facts *de novo*. Under the

---

[17] As used in section 802, the term "substantial evidence" is a standard of review, for it describes the standard the Court employs in testing the determinations made by the Attorney General. In a bit of confusion-making, the carriers cite to *Steadman v. S.E.C.,* 450 U.S. 91 (1981), to suggest that section 802 uses "substantial evidence" to mean a standard of proof and not a standard of review, implying that under section 802 the Court is not reviewing the findings made by the Attorney General in his certification but is making a *de novo* determination of whether the requirements of section 802 are met. Carriers' Br. at 17, n.25. *Steadman* addressed the Administrative Procedure Act's ("APA") two different uses of the term "substantial evidence:" in section 7(c) as a "standard of proof" equivalent to "the traditional preponderance-of-the-evidence standard" (450 U.S. at 102) for a decisionmaker weighing the evidence and making an initial *de novo* determination of fact; and in section 10(e) as a standard of judicial review (*id.* at 99-100 & n.20). In section 802, "substantial evidence" is used in the latter sense as the standard of review by which the Court reviews the decision of a different decisionmaker, the Attorney General.

"substantial evidence" standard of review, how the reviewing court might have weighed the evidence and decided the issue as an initial matter is beside the point; the question instead is whether the decision made by someone else has " 'more than a mere scintilla but less than a preponderance' " of evidence supporting it. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Section 802 requires this Court to uphold the Attorney General's determination even though it is not supported by a preponderance of the evidence and "even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951).[18]

The Attorney General's bias in making the determinations that bind the Court under the "substantial evidence" standard of review further aggravates the denial of due process here. Relying on "decisionmaker policy statement" cases like *Hortonville Jt. Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976), the government and the carriers argue that the Attorney General is not a biased fact-finder and that his statements relating to this litigation were merely abstract and general "position[s] ... on a policy issue related to [a] dispute," *id.*, divorced from the particular circumstances of plaintiffs' lawsuits.

The Attorney General did far more than just opine on an abstract or theoretical policy question of liability for unlawful surveillance. Before the enactment of section 802 and before he engaged in the process that led to his certification, he repeatedly asserted that this Court should

---

[18] The government and the carriers also make a different national-security-deference argument, asserting that "substantial evidence" review "is consistent with" judicial deference to the Executive's judgment under the state secrets privilege that evidence should be excluded because its disclosure may harm national security. Gov't Reply at 16:12 to 17:3; Carriers' Br. at 18:11-18. This argument makes no sense in the context of section 802, for two reasons. First, none of the requirements of subsections (a)(1)-(5) has as one of its elements the potential harm to national security from litigating plaintiffs' claims, and thus no such assertion of harm is at issue in this Court's substantial evidence review. Second, this Court's substantial evidence review requires that the Attorney General submit and the Court review information about intelligence sources and methods in order to determine whether the requirements of one or more of subsections (a)(1)-(5) is satisfied. It is thus significantly different from the state secrets privilege where, when the privilege is successfully asserted, such information is not submitted to the court and the court does not make any decision based on the contents of such information. Because this Court has already seen all the evidence provided by the government, there is no national security reason, nor any other legitimate reason, for the court to defer to the factual assertions of the Attorney General.

-19-

dismiss the very lawsuits that are the subject of the government's motion. Referring specifically to plaintiffs' lawsuits here, he stated: "It is unfair to force such companies [*i.e.*, the carrier defendants here] to face the possibility of massive judgments and litigation costs" (Summary at 60); "immunity [is] a fair and just result. … it makes no sense to allow this litigation [*i.e.*, plaintiffs' lawsuits] to go forward" (*id.*); "providing liability protection to those companies sued [by plaintiffs here] for answering their country's call for assistance in the aftermath of September 11 is simply the right thing to do" (*id.*); allowing plaintiffs' lawsuits to proceed to an adjudication on the merits "is unacceptable" (*id.*); and "[l]iability protection is the fair and just result and is necessary to ensure the continued assistance of the private sector" (*id.* at 61). In addition, the Attorney General prejudged the facts, saying in December 2007 that "the companies … relied on written assurances that the President himself authorized the activities and that high-level Government officials had determined the activities to be lawful." Opsahl Decl., Ex. 72, p. 1685. These statements are indisputable evidence that the Attorney General prejudged and predetermined the outcome of the certification process before he began it and therefore was actually biased when he conducted it.[19]

Finally, the carriers' argument that section 802's nondisclosure provisions do not violate due process "because these provisions deprive plaintiffs of nothing to which they would otherwise have been entitled" (Carriers' Br. at 26:2-3) is as arrogant as it is meritless. As explained in Plaintiffs' Opposition at 27-30, before plaintiffs' claims involving the fundamental privacy rights of millions of Americans can be dismissed, due process entitles plaintiffs to *meaningful* notice of the "relevant supporting evidence," *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 264 (1987), for without meaningful notice the opportunity to be heard in opposition to the government's motion also is not meaningful. *Goldberg v. Kelly,* 397 U.S. 254, 270 (1970) (" 'the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show

---

[19] Nor does *Withrow v. Larkin*, 421 U.S. 35, 48 (1975), support the contention that the Attorney General is not institutionally and structurally biased. The essence of that decision is that an adversary hearing at which the parties are free to present evidence and argument to the decisionmaker will overcome any preconceptions that the decisionmaker has formed by conducting an *ex parte* prehearing investigation. Here, of course, the Attorney General conducted *ex parte* all of his investigation leading up to his certification decision, and plaintiffs never had the opportunity to participate in an adversary adjudication before him.

-20-

that it is untrue' "); *accord*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).

That right to notice and an opportunity to contest extends to the core issue under section 802(b): whether substantial evidence supports the Attorney General's certification. Although section 802(d) purports to provide notice and opportunity to be heard by "permitt[ing plaintiffs] to participate in the briefing or argument," the nondisclosure provisions of sections 802(c) and (d) deprive plaintiffs of their right to a fair hearing by keeping plaintiffs blind as to *any* evidence supporting such certification. If kept in ignorance of the adversary's evidence, a party's right to a hearing is "but a barren one." *Morgan v. U.S.*, 304 U.S. 1, 18 (1938). Sections 802(c) and (d) thus set up a sham proceeding that provides the semblance of a fair hearing but not the substance.

Likewise unconvincing is the carriers' argument that plaintiffs' interest in this litigation "does not compare with" the interest of plaintiffs in *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1068-70 (9th Cir. 1995). Carriers' Br. at 26:15. The Ninth Circuit's reasoning—that " 'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights,' " *id.* at 1069 (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J.))—applies at least as strongly against the government's use of secret information here through section 802's nondisclosure provisions to deprive millions of American citizens of their fundamental privacy rights as it did against the government's use of secret evidence against the alien plaintiffs in *American-Arab Anti-Discrimination Committee*.

Due process is violated not only by the sham proceeding created by section 802, which invites plaintiffs to argue whether evidence they are barred from seeing supports the certification, but also by the gag provision of section 802(c)(2) preventing this Court from issuing a public order setting forth the reasons and evidence upon which the Court finds the certification is or is not supported by substantial evidence. *Lynn v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1346 (9th Cir. 1981) (decision based on *ex parte* evidence offends "principles of due process upon which our judicial system depends to resolve disputes fairly and accurately"). The carriers' Alice-in-Wonderland logic that a secret order is the consequence that "necessarily follows" (Carriers' Br. at 27:5) from a secret *ex parte, in camera* proceeding that denies plaintiffs meaningful notice and a

-21-

meaningful opportunity to be heard only demonstrates how fundamentally flawed section 802 is.

The carriers' final argument, that if section 802's nondisclosure requirements violate due process then therefore "the proper resolution would be dismissal of Plaintiffs' claims," is another absurd *non sequitur.* Carriers' Br. at 27:15-16. The carriers cite no case—and there is none—that they have a due process *right* to have the government use secret evidence on their behalf as a sword to kill plaintiffs' claims, which seek to redress the most widespread violation in history of the privacy rights of American citizens.[20]

## IV.    The Secrecy Provisions Of Section 802 Are Unconstitutional

The Third, Fourth, Sixth, and Seventh Circuits have all held that there is a presumptive First Amendment right of public access to civil trials and/or dispositive civil pretrial proceedings, including a right of access to documents the parties submit or the court relies upon in adjudicating a case. *See* Pl. Opp. at 32:13-25; *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (First Amendment secures to public and press right of access to civil proceedings); *Assoc. Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("no reason to distinguish between pretrial proceedings and the documents filed in regard to them").[21]  This right applies to the court's own opinion resolving a disputed motion. *Grove Fresh Distrib. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994) (presumptive right of access "to judicial decisions and the documents which comprise the bases of those decisions."). Neither the carriers nor the government

---

[20] The carriers are also incorrect in arguing that plaintiffs have no standing to challenge the substantial evidence standard because "[p]laintiffs cannot show that the Attorney General's certification would be rejected under some other standard." Carriers' Br. at 16:24-25. The government has moved for summary judgment. Summary judgment should not be granted if there remains a genuine dispute of material fact. Both the carriers and the government dispute the facts in plaintiffs' Summary, and those facts are a sufficient basis to support a judgment in plaintiffs' favor if the Court were reviewing *de novo* the question of whether the requirements of any of subsections (a)(1)-(5) were satisfied in these lawsuits.

[21] Plaintiffs have standing to assert this First Amendment right. First, three of the plaintiffs in this litigation are journalists. *See Campbell v. AT&T Communications of Cal.*, Case No. C-06-3596 VRW, Complaint ¶¶ 9, 11, 14 (Plaintiffs Sussman, Cooper, and Scheer). Second, section 802(d) explicitly gives plaintiffs the right "to participate in the briefing or argument of any legal issue." Moreover, the media intervenors are joining in plaintiffs' briefing on this issue (Dkt. 523).

has cited a case holding otherwise.[22] Nevertheless, they argue that courts must engage in a *Richmond Newspapers/Press-Enterprise* analysis with respect to each particular species of dispositive motion or each particular type of information that is contained in the document that a party seeks to hide from public view. Carriers' Br. at 28:6-11.

The Supreme Court authoritatively rejected that argument in *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 605 n.13 (1982). In *Globe*, Massachusetts argued there was no First Amendment right of public access to the trial testimony of minor sex victims because such testimony was not historically open to the public. The Court explained that the argument there, as here, missed the point:

> Whether the First Amendment right of access to criminal trials can be restricted in the context of any particular criminal trial, such as a murder trial (the setting for the dispute in *Richmond Newspapers*) or a rape trial, depends not on the historical openness *of that type of criminal trial* but rather on the state interests assertedly supporting the restriction.

*Id.* (emphasis added). Thus the issue is not whether the First Amendment right of access exists but whether, on the facts of a particular case, that presumptive right is overcome by a showing that the restriction in question satisfies strict scrutiny. *See Globe*, 457 U.S. at 606-07.[23]

The cases the carriers cite all involved proceedings *other than* criminal or civil trials or dispositive pretrial motions. *See, e.g., Seattle Times Co.*, 845 F.2d 1513, 1516 & n.1 (9th Cir. 1988) (treating detention proceedings as different from pretrial proceedings). It was only because the issue had not already been decided that the courts in those cases applied the "experience and logic"

---

[22] The carriers mischaracterize plaintiffs' position as asserting a First Amendment right to "force information from U.S. intelligence agencies." Carriers' Br. at 30:6-7. The First Amendment applies because what plaintiffs actually seek is access to information that the government has *filed* in support of its motion to terminate their lawsuits. *See In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 491 n.19 (FISA Ct. 2007) ("Nothing in FOIA divests federal courts of supervisory power over their own records, nor would an agency record's exemption from disclosure under FOIA necessarily displace a right of access to a copy of the same document in a court's files, especially if that right is grounded in the First Amendment.").

[23] Indeed, if the law were as the carriers assert, courts would not apply strict scrutiny when asked to seal allegedly trade secret documents in the context of summary judgment motions. They would automatically grant a motion to seal because there is no historical tradition of access to trade secrets. But courts do apply strict scrutiny to such requests. *See Publicker Indus. v. Cohen*, 733 F.2d 1059, 1073 (3rd Cir. 1984) (describing how strict scrutiny applies to request to bar public access to safeguard a trade secret); Order (*Hepting* Dkt. 346) at 6.

-23-

analysis (*see Press Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986)) to determine whether there

was a First Amendment right of access.[24]  Although the *grounds* for the government's motion in

this case may be new, the context is still the familiar motion to dismiss and/or for summary

judgment to which the First Amendment right of access applies.

Before the First Amendment right of public access may be abridged, "it must be shown

that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to

serve that interest." *Globe*, 457 U.S. at 606-07; Pl. Opp. at 33:5-10.[25]  That showing must be made

with specificity. *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).

Section 802(c)'s blanket non-disclosure rule serves no compelling governmental interest

because it does not require that there be an *actual* national security threat in any particular case.

Non-disclosure is automatically required upon the Attorney General's unsupported assertion of

such a threat.[26]  Strict scrutiny requires the Attorney General to substantiate national security harm

in each case; the court must then evaluate the merits of the claim. *Globe*, 457 U.S. at 607-08 ("[A]s

compelling as that interest [in protecting minor victims] is, it does not justify a *mandatory* closure

rule, for it is clear that the circumstances of the particular case may affect the significance of the

interest."); *id.* at 608 n.20; *In re Washington Post*, 807 F.2d 383, 391-92 (4th Cir. 1986) (noting

danger of abuse when First Amendment rights abridged in name of national security with no

judicial review); *see also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 710 (6th Cir. 2003) ("case-

---

[24] *See, e.g., In re Copley Press*, 518 F.3d 1022, 1027 (9th Cir. 2008) (plea colloquy; court hearing and documents related to motion to seal plea proceedings); *North Jersey Media Group v. Ashcroft*, 308 F.3d 198, 204-05 (6th Cir. 2002) (administrative deportation hearings); *Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1213 (9th Cir. 1989) (issuance of search warrants in ongoing pre-indictment investigation); *Seattle Times Co. v. U.S. Dist. Ct.*, 845 F.2d at 1516 (filings submitted in connection with detention hearing); *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 492 (FISA Ct. 2007) (court orders and government filings re FISA surveillance authorizations).

[25] The carriers are simply wrong when they assert that *plaintiffs* must demonstrate the *absence* of a compelling interest, Carriers' Br. at 29:4-6; it is the Attorney General's burden to demonstrate the presence of a compelling interest. *See Globe*, 457 U.S. at 606-07; *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988).

[26] The provision also violates Article III of the Constitution, because it is the Attorney General who controls whether material will be withheld from the public, rather than the Court, applying the standards required by the First Amendment. *See* Pl. Opp. at 34:25-28.

-24-

by-case" determination made in secret by the Attorney General without any court review conflicts with the First Amendment).[27]  The blanket non-disclosure rule of section 802(c) and (d) cannot stand in the face of *Globe*.[28]

Contrary to the carriers' argument, plaintiffs' challenge to section 802(c)'s perpetual ban on disclosure is anything but "hypothetical." *See* Carriers' Br. at 29:8-17. Under the statute, the mere assertion of harm to the national security triggers the non-disclosure provision, as it has here. The statute provides no mechanism for the plaintiffs to challenge the validity of the assertion, or for the Court to evaluate the assertion. Nor does it provide any mechanism whereby the Attorney General must return to the Court on a regular basis to justify the continued secrecy of the information. Because the perpetual ban is not narrowly tailored to further the government's asserted national security interest, it violates the First Amendment. *See* Pl. Opp. at 35:1-36:8.

Finally, this challenge to section 802(c) and (d) is ripe. It is the government's burden to show that the statute is narrowly tailored to satisfy a compelling state interest. *See* n.25, *supra*. Congress' failure to incorporate any time limitation into the non-disclosure provision relates directly to the narrow tailoring question. It was the permanent nature of 18 U.S.C. § 2709's gag order provision that led the *Doe* courts to conclude that the measure was not narrowly tailored. *See Doe v. Ashcroft*, 334 F. Supp. 2d 471, 520-21 (S.D.N.Y. 2004); *Doe v. Gonzales*, 386 F. Supp. 2d 66, 79-80 (D. Conn. 2005), *after amendment of non-disclosure statute vacated and remanded and dismissed as moot, respectively, by Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006).[29]

---

[27] The carriers' reliance on *U.S. v. Aref*, 533 F.3d 72 (2d Cir. 2008), and *Kasza v. Whitman*, 325 F.3d 1178 (9th Cir. 2003), is misplaced. In neither case did the court accept the government's national security claims at face value. Rather, each court itself determined whether revealing the classified material would jeopardize national security. *Aref*, 533 F.3d at 82-83; *Kasza*, 325 F.3d at 1180; *see also Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998); *U.S. v. Moussaoui*, 65 Fed. Appx. 881, 886-87 (4th Cir. 2003).

[28] The carriers mistakenly argue that section 802 is not a blanket rule. Carriers' Br. at 30:18:21. Just as the statute in *Globe* applied whenever an underage victim testified, section 802(c) applies whenever the Attorney General makes a section 802(c) declaration. That the triggering event is an Attorney General's decision to invoke national security rather than a prosecutor's decision to call the victim as a witness is a distinction without a difference. As for section 802(d), it applies automatically without any invocation by the Attorney General.

[29] The carriers incorrectly contend that *Doe v. Gonzales*, 386 F. Supp. 2d 66, and *Doe v. Ashcroft*, 334 F. Supp. 2d 471, are inapposite, arguing that, because section 802(c) and (d) do not *(footnote continued on following page)*

-25-

## V.    The Court May Consider Plaintiffs' Evidence

Section 802 requires the Court to consider all the evidence necessary to determine if the Attorney General has met his substantial evidence burden, including all evidence submitted by the parties for purposes of this motion. 50 U.S.C. § 1885a(b)(1). Indeed, the Court can require the Attorney General to submit any relevant evidence, even classified evidence. *See* 50 U.S.C. § 1885a(d) ("To the extent that classified information is relevant to the proceeding … the court *shall review* such information *in camera* and *ex parte* …." (emphasis added)).

The government nevertheless asserts that section 802 "plainly does not contemplate the submission and review of other materials through the creation of a new record submitted into evidence in the district court." Gov't Reply at 25:13-16. Its position seems to be that the Court's review is limited to the Attorney General's certification and to materials falling within its narrow interpretation of the statutory term "supplemental materials:" "any order, certification, directive, or written request submitted by the parties," *id.* (citing section 802(b)), *i.e.*, only the documentation requesting the surveillance given to the carriers.

Yet if the government is correct that the only evidence the Court can consider is the certification and the documentation requesting the surveillance, then it cannot meet its "substantial evidence" burden under the statute. For example, the documentation given to the carriers cannot demonstrate that the carriers "did not provide the alleged assistance" as required for a subsection (a)(5) certification. Similarly, reliance solely on the certification and the documentation requesting the surveillance cannot demonstrate whether the "assistance by that person was provided pursuant to" the documentation, nor whether the warrantless surveillance program was or was not "designed to" prevent a terrorist attack on the United States. It would make no sense to place a "substantial

---

*(footnote continued from preceding page)*
restrict speech, there is "no ... First Amendment problem." Carriers' Br. at 29:4-30:7. *Globe* and its progeny demonstrate that the provisions *do* implicate the First Amendment right of access to documents in dispositive pretrial proceedings in civil actions. Because restrictions on access to such documents are subject to strict scrutiny, Pl. Opp. at 32:5-10, the party seeking to justify those restrictions bears the same burden as the government does when it seeks to justify a prior restraint. *See, e.g.*, *Levine v. U.S. Dist. Court*, 764 F.2d 590, 595 (9th Cir. 1985) (prior restraints subject to strict scrutiny). Thus, the *Doe* cases, holding that the permanent non-disclosure provision of 18 U.S.C. § 2709 failed strict scrutiny, are directly on point.

-26-

evidence" burden on the government and then limit the ability to present evidence to only the documentation requesting the surveillance while forbidding the court from considering evidence about the type and scope of surveillance that was actually conducted.

The differences between the statute's language in subsections 802(b) and (c) support the conclusion that additional evidence is permitted. Section 802(c) addresses only some of the evidence that may be submitted pursuant to section 802(b). Specifically, it restricts "disclosure of a certification made pursuant to subsection (a) or the supplemental materials provided *pursuant to subsection (b) or (d)* [that the Attorney General has declared] would harm the national security of the United States." 50 U.S.C. § 1885a(c) (emphasis added). By contrast, section 802(b) refers to "substantial evidence provided to the court *pursuant to this section* [*i.e.*, section 802 in its entirety]." 50 U.S.C. § 1885a(b) (emphasis added). "[W]here Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. U.S.*, 508 U.S. 200, 208 (1993). Thus, section 802(c)'s reference to only the certification and the supplemental materials is narrower than the broader reference in section 802(b) to "evidence provided to the court." Under the statute, therefore, the parties may submit evidence beyond the supplemental materials.[30]

Section 802(b), both by adopting the substantial evidence test and by instructing the Court that it must decide whether the "certification is not supported by substantial evidence provided to the court pursuant to this section," contemplates that the parties will submit evidence and the Court will decide whether, in light of all the evidence, the admissible evidence weighing in favor of the certification satisfies the substantial evidence test. Section 802(b) cannot be construed to allow the Attorney General to provide unlimited material, but deny the parties the right to participate meaningfully by submitting their own contrary or different evidence.[31]

_____

[30] The carriers agree that plaintiffs may submit evidence. Carriers' Br. at 17, n.24 (quoting Sen. Rockefeller's statement that "[w]hatever it is they want to submit, they can submit.").

[31] The government confuses a number of issues when it asserts that the APA does not apply and that, even if the APA did apply, it would limit the evidence that the Court may consider in applying the "substantial evidence" test. Gov't Reply at 27:3-17. First, as explained in the text, section 802
*(footnote continued on following page)*

-27-

## A. Plaintiffs Have Provided Admissible Evidence

Plaintiffs have submitted declarations of carrier employees, undisputed expert testimony, sworn testimony of government officials and official statements, letters and transcripts published by the government, among other evidence. Although neither the government nor the carriers made formal evidentiary objections, each has suggested the hearsay rule might apply to all of plaintiffs' evidence. *See, e.g.,* Gov't Reply at 26:2-3.[32]

The government has failed to object to plaintiffs' evidence with adequate specificity, so its objection should be overruled. The party moving to exclude evidence carries the burden of making a timely and specific objection. Fed. R. Evid. 103(a)(1); *Burch v. Regents of Univ. of Calif.*, 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006) (citation omitted). If the moving party fails to identify what aspects of testimony lack proper foundation or constitute inadmissible hearsay, merely alleging in a conclusory manner that the testimony is inadmissible, the objection lacks specificity. *U.S. v. Decoud*, 456 F.3d 996, 1012 (9th Cir. 2006). Similarly, where a party generally moves "to strike all of Plaintiffs' Exhibits that are not self authenticating" without specifying which of the plaintiffs' numerous exhibits it claimed were inadmissible for this reason, the objection is properly overruled. *Burch*, 433 F. Supp. 2d at 1123-24; *see also S.E.C. v. Merrill Scott & Associates, Ltd.*, 505 F. Supp. 2d 1193, 1200 (D. Utah 2007) (refusing to consider "blanket objection"). Here, the government's evidentiary objection is a blanket objection, no more specific than the improper, over-general ones in *Burch, Decoud*, and *Merrill Scott*.

---

*(footnote continued from preceding page)*
authorizes the plaintiffs to submit additional evidence to the Court for consideration in applying the "substantial evidence" test, and does not restrict that test to the evidence submitted by the Attorney General. Second, the "substantial evidence" test is not peculiar to APA review of agency decisions, but is widely applied and is commonly understood to require review of all relevant evidence, which here includes both all the relevant evidence submitted to the Court in support of and opposition to this motion, and all the evidence that was before the Attorney General in making his certification decision. *See* Plaintiffs' Opp. at 36-39. Third, plaintiffs do not argue that APA review applies "in lieu of Section 802" (Gov't Reply at 27:11-12) but instead that, as the default review for all administrative decisionmaking, the APA provides a separate layer of review that the government must satisfy in addition to section 802. *See* Plaintiffs' Opp. at 36-39.

[32] The government does not dispute that the declarations of Mark Klein (*Hepting* Dkt. 31), James Russell (*Hepting* Dkt. 41) or J. Scott Marcus (*Hepting* Dkt. 32) are not hearsay. Gov't Reply at 26, n.22. These declarations alone are enough to show a genuine dispute of material fact.

Moreover, the government's vague accusations of hearsay are incorrect. The statements by the carriers are not hearsay because they are admissions by party-opponents, as are the statements by the government co-conspirators of the carriers. Fed. R. Evid. 801(d)(2). The government suggests that at least some of the witnesses quoted in the Summary may be exempted from testifying at trial pursuant to its claims of privilege. Gov't Reply at 33:1-5 and n.30. To the extent that the Court subsequently agrees with the privilege claim, those witnesses would be unavailable, and therefore all of their statements against interest would be admissible as exceptions to the hearsay rule.[33]  Fed. R. Evid. 804(a)(1) & (b)(3).

Finally, hearsay evidence inadmissible under the rules discussed above can be admissible under the residual exception to the hearsay rule. Fed. R. Evid. 807. Rule 807 allows the court to consider evidence where there are "equivalent circumstantial guarantees of trustworthiness" and:

> (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

*Id.* While the government has not identified specific statements that it contests, it would be surprising if the government did not at least admit that statements made to Congress are appropriately trustworthy. *See* 18 U.S.C. § 1001. If the government asserts that the other statements by Members of Congress, government officials or the carriers, including those quoted in news reports, are not trustworthy, it should say so specifically so that plaintiffs can respond.

While statements in the Summary and its exhibits are offered as evidence of material facts, given the extreme efforts of the government and the carriers to conceal relevant evidence and the Court's prohibition of discovery, plaintiffs cannot provide more probative evidence through reasonable effort until they are allowed discovery. Before the claims of millions of Americans are dismissed, the interests of the rules of evidence and of justice require consideration of all the

---

[33] At this time, no witnesses have been "exempted by ruling of the court." The parties can brief whether the state secret privilege applies, whether FISA preempts the privilege and whether the government has waived the privilege when those issues are before the Court on an appropriate motion. Plaintiffs note that the Summary shows that the purported secret is not secret, and that plaintiffs are aggrieved persons for purposes of 50 U.S.C. § 1806(f).

-29-

relevant evidence cited in the Summary.

The government also asserts that the Summary is "pure speculation." (Gov't Reply at 2:17-18). Plaintiffs disagree, but it is no matter. In a summary judgment motion all inferences from the evidence must be viewed in the light most favorable to the non-moving parties, and plaintiffs' "version of any disputed issue of fact thus is presumed correct." *Eastman Kodak Co. v. Image Tech. Serv., Inc.*, 504 U.S. 451, 456 (1992); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) ("Inferences may be drawn from underlying facts that are not in dispute, such as background or contextual facts … and from underlying facts on which there is conflicting direct evidence…." (citations omitted)); *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir. 1992) (summary judgment inappropriate even where the dispute is only as to the conclusions to be drawn from the undisputed facts).

**B.     Plaintiffs Need Not Provide Evidence Admissible At Trial At This Stage**

"At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).[34] The primary case the government cites in support of its Rule 56(e) argument is *Twardowski v. American Airlines*, 535 F.3d 952, 961 (9th Cir. 2008), in which the court rejected a newspaper article as hearsay. In that case the court affirmed the summary judgment in part because this Court "permitted broad discovery into the [defendant's] actual practices …. Beyond this, discovery would be unlikely to produce any probative evidence." *Id*. at 961-962. Here, by contrast, plaintiffs have not been permitted to conduct any discovery, let alone "broad discovery."

Moreover, nothing in section 802 changes the Federal Rules of Civil Procedure, including plaintiffs' right to discovery under both Rules 26 and 56. *See U.S. v. Fausto*, 484 U.S. 439, 453 (1988) (It "can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change."). Section 802(h) states that "[n]othing in this section shall be

---

[34] The government's attempt to distinguish *Fraser* (Gov't Reply at 26, n.23) is unavailing. *Fraser* does not limit its rule only to cases where it is the affiant's testimony that would make the evidence admissible at trial. Like the author of the diary in *Fraser,* those with personal knowledge of the statements in the Summary could testify to those statements at trial.

-30-

construed to limit any otherwise available immunity, privilege, or defense under any other provision of law." 50 U.S.C. § 1885a(h). Thus, section 802 preserves plaintiffs' privileges under the Federal Rules.

Exceptions "to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *U.S. v. Nixon*, 418 U.S. 683, 710 (1974). Indeed, the district courts have "the latitude to control any discovery process which may be instituted so as to balance respondent's need for access to proof which would support a colorable constitutional claim against the extraordinary needs of the [government] for confidentiality and the protection of its [intelligence] methods, sources, and mission." *Webster v. Doe*, 486 U.S. 592, 604 (1988). Furthermore, the Federal Rules strongly favor full discovery: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1).

Rule 56(f) provides that to the extent that plaintiffs "cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Fed. R. Civ. P. 56(f). A Rule 56(f) application must be granted where, as here, a plaintiff makes "a timely application which specifically identifies relevant information, and where there is some basis for believing that the information sought actually exists." *Church of Scientology of San Francisco v. I.R.S.*, 991 F.2d 560, 562 (9th Cir. 1993); *see also Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1178-79 (9th Cir. 2006) (district courts required to resolve discovery issues before granting summary judgment).

The Cohn Declaration sets forth discovery that could lead to critical facts, including the discovery necessary "to address any claims that any of the information in [the Summary] requires authentication, is hearsay or is otherwise inadmissible." Cohn Decl. (Dkt. 478), ¶ 9. The government asserts Rule 56(f) is nevertheless inapplicable, arguing that "Plaintiffs have not and cannot make" a showing that the evidence plaintiffs seek exists. Gov't Reply at 33:20-34:2. To the contrary, the detailed Summary shows that there is a vast array of evidence already available that would be material to the section 802(b) analysis, including critical evidence that is not classified,

-31-

*see* Summary at 43-44. It would be straightforward to authenticate plaintiffs' exhibits, such as hearing transcripts, press conferences, or letters, and the necessary discovery would not require any purported state secrets. The evidence set forth in the Summary also demonstrates that the additional information sought by the discovery outlined in the Cohn Declaration is not " 'almost certainly nonexistent or ... the object of pure speculation' " (Gov't Reply at 33:16-18), but that instead "there is some basis for believing that the information sought actually exists." *Church of Scientology*, 991 F.2d at 562. Thus, the Court can give effect to both section 802 and the Federal Rules by "order[ing] a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken" pursuant to Rule 56(f)(2), and—to the extent necessary—reviewing the results of that discovery *in camera*. *See* 50 U.S.C. § 1806(f).

Finally, the government concedes that "if the Court requires additional information concerning the certification" it may "address those issues with the Government *ex parte, in camera*." Gov't Reply at 33:6-8. Indeed, the Court "has inherent power to compel a party to produce, without the issuance of a subpoena, documentary evidence within his control and known to be relevant." *Producers Releasing Corp. de Cuba v. PRC Pictures, Inc*., 176 F.2d 93, 95 (2d Cir. 1949); *see also U.S. v. Nobles*, 422 U.S. 225, 231 (1975) (court has inherent power to order production to ensure " 'full disclosure of all the [relevant] facts' "). This "doctrine is rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (citing *Ex parte Peterson*, 253 U.S. 300 (1920)). Thus, even assuming *arguendo* that Rule 56(f) did not apply, the Court has inherent authority to investigate all of the avenues identified in the Cohn Declaration.

**C.    The Government Has Conceded Key Legal Issues Relevant To The Evaluation Of The Attorney General's Certification**

The government has not disputed the critical legal definitions necessary for this Court to properly evaluate the government's certification. Failure to raise legal issues in connection with summary judgment motions waives those arguments. *Heffelfinger v. Electronic Data Sys. Corp*., __

-32-

F. Supp. 2d __, 2008 WL 2444690 (C.D. Cal. 2008) (failure to address opponent's arguments on two prongs of legal test constitutes concession that prongs are met). The government does not dispute plaintiffs' interpretation of the statutory phrases "designed to" or "pursuant to,"[35] nor that section 802(a)(3) does not apply to the *domestic* surveillance at issue here. Pl. Opp. at 43-48. Likewise, the government has not disputed the definitions of "content" and "acquisition" explained in Plaintiffs' Opposition. *Id.* at 40-43. Accordingly, the government has conceded these points, and its certification and whether substantial evidence supports it must be adjudicated under the legal standards set forth in Plaintiffs' Opposition.[36]

## VI. The Government Has Not Made Its Case With Admissible Evidence

Plaintiffs interposed a number of evidentiary objections (Dkt. 477) to the government's motion. Those objections rested on the common-sense notion that Congress intended that the term "substantial evidence" in section 802 have its ordinary legal meaning. The government, invoking a sense of entitlement in lieu of addressing why the objections should be overruled, appears to believe that the Court must accept the Attorney General's certification and the secret "supplemental materials" regardless of the law of evidence. The government makes the nonsensical argument that because the statute authorizes the Attorney General to submit a certification, and to accompany it with "supplemental materials," the supplemental materials must be, *ipso facto,* "substantial evidence" in support of the certification. Gov't Reply at 22:18-23:8. That argument does not follow the statutory language and is not what Congress intended.

The irony of the government's position is that it spent multiple pages in its brief arguing

---

[35] The carriers appear to read "any assistance by that person was provided pursuant to" a particular statutory authority to mean "that person received a piece of paper" naming the statutory authority, but offer no analysis or authority supporting this reading (because there is none). *Compare* 50 U.S.C. § 1885a(a)(1)-(3) with Carriers' Br. at 2:7, 16:20, 19:14, and n.11. The mere receipt of a piece of paper purporting to be issued under a statute's authority is not evidence that the assistance complied with the statute, nor that the assistance provided matched the assistance requested.

[36] Section 802's secrecy provisions only allow for the secret submission of *factual* matters in the Attorney General's certification and supplemental materials. *See* 50 U.S.C. § 1885a(c) & (d). To the extent that the government has responded to plaintiffs' *legal* arguments in its secret Supplemental Reply Brief, its argument is improper and should be stricken. Nor is there any reason why the government would need to keep its statutory interpretation arguments secret.

that Congress has the constitutional power to enact section 802 and then, when seeking to invoke section 802, ignored the words that Congress actually used. "Substantial evidence" and "supplemental materials" simply are not the same. They appear in different subsections of section 802; if they were meant to be the same, one would be superfluous. Section 802(b)(1) provides that a certification "*shall* be given effect unless the court finds that such certification is not supported by substantial evidence …" but section 802(b)(2) provides that "the court *may* examine…" supplemental materials. 50 U.S.C. § 1885a(b)(1)-(2) (emphases added).

This ordinary and natural interpretation of the statutory language, according to the government, "would render Section 802 completely inoperative." Gov't Reply at 23:6. The government is wrong. Only the government decides what supplemental materials it will submit on its motion, but the Court decides whether all or any of the supplemental materials constitute substantial evidence, or even admissible evidence, in support of the certification. This is no different than any other evidentiary determination made by a court in any other case, and nothing in either the statute or its legislative history indicates to the contrary. Supplemental materials are only evidence if they are admissible; they are only substantial evidence if they are both admissible and of sufficient weight in light of plaintiffs' evidence and the rest of the record to satisfy the substantial evidence test.

As for the government's other specific points:  First, the government argues that agency officials such as the Attorney General, the Director of National Intelligence and the NSA Director have personal knowledge if they rely on matters learned from a review of their respective agency records. This unremarkable proposition misses the point. Plaintiffs have never had the opportunity to cross-examine the Attorney General, the DNI or the NSA Director to determine, for instance, whether their assertions are in fact based on such a review. In the absence of that opportunity, the certification and the government's declarations are not admissible against the plaintiffs, see Parts I, III and IV of the evidentiary objections (Dkt. 477). "Testimony presented by affidavit is different from testimony orally delivered, because the affiant is not subject to cross-examination. But that fact leads to greater, not lesser, strictures imposed on the testimony presented by affidavit." *U.S. v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970).

-34-

No. M-06-01791-VRW    MDL Plaintiffs' Reply to Briefs of the Carriers and of
the United States Seeking to Apply 50 U.S.C. § 1885a to
Dismiss These Actions

1    Second, the government argues that the SSCI Report is not being used to prove the truth of

2    the matters stated therein. Gov't Reply at 24, n.20.[37] But then, six pages later, the government

3    relies on the SSCI Report for precisely that purpose. Gov't Reply at 29, n.26 and accompanying

4    text. For example, in note 26, the government argues that "[t]he SSCI found that the 'details of the

5    President's program are highly classified' and that, as with other intelligence matters, the identities

6    of persons or entities who provide assistance to the U.S. Government are protected as vital sources

7    and methods of intelligence." There is no reason other than to prove the truth of the matter that the

8    government would quote the SSCI Report for that purpose.[38]

9    The supplemental materials that the government has submitted cannot be substantial

10    evidence, or any form of admissible evidence. The government submitted its supplemental

11    materials in secret, and secret evidence cannot be used against plaintiffs on a dispositive motion.

12

**CONCLUSION**

13    For the foregoing reasons, the Court should deny the government's motion and hold that

14    section 802 is unconstitutional and cannot be used to dismiss plaintiffs' actions. Alternatively, the

15    Court should deny the government's motion on the ground that it has not met its burden of

16    presenting substantial evidence in support of its certifications.

17    DATED:  November 20, 2008          Respectfully submitted,

18

                                  */s/  Cindy A. Cohn*

19

                                  Cindy A. Cohn

20                                     ELECTRONIC FRONTIER FOUNDATION

21

22

23

24

[37] The government argues that even if the SSCI Report is offered to prove the truth of what it

25   states, it should be admissible as a public record. Gov't Reply at 24, n.20. The government has not

26   overcome the great weight of contrary authority set forth in Part II.A of plaintiffs' Evidentiary
Objections, and ignores completely the hearsay upon hearsay problems described in Part II.B.

27   [38] The SSCI Report is not an agency record of the Department of Justice or any other Executive
agency; thus, the Attorney General may not establish personal knowledge simply by being the head

28   of an Executive agency, and has not otherwise established it.

No. M-06-01791-VRW    MDL Plaintiffs' Reply to Briefs of the Carriers and of
the United States Seeking to Apply 50 U.S.C. § 1885a to
Dismiss These Actions

ROGER BALDWIN FOUNDATION OF
ACLU
HARVEY GROSSMAN
ADAM SCHWARTZ
180 North Michigan Avenue
Suite 2300
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 201-9760

COUNSEL FOR AT&T CLASS
PLAINTIFFS AND CO-CHAIR OF
PLAINTIFFS' EXECUTIVE COMMITTEE

ANN BRICK
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

COUNSEL FOR PLAINTIFFS IN
*CAMPBELL v. AT&T* AND *RIORDAN v.
VERIZON COMMUNICATIONS INC.*

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
PETER J. ELIASBERG
1313 West Eighth St.
Los Angeles, CA 90026

Telephone: (213) 977-9500
Facsimile: (213) 977-5299

COUNSEL FOR PLAINTIFFS IN
*CAMPBELL v. AT&T* AND *RIORDAN v.
VERIZON COMMUNICATIONS INC.*

FENWICK & WEST LLP
LAURENCE F. PULGRAM
JENNIFER KELLY
CANDACE MOREY
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

COUNSEL FOR PLAINTIFFS IN
*CAMPBELL v. AT&T* AND *RIORDAN v.
VERIZON COMMUNICATIONS INC.*

ELECTRONIC FRONTIER FOUNDATION
CINDY A. COHN, ESQ.
LEE TIEN, ESQ.
KURT OPSAHL, ESQ.
KEVIN S. BANKSTON, ESQ.
CORYNNE MCSHERRY, ESQ.
JAMES S. TYRE, ESQ.
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

COUNSEL FOR AT&T CLASS PLAINTIFFS
AND CO-CHAIR OF PLAINTIFFS'
EXECUTIVE COMMITTEE

LAW OFFICE OF RICHARD R. WIEBE
RICHARD R. WIEBE
425 California Street
Suite 2025
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

COUNSEL FOR AT&T CLASS PLAINTIFFS

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
ELIZABETH J. CABRASER
BARRY R. HIMMELSTEIN
ERIC B. FASTIFF
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

PLAINTIFFS' COUNSEL FOR MCI
SUBSCRIBER CLASS

LISKA, EXNICIOS & NUNGESSER
ATTORNEYS-AT-LAW
VAL PATRICK EXNICIOS
One Canal Place, Suite 2290
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

PLAINTIFFS' COUNSEL FOR BELLSOUTH
SUBSCRIBER CLASS

MOTLEY RICE LLC
RONALD MOTLEY
DONALD MIGLIORI
JODI WESTBROOK FLOWERS
VINCENT I. PARRETT
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

PLAINTIFFS' COUNSEL FOR VERIZON
SUBSCRIBER CLASS

THE MASON LAW FIRM, PC
GARY E. MASON
NICHOLAS A. MIGLIACCIO
1225 19th St., NW, Ste. 500
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

PLAINTIFFS' COUNSEL FOR SPRINT
SUBSCRIBER CLASS

BRUCE I AFRAN, ESQ.
10 Braeburn Drive
Princeton, NJ 08540
609-924-2075

PLAINTIFFS' COUNSEL FOR
BELLSOUTH SUBSCRIBER CLASS

MAYER LAW GROUP LLC
CARL J. MAYER
66 Witherspoon Street, Suite 414
Princeton, New Jersey 08542
Telephone: (609) 921-8025
Facsimile: (609) 921-6964

PLAINTIFFS' COUNSEL FOR BELLSOUTH
SUBSCRIBER CLASS

THE LAW OFFICES OF STEVEN E.
SCHWARZ, ESQ.
STEVEN E. SCHWARZ
2461 W. Foster Ave., #1W
Chicago, IL 60625
Telephone: (773) 837-6134

PLAINTIFFS' COUNSEL FOR BELLSOUTH
SUBSCRIBER CLASS

KRISLOV & ASSOCIATES, LTD.
CLINTON A. KRISLOV
20 North Wacker Drive
Suite 1350
Chicago, IL 60606
Telephone: (312) 606-0500
Facsimile: (312) 606-0207

PLAINTIFFS' COUNSEL FOR BELLSOUTH
SUBSCRIBER CLASS

-37-