GREGORY G. KATSAS
Assistant Attorney General, Civil Division
CARL J. NICHOLS
Principal Deputy Associate Attorney General
JOHN C. O'QUINN
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS
PAUL G. FREEBORNE
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br>ALL CLAIMS AGAINST ELECTRONIC COMMUNICATION SERVICE PROVIDER DEFENDANTS (including *AT&T, MCI/ Verizon, Sprint/Nextel, Cingular Wireless/AT&T Mobility, and BellSouth* Defendants) including in:<br>06-00672 06-05268 06-06253 06-07934<br>06-03467 06-05269 06-06295 07-00464<br>06-03596 06-05340 06-06294 07-01243<br>06-04221 06-05341 06-06313 07-02029<br>06-03574 06-05343 06-06388 07-02538<br>06-05067 06-05452 06-06385<br>06-05063 06-05485 06-06387<br>06-05064 06-05576 06-06435<br>06-05065 06-06222 06-06434<br>06-05066 06-06224 06-06924<br>06-05267 06-06254 06-06570; and<br>Master *MCI/Verizon* Compl. (Dkt. 125);<br>Master *Sprint* Compl. (Dkt. 124); Master *BellSouth* Complaint (Dkt. 126); Master *Cingular* Amended Complaint (Dkt. 455) | MDL Docket No. 06-cv-1791-VRW<br><br>**UNITED STATES' RESPONSE TO PLAINTIFFS' NOTICE OF NEW LEGAL AND FACTUAL AUTHORITY**<br><br>Chief Judge Vaughn R. Walker |

**United States' Response to Plaintiffs' Notice of New Legal and Factual Authority**
(MDL No. 06-CV-1791-VRW)

# INTRODUCTION

On December 19, 2008, plaintiffs filed a "Notice of New Legal and Factual Authorities" in support of their opposition to the United States' Motion to Dismiss or for Summary Judgment in the above-referenced actions. *See* Dkt. 535 (06-cv-1791-VRW). The Government's motion was based on Section 802 of the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1885a, which provides, *inter alia*, that a civil action may not lie or be maintained against electronic communication services providers alleged to have provided assistance to an element of the intelligence community, and shall be promptly dismissed if the Attorney General of the United States certifies that one of several circumstances exist, including that the provider did not provide the alleged assistance or assisted pursuant to various authority listed in this provision. *See* 50 U.S.C. § 1885a(a)(1)-(5). Section 802 expressly authorizes the Attorney General to submit the basis for his certification as to particular provider-defendants solely for *in camera*, *ex parte* review when the Attorney General finds that such review is necessary to protect national security. *See* 50 U.S.C. 1885a(c)(1).

Plaintiffs' "Notice" primarily addresses a recent decision by the Court of Appeals for the Second Circuit in *Doe v. Mukasey* (No. 07-4943, Dec. 15, 2008) (Dkt. 535-2), which plaintiffs contend supports their position that Section 802's authorization of *in camera*, *ex parte* review of the Attorney General's certification here violates the First Amendment "by eliminating judicial review and compelling the Court to defer to the Executive's unreviewable discretion that disclosure would harm national security and that there is no less restrictive alternative to nondisclosure." *See* Notice, Dkt. 535 at 3, ¶ 6. But the statutory provisions at issue in *Doe* are clearly distinguishable from Section 802 of the FISA; indeed, *Doe* actually supports the use of *in camera*, *ex parte* review of national security information even in First Amendment challenges.

Plaintiffs also cite a recent declaration submitted by the Government in a FOIA case, which indicates that the Government and provider-defendants share a common interest in this litigation, in support of plaintiffs' contention that the Attorney General "is a biased decisionmaker who has not acted impartially in submitting his certification to the Court." *See id*.

**United States' Response to Plaintiffs' Notice of New Legal and Factual Authority**
**(MDL No. 06-CV-1791-VRW)**

at 4, ¶ 8. But the commonality of interests shared by the Government and provider-defendants in this litigation does not render the Attorney General's certification biased or in violation of due process. Lastly, plaintiffs seek to add another media report to their "evidence" in opposition to the Government's motion and in support of their request for discovery into alleged intelligence activities. As the Government has previously set forth, however, such media reports cannot overcome the Attorney General's certification in this case.

All three aspects of plaintiffs' Notice are meritless and do not establish any ground for denying the Government's motion to dismiss or for summary judgment, brought pursuant to Section 802 of the FISA, in all pending actions against electronic communication service provider-defendants .

**ARGUMENT**

**I. *DOE v. MUKASEY* IS CLEARLY DISTINGUISHABLE FROM THIS CASE, BUT ALSO AFFIRMS THE USE OF *IN CAMERA*, *EX PARTE* REVIEW OF NATIONAL SECURITY INFORMATION.**

Plaintiffs' reliance on *Doe v. Mukasey* is unfounded. *Doe* involved statutory provisions that materially differ from Section 802 of the FISA. Specifically at issue in *Doe* are statutory provisions that: (1) preclude a private party from disclosing the fact that it was the recipient of a National Security Letter from the Federal Bureau of Investigation ("FBI") seeking information related to an investigation to protect against international terrorism or clandestine intelligence activities, *see* 18 U.S.C. § 2709(c); and (2) permit a United States District Court to set aside or modify the nondisclosure requirement if the court found "no reason to believe" that disclosure would be harmful, but which required the court to treat a certification by the Attorney General or a senior governmental official that disclosure of the NSL request may endanger national security or interfere with diplomatic relations as "conclusive" unless made in bad faith, *see id*. §§ 3511(b)(2), (3); *see Doe*, Slip Op. (Dkt. 535-2) at 6-15. In sum, the statutory provisions at issue in *Doe* barred a private party from disclosing that it received an NSL request and required that, in reviewing the merits of a challenge to this bar on disclosure, a district court must accept as conclusive the Government's certification of harm to national security.

The Second Circuit held first that the nondisclosure requirement on NSL recipients is a prior restraint on the content of their speech, *see Doe*, Slip Op. (Dkt. 535-2) at 32-37; indeed, the court held that this requirement constituted a bar on "publicly expressing a category of information" that the plaintiffs possessed and that was "relevant to intended criticism of a government entity," *see id*. at 36. As a result, the court held that it would be inappropriate to place on the private party the burden of challenging the lawfulness of the nondisclosure requirement and, thus, that the Government was required to initiate judicial review if the NSL recipient made a timely objection to nondisclosure. *See id*. at 38-43. With respect to the judicial review provisions, the Second Circuit held that review of any challenge to the nondisclosure requirement contemplated by 18 U.S.C. § 3511(b) was inconsistent with the First Amendment to the extent that it required the court to accept the Government's certification of harm as conclusive in deciding the merits of a First Amendment challenge to nondisclosure. *See id*. at 47. In that context, the court held that a mere "fiat" certification of harm to national security was insufficient, and that "some demonstration from the Executive Branch of the need for secrecy is required in order to conform the nondisclosure requirement to First Amendment standards." *Id*. at 47. The court remanded the case so that "the Government may have an opportunity to sustain its burden of proof and satisfy the constitutional standards we have outlined for maintaining the disclosure requirement." *Id*. at 54.

It should be apparent that the kind of statutory provisions and circumstances at issue in *Doe* do not exist in this case. First, the authorization of *in camera*, *ex parte* review of the Attorney General's certification in Section 802 of the FISA obviously does not constitute a prior restraint on the disclosure of information possessed by a private party. Nothing in Section 802 prevents plaintiffs from disclosing any information they may possess. Section 802 simply authorizes *the Government* to submit a classified certification for *in camera*, *ex parte* review where the Attorney General determines that disclosure of that information would harm national security. A prior restraint on the disclosure of information already in a private speaker's possession could not be more different from the claimed right of the plaintiffs *to discover or*

*obtain* disclosure of classified information filed *in camera*, *ex parte* with the Court. Plaintiffs do not possess—and have no right to possess—the classified national security information at issue in the Attorney General's classified certification, and its protection under Section 802 does not constitute a prior restraint on *plaintiffs'* speech. Indeed, as we have previously pointed out, courts have repeatedly affirmed the Government's right to submit national security information for *in camera*, *ex parte* review in a judicial proceeding. *See* United States' Reply in Support of Motion to Dismiss or, in the Alternative, For Summary Judgment (Dkt. 520, 06-1791-VRW) at 17-20.

Also inapposite here is the Second Circuit's holding in *Doe* that the Government's certification of harm to national security would operate to determine "conclusively" the validity of the Government's interest in response to a challenge to nondisclosure. Section 802 of the FISA presents no comparable issue; it simply requires *in camera*, *ex parte* review of the Attorney General's certification where the Attorney General determines that harm to national security would otherwise result, but does not direct how the Court must decide any issue arising in plaintiffs' challenge to this nondisclosure requirement. Plaintiffs' First Amendment claim remains subject to review based on applicable legal standards. *See* USG Reply (Dkt. 520) at 20-22.

Third, and perhaps most notably, the Second Circuit's decision in *Doe* actually supports Section 802's authorization of *in camera*, *ex parte* review of national security information, even in deciding First Amendment claims. In *Doe*, the district court had rejected a constitutional challenge to *in camera* and *ex parte* judicial proceedings, *see Doe*, Slip Op. (Dkt. 535-2) at 17 n.10, and the Second Circuit, likewise, recognized that *in camera*, *ex parte* judicial review "provide(s) a ready mechanism for the FBI to provide a more complete explanation of its reasoning" on why disclosure of an NSL would harm national security. *See id.* at 45 & n.15 (noting that the Government's classified declaration in *Doe*, submitted for *in camera*, *ex parte* review, will be available to the district court on remand). The concern in *Doe* was not that the Government could utilize statutory procedures for *in camera*, *ex parte* review to support its

**United States' Response to Plaintiffs' Notice of New Legal and Factual Authority**
**(MDL No. 06-CV-1791-VRW)** 4

position or show that disclosure would harm national security, but that the Government's certification of harm must be treated as "conclusive" of the Government's interests as a matter of law in the court's consideration of the merits of plaintiffs' claim. But the Second Circuit clearly recognized that the Government could utilize *in camera*, *ex parte* judicial proceedings to show *why* information should not be publicly disclosed (even in response to a First Amendment challenge to nondisclosure) and that is precisely what the Government has done in this case pursuant to Section 802 of the FISA. Indeed, the Second Circuit noted that, so long as the Executive's judgment as to the harm of disclosure has been "soundly reached," then "[s]uch a judgment is not to be second-guessed." *See Doe*, Slip Op. (Dkt. 535-2) at 45-46; *see also id* at 21 ("national security context . . . imposes on courts a significant obligation to defer to judgments of Executive Branch officials") and at 37 (noting that there is no governmental interest more compelling than the security of the nation). The court also stated that "[a] demonstration of reasonable likelihood of potential harm, related to international terrorism or clandestine intelligence activities, will virtually always outweigh the First Amendment interest in speaking about such a limited and particularized occurrence as the receipt of an NSL and will suffice to maintain the secrecy of the fact of such receipt." *Id.* at 46;

Accordingly, assuming the correctness of the Second Circuits's holding pending any further review, *Doe* supports the kind of *in camera, ex parte* review authorized by Section 802 of the FISA under a broadly deferential standard of review. Here, the Attorney General's *in camera*, *ex parte* submission amply demonstrates that disclosure of his classified certification would compromise information concerning sensitive intelligence sources and methods, and thereby cause grave harm to national security. This showing easily satisfies the highly deferential standard of review identified in *Doe* to the extent applicable to plaintiffs' First Amendment challenge to Section 802. *See* USG Reply (Dkt. 520) at 20-22.

In sum, Section 802 of the FISA does not remotely impose the kind of prior restraint on the speech of a private party that the Second Circuit found to be present in *Doe*, but authorizes *in camera*, *ex parte*, review of classified information in a manner fully consistent with *Doe*, even as

**United States' Response to Plaintiffs' Notice of New Legal and Factual Authority (MDL No. 06-CV-1791-VRW)** 5

to First Amendment claims.

## II. THE GOVERNMENT'S "COMMON INTEREST" WITH THE PROVIDER-DEFENDANTS IN THIS LITIGATION DOES NOT RENDER THE ATTORNEY GENERAL'S CERTIFICATION BIASED.

Plaintiffs also submit the Declaration of Carl J. Nichols, which was recently filed in a Freedom of Information Act case concerning the applicability of FOIA exemptions on privileged communications between Government counsel and counsel for the telecommunication carrier defendants regarding legislation that became the FISA Act Amendments of 2008. *See* Dkt. 535-3 (Exh. B to Pls. Notice). That declaration simply states what should be apparent: that the Government shares a "common interest" with the provider-defendants in this litigation, which challenges (and seeks disclosure of information related to) alleged intelligence activities of the United States Government. *See id*. ¶¶ 20-23. This common interest does not render the Attorney General "a biased decisionmaker who has not acted impartially in submitting his certification to the Court," as plaintiffs contend. *See* Notice (Dkt. 535) at 4, ¶ 8.

As we have previously shown, the Attorney General's certification presents under oath a discrete set of classified facts within the possession of the Executive Branch (whether or not or to what extent a defendant participated in any alleged activity) upon which the Court's application of the law set forth in Section 802 is to be based. *See* USG Reply (Dkt. 520) at 15-17. Under the narrow circumstances established by Section 802, the fact that the Government (and Attorney General Mukasey in particular) supported the FISA Act Amendments of 2008 and has sought dismissal of this action in order to protect the Government's intelligence sources and methods does not render the Attorney General's certification the product of "bias" nor a violation of due process. *See id*.

## III. MEDIA REPORTS CANNOT OVERCOME THE ATTORNEY GENERAL'S CERTIFICATION HERE.

Finally, plaintiffs seek to add a recent *Newsweek* report to the "evidence" they seek to submit in opposition to the Government's motion and in support of their request for discovery into their allegations. Aside from being hearsay and inadmissible under Rule 56(e) in response to the Government's summary judgment motion, *see* USG Reply (Dkt. 520) at 25-26, this media

**United States' Response to Plaintiffs' Notice of New Legal and Factual Authority**
**(MDL No. 06-CV-1791-VRW)**
6

report (like similar ones plaintiffs have previously submitted) has no bearing on the issue now before the Court. FISA Section 802(a) does not contemplate discovery, but requires prompt dismissal upon an Attorney General certification showing that at least one of five facts exists with respect to whether or not the provider-defendants allegedly assisted an element of the intelligence community. *See id*. at 32-33; 50 U.S.C. § 1885a(a).

Moreover, media reports do not supplant judgments by the Government as to the need to protect national security information. *See*, *e.g*., *Fitzgibbon v. CIA*, 911 F.2d 755, 765-66 (D.C. Cir. 1990) ("[W]e have unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations."). Throughout this litigation, the Government has submitted classified declarations to the Court (most recently the Attorney General's certification) addressing allegations similar to those raised in the *Newsweek* report and demonstrating the harm to national security that would result from confirmation or denial of information pertaining to these allegations. Congress has joined in that judgment through its enactment of Section 802 of the FISA and other laws that protect information concerning intelligence sources and methods.[1] It is this judgment to which the Court owes deference—not further speculation in media reports. *See CIA v. Sims*, 471 U.S. 159, 180 (1985) ("[i]t is the responsibility of the [intelligence community], not that of the judiciary to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process.").

Accordingly, the additional *Newsweek* report on which plaintiffs seek to rely is (along with other such reports) inadmissible, irrelevant, and immaterial. *See* USG Reply (Dkt. 520) at 25-27.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the United States' previous submissions,

---

[1] *See* 50 U.S.C. § 403-1(i)(1) and Section 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36 (codified as a note to 50 U.S.C. § 402) (requiring the protection of information concerning intelligence sources and methods).

**United States' Response to Plaintiffs' Notice of New Legal and Factual Authority**
**(MDL No. 06-CV-1791-VRW)** 7

all claims against the electronic communication service provider-defendants in this proceeding should be promptly dismissed pursuant to Section 802 of the FISA. *See* 50 U.S.C. § 1885a.

| January 5, 2009 | Respectfully Submitted, |
|---|---|
| | GREGORY G. KATSAS<br>Assistant Attorney General |
| | CARL J. NICHOLS<br>Principal Deputy Associate Attorney General |
| | JOHN C. O'QUINN<br>Deputy Assistant Attorney General |
| | DOUGLAS N. LETTER<br>Terrorism Litigation Counsel |
| | JOSEPH H. HUNT<br>Director, Federal Programs Branch |
| | *s/ Anthony J. Coppolino*<br>ANTHONY J. COPPOLINO<br>Special Litigation Counsel |
| | ALEXANDER K. HAAS<br>PAUL G. FREEBORNE<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Avenue, NW, Rm. 6102<br>Washington, D.C. 20001<br>Phone: (202) 514-4782—Fax: (202) 616-8460<br>Email: tony.coppolino@usdoj.gov |
| | *Attorneys for the United States* |

**United States' Response to Plaintiffs' Notice of New Legal and Factual Authority**
**(MDL No. 06-CV-1791-VRW)**

8