MICHAEL F. HERTZ
Acting Assistant Attorney General, Civil Division
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
MARC KRICKBAUM
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | MDL Docket No. 06-cv-1791-VRW |
| This Document Relates To: ALL CLAIMS AGAINST ELECTRONIC COMMUNICATION SERVICE PROVIDER DEFENDANTS (including *AT&T, MCI/Verizon, Sprint/Nextel, Cingular Wireless/AT&T Mobility, and BellSouth* Defendants) including in: 06-00672 06-05268 06-06253 06-07934 06-03467 06-05269 06-06295 07-00464 06-03596 06-05340 06-06294 07-01243 06-04221 06-05341 06-06313 07-02029 06-03574 06-05343 06-06388 07-02538 06-05067 06-05452 06-06385 06-05063 06-05485 06-06387 06-05064 06-05576 06-06435 06-05065 06-06222 06-06434 06-05066 06-06224 06-06924 06-05267 06-06254 06-06570; and Master *MCI/Verizon* Compl. (Dkt. 125); Master *Sprint* Compl. (Dkt. 124); Master *BellSouth* Complaint (Dkt. 126); Master *Cingular* Amended Complaint (Dkt. 455) | **UNITED STATES' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>Chief Judge Vaughn R. Walker |

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)**

# TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     THERE IS A STRONG PRESUMPTION THAT ACTS OF CONGRESS
       DO NOT VIOLATE THE NON-DELEGATION DOCTRINE . . . . . . . . . . . . . . . . . . . 1

II.    BECAUSE SECTION 802 DOES NOT DELEGATE LEGISLATIVE AUTHORITY
       TO THE ATTORNEY GENERAL, THE NON-DELEGATION DOCTRINE DOES
       NOT APPLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   SECTION 802 PROVIDES SUFFICIENT GUIDANCE FOR THE ATTORNEY
       GENERAL'S DECISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   CONGRESS MAY LEAVE THE DECISION ABOUT WHETHER AND WHEN TO
       MAKE A CERTIFICATION TO THE ATTORNEY GENERAL'S DISCRETION. . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(S)**

*Am. Trucking Assns., Inc. v. Whitman*, 531 U.S. 457 (2001) . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 9

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) . . . . . . . . . . . . . . . . . . . . 2

*Carcieri v. Kempthorne*, 497 F.3d 15 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dep't of Navy v. Egan*, 484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fed. Engery Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548 (1975) . . . . . . . . . . . . . . . . . . . . . . 6

*Field v. Clark*, 143 U.S. 649 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 12

*Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996) . . . . . . . . . 6, 10, 12, 13

*Haig v. Agee*, 453 U.S. 280 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*INS v. Chadha*, 462 U.S. 919 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394 (1928) . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Leslie Salt Co. v. United States*, 55 F.3d 1388 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Lichter v. United States*, 334 U.S. 742 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Loving v. United States*, 517 U.S. 748 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12

*Michigan Gambling Opposition v. Kempthorne*, 525 F.3d 23 (D.C. Cir. 2008) . . . . . . . . . . . . . 5

*Mistretta v. United States*, 488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 8, 9

*Nat'l Broad. Co. v. United States*, 319 U.S. 190 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*New York Cent. Sec. Corp. v. United States*, 287 U.S. 12 (1932) . . . . . . . . . . . . . . . . . . . . . . . 12

*Owens v. Republic of Sudan*, 531 F.3d 884 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . 3, 10, 12

*Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*South Dakota v. U.S. Dep't of Interior*, 423 F.3d 790 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 5

*Touby v. United States*, 500 U.S. 160 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 12

*United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304 (1936) . . . . . . . . . . . . . . . . . . . 2, 9, 12

*United States v. Doe*, 465 U.S. 605 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Grimaud*, 220 U.S. 506 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Roberts*, 185 F.3d 1125 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Yakus v. United States*, 321 U.S. 414 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Zemel v. Rusk*, 381 U.S. 1 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Art. I, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATUTES**

8 U.S.C. § 1157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 U.S.C. § 1226a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 U.S.C. § 1442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10 U.S.C. § 818 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 U.S.C. § 836 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 U.S.C. § 856 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 5032 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 6003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. App. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 811 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21 U.S.C. § 824 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 2679 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

50 U.S.C. § 1885a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**FEDERAL RULES**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**LEGISLATIVE MATERIALS**

S. Rep. 110-209 (2007), accompanying S.2248, Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, Senate Select Committee on Intelligence . . . . . . . . . . . . . . . . . . . 5, 6

**OTHER MATERIALS**

Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315 (2000) . . . . . . . . . . . . . . . . . 2

Gary Lawson, *Delegation and Original Meaning*, 88 Va. L. Rev. 327 (2002) . . . . . . . . . . . . . 2

# INTRODUCTION

The Court has directed the parties to submit supplemental briefs addressing whether Section 802 of the Foreign Intelligence Surveillance Act ("the Act"), 50 U.S.C. § 1885a, is an unconstitutional delegation of legislative authority under the standards announced by the Supreme Court in *Yakus v. United States*, 321 U.S. 414 (1944) (Dkt. 559). As set forth below, Section 802 does not run afoul of the non-delegation doctrine for at least three reasons. First, the statute grants the Attorney General authority to certify facts to the Court. Because certification of facts is not an exercise of legislative power, the non-delegation doctrine simply does not apply. Second, even if the doctrine applies, Congress supplied the requisite intelligible principle by specifically and narrowly defining the conditions under which the Attorney General may make a certification, and the statute's legislative history provides further guidance, should any be necessary. Third, under well-settled law, Congress may leave the decision whether and when to make a certification to the Attorney General's discretion.

# ARGUMENT

## I. THERE IS A STRONG PRESUMPTION THAT ACTS OF CONGRESS DO NOT VIOLATE THE NON-DELEGATION DOCTRINE.

The Constitution vests "all legislative Powers herein granted in a Congress of the United States," U.S. Const., Art. I, § 1, and the non-delegation doctrine holds that "Congress generally cannot delegate [this] legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). To avoid an unconstitutional delegation of legislative power, Congress must provide an "intelligible principle" to guide those it empowers with decisionmaking authority. *See id*.

In the domestic context, there is a strong presumption that congressional enactments comply with these requirements, so much so that the Ninth Circuit has stated that the very "vitality of the nondelegation doctrine is questionable." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1396 n.3 (9th Cir. 1995). This presumption of constitutionality becomes even stronger—and Congress is permitted to make even broader grants of power—where, as here, Congress delegates authority to the Executive in areas involving his authority over national

security or foreign affairs. *See, e.g., United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 321-22, 324 (1936).

The Supreme Court has invalidated a statute on non-delegation grounds only twice in our nation's history, doing so for the first and last time in 1935. *See Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935).[1] In the Court's words, it has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Am. Trucking Assns., Inc. v. Whitman*, 531 U.S. 457, 474-75 (2001) (internal quotation omitted). Moreover, as set forth further below, the Court has consistently upheld against non-delegation challenge statutes that authorize, but do not require, a member of the Executive Branch to act, provide a broad intelligible principle to guide his action, but then provide no further guidance about whether and when to exercise his authority. *See infra* at 9-12. Thus, under well-settled law, nothing in the Constitution prevents Congress from granting to the Attorney General broad discretion regarding whether and when to use his authority under Section 802.

II. BECAUSE SECTION 802 DOES NOT DELEGATE LEGISLATIVE AUTHORITY TO THE ATTORNEY GENERAL, THE NON-DELEGATION DOCTRINE DOES NOT APPLY.

The non-delegation doctrine prohibits Congress from delegating legislative power to another branch of government, *see Mistretta*, 488 U.S. at 372, but Section 802 does not delegate anything resembling legislative power. The statute does not authorize the Attorney General to make law, to create rules or regulations, or to compel any act. It does not empower the Attorney General to confer immunity, dismiss a lawsuit, or otherwise "alter[] the legal rights, duties, and relations of persons." *INS v. Chadha*, 462 U.S. 919, 952 (1983). Congress, not the Attorney General, has determined that certain lawsuits should be dismissed if the Attorney General

---

[1] One prominent academic commentator has noted that the non-delegation doctrine "has had one good year, and [220] bad ones (and counting)." Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315, 322 (2000). In the past twenty years, the combined vote on non-delegation issues in the Supreme Court has been 53-0. *See* Gary Lawson, *Delegation and Original Meaning*, 88 Va. L. Rev. 327, 330 & n.15 (2002).

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 2

certifies specific facts to the Court, and the Court finds the certification is supported by substantial evidence. The Attorney General's role under the statute is limited to gathering and presenting these facts in furtherance of Congress's policy judgment. The ability to present facts to a court bears no resemblance to legislative power—indeed, Congress has granted this authority in some form to every party in a civil suit. *See* Fed. R. Civ. P. 56(a), (e). Section 802 does not materially add to the Attorney General's ability to present facts, it changes only the consequence of his action: under narrow conditions specified by the statute, the Attorney General's production of facts will result in prompt dismissal of the suit. But this consequence is ordained by Congress and results from Congress's exercise of legislative authority, not the Attorney General's. Consequently, the non-delegation doctrine and its "intelligible principle" standard are simply inapplicable.

"The Supreme Court has consistently upheld delegations, such as the one here, that predicate the operation of a statute upon some Executive Branch factfinding." *Owens v. Republic of Sudan*, 531 F.3d 884, 891 (D.C. Cir. 2008) (citing cases). In *Owens*, the Executive's factfinding (over whether a foreign nation was a state sponsor of terrorism) affected whether the court had jurisdiction to hear the case, much as the Attorney General's factfinding under Section 802 influences whether a civil action may lie. *See id.* at 888-89. Such Executive factfinding is constitutionally permissible because, as the Supreme Court explained for the first time in 1892, "[t]he legislature cannot delegate its power to make a law, but it can . . . delegate . . . power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." *Field v. Clark*, 143 U.S. 649, 694 (1892); *Owens*, 531 F.3d at 892.

Numerous statutes reflect this principle, and Section 802 is no different from statutes elsewhere in the United States Code that permit, but do not require, the Attorney General to certify facts to a court, triggering consequences determined by Congress.[2] These statutes specify

---

[2] *See, e.g.*, 28 U.S.C. § 2679(d) (authorizing the Attorney General to certify that a defendant federal employee was acting within the scope of his office or employment, automatically triggering substitution of the United States as the party defendant): 18 U.S.C. § 5032 (authorizing the Attorney General to certify facts triggering district court jurisdiction

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 3

the conditions under which the Attorney General may make a certification, but, like Section 802, none define further criteria the Attorney General should consider in deciding whether to exercise his authority. No further criteria are needed, because the submission of facts to a court does not implicate the legislative power vested in Congress. If Section 802 had delegated to the Attorney General power to issue rules or regulations, the degree of discretion the statute afforded him might determine whether he was merely executing the law or instead exercising legislative power. *See J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 407 (1928). But because Section 802 authorizes the Attorney General to gather and present facts to a court—a fundamentally non-legislative action—the concern about discretion does not arise, and the non-delegation doctrine does not apply.

III. SECTION 802 PROVIDES SUFFICIENT GUIDANCE FOR THE ATTORNEY GENERAL'S DECISION.

Assuming the non-delegation doctrine is implicated at all, Congress provided the Attorney General an intelligible principle by enumerating specific and narrow circumstances in Section 802 that control whether and when he may make a certification. The Act permits the Attorney General to certify facts to the court only when there is a pending civil action in which a person is alleged to have "provid[ed] assistance to an element of the intelligence community," and only where one of five clearly defined conditions exists. *See* 50 U.S.C. § 1885a(a)(1)-(5). These conditions cover alleged assistance made pursuant to (1) a court order; (2) a written certification; (3) a statutory directive; (4) in connection with intelligence activity authorized by the President during a specific time period, that was designed to detect or prevent a terrorist attack, and if the assistance was the subject of a written request stating the activity was authorized by the President and determined to be lawful; or (5) where the person did not provide

---

over juvenile offenders); 28 U.S.C. § 1605(g)(1)(A) (authorizing the Attorney General to certify that a discovery order would significantly interfere with a criminal case or national security operation, automatically triggering a stay); Classified Information Procedures Act § 6(a), 18 U.S.C. App. 3 (authorizing the Attorney General to certify that a public hearing regarding use of classified information may result in disclosure of such information, automatically triggering an *in camera* hearing).

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 4

assistance. *Id.* These criteria alone are sufficient to constrain the Attorney General's discretion for purposes of the non-delegation doctrine, since nearly any statutory guidance creates an intelligible principle. *See infra* at 6.

In addition to these specific statutory limitations on whether and when the Attorney General may act, the legislative history of Section 802 provides further guidance.[3] Congress made clear that in deciding whether and when to make a certification, the Attorney General should be guided by the need to protect current and future intelligence gathering as well as the national security information of the United States. As the Senate Select Committee on Intelligence Report explains:

> [E]lectronic communication service providers play an important role in assisting intelligence officials in national security activities. Indeed, the intelligence community cannot obtain the intelligence it needs without assistance from these companies. Given the scope of the civil damages suits, and the current spotlight associated with providing any assistance to the intelligence community, the Committee was concerned that, without retroactive immunity, the private sector might be unwilling to cooperate with lawful Government requests in the future without unnecessary court involvement and protracted litigation. The possible reduction in intelligence that might result from this delay is simply unacceptable for the safety of our Nation.

S. Rep. 110-209 at 10 (2007), accompanying S.2248, Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, Senate Select Committee on Intelligence (Dkt. 469-2).

In addition, Congress explained the need for Section 802(c), which provides for review of the Attorney General's certification *ex parte* and *in camera*.

> The details of the President's program are highly classified. As

---

[3] It is well-settled that courts may look to a statute's legislative history for an intelligible principle. *See Mistretta*, 488 U.S. at 376 nn.9-10 (examining legislative history of Sentencing Reform Act to understand the purposes of statutory provisions); *Lichter v. United States*, 334 U.S. 742, 785 (1948) ("standards prescribed by Congress . . . derive much meaningful content from the purposes of the Act [and] its factual background . . . .") (internal quotation omitted); *accord Michigan Gambling Opposition v. Kempthorne*, 525 F.3d 23, 31-32 (D.C. Cir. 2008); *Carcieri v. Kempthorne*, 497 F.3d 15, 42 & n.20 (1st Cir. 2007) *rev'd on other grounds*, 555 U.S. ___ (2009), No. 07-526; *South Dakota v. U.S. Dep't of Interior*, 423 F.3d 790, 797-98 (8th Cir. 2005); *United States v. Roberts*, 185 F.3d 1125, 1137 (10th Cir. 1999).

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)**

> with other intelligence matters, the identities of persons or entities who provide assistance to the U.S. Government are protected as vital sources and methods of intelligence . . . . It would be inappropriate to disclose the names of the electronic communication service providers from which assistance was sought, the activities in which the Government was engaged or in which providers assisted, or the details regarding any such assistance.

*Id.* at 9; *see also id.* at 23.

Therefore, in determining whether and when to make a certification under Section 802, the Attorney General should consider how a lawsuit could affect current and future intelligence-gathering, as well as the risks that such a suit will result in the disclosure of classified national security information.

The foregoing demonstrates that Section 802 is far from a statute that provides "literally no guidance for the exercise of discretion." *Am. Trucking*, 531 U.S. at 474. The statute authorizes the Attorney General to make a certification consistent with the broad guiding principle of protecting national security, and limits the circumstances in which he make such a certification to those defined in (a)(1)-(5). Section 802 guides the Attorney General with far greater specificity than numerous other statutes containing "intelligible principles" the Supreme Court has upheld against non-delegation challenges, including delegations of authority to prevent threats to "national security," *Fed. Engery Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 559 (1975), to set "fair and equitable prices," *Yakus*, 321 U.S. at 426, to determine "excessive profits," *Lichter*, 334 U.S. at 785-86, and to regulate as required by "public interest, convenience, or necessity." *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225-26 (1943). Likewise, the Ninth Circuit has found sufficient guidance in a statute that authorized the President to renew an embargo against Cuba merely upon his finding that it is "in the national interest of the United States." *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1437-38 (9th Cir. 1996). Compared to these permissible delegations, the statutory text and purpose of Section 802 sufficiently limit the Attorney General's discretion.

Section 802 is also strikingly similar to the grant of authority to the Attorney General

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)**

6

upheld by the Supreme Court in *Touby v. United States*, 500 U.S. 160 (1991). *Touby* involved a statute that authorized the Attorney General to temporarily schedule a substance when doing so is "necessary to avoid an imminent hazard to the public safety." *Id.* at 163. Like Section 802, the statute authorized but did not require the Attorney General to act, stating that *if* he makes the relevant finding, he *may* schedule a substance. *See* 21 U.S.C. § 811(h). Also like Section 802, that statute in *Touby* provided a broad intelligible principle. In *Touby*, Congress authorized the Attorney General to act to "avoid an imminent hazard to the public safety," 500 U.S. at 163, whereas in Section 802, Congress authorizes the Attorney General to act to protect intelligence gathering ability and national security information. Finally, the statute in *Touby* provided additional, more specific criteria for the Attorney General to consider, including a drug's history and current pattern of abuse; the scope, significance and duration of abuse; and the risk to public health. *Id.*; 21 U.S.C. § 811(c), (h)(3). Section 802 similarly requires that the Attorney General make a certification pursuant to one of the specific conditions enumerated in (a)(1)-(5). And Section 802 grants less authority to the Attorney General than the statute in *Touby* in two crucial respects. First, the criteria in (a)(1)-(5) are far more specific, and thus constrain the Attorney General's discretion to a far greater degree, than the criteria in *Touby*. Second, Section 802 provides that a court must review the Attorney General's certification for substantial evidence, whereas in *Touby* the Attorney General's designation was not subject to judicial review. 500 U.S. at 163. For these reasons, Section 802, like the statute the Court upheld in *Touby*, "meaningfully constrains the Attorney General's discretion . . . ." *Id.* at 166.

Section 802 finds further support from the Supreme Court's decision in *Yakus* itself. *Yakus* upheld against a non-delegation challenge a statute that authorized a Price Administrator to set commodities prices "that in his judgment will be generally fair and equitable and will effectuate the purposes of this Act." 321 U.S. at 420. The Court held that the Act was a proper "exercise by Congress of its legislative power," *id.* at 423, and gave three main reasons, all of which apply equally to Section 802. First, "Congress has stated the legislative objective," *Yakus*, 321 U.S. at 423, which in this case is to protect the national security of the United States by

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 7

providing that certain civil actions against persons alleged to have assisted the intelligence community "may not lie . . . if the Attorney General certifies" specific facts to the court. 50 U.S.C. § 1885a(a). Second, Congress "has prescribed the method of achieving that objective," *Yakus*, 321 U.S. at 423, by requiring prompt dismissal of such actions pursuant to Section 802 if the Attorney General makes the described certification and the court finds the certification is supported by substantial evidence. Third, Congress "has laid down standards to guide the administrative determination of . . . the occasions for the exercise of . . . power . . . ." *Yakus*, 321 U.S. at 423. The standards contained in (a)(1)-(5) authorize the Attorney General to make a certification in narrow and carefully defined circumstances, and provide with "particular[ity]" the form any certification must take. *See Yakus*, 321 U.S. at 423. Finally, the statute in *Yakus*, like Section 802 and the statute in *Touby*, is phrased as a permissive grant of power, "authoriz[ing]" rather than requiring Executive action. 321 U.S. at 420.[4] As discussed more fully below, the non-delegation doctrine allows such permissive grants.

IV. CONGRESS MAY LEAVE THE DECISION ABOUT WHETHER AND WHEN TO MAKE A CERTIFICATION TO THE ATTORNEY GENERAL'S DISCRETION.

The non-delegation doctrine does not require Congress to mandate that the Executive exercise authority Congress has given him. Instead, the doctrine requires only that when Congress delegates legislative power to another branch, it must provide an intelligible principle to guide that branch's exercise of such power. *Mistretta*, 488 U.S. at 372. The intelligible principle for Section 802 is provided by the general guidance that the Attorney General should act to protect intelligence-gathering capability and national security information, coupled with the specific criteria set forth in (a)(1)-(5), which define whether and when the Attorney General may make a certification. Plaintiffs argue that in addition to authorizing the Attorney General to

---

[4] The original statute at issue in *Yakus*, the Emergency Price Control Act, "authorized" the Price Administrator to fix prices. 321 U.S. at 418, 421. This Act was amended by the Inflation Control Act, which "directed" the President to "stabilize prices, wages, and salaries so far as is practicable." *Id.* at 421 (internal quotation omitted). The Court considered the Administrator's discretion under the original Act. *See id.* at 421 n.1.

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 8

act, and providing an intelligible principle to guide his actions, Congress must either *mandate* that he act whenever certain conditions are met, or specify a checklist of *further* criteria he must consider—in addition to the intelligible principle—when deciding whether to act.[5] The government is aware of no case supporting Plaintiffs' attempt to redefine the non-delegation doctrine by requiring an "intelligible principle-plus." Instead, a long line of cases holds that to survive a non-delegation challenge, a statute need only provide an intelligible principle to guide the Executive's action. *See, e.g., Am. Trucking*, 531 U.S. at 472; *Loving v. United States*, 517 U.S. 748, 771 (1996); *Mistretta*, 488 U.S. at 372; *Hampton*, 276 U.S. at 409.

In *Yakus* and *Touby*, the Supreme Court upheld statutes like Section 802 that authorize, but do not require, the Executive to act; provide a broad intelligible principle to guide his action; contain further, more specific criteria he must consider; but then provide no further guidance about whether or when to exercise authority once these conditions are met. *See supra* at 6-8. In other cases, the Supreme Court and the Ninth Circuit have gone further and have upheld the constitutionality of statutes that provide only a broad intelligible principle and contain *no further criteria* to guide the Executive's discretion. In each category of cases, courts have made clear that once Congress has specified the conditions under which the Executive is authorized to act, Congress may leave the decision whether and when to act to the Executive's discretion.

In *Curtiss-Wright*, the Supreme Court rejected a non-delegation challenge to a statute that made violation of an arms embargo a federal crime, contingent upon the President's proclamation that an embargo would "contribute to the reestablishment of peace" in a province in Argentina. 299 U.S. at 312. The statute authorized, but did not require, the President to make such a proclamation, and it provided no further guidance about whether and when he should do so, other than to require him to consult with other governments. *See id.* The statutory provision at issue was triggered "*if*" the President decided to impose an embargo. *See id.* (emphasis

---

[5] *See* Corrected MDL Plaintiffs' Opposition to Motion of the United States Seeking to Apply 50 U.S.C. 1885a to Dismiss These Actions (Dkt. 483) at 14-20; MDL Plaintiffs' Reply (Dkt. 524) at 11-14.

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 9

added). Noting that "the form of the President's action—*or, indeed, whether he shall act at all*—may well depend . . . upon the nature of the confidential information which he has . . . or upon the effect which his action may have upon our foreign relations," the Court concluded that it would be unwise to "lay down narrowly definite standards by which the President is to be governed." *Id.* at 321 (emphasis added).

Likewise, in *Zemel v. Rusk*, 381 U.S. 1 (1965), the Court rejected a non-delegation challenge and upheld a statute authorizing the Secretary of State to grant and issue passports "under such rules as the President shall designate and prescribe," where the President by Executive Order had "authorized" the Secretary of State "in his discretion to refuse to issue a passport . . . ." *Id.* at 7-8, 10. While the Supreme Court noted that the Secretary could only exercise his authority under certain conditions defined by historical practice, *id.* at 17-18, neither the Court nor the statute provided any guidance about whether or when the Secretary should act once those conditions were met. Similarly, in *Loving v. United States*, the Court upheld statutory provisions authorizing the President to enumerate aggravating factors sufficient to impose the death penalty in courts-martial "without further guidance" for the exercise of this discretion. 517 U.S. at 754, 773; *see also* 10 U.S.C. §§ 818, 836, 856. The Court concluded that the delegation "called for the exercise of judgment or discretion" within "the traditional authority of the President" as Commander-in-Chief, *id.* at 768-69, 772, much as Section 802 calls for the exercise of discretion within the traditional authority of the Attorney General to make certifications of fact to the court. *See supra* n.2.

Courts of appeals, including the Ninth Circuit, have followed the Supreme Court's lead and required only that Congress authorize the Executive to act and provide an intelligible principle to guide him. In *Freedom to Travel Campaign*, the Ninth Circuit upheld Congress's delegation of power to the President to renew an embargo against Cuba upon the President's finding that an embargo is "in the national interest of the United States." 82 F.3d at 1437-38. Beyond this intelligible principle, the statute provided no further guidance for whether or when he should exercise this power. And in *Owens*, the D.C. Circuit recently upheld a statute that

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 10

predicated federal court jurisdiction upon the Secretary of State's designation of the government of Sudan as a state sponsor of terrorism, where Congress left the decision about whether and when to exercise such designation authority to the Secretary of State's sole discretion. *See* 531 F.3d at 888.

These decisions help explain why statutes similar to Section 802 are ubiquitous in the United States Code. Numerous statutes permit, but do not require, the Attorney General to file a factual certification with no more guidance than that provided by Section 802, including guidance about whether and when to act. *See supra* n.2. Many more statutes permit, but do not require, the Attorney General to exercise other authorities if certain conditions are met, but otherwise leave the decision to act to his discretion.[6] *Yakus* itself explicitly permits Congress to grant such discretion to the Executive Branch, noting that "[i]t is no objection that the determination of facts and the inferences to be drawn from them in the light of the statutory standards and declarations of policy call for the exercise of judgment . . . ." 321 U.S. at 425.

The Supreme Court's decision in *Field v. Clark* is not to the contrary, as Plaintiffs' claim. *See* Pls. Opp. (Dkt. 483) at 14-17; Pls. Reply (Dkt. 524) at 13. While the Court in *Field* noted that the challenged statute required the President to act upon making a particular factual determination, 143 U.S. at 693, nothing in the statute required the President to make a factual determination in the first place. Moreover, the Supreme Court has never interpreted *Field* to create a rule under the non-delegation doctrine that a statute *must require* the Executive to act.

---

[6] *See, e.g., United States v. Doe*, 465 U.S. 605, 616-17 (1984) (holding that in the use-immunity statute, 18 U.S.C. § 6003, "Congress expressly left [the decision about whether to grant immunity] exclusively to the Justice Department."); 21 U.S.C. § 824(d) ("[t]he Attorney General may, in his discretion, suspend any registration" to manufacture a controlled substance where he finds an imminent danger to public health, and "may, in his discretion, seize" any controlled substance owned by a registrant whose registration has expired); 8 U.S.C. § 1442(c) ("[t]he Attorney General may, in his discretion" except a demonstrably loyal alien from the classification "alien enemy"); 8 U.S.C. § 1157 ("the Attorney General may, in the Attorney General's discretion," admit certain refugees into the United States); 8 U.S.C. § 1226a ("the Attorney General may certify an alien" as a suspected terrorist). This list is far from complete—Congress has made many similar grants of authority in the immigration context alone.

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 11

No Supreme Court decision cites *Field* for that proposition, and subsequent decisions from the Supreme Court and courts of appeals have frequently upheld statutes that did not require Executive action, including *Yakus*, *Touby, Curtiss-Wright*, *Zemel*, *Loving*, *Freedom to Travel*, and *Owens*, among others.[7] Indeed, in *Owens*, the D.C. Circuit cites *Field* for the proposition that Congress may delegate to the Executive the "power to determine some fact or state of things upon which the law makes . . . its own action depend," 531 F.3d at 891-92, even though the statute at issue in *Owens* neither required the Secretary of State to declare a foreign government to be a state sponsor of terrorism, nor specified criteria the Secretary should consider in making that decision. *See id.* at 888.[8]

Finally, as the foregoing authority also makes clear, Congress's authority to grant discretion to the Executive Branch, already broad in the context of domestic affairs, is even broader where, as here, the grant of power relates to the Executive's authority over national security or foreign affairs. *See Curtiss-Wright*, 299 U.S. at 321-22, 324; *Zemel*, 381 U.S. at 17; *Owens*, 531 F.3d at 891. Section 802 concerns the disposition of lawsuits that seek disclosure of alleged intelligence activities by the United States. It thus concerns an area in which the Executive has constitutional authority to protect and control classified information and to safeguard national security. *See Dep't of Navy v. Egan*, 484 U.S. 518, 527, 529 (1988); *Haig v. Agee*, 453 U.S. 280, 291-92 (1981).

As outlined above, Congress was specifically concerned that lawsuits covered by Section 802 would hinder vital intelligence gathering activities, and would result in the disclosure of

---

[7] *See also New York Cent. Sec. Corp. v. United States*, 287 U.S. 12, 22 n.1 (1932); *United States v. Grimaud*, 220 U.S. 506, 509 (1911).

[8] Plaintiffs unsuccessfully attempt to distinguish *Owens* by arguing that the Secretary of State "had no discretion over whether the designation [as a state sponsor of terrorism] should have jurisdictional consequences." Pls Reply (Dkt. 524) at 12-13. But, of course, the crucial point is that just as the Attorney General has discretion about whether to make a certification, the Secretary of State in *Owens* had discretion about whether to make a designation. The consequences triggered by the certification or designation are determined by Congress in the relevant statute, and are thus outside the control of both the Attorney General and the Secretary of State.

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 12

classified information that would compromise national security. In these circumstances, where the Executive is granted discretion to present facts concerning national security matters to which it is "immediately privy" and can readily evaluate on a case-by-case basis, Congress "must of necessity paint with a brush broader than it customarily wields in domestic areas." *Zemel*, 381 U.S. at 17; *Freedom to Travel*, 82 F.3d at 1438. And, through its authorization of *ex parte*, *in camera* procedures for the Attorney General to make the required certification, Section 802 is a congressional endorsement of the Executive's judgment that national security information concerning the allegations at issue in the pending suits against telecommunications carriers must be protected from public disclosure. In this context in particular, Congress may modify existing law to require dismissal of claims concerning national security matters, while leaving in the hands of the Executive whether and how to present the specific national security information that would trigger application of the law enacted by Congress.[9]

## **CONCLUSION**

In this case, answering *Yakus*'s question "whether the will of Congress has been obeyed," is a simple exercise. 321 U.S. at 425. Congress authorized the Attorney General under certain conditions to submit facts for the Court's review—a non-legislative function that does not implicate the non-delegation doctrine. Section 802 clearly defines the conditions under which the Attorney General may make such a factual certification, so that even if the non-delegation

---

[9] For these reasons, the United States does not join the Carriers' argument that if necessary the Court should interpret Section 802 to require the Attorney General to file a certification whenever the factual predicates are met (Carriers' Supplemental Br., (Dkt. 571)). By its terms, Section 802 imposes no such requirement, and this Court should not create one. *See Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 169 n.16 (1993) ("we may not add terms or provisions were Congress has omitted them"). There is no need for the Court to add a requirement not contained in the statute since it is well-settled that the non-delegation doctrine permits Congress to leave the decision whether and when to file a certification to the Attorney General's discretion. Moreover, a judicially-imposed requirement that the Attorney General file a certification might well conflict with Congress's promise that Section 802 does not "limit another otherwise available immunity, privilege, or defense under any other provision of law." 50 U.S. C. § 1885a(h). If the Attorney General is required to make a certification, this might prevent the United States from instead asserting another available privilege, such as state secrets, or from moving to dismiss on another ground.

**United States' Supplemental Brief in Support of Motion to Dismiss or for Summary Judgment (MDL No. 06-CV-1791-VRW)** 13

doctrine applies, Congress has provided an intelligible principle, either in the statute itself or in the statute when read with its legislative history. Congress has also granted the Attorney General discretion to decide whether to file a certification or not, as permitted by well-settled law. Section 802 therefore presents no delegation problem.

What is left for this Court to decide is also straightforward. The Attorney General's certification complies with the statute and is supported by substantial evidence. Accordingly, the Court should now promptly dismiss these actions.

February 25, 2009                    Respectfully Submitted,

                                     MICHAEL F. HERTZ
                                     Acting Assistant Attorney General

                                     DOUGLAS N. LETTER
                                     Terrorism Litigation Counsel

                                     JOSEPH H. HUNT
                                     Director, Federal Programs Branch

                                      *s/ Anthony J. Coppolino*
                                     ANTHONY J. COPPOLINO
                                     Special Litigation Counsel

                                      *s/ Marc Krickbaum*
                                     MARC KRICKBAUM
                                     Trial Attorney
                                     U.S. Department of Justice
                                     Civil Division, Federal Programs Branch
                                     20 Massachusetts Avenue, NW, Rm. 6102
                                     Washington, D.C. 20001
                                     Phone: (202) 514-4782—Fax: (202) 616-8460
                                     Email: tony.coppolino@usdoj.gov

                                     *Attorneys for the United States*