MICHAEL F. HERTZ
Acting Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Special Litigation Counsel
ALEXANDER K. HAAS (SBN 220932)
MARC KRICKBAUM
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Solely Relates To:<br><br>*Al-Haramain Islamic Foundation et al. v. Obama, et al.* (07-CV-109-VRW) | No. M:06-CV-01791-VRW<br><br>**GOVERNMENT DEFENDANTS' RESPONSE TO COURT ORDERS CONCERNING COMPLIANCE WITH THE JANUARY 5 ORDER [DKT. 71] AND RESPONSE TO PLAINTIFFS' SUPPLEMENTAL CASE MANAGEMENT REPORT [DKT. 75]**<br><br>Honorable Vaughn R. Walker |

---

Government Defendants' Response to Court Orders Concerning Compliance With The January 5 Order [Dkt. 71] And Response To Plaintiffs' Supplemental Case Management Report [Dkt. 75]
*Al-Haramain v. Obama* **(07-cv-109-VRW) (MDL06-cv-1791-VRW)**

## TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     THE GOVERNMENT'S COMPLIANCE WITH THE COURT'S ORDERS . . . . . . . . 1

II.    THE COURT SHOULD DEFER TO THE EXECUTIVE BRANCH'S DECISION THAT PLAINTIFFS' COUNSEL ARE NOT ENTITLED TO ACCESS THE CLASSIFIED INFORMATION AT ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.     Counsel Have Not Met the Requirements for Access to Classified Information Because the Appropriate Executive Branch Official Determined They Do Not Have a Need to Know. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.     The Court May Not Override the Executive's Judgment That Plaintiffs' Counsel Does Not Have a Need to Know. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.     The Court Has No Authority to Order that Counsel Be Granted Access to Classified Information Over the Objection of the Executive Branch. . . . . . . . . . . 7

        1.     A Court Does Not Obtain Blanket Authority to Disclose Classified Information Merely Because Such Information is in the Court's Custody. . . . . . . . . . . . . . 7

        2.     Plaintiffs' Reliance On Criminal Cases and CIPA Procedures is Misplaced. . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**CASES**                                                **PAGE(S)**

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945) ............................... 7

*CIA v. Sims*, 471 U.S. 159 (1985) ................................................. 4, 5

*Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) .................................. 4, 5, 6

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) ................................. 4, 5

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) .................................... 5

*Holy Land Found. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) ......................... 8

*In re Sealed Affidavit(s) to Search Warrants Executed on February 14, 1979*,
600 F.2d 1256 (9th Cir. 1979) (per curiam) .......................................... 7

*In re United States*, 1 F.3d 1251 (Table), 1993 WL 262656 (Fed Cir. 1993) ............. 8

*Kamakana v. City and Co. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ................ 10

*Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001) ....... 8

*People's Mojahedin Org. v. Dep't of State*, 327 F.3d 1238 (D.C. Cir. 2003) .............. 8

*Pollard v. Fed. Bureau of Investigation*, 705 F.2d 1151 (9th Cir. 1983) .................. 8

*Salisbury v. United States*, 690 F.2d 966 (D.C. Cir. 1982) ............................. 9

*Stehney v. Perry*, 101 F.3d 925 (3rd Cir. 1996) ....................................... 4

*Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005) ....................................... 8

*Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003) ....................................... 8

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) ............................... 7

*United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990) ............................ 11

*United States v. Pollard*, 416 F.3d 48 (D.C. Cir. 2005) ............................... 10

*United States v. Reynolds*, 345 U.S. 1 (1953) ..................................... 9, 11

*United States v. Smith*, 899 F.2d 564 (6th Cir. 1990) ................................. 7

**STATUTES AND EXECUTIVE ORDERS**

18 U.S.C. App. 3 ......................................................... 2, 10, 11, 12

50 U.S.C. § 1806(f) ................................................................. 5

Exec. Order 13292, 68 Fed. Reg. 15315, 15324 (Mar. 25, 2003). ............... 3, 4, 5, 6, 10

## INTRODUCTION

The Government hereby responds to two Orders of the Court. First, in its February 13, 2008 Order, the Court directed the Government "to inform the court how it intends to comply with the January 5 Order."[1] As the Court explained on February 13, the January 5 Order directed the Government to implement "the steps necessary to afford that both parties have access" to all material, including classified material "upon which the court makes a decision." *See* February 5 Order (Dkt. 71)[2] at 3 (internal quotation omitted). Second, the Court directed the Government to address plaintiffs' supplemental case management report ("Pls. Supp. CMR" (Dkt. 72)), which raises various arguments that the Court has authority to determine whether plaintiffs have a "need to know" classified information and that the Court may direct the Government to grant counsel access to such information over the objection of the Executive Branch. *See* Order (Dkt. 75) at 1.

## DISCUSSION

### I. THE GOVERNMENT'S COMPLIANCE WITH THE COURT'S ORDERS.

The Government has taken all appropriate steps to comply with the Court's Orders. At the Court's direction, the Government has arranged for plaintiffs' counsel to apply for a clearance at the Top Secret/Sensitive Compartmented Information ("TS/SCI") level, and has processed those clearances expeditiously. *See* January 5 Order (Dkt. 57) at 24 ¶ 2. The relevant Executive Branch official has determined that two of plaintiffs' counsel are eligible for access to classified information.

These steps are as far as the Government may go at this time. By law, plaintiffs' counsel are not entitled to access the classified information in question. As plaintiffs themselves concede, a favorable determination of eligibility alone is insufficient to grant access to classified

---

[1] Earlier today, the Ninth Circuit dismissed the Government's appeal of this Court's January 5 Order, finding that the Order was not appropriate for interlocutory appeal. *See Al-Haramain Islamic Found., Inc. v. Obama*, No. 09-15266 (9th Cir. Feb. 27, 2009).

[2] All docket citations are to the docket 07-cv-00109-VRW.

**Government Defendants' Response to Court Orders Concerning Compliance With The January 5 Order [Dkt. 71] And Response To Plaintiffs' Supplemental Case Management Report [Dkt. 75]**
*Al-Haramain v. Obama* **(07-cv-109-VRW) (MDL06-cv-1791-VRW)**

information (Pls. Supp. CMR at 3). In addition, the relevant Executive Branch official must determine that plaintiffs' counsel have a "need to know" the information. In this case, the relevant official, the Director of the National Security Agency ("NSA"), has determined that counsel *do not* have a need to know. This decision is committed to the discretion of the Executive Branch, and is not subject to judicial review. Moreover, the Court does not have independent power, either under its supervisory authority, or under authority analogous to that granted by the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3, to order the Government to grant counsel access to classified information when the Executive Branch has denied them such access. Therefore, the Government respectfully suggests that the Court should not take further steps at this time that would result in plaintiffs' counsel being granted access to the classified information at issue.

The specific next steps in the litigation depend on how the Court intends to implement its Orders. An order that directs the Government to find that the plaintiffs have a "need to know" classified information in order to enable their access to such information, or any order by the Court that seeks to directly disclose classified information to plaintiffs' counsel, should be subject to further review. In addition, any order by the Court, upon its own *ex parte*, *in camera* review, that might disclose classified information should also be subject to further review before any actual disclosure of such information.

Accordingly, the Government respectfully proposes that the Court utilize the following procedures. First, if the Court proceeds on an *ex parte*, *in camera* basis to review the Sealed Document in order to address the issue of standing, then regardless of how the Court would then intend to rule, the Government requests that the Court provide notice to the Government of any order it would place on the public record, so that the Government may conduct a classification review and determine whether to appeal before any information over which the Government claims privilege is disclosed to the public.[3/] Second, if the Court directs the Government to

---

[3] For a description of derivative classification procedures applicable to documents that "reproduce, extract, or summarize classified information," *see* Executive Order 13292 § 2.1.

determine that plaintiffs' counsel have a need to know classified information, or overturns the Government's rejection of counsel's need to know, or in any way directs the Government to grant counsel access to such information, the Government requests that proceedings be stayed before any disclosure of classified information pursuant to such an order, so that the Government may consider whether to appeal. If the Court intends to itself grant access to classified information directly to the plaintiffs' counsel, the Government requests that the Court again provide advance notice of any such order, as well as an *ex parte*, *in camera* description of the information it intends to disclose, to enable the Government to either make its own determination about whether counsel has a need to know, or to withdraw that information from submission to the Court and use in this case. If the Court rejects either action by the Government, the Government again requests that the Court stay proceedings while the Government considers whether to appeal any such order.[4]

We now turn to the specific contentions in the plaintiffs' supplemental case management report.

## II. THE COURT SHOULD DEFER TO THE EXECUTIVE BRANCH'S DECISION THAT PLAINTIFFS' COUNSEL ARE NOT ENTITLED TO ACCESS THE CLASSIFIED INFORMATION AT ISSUE.

### A. Counsel Have Not Met the Requirements for Access to Classified Information Because the Appropriate Executive Branch Official Determined They Do Not Have a Need to Know.

Plaintiffs ask the Court to grant them access to classified information, but they are not entitled to such information by law. Under the Executive Order that controls the handling of classified information, a person may have access to such information only if three conditions are met: (1) a favorable determination of eligibility for access has been made by an agency head or designee; (2) the person has signed an approved nondisclosure agreement; and (3) the person has

---

[4] To the extent the Court intends to review classified information or issue any public or classified orders, Court Security Officers can advise the Court as to necessary security measures, including those relevant to the handling and word processing of classified information up to TS/SCI information, the process for classification review of any Court order or opinion, and security procedures for any *in camera, ex parte* proceeding with the Government.

a need to know the information. Executive Order 13292 § 4.1 ("E.O."). Two of plaintiffs' counsel have received a favorable determination of eligibility for access, but the Executive Branch has determined that they do not have a "need to know."[5]

A person has a need to know classified information only if "an authorized holder of classified information" determines that the person "requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." E.O. § 6.1(z). It is undisputed that the Director of the National Security Agency has determined that plaintiffs' counsel do not have a need to know the NSA information at issue. *See* Cerlenko Decl. ¶ 9. More specifically, the Director has determined that (1) it does not serve a governmental function under the meaning of the Executive Order to disclose classified information to counsel who represent the private interests of private parties and who seek to obtain disclosure related to NSA intelligence sources and methods, and (2) disclosure of this information "would cause exceptional harm to national security." *Id.* This Court should defer to these findings.

The authority to determine who may have access to classified information, "is committed by law to the appropriate agency of the Executive Branch," and "flows primarily from [a] constitutional investment of power in the President." *Dep't of the Navy v. Egan*, 484 U.S. 518, 526-27, 29 (1988); *see also CIA v. Sims*, 471 U.S. 159, 180 (1985); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990). "[T]he courts of appeals have consistently held that under *Egan*, the federal courts may not review security clearance decisions on the merits." *Stehney v. Perry*, 101 F.3d 925, 932 (3rd Cir. 1996) (collecting cases). As the Supreme Court explained in *Egan*,

> For reasons . . . too obvious to call for enlarged discussion, the protection of classified information must be committed to the broad discretion of the agency responsible, *and this must include broad discretion to determine who may have access to it.* Certainly, it is not reasonably possible for an outside nonexpert body

---

[5] Counsel also have not undergone an special orientation process, known as a "read-in," as required for access to classified NSA information. This process describes the information contained in the special access program and explains specialized handling and storage restrictions and additional requirements regarding that program, and itself reveals classified information. *See* Declaration of Ariane E. Cerlenko (Dkt. 60-2) ("Cerlenko Decl.") ¶ 7.

to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence.

*Id.* at 529 (internal quotation and citation omitted) (emphasis added).

In decisions about who may have access to classified information, a federal court is just such "an outside nonexpert body," *Dorfmont*, 913 F.2d at 1401, and is ill-equipped to second-guess the Executive Branch. Agency regulations require the Executive to grant access only where it is "clearly consistent with the interests of the national security," *Egan*, 484 U..S. at 528; DoD 5210.45 § 4(d)(1)-(2), and agencies must also "ensure that the number of persons granted access to classified information is limited to the minimum consistent with operational and security requirements." E.O. § 5.4(d)(5)(B). These are judgments that federal courts are not entrusted to make. "It is the responsibility of the [Executive], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk . . . ." *CIA v. Sims*, 471 U.S. at 180. A federal court may not "perform[] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure," *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990), but must leave such a calculus to the Executive Branch.

### B. The Court May Not Override the Executive's Judgment That Plaintiffs' Counsel Does Not Have a Need to Know.

The Court has indicated that it rejects the Government's reading of *Egan*, and presumably the related authorities the Government has marshaled. *See* January 5 Order at 21. The Court notes that under *Egan*, courts should not intrude upon the authority of the Executive in military and national security affairs "unless Congress specifically has provided otherwise." *Egan*, 484 U.S. at 530; July 2 Order, 564 F. Supp. 2d 1109, 1121 (N.D. Cal. 2008). The Government respectfully submits that Congress has not specifically provided authority, in Section 1806(f) or in any other statute, for courts to ignore the determination of the Executive Branch agency responsible for classified information, determine for themselves whether a person has a need to know such information, and thus grant access to classified information.

Plaintiffs urge the Court to ignore the decision of the Director of NSA and to make its

own finding about whether counsel has a need to know. Plaintiffs assert that because the Court does not need a security clearance to access classified information, and because such information is contained in the Court's files, the Court is an "authorized holder" of classified information under the Executive Order (Pls. Supp. CMR at 3). This argument is seriously mistaken, based on both the Constitution's allocation of authority to control classified information, and on the text of the Executive Order.

The mere fact that the Executive branch voluntarily provided the Court with access to classified information, for purposes of deciding the state secrets privilege or other related matters, does not grant the court authority to, in turn, disclose classified information to a litigant over the Government's objection. In particular, the fact that Article III judges are not required to undergo security clearance processing each time they are provided access to classified information likewise does not vest in them authority to make access determinations themselves. *Egan* makes clear that the authority to control access to classified information is based on the President's Article II powers under the Constitution and, whatever role Congress may have in regulating in this area, Article II does not grant the Judicial Branch authority to make determinations that usurp the President's Article II powers. Thus, reading "authorized holder" under the Executive Order to include a Judicial officer, and allowing such an officer to overrule the Executive's determinations, would itself be contrary to the authority outlined above.

Moreover, this is a flawed interpretation of the Executive Order itself. The Executive Order makes clear that the authority to determine a person's need to know is the authority to determine *access*, because need to know is the final requirement before access is granted. *See* E.O. § 4.1(a). Thus, an authorized holder of classified information is one who may grant access under the terms of the Executive Order itself. The Order makes clear that originating agencies should have final say over another agency's decision to disclose information, *see id.* at § 4.1(c), and that these same protections apply even when information is disseminated outside the Executive Branch. S*ee id.* at § 4.1(e). The Order also provides that "[a]uthorized holders" may challenge the classification status of information "in accordance with agency procedures,"

including a right to appeal to an interagency panel composed of senior Executive Branch officials. *Id.* §§ 1.8, 5.3(a). These procedural requirements demonstrate that Executive Branch officials are the authorized holders of classified information under the Executive Order and are subject to the determinations made by other Executive Branch officials. To the extent the Executive Order is unclear on this issue, the Executive's longstanding resolution of that question would be entitled to substantial deference and controlling weight by this Court. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14 (1945).

Accordingly, plaintiffs' contention that Court is an authorized holder under the Executive Order and may determine counsel's need to know or grant access to classified information is clearly wrong. And even if the Court were permitted to determine counsel's need to know, the law is abundantly clear that it must defer to the constitutional role of the Executive in controlling classified information.

### C. The Court Has No Authority to Order That Counsel Be Granted Access to Classified Information Over the Objection of the Executive Branch.

#### 1. A Court Does Not Obtain Blanket Authority to Disclose Classified Information Merely Because Such Information is in the Court's Custody.

There is no authority for the proposition, and plaintiffs cite none, that if the Executive Branch decides to lodge classified information within a court's custody, the court obtains unqualified authority to control and disclose such information. Indeed, in a decision plaintiffs cite favorably, the Sixth Circuit has held that a court may not grant access to classified information even to its own judicial personnel, such as law clerks or secretaries, without the Executive Branch first conducting the appropriate background check in order to grant a security clearance. *See United States v. Smith*, 899 F.2d 564, 567-68, 570 (6th Cir. 1990). Plaintiffs cite inapposite cases discussing the Judiciary's "supervisory power" over its own files. *See* Pls. Supp. CMR at 3-4. But such power does not bestow authority to order disclosure of everything in those files, regardless of compelling reasons supporting nondisclosure. Rather, "courts have inherent power, as an incident of their constitutional function, to control papers filed with the

courts *within certain constitutional and other limitations.*" *In re Sealed Affidavit(s) to Search Warrants Executed on February 14, 1979*, 600 F.2d 1256, 1258 (9th Cir. 1979) (per curiam) (emphasis added).

Plaintiffs disregard the fact that in many cases in which courts have refused to disclose classified information to a party or to opposing counsel, those materials had already been lodged with the Court, and were therefore already in "Judicial custody." And numerous courts have declined to interfere with the Government's *ex parte* and *in camera* filing, recognizing the government's "compelling interest in withholding national security information." *People's Mojahedin Org. v. Dep't of State*, 327 F.3d 1238, 1242-43 (D.C. Cir. 2003) (internal quotations omitted). These courts have acknowledged that the government "need not disclose the classified information to be presented *in camera* and *ex parte* to the court. . . . This is within the privilege and the prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect." *Holy Land Found. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (internal quotations omitted); *accord Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208-09 (D.C. Cir. 2001).

As a corollary to this principle, a federal district court may not order the Executive to grant opposing counsel or any other person access to classified information.[6] In keeping with this rule, courts repeatedly have rejected demands that opposing counsel or parties be permitted access to classified material presented to the court *ex parte* and *in camera*. *See, e.g. Pollard v. Fed. Bureau of Investigation*, 705 F.2d 1151, 1153 (9th Cir. 1983) ("*In camera* proceedings, particularly in [Freedom of Information Act] cases involving classified documents, are usually

---

[6] In *In re United States*, 1 F.3d 1251 (Table), 1993 WL 262656 (Fed Cir. 1993), for example, the appeals court reversed, through a writ of mandamus, the trial court's order that the Executive provide classified information to certain individuals. The individuals in question had appropriate security clearances, but the Executive denied them access based on its judgment that providing access to additional people was inconsistent with national security. *Id.* at *2-3. The appeals court held that the trial court could not review the Executive's access decisions, and that such decisions "may not be countermanded by *either* coordinate branch." *Id.* at *9.

non-adversarial, with the party who is seeking the documents denied even this limited access to the documents he seeks to obtain."); *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005) (denying special accommodations such as, *inter alia*, giving private counsel access to classified information as giving "rise to added opportunity for leaked information."); *Salisbury v. United States*, 690 F.2d 966, 973-74 & n.3 (D.C. Cir. 1982) ("In any [Freedom of Information Act] case in which considerations of national security mandate in camera proceedings, the District Court may act to exclude outside counsel when necessary for secrecy or other reasons.")

In addition, plaintiffs' "Judicial custody" argument proves too much. If it were credited, the Executive Branch would lose control over access to any classified information filed with the Court. The result would be that when the Executive Branch files classified information *ex parte* and *in camera*, this filing, which is meant to prevent disclosure of classified information, instead transfers authority to the Court to disclose such information. Such a rule has never been adopted by any court. On the contrary, in *United States v. Reynolds*, 345 U.S. 1 (1953), the Supreme Court held that when the Government asserts the state secrets privilege, a court should not "forc[e] a disclosure of the very thing the privilege is designed to protect" by requiring even *ex parte* submissions of classified information. *Id.* at 8. Plaintiffs contend that while the Court may not force an *ex parte* disclosure, if the Government *voluntarily* makes such a disclosure, then the Court may force the Government to disclose, or may itself disclose, such information to the opposing party. This view is incoherent, and if adopted it would create serious disincentives for the Government to disclose classified information to courts, even to assist courts in assessing the Government's assertion of privilege.

Courts have never treated classified information in the way plaintiffs recommend. While most civil proceedings themselves are open, that policy has never extended to classified information. Classified government records are ones to which civil litigants, the press, and the public have historically not had access and are not subject to disclosure in civil proceedings. Moreover, classified information is entitled to more heightened protection than merely "confidential" information, such as grand jury transcripts and warrant materials during the pre-
**Government Defendants' Response to Court Orders Concerning Compliance With The January 5 Order [Dkt. 71] And Response To Plaintiffs' Supplemental Case Management Report [Dkt. 75]**
*Al-Haramain v. Obama* **(07-cv-109-VRW) (MDL06-cv-1791-VRW)** -9-

indictment phase, both of which the Ninth Circuit has already identified as materials "traditionally kept secret" under analogous arguments seeking access to otherwise non-public information. *See Kamakana v. City and Co. of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006). In sum, no authority exists for plaintiffs' theory that the Court may determine that counsel has a need to know merely because classified information is in the Court's custody.

### 2. Plaintiffs' Reliance On Criminal Cases and CIPA Procedures is Misplaced.

Plaintiffs also rely on Judge Rogers' concurring and dissenting opinion in *United States v. Pollard*, 416 F.3d 48 (D.C. Cir. 2005) (*See* Pls. Supp. CMR at 5). In *Pollard*, the majority held that courts have no authority to compel the Executive Branch to disclose classified documents to a prisoner's counsel for purposes of a clemency petition. *Id.* at 56-57. Judge Rogers agreed that the request for documents should be denied. In her view, the courts possessed jurisdiction to consider the request in light of an agreed-upon protective order giving the district court authority over the documents in conjunction with the underlying criminal proceedings. *Id.* at 58-59. Nothing in Judge Rogers' analysis suggests that the district court has the authority to override the Executive's need-to-know determination here.

Far from supporting plaintiffs' need to know, Judge Rogers' opinion forecloses that possibility. Judge Rogers noted that under the governing Executive Order, a person has a need to know only if he requires information in order to perform or assist in a "lawful and authorized *governmental* function." *Id.* at 62 (quoting E.O. § 6.1(z) (emphasis in Judge Rogers' opinion)). She concluded that "to come within the 'need-to-know' standard, . . . counsel must require access to assist [an Executive Branch] determination and not simply to assist his client, which, by contrast, would be in the nature of a private act." *Id.* As the Director of NSA himself concluded in this case, plaintiffs counsel similarly seeks classified information to further plaintiffs' private interest in a private action, *see* Cerlenko Decl. ¶ 9, not for any "authorized governmental function."

Moreover, the criminal context of *Pollard*, which itself was a habeas challenge to a federal criminal conviction, and the other CIPA cases sited by plaintiffs, renders those cases

inapposite. By its terms, CIPA does not apply to civil cases such as this one. *See* CIPA, Pub. L. No. 96-456, 94 Stat. 2025 (1980) (codified at 18 U.S.C. App. 3) ("An act to provide certain pretrial, trial and appellate procedures for criminal cases involving classified information."). The application of CIPA to civil litigation would be an impermissible construction of that statute, distorting both its language and legislative rationale and ignoring the distinction between criminal and civil litigation. Unlike criminal prosecutions—where the Executive Branch can choose to forgo or drop a prosecution rather than disclose classified information to a criminal defendant—the government is subject to civil litigation with no control over the continuation of the case, particularly where the Court has concluded that the state secrets privilege is preempted. Indeed, this very distinction was recognized in *Reynolds* itself, which contrasted the use of the state secrets privilege in civil litigation with "cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free." *See Reynolds*, 345 U.S. at 12. *Reynolds* noted that "since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *Id.* But *Reynolds* permits this very approach in civil litigation where the privilege applies, noting that the rationale in criminal cases "has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented." *Id.* Thus, plaintiffs' arguments concerning criminal cases and CIPA have no application to these markedly distinct civil proceedings.[7]

---

[7] Even in the criminal context, CIPA itself contains numerous provisions recognizing the Government's ability to protect classified information. *See generally United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990) (outlining CIPA procedures). The statute prevents defendants from disclosing classified information without first giving the Government notice and an opportunity to seek a determination by the court regarding the use of such information, and establishes procedures for holding a hearing *in camera*. 18 U.S.C. App. 3 § 5(a), 6(a). If the court authorizes disclosure of classified information, the government may move to substitute non-classified information in its place, and may submit an affidavit from the Attorney General, explaining why disclosure will damage national security, which the court must review *ex parte* and *in camera* at the government's request. *Id.* at 6(c). Finally, if a court orders disclosure of classified information, the Government may either bring an interlocutory appeal, *id.* at § 7(a), or

# CONCLUSION

For these reasons, the Government respectfully requests that the Court refrain from further actions to provide plaintiffs with access to classified information and confirm that it will not permit disclosure of classified information without providing notice to the Government and issuing a stay to permit the Government to further protect its interests.

Dated: February 27, 2009

Respectfully Submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

  *s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

  *s/ Alexander K. Haas*
ALEXANDER K. HAAS (SBN 220932)

  *s/ Marc Krickbaum*
MARC KRICKBAUM
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov
*Attorneys for the Government Defendants*

---

cause the court to dismiss the indictment, *id.* at § 6(e), in order to prevent disclosure. Thus, under CIPA, the ultimate decision about who has access to classified information rests with the Executive Branch.