JENNIFER HEINTZ (MO 57128)
Jennifer.Heintz@psc.mo.gov
Attorney for Missouri Public Service Commission
CHRISTOPHER C. TAUB (ME 8416)
Christopher.C.Taub@maine.gov
Assistant Attorney General of Maine
MEGAN LEWIS (ML3429)
Megan.Lewis@dol.lps.state.nj.us
Assistant Attorney General of New Jersey
TATIANA D. EIRMANN (CT 03398)
tatiana.eirmann@po.state.ct.us
Assistant Attorney General of Connecticut
MICHAEL DONOFRIO (VT 4400)
mdonofrio@atg.state.vt.us
Assistant Attorney General of Vermont

[Additional counsel for states appear on signature page.]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | ) ) ) ) MDL Docket No. M:06-cv-1791-VRW |
| This Document Relates To: | ) **STATE OFFICIALS' OPPOSITION** ) **TO UNITED STATES' MOTION** ) **FOR SUMMARY JUDGMENT** |
| *Clayton, et al. v. AT&T Communications of the Southwest, et al.* (W.D. Mo. 07-1187) | ) ) Hearing: May 7, 2009; 10:30 a.m. |
| *United States v. Clayton, et al.* (E.D. Mo. 07-1242) | ) Courtroom: 6, 17th Floor |
| *United States v. Reishus, et al.* (D. Me. 07-1323) | ) Judge: Hon. Vaughn R. Walker |
| *United States v. Farber, et al.* (D. N.J. 07-1324) | ) |
| *United States v. Palermino, et al.* (D. Conn. 07-1326) | ) ) |
| *United States v. Volz, et al.* (D. Vt. 07-1396) | ) |

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iii

Introduction ....................................................................................................................1

Factual Background .........................................................................................................2

Argument .........................................................................................................................4

I.     Section 803 Violates the Principles of State Sovereignty Inherent
in the Constitution .................................................................................................4

II.    The Plain Language of Section 803 Does Not Preempt
All Aspects of the States' Proceedings ................................................................14

Conclusion .....................................................................................................................17

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

ii

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine*, 527 U.S. 706 (1999) .......................................................................... 5, 6

*Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190 (9th Cir. 2007) .................................. 13

*Arkansas Electric Cooperative Corp. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375 (1983) ....... 7

*Bartlett v. Strickland*, 2009 U.S. LEXIS 1842 (U.S. Mar. 9, 2009) ........................................... 15

*City of Houston, Texas v. Hill*, 482 U.S. 451 (1987) .................................................... 11

*Clark v. Suarez Martinez*, 543 U.S. 371 (2005) .......................................................... 15

*Clearing House Ass'n, L.L.C. v. Cuomo*, 510 F.3d 105 (2d Cir. 2007) ......................................... 9

*Constellation Power Source, Inc. v. Select Energy, Inc*., 467 F. Supp. 2d 187 (D. Conn. 2006) ....................................................................................................... 11

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ................................................................ 8

*In re NSA Telecomms. Records Litig.*, 2007 U.S. Dist. LEXIS 53456 (N.D. Cal. July 24, 2007) ..................................................................................................... *passim*

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350 (1980) ........................... 7

*New York v. United States*, 505 U.S. 144 (1992) .......................................... 6, 8, 17, 18

*Printz v. United States*, 521 U.S. 898 (1997) ........................................................ *passim*

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ................................................................. 8

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) .......................................... 5

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ............................................ 5

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

iii

## Statutes and Constitutional Provisions

U.S. Const. amend. X ................................................................................................ 5

47 U.S.C. §§ 151 *et seq.* ......................................................................................... 7

50 U.S.C. § 1885a ("Section 802") .................................................................... 10, 12

50 U.S.C. § 1885b ("Section 803") ................................................................. *passim*

50 U.S.C. § 1806(f) ................................................................................................ 13

Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008 ("FAA"), Pub. L. 110-261, 122 Stat. 2436 (July 10, 2008) ........................................................ *passim*

Conn. Gen. Stat. § 16-1 ............................................................................................ 7

Conn. Gen. Stat. § 16-6b ........................................................................................... 7

Conn. Gen. Stat. § 16-11 ........................................................................................... 7

Conn. Gen. Stat. § 16-247f(a) .................................................................................... 7

Conn. Gen. Stat. § 16-247u ..................................................................................... 16

Conn. Gen. Stat. §§ 42-110 *et seq.* ......................................................................... 7

## Other Authorities

110 S. Rpt. 209 ................................................................................................. 12, 13

*Black's Law Dictionary* (6th ed. 1990) ................................................................. 15

*Random House Webster's Unabridged Dictionary* (2d ed. 2001) ............................. 11

*The Federalist* No. 15 .............................................................................................. 5

STATE OFFICIALS' OPPOSITION                        MDL Docket No. 06-1791-VRW
TO UNITED STATES'                            Relates to:  Case No. 07-cv-1187-VRW
MOTION FOR SUMMARY JUDGMENT                Case No. 07-cv-1242-VRW
                                                   Case No. 07-cv-1323-VRW
                                                     Case No. 07-cv-1324-VRW
                                                   Case No. 07-cv-1326-VRW
                                                   Case No. 07-cv-1396-VRW

*The Federalist* No. 39 ................................................................................................... 5, 6

*Webster's New World Dictionary* (2d ed. 1972) ......................................................... 11

STATE OFFICIALS' OPPOSITION        MDL Docket No. 06-1791-VRW
TO UNITED STATES'        Relates to:   Case No. 07-cv-1187-VRW
MOTION FOR SUMMARY JUDGMENT        Case No. 07-cv-1242-VRW
       Case No. 07-cv-1323-VRW
       Case No. 07-cv-1324-VRW
       Case No. 07-cv-1326-VRW
       Case No. 07-cv-1396-VRW

v

## **Introduction**

In moving for summary judgment, the United States relies exclusively upon Section 803

of the Foreign Intelligence Surveillance Act of 1978 ("FISA").[1]  That section, which is codified

at 50 U.S.C. § 1885b, states, in part:

> No State shall have authority to: (1) conduct an investigation into an electronic
> communication service provider's alleged assistance to an element of the
> intelligence community; (2) require through regulation or any other means the
> disclosure of information about an electronic communication service provider's
> alleged assistance to an element of the intelligence community; (3) impose any
> administrative sanction on an electronic communication service provider for
> assistance to an element of the intelligence community; or (4) commence or
> maintain a civil action or other proceeding to enforce a requirement that an
> electronic communication service provider disclose information concerning
> alleged assistance to an element of the intelligence community.

The United States argues that 50 U.S.C. § 1885b(a)(1) and (2) expressly preempt "the state

investigations" in Connecticut, Maine, Missouri, New Jersey and Vermont.  The argument fails

for two main reasons.

First, Section 803 is unconstitutional.  Principles of state sovereignty, including those

embodied in the Tenth Amendment, preclude Congress from blocking state investigations into

possible privacy violations by telecommunications companies regulated by the states.  While

Congress could, perhaps, narrowly restrict state investigations that implicate national security

concerns, Section 803 sweeps too broadly and indiscriminately and thus unlawfully infringes

upon states' sovereign powers.  Accordingly, it should be declared unconstitutional.

Second, even if Section 803 is valid, its plain language does not preempt all aspects of the

States' "investigations."  For example, Verizon has already represented to Maine that it did not

---

[1] Section 803 was added to FISA by Section 201 of the Foreign Intelligence Surveillance Act of
1978 Amendments Act of 2008, Pub. L. 110-261, 122 Stat. 2436 (July 10, 2008) ("FAA").

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

provide its customers' records to an intelligence agency, and Maine has simply demanded that Verizon make those representations under oath. Other States have asked for such things as copies of telephone companies' privacy policies and documents they are required to maintain under state law. By its terms, Section 803 does not preempt the States from seeking, or obtaining, this information. For these reasons, the Court should deny the United States' summary judgment motion.

## Factual Background

The United States seeks to enjoin five separate state proceedings.[2] The Court, in its order denying the United States' first motion for summary judgment, briefly summarized these proceedings. *In re NSA Telecomms. Records Litig.*, 2007 U.S. Dist. LEXIS 53456, **38-42 (N.D. Cal. July 24, 2007). Essentially, in each proceeding, other than in Maine, state officials responsible for overseeing the conduct of telecommunications carriers/electronic communications service providers ("Carriers") sought information from the Carriers regarding their maintenance and disclosure of private customer records, including whether, and to what extent, they had shared records with third parties, such as the National Security Agency ("NSA"). In Missouri, two members of the Public Service Commission sought to obtain information via investigative subpoenas they served on AT&T. *Id*. at **38-39. In New Jersey, the Attorney General issued subpoenas *duces tecum* to ten carriers. *Id*. at **40-41. In

---

[2] A sixth case, *Clayton v. AT&T Communications of the Southwest, et al*. (Case No. 07-1187) has been included in this subset of the MDL. This is a case brought by a commissioner of the Missouri Public Service Commission against six regulated telecommunications providers in Missouri. The United States has not intervened or otherwise been made a party to the case.

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

2

Connecticut, the Department of Public Utility Control ("Connecticut DPUC") opened a proceeding, and the American Civil Liberties Union ("ACLU-CT") subsequently served interrogatories on AT&T and Verizon. *Id.* at **41-42. Vermont's Department of Public Service propounded information requests to Verizon and AT&T; when the carriers failed to respond, the Vermont Public Service Board opened a docket and subsequently ordered the carriers to respond. *Id.* at *42.

In Maine, a number of citizens petitioned the Maine Public Utilities Commission ("MePUC") to investigate whether Verizon had shared its customers' records with the NSA. *Id.* at *39. In its response to the petition, Verizon stated that it had previously denied, in press releases, that the NSA had ever requested, or that Verizon had provided, customer records. The response itself, however, which was signed by an attorney, made no representation whatsoever as to whether the previous denials were accurate. *See* Response of Verizon Maine to Ten-Person Complaint, attached hereto as Exhibit A; *see also In re NSA Telecomms. Records Litig.*, 2007 U.S. Dist. LEXIS 53456, at *39. In other words, Verizon was unwilling to directly deny the allegations, but instead apparently expected the MePUC to dismiss the complaint based solely on the press releases. *See* Doc # 536-2 at 38 (MePUC's statement that Verizon submitted these press releases "for the purpose of influencing the [MePUC's] decision as to whether or not to open an investigation"). The MePUC recognized that if the statements made in the press release were indeed true, there might be no grounds upon which to conduct the investigation requested by the citizens. *Id.* at 39. However, the MePUC was "unwilling to rely on [the press release

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

3

statements] because they do not bear sufficient indicia of truth as they are not attributed to an individual within Verizon who has decision-making authority and knowledge of the matters asserted." *Id*. Rather, MePUC found that "to fulfill [its] duty to consider whether to open an investigation," it had to require Verizon to submit sworn affirmations that the statements made in the press release were true. *Id*. Accordingly, the MePUC ordered Verizon to affirm under oath that the representations it made in its press releases were true. *Id*. at 40. The MePUC explicitly stating that pending receipt of the affirmations, it was <u>not</u> opening an investigation. *Id*. at 39; *see also In re NSA Telecomms. Records Litig.*, 2007 U.S. Dist. LEXIS 53456, at *39 ("MePUC has <u>not</u> asked for any additional information from Verizon.") (emphasis in original).

The United States sued each State in federal court to enjoin any further proceedings, and the parties filed cross-motions for dismissal and summary judgment. Subsequently, the cases were transferred to this Court by the Judicial Panel on Multidistrict Litigation. This Court rejected the United States' arguments that the state proceedings were barred by the Supremacy Clause and the federal government's foreign affairs power, and decided not to reach the United States' claim that the state secrets privilege barred the state proceedings. *Id.* at * 37. The FAA became law in July 2008, and on December 23, 2008, the United States filed the instant motion.

<u>Argument</u>

**I. Section 803 Violates the Principles of State Sovereignty Inherent in the Constitution.**

Section 803 is an unconstitutional encroachment on state sovereignty. "Although the Constitution establishes a National Government with broad, often plenary authority over matters

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
             Case No. 07-cv-1242-VRW
             Case No. 07-cv-1323-VRW
             Case No. 07-cv-1324-VRW
             Case No. 07-cv-1326-VRW
             Case No. 07-cv-1396-VRW

4

within its recognized competence, the founding document 'specifically recognizes the States as sovereign entities.'" *Alden v. Maine*, 527 U.S. 706, 713 (1999) (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 71 n.15 (1996)). The Constitution reserves to the states a "substantial portion of the Nation's primary sovereignty, together with the dignity and essential attributes inhering in that status." *Alden*, 527 U.S. at 714. It is thus "incontestable" that the states "retain[] 'a residuary and inviolable sovereignty.'" *Printz v. United States*, 521 U.S. 898, 918-19 (1997) (quoting *The Federalist* No. 39, at 245 (J. Madison)). This structural principle is "reflected in numerous constitutional provisions, and not only those, like the Tenth Amendment, that speak to the point explicitly." *Id*. at 924 n.13.[3] In other words, the Constitution prohibits federal enactments that infringe on the "residuary and inviolable sovereignty" of the states.

The "great innovation of this design" is its assurance that "'our citizens would have two political capacities, one state and one federal, each protected from incursion by the other.'" *Id.* at 920 (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (Kennedy, J., concurring)). The Framers' approach "rejected the concept of a central government that would act upon and through the States, and instead designed a system in which the state and federal governments would exercise concurrent authority over the people – who were, in Hamilton's words, 'the only proper objects of government.'" *Id*. at 919-20 (quoting *The Federalist* No. 15,

---

[3] The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. However, the restraint the Tenth Amendment imposes on Congress "is not derived from the text of the Tenth Amendment itself." *New York v. United States*, 505 U.S. 144, 156 (1992). Instead, the Tenth Amendment simply confirms that Congress's powers are limited by the states' sovereignty. *Id*. at 157.

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

5

at 109).  Thus, the "'Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, <u>not States</u>."  *Id.* at 920 (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)) (emphasis added); *see also Alden*, 527 U.S. at 714 (framers deliberately departed from Articles of Confederation model in which the federal government could regulate states).

This duality is "one of the Constitution's structural protections of liberty."  *Printz*, 521 U.S. at 921.  Specifically, this aspect of the Constitution guarantees that the states enjoy "'distinct and independent portions of the supremacy, no more subject, within their respective spheres, to the general authority than the general authority is subject to them, within its own sphere.'"  *Id.* at 920-21 (quoting *The Federalist* No. 39, at 245 (J. Madison)).

In *Printz*, the Court applied these principles to invalidate the Brady Act's requirement that state officials perform background checks on handgun purchasers.  Rejecting the government's suggestion that the Court should balance the benefits of requiring state officials to carry out background checks against the allegedly minimal burdens on the states, the Court emphasized that

> where, as here, it is the whole <u>object</u> of the law to direct the functioning of the state executive, and hence to compromise the structural framework of dual sovereignty, such a 'balancing' analysis is inappropriate.  It is the very <u>principle</u> of separate state sovereignty that such a law offends, and no comparative assessment of the various interests can overcome that fundamental defect.

*Printz*, 521 U.S. at 932 (emphasis in original).

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

6

Section 803, by broadly prohibiting states from investigating and enforcing violations of their own laws, is an equal affront to state sovereignty. In each State, the purpose of the administrative proceeding is to ascertain whether telephone companies have complied with state law. In this regard, it is of no consequence to the States whether, or to what extent, the alleged NSA call database described in the media actually exists. Neither are the States interested in the nature of the relationship, if any, between an element of the intelligence community and the telephone companies.

There is no dispute that the states' authority to regulate the Carriers and protect their citizens' privacy falls within each state's "sphere" of sovereign power. "[T]he regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States." *Arkansas Electric Cooperative Corp. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375, 377 (1983). States have exercised exclusive jurisdiction over intrastate related telecommunications matters since the passage of the Communications Act of 1934. 47 U.S.C. §§ 151 *et seq.*; *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350 (1980).[4]

---

[4] For example, under Connecticut law, AT&T Connecticut and Verizon are public service companies within the jurisdiction of the Connecticut DPUC. Conn. Gen. Stat. § 16-1. Conn. Gen. Stat. § 16-11 provides the Connecticut DPUC with plenary authority to regulate *all* aspects of the manner of operation of Connecticut public service companies. *See also* Conn. Gen. Stat. § 16-6b, Conn. Gen. Stat. § 16-247f(a) ( "[t]he department shall regulate the provision of telecommunications services in the state in a manner designed to foster competition and protect the public interest."), and Conn. Gen. Stat. § 160247u (regulating unauthorized procurement and sale of telephone records and telephone company protection of records). Finally, both AT&T and Verizon have privacy policies concerning their customer proprietary network information ("CPNI"). To the extent the Carriers may have violated their own privacy policies by releasing CPNI without legal authority, such conduct may also constitute a violation of Connecticut's

STATE OFFICIALS' OPPOSITION                    MDL Docket No. 06-1791-VRW
TO UNITED STATES'              Relates to:  Case No. 07-cv-1187-VRW
MOTION FOR SUMMARY JUDGMENT                   Case No. 07-cv-1242-VRW
                                             Case No. 07-cv-1323-VRW
                                             Case No. 07-cv-1324-VRW
                                             Case No. 07-cv-1326-VRW
                                             Case No. 07-cv-1396-VRW

7

Further, the States here are seeking to protect the privacy of their citizens, a duty "left primarily to the individual States under the Ninth and Tenth Amendments." *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (Stewart, J., concurring); *see also In re NSA Telecomms. Records Litig.*, 2007 U.S. Dist. LEXIS 53456, at *81 (utility regulation and privacy are "traditional realms of state power").

Congress can no more prohibit states from carrying out these traditional functions than it could, for example, prohibit a state from investigating a homicide within its borders. In both situations, principles of state sovereignty ensure that states will have the autonomy to protect the interests of their own citizens, free from federal interference. Indeed, giving effect to Section 803 would undermine the very purpose of our system of dual sovereignty – protecting liberty by guarding against "the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). The statute raises that risk by attempting to block states from even conducting factual inquiries intended to uncover the truth regarding past events.

In prohibiting states from investigating the Carriers, Congress is not requiring state officials to act affirmatively, as it did in *Printz*, but instead is directing them to refrain from acting. This distinction, though, is of no constitutional significance because, in both instances, Congress is attempting to issue a blanket order to state officials to comply with federal law. While the federal <u>courts</u> possess the constitutional authority to order compliance with federal law, Congress does not. *See New York*, 505 U.S. at 179 (observing that the Constitution "plainly

consumer protection laws, including the Connecticut Unfair Trade Practices Act. Conn. Gen. Stat. §§ 42-110 *et seq*.

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

8

confers" this power on the courts but "contains no analogous grant of authority to Congress").

From a constitutional standpoint, it does not matter that Congress's edict comes in the form of an affirmative instruction to act or a negative injunction against acting. As *Printz* makes clear, "[i]t is the very <u>principle</u> of separate state sovereignty that such a law offends, and no comparative assessment of the various interests can overcome that fundamental defect." *Printz*, 521 U.S. at 932 (emphasis in original). The concern here is heightened by Congress's attempt to "leav[e] state substantive law in place, while at the same time denying the state[s] any role in enforcing that law." *Clearing House Ass'n, L.L.C. v. Cuomo*, 510 F.3d 105, 130 (2d Cir. 2007) (Cardamone, J., dissenting), *cert. granted*, 129 S. Ct. 987 (2009). Such federal legislation "erodes a key aspect of state sovereignty" and "confuses the paths of political accountability." *Id.*

Section 803 does not attempt to preempt specific state laws, and there is no dispute that state regulators have the authority under state law to regulate telecommunications companies and, in so doing, safeguard the privacy of state citizens. By attempting to eliminate the power to enforce state law according to an indeterminate and malleable formula, Section 803 undermines states' accountability to their citizens. The statute puts states "in the position of taking the blame for its burdensomeness and for its defects." *Printz*, 521 U.S. at 930. This follows because it is the states, not the federal government, who will be blamed for failing to enforce their utilities laws and thereby protect their citizens' privacy rights. *See id.* (noting that local law enforcement

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

9

officials, not federal officials, would shoulder the blame for errors causing handgun purchasers to be rejected).

To be clear, the States are not arguing that Congress can never take action to prevent states from acting in ways that might jeopardize federal interests. When Congress does so, though, principles of state sovereignty command Congress to tread carefully. Here, Congress failed to do so, as demonstrated by the sweeping, indeterminate language of Section 803 as well as the graphic contrast between Section 803 and the FAA provisions concerning private lawsuits, which reflect an effort to balance the competing interests via procedural safeguards. *Compare* Section 803 *to* Section 802, codified at 50 U.S.C. § 1885a (private lawsuit against person for providing assistance to intelligence agency must be dismissed only when Attorney General provides to the court specific certification regarding the assistance and court finds the certification is supported by substantial evidence).

The language of Section 803 is so broad as to be constitutionally unworkable. By its terms, it prohibits "<u>any</u>" state investigation into even "<u>alleged</u> assistance" by electronic communication providers to the foreign intelligence community. 50 U.S.C. § 1885b(a)(1) (emphasis added). It prohibits states from requiring disclosure of information through "<u>any</u> means." 50 U.S.C. § 1885b(a)(2) (emphasis added). Subsection (d) of the statute demarks, in the broadest terms possible, the scope of the preemption clause. "This section shall apply to <u>any</u> investigation, action, or proceeding that is pending on or commenced after the date of the enactment of the FISA Amendments Act of 2008." 50 U.S.C. § 1885b(d) (emphasis added).

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

10

"The word 'any' variously means 'without specification or identification,' 'whatever and whichever it may be,' 'in whatever quantity or number,' 'every; all.'" *Constellation Power Source, Inc. v. Select Energy, Inc*., 467 F. Supp. 2d 187, 205 (D. Conn. 2006) (quoting *Random House Webster's Unabridged Dictionary* (2d ed. 2001)). "[The word any] is not a word of limitation, but is an all-encompassing term. . . ." *Id*. The word "alleged" as a qualifier for the phrase "assistance to an element of the intelligence community" leads to even greater indeterminacy. The word "alleged" variously means "so declared, but without proof," "called by this term, but perhaps improperly so," "so-called." *Webster's New World Dictionary* (2d ed. 1972). Because Section 803 shields any <u>alleged</u> assistance, arguably the statute protects unlawful disclosures made by electronic communication providers as long as the latter simply declare that their actions "assisted" an element of the intelligence community. This is an insufficient basis upon which to upset the Constitution's allocation of state and federal sovereignty.

In the First Amendment context, the Supreme Court has held that statutes which "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston, Texas v. Hill*, 482 U.S. 451, 458-59 (1987). The result should be no different simply because the constitutional protection here derives from principles of state sovereignty, and not the First Amendment. Congress has overreached in broadly and indiscriminately preempting states' ability to protect

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

11

the privacy rights of their citizens and to ensure that telephone companies are abiding by non-preempted state laws and regulations.

Without a doubt, Congress could have acted more narrowly when it enacted Section 803 and did so in other provisions of the FAA. Under Section 802, a civil action against a person for providing assistance to an intelligence agency may go forward unless the Attorney General provides a specific certification regarding the nature of the assistance and the court finds that the certification is "supported by substantial evidence provided to the court." 50 U.S.C. § 1885a(a), (b). Generally, the person bringing the action may "participate in the briefing or argument of any legal issue" in the matter and may obtain review by the Court of Appeals. 50 U.S.C. § 1885a(d), (f).

In discussing the provision that would become Section 802, the Senate Select Committee on Intelligence explained that it

> reflect[ed] the Committee's determination that cases <u>should only be dismissed when providers acted in good faith</u>. Section 202 applies only to assistance provided by electronic communication service providers pursuant to a "written request or directive from the Attorney General or the head of an element of the intelligence community … that the program was authorized by the President and <u>determined to be lawful</u>."

110 S. Rpt. 209, at 7 (emphasis added). Chairman Rockefeller stated his view that the liability provision that protects telecommunications companies for being sued for alleged participation in the surveillance program from 9/11 until it was placed under authorization in January of 2007 is "narrowly focused" and "not the broad and vague immunity sought by the Administration." *Id.* at 19. Moreover, the Committee Report explicitly states that one important purpose for enacting

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

12

the amendments at issue is that "<u>additional protections should be afforded to U.S. persons whose communications are targeted for collection or collected incidentally.</u>" *Id.* at 2 (emphasis added). In expressing their views, Senators Feinstein, Snowe, and Hagel maintain that the FAA attempts to "achiev[e] the balance between <u>necessary</u> intelligence collection and the protection of Americans' privacy rights." *Id.* at 25 (emphasis added).[5]

Furthermore, a related provision of FISA, 50 U.S.C. § 1806(f), addresses whether foreign intelligence surveillance information that the government uses in criminal proceedings may be disclosed. This provision emphasizes that there must be a determination of whether or not the surveillance was in fact lawful before disclosure is prohibited. As the Ninth Circuit explained:

> Under FISA, 50 U.S.C. §§ 1801 *et seq.*, if an "aggrieved person" requests discovery of materials relating to electronic surveillance, and the Attorney General files an affidavit stating that the disclosure of such information would harm the national security of the United States, a district court may review *in camera* and ex parte the materials "as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f). The statute further provides that the court may disclose to the aggrieved person, using protective orders, portions of the materials "where such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.* The statute … provides a detailed regime to determine whether surveillance "was lawfully authorized and conducted."

*Al-Haramain Islamic Foundation v. Bush*, 507 F.3d 1190, 1205 (9th Cir. 2007).

Unlike these provisions, Section 803 ignores the need to strike a balance between the important interests involved – in this instance, protecting national security and preserving the

---

[5] Section 802 may itself be unconstitutional for reasons other than that it violates state sovereignty, and the States do not intend to suggest otherwise. At the very least, though, Congress, in enacting Section 802, attempted to set some boundaries. Section 803 has none.

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

13

states' rights to enforce non-preempted state utilities laws and to protect the privacy rights of their citizens. Any protection extended to electronic service providers for their authorized assistance to the intelligence community can and should be tailored to accommodate states' interest in exercising their traditional authority to regulate utilities and protect the privacy of their citizens. Unlike its civil-suit counterpart, Section 803 makes no effort to strike that balance and thus cannot be squared with the principles of state sovereignty inherent in the Constitution.

## II. The Plain Language of Section 803 Does Not Preempt All Aspects of the States' Proceedings.

Even if Section 803 is constitutional, it does not apply to the entirety of every state proceeding. In relevant part, Section 803 purports to preclude states from "conduct[ing] an investigation into," and requiring "disclosure of information" regarding, "an electronic communication service provider's alleged assistance to an element of the intelligence community." 50 U.S.C. § 1885b(a)(1)–(2). A state proceeding is preempted, then, only if the state is 1) conducting an investigation or requiring disclosure of information 2) relating to a provider's alleged assistance to an intelligence agency.

With respect to Maine, the first element is not met because the MePUC is neither conducting an investigation nor requiring disclosure of information. Properly mindful of competing federal interests, jurisdictional issues, and potential preemption, the MePUC has proceeded carefully and deliberately. It did not initiate the investigation requested by the citizens and instead is merely attempting to determine whether an investigation is even warranted. To that end, the MePUC asked one carrier – Verizon – to affirm under oath

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

14

statements it already made in its public press releases. *See* DOC # 536-2 at 40. The MePUC is simply demanding, as any court would, that statements made for the purpose of influencing its decisions have some indicia of reliability. This certainly cannot be characterized as an "investigation." Indeed, the MePUC explicitly stated that it has <u>not</u> opened an investigation and that it might <u>never</u> open an investigation. *Id*. at 39.

Nor is the MePUC seeking the "disclosure" of information. According to one legal authority, "disclosure" means "revelation" or "the impartation of that which is secret or not fully understood." *Black's Law Dictionary* (6th ed. 1990), at 464. Verizon, in its press releases, <u>already</u> disclosed the information – it stated that it did not provide its customers' phone records to the NSA. The MePUC, to satisfy the obligation it owes to the public, is now seeking from Verizon only an affirmation that what it said before is true. Such an affirmation could not possibly cause any damage beyond whatever damage may have been caused by Verizon's initial public disclosures. And, in any event, Section 803, by its plain terms, does not preclude Maine from seeking an affirmation of previously disclosed information.[6]

With respect to the second element, many aspects of the States' inquiries have nothing to do with whether an electronic communication service provider assisted a governmental

---

[6] To the extent that Section 803 is ambiguous, it should be interpreted so as to avoid raising constitutional issues. *Bartlett v. Strickland*, 2009 U.S. LEXIS 1842, *35 (U.S. Mar. 9, 2009); *Clark v. Suarez Martinez*, 543 U.S. 371, 380-81 (2005). As is discussed in Part I, Section 803, if it preempts the States' investigations, is unconstitutional. Interpreting Section 803 as not preempting all aspects of the state proceeding might avoid the need for the Court to address the constitutionality of the statute. At the very least, limiting the scope of Section 803 would mitigate the unconstitutional impact of the statute.

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

15

intelligence agency. Most of Connecticut's interrogatories call for unrelated general information regarding AT&T's and Verizon's treatment of customer information. Specifically, Connecticut seeks to ascertain:

1.    whether the Carriers had published privacy policies concerning customer information and/or records in effect during the relevant period from September 11, 2001 to August 10, 2006;

2.    whether the Carriers had any other policies concerning the privacy of customer information and/or records during the relevant period;

3.    whether and what changes to such privacy policies the Carriers presently intend to make in response to P.A. 06-96, entitled "An Act Concerning the Confidentiality of Telephone Records," which took effect on October 1, 2006 and is codified at Conn. Gen. Stat. § 16-247u;

4.    whether the Carriers had any policies during the relevant period, written or unwritten, regarding the disclosure of customer information and/or records to private parties, government entities and/or law enforcement personnel when not compelled to do so by subpoena, warrant, court order or National Security Letter; and,

5.    whether, during the relevant period, the Carriers had any policies, written or unwritten, concerning the disclosure of customer information and/or records to law enforcement or government personnel pursuant to a National Security Letter.

*See* DOC # 536-2 at 30-32 (ACLU-CT's Interrogatories, at ACLU-2, 3, 4, 6, and 10).[7]

Similarly, Vermont sought general information outside the terms of Section 803. For example, requests 3-6 and 9-16 make no explicit reference to the NSA or any element of the intelligence community, and thus seek responses outside the scope of Section 803. *See* DOC # 536-2 at 15-17. Thus, those aspects of the Vermont proceeding were authorized by Vermont

---

[7] These interrogatories were directed at AT&T, and virtually identical interrogatories were directed at Verizon.

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:   Case No. 07-cv-1187-VRW
              Case No. 07-cv-1242-VRW
              Case No. 07-cv-1323-VRW
              Case No. 07-cv-1324-VRW
              Case No. 07-cv-1326-VRW
              Case No. 07-cv-1396-VRW

laws "directed at more mundane, local concerns such as utility regulation and privacy, traditional

realms of state power." *In re NSA Telecomms. Records Litig.*, 2007 U.S. Dist. LEXIS 53456,

*81.

The subpoena *duces tecum* issued by Missouri makes no reference at all to the NSA or

intelligence agencies, and instead merely seeks documents regarding AT&T's general operations

in that state. It asks for copies of 1) subpoenas and orders demanding the release of customer

information, 2) confidentiality agreements relating to the release of customer information, 3)

documents relating to items 1) and 2), and 4) records maintained pursuant to state law regarding

the disclosure of customer information to third parties. *See* DOC # 536-2 at 24-25. AT&T may

well have documents in its possession responsive to these requests that have absolutely nothing

to do with its alleged involvement with the NSA.

In sum, none of these state inquiries relates entirely to specific assistance an electronic

communication service provider may have given to an intelligence agency, and the inquiries

therefore lie beyond the scope of Section 803. The United States' attempt to tar the entirety of

all the States' proceedings with a broad brush should be rejected, as the presence in each

proceeding of matters that sit outside Section 803 raise disputed issues, rendering summary

judgment inappropriate.

## Conclusion

In *New York v. United States*, the Supreme Court aptly summarized the role of the federal

judiciary as a backstop against measures by the other branches which, in an effort to address

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

17

difficult issues, threaten to upset the balance of state and federal sovereignty that undergirds our federal system. Substituting "the necessity to gather intelligence in order to fight terrorism" for the "shortage of disposal sites for radioactive waste," the *New York* Court's words ring true here:

> Some truths are so basic that, like the air around us, they are easily overlooked. Much of the Constitution is concerned with setting forth the form of our government, and the courts have traditionally invalidated measures deviating from that form. The result may appear "formalistic" in a given case to partisans of the measure at issue, because such measures are typically the product of the era's perceived necessity. But the Constitution protects us from our own best intentions: It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day. The shortage of disposal sites for radioactive waste is a pressing national problem, but a judiciary that licensed extraconstitutional government with each issue of comparable gravity would, in the long run, be far worse.

*New York*, 505 U.S. at 187-88. By attempting to direct the functioning of state officials via indeterminate language which lacks procedural safeguards, Section 803 deviates from the form of government envisioned by our Constitution. Accordingly, it cannot stand, and the United States' motion should be denied.

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to:  Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

18

DATED: March 20, 2009

Respectfully submitted,

JANET T. MILLS
Attorney General of Maine

/s/ Christopher C. Taub
Christopher C. Taub (ME 8416)
Christopher.C.Taub@maine.gov
Linda Conti (ME 3638)
Linda.Conti@maine.gov
Assistant Attorneys General
Six State House Station
Augusta, Maine 04333-0006
Tel. (207) 626-8800
Fax: (207) 287-3145
Counsel for Defendants Reishus, Vafiades, and Cashman

STATE OFFICIALS' OPPOSITION
TO UNITED STATES'
MOTION FOR SUMMARY JUDGMENT

MDL Docket No. 06-1791-VRW
Relates to: Case No. 07-cv-1187-VRW
Case No. 07-cv-1242-VRW
Case No. 07-cv-1323-VRW
Case No. 07-cv-1324-VRW
Case No. 07-cv-1326-VRW
Case No. 07-cv-1396-VRW

19

## DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B

I, CHRISTOPHER C. TAUB, hereby declare pursuant to General Order 45, § X.B, that I

have obtained the concurrence in the filing of this document from each of the other signatories

listed below.  I declare under penalty of perjury that the foregoing declaration is true and correct.

March 20, 2009                          /s/ Christopher C. Taub
Augusta, Maine                          Christopher C. Taub

STUART RABNER                           RICHARD BLUMENTHAL
ATTORNEY GENERAL OF NEW                 ATTORNEY GENERAL
JERSEY                                  OF CONNECTICUT

By:  /s/ Megan Lewis
Megan Lewis                             By:  /s/ Tatiana D. Eirmann
Assistant Attorney General             Tatiana D. Eirmann
R. J. Hughes Justice Complex            Assistant Attorney General
25 Market Street                        10 Franklin Square
Trenton, NJ  08625                      New Britain, CT  06051
Tel:  (609) 292-8576                    Tel:  (860) 827-2620
Fax: (609)777-3120                      Fax:  (860) 827-2893
Counsel for Defendants Farber, Ricketts Counsel for Defendants Palermino,
and O'Donnell                           Downes, Betkoski, Goldberg and George

WILLIAM H. SORRELL
ATTORNEY GENERAL OF VERMONT

By:  /s/ Michael N. Donofrio            /s/ Jennifer Heintz
Michael N. Donofrio                     Jennifer Heintz
Mark J. DiStefano                       P.O. Box 360
Assistant Attorneys General            Jefferson City, MO  65102
109 State Street                        Tel:  (573) 526-6715
Montpelier, VT  05609                   Fax:  (573) 751-9285
Tel:  (802) 828-3171                    Attorneys for the Missouri Public Service
Fax: (802) 828-2154                     Commission
Counsel for Defendants Volz,
Coen, Burke, and O'Brien

STATE OFFICIALS' OPPOSITION                    MDL Docket No. 06-1791-VRW
TO UNITED STATES'                   Relates to:  Case No. 07-cv-1187-VRW
MOTION FOR SUMMARY JUDGMENT                     Case No. 07-cv-1242-VRW
                                               Case No. 07-cv-1323-VRW
                                               Case No. 07-cv-1324-VRW
                                               Case No. 07-cv-1326-VRW
                                               Case No. 07-cv-1396-VRW

20