1  BRUCE I. AFRAN
   CARL J. MAYER
2  STEVEN E. SCHWARZ

3  Attorneys for the Plaintiffs

4

5              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
6                 **SAN FRANCISCO DIVISION**

7  **IN RE NATIONAL SECURITY**              **MDL Docket No. 06-1791 (VRW)**
   **AGENCY TELECOMMUNICATIONS**
8  **RECORDS LITIGATION**                   ***McMURRAY* PLAINTIFFS' RESPONSE TO**
   _____           **GOVERNMENT DEFENDANTS' (DKT. NO.**
9                                            **583) AND TELECOM DEFENDANTS'**
                                             **(DKT. NO. 588) MOTIONS TO DISMISS.**
10 **This Document Relates To:**

11 ***McMurray v. Verizon Comm., Inc.*, No.**  [CIVIL L.R. 7-11]
   **09-cv-0131-VRW**
12                                           Chief Judge Vaughn R. Walker

13 _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27 *McMurray* Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt.
   No. 588) Motions to Dismiss, *McMurray, et al. v. Verizon, et al.*, 09-cv-0131-VRW (MDL 06-cv-1791-VRW).
28

                                                                                                    1

## INTRODUCTION

This brief concerns principally the question of whether Section 802 of the FISA Amendments Act of 2008 (the "FAA" or "the Act") , 50 U.S.C. §1885a, as signed into law by the President on July 9, 2009, is unconstitutional insofar as it mandates a taking of ripened, liquidated statutory damage claims arising under federal law without just compensation and forces a "total destruction", *Armstrong, infra*, of plaintiffs' pending claims in the underlying MDL proceeding in *McMurray et al v. Verizon Communications, Inc., et al* (07-cv-02029-VRW).

## BACKGROUND

**A. The Pending Actions**

This matter arises following the passage into law of the FAA which mandates dismissal of pending suits against various telecommunications corporations for illegal disclosure of subscriber phone records to the United States including the National Security Agency (NSA) and other federal agencies.

Two years prior to the passage of the Act, the within plaintiffs had filed actions seeking damages and injunctive relief against the United States and defendants Verizon, ATT and BellSouth (since merged with ATT) for illegal disclosure of telephone subscriber conversations, information and records to the United States in violation of the Electronic Communications Privacy Act (ECPA) and the Stored Communications Act. Such prior claims are referred to herein as the "Pending Actions". The Pending Actions allege that the United States requested and received such information from the telecommunications carriers without warrant or subpoena or other statutory authorization in direct violation of provisions of the ECPA and the Stored Communications Act that prohibit the disclosure of such information to any government agency

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

in the absence of a warrant or subpoena (or certain other limited statutory conditions).

Both the ECPA and the SCA provide for damages to any person aggrieved by a violation and provide for minimum damages of $1,000 per violation. *See e.g.* 18 U.S.C. §2707.

**B.      The FISA Amendments Act of 2008.**

Congress passed (and the President signed into law on July 9, 2008) the amendments to the Act with the express intent and purpose of forcing dismissal of the Pending Actions.

Section 802(a) of the Act requires dismissal of the Pending Actions, as follows:

"Notwithstanding any other provision of law, **a civil action** may not lie or be maintained in a Federal or State court against any person for providing assistance to any element of the intelligence community, and **shall be promptly dismissed if the Attorney General certifies to the District Court of the United States in which such action is pending that —**
\*      \*      \*

(4) in the case of a covered civil action, **the assistance** alleged to have been provided by the electronic communication service provider **was —**

(A) in connection with an intelligence activity involving communications that was —

(i)      **authorized by the President** during the period beginning on September 11, 2001, and ending on January 17, 2007; and

(ii)      **designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack**, against the United States; and

(B) **the subject of a written request or directive**, or a series of written requests or directives, **from the Attorney General or the head of an element of the intelligence community** (or the deputy of such person)

**(C)** to the electronic communication service provider **indicating that the activity was —**

> **(i)** **authorized by the President**; *and*

> **(ii)** **determined to be lawful**;

In summary form, the Act[1] mandates that

"a civil action…shall be promptly dismissed if the Attorney General

certifies…that …the assistance…was…

> (iii) authorized by the President…and

> (iv) designed to detect or prevent a terrorist attack, or

> activities…and

that the telecommunications carriers had previously received a "certification":

> (D) the subject of a written request or directive…from the Attorney General

> or the head of an element of the intelligence community…indicating that

> the activity was —

> (i) **authorized by the President**; *and*

> (ii) **determined to be lawful**;

See FISA Amendments Act (2008) codified at 50 U.S.C. §1885a.

### C. Effect of the Act upon the Pending Actions

Under the Act, all such actions, *including the Pending Actions*, must be dismissed if the

Attorney General or the head of an element of the intelligence community certifies to this Court

---

[1] There is no factual dispute that the Act was intended to force dismissal of ripened claims pending in this Court as it was passed into law more than two years after the actions were commenced and approximately 7 years after the underlying violations of the ECPA and the SCA.

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

that they had previously informed the telecommunications carriers that the carriers' assistance, *i.e.,* disclosure of phone records to the United States was "authorized by the President" and "determined to be lawful". *Id.*

In other words, the Act mandates dismissal based on a certification by the Attorney General that he or an intelligence agency official had previously told the telecommunications carriers that the disclosure of prohibited subscriber records was "lawful", *id.,* purporting to impose a dispositive and enforceable determination by the Executive Branch of the lawfulness of its own actions, a direct violation of the clear constitutional division of power between the Executive Branch under Article II and the adjudicatory power of the courts under Article III.

The Act further forces dismissal of the Pending Actions without compensation for the value of the damage claims that have previously ripened and as to which issue has been joined under the ECPA and the SCA. In this respect, it is to be noted that both the ECPA and the SCA provide for minimum recovery to any plaintiff of $1,000 for each violation, a liquidated damage claim, that is an economic interest legislatively voided retrospectively by the Act and for which no compensation is provided.

## ARGUMENT

**I.  BY ELIMINATING COMPLETELY ANY REMEDY, BY PROVIDING NO ALTERNATE FORUM IN WHCH THE PENDING ACTIONS CAN BE HEARD AND BY FAILING TO PROVIDE FOR COMPENSATION TO PLAINTIFFS, SECTION 802 EFFECTS AN UNCONSTITUTIONAL TAKING**

The United States Supreme Court has explained that "The question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty... this Court, quite simply, has been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

5

by the government, rather than remain disproportionately concentrated on a few persons... Indeed, we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely *'upon the particular circumstances* [in that] case."  (*Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 123, 124, 98 S.Ct. 2646, 2658, 2659, *emphasis added, internal cites omitted*).

 This difficulty was recognized by the United States Court of Appeals for the Ninth Circuit in *Atmospheric Testing Litigation,* a case upon which Defendants now heavily rely in their Motions to Dismiss.  "In a classic example of understatement, the Supreme Court has said that '[t]he question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty.'  *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 123, 98 S.Ct. 2646, 2658…Whether such a [cognizable taking] claim exists is subject to an 'essentially *ad hoc,* factual inquir[y].'  *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659.  Both the nature of the property right and of the governmental invasion must be considered [to determine whether a taking has occurred.]"  (*In re Consolidated U.S. Atmospheric Testing Litigation,* 820 F.2d 989).

 An "essentially ad hoc, factual inquiry" of the nature contemplated by *Penn Central* and *Atmospheric Testing* is necessary in this case to determine whether or not the *McMurray* plaintiffs have raised a cognizable taking claim.  As discovery has not yet commenced, Defendants' Motions to Dismiss are extraordinarily premature and should be denied.  At a minimum, the ad hoc, factual inquiry described above must be given to allow Plaintiffs to develop factually the expectations for compensation created in them by the decades-old damage provisions of ECPA and SCA that underpin their property interests in their causes of action.  *Cf. Austin,* below.

 The United States Court of Appeals for the Ninth Circuit explicitly recognized in *In re*

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

6

*Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1312 (9th Cir. 1982) that "claims for compensation are property interests that cannot be taken for public use without compensation." *See also, Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982) (*quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). "A cause of action has been described as a 'species of **property** protected by the Fourteenth Amendment's Due Process Clause.") [*emphasis added*]. Bali, 684 F.2d at 1312, *citing Ware v. Hylton,* 3 U.S. (3 Dall.) 199, 245, 1 L. Ed. 568 (1796); *Gray v. United States*, 21 Ct.Cl. 340, 392-93 (1886). *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-25, 95 S. Ct. 335, 349, 42 L. Ed. 2d 320 (1974); *Cities Service Co. v. McGrath*, 342 U.S. 330, 335-36, 72 S. Ct. 334, 337, 96 L. Ed. 359 (1952).

In *Bali*, the Court of Appeals expressly recognized that jury awards that are extinguished by statute or treaty are property interests for which "the right to just compensation entitles the claimant to the full pecuniary value of his claim." *Id.* citing *United States v. Reynolds*, 397 U.S. 14, 15-16, 90 S. Ct. 803, 804-805, 25 L. Ed. 2d 12 (1970). *Bali* expressly held that the mere fact that the claims derived from pending suits, did not mitigate against an unconstitutional taking "if their claims have been unreasonably impaired by the treaty [the Warsaw pact regulating damage awards in airline crashes]". Id.

*Bali* is significant in that the Court refused to accept that a treaty, or by extension legislation, can extinguish property rights that derive from damage claims. Citing the Supreme Court's decision in *Regional Rail Reorganization Cases,* 419 U.S. at 146-147, the Court of Appeals held that rather than extinguishing such claims, the plaintiffs may seek restitution in the Court of Claims. Id. at 1313.

Thus, there can be little dispute that where damage claims are "unreasonably impaired",

**McMurray** Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss, *McMurray, et al. v. Verizon, et al.,* 09-cv-0131-VRW (MDL 06-cv-1791-VRW).

7

*Bali, supra*, by treaty or legislative action, the aggrieved plaintiff may seek compensation under the Fifth Amendment takings clause.

Defendants now attempt to sweep this key holding of *Bali* under the rug as "dicta" by misrepresenting and inaccurately citing a footnote of the *Atmospheric Testing* Court. (Government Memorandum in Support at 6, n. 5). In *Atmospheric Testing,* the Court explained that "In *Bali,* the court of appeals in dictum postulated that ***wrongful death*** claims are property within the meaning of the just compensation clause." *Atmospheric Testing,* 988 n. 3., *emphasis added.* Clearly, *Atmospheric Testing's* comment on *Bali* was limited to wrongful death claims[2] and can not be extended to the various statutory and constitutional claims brought by many of the MDL plaintiffs which the FISA Amendments Act seeks to take. Contrary to defendants' cabined and self-limiting analysis, the plain thrust of the Ninth Circuit's reasoning in *Atmospheric Testing* is clearly to recognize that a cause of action as a property interest is a "cognizable takings claim" subject to an *ad hoc* factual inquiry. *Atmospheric Testing* at 989.

Other decisions cited by defendants are of similar import. See e.g. *District of Columbia v. Beretta U.S.A. Corp.,* 940 A.2d 163, 176 (D.C. Ct. Appeals 2008) ("Because rights in tort do not vest until there is a final, unreviewable judgment, Congress abridged no vested rights by . . . retroactively abolishing [plaintiff's] cause of action in **tort**";). See cases cited at Defendants' Memorandum at 5 n.4 *all* of which come from *Beretta* and concern exclusively *tort* actions that by nature are unliquidated, speculative and inchoate. None of the decisions cited by defendants concerns a statutorily-mandated liquidated damage claim such as those under the ECPA and the SCA. Clearly, decisions allowing retroactive application apply to inchoate, non-liquidated tort

---

[2] *Bali* was brought by the survivors of the decedents of an air disaster.

***McMurray*** **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

claims; not claims for Congressionally-mandated damages. The distinction is obvious: claims mandated by statute create an expectation giving rise to a property interest of a far different character than the unsettled tort remedies for which a finder of fact may impose no damages or nominal damages even where the defendant has been found liable. In contrast, the ECPA and SCA mandate minimum recoveries of $1,000 per violation, a definitive economic interest far removed from the uncertain world of tort claims. The mandatory nature of minimum damage recoveries under ECPA and SCA must be seen as conveying a property interest. For this Court to find otherwise would be to assume Congress had no purpose in stipulating liquidated damages.

The infirmity of Section 802 can be readily seen when measured against *Konizeski v. Livermore Labs (In re Consol. U.S. Atmospheric Testing Litig.),* 820 F.2d 982, 988 (9th Cir. 1987), where the Ninth Circuit held that a statute providing that actions against the United States be the exclusive remedy for tort claims against contractors for Hiroshima related radiation injuries was not an unconstitutional taking of state law claims where the federal legislation provided an alternate remedy against the United States.

In both *Konizeski* and *Atmospheric Testing,* Congress did not abrogate any cause of action, but merely substituted the United States for the private party defendants. In contrast, the Act here eliminates <u>any</u> remedy for damages whether arising under federal or state law. *Konizeski* expressly recognized that the statute creating an exclusively federal remedy over radiation damage claims, did not "abrogate" claims but simply reserved them to a specific statutory claims process that could be readily used by litigants:

> "The governmental action, moreover, does not abrogate the claims but subjects them to the tort claims procedure which the plaintiffs could reasonably expect might be applied."

*Konizeski*, 820 F.2d at 989. *Accord, Atmospheric Testing* at 989 ("The governmental action,

*McMurray* Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss, *McMurray, et al. v. Verizon, et al.,* 09-cv-0131-VRW (MDL 06-cv-1791-VRW).

9

moreover, does not abrogate the claims but subjects them to the tort claims procedure which the plaintiffs could reasonably expect might be applied); *Hammond v. United States*, 786 F.2d 8 (1st Cir 1986) (no takings clause violation where Congress substituted the United States as a defendant for a private party.)

Cases relied upon by the Government are inapposite. In *Austin v. Bisbee*, 855 F.2d 1429 (9th Cir. 1988), the Court was concerned with the retroactive effect of a federal statute that barred overtime for state employees. In holding that the statute did not violate a property right, the court in Austin expressly held that no pre-existing statute had mandated that state employees were entitled to overtime. Since no prior expectation of overtime could have existed, the court held that no property right was violated by the retroactive amendment. 855 F.2d at 1435-1436. Conversely, the Plaintiffs in the instant case have a great expectation of compensation created by the decades-old damage provisions of ECPA and SCA.

Contrary to *Austin,* here the property rights were created by statute in the ECPA and the SCA and predated Section 802 (which purports to wipe them out) by more than two decades.

*Grimesy v. Huff*, 876 F.2d 738 (9th Cir. 1989), also relied upon by the Government expressly recognized that retroactive application of a statute would be improper "when "'to do so would infringe upon or deprive a person of a right that had matured or become unconditional.'" "876 F.2d at 743. *Grimesy* is directly applicable here where the liquidated damage provisions in the ECPA and the SCA have been relied upon by telephone subscribers for more than two decades and form an undeniable expectation of telephone privacy, a fundamental constitutional concern vastly elevated above the unliquidated tort claims addressed in the decisions cited by the Government. *See Grimsey* at 743-744, citing cases. In contrast, the damages sought in *McMurray* I and which are to be extinguished by Section 802 were both liquidated *and* expressly

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

10

mandated by Congress in the ECPA and the SCA[3]

The Government Defendants' arguments that this court lacks jurisdiction because "The *McMurray* plaintiffs have not sought (monetary) compensation under the Tucker Act for their alleged taking" (Government Memorandum in Support at 11) is misplaced. In the instant lawsuit, which may be called "*McMurray* II" (Case No. 09-cv-131), the plaintiffs do not seek *any* monetary compensation, only declaratory and injunctive relief that the pertinent parts of the FISA Amendments Act are unconstitutional and enjoining the enforcement of those provisions of the Act because, in part, the Act allows an unconstitutional taking without compensation of the claims for monetary compensation raised in "*McMurray* I" (Case No. 07-cv-2029). Whether or not the plaintiffs in McMurray I would be required to seek compensation under the Tucker Act for their claims for monetary relief in that action is outside the scope of the pending motion to dismiss McMurray II; as argued below this Court can declare that the Act is an unconstitutional taking and that the the Act is void for its failure to provide for compensation and for extinguishing any apparent right to seek compensation in any forum.

In *1902 Atlantic, Ltd. v. Hudson,* 574 F. Supp. 1381, 1406 (E.D. Va 1983), the district court refused to dismiss an inverse condemnation claim where the plaintiff was seeking a declaration that the agency's action represented an unconstitutional taking. Since the plaintiff was not seeking monetary damages but only an order declaring the agency action to be

---

[3] The Government also misapplies the decision in *Atmospheric Testing.* There the Court of Appeals expressly noted that the statute reserved a cause of action against the government. 820 F.2d at 990 ("On notice of hearing, appellants were given the opportunity to present their claims before the district court. The requirements of procedural due process were thereby satisfied."). Section 802 extinguishes any opportunity to present claims before the district court. In *Atmospheric Testing* the court also noted that Congress had acted pursuant to its War Powers. *Id.* The Government has made no argument that the FISA amendment giving rise to Section 802 is a function of Congress's War Power.

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

11

unconstitutional, the court in *1902 Atlantic. Ltd.* held there was no basis to the argument that the claim must be heard in the Court of Claims:

> "[I]n holding that a taking has occurred in this instance, this Court also rejects the argument of the defendant that the Court is divested of jurisdiction to grant the plaintiff's request for a declaratory judgment because the Tucker Act, 28 U.S.C. Section 1491 vested jurisdiction exclusively in the Court of Claims.
>
> \*    \*    \*
>
> Because the plaintiff has not requested any money damages, and because this Court is not holding that the defendant is liable for any monetary damages, the defendant's argument that the Court of Claims has exclusive jurisdiction to hear the taking question as opposed to award compensation must fail.…Because no issue of money damages or liability for monetary damages is presented in the instant case, the Tucker Act does not divest this Court of jurisdiction to hear the plaintiff's regulatory "taking" claim."

*1902 Atlantic, Ltd. v. Hudson*, 574 F. Supp. at 1406. See also *Parkview Corp. v. Department of Army, Corps of Engineers, etc.,* 490 F. Supp. 1278, 1281 (E.D. WI 1980) (refusing to dismiss a declaratory judgment proceeding challenging the constitutionality of an agency's actions under the Takings Clause, but holding that the plaintiff's claim for monetary damages must be heard in the Court of Claims).

*1902 Atlantic, Ltd.* is squarely on point. As in *1902 Atlantic. Ltd.,* the instant complaint contains <u>no</u> claim for monetary damages. Each of the counts seeks only a declaration that the Act is unconstitutional as a Takings Clause violation (Count I), a violation of separation of powers between the executive and judicial branches (Count II), or as a violation of due process by the retroactive interposition of a defense that mandates dismissal of the actions (Count III). Since the complaint seeks no monetary damages, no basis exists to the defendants' argument that the action can be heard only by the Claims Court.

Defendants' contention that no taking has arisen is based primarily on their argument that retroactive amendments have been upheld where their affect is to alter the burden of proof prior

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

to entry of a final judgment.  But unlike the *Portal to Portal Act* cases where the retroactive amendment created a good faith reliance defense for the employers' benefit, *see e.g. Asselta v. 149 Madison Ave. Corp.*, 79 F. Supp. 413 (S.D. NY 1948),[4] here the amendment simply mandates that the district court dismiss the Pending Actions without any burden on the defendant to demonstrate good faith reliance on an agency representation and without giving the plaintiff the right to challenge such "good faith" reliance at trial or even to conduct threshold discovery as to such issue.   To block any adjudication, the Attorney General need only certify that either he or a head or deputy head of an intelligence agency previously informed the telecommunications defendants that their "assistance" had been "authorized by the President" and "was determined to be lawful".   Dismissal must follow; no adjudication is possible under Section 802.

Thus, unlike the *Portal to Portal Act* cases, *Asselta, supra*, the Act makes no pretense that it "leaves the application of the rules of law, including any defenses, for judicial determination." *In re Consolidated United States Atmospheric Testing Litig.*, 820 F.2d 982, 992 (9th Cir. 1987), *quoting Dames & Moore v. Regan*, 453 U.S. 654, 685, 101 S. Ct. 2972, 2989, 69 L. Ed. 2d 918 (1981). In *Dames & Moore*, the Supreme Court held that referral of claims to the U.S.-Iran Claims Tribunal did not comprise a taking precisely because it reserved a remedy "capable of providing meaningful relief" to the claimants:

---

[4] In *Asselta v. 149 Madison Ave. Corp.*, 79 F. Supp. 413 (S.D. NY 1948) the district court reversed a prior judgment in favor of the plaintiff where Congress modified the statute while the case was on appeal to provide for a defense that the employer had relied on "any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged." 79 F. Supp. at 414.  The case had been remanded to the district court  by the Supreme Court while the matter was pending after Congress had enacted the amendment.  See *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 795, 67 S. Ct. 1726, 91 L. Ed. 1822 (1947), *modifying* 331 U.S. 199, 91 L. Ed. 1432, 67 S. Ct. 1178 (1947),

"Our conclusion is buttressed by the fact that the means chosen by the President to settle the claims of American nationals **provided an alternative forum**, the Claims Tribunal, which is **capable of providing meaningful relief**. The Solicitor General also suggests that the provision of the Claims Tribunal will actually enhance the opportunity for claimants to recover their claims, in that the Agreement removes a number of jurisdictional and procedural impediments faced by claimants in United States courts.

453 U.S. at 686-687 [emphasis added].

Thus, *Dames & Moore* upheld the president's action on the ground that he had authorized an alternative forum "capable of providing meaningful relief". Id.

But unlike the arbitral forum in *Dames & Moore*, the Act here does not transfer the ECPA and SCA claims to *another* forum –arbitral or otherwise - it simply extinguishes them, providing no remedy at all, indeed abrogating any remedy.

*Dames & Moore* was sensitive to this potential for outright abrogation of a right of action and expressly held that a constitutional "taking" of a vested claim is one predicated upon " 'reasonable, certain and adequate provision for obtaining compensation.'" *Id.* at 689 *quoting Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-125 (1974), *quoting Cherokee Nation v. Southern Kansas R. Co*., 135 U.S. 641, 659 (1890); *see also Cities Service Co. v. McGrath*, 342 U.S. 330, 335-336 (1952); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 94, n. 39 (1978).[5]

_____

[5] Even if, *arguendo*, a compensation proceeding in the Claims Court is available where the congressional enactment does not *preclude* such remedy, see *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-125 (1974), such does not deprive this Court of the power to declare that an unconstitutional taking has been effected and that compensation has not been provided. See *1902 Atlantic, Ltd. v. Hudson*, 574 F. Supp. 1381, 1406 (E.D. Va 1983); *Parkview Corp. v. Department of Army, Corps of Engineers, etc.*, 490 F. Supp. 1278, 1281 (E.D. WI 1980). Irregardless of any potential application of the Tucker Act, this Court is perfectly competent to exercise its equitable powers to declare that Section 802 effects a taking.

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

14

In *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 48 S. Ct. 194, 72 L. Ed. 303 (1928), the Supreme Court held that Congress may not deny a patent holder the right to sue for patent infringement.

Interpreting *Richmond Screw*, the Fourth Circuit in *Carr v. United States*, 422 F.2d 1007 (4th Cir 1970), held that the Drivers Act, a Congressional enactment that eliminated a common law remedy for victims of automobile accidents caused by federal government drivers, did not comprise a taking because it still afforded an alternate remedy, namely an action against the United States in the District Court. *Carr's* holding that the Driver's Act did not cause a taking was based on the fact the victim's claim occurred four years *after* the passage of the Drivers Act:

> "There the Supreme Court dealt with statutes whose combined effect deprived a patent owner of his right to sue for infringement. But the patent in that case had been issued prior to the enactment of the relevant legislation. There was, therefore, a vested right in being which was sought be abrogated. *By contrast, here the accident occurred over four years **after** the enactment of the Drivers Act*." 422 F. 2d at 1010-11 (emphasis added).

Unlike the claim in *Carr* that did not even arise until years after the statute was passed, here the Pending Actions are based on violations of the ECPA and the SCA that arose at least six years **before** Section 802 was passed into law. Yet the Act would wholly abrogate such claims even though they arose years before the amendments. Where a statute plainly intends to abrogate claims retrospectively, as does the Act here, the Court **must** consider whether the extinguishment of the right of action comprises a taking. *Cf., United States v. Sec. Indus. Bank*, 459 U.S. 70, 81 (1982) (Takings Clause claim not addressed where Court found that Congress did not intend

bankruptcy law abrogating certain liens to be applied retroactively).[6] Unlike *Sec. Indus. Bank*, there is no question that Congress intended to fully extinguish the Pending Actions.

*Armstrong v. United States*, 364 U.S. 40, 48-49 (1960) cited with approval in *Sec. Indus. Bank, supra*, held that a statute abrogating liens in ships, effectively a right to bring an action of foreclosure, was a "taking" where it effected "*the total destruction*…of all value of these liens…". Id [emphasis added]. *Armstrong* explained:

> "The **total destruction** by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment "taking" and is not a mere "consequential incidence" of a valid regulatory measure. Before the liens were destroyed, the lienholders admittedly had compensable property. Immediately afterwards, they had none. This was not because their property vanished into thin air. It was because the Government for its own advantage destroyed the value of the liens, something that the Government could do because its property was not subject to suit, but which no private purchaser could have done. Since this acquisition was for a public use, however accomplished, whether with an intent and purpose of extinguishing the liens or not, the Government's action did destroy them and in the circumstances of this case did thereby take the property value of those liens within the meaning of the Fifth Amendment.

364 U.S. at 48-49 [emphasis added].[7]

---

[6] The court in *United States v. Sec. Indus. Bank*, 459 U.S. 70 (1982) expressly recognized that a lien, effectively a right to bring action to foreclose on security, was a property right protected under the Takings Clause and the Fifth Amendment. *Sec Indus. Bank*, 459 U.S. at 77, quoting *Armstrong v. United States*, 364 U.S. 40, 48-49 (1960) ("the total destruction…of all value of these liens…has every possible element of a Fifth Amendemnt 'taking' …". Id. Though it ultimately held that the enactment in that case was not intended to apply retroactively, the Supreme Court in *Sec. Indus. Bank* expressly noted that "there is substantial doubt whether the retroactive destruction of the appellees' liens in this case comports with the Fifth Amendment". *Sec. Indus. Bank* at 78.

[7] Here plaintiffs are in possession of liquidated claims measured by the legislatively mandated $1,000 damage award, not unlike the liquidated value of the liens in *Armstrong*.

***McMurray** Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss, **McMurray, et al. v. Verizon, et al.,** 09-cv-0131-VRW (MDL 06-cv-1791-VRW).*

16

" 'Takings' cases frequently turn on questions of degree." *Aircrash in Bali*, 684 F.2d 1312. In the instant case, as in *Armstrong*, Section 802 of the Act effects a "total destruction" of the Pending Actions, mandating their dismissal by the district court based solely upon the Attorney General's certification.[8] No remedy is left, none created to replace that which is destroyed.

Unlike the *Portal to Portal Act* cases where Congress imposed retroactively a "good faith defense" to be litigated by the parties, here the Act imposes no defense to be litigated but is a mere dicta that the court dismiss the action solely on the certification of the Attorney General that the telecommunications carriers acted in reliance on the President's determination that the records disclosures were "lawful". By failing to preserve an alternate forum or to permit any litigation over the bona fides of the "good faith" reliance defense, Section 802 imposes a complete evisceration of the cause of action.

Unlike the *Portal to Portal Act* cases, *Atmospheric Testing*, *Bali* or *Dames & Moore*, Congress has here reserved no right of action or alternate forum to plaintiffs but has simply ordered that the Pending Actions be extinguished. Indeed, none of the cases cited by the Government concern a complete destruction of a pre-existing legislative cause of action.

---

[8] That the Government sought to benefit the telecommunications carriers does not militate against a finding that the Act imposes a taking. In *Bali*, the Ninth Circuit noted that "takings analysis is not necessarily limited to outright acquisitions by the government for itself," but applies equally to benefits conveyed by government to private parties, such as the telecommunications defendants. *Aircrash in Bali, citing Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980). In any event, the "circumstances unquestionably indicate that the U.S. was to be a principal beneficiary thereof", *Hughes Aircraft Co. v. United States,* 209 Ct. Cl. 446465 n. 16 (Ct. Claims 1976), since it was to encourage future cooperation with the intelligence services that Congress mandated dismissal of the Pending Actions.

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

The legislative scheme of Section 802 is a "total destruction" of the claim, *Armstrong, supra*, and undeniably a taking without compensation.

In *Atmospheric Testing* the Ninth Circuit refused to find a retroactive remedy unconstitutional where it "leaves the application of the rules of law, including any defenses, for judicial determination". *Id.*

Here the Act not only mandates dismissal upon the described certification of the Attorney General, it permits no scope for any adjudication of the defense. Neither the Court nor the parties may test the Attorney General's certification nor may it be subjected to discovery, cross examination or any other traditional fact-finding adjudicatory tools. It was the very ability of the court and the litigants to test the good faith defense in the *Portal to Portal Act* cases, *Asselta, et al.*, that permitted the retroactive amendment to survive constitutional scrutiny. The "good faith" reliance certification of the Attorney General interposed by Section 802 is subject to ***no*** adjudication, no fact-finding, no discovery and no cross examination but ***must*** by legislative fiat result in dismissal by the Court. While the creation of the U.S.-Iran Claims Tribunal addressed in *Dames & Moore*, 453 U.S. at 685-687, still left a meaningful forum for claimants – indeed that was its purpose - the dicta of dismissal under Section 802 provides for no alternate remedy and no forum for adjudication. *Cf. Dames & Moore*, noting that the President has exercised his power to provide an *alternate* forum "which is capable of providing meaningful relief". 453 U.S. at 687. Section 802 allows for no alternate forum – that is *its* purpose – and the Pending Actions are to be wholly eviscerated.

Under such circumstances, Section 802 imposes "total destruction", *Armstrong, supra*, of the remedy of the ECPA and the SCA, an irrefutable taking of the statutory causes of action

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

18

embodied in the Pending Actions.

## II. THE ACT IMPOSES A RULE OF DECISION UPON THE DISTRICT COURT IN VIOLATION OF ARTICLE III

Congressional attempts to alter the rule of decision in pending cases in favor of the government have been condemned as a violation of Article III." *In re Consolidated United States Atmospheric Testing Litig*., 820 F.2d at 992, *citing United States v. Klein*, 80 U.S. (13 Wall.) 128, 146-47, 20 L. Ed. 519 (1871); *United States v. Sioux Nation of Indians*, 448 U.S. 371, 404, 100 S. Ct. 2716, 2735, 65 L. Ed. 2d 844 (1980).

In *Atmospheric Testing* the Ninth Circuit refused to find an Article III violation where the retroactive remedy did not mandate dismissal but "leaves the application of the rules of law, including any defenses, for judicial determination". *Id.* Here, the Act not only mandates dismissal upon the described certification of the Attorney General but permits no scope for any adjudication of the defense. In contrast to the Portal to Portal Act cases, *Hammond, et al*., the "good faith" defense interposed by the Act is subject to no adjudication but must result in dismissal by the Court upon receipt of the Attorney General's certification. In contrast to the referral of claims to the U.S.-Iran Claims Tribunal that came through an act of Congress addressed in *Dames & Moore*, 453 U.S. at 685-687, the dicta of dismissal here also comes through an act of Congress but provides for no alternate remedy and no forum for adjudication. *Cf. Dames & Moore*, noting that the President has exercised his power to provide an *alternate* forum "which is capable of providing meaningful relief". 453 U.S. at 687.

*United States v. Klein*, *supra,* cited with approval by the Ninth Circuit in *Atmospheric Testing, supra,* and *Seattle Audubon Soc. v. Robertson*, 914 F.2d 1311 (9th Cir. 1990), rev'd 503 U.S. 429 (1994) (reversal based on factual distinction from *United States v. Klein* but without affect upon the controlling law) is virtually identical to the facts of the instant action.

In *Klein*, the Court was empowered to pardon the forfeiture of property belonging to persons who had ended their state of rebellion and returned to a position of loyalty to the United States during the Civil War.  Subsequent to the filing of a claim to return property by Klein, the executor of a former rebel who had taken the oath of loyalty, Congress amended the statute to mandate dismissal by the Court of any petitions upon a showing that the petitioner had taken the oath or had received a pardon.

Holding that the mandatory dismissal required by Congress violated Article III as a Congressional attempt to determine the rule of decision in favor of the government, the Supreme Court held that the Congressional dictate violated the separation of powers doctrine:

> "What is this but to prescribe a rule for the decision of a cause in a particular way? In the case before us, the Court of Claims has rendered judgment for the claimant and an appeal has been taken to this court. We are directed to dismiss the appeal, if we find that the judgment must be affirmed, because of a pardon granted to the intestate of the claimants. Can we do so without allowing one party to the controversy to decide it in its own favor? Can we do so without allowing that the legislature may prescribe rules of decision to the Judicial Department of the government in cases pending before it?

> We think not;"

*United States v. Klein*, 80 U.S. at 146.

In reaching this conclusion, the Supreme Court evinced the paradigmatic description of the protective wall of separation between the branches:

> "…Congress has inadvertently passed the limit which separates the legislative from the judicial power.

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

20

It is of vital importance that these powers be kept distinct. The Constitution provides that the judicial power of the United States shall be vested in one Supreme Court and such inferior courts as the Congress shall from time to time ordain and establish. The same instrument, in the last clause of the same article, provides that in all cases other than those of original jurisdiction, "the Supreme Court shall have appellate jurisdiction both as to law and fact, with such exceptions and under such regulations as the Congress shall make."

Congress has already provided that the Supreme Court shall have jurisdiction of the judgments of the Court of Claims on appeal. Can it prescribe a rule in conformity with which the court must deny to itself the jurisdiction thus conferred, **because and only because its decision, in accordance with settled law, must be adverse to the government and favorable to the suitor**? This question seems to us to answer itself.

*Id* [emphasis added].

In reaching the conclusion that Congress cannot prescribe a "rule [in which] the court must deny to itself the jurisdiction thus conferred [i.e., under Article III], **because and only because** its decision, in accordance with settled law, *must be adverse to the government and favorable to the suitor*?", the Klein majority is redolent of the operative intent of Congress in passing the amendments to FISA that here would operate to force dismissal of the Pending Actions with no judicial determination except to acknowledge that the Attorney General has filed the prescribed certification. Since not even the Court, let alone the parties, can probe beyond the certification, Congress here has mandated the rule of deicions, not a mere procedural requirement. Cf. *United States v. Brainer*, 691 F.2d 691, 695 (4th Cir. 1982) (holding that Klein did not apply to the Speedy Trial Act that mandates the pace of federal court dockets, a procedural perogative). Thus, as in *Klein*, rather than permit adjudication on the merits, Congress has hre chosen to "prescribe a rule", *Klein, supra,* that denudes the Court of jurisdiction over ripened and vested pending actions, imposing a "rule of decision". *Klein, supra.*

The Fourth Circuit, though critical of a broad application of *Klein* that would prevent Congress from establishing procedural rules that govern the courts, acknowledged that *Klein*

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

21

prohibits Congress from depriving the courts of the power to apply existing law to pending cases:

> "We assume that the application of existing law to the facts of a case properly before the courts is a judicial function which the legislature may *not* constitutionally usurp."

*United States v. Brainer*, 691 F.2d 691, 695 (4th Cir. 1982) [emphasis added].

*Brainer* noted expressly that *Klein* is inapposite where Congress "lays down no 'rules of decision,' but only rules of practice and procedure." *Id.* Unlike the Speedy Trial Act at issue in *Brainer,* the Protect America Act is plainly *not* a rule of "practice and procedure" but, by mandating that all actions "*shall* be promptly dismissed" upon presentation of the Attorney General's certification, imposes a "rule of decision" on the district court. *Brainer, supra.* In contrast, where the retroactive amendment permits the courts to engage in their ordinary fact finding powers, see e.g. *Hammond*, 786 F.2d at 12 where the Portal to Portal Act did not deprive the courts of their power to determine whether an employer acted in good faith reliance on an agency opinion under the Fair Labor Standards Act, an Article III violation will not arise.

Here, however, no such power is reserved to the Court which is required to dismiss solely upon the declaration by the Attorney General that the telecommunication defendants had been earlier been advised by the Executive Branch that the disclosure of subscriber phone records was "authorized by the President" and "determined to be lawful". See supra. Unlike the Portal to Portal Act cases, the court here is left with none of its Article III power to adjudicate the "good faith reliance" test, the court cannot hear testimony as to the bona fides of such defense and litigants cannot test such testimony through discovery or cross examination. The Court must simply accept the Executive Branch's self-determination that the telecommunications defendants had been told by the Executive branch that their "assistance" was "lawful". Regardless of

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

22

broad scope of retrospective legislation, no decision has ever accepted that the Executive branch may be the effective determinant of the lawfulness of its own actions.

## CONCLUSION

Based on the foregoing, the motions to dismiss should be denied and the Court should declare that Section 802 effects an unconstitutional taking without compensation in violation of Amendment V.

Dated: May 11, 2009                           Respectfully submitted,
       Chicago, Illinois
                                       BRUCE I. AFRAN, Esq.
                                       10 Braeburn Drive
                                       Princeton, NJ 08540
                                       Telephone:  (609) 924-2075

                                       MAYER LAW GROUP, LLC
                                       CARL J. MAYER
                                       66 Witherspoon Street, Suite 414
                                       Princeton, NJ 08542
                                       Telephone:  (609) 921-8025
                                       Facsimile:  (609) 921-6964

                                       By:    /s/ Steven E. Schwarz   
                                       THE LAW OFFICES OF STEVEN E.
                                     SCHWARZ, ESQ., LLC
                                     Steven E. Schwarz, Esq.
                                     2461 W. Foster Ave., #1W
                                     Chicago, IL 60625
                                     Telephone:  (773) 837-6134
                                     Facsimile:  (773) 837-6134

                                     *Attorneys for the Plaintiffs*

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**

# **CERTIFICATE OF SERVICE**

I, Steven E. Schwarz, an attorney, hereby certify that, on this 11th day of May, 2009, I electronically filed and served the foregoing Response to Government Defendants' and Telecom Defendants' Motions to Dismiss in the above-captioned case using the CM/ECF system which will send via electronic mail copies to all attorneys who are registered users of that system.

By:  /s/ Steven E. Schwarz
Steven E. Schwarz

*McMurray* **Plaintiffs' Response to Government Defendants' (Dkt. No. 583) and Telecom Defendants' (Dkt. No. 588) Motions to Dismiss,** *McMurray, et al. v. Verizon, et al.,* **09-cv-0131-VRW (MDL 06-cv-1791-VRW).**