1

2  MICHAEL F. HERTZ                          JON B. EISENBERG, Calif. Bar 88278
   Acting Assistant Attorney General        Eisenberg & Hancock LLP
3  DOUGLAS N. LETTER                         1970 Broadway, Suite 1200
   Terrorism Litigation Counsel             Oakland, CA 94612
4  JOSEPH H. HUNT                            510.452.258l - Fax 510.452.3277
   Director, Federal Programs Branch
5  VINCENT M. GARVEY                         STEVEN GOLDBERG, Oregon Bar 75134
   Deputy Branch Director                   River Park Center, Suite 300
6  ANTHONY J. COPPOLINO                      205 SE Spokane St.
   Special Litigation Counsel               Portland, OR 97202
7  ALEXANDER K. HAAS                         503.445.4622 - Fax 503.238.7501
   Trial Attorney
8  U.S. Department of Justice
   Civil Division, Federal Programs Branch   **[FULL COUNSEL LIST BELOW]**
9  20 Massachusetts Avenue, NW, Rm. 6102
   Washington, D.C. 20001
10 Phone: (202) 514-4782—Fax: (202) 616-8460

11 *Attorneys for the Government Defendants*      *Attorneys for the Plaintiffs*

12                  **UNITED STATES DISTRICT COURT**

13                  **NORTHERN DISTRICT OF CALIFORNIA**

14                      **SAN FRANCISCO DIVISION**

15                                    )   No. M:06-CV-01791-VRW
   IN RE NATIONAL SECURITY AGENCY    )
16 TELECOMMUNICATIONS RECORDS        )   **JOINT SUBMISSION IN RESPONSE**
   LITIGATION                        )   **TO COURT'S APRIL 17, 2009 ORDER**
17                                    )   **[DKT. 84]**
   This Document Solely Relates To:   )
18                                    )   Honorable Vaughn R. Walker
   *Al-Haramain Islamic Foundation, Inc., et al.*  )
19     *v. Obama, et al.*  (07-CV-109-VRW)  )
                                      )
20                                    )
                                      )
21                                    )
                                      )
22                                    )

23

24

25

26

27

28

## INTRODUCTION

On April 17, 2009, the Court issued an order directing the parties to meet and confer regarding the entry of an appropriate protective order in this action concerning classified information and to either submit a stipulated order, or, if the parties are unable to agree on all terms, to jointly submit a document containing all agreed terms together with a document setting forth the terms about which they are unable to reach agreement and the respective positions of the parties with regard to each such term. *See* Order, April 17, 2009 (Dkt. 84 in 07-cv-109-VRW). The parties hereby submit this joint document pursuant to the Court's Order.

Part I sets forth plaintiffs' proposed protective order.

Part II sets forth the Government's opposition to the entry of a protective order under which the plaintiffs' counsel would have access to classified information and the Government's objections to plaintiffs' proposed protective order.

Part III sets forth plaintiffs' response to the Government's position.

# I. **PLAINTIFFS' PROPOSED PROTECTIVE ORDER**

Plaintiffs hereby propose the following protective order in response to the Court's April 17, 2009 Order:

## [PLAINTIFFS' PROPOSED] PROTECTIVE ORDER FOR USE BY PLAINTIFFS' COUNSEL OF TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION

The Court finds that the above-captioned civil case involves national security information or documents, including TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION ("TS/SCI"), the storage, handling, and control of which require special security precautions and access to which requires a security clearance and a "need to know." Accordingly, to protect the national security, and for good cause shown, the Court ORDERS that the following Protective Order shall apply in this litigation:

## PROTECTIVE ORDER INVOLVING TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION

### A.  Overview and Applicability

1. This Protective Order establishes procedures that must be followed by plaintiffs' counsel who, in connection with these matters, receive access to classified national security information or documents.

2. The procedures set forth in this Protective Order apply to all aspects of these matters and may be modified by further order of the Court upon its own motion or upon application by any party. The Court retains continuing jurisdiction to enforce or modify the terms of this Protective Order.

3. Nothing in this Protective Order precludes the government's use of classified information as otherwise authorized by law outside of these matters.

4. As appropriate and needed, plaintiffs' counsel are responsible for advising their employees, plaintiffs, and others of this Protective Order's contents.

### B.  Definitions

5. As used in this Protective Order, the words "documents" and "information" include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming copies and non-conforming copies, whether different from the original by reason of notation made on such copies or otherwise, and further include, but are not limited to:

   a.  papers, correspondence, memoranda, notes, letters, reports, summaries, photographs, maps, charts, graphs, interoffice and intra-office communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, facsimiles, invoices, worksheets, and drafts, alterations, modifications, changes, and amendments of any kind to the

foregoing;

    b.    graphic or oral records or representations of any kind, including, but not limited to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound recordings of any kind, and motion pictures;

    c.    electronic, mechanical or electric records of any kind, including, but not limited to, tapes, cassettes, disks, recordings, electronic mail, films, typewriter ribbons, word processing or other computer tapes or disks, and all manner of electronic data processing storage; and

    d.    information acquired orally.

6.    Unless otherwise stated, the terms "classified national security information and/or documents," "classified information" and "classified documents" mean:

    a.    any classified document or information that was classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)" or any classified information contained in such document;

    b.    any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that was derived from United States government information that was classified, regardless of whether such document or information has subsequently been classified by the government pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "COMPARTMENTED INFORMATION (SCI)";

    c.    verbal or non-documentary classified information known to plaintiffs or plaintiffs' counsel; or

    d.    any document and information as to which plaintiffs or plaintiffs' counsel were notified orally or in writing that such document or information contains classified information.

7.    All classified documents, and information contained therein, shall remain classified unless the documents bear a clear indication that they were declassified by the agency or department that is the original classification authority of the document or the information contained therein (hereinafter, "original classification authority").

8.    As used in this Protective Order, the term "plaintiffs' counsel" includes attorneys employed or retained by or on behalf of a plaintiff for purposes of representing the plaintiff in this litigation in federal court in the United States. Access to classified information by all persons mentioned in the foregoing sentence is governed by Section D of this Protective Order.

9.    "Access to classified information" means having access to, reviewing, reading, learning, or otherwise coming to know in any manner any classified information.

10.    "Secure area" means a physical facility accredited or approved for the storage, handling, and control of classified information.

11. "Unauthorized disclosure of classified information" means any knowing, willful, or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information to an unauthorized recipient.

## C. Designation of Court Security Officer

12. The Court designates _____ as Court Security Officer for this case, and _____, _____, and _____ as Alternate Court Security Officers (collectively, "CSO") for the purpose of providing security arrangements necessary to protect against unauthorized disclosure of any classified documents or information to be made available in connection with this case. Plaintiffs' counsel shall seek guidance from the CSO with regard to appropriate storage, handling, transmittal, and use of classified documents or information.

## D. Access to Classified Information and Documents

13. Without authorization from the government, no plaintiffs' counsel shall have access to any classified information involved in this case unless that person has done the following:

   a. received the necessary eligibility determination as determined by the Department of Justice Security Officer; and

   b. signed the Memorandum of Understanding ("MOU"), attached hereto as Exhibit A, agreeing to comply with the terms of this Protective Order.

14. Plaintiffs' counsel to be provided access to classified information shall execute the MOU appended to this Protective Order, and shall file executed originals of the MOU with the Court and submit copies to the CSO and government counsel. Such execution, filing, and submission of the MOU is a condition precedent to a plaintiffs' counsel having access to, or continued access to, classified information for the purposes of these proceedings.

15. The substitution, departure, or removal of any plaintiffs' counsel from this case for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Protective Order.

16. The government shall arrange for one appropriately approved secure area for plaintiffs' counsel's use in San Francisco. The secure area shall contain a working area supplied with secure office equipment reasonably necessary for preparing plaintiffs' filings in this case including but not limited to one computer with attached printer for each attorney who will be working in the secure area. The government shall bear expenses for the secure area and its equipment.

17. The CSO shall establish procedures to ensure that the secure area is accessible to plaintiffs' counsel during normal business hours and at other times on reasonable request as approved by the CSO. The CSO shall establish procedures to ensure the secure area is maintained and operated in the most efficient manner consistent with the protection of classified information. The CSO or CSO designee may place reasonable and necessary restrictions on the schedule of use of the secure area in order to accommodate appropriate access to all plaintiffs' counsel in this case.

18. All classified information the government provides to plaintiffs' counsel, and all classified information plaintiffs' counsel otherwise possesses or maintains, shall be

stored, maintained, and used only in the secure area.

19. No documents containing classified information may be removed from the secure area unless authorized by the CSO or CSO designee supervising the area.

20. Consistent with other provisions of this Protective Order, plaintiffs' counsel shall have access to the classified information made available to them in the secure area and shall be allowed to take notes and prepare documents with respect to those materials.

21. Plaintiffs' counsel shall not copy or reproduce any classified information in any form, except with the CSO's approval or in accordance with the procedures established by the CSO for the operation of the secure area.

22. All documents prepared by plaintiffs' counsel that contain or may contain classified information--including, without limitation, notes taken or memoranda prepared by counsel and pleadings or other documents intended for filing with the Court--shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons possessing an appropriate approval for access to classified information. Such activities shall take place in the secure area on approved word processing equipment and in accordance with the procedures approved by the CSO. All such documents and any associated materials containing classified information--such as notes, memoranda, drafts, copies, typewriter ribbons, magnetic recordings, and exhibits--shall be maintained in the secure area unless and until the CSO advises that those documents or associated materials are unclassified in their entirety. None of these materials shall be disclosed to government counsel unless authorized by the Court, by plaintiffs' counsel, or as otherwise provided in this Protective Order.

23. Plaintiffs' counsel may discuss the contents of classified information within the secure area or another area authorized by the CSO only. Plaintiffs' counsel shall not discuss the contents of classified information over any standard commercial telephone instrument or office intercommunication system and shall not transmit or discuss the contents of classified information in electronic mail communications of any kind.

24. The CSO or CSO designee shall not reveal to any person the content of any conversations he or she hears by or among plaintiffs' counsel, nor reveal the nature of documents being reviewed by them or the work generated by them, except as necessary to report violations of this Protective Order to the Court or to carry out their duties pursuant to this Protective Order. Additionally, the presence of the CSO or CSO designee shall not be construed to waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections.

25. A plaintiffs' counsel is presumed to have a "need to know" all the information in the government's possession concerning the plaintiffs whom that counsel represents. Government counsel may challenge the "need to know" presumption as to specific information on a case-by-case basis for good cause shown.

26. Plaintiffs' counsel shall not disclose the contents of any classified documents or information to any person, except those persons authorized by this Protective Order, the Court, and counsel for the government with the appropriate clearances and the need to know that information.

27. Except as otherwise provided herein, no plaintiffs' counsel shall disclose or cause to be disclosed any information known or believed to be classified in connection with any hearing or proceeding in this case.

28. Except as otherwise stated in this paragraph, and to ensure the security of the United States of America, at no time, including any period subsequent to the conclusion of these proceedings, shall plaintiffs' counsel make any public or private statements disclosing any classified information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are classified, but not including the fact that the document plaintiffs filed with the original Complaint in this case is classified. In the event, however, that classified information is no longer secret within the meaning of *Mohamed v. Jeppesen Dataplan*, ____F.3d _____, 2009 WL 1119516 (9th Cir. 2009), counsel are not precluded from making private or public statements about such information that is no longer secret, but only to the extent that the information is in fact no longer secret. Counsel shall not cause any classified information to become non-secret. As stated in paragraph 34 of this Protective Order, failure to comply with these rules may result in the revocation of counsel's security clearance as well as civil and criminal penalty.

29. All documents containing classified information prepared, possessed or maintained by, or provided to, plaintiffs' counsel--except filings submitted to the Court and served on government counsel--shall remain at all times in the CSO's control for the duration of this case. Upon final resolution of this case, including all appeals, the CSO shall destroy all such documents, except that government counsel shall retain one complete set of any such materials that were presented in any form to the Court. Any such retained materials shall be placed in an envelope or envelopes marked "Classified Information Subject to Protective Order." In any subsequent or collateral proceeding, a party may seek discovery of such materials from the government, without prejudice to the government's right to oppose such discovery.

### E.    Procedures for Filing Documents

30. <u>Unclassified Filing by Plaintiffs</u>.  Pending further order of the Court, any pleading or other document filed by plaintiffs that plaintiffs' counsel do not believe contains classified information and have no reason to believe contains classified information is authorized for direct filing in the CM/ECF system consistent with the regular electronic filing practices of this Court.

31. <u>Classified Filings by Plaintiffs</u>.  Any pleading or other document filed by plaintiffs that plaintiffs' counsel know, have reason to believe, or are uncertain whether it contains classified information, shall be filed, along with three copies, under seal with the CSO on weekdays between 9:00 a.m. and 4:00 p.m. PST. Such document must be marked with the appropriate classification marking (e.g., "TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION"). The time of physical submission to the CSO shall be considered the date and time of filing. At the time of making a submission to the CSO, plaintiffs' counsel shall file on the public record in the CM/ECF system a "Notice of Filing," notifying the Court that the submission was made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified information.

   a.    Upon receipt, the CSO will deliver to the Court and government counsel any pleading or other document plaintiffs filed that may contain classified information. The CSO will forward the document to the appropriate government agencies and departments for their determination as to whether the pleading or other document contains classified information. To facilitate this review, plaintiffs' counsel shall identify each paragraph of a document that counsel believe may contain classified information by marking each paragraph with an appropriate classification marking or otherwise specifically identifying such

paragraphs. If, following review by the appropriate government agencies and departments, it is determined that the pleading or other document contains classified information, the CSO must ensure that the document is marked with the appropriate classification marking and that the document remains under seal. The CSO will work with the appropriate government agencies or departments to prepare a redacted version of the pleading or other document appropriate for filing on the public record. Counsel shall then file the redacted version of the document in the CM/ECF system with a notation in the upper right hand corner of the first page stating "REDACTED VERSION FOR PUBLIC FILING CLEARED BY CSO." The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document was submitted to the CSO for review.

b.      In the event an entire document is deemed classified, plaintiffs' counsel shall file notice in the CM/ECF system listing the caption of the case, a version of the title of the document that does not disclose classified information, and a brief statement that the CSO informed counsel that the entire document is classified. The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document was submitted to the CSO for review.

c.      If it is determined that the pleading or other document does not contain classified information, counsel shall file the full submission in the CM/ECF system and make specific reference to the earlier docket entry notifying the Court that the document was submitted to the CSO for review. The docket entry description shall also state that the CSO approved public filing of the document. The underlying document filed in the CM/ECF system shall contain a notation in the upper right hand corner of the first page stating "PREVIOUSLY FILED WITH CSO AND CLEARED FOR PUBLIC FILING."

32.     Classified Filings by Defendants.

a.      Any pleading or other document filed by defendants' counsel containing classified information shall be filed, along with three copies, under seal with the Court through the CSO on weekdays between 9:00 a.m. and 4:00 p.m. PST. The time of physical submission to the CSO shall be considered the date and time of filing. The CSO shall serve a copy of any classified pleading or document on plaintiffs' counsel at the secure facility. At the time of making a submission to the CSO, defendants shall file on the public record in the CM/ECF system a "Notice of Filing," notifying the Court that a submission was made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified information. As soon as practicable following the original filing date, defendants' counsel shall file in the CM/ECF system a version of the pleading or document appropriate for filing on the public record, consistent with the procedures outlined in paragraphs 31.a-c of this Protective Order.

b.      Plaintiffs' counsel shall be given notice of any classified filing by defendants, and shall be allowed to review such filings in the secure room described in paragraph 16.

33.     Disclosure of Classified Information on the Public Record. In the event defendants believe that a party has disclosed classified information on the public docket, defendants shall notify the CSO, who shall work with the Clerk's Office to remove the filing from the public docket. A copy of the filing shall then be lodged with the CSO and treated

according to paragraphs 31.b or 31.c of this Protective Order. Nothing herein limits the government's authority to take necessary remedial action to ensure the protection of the classified information.

### F. Penalties for Unauthorized Disclosure

34. Any unauthorized disclosure of classified information may constitute violations of United States criminal laws. Additionally, any violation of the terms of this Protective Order shall be immediately brought to the attention of the Court and may result in a charge of contempt of Court and possible referral for criminal prosecution. See, e.g., Executive Order 12958, as amended. Any breach of this Protective Order may also result in the termination of access to classified information. Persons subject to this Protective Order are advised that direct or indirect unauthorized disclosure, retention, or negligent handling of classified documents or information could cause damage to the national security of the United States or may be used to the advantage of an adversary of the United States or against the interests of the United States. This Protective Order is to ensure that those authorized to receive classified information will not divulge this information to anyone who is not authorized to receive it without prior written authorization from the original classification authority and in conformity with this Protective Order.

35. The termination of these proceedings shall not relieve any person or party provided classified information of his, her, or its obligations under this Protective Order.

### G. Discovery and Expert Witnesses

36. Plaintiffs's counsel anticipate that, at some future point in this litigation, they might wish to conduct discovery that could require production or disclosure of classified information to plaintiffs, and/or that they might wish to employ an expert or experts with whom plaintiffs might need to discuss classified information. This Protective Order in its present form does not address procedures that must be followed for such discovery and/or employment of experts. Such procedures will be addressed by amendment to this Protective Order if and when the need arises.

SO ORDERED.

DATED this __ day of _____, 2009.


_____
VAUGHN R. WALKER
United States District Chief Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**IN RE NATIONAL SECURITY**
**AGENCY TELECOMMUNICATIONS**
**RECORDS LITIGATION**

This Document Relates Solely To:

*Al-Haramain Islamic Foundation, Inc., et*
*al. v. Obama, et al.* (C07-CV-0109-VRW)

**AL-HARAMAIN ISLAMIC**
**FOUNDATION, INC., et al.,**

                Plaintiffs,
        vs.

**BARACK H. OBAMA, President of the**
**United States, et al.,**

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MDL Docket No. 06-1791 VRW

**MEMORANDUM OF UNDERSTANDING**
**REGARDING ACCESS TO CLASSIFIED**
**NATIONAL SECURITY INFORMATION**

        Having familiarized myself with the applicable statutes, regulations, and orders related

to, but not limited to, unauthorized disclosure of classified information, espionage and

related offenses; the Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. §

641; 50 U.S.C. § 783; 28 C.F.R. § 17 et seq.; and Executive Order 12958; I understand that I

may be the recipient of information and documents that concern the present and future

security of the United States, and that such documents and information together with the

methods and sources of collecting it are classified by the United States government. In

consideration for the disclosure of classified information and documents:

        (1) I agree that I shall never divulge, publish, or reveal either by word, conduct or

any other means, such classified documents and information unless specifically

authorized in writing to do so by an authorized representative of the United

States government, or as expressly authorized by the TS/SCI Protective Order

entered in the United States District Court for the Northern District of California in the

above-captioned case, or if the documents or information are no longer secret within the meaning of *Mohamed v. Jeppesen Dataplan*, ____F.3d ____, 2009 WL 1119516 (9th Cir. 2009).

(2) I agree that this Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me.

(3) I have received, read, and understand the TS/SCI Protective Order entered by the United States District Court for the Northern District of California in the above-captioned case, and I agree to comply with the provisions thereof.

Dated: _____ _____

## II. **GOVERNMENT DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER**

### INTRODUCTION AND SUMMARY

The Government recognizes that the Court seeks its consent to procedures whereby both parties would have access to classified information in order to litigate this case. However, the Government must respectfully advise the Court that it remains in fundamental disagreement with this approach and, thus, does not consent to a protective order under which plaintiffs' counsel are granted access to classified information. Such an order would be improper in this case for several reasons, as detailed below. In particular, the Government disagrees with the Court's holding that our successful state secrets privilege assertion in this case—which would otherwise now require dismissal—is preempted by Section 106(f) of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1806(f) (hereafter "Section 1806(f)"), and thus we object to any disclosure to plaintiffs' counsel that would vitiate the privilege assertion before an opportunity to appeal. In addition, the Director of the National Security Agency ("NSA") has specifically determined that plaintiffs' counsel do not have a "need to know" classified information under the terms of Executive Orders governing classified information, and are therefore not entitled to have access to such information at issue in this case. *See* Declaration of Ariane E. Cerlenko, National Security Agency (Dkt. 60-2); Exec. Ord. 12,958, §§ 4.1(a), 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Exec. Ord. 13,292, 68 Fed. Reg. 15315 (Mar. 25, 2003) (hereafter "Exec. Ord. 13,202").

As noted below, the Government has asked the Court to certify for immediate review its prior rulings finding that the state secrets privilege is preempted and that due process requires that plaintiffs' counsel have access to classified information. *See* Dkts. 60, 70. The Court did not certify these significant issues for further review, but has thus far refrained from ordering the disclosure of classified information to the plaintiffs' counsel over the Government's objection. While the Court of Appeals determined that this Court's Order of January 5, 2009 (Dkt. 57) was not appealable, the Government submits that an order that

classified information be disclosed to plaintiffs' counsel or an actual disclosure would be appealable pursuant to 28 U.S.C. § 1291 and/or 28 U.S.C. § 1292(a)(1). The Government is of the view that the most appropriate way forward is to resolve the issue of whether the law entitles plaintiffs' counsel to receive access to classified information in this case before any disclosure.

The Government has made several attempts to resolve this dispute in an orderly fashion, and regrets that it is not in a position to consent to how the Court wishes to proceed at this stage. But the Government submits that granting plaintiffs' counsel access to classified information in the circumstances of this case would be unsupported by law and should be subject to appellate review prior to any disclosure. This dispute is of extraordinary constitutional significance—concerning whether the Executive's successful assertion of privilege to protect state secrets has been preempted, and whether the disclosure of that very information should now occur over the Government's objection. The Government believes that such a course would be profoundly in error, and thus it cannot consent to a protective order under which such disclosures would be authorized or facilitated.

In response to the Court's April 17 Order, the Government has conferred with plaintiffs' counsel concerning its position at this stage, as well as concerning the terms of plaintiffs' proposed protective order. The Government has set forth below its objection to plaintiffs' proposed order. That proposed order is modeled on—but crucially different from—the protective orders entered in the Guantanamo Bay *habeas* litigation. Not only are the circumstances of those cases significantly different from this one, but plaintiffs have excluded from their proposed order key provisions of the Guantanamo order that reserve the Government's control over access to classified information. Plaintiffs' counsel would thus grant themselves far greater access than the Guantanamo *habeas* petitioners' counsel. The Government recognizes that, should the courts ultimately rule on appeal that the state secrets privilege is preempted in this case and plaintiffs' counsel receive access to classified

information over the Government's objection, specific security procedures governing such access would be required. But, for the reasons set forth below, the entry of plaintiffs' proposed protective order in this case would be improper as a matter of law.

BACKGROUND

Plaintiffs in this action allege that they were subject to unlawful warrantless surveillance in 2004 under the "Terrorist Surveillance Program" ("TSP"). The Court of Appeals for the Ninth Circuit upheld the Government's "exceptionally well-documented" state secrets privilege assertion concerning whether plaintiffs have been subject to the alleged surveillance, specifically excluded from this case the use of a classified document that had been inadvertently disclosed to the plaintiffs, and held that, without the privileged evidence, plaintiffs could not establish their standing. *See Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1201-05 (9th Cir. 2007). The Ninth Circuit remanded the case for a determination of whether the Government's privilege assertion is preempted by Section 1806(f) of the FISA. *Id.* at 1205-06. On remand, this Court concluded that Section 1806 preempts the state secrets privilege, that the case should now proceed under those procedures, and that due process requires that both parties have access to classified information in order to litigate the case under Section 1806(f). *See In re: Nat'l Security Agency Telecomm. Records Litig., Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109, 1115-25 (N.D. Cal. July 2, 2008) and *Al-Haramain Islamic Found. v. Bush*, 595 F. Supp. 2d 1077, 1089 (N.D. Cal. Jan. 5, 2009). The Court directed the Government to arrange for three of plaintiffs' counsel to apply for security clearances and that their applications be processed expeditiously. *See* 595 F. Supp. 2d at 1089-90.

The Government appealed the Court's January 5 Order (*see* Dkt. 59) and also requested a stay of that Order pending appeal and certification of the Order for interlocutory review under 28 U.S.C. § 1292(b). *See* Dkts 60, 70. The Government advised the Court that the NSA Director has determined subsequent to the Court's January 5 Order that, under applicable executive orders, neither plaintiffs nor their counsel have a need for access to

classified NSA information that has been (or would be) excluded under the state secrets privilege assertion, and we urged that any disclosure of classified information not occur prior to appellate review. *See* Dkt. 60 at 11-14; Declaration of Ariane E. Cerlenko, National Security Agency (Dkt. 60-2) ¶ 9. By Order dated February 13, 2009, the Court denied the Government's motion to certify its January 5 Order and stated that it "seeks from the government implementation of the steps necessary to afford that both parties have access to the material upon which the court makes a decision." *See* Dkt. 71 at 3 (internal quotation omitted). The Court added that this "is the procedure the January 5 order seeks to put in place," and directed the Government to inform the Court by February 27, 2009, how it intends to comply with the January 5 Order. *Id*.

On February 27, 2009, the Court of Appeals dismissed the Government's appeal of the January 5 Order for lack of jurisdiction. *See* Dkt. 83. Also on February 27, 2009, the Government again advised the Court that it continued to oppose the disclosure of classified information to plaintiffs' counsel in further proceedings under Section 1806(f) and requested that, if the Court were to order any disclosure, proceedings be stayed pending appeal of any such further order. *See* Dkt. 77.

The Court's most recent order directed the parties "to meet and confer regarding the entry of an appropriate protective order which shall be entered herein before the court rules on the merits." April 17, 2009 Order (Dkt. 84) at 2. The Court further ordered the parties to:

> [S]ubmit to the court a stipulated protective order. . . . If the parties are unable to agree on all terms, they shall jointly submit a document containing all agreed terms together with a document setting forth the terms about which they are unable to reach agreement and the respective positions of the parties with regard to each term. The court will then consider the submissions and enter a protective order under which this case may resume forward progress.

*Id.*

The parties have met and conferred and the Government sets forth herein its position in response to the Court's April 17 Order.

<u>DISCUSSION</u>

I.      **The Law Does Not Support Disclosure Pursuant to a Protective Order of Classified Information That Has Been Properly Protected by the State Secrets Privilege.**

The protective order plaintiffs seek would be unprecedented in a case such as this, for several reasons. First, as a general matter, the authority to determine who may have access to classified information "is committed by law to the appropriate agency of the Executive Branch." *See Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990). As the Government has previously advised the Court, the grant of a security clearance requires more than a favorable determination that an individual is trustworthy for access to classified information. Only where an agency official with appropriate authority separately concludes that an individual has a demonstrated "need to know" classified information in connection with the performance of a "governmental function" that is "lawful and authorized" by the agency will a person be given access to classified information. *See* Dkt. 60 (Defendants' Motion for a Stay Pending Appeal) at 12-13 (citing Exec. Ord. 12,958, §§ 4.1(a), 4.2(a), 5.4(d)(5), 6.1(z), 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Exec. Ord. 13,292, 68 Fed. Reg. 15315 (Mar. 25, 2003)). In this case, the NSA Director has determined that plaintiffs' counsel do not have a need to know classified information in this case and may not have access to that information. *See* Cerlenko Declaration (Dkt. 60-2). Thus, no protective order is appropriate to the extent it authorizes or facilitates access by plaintiffs' counsel to classified information. Here, however, paragraph 25 of the plaintiffs' proposed protective order would expressly overrule the NSA Director's determination, and find that the plaintiffs' counsel have a "presumed" need to know classified information. *See* Pls. Proposed Order ¶ 25. Similarly, paragraph 13 of the proposed protective order would authorize access by plaintiffs' counsel to classified information based on having obtained

the necessary "eligibility determination" by Department of Justice Security Officers. *See id.* ¶ 13.[1] But such a determination is not a "security clearance" absent a "need to know" determination by the Executive Branch, which has been denied in this case. Among the fundamental issues in dispute in this case is whether the Court has authority to supercede that determination, as the plaintiffs' proposed order would now permit. The Government does not consent to a protective order that would grant access to classified information over its objection and abrogate both the Government's state secrets privilege and need to know determination.

Second, the Government submits that the Court lacks authority to disclose over the Government's objection information subject to the state secrets privilege in ordinary civil litigation where the Government is a defendant. Indeed, in similar circumstances, courts have repeatedly held that private parties and counsel are not entitled to access classified information.[2] The entry of a protective order granting plaintiffs' counsel access to state secrets in this case would be contrary to this authority and would vitiate the state secrets privilege—the very purpose of which is to prevent such disclosures by "allowing the government to deny discovery of military secrets." *Kasza v. Browner*, 133 F.3d 1159, 1165 (9th Cir. 1998). Accordingly, the disclosure of state secrets even under purportedly secure

---

[1] The proposed order would also require any recipient of classified information to sign a Memorandum of Understanding. *See* Pls. Proposed Order ¶ 13. Unless expressly based on a need to know determination by the Executive Branch, the proposed MOU cannot authorize the disclosure of classified information to any signatory and therefore is improper as a matter of law.

[2] *See e.g. Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005) (denying private counsel access to classified information in states secrets case); *Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983) (explaining that the rule denying counsel access to classified information is "well settled" and that "our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer . . . or to the coercive power of a protective order."); *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) (rejecting argument that counsel should have been permitted to participate in the *in camera* proceedings); *see also Stillman v. Central Intelligence Agency*, 319 F.3d 546, 548 (D.C. Cir. 2003) (holding that district court abused its discretion in finding First Amendment right for plaintiffs' attorney to receive access to classified information to assist the court in resolving the plaintiff's challenge to pre-publication classification review).

procedures would still be improper as a matter of law, because such an order would authorize or facilitate the disclosure of classified information to a party where the Government has determined that there should be no disclosure.[3]

The Government recognizes that this Court disagrees with its position and has held that FISA Section 1806 preempts the state secrets privilege and provides authority for the disclosure of classified information in this case. But the Government respectfully maintains its position, explained at length in previous filings,[4] that the Court's prior rulings are in error and should be reviewed before any disclosures occur that would actually negate that privilege assertion. In sum, Section 1806 neither expressly preempts the state secrets privilege nor applies in the circumstances of this case to authorize a court to disclose classified information to a party seeking to discover whether they have been subject to alleged surveillance. Section 1806(f) applies where the Government has acknowledged surveillance and where the use of surveillance evidence against a party is at issue. *See* 50 U.S.C. § 1806(c), (d), (e), (f). Notably, in enacting Section 1806(f), Congress made clear that where a court orders disclosure of surveillance materials in the circumstances where Section 1806(f) does apply, the government has a choice to "either disclose the material or forgo use of the surveillance-based evidence" (the latter possibly resulting in dismissal of the prosecution). *See* S. Rep. No. 95-701, 1978 U.S.C.C.A.N. 3973, 4034); *see also In re Sealed Case*, 310 F.3d 717, 741 (For. Intel. Surv. Ct. Rev. 2002) (holding that the Government is required to notify a defendant that surveillance has occurred only if the Government intends to use surveillance evidence in a criminal case); *Cf. Alderman v. United States*, 394 U.S. 181-82, 184 (1969) (recognizing the Government's option to disclose

_____

[3] Indeed, as we have previously advised the Court, where the very threshold issue of whether the plaintiffs have been subject to alleged surveillance and thus would have standing has been properly protected under the state secrets privilege, any attempt to proceed under purportedly secure procedures would not only require the disclosure of state secrets directly to the plaintiffs' counsel, but would also risk public disclosure of state secrets because further proceedings would inherently reveal whether or not standing exists.

[4] *See* Dkt. 17 at 8-25; Dkt. 29 at 8-24; Dkt. 51 at 3-14;19-24 (Government's prior briefs opposing application of Section 1806(f) issue in this case).

surveillance evidence or dismiss the case).[5/] In addition, so far as the Government is aware, even where Section 1806(f) properly applies, no court has ever used that provision to order the disclosure of surveillance materials to a private party seeking discovery of that information. *See In Re: Grand Jury Proceedings of the Special April 2002 Grand Jury,* 347 F.3d 197, 203 (7th Cir. 2003); *United States v. Warsame*, 547 F. Supp. 2d 982, 987 (D. Minn. 2008); *United States v. Rosen*, 447 F. Supp. 2d 538, 546 (E.D. Va. 2006) (collecting cases).

Plaintiffs' proposed protective order disregards the parties' fundamental dispute over whether plaintiffs' counsel have a "need to know" classified information, and thus may have access to classified information, and presumes that Section 1806(f) authorizes the disclosure of properly protected state secrets through a protective order in an ordinary civil lawsuit in which the Government is named as defendant. The proposed protective order would remove control over classified information from the Executive Branch in a manner that has no precedent or statutory support in the circumstances of this case, through ad hoc procedures, whereby the Government would have no option to withdraw evidence or cause the action to be dismissed in order to avoid disclosure. The Government cannot consent to such a process.

Moreover, the law is clear that any order providing for the disclosure of state secrets should be subject to immediate appellate review. As the Ninth Circuit has explained, "[s]ecrecy is a one-way street: Once information is published [or disclosed], it cannot be made secret again," and thus an order of disclosure is "effectively unreviewable on appeal

---

[5] The Supreme Court has recognized the key difference between civil litigation and criminal prosecutions, where the Government may, as a last resort, choose to withdraw evidence, dismiss charges, or dismiss an indictment rather than disclose classified information. In such cases, as the Supreme Court recognized in *United States v. Reynolds*, 345 U.S. 1 (1953), "the Government can invoke its evidentiary privileges only at the price of letting the defendant go free." *Id.* at 12; *see also* 18 U.S.C. App. 3 § 7(a), 6(e) (CIPA provisions stating that if a court orders disclosure of classified information in a criminal case, the Government may seek an interlocutory appeal, or cause the court to dismiss the indictment). In contrast, the *Reynolds* Court noted that this principle "has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented." 345 U.S. at 12.

from a final judgment." *In re Copley Press*, 518 F.3d 1022, 1025 (9th Cir. 2008); *see also Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989) ("[A]ppeal after disclosure of the privileged communication [or information] is an inadequate remedy"). Indeed, the very statute under which plaintiffs and the Court wish to proceed—Section 1806—provides that any order from a district court requiring disclosure of "materials relating to a surveillance" is a final order, which would be subject to appeal. *See* 50 U.S.C. § 1806(h); *United States v. Hamide*, 914 F.2d 1147, 1151 (9th Cir. 1990). The Classified Information Procedures Act similarly provides for interlocutory appeal from any order of "a district court in a criminal case authorizing the disclosure of classified information. . . ." 18 U.S.C. App. 3 § 7(a); *see also* 18 U.S.C. § 2339B(f)(1), (5) (authorizing interlocutory appeal by the United States from any district court order "authorizing the disclosure of classified information" in a civil proceeding brought by the United States pursuant to the material support statute). Thus, what the Government seeks at this stage is consistent with well-established law that appellate review occur before any disclosures of classified information over the Government's objection.

Accordingly, the Government respectfully requests that, before the Court grants plaintiffs' counsel access to state secrets, the Court enter an order directing disclosure or otherwise provide adequate notice of any disclosure to enable the Government to seek a stay and take an appeal. During the conferral process, plaintiffs rejected this approach and, indeed, take the position below that the Court may simply disclose classified information to plaintiffs' counsel under a protective order without regard to the Government's objection— a contention that underscores our objection to the proposed order. Plaintiffs' also contend that a disclosure pursuant to the proposed order would not be appealable. The Government disagrees and requests advance notice of any order or action to disclose classified information to plaintiffs' counsel in order to protect the Government's interests at stake. Similarly, if the Court believes that the protective order itself constitutes an order directing or authorizing that classified information be disclosed to the plaintiffs' counsel over the Government's objection, it should make that explicit.

## II. Application of Selective Portions of Protective Orders Entered in the Guantanamo Habeas Litigation Would Be Improper in This Case.

Plaintiffs model their proposed protective order on the protective order in the Guantanamo *habeas* litigation, but disregard the circumstances of that case and omit the most important provisions of the Guantanamo order that preserve the fundamental principle that the Government controls classified information. Nothing in the Guantanamo order requires the Government to disclose classified information; nothing entitles petitioners' to access information filed *ex parte* or *in camera*; and disclosure in the Guantanamo cases may be avoided where the Government determines to withdraw allegations or release a detainee. Plaintiffs ask the Court to abandon each of these limitations and seek unprecedented access to classified information in this case.

The unique procedures governing the Guantanamo *habeas* cases, where courts must adjudicate the Government's authority to detain individuals, are inapplicable here. In the Guantanamo litigation, the Government consented to a protective order in part because of the detainees' liberty interests at stake, in part to regulate access to sensitive information by detainee counsel—including information known by the detainees themselves—and in part to facilitate access to the secure Guantanamo Bay facility. There is no parallel in this case to the substantive issues raised by the Guantanamo litigation—in which the Government asserts authority to detain someone and the need to protect against disclosure of information by suspected terrorists— nor practical issues concerning access to a secure military facility. Thus, the central reasons that the Government agreed to grant security clearances and access to some classified information to private counsel in Guantanamo *habeas* cases are not applicable here, and the terms of those orders are not appropriate here.

Plaintiffs not only misapply the Guantanamo order to this case, they seek to give themselves far greater access to classified information than afforded the detainees' counsel in the Guantanamo cases. For example, plaintiffs' proposed order omits ¶ 49(b) of the Guantanamo order, which states first that: "Nothing herein requires the government to disclose classified information." *See In re: Guantanamo Bay Detainee Litig.*, No. 08-0442

(Dkt. 1481) § 49(b) (D.D.C. Sept. 11, 2008). Here, of course, the very objective of the proposed order is to require the disclosure of classified information over the Government's objection. Elimination of the Government's discretion to control whether classified information is disclosed is the central issue in dispute in this case, and the Government cannot consent to any protective order that does so. Plaintiffs' proposed order also deletes another sentence from paragraph 49(b) of the Guantanamo order which states that: "Nothing herein prohibits the government from submitting classified information to the Court *in camera* or *ex parte* in these proceedings or entitles petitioners or petitioners' counsel access to such submissions or information." *See id.* Elimination of this provision would further foreclose the Government's authority to control the use and disclosure of classified information in this case. Moreover, the Government objects to the extent the proposed order, by omitting this provision, would permit plaintiffs' counsel access to any information in the Government's prior classified filings submitted solely for *ex parte*, *in camera* review.

Plaintiffs candidly conceded during the conferral process that they intend to grant themselves a greater right to classified information than counsel for the Guantanamo *habeas* petitioners. Plaintiffs also contend below that the elimination of the aforementioned provisions is consistent with the Court's prior orders that due process requires their access to classified information. But that simply illustrates the need for further review of the current dispute before any disclosure of classified information over the Government's objection.

Similarly, paragraph 25 of plaintiffs' proposed protective order, which addresses counsel's "need to know" classified information, is also fundamentally flawed. This proposed provision states: "A plaintiff's counsel is presumed to have a 'need to know' all the information in the government's possession concerning the plaintiffs whom that counsel represents." *See* Pls. Proposed Order ¶ 25. Not only is this among the central issues in dispute in this case, as noted above, but, under this provision, plaintiffs would be presumed

to have a "need to know" <u>any and all</u> classified information "concerning" plaintiffs. This could include all information concerning the Al-Haramain Islamic Foundation of Oregon—a designated global terrorist organization—as well as the information at issue in the Government's state secrets privilege assertion filed in this case, to the extent those submissions are deemed to "concern" the plaintiffs.[6] Plaintiffs would thus transform the inadvertent disclosure of a single document—which itself was subsequently *excluded* in this case by the Ninth Circuit—into a presumption entitling them to all information that may exist concerning them. Plaintiffs' response below does not recede from this sweeping demand for access.

Moreover, plaintiffs again have deleted a key sentence from the need-to-know provision of the Guantanamo order: "This presumption [of a need to know] is overcome to the extent the government seeks to withhold from a [plaintiff's] counsel highly sensitive information or information concerning a highly sensitive source that the government presents to the Court *ex parte* and *in camera*." *In re: Guantanamo Bay Detainee Litigation*, No. 08-0442 (Dkt. 1481) ¶ 28. Instead, plaintiffs' proposed order would require the Government to petition the Court to decide that plaintiffs lack a "need to know" any particularly sensitive information. *See* Pls. Proposed Order ¶ 25. That alternative still would leave the access determination to the Court, not the Executive Branch, and would entail extensive and unnecessary litigation over particular disclosures where the Government objects to any disclosure of state secrets to plaintiffs' counsel.[7]

---

[6] The Government's state secrets privilege assertion applies to a range of information beyond the sealed document, including whether or not the plaintiffs were subject to alleged surveillance not only on the Terrorist Surveillance Program challenged in this case, but pursuant to any other authority not at issue here, as well as information concerning the TSP, and the al Qaeda threat. *See* Public Declaration of John D. Negroponte ¶ 11 (filed on June 21, 2006) (Dkt. No. 59, Item #1) (Civ. 06-274-KI) (D. Or)).

[7] Moreover, a presumption that counsel have a need to know classified information is particularly inappropriate in a case involving information classified as TOP SECRET/ SENSITIVE COMPARTMENTED INFORMATION, the unauthorized disclosure of which reasonably can be expected to cause "exceptionally grave damage to the national security." *See* Exec. Order 13,292 § 1.2(a)(1). Such a designation applies where the threat to specific

In sum, the Government objects to plaintiffs' proposed protective order for several fundamental reasons. First, the proposed order presumes that plaintiffs' counsel are entitled to access classified information under the law, which they are not. Second, the proposed order omits key provisions of the Guantanamo protective order that would reserve the Executive Branch's authority to control access to classified information. Third, the proposed order contains no allowance for the Government to withdraw evidence in order to protect intelligence sources and methods and face the consequences of that decision in the litigation, as it can in the Guantanamo *habeas* cases, under CIPA, and under Section 1806(f) itself. Fourth, the proposed order contains no procedures that would provide for notice of and an opportunity to appeal any order or action under which classified information would be disclosed to the plaintiffs' counsel.

As directed by the Court's April 17 Order, the Government has advised the plaintiffs of the foregoing objections to the entry of a protective order, but the parties have been unable to reach agreement on resolving these significant issues in dispute. As noted above, plaintiffs declined to agree to any appellate review of the access issue at this stage, declined to delete the provision stating that they have a presumptive need to know classified information at issue, and declined to reinsert provisions deleted from the Guantanamo order providing for the Government's ability to control the disclosure of classified information and protect information submitted solely for *ex parte* review.

Related to the foregoing, the Government has other objections to plaintiffs' proposed order. For example, plaintiffs' proposed order would link the determination of what information is "not a secret" to the process described in *Mohamed v. Jeppesen Dataplan*, ___ F.3d ___, 2009 WL 1119516, (9th Cir. 2009), concerning adjudication of the state secrets privilege. *See* Pls. Proposed Order ¶ 28. But this approach makes little sense, not

---

information is "exceptional" and the normal criteria for classification are insufficient to protect the program, *see id.* § 4.3(a). In this context, the need-to-know requirement is strictly enforced, and even Government employees who hold the appropriate security clearances are not provided with access to compartmented information unless absolutely necessary, based on a demonstrated —not a presumed—need to know.

only because *Jeppesen* may be subject to further review, but because the Government's state secrets privilege assertion in this case has already been upheld. The question of what is "a secret" for purposes of the state secrets at issue in this case has been resolved by the Ninth Circuit's decision in *Al-Haramain*.[8]

In addition, plaintiffs' proposed order would allow the plaintiffs' counsel to file information on the public record that they "do not believe" contain classified information, and would subject a filing to classification review only if plaintiffs' counsel know, or have reason to believe, or are uncertain whether it may contain classified information. *See* Pls. Proposed Order ¶¶ 30, 31. Particularly where the Government does not control the disclosure of classified information in the first place, these procedures would leave to plaintiffs' counsel—not the Government—the judgment of what may or may not be classified and filed on the public record before review by Government classification officials. What may appear "obvious" to plaintiffs based on classification markings, *see* Plaintiffs' Response *infra*, is not their determination to make. This further loss of control over the potential disclosure of classified information on the public record underscores the serious risk of harm to national security posed by the proposed order absent an immediate opportunity to appeal whether there should be any disclosures in this case. Efforts to rectify improper disclosures on the public records after the fact, *see* Pls. Proposed Order ¶ 33, are inadequate, particularly where the Government does not control the need to know determination or what classified information may be disclosed to plaintiffs' counsel under the proposed order. Plaintiffs' proposed modification to paragraph 30 (*see infra*) hardly changes the provision and does not adequately address the Government's concern.

Plaintiffs' proposed order also includes requirements for providing access to secure facilities, computers, and printers, and for the supervision of the plaintiffs' activities in secure facilities by court security officers. *See* Pls. Proposed Order ¶¶ 16-23. The

---

[8] Accordingly, the Government also objects to the reference to and incorporation of legal determinations within the meaning of the *Jeppesen* decision in the plaintiffs' proposed MOU. *See* Pls. Proposed Memorandum of Understanding.

Government objects to the entry of such procedures at this stage, not only because access to classified information by plaintiffs' counsel in the circumstances of this case is unsupported by law, but also because these important logistical issues, costs, and burdens should be addressed only after the access issue is finally resolved.

For example, one provision of the proposed order states that, "[c]onsistent with the other provisions of this Protective Order, plaintiffs' counsel "shall have access to the classified information made available to them in the secure area and shall be allowed to take notes and prepare documents with respect to those materials." *See* Pls. Proposed Order ¶ 20. But because the "other provisions" of the order eliminate the Government's control over what classified information may be made available to the plaintiffs, this seemingly "procedural" requirement could authorize unfettered and continuous access by plaintiffs to a range of classified information outside of the Executive Branch's control. The adequacy of specific security measures depends on whether and to what extent access to particular information is ultimately allowed, and should not be decided in a vacuum beforehand. Plaintiffs' rejected the Government's request to defer these issues until the access issue was resolved.[9]

While plaintiffs have addressed objections raised by the Government to other provisions of their proposed order (and to the extent some other objections may be resolved), the Government must emphasize that it opposes the entry of a protective order permitting or facilitating access to classified information by plaintiffs' counsel absent a final

_____

[9] The Government objects to other logistical procedures in the proposed order. The order prohibits plaintiffs' counsel from removing documents containing classified information from the secure area unless approved by the Court Security Officer. Pls. Proposed Order ¶ 19. But any determination to remove classified information from a secure setting would also require approval by the Executive Branch agency that controls the information. Paragraph 29 of the proposed order appears to contemplate that classified filings with the Court would not remain in the custody of CSOs, and provides for the destruction of documents after the conclusion of proceedings. *See id.* ¶ 29. The Executive Branch agency with authority over any classified information at issue in this case controls the location, security, and proper disposition or retention of classified information submitted to the Court—both during and after the termination of litigation.

determination on appeal. In the circumstances of this case, any disclosure of classified information to plaintiffs' counsel, even under seemingly secure terms and conditions, would abrogate the state secrets privilege, and thus none of the terms of the proposed order would be consistent with the law or sufficient to protect the Government's national security interests in the circumstances of this case.

In addition, the Government rejects plaintiffs' contention below that it has failed to comply with the April 17 Order itself. The Government conferred with the plaintiffs regarding all of the foregoing issues (and other issues). Indeed, at the conclusion of that conferral, it appeared to the Government that plaintiffs' counsel regarded the conversation as candid and comprehensive. In addition, the Government has set forth its position on the terms of the proposed order at length in this joint document, as required by the Court. The Court's Order did not compel the Government to consent to terms of a protective order to which it does not agree, and we have specifically stated and explained at length in this submission that, in light of the Government's fundamental objection to access by plaintiffs' counsel to classified information, there are no specific terms of a protective order that would protect the Government's interests in the circumstances of this case. In light of the parties' continuing dispute over whether any classified information may be disclosed to plaintiffs' counsel in the first place, the Government has complied with the April 17 Order to the greatest extent it could.

In addition, we do not consider it "vexatious," as plaintiffs contend below, for the Government to hold to its position (well supported by the law in our view) against the disclosure of classified national security information that would negate a successful state secrets privilege assertion before appellate review—particularly where the Court has not yet directly ordered such a disclosure. Finally, we disagree with plaintiffs' suggestion below that the Court may simply decide whether or not the plaintiffs have standing—a disclosure expressly foreclosed by the Ninth Circuit's ruling on the state secrets privilege—before any further appeal.

<u>CONCLUSION</u>

The Government respectfully does not consent to the disclosure of classified information subject to the Government's successful assertion of the state secrets privilege to the plaintiffs' counsel in this case. For the reasons set forth above, the Government objects to the entry of plaintiffs' proposed protective order, and opposes any protective order under which plaintiffs' counsel would have access to classified information. The Government also respectfully requests that, before the Court grants plaintiffs' counsel access to classified information, it enter an order requiring such a disclosure and provide adequate notice for the Government to seek a stay of any disclosure and to take an appeal.

<u>Dated</u>: May 15, 2009

<u>Government Defendants' Position Respectfully Submitted By</u>:

MICHAEL F. HERTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

_____ *s/ Anthony J. Coppolino* _____
ANTHONY J. COPPOLINO
Special Litigation Counsel

ALEXANDER K. HAAS
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch

20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

### III.  PLAINTIFFS' RESPONSE TO GOVERNMENT'S POSITION

### INTRODUCTION

On April 23, 2009, plaintiffs' counsel, following the Court's directive in its order of April 17, 2009, sent government counsel a draft protective order based on protective orders used in the Guantanamo Bay litigation.  On May 12, 2009, the parties conferred as required by the Court.  Regrettably, but perhaps not surprisingly, during that conference the government attorneys repeated various arguments that this Court has already rejected, insisting that this Court lacks authority to issue or proceed under any protective order.  Government counsel's intransigent positions are reiterated above in the "Government Defendants' Opposition To Protective Order," which government counsel delivered to plaintiffs' counsel on the evening of May 14, 2009.

It is as if this Court's orders of January 5, February 13, and April 17, 2009, never happened.  Defendants continue to argue that FISA does not preempt the state secrets privilege – despite defendants' failed attempts to obtain appellate review of this Court's ruling on that issue.  Defendants continue to insist that the Court cannot proceed with this litigation and give plaintiffs' counsel access to classified information upon the Court's determination that, as a matter of due process, plaintiffs' counsel have a "need to know" that information – despite the Court's determination to proceed.  And defendants continue to posit what this Court has called "similar-sounding alternatives all of which appear geared toward obtaining a stay of this court's proceedings and review by the court of appeals," Order of April 17, 2009 [Dkt. 84] at 1-2 – despite defendants' previous failed attempts to obtain a stay and appellate review.

It is plaintiffs' position that this Court need not revisit its previous rulings and determination to proceed, and thus it is not necessary for plaintiffs to respond to defendants' recycled arguments on FISA preemption, access to classified information, and the "need to know" determination.  In responding to the government's positions as set forth above, plaintiffs will look forward, not backward, and simply provide a discussion and analysis that

will assist the Court to enable this case to "resume forward progress." Order of April 17, 2009 [Dkt. 84] at 3.

## DISCUSSION

### A.   DEFENDANTS CANNOT CREATE APPELLATE JURISDICTION BY STIPULATION OR MANIPULATION.

Defendants continue their previously-failed efforts to invoke the appellate process and thereby thwart this Court's efforts to resume forward progress in this case. Defendants have now concocted two schemes for creating appellate jurisdiction, both of which this Court should reject.

The first scheme made its appearance during the May 12 conference, when defense counsel asked plaintiffs' counsel to agree that defendants may immediately appeal if this Court issues a protective order enabling the litigation to go forward. This scheme must fail for the simple reason that appellate jurisdiction cannot be created by stipulation of the parties. *See, e.g., Smith v. Salish Kootenai College*, 434 F.3d 1127, 1137 (9th Cir. 2006); *American States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 885 (9th Cir. 2003); *U.S. v. Ceja-Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003).

The second scheme appears above, in the "Government Defendants' Opposition To Protective Order," where defendants ask this Court to "enter an order directing disclosure" so as to create appellate jurisdiction under 50 U.S.C. section 1806(h), which prescribes finality of an order directing disclosure of materials relating to surveillance. The problem with this scheme is that plaintiffs are not requesting, and this Court need not grant, an "order directing disclosure" by defendants. For this case to resume forward progress, the Court can simply adopt a protective order under which the *Court* will afford plaintiffs access to the classified filings, the most of important of which – the Sealed Document – has already been disclosed to plaintiffs. No "order directing disclosure" is necessary. By seeking an "order directing disclosure," defendants are attempting to create appellate jurisdiction by manipulating this Court into the language of section 1806(h). That, too, is improper. "A

party may not engage in manipulation either to create appellate jurisdiction or to prevent it." *American States Ins. Co.,* 318 F.3d at 885.

## B. DEFENDANTS' OBJECTIONS TO PORTIONS OF PLAINTIFFS' PROPOSED PROTECTIVE ORDER ARE MERITLESS.

During the May 12 conference, the parties discussed the terms of the draft protective order that plaintiffs' counsel submitted to defense counsel on April 23. Thereafter, plaintiffs' counsel made substantial changes to their draft order to accommodate many of the government's concerns. Plaintiffs' revised proposed protective order is set forth at the outset of this Joint Submission.

Despite the changes that plaintiffs' counsel have made, defendants still object to selected portions of the revised proposed protective order. Plaintiffs address those objections as follows:

**Paragraph 32(a)**: This paragraph addresses classified filings by defendants. It is modeled on paragraph 49(a) of Guantanamo Order, Dkt. 1481. Paragraph 32(a) of the proposed order is a near-verbatim restatement of paragraph 49(a) of the Guantanamo Order.

Paragraph 49(b) of the Guantanamo Order, which is omitted from plaintiffs' proposed protective order, states as follows:

> Nothing herein requires the government to disclose classified information. Additionally, nothing herein prohibits the government from submitting classified information to the Court in camera or ex parte in these proceedings or entitles petitioners or petitioner's counsel access to such submissions or information. Except for good cause shown in the filing, the government shall provide petitioner's counsel or petitioners with notice served on petitioner's counsel on the date of filing.

This Court has now determined that plaintiffs, through their attorneys, must be allowed to fully participate in the litigation of the important issues presented by this case. Further, two of plaintiffs' attorneys have now been granted favorable security clearance eligibility determinations. (We note, however, that despite this Court's order for the government to process the security clearance applications by February 13, 2009, defendants still have not made a determination on a third attorney's application.) Those events have made further ex

parte filings inappropriate. The omission of the above-quoted language from the proposed protective order puts an end to such ex parte filings.

The government asserts that "[e]limination of this provision would further foreclose the Government's authority to control the use and disclosure of classified information in this case." (Joint Submission, p. 22). If control means forcing this Court to accept filings to which plaintiffs cannot respond, then it is indeed true that the proposed protective order limits the government's authority, and rightfully so. Defendants remain free, however, to decide not to submit such classified information. If defendants do submit such information, it will protected by the terms of the protective order prohibiting any public disclosure of the information.

**Paragraph 25**:    This paragraph is modeled on paragraph 28 of the Guantanamo Order. Both orders create a presumption that plaintiffs' counsel have a "need to know" information in the government's possession concerning the plaintiffs whom that counsel represent. The government objects to this presumption. Plainly, however, if plaintiffs' counsel are to meaningfully represent their clients in this litigation, they must have access to classified information regarding their clients that is relevant to the issues presented in the case.

The Guantanamo Order also eliminates the presumption to the extent the government seeks to "withhold from a petitioner's counsel highly sensitive information or information concerning a highly sensitive source that the government represents to the Court ex parte and in camera." In proposed paragraph 25, plaintiffs delete that provision. Rather than allow the government to decide whether to withhold relevant information, the draft Protective Order instead allows government counsel to challenge the need-to-know presumption on a case-by-case basis "for good cause shown." Thus the proposed protective order preserves the government's right to challenge the need-to-know presumption, but the decision whether to withhold information is ultimately left to the Court, to be exercised under the Court's authority as described in Plaintiffs' Supplemental Case Management Statement [Dkt. 72].

**Paragraph 28**: Defendants object to the reference in paragraph 28 to the Ninth Circuit's recent opinion in *Mohamed v. Jeppesen Dataplan*. Plaintiffs have included that reference, however, because of the numerous relevant public disclosures by the government and by the news media about the TSP and the plaintiffs' surveillance – before this case was filed and during the course of the litigation – much of which is no longer secret. For example, the very existence of the TSP, which was classified, was initially disclosed by the *New York Times* in December 2005. Ultimately, President Bush declassified the existence of the program and discussed it in public. However, between the time of the *New York Times* article and the declassification and disclosure by the President, that information was no longer secret. Under the terms of paragraph 28 of this Order, plaintiffs' counsel would have been allowed to discuss and use that information after it was no longer secret but before it was declassified. This approach is consistent with the Ninth Circuit's holding in *Mohamed v. Jeppesen Dataplan* that the state secrets privilege does not protect classified information that has become non-secret due to its public disclosure. See 2009 WL 1119516 ("The government could not seriously argue, for example, that the Pentagon Papers remained 'secret' and therefore subject to the state secrets privilege even after having been published in the *New York Times*, simply because the government itself refused to declassify or otherwise 'officially disclose' the content of the papers.").

**Paragraphs 30 and 31**:    Defendants object to these paragraphs to the extent they allow plaintiffs' counsel to determine whether information is classified and thus may not be filed on the public record. But it will be obvious to plaintiffs whether documents are classified, because such documents are always clearly marked with that designation. Plaintiffs also understand that any briefs or other documents they file that include or refer to information from a classified document are classified. In any event, the government's objection can be met by revising paragraph 30 to read as follows: "Pending further order of the Court, any pleadings or other documents filed by plaintiffs that do not contain classified information are authorized for direct filing in the CM/ECF system consistent with the regular electronic filing practices of the Court."

Plaintiffs filings with the Ninth Circuit were made under exactly the same procedures as those set forth in paragraph 30 and 31. The government has never alleged that plaintiffs' counsel made any public filing in that court which included classified information.

**Paragraphs 16-23**: The government takes the position that it is unnecessary at this time to work out the details of how plaintiffs' counsel will have access to the secure area. Plaintiffs believe that this is an essential part of the protective order and that there is no reason not to resolve these issues at this time to avoid further delays. The language plaintiffs propose for paragraphs 16 through 23 regarding access to the secure area and use of computers is reasonable and should be incorporated in the protective order.

**Paragraph 29**: The Guantanamo Order provided that upon completion of the litigation, all classified filings would be destroyed. In the present case, such a provision could be problematic for other related cases and the historical record regarding this litigation. Therefore plaintiffs propose in paragraph 29 that one copy of all filings be retained by the government.

**C. DEFENDANTS HAVE FAILED TO COMPLY WITH THIS COURT'S ORDER OF APRIL 17, 2009.**

In the order of April 17, 2009, this Court ordered that, if the parties are unable to agree on all terms of a protective order, "they shall jointly submit a document containing all agreed terms," along with an explanation of "the terms about which they are unable to reach agreement." Order of April 17, 2009 [Dkt. 84] at 2. Defendants, however, have refused to agree to *any* terms of a protective order, choosing instead to merely snipe at some of the provisions in plaintiffs' proposed protective order. Defendants have refused to agree to a single word in plaintiffs' proposed protective order – not even "a," "and" or "the." And defendants have refused to propose their own protective order. This is hardly what was envisioned by the Court's order of April 17 – the joint submission of a document containing all agreed terms of a protective order, even if only partial. Defendants have utterly failed to comply with – indeed, have defied – the April 17 directive.

In plaintiffs' view, given defendants' recalcitrance, any one of three options would be appropriate for resuming forward progress in this case. The first option is for the Court to adopt plaintiffs' proposed protective order with modifications as the Court deems appropriate.

The second option is one that plaintiffs have previously proposed – that the Court simply proceed to determine that plaintiffs were subjected to warrantless electronic surveillance and thus have standing to prosecute this action. Now that the Court has reviewed the Sealed Document, and in consideration of plaintiffs' previous arguments on how the unclassified and classified evidence demonstrates plaintiffs' standing, this Court is sufficiently well-positioned to find standing.

The third option is for the Court to render a default judgment because of defendants' persistent refusals to comply with the Court's orders of January 5 and April 17, 2009. *See Estrada v. Speno & Cohen*, 244 F.3d 1050, 1055 (9th Cir. 2001) (judge can order default judgment against a party for "vexatious litigation tactics"). That approach would establish liability, with damages and other relief to be determined in a subsequent evidentiary proceeding. *See DirecTV, Inc. v. Huhnh*, 503 F.3d 847, 851 (9th Cir. 2007); *Greyhound Exhibitgroup, Inc.*, 973 F.2d 155, 158 (2d Cir. 1992); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986).

## CONCLUSION

This case has now dragged on for more than three years, with the litigation of standing only now in sight. The Court has rightly determined that forward progress should resume. Plaintiffs have obeyed the Court's April 17 directive and have proposed a protective order that will facilitate the litigation of the important issues in this case in a way that achieves an appropriate balance between plaintiffs' due process rights and the government's important concerns about national security. Defendants have not obeyed the Court's directive. Plaintiffs' counsel have done their best to confer with the government attorneys, but meaningful dialogue is difficult when one party refuses to budge from long-held and

repeatedly rejected positions. Without the government's cooperation, it is left to this Court to determine how this case may resume forward progress.

Plaintiffs' Position Submitted By:

_s/ Jon B. Eisenberg_
Jon B. Eisenberg, California Bar No. 88278 (jon@eandhlaw.com)
William N. Hancock, California Bar No. 104501 (bill@eandhlaw.com)
Eisenberg & Hancock LLP
1970 Broadway, Suite 1200
Oakland, CA 94612
510.452.258l - Fax 510.452.3277


_s/ Steven Goldberg_
Steven Goldberg, Oregon Bar No. 75134 (steven@stevengoldberglaw.com)
River Park Center, Suite 300
205 SE Spokane St.
Portland, OR 97202
503.445.4622 - Fax 503.238.7501


Thomas H. Nelson, Oregon Bar No. 78315 (nelson@thnelson.com)
P.O. Box 1211, 24525 E. Welches Road
Welches, OR 97067
503.622.3123 - Fax: 503.622.1438


Zaha S. Hassan, California Bar No. 184696 (zahahassan@comcast.net)
8101 N.E. Parkway Drive, Suite F-2
Vancouver, WA 98662
360.213.9737 - Fax 866.399.5575


J. Ashlee Albies, Oregon Bar No. 05184 (ashlee@sstcr.com)
Steenson, Schumann, Tewksbury, Creighton and Rose, PC
815 S.W. Second Ave., Suite 500
Portland, OR 97204
503.221.1792 - Fax 503.223.1516

Lisa R. Jaskol, California Bar No. 138769 (ljaskol@earthlink.net)

610 S. Ardmore Ave.

Los Angeles, CA 90005

213.385.2977 - Fax 213.385.9089

*Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc.,*
*Wendell Belew and Asim Ghafoor*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28