MICHAEL F. HERTZ
Acting Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
MARCIA BERMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782; Fax: (202) 616-8460

*Attorneys for the Government Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates To:<br><br>*McMurray et al. v. Verizon Comm., Inc. et al.*, No. 09-cv-0131-VRW | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. M:06-cv-01791-VRW<br><br>**GOVERNMENT DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN 09-CV-0131-VRW**<br><br>Date: June 3, 2009<br>Time: 10:30 a.m.<br>Courtroom: 6, 17th Floor<br><br>Chief Judge Vaughn R. Walker |



Dockets.Justia.com

TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I. THE COURT LACKS JURISDICTION OVER PLAINTIFFS' TAKINGS CLAIM ........................................................................ 1

II. PLAINTIFFS' TAKINGS CLAIM FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS DO NOT HAVE A VESTED PROPERTY INTEREST IN THEIR INCHOATE CAUSES OF ACTION ........................................................................ 4

III. SECTION 802 DOES NOT VIOLATE THE SEPARATION OF POWERS ........................................................................ 12

CONCLUSION ........................................................................................................ 13

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*1902 Atlantic Ltd. v. Hudson*, 574 F. Supp. 1381 (E.D. Va. 1983) ........ 3

*In re Aircrash in Bali, Indonesia*, 684 F.2d 1301 (9th Cir. 1982) ........ 8, 9

*In re American Freight System, Inc.*, 179 B.R. 952 (Bankr. D. Kan. 1995) ........ 8

*Armstrong v. United States*, 364 U.S. 40 (1960) ........ 10

*Austin v. City of Bisbee*, 855 F.2d 1429 (9th Cir. 1988) ........ 4, 5, 6, 8

*Battaglia v. General Motors Corp.*, 169 F.2d 254 (2d Cir. 1948) ........ 5, 6

*Bay View, Inc. v. Ahtna, Inc.*, 105 F.3d 1281 (9th Cir. 1997) ........ 2, 6

*Carr v. United States*, 422 F.2d 1007 (4th Cir. 1970) ........ 10

*Clouser v. Espy*, 42 F.3d 1522 (9th Cir. 1994) ........ 2, 3

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157 (9th Cir. 2007) ........ 2

*In re Consol. Atmospheric Testing Litig.*, 820 F.2d 982 (9th Cir. 1987) ........ 4, 8, 9, 11

*Dames & Moore v. Regan*, 453 U.S. 654 (1981) ........ 9, 10

*Devine v. Joshua Hendy Corp.*, 77 F. Supp. 893 (S.D. Cal. 1948) ........ 5, 6, 7

*Eastern Enters. v. Apfel*, 524 U.S. 498 (1998) ........ 3

*Garcia v. San Antonio Metro. Transit Authy.*, 469 U.S. 528 (1985) ........ 5

*Grimesy v. Huff*, 876 F.2d 738 (9th Cir. 1989) ........ 4, 5, 6

*Ileto v. Glock*, --- F.3d --- 2009 WL 1272629 (9th Cir. May 11, 2009) ........ 1, 4, 9, 11, 12

*In re Jones Truck Lines, Inc.*, 57 F.3d 642 (8th Cir. 1995) ........ 6, 7

*Marceau v. Blackfeet Hous. Author.*,
455 F.3d 974 (9th Cir. 2006) .......... 2

*Mead v. City of Cotati*,
No. C 08-3585, 2008 WL 4963048 (N.D. Cal. Nov. 19, 2008) .......... 2

*Parkview Corp. v. Dep't of the Army, Corps of Engineers*,
490 F. Supp. 1278 (E.D. Wis. 1980) .......... 3

*Penn Central Transp. Co. v. City of New York*,
438 U.S. 104 (1978) .......... 7, 8

*Plaut v. Spendthrift Farms, Inc.*,
514 U.S. 211 (1995) .......... 12

*Robertson v. Seattle Audubon Soc.*,
503 U.S. 429 (1992) .......... 12

*Sharkey v. United States*, 17 Cl. Ct. 643, 651 (Cl. Ct. 1989) .......... 8

*United States v. Security Industrial Bank*,
459 U.S. 70 (1982) .......... 10

*Van Alstyne v. Electronic Scriptorium, Ltd.*,
560 F.3d 199 (4th Cir. 2009) .......... 7

**STATUTES**

5 U.S.C. § 701 *et seq.* .......... 3

18 U.S.C. § 2707(c) .......... 7

28 U.S.C. § 1346(a)(2) .......... 2

28 U.S.C. § 1491(a)(1) .......... 2

29 U.S.C. § 201 *et seq* .......... 5

50 U.S.C. § 1885a(a) .......... 1, 11

50 U.S.C. § 1885a(a)(1)-(5) .......... 11

50 U.S.C. § 1885a(b)(1) .......... 11

## INTRODUCTION

The instant complaint alleges that Section 802 of the Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, 50 U.S.C. § 1885a(a), violates the constitutional separation of powers, due process clause, and takings clause. Plaintiffs claim that Section 802 is an unconstitutional taking because it allegedly mandates dismissal of their pending actions against the telecommunications carriers for allegedly illegally disclosing telephone subscriber conversations, information and records. The Court should dismiss plaintiffs' takings claim for two fundamental reasons: (1) the Court lacks jurisdiction over plaintiffs' takings claim, which must be brought in the United States Court of Federal Claims; and (2) plaintiffs do not have a vested property interest in their inchoate causes of action that have not been reduced to final unreviewable judgments, as the Ninth Circuit just recently confirmed. *Ileto v. Glock*, --- F.3d ---, 2009 WL 1272629, at * 12 (9th Cir. May 11, 2009). None of the arguments that plaintiffs raise in opposition to these bases for dismissal is the least bit persuasive, as we demonstrate below.

The reasons for dismissing plaintiffs' separation of powers claim have already been briefed. (*See* Pls.' Opp. to U.S. MTD, Dkt. 483 at 29-31; U.S. MTD Reply Brief, Dkt. 520 at 14-18). Plaintiffs add nothing to those arguments here, and the Ninth Circuit's decision in *Ileto*, 2009 WL 1272629, at * 9-10, in which the court rejected a similar separation of powers challenge, adds further support to the Government's position. Plaintiffs have abandoned their due process claim, thus the Court should dismiss it.

## ARGUMENT

### I. THE COURT LACKS JURISDICTION OVER PLAINTIFFS' TAKINGS CLAIM.

The Government established in its opening brief that the Court lacks subject matter jurisdiction over plaintiffs' takings claim because plaintiffs must seek compensation for any alleged taking in the United States Court of Federal Claims under the Tucker Act. (*See* Gvt. Defs.' MTD, Dkt. 583 at 6-7).[1] "The simple fact is that . . . [the Court has] no jurisdiction to

[1] The Tucker Act provides exclusive jurisdiction in the Court of Federal Claims to hear any claim against the United States based on the Constitution that seeks damages in excess of

address the merits of takings claims where Congress has provided a means for paying compensation for any taking that might have occurred." *Bay View, Inc. v. Ahtna, Inc.*, 105 F.3d 1281, 1285 (9th Cir. 1997). Because plaintiffs "can sue the United States in the Court of Federal Claims, [Section 802] is not an uncompensated taking." *Id.*

Plaintiffs respond that they are not seeking monetary compensation for the alleged taking, only declaratory and injunctive relief, and that, therefore, the Tucker Act does not divest the Court of jurisdiction over their takings claim. (Pls.' Resp. to Gvt. Defs.' & Telecom Defs' MTD, Dkt. 620-2 at 15-16). But the Ninth Circuit considered and rejected plaintiffs' very argument in *Bay View*. *See* 105 F.3d at 1285-86. In *Bay View*, the court addressed whether it could declare that a statute violated the plaintiffs' rights under the takings clause, even though the Tucker Act provided a means for the plaintiffs to obtain compensation for the alleged taking of their property. In concluding that it could not do so, the court determined that its power to adjudicate a takings claim does not depend on the type of relief sought, cogently disposing of plaintiffs' argument as follows:

> [M]any courts have viewed the Tucker Act as a jurisdictional hurdle against the payment of damages but not as an impediment to equitable relief. . . . This, of course, is totally wrong. Because a compensation remedy is available, any taking that may have occurred simply cannot violate the takings clause. We have no authority to decide the hypothetical question whether the [statute] would amount to an unconstitutional taking were it uncompensated.

*Id.* at 1286 (citations omitted). *See also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1172-73 (9th Cir. 2007) (holding no jurisdiction over takings claim in action seeking declaratory and injunctive relief); *Clouser v. Espy*, 42 F.3d 1522, 1539-40 (9th Cir. 1994) (holding no jurisdiction over takings claim seeking only declaratory and injunctive relief; rejecting argument that because plaintiffs were seeking only declaratory and injunctive relief and not monetary damages, court had jurisdiction under "Little" Tucker Act); *Mead v. City of Cotati*, No. C 08-3585, 2008 WL 4963048, at *3-7 (N.D. Cal. Nov. 19, 2008) (holding no

---

$10,000. *See Marceau v. Blackfeet Hous. Author.*, 455 F.3d 974, 986 (9th Cir. 2006); 28 U.S.C. § 1491(a)(1). Claims for damages not exceeding $10,000 may be brought in either the Court of Federal Claims or in federal district court under the "Little" Tucker Act. *See Marceau*, 455 F.3d at 986; 28 U.S.C. § 1346(a)(2).

jurisdiction over takings claim that only sought declaration that conditions placed on plaintiff's development project were unconstitutional takings and injunction prohibiting their enforcement, explaining that granting injunctive or declaratory relief before plaintiff had sought and been denied compensation would contradict Ninth Circuit law).[2]

Plaintiffs ignore this controlling authority and rely instead on two district court decisions, one from the Eastern District of Virginia and one from the Eastern District of Wisconsin. (Dkt. 620-2 at 15-16, citing *1902 Atlantic Ltd. v. Hudson*, 574 F. Supp. 1381, 1406 (E.D. Va. 1983); *Parkview Corp. v. Dep't of the Army, Corps of Engineers*, 490 F. Supp. 1278, 1281 (E.D. Wis. 1980)). *Parkview* did not involve a takings claim and is therefore not pertinent here. *Parkview*, 490 F. Supp. at 1281-82. To the extent that the court in *1902 Atlantic* exercised jurisdiction over the plaintiff's request for a declaratory judgment that the challenged agency action was a taking of the plaintiff's property without just compensation, the case is contrary to binding Ninth Circuit precedent.[3]

---

[2] As noted in our opening brief (Dkt. 583 at 7 n. 3), a plurality of the Supreme Court has stated that courts may consider the merits of a takings claim for equitable relief under narrow circumstances not present here – where the challenged statute "requires a direct transfer of funds mandated by the Government." *Eastern Enters. v. Apfel*, 524 U.S. 498, 521 (1998) (plurality opinion). *See also Mead*, 2008 WL 4963048, at *5-6.

[3] *1902 Atlantic* also involved distinguishable facts and legal claims. The principle claim at issue there was not a takings claim, but whether agency action—the denial of a permit to build on certain land—was "arbitrary and capricious" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., and the bulk of that decision is devoted to the separate APA claim. *See* 574 F. Supp. at 1396-1404. Only thereafter did the court address whether the permit denial was a "taking," and its holding that the APA established jurisdiction for non-monetary relief as to the takings claim, *see id*. at 1404-08, simply cannot be squared with Ninth Circuit authority. For example, in *Clouser*, the Ninth Circuit reviewed a challenge to agency action under the APA, but upheld the district court's decision that jurisdiction over a related takings challenge that sought only non-monetary relief lies exclusively in the Court of Claims. *See* 42 F.3d at 1524-1539 (review of APA and statutory claims) and *id*. at 1539-40 (no district court jurisdiction as to takings claim).

## II. PLAINTIFFS' TAKINGS CLAIM FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS DO NOT HAVE A VESTED PROPERTY INTEREST IN THEIR INCHOATE CAUSES OF ACTION.

The second basis for the Government's motion to dismiss plaintiffs' takings claim is that even if the Court were to exercise jurisdiction over that claim, it would fail as a matter of law because plaintiffs have no constitutionally protected property interest in causes of action that have not been reduced to final judgments. (*See* Dkt. 583 at 7-10). Plaintiffs claim that Section 802 of the FISA is an unconstitutional taking because it allegedly mandates dismissal of their pending actions against the telecommunications carriers for allegedly illegally disclosing telephone subscriber conversations, information and records. (Complaint at ¶¶ 9, 20). However, the Ninth Circuit has conclusively and consistently held that "a party's property right in any cause of action does not vest 'until a final *unreviewable* judgment is obtained.'" *Grimesy v. Huff*, 876 F.2d 738, 744 (9th Cir. 1989) (quoting *In re Consol. Atmospheric Testing Litig.*, 820 F.2d 982, 989 (9th Cir. 1987)). *See also Austin v. City of Bisbee*, 855 F.2d 1429, 1435-36 (9th Cir. 1988) ("A cause of action is . . . 'inchoate and affords no definite or enforceable property right until reduced to final judgment.'") (quoting *Atmospheric Testing*, 820 F.2d at 989); Dkt. 583 at 4-5 (citing cases). Indeed, the Ninth Circuit just reaffirmed this proposition. *Ileto*, 2009 WL 1272629, at * 12 (holding that federal statute providing immunity to firearms manufacturers from certain civil suits does not effect an unconstitutional taking of plaintiffs' pending actions against manufacturers because court has "squarely held" that a party's property rights "in any cause of action" do not vest until final unreviewable judgment is obtained).

Plaintiffs' underlying pending actions are, of course, still in the initial stages of litigation – they are a long way from being reduced to "final unreviewable judgment" in plaintiffs' favor. Thus, plaintiffs clearly do not have a protected property interest in their causes of action that Congress has allegedly "taken" from them by enacting Section 802. Plaintiffs' primary argument in response is that this rule applies only to tort causes of action, not "statutorily-mandated liquidated damages claim[s]" such as plaintiffs' claims. (*See* Dkt. 620-2 at 12-13). Plaintiffs have created this distinction out of whole cloth. The Ninth Circuit has, in fact, specifically held

that a party's property right in a *statutory* cause of action does not vest until the action has been reduced to a final unreviewable judgment. *Grimesy*, 876 F.2d at 744; *Austin*, 855 F.2d at 1435-36. *Austin* involved a suit by two police officers against their employer, the City of Bisbee, Arizona, for overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* After the Supreme Court held in *Garcia v. San Antonio Metro. Transit Authy.*, 469 U.S. 528 (1985), that state and local governments are subject to liability under the FLSA for overtime pay for police officers, Congress amended the FLSA to delay state and local government's liability for such overtime pay. The court in *Austin* held that Congress could deprive the plaintiff police officers of their causes of action under the FLSA without violating the plaintiffs' constitutionally protected property rights because they had no vested property rights in inchoate causes of action that had not been reduced to final judgment. 855 F.2d at 1435-36. The court also held that the plaintiffs did not possess a vested right to overtime compensation under the FLSA because Congress has the power to revoke rights that it creates. *Id*. at 1436.[4/] Similarly, courts have held that another statute limiting employers' liability under the FLSA, known as the Portal-to-Portal Act, did not deprive FLSA plaintiffs of a constitutionally protected property interest in their pending statutory claims. *See, e.g.*, *Battaglia v. General Motors Corp.*, 169 F.2d 254, 259 (2d Cir. 1948); *Devine v. Joshua Hendy Corp.*, 77 F. Supp. 893, 902-03 (S.D. Cal. 1948).

In *Grimesy*, the plaintiffs successfully challenged a federal agency's interpretation of a federal statute. The district court issued an injunction in the plaintiffs' favor, and Congress subsequently amended the statute. The Ninth Circuit held that application of the new law to the plaintiffs' claim did not constitute an unconstitutional taking because the plaintiffs' claim had not

---

[4] Contrary to plaintiffs' assertions, the court in *Austin* did not "expressly [hold] that no pre-existing statute had mandated that state employees were entitled to overtime" and thus "no prior expectation of overtime could have existed." (Dkt. 620-2 at 14). The court's holding is as stated above. After so holding, the court remarked that "[f]urthermore," the congressional amendment did not deprive public employees of "longstanding rights or settled expectations." *Austin*, 855 F.2d at 1436. Nor did the court hold that no statute gave state employees rights to overtime compensation. Rather, it stated that the *Garcia* decision "gave force to rights created by Congress." *Id.*

been reduced to a final unreviewable judgment. *Grimesy*, 876 F.2d at 743-44.[5] *See also In re Jones Truck Lines, Inc.*, 57 F.3d 642, 651 (8th Cir. 1995) (holding that Negotiated Rates Act of 1993 did not constitute unconstitutional taking by depriving carriers of their pending causes of action against shippers for undercharges). The rule annunciated by the Ninth Circuit that a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained has clearly been applied in this Circuit, and others, to statutory causes of action.

Plaintiffs proffer no reasoned rationale for distinguishing between tort claims and their statutory claims. Plaintiffs argue that because their causes of action seek "statutorily-mandated liquidated damage[s]" under the "decades-old" damages provision of the Electronic Communications Privacy Act ("ECPA") and the Stored Communications Act ("SCA"), plaintiffs have greater expectations in those claims than do plaintiffs in tort suits, giving rise to a protected property interest. (Dkt. 620-2 at 12-14). Of course, the common law has provided a remedy for tort actions far longer than the two decades that the ECPA and the SCA have provided a remedy. More importantly, plaintiffs claims for damages under the ECPA and the SCA were created by Congress and, as many courts have pointed out, can be taken away by Congress. *See, e.g., Bay View*, 105 F.3d at 1283 ("Congress giveth and it taketh away.") (dictum); *Austin*, 855 F.2d at 1436; *Battaglia*, 169 F.2d at 259 ("so long as the claims, if they were purely statutory, had not ripened into final judgment, regardless of whether the activities on which they were based had been performed, they were subject to whatever action Congress might take with respect to them."); *Devine*, 77 F. Supp. at 902-03 ("statutory rights . . . may be withdrawn by the Congress at any time before ripening into final judgment.").

Plaintiffs' attempt to manufacture a protected property interest by labeling their claim one

---

[5] Plaintiffs' treatment of *Grimesy* is disingenuous. Plaintiffs argue that *Grimesy* is favorable to them because it "expressly recognized that retroactive application of a statute would be improper 'when to do so would infringe upon or deprive a person of a right that had matured or become unconditional.'" (Dkt. 620-2 at 14, quoting *Grimesy*, 876 F.2d at 743). However, the very next sentence following the one plaintiffs quote reads as follows: "In this case, plaintiffs cannot contend that their right to damages had matured or become unconditional. The judgment was still subject to review in this court." *Grimesy*, 876 F.2d at 743. Plaintiffs' right to damages here is even more inchoate, in that they have yet to obtain a judgment.

for "statutorily-mandated liquidated damages" should also be rejected. The damages provision plaintiffs cite, 18 U.S.C. § 2707(c) (*see* Dkt. 620-2 at 2), provides that "[t]he court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." This provision only "mandates" a damage amount in the event that a plaintiff proves that he or she is "entitled to recover." Plaintiffs still have to prove that a violation occurred, and they must also prove actual damages, *see Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 204-08 (4th Cir. 2009), just like a tort plaintiff must prove liability and damages. Thus, plaintiffs' recovery under § 2707(c) is as speculative as any other inchoate cause of action. *See In re Jones Truck Lines, Inc.*, 57 F.3d at 651 (noting that carriers' claimed economic impact based on loss of causes of action against shippers was "somewhat speculative" because even had Negotiated Rates Act not been enacted, shippers could still have defeated the claims against them).

Plaintiffs' characterization of their claims as claims for "liquidated damages" is also erroneous and misleading. The term "liquidated damages" is defined as "[a]n amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches." *Black's Law Dictionary* 418 (8th ed.). Section 2707(c) is merely a statutory damages provision, not a liquidated damages provision agreed to by parties to a contract. It is also not clear what plaintiffs achieve by labeling their claims as claims for "liquidated damages," other than implying some heightened expectation in them, given that courts have not treated claims for liquidated damages any differently for purposes of a takings analysis. *See Devine*, 77 F. Supp. at 903 ("Claims for minimum wages, overtime compensation, *liquidated damages*, and penalties, are not vested property rights within the protection of the Fifth Amendment.") (emphasis added).

Plaintiffs also try to avoid dismissal of their takings claim by arguing that a "factual inquiry" into plaintiffs' expectations of receiving compensation under § 2707(c) is required, citing *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978), *Atmospheric Testing*,

and *Austin*. (Dkt. 620-2 at 10). However, there is no right to, or need for, a "factual inquiry" here, beyond the "fact" that plaintiffs' causes of action have not been reduced to final unreviewable judgments. In *Penn Central*, the Supreme Court referred to the "essentially ad hoc, factual inquiries" that it had engaged in to decide whether a taking without just compensation had occurred, not whether a party had a vested property interest in the first place (which was not at issue in *Penn Central*). 438 U.S. at 124. Thus, although the *Atmospheric Testing* court quoted *Penn Central*'s language that "[w]hether such a claim exists is subject to an 'essentially ad hoc, factual inquiry,'" it did not consider any "facts" of record (or order discovery to develop any such facts) regarding the plaintiffs' expectations of recovering against the contractor defendants on their tort claims, which Congress had eliminated. *Atmospheric Testing*, 820 F.2d at 989. Instead, the court noted that, as a matter of law, "unlike contract claims, the tort claims asserted here lack 'investment-backed expectations'" and are "contingent by their nature." *Id.* (quoting *Penn Central*, 438 U.S. at 124). Nor did the court in *Austin* engage in any "factual inquiry" into the plaintiffs' expectations of recovering on their statutory causes of action. *Austin*, 855 F.2d at 1436 (holding that, as a matter of law, plaintiffs had no vested property right in inchoate causes of action that had not been reduced to final judgment or vested right to overtime compensation, and rejecting plaintiffs' claim, without conducting any factual inquiry, to settled expectations to rights created by Congress).

Plaintiffs' reliance on *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301 (9th Cir. 1982), does not advance their cause. (*See* Dkt. 620-2 at 11-12). "In dictum in *Aircrash in Bali*, the court indicated that a cause of action for the wrongful death of airplane passengers might constitute property within the meaning of the Fifth Amendment, but declined to determine whether there was a taking when the Warsaw Convention limited an airline's liability for wrongful death." *In re American Freight System, Inc.*, 179 B.R. 952, 963 (Bankr. D. Kan. 1995). Importantly, the plaintiffs' claims in *Bali had* been reduced to a judgment, as plaintiffs here acknowledge. (*See* Dkt. 620-2 at 6). *See Sharkey v. United States*, 17 Cl. Ct. 643, 651 (Cl. Ct. 1989) (distinguishing *Bali* on this ground). Even if this distinction were not dispositive, it is clear beyond peradventure

that the court's remark in *Bali* that claims for compensation are property interests was dictum, as evidenced by the fact that (1) the Ninth Circuit itself called it "dictum" in *Atmospheric Testing*, 820 F.2d at 988 n.3; and (2) the court did not decide whether the Warsaw Convention effected a taking, finding that such a question was "properly one for the Court of Claims," *Bali*, 684 F.2d at 1312; *see also Atmospheric Testing*, 820 F.2d at 988 n.3. The significance plaintiffs ascribe to *Bali* simply cannot be reconciled with the Ninth Circuit's unambiguous pronouncements since *Bali* (and as recently as eleven days ago, *see Ileto*) that property rights in any cause of action do not vest until final unreviewable judgment is obtained.

Lastly, plaintiffs argue that Section 802 effects an unconstitutional taking of their pending causes of action because it does not leave them with any alternative forum or remedy for their claims, thereby causing a "total destruction" of their claims. (*See* Dkt. 620-2 at 17-22). As an initial matter, plaintiffs do not explain how this argument is relevant to the question of whether they have a vested property interest in their inchoate causes of action. The cases they cite are analytically inapposite. For instance, while the Court in *Dames & Moore v. Regan*, 453 U.S. 654, 686-87 (1981), did say that "[o]ur conclusion is buttressed by the fact that the means chosen by the President to settle the claims of American nationals provided an alternative forum, the Claims Tribunal, which is capable of providing meaningful relief," the "conclusion" to which the Court was referring is the conclusion that the President was authorized to suspend the pending claims by an Executive Order, not any conclusion about vested property rights or takings. *Id.* The Court was crystal clear that it was not expressing any view on the petitioner's takings claim. *Id.* at 688 ("We do not think it appropriate at the present time to address petitioner's contention that the suspension of claims, if authorized, would constitute a taking of property in violation of the Fifth Amendment to the United States Constitution in the absence of just compensation.); *id.* at 688 n.14 ("We express no views on petitioner's claims that it has suffered a taking."). The Court concluded that any takings claim was premature before the petitioners pursued such claim in the Court of Claims under the Tucker Act. *Id.* at 689-90. Accordingly, plaintiffs' contention that in *Dames & Moore*, the Court "held that referral of claims to the U.S.-Iran Claims Tribunal did not

comprise a taking precisely because it reserved a remedy 'capable of providing meaningful relief' to the claimants" (Dkt. 620-2 at 17) is a blatant distortion of the Court's holding.

Also inapposite is *Armstrong v. United States*, 364 U.S. 40 (1960). In *Armstrong*, the Court held that the government caused a taking of the petitioner's liens under state law for materials furnished to a prime contractor building boats for the United States, when it terminated its contract with the prime contractor upon the prime's default and seized all of the petitioner's unused materials. State law provided that whoever furnishes labor or materials for building a vessel has a lien on it for the labor or materials, and so the petitioners claimed valid liens on the hulls and manufacturing materials at the time they were transferred by the prime to the government. 364 U.S. at 41. The government's action caused a "total destruction" of the value of the petitioner's liens, "which constitute compensable property," thus the government was required to provide just compensation for its taking. *Id.* at 48. *Armstrong* has no bearing on whether plaintiffs' inchoate causes of action are vested property rights necessary for plaintiffs to have a viable takings claim. It was undisputed that the petitioners in *Armstrong* had a cognizable property interest under state law in the materials they furnished, which they had not been paid for, and the liens on them. Plaintiffs here have no such property interest under state or federal law – all they have are causes of action that have yet to ripen into protected property interests.[6]

---

[6] Likewise, *United States v. Security Industrial Bank*, 459 U.S. 70, 75-78 (1982), which found that governmental action that would result in the complete destruction of the property rights of secured creditors might implicate the takings clause, is inapposite as well. Like the liens in *Armstrong*, the liens at issue in *Security Industrial Bank* were treated as property under state law. *Security Industrial Bank*, 459 U.S. at 76 n.6.

Plaintiffs' reliance on *Carr v. United States*, 422 F.2d 1007 (4th Cir. 1970), is even more perplexing. In *Carr*, a federal employee who had been in a car accident with another federal employee, claimed that a statute that made a suit against the United States the employee's exclusive remedy unconstitutionally abrogated his common law right of action against his fellow employee for negligence. The court held that the employee had no interest entitled to constitutional protection because his accident occurred *after* the challenged statute was enacted. 422 F.2d at 1011. This, of course, does not mean that simply because plaintiffs' claims were filed *before* Section 802 was enacted that they have a vested property interest in those claims. Rather, as demonstrated above, the law in the Ninth Circuit is that a property right in a cause of action vests when the action has been reduced to final unreviewable judgment.

Moreover, Section 802 does not leave plaintiffs without a remedy to pursue for their claims. As the Government explained in its reply brief in support of its motion to dismiss or, in the alternative, for summary judgment in all actions against provider-defendants pursuant to Section 802 (*see* Dkt. 520 at 12), Section 802 merely precludes plaintiffs from seeking remedies for the alleged violations from a certain group of private entities (the provider-defendants). It does not apply to claims against Government defendants. (*Id.*, citing *Jewel v. NSA et al.*, No. 08-cv-4373 (N.D. Cal.)). Section 802 is therefore similar to the statute at issue in *Atmospheric Testing*, which provided that an action against the United States was the exclusive remedy for the plaintiffs' injuries. *Atmospheric Testing*, 820 F.2d at 986, 989. *See also Ileto*, 2009 WL 1272629, at * 14 (finding that by preempting certain categories of claims that meet specified requirements, immunity statute limited, but did not abolish, plaintiffs' ability to seek redress).

Nor does Section 802 effect a "total destruction" of plaintiffs' pending causes of action by "mandating their dismissal by the district court based solely upon the Attorney General's certification." (Dkt. 620-2 at 21). Section 802(a) creates a statutory defense for persons alleged to have assisted an element of the intelligence community, and provides that "a civil action may not lie" against such person, and "shall be promptly dismissed," if the "Attorney General certifies to the district court" that the provider assisted pursuant to a court order, statutory certification or directive, or a written request described in Section 802(a)(4), or did not assist at all. *See* 50 U.S.C. § 1885a(a)(1)-(5). Under Section 802, the Attorney General is responsible for certifying that the provider-defendants' participation or non-participation fits within one of those circumstances. *Id.* Then it is the Court's responsibility to determine whether, based upon the Attorney General's certification, at least one of the five circumstances described in Section 802(a) exists and is supported by "substantial evidence." *Id.* §§ 1885a(a); 1885a(b)(1). A case may be dismissed only after the Court has conducted this inquiry.

For all of the foregoing reasons, assuming, *arguendo*, the Court has jurisdiction to proceed, plaintiffs' takings claim fails as a matter of law.

## III. SECTION 802 DOES NOT VIOLATE THE SEPARATION OF POWERS.

Plaintiffs' argument that Section 802 violates the separation of powers by imposing a rule of decision on the district court (Dkt. 620-2 at 23-26) has already been briefed in the pending motion to dismiss or, in the alternative, for summary judgment in all actions against provider-defendants pursuant to Section 802. (*See* Dkt. 483 at 29-31; Dkt. 520 at 14-18). As the Government explained in that briefing, the prohibition against Congress prescribing a rule of decision in a pending case does not apply when Congress amends applicable law, by, for instance, imposing new legal standards, substituting remedies against the Government, or even eliminating a cause of action. (Dkt. 520 at 14-15, citing, *inter alia*, *Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211, 218 (1995); *Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 441 (1992)). The Government has explained at length why Section 802 constitutes an amendment of applicable law that does not mandate a rule of decision, even if its application results in the dismissal of plaintiffs' pending actions, refuting all of the points that plaintiffs repeat here. (Dkt. 520 at 16-18).[7/]

The Ninth Circuit's recent *Ileto* decision bolsters the Government's separation of powers argument. The *Ileto* court held that the challenged immunity statute did not violate the separation of powers because Congress amended applicable law by immunizing firearms manufacturers from most civil lawsuits for injuries inflicted by criminals who use their nondefective products. *Ileto*, 2009 WL 1272629, at * 9-10. By defining a "qualified civil liability action," that statute – like Section 802 – set forth a new legal standard; it did not compel results under old law. *Id.* at * 10.[8/]

[7] Plaintiffs have abandoned their due process claim. This claim fails, in any event, for the reasons stated in the Government's prior motion to dismiss briefing. (*See* Dkt. 520 at 21-25).

[8] The court also held that the challenged statute did not violate the plaintiffs' substantive or procedural due process rights. *Ileto*, 2009 WL 1272629, at * 10-13.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the second *McMurray* Complaint (Dkt. 1 Attach. #2 in 09-cv-0131-VRW).

May 22, 2009

Respectfully Submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

*s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

*s/ Marcia Berman*
MARCIA BERMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782; Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

*Attorneys for the Government Defendants*