1    MICHAEL F. HERTZ
     Acting Assistant Attorney General
2    DOUGLAS N. LETTER
     Terrorism Litigation Counsel
3    JOSEPH H. HUNT
     Director, Federal Programs Branch
4    VINCENT M. GARVEY
     Deputy Branch Director
5    ANTHONY J. COPPOLINO
     Special Litigation Counsel
6    MARCIA BERMAN
     Trial Attorney
7    U.S. Department of Justice
     Civil Division, Federal Programs Branch
8    20 Massachusetts Avenue, NW, Rm. 6102
     Washington, D.C. 20001
9    Phone: (202) 514-4782—Fax: (202) 616-8460

10   *Attorneys for the Government Defendants*

11

           **UNITED STATES DISTRICT COURT**

12

           **NORTHERN DISTRICT OF CALIFORNIA**

13

           **SAN FRANCISCO DIVISION**

14

| | |
|---|---|
| 15   IN RE NATIONAL SECURITY AGENCY ) | No. M:06-CV-01791-VRW |
|      TELECOMMUNICATIONS RECORDS ) | |
| 16   LITIGATION ) | **GOVERNMENT DEFENDANTS'** |
|      ) | **RESPONSE TO COURT'S ORDER** |
| 17   <u>This Document Solely Relates To</u>: ) | **TO SHOW CAUSE OF MAY 22, 2009** |
|      ) | **[Dkts. 620/90]** |
| 18   *Al-Haramain Islamic Foundation, Inc., et al.* ) | |
|      *v. Obama, et al.* (07-CV-109-VRW) ) | Date:         June 3, 2009 |
| 19   ) | Time:         2:00 pm |
|      ) | Courtroom:   6, 17th Floor |
| 20   ) | |
|      ) | Chief Judge Vaughn R. Walker |
| 21   ) | |
|      ) | |

22

23

24

25

26

27

28

---

    **Government Defendants' Response to Court's Order to Show Cause Dated May 22, 2009 [Dkts. 620/90]**
    ***Al-Haramain Islamic Foundation, Inc. v. Obama* (07-cv-109-VRW) (MDL06-cv-1791-VRW)**

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.   THERE IS NO BASIS FOR RULE 37(b)(2)(A) SANCTIONS
     AGAINST THE GOVERNMENT DEFENDANTS IN THIS CASE  . . . . . . . . . . . . . . . . 10

          A.   The Government Cannot be Sanctioned for Its Determination that
               Plaintiffs Lack a Need to Know Classified Information . . . . . . . . . . . . . . . . . . . 12

          B.   The Government Cannot be Sanctioned for Not Stipulating to or
               Proposing a Protective Order  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

          C.   The Court's Proposed Sanction of a Taking Alleged Facts as Established
               and Finding Liability Would Be Improper  . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## **TABLE OF AUTHORITIES**

**CASES**                                                                              **PAGE(S)**

*Al-Haramain Islamic Found. v. Bush,*
    451 F. Supp. 2d 1215 (D. Or. 2006), *rev'd,*
        507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Al-Haramain Islamic Found. v. Bush,*
    507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 20

*Al-Haramain Islamic Found. v. Bush,*
    564 F. Supp. 2d 1109 (N.D. Cal. July 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Al-Haramain Islamic Found. v. Bush,*
    595 F. Supp. 2d 1077 (N.D. Cal. Jan. 5, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Ashcroft v. Iqbal,* -, U.S. -
    2009 WL 1361536 (May 18, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cannon Partners, Ltd. v. Cape Cod Biolab Corp.,*
    225 F.R.D. 247 (N.D. Cal 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Commodity Futures Trading Commission v. Noble Metals Int'l.,*
    67 F.3d 766 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Computer Task Group, Inc. v. Brotby,*
    364 F.3d 1112 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18, 19

*Connecticut General Life Insurance v. New Images of Beverly Hills,*
    482 F.3d 1091 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Davis v. Fender,*
    650 F.2d 1154 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*Department of the Navy v. Egan,*
    484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Dickason v. Potter,*
    2007 WL 161004 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,19

*Farrah v. Monterey Transfer & Storage, Inc.,*
    555 F. Supp. 2d 1066 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fjelstad v. American Honda Motor Co.,*
    762 F.2d 1334 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fleck & Assoc., Inc. v. City of Phoenix,*
    471 F.3d 1100 (9th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gibson v. Chrysler Corp.,*
    261 F.3d 927 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Halco Engineering Co. v. Costle,*
    843 F.2d 376 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*Hyde & Drath v. Baker,*
    24 F.3d 1162 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinea,*
    456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 22

*J.F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.,*
    542 F.2d 1318 (7th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jorgensen v. Cassidy,*
    320 F.3d 906 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*L. Tarango Trucking v. County of Contra Costa,*
    202 F.R.D. 614 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Malone v. U.S. Postal Service,*
    833 F.2d 128 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Network Caching Technology LLC v. Novell, Inc.,*
    2003 WL 21699799 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Papagni v. Hammersmith Trust,*
    1999 WL 33292939 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Reynolds v. United States,*
    192 F.2d 987 (3rd Cir. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rubin v. Beckman,*
    727 F.2d 71 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Tequila Centinela v. Bacardi & Co. Ltd.,*
    242 F.R.D. 1 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

*Uniguard Security Insurance Co. v. Lakewood Engineering Mfr. Corp.,*
    982 F.2d 363 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Kahaluu Const. Co.,*
    857 F.2d 600 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,19

*United States v. National Medical Enterprises,*
    792 F.2d 906 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Reynolds,*
    345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Sumitomo Marine & Fire Ins. Co.,*
    617 F.2d 1365 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*Wanderer v. Johnston,*
   910 F.2d 652 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*Williams v. Texaco, Inc.,*
   165 B.R. 662 (D. N.M. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

## STATUTORY LAW

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

50 U.S.C. § 1806. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

50 U.S.C. § 1809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

## EXECUTIVE ORDER

Exec. Ord. 12,958, 60 Fed. Reg. 19825 (Apr. 17, 1995),
   as amended by Exec. Ord. 13,292, 68 Fed. Reg. 15315 (Mar. 24, 2003). . . . . . . . . 9-10, 13, 14

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. Rule Civ. P. 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. Rule Civ. P. 35(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. Rule Civ. P. 37(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. Rule Civ. P. 37(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. Rule Civ. P. 37(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

The Government regrets that the Court has now suggested that actions it has taken in this litigation may warrant sanctions. We respectfully but firmly disagree. As set forth more fully below, the imposition of discovery sanctions would be unjustified because the Government has not violated any Court order or otherwise acted in a manner warranting sanctions. The Government has merely declined voluntarily to agree to a protective order that would, in the Government's view, require disclosures that would irretrievably compromise important national security interests. That conduct cannot be a basis for sanctions. Nor has the Government violated any order requiring the production of documents or information. The Court has not imposed a protective order under which plaintiffs' counsel would be granted access to classified information or ordered the Government to produce classified information to plaintiffs' counsel. Thus, there is no basis for concluding under Fed. R. Civ. P. 37(b)(2) that the Government has failed to obey an order to provide discovery—much less for imposing a liability finding as a sanction.

The Government recognizes that the underlying dispute in this case raises the fundamental separation-of-powers question concerning whether the Court has the ultimate authority under the Foreign Intelligence Surveillance Act (FISA) to order the disclosure of state secrets to a private party over the Government's objection. The Government also recognizes that the Court has concluded that FISA does preempt the Government's authority to assert the state secrets privilege and, while we disagree with that ruling, we do not seek to re-litigate the matter in the context of the present discovery issue. But this is not an ordinary discovery dispute in an ordinary case. It concerns information that our nation's highest officials have determined must be protected, and these officials have submitted lengthy explanations for their reasoning. Indeed, the Ninth Circuit has already concluded, after conducting "a very careful" review of those explanations, that the basis for the privilege was "exceptionally well documented." *See Al-Haramain v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007). As the Ninth Circuit explained, the Government's "[d]etailed statements underscore that disclosure of information concerning the

1   Sealed Document and the means, sources, and methods of intelligence gathering in the context of
2   this case would undermine the government's intelligence capabilities and compromise national
3   security." *Id.* at 1204. Because the stakes are so high and the principle is so important, the
4   Government cannot agree to disclosure of classified information without a further opportunity
5   for appellate review of whether the FISA preempts the state secrets privilege and authorizes this
    Court to order such disclosure.

6           The Government does not take this position lightly. An assertion of the state secrets
7   privilege to preclude further litigation is an extremely significant step that requires in-depth
8   consideration and debate at the highest levels of our Government and may not be "lightly
9   invoked." *Al-Haramain*, 507 F.3d at 1196. In this case, however, as the Ninth Circuit already
10  has held, the Government's reasons for invoking the privilege are powerful and "exceptionally
11  well documented," and the Government's important interests should not be overridden prior to
12  further appellate review. Furthermore, even after the Ninth Circuit issued its decision, an
13  additional review was conducted at the highest levels of the Department of Justice to determine
14  whether continued invocation of the privilege was warranted in response to the plaintiffs' claims
15  under FISA. Based on that review, it is the Government's position that disclosure of classified
16  information—even under protective order—would create intolerable risks to national security.

17          For these reasons, as set forth further below, the imposition of Rule 37(b)(2) discovery
18  sanctions would be improper in this case, and the Government respectfully urges the Court to
19  pursue a way forward that balances the interests of all sides by allowing appellate review of the
20  significant questions at hand before the Government's privilege assertion is negated.
21  Specifically, the Government respectfully requests that this Court reconsider its decision not to
22  certify the case for interlocutory appeal. If the Court is not willing to do so, then the
23  Government suggests that the way to obtain resolution of this dispute would be for the Court to
24  issue an order over the Government's objection concerning the disclosure of classified
25  information to the plaintiffs' counsel, and then for the Government to consider its options for
26  appellate review of such an order.

The Government sets forth the background of prior proceedings at some length to provide a fuller context of the Court's May 22 Order to show cause as to whether the Government should be subject to sanctions.

Plaintiffs are the Al-Haramain Islamic Foundation of Oregon ("AHIF-Oregon"), an entity designated by the United States as a "Specially Designated Global Terrorist," and two U.S. citizens who aver that they have "business and other relationships" with AHIF-Oregon. *See* Complaint ¶¶ 4-6, 22 (Dkt. 1, Item #1 (07-cv-109-VRW)). Plaintiffs filed this action in February 2006 and allege that, in March and April 2004, they were subject to warrantless foreign intelligence surveillance authorized by the President, *see id.* ¶¶ 18, 19, and they seek to pursue various causes of action related to that alleged surveillance.

In June 2006, the Government moved to dismiss or for summary judgment based on an assertion of the state secrets privilege by the Director of National Intelligence that sought to protect from disclosure, *inter alia*, whether the plaintiffs were subject to the alleged surveillance as well as information contained in a classified document (the "Sealed Document") that inadvertently had been disclosed to the plaintiffs during administrative proceedings on the designation of the Al-Haramain Islamic Foundation of Oregon as a specially designated global terrorist. *See* Dkt. No. 59 (06-cv-274-KI)[1] (D. Or.) (Government motion and state secrets privilege assertion).

In September 2006, the United States District Court for the District of Oregon upheld the Government's state secrets privilege assertion with respect to any information confirming or denying whether plaintiffs' communications have been or continue to be intercepted—except with respect to communications allegedly reflected in the Sealed Document. *See Al-Haramain v. Bush*, 451 F. Supp. 2d 1215, 1224 (D. Or. 2006), *rev'd*, 507 F.3d 1190 (9th Cir. 2007). The court held that plaintiffs should be granted an opportunity to attempt to establish their standing

---

[1] This citation is to the District of Oregon docket, where the case was pending prior to transfer to this Court.

or a *prima facie* case as to any alleged surveillance reflected in the Sealed Document through special *in camera* procedures if necessary. *See id*. at 1226, 1229. The court thus declined to dismiss the case, but certified its decision for interlocutory review pursuant to 28 U.S.C. § 1292(b), *see id*. at 1233.

On November 16, 2007, the Court of Appeals reversed and upheld the Government's state secrets privilege assertion to protect from disclosure information concerning whether or not the plaintiffs had been subject to the alleged surveillance, as well as information contained in the Sealed Document. *See Al-Haramain*, 507 F.3d at 1202-04; *see also id.* at 1203 ("[W]e conclude that the Sealed Document is protected by the state secrets privilege, along with the information as to whether the government surveilled Al-Haramain."). As noted above, the Court found that the Government's detailed submission underscores that the disclosure of information concerning the Sealed Document and intelligence sources and methods at issue here "would undermine the government's intelligence capabilities and compromise national security." *Id.* at 1204. The Ninth Circuit went on to hold that, without the privileged information, plaintiffs could not establish their standing to litigate their claims. *See id.* at 1205. The Court of Appeals declined to decide a separate issue raised on appeal—whether Section 106(f) of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1806(f) (hereafter "Section 1806(f)") preempts the state secrets privilege[2]—and remanded for the district court to consider that issue and any proceedings collateral to that determination. *See id.* at 1205.

On remand, the Government filed a second motion to dismiss or for summary judgment and argued, *inter alia*, that Section 1806(f) does not preempt the state secrets privilege or otherwise apply to the circumstances presented here where a party seeks to discover whether they are subject to alleged surveillance, and that the FISA cannot be read to compel the Government to disclose (or risk the disclosure of) information concerning intelligence sources

---

[2] Section 1806(f) is entitled "In camera and ex parte review by district court" and resides within a section of the FISA that governs the "[u]se of information" obtained from electronic surveillance conducted pursuant to the FISA. *See* 50 U.S.C. § 1806.

and methods that the Government chooses to protect.  *See* Dkts. 432/17.[3]

On July 2, 2008, the Court denied the Government's second dispositive motion and concluded, *inter alia*, that FISA Section 1806 preempts the state secrets privilege.  *See In re: Nat'l Security Agency Telecomm. Records Litig., Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109, 1115-25 (N.D. Cal. July 2, 2008).  In its ruling, the Court did not direct that classified information be made available to plaintiffs' counsel for further Section 1806(f) proceedings.  On the contrary, the Court held that plaintiffs must first establish their standing. Specifically, the Court held that only a litigant who first establishes that they are an "aggrieved person" may take advantage of procedures under section 1806(f) of the FISA.  *See Al-Haramain*, 564 F. Supp. 2d at 1125, 1134.  In addition, in light of the Ninth Circuit's decision upholding the Government's state secrets privilege assertion, the Court precluded the plaintiffs from attempting to make this showing through the use of the classified Sealed Document that had been inadvertently disclosed to them, *see id.*, and stated that "[t]o proceed with their FISA claim, plaintiffs must present to the court enough specifics based on non-classified evidence to establish their 'aggrieved person' status under FISA."  *Id*.  The Court then dismissed plaintiffs' complaint without prejudice and permitted plaintiffs to amend within thirty days.

Plaintiffs then amended their complaint, *see* Dkts. 458/35, and relied on various public statements and reports in an attempt to establish that they were "aggrieved persons" subject to alleged surveillance and, thus, could invoke Section 1806(f) under the terms of the Court's July 2, 2008 ruling.  In response, the Government filed a third motion to dismiss or for summary judgment and argued principally that none of the information cited by the plaintiffs established their standing under Article III.  *See* Dkts. at 475/49.  Plaintiffs cross-moved to obtain discovery under FISA Section 1806(f), *see* Dkts. 472/46, and opposed the Governments' motion, *see* Dkts. 496/50, arguing, *inter alia*, that plaintiffs need only present a *prima facie* case based on circumstantial evidence that would create a reasonable inference they were "aggrieved" parties

---

[3]  The two docket citations are to the MDL docket (M: 06-1791-VRW) and the docket in this case (C 07-109-VRW).

who could invoke Section 1806(f) procedures.

On January 5, 2009, the Court denied the Government's third dispositive motion and ordered further proceedings in response to plaintiffs' motion for discovery under Section 1806(f). *Al-Haramain Islamic Found. v. Bush*, 595 F. Supp. 2d 1077, 1089 (N.D. Cal. Jan. 5, 2009). The Court held, *inter alia*, that plaintiffs' amended complaint sufficiently alleged plaintiffs' status as aggrieved persons to survive a motion to dismiss and proceed under Section 1806(f). *See id.* at 1082-86. The Court found that it may invoke FISA Section 1806(f) even where the Attorney General has not done so, and held that the procedures authorized by Section 1806(f) may be used to determine whether or not plaintiffs have Article III standing as "aggrieved persons" who were subject to electronic surveillance. *See id.* at 1086-88. The Court also held that "[u]nless counsel for plaintiffs are granted access to the court's rulings and, possibly, to at least some of defendants' classified filings, however, the entire remaining course of this litigation will be *ex parte*," and that "[t]his will deprive plaintiffs due process to an extent inconsistent with Congress's purpose in enacting FISA's sections 1806(f) and 1810." *Id.* at 1089.[4]

But the Court again did not order the disclosure of classified information to plaintiffs' counsel. Rather, the Court ordered only that "members of plaintiffs' litigation team . . . obtain the security clearances necessary to be able to litigate the case, including, but not limited to, reading and responding to the court's future orders." *Id.* The Court directed the Government to arrange for plaintiffs' counsel "to apply for TS/SCI clearance and [that it] shall expedite the processing of such clearances so as to complete them no later than Friday, February 13, 2009." *Id.* at 24.[5]

---

[4] The Court specifically disagreed with the Government's contention that, under *Department of the Navy v. Egan*, 484 U.S. 518, 529 (1988), the Executive branch has discretion to control access to national security information pursuant to the President's Article II powers. *See* 595 F. Supp. 2d at 1087.

[5] The Court also directed the Government to review all previous classified filings to determine whether any materials may now be declassified and report back to the Court within 45 days (*i.e.*, by February 19, 2009). *See* 595 F. Supp. 2d at 1089 (Order ¶ 3).

The Government appealed the Court's January 5 Order (*see* Dkts. 544/59) and also requested a stay of that Order pending appeal and certification of the Order for interlocutory review under 28 U.S.C. § 1292(b). *See* Dkts. 545/60. The Government advised the Court that the NSA Director has determined subsequent to the Court's January 5 Order that, under applicable executive orders, neither plaintiffs nor their counsel have a need for access to classified NSA information that has been (or would be) excluded under the state secrets privilege assertion, and we urged that any disclosure of classified information not occur prior to appellate review. *See* Dkts. 545/60 at 11-14; Declaration of Ariane E. Cerlenko, National Security Agency (Dkts. 545-2/60-2) ¶ 9.

At a case management conference on January 23, 2009, plaintiffs argued that the January 5 Order was not appealable on the grounds that it did not constitute a "final order" under the collateral order doctrine pursuant to 28 U.S.C. § 1291, and that the January 5 Order did not constitute an injunction under 28 U.S.C. § 1292(a)(1). *See* Transcript (Dkt. 67) at 4-10. The Court agreed with plaintiffs' position. *See id.* at 14. Then, by Order dated February 13, 2009, the Court denied the Government's motion to certify its January 5 Order. *See* Dkts. 562/71. The Court reiterated its finding that the January 5 Order was not appealable, *see id.* at 2, and stated that it "seeks from the government" implementation of the steps necessary to afford that both parties have access to the material upon which the court makes a decision, *see id.* at 3. The Court added that this is the procedure the January 5 Order "seeks to put in place," and directed the Government to inform the Court by February 27, 2009, how it intends to comply with the January 5 Order. *Id.* Thus, as matters stood at the time of the February 13 Order, the Court had not issued an order directing the Government to disclose classified information to plaintiffs' counsel but, rather, sought its agreement on procedures under which both parties would have access to classified information.

On February 27, 2009, the Court of Appeals dismissed the Government's appeal of the January 5 Order for lack of jurisdiction. *See* Dkt. 83. Also on February 27, 2009, the

Government again advised the Court that it continued to oppose the disclosure of classified information to plaintiffs' counsel in further proceedings under Section 1806(f) and requested that, if the Court were to order any disclosure, proceedings be stayed pending appeal of any such further order. *See* Dkts. 576/77.[6/]

The Court then issued an Order dated April 17, 2009, which directed the parties "to meet and confer regarding the entry of an appropriate protective order which shall be entered herein before the court rules on the merits." April 17, 2009 Order (Dkts. 600/84) at 2. The Court further ordered the parties to:

> [S]ubmit to the court a stipulated protective order. . . . If the parties are unable to agree on all terms, they shall jointly submit a document containing all agreed terms together with a document setting forth the terms about which they are unable to reach agreement and the respective positions of the parties with regard to each term. The court will then consider the submissions and enter a protective order under which this case may resume forward progress.

*Id.* (emphasis added).

Pursuant to that Order, the parties met and conferred and discussed at length the legal issues in dispute as well as the specific terms of plaintiffs' proposed protective order, but did not agree on the entry of such an order.

On May 15, 2009, the parties made a joint submission pursuant to the April 17 Order. Dkts. 626/89. That submission indicated that the parties met and conferred but had not reached agreement on the terms of a protective order. The Government set forth at length various points and authorities in support of its position that providing plaintiffs' counsel with access to classified information in the circumstances of this case would be unsupported by law. *See id.* at 12-28. The Government also set forth detailed objections to the plaintiffs' proposed order and explained why it was unable to agree to any terms of a protective order in the circumstances of this case. *See id.* at 21-27.

---

[6] The Ninth Circuit's dismissal of the Government's appeal of the January 5 Order was not a resolution of whether the Court may disclose classified information to plaintiffs' counsel under Section 1806(f) or that an order requiring disclosure would not be appealable, but simply a ruling that the January 5 Order was not appealable.

On May 22, 2009, the Court then issued its Order to show cause as to why the Defendants should not be sanctioned pursuant to "FRCP 37(b)(2)(ii)"[7/] for "failing to obey the court's orders." *See* Dkts. 620/90 at 3. The Court cited two aspects of the Government's alleged non-compliance with its prior orders. First, the Court noted that "suitability" determinations had been completed for two of plaintiffs' counsel for the receipt of classified information, but that "government officials in one or more defendant agencies, including the NSA Director (Doc. 626/89 at 16), are refusing to cooperate with the court's orders because, they assert, plaintiffs' attorneys do not "need-to-know" the information that the court has determined they do need to know." *Id.* Second, the Court stated that "Defendants have refused to agree to any terms of the protective order proposed by plaintiffs and have refused to propose one of their own." *Id.*

ARGUMENT

The Court's May 22 Order presents the question of whether a party can be sanctioned for its failure to agree to a course of action that the Court has declined to directly order. This Court has not ordered the Government to disclose classified information to plaintiffs' counsel. The Court has also not issued a protective order—either the one proposed by plaintiffs or another of the Court's choosing—under which plaintiffs' counsel would be granted access to classified information. Instead, the Court is considering whether to sanction the Government Defendants for not *agreeing* to either course. Such a sanction would be without foundation in the law. The Court may issue direct orders in a case, and it can sanction a party for not complying with those orders, but it cannot compel a party to agree to a position that it does not believe is proper as a matter of law, nor sanction that party for refusing to do so.

As set forth below, the President has by Executive Order authorized Executive branch officials to grant access to classified information. Such access is appropriate only where an agency official with the proper authority separately concludes that an individual has a demonstrated "need to know" classified information in connection with the performance of a

---

[7] The Court appears to be referring to Fed. R. Civ. P. 37(b)(2)**(A)**(ii) of the current version of Rule 37(b).

"governmental function" that is "lawful and authorized" by the agency. *See* Exec. Ord. 12,958, §§ 4.1(a), 4.2(a), 5.4(d)(5), 6.1(z), 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Exec. Ord. 13,292, 68 Fed. Reg. 15315 (Mar. 25, 2003). While the Court may seek to issue a direct order overriding that determination, the law does not support the imposition of sanctions against the Executive branch merely for *making* this determination. In addition, as also set forth below, the law does not support the imposition of sanctions against the Government for declining to agree to a protective order.

## I. THERE IS NO BASIS FOR RULE 37(b)(2)(A) SANCTIONS AGAINST THE GOVERNMENT DEFENDANTS IN THIS CASE.

The Court's May 22 Order to show cause proposes to sanction the Government pursuant to Rule 37(b)(2)(A)(ii) of the Federal Rules of Civil Procedure. Rule 37(b)(2)(A) states:

**Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions**

. . .

(**b**) **Failure to Comply with a Court Order**.

. . .

(2) *Sanctions in the District Where the Action Is Pending*.

(A) *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Sanctions under Rule 37(b)(2)(A) apply where a party "fails to obey an order to provide or permit discovery." Case law applying Rule 37(b)(2) demonstrates that the rule applies where

a party has failed to comply with direct court orders to provide discovery—for example, to appear at a deposition, to answer interrogatories, or to produce documents.[8] The definition of "order" subject to Rule 37(b) sanctions "has been read broadly" to include oral directions to produce discovery, but there still must be "some form of court order that has been disobeyed" for Rule 37(b) sanctions to apply. *See Uniguard Security Insurance Co. v. Lakewood Engineering Mfr. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); *see also Halco Engineering Co. v. Costle*, 843 F.2d 376, 379-80 (9th Cir. 1988).[9]

As noted above, the Court has ordered the Government Defendants to show cause why they should not be sanctioned for "failing to obey the court's orders" and cites two specific grounds for sanctions: (1) a "refusal to cooperate with the court's orders" based on the Government's determination that "plaintiffs' attorneys do not 'need to know' the information that the court has determined they do need to know"; and (2) a refusal to "agree to any terms of the protective order proposed by plaintiffs" and refusing to "propose one of their own." *See* Dkt. 630/90 at 3. No basis exists for Rule 37 sanctions in these circumstances. There has been no "failure to obey the Court's orders." In actuality, the Court has not issued an order to the

---

[8] *See, e.g.*, *Connecticut General Life Insurance v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007) (refusal to answer interrogatories and produce documents after order compelling discovery); *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112 (9th Cir. 2004) (same); *Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) (failure to produce documents after order compelling disclosure); *Commodity Futures Trading Commission ("CFTC") v. Noble Metals Int'l.,* 67 F.3d 766 (9th Cir. 1995) (failure to designate proper deposition witness after ordered to do so); *Wanderer v. Johnston*, 910 F.2d 652 (9th Cir. 1990) (failure to attend deposition or produce documents in response to order to compel); *Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981) (failure to answer interrogatories as ordered); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir. 1980) (same). The failure to comply with the terms of a protective order can also be sanctioned under Rule 37. *See United States v. National Medical Enterprises*, 792 F.2d 906, 910-11 (9th Cir. 1986).

[9] None of the type of orders specifically mentioned in Rule 37(b)(2)(A) is at issue here— *i.e.*, orders in connection with Rules 26(f) (discovery plan), Rule 35 (deposition examinations), or Rule 37(a) (compelling discovery in response to a motion)—and thus the basis for any sanctions here must arise from some other order issued by the Court. This Court has recognized that Rule 37 sanctions do not extend to general discovery disputes. *See Network Caching Technology LLC v. Novell, Inc.*, 2003 WL 21699799 at *3 (N.D. Cal. 2003); *Cannon Partners, Ltd. v. Cape Code Biolab Corp.*, 225 F.R.D. 247, 250 (N.D. Cal 2003).

Government that requires the production of discovery, including by overriding the Government's need to know determination or pursuant to any protective order. Moreover, even if the Court's prior orders are deemed to be "discovery orders" under Rule 37, a party cannot be sanctioned for refusing to voluntarily consent or stipulate to a course of conduct.

**A.     The Government Cannot be Sanctioned for Its Determination that Plaintiffs Lack a Need to Know Classified Information.**

The first ground identified by the Court as a basis for possible discovery sanctions is the Government's purported "refusal to cooperate" with the Court's prior orders. As to this alleged sanctionable conduct, the Court specifically identifies the Government's determination that plaintiffs do not have a need to know classified information. *See* May 22 Ord., Dkts. 620/90 at 3. Discovery sanctions are not available under Rule 37(b)(2)(A) for this reason. While the Court does not isolate the particular orders it is concerned about on the "need to know" issue, the May 22 Order appears to be referring generally to the Court's prior holdings of law that, under FISA Section 1806(f), it may override the Government's discretion to control classified information and make its own need-to-know determination for access to classified information. But the Government cannot be sanctioned for its determination that plaintiffs do not have a need to know classified information. This dispute is among the fundamental disagreements of law at issue in this case, and the Government's refusal to recede from its position is not sanctionable as a discovery violation under Rule 37(b) or otherwise.

The Government sets forth below each relevant prior Order of the Court and respectfully suggests that it violated none of them.

*July 2, 2008 Order:* In its Order of July 2, 2008, the Court addressed whether the Executive branch or Court has the authority to control access to classified information. *See Al-Haramain*, 564 F. Supp. 2d at 1120-2. In that discussion, the Court disagreed with the Government's contention that, under *Egan v. Department of the Navy*, 484 U.S. 518 (1988), the Executive branch controls access to classified information. *See id.* at 1121. But the July 2 Order is not a discovery order and it did not purport to direct the Government to produce any information. Although the Court disagreed with the Government's position, it ultimately

*dismissed* plaintiffs' complaint. *See* 564 F. Supp. 2d at 1137. Thus, the July 2 Order cannot form the basis for discovery sanctions.

*January 5, 2009 Order.* Similarly, in its Order of January 5, 2009, the Court again disagreed with the Government's argument, made in response to plaintiffs' motion to seek discovery under Section 1806(f), that any effort by the Court to invoke Section 1806(f) procedures and grant a moving party access to classified information would raise serious constitutional concerns. *See Al-Haramain*, 595 F. Supp. 2d at 1088. The Court denied the Government's third dispositive motion and ordered further proceedings in response to plaintiffs' motion for discovery under Section 1806(f) of the FISA, but at that stage only directed the Government to process plaintiffs' counsel for clearance suitability determinations, which the Government did.[10]

Subsequent to the January 5 Order, in connection with seeking a stay pending appeal of that Order and certification of an interlocutory appeal, the Director of the NSA determined that plaintiffs' counsel did not have a "need to know" classified information under applicable Executive Orders. *See* Cerlenko Declaration (Dkts. 545-2/60-2) ¶ 9. The Government explained that the granting of security clearance requires more than finding a person "suitable" to receive access to classified information after an investigation of their background. In addition, an agency that controls classified information must make a separate "need-to-know" determination that actually grants access to such information. *See* Cerlenko Declaration (Dkts. 545-2/60-2) ¶¶ 3-7. Specifically, an agency official must find that an individual has a demonstrated need for access to classified information in order to perform or assist in the performance of a governmental function. *See* Exec. Ord. 12,958, §§ 4.1(a), 4.2(a), 5.4(d)(5), 6.1(z).[11]

In this case, consistent with the Government's successful privilege assertion, the NSA

---

[10] The Government submitted a report on declassification review as also required by the January 5 Order.

[11] In making this determination, the President has instructed federal agencies to "ensure that the number of persons granted access to classified information is limited to the minimum consistent with operational and security requirements and needs." *See* Exec. Ord. 12,958 § 5.4(d)(5)(B).

Director determined, subsequent to the Court's January 2009 Order, that neither plaintiffs nor their counsel have a need for access to classified NSA information that has been (or would be) excluded under the state secrets privilege assertion. *See* Cerlenko Declaration (Dkts. 545-2/60-2) ¶ 9. The NSA Director further determined that it does not serve a governmental function, within the meaning of the Executive Order, to disclose the classified NSA information at issue in this case simply to assist the plaintiffs' counsel in representing the interests of private parties who have filed suit against the NSA and who seek to obtain disclosure of information related to NSA intelligence sources and methods. *Id.* This determination was not interposed to be obstructionist. As the Executive Order indicates, access to classified information may be provided only in order to perform a governmental function. If a need to know classified information were held to exist any time a private party filed a civil action challenging alleged classified matters and demanded a security clearance for their counsel to litigate their claims, the Executive branch's procedures for controlling access to national security information would be transformed into a sword to disclose that very information—not for a governmental purpose, but to serve a private litigant's interests.

Moreover, while a key dispute in this case concerns whether the Court can supersede the Government's need-to-know determination, it cannot be disputed that the Executive branch has authority under applicable Executive orders to *make* such a determination. *See* Exec. Ord. 12,958 §§ 4.1(a), 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Exec. Ord. 13,292, 68 Fed. Reg. 15315 (Mar. 24, 2003). And while the Court can issue an order that seeks to override the Executive branch's determination and direct a disclosure of classified information, it cannot impose discovery sanctions on the Government for applying its rules and regulations and exercising its authority to make a need-to-know determination. The Government did not violate any Court Order in deciding that plaintiffs' counsel do not have a need to know classified information, let alone a discovery order. The notion that it can now be subject to sanctions for affirming its position against access to classified information by plaintiffs' counsel is foreign to Rule 37—particularly where the Court has not yet issued an order that seeks directly to override the Government's determination and order access to classified information by plaintiffs' counsel.

*February 13, 2009 Order*:  The Government's response to the Court's Order of February

13, 2009, also presents no basis for entering discovery sanctions.  That Order denied the

Governments' motion for a stay pending appeal and to certify the Court's January 5 Order for

interlocutory appeal, *see* Dkts. 562/71 at 1-2, and to that extent does not constitute a discovery

order.  The Court also stated that it "seeks from the government" implementation of the steps

necessary to afford that both parties have access to the material upon which the court makes a

decision.  *See id.* at 2-3.  But that also is not an order to provide or permit discovery subject to

Rule 37(b)(2)(A).  Indeed, the Court did not direct the Government to do anything but, rather,

sought the Government's consent to the steps necessary to afford plaintiffs' counsel with access

to classified information.  In response, the Government explained at length that it objected to that

course of action.  *See* Dkts. 576/77.  Again, a party cannot be sanctioned for holding to its

position and refusing to consent to a course of action it opposes where it has not actually been

ordered to comply.  *See, e.g.*, *Tequila Centinela v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 4 (D.D.C.

2007) (court "cannot compel a party to voluntarily do something").  This is especially so where

the matter at issue is not a routine discovery dispute, but a significant separation of powers

dispute over the disclosure of classified national security information over the Government's

objection.

### B.       The Government Cannot be Sanctioned for Not Stipulating to or Proposing a Protective Order.

The Court also suggests imposing Rule 37(b)(2)(A) sanctions due to the Government's

refusal to agree to any terms of a protective order, and its refusal to propose such an order.  *See*

Dkt. 620/90 at 3.  This also cannot constitute grounds for Rule 37(b)(2)(A) sanctions.  The

Court's April 17 Order did not order discovery, order the disclosure of any information, or

compel the Government to enter into a protective order.  The April 17 Order directed the parties

to meet and confer on whether they would *agree* to a stipulated protective order and, if they were

unable to agree on all terms, to submit a joint document setting forth their position about that

which they were unable to reach agreement.

The Government complied with the April 17 Order.  The parties met and conferred as

directed but did not reach agreement on the terms of a protective order. In a joint submission to the Court, the Government respectfully stated that it remains in fundamental disagreement about the disclosure of classified information to plaintiffs' counsel and, thus, could not consent to terms of a protective order under which plaintiffs' counsel would be permitted such access. *See* Dkts. 626/89 at 12. The Government explained that this dispute is of extraordinary constitutional significance—concerning whether the Executive's successful assertion of privilege to protect state secrets has been preempted, and whether the disclosure of that very information should now occur over the Government's objection—and stated our view that such a course would be in grave error. *Id.* at 13. The Government did not propose its own protective order, nor agree to any terms of plaintiffs' proposed order because, as we explained at length, in the circumstances of this case, any disclosure of classified information to plaintiffs' counsel, even under seemingly secure terms and conditions, would abrogate the state secrets privilege and transform the constitutional allocation of powers by permitting district courts to supersede the Executive Branch's determinations (made at the highest levels of Government) that plaintiffs' counsel do not possess the required "need to know" this information. *See id.* at 26-27.

While the Government appreciates that the Court would have preferred that the Government consent to a protective order, the Government's decision not to agree to or propose a protective order is not sanctionable. As Judge Lamberth of the District of Columbia recently put it, courts do not "have the power to compel a party to sign a Stipulated Protective Order." *Tequila Centinela*, 242 F.R.D. at 4.

> A stipulation is defined as a "voluntary agreement between opposing parties concerning some relevant point." Black's Law Dictionary 1427 (Deluxe 7th Edition 1999) (referring to the second listed definition of the word stipulation). Since a stipulation is "voluntary," this Court cannot compel a party to voluntarily do something. *See id.* The proper relief this Court could grant would be to issue a Protective Order. Fed. R. Civ. P. 26(c).

*Id.*[12] Indeed, the normal course of litigation is for the parties to present their respective positions

_____

[12] *See also J.F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318 (7th Cir. 1976) (holding that Rule 16 does not authorize a court to force a party to stipulate to facts to which they do not voluntarily agree).

and for the Court to then order how the case will proceed. A party cannot be sanctioned for refusing to agree to a course of conduct that it opposes which has not been reduced to an order directing compliance.

### C. The Court's Proposed Sanction of a Taking Alleged Facts as Established and Finding Liability Would Be Improper.

While there is no basis for any sanction against the Government in this case, the Court's suggestion that the Government should be foreclosed from "opposing the liability component of plaintiffs' claim under 50 U.S.C. § 1810—that is, from denying that plaintiffs' are 'aggrieved persons' who were subjected to electronic surveillance," and that liability for damages under 50 U.S.C. § 1810 be deemed as established, *see* Dkts. 620/90 at 3,[13] is unwarranted. The Government's privilege assertion has successfully protected facts that would be relevant to whether or not plaintiffs have standing, and whether the Government is liable for the claims alleged. The Court has not issued an order requiring the disclosure of these facts in order to permit an adjudication of standing or liability, and thus the Government has not violated or refused to cooperate in any such order. Under these circumstances, taking as established the very allegations of surveillance and imposing a liability sanction would be wholly improper.

The Court's May 22 Order cites "Rule 37(b)(2)(ii)"[14] as the basis for possible sanctions here, which provides that a court may prohibit "the disobedient party from supporting or opposing designated claims of defenses, or from introducing designated matters in evidence." *See* Fed. R. Civ. P. 37(b)(2)(A)(ii). The Court's Order proposes as a sanction: (i) that the Government be barred from "opposing the liability component of plaintiffs' claim for damages," (which the Court describes as barring the Government from denying that plaintiffs are "aggrieved persons" who were subjected to electronic surveillance); and (ii) that liability for

---

[13] The Government holds to its position that FISA Section 1810, which must be based on an alleged violation of FISA Section 1809, *see* 50 U.S.C. § 1809, does not waive sovereign immunity for damage claims against the United States. *See* Dkts. 432/17 at 18-22 and Dkts. 446/29 at 9-12 (Government's prior submissions on whether Section 1810 waives sovereign immunity).

[14] Again, we assume the Court is referring to Rule 37(b)(2)(A)(ii).

damages be deemed as established and the case proceed to the damages phase of the litigation. *See* Dkts. 620/90 at 3. Thus, the proposed sanction would take plaintiffs' allegations of their "aggrieved" status as established and foreclose any opposition to their claim of liability. The Ninth Circuit has indicated that such sanctions may be granted only in "extreme circumstances" where the discovery violation is "due to wilfulness, bad faith, or the fault of the party." *See United States v. Kahaluu Const. Co.*, 857 F.2d 600, 602-03 (9th Cir. 1988) (addressing standard for Rule 37(b)(2) sanctions where allegations are taken as established and a defendant is barred from opposing a claim); *see also CFTC v. Noble Metals Int'l.,* 67 F.3d at 770-71 ("Sanction orders taking the plaintiff's allegations as established and awarding judgment on that basis are 'the most severe penalty,' and are authorized only in 'extreme circumstances.'") (citations omitted); *see also Dickason v. Potter*, 2007 WL 161004 at *7 (N.D. Cal. 2007) (same).[15] No such circumstances remotely exist here. To the contrary, the Government has simply adhered to its position that classified information may not be disclosed to the plaintiffs' counsel, and declined to consent voluntarily to another approach under a protective order, which the Court has not actually entered.[16]

Moreover, in deciding whether to impose sanctions that take allegations as established

---

[15] *See also Papagni v. Hammersmith Trust*, 1999 WL 33292939 at * 5 (N.D. Cal. 1999), Laporte, M.J.) ("The sanctions of taking the allegations in the complaint as established (*see* 37(b)(2)(A)) and precluding evidence so that the non-complying party cannot support its defenses or oppose plaintiff's claims (*see* 37(b)(2)(B)) are comparable to an entry of default or dismissal since "they represent the most severe penalty that can be imposed.") (citing *Kahaluu*, 857 F.2d at 603); *see also L. Tarango Trucking v. County of Contra Costa*, 202 F.R.D. 614, 619 (N.D. Cal. 2001) (Orrick, J.) (same). Such default sanctions may be imposed only in extreme circumstances. *See*, *e.g.*, *Computer Task Group*, 364 F.3d at 1115-1116 (consistent, intentional, and prejudicial practice of obstructing discovery by not complying with repeated court orders); *Sumitomo Marine*, 617 F.2d at 1369-70 (preclusion of evidence sanction that was "tantamount to dismissal" applied only after 18 months of delay by Government in responding to court-ordered discovery); *Wanderer v. Johnston*, 910 F.2d at 653-55 (repeated inexcusable obstructions of every type of discovery attempted); *Davis v. Fendler*, 650 F.2d at 1157-61 (persistent unresponsiveness and delaying tactics in response to order compelling discovery).

[16] While the Court's May 22 Order does not propose sanctions under the court's "inherent powers," a finding of liability likewise could not be rendered under that authority absent "extreme circumstances." *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985); *see also Halco Engineering Co.*, 843 F.2d at 380-82.

and foreclose a party from defending a claim, a court must consider several factors, including the availability of lesser sanctions. *See Kahaluu*, 857 F.2d at 603; *see also Dickason*, 2007 WL 161004 at * 7.[17/]  In this case, the less drastic sanction would be for the Court to enter a protective order over the Government's objection.  The Government does not consent to that or any sanction, nor to the entry of a protective order in this case.  We simply note that if the Court wishes to sanction the Government for not agreeing to a protective order it could simply impose one directly rather than imposing a sanction of liability on the ground that the Government did not voluntarily agree to a protective order.  *See Tequila Centinela*, 242 F.R.D. at 4 (court can enter a protective order where no stipulation reached).  Such a "lesser" sanction would also relate more specifically to the conduct that is being sanctioned, *i.e.*, the Government's refusal to agree to the terms of a protective order.  *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (sanction must relate specifically to the claim at issue in an order to provide discovery); *see also Kahaluu*, 857 F.2d at 602 (same).[18/]

More fundamentally, the imposition of a sanction whereby facts concerning alleged surveillance are taken as established and liability is imposed would be especially inappropriate in

---

[17]  *See also Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994) (to determine whether the district court fulfilled the obligation of considering less restrictive sanctions, the reviewing court examines whether the court (1) explicitly discussed the feasibility of less drastic sanctions and explained why alternative sanctions would be inappropriate, (2) implemented alternative sanctions before ordering dismissal, and (3) warned the party of the possibility of dismissal before actually ordering it); *see also Malone v. U.S. Postal Service*, 833 F.2d 128, 131-32 (9th Cir. 1987).  We note that at no time prior to the May 22 Order did the Court provide any notice that, if the Government did not consent to a protective order, it would face the imposition of severe sanctions.  *See Computer Task Group*, 364 F.3d at 1116-17 (sufficient notice provided that refusal to cooperate would result in severe sanction of dismissal).

[18]  Other factors for the imposition of severe sanctions are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits.  *Kahaluu*, 857 F.2d at 603; *Computer Task Group*, 364 F.3d at 1115; *see also Dickason*, 2007 WL 161004 at * 7.  None of these factors warrant sanctions where the Government has not disobeyed an order to provide discovery.  Moreover, after initially dismissing plaintiffs' complaint on remand, the Court did not otherwise order that the case proceed until January of 2009 and, thus, the Government's position has caused no undue delay.  Also, significant public policy interests weigh in favor of protecting national security information as well.

light of the Ninth Circuit's holding that "disclosure of the information concerning the Sealed Document and the means, sources and methods of intelligence gathering in the context of this case" —that is, the very information this Court seeks to have disclosed to Plaintiffs' counsel— "would undermine the government's intelligence capabilities and compromise national security." *Al-Haramain*, 507 F.3d at 1204. In most discovery disputes as to which Rule 37(b)(2)(A) sanctions apply, the sanctioned party has lost its effort to protect information and has been compelled to provide the demanded discovery. Here, in contrast, the Court would be sanctioning the Government in circumstances where the information at issue has been protected from disclosure before any further appellate review on the question of whether that successful privilege assertion is preempted by the FISA. So far as the Government has been able to determine since the Court's May 22 Order was issued, there appears to be no precedent for imposing sanctions that take allegations as established, foreclose a party from defending a claim, and impose liability, where that party has declined to *consent* to procedures for the disclosure of information as to which a privilege assertion has been upheld and in the absence of an actual disclosure order.

In fact, the Court is now embarked on the same procedural course that the district court undertook in *United States v. Reynolds*, 345 U.S. 1 (1953). There, the district court had ordered the Government to produce documents over which it had asserted the state secrets privilege. After the Government declined, the court entered an order, under Rule 37(b)(2)(i), that facts on the issue of negligence in that case would be taken as established in plaintiffs' favor. Then, after a hearing to determine damages, final judgment was entered for the plaintiffs. *See Reynolds*, 345 U.S. at 530-31; *see also Reynolds v. United States*, 192 F.2d 987, 998 (3rd Cir. 1951) (upholding entry of Rule 37(b)(2) sanctions). Although the Supreme Court did not address imposition of sanctions, the outcome of *Reynolds*—reversal of the entry of Rule 37 sanctions and upholding the state secrets privilege—indicates that the protection of state secrets should not be treated as a sanctionable action.

Should the Court proceed to deem standing and liability as established, it would effectively be rendering an advisory opinion unmoored from the actual facts. But unlike in

ordinary civil discovery, the information at issue here concerns classified national security matters, and taking allegations about such matters as "established" would still be inappropriate. A court privy to the actual facts should know whether or not there was any basis to proceed, and its attempt to do so on a hypothetical basis would be fraught with the risk of confusion and disclosure as to what the actual facts may be.

Moreover, in this case, the Court would be assuming the very threshold issue of whether it has Article III subject-matter jurisdiction based upon "taking as established" plaintiffs' allegation that they are "aggrieved persons" who were subjected to the alleged unlawful surveillance. We submit there is no basis in law to proceed in this fashion as a sanction for the Government's refusal to consent to the disclosure of information related to standing that has been protected thus far in this case, particularly where that disclosure has never actually been ordered by the Court. Indeed, there is a serious question as to whether the Court has the power to establish plaintiffs' standing as a discovery sanction.

Standing is an essential part of the case-or-controversy requirement of Article III and goes to the Court's subject-matter jurisdiction. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *Fleck & Assoc., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir.2006). "Subject-matter jurisdiction cannot be forfeited or waived . . . ." *Ashcroft v. Iqbal*, – U.S. –, 2009 WL 1361536, at * 8 (May 18, 2009); *see also* Bauxites, 456 U.S. at 702. In *Bauxites*, the Supreme Court upheld a discovery sanction that deemed as established facts that formed the basis for personal jurisdiction over a defendant. In doing so, the Court distinguished between personal jurisdiction and subject-matter jurisdiction, and strongly suggested that a court could *not* find facts necessary to support its subject-matter jurisdiction as a discovery sanction. *See* 456 U.S. at 702-03 (in contrast to personal jurisdiction, no action of the parties can confer subject-matter jurisdiction upon a federal court). *See also Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir. 1984) (subject-matter jurisdiction cannot be created by estoppel, even as a sanction for defendant's misconduct, citing *Bauxites*); *Farrah v. Monterey Transfer & Storage, Inc.*, 555 F. Supp. 2d 1066, 1069 (N.D. Cal. 2008) (same); *Williams v. Texaco, Inc.*, 165 B.R. 662, 669 (D. N.M.

1994) ("a discovery sanction under Rule 37(b)(2)(B) cannot be used to confer subject matter jurisdiction that a court might not otherwise possess."). *But see Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (citing *Bauxites* and stating, in dicta, "[a]lthough we have not found a case directly on point, we see no reason why a court cannot, in an appropriate case, sanction a defendant who refuses to respond to appropriate discovery requests on a fact relevant to subject matter jurisdiction by entering an order establishing that fact as true."). The Supreme Court has clearly rejected the exercise of "hypothetical jurisdiction" for Article III standing purposes. *See Steel Co.* 523 U.S. at 101 ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment-which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning."). Exercising such jurisdiction as a sanction would lack any firm foundation in the law.

Finally, the "deeming" of liability as a sanction would not ultimately resolve the dispute over whether the disclosure of classified information would be at risk or required in further litigation over damages. As with liability, the facts related to whether or not plaintiffs are entitled to damages are also encompassed within the Government's privilege assertion— including facts such as whether any of the plaintiffs have been subject to alleged surveillance and, if so, when, how, under what authority, and for how long. The Government must continue to oppose the disclosure of state secrets in any further proceedings, and the present dispute is therefore apt to be replicated (with all the same issues) during the damages phase. Thus, entering a sanction of liability will serve no apparent purpose where the fundamental question of access will remain unresolved.

The United States again respectfully urges the Court to consider that the best way out of the present dispute, in which the position of all sides is preserved, would be to permit appellate review over the fundamental and significant separation of powers questions presented before any disclosure or risk of disclosure in further proceedings. The Government therefore asks the Court to recognize that the imposition of discovery sanctions is not a lawful, appropriate, or productive alternative.

## CONCLUSION

For the foregoing reasons, the Court should not enter discovery sanctions against the Government Defendants pursuant to Rule 37(b)(2)(A)(ii) or any other authority.

Respectfully Submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director


_____*s/ Anthony J. Coppolino*_____
ANTHONY J. COPPOLINO
Special Litigation Counsel

_____*s/ Marcia Berman*_____
MARCIA BERMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*