Pages 1 - 47

United States District Court

Northern District of California

Before The Honorable Vaughn R. Walker

In re: National Security Agency Telecommunications Records Litigation, ) No. C06-1791 VRW

San Francisco, California
Wednesday, June 3, 2009

**Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff: Eisenberg And Hancock, LLP
1970 Broadway, Suite 1200
Oakland, California 94612
**By: Jon B. Eisenberg, Esquire**
**William Hancock, Esquire**

Steenson Schumann Tewksbury Creighton and Rose, PC
500 Yamhill Plaza
815 S.W. Second Avenue
Portland, Oregon 97204
**By: J. Ashlee Albies, Esquire**

Also Present at Plaintiff Counsel Table: Alan Kabot (Interested Party)

(Appearances continued on next page.)

***Reported By:*** ***Sahar McVickar, RPR, CSR No. 12963***
***Official Reporter, U.S. District Court***
***For the Northern District of California***

(Computerized Transcription By Eclipse)



Dockets.Justia.com

**Appearances, continued:**

For Plaintiff:

Law Office of Steven Goldberg
205 S.E. Spokane Street, Suite 300
Portland, Oregon 97202
**By: Steven Goldberg, Esquire**
**(Telephonically)**

Thomas H. Nelson & Associates
P.O. Box 1211
Welches, Oregon 97067
**By: Thomas H. Nelson, Esquire**

For Defendant:

United States Department of Justice
Civil Division
20 Massachusetts Avenue, N.W., Rm. 7344
Washington, DC 20530
**By: Anthony Joseph Coppolino, Esquire**

**Office of the General Counsel**
National Security Agency
9800 Savage Road
Ft. George Meade, Maryland 20755
**By: Timothy Stinson, Esquire**

**---o0o---**

**Wednesday, June 3, 2009** **2:00 p.m.**

**P R O C E E D I N G S**

***THE CLERK:*** Calling MDL No. 06-1791, in re: National Security Agency Telecommunications Records Litigation.

This hearing is an order to show cause in the matter of 07-109, Al-Haramain Islamic Foundation versus George Bush.

Appearances.

***MR. EISENBERG:*** Good afternoon.

Jon B. Eisenberg for Al Haramain Islamic Foundation, Wendell Belew, and Asim Ghafoor.

And with me today, Ashlee Albies, John Meltzer, Bill Hancock, and Alan Kabot.

***THE COURT:*** Very well, good afternoon. Mr. Eisenberg and all.

***MR. COPPOLINO:*** Good afternoon, Your Honor.

Anthony Coppolino for the United States defendants and Timothy Stinson, National Security Counsel's Office.

***THE COURT:*** Very well. Good afternoon, Mr. Coppolino.

Well, Counsel, I've read your papers and now have a much better sense of that old expression about ships passing in the night. So, I see the two positions that you're both advocating with respect to how we proceed: Mr. Coppolino, of course, wants to hightail it over to the Court of Appeals, where he's been a couple of times previously, maybe three

times, and Mr. Eisenberg, are you proposing, basically, two, possibly three scenarios for resolving this matter?

And having read your respective positions, it's my inclination to pursue the second option or second scenario that Mr. Eisenberg has set forth in his memorandum addressing the appropriateness of how we move the case along to a resolution, so that it can, at some appropriate point, go to the Court of Appeals in a posture that the Court of Appeals will be able to deal with it. And, it does seem to me that Mr. Eisenberg's second scenario, as he's described it, is an appropriate course of action.

So, I assume you will not disagree with that, Mr. Eisenberg?

**(Laughter.)**

***MR. EISENBERG:*** Well, Your Honor, I would like to get some clarification on that and add a possible three-and-a-half scenario.

***THE COURT:*** I see.

***MR. EISENBERG:*** I would like to discuss, Your Honor, the issue of sanctions a little more thoroughly, which we addressed briefly in your --

***THE COURT:*** You did address that briefly. Basically, you were seeking expenses at this juncture.

***MR. EISENBERG:*** Yes, that is the only sanction we're seeking at this juncture: attorneys' fees.

***THE COURT:*** I'll certainly give you an opportunity to add a wrinkle, as it were, to your proposal, and, of course, to hear Mr. Coppolino with respect to his position.

***MR. EISENBERG:*** Who shall go first, Your Honor?

***THE COURT:*** I beg your pardon?

***MR. EISENBERG:*** Who would you like to speak first, Your Honor?

***THE COURT:*** Well, since I rather was inclined to agree with you before you --

**(Laughter.)**

***THE COURT:*** -- threw me a curve, I should probably hear you first.

***MR. EISENBERG:*** The only curve is this, Your Honor: In our second scenario, we had posited the possibility of a sanction precluding further evidence from being submitted on a motion for summary judgment on standing. Mr. Coppolino has indicated in his move -- in his response to the order to show cause, that he would challenge a discovery sanction related to standing on appeal.

We would prefer to avoid such a challenge because we feel it would be a sidetrack. We do not feel a discovery sanction prohibiting the Government from presenting evidence on the issue of standing is necessary because we believe this Court can decide standing based on the existing evidence and argument before it with no further ado.

We had suggested in our filing last Friday that we proceed by filing a motion for summary judgment on standing and liability; I would like to amend that slightly to propose that Your Honor simply rule on standing based on the existing evidence and arguments on the pending motion under 1806(f) of FISA, which permits a determination of the legality of surveillance.

***THE COURT:*** You'll have to make a motion to that effect, will you not?

***MR. EISENBERG:*** I believe the motion has been made, it's the motion under 1806(f). And we did brief this last fall when we made that motion. One of our scenarios at the time to Your Honor was that you simply agree to find standing or adjudicate standing on this motion itself.

Let me read a portion of 1806(f) on which we believe you could proceed to do that. It's the portion that says in (f): "The Court may review in camera and ex parte the materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."

And then, looking to 1806(g), it refers to a determination pursuant to subdivision (f) of the section that the surveillance was not lawfully authorized or conducted.

So, actually, I believe this Court can resolve the issue of standing, Article 3 standing, on a motion under

1806(f) and pursuant to 1806(f) and (g).

***THE COURT:*** Well, isn't -- isn't the question -- or, isn't the question that would be confronted by the Court whether the discovery and disclosure materials on file and many affidavits that may be filed by either side shows that there's no genuine issue of a material fact --

***MR. EISENBERG:*** Yes.

***THE COURT:*** -- with respect to standing and thus liability? And, in order to precipitate a ruling on that question, don't we have to have a motion under Rule 56?

***MR. EISENBERG:*** I thought we could do it under 1806(f); I'm certainly prepared to do it under Rule 56.

My concern is this: My concern is that the Government should not be submitting yet more classified evidence that we can't see. We are prepared for this Court to rule on the evidence before it, classified and unclassified, without us having access to the sealed document for classified evidence that the Government has submitted.

What we're concerned about is the possibility of yet more classified evidence being submitted by the Government in opposition to our motion for summary judgment. We would like to be able to avoid that; the question is how.

***THE COURT:*** Well, isn't the situation this: Obviously, if, in response, the Government files nonclassified information, it's in the public record. Do you have access to

it?

**MR. EISENBERG:** That's easy.

**THE COURT:** In the event the Government files classified information, then a protective order along the lines that has been proposed could be entered.

And, I suppose I need to make a decision whether or not, if the Government files classified information, it should be produced to the plaintiffs pursuant to the protective order so that they may review it. It's been my strong, strong disinclination throughout these proceedings to rule on evidence, material, as to which both sides do not have access.

**MR. EISENBERG:** Um-hmm.

**THE COURT:** I don't see how we can have a judicial proceeding in which one side has access to information that it gives to the Court, but not its adversary. That just seems to me that's completely foreign to any kind of a judicial process.

**MR. EISENBERG:** Well, we would prefer to avoid that for two reasons, first of all.

**THE COURT:** I beg your pardon?

**MR. EISENBERG:** We would prefer to avoid that for two reasons. First of all --

**THE COURT:** You say avoid?

**MR. EISENBERG:** Having to litigate this case blind.

**THE COURT:** Yeah, no, I understand. And it's been my strong inclination to agree with you on that point.

**MR. EISENBERG:** The problem that I'm grappling with now, and have been grappling with since Your Honor's order of last Friday, is how do we deal with the Government submitting more classified evidence in opposition to summary judgment?

If the Government does that, then -- and Your Honor determines, as I think would be necessary, that we should have access to that information under a protective order, I assure you, the Government will attempt to appeal your issuance of a protective order, we will be back in the Court of Appeals arguing whether or not that is an appealable ruling. Three years and three months is long enough; I'd really like to find a quick way to adjudicate the matters of this case without a trip, or two, or three, to the Court of Appeals.

So, what do we do if the Government files classified information? Is there a way of us dealing with that without more litigation in the Court of Appeals, which I think the Court of Appeals has already indicated they are not particularly interested in.

**THE COURT:** Well, I don't know that they are not interested, I think they are not interested in the case in its present posture. I think that --

**MR. EISENBERG:** Well, there --

**THE COURT:** I suspect the Court of Appeals is interested in the case, Mr. Eisenberg.

**MR. EISENBERG:** They are very interested. What I

meant to say: they are not interested in seeing the case back before them right now.

I want to point out that they didn't just -- in dismissing the appeal last February 27th, I believe, they did not just rule that the January 5th order was non-appealable; they also rejected a request by the Government to treat their appeal as a petition for a writ of mandamus. The Ninth Circuit could have taken this case, and it justifies the preemption on mandamus jurisdiction. The Ninth Circuit said, no. I think the Ninth Circuit has made clear that, as interested as they are in this case, it's not time for appellate review.

I would like to see this case go up on appeal pursuant to be more consistent with the one final judgment rule, the notion that there shall not be piecemeal appellate litigation of case.

***THE COURT:*** Well, if we proceed along the lines that I have mentioned, you file a Rule 56 motion --

***MR. EISENBERG:*** Um-hmm.

***THE COURT:*** And it is clear that in the event the Government files a response that includes classified information, if it is clear that that information will be disclosed to plaintiff's counsel pursuant to a protective order, then the Government's in a position to make a choice --

***MR. EISENBERG:*** Um-hmm.

***THE COURT:*** -- whether the issues here are resolved

on information in the public record, or whether there are going to be additional materials. But those materials would be materials that would be available to plaintiff's counsel for plaintiff's counsel's review and appropriate response.

***MR. EISENBERG:*** Well, Your Honor, in -- you know, one solution to this problem -- it might not be a problem at all. I can't imagine what new evidence the Government might want to introduce at this late date. Maybe we need to hear from Mr. Coppolino whether he would wish to present any further classified evidence in opposition to summary judgment. If he says no, we don't have a problem here.

***THE COURT:*** Well, he may not be in a position to make that decision right now. And, he may have to consult with his client.

***MR. EISENBERG:*** That's possible. It would be interesting to know.

**(Laughter.)**

***MR. EISENBERG:*** Maybe we won't know today.

***THE COURT:*** Well, you know, clients are sometimes difficult, Mr. Eisenberg, I'm sure you've discovered that in your practice.

**(Laughter.)**

***MR. EISENBERG:*** I have learned that time and again.

**(Laughter.)**

***MR. EISENBERG:*** I would like to avoid the issuance

of a sanction that precludes him from presenting evidence on standing, simply because I would like to avoid having to litigate that issue in the Ninth Circuit and perhaps beyond. Aside from that, I guess we're, as is always the case, in your hands as to where to go from here.

**(Laughter.)**

***MR. EISENBERG:*** What more can I say?

**(Laughter.)**

***THE COURT:*** Ahh, yes.

***MR. EISENBERG:*** You're the judge, Your Honor.

**(Laughter.)**

***MR. EISENBERG:*** I just wanted to make my concerns clear.

***THE COURT:*** All right, well, I may come back to you after I've heard from Mr. Coppolino.

Mr. Coppolino, you've heard our -- heard the discussion with Mr. Eisenberg; what are your thoughts?

***MR. COPPOLINO:*** Well, if I'm following what you and Mr. Eisenberg are suggesting, Mr. Eisenberg's option two, let me say a few words about that, because I think that is problematic from the Government's standpoint. And, I guess, I would just say, you know, I would reserve a broader argument, in general, in response to the Court's order to show cause, but let me just address his option two.

***THE COURT:*** You think option one is less

problematic?

***MR. COPPOLINO:*** Do I think it's less problematic?

***THE COURT:*** Yes.

***MR. COPPOLINO:*** No, no. I mean, when you look at -- I think there are four options. Their first three, option one: protective order; option two: which he has here which we are going to discuss; options three: default judgment, which Mr. Eisenberg has indicated he would prefer not to -- in his papers, he indicated he would prefer not to have a sanction as a default judgment, and then I think he's just indicated he would prefer not to have a similar sanction as the taking evidence standard, but I thought I heard him say that.

We have opposed option one, proceeding under a protective order, for all of the reasons set forth in the joint submission submitted a couple of weeks ago.

***THE COURT:*** Right.

***MR. COPPOLINO:*** But option two, and I'm not sure, maybe the Court is aware of this, but it is, in some ways worse, and I'll tell you why, as I understand it.

It's not the Court's proposed sanction of taking facts as established, that is, taking the allegation of that there are aggrieved parties that had been subject to surveillance as assumed, if you will, as a sanction for no -- for the Government's position that it declines to disclose information: It's protected subject to its privilege

assertion.

As I read it, and I could be wrong, but as I read it, this option would allow the Court to consider the information in the sealed document, that is, the actual facts, if you will, of whether or not the plaintiffs were subject to the alleged surveillance in deciding --

***THE COURT:*** That's not the way I read it.

***MR. COPPOLINO:*** Okay, well then, that's the point I needed to clarify.

***THE COURT:*** No, as I read it option two, as long as there is nothing further filed, it would be a decision by means of summary judgment on evidence, and only the evidence in the public record.

***MR. COPPOLINO:*** Okay, well, I think that's that different from their option two.

***THE COURT:*** I beg your pardon?

***MR. COPPOLINO:*** I think that's different from option two.

Mr. Eisenberg, when I'm finished, can address that, but he says, "In the plaintiff's view, facts essential to their Article 3 standing are demonstrated not only by the sealed document," we dispute that, "which the Court has now reviewed, but also the evidence that plaintiffs have submitted on the public record."

And we have already had that go-round on their

public record evidence. That -- it says, "Now that the Court has reviewed the sealed document, the evidence submitted in connection with the first amendment complaint and plaintiff's arguments on how the evidence -- on how the evidence, including a reference to the sealed document, demonstrates Article 3 standing, the Court is sufficiently well positioned to determine the existence of facts essential to standing." I read that as a determination of standing whether or not it exists based on sealed document.

And the problem, of course, with that is that it involves not only a preemption of the privilege, but the use of privileged evidence, one way or the other, on an essential fact in dispute, the number one fact in dispute, which is whether or not they have standing.

I don't think that's what the Court has ever contemplated. And it would actually put the Court -- it would really put the onus on the Court to do something about the disclosure of State Secrets privileged information before a final judgment. And we would obviously object to that.

Now, if your understanding of option two is simply an adjudication of standing based solely on the kind of stuff that they submitted before, which they already have submitted, that would be a different scenario. So, I guess, I just need to understand that, and I think it's different from their option two.

***THE COURT:*** And you would be in a position of having to present evidence establishing a material issue of fact. And, of course, you could do that in any number of ways.

***MR. COPPOLINO:*** Right.

I think, you know, you talk about two ships passing in the night, and I certainly think that's an apt description, I think we now have ships passing, again, in different directions, because the issue -- the issue of standing and whether there is a genuine issue of fact and whether we could dispute their allegations of standing, of course, would turn on information we have, thus far, successfully protected, which goes to whether or not they have been subject to the alleged surveillance.

Now, I understand you have found the privilege assertion has been preempted, and our whole position, our consistent position in these past few months has been that before that information is disclosed or put at risk of disclosure, there should be further review, as you pointed out.

My concern is if you say, well, we are going to now litigate the issue of standing on summary judgment, again, Article 3 standing, but we are going to do it just on the public record, but the Government, if it wants to dispute Article 3 standing, and the only way it could do that, to prove a negative or to address whether or not they have standing, would be through the privileged information, that, again, puts

us in the position of either disclosing the privileged information or losing, because we won't do that, and then finding whether or not standing exists based on hypothetical facts such as the stuff they put in the record before.

So, my point simply is, you know, that option, it does seem to me, just puts us in the position of being unable to defend. And that's one of the grounds for which a case cannot go forward under the State Secrets privilege, so we're going back to where we were when the case started.

***THE COURT:*** We are not, Mr. Coppolino. I mean -- I'm not against you having your crack at appellate review, but what you -- what I am against is sending this case up to the Court of Appeals in a state where the Court of Appeals really cannot do its job and review these issues. And so, we need to bring this whole matter to a head so that the Court of Appeals, when it reviews the whole issue, can do so in a coherent and orderly fashion.

***MR. COPPOLINO:*** Seems to me, Your Honor, and I certainly respect your sentiment on that, as I very much respect the Court, but it seems to me there's a fourth option.

***THE COURT:*** All right, tell me about that.

***MR. COPPOLINO:*** If you go their option and say no classified information, one way or the other, I think that that's the essential State Secrets problem, that you can't litigate standing or anything else. And, in our view, under

the State Secrets doctrine, the case would have to be dismissed.

Now, if you want to tee this up for appellate review, maybe we haven't communicated very clearly with the Court. I certainly tried, but let me just put it this way: Our position is that from the beginning of this case what we have said is the facts essential to establish standing and litigate the case are subject to our privilege assertion. And we have, the Government has for many years, asserted privilege over whether or not someone is subject to surveillance.

This isn't new; this just didn't happen in 2006. There a case in '79, the ***Halkini*** case in the D.C. Circuit, a case in Michigan called ***Jurbara*** also in the 70's; the protection of whether or not someone is subject to surveillance is old. That is old law. And courts have pretty much consistently always upheld the privilege assertion there.

So, the Ninth Circuit, actually, Judge King upheld the privilege assertion when we first filed our motion, with respect to any surveillance of the plaintiffs, past, present, or future, except with respect to the sealed document. That's the only thing that he left in play in this case. And he certified that.

The Court of Appeals then upholds the privilege assertion -- and I'm not going to belabor all of these points, but I'm leading to the central point -- Court of Appeals

upholds the privilege assertion, and it says any information concerning whether the plaintiffs have been subject to surveillance, including a sealed document, is protected, and they cannot establish their standing without it. And they said that the privilege was well documented, that detailed statements established that disclosure would undermine the Government's intelligence capabilities and compromise national security.

So, they remand on the issue of preemption, and you would like to know how do we now present this case back to the Court of Appeals in a way they can decide it coherently? I think certification has been the answer because when you certify, you would say, look, you upheld the privilege assertion, I say it's preempted under section 1806(f) of the FISA. You could say whatever else you think that due process requires plaintiffs to have access to classified information. This is where we were in District Court, as a matter of course.

The Government's position is that the privilege should not be negated prior to any final judgment because that would eviscerate our interests and also lead to the very harms to national security the Ninth Circuit's identified.

The plaintiffs want to go forward; how do we get out of this Gordian Knot, as the plaintiffs refer to it? I say you present the issue to the Court of Appeals: does FISA preempt the State Secrets Privilege or not? If the answer to that

question is no, the case is over.

Now, it seems to me that's clean right now. It was clean last July when you issued your preemption ruling. And it's still the fundamental problem because once you issued that ruling on preemption, you said privilege is preempted; the case is going to go forward, I think the plaintiff's counsel should get access.

The problem is that we are not willing to voluntarily recede from our position that the information should remain protected until there is further review, as you pointed out. So, it seems to me that the sensible and reasonable way forward is to do that review now, rather than trying to go to a final judgment, where the very actual facts necessary to decide the case are still not available.

So, I certainly appreciate that the Court would -- would not -- would proceed in a manner in which those facts would not be available for any adjudication.

***THE COURT:*** Well --

***MR. COPPOLINO:*** -- but I think the better course is to simply tee it up now.

And, it would be very clear to the Ninth Circuit precisely what that issue is, because it's the only issue they remanded.

***THE COURT:*** Well, you had a crack at an interlocutory appeal.

***MR. COPPOLINO:*** I have a few things to say about that, Your Honor.

**(Laughter.)**

***THE COURT:*** Well, perhaps you should save that for the Court of Appeals.

**(Laughter.)**

***THE COURT:*** I think you already had a crack at an interlocutory appeal. The Court of Appeals could have easily have taken that case in essentially the same posture that it's in now. So, what I conclude from the fact that the Court of Appeals declined to take an interlocutory appeal, agreed that there was no final judgment, in addition, as Mr. Eisenberg pointed out, passed on the opportunity to issue a writ of mandate, that the Court of Appeals wants a case that has been concluded, at least to the degree that it can be, before deciding how it wishes to further review the matter. And I think what, essentially, Mr. Eisenberg has proposed is a sensible way to bring that issue to a head.

***MR. COPPOLINO:*** Right.

Well, I think, first, on the appellate posture, you know, I would respectfully differ.

***THE COURT:*** Well, I know you differ with me, and you differ with the Court of Appeals.

***MR. COPPOLINO:*** Here's the deal: The Court of Appeals said that the appeal of the January 5 order -- the

January 5 order was not appealable, and that's really all that that ruling indicates. And the only reason it could not have been appealable was either that it was not a final collateral order or not an injunction. The mandamus issue is only raised, in the reply brief, as a possible alternative basis for keeping the appeal.

But Ninth Circuit law, I think, is very clear that an order actually ordering the disclosure of privileged information prior to final judgment is either appealable in the Ninth Circuit as a collateral order or under the mandamus doctrine.

And their ruling, I think, is most fairly read to mean that they didn't think this was an actual disclosure order. And, you know, why they didn't think that? Because Your Honor and Mr. Eisenberg both took the position that, in fact, it was not an order of disclosure. Mr. Eisenberg -- actually, just referring to your court, to Your Honor's statement -- this is the transcript of the January 23rd conference at page 33, and the Court said, "The harm that you're concerned about," the Government, "is disclosure of the sealed document, to be sure, and that's a step to be taken after we make -- after we have a finding of suitability or not suitability, we can evaluate what to do next."

And so, I think it's quite -- to my mind, it's clear that the Court of Appeals saw that you had not, in your

January 5 order, actually ordered disclosure of any classified information, and that you were not going to order the disclosure of classified information until further steps were taken in this case in District Court.

***THE COURT:*** Well, I still have not done so.

***MR. COPPOLINO:*** Exactly.

***THE COURT:*** Things are no different now.

***MR. COPPOLINO:*** Exactly. And that is why the January 5 order was not appealable.

But, I think Your Honor ought to recognize that at order of actual disclosure, a protective order would be subject to -- or a protective order under which they would get access -- would be subject to interlocutory appeal, either as a collateral order under the ***Coppley*** decision, or under mandamus.

***THE COURT:*** Well, maybe that's right, but we are not there yet.

***MR. COPPOLINO:*** We are not there yet. And my suggestion is the way to step through that without going through yet another round of summary judgment proceedings in which the privileged information would be central to the resolution of those proceedings, but not available to the Government, that the way to do it is just tee it up for the Court of Appeals.

If you certified the case, they would take it because the basis for going forward in this case would be is

the privilege preempted or not? Are they entitled to access or not under section 1806(f), if it applies under the due process clause? Can the Court override the Government's determination on access under the ***Egan*** case, for example, a whole raft of legal questions that are clearly and squarely teed up right now.

It just seems to us that that is the most sensible approach which avoids, first of all, a showdown over a protective order, if one were issued, a default sanction, which I think, I hope, I have convinced you Rule 37 doesn't support, or, if I could put it this way, a fictitious judgment, a round of summary judgment where the actual facts are not available, and, in effect, which, in effect is a penalty on the Government because if we put in the actual facts they get disclosed, if we don't, then a judgment is rendered on something other than the actual facts.

***THE COURT:*** Well, but, if you decline to put in that evidence and you can believe that you have a privilege which can be asserted, you're in a position to do so at the Court of Appeals. And the Court of Appeals can decide the matter, one way or the other, and it's got a full record upon which to base its decision.

***MR. COPPOLINO:*** Well, you know, I don't -- I obviously don't know the full implications of how what you are proposing would play out.

***THE COURT:*** Well, I don't either, but I suspect you would figure it out pretty soon.

**(Laughter.)**

***MR. COPPOLINO:*** As we, you know, walk down the road that you would propose, we will be able to brief and argue that and then present -- I'm actually sort of presenting arguments as to why I think that course might not work. And, I can present those arguments, if you choose to go that route, but I do think if you ask the question, what is a simple, clear, effective way to get this teed up now, it would have been through certification. And, I think I had suggested certification in connection with our last summary judgment motion. And, it probably would have been briefed by now.

And if -- the clarity of the issues is apparent: Does FISA preempt the privilege, or are the plaintiffs entitled to access the classified information in order to adjudicate a case of this nature under those procedures? And that issue can be set up now.

You don't need to go to a summary judgment where the Government doesn't have the benefit of actually being able to defend itself. That's what the privilege was intended to avoid.

***THE COURT:*** You know, you are underestimating your abilities, Mr. Coppolino.

**(Laughter.)**

**MR. COPPOLINO:** Your Honor, so far, the discussion today seems to have been off the issue of Rule 37 sanctions; our position was set forth at some length on that. And if that is no longer a matter under consideration, I don't really need to spend a whole lot of time discussing that. I just want to say that I don't think there is anything, any position that we have taken that would be subject to sanctions under Rule 37, or otherwise.

I think the conundrum that we face is that we have held to our position that State Secrets should not be put at risk of disclosure, or actually disclosed, either implicitly in further proceedings, or directly to the plaintiff's counsel.

And, I don't think it's sanctionable where a party just simply declines to voluntary agree to not recede from its position.

**THE COURT:** Well, I have some understanding, I think, and certainly some sympathy, for the position that you are in as an advocate. You're adhering to your position with reference to the State Secrets Privilege; that's fair enough. I don't believe that that privilege is in play here for all the reasons that the preemption order described at some length.

And what has occurred subsequently, is that the Government has essentially declined to join the battle on that field of battle, and that makes proceedings very difficult. And so, in order to bring the case to a coherent conclusion,

which would permit effective appellate review, then I think we need to take this next step.

You talk about seriatim motions, of course, you filed a good many motions yourself, Mr. Coppolino, as you well know, but think of the position that we would be in if I were to certify an interlocutory appeal and either the Court of Appeals were not to take that interlocutory appeal, and, after all they do, under 92(b) have to agree to take it, or, if it were to go up to the Court of Appeals and they were to find that the issues had not been sufficiently teed up at the trial court, and send it back. And here we would be, another year or two, or Lord knows how long thereafter, and we wouldn't be any further along.

This is a lawsuit; it's not a career, Mr. Coppolino.

**(Laughter.)**,

***THE COURT:*** So that's my problem.

***MR. COPPOLINO:*** Understood.

Well, I guess it comes down to an estimation of could the -- could the dispute, if you will, be clearly presented such that it would be a very appropriate time for the Ninth Circuit to consider it. I happen to be of the view that it would be, because there really is just a simple clear legal issue: The Court of Appeals upheld the State Secrets Privilege and remanded to decide preemption; you've decided preemption.

***THE COURT:*** And now what I want to do is to consider

the implication of that.

**MR. COPPOLINO:** Exactly. But the point is the implications of that, as we have seen with these difficult past few months, we've had two motions for summary judgment, the implication of that are either that the Government in some way consent to the disclosure of classified information to the plaintiffs, or the case can't proceed in the manner that you would prefer it to proceed or it's --

**THE COURT:** It's not a question of my preference, Mr. Coppolino. At least give me that.

**MR. COPPOLINO:** Okay.

**THE COURT:** It's a question of what I think the law requires.

**MR. COPPOLINO:** Right. Understood.

And then you are at a point where you're stuck. And so how do you get unstuck? Seems to me the most sensible way to get unstuck is to say to the Court of Appeals, this is the crux of the issue: If the FISA doesn't preempt the State Secrets Privilege, if due process doesn't require them to have access under section 1806(f), the case is over.

**THE COURT:** But, if we give the Court of Appeals a judgment, they can't turn us down.

**MR. COPPOLINO:** Well, listen, I certainly --

**THE COURT:** I'll have to bite the bullet; they'll have to decide the case, and you'll get a decision.

***MR. COPPOLINO:*** I'm all for getting a final judgment and getting to the Court of Appeals as fast as possible, I'm just not as sanguine that is either, a, consistent with the law, or, b, going to work out so happily. I've given what I think is a better option.

And so, no longer talking about an issue of sanctions, which I think is not appropriate, then I'll do my best to carry out what the Court would prefer. But I do think what we -- what is apt to happen as I understand what you are suggesting, is we are going to have a round of summary judgment very similar to the last one in which they said, here is all our public evidence, we said that's inadequate to actually establish Article 3 standing as opposed to what you found, which was sufficient evidence to establish a prima facie case to defeat a motion to dismiss, which is very different from Article 3 standing, it being established on summary judgment. I think we are going to have essentially the identical round of motions.

And if, at that point, you say standing is established based on public evidence without regard to the sealed document, I still don't see how you get to judgment because judgment on the merits of the claims requires a determination of at least liability. And the facts and information necessary to determine liability requires not just a determination of whether a party has standing, which is

itself in dispute, but if a party, in fact, had been subject to surveillance, who, how, when, under what authority, and why, all of the complex detailed facts that go into a determination of whether the law has been violated.

You can't do that based on assumed facts or no facts; that's the crux of the problem. When the State Secrets Privilege excludes those facts, whether it's preempted or not, you have a basic problem going forward.

And, it seems to me that you are not going to be able to go forward with the privilege assertion having been upheld and actually get to a final judgment except by exercising hypothetical jurisdiction under Article 3, and, somehow, making an assumption as to what the facts are because the actual facts are privileged. So, I don't see how it works, I guess, is what I'm saying. And I think it would work much more efficiently if we would have presented it the way it was.

If there is anything else Your Honor would like me to address?

***THE COURT:*** This approach will give you an opportunity further to think about these issues and your client. And we'll just see how it plays out.

***MR. COPPOLINO:*** Thank you, Your Honor.

***THE COURT:*** Mr. Eisenberg?

***MR. EISENBERG:*** Thank you, Your Honor.

I'm reaching an age where I'm just starting to think

about retirement.

***THE COURT:*** Oh, my goodness gracious.

***MR. EISENBERG:*** Well, just starting to think about it. It's on the distant horizon.

***THE COURT:*** Don't leave me before this case is over, Mr. Eisenberg.

**(Laughter.)**

***MR. EISENBERG:*** I don't intend to. You see, that's the whole point: I can't retire until the case is over.

**(Laughter.)**

***MR. EISENBERG:*** And I don't want to be an octogenarian when that happens.

***THE COURT:*** This could be an annuity, Mr. Eisenberg.

**(Laughter.)**

***MR. EISENBERG:*** Only if I get paid, Your Honor, and that's not happening.

**(Laughter.)**

***MR. EISENBERG:*** I'm not doing this for money at this point.

***THE COURT:*** Well, how can I help?

***MR. EISENBERG:*** Okay, first of all, I would like to address the notion that we propose to go forward only with Your Honor considering the public evidence. That's not our proposal; we contemplate Your Honor considering the sealed document as well as the public evidence. What leads us, or led

us, to that conclusion was the Court's order of January 5th, 2009. At page 23, I'm quoting, "The Court will review the sealed document ex parte and in camera. The Court will then issue an order regarding whether plaintiffs may proceed, that is, whether the sealed document establishes that plaintiffs were subject to electronic surveillance not authorized by FISA."

So, our understanding was that the Court's determination of standing as a factual matter would include consideration of the sealed document. And, as of the April 17th order from this Court, our understanding is that the Court has now reviewed the sealed document.

So, that's what we envision, consideration of all the public evidence and the sealed document.

***THE COURT:*** Well, I don't think that that's the way I intend to proceed with the second alternative, or the second scenario, unless the Government takes a position that I must review the sealed document. And if I do, as I said, it will be subject to a -- it will be disclosed to you subject to a protective order, or, alternatively, submits other classified information in response to your motion. But the content of the sealed document will not be a part of the Court's decision on this motion in the event that -- or except under the two scenarios that I outlined.

***MR. EISENBERG:*** Your Honor, I find myself in the

very odd and uncomfortable position of saying I'm perfectly fine with that approach as long as we get a finding of standing.

**(Laughter.)**

***THE COURT:*** Well, you've got a motion to write, Mr. Eisenberg.

**(Laughter.)**

***THE COURT:*** And you're a good lawyer who likes a challenge.

**(Laughter.)**

***THE COURT:*** So I'm quite confident you'll be able to do a good job for your clients.

***MR. EISENBERG:*** Okay.

So, my understanding is the motion for summary judgment we'll be filing will be arguing only the public evidence we submitted in connection with our first amended complaint.

I guess I would just like to do this, and --

***THE COURT:*** I suppose I could change my mind, but that's the way I'd like to proceed.

***MR. EISENBERG:*** Okay.

I'm fully prepared to proceed that way with Your Honor understanding that my preference is to be able to refer to the secret document. And, I mention that only for purposes of preserving the point for appellate review, which I hope will

never be necessary.

**THE COURT:** Well, what do you mean "make reference to the sealed document"?

**MR. EISENBERG:** Well, what we would like to do is just say, Your Honor, here is the public evidence we have; you have seen the sealed document now; we do not need further access to the document to argue our case. We are prepared to go forward making our further arguments only on the public evidence and with Your Honor having reviewed and considered the sealed document. That's what we propose to do.

My feeling from the January 5th order was that -- that's the scenario I envisioned: We do not at this point feel we want or need access to the document. And when I say that, I mean either to see it again -- remember, we've seen it -- or to argue about it.

**THE COURT:** All right. Well, then -- then you don't need to see it unless something further is filed that requires its disclosure.

**MR. EISENBERG:** I'm sorry?

**THE COURT:** Unless some additional information is disclosed which requires that the sealed document be disclosed to you, you're telling me you don't need to see it.

**MR. EISENBERG:** Yes.

**THE COURT:** That's fine.

**MR. EISENBERG:** I understand your ruling, Your

Honor. Thank you.

Now, will our motion for summary judgment look just like what we filed previously, as Mr. Coppolino mentioned? The answer to that is most certainly no. We'll be arguing liability and specifically issues including the legality of the warrantless surveillance program, the president's power or not to disregard an act of Congress in the name of National Security. We will be arguing the merits of this case.

Mr. Coppolino says, well, that's going to require a consideration of classified information, and my response to that is, it didn't require a consideration of classified evidence when the Government presented its case to the public in a 42-page white paper in January of 2007. There is no -- it is a purely legal issue we are looking to litigate.

This Court needs no further classified evidence to decide the purely legal issue whether the president has the expansive power that President Bush and now President Obama are claiming.

***THE COURT:*** All right.

Now, you said you would be in a position to file that motion by the 30th of June, I believe.

***MR. EISENBERG:*** Yes.

***THE COURT:*** All right. What I would suggest is a -- and I'm going to ask the clerk to backstop me here.

We have a special setting for hearing this motion --

we could hear it on the --

How's the 5th of August?

**(Attorney Coppolino shaking his head.)**

***THE COURT:*** Mr. Coppolino says no.

***MR. COPPOLINO:*** Well, really, the first two weeks of August are quite bad for me.

I was going to suggest, perhaps, the first Thursday that I could do; it would be the 20th.

***THE COURT:*** Doesn't have to be on a Thursday unless we have to work around a trial.

***MR. COPPOLINO:*** Okay. My preference would be the 28th or 21st. Looks like you are not available the following week, at least according to that calendar *(pointing)*, at least.

***THE CLERK:*** That's correct.

***MR. COPPOLINO:*** So I would ask the Court, if it's possible, and depending on Mr. Eisenberg's schedule, no sooner than, say, the 21st or then after Labor Day.

***MR. EISENBERG:*** Your Honor, I'm going to be mired in work throughout July and August; it doesn't matter to me what date you choose. It's going to be a tough summer; I'm prepared to deal with that.

***THE COURT:*** All right.

***MR. COPPOLINO:*** Plus, you need to build in time for his reply because if he files on the 30th, I would need July because we have the Jewel hearing on the 15th. So I think I

need at least the end of July -- he gets to reply, if it's his motion, so I think, unfortunately, if it's okay, we are into September.

***THE COURT:*** What does September 2 look like?

**(Clerk and court confer.)**

***THE CLERK:*** Tuesday, Your Honor, September 1st?

***THE COURT:*** How is September 1st, Tuesday?

***MR. EISENBERG:*** Your Honor, I don't have my calendar with me, but I think that's fine.

***MR. COPPOLINO:*** Definitely more preferable to me than August 5th.

***THE COURT:*** Well, gosh, I would think you would like to get out of Washington in August, Mr. Coppolino? Maybe you are already planning to do so.

***MR. EISENBERG:*** I will say, I would really like to get this thing moving along. September 1st is still three months from now.

***THE COURT:*** Well, I know.

***MR. EISENBERG:*** I have press of business, just like Mr. Coppolino. I have oral argument in the Court of Appeal in the morning. I'll be working hard all summer.

***THE COURT:*** You're not applying for a job.

**(Laughter.)**

***MR. EISENBERG:*** I think I'm beyond that, Your Honor.

***MR. COPPOLINO:*** Your Honor, I think September 1st is

reasonable for the magnitude of what you are proposing.

I have a problem the first two weeks, Your Honor. If he could work it so that he could get his reply brief in the end of the week of the 17th, for example, like the 21st, if it please the Court, I would prefer no sooner than that.

So he would have to have his in by the 7th, which means he --

***THE COURT:*** Well, I am perfectly happy to work with you to adjust those filing dates to meet your needs; let's just get a hearing date that we can all live with.

September 1st is probably the best, under all of these circumstances. I don't want to interfere with anybody's vacations or --

***MR. COPPOLINO:*** Okay.

***THE COURT:*** -- workload, impose an undue workload on any of you.

Now, do you need some help with respect to figuring out the opposition and reply, and so forth?

***MR. COPPOLINO:*** Why don't we take a crack at working that out.

***MR. EISENBERG:*** If we are going to be that far out, I wouldn't mind an extra week or two for our opening brief.

***THE COURT:*** Sure. You can work it out any way that you like as long as the reply comes in, say, not later than the 18th or 19th of August.

Is that going to be a problem? It will be Mr. --

***MR. EISENBERG:*** It will be my reply, Your Honor. That shouldn't be a problem.

***THE COURT:*** All right.

***MR. COPPOLINO:*** I mean, I suppose if we cross move, Your Honor, there could be an added brief in there. But, I just don't know yet how we are going to respond to his motion. Let's just work it out, and we'll figure it out as we go.

***THE COURT:*** All right. And if you get into a tussle on it, I'll be happy to be arbitrary and give you some dates.

**(Laughter.)**

***MR. EISENBERG:*** Your Honor, may we address the issue of attorneys' fees as a sanction?

***THE COURT:*** All right.

***MR. EISENBERG:*** I would like to make a case that the Government really has refused to comply with this Court's orders, but I would seek only attorney's fees as a sanction, nothing more.

***THE COURT:*** You are thinking under 37(d); is that --

***MR. EISENBERG:*** Let me give you the exact citation. It would be Rule 37(b)(2), capital A, Roman numeral -- no, excuse me, B(2), capital C, B(2)C, "payment of expenses." Here's what that statute says --

***THE COURT:*** I was thinking -- actually, I mentioned (d); I was thinking about (f); is that what you had in mind?

***MR. EISENBERG:*** No. What I had in mind was -- this is in -- hold on.

Rule 37.

***THE COURT:*** You have it there?

***MR. EISENBERG:*** Subsection (b), failure to comply with a court order, underneath that, subdivision (2), sanctions in the District Court, subdivision capital (C), "payment of expenses."

***THE COURT:*** All right.

***MR. EISENBERG:*** "Instead of" -- or, "In addition to the orders above, the Court must order the disobedient party, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure to comply unless the failure was substantially justified or other circumstances make an award of expenses unjust."

I believe the Government has violated court's orders of January 5th and April 17th in two ways. First, the Government attorneys refused a couple weeks ago to negotiate over the terms of a protective order in good faith. We had a meet and confer over the telephone; Mr. Coppolino began the meet and confer by asking us to stipulate to appellate jurisdiction. He should have known, and perhaps did know, that one cannot do that, one may not stipulate to appellate jurisdiction.

He then proceeded to say, we will not agree to any terms of any protective order, period. He would not negotiate any terms. I believe what he should have done is to negotiate terms that would have been acceptable had the Court issued one. And surely, there was something in that ten pages that we submitted to Mr. Coppolino that he would have found unobjectionable, for example, the definitions section.

Mr. Coppolino makes a point that one cannot be compelled to sign a stipulation; that is true, but, I believe one can be compelled to negotiate in good faith, just like the Ninth Circuit and the state Courts of Appeal commonly order the parties to go to negotiation. Mr. Coppolino did not mediate, did not negotiate with us in good faith. He took a hard line position, which is we're not doing anything with you or in this court, until we get appellate review on FISA preemption.

And then again, in their filing last Friday, here's what they said at page 2, and this is the second way in which the they violated the Court's orders: They said, "we will not go forward with this litigation at all in this court," quote, "without a further opportunity for appellate review of whether the FISA preempts the State Secrets Privilege," conveniently overlooking the fact that they have had their shot at appellate review and have not gotten it.

And again, I reiterate, it wasn't just a matter of the Court of Appeals saying we don't have appellate

jurisdiction; the Court of Appeals also said we are not going to exercise our mandamus jurisdiction. This matter was litigated in the Court of Appeals.

I will quote from page 19 of the Government's reply brief in support of their emergency motion in the Ninth Circuit for a stay pending appeal in which they said, "If the Court has any doubts about its appellate jurisdiction, we respectfully ask that the Court treat the Government's appeal as invoking this Court's mandamus jurisdiction."

They went on to argue the elements, the requirements for exercising mandamus jurisdiction. The third requirement of which is the -- quoting -- "The District Court's order is clearly erroneous as a matter of law." They were arguing that this Court's orders on FISA preemption and on its power to determine need to know were clearly erroneous as a matter of law, and they should, therefore, get mandamus or mandate relief.

We responded to that argument in our reply brief and we argued the merits. We quoted the standard of the District Court's order as "clearly erroneous as a matter of law," that's in quotes. And then we said, again quoting, "The defendants have failed to make that showing on either of the two substantive arguments raised in their emergency stay motion, that Judge Walker lacks authority to make the need to know determination and that FISA does not preempt the State Secrets

Privilege."

We then proceeded to set out the merits on those issues. We believe Your Honor has ample authority to determine need to know and why Your Honor's ruling on FISA preemption is well supported by the law.

This issue is briefed; the Ninth Circuit had the opportunity to determine whether or not Your Honor has committed clear error as a matter of law on those two issues on its mandamus jurisdiction; they didn't. They turned the defendants away.

I believe what that Ninth Circuit has said is that the litigation shall go forward before Judge Walker until there is something appealable, and that's probably going to be a final judgment, which is the normal course of appellate events.

They are refusing to go forward. They have just simply said: we think you're wrong and we're not going to comply. They don't have that right. There is case after case that says a litigant must comply with a District Court order unless and until it's reversed on appeal.

Their attitude is because we think you're wrong we don't have to comply, and please, just do whatever it takes to get us into the Court of Appeals -- the Court of Appeals. Excuse me.

The "do whatever it takes" I can understand. What I can't understand is their refusal to go forward. I think that

is sanctionable misconduct. That's a failure to obey this Court's orders. And I think it's been occurring since January 5th. And, I assure you that I and my team of attorneys have logged had many, many hours opposing meritless appeals, crafting proposed protective orders that the Government would not negotiate with us, and generally going this way, that way, and the other way over the course of, what, four months now, needlessly. And, for that reason, I would ask the Court that -- for one sanction and one sanction only, and that is an award of our attorney's fees since January 5th.

***THE COURT:*** Well, Mr. Eisenberg, I'm reluctant to do that at this stage, and at this -- with the litigation in its present posture, for a couple of reasons. The first is it would open up a whole set of collateral issues that would, I think, distract us from proceeding to an orderly path that will lead to a conclusion of the litigation in a -- in an orderly way. And, it will do nothing to help the tone of the litigation at this point.

You may very well be in a position to seek sanctions at some later point in the litigation, but I think this is not that point. And it would distract us and not be beneficial to moving the case toward what I think is an orderly disposition. So, I'll just defer on that at the present time.

***MR. EISENBERG:*** I think your point is well taken.

***THE COURT:*** Anything further?

**MR. EISENBERG:** I'd be happy to have the matter deferred for a later date.

**MR. COPPOLINO:** In light of what you just said, I'm not going to respond to his statements. I just want to say on the record, I do dispute all those statements, and I do contest them.

**THE COURT:** I didn't figure that you agreed with any of it.

**(Laughter.)**

**THE COURT:** All right, Counsel, thank you for your help. I appreciate it very much. I'll look forward to seeing you in the first --

**THE CLERK:** We didn't set a time for the September 1st hearing.

**THE COURT:** Oh.

The clerk has reminded me we need a time, not just a date, a time.

Is 10:00 o'clock okay?

**MR. COPPOLINO:** Perfect.

**MR. EISENBERG:** Yes, that's fine, Your Honor.

**THE COURT:** All right, Counsel, good, well I won't see you before then, I don't think.

**MR. COPPOLINO:** July 15th you'll see me and Ms. Cohn for the Jewel case.

**THE COURT:** Oh, the Jewel case, all right.

Well, then, I won't wish you a happy summer at this time, but I'll wish Mr. Eisenberg one.

***MR. EISENBERG:*** Thank you, Your Honor.

***THE COURT:*** All right, thank you very much.

**(Proceedings adjourned at 3:05 p.m.)**

**---o0o---**

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing. The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

**/s/ Sahar McVickar**

**Sahar McVickar, RPR, CSR No. 12963**

**Friday, June 5, 2009**