1  MICHAEL F. HERTZ
   Deputy Assistant Attorney General
2  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
3  JOSEPH H. HUNT
   Director, Federal Programs Branch
4  VINCENT M. GARVEY
   Deputy Branch Director
5  ANTHONY J. COPPOLINO
   Special Litigation Counsel
6  MARCIA BERMAN
   Trial Attorney
7  U.S. Department of Justice
   Civil Division, Federal Programs Branch
8  20 Massachusetts Avenue, NW, Rm. 6102
   Washington, D.C. 20001
9  Phone: (202) 514-4782—Fax: (202) 616-8460

10 *Attorneys for the Government Defendants*

11

## UNITED STATES DISTRICT COURT

12

## NORTHERN DISTRICT OF CALIFORNIA

13

## SAN FRANCISCO DIVISION

14

|  |  |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | No. M:06-CV-01791-VRW |
| This Document Solely Relates To: | **DEFENDANTS' NOTICE OF MOTION, FOURTH MOTION TO DISMISS AND FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| *Al-Haramain Islamic Foundation et al. v. Obama, et al.* (07-cv-109-VRW) | Date:        September 23, 2009 Time:        10:00 a.m. Courtroom:   6, 17th Floor Chief Judge Vaughn R. Walker |

        PLEASE TAKE NOTICE that on September 23, 2009 at 10:00 a.m., before Chief Judge

Vaughn R. Walker, the Government Defendants will move to dismiss this case for lack of

jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and will also

move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The

grounds for these motions are set forth in the instant motion and accompanying memorandum of

28

law in support thereof and are summarized below.

First, dismissal for lack of jurisdiction is required on the grounds that: (i) plaintiffs lack standing to obtain prospective declaratory or injunctive relief with respect to alleged warrantless surveillance under the Terrorist Surveillance Program, which lapsed in January 2007; and (ii) the Court lacks jurisdiction to review plaintiffs' claim for retrospective damages against the United States, brought under 50 U.S.C. § 1810, because Section 1810 does not expressly waive the sovereign immunity of the United States.

Second, the Government is entitled to summary judgment on all of plaintiffs' claims in the First Amended Complaint ("FAC") on several grounds, including that: (i) the Ninth Circuit has conclusively ruled that information concerning whether or not the plaintiffs have been subject to alleged surveillance, including any information contained in or derived from the Sealed Document at issue in this case, is protected by the state secrets privilege and barred from use in this litigation, *see Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1203-04 (9th Cir. 2007); (ii) the public evidence submitted by plaintiffs fails to establish that they are "aggrieved persons" as defined in the FISA, fails to establish that plaintiffs have standing to adjudicate their FISA claim, and fails to establish that plaintiffs have Article III standing with respect to any of the claims raised in the FAC; (iii) information necessary for the Government to address or rebut plaintiffs' allegations or public evidence related to their standing has been excluded from the case by the Ninth Circuit, and summary judgment should be entered in favor of the Government, *see Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998); and (iv) facts needed to adjudicate the merits of plaintiffs' FISA claim (and any other extant claim) are also subject to the Government's privilege assertion and, for this reason as well, summary judgment should be entered in favor of the Government on all claims.

This motion is supported by the accompanying Government Defendants' Memorandum in Opposition to Plaintiffs' Partial Motion for Summary Judgment and in Support of the Government's Fourth Motion to Dismiss and for Summary Judgment and any prior submissions by the Government cited therein.

Dated: August 20, 2009

Respectfully Submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

_____*s/ Anthony J. Coppolino*_____
ANTHONY J. COPPOLINO
Special Litigation Counsel

_____*s/ Marcia Berman*_____
MARCIA BERMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

MICHAEL F. HERTZ
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
MARCIA BERMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Solely Relates To:<br><br>*Al-Haramain Islamic Foundation et al. v. Obama, et al.* (07-cv-109-VRW) | No. M:06-CV-01791-VRW<br><br>**GOVERNMENT DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF THE GOVERNMENT'S FOURTH MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**<br><br>Date:          September 23, 2009<br>Time:          10:00 a.m.<br>Courtroom:   6, 17th Floor<br>Chief Judge Vaughn R. Walker |

1

## TABLE OF CONTENTS

2

3                                                                                          **PAGE**

4   INTRODUCTION ............................................................................................... 1

5   ISSUES TO BE DECIDED ................................................................................ 3

6   BACKGROUND ................................................................................................ 3

7           A.      Initial Proceedings ........................................................................ 3

8           B.      Remand Proceedings ..................................................................... 6

9           C.      Plaintiffs' Amended Complaint and Subsequent Proceedings ............................. 7

10  ARGUMENT ...................................................................................................... 10

11          I.      THE COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS'
                    FISA CLAIM OR ANY OTHER EXTANT CLAIM. ...................................... 10
12
                    A.      Plaintiffs Have Only One Extant Claim—for Retrospective
13                          Damages Under FISA Section 1810—and All Other Claims for
                            Prospective Relief Are Foreclosed ........................................... 10
14
                    B.      Congress Has Not Waived Sovereign Immunity to
15                          Bring Claims Against the United States for Damages
                            Under FISA Section 1810. ....................................................... 12
16
17          II.     THE GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT
                    ON PLAINTIFFS' FISA CLAIM AND ANY REMAINING CLAIM . ............. 12

18                  A.      Plaintiffs' Attempt to Prove Standing and Reach the Merits Is
19                          Foreclosed By the Mandate of the Ninth Circuit in This Case. ............. 14

20                  B.      Plaintiffs Bear the Burden of Proving an Actual Concrete Injury
                            to Establish Standing Under Article III of the Constitution. ................. 16

21                  C.      Plaintiffs' Evidence Fails to Establish That They Have Been
                            Subject to the Alleged Warrantless Surveillance Challenged
22                          in This Case  ........................................................................ 19

23                  D.      The Law Does Not Require the Government to Choose Between
                            Disclosing State Secrets and Losing on Summary Judgment. ................. 26
24
                    E.      Plaintiffs' Effort to Obtain an Advisory Opinion on the Merits
25                          Should be Rejected. ............................................................... 30

26  CONCLUSION .................................................................................................. 35

27

28  **Notice Motion/Memorandum Government's 4th Motion Dismiss/Summary Judgment; Opposition to Plaintiffs'
    Motion Partial Summary Judgment** *Al-Haramain v. Obama* **(07-cv-109-VRW) (MDL 06-cv-1791-VRW)**    -i-

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Al-Haramain Islamic Foundation et al. v. Dep't. of Treasury,*
    585 F. Supp. 2d 1233 ........................................................ 24

*Al-Haramain Islamic Foundation, Inc. v. Bush,*
    507 F.3d 1190 (9th Cir. 2007) ..................................... passim

*Al-Haramain Islamic Foundation v. Bush,*
    564 F. Supp. 2d 1109 (N.D. Cal. 2008) ........................ passim

*Al-Haramain Islamic Foundation v. Bush,*
    595 F. Supp. 2d 1077 (N.D. Cal. 2009) ........................ 8, 15

*Al-Haramain v. Bush,*
    451 F. Supp. 2d 1215 (D. Or. 2006), *rev'd,* 507 F. 3d 1190 (9th Cir. 2007) ........................ 4

*Allen v. Wright,*
    468 U.S. 737 (1984) ........................................................ 18

*American Civil Liberties Union v. National Security Agency,*
    438 F. Supp. 2d 754 (E.D. Mich. 2006), rev'd 493 F.3d 644 (6th Cir. 2007) ...................... 31

*American Civil Liberties Union v. National Security Agency,*
    493 F.3d 644 (6th Cir. 2007) ........................................ passim

*American Foreign Serv. Ass'n v. Garfinkel,*
    490 U.S. 153 (1989) ........................................................ 34

*Baker v. Carr,*
    369 U.S. 186 (1962) ........................................................ 17

*Berger v. City of Seattle,*
    569 F.3d 1029 (9th Cir. 2009) ...................................... 26

*Campbell v. United States,*
    365 U.S. 85 (1961) .......................................................... 27

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .......................................................... 11

*Daniels v. Twin Oaks Nursing Home,*
    692 F.2d 1321 (11th Cir. 1982) .................................... 26

*Department of Commerce v. United States House of Representatives,*
    525 U.S. 316 (1999) ........................................................ 34

*EOTT Energy Operating Ltd. Partnership v. Winterthur Swiss Ins. Co.,*
    257 F.3d 992 (9th Cir. 2001) ........................................ 25

*Ellsberg v. Mitchell,*
   709 F.2d 51 (D.C. Cir. 1983) ............................................... 28

*FW/PBS, Inc. v. Dallas,*
   493 U.S. 215 (1990) ........................................................ 17

*Gest v. Bradbury,*
   443 F.3d 1177 (9th Cir. 2006) ............................................. 11

*Halkin v. Helms,*
   598 F.2d 1 (D.C. Cir. 1978) ............................................. 28, 30

*Halkin v. Helms,*
   690 F.2d 977 (D.C. Cir. 1982) ............................................. 27

*Kasza v. Browner,*
   133 F.3d 1159 (9th Cir. 1998) ........................................... 3, 29

*Kline v. Security Guards Inc.,*
   159 F. Supp. 2d 848 (E.D. Pa. 2001) ...................................... 32

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................... passim

*Multi Denominational Ministry of Cannabis v. Gonzales,*
   474 F. Supp. 2d 1133 (N.D. Cal. 2007) .................................... 12

*National Communications Association v. AT&T Corp.,*
   238 F. 3d 124 (2nd Cir. 2001) ............................................ 27

*Nelson v. City of Davis,*
   571 F.3d 924 (9th Cir. 2009) ............................................. 26

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ...................................................... 11

*Reynolds v. United States,*
   345 U.S. 1 (1953) ...................................................... 27-28

*Rizzo v. Goode,*
   423 U.S. 362 (1976) ...................................................... 11

*Samson v. California,*
   547 U.S. 843 (2006) ...................................................... 33

*Schaffer v. Weast,*
   546 U.S. 49 (2005) ....................................................... 27

*In re Sealed Case,*
   494 F.3d 139 (D.C. Cir. 2007) ............................................ 27

*Shane v. Greyhound Lines, Inc.,*
    868 F.2d 1057 (9th Cir. 1989) ........................................... 17

*Spector Motor Service, Inc. v. McLaughlin,*
    323 U.S. 101 (1944) ........................................... 34

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) ........................................... 17, 31

*Terkel v. AT&T Corp.,*
    441 F. Supp. 2d 899 (N.D. Ill. 2006) ........................................... 27

*United Presbyterian Church v. Reagan,*
    738 F.2d 1375 (D.C. Cir. 1984) ........................................... 21, 25

*United States v. Denver & Rio Grade Railroad Company,*
    191 U.S. 84 (1903) ........................................... 27

*United States v. Knights,*
    534 U.S. 112 (2001) ........................................... 33

*United States v. Morton,*
    400 F. Supp. 2d 871 (E.D. Va. 2005) ........................................... 27

*United States v. Nordic Village,*
    530 U.S. 30 (1992) ........................................... 12

*Valley Forge Christian College v. Americans United for
    Separation of Church & State, Inc.,*
    454 U.S. 464 (1982) ........................................... 16, 18

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................... 17, 18

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ........................................... 17

## STATUTORY LAW

18 U.S.C. § 2520 ........................................... 32

50 U.S.C. § 1801(f) ........................................... 32

50 U.S.C. § 1801(k) ........................................... 18

50 U.S.C. § 1806(f) ........................................... passim

50 U.S.C. § 1809 ........................................... 32, 33

50 U.S.C. § 1810 ........................................... passim

### INTRODUCTION[1]

Plaintiffs, the Al-Haramain Islamic Foundation of Oregon ("AHIF-Oregon") and two lawyers affiliated with it, allege that they were subject to warrantless electronic surveillance authorized by the President after the 9/11 attacks under a program that was referred to as the Terrorist Surveillance Program ("TSP"). Plaintiffs have moved for partial summary judgment on their Foreign Intelligence Surveillance Act ("FISA") claim, seeking to establish that they are "aggrieved persons" under the FISA—*i.e*, that they were the targets of, or subject to, electronic surveillance as defined by FISA—and that such surveillance was unauthorized. *See* Dkt. 657/99[2] (hereafter "Pls. MSJ"). Pursuant to the Court's June 5, 2009 Order (*see* Dkt. 643/96), plaintiffs' motion is based solely on publicly available information.

As a threshold matter, the mandate of the Court of Appeals in this case forecloses plaintiffs' motion. The Ninth Circuit expressly held that the information necessary for plaintiffs to establish their standing has been excluded from this case pursuant to the state secrets privilege. *Al-Haramain Islamic Found. Inc. v. Bush*, 507 F.3d 1190, 1203-05 (9th Cir. 2007). The sole issue remanded was whether the privilege assertion is preempted by the *in camera* procedures of 50 U.S.C. § 1806(f). While this Court has held that these procedures did preempt the state secrets privilege "as to matters to which it relates," *Al-Haramain Islamic Foundation v. Bush*, 564 F. Supp. 2d 1109, 1119 (N.D. Cal. 2008), the Court has not ordered a Section 1806(f) proceeding at this stage and, consistent with the Ninth Circuit's decision, has barred plaintiffs from relying on information subject to the privilege assertion. Thus, the case now stands where it was when the Court of Appeals held that privileged information is necessary to actually establish plaintiffs' standing. For this reason, plaintiffs' motion must be denied and the case dismissed as directed by the Ninth Circuit.

---

[1]  The instant filing is submitted on behalf of the Government Defendants sued in their official capacity. The response of the one defendant sued in his personal capacity (FBI Director Mueller) to the First Amended Complaint has been deferred by stipulation. *See* Dkt. 461/39.

[2]  The two docket citations are to the MDL docket (M: 06-1791-VRW) and the docket in this case (C: 07-109-VRW).

Assuming, *arguendo*, the Court nonetheless considers plaintiffs' motion, the public evidence proffered by plaintiffs fails to establish that they are "aggrieved persons" under the FISA and have standing to proceed.  Plaintiffs rely on a string of sheer conjecture in an attempt to prove they were subject to the alleged TSP surveillance in 2004.  But the fact that the President authorized the TSP, that the Government has investigated terrorist financing by charitable organizations like the Al-Haramain Islamic Foundation of Saudi Arabia and its worldwide branches, that plaintiff AHIF-Oregon had been designated as a Specially Designated Global Terrorist, and, indeed, that this designation had been supported by "classified" "intelligence" information, does not establish that the Government electronically surveilled the plaintiffs under the TSP or otherwise—let alone specific telephone conversations that plaintiffs Belew and Ghafoor recall having in March and April 2004.  At most, plaintiffs' evidence could be said to support a finding that *some* classified intelligence information obtained through *some* form of surveillance of *some* persons under *some* authority *may* have contributed to the designation of AHIF-Oregon.  But plaintiffs' evidence clearly does not establish that plaintiffs were subject to surveillance in March-April 2004, let alone electronic surveillance on a wire in the United States, or that any such surveillance was undertaken under the TSP in violation of the FISA, as the plaintiffs allege and must prove in order to proceed.

Indeed, plaintiffs candidly admit that their evidence is "circumstantial" and, at most, raises the possibility that they were electronically surveilled.  They contend that they have adduced enough evidence to shift the burden to the Government to show that plaintiffs' alleged electronic surveillance was authorized by a FISA warrant, or to show that plaintiffs were not in fact electronically surveilled.  But, again, this is precisely what was precluded by the Ninth Circuit when it squarely held that "information as to whether the government surveilled [plaintiffs]" is protected by the state secrets privilege and is categorically barred from use in this litigation.  *Al-Haramain Islamic Foundation*, 507 F.3d at 1203-04.  Where the plaintiffs cannot establish their standing without privileged evidence, the result is not that the Government is either forced to disclose privileged evidence or lose on summary judgment, but that summary

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

judgment must be entered *for* the Government.  *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).  The Court may not exercise "hypothetical" jurisdiction by assuming the existence of standing because the Government declined to disclose state secrets in response to plaintiffs' motion, nor issue an advisory opinion on the lawfulness of a lapsed program alleged to be at issue in this case where any application of that program to these plaintiffs has been protected from disclosure.

## ISSUES TO BE DECIDED

1.   Whether the Court lacks jurisdiction to consider plaintiffs' FISA claim (or any extant claim) on the grounds that: (i) plaintiffs cannot establish standing for prospective relief because the challenged activity is defunct; and (ii) Congress has not waived sovereign immunity with respect to plaintiffs' claim for damages against the United States under 50 U.S.C. § 1810?

2.   Whether the Government is entitled to summary judgment on plaintiffs' FISA claim (or any extant claim) on the grounds that: (i) the Court of Appeals mandate forecloses granting plaintiffs' motion; (ii) plaintiffs have not established with public evidence that they are "aggrieved persons" under FISA or have Article III standing; (iii) the information necessary for plaintiffs to establish their standing or for the Government to respond to any inferences raised by plaintiffs' prima facie case has been protected by the state secrets privilege and barred from use in this litigation by the Ninth Circuit; or (iv) information necessary to address the merits of plaintiffs' claims is also properly protected by the Government's state secrets privilege assertion.

## BACKGROUND

### A.   Initial Proceedings

Plaintiffs are the Al-Haramain Islamic Foundation of Oregon, an entity designated by the United States as a "Specially Designated Global Terrorist," *see* Decl. of Jon B. Eisenberg in Support of Plaintiffs' Motion for Partial Summary Judgment ("Eisenberg Decl.") at Ex. P at 74 (Dkt. 657-3/99-3); First Amended Complaint ("FAC") at ¶ 38 (Dkt. 458/35), and two U.S. citizens, Wendell Belew and Asim Ghafoor, who claim they are attorneys who have had "business and other relationships" with AHIF-Oregon.  *See* FAC at ¶¶ 5, 6.  Plaintiffs allege that, in March and April 2004, they were subject to warrantless foreign intelligence surveillance by the National Security Agency, authorized by the President after the September 11, 2001 attacks.  *See id*. at ¶¶ 32, 33, 35, 52.  Plaintiffs specifically allege that the designation of AHIF-Oregon was based in part on evidence derived from the alleged surveillance.  *Id*. at ¶¶ 1, 52.  Plaintiffs

contend that the alleged surveillance violated the FISA, the First, Fourth, and Sixth Amendments, the separation of powers doctrine, and international law, *id.* at ¶¶ 57-68, and they seek declaratory and injunctive relief, as well as money damages pursuant to 50 U.S.C. § 1810. *Id.* at 16 (Prayer for Relief).

In June 2006, the Director of National Intelligence ("DNI") asserted the state secrets privilege over information implicated by this case, including information that would reveal whether or not plaintiffs have been subject to alleged surveillance under the TSP or any other program, as well as information pertaining to a classified document inadvertently released to the plaintiffs (the "Sealed Document").   *See* Public Declaration of John D. Negroponte, Director of National Intelligence, at ¶ 11(iii), (iv) (Dkt. 59-1) (Civ. 06-274-KI) (D. Or.).   The Government then moved to dismiss on the grounds that evidence protected by the state secrets privilege is necessary to litigate the case.

In September 2006, Judge King of the District of Oregon upheld the Government's state secrets privilege assertion with respect to any information confirming or denying whether plaintiffs' communications have been or continue to be intercepted—except with respect to any prior communications allegedly reflected in the Sealed Document.  *See Al-Haramain v. Bush*, 451 F. Supp. 2d 1215, 1224 (D. Or. 2006), *rev'd*, 507 F. 3d 1190 (9th Cir. 2007).   Judge King concluded that the content of the Sealed Document would not be a secret to plaintiffs in light of its inadvertent disclosure, and held that plaintiffs should be granted an opportunity to attempt to establish their standing as to any alleged surveillance reflected in the document through special *in camera* procedures if necessary.  *See id.* at 1226, 1229.  But this decision was limited to the content of the Sealed Document, and the court otherwise upheld the Government's privilege assertion insofar as it applied to any other alleged surveillance.  *See id.* at 1224 ("based on the record as it stands now, forcing the government to confirm or deny whether plaintiffs' communications have been or continue to be intercepted, other than any communications contained in the Sealed Document, would create a reasonable danger that national security would be harmed by the disclosure of state secrets").  Judge King certified his decision for interlocutory

review, and the Government then appealed to the Ninth Circuit, which granted the petition for review. *See* December 21, 2006 Order, Dkt. No. 96 (Civ. 06-274-KI) (D. Or.).

In November 2007, the Ninth Circuit reversed the denial of the Government's motion to dismiss. The Court of Appeals did not agree with the Government's position the "[t]he very subject matter of the litigation—the [Terrorist Surveillance Program] and the government's warrantless surveillance of persons or entities who, like Al-Haramain, were suspected by the NSA to have connections to terrorists"—was a state secret. *See Al-Haramain*, 507 F.3d at 1198. But the court went on to observe that in some cases "the suit itself may not be barred because of its subject matter and yet, ultimately, the state secrets privilege may nonetheless preclude the case from proceeding to the merits." *Id*. The court then addressed the Government's assertion of privilege over (1) whether al-Haramain was subject to surveillance; and (2) the Sealed Document. *Id.* at 1202. The court reviewed the Government's declarations (both publicly filed and those filed under seal) and concluded that "the basis for the privilege is exceptionally well documented." *Id.* at 1203. The court held that information concerning whether the Government surveilled Al-Haramain, as well as the information in the Sealed Document, were protected by the state secrets privilege and were thus "completely barred from further disclosure in this litigation." *Id.* at 1203-05. The Ninth Circuit then went on to hold that without use of the information protected by the state secrets privilege, "Al-Haramain cannot establish that it has standing . . ." *Id.* at 1205. Indeed, the court specifically observed that "[i]t is not sufficient for Al-Haramain to speculate that it might be subject to surveillance under the TSP simply because it has been designated a 'Specially Designated Global Terrorist.'" *Id*.; *see also id.* at 1203.[3]

---

[3] The Ninth Circuit's decision did not pertain solely to protection of the contents of the Sealed Document but extended specifically and more generally to information concerning "whether Al-Haramain was subject to surveillance." *See Al-Haramain*, 507 F.3d at 1202 (identifying two separate state secret privilege issues and resolving both in the Government's favor); *see also id.* at 1203 ("[W]e conclude that the Sealed Document is protected by the state secrets privilege, along with the information as to whether the government surveilled Al-Haramain."); *id.* (addressing the question of "whether Al-Haramain has been subject to NSA surveillance") *id.* at 1205 (affirming that "the Sealed Document, along with data concerning surveillance," are privileged).

Lastly, the Ninth Circuit declined to decide a separate issue raised by plaintiffs on appeal—whether the FISA preempts the state secrets privilege—on which the district court had chosen not to rule.  Noting that courts of appeal should not consider issues not first passed on below, the Ninth Circuit remanded for this Court to consider whether FISA preempts the state secrets privilege and for any proceedings collateral to that determination.  *Id*. at 1205-06.

## B.    Remand Proceedings

Following the Ninth Circuit's remand, the Government again moved to dismiss or for summary judgment and addressed the FISA preemption issue remanded by the Court of Appeals as well as other threshold jurisdictional issues.  The Government argued that because plaintiffs' complaint seeks prospective relief concerning alleged warrantless surveillance under the TSP, and that program lapsed in January 2007, plaintiffs could not establish standing to obtain prospective declaratory and/or injunctive relief with respect to the alleged surveillance at issue.  *See* Defs. 2d MSJ Mem. (Dkt. 432/17) at 17-18.  In addition, the Government argued that the Court lacks jurisdiction to consider plaintiffs' retrospective claim for damages against the United States under 50 U.S.C. § 1810 because that provision does not waive the sovereign immunity of the United States.  *See id*. at 18-22.  Finally, the Government argued that, even if jurisdiction exists, FISA Section 1806(f) does not preempt the state secrets privilege.[4]  The Government argued that Section 1806(f) applies solely to cases where the use of evidence based on electronic surveillance is at issue and the Government has acknowledged such surveillance, and that Section 1806(f) cannot be read to compel the Government to disclose (or risk the disclosure of) information concerning intelligence sources and methods that the Government chooses to protect.  *See id*. at 22-35.

---

[4]  Section 1806(f) is part of 50 U.S.C. § 1806, which governs the "use of information" obtained through the FISA in judicial and other proceedings and, in sum, establishes procedures for *in camera*, *ex parte* review by district courts of applications, orders, and other materials related to electronic surveillance in the circumstances described in Section 1806 if the Attorney General of the United States files an affidavit attesting that disclosure of such information or an adversary hearing would harm national security.  *See* Defs. 2d MSJ (Dkt. 432/17) at 25-31; Defs. 2d MSJ Reply (Dkt. 446/29) at 16-25.

In a decision entered on July 2, 2008, the Court held that the *in camera* procedure described in FISA's Section 1806(f) preempts the state secrets privilege "as to matters to which it relates" and also rejected the Government's jurisdictional arguments. *Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109, 1119 (N.D. Cal. 2008). But the Court noted that its holding did "not necessarily clear the way for plaintiffs to pursue their claim for relief against these defendants under FISA's section 1810," because only a litigant who establishes that he or she is an "aggrieved person" may take advantage of procedures under Section 1806(f). *Id.* at 1125. The Court rejected the Government's contention that the special procedures for judicial review established in Section 1806(f) applied solely when invoked by the Attorney General in discovery matters concerning the use of evidence derived from acknowledged surveillance. *Id.* at 1132-34. But the Court also rejected the view that a litigant could use Section 1806(f) to discover in the first instance whether it was "aggrieved"—*i.e.*, the target of or subject to electronic surveillance, *see id.* at 1134-35—and, instead, held that "a litigant must first establish himself as an 'aggrieved person' before seeking to make a 'motion or request'" under 1806(f). *Id.* at 1134.

The Court further held that plaintiffs were precluded from using the Sealed Document to establish that they were "aggrieved" because the Ninth Circuit had ruled "unequivocally" that the document was protected by the state secrets privilege and thus was unavailable for use in the adjudication of plaintiffs' claims. *Id.* at 1134; *see also id.* at 1130-31. The Court dismissed plaintiffs' complaint without prejudice but gave plaintiffs the opportunity to amend their complaint to allege "enough specifics based on non-classified evidence to establish their 'aggrieved person' status under FISA." *Id.* at 1135, 1137.

C.   **Plaintiffs' Amended Complaint and Subsequent Proceedings**

On July 29, 2008, plaintiffs filed an amended complaint seeking to meet their burden under the Court's July 2, 2008 Order. *See* Dkt. 458/35. In the FAC, plaintiffs referred to various public statements and reports in an effort to establish that they have been subject to alleged warrantless surveillance in violation of the FISA. The Government filed a third dispositive

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

motion that specifically moved for summary judgment on the question of Article III standing and argued that the FAC did not establish that plaintiffs were "aggrieved persons" under the FISA, and plaintiffs therefore lacked standing to proceed under Section 1806(f).  *See* Defs. 3rd MSJ Mem. (Dkt. 475/49).  The Government argued that plaintiffs' public evidence fell far short of establishing that they had been subject to the alleged warrantless surveillance but, at most, could be said to show that it was *possible* the plaintiffs had been subject to electronic surveillance because they claim to have spoken on the phone with an individual associated with an entity associated with al Qaeda, and that the TSP targeted persons associated with al Qaeda.[5]

In an order entered on January 5, 2009, the Court denied the Government's third dispositive motion and ordered further proceedings in response to plaintiffs' motion for discovery under Section 1806(f).  *Al-Haramain Islamic Found. v. Bush*, 595 F. Supp. 2d 1077, 1089 (N.D. Cal. 2009).  In denying the Government's motion, the Court specifically declined to consider the Government's contention that plaintiffs had not established standing for purposes of summary judgment, and held that plaintiffs had alleged sufficient facts to show their "aggrieved person" status to withstand a motion to dismiss, explaining that "*proof* of plaintiffs' claims is not necessary at this stage."  *See id.* at 1085; *see also id.* at 1086 (finding that "plaintiffs had alleged enough to plead 'aggrieved person' status so as to proceed to the next step in proceedings" under Section 1806(f)).  The Court indicated that disclosure of classified information to plaintiffs' counsel would be necessary to afford plaintiffs due process and directed the Government to process security clearances for plaintiffs' counsel.  *See id.* at 1089.

Concerned that the Order would result in an actual disclosure of privileged information without the opportunity for further review, the Government sought interlocutory and direct appeal of the Court's Jan. 5, 2009 Order.  This Court declined to certify the case for interlocutory review, and the Ninth Circuit dismissed the Government's appeal for lack of jurisdiction in the face of plaintiffs' contention that no actual disclosure of classified information had yet been

---

[5]  The Government also preserved its jurisdictional arguments.  Plaintiffs simultaneously filed a motion to discover or obtain material relating to electronic surveillance under Section 1806(f) (Dkt. 472/46), which the Government opposed.  (Dkt. 499/51).

ordered by the Court.  Nonetheless, as the case proceeded, the Government continued to oppose the disclosure of classified information to plaintiffs' counsel in further proceedings under Section 1806(f), based on the Government's determination that plaintiffs' counsel do not have a "need to know" the classified information.  *See* Defs.' Resp. to Ct. Orders Concerning Compliance with Jan. 5 Order (Dkt. 576/77) at 4-6.  On April 17, 2009, the Court ordered the parties to meet and confer regarding the entry of a protective order.  *See* April 17, 2009 Order (Dkt. 600/84).  The parties met and conferred and filed a joint submission on May 15, 2009, but did not reach agreement on the terms of a protective order.  *See* Dkt. 626/89.  The Government objected to plaintiffs' proposed order and to providing plaintiffs' counsel access to classified information in the circumstances of this case.  *See id.* at 12-28.

On May 22, 2009, the Court issued an order to show cause why the Government should not be sanctioned for failing to agree to plaintiffs' proposed protective order or to propose an alternative.  *See* Dkt. 630/90.  The Court also ordered plaintiffs to submit a memorandum addressing whether it would be appropriate for them to now file a motion for summary judgment on their FISA claim.  The Government argued in response that the Court should not sanction it for refusing to voluntarily stipulate to a protective order.  *See* Dkt. 636/93.  Plaintiffs proposed that they be permitted to file a motion for summary judgment based on the public evidence set forth in their amended complaint and on the classified Sealed Document.  *See* Dkt. 634/91.

After hearing argument on the Order to Show Cause, the Court entered an order on June 5, 2009, directing plaintiffs to move for summary judgment on their FISA claim based only on non-classified evidence.  *See* Dkt. 643/96.  It further ordered that if the Government were to rely upon the Sealed Document or other classified evidence in response, the Court would then enter a protective order and produce such classified evidence to plaintiffs' counsel who have obtained security clearances.  Otherwise, the Court indicated it would consider the motion on non-classified evidence.  *See id.*

## ARGUMENT

**I.   THE COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' FISA CLAIM OR ANY OTHER EXTANT CLAIM.**

Before addressing the issues raised by plaintiffs' motion, the Government Defendants must expressly preserve for this round of summary judgment two threshold jurisdictional issues that we believe should foreclose any further proceedings in this case:  that plaintiffs cannot establish standing for any prospective relief in light of the lapse of the challenged activity (even if it had applied to them); and that the Court lacks jurisdiction to consider plaintiffs' claim for retrospective damages.

**A.   Plaintiffs Have Only One Extant Claim—for Retrospective Damages Under FISA Section 1810—and All Other Claims for Prospective Relief Are Foreclosed.**

Plaintiffs' motion for partial summary judgment seeks a determination of "liability" in this case—but only as to one of their claims:  a claim for damages brought pursuant to FISA Section 1810 on the ground that the alleged surveillance constituted electronic surveillance in violation of Section 1809 of the FISA.  Plaintiffs purport to reserve all of their other claims raised in the FAC, *see* Pls. MSJ (Dkt. 657/99) at 39 n.5, based on alleged violations of the First, Fourth, and Sixth Amendments, the Separation of Powers Doctrine, and international law.  *See* FAC (Dkt. 458/35) ¶¶ at 59-68.  But Section 1810 of the FISA does not authorize a claim for damages against the Government for these other alleged violations of law, and plaintiffs' amended complaint cites no statutory or other basis for seeking damages for these claims.  Rather, these non-FISA claims seek prospective declaratory and injunctive relief against alleged TSP surveillance.

The presidential authorization for the TSP, under which plaintiffs allege they were subject to warrantless surveillance, ceased in January 2007.  *See* Dkt. 127 (M:06-1791-VRW).  As we have previously argued,[6] even where a plaintiff alleges that his rights were violated in the past, he lacks standing to obtain prospective relief absent a "real and immediate threat" that he

---

[6]  *See* Defs. 2d MSJ (Dkt. 432/17) at 17-18; Defs. 2d MSJ Reply (Dkt. 446/29) at 7-8.

will suffer the same injury in the future.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983).

Alleged "past wrongs do not in themselves amount to that real and immediate threat of injury

necessary to make out a case or controversy."  *Id.* at 103 (citing *O'Shea v. Littleton*, 414 U.S.

488, 494 (1974) and *Rizzo v. Goode*, 423 U.S. 362, 372 (1976)).  This "imminence requirement

ensures that courts do not entertain suits based on speculative or hypothetical harms."  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 564 (1992).  Rather, plaintiffs must "demonstrate that they

are 'realistically threatened by a repetition of the [alleged] violation.'"  *Gest v. Bradbury*, 443

F.3d 1177, 1181 (9th Cir. 2006); *see also Lyons*, 461 U.S. at 102.  Thus, to obtain prospective

injunctive relief against the alleged presidentially-authorized warrantless surveillance in 2004

challenged in the amended complaint, plaintiffs must establish that they are presently subject to

that surveillance or imminently threatened by such surveillance.

     The Court's July 2, 2008 decision concluded that "[i]f plaintiffs can show they are

'aggrieved' as [FISA] section 1810 contemplates, then plaintiffs have adequately demonstrated

injury for purposes of establishing Article III standing."  *Al-Haramain*, 564 F. Supp. 2d at 1124.

But Section 1810 of the FISA concerns solely a claim for retrospective damages, and even if

plaintiffs could establish that they were "aggrieved persons" subject to surveillance in 2004 for

purposes of their FISA claim, that still would not establish standing for obtaining prospective

relief as to alleged conduct that is no longer occurring.  *See* Defs. 2d MSJ Reply (Dkt. 446/29) at

7-8.  None of plaintiffs' non-FISA claims for prospective relief survive.  And, in any event,

declaratory and injunctive relief are equitable and should for similar reasons be denied as a

prudential matter.[7]

---

    [7]  After the Court directed plaintiffs to file a motion for summary judgment, plaintiffs
opted to do so only as to one of the claims raised in their amended complaint.  To the extent
plaintiffs' other claims remain extant, none of them can be adjudicated for the reasons set forth
herein, and the Government seeks summary judgment as to all of them.

**B.      Congress Has Not Waived Sovereign Immunity to Bring Claims Against the United States for Damages Under FISA Section 1810.**

As for the claim on which plaintiffs now seek retrospective damages, the Government respectfully and briefly preserves its position that Section 1810 of the FISA does not waive the sovereign immunity of the United States.  Congress expressly waived sovereign immunity of the United States in several provisions of the FISA that authorize suits for damages against the Government, but not as to claims raised under FISA Section 1810.[8]/  While the Court ruled that such a waiver is "implicit" in Section 1810, *see Al-Haramain*, 564 F. Supp. 2d at 1125, the law requires that such waivers be explicit.  *See* Defs. 2d MSJ Reply (Dkt. 446/29) at 9 (citing *Multi Denominational Ministry of Cannabis v. Gonzales*, 474 F. Supp. 2d 1133, 1140 (N.D. Cal. 2007)).  At best, Section 1810 is ambiguous on the matter (as finding an "implicit" waiver would indicate), and hence no waiver of sovereign immunity can be found.  *See* Defs. 2d MSJ Reply (Dkt. 446/29) at 9 (citing *United States v. Nordic Village*, 530 U.S. 30, 34-37 (1992)).

In sum, to the extent this case now proceeds, it does so against the backdrop where the challenged activity that plaintiffs allege was applied to them has now lapsed, and the only basis for retrospective relief is a cause of action for damages that does not expressly authorize claims against the United States.  This compounds the futility of any attempt to find Article III jurisdiction based on the speculative and conjectural public evidence on which plaintiffs rely to reach the merits of a claim against a now defunct program.

**II.      THE GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FISA CLAIM AND ANY REMAINING CLAIM.**

To the extent the Court continues to find it has jurisdiction to proceed, plaintiffs' motion for partial summary judgment on their claim for damages under FISA Section 1810 should be denied, and summary judgment should be entered for the Government on this and all claims, for several reasons.  First, the course on which the case is now proceeding—an attempt to determine standing and reach the merits based on non-privileged public evidence—is foreclosed by the mandate of the Ninth Circuit, which held that plaintiffs cannot establish their standing without

---

[8]  *See* Defs. 2d MSJ (Dkt. 432/17) at 18-22; Defs. 2d MSJ Reply (Dkt. 446/29) at 9-12.

privileged information, and which remanded the case solely for a determination of whether the privilege assertion is preempted by the FISA. As set forth below, the case is not proceeding under the FISA at this juncture and the standing issue raised by the plaintiffs' motion already has been resolved by the Court of Appeals.

Second, assuming, *arguendo*, the Court proceeds to consider whether plaintiffs have standing based on non-privileged evidence, plaintiffs fail to satisfy their burden of proof on summary judgment that they are "aggrieved persons" under the FISA—*i.e.*, that they were the target of or subject to electronic surveillance—or that any such surveillance was undertaken without court authorization, or that plaintiffs otherwise have Article III standing to proceed. While the Court previously accepted the evidence on which plaintiffs again rely to raise a "prima facie" inference that they were surveilled, it did so only in considering whether plaintiffs could proceed past the pleading stage (indeed, the Court declined to consider the Government's prior summary judgment motion challenging the sufficiency of the very same evidence). *See Al-Haramain*, 595 F. Supp. 2d at 1084-85. But what may have been sufficient to proceed past the pleading stage is not sufficient to establish actual proof on summary judgment. Plaintiffs are now required to set forth specific, uncontroverted facts establishing that they were the targets of, or have been subjected to, warrantless electronic surveillance. Plaintiffs instead continue to rely on the same speculative "inferences" and conjecture that plainly fail to establish their standing.

Recognizing this, plaintiffs contend that it is the Government's burden to either dispute or disprove their standing, including by demonstrating the existence of any FISA warrant. But even if the burden could shift to the Government on the question of standing (which the Government disputes), plaintiffs' position essentially concedes that information protected by the state secrets privilege is necessary to litigate the matter—either for plaintiffs to meet their burden of proof or for the Government to respond to plaintiffs' "inferences" of injury. While the burden may shift in other contexts where a party uniquely holds evidence, the law requires dismissal or summary judgment where information properly protected by the state secrets privilege is necessary to adjudicate an issue, including standing.

1   Finally, where, as here, information protected by the state secrets privilege may be

2   necessary to adjudicate the merits of plaintiffs' claims, those claims cannot proceed for this

3   reason as well.

### A.   Plaintiffs' Attempt to Prove Standing and Reach the Merits Is Foreclosed By the Mandate of the Ninth Circuit in This Case.

5   The Ninth Circuit's decision in this case establishes that, "[o]nce properly invoked and

6   judicially blessed, the state secrets privilege is not a half-way proposition." *Al-Haramain*, 507

7   F.3d at 1193.  The court accordingly determined that, where, as here, information is found to be

8   a privileged state secret, there could be only two ways in which the case could proceed: "(1) if

9   the plaintiffs can prove 'the essential facts' of their claims 'without resort to material touching

10  upon military secrets,' or (2) in accord with the procedure outlined in FISA." 507 F.3d at 1204

11  (internal citation omitted).  But the Court of Appeals then went on to squarely foreclose the first

12  course in this case, holding unambiguously that "Al-Haramain cannot establish that it has

13  standing" without privileged information.  *See* 507 F.3d at 1205.  In doing so, the court

14  addressed two intertwined claims of privilege—(1) whether plaintiffs were subject to

15  surveillance and (2) the Sealed Document (referring generally to both as the "Sealed

16  Document").  *Id*. at 1202.  The panel unanimously ruled that because "the Sealed Document,

17  along with data concerning surveillance, are privileged . . . *Al-Haramain cannot establish that it*

18  *has standing* . . . ."  *Id.* at 1205 (emphasis added).[9]

19  The Ninth Circuit also explained that no further proceedings to litigate plaintiffs'

20  claims—other than those possibly contemplated by FISA—were possible because "even

21  well-reasoned speculation as to [the] contents" of the Sealed Document "are completely barred

22  from further disclosure in this litigation."  *See* 507 F.3d at 1204-205.  Indeed, the court stated

23  that such "speculat[ive]" factual contentions necessarily and impermissibly would involve

24  "material touching' upon privileged information."  *Id.* at 1204; *cf. id.* at 1205 (explaining that

---

26      [9] Indeed, the court noted that the plaintiffs have indicated that their ability to establish
27  injury-in-fact "hinges entirely" on privileged information and that plaintiffs had "essentially
    conceded that [they] cannot establish standing without reference to the Sealed Document."  *See*
    *Al-Haramain*, 507 F.3d at 1205.

28

"speculat[ion]" that plaintiffs might have been surveilled based on its designation as a Specially Designated Global Terrorist would be "[in]sufficient" to establish injury).

The Court of Appeals therefore ruled that "the FISA issue remains central to Al-Haramain's ability to proceed with this lawsuit" in light of its holding that "Al-Haramain cannot establish that it has standing, and its claims *must be dismissed*, unless FISA preempts the state secrets privilege."  *See* 507 F.3d at 1205-206 (emphasis added).  The court then ordered a limited "remand for determination of" plaintiffs' contention that FISA displaces the state secrets privilege, specifically directing a "remand to the district court to consider whether FISA preempts the state secrets privilege and for any proceedings collateral to that determination." *Id.* at 1193, 1206.

While this Court determined on remand that the *in camera* review procedure described in FISA's Section 1806(f) preempts the state secrets privilege "as to matters to which it relates,"*Al-Haramain*, 564 F. Supp. 2d at 1119, it has not ordered a Section 1806(f) proceeding at this stage and is not using the procedures that it found had preempted the state secrets privilege.  The Court ruled in January 2009 that the plaintiffs had made a sufficient enough *prima facie* case of their "aggrieved status" at the pleading stage and granted plaintiffs' motion for discovery under Section 1806(f).  *See Al-Haramain*, 595 F. Supp. 2d at 1086 ("plaintiffs have alleged enough to plead 'aggrieved person' status so as to proceed to the next step in proceedings under FISA's Section 1806(f) and 1810.").  But after the Government objected to Section 1806(f) procedures, including granting plaintiffs' counsel access to classified information, the Court declined to proceed down that path and, instead, ordered plaintiffs to move for summary judgment based only on non-classified evidence.  *See* June 5, 2009 Order (Dkt. 643/96).  In addition, because the Government has not responded to plaintiffs' instant motion with classified information, the specific term of the June 5 Order under which the Court would have granted plaintiffs' access to such information over the Government's objection, *see id.*, is not operative.  Instead, the Court directed that the pending motions would be decided based solely on non-classified evidence.  *Id.*

Thus, as matters now stand, the procedures of Section 1806(f) are not being utilized and

1    the case is effectively where it was when the Court of Appeals ruled: the state secrets privilege

2    requires dismissal of the case unless preempted by the *in camera* proceedings authorized by the

3    FISA.  Under these circumstances, where the sole issue presently before the Court is whether

4    non-privileged evidence establishes standing, the very effort to litigate the question of standing

5    contravenes the Ninth Circuit's mandate.

6         The Government, of course, continues to disagree with the Court's holding that FISA

7    preempts the state secrets privilege, and we would again object to proceeding under FISA

8    Section 1806(f), which in our view would risk or require the disclosure of the privileged

9    information.  *See* Joint Submission in Response to April 17 Order (Dkt. 626/89) at 12-28.  The

10   Government also would again object specifically to any disclosure of classified information to

11   plaintiffs' counsel.  *See id.*  As previously indicated, the Government submits the proper course

12   would have been for the Court to certify its decision on FISA preemption for appellate review

13   before any further proceedings.  In any event, the course on which the case is now embarked of

14   attempting to litigate the issue of standing outside of the FISA has been foreclosed by the Ninth

15   Circuit and, therefore, dismissal is now required.[10]/

16       **B.    Plaintiffs Bear the Burden of Proving an Actual Concrete Injury
            to Establish Standing Under Article III of the Constitution**.

17       To the extent the Court considers plaintiffs' motion for partial summary judgment, it

18   should be denied, and summary judgment should be entered for the Government, on the ground

19   that the plaintiffs have failed to bear their burden of proof to establish their standing to proceed.

20       It is well established that the "judicial power of the United States defined by Article III of

21   the Constitution is not an unconditioned authority to determine the constitutionality of legislative

22   or executive acts" but, rather, is limited to the resolution of "cases" and "controversies."  *Valley*

23   *Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S.

24   464, 471 (1982); *Lujan*, 504 U.S. at 559-60.  To establish standing, plaintiffs must satisfy three

25   requirements.  "At an irreducible minimum, Art. III requires the party who invokes the court's

26

27       [10]   As set forth below, even if the Court has not entirely foreclosed future Section 1806(f)
         proceedings, plaintiffs have failed to establish standing necessary to reach them.

28   Notice Motion/Memorandum Government's 4th Motion Dismiss/Summary Judgment; Opposition to Plaintiffs'
     Motion Partial Summary Judgment *Al-Haramain v. Obama* (07-cv-109-VRW) (MDL 06-cv-1791-VRW)   -16-

authority to show [1] that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that [2] the injury fairly can be traced to the challenged action, and [3] is likely to be redressed by a favorable decision." *Valley Forge*, 454 U.S. at 472 (internal citations omitted); *see also Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 104 (1998); *Lujan*, 504 U.S. at 560.  The elements of injury, traceability, and redressability present distinct considerations, *Steel Co.*, 523 U.S. at 103, 107 n.7, and a party must satisfy all three elements.  In addition, the requisite injury must be "concrete and particularized," and "actual or imminent," not "conjectural" or "hypothetical."  *Lujan*, 504 U.S. at 560; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Lyons*, 461 U.S. at 101-02.  Only a plaintiff who identifies this sort of concrete injury-in-fact has "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

A party who seeks to invoke the jurisdiction of the court bears the burden of establishing Article III standing.  *Steel Co.*, 523 U.S. at 104; *Lujan*, 504 U.S. at 561; *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Warth*, 422 U.S. at 508.  Since the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," for on a motion to dismiss the Court may "presume that general allegations embrace those specific facts that are necessary to support the claim."  *See id.*  In response to a summary judgment motion, however, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" establishing their standing.  *See id.*  Purported evidence that "contains only conclusory allegations, not backed up by statements of fact . . . cannot defeat a motion for summary judgment."  *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989).

In addition, even where courts consider the distinct question of prudential standing, which concerns whether the "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief," Article III standing requirements remain and must be satisfied. *Warth*, 422 U.S. at 500-01. That is, even if a party could show that the interest they seek to vindicate falls within the interest protected or regulated by statute, that would not be "an affirmative means of establishing standing." *American Civil Liberties Union v. Nat'l Security Agency*, 493 F.3d 644, 677 n. 35 (6th Cir. 2007) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984); *Valley Forge*, 454 U.S. at 474-75). Where the actual or threatened injury "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing," the minimum Article III standing requirements still apply and "serve to limit the role of the courts in resolving public disputes." *See Warth*, 422 U.S. at 500.

Accordingly, plaintiffs must satisfy Article III standing requirements at the summary judgment stage before their claim under Section 1810 could proceed. Specifically, to establish their "aggrieved" status under the FISA, plaintiffs must set forth specific facts establishing that they have suffered an actual personal, concrete, particularized injury—that is, that they were the "target" of electronic surveillance or that their communications were intercepted and they were thus "subject to" electronic surveillance. *See* 50 U.S.C. § 1801(k). In addition, the particular injury plaintiffs allege is that they have been subjected to warrantless electronic surveillance. *See* FAC ¶ 17, 52(a), 58, 60, 62, 64, 66 (challenging alleged warrantless surveillance of the plaintiffs under the TSP). Thus, as they concede, plaintiffs must prove not merely that they were subject to surveillance, and that they were subject to electronic surveillance as defined by the FISA, but that any such surveillance was undertaken without judicial authorization in violation of Section 1810. *See* Pls. MSJ (Dkt. 657/99) at 18. In so doing, plaintiffs cannot rely on speculation and conjecture but must produce "independent evidence disclosing that plaintiffs have been surveilled." *See Al-Haramain*, 564 F. Supp. 2d at 1135.

C.    **Plaintiffs' Evidence Fails to Establish That They Have Been Subject to the Alleged Warrantless Surveillance Challenged in This Case.**

Plaintiffs' evidence fails to establish that they have been subject to the alleged warrantless surveillance at issue.  Indeed, even plaintiffs contend that, at most, their public evidence—all circumstantial—raises an inference that plaintiffs have been the target of or subject to warrantless electronic surveillance.  While the Court concluded that plaintiffs' evidence may have been sufficient to survive a motion to dismiss at the pleading stage, such evidence fails at the summary judgment stage.  Plaintiffs' evidence is no more than a string of speculation that fails to demonstrate that plaintiffs were in fact subject to any surveillance, that any such surveillance was "electronic surveillance" as defined by the FISA, or that any such surveillance was undertaken without judicial authorization.

The public evidence on which plaintiffs rely can be summarized as follows:

\*    Under the Terrorist Surveillance Program, which was authorized by the President in the weeks after September 11, 2001, NSA intercepted international communications of individuals reasonably believed to be associated with al Qaeda or affiliated terrorist organizations. *See* Pls. MSJ (Dkt. 657/ 99) at 10-11.

\*    In February 2004, the Government blocked the assets of AHIF-Oregon pending further investigation of AHIF-Oregon's financial support of international terrorism.  *See id.* at 12

\*    After phone conversations between plaintiffs Belew and Ghafoor and a director of AHIF-Oregon located in Saudi Arabia (Mr. al-Buthe) between March and June of 2004 included references to people associated with Usama bin-Laden, the Government later "formally designated" AHIF-Oregon in September 2004 as a Specially Designated Global Terrorist and specifically cited "direct links" it had with bin-Laden.  *See id.* at 13-15.

\*    The FBI has stated that it utilized "surveillance" in an investigation of al-Haramain in 2004, and the Treasury Department has stated that it relied on classified information to designate AHIF-Oregon as a terrorist organization associated with al Qaeda and bin-Laden.  *See id.* at 14, 15;[11]/

\*    Testimony by Government officials that "most" telecommunications between the United States and abroad are transmitted on a wire, from which plaintiffs deduce the "probability" that any interception of their March 2004 phone calls would have been on a wire inside the United States and, thus, "electronic surveillance" under the FISA.  *See id.* at 16.

\*    A purported statement by DOJ counsel during oral argument in *ACLU v. NSA* that attorneys

---

[11]    Plaintiffs rely on Exhibit Q to the Eisenberg Declaration for the proposition that the Sealed Document was related to the terrorist designation of AHIF.  *See* Pls. MSJ (Dkt. 657/99) at 14.  However, as noted above, the Court excluded use of the Sealed Document in consideration of plaintiffs' motion for summary judgment.

1    representing terrorist clients are more likely to be subject to surveillance under the TSP than
     the average person in the U.S. talking to a person in the Middle East.  *See id.* at 16-17.

2    *    The Government acknowledged that Mr. al-Buthe was intercepted speaking to another
          acknowledged target of surveillance in February 2003.  *See id.* at 17.

3           The foregoing evidence falls far short of establishing that the Government conducted

4    warrantless electronic surveillance under the TSP of plaintiffs' conversations in March and April

5    2004.  Viewed individually or as a whole, the mere fact that the TSP targeted al Qaeda-related

6    communications, and that AHIF-Oregon was designated for providing support to al Qaeda or

7    bin-Laden, and that the designation was based in part on classified evidence, and that plaintiffs

8    allegedly had phone conversations with an AHIF-Oregon officer who mentioned bin-Laden

9    associates, does not establish that these plaintiffs have been the target of or subject to

10   surveillance, let alone electronic surveillance, or warrantless electronic surveillance under the

11   TSP.[12]  Rather, what plaintiffs' evidence amounts to is an argument that they *could* have been

12   subject to surveillance under the TSP based on the focus of that program, their association with

13   AHIF-Oregon and communications with AHIF-Oregon officials overseas, and their inferences

14   drawn from public statements that the designation of AHIF-Oregon was based in part on

15   classified information and referred to direct links to Usama bin-Laden.  This simply does not

16   constitute "independent evidence disclosing that plaintiffs have been surveilled," *see Al-

17   Haramain*, 564 F. Supp. 2d at 1135, let alone that they had been subject to electronic

18   surveillance that did not comply with FISA.  *See also Al-Haramain*, 507 F.3d at 1205 ("It is not

19   sufficient for Al-Haramain to speculate that it might be subject to surveillance under the TSP

20   simply because it has been designated a 'Specially Designated Global Terrorist.'"); *ACLU v.

21   NSA*, 493 F.3d at 653  ("reasonable . . . well founded belief" of interception under the TSP on the

22   ground, *inter alia*, that plaintiffs represented individuals suspected by the Government of being

23   associated with al Qaeda, and talked to those individuals overseas in connection with that

24

25

26   [12]  Likewise, nothing in the public testimony concerning a dispute in Executive Branch
     deliberations in March 2004, *see* Pls. MSJ (Dkt. 657/99) at 11-12, 23, in any way indicates or

27   supports a finding that plaintiffs were subject to warrantless surveillance or, indeed, what that
     matter was specifically about.

28

1
2

representation, and, thus, were "the types of people targeted by the NSA" under the TSP established only mere possibility of TSP surveillance and not sufficient to establish standing); *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (greater likelihood or risk than the populace at large of being the type of person subject to surveillance insufficient to establish standing).

3
4
5

In addition, nothing plaintiffs cite would establish that any alleged surveillance of plaintiffs would necessarily have occurred on a wire in the United States in violation of the FISA.  The Government may utilize different methods for undertaking surveillance of al Qaeda-affiliated organizations and individuals, including surveillance under authority of the FISA itself, surveillance information obtained from foreign or human sources, or surveillance undertaken overseas—that is, collected outside the United States and not on a wire in this country.  Thus, even if the plaintiffs had been subject to surveillance (which itself is not established by the evidence cited), nothing establishes how such surveillance may have occurred.  The public testimony on which plaintiffs rely to prove that any interception of their communications must have occurred on a wire inside the United States suggests nothing of the kind.  The cited testimony did not even address, let alone remotely indicate, where or how particular communications at issue in a lawsuit may have been intercepted (if they were at all).[13]

6
7
8
9
10
11
12
13
14
15
16
17

Moreover, plaintiffs' own evidence undercuts the conclusions they draw from it.

18
19
20
21
22
23
24
25
26
27
28

---

[13] The cited testimony concerned whether FISA should be amended to enable the Government to target the communications of foreign persons overseas without an individual court order (authority ultimately granted in the Foreign Intelligence Surveillance Act of 1978 Amendments of 2008).  Government officials addressed the relative difference between the percentage of communications that were originally subject to the FISA when enacted in 1978 (local calls transmitted on a wire) and those that were not (international long distance calls transmitted via airwaves), and explained how changes in communication technology have reversed this relative balance.  *See* Eisenberg Decl. Exs. V-X (Dkt. 657-4/99-4).  In the course of that testimony, the Government indicated that the interception of certain communications emanating overseas and transmitted on a wire into the United States would have required judicial approval under the FISA.  But this testimony does <u>not</u> indicate that "most" international communications *that are intercepted* are taken off a wire in the United States—indeed, the testimony does not even address the relative balance of where or how communications may be intercepted, let alone establish proof or even a reasonable inference concerning whether or how any particular communication may have been acquired.

Plaintiffs' evidence shows that AHIF's world-wide branches had been linked to al Qaeda and bin-Laden well before plaintiffs' March-April 2004 phone conversations.  For instance, on September 25, 2003—months before the alleged surveillance—the FBI reported to Congress on the connection between the Bosnia and Somalia branches of the Al-Haramain Islamic Foundation of Saudi Arabia and the financial and logistical support provided to al-Qaeda by associates of Usama bin Laden.  *See* Ex. L to Eisenberg Declaration (Dkt. 657-3/99-3) at 60.  Likewise, a Treasury Department press release of February 19, 2004, which announced that a search warrant had been executed against AHIF-Oregon and that its assets had been blocked pending further investigation, also illustrates longstanding ties between AHIF as a whole, al Qaeda, and Usama bin-Laden.  *See* Ex. K to Eisenberg Declaration (Dkt. 657-3/99-3) at 54.  The press release makes specific reference to the fact that in March 2002—two years before plaintiffs' alleged conversations—several branches of AHIF worldwide (in Bosnia, Somalia, Indonesia, Tanzania, Kenya, and Pakistan) had been designated as associated with terrorism, including pursuant to UN Security Council Resolution 1267.  *Id.*  The September 2004 Treasury Department press release cited by plaintiffs also refers to links between AHIF branches and officials to al Qaeda and bin Laden, including ties to al Qaeda terrorists responsible for the 1998 embassy bombings in Kenya and Tanzania, as well as AHIF-Oregon's link to funds provided to Chechen leaders associated with al Qaeda.  *See* Ex. P to Eisenberg Declaration (Dkt. 657-3/99-3) at 74.[14]  Other public evidence on which plaintiffs rely cited AHIF's "long-standing and significant support, through its international branches" of al Qaeda "dating as far back as its 1998 bombings of the U.S. Embassies in Kenya and Tanzania" and adds that AHIF-Oregon "was an active arm in this worldwide organization, and its operations, including its direct funding to AHIF in Saudi Arabia, enabled the global AHIF to continue supporting terrorist activities."  *See* Ex. R to Eisenberg Declaration (Dkt. 657-3/99-3) at 83 (Feb. 6, 2008 Letter from OFAC to Plaintiffs' Counsel).  Thus, the publicly available information on which plaintiffs rely to

---

[14] UN Resolution 1267, in particular, linked AHIF entities to al Qaeda, Usama bin-Laden, and the Taliban, and subjected these organizations to international sanctions.  *See* Ex. P to Eisenberg Declaration (Dkt. 657-3/99-3).

establish their standing refutes the notion that links between AHIF-Oregon and al Qaeda or bin-Laden must have been based on an alleged interception of plaintiffs' communications in March 2004.

Likewise, plaintiffs' reference to public statements by FBI officials about terrorist-financing investigations not only fails to establish that plaintiffs were subject to alleged warrantless electronic surveillance, but undermines that contention. Plaintiffs cite a speech by FBI Deputy Director John S. Pistole on October 22, 2007, for the proposition that "the FBI 'used . . . surveillance' in connection with the 2004 investigation of Al-Haramain Oregon." *See* Pls. MSJ (Dkt. 657/99) at 15 (citing Ex. S to Eisenberg Decl.). Here is what Deputy Director Pistole said about Al-Haramain in the speech cited:

> Some of you may have heard of the Al Haramain Islamic Foundation. It was a charity based in Saudi Arabia, with branches all over the world. Its U.S. branch was established in Oregon in 1997 and in 1999, it registered as a 501(c)(3) charity.
>
> In 2000, the FBI discovered possible connections between Al Haramain and al Qaeda and began an investigation. We started where we often start—by following the money. And we uncovered criminal tax and money laundering violations.
>
> Al Haramain claimed that money was intended to purchase a house of prayer in Missouri—but in reality, the money was sent to Chechnya to support al Qaeda fighters. In 2004, the Treasury Department announced the designation of the U.S. branch of Al Haramain, as well as two of its leaders, and several other branch offices. In 2005, a federal grand jury indicted Al Haramain and two of its officers on charges of conspiring to defraud the U.S. government.
>
> We relied on BSA information and cooperation with financial institutions for both the predication and fulfillment of the investigation. Because of reporting requirements carried out by banks, we were able to pursue leads and find rock-solid evidence.
>
> Yes, we used other investigative tools—like records checks, surveillance, and interviews of various subjects. But it was the financial evidence that provided justification for the initial designation and then the criminal charges.

*See* Exh. S to Eisenberg Decl. (Dkt. 657-3/99-3) at 92.

Nothing in this passage remotely establishes that *plaintiffs* were subject to surveillance, let alone *electronic* surveillance, or electronic surveillance *under the TSP*. Notably, in its full context, the passage indicates that links between AHIF-Oregon and al Qaeda were discovered in 2000—before the TSP even began and well before plaintiffs' alleged conversations in March 2004. In addition, nothing indicates that the investigative tool of "surveillance" referred to by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Deputy Director Pistole even concerned surveillance of AHIF-Oregon.  This reference obviously could refer to broader intelligence gathering activities directed at AHIF worldwide.  Moreover, if there had been surveillance of AHIF-Oregon, this passage in no way indicates what kind of surveillance may have occurred—such as whether it occurred under the TSP, or was undertaken under the FISA, or outside the United States, or involved the collection of information from foreign sources or human sources.  The mere statement that "surveillance . . . was used" in investigating the connections between al Qaeda and AHIF's world-wide activities establishes nothing as to who, where, when, and how any such surveillance was directed.  For this reason as well, the notion that OFAC's reliance on classified information in support of its designation of AHIF-Oregon somehow helps establish that plaintiffs were subject to electronic surveillance, or surveillance under the TSP, is also unfounded given ties between AHIF's world-wide branches and al Qaeda terrorism.

Likewise, plaintiffs' citation to a public memo indicating that the Government has acknowledged surveillance of another individual—Ali al-Timimi—and that conversations were intercepted between Mr. Al-Timimi and Mr. al-Buthe, *see* Pls. MSJ (Dkt. 657/99) at 17, 21, does not establish plaintiffs' standing in this case.  That Mr. Al-Timimi was the target of interception and was overheard speaking with Mr. Al-Buthe, a Saudi national, does not indicate that any of the named plaintiffs in this case were the target of or subject to surveillance, or where or how any such surveillance had occurred, including whether or not it was warrantless surveillance on a wire in the United States or authorized under the FISA.  In fact, plaintiffs' citation to this example illustrates that surveillance evidence related to AHIF did not have to come from surveillance of the plaintiffs.[15]

_____

[15] Plaintiffs have filed a separate lawsuit in the District of Oregon challenging the designation of AHIF-Oregon as a "Specially Designated Global Terrorist" ("SDGT").  On November 6, 2008, Judge King issued a decision that, *inter alia*, granted summary judgment for the Government with respect to OFAC's February 2008 redesignation of AHIF-Oregon, which did not rely on the classified Sealed Document.  *See Al-Haramain Islamic Found. et al. v. Dep't. of Treasury*, 585 F. Supp. 2d 1233, 1249-54; 1247, n.7 (D. Or. 2008).  The court noted that the classified Sealed Document was removed from the administrative record and dismissed plaintiffs' claim that the designation/redesignation was based in part on privileged attorney-

Finally, plaintiffs' reference to a statement made by Government counsel during a court proceeding in *ACLU v. NSA* to the effect that "attorneys who represent terrorist clients . . . come closer to being in the ballpark of the terrorist surveillance program," *see* Pls. MSJ (Dkt. 657/99) at 16-17, is taken out of context.[16/] That statement contrasted one group of plaintiffs in the *ACLU* case—who merely spoke with individuals overseas—with another group that allegedly spoke directly to al Qaeda suspects.  But even as to the latter group, the Government stressed that standing was lacking, because the mere fact a group believes it is more likely to be subject to surveillance does not establish its standing.  *See* Exh. 18 to Defs. 3rd MSJ (Dkt. 475/49) at 180-82, 190-91 (citing, *inter alia*, *United Presbyterian*, *supra*.)  Indeed, the Sixth Circuit agreed and, like the Ninth Circuit in this case, held that plaintiffs could not establish standing to challenge alleged warrantless surveillance under the TSP because information concerning whether or not they were subject to the TSP was protected by the state secrets privilege.  *See ACLU v. NSA*, 493 F.3d at 650, 655, 673 n.32, 675 n.33; *id.* at 692-93 (Gibbons, J., concurring).  As Judge Gibbons put it: "[t]he disposition of all of the plaintiffs' claims depends upon the single fact that the plaintiffs have failed to provide evidence that they are personally subject to the TSP.  Without this evidence, on a motion for summary judgment, the plaintiffs cannot establish standing for any of their claims, constitutional or statutory."  *See id.* at 688; *see also id.* at 691 ("On summary judgment, however, the plaintiffs' mere allegations are insufficient, and although the publicly admitted information about the TSP 'supports' them . . . it does not satisfy the plaintiffs' burden.").

---

client communications.  *See id* at 1247, n.7.  The court found that OFAC's 2008 redesignation was supported by other evidence indicating that AHIF of Saudi Arabia and AHIF-Oregon "had a close financial relationship," including that Mr. Al- Buthe had personally delivered $150,000 to AHIF from AHIF-Oregon's bank account, and evidence indicating that these funds were intended to support the Chechen mujahideen.  *See id*. at 1252-53.  The court also found that OFAC reached a rational conclusion that AHIF-Oregon was under Mr. Al-Buthe's ownership or control, and that "[t]here is evidence in the classified record to give the government reasonable concern about Al-Buthe's activities."  *See id*. at 1251-52.  The court did not enter final judgment pending further briefing on other issues.  *See id*. at 1273.

---

[16]  In any event, statements of counsel are not evidence.  *EOTT Energy Operating Ltd. Partnership v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 999 (9th Cir. 2001).

In sum, plaintiffs rely on speculation about whether they were surveilled at all, whether any such surveillance was electronic, and whether it formed the basis of the designation of AHIF-Oregon.  They describe their own evidence as "circumstantial" and based on "probabilities" and "inferences."  *See* Pls. MSJ (Dkt. 657/ 99) at 23.  Plaintiffs' evidence boils down to no more than a series of speculative assertions that their communications were possibly intercepted, and simply is not the kind of "independent evidence disclosing that plaintiffs have been surveilled" sufficient to establish standing at the summary judgment stage.  *Al-Haramain*, 564 F. Supp. 2d at 1135.  Moreover, in deciding plaintiffs' summary judgment motion, all reasonable inferences must be drawn in favor of the *Government* as the non-moving party, not the plaintiffs.  *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009); *Berger v. City of Seattle*, 569 F.3d 1029, 1049-50 (9th Cir. 2009).  Plaintiffs' speculative inferences simply do not suffice to establish their standing.[17]

**D.    The Law Does Not Require the Government to Choose Between Disclosing State Secrets and Losing on Summary Judgment.**

Recognizing that they have no actual proof of surveillance, plaintiffs' motion rests on a different proposition: the Government must disclose the very information subject to its privilege assertion or lose on standing.  That is, plaintiffs contend that, in order to avoid summary judgment that plaintiffs have Article III standing, the Government must come forward with evidence that surveillance has not occurred, or that if it has occurred it was authorized by a court order under the FISA.  *See* Pls. MSJ (Dkt. 657/99) at 22-23.  That is clearly wrong—indeed, it is flatly contrary to the Court of Appeals decision itself, which barred the disclosure of information concerning whether or not plaintiffs had been subject to surveillance and held that, because plaintiffs cannot bear their burden of proof to establish standing, the case must be dismissed absent preemption of the privilege.  *See Al-Haramain*, 507 F.3d at 1205.  Plaintiffs do not cite a single case that actually shifts the burden of proof on standing to the defendant in any context,

---

[17]  *See also Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) ("an inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture or speculation.") (citation omitted).

1
2
3
4
5
6
7
8
9
10

even where it may uniquely hold evidence.[18] But such a rule would not and could not apply to information properly protected from disclosure and excluded from litigation to protect national security interests.  On the contrary, the law is exactly the opposite:  where the state secrets privilege bars disclosure of whether or not plaintiffs have been subject to surveillance, the case must be dismissed.  *Al-Haramain*, 507 F.3d at 1203-05; *see also ACLU*, 493 F.3d at 692 (Gibbons, J. concurring) (dismissal required where state secrets privilege prevents plaintiffs from establishing whether they were subject to TSP or government from presenting evidence to refute that allegation); *Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 919-20 (N.D. Ill. 2006) (dismissing challenge to alleged communication records collection because state secrets privilege foreclosed plaintiffs from establishing their standing); *see also Reynolds v. United States*, 345 U.S. 1, 8

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

[18]  The authority on which plaintiffs rely for their "burden shifting" theory has nothing to do with establishing subject matter jurisdiction, nor does it remotely support the disclosure of state secrets already excluded from a case.  *In re Sealed Case*, 494 F.3d 139, 147 (D.C. Cir. 2007), held merely, as this Court has already found, that the plaintiff had alleged sufficient facts suggesting that eavesdropping had occurred to survive the government's motion to dismiss, not to prevail at the summary judgment stage.  *Schaffer v. Weast*, 546 U.S. 49 (2005), does not hold or even suggest that the burden of proof on standing may shift to the defendant.  That case concerned the "'burden of persuasion,' *i.e.,* which party loses if the evidence is closely balanced," not the burden of production on an issue, and the court stressed that the ordinary default rule is that the burden of proof lies with the plaintiff, *see id.* at 57 (citing, *inter alia*, *Lujan*, 504 U.S. at 561).  *Campbell v. United States*, 365 U.S. 85, 86-98 (1961), concerned who was the proper witness to testify in a Jencks Act dispute over the disclosure of an FBI interview report, and the court held that an FBI agent who made the report should have been called to testify about a matter peculiarly within his knowledge, as opposed to requiring the defendant to rely solely on examination of the interviewee.  *United States v. Denver & Rio Grade Railroad Company*, 191 U.S. 84, 89-92 (1903), involved whether, under applicable statutory provisions, the burden of proof on the merits of a conversion claim concerning whether the destruction of timber was necessary was on the timber company or the Government bringing the claim. *National Communications Assn. v. AT&T Corp.*, 238 F. 3d 124, 129-31 (2d Cir. 2001), involved a claim of discrimination in the provision of communication services, and after the plaintiffs made a prima facie case of discrimination, the court shifted the burden to the company to show that the challenged practice was reasonable.  *United States v. Morton*, 400 F. Supp. 2d 871, 877-79 (E.D. Va. 2005), involved a motion to suppress the existence of a handgun in a criminal matter, and the court held that the burden under Virginia law to prove the existence of a permit to carry a concealed weapon was a defense to be raised by the defendant, not a burden for the police to bear in the midst of a *Terry* stop.  None of these cases trump established law that the exclusion of state secrets necessary to decide a claim, such as standing, requires dismissal nor suggest that, in this context, the burden is shifted to require disclosure by the Government of information it uniquely holds.

28

(1953) (in response to motion to produce information over which the state secrets privilege has been asserted, the court cannot force "a disclosure of the very thing the privilege is designed to protect.").[19]  Thus, even if information concerning whether or not plaintiffs have standing is within the exclusive control of the Government, the burden does not shift to the Government to dispute or disprove standing by producing privileged information, including any FISA warrant. Plaintiffs are simply trying to use the rules of summary judgment to get around the central issue that has foreclosed their case from the beginning:  the inability to establish the actual facts concerning whether they were subject to surveillance and, if so, whether it was authorized by the FISA— information that is protected by the Government's privilege assertion.[20]  But where

---

[19] *See also Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983); *Halkin v. Helms*, 690 F.2d 977, 990 (D.C. Cir. 1982) (*Halkin II*); *Halkin v. Helms*, 598 F.2d 1, 8-9 (D.C. Cir. 1978) (*Halkin I*) (upholding dismissal of claim where state secrets privilege foreclosed disclosure of whether plaintiffs' communications were intercepted).

[20]   *See* Public Negroponte Declaration ¶ 11(iii) (protecting whether plaintiffs have been subject to surveillance under any program and the information requested by interrogatories 1 to 20).  Plaintiffs' interrogatories specifically inquired into whether plaintiffs had been subject to FISA surveillance, and the Government objected to that discovery as foreclosed by the DNI's privilege assertion.  *See* Defs.' Objections to Pls. First Set of Interrogatories, Nos. 4, 9, 14, 19 (state secrets privilege encompasses whether plaintiffs had been subject to FISA surveillance) (attached hereto as Exhibit 1).  Indeed, the same issue arose in the first summary judgment hearing in 2006 before Judge King:

> THE COURT: . . . [H]ow are you going to show that any surveillance in this case was warrantless?
>
> MR. EISENBERG:  That is a very interesting question, and we pondered that a lot.  I would like to think that if they had a FISA warrant, that [the Government] would have told us quite a while back, so we wouldn't be wasting any more time.
>
> THE COURT:  Well, [the Government] may feel that's a state secret . . . .
>
> MR. EISENBERG:  It could be, and then we have a bit of a problem.  I believe the simple way, how do we know it was warrantless?  Discovery. . . . I think the simple answer is we ask them, "Did you have a FISA warrant?"

*See* Exh. 2 (hereto), Excerpt of Transcript, 8/29/06, at 60:6-61:9; *see also id.* at 96:20-97:2

privileged evidence here has been "completely removed from the case," and the Government cannot confirm or deny information subject to privilege in defending against plaintiffs' claims, summary judgment must be entered *for* the Government.  *See Kasza v. Browner*, 133 F.3d at 1166.[21/]

Finally, as we have previously stressed, the Government does not rely on an assertion of the state secrets privilege to cover-up alleged unlawful conduct.  The central concern in a case such as this is that the disclosure of whether or not someone is or has been subject to surveillance (and, if so, what type of surveillance) would reveal intelligence sources and methods—in this case, sources and methods concerning alleged surveillance of an entity determined to have provided support to the al Qaeda terrorist organization.  Disclosure of whether or not communications related to al Qaeda have been intercepted, when, how, of who, and under what authority would reveal methods by which the Government has or has not monitored certain communications related to that organization.  Even if the plaintiffs were captured in surveillance directed at al Qaeda, as they speculate, such a disclosure would confirm the time, place, target and means by which the Government sought to monitor a terrorist threat.  And if plaintiffs were

---

([MR. EISENBERG]: "If there has been a warrant in this case, I have to assume that the Government would have told your Honor in the secret declarations we are not privy to.  And I am going to assume further, Your Honor, in light of what transpired here today, that the Government has not told your Honor in classified confidence that there . . .were warrants in this case.").  Through their pending motion, plaintiffs seek either confirmation or denial of information subject to the Government's privilege assertion, or a ruling that they have standing as a penalty for nondisclosure.

[21] Nothing in this Court's determination on remand that the *in camera* procedure described in FISA's Section 1806(f) preempts the state secrets privilege alters this conclusion.  Again, the Government has not responded to plaintiffs' motion with any classified information and the Court has ordered that it will decide the pending motion based on non-classified evidence.  *See* Dkt. 643/96.  The Government is not required to supply facts that have been properly excluded in order to defeat plaintiffs' summary judgment motion.  Moreover, Section 1806(f) procedures do not provide a mechanism for a party to litigate and resolve their aggrieved party status but would apply only where a party's aggrieved status has been conclusively established and the use of Section 1806(f) procedures is otherwise proper under the law.  Indeed, the Court previously held that plaintiffs must first establish that they are "aggrieved persons" before FISA's Section 1806(f) applies.  *Al-Haramain*, 564 F. Supp. 2d at 1134.  Plaintiffs' non-privileged evidence fails to do so, and the Ninth Circuit has excluded information concerning whether or not plaintiffs do have standing.

not intercepted, or not intercepted in the manner they speculate may have occurred, or not all plaintiffs were intercepted, disclosure of those facts would reveal the Government's intelligence actions (or lack thereof) and confirm further information about whether, when, how, whose, or what communications related to the threat of al Qaeda terrorism may or may not have been captured—all core information about the use of intelligence sources and methods.[22]  The Ninth Circuit recognized that information concerning the "sources and methods of intelligence gathering in the context of this case would undermine the government's intelligence capabilities and compromise national security." *Al-Haramain*, 507 F.3d at 1204.  The approach plaintiffs now propose—to force the Government to disclose the very intelligence sources and methods at issue or lose—is precisely the course long since rejected by the law.

### E. Plaintiffs' Effort to Obtain an Advisory Opinion on the Merits Should be Rejected.

Based on a presumption that they would be entitled to summary judgment on Article III standing if the Government does not rebut their public evidence, plaintiffs proceed to brief various legal issues concerning whether warrantless surveillance of them under the now-defunct TSP (if any) would have violated the FISA.  These issues cannot be reached, however, for at least two reasons.

---

[22] The court in *Halkin* I explained further why confirmation or denial or surveillance would harm national security interests:

A number of inferences flow from the confirmation or denial of acquisition of a particular individual's international communications.  Obviously the individual himself and any foreign organizations with which he has communicated would know what circuits were used.  Further, any foreign government or organization that has dealt with a plaintiff whose communications are known to have been acquired would at the very least be alerted that its communications might have been compromised or that it might itself be a target.  If a foreign government or organization has communicated with a number of the plaintiffs in this action, identification of which plaintiffs' communications were and which were not acquired could provide valuable information as to what circuits were monitored and what methods of acquisition were employed.  Disclosure of the identities of senders or recipients of acquired messages would enable foreign governments or organizations to extrapolate the focus and concerns of our nation's intelligence agencies.

*Halkin I*, 598 F.2d at 8.

First, the Supreme Court has rejected the exercise of "hypothetical jurisdiction" to address statutory questions before resolving the question of Article III standing. *Steel Co.*, 523 U.S. at 101 ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning.").[23]/ As set forth above, the facts necessary to establish whether or not plaintiffs have Article III standing have been excluded from this case. For the Court to reach the merits based on anything less than an actual resolution of its jurisdiction—that is to proceed based on "inferences" of standing that could not be addressed by the Government without risking the disclosure of state secrets—would constitute no more than the issuance of an improper advisory opinion.[24]/

Second, even if plaintiffs were allowed to skate past the standing issue based on supposedly "reasonable inferences," information protected by the Government's privilege assertion would also be necessary to resolve plaintiffs' FISA claim on the merits. Plaintiffs articulate the issue on the merits of their FISA claim as whether the President may "disregard the requirements of FISA based on the 2001 Authorization for the Use of Military Force or inherent presidential power?" *See* Pls. MSJ (Dkt. 657/99) at 10. But that does not correctly state the issue. Rather, plaintiffs would first be required to prove the elements of the cause of action set forth in FISA Section 1810, which provides that "[a]n aggrieved person . . . who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation." 50 U.S.C.

---

[23] In *Steel Co.*, the Court rejected the practice of addressing whether a cause of action existed under statutory provisions before addressing Article III standing, noting that "[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." 523 U.S. at 101-02.

[24] Plaintiffs' reliance on the district court's decision in *American Civil Liberties Union v. National Security Agency*, 438 F. Supp. 2d 754 (E.D. Mich. 2006), *rev'd* 493 F.3d 644 (6th Cir. 2007), *see* Pls. MSJ (Dkt. 657/99) at 36, underscores why this Court should not proceed in the same fashion, as that decision on the lawfulness of the TSP was vacated with instructions to dismiss for lack of jurisdiction. *See ACLU*, 493 F.3d at 720.

§ 1810.  Section 1809 of the FISA, on which plaintiffs' cause of action must be based, establishes criminal sanctions against a person "who engages in electronic surveillance under color of law except as authorized by statute;" or who "discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by statute."  50 U.S.C. § 1809.

Thus, to prove the elements of their FISA cause of action under Section 1810, plaintiffs must prove the elements of a criminal violation under Section 1809[25]— that a person intentionally engaged in electronic surveillance of plaintiffs under color or law except as authorized by statute, or intentionally disclosed or used information obtained under color of law by electronic surveillance knowing the surveillance had not been authorized by statute.  To do so, plaintiffs must prove some set of facts that would establish a violation under Section 1809, including whether they were targeted by or subject to surveillance that met one of the specific definitions of electronic surveillance in the FISA[26]—*inter alia*, whether a wire communication to or from a U.S. person was acquired in the United States; or whether a radio or wire communication was sent or intended to be received by a particular known U.S. person in the

---

[25]  Where a plaintiff must prove a criminal cause of action in order to prevail in a civil cause of action, they need not demonstrate that a defendant has been subject to criminal prosecution and conviction, but, in the absence of that circumstance, nonetheless bear the burden of  proving that each element of the underlying criminal offense has been met.  *See Kline v. Security Guards Inc.*, 159 F. Supp. 2d 848 (E.D. Pa. 2001) (discussing standard of proof in civil action under 18 U.S.C. § 2520 for alleged criminal violations of Wiretap Act).

[26] The term "electronic surveillance" is specifically defined by the FISA to include the acquisition by an electronic, mechanical, or other surveillance device of the contents of (1) any wire or radio communication sent by or intended to be received by a particular, known United States person who is in the United States, if the contents are acquired by intentionally targeting that United States person, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required; (2) any wire communication to or from a person in the United States person, without consent of party thereto, occurring in the United States; (3) and intentional acquisition of the contents of any radio communication where there is a reasonable expectation of privacy and the sender an all intended recipients are in the United States; and (4) the installation and use of an electronic, mechanical, or other surveillance device in the United States to monitor or acquire information other than from a wire or radio where a reasonable expectation or privacy exists. 50 U.S.C. § 1801(f).

United States and was acquired by intentionally targeting that U.S. person; or whether a radio communication was intentionally acquired where the sender and all intended recipients are in the United States; or whether a communication was acquired in the United States through installation of a device—and, where applicable to the foregoing circumstances, that a reasonable expectation of privacy existed.  Proof of some set of facts that might satisfy the factual elements of a cause of action under Section 1810 would plainly require disclosure of whether particular intelligence sources and methods were utilized, starting with whether there was an acquisition at all, and, if so, who was targeted or subject to it (*e.g.*, an overseas target or an intentionally targeted U.S. person), and how any acquisition may have occurred (*e.g.*, off a wire, radio, or device).[27]

None of these facts has been nor could be established by plaintiffs' public evidence, and to whatever extent plaintiffs may have been subject to the alleged surveillance, the Government could not disclose the facts and circumstances of the matter in response to plaintiffs' claims on the merits.  Facts concerning whether surveillance may have occurred, how any surveillance may have been undertaken, under what authority, and the need or exigent threat the surveillance (if any) was intended to address in particular circumstances, would be relevant to assessing the lawfulness of any such surveillance, but have been properly protected by the Government's privilege assertion.[28]

Finally, because plaintiffs cannot establish whether or not they have been subject to any electronic surveillance in violation of the specific terms of the FISA, the Court should not reach

---

[27] In addition, to the extent plaintiffs' FISA claim encompasses the alleged disclosure or use of information in connection with the designation of Al-Haramain Islamic Foundation of Oregon, plaintiffs would have to show not only that their communications were acquired through electronic surveillance, but also that any information obtained was intentionally disclosed or used by someone who knew or had reason to know it was obtained by electronic surveillance not authorized by statute.  *See* 50 U.S.C. §§ 1809, 1810.

[28] For example, plaintiffs' Fourth Amendment claim, to the extent it remains viable on remand, would require an examination of the "'totality of the circumstances to determine whether a search is reasonable."  *Samson v. California*, 547 U.S. 843, 848 (2006) (citing *United States v. Knights*, 534 U.S. 112, 118 (2001)).  The facts needed to decide plaintiffs' other claims are foreclosed by the Government's privilege assertion as well.

the issue of whether the President has inherent power to authorize warrantless surveillance outside of the FISA.  *See* Pls. MSJ (Dkt. 657/99) at 29-38.  "'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.'" *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 343 (1999) (quoting *Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944)).  Indeed, in a case that concerned whether Congress could restrict the Executive's authority over national security information, the Supreme Court admonished that the district court "should not pronounce upon the relative constitutional authority of Congress and the Executive Branch unless it finds it imperative to do so."  *See American Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 161 (1989) ("*AFSA*").  Rather, the district court was directed to consider whether changed circumstances had affected the Court's jurisdiction in order to avoid a serious constitutional question.[29]  Likewise, this Court should not venture into complex constitutional questions concerning a now lapsed program where an actual case of controversy cannot be established.[30]

---

[29] At issue in *AFSA* were statutory restrictions imposed by Congress on nondisclosure agreements that employees in the Executive Branch are required to sign as a condition of receiving access to classified information.  *Id.* at 155.  Plaintiffs challenged the Government's compliance with those restrictions, and the district court held that the statute unconstitutionally interfered with the President's constitutional authority to protect national security information. *Id.* at 158.  Upon a direct appeal, the Supreme Court vacated and remanded "[i]n spite of the importance of the constitutional question of whether [the statute] impermissibly intrudes upon the Executive's authority to regulate the disclosure of national security information—indeed, partly because of it . . . ." *Id.*  The Court directed the district court on remand to "decide first whether the controversy is sufficiently live and concrete to be adjudicated and whether it is an appropriate case for equitable relief," and only then to consider whether the statute and Executive action could be reconciled and, if not, to consider the constitutional question.  *Id.* at 161-62.

[30] In addition, the question of whether and to what extent there is any inherent presidential authority to authorize surveillance outside of the FISA is the substance of plaintiffs' separation of powers claim that the defendants "acted in excess of the President's Article II authority."  *See* FAC (Dkt. 458/35) at ¶ 60.  As noted above, Section 1810 authorizes only a claim for damages based on an alleged violation of Section 1809 of the FISA.  It does not authorize damages against the Government for an alleged separation of powers violation or as to any other statutory or constitutional claim.  And, as also noted above, prospective declaratory or injunctive relief is not available to challenge to presidential authorization of the now-defunct

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Partial Summary Judgment, and grant the Government Defendants' Fourth Motion to Dismiss and for Summary Judgment, and dismiss all claims in this action.

Dated: August 20, 2009

Respectfully Submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

_____s/ Anthony J. Coppolino_____
ANTHONY J. COPPOLINO
Special Litigation Counsel

_____s/ Marcia Berman_____
MARCIA BERMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

*Attorneys for the Government Defendants*

TSP.