In re National Security Agency Telecommunications Records Litigation Doc. 668 Att. 1


# EXHIBIT #2

**GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GOVERNMENT'S FOURTH MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AL-HARAMAIN ISLAMIC FOUNDATION, INC., an Oregon nonprofit corporation, et al., Plaintiffs, vs. GEORGE W. BUSH, President of the United States, et al., Defendants. | No. CV-06-274-KI<br>August 29, 2006<br>Portland, Oregon |

**MOTION HEARING**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE GARR M. KING

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES

FOR THE PLAINTIFFS:

Steven Goldberg
Attorney at Law
621 S. W. Morrison
Suite 1450
Portland, OR 97205

Jon B. Eisenberg
Attorney at Law
1970 Broadway
Suite 1200
Oakland, CA 94612

Jessica Ashlee Albies
Law Office of J. Ashlee Albies
621 S.W. Alder Street
Suite 621
Portland, OR 97205

Thomas H. Nelson
Zaha S. Hassan
Thomas H. Nelson & Associates
825 N.E. Multnomah Street
Suite 925
Portland, OR 97232-2150

Lisa R. Jaskol
Attorney at Law
15760 Ventura Boulevard
18th Floor
Encino, CA 91436

FOR THE DEFENDANTS:

Anthony J. Coppolino
U.S. Department of Justice
20 Massachusetts Avenue, NW
Room 6102
Washington, DC 20530

Andrea Marie Gacki
U.S. Department of Justice
20 Massachusetts Avenue, NW
Room 7334
Washington, DC 20001

Andrew H. Tannenbaum
U.S. Department of Justice
20 Massachusetts Avenue, NW
P. O. Box 883
Washington, DC 20044

acceptable way of us getting around this problem. We are not looking to have this document released to the public. That's a different issue that Mr. Hinkle is addressing, and we take no position on that. It's simply not in our interest. It's irrelevant to what we want.

THE COURT: Let me ask you -- this may be way ahead of it -- how are you going to show that any surveillance in this case was warrantless?

MR. EISENBERG: That is a very interesting question, and we pondered that a lot. I would like to think that if they had a FISA warrant, that Mr. Coppolino would have told us quite a while back, so we wouldn't be wasting any more time.

THE COURT: Well, Mr. Coppolino may feel that's a state secret or at least the people who instruct Mr. Coppolino may feel that's a state secret.

MR. EISENBERG: It could be, and then we have a bit of a problem.

I believe the simple way, how do we know it was warrantless? Discovery. And that really is just about, I think, the only thing in our motion for discovery, which Mr. Goldberg will address -- it's not the only. It stands above all others. It's an essential link in our case, but it's a simple one. I think the simple answer is we ask them, "Did you have a FISA warrant?"

Now, why do we --

THE COURT: I suspect they are going to refuse to answer. Then I have to make a determination as to whether I'm going to require them to answer. And in doing that, I have to determine whether or not the answer would divulge a state secret.

MR. EISENBERG: I wonder if you could imply from their refusal to answer that they didn't have one. We have a problem, don't we?

But look at what Congress has told us. Congress has told us in 50 U.S. Code 1810(a) -- that's FISA -- "An aggrieved person who has been subject to electronic surveillance in violation of FISA shall have a cause of action against any person who committed such a violation."

Now, if the Government has the right to keep secret forever that there was a violation of FISA, then what meaning does Section 1810 have? It has none. That remedy doesn't mean a thing if they can avoid liability for violating FISA by refusing to tell us whether they got a warrant.

THE COURT: Well, is there anything in the public record, any statements made that you think you could rely on to show that in this case the surveillance was warrantless?

Now, the TSP program, I think there is a public record, statements by the president that he authorized warrantless surveillance. But do you know that this was a TSP surveillance?

MR. EISENBERG: Well, here's what I can tell you. And again, now, I have to be a little careful.

THE COURT: Yes. You have to be very careful.

MR. EISENBERG: So what I'm going to do is read from the record. That's all I'm going to do. I'll start with the Complaint, paragraph 19, paraphrasing: In March and April of 2004, Defendant National Security Agency conducted warrantless surveillance of conversations between Plaintiff Al-Haramain and Plaintiffs Belew and Ghafoor. Paragraph 20: In May 2004, Defendant NSA gave Defendant OFAC, Office of Foreign Assets and Control, logs of these conversations.

Frances Hourihan's declaration -- she filed two, and I'm quoting from the second one, paragraph 4: In August 2004, OFAC inadvertently gave Al-Haramain's attorneys the sealed document filed with the Complaint in this case. In paragraph 5, she said it was related to the terrorist designation. And that's referring to the designation as a specifically designated global terrorist.

The Hackett declaration, paragraphs 5 and 8, the

second Hackett declaration, says that the sealed document is a United States Government report that pertains to intelligence activities and is derived from intelligence sources.

And then finally, I'll read to you from our response, plaintiffs' response to defendants' motion to deny access to the document, page 10: The document confirms that plaintiffs were surveilled without a warrant and thus are aggrieved.

And the best I can offer you, Your Honor, in light of the sensitivity of the situation we have before us, is the conclusion that I just read to you based on the points in the record that I just read to you. We believe that there is enough in this record to support certainly a strong inference that there was warrantless surveillance in this case. We've alleged it; and I believe for purposes of this hearing, our allegations are to be taken as true.

THE COURT: And you believe that's true of both the individual plaintiffs as well as the foundation? Do they stand in any different status --

MR. EISENBERG: Yes.

THE COURT: -- as far as you're concerned?

MR. EISENBERG: They do. They do. I'm not sure what I can say. Let me put it this way, treading very

lightly.

Mr. Coppolino, you shut me up if I'm not treading lightly enough, please.

I believe that whatever gaps are in the record may be supplemented with declarations by Mr. Belew and Ghafoor, and we're prepared to fill those gaps with declarations.

THE COURT: All right. Go ahead.

MR. EISENBERG: I'm almost done, actually. I'd like to -- let's move down to the second level on the right-hand side of my chart: The Court controls access to the document.

This document is now in the Court's custody, bringing it within the Court's supervisory power. The Ninth Circuit, in the *In re Sealed Affidavits* case in 1999 -- 1979, pardon me, said the supervisory power of the courts over their files is an incident of their constitutional function.

Now, that means separation of powers. Under the constitutional separation of powers, this Court has supervisory control over that document. We're not in a situation where the executive has exclusive control over it. They have control over it to the extent they've held on to it and they've classified it. We don't question their power to classify, although we do question the

information.

Certainly if you had questions as to our classified submissions, we'd be happy to answer them for you and to engage in that. But we think there is no way to proceed in this case without running straight into state secrets.

Thank you.

THE COURT: All right. Thank you.

Any response?

MR. EISENBERG: One minute, Your Honor.

THE COURT: All right. One minute.

MR. EISENBERG: Just responding to one point: Do we admit that we don't know whether there was a warrant for the surveillance in this case? No, we do not admit that. Our position is that the public statements in this case, the documentary evidence presented to this Court in the form of declarations, and the document itself demonstrate that there was no warrant. That's why we commenced this litigation.

If there had been a warrant in this case, I have to assume that the Government would have told Your Honor in the secret declarations that we are not privy to. And I am going to have to assume further, Your Honor, in light of what has transpired here today, that the Government has not told Your Honor in classified

confidence that there were no -- that there were warrants in this case.

I think Mr. Hinkle is right: It seems to be true to a moral certainty that there were no warrants. That's what the warrantless surveillance program is all about. So I think we can get beyond that and, hopefully, working together, find a solution around some of the unusual obstacles in this case and get to a decision on the merits.

THE COURT: Okay. Thank you.

The presentations have been excellent and very helpful to the Court. I expect to have an opinion for you sometime next week. Thank you.

THE CLERK: Court is adjourned.

(Proceedings concluded.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-titled cause. A transcript without an original signature is not certified.

Nancy M. Walker 9-8-06

NANCY M. WALKER, CSR, RMR, CRR DATE
Official Court Reporter
Oregon CSR No. 90-0091