**Jon B. Eisenberg, California Bar No. 88278** (jon@eandhlaw.com)
**William N. Hancock, California Bar No. 104501** (bill@eandhlaw.com)
**Eisenberg & Hancock LLP**
1970 Broadway, Suite 1200 • Oakland, CA 94612
510.452.2581 – Fax 510.452.3277

**Steven Goldberg, Oregon Bar No. 75134** (steven@stevengoldberglaw.com)
River Park Center, Suite 300 • 205 SE Spokane St.• Portland, OR 97202
503.445-4622 – Fax 503.238.7501

**Thomas H. Nelson, Oregon Bar No. 78315** (nelson@thnelson.com)
P.O. Box 1211, 24525 E. Welches Road • Welches, OR 97067
503.622.3123 - Fax: 503.622.1438

**Zaha S. Hassan, California Bar No. 184696** (zahahassan@comcast.net)
8101 N.E. Parkway Drive, Suite F-2.• Vancouver, WA 98662
360.213.9737 - Fax 866.399.5575

**J. Ashlee Albies, Oregon Bar No. 05184** (ashlee@sstcr.com)
**Steenson, Schumann, Tewksbury, Creighton and Rose, PC**
815 S.W. Second Ave., Suite 500 • Portland, OR 97204
503.221.1792 – Fax 503.223.1516

**Lisa R. Jaskol, California Bar No. 138769** (ljaskol@earthlink.net)
610 S. Ardmore Ave.• Los Angeles, CA 90005
213.385.2977 – Fax 213.385.9089

**Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew and Asim Ghafoor**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION**<br><br><u>This Document Relates Solely To:</u><br><br>*Al-Haramain Islamic Foundation, Inc., et al. v. Obama, et al.* (C07-CV-0109-VRW)<br><br>**AL-HARAMAIN ISLAMIC FOUNDATION, INC., et al.,**<br><br>Plaintiffs,<br>vs.<br><br>**BARACK H. OBAMA, President of the United States, et al.,**<br><br>Defendants. | ) MDL Docket No. 06-1791 VRW<br>)<br>) **PLAINTIFFS' REPLY TO GOVERNMENT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; PLAINTIFFS' OPPOSITION TO GOVERNMENT DEFENDANTS' FOURTH MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**<br>)<br>) Date: September 23, 2009<br>) Time: 10:00 a.m.<br>) Court: Courtroom 6, 17th Floor<br>) Honorable Vaughn R. Walker<br>) |



Dockets.Justia.com

## TABLE OF CONTENTS

INTRODUCTION . . . . . 1

ARGUMENT . . . . . 2

I. BY FAILING TO ADDRESS PLAINTIFFS' ARGUMENTS ON THE MERITS AS TO WHY THE TSP WAS UNLAWFUL, DEFENDANTS HAVE WAIVED OPPOSITION TO PARTIAL SUMMARY JUDGMENT OF LIABILITY . . . . . 2

II. THE NINTH CIRCUIT'S MANDATE DOES NOT FORECLOSE THIS COURT FROM ADJUDICATING PLAINTIFFS' ARTICLE III STANDING ON THE AMENDED COMPLAINT . . . . . 4

III. PLAINTIFFS HAVE SUSTAINED THEIR BURDEN ON THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . 7

A. Plaintiffs' successful prima facie showing of "aggrieved person" status on their previous motion under section 1806(f) sustains their burden on this motion for partial summary judgment . . . . . 7

B. The Court may, on the competing cross-motions for summary judgment, determine the inferences to be drawn from plaintiffs' undisputed evidence . . . . . 8

C. For the Ninth Circuit's benefit, this Court should rule in the alternative on whether the classified and non-classified evidence together demonstrates plaintiffs' Article III standing . . . . . 10

IV. DEFENDANTS HAVE FAILED TO SUSTAIN THEIR BURDEN ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . 10

A. This Court's ruling on FISA preemption precludes defendants' assertion of the state secrets privilege as a basis for evading their burden on plaintiffs' motion . . . . . 10

B. Defendants have the burden of producing evidence of a FISA warrant and have failed to sustain that burden . . . . . 13

C. Defendants have chosen to forego the opportunity to present evidence under the secure procedures authorized by section 1806(f) . . . . . 14

V. THE COURT HAS ALREADY REJECTED DEFENDANTS' REMAINING ARGUMENTS ON ARTICLE III STANDING . . . . . 15

VI. THE COURT SHOULD NOT GRANT DEFENDANTS' FOURTH MOTION TO DISMISS AND FOR SUMMARY JUDGMENT WITHOUT GIVING PLAINTIFFS' COUNSEL ACCESS TO THE CLASSIFIED FILINGS UNDER SECTION 1806(f) . . . . . 16

CONCLUSION . . . . . 17

# TABLE OF AUTHORITIES

Page

## CASES

*Al-Haramain Islamic Foundation, Inc. v. Bush*
507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Biggins v. Hazen Paper Co.*
111 F.3d 205 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bischoff v. Osceola County, Fla.*
222 F.3d 874 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cassett v. Stewart*
406 F.3d 614 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*F.T.C. v. Gill*
265 F.3d 944 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Foster v. City of Fresno*
392 F.Supp.2d 1140 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Herrington v. County of Sonoma*
12 F.3d 901 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Horn v. Huddle*
___ F.Supp.2d ___ (2009 WL 2144131) (D.D.C. July 16, 2009) . . . . . . . . . . . . . . . 13, 14

*Horn v. Huddle*
___ F.Supp.2d ___ (2009 WL 2610100) (D.C.Cir. Aug. 26, 2009) . . . . . . . . . . . . . . . . 17

*In re National Security Agency Telecommunications Records Litigation*
564 F.Supp.2d 1109 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 15

*In National Security Agency Telecommunications Records Litigation*
595 F.Supp.2d 1077 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12, 14, 16, 17

*In re Sanford Fork & Tool Co.*
160 U.S. 247 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lindy Pen Co. v. Bic Pen Corp.*
982 F.2d 1400 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nguyen v. United States*
792 F.2d 1500 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rawoof v. Texor Petroleum Co., Inc.*
521 F.3d 750 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rogers v. Hill*
289 U.S. 582 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rome Ambulatory Surgical Center, LLC v. Rome Memorial Hospital, Inc.*
349 F.Supp.2d 389 (N.D.N.Y. 2004) . . . . . . . . . . 9

*Schaffer v. Weast*
546 U.S. 49 (2005) . . . . . . . . . . 13, 14

*Seals v. City of Lancaster*
553 F.Supp.2d 427 (E.D. Pa. 2008) . . . . . . . . . . 3

*United States v. Jennings*
726 F.2d 189 (5th Cir. 1984) . . . . . . . . . . 9

*United States v. Kellington*
217 F.3d 1084 (9th Cir. 2000) . . . . . . . . . . 5

*United States v. Reynolds*
345 U.S. 1 (1953) . . . . . . . . . . 5

*Youngstown Sheet and Tube Co. v. Sawyer*
343 U.S. 579 (1952) . . . . . . . . . . 4

## STATUTES AND RULES

50 U.S.C. § 1806(f) . . . . . . . . . . *passim*

50 U.S.C. § 1810 . . . . . . . . . . 11

50 U.S.C. § 1811 . . . . . . . . . . 4

Federal Rules of Civil Procedure, Rule 56(e)(2) . . . . . . . . . . 8, 10, 14

## MISCELLANEOUS

OFFICES OF INSPECTORS GENERAL, UNCLASSIFIED REPORT ON THE PRESIDENT'S SURVEILLANCE PROGRAM (July 10, 2009). . . . . . . . . . 3, 4

*Restoring the "Rule of Law": Hearing Before the S. Comm. On the Judiciary, Subcomm. On the Constitution*, 110th Cong. 6-7 (Sept. 16, 2008). . . . . . . . . . 12

Charlie Savage, *Barack Obama's Q&A*, BOSTON GLOBE, Dec. 20, 2007. . . . . . . . . . 1

## INTRODUCTION

At long last, the time has come for this Court to adjudicate the merits of this lawsuit and confirm, in the words of lead defendant Barack H. Obama, that "[w]arrantless surveillance of American citizens, in defiance of FISA, is unlawful and unconstitutional." Charlie Savage, *Barack Obama's Q&A*, BOSTON GLOBE, Dec. 20, 2007.

Yet in response to plaintiffs' arguments challenging the legality of the so-called Terrorist Surveillance Program (TSP) and to the critical question this litigation presents regarding the President's purported power to disregard an Act of Congress in the name of national security, defendants are silent. The Government Defendants' Memorandum In Opposition To Plaintiffs' Motion For Partial Summary Judgment And In Support Of The Government's Fourth Motion To Dismiss And For Summary Judgment (hereafter "Defs.' Memo.") does not respond to plaintiffs' arguments on the merits. Defendants make no effort at all to advocate for the TSP's legality. In refusing to address the merits, defendants have waived any arguments they might have asserted in support of the TSP. The Court is left to adjudicate the TSP's legality based on plaintiffs' briefing and the Court's independent analysis – which should result in a summary judgment of liability.

Instead of addressing the merits, defendants restrict their briefing to the issue of plaintiffs' Article III standing. But defendants' only new argument here is that the Ninth Circuit's 2007 mandate to this Court forecloses an adjudication of plaintiffs' standing on the non-classified evidence presented in plaintiffs' amended complaint. That argument disregards the controlling legal standards as well as case law squarely on point, which establishes that an appellate mandate does not foreclose *leave to amend* unless there is a directive to that effect.

Defendants largely re-hash arguments they previously asserted unsuccessfully in this Court. Defendants challenge the sufficiency of the non-classified evidence to support summary judgment of standing, even though this Court has already ruled that the non-classified evidence meets the requisite standard of prima facie proof. Defendants argue that standing cannot be proven with circumstantial evidence and reasonable inferences, even though this Court has found such proof to be sufficient. And defendants make no attempt to sustain their burden, on plaintiffs' motion for partial summary judgment, of producing evidence that might rebut plaintiffs' evidentiary showing,

despite the secure procedures authorized by 50 U.S.C. section 1806(f) and prescribed by this Court for presenting such evidence. Instead, defendants continue to assert the state secrets privilege, even though this Court has ruled that FISA preempts the privilege.

Thus, the evidence before this Court demonstrating plaintiffs' Article III standing is undisputed. Defendants have neglected their burden on plaintiffs' motion, hoping to prevail on appeal if and when the Ninth Circuit takes up the issue of FISA preemption. Under the special rules for adjudicating motions for summary judgment of standing, which permit the Court to adjudicate contested factual issues on such motions (that is, without holding a trial on standing), the Court can decide the inferences to be drawn from plaintiffs' evidence. The stage is set for this Court to find standing on the undisputed non-classified evidence and proceed to decide whether the TSP was unlawful.

Finally, anticipating the likelihood of appellate review in this case, plaintiffs request that, in addition to ruling on the sufficiency of the non-classified evidence to demonstrate plaintiffs' Article III standing, the Court also rule in the alternative on whether the non-classified and classified evidence *together* demonstrates plaintiffs' Article III standing – without any need to give plaintiffs' counsel access to the classified evidence – so that the Ninth Circuit can resolve all standing issues in a single appeal.

## ARGUMENT

### I. BY FAILING TO ADDRESS PLAINTIFFS' ARGUMENTS ON THE MERITS AS TO WHY THE TSP WAS UNLAWFUL, DEFENDANTS HAVE WAIVED OPPOSITION TO PARTIAL SUMMARY JUDGMENT OF LIABILITY.

Sometimes a litigant's brief is more significant for what it *does not* say than for what it says. That is the situation here. After three and one-half years of litigation in which the government has exploited multiple procedural devices to evade an adjudication on the merits, defendants say *nothing* on the ultimate question now posed for decision: Was the TSP unlawful? Or, more broadly: May the President of the United States disregard an Act of Congress in the name of national security?

Defendants' silence should come as no surprise. They would look enormously hypocritical if they were now to repudiate the ringing denunciations of the TSP by President Obama, Attorney General Holder, and an abundance of Obama appointees to the Department of Justice. *See* Plaintiffs'

Motion For Partial Summary Judgment at 21, 26-28, Dkt. #99 at 29, 34-36.

Given the present procedural posture of this case, however, that silence has consequences. "[F]ailure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim." *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1146, n. 7 (C.D. Cal. 2005); *accord, e,g., Seals v. City of Lancaster*, 553 F.Supp.2d 427, 432 (E.D. Pa. 2008) (failure by party opposing summary judgment to address moving party's claims "constitutes abandonment of those claims"). On this motion for partial summary judgment of liability – where plaintiffs have squarely presented and argued their claims on the merits as to why the TSP was unlawful – defendants' silence regarding those claims effectively concedes them.

Defendants attempt to justify their silence on the ground a decision on the merits purportedly would be merely advisory. *See* Defs.' Memo. at 30-34, Dkt. #103 at 38-42. But that would be true only if this Court were to find that plaintiffs lack Article III standing. If this Court finds Article III standing, a decision on the merits will *not* be advisory.

In situations like this, where a plaintiff moves for summary judgment on both Article III standing and the merits, the defendant's normal course of action is to address both points: the standing issue, hoping to prevail on that issue alone; *and* the merits issues, in the event defendant does not prevail on the standing issue. A defendant who refuses to address the merits issues takes a big risk – that the court will decide those issues without defendant's input. Here, defendants have elected to take that risk by foregoing any defense of the TSP. They have little choice, given the positions President Obama and members of his administration have previously taken.

Defendants know full well what they are doing and the risk they are taking: Upon a finding of Article III standing, this Court may decide the merits issues without defendants' input and treat the White Paper's legal arguments as waived.

Plaintiffs have demonstrated in their summary judgment motion why the White Paper's legal arguments not only are waived but also are meritless. Since plaintiffs filed their motion, the Offices of Inspectors General released their unclassified report on the TSP, which further debunks the White Paper's argument that "inherent power" authorizes the President to violate FISA. *See* OFFICES OF INSPECTORS GENERAL, UNCLASSIFIED REPORT ON THE PRESIDENT'S SURVEILLANCE PROGRAM (July

10, 2009), Suppl. Decl. of Jon B. Eisenberg, exh. CC. The Inspectors General report reveals that the initial Office of Legal Counsel (OLC) memorandum advocating for the TSP's legality, issued by former Deputy Assistant Attorney General John Yoo on November 2, 2001, asserted the "inherent power" argument, but in 2004 Yoo's successors at OLC concluded that Yoo's analysis was fundamentally flawed. *Id.* at 11-12, exh. CC at 16-17. The report explains:

> Yoo did not address the section of FISA that creates an explicit exemption from the requirement to obtain a judicial warrant for 15 days following a congressional declaration of war. See 50 U.S.C. § 1811. Yoo's successors in OLC criticized this omission in Yoo's memorandum because they believed that by including this provision in FISA Congress arguably had demonstrated an explicit intention to restrict the government's authority to conduct electronic surveillance during wartime.

INSPECTORS GENERAL REPORT at 12, exh. CC at 17. The report adds that Yoo "omitted any discussion of *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)," and that Justice Jackson's formulation in *Youngstown* for determining the extent of presidential power "was an important factor in OLC's subsequent reevaluation of Yoo's opinions." *Id.* at 13, exh. CC at 18. In 2009, former OLC Principal Deputy Assistant Attorney General Steven G. Bradbury formally repudiated Yoo's memorandum as "'problematic and questionable'" and "'not supported by convincing reasoning.'" *Id.* at 12 n. 12, exh. CC at 17 n. 12. Thus, not even Yoo's successors in the Bush administration were convinced by Yoo's "inherent power" theory. Yoo stands alone and discredited in asserting that theory.

## II. THE NINTH CIRCUIT'S MANDATE DOES NOT FORECLOSE THIS COURT FROM ADJUDICATING PLAINTIFFS' ARTICLE III STANDING ON THE AMENDED COMPLAINT.

For all its 35 pages, defendants' memorandum includes but a single new argument: that the Ninth Circuit's mandate in its decision of November 16, 2007, forecloses this Court from proceeding to adjudicate plaintiffs' Article III standing on the non-classified evidence asserted in plaintiffs' amended complaint. The Ninth Circuit's opinion states that, without the Sealed Document, "Al-Haramain cannot establish that it has standing and its claims must be dismissed, unless FISA preempts the state secrets privilege." *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1205 (9th Cir. 2007). Defendants contend this statement forecloses a summary judgment based on non-classified evidence, so that "dismissal is now required." Defs.' Memo. at 16, Dkt. #103 at 24.

Defendants cite no legal authority for this proposition. They ignore the controlling standards for determining whether an appellate mandate forecloses subsequent proceedings in the district court, and they ignore case law that is squarely on point and is directly adverse to their position.

The controlling standards are set forth in *United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000): "According to the rule of mandate, although lower courts are obliged to execute the terms of a mandate, they are free as to 'anything not foreclosed by the mandate.'" *Id.* at 1092 (quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)). Further, "under certain circumstances, '[a]n order issued after remand may deviate from the mandate . . . if it is not counter to the spirit of the circuit court's decision . . . .'" *Id.* at 1093 (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir. 1993)). In construing the mandate, the lower court may consider, among other things, "the procedural posture" from which the mandate arose. *Id.* "'Courts are often confronted with issues that were never considered by the remanding court.'" *Id.* (quoting *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997)).

The question this Court must ask is: Did the Ninth Circuit consider and intend to foreclose the possibility that plaintiffs could establish their Article III standing without the Sealed Document? The answer is *no*. At the time of the appellate decision, nobody – not the Ninth Circuit panel, not the defendants, not even the plaintiffs – had suggested that plaintiffs might try to establish their Article III standing without the Sealed Document. The case was in the early procedural posture of an interlocutory appeal on the question whether the state secrets privilege precluded the litigation at its inception, at a time when publicly-available evidence of plaintiffs' electronic surveillance was sketchy at best. As this litigation has progressed, however, a wealth of evidence has slowly trickled into the public domain, to the point where now – in contrast to the case's posture at the time of the appellate litigation – it is evident that plaintiffs can establish their Article III standing without the Sealed Document. Plainly that is something the Ninth Circuit never considered – something wholly outside the scope of the appellate mandate. And it is consistent with the spirit of the mandate to the extent the Ninth Circuit acknowledged that "litigation can proceed . . . if the plaintiffs can prove 'the essential facts' of their claims without resort to material touching upon military secrets.'" *Al-Haramain*, 507 F.3d at 1204 (quoting *United States v. Reynolds*, 345 U.S. 1, 11 (1953)).

Beyond these governing standards, moreover, the Ninth Circuit has specifically held that the rule of mandate does not preclude leave to file an amended complaint unless there is a directive to that effect: "Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to 'file additional pleadings, vary or expand the issues . . . .'" *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (quoting *Rogers v. Hill*, 289 U.S. 582, 587-88 (1933); *see also In re Sanford Fork & Tool Co.*, 160 U.S. 247, 259 (1895) (lower court was free to grant plaintiff leave to amend on remand, "the case being thus left open by the opinion and mandate of this court, and by the general rules of practice in equity")). Thus, in *Nguyen*, a mandate ordering entry of summary judgment for the defendant required the district court to enter summary judgment but did not preclude the court from granting the plaintiff leave to file an amended complaint immediately thereafter: "Absent a mandate explicitly or impliedly precluding amendment, the decision whether to allow leave to amend is within the trial court's discretion." *Nguyen*, 792 F.2d at 1503. Likewise here, the appellate mandate did not foreclose this Court from granting leave to amend and proceeding accordingly, for the opinion included no directive precluding leave to amend.

Further, the Ninth Circuit has indicated that the rule of mandate does not require any particular form of dismissal where an appellate decision mandating a dismissal does not specify its form. *Cassett v. Stewart*, 406 F.3d 614, 621-22 (9th Cir. 2005) (appellate directive to dismiss petition for writ of habeas corpus did not preclude dismissal *with* prejudice, for want of instruction to dismiss *without* prejudice). Here, the Ninth Circuit said only that, unless FISA preempts the state secrets privilege, plaintiffs' "claims must be dismissed." *Al-Haramain*, 507 F.3d at 1205. The court never said the dismissal must be *without leave to amend*. That left this Court free to dismiss *with* leave to amend – which is what the Court did.

Defendants' rule of mandate argument comes late, for they are attacking this Court's judgment of July 2, 2008, that plaintiffs' FISA claim is "DISMISSED with leave to amend." *In re National Security Agency Telecommunications Records Litigation*, 564 F.Supp.2d 1109, 1137 (N.D. Cal. 2008). If defendants wished to challenge that judgment as precluded by the Ninth Circuit's mandate, they should have long ago sought appellate review on that basis. Their rule of mandate argument, however, is as meritless now as it would have been previously.

## III. PLAINTIFFS HAVE SUSTAINED THEIR BURDEN ON THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT.

### A. Plaintiffs' successful prima facie showing of "aggrieved person" status on their previous motion under section 1806(f) sustains their burden on this motion for partial summary judgment.

Defendants contend that although this Court ruled on January 5, 2009, that plaintiffs' non-classified evidence constitutes prima facie proof of their electronic surveillance, that evidence is nevertheless insufficient to sustain plaintiffs' burden on the pending motion for partial summary judgment. According to defendants, the non-classified evidence "may have been sufficient to survive a motion to dismiss at the pleading stage" but "fails at the summary judgment stage." Defs.' Memo. at 19, Dkt. #103 at 27.

Defendants seem not to fully understand the Court's ruling. The Court did indeed hold that plaintiffs' evidence is sufficient to survive a motion to dismiss at the pleading stage, stating: "Plaintiffs have alleged sufficient facts to withstand the government's motion to dismiss." *In re National Security Agency Telecommunications Litigation*, 595 F.Supp.2d 1077, 1085 (N.D. Cal. 2009). But that is not all the Court held. In addition to ruling on defendants' third dismissal motion, the Court *also* ruled on plaintiffs' motion for an adjudication of their "aggrieved person" status under section 1806(f) – first determining that plaintiffs were required to establish a "prima facie case" demonstrating their aggrieved person status, 595 F.Supp.2d at 1084, and then finding that the "showing" plaintiffs made on their section 1806(f) motion was "legally sufficient" to constitute the required prima facie case, 595 F.Supp.2d at 1086.

Thus, the Court did not merely hold that the *allegations* in plaintiffs' amended complaint are sufficient to survive a dismissal motion; the Court *also* held that the *evidence* presented on plaintiffs' 1806(f) motion constitutes *prima facie evidence* that they were subjected to electronic surveillance. The latter holding is critical to the pending motion for partial summary judgment, because plaintiffs' burden on that motion is identical to their burden on the 1806(f) motion – to establish a prima facie case. *See F.T.C. v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001) (plaintiff's burden is to establish "a prima facie case for summary judgment"). Because plaintiffs have presented prima facie proof of their electronic surveillance on the 1806(f) motion, they necessarily have sustained their burden of proving

electronic surveillance on their motion for partial summary judgment.

As for the prima facie sufficiency of the non-classified evidence, defendants largely re-hash their previous arguments on plaintiffs' 1806(f) motion that a finding of Article III standing cannot be based on circumstantial evidence and inferences. *See* Defs.' Memo. at 19-26, Dkt. #103 at 27-34. Plaintiffs have previously, on their 1806(f) motion, apprised the Court of the legal authorities establishing that the required showing *can* be made with circumstantial evidence and inferences. *See* Motion Pursuant To 50 U.S.C. § 1806(f) To Discover Or Obtain Material Relating To Electronic Surveillance at 14-15, Dkt. # 46 at 21-22. The point need not be revisited in this reply memorandum. Suffice it to say that this Court has already rejected defendants' previous arguments by finding the non-classified evidence sufficient to make the required prima facie case. *See In re National Security Agency Telecommunications Litigation,* 595 F.Supp.2d at 1086.

**B. The Court may, on the competing cross-motions for summary judgment, determine the inferences to be drawn from plaintiffs' undisputed evidence.**

Defendants say that, on plaintiffs' motion for partial summary judgment, this Court must draw all reasonable inferences in favor of defendants as the non-moving parties. *See* Defs.' Memo. at 26, Dkt. #103 at 34. Defendants do not, however, identify any reasonable inferences that could be drawn from plaintiffs' evidence *other* than the fact of their warrantless electronic surveillance. Defendants insist that plaintiffs might have been surveilled "under authority of the FISA itself" or by "foreign or human sources" or by "surveillance undertaken overseas," Defs.' Memo. at 21, Dkt. #103 at 29, but defendants do not explain how such facts could possibly be inferred from plaintiffs' evidence or how such inferences could be reasonable. That is because nothing about plaintiffs' evidence even remotely suggests that defendants had a FISA warrant for plaintiffs' electronic surveillance or that defendants surveilled plaintiffs through means outside FISA's scope. To the contrary, plaintiffs' evidence points unerringly toward their warrantless electronic surveillance in violation of FISA. Defendants have had ample opportunity to submit evidence of their own from which reasonable inferences in their favor might be drawn, pursuant to their obligation under Federal Rule of Civil Procedure 56(e)(2) to present facts showing a genuine issue for trial, but defendants have chosen not to submit any evidence.

Moreover, defendants seem to forget that *they too* have moved for summary judgment on the issue of Article III standing. Case law tells us that, on *their* motion, this Court must draw all reasonable inferences in favor of *plaintiffs*. *See, e.g., Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 755 (7th Cir. 2008) (on defendants' summary judgment motion for lack of standing, courts "construe all facts and inferences drawn from them in the light most favorable to the nonmoving party"); *Rome Ambulatory Surgical Center, LLC v. Rome Memorial Hospital, Inc.*, 349 F.Supp.2d 389, 405-06 (N.D.N.Y. 2004) (summary judgment motion based on lack of standing denied because "[p]laintiff has set forth sufficient facts to allow a fact finder a reasonable inference" of the elements of standing). Thus, even if reasonable inferences from plaintiffs' evidence could be drawn not only in plaintiffs' favor but also in defendants' favor (which plaintiffs do not concede), defendants would not be entitled to summary judgment.

Outside the context of Article III standing, the possibility of conflicting inferences on cross-motions for summary judgment requires both motions to be denied, in favor of a trial. But motions for summary judgment of Article III standing are different: Instead of holding a trial on standing, the district court may decide contested factual issues on the summary judgment motion, holding an evidentiary hearing if necessary to resolve disputes between "warring affidavits" by assessing witness credibility on live testimony. *See Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 878-81 (11th Cir. 2000). Thus, in the present case, this Court may decide now, on the competing cross-motions for summary judgment, the inferences to be drawn from plaintiffs' evidence. *See United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984) ("To the trial court as trier of fact is entrusted the function of selecting from among conflicting inferences as to which reasonable minds could differ."). And because there are no "warring affidavits" here – defendants having elected to present no evidence, so that plaintiffs' evidence is undisputed – no credibility findings are necessary, and thus no evidentiary hearing is necessary. *Cf. Bischoff*, 222 F.3d at 881 (evidentiary hearing necessary because evidence required credibility findings). This Court may draw the inferences it deems appropriate and decide *now* whether plaintiffs have Article III standing.

//

//

**C. For the Ninth Circuit's benefit, this Court should rule in the alternative on whether the classified and non-classified evidence together demonstrates plaintiffs' Article III standing.**

Plainly this case is not destined to end at the district court level. If this Court finds Article III standing, defendants will certainly contend in the Ninth Circuit that plaintiffs' non-classified evidence is insufficient to support that finding. The Ninth Circuit would benefit from an alternative ruling by this Court as to whether the non-classified evidence *plus* the classified evidence (including the Sealed Document) *together* demonstrates standing. That way, in the unlikely event the Ninth Circuit finds the non-classified evidence insufficient, the appellate court can resolve all standing issues in a single appeal, without any need for remand to this Court to decide the sufficiency of the combined non-classified and classified evidence and then another trip to the Ninth Circuit.

This Court can make that alternative ruling without giving plaintiffs' counsel access to the classified evidence, and thus without re-entering the legal thicket that defendants have created with their strident resistence to further proceedings under section 1806(f). Plaintiffs have previously advised the Court that they are agreeable to the Court adjudicating Article III standing based on the classified evidence, without giving plaintiffs' counsel access to that evidence under section 1806(f). *See* Plaintiffs' Opposition To Defendants' Third Motion To Dismiss Or, In The Alternative, For Summary Judgment at 21-22, Dkt. #50 at 30-31. Plaintiffs now reiterate that position with regard to their motion for partial summary judgment (but not otherwise). Defendants cannot reasonably object to this approach, in light of the Court's advisement in the order of April 17, 2009, that the Court has now reviewed the Sealed Document, *see* Dkt. #84 at 1, so that the Court is now well-positioned to determine whether the non-classified evidence, the Sealed Document, and the other classified filings demonstrate standing.

## IV. DEFENDANTS HAVE FAILED TO SUSTAIN THEIR BURDEN ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

**A. This Court's ruling on FISA preemption precludes defendants' assertion of the state secrets privilege as a basis for evading their burden on plaintiffs' motion.**

Instead of attempting to meet their burden under Rule 56(e)(2) to present facts showing a genuine issue for trial, defendants have chosen to stake everything on their assertion – yet again –

of the state secrets privilege, arguing that the privilege relieves them of the obligation to sustain that burden. *See* Defs.' Memo. at 26-27, Dkt. #103 at 34-35. Of course, this Court has already ruled that FISA *preempts* the state secrets privilege, which disposes of defendants' assertion of the privilege. Defendants nevertheless contend that because this Court has not continued to proceed under section 1806(f), the state secrets privilege applies after all, and requires dismissal, because "the case is not proceeding under the FISA at this juncture." Defs.' Memo. at 13, Dkt. #103 at 21. That is nonsense. The case is indeed "proceeding under the FISA" – specifically, under FISA's civil liability provisions as set forth in 50 U.S.C. section 1810.

Defendants theorize that because this Court has said specifically that section 1806(f) "applies to preempt" the state secrets privilege, *see In re National Security Agency Telecommunications Records Litigation*, 564 F.Supp.2d at 1119, there is no FISA preemption here unless the Court continues to proceed under section 1806(f). *See* Defs.' Memo. at 15-16, Dkt.#103 at 23-24. That is just more nonsense. The Court held that FISA preemption is accomplished by the statutory *exclusivity* provision making FISA "the exclusive means for foreign intelligence surveillance activities," which "limits the power of the executive branch to conduct such activities" and *"limits the executive branch's authority to assert the state secrets privilege* in response to challenges to the legality of its foreign intelligence surveillance activities." *In re National Security Agency Telecommunications Records Litigation*, 564 F.Supp.2d at 1121 (emphasis added). FISA preemption occurs by virtue of FISA's exclusivity. It does not happen only when a litigant actually invokes the particular provisions of section 1806(f) replacing the state secrets privilege. To say FISA does not preempt the state secrets privilege until a party proceeds under section 1806(f) is like saying there is no First Amendment right to free speech until one speaks.[1/]

This Court has taken the state secrets privilege out of this case, not only by finding FISA preemption, but also by proceeding solely on non-classified evidence. Defendants continue to

---

[1/] And if this Court were to conclude that FISA preemption depends on proceeding under section 1806(f), then plaintiffs would ask the Court to resume doing so.

protest that an adjudication of plaintiffs' Article III standing "would reveal intelligence sources and methods," Defs.' Memo. at 29, Dkt. #103 at 37, but the Court's decision to litigate plaintiffs' Article III standing based on non-classified evidence eliminates the danger of revealing intelligence sources and methods. The public information on which plaintiffs rely to establish their standing is just that – *public information*. To whatever extent that information might reveal anything about intelligence sources and methods, it has *already been disclosed*, by the government itself. And even if the Court rules in the alternative that the classified and non-classified evidence together demonstrates standing, *see supra* at 10, that ruling can occur without public disclosure of the classified evidence, with the Court placing portions of its ruling under seal as contemplated by the order of January 5, 2009. *See In re National Security Agency Telecommunications Records Litigation*, 595 F.Supp.2d at 1089. All plaintiffs ask is for this Court to adjudicate the mere fact of their warrantless electronic surveillance, which says nothing about intelligence sources and methods that the government has not already disclosed.

Defendants insist that they are not asserting the state secrets privilege "to cover-up alleged unlawful conduct." Defs. Memo. at 29, Dkt. #103 at 37. Their counsel's own colleagues at the Department of Justice think otherwise. On September 16, 2008, seven law professors presented a joint statement to Congress saying: "In recent years, the Executive Branch has increasingly used [the state secrets] privilege as a categorical bar to litigation and *as a shield to avoid scrutiny of legally questionable executive programs*, such as the Terrorist Surveillance Program" – citing the Ninth Circuit's opinion in this very case. *Restoring the "Rule of Law": Hearing Before the S. Comm. On the Judiciary, Subcomm. On the Constitution*, 110th Cong. 6-7 (Sept. 16, 2008) (joint statement of David J. Barron et al.) (emphasis added); *see* Suppl. Decl. of Jon B. Eisenberg, exh. DD at 52-53. Among the signatories to this statement are: David J. Barron, who is now Principal Deputy at the DOJ's Office of Legal Counsel; Martin S. Lederman, who is now Deputy Assistant Attorney General at the Office of Legal Counsel; and Dawn E. Johnsen, who is President Obama's nominee to head the Office of Legal Counsel. *See id.*, exh. DD at 46. Given the belief of top officials at President Obama's DOJ that the assertion of the state secrets privilege in this very case has been designed to

cover up unlawful conduct, this Court should look askance at defendants' protest to the contrary.[2]

### B. Defendants have the burden of producing evidence of a FISA warrant and have failed to sustain that burden.

Defendants challenge the proposition that they have the burden of proving the existence of a FISA warrant as a matter within their exclusive knowledge. *See* Defs.' Memo. at 26-29, Dkt. #103 at 34-37. Defendants wrongly assume, however, that plaintiffs cannot establish the absence of a FISA warrant without such burden-shifting. As explained in plaintiffs' motion for partial summary judgment, plaintiffs do not rely solely on exclusive-knowledge burden-shifting to prevail on the issue whether their electronic surveillance was warrantless. The charge that plaintiffs have links to al-Qaeda puts them squarely within the scope of the *warrantless* TSP, raising the reasonable inference that their electronic surveillance was warrantless – so that, under the normal rules for summary judgment motions, the burden shifts to defendants to produce evidence of a FISA warrant. *See* Plaintiffs Motion For Partial Summary Judgment at 10, 15, Dkt. #99 at 18, 23. Plaintiffs do not need exclusive-knowledge burden-shifting unless this Court decides not to draw from plaintiffs' evidence the inference that defendants had no FISA warrant.

Moreover, defendants are wrong about application of the burden of producing evidence within their exclusive knowledge. Defendants contend exclusive-knowledge burden-shifting as discussed in *Schaffer v. Weast*, 546 U.S. 49 (2005), is restricted to the burden of persuasion and does not encompass the burden of producing evidence where Article III standing is concerned. *See* Defs.'

---

[2] In addition to the gradual public disclosure of non-classified evidence of plaintiffs' electronic surveillance, something else of note has happened since the Ninth Circuit proceedings: On February 27, 2009, defendants filed classified declarations with this Court purporting to "address an inaccuracy contained in a prior submission by the Government, the details of which involve classified information that cannot be set forth on the public record." Government Defendants' Report On Declassification Review at 2, Doc. #78 at 2. This "inaccuracy" remains a mystery to plaintiffs, who have not yet had access to those classified filings. But if the inaccuracy amounts to a *misrepresentation*, the Court should find that defendants have forfeited judicial deference to their assertion of the state secrets privilege. *See Horn v. Huddle*, ___ F.Supp.2d ___, ___ (2009 WL 2144131 at *4) (D.D.C. July 16, 2009) (court refuses to give "a high degree of deference" to assertion of state secrets privilege because of government's "prior misrepresentations regarding the state secrets privilege in this case").

Memo. at 27 n. 18, Dkt.#103 at 35 n. 18. But in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), which *Schaffer* cited as applying "the ordinary default rule" to which there is an exception for matters within a party's exclusive knowledge, *see Schaffer*, 546 U.S. at 57-58, the issue was Article III standing and the Supreme Court was speaking of the burden of producing evidence, not the burden of persuasion. For both burdens, the rule of burden-shifting applies for matters within a party's exclusive knowledge, even where Article III standing is concerned.

There are two separate and independent reasons why defendants have the burden of producing evidence of a FISA warrant: Rule 56(e)(2) burden-shifting, and exclusive-knowledge burden-shifting. Defendants have made no effort to sustain that burden – undoubtedly because they cannot. Their opposition to partial summary judgment is bereft of supporting evidence, classified or non-classified. Having failed to sustain their burden, they effectively concede summary judgment of Article III standing.

**C. Defendants have chosen to forego the opportunity to present evidence under the secure procedures authorized by section 1806(f).**

Defendants insist they should not be required to produce classified evidence in their defense *at the risk of its public disclosure*. *See* Defs.' Memo. at 26-27, Dkt. #103 at 34-35. But as this Court concluded in its decision of January 5, 2009, the provisions of section 1806(f) enable defendants to produce classified evidence under secure conditions that guard against any public disclosure or harm to national security. *In re National Security Agency Telecommunications Records Litigation*, 595 F.Supp.2d at 1089 (prescribing procedures under section 1806(f) for the purpose of "protecting classified evidence from disclosure and enabling plaintiffs to prosecute their action"); *see also Horn v. Huddle*, ___ F.Supp.2d at ___ & n. 12 (2009 WL 2144131 at *6, *7) (citing this Court's decision of January 5, 2009, as support for adopting protective measures "to prevent unauthorized disclosures of classified information"). This Court provided assurance against public disclosure of classified evidence or harm to national security when ordering, on June 5, 2009, that "[i]f defendants rely upon the Sealed Document or other classified evidence in response" to plaintiffs' motion for partial summary judgment, "the court will enter a protective order and produce such classified evidence to those of plaintiffs' counsel who have obtained top secret/sensitive compartmented information

clearances." Dkt. # 96 at 2. Defendants, however, have expressly chosen *not* to produce classified evidence pursuant to section 1806(f), despite this Court's assurances against public disclosure or harm to national security. *See* Defs.' Memo. at 16, Dkt. #103 at 24.

Again, defendants' choice – here, to forego the protections of section 1806(f) – has consequences: Having elected not to present any evidence under section 1806(f) that might rebut plaintiffs' prima facie showing of Article III standing, defendants have effectively conceded the evidentiary issues pertaining to standing.

## V. THE COURT HAS ALREADY REJECTED DEFENDANTS' REMAINING ARGUMENTS ON ARTICLE III STANDING.

Defendants' remaining arguments on Article III standing consist of yet more re-hashing of points that have already been litigated in plaintiffs' favor. Plaintiffs see no need to contribute further to the re-hashing, but simply provide a roadmap of the parties' previous competing arguments and this Court's prior rulings:

- Defendants repeat their claim that the TSP's purported termination precludes prospective relief here. *See* Defs.' Memo. at 10-11, Dkt. #103 at 18-19. The Court rejected that claim in the order of July 2, 2008. *See In re National Security Agency Telecommunications Records Litigation*, 564 F.Supp.2d at 1124.

- Defendants repeat their assertion of sovereign immunity from claims for damages under section 1810. *See* Defs.' Memo. at 12, Dkt. #103 at 20. The Court rejected that assertion, too, in the order of July 2, 2008. *See In re National Security Agency Telecommunications Records Litigation*, 564 F.Supp.2d at 1124-25.

- Defendants repeat various claims why plaintiffs' non-classified evidence does not raise the inference of warrantless electronic surveillance, including arguments about interception of telephonic communications on a wire in the United States, prior terrorist designations of overseas branches of Saudi Arabia-based Al-Haramain Islamic Foundation, FBI Deputy Director John S. Pistole's public confirmation that the FBI used surveillance in the 2004 investigation of plaintiff Al-Haramain, and Mr. Coppolino's 2006 comment about TSP surveillance of "attorneys who represent terrorist clients." *See* Defs.' Memo. at 21-25, Dkt. #103 at 29-33. Plaintiffs addressed these claims

in Plaintiffs' Opposition To Defendants' Third Motion To Dismiss Or, In The Alternative, For Summary Judgment at 9-14, Dkt. #50 at 18-23, after which this Court found, in the order of January 5, 2009, that plaintiffs' "showing" is "legally sufficient" to make their prima facie case. *In re National Security Agency Telecommunications Litigation*, 595 F.Supp.2d at 1086.

- Defendants repeat their quotation of comments by plaintiffs' counsel during oral argument in 2006 before the Oregon district court, which defendants claim amounted to a concession of inability to demonstrate Article III standing. *See* Defs.' Memo. at 28-29 n. 20, Dkt. #103 at 36-37 n. 20. Plaintiffs addressed this claim – and the fact that those 2006 comments have since been eclipsed by the disclosure of non-classified evidence demonstrating plaintiffs' Article III standing – in Plaintiffs' Reply To Defendants' Opposition To Motion Pursuant To 50 U.S.C. § 1806(f) To Discover Or Obtain Material Relating To Electronic Surveillance at 10, Dkt. 515 at 15. The Court did not even deem this point worthy of mention in the Court's rulings.

## VI. THE COURT SHOULD NOT GRANT DEFENDANTS' FOURTH MOTION TO DISMISS AND FOR SUMMARY JUDGMENT WITHOUT GIVING PLAINTIFFS' COUNSEL ACCESS TO THE CLASSIFIED FILINGS UNDER SECTION 1806(f).

Finally, plaintiffs address the Government Defendants' Fourth Motion To Dismiss And For Summary Judgment. There is nothing new here, either. With the exception of defendants' meritless rule of mandate argument, the motion is the same re-hash of defendants' previously unsuccessful arguments, which no more require dismissal or summary judgment for defendants than they preclude partial summary judgment for plaintiffs. Having failed to present any evidence to support their motion, defendants are not entitled to dismissal or summary judgment.

One additional point, however, requires comment. Defendants posit that if this Court finds the non-classified evidence insufficient to establish Article III standing, the Court must dismiss the action forthwith. That is not correct. For the time being, pending the Court's assessment of the non-classified evidence on the parties' competing summary judgment motions, the Court has held in abeyance further proceedings under section 1806(f) as prescribed in the Court's order of January 5, 2009, which indicated that plaintiffs' counsel might subsequently be given access to the classified filings in this case under secure conditions as authorized by section 1806(f). *See In re National*

*Security Agency Telecommunications Records Litigation*, 595 F.Supp.2d at 1089-90. If the Court were to find the non-classified evidence insufficient to establish Article III standing (and did not rule in the alternative on whether the classified and non-classified evidence together demonstrates Article III standing, *see supra* at 10), the next appropriate step would be for the Court to resume proceedings on plaintiffs' successful motion under section 1806(f) and afford plaintiffs the opportunity to use the classified filings to demonstrate their Article III standing.[3/]

## CONCLUSION

For the foregoing reasons and for those set forth in Plaintiffs' Motion For Partial Summary Judgment, this Court should grant a partial summary judgment of plaintiffs' Article III standing and defendants' liability under 50 U.S.C. section 1810 and should deny the Government Defendants' Fourth Motion To Dismiss And For Summary Judgment.

DATED this 8th day of September, 2009

/s/ Jon B. Eisenberg

Jon B. Eisenberg, Calif. Bar No. 88278
William N. Hancock, Calif. Bar No. 104501
Steven Goldberg, Ore. Bar No. 75134
Thomas H. Nelson, Oregon Bar. No. 78315
Zaha S. Hassan, Ore. Bar No. 97062
J. Ashlee Albies, Ore. Bar No. 05184
Lisa Jaskol, Calif. Bar No. 138769

**Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew, and Asim Ghafoor**

---

[3/] One of the issues regarding further proceedings under section 1806(f) is whether this Court may decide whether plaintiffs' counsel have a "need to know" information in the classified filings in this case. Plaintiffs supplied the Court with pertinent legal authorities on that issue in Plaintiffs' Supplemental Case Management Statement at 2-6, Dkt. #72 at 3-7. Since that filing, Chief Judge Royce L. Lamberth of the United States District Court for the District of Columbia (a former Presiding Judge of the Foreign Intelligence Surveillance Court) has determined that a district judge may decide whether counsel who have been favorably adjudicated for access to classified information have a "need to know" the information within the context of pending litigation. *Horn v. Huddle*, ___ F.Supp.2d ___, ___ (2009 WL 2610100 at *7-*8 & n. 18) (D.C.Cir. Aug. 26, 2009) ("The deference generally granted the Executive Branch in matters of classification and national security must yield when the Executive attempts to exert control over the courtroom.").