Ilann M. Maazel
Matthew D. Brinckerhoff
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
Telephone: (212) 763-5000
Facsimile:  (212) 763-5001
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY ) TELECOMMUNICATIONS RECORDS ) LITIGATION ) ) This Document Relates to: ) ) VIRGINIA SHUBERT, NOHA ARAFA, ) SARAH DRANOFF and HILARY ) BOTEIN, individually and on behalf of all ) others similarly situated, ) ) Plaintiffs, ) ) - against - ) ) BARACK OBAMA, in his official capacity, ) ERIC HOLDER, in his official capacity, ) KEITH B. ALEXANDER, in his personal ) and official capacities, MICHAEL V. ) HAYDEN, in his personal capacity, ) ALBERTO GONZALES, in his personal ) capacity, JOHN ASHCROFT, in his ) personal capacity, UNITED STATES OF ) AMERICA, and JOHN/JANE DOES ) #1-100 (07-693) ) ) Defendants ) ------------------------------------------------------) | MDL Dkt. No. 06-1791-VRW **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SECOND MOTION TO DISMISS AND FOR SUMMARY JUDGMENT BY THE UNITED STATES AND THE OFFICIAL CAPACITY DEFENDANTS** Date:   December 15, 2009 Time:  2:00 pm Courtroom: 6 Hon. Vaughn R. Walker |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii-iv

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT.......................................................................................................... 2

    I.    Defendants Do Not Have Immunity for the Statutory Claims................................ 2

          A.    The United States Does Not Have Immunity under FISA......................... 3

          B.    Defendants Do Not Enjoy Immunity in Their Personal Capacities
                Under the Wiretap Act or the ECPA……………………………………3

    II.    The Executive's Radical Attempt to Extend the State Secrets Privilege
          Does not Bar This Suit................................................................................. 4

          A.    As the Court Held, Section 1806(f) of FISA Preempts the State
                Secrets Privilege.................................................................................. 4

          B.    Because the Content Monitoring program is Not Secret,
                It Is Not a "State Secret".................................................................... 5

          C.    The State Secrets Privilege Does Not Apply to a Massive, Illegal
                Program That Reaches into the Heartland of This Country and
                Violates the Constitutional Rights of Millions of Ordinary
                Americans ............................................................................................ 7

                1.    Because This Case Concerns Civilian, not "Military Matters,"
                          the State Secrets Privilege Does Not Apply ................................... 8

                2.    The Supreme Court Case in *Webster* Requires Balancing
                          Of the Parties' Interests, not Dismissal......................................... 10

                  3.    *Reynolds*, Which Was Decided In a Considerably
                          Different and More Limited Factual Context, Does Not
                          Require Dismissal ....................................................................... 12

    III.    Defendants' Standing Argument Is a Red Herring ............................................... 14

    IV.    Defendant's Claims of Statutory Privilege Again Fail ......................................... 18

          CONCLUSION........................................................................................... 19

# TABLE OF AUTHORITIES

**Federal Cases:**

*American Civil Liberties Union v. National Security Agency,*
    493 F.3d 644 (6th Cir. 2007) ......................................................................... 16

*Bareford v. General Dynamics Corp.,*
    973 F.2d 1138 (5th Cir. 1992) ........................................................................ 9

*Brinegar v. United States,*
    338 U.S. 160 (1949).......................................................................................... 5

*Tenet v. Doe,*
    544 U.S. 1 (2005)............................................................................................. 9

*Department of Navy v. Egan,*
    484 U.S. 518 (1988)........................................................................................ 9

*Director, Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.,*
    514 U.S. 122 (1995)...................................................................................... 16

*Edmonds v. United States Dept. of Justice,*
    323 F.Supp.2d 65 (D.D.C. 2004) .................................................................. 9

*Farnsworth Cannon, Inc. v. Grimes,*
    635 F.2d 268 (4th Cir. 1980) ........................................................................ 9

*FEC v. Akins,*
    524 U.S. 11 (1998)........................................................................................ 16

*Fitzgerald v. Penthouse Int'l, Ltd.,*
    776 F.2d 1236 (4th Cir. 1985) ...................................................................... 9

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004)...................................................................................... 14

*Hepting v. AT&T Corp.,*
    439 F.Supp.2d 974 (N.D.Cal. 2006) .................................................... *passim*

*In re Nat'l Sec. Agency Telecomm. Records Litig.,*
    564 F. Supp. 2d 1109 (N.D. Cal. 2008) ....................................................... 1

*In re Under Seal,*
    945 F.2d 1285 (4th Cir. 1991) ...................................................................... 9

ii

*Jencks v. United States,*
  353 U.S. 657 (1957)................................................................................... 6

*Kasza v. Browner,*
  133 F.3d 1159 (9th Cir. 1998) ............................................................... 4

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)........................................................................... 14, 15

*Marbury v. Madison,*
  5 U.S. 137 (1803)................................................................................ 8, 14

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) ............................................................... 9

*Molerio v. FBI,*
  749 F.2d 815 (D.C. Cir. 1984) ............................................................... 9

*Northrop Corp. v. McDonnell Douglas Corp.,*
  751 F.2d 395 (D.C. Cir. 1984) ............................................................... 9

*R.J. Reynolds Tobacco Co. v. Shewry,*
  423 F.3d 906, 911 n.2 (9th Cir. 2005) ................................................. 2

*Reid v. Covert,*
  354 U.S. 1, 33 (1957)...................................................................... 10, 14

*Stehney v. Perry,*
  101 F.3d 925 (3rd Cir. 1996) ............................................................... 14

*Sterling v. Tenet,*
  416 F.3d 338 (4th Cir. 2005) ............................................................... 11

*Tilden v. Tenet,*
  140 F.Supp.2d 623 (E.D.Va. 2000) ...................................................... 9

*TMJ, Inc. v. Nippon Trust Bank,*
  2001 WL 925622 ................................................................................. 17

*Totten v. United States,*
  92 U.S. 105(1875)................................................................................. 9

*United States v. Reynolds,*
  345 U.S. 1 (1953)........................................................... 8, 9, 10, 12, 13

*Webster v. Doe,*
    486 U.S. 592 (1988)................................................................................ 8, 10, 11, 12

*Wilbur v. Locke,*
    423 F.3d 1101 (9th Cir. 2005) ............................................................................ 2, 15

*Laird v. Tatum,*
    408 U.S. 1 (1972)................................................................................................ 8, 10, 13

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)............................................................................................ 10

*Zuckerbraun v. General Dynamics Corp.,*
    935 F.2d 544 (2nd Cir. 1991)............................................................................ 9

## Federal Statutes:

50 U.S.C. § 402................................................................................................ 18

50 U.S.C. § 403-1(i)(1) ................................................................................... 18

50 U.S.C. § 1801(m)........................................................................................ 3

50 U.S.C. § 1806(f)......................................................................................... 5

50 US.C. § 1810.............................................................................................. 3, 15

## Federal Rules:

Fed. R. Civ. P. 56(f)....................................................................................... 4

Fed. R. Civ. P. 25(d) ...................................................................................... 3

iv

## PRELIMINARY STATEMENT

The United States instituted a massive, criminal, domestic spying program that monitors millions of telephone and Internet communications of ordinary Americans. As an NSA operative admitted on national television earlier this year: "The National Security Agency had access to *all* Americans' communications: faxes, phone calls, and their computer communications . . . It didn't matter whether you were in Kansas, you know, in the middle of the country and you never made foreign communications at all. They monitored all communications."[1]

Now, for the second time in this case, a President seeks to transform a limited, common law evidentiary privilege into sweeping immunity for unlawful conduct. In defendants' view, *any* illegal conduct, *any* unconstitutional conduct–no matter how many people it affects, no matter how violative it is of fundamental rights–cannot be stopped, or even revealed, so long as revelation of the conduct might harm national security. That is not, and cannot be, the law.

As an initial matter, this motion is no more than a rehash of arguments already rejected by the Court. The government claims it has sovereign immunity under FISA. The Court previously rejected the argument.[2] The government claims that FISA Section 1806(f) does not preempt the common-law state secrets privilege. The Court previously rejected the argument.[3] The government claims the entire subject matter of the spying program is a state

---

[1] http://www.youtube.com/watch?v=osFprWnCjPA at 2:15 (statement by NSA operative Russell Tice). Mr. Tice later refers to the program as a "low-tech dragnet." *Id.* at 4:20.

[2] *In re Nat'l Sec. Agency Telecomm. Records Litig.*, 564 F. Supp. 2d 1109, 1124-25 (N.D. Cal. 2008) ("Al-Haramain").

[3] *Al-Haramain*, 564 F. Supp. 2d at 1118-19.

secret, but the Court already held that the program is "hardly a secret," much less a state secret.[4]

Even worse is the President's limitless assertion of executive power. A secret program by the Executive to put a camera in every American's bedroom could not be revealed, if to reveal it might harm national security. A secret program by the Executive to abduct and torture Americans could not be revealed, challenged, much less stopped, if to reveal it might harm national security. The Executive simply offers no limiting principle–*none*–for its breathtaking extension of the state secrets privilege.

Article III courts exist to prevent such unchecked power. "Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government."[5] So too the uncontrolled ability of the Executive to insulate itself from Article III scrutiny is a powerful weapon "in the arsenal of . . . arbitrary government."

The motion should be denied.

# ARGUMENT[6]

## I.    Defendants Do Not Have Immunity for the Statutory Claims

Defendant United States, and the individual defendants in their official capacities, claim sovereign immunity under the Foreign Intelligence Surveillance Act (FISA), the Wiretap Act, and the Electronic Communications Privacy Act (ECPA). Defendants' argument is misplaced.

---

[4] *Hepting v. AT&T Corp.*, 439 F.Supp.2d 974, 994 (N.D.Cal. 2006) ("*Hepting*").

[5] *Brinegar v. United States*, 338 U.S. 160, 180 (1949) (Jackson, J., dissenting).

[6] The factual allegations of the Amended Complaint are all accepted as true for purposes of this motion. *See Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (standing); *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 911 n.2 (9th Cir. 2005) (12(b)(6)).

A.      **The United States Does Not Have Immunity under FISA**

As the government concedes, this Court has already ruled that Congress waived sovereign immunity for FISA claims under 50 US.C. § 1810.  *Al-Haramain*, 564 F. Supp. 2d at 1124-25; 50 U.S.C. § 1810.  First, as this Court held, Congress waived immunity by expressly making federal officers acting in their official capacities subject to suit for damages.  *See id.* Second, Congress waived immunity by expressly making "any . . . entity," including the United States, subject to suit.  *See* 50 U.S.C. § 1801(m) (defining "Person(s)" amenable to suit to include "any. . . entity").  None of the defendants enjoys immunity from the FISA claim.  *Id.*

B.      **Defendants Do Not Enjoy Immunity in Their Personal Capacities under the Wiretap Act or the ECPA**

This motion is brought only by "the Government Defendants sued in their official capacity."  [Case No. 07-cv-00693-VRW Dkt. 38, at 1].  In light of the recent change in administration, plaintiffs should clarify the capacities in which each of the defendants is sued.[7] Plaintiffs originally sued the United States of America and President George W. Bush (in his official capacity), and NSA Directors Michael Hayden and Keith Alexander and Attorneys General Alberto Gonzales and John Ashcroft (in their personal and official capacities).  With the change in administration, President Barack Obama, NSA Director Keith Alexander, and Attorney General Eric Holder automatically replace defendants Bush, Hayden, Gonzales, and Ashcroft in their official capacities only.  Fed. R. Civ. P. 25(d).  This suit, therefore, is currently brought against President Obama (in his official capacity), the United States of America,

---

[7] The government's attempt to "construe" the Amended Complaint "to allege official capacity claims only" (Def. Br. at 11 n. 14) cannot be defended.   Defendants know full well they were sued in their personal capacities: defense counsel (including Mr. Coppolino) spoke with the undersigned on numerous occasions about the personal capacity defendants; DOJ agreed to accept service of the Complaint on behalf of defendants "in their individual capacities," *see* Ex. D (attached); and plaintiffs then served DOJ in accordance with that agreement, *see* Ex. E (attached).

Attorney General Eric Holder (in his official capacity), NSA Director Keith Alexander (in his personal and official capacities), and Michael Hayden, Alberto Gonzales, and John Ashcroft (in their personal capacities).

Although the FISA and Fourth Amendment claims are brought against all defendants in all of the capacities set forth *supra*, plaintiffs agree with the government that, unlike in the *Jewel* case, they are not asserting Wiretap Act or ECPA claims against the United States of America or defendants in their *official* capacities. However, plaintiffs *do* assert those claims against the individual capacity defendants, none of whom has asserted or can assert sovereign immunity.

## II. The Executive's Radical Attempt to Extend the State Secrets Privilege Does not Bar This Suit

Rather than attempt to defend the indefensible, defendants seek to avoid the merits by transforming a narrow, evidentiary privilege into sweeping immunity for violations of criminal law and the Constitution. The effort should be rejected.

### A. As the Court Held, Section 1806(f) of FISA Preempts the State Secrets Privilege

The state secrets privilege is no more than "an evidentiary privilege rooted in federal common law." *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998). As the Court held in *Al-Haramain*, 50 U.S.C. § 1806(f) preempts the common-law state secrets privilege to cover materials related to electronic surveillance. 564 F. Supp. 2d at 1118-19. Section 1806(f) is part of a comprehensive regulatory program that "leaves no room in a case to which Section 1806(f) applies" for the common-law state secrets privilege. *Id.* at 1119. Rather, Section

4

1806(f) "is Congress's specific and detailed prescription for how courts should handle claims by the government that the disclosure of material relating to or derived from electronic surveillance would harm national security." *Id.* Indeed, it "is in effect a codification" of the common law privilege for cases where Section 1806(f) applies, "as modified to reflect Congress's precise directive to the federal courts for the handling of materials and information with purported national security implications." *Id.* Where it applies, Section 1806(f)'s protocol is mandatory: courts "shall" conduct the review Section 1806(f) prescribes in cases within its scope. *Id.*

By its plain language, Section 1806(f) reaches any "materials relating to electronic surveillance," regardless of whether that electronic surveillance was done for foreign intelligence purposes under FISA, and regardless of whether the claims are brought under FISA, another statute, or the Constitution itself. Rather than simply repeat arguments made in the *Jewel* case, plaintiffs hereby adopt and incorporate "Plaintiffs' Supplemental Brief on the Scope of the FISA Act's Preemption of the State Secrets Privilege," in the *Jewel* case, dated August 3, 2009, in its entirety [Case No. 08-cv-04373-VRW Dkt. 38-1, *see* Ex. A, attached]. For the reasons set forth there, as well as plaintiffs' brief in opposition to defendants' first motion to dismiss in this case [Case No. 07-cv-00693-VRW Dkt. 11, *see* Ex. B, attached], and the *Jewel* plaintiffs' brief in opposition to the government's motion to dismiss dated June 3, 2009 [Case No. 08-cv-04373-VRW Dkt. 29, *see* Ex. C, attached], Section 1806(f) preempts the state secrets privilege as to *all* of plaintiffs' claims.[8]

**B.     Because the Content Monitoring Program Is Not Secret, It Is Not a "State Secret"**

Even if Section 1806(f) did not preempt the state secrets privilege, which it

---

[8] Exhibits A-C are incorporated by reference in their entirety as a part of this memorandum.

plainly does, the government's state secrets motion should be denied, for at least four additional, independent reasons. *See* §§ II(B), II(C)(1-3), *infra*.

First, as this Court previously held, defendants' content monitoring program is "hardly a secret," much less a state secret. *Hepting*, 439 F.Supp.2d at 994. Defendants publicly "admitted the existence" of the program, that it "monitor[s] communication content," "tracks calls into the United States or out of the United States," and "operates without warrants." *Id.* at 992 (citations omitted). Because the "very subject matter of this action is hardly a secret," the state secrets privilege cannot bar this suit. *Id.* at 994; *see also Jencks v. United States*, 353 U.S. 657, 675 (1957) (Burton, J., concurring) ("Once the defendant learns the state secret . . . the underlying basis for the privilege disappears, and there usually remains little need to conceal the privileged evidence from the jury. Thus, when the Government is a party, the preservation of these privileges is dependent upon nondisclosure of the privileged evidence to the defendant.").

If anything, since *Hepting* the government has revealed *even more* about the content monitoring program, so much so that an NSA operative admitted earlier this year that the NSA "monitored all communications," including "*all* Americans' communications: faxes, phone calls, and their computer communications." *See* n.1, *supra*. The NSA agent even described the program as a "low-tech dragnet." This, and the overwhelming information in the public domain about the spying program both before and after *Hepting*, make clear that the program is "hardly a secret," much less a state secret. *Hepting*, 439 F.Supp.2d at 994.

In addition, the Executive has "opened the door for judicial inquiry by publicly confirming and denying material information about its monitoring of communication content." *Hepting*, 439 F.Supp.2d at 996. Defendants cannot both deny the existence of the dragnet,

*and* claim that the state secrets privilege prevents them from making such a denial.  Yet that is what the Executive does here.  Defendants previously submitted a declaration from Keith Alexander, Director of the National Security Agency, swearing that "Plaintiffs' allegations of a content surveillance dragnet are false."  *See* Public Declaration of Keith Alexander, May 25, 2007 ¶ 16 [Case No. 07-cv-01791-VRW Dkt. 295-3].[9]  "If the government's public disclosures have been truthful," discovery regarding those disclosures "should not reveal any new information that would assist a terrorist and adversely affect national security."  But "if the government has not been truthful, the state secrets privilege should not serve as a shield for its false public statements."  *Hepting*, 439 F.Supp.2d at 996.[10]  Defendants' motion should be denied.

### C.   The State Secrets Privilege Does Not Apply to a Massive, Illegal Program That Reaches into the Heartland of This Country and Violates the Constitutional Rights of Millions of Ordinary Americans

*Al-Haramain* and *Hepting* plainly defeat the government's renewed motion; the Court need not address plaintiffs' many other arguments in order to deny the motion.  But the other arguments do bear mention.

If the Executive successfully uses the state secrets privilege to dismiss this case at the pleading stage, there will be virtually no check left upon the ability of an overly-aggressive executive to violate the rights of ordinary Americans.  With a couple of *ex parte* declarations, the Executive can wipe out statutory mandates, immunize himself from Article III scrutiny, and

---

[9] The Government again denied the content dragnet in *Jewel*.  Public Declaration of Deborah A. Bonanni, ¶ 14 & n. 2 [Case 08-cv-04373-VRW Dkt. 18-3].

[10] Were it otherwise, the state secrets privilege would simply be a license for government officials to lie.

7

arrogate to himself the power to engage in unconstitutional and even criminal conduct, for however long, affecting millions. This startling departure from over two hundred years of American jurisprudence violates at least four central constitutional principles: the right of plaintiffs to be free from unreasonable searches and seizures, *see* U.S. Const. amend. IV; the right of plaintiffs to a judicial forum to assert their constitutional rights, *see Webster v. Doe*, 486 U.S. 592, 603 (1988); the constitutional right and duty of Article III courts to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803); and the constitutional limitations upon the Executive to exert power unauthorized by Congress within the domestic sphere, *see Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952).

These constitutional principles compel rejection of defendants' motion, for at least three reasons: (1) the limited definition of state secrets in *United States v. Reynolds*, 345 U.S. 1 (1953), which avoided the constitutional concerns in *Youngstown* and *Laird v. Tatum*, 408 U.S. 1, 15 (1972) that exist here, does not apply by its own terms; (2) *Webster*, not *Reynolds*, controls when constitutional claims are at stake, and *Webster* requires balancing of the parties' interests, not dismissal; and (3) *Reynolds*, which was decided in a considerably different and more limited factual context, does not require dismissal.[11]

### 1.   Because This Case Concerns Civilian, not "Military Matters," the State Secrets Privilege Does Not Apply

As this Court observed in *Hepting*, "most cases in which the very subject matter [of the case] was a state secret involved classified details about either a highly technical invention or a covert espionage relationship." *Id.*, 439 F.Supp.2d at 993. There is good reason for this. The *Reynolds* holding, by its own terms, dealt *only* with "military matter[s]." 345 U.S.

---

[11] These arguments are all set forth at greater length in Ex. B, which this brief incorporates in its entirety.

at 10 (privilege applies *only* where "there is a reasonable danger that compulsion of the evidence

will expose *military matters* which, in the interest of national security, should not be divulged.").

The secret test flight of a B-29 bomber (*Reynolds*), and the covert spy relationships with

President Lincoln (*Totten v. United States*, 92 U.S. 105 (1875)) and with the CIA (*Tenet v. Doe*,

544 U.S. 1 (2005)), are all plainly core "military matters."[12]  But if *Youngstown Sheet* teaches

anything, it is that the encroachment of the military into the purely *civilian* affairs of ordinary

Americans, *e.g.*, spying upon hundreds of millions of phone calls and emails that have nothing to

do with the military or with foreign intelligence, is a *civilian* matter. *Id.*, 343 U.S. at 587; *id.* at

642 (Jackson, J., concurring) ("[N]o doctrine that the Court could promulgate would seem . . .

more sinister and alarming than that a President . . . can vastly enlarge his mastery over the

internal affairs of the country by his own commitment of the Nation's armed forces to some

foreign venture."); *id.* at 644 ("The military powers of the Commander-in-Chief were not to

supersede representative government of internal affairs . . . . Congress, not the Executive, should

control utilization of the war power as an instrument of domestic policy."); *id.* at 632 (Douglas,

J., concurring) ("[O]ur history and tradition rebel at the thought that the grant of military power

---

[12]The great majority of state secrets cases similarly concern core military matters and/or persons who worked with or for United States intelligence or the military. *See, e.g., Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005) (CIA covert agent's employment lawsuit against CIA); *Edmonds v. United States Dept. of Justice*, 323 F.Supp.2d 65 (D.D.C. 2004) (action by terminated FBI employee); *Tilden v. Tenet*, 140 F.Supp.2d 623 (E.D.Va. 2000) (CIA employee suit against CIA); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138 (5th Cir. 1992) (defective weapon causing death of sailors in Iraqi missile attack); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2nd Cir. 1991) (malfunction of missile defense system aboard U.S. Navy frigate); *In re Under Seal*, 945 F.2d 1285 (4th Cir. 1991) (action by government contractor for failure to renew contract involving "highly-classified program"); *Department of Navy v. Egan*, 484 U.S. 518 (1988) (denial of security clearance to Trident Naval Refit Facility, which services Trident nuclear weapons); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236 (4th Cir. 1985) (Navy and CIA "dolphin torpedo" and "open-ocean weapons systems"); *Molerio v. FBI*, 749 F.2d 815 (D.C. Cir. 1984) (FBI refusal to hire plaintiff as a special agent); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395 (D.C. Cir. 1984) (defense contractor subpoena of Department of Defense concerning sale of military equipment to foreign countries); *Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) (FOIA request concerning secret CIA project to raise sunken Russian submarine from the Pacific Ocean floor); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268 (4th Cir. 1980) (action by Navy contractor against Navy employee for loss of Navy contract) (cases all cited by defendants).

carries with it authority over civilian affairs.").

Reynolds carefully included only purely "military matters" within its holding. It did not invite the government to extend the state secrets privilege into the civilian arena, and for good reason. We have long enjoyed a "deeply rooted and ancient opposition in this country to the extension of military control over civilians," *Reid v. Covert*, 354 U.S. 1, 33 (1957), and to "any military intrusion into civilian affairs." *Laird*, 408 U.S. at 15. Extension of the state secrets privilege to conceal and essentially sanction such "military intrusion," *id.*, would run head first into this ancient and vital constitutional doctrine. *See id.*; *Youngstown Sheet*, 343 U.S. at 587.

Reynolds dealt with a limited and traditional application of the state secrets privilege, one confined to a purely "military matter": the secret flight of a B-29 bomber. *Reynolds* therefore carefully limited the privilege (and its holding) to "military matters." The state secrets privilege does not apply in this case, *see id.*, nor could it, *see Reid*, 354 U.S. at 33; *Laird*, 408 U.S. at 15; *Youngstown Sheet*, 343 U.S. at 587.

### 2. The Supreme Court Case in *Webster* Requires Balancing of the Parties' Interests, not Dismissal

Even if the eavesdropping of hundreds of millions of private conversations and emails between parents and children, spouses, co-workers, friends, doctors, teachers, journalists, accountants, judges, the clergy, *et al.* were somehow a "military matter," the state secrets privilege would not require dismissal of this case.

Where constitutional claims are at stake, Supreme Court precedent requires a balancing of the parties' interests, not dismissal. *Webster v. Doe*, 486 U.S. 592, 603 (1988). *Reynolds* did not involve constitutional claims. *Reynolds* instead involved a tort case brought by

10

three people, involving no issues of constitutional significance. In contrast, this class action on behalf of hundreds of millions of Americans involves arguably the most sweeping violation of constitutional rights by a President in the nation's history. As this Court previously noted, "no case dismissed because its 'very subject matter' was a state secret involved ongoing, widespread violations of individual constitutional rights." *Hepting*, 439 F.Supp.2d at 993.

This is significant. Here defendants seek to use a common law privilege to deny plaintiffs a judicial forum to assert their Fourth Amendment right to be free from a Dragnet surveillance program. But as the Supreme Court held in *Webster*, a case that post-dates *Reynolds*, a "serious constitutional question . . . would arise" if even "a federal *statute* were construed to deny any judicial forum for a colorable constitutional claim." *Webster*, 486 U.S. at 603 (citation omitted). In *Webster*, the plaintiff (unlike plaintiffs here) did contract with and work for the United States (in the CIA). Notwithstanding plaintiff's status as a former CIA employee, and notwithstanding the CIA Director's claim that "judicial review even of [plaintiff's] constitutional claims" will be "to the detriment of national security," *id.* at 604, the Supreme Court refused to dismiss the case. Instead, and in contrast to *Reynolds* (which involved no constitutional claim), the Court instructed the district court to "balance [plaintiff's] need for access to proof which would support a colorable constitutional claim against the extraordinary needs of the CIA for confidentiality and the protection of its methods, sources, and mission." *Id.*; *see also Stehney v. Perry*, 101 F.3d 925, 934 (3rd Cir. 1996) (permitting plaintiff to mount constitutional challenge to the NSA's revocation of her national security clearance in part to avoid the "serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim").

11

Defendants ask the Court to deny plaintiffs a judicial forum to vindicate their Fourth Amendment rights. That *Webster* does not permit. The *Webster* court was familiar with *Reynolds*. It cited *Reynolds*. But the *Webster* court struck a different balance where constitutional rights were at stake–permitting the case to proceed, discovery to be held, and a careful balancing of the parties' respective interests.

This case is even stronger than *Webster*, because Congress passed a law (FISA) authorizing discovery, not requiring dismissal. The constitutional interests at stake here are also far greater than in *Webster*. *Webster* involved a single plaintiff, asserting fairly weak constitutional claims.[13] *Shubert* is a putative class of millions of Americans, asserting extremely serious violations of the Fourth Amendment. Defendants' radical attempt to deny plaintiffs a judicial forum to assert their Fourth Amendment claims must be rejected. *Webster*, 486 U.S. at 603.

### 3.     *Reynolds*, Which Was Decided In a Considerably Different and More Limited Factual Context, Does Not Require Dismissal

*Reynolds* is distinguishable in at least five further respects. First, *Reynolds* involved persons who volunteered to go on a plainly military mission. But plaintiffs here did not join, observe, contract with, or spy for the United States military or a United States intelligence agency.

In *Reynolds*, there was no reason even to believe that the withheld information implicating state secrets "had any causal connection with the accident." 345 U.S. at 11. In contrast, defendants here seek not only to withhold all discovery (including any and all discovery

---

[13]*See Webster*, 486 U.S. at 602 ("We share the confusion of the Court of Appeals as to the precise nature of respondent's constitutional claims.").

they have relevant to plaintiffs' case), they seek to dismiss the case entirely.

In *Reynolds*, defendants "formally offered to make the surviving crew members available for examination," an offer plaintiffs rejected but that the Supreme Court believed "should have been accepted." *Id.* Whatever minimal harm was caused to plaintiffs' case by the failure to produce an irrelevant report on the electronic equipment was more than minimized by the government's offer to produce live witnesses. This case stands in stark contrast. The withheld discovery (*i.e.*, *all* discovery) is extremely relevant, and defendants have provided no alternative: no witnesses, no documents, nothing at all besides a demand for dismissal.

Unlike *Reynolds* (but like *Youngstown Sheet*), this case involves a startling encroachment of the Executive into the domestic sphere. The Dragnet program monitors, intercepts, and searches the contents of hundreds of millions of phone calls and emails made within the United States, calls by ordinary Americans to their family, friends, and others. Amended Compl. ¶¶ 1-3, 50-90. The Dragnet program is far more intrusive within the domestic sphere than President Truman's unconstitutional actions, which affected a limited number of steel mills. *Reynolds* simply had no occasion to consider the privilege within such a context.

Unlike *Reynolds*, this case also involves a "military intrusion into civilian affairs." *Laird*, 408 U.S. at 15. This is no minor intrusion, but–as alleged–the most widespread and substantial "military intrusion into civilian affairs" since the Civil War. The National Security Agency, which is the intelligence arm of the Department of Defense, is now engaged in a national electronic quartering program, monitoring the daily lives of millions of ordinary Americans: their conversations, their email, their Internet use. *Reynolds*, which dealt with secret electronic equipment on a military aircraft, again had no occasion to consider the privilege in this

13

context.

        "[E]ven the state secrets privilege has its limits." *Hepting*, 439 F.Supp.2d at 995.

The Court in *Reynolds*, in that limited, straightforward case, could not possibly have imagined

that any executive would so misuse the state secrets privilege as to attempt to apply it to

sweeping, criminal, unconstitutional conduct reaching into the heartland of this country.  As this

Court noted, "While the court recognizes and respects the executive's constitutional duty to

protect the nation from threats, the court also takes seriously its constitutional duty to adjudicate

the disputes that come before it . . . . To defer to a blanket assertion of secrecy here would be to

abdicate that duty." *Hepting*, 439 F.Supp.2d at 995 (citation omitted).[14]

## III.  Defendants' Standing Argument Is a Red Herring

        For the reasons set forth in *Hepting*, defendants' attempt to dismiss this case on

standing grounds should be rejected.  439 F.Supp.2d at 999-1001.  "[T]he core component of

standing is an essential and unchanging part of the case-or-controversy requirement of Article

III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff must satisfy three

elements to have standing: (1) "the plaintiff must have suffered an injury in fact–an invasion of a

legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the

conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision." *Id.* at 560-61 (internal quotation marks and

---

[14] *See also Marbury*, 5 U.S. at 177 ("It is emphatically the province and duty of the judicial department to say what the law is."); *Reid v. Covert*, 354 U.S. 1, 40 (1957) (It is particularly "the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.") (citation omitted); *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) ("we have long since made clear that a state of war is not a blank check for the President when it comes to the rights of the Nation's citizens.").

citations omitted).

The Amended Complaint plainly alleges all three elements.[15]  The "President of the United States authorized a secret program to spy upon millions of innocent Americans, including the named plaintiffs." *Id.* ¶ 2.  The program "intercept[ed], search[ed], seiz[ed], and subject[ed] to surveillance the content of [their] personal phone conversations and email." *Id.* The program has operated and continues to operate "without a warrant, court order or any other lawful authorization." *Id.* ¶ 1.  The named plaintiffs have been and continue to be spied upon illegally pursuant to the program. *Id.* ¶¶ 5-8.[16]  "Plaintiffs are 'aggrieved person[s]' as defined in 50 U.S.C. § 1810, are not foreign powers or agents of a foreign power, and were subjected to electronic surveillance conducted or authorized by defendants pursuant to the Spying Program in violation of 50 U.S.C. § 1809," *id.* ¶ 98, and are therefore entitled to damages under 50 U.S.C. § 1810 (FISA).  Plaintiffs are also alleged to be "aggrieved persons" as defined by the Wiretap Act and the Stored Communications Act, and are entitled to damages pursuant to those statutes. *Id.* ¶¶ 102-108.  Finally, "by conducting, authorizing, and/or participating in the electronic surveillance of plaintiffs, and by searching and seizing the contents of plaintiffs' communications without reasonable suspicion or probable cause, and failing to prevent their fellow government officers from engaging in this unconstitutional conduct, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed under the Fourth

---

[15]"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Wilbur*, 423 F.3d at 1107 (citation omitted).  In addition, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted).

[16]Further aspects of the program are set forth in paragraphs 50-90 of the Amended Complaint.

Amendment of the United States Constitution." *Id.* ¶ 110.

In short, plaintiffs (1) were illegally spied upon and are being spied upon (2) by defendants and are (3) entitled to damages. Should the Court enjoin defendants' illegal program, the Court will also redress an ongoing legal violation directly traceable to defendants, which will prevent further injury to plaintiffs. These allegations plainly establish standing, and defendants do not suggest otherwise. *See American Civil Liberties Union v. National Security Agency*, 493 F.3d 644, 655 (6th Cir. 2007) ("If . . . a plaintiff could demonstrate that her privacy had actually been breached (i.e., that her communications had actually been wiretapped), then she would have standing to assert a Fourth Amendment cause of action for breach of privacy."); Defendants' Memorandum of Law dated May 26, 2007 [Case No. 07-cv-01791-VRW Dkt. 295, at 26] (conceding that "aggrieved persons" as defined by FISA, the Wiretap Act, and the Stored Communications Act have standing to assert violations of those statutes); *Director, Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126 (1995) ("aggrieved" is a well-known term of art used to "designate those who have standing").

As this Court held, "[t]he court cannot see how any one plaintiff will have failed to demonstrate injury-in-fact if that plaintiff effectively demonstrates that all class members have so suffered." *Hepting*, 439 F.Supp.2d at 1000. As in *Hepting*, "the gravamen of plaintiffs' complaint is that [defendants] created a dragnet" that collected the content of plaintiffs' communications. *Id.* "[T]he alleged injury is concrete even though it is widely shared. Despite [defendants'] alleged creation of a dragnet to intercept all or substantially all of [plaintiffs'] communications, this dragnet necessarily inflicts a concrete injury that affects each [plaintiff] in a distinct way." *Id.* at 1001 (citing *FEC v. Akins*, 524 U.S. 11, 24 (1998) ("[W]here a harm is

16

concrete, though widely shared, the Court has found 'injury in fact.'"")).

  The government previously conceded that plaintiffs have alleged standing. In their own words: "persons whose rights were injured by the actual interception or disclosure of their own communications (or records) have standing." [No. 07-cv-01791-VRW Dkt. 295, at 26]. Defendants instead are now reduced to claiming that plaintiffs will not ultimately be able, at some future time, to *prove* standing because of the state secrets privilege.[17] The standing argument is no more than state secrets revisited, and for all the reasons set forth in section II, *supra*, the argument fails. "[T]he state secrets privilege will not prevent plaintiffs from receiving at least some evidence tending to establish the factual predicate for the injury-in-fact underlying their claims." *Hepting*, 439 F.Supp.2d at 1001.[18] In addition, "additional facts might very well be revealed during, but not as a direct consequence of, this litigation that obviate many of the secrecy concerns currently at issue" regarding the program and therefore "it is unclear whether the privilege would necessarily block [defendants] from revealing information" about the program. *Id.*

  Finally, for the many other reasons set forth in Section II, *supra*, the state secrets privilege does not apply at all, and therefore will not bar plaintiffs from establishing the factual predicate for the injury-in-fact underlying their claims.

---

[17]Defendants' "summary judgment" motion is perplexing. Defendants do not set forth any set of undisputed facts. Nor do defendants even attempt to argue that their spying program is lawful. Defendants' "summary judgment" motion is not a summary judgment motion at all, but a jurisdictional state secrets argument in ill-fitting procedural clothes. In any event, the motion, made at the outset of this case, is premature. *See, e.g., TMJ, Inc. v. Nippon Trust Bank*, 2001 WL 925622, at *1 (9th Cir. Aug. 15, 2001); Declaration of Ilann M. Maazel Pursuant to Fed. R. Civ. P. 56(f) in Opposition to Motion to Dismiss Or, in the Alternative, For Summary Judgment, dated July 19, 2007 [Case No. 07-cv-00693-VRW Dkt. 12].

[18]In light of the many admissions by, *inter alia*, President Bush, Attorneys General Gonzales, and General Hayden, and the Klein and Marcus declarations noted in *Hepting*, 439 F.Supp.2d at 1001, and the many revelations since *Hepting* including the admissions this year by NSA agent Tice, *see* n.1, *supra*, there is "at least some factual basis for plaintiffs' standing." *Id.*

## IV.     Defendants' Claims of Statutory Privilege Again Fail

Defendants' renewed claims of statutory privilege under Section 6 of the National Security Act of 1959, 50 U.S.C. § 402 note, and Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1) (*see* Def. Br. § II) once again fail: "Neither of these provisions by their terms requires the court to dismiss this action and it would be premature for the court to do so at this time." *Hepting*, 439 F.Supp.2d at 998. At best for defendants, these statutes may or may not be relevant to disputes that later arise in discovery. *See Hepting*, 439 F.Supp.2d at 998 ("After discovery begins, the court will determine step-by-step whether the privileges prevent plaintiffs from discovering particular evidence. But the mere existence of these privileges does not justify dismissing this case now.").

In addition, these general statutes are trumped in this case by the specific FISA statute, *see* Ex. B § IV(B); Section 102(a)(i)(1) only applies to the DNI, not to the Court, *see* Ex. B § IV(C); neither statute precludes discovery from third parties, *see* Ex. B § IV(D); and defendants' interpretation of the statutes would raise serious constitutional concerns best avoided by the doctrine of constitutional avoidance, *see* Ex. B § IV(E).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court deny defendants' motion in its entirety and grant such other relief as is just and proper.

Dated: December 3, 2009
        New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By:_____
        Ilann M. Maazel
        Matthew D. Brinckerhoff

*Attorneys for Plaintiffs*

75 Rockefeller Plaza, 20th Floor
New York, New York  10019
(212) 763-5000