MICHAEL F. HERTZ
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
PAUL E. AHERN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460

*Attorneys for the Government Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | No. M:06-cv-01791-VRW <br><br> **GOVERNMENT DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT** |
| <u>This Document Relates Solely To:</u> <br><br> *Shubert et al. v. United States of America et al.* (Case No. 07-cv-00693-VRW) | Date: December 15, 2009 <br> Time: 2:00 p.m. <br> Courtroom: 6, 17th Floor <br> Chief Judge Vaughn R. Walker |

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**

## TABLE OF CONTENTS

INTRODUCTION .................................................................. 1

ARGUMENT ..................................................................... 2

I. THE COURT LACKS JURISDICTION TO REVIEW THE SOLE
   STATUTORY CLAIM FOR DAMAGES RAISED AGAINST
   THE GOVERNMENT ...................................................... 2

II. THE STATE SECRETS AND RELATED STATUTORY PRIVILEGES
    ARE FULLY APPLICABLE TO THIS CASE AND SHOULD BE
    UPHELD ................................................................ 3

   A. The Government Has Demonstrated Why Particular Information
      Implicated by Plaintiffs' Allegations Should be Protected
      in this Case ........................................................ 5

   B. Plaintiffs Advance An Erroneous Conception of "Military Matters"
      Protected by the State Secrets Privilege ............................ 9

   C. Plaintiffs' Reliance on *Webster v. Doe* is Misplaced ............... 11

II. BECAUSE STATE SECRETS ARE NECESSARY TO LITIGATE
    PLAINTIFFS' STANDING AND CLAIMS, THIS CASE CANNOT
    PROCEED .............................................................. 11

   A. Plaintiffs Cannot Establish Standing Without State Secrets ......... 11

   B. Plaintiffs Cannot Proceed Under Section 1806(f) of the FISA ........ 14

CONCLUSION ................................................................... 15

TABLE OF AUTHORITIES

**CASES**

*Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007). . . . . . . . . . . . . *passim*

*Al-Haramain Islamic Found., Inc. v. Bush*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008). . . . . . . . . 14

*Am. Civil Liberties Union v. NSA*, 493 F.3d 644 (6th Cir. 2007). . . . . . . . . . . . . . . . . 9, 11, 13-14

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Doe v. Tenet*, 329 F.3d 1135 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Edmonds v. U.S. Department of Justice*, 323 F. Supp. 2d 65 (D.D.C. 2004) . . . . . . . . . . . 7, 10-11

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fitzgerald v. Penthouse Int'l Ltd.*, 776 F.2d 1236 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . 7-8, 15

*Frost v. Perry (Frost II)*, 919 F. Supp. 1459 (D. Nev. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Halkin v. Helms (Halkin I)*, 598 F.2d 1 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Halkin v. Helms (Halkin II)*, 690 F.2d 977 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . 8-9, 11, 14

*Halperin v. Kissinger*, 807 F.2d 180 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . *passim*

*Jencks v. United States*, 353 U.S. 657 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Laird v. Tatum*, 408 U.S. 1 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Maxwell v. First Nat'l Bank of Md.*, 143 F.R.D. 590 (D. Md. 1992). . . . . . . . . . . . . . . . . . . . . . 8

*Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tenet v. Doe*, 544 U.S. 1 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899 (N.D. Ill. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tietsworth v. Sears, Roebuck*, No. 09-288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009). . . . . . 3

*Tilden v. Tenet*, 140 F. Supp. 2d 623 (E.D. Va. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . 14

*United States v. Reynolds*, 345 U.S. 1 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Webster v. Doe*, 486 U.S. 592 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . 12

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. I.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. CONST. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. CONST. amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. CONST. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. CONST. amend. IX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**

18 U.S.C. § 2520. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2707. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

50 U.S.C. § 402 note. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

50 U.S.C. § 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. § 403-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

50 U.S.C. § 1806. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

50 U.S.C. § 1810. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**RULES**

Fed. R. Civ. P. 12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

Civ. L.R. 56-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## INTRODUCTION

Plaintiffs' Opposition (Dkt. 695/43) (hereafter "Pls. Opp.") to Defendants' Motion to Dismiss and for Summary Judgment (Dkt. 680/38) (hereafter "MSJ Mem.") resorts to unfounded rhetoric and disregards the central issues raised by the Government's motion.

This litigation commenced after media reports alleged that the Government had engaged in certain intelligence activities following the terrorist attacks of September 11, 2001. *See Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 986-87 (N.D. Cal. 2006). In December 2005, then-President Bush disclosed the existence of an intelligence activity he authorized after 9/11 under which certain international communications believed to involve members or agents of al Qaeda or affiliated terrorist organizations were intercepted by the National Security Agency ("NSA")—an activity later referred to as the "Terrorist Surveillance Program" ("TSP"). Plaintiffs here allege that the Government has engaged in far more sweeping surveillance activities by intercepting the content of millions of domestic communications—literally of *all* Americans—and, through this lawsuit, plaintiffs seek to probe NSA's post-9/11 actions to detect and prevent further terrorist attacks.

But, as this Court has previously noted, the Government has *denied* plaintiffs' content dragnet allegations, *see id.* at 996, and has sought to protect from disclosure specific information concerning NSA intelligence sources and methods that plainly would be necessary to disprove and otherwise litigate plaintiffs' speculative claims. Far from claiming unilateral power to immunize official conduct, the Government has put before the Court for evaluation the information at stake and the reasons why its disclosure would cause exceptionally grave harm to national security. The Government's submission also demonstrates that plaintiffs cannot establish their standing or prima facie case, and the Government cannot defend, without evidence properly protected by the privilege assertions. In these circumstances, the law is clear that the case cannot proceed and summary judgment for the Government is appropriate. *See Kasza v. Browner*, 133 F.3d 1159, 1176 (9th Cir. 1998) (affirming summary judgment where state secrets necessary to adjudicate claims); *see also Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1204-05 (9th Cir. 2007) (where facts protected by state secrets privilege are necessary to

establish standing, dismissal is required absent statutory preemption).

In response, plaintiffs rely on various faulty arguments about the state secrets privilege and its impact on this case. Notably, plaintiffs disregard the Government's summary judgment motion and rest on their allegations. But plaintiffs cannot credibly dispute that privileged information is required to proceed in this case. Indeed, their own Rule 56(f) affidavit demonstrates that they would need discovery into the very information protected by the Government's privilege assertions in order to litigate their standing or the merits of their claims.

Finally, plaintiffs' contention that the state secrets privilege is preempted by the FISA, 50 U.S.C. § 1806(f)—a matter the Government continues to dispute—is irrelevant here because plaintiffs rely solely on speculation that they are aggrieved and, thus, do not come close to establishing any right to invoke and obtain discovery even if the FISA procedures applied (which they do not). At bottom, plaintiffs present no valid grounds for any further proceedings.

## ARGUMENT

### I. THE COURT LACKS JURISDICTION TO REVIEW THE SOLE STATUTORY CLAIM FOR DAMAGES RAISED AGAINST THE GOVERNMENT.

The Government's pending motion first seeks dismissal under Rule 12(b)(1) of plaintiffs' statutory damages claims for lack of subject matter jurisdiction.[1] In response to this aspect of the motion, plaintiffs concede that they cannot raise statutory claims for damages against the United States under 18 U.S.C. §§ 2520 and 2707(c), and this eliminates all claims against the Government under Title 18 (the Wiretap Act and Stored Communications Act). Plaintiffs' only remaining damages claim against the Government is based on the FISA, 50 U.S.C. § 1810, and the Government has preserved its position that this provision does not waive sovereign immunity

---

[1] Plaintiffs' contention that the factual allegations of the amended complaint must be assumed to be true in response to the Government's motion is wrong. The sovereign immunity issue is the only aspect of the Government's motion that arises under Rule 12, *see* MSJ Mem. (680/38) at 10, and it raises a pure question of law. The balance of the motion is for summary judgment and specifically puts at issue whether the facts needed to further litigate this case are available in light of the state secrets and related statutory privileges.

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**   -2-

as well.[2]

## II. THE STATE SECRETS AND RELATED STATUTORY PRIVILEGES ARE FULLY APPLICABLE TO THIS CASE AND SHOULD BE UPHELD.

Plaintiffs' opposition raises a series of challenges to the Government's state secrets privilege assertion, including that the information the Government seeks to protect is not a secret; that the scope of the privilege is limited to "military" information; that *United States v. Reynolds*, 345 U.S. 1 (1953), is factually distinguishable from this case; and that *Webster v. Doe*, 486 U.S. 592 (1988), rather than *Reynolds* applies. *See* Pls. Opp. (695/43) at 10-19. Each of these contentions lack merit.[3]

We take particular issue first with plaintiffs' contention that upholding the Government's privilege assertion in this case will allow the Executive to "immunize [itself] from Article III scrutiny" and "arrogate to [itself] the power to engage in unconstitutional and even criminal conduct." *See* Pls. Opp. (695/43) at 12-13. This neither fairly nor accurately characterizes the matters at hand. The United States has never argued, and does not now argue, that the state secrets privilege allows it unilaterally to insulate its activities entirely from judicial review. To

---

[2] Plaintiffs assert that their damages claims have also been brought against certain defendants in their personal capacity. *See* Pls. Opp. (695/43) at 8 & n.7. While that is nowhere apparent in the amended complaint, plaintiffs contend that certain of the individually-named defendants "know full well they were sued in their personal capacities" because the Department of Justice ("DOJ") agreed to accept service on their behalf. *See id.* This misses the point. Just because DOJ agreed to accept service on behalf of current and former Government employees does not mean that plaintiffs have properly *pled* individual capacity claims as a matter of law. *See generally Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs' own improper attempt now to "clarify the capacities in which each of the defendants is sued" demonstrates the point. *See* Pls. Opp. (695/43) at 8-9; *Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2009 WL 3320486, *13 (N.D. Cal. Oct. 13, 2009) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.") (internal quotation marks and citations omitted). Even if the Court construed the amended complaint as sufficiently alleging individual capacity claims (or gave plaintiffs leave to amend), plaintiffs have agreed that such claims "may not proceed until after the court rules on the state secrets assertion." *See* Ex. 1 hereto (letter from J. Marcus Meeks to Ilann Maazel, May 11, 2007). Also, plaintiffs do not dispute that the Government's motion seeks summary judgment on <u>all</u> claims against <u>all</u> defendants regardless of the capacity in which they may be sued. Thus, the parties' dispute over the personal capacity issue is irrelevant at this point in the litigation.

[3] We also respond below to the plaintiffs' contention that the state secrets privilege is preempted by the FISA.

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**    -3-

the contrary, the United States recognizes and appreciates the Court's important role in assessing availability of the state secrets privilege under the standards established by the Supreme Court. *See El-Masri v. United States*, 479 F.3d 296, 312 (4th Cir.) ("[T]he state secrets doctrine does not represent a surrender of judicial control over access to the courts."), *cert denied*, 552 U.S. 947 (2007).  The state secrets privilege has long been recognized by courts as a means by which the Government may seek to protect information in litigation where disclosure would harm national security.  *See Al-Haramain*, 507 F.3d at 1196 (quoting *Reynolds*, 345 U.S. at 10); *Kasza*, 133 F.3d at 1165-66.  And the judicial branch has also recognized that these concerns must be "accorded the 'utmost deference' and [that] the court's review of the claim of privilege is narrow." *Kasza*, 133 F.3d at 1166.  Once properly invoked, the sole determination for the court is whether, "under the particular circumstances of the case, 'there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" *Kasza*, 133 F.3d at 1166 (quoting *Reynolds,* 345 U.S. at 10).

Out of respect for the Court's role, the United States has submitted detailed classified presentations, for *ex parte*, *in camera* review, which set forth the specific information to be protected and the harms that could result from its disclosure.  We have made such detailed presentations, after careful consideration in accord with the Attorney General's new state secrets privilege policy, *see* MSJ Mem. (680/38) at 14 n.8, so that the Court may see for itself the serious dangers that litigating this case poses to the effectiveness of the United States' foreign intelligence efforts.  We have also adhered strictly to the principle that the state secrets privilege "is not to be lightly invoked," *id.* at 7, and have asserted it only after the personal consideration of the Director of National Intelligence ("DNI"), the Nation's senior intelligence officer, and the Director of the NSA. "It is invocation at that level of the executive hierarchy, and with that degree of personal assurance, that lessens the possibility of reflexive invocation of the doctrine as a routine way to avoid adverse judicial decisions." *Doe v. Tenet*, 329 F.3d 1135, 1151-52 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005).  The explanations offered by these officials charged with safeguarding the national security are specific and thorough, based on their unique perspectives and expertise. *See Al-Haramain*, 507 F.3d at 1203 ("[W]e acknowledge the

need to defer to the Executive on matters of foreign policy and national security and surely cannot legitimately find ourselves second guessing the Executive in this arena."). The Court should carefully consider all of the information provided and defer appropriately to the judgments of national security experts as to the risk of harm to national security. The Government's adherence to this well-established law hardly amounts to a demand for "sweeping immunity," and plaintiffs' rhetoric on this point is entirely misplaced. *See El-Masri*, 479 F.3d at 312-13 (rejecting plaintiffs' "invitation to rule that the state secrets doctrine can be brushed aside on the ground that the President's foreign policy has gotten out of line"). At this stage, the Court's course is clearly charted:

> Our analysis of the state secrets privilege involves three steps. First we must ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied. Second, we must make an independent determination whether the information is privileged. Finally, the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim.

*Al-Haramain*, 507 F.3d at 1202 (citing *El-Masri* and *Reynolds*) (internal quotation marks and citations omitted).

Plaintiffs do not dispute that the procedural requirements for invoking the state secrets privilege have been satisfied. Nor (as discussed *infra*) do plaintiffs offer any answer to the central question before the Court—whether the case can proceed in light of the privilege assertion. Rather, plaintiffs' response to the Government's motion rests on miscellaneous arguments that the privilege is inapplicable here—none of which have merit.

### A. The Government Has Demonstrated Why Particular Information Implicated by Plaintiffs' Allegations Should be Protected in this Case.

Citing this Court's decision in *Hepting*, plaintiffs first contend that the Government's "content monitoring program" is "'hardly a secret,' much less a state secret." *See* Pls. Opp. (695/43) at 11.[4] But that does not accurately describe the Court's prior decision. On the contrary, the Court stated that "the government has confirmed that it monitors 'contents of

---

[4] Plaintiffs' opposition confirms that they solely challenge an alleged content collection "dragnet" program. *See* Pls. Opp. (695/43) at 10-11. Plaintiffs do not challenge any alleged communication records program at issue in other actions. Such a claim would be foreclosed in any event by the privilege assertion. *See* MSJ Mem. (680/38) at 8-9, n.11.

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**     -5-

communications where * * * one party to the communication is outside the United States'" and where it "has 'a reasonable basis to conclude that one party to the communication is a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda, or working in support of al Qaeda.'" *Hepting*, 439 F. Supp. 2d at 996. The Court recognized that "[t]he government denies listening in without a warrant on any purely domestic communications or communications in which neither party has a connection to al Qaeda or a related terrorist organization." *Id.* But plaintiffs do not allege they were subject to surveillance under the TSP, and thus the fact that the existence of that activity is no longer a secret is irrelevant here. Rather, the question presented is whether disclosure of facts needed to disprove and otherwise address plaintiffs' broader content dragnet allegation would harm national security. The DNI and NSA Director have demonstrated that exceptionally grave harm would result from such disclosures.[5]

Moreover, plaintiffs' theory that an official Government disclosure of the existence of one activity "opens the door" to the disclosure of information related to other alleged, far broader or different activities, is meritless. *See* Pls. Opp. (695/43) at 11. It cannot be that the Government's disclosure of some information related to post 9/11 intelligence activities, such as the public acknowledgments concerning the TSP, requires disclosure of *other* classified information or activities. Were that so, myriad classified information and activities would be subject to exposure upon the limited official acknowledgment of some information, such as the existence of an activity or category of information. That is not the law.[6]

---

[5] Moreover, while the Court in *Hepting* also held that the "very subject matter" of that case did not warrant dismissal on the pleadings, *see Hepting*, 439 F. Supp. 2d at 994, the Government has made clear that it does not rest on that basis here but, as in *Al-Haramain*, demonstrates that the facts necessary for plaintiffs to establish their standing or prima facie case, or for the Government to defend, are protected by the privilege. *See* MSJ Mem. (680/38) at 19, n.13.

[6] Plaintiffs misread the Court's prior decision in *Hepting* as adopting such a radical theory. *See* Pls. Opp. (695/43) at 11. The Court was referring to the particular circumstances in *Hepting* that led it to conclude that plaintiffs had pled enough to proceed past the pleadings stage. *See Hepting*, 439 F. Supp. 2d at 996-97. Again, that is not the posture of this summary judgment motion. (And to the extent the Court considers the acknowledgment of the existence of the TSP to have "opened the door" to probe into operational details of that or broader alleged NSA content monitoring activities, we respectfully disagree and believe that the Court's review of the details of the privilege

(continued...)

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**   -6-

1  Numerous courts have held that the existence of some publicly available information
2 concerning a privileged matter does not foreclose protection of additional or related information.
3 For example, in *Kasza*, the Ninth Circuit affirmed summary judgment based on the
4 Government's privilege assertion over various categories of specific information related to a
5 government facility (including intelligence sources and methods) despite acknowledgment of the
6 existence of a location, *see* 133 F.3d at 1158-59, and in the face of claims by plaintiffs that public
7 information indicated that hazardous wastes existed there, *see id*. at 1165. Notably, the district
8 court in that case entered summary judgment notwithstanding plaintiffs' proffer of photographs
9 of the facility on the ground that the Government's privilege assertion foreclosed confirmation or
10 denial as to what the photos depicted and, thus, could not create a genuine issue capable of
11 defeating the Government's motion for summary judgment. *See Frost v. Perry (Frost II)*, 919 F.
12 Supp. 1459, 1467 (D. Nev. 1996).

13  Other cases similarly recognize that the existence of some limited public information or
14 media speculation on a matter does not foreclose the Government from protecting identical,
15 additional, or related state secrets, nor "open the door" to probe the into the facts further. *See,*
16 *e.g.*, *Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 913-14 (N.D. Ill. 2006) (upholding privilege,
17 noting "it would undermine the important public policy underlying the state secrets privilege if
18 the government's hand could be forced by unconfirmed allegations in the press or by anonymous
19 leakers whose disclosures have not been confirmed"); *id*. at 914 (media reports purportedly
20 revealing classified briefing to Congress cannot form basis to undermine privilege); *Edmonds v.*
21 *U.S. Department of Justice*, 323 F. Supp. 2d 65, 76-77 (D.D.C. 2004) (upholding privilege even
22 where privileged information may be released to press or disclosed to Congress because withheld
23 information may be more detailed or "even if the information is exactly the same, it may be
24 withheld if revealing the context in which the information is discussed would itself disclose
25 additional information that would be harmful to national security") (internal quotation marks and
26 citation omitted); *see also, e.g.*, *Fitzgerald v. Penthouse Int'l Ltd.*, 776 F.2d 1236, 1237 (4th Cir.

27 ---

28  [6](...continued)
assertion should easily foreclose such a course.)

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**   -7-

1985) (upholding privilege concerning alleged Navy program despite information about activity in a published magazine article); *Halkin v. Helms (Halkin II)*, 690 F.2d 977, 994 (D.C. Cir. 1982) (upholding privilege assertion despite claims that public information disclosed by former intelligence officials had revealed the facts at issue, rejecting view that "nothing about the project in which the appellants have expressed an interest can properly remain classified" or otherwise privileged from disclosure) (internal quotation marks and citation omitted); *Maxwell v. First Nat'l Bank of Md.*, 143 F.R.D. 590, 596-97 (D. Md. 1992) (upholding privilege in face of claim that some information related to alleged covert relationship may have been disclosed to non-cleared persons); *id*. at 597 ("Accidental disclosure cannot be viewed as an affirmative waiver by the government. If there is accidental disclosure to unauthorized persons, the government must retain its ability to minimize the damage by asserting its privilege to refuse to confirm or deny the existence of the secret information.").[7]

For these reasons, the law does not support any effort to ascertain whether information is a "secret" by evaluating public statements or information, even from purportedly reliable sources. *See Kasza*, 133 F.3d at 1166 (recognizing the "inherent limitations in trying to separate classified and unclassified information"); *see also Al-Haramain*, 507 F.3d at 1203 ("[J]udicial intuition . . . is no substitute for documented risks and threats posed by the potential disclosure of national security information."). The Court's review must be of the privilege assertion itself and, in

---

[7] Accordingly, plaintiffs' reliance upon statements made by an alleged former NSA operative is misplaced. This Court itself has rejected reliance on such sources. *Hepting*, 439 F. Supp. 2d at 990 (simply because statements have been public "does not mean that the truth of those statements is a matter of general public knowledge and that verification of the statement is harmless"). Also, plaintiffs' citation to a concurrence in *Jencks v. United States*, 353 U.S. 657, 675 (1957) (Burton, J., concurring), is also misleading. The holding of *Jencks* was simply that, in a criminal case, the Government must produce prior statements of a trial witness relating to the subject of his testimony and, in the event that such information was privileged, *Jencks* put the Government to a choice of disclosure or dismissal. *Jencks*, 353 at 670-71. *Jencks* plainly does not apply here; indeed, the Court specifically distinguished civil cases (such as *Reynolds*) upholding the non-disclosure of information subject to the state secrets privilege. *See id.* at 670-71. Also, Justice Burton objected to the compelled disclosure of privileged information in a criminal case absent a court weighing countervailing factors, and he opined that the majority did not provide *enough* protection for the public's interest in safeguarding sensitive information. *See id* at 675-76. His concurrence does not stand for the proposition that public disclosure of some information would nullify a valid privilege.

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**    -8-

particular, whether the Government has reasonably demonstrated that harm to national security would result from disclosure of the information. Once that showing is made, the privilege must be upheld and the information excluded from further proceedings. The Government has made a compelling showing of harm in this case, and the Court should therefore exclude the privileged information at issue here.[8]

### B. Plaintiffs Advance An Erroneous Conception of "Military Matters" Protected by the State Secrets Privilege.

Plaintiffs also argue that the state secrets privilege was not intended to protect information other than that pertaining to "core 'military matters,'" and that the activities alleged here somehow fall outside this definition. The broad range of state secrets privilege cases demonstrate that there is no basis for such a crabbed interpretation of the privilege, which protects information in the interest of *national security* generally, not just military operations. *Reynolds* itself rejects plaintiffs' view by explicitly referring to the well-established privilege that protects both "military *and* state secrets" more broadly. *Reynolds*, 345 U.S. at 7 (emphasis added). The Supreme Court continued to refer to the broad range of information that would be protected "in the interest of *national security*." *Id.* at 10 (emphasis added).

Moreover, courts applying *Reynolds* likewise have noted its scope. *See Kasza*, 133 F.3d at 1166 ("The government may use the state secrets privilege to withhold a broad range of information," including information related to intelligence matters.); *see also Am. Civil Liberties Union v. NSA*, 493 F.3d 644, 648 (6th Cir. 2007) (recognizing privilege protects information related to alleged NSA surveillance under the TSP); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (upholding privilege assertion related to alleged intelligence activities); *Halkin II*, 690 F.2d at 990 (same). Of most significance, the Ninth Circuit has held clearly that the state secrets privilege does encompass information concerning whether individuals have been subject to alleged NSA surveillance. *Al-Haramain*, 507 F.3d 1190. The Court of Appeals observed that

---

[8] Plaintiffs' contention that statutory protections for NSA activities and intelligence sources and methods, *see* 50 U.S.C. §§ 402 note and 403-1(i)(1), do not require dismissal of pending claims, *see* Pls. Opp. (695/43) at 23, misses the point. Like the state secrets privilege, those provisions require the protection of information, and the consequence of that protection (dismissal) is then considered separately based on the role of that information in the case. *See infra*.

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
***Shubert et al. v. United States of America et al.*, Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**          -9-

the Government's privilege assertion as to such information was "exceptionally well-documented" in that case and that disclosure of "sources and methods of intelligence gathering in the context of this case would undermine the government's intelligence capabilities and compromise national security." *Id.* at 1203-04. That decision, of course, is binding circuit precedent, and plaintiffs have no credible argument that the state secrets privilege does not encompass the same kind of information at issue here.[9]

Beyond this, plaintiffs fail to explain how their claims—which they acknowledge concern the alleged activities of the NSA, a component of the Department of Defense, *see* Pls. Opp. (695/43) at 13, and purportedly initiated after a catastrophic attack on the U.S. homeland by a foreign terrorist organization—do not implicate the kind of information that the state secrets privilege has been invoked to protect. While plaintiffs contend that the alleged domestic surveillance activities should not be considered a military or intelligence matters, the Directors of National Intelligence and the NSA have publicly described their privilege assertions as related to sources and methods of the NSA. Plaintiffs' attempt to dispute whether that is so cannot foreclose *review* of the privilege assertion. The Court can see for itself that the Government's privilege assertion easily falls within the scope of the state secrets doctrine.[10]

---

[9] Plaintiffs' argument is all the more perplexing because they cite some of the very cases protecting information related to intelligence activities as within the scope of the state secrets privilege. *See* Pls. Opp. (695/43) at 14 n.12 (citing, among others, *Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005); *Edmonds*, 323 F. Supp. 2d 65*; Tilden v. Tenet*, 140 F. Supp. 2d 623 (E.D. Va. 2000)).

[10] Plaintiffs proffer five points on which to distinguish *Reynolds* from this case that are insubstantial. *See* Pls. Opp. (695/43) at 17-19. That military personnel who died in the crash at issue in *Reynolds* volunteered for the mission has utterly no bearing on whether information about alleged surveillance of individuals is protected by the state secrets privilege. Likewise, the fact that information protected in *Reynolds* may not have required dismissal of that case confuses separate issues: whether information should be protected and the *consequence* of its exclusion, discussed below. The Government has demonstrated that the information at issue here is privileged, which bars discovery of that information. The observation in *Reynolds* that further discovery as to causation of the crash may have been possible in that case "without resort to material touching upon military secrets," 345 U.S. at 11, had no bearing as to the privileged information at issue there, and the Government has shown that *this* case cannot proceed without privileged information. Finally, plaintiffs' claim that *Reynolds* does not extend to "military intrusion into civilian affairs," *see* Pls.
(continued...)

C.     **Plaintiffs' Reliance on *Webster v. Doe* is Misplaced.**

Plaintiffs also contend that the state secrets privilege is not applicable here because their claims are constitutional in nature. Rather than applying *Reynolds*, plaintiffs contend that, in such circumstances, *Webster v. Doe*, 486 U.S. 592 (1988), "requires a balancing of the parties' interests, not dismissal." *See* Pls. Opp. (695/43) at 15. This argument is also clearly wrong.

*Webster* did not involve judicial review of an assertion of the state secrets privilege at all, but merely held that a statute, the National Security Act, 50 U.S.C. § 403(c), did not preclude review of constitutional claims. Nothing in *Webster* purports to overrule or limit *Reynolds* or address a situation where litigation of constitutional claims requires the disclosure of information that the head of a federal agency properly and specifically determined would risk exceptionally grave harm to national security.

Moreover, both before and after *Webster*, courts have repeatedly applied the state secrets privilege to bar the disclosure of classified information in cases where constitutional claims are raised—as they usually are when a plaintiff alleges unlawful surveillance. *See, e.g.*, *Al-Harmain*, 507 F.3d at 1195 (First, Fourth and Sixth Amendments); *ACLU*, 493 F.3d at 650 (First and Fourth Amendment); *Halkin II*, 690 F.2d at 981 (First and Fourth Amendments); *Halkin v. Helms (Halkin I)*, 598 F.2d 1, 3 (D.C. Cir. 1979) (First, Fourth, Fifth and Ninth Amendments); *see also, e.g.*, *Halperin v. Kissinger*, 807 F.2d 180, 183 (D.C. Cir. 1986) (Fourth Amendment); *Edmonds*, 323 F. Supp. 2d at 79-80 (First Amendment).

II.    **BECAUSE STATE SECRETS ARE NECESSARY TO LITIGATE PLAINTIFFS' STANDING AND CLAIMS, THIS CASE CANNOT PROCEED.**

A.     **Plaintiffs Cannot Establish Standing Without State Secrets**.

In addition to raising meritless challenges to the Government's privilege assertion, plaintiffs disregard the third step in the state secrets analysis: the impact of the exclusion of privileged information on this case. Plaintiffs assert that they have adequately alleged the existence of a warrantless content collection "dragnet" surveillance and, thus, have standing to

---

[10](...continued)
Opp. (695/43) at 18, merely assumes their own speculation as to what is at issue and repeats their erroneous view of what the privilege covers.

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**    -11-

proceed. *See* Pls. Opp. (695/43) at 20. But that is not the issue before the Court. As in *Al-Haramain*, the Government's motion here does not rest on a challenge to plaintiffs' pleadings but puts at issue whether the *facts* needed to establish standing are available.

Plaintiffs acknowledge that, "on a motion for summary judgment, the plaintiff can no longer rest on allegations," *see* Pls. Ex. C (695-2/43-2) at 64 (internal quotations omitted), but claim they have no obligation to respond here because summary judgment is "premature" and "perplexing," *see* Pls Opp. (695/43) at 22 n.17.[11] Plaintiffs simply are wrong. The Federal Rules of Civil Procedure allow a defendant to seek summary judgment "at any time," Fed. R. Civ. P. 56(b), and the law is clear that courts may consider the exclusion of evidence based on the state secrets privilege as grounds for summary judgment. That is how *Kasza* was resolved. *See* 133 F.3d at 1176; *see also Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991) (recognizing that summary judgment is appropriate where the state secrets privilege excludes evidence).

Moreover, the Government's motion is not "premature" merely because plaintiffs have claimed a need for discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. *See* Pls. Opp. (695/43) at 22 n.17. As set forth in our opening memorandum, plaintiffs' Rule 56(f) affidavit establishes that the evidence sought in discovery by plaintiffs falls squarely within the Government's privilege assertion. *See* MSJ Mem. (680/38) at 28-29 (citing plaintiffs' demand for discovery to determine whether telecommunication carriers have intercepted plaintiffs' communications for the Government and to determine the scope and existence of the alleged content monitoring program). Plaintiffs also acknowledge that they need discovery from sources in media reports in an effort to transform obvious hearsay concerning alleged intelligence activities into admissible evidence. *See id.* at 29. Plaintiffs have it exactly right: to defeat summary judgment they would need to determine the actual facts through an exacting discovery process in which allegation is confirmed or denied, fact is separated from fiction, and proof

---

[11] Plaintiffs' procedural objection that the Government's motion was not accompanied by a statement of material facts is also meritless since that is not required by the Local Rules. *See* Civ. L.R. 56-2(a).

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**          -12-

admissible under the Federal Rules of Evidence may be obtained. There is nothing hypothetical about the role privileged evidence will play in this litigation—plaintiffs have provided a detailed roadmap. It is apparent now that the evidence plaintiffs seek is necessary to litigate whether or not they have standing or the merits of their claims and is properly protected by the Government's privilege assertion.[12]

Accordingly, nothing forecloses a determination at this stage that the case cannot proceed. Plaintiffs cite no authority that discovery must be allowed in these circumstances in an effort to defeat or disprove the privilege assertion or stave off summary judgment. To the contrary, *Kasza* affirmed the entry of summary judgment, in which the district court declined to permit discovery to probe into the privileged matters and denied motions to compel. *See Frost II*, 919 F. Supp. at 1465-67. Where the Government reasonably demonstrates that harm to national security would result from the disclosures at issue, that is the end of the process. The privilege is "absolute" and plaintiffs' need for the information cannot overcome the privilege assertion. *Kasza*, 133 F.3d at 1166. For these reasons, whether plaintiffs have sufficiently alleged their standing is an entirely inadequate response to the Government's motion. *See ACLU*, 493 F.3d at 688 (Gibbons, J., concurring) (where proof of standing is properly protected by the state secrets privilege, and "plaintiffs cannot establish standing for any of their claims, constitutional or statutory," summary judgment for the Government is proper).[13]

---

[12] Plaintiffs also do not address the fact that, even if they could somehow establish their standing, the disclosure of privileged intelligence sources and methods would be necessary for plaintiffs to litigate the merits of their claims and for the Government to defend on the merits. *See* MSJ Mem. (680/38) at 23-30. That also is apparent now and further supports summary judgment for the Government. *See Kasza*, 133 F.3d at 1159.

[13] For this reason, plaintiffs' reliance on the Court's prior decision in the *Hepting* action to forestall the Government's motion is misplaced. *See* Pls. Opp. (695/43) at 19, 21-22. Plaintiffs cite the Court's denial of a motion to dismiss brought by AT&T that solely challenged the sufficiency of the pleadings, and the Court concluded that the particular allegations of injury raised in that case were sufficient. That is not the posture of the Government's motion for summary judgment, which joins the question of whether the plaintiffs can muster actual proof of their standing (and whether privileged facts would be needed for the plaintiffs and defendants to litigate the merits). To be clear, the Government does not concede that plaintiffs have sufficiently alleged injury to proceed.
(continued...)

**B.     Plaintiffs Cannot Proceed Under Section 1806(f) of the FISA.**

Finally, plaintiffs' contention that the Government's privilege assertion—and dismissal of this case—must be set aside in favor of proceedings under Section 1806(f) of the FISA is also incorrect. The Government continues to dispute that Section 1806(f) preempts the state secrets privilege—an issue that has not been finally resolved in any related pending cases—and would continue to oppose any proceedings that risks or requires the disclosure of classified privileged information to plaintiffs' counsel or to the public. But Section 1806(f) cannot save the plaintiffs here, for even as construed in *Al-Haramain*, a plaintiff must first establish that they personally have been "aggrieved" and, thus, have standing to proceed under Section 1806(f) procedures—even if those provisions did apply. *See Al-Haramain Islamic Found., Inc. v. Bush*, 564 F. Supp. 2d 1109, 1134 (N.D. Cal. 2008). Here, however plaintiffs merely allege baldly that they are "aggrieved," *see* Pls. Opp. (695/43) at 21 (citing statutory definitions)—but present no evidence that they have personally been subject to alleged electronic surveillance, a threshold requirement for Section 1806(f). Plaintiffs proffer nothing but speculation concerning the existence of an alleged content monitoring dragnet and speculation that it covers their communications. Plaintiffs have not, in response to the Government's summary judgment motion, set forth any

---

[13](...continued)
Plaintiffs' claims of a content "dragnet" that monitors the telephone calls of "every American" bears no relationship to the description of the limited nature of the TSP, and plaintiffs engage in pure conjecture that the alleged content monitoring dragnet even exists. Courts have routinely rejected as insufficient to establish Article III standing allegations of injury based on a person's fear of being subjected to a surveillance scheme. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (allegations of a subjective chill based on a fear of surveillance "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); *ACLU*, 493 F.3d at 655-56 (rejecting as basis for standing the "possibility" that the NSA "is presently intercepting, or will eventually intercept, communications to or from one or more of these particular plaintiffs" as "neither imminent nor concrete—it is hypothetical, conjectural, or speculative" and therefore "cannot satisfy the 'injury in fact' requirement of standing"); *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (rejecting fears of surveillance as too speculative to support standing); *Halkin II*, 690 F.2d at 1002 (rejecting standing based on allegations that plaintiffs were "likely targets of surveillance"). Thus, the Court could dismiss the amended complaint on the pleadings alone. But the Government declines to rest on that basis of dismissal precisely to avoid a circumstance where the clear-cut consequences of the Government's privilege assertion, which excludes proof needed to confirm or deny standing, can be disregarded at this stage.

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**          -14-

credible facts demonstrating that they were subject to electronic surveillance (and thus "aggrieved" under the FISA). Plaintiffs also fail to note that the Court in *Al-Haramain* has thus far declined to order the disclosure of privileged information in order to litigate whether or not plaintiffs are aggrieved (a course to which the Government would continue to object) and thus far has also foreclosed plaintiffs in *Al-Haramain* from using classified evidence to support their standing. *See* Order (Dkt. 643 in 06-cv-1791-VRW) (June 5, 2009 Order in *Al-Haramain*). In sum, plaintiffs here are unable to "plead" their way into Section 1806(f) proceedings with bald speculative allegations, and cannot actually prove their standing without resort to unavailable privileged information.

## CONCLUSION

The Government recognizes that the "denial of a forum provided under the Constitution for the resolution of disputes is a drastic remedy." *Fitzgerald*, 776 F.2d at 1243 (citation omitted). The Government's privilege assertions in this case have been raised after the most careful deliberations and are based on the judgment that disclosure of the information at issue would risk exceptionally grave harm to national security and that no reasonable alternative exists to dismissal. Plaintiffs clearly seek disclosure of the nature and scope of NSA intelligence sources and methods utilized after the 9/11 terrorist attacks, and such information constitutes core state secrets that must remain protected. In circumstances such as this, "the state secrets doctrine finds the greater public good—ultimately the less harsh remedy—to be dismissal." *Kasza*, 133 F.3d at 1167 (internal quotation marks and citation omitted). For the foregoing reasons, and those set forth in the United States' opening brief, the Court should uphold the Government's state secrets and statutory privilege assertions and grant the United States' motion to dismiss or for summary judgment.

| | | |
|---|---|---|
| 1 | December 8, 2009 | Respectfully Submitted, |
| 2 | | MICHAEL F. HERTZ<br>Deputy Assistant Attorney General |
| 3 | | |
| 4 | | DOUGLAS N. LETTER<br>Terrorism Litigation Counsel |
| 5 | | JOSEPH H. HUNT<br>Director, Federal Programs Branch |
| 6 | | |
| 7 | | VINCENT M. GARVEY<br>Deputy Branch Director |
| 8 | | |
| 9 | | *s/ Anthony J. Coppolino*<br>ANTHONY J. COPPOLINO<br>Special Litigation Counsel |
| 10 | | |
| 11 | | *s/ Paul E. Ahern*<br>PAUL E. AHERN<br>Trial Attorney |
| 12 | | |
| 13 | | U.S. Department of Justice<br>Civil Division, Federal Programs Branch |
| 14 | | 20 Massachusetts Avenue, NW, Rm. 6102<br>Washington, D.C. 20001 |
| 15 | | Phone: (202) 514-4782<br>Fax: (202) 616-8460 |
| 16 | | *Attorneys for the Government Defendants* |

**Government Defendants' Reply in Support of Renewed Motion to Dismiss and for Summary Judgment**
*Shubert et al. v. United States of America et al.*, **Case No. 07-cv-00693-VRW (MDL 06-cv-1791-VRW)**   -16-