MICHAEL F. HERTZ
Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
PAUL E. AHERN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20001
Tel: (202) 305-0633
Fax: (202) 616-8470
paul.ahern@usdoj.gov

*Attorneys for the Government Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | No. M:06-cv-01791-VRW |
|  | **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| This Document Relates Solely To: | No Hearing Scheduled |
| *Guzzi v. Obama et al.*\* (Case No. 06-cv-06225-VRW) | Chief Judge Vaughn R. Walker |

\* Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, President Obama is substituted in his official capacity as a defendant.

**Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.* **(06-cv-06225-VRW)/(MDL 06-cv-1791-VRW)**

Dockets.Justia.com

TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     PLAINTIFF LACKED STANDING TO CHALLENGE
           THE TERRORIST SURVEILLANCE PROGRAM FROM
           THE BEGINNING, AND THE FISC ORDERS UNDERSCORE
           THAT THE COURT LACKS JURISDICTION OVER
           HIS CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          A.     Plaintiff Lacks Standing to Bring His Claim for
                  Declaratory and Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          B.     The FISC Orders Underscore that
                  Plaintiff Cannot Establish Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    EVEN IF PLAINTIFF HAD STANDING TO SEEK
           PROSPECTIVE RELIEF, THE LAPSE OF THE TSP
           MOOTS ANY FURTHER CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

## TABLE OF AUTHORITIES

2

## __CASES__

3   *ACLU v. NSA*, 493 F.3d 644 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

4   *Al-Haramain v. Bush*, 507 F.3d 1190 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5   *Amnesty Int'l v. McConnell*, 646 F. Supp. 2d 633 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . *passim*

6   *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7   *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997). . . . . . . . . . . . . . . . . . . . . . . . . 13

8   *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9   *Ashcroft v. Mattis*, 431 U.S. 171 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10  *Best v. Kelly*, 39 F.3d 328 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12  *Buritica v. United States*, 8 F. Supp. 2d 1188 (N.D. Cal. 1998). . . . . . . . . . . . . . . . . . . . . . 6, 12

13  *Cntr. for Biological Diversity v. Lohn*, 511 F.3d 960 (9th Cir. 2007). . . . . . . . . . . . . . . . . . 13-14

14  *Chamber of Commerce v. Dep't of Energy*, 627 F.2d 289 (D.C. Cir. 1980). . . . . . . . . . . . . . . . 15

15  *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

16  *Ex Parte Levitt*, 302 U.S. 633 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

17  *Flast v. Cohen*, 392 U.S. 83 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

18  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . 13

19  *Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

20  *Golden v. Zwickler*, 394 U.S. 103 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

21  *Greenbaum v. EPA*, 370 F.3d 527 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22  *Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

23  *Hein v. Freedom from Religion Found.*, 551 U.S. 587 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

24  *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 4

25  *Jackson v. California Dept. of Mental Health*, 399 F.3d 1069 (9th Cir. 2005). . . . . . . . . . . . . . . 13

26  *Jewel v. NSA*, —F. Supp. 2d—, 2010 WL 235075 (N.D. Cal. Jan. 21, 2010). . . . . . . . . . . *passim*

27  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000). . . . . . 13-14

28  *Laird v. Tatum*, 408 U.S. 1 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1   *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

2   *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4-5

3   *Mayfield v. United States*, 588 F.3d 1252 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4   *Murphy v. Hunt*, 455 U.S. 478 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

5   *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346 (D.C. Cir. 1997). . . . . . . . . . . 15

6   *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505 (9th Cir. 1994).. . . . . . . . . . . . . . . . . . . . 13, 15

7   *O'Shea v. Littleton*, 414 U.S. 488 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8   *Renne v. Geary*, 501 U.S. 312 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9   *Rizzo v. Goode*, 423 U.S. 362 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10  *Smith v. Univ. of Washington Law School*, 233 F.3d 1188 (9th Cir. 2000).. . . . . . . . . . . . . . . . 15

11  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

12  *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

13  *Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14  *United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984).. . . . . . . . . . . . . . *passim*

15  *Warth v. Seldin*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16  *Whitmore v. Arkansas*, 495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17                                              ## **STATUTES**

18  50 U.S.C. §§ 1801 *et seq.*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

19  50 U.S.C. § 1806(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiff bases this action on a generalized grievance challenging a foreign intelligence surveillance program that is no longer operative. To be precise, Plaintiff challenges a program described by the President in December 2005, known as the "Terrorist Surveillance Program" or "TSP," pursuant to which the National Security Agency ("NSA") targeted the content of international communications to or from the United States where one party was reasonably believed to be a member or agent of al-Qaeda or an affiliated terrorist organization. *See* Complaint ¶¶ 17-22 (Dkt. 1 in 06-cv-136-JEC (N.D. Ga.)) (attached hereto as Exhibit 1). Plaintiff alleged that this program was unlawful because it allowed electronic surveillance in violation of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801 *et seq.*, and the U.S. Constitution, *see* Ex.1 ¶¶ 37, 53-56.

Defendants moved to dismiss because Plaintiff lacked standing on the face of his Complaint. After Defendants' Motion was fully briefed, the action was transferred to this Court. This supplemental memorandum addresses intervening events that further require dismissal of the case. Since the Motion was briefed, several courts—including this Court as well as the U.S. Courts of Appeals for the Sixth Circuit—have held that plaintiffs bringing similar causes of action lack standing to pursue their claims.

Moreover, as Defendants previously notified the Court, the Foreign Intelligence Surveillance Court ("FISC") issued orders on January 10, 2007, authorizing the Government to target for collection international communications into or out of the United States where there is probable cause to believe that one or more of the parties to the communication is a member or agent of al-Qaeda or an associated terrorist organization. Any electronic surveillance that was occurring as part of the TSP is now being conducted pursuant to the FISC orders; as a result, the President decided not to reauthorize the TSP, which has now lapsed.

In short, the requested relief would exceed the Court's constitutional authority. Whether viewed as an issue of standing or mootness, the FISC orders reinforce the conclusion evident from the beginning—that this suit, seeking only prospective relief concerning the now-defunct TSP, must be dismissed.

**BACKGROUND**

In contrast to other actions pending before this Court, *see, e.g.*, *Shubert v. Bush*, 07-cv-693-VRW, Plaintiff does not allege that the NSA presently undertakes a "dragnet" of supposed content surveillance. Rather, Plaintiff challenges the particular program described in December 2005—the lapsed TSP—through which the President authorized the NSA to intercept the content of certain communications where there are reasonable grounds to believe that the communication originated or terminated outside the United States and a party to the communication is an agent of al-Qaeda or an affiliated terrorist organization. *See* Ex.1 ¶¶ 22, 48.

Notably, Plaintiff did not allege that he was subject to, or was subjected to, the TSP, but instead claimed a more tenuous injury. According to Plaintiff, he developed relationships with foreign individuals residing inside and outside of the United States, including those living in the Middle East or of middle-eastern descent. *See id.* ¶¶ 42-43. Plaintiff stated that, prior and subsequent to the September 11, 2001 attacks, he engaged these individuals in conversations about terrorist attacks, his beliefs about the "validity and/or effectiveness of terroristic methods, philosophies, strategies, recruitment, targets and other related subjects," *id.* ¶ 45, as well as criticism of the President's actions in the post-September 11 armed conflict, *id.* ¶¶ 46-47. In lieu of direct injury, Plaintiff alleged simply that because of the TSP he "fears that if he continues to engage in the aforementioned unfettered dialogue concerning terrorists, terrorist philosophies, terrorist methodologies, terrorist targets and the American responses thereto he has already become or will become a target" of this program, *id.* ¶ 50; *see id.* ¶ 49, and as a result he has "been forced to refrain from communicating freely and candidly in his international communications about topics that are likely to trigger electronic monitoring" under the program, *id.* ¶ 51. Based on this "injury," Plaintiff alleged that the TSP violated his rights under the First and Fourth Amendments, the constitutional principle of separation of powers, and the President's duty under Article II to ensure that the laws are faithfully executed. *Id.* ¶¶ 53-56. He seeks only prospective relief—a declaration that the TSP violated the Constitution and FISA and an injunction against the program.

Plaintiff brought suit in the Northern District of Georgia. *See generally id.* On July 18,

2006, Defendants moved to dismiss the action, (Dkt. 8-1 in 06-cv-136-JEC (N.D. Ga.)) (attached hereto as Exhibit 2); (Dkt. 8-2 in 06-cv-136-JEC (N.D. Ga.)) (attached hereto as Exhibit 3), arguing that Plaintiff's complaint failed on its face to meet the "'irreducible constitutional minimum'" of standing, *see* Ex.3 at 7 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In particular, Defendants asserted that Plaintiff's claim of alleged harm—the chilling effect on his communications caused by knowledge of the TSP—was squarely foreclosed by *Laird v. Tatum*, 408 U.S. 1 (1972). Much like in this case, the *Laird* plaintiffs challenged a military surveillance program, in that instance designed to gather information about potential domestic civil disturbances, claiming a similar "chill" injury. The Court rejected this claim, however, holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim or present objective harm or threat of specific future harm." *Id.* at 13-14. In the absence of "actual present or immediately threatened injury" from government action, the Court refused, in essence, to ratify plaintiffs' attempt to use discovery to conduct a broad-scale investigation of intelligence gathering activities in pursuit of a constitutionally infirm advisory opinion. *Id.* at 14; *see* Ex.3 at 9-10. Based on *Laird*'s clear precedent, other courts have likewise dismissed similar actions challenging alleged surveillance activities for lack of standing. *See* Ex.3 at 10-11 (citing *Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982), and *United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984)). As Defendants stated, the "chilling" effect that Plaintiff claimed as an injury, based on contacts with individuals of middle-eastern descent that are not asserted to be the agents of al-Qaeda and its affiliates targeted by the TSP, is more tenuous even than the claims rejected in *Laird*, *Halkin* and *United Presbyterian*. *See* Ex.3 at 12-14; Ex.5 at 4-9.

After the parties completed briefing on Defendants' motion to dismiss, (Dkt. 10 in 06-cv-136-JEC (N.D. Ga.)) (attached hereto as Exhibit 4); (Dkt. 13 in 06-cv-136-JEC (N.D. Ga.)) (attached hereto as Exhibit 5), the action was transferred to this Court as part of the multi-district litigation, *In re National Security Agency Telecommunications Records Litigation*, 06-cv-1791-VRW, on September 29, 2006. During the pendency of this Motion, the circumstances have changed substantially. As Defendants advised the Court, on January 10, 2007, a Judge of the FISC "issued orders authorizing the Government to target for collection international

1    communications into or out of the United States where there is probable cause to believe that one

2    of the communicants is a member or agent of al Qaeda or an associated terrorist organization."

3    (Dkt. 127-1 at 1 in 06-cv-1791-VRW).  As a result, "any electronic surveillance that was

4    occurring as part of the Terrorist Surveillance Program will now be conducted subject to the

5    approval" of the FISC.  (*Id.*); (*see also* Dkt. 175, 176-1 in 06-cv-1791) (public and classified, *ex*

6    *parte* and *in camera* declarations of Keith B. Alexander, Director of the NSA).  Accordingly, the

7    President determined not to reauthorize the TSP, and the program lapsed.  (Dkt. 127-1 at 1-2 in

8    06-cv-1791-VRW).  In other words, the activities that Plaintiff claims to have been unlawful for

9    failing to comply with FISA are now conducted pursuant to orders of the FISA Court.

10                                           **ARGUMENT**

11   **I.    PLAINTIFF LACKED STANDING TO CHALLENGE THE TERRORIST
           SURVEILLANCE PROGRAM FROM THE BEGINNING, AND THE FISC
12         ORDERS UNDERSCORE THAT THE COURT LACKS JURISDICTION OVER
           HIS CLAIMS.**

13          "[T]he core component of standing is an essential and unchanging part of the case-or-

14   controversy requirement of Article III."  *Lujan*, 504 U.S. at 560.  "A party invoking federal

15   jurisdiction," here Plaintiff, "has the burden of establishing its standing to sue."  *Hepting v.*

16   *AT&T Corp.*, 439 F. Supp. 2d 974, 999 (N.D. Cal. 2006) (citing *Lujan*, 504 U.S. at 561); *see*

17   *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *see also Renne v. Geary*, 501

18   U.S. 312, 316 (1991) ("It is the responsibility of the complainant clearly to allege facts

19   demonstrating that he is a proper party to invoke . . . the exercise of the Court's remedial

20   powers.") (internal quotation marks and citations omitted).  To meet this burden, Plaintiff must

21   demonstrate: (1) that he has "suffered an injury in fact—an invasion of a legally protected

22   interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or

23   hypothetical"; (2) "there must be a causal connection between the injury and the conduct

24   complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will

25   be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560-61 (internal quotation marks,

26   footnote and citations omitted).

27          "Additionally, where, as here, [Plaintiff] seek[s] declaratory and injunctive relief, [he]

28

must demonstrate that [he is] 'realistically threatened by a *repetition* of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001)); *see Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly impending to constitute injury in fact.") (internal quotation marks and citation omitted); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("If Lyons has made no showing that he is realistically threatened by a repetition of his experience . . . then he has not met the requirements for seeking an injunction in a federal court . . . ."); *see generally* Ex.3 at 7-8.

Separate from this constitutional minimum, the Supreme Court "has held that when the asserted grievance is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975), *quoted in Amnesty Int'l v. McConnell*, 646 F. Supp. 2d 633, 643 (S.D.N.Y. 2009); *see Jewel v. NSA*, —F. Supp. 2d—, 2010 WL 235075, at *8 (N.D. Cal. Jan. 21, 2010). In addition, "[a] citizen may not gain standing by claiming a right to have the government follow the law." *Jewel*, 2010 WL 235075, at *8 (citing *Ex Parte Levitt*, 302 U.S. 633 (1937), and *Flast v. Cohen*, 392 U.S. 83 (1968)).

### A. Plaintiff Lacks Standing to Bring His Claims for Declaratory and Injunctive Relief.

The "injury in fact" (and, in actions seeking declaratory or injunctive relief, the "realistically threatened by a repetition of the injury") prong of standing is the foremost requirement of the doctrine. *See Steel Co.*, 523 U.S. at 103. Plaintiff's claimed injury amounts to "fears that if he continues to engage" in certain activities, "he has already become or will become a target" of the challenged program, the TSP. Ex.1 ¶ 50. These speculative "fears," he claims, "force[] [him] to refrain from communicating freely and candidly in his international communications." *Id.* ¶ 51. As noted in Defendants' Motion to Dismiss, however, Plaintiff's reliance on such a tenuous injury for standing purposes is squarely foreclosed by *Laird v. Tatum*, 408 U.S. 1 (1972), in which the Court held that "[a]llegations of subjective 'chill' are not an adequate substitute for a claim of present objective harm or a threat of specific future harm," *id.*

1    at 13-14; *see* Ex.1 at 9-10.  And as also described in Defendants' Motion, courts interpreting

2    *Laird* have likewise rejected for lack of standing claims that government action—in particular,

3    alleged government surveillance activities—have chilled putative plaintiffs from engaging in

4    allegedly constitutionally protected activities.  *See* Ex.1 at 10-14 (citing *Halkin* and *United*

5    *Presbyterian*); Ex.5 at 4-9 (same); *see generally Am. Civil Liberties Union (ACLU) v. NSA*, 493

6    F.3d 644 (6th Cir. 2007); *Amnesty Int'l*, 646 F. Supp. 2d 633.

7           This result is not an aberration, but rather stems, in part, from the nature of the equitable

8    relief Plaintiff requests.  To seek prospective relief, even a plaintiff who demonstrates a past

9    violation must show that he is "realistically threatened by a repetition of his experience." *Lyons*,

10   461 U.S. at 109.  Thus, in *Lyons*, the Court drew upon a long line of precedent to find that an

11   individual who claimed to be a past victim of a challenged police use-of-force policy lacked

12   standing to request injunctive relief because he failed to demonstrate a realistic possibility that

13   police would again use such force on him.  *Lyons*, 461 U.S. at 105, 109; *see also id.* at 102-05

14   (citing, among others, *Ashcroft v. Mattis*, 431 U.S. 171 (1977) (per curiam); *Rizzo v. Goode*, 423

15   U.S. 362 (1976); *O'Shea v. Littleton*, 414 U.S. 488 (1974); and *Golden v. Zwickler*, 394 U.S. 103

16   (1969)); *see Buritica v. United States*, 8 F. Supp. 2d 1188,1195-97 (N.D. Cal. 1998) (noting that

17   application of "strict standing requirements" like those articulated in *Lyons* ensures that a

18   plaintiff has a sufficient personal stake in the outcome of litigation).  Contrary to the plaintiff in

19   *Lyons*, Plaintiff here has not even established that he was subject in the past to the alleged

20   surveillance he challenges.  Unlike plaintiffs in other cases before this Court, he does not claim

21   to be in contact with individuals who could be suspected to be agents of al-Qaeda or associated

22   terrorist forces—a prerequisite for the surveillance program that he challenges.  But like the

23   plaintiffs in *Lyons*, *Zwickler* and other cases, Plaintiff's Complaint fails to demonstrate any

24   realistic possibility that the challenged surveillance has been, or will be, applied to him.

25          The clear trend in *Laird* and *Lyons*, as applied to challenges to alleged surveillance

26   activities at issue in cases like *Halkin* and *United Presbyterian*, is that plaintiffs only have

27   standing to request prospective relief if they show both a concrete and immediate injury and a

28

**Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.* **(06-cv-06225-VRW)/(MDL 06-cv-1791-VRW)**                    6

1    realistic possibility that the activity will applied to them in the future.  Events since the motion to

2    dismiss was briefed only serve to confirm this trend and demonstrate that Plaintiff's speculative

3    claim of a subjective "chill" is insufficient to invoke the Article III jurisdiction of a federal court.

4         Most recently, this Court has dismissed actions challenging alleged NSA surveillance

5    activities—including those under the TSP at issue in Plaintiff's Complaint—for lack of standing.

6    In *Jewel v. NSA*, —F. Supp. 2d—, 2010 WL 235075 (N.D. Cal. Jan. 21, 2010), the plaintiffs only

7    alleged facts, similar to those at issue here, that they had foreign contacts and held a "good faith

8    basis" that they had been surveilled.  *Id.* at *6.[1]  As here, "[t]he complaint contains no factual

9    allegations specifically linking any of the plaintiffs to the alleged surveillance activities; it

10   contains only the allegations of domestic and international telephone and electronic mail use."

11   *Id.*  "[B]oiled to their essence," the Court held, the cases represented "efforts by citizens seeking

12   to redress alleged misfeasance by the executive branch."  *Id.* at *7.  But "[a] citizen may not gain

13   standing by claiming a right to have the government follow the law," *id.* at *8 (citing *Ex parte*

14   *Levitt*, 302 U.S. 633 (1937)); "[t]he essence of standing is the party's direct, personal stake in the

15   outcome," *id.* (citing *Flast v. Cohen*, 392 U.S. 83, 99 (1968)).  In short, the plaintiffs failed to

16   allege facts "that would differentiate them from the mass of telephone and internet users in the

17   United States and thus make their injury 'concrete and particularized'" such to establish their

18   standing.  *Id.* at *9 (quoting *Lujan*, 504 U.S. at 560); *see also id.* at *8 (drawing parallels with

19   taxpayer standing cases such as *Hein v. Freedom from Religion Found.*, 551 U.S. 587 (2007)).[2]

20        The same defects this Court described in *Jewel* are fatal to this Plaintiff's claim.  As in

21

22        [1]  In the same Order, this Court dismissed the actions in *Jewel v. NSA*, 08-cv-4373-VRW

23   and *Shubert v. Obama*, 07-cv-693-VRW.  The *Jewel* plaintiffs' allegations, if anything, were
     more detailed than those of the *Shubert* plaintiffs quoted above, by alleging more detailed claims

24   of injury, including that they were customers of named telecommunication companies and
     detailing the carriers' supposed involvement in the alleged government surveillance.  *See, e.g.*,

25   *Jewel*, 2010 WL 235075, at *4-5.

26        [2]  The Court further noted that, in cases like these raising serious constitutional and

27   national security issues, "only plaintiffs with strong and persuasive claims to Article III standing
     may proceed."  *Id.* at *9.

28

1    *Jewel*, the gravamen of Plaintiff's suit is a generalized grievance about alleged "misfeasance by

2    the executive branch."  As in *Jewel*, Plaintiff's speculative fears of surveillance based on his

3    foreign contacts—without even pleading facts sufficient to establish that those contacts would be

4    suspected as agents of al-Qaeda or its associates, a necessary prerequisite to be targeted by the

5    challenged program—do nothing to differentiate him from the mass of similarly-situated

6    telephone and internet users in the United States.  And as in *Jewel*, Plaintiff's case should be

7    dismissed for lack of standing.

8        This Court's *Jewel* decision is not alone in dismissing claims such as Plaintiff's.  In

9    *ACLU v. NSA*, 493 F.3d 644 (6th Cir. 2007), the U.S. Court of Appeals for the Sixth Circuit

10   considered the plaintiffs' standing based on circumstances identical to those presented here.  The

11   *ACLU* plaintiffs, like Plaintiff here, challenged the TSP based on, among other contentions, a

12   claim that the TSP chilled their exercise of constitutional rights because it caused them to refrain

13   from engaging in foreign contacts.  *Id.* at 657, 659-60.  Although the Sixth Circuit issued three

14   separate opinions, the Judges in the majority—Judges Batchelder and Gibbons—agreed with the

15   central premise of Defendants' Motion.  Analyzing *Laird* and its progeny, Judge Batchelder

16   concluded that plaintiffs' allegations of a "chill" injury in support of their First Amendment

17   claim was insufficient to establish that element of the standing inquiry.  *See id.* at 660-66.  As

18   Judge Batchelder noted, "[e]ven assuming these fears are imminent rather than speculative, this

19   is still a tenuous basis for proving a *concrete* and *actual* injury."  *Id.*  Indeed, Judge Batchelder

20   continued, "even if their allegations are true, the plaintiffs still allege only a subjective

21   apprehension and a personal (self-imposed) unwillingness to communicate, which falls squarely

22   within *Laird*.  In fact, this injury is even *less* concrete, actual, or immediate than the injury in

23   *Laird*."  *Id.* (citation omitted).  Likewise, Plaintiff's alleged injury here is simply his "subjective

24   apprehension" and a "[]self-imposed[] unwillingness to communicate."  *See, e.g.*, Ex.1 ¶¶ 49, 51.

25   As in *ACLU*, *Laird* controls this case.  And for reasons described in Defendants' Motion, *Laird*

26   and its progeny requires that this case be dismissed.  *Id.* at 665 ("The plaintiffs' first alleged

27   injury, arising from a personal subjective chill, is no more concrete . . . than the injury alleged in

28

1   *Laird*.  The injury in *Laird* was insufficient to establish standing . . . the plaintiffs' first injury is

2   likewise insufficient to establish standing."); *see also, e.g.*, *id.* at 673 (applying similar analysis

3   to dismiss Fourth Amendment claims).

4       Judge Gibbons reached the same conclusion through reasoning that would squarely

5   foreclose Plaintiff's claim.  In his view, "[t]he disposition of all of the plaintiffs' claims depends

6   upon the single fact that the plaintiffs have failed to provide evidence that they are personally

7   subject to the TSP."  *Id.* at 688 (Gibbons, J., concurring).  As the *ACLU* plaintiffs had not

8   established that they were in fact subject to the TSP, Judge Gibbons, like Judge Batchelder,

9   found that they failed to meet their burden of establishing standing.  *Id.* at 691 (Gibbons, J.,

10  concurring).  Plaintiff here would fare no differently under this standard, because he has utterly

11  failed to allege facts sufficient to demonstrate that he was *personally* subjected to the TSP, as

12  opposed to speculative fears based on public reporting about the program.  *Id.* at 689-90

13  (Gibbons, J., concurring); *see Amnesty Int'l*, 646 F. Supp. 2d at 657.  Plaintiff has not pled any

14  facts that would establish a concrete and particularized injury.  Thus for either reason articulated

15  by the *ACLU* majority, Plaintiff's speculative claim of injury is insufficient to support standing.

16      Moreover, the U.S. District Court for the Southern District of New York recently

17  dismissed a challenge of the FISA Amendments Act of 2008, in which plaintiffs' basis for

18  standing was the supposed chill of their communications with foreign nationals due to fear of

19  alleged NSA surveillance activities—virtually identical to Plaintiff's allegations.  *See Amnesty*

20  *Int'l*, 646 F. Supp. 2d at 642.   The court in *Amnesty International*, relying in particular upon

21  *Laird*, *United Presbyterian*, *ACLU* and other surveillance cases, noted that the plaintiffs, like the

22  Plaintiff here, only "allege that their communications are chilled by the sheer existence of the

23  challenged policy without connecting the policy to their own speech."  *Id.* at 653.  The *Amnesty*

24  *International* plaintiffs thus "failed to show that they are subject to the statute other than by

25  speculation and conjecture, which is insufficient for standing."  *Id.* at 654.  Likewise, Plaintiff's

26  vague allegations of fear based on contacts with foreign nationals, who are not alleged to be

27  subject to the TSP, are wholly insufficient to demonstrate a concrete and immediate injury or a

28

1   realistic possibility that he will be subject to the alleged activities in the future.

2          Similarly, in *Al-Haramain v. Bush*, 507 F.3d 1190 (9th Cir. 2007), the U.S. Court of

3   Appeals for the Ninth Circuit held that (absent preemption), "Al-Haramain cannot establish that

4   it suffered injury in fact, a 'concrete and particularized injury,'" and that "its claims must be

5   dismissed." *Id.* at 1205.  Notably, the court stated that "[i]t is not sufficient for Al-Haramain to

6   speculate that it might be subject to surveillance under the TSP simply because it has been

7   designated a 'Specially Designated Global Terrorist.'" *Id.*  But such a claim is far more concrete

8   and particularized than the "chill" injury, based on speculative fears and self-imposed restraint

9   from contacting individuals who have no alleged connection with al-Qaeda or associated terrorist

10  groups targeted by the TSP, that Plaintiff alleges in this case.  As the *Al-Haramain* plaintiffs

11  failed to establish their standing (absent preemption) despite being named a  terrorist

12  organization, Plaintiff here has failed to meet his burden and demonstrate a concrete injury.[3]

13         In sum, "[c]ourts have explicitly rejected standing based on a fear of surveillance in

14  circumstances similar to those in this case." *Amnesty Int'l*, 646 F. Supp. 2d at 645.  A long line

15  of precedent, from *Laird* to this Court's recent work in *Jewel*, demonstrates that generalized

16  grievances or speculative fears are insufficient to establish standing.  Plaintiff offers no reason

17  for this Court to divert from the trend—indeed, *Jewel* is dispositive—and it should accordingly

18  dismiss the case.

19         **B.      The FISC Orders Underscore that Plaintiff Cannot Establish Standing.**

20         The central premise on which Plaintiff's case rests—surveillance under the TSP without

21  statutory authority —is no longer operative.  The FISC orders underscore that Plaintiff cannot

22  establish his standing under the injury (and, in this context, realistic threat of a repetition of the

23  _____

24         [3]  The reserved question in *Al-Haramain* pertained to whether FISA preempted the
    Government's ability to assert the state secrets privilege over information that Al-Haramain
25  claimed *would* prove a concrete and particularized injury.  There is no such claim here.
    Plaintiff's alleged injuries are simply more speculative than those *Al-Haramain* determined to be
26  insufficient, and they would be too speculative for Plaintiff to demonstrate status as an
    "aggrieved person" under FISA.  50 U.S.C. § 1806(f); *see Jewel*, 2010 WL 235075, at *9.
27

28

1  injury), causation or redressability prongs of the standing inquiry, and the fact that the TSP is no

2  longer in effect confirms Plaintiff's lack of standing.

3       Even where a plaintiff alleges that his rights were violated in the past—and, as noted

4  above, Plaintiff here has failed even to plead such facts—he lacks standing to obtain prospective

5  relief absent a "real and immediate threat" that he will suffer the same injury in the future.

6  *Lyons*, 461 U.S. at 103; *see Gest*, 443 F.3d at 1181.  The discontinuance of the TSP negates any

7  such threat because Plaintiff cannot credibly claim any *continuing* chill caused by a program that

8  has lapsed for more than three years and has been supplanted by activities authorized by the

9  FISC.  Indeed, this authorization proves the point; it cannot be that Plaintiff could suffer any

10  legitimate "chill" based on a fear of being subject to surveillance activities that have supplanted

11  the now-defunct TSP and are authorized by the FISC.  *See ACLU*, 493 F.3d at 668 (noting that all

12  wiretaps are "secret," therefore the NSA's possession of a warrant would have no impact on a

13  party's subjective willingness or unwillingness to make foreign contacts).[4]  Accordingly, the fact

14  that the TSP has lapsed, and that any activities conducted under that program are now under

15  FISC authority, renders it impossible for Plaintiff to establish an imminent threat of future injury

16  under his "chill" theory.  *See Amnesty Int'l*, 646 F. Supp. 2d at 649 ("But the cases are clear that

17  an actual and well-founded fear of enforcement depends upon a reasonable showing that the

18  plaintiff is subject to the challenged law or regulation.").

19       Thus, as Plaintiff seeks only prospective relief, his case must be dismissed because there

20  is no basis on which he can establish a real and immediate threat that he will be surveilled by the

21  TSP in the future, when the challenged activity is no longer operative.  To the extent Plaintiff

22

23       [4]  Indeed, as the *ACLU* court noted, even if any TSP activities had not already been
24  brought under FISC authority, Plaintiff's requested relief would not have redressed his alleged
     injury, because surveillance conducted pursuant to a warrant under FISC order would still be
25  "secret," and would therefore have no effect on his alleged "chill" injury.  *See ACLU*, 493 F.3d at
     671-72; *see also Mayfield v. United States*, 588 F.3d 1252, 1259-60 (9th Cir. 2009).  Failing this
26  prong of the standing inquiry, Plaintiff's case should be dismissed even if he had alleged an
27  injury in fact.  *See ACLU*, 493 F.3d at 672.

28

**Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.* **(06-cv-06225-VRW)/(MDL 06-cv-1791-VRW)**                    11

1   seeks injunctive relief from TSP surveillance, there is no program left to enjoin.  And to the

2   extent Plaintiff seeks a declaratory judgment, his claim is foreclosed by, among others, *Golden v.*

3   *Zwickler*, 394 U.S. 103 (1969).  There, the Court held that an individual lacked standing to seek

4   declaratory judgment of the unconstitutionality of a statute prohibiting anonymous election-

5   related handbills.  The complaint in that case focused on a then-forthcoming election, but the

6   Court found it "most unlikely" that the candidate involved—who had become a state judge in the

7   interim—would again run for office.  *Golden*, 394 U.S. at 109.  "Since . . . the prospect was

8   neither real nor immediate of a campaign involving the Congressman, it was wholly conjectural

9   that another occasion might arise when Zwickler might be prosecuted for distributing the

10  handbills referred in the complaint," *id.*, and the plaintiff therefore failed to establish standing,

11  *see* Ex. 5 at 7-9; *see also Buritica*, 8 F. Supp. 2d at 1195-97 (surveying cases).

12          In this case, the TSP has lapsed and any activities occurring under that program are now

13  conducted under FISC authority.  Thus, as in *Zwickler*, it is "highly unlikely," even if Plaintiff

14  had alleged past injury, that he would in the future be subject to unauthorized TSP activities.

15  "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that

16  cannot be met where there is no showing of any real or immediate threat that the plaintiff will be

17  wronged again," *Lyons*, 461 U.S. at 111, and supplanting the TSP with FISC supervision makes

18  it "wholly conjectural" that Plaintiff will suffer any future injury, *Golden*, 394 U.S. at 109.  For

19  reasons described above, "[t]he speculative nature of [Plaintiff's] claim of future injury," in light

20  of the lapse of the challenged program, "requires a finding that this prerequisite of equitable

21  relief has not been fulfilled," *id.*, and provides an additional basis for dismissing this case.[5]

22  _____

23          [5]  In addition, the Court could find that Plaintiff's allegations of injury are too speculative
    and conjectural  to satisfy Article III standing requirements at the pleading stage.  "A complaint

24  may be dismissed on jurisdictional grounds when it 'is "patently insubstantial," presenting no
    federal question suitable for decision.'"  *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir.

25  2009) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)).  At best, Plaintiff merely
    speculates that he was subject to the now-defunct TSP without alleging any facts—such as

26  contacts with agents of al-Qaeda or its associates—that would make the allegation plausible.

27  This is insufficient to invoke the Court's jurisdiction.  *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937

28

1

**II.    EVEN IF PLAINTIFF HAD STANDING TO SEEK PROSPECTIVE RELIEF, THE LAPSE OF THE TSP MOOTS ANY FURTHER CLAIMS.**

2

3        Because Plaintiff lacked standing from the beginning of this suit—as further confirmed

4    by the FISC orders—exceptions that apply to the mootness doctrine, such as for cases capable of

5    repetition, but evading review, are inapplicable.  "'[I]f a plaintiff lacks standing at the time the

6    action commences, the fact that the dispute is capable of repetition yet evading review will not

7    entitle the complainant to a federal judicial forum.'"  *Jackson v. Cal. Dep't of Mental Health*,

8    399 F.3d 1069, 1073 (9th Cir. 2005) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

9    *(TOC), Inc.*, 528 U.S. 167, 191 (2000)); *see also Lyons*, 461 U.S. at 109 ("The equitable doctrine

10   that cessation of the challenged conduct does not bar an injunction is of little help . . . for Lyons'

11   lack of standing . . . rest[s] . . . on the speculative nature of his claim that he will again

12   experience injury as the result of that practice . . . .").

13       At any rate, even if the Court found that Plaintiff had standing to assert his claim for

14   equitable relief, the Court would lack jurisdiction to grant such relief because the lapse of the

15   TSP means that the case is moot.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66

16   (1997) (noting that court need not resolve its doubts about standing because the question of

17   mootness also "goes to the Article III jurisdiction" of the court).  "Article III requires that a live

18   controversy persist through all stages of the litigation"; if this condition is not met, "the case

19   becomes moot, and its resolution is no longer within [the Court's] purview."  *Gator.com Corp. v.*

20   *L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005); *see Cntr. for Biological Diversity v.*

21   *Lohn*, 511 F.3d 960, 963-65 (9th Cir. 2007); *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505,

22   1510 (9th Cir. 1994).

23       Regardless how the Court resolves the standing inquiry—though Defendants submit that

24   the answer is clear from an application of *Jewel*, as well as *Laird* and *Lyons*—Plaintiff's

25

26   (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the
     court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

27   (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

28

1    challenge to the TSP is now moot.  The progam is no longer in place; it has been defunct for

2    more than three years; any surveillance occurring as part of the TSP is now under the supervision

3    of another court; and no injunctive relief can be provided from an activity that is already

4    inoperative.  Even as to a claim for declaratory judgment, the lapse of the TSP negates the

5    "substantial controversy, between parties having adverse legal interests, of sufficient immediacy

6    and reality" that would "warrant the issuance of a declaratory judgment."  *Center for Biological*

7    *Diversity*, 511 F.3d at 963 (internal quotation marks and citation omitted).  Where the challenged

8    government activity is no longer in place, it cannot be said that a substantial controversy exists

9    between the parties of such immediacy and reality to warrant judicial relief.  *See id.* at 964

10   (noting that no case or controversy remains where the claimed adverse effect is "'so remote and

11   speculative'" that there is "'no tangible prejudice to the *existing interests* of the parties'")

12   (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 123 (1964)).

13        There is no basis to find an exception to the operation of the mootness doctrine in the

14   principle that there has been a "voluntary cessation" of allegedly unlawful activity.  *See, e.g.*,

15   *Laidlaw*, 528 U.S. at 189.  The Government has not terminated the TSP in response to Plaintiff's

16   suit.  Rather, it worked with the FISC for some time to obtain authorization for any surveillance

17   activities that were occurring under the TSP.  (*See* Dkt. 127-1 at 1, Dkt. 175-1 ¶ 3 in 06-cv-1791-

18   VRW).  There is no voluntary cessation where the Government has made a policy decision to

19   alter a policy at issue in a case, *see Cntr. for Biological Diversity*, 511 F.3d at 965, but, in any

20   event, in this case an independent judicial body has now acted to provide additional and

21   sufficient legal authority for the activity that Plaintiff challenged.

22        Similarly, Plaintiff's claims cannot proceed on the exception to the mootness doctrine for

23   activities that are capable of repetition, yet evading review.  This exception only applies in

24   "'exceptional circumstances'" where the challenged activity was too short in duration to be

25   litigated before its expiration and there is "'a reasonable expectation that the same complaining

26   party would be subjected to the same action again.'"  *Lewis v. Continental Bank Corp*., 494 U.S.

27   472, 481 (1990) (quoting *Lyons*, 461 U.S. at 109, and *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)

28

**Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.* **(06-cv-06225-VRW)/(MDL 06-cv-1791-VRW)**                              14

1   (per curiam)).  "A mere physical or theoretical possibilty" of repetition is not sufficient—there

2   must be a "'demonstrated probability' that the same controversy will recur involving the same

3   complaining party." *Murphy*, 455 U.S. at 482 (citation omitted).  Likewise, the mere possibility

4   that the government may reinstate a disputed policy does not overcome mootness.  "Rather, there

5   must be evidence indicating that the challenged [policy] likely will be reenacted." *Nat'l Black*

6   *Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).  And, it follows, as

7   with the standing inquiry, a plaintiff's simple "fear of 'the *possibility*'" of recurrence is

8   insufficient to overcome mootness.  *Smith v. Univ. of Washington Law School*, 233 F.3d 1188,

9   1195 (9th Cir. 2000) (quoting *Noatak*, 38 F.3d at 1510).

10          Plaintiff offers nothing—not even speculation, though that too would be insufficient—to

11   suggest that he might be subjected to surveillance under the now-defunct TSP in the future.

12   Indeed, the facts that any activities previously authorized under that program are now conducted

13   pursuant to FISC authority, and that the TSP lapsed more than three years ago, militates against

14   any finding of a "demonstrated probability" that the controversy will recur.  *Murphy*, 455 U.S. at

15   482.  At best, as with the injury required to sustain standing, Plaintiff offers only a generalized

16   fear of unlawful surveillance.  This is far from an "exceptional circumstance" warranting an

17   exception to the mootness doctrine.[6]

18                                              **CONCLUSION**

19          For the foregoing reasons, and for all the reasons stated in our prior submissions, the

20   Court should grant Defendants' Motion to Dismiss.

21   _____

22          [6]  Apart from the constitutional mootness doctrine, a court may in its discretion refuse to
23   entertain a suit that "is so attenuated that considerations of prudence and comity for coordinate
     branches of government counsel that court to stay its hand and to withhold relief it has the power
24   to grant." *Greenbaum v. EPA*, 370 F.3d 527, 534-35 (6th Cir. 2004) (quoting *Chamber of*
     *Commerce v. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)).  In this case, prudential
25   considerations provide an independent basis for dismissal.  This case presents sensitive
26   constitutional questions about the authority of coordinate Branches to authorize foreign
     intelligence during wartime.  That activity has now been supplanted by orders from another
27   court, the FISC, and at the very least prudence dictates deference to that process by finding this
     matter to be moot.

28

1    Date: February 1, 2010                    Respectfully Submitted,

2                                              MICHAEL F. HERTZ
                                               Deputy Assistant Attorney General
3
                                               JOSEPH H. HUNT
4                                              Director, Federal Programs Branch

5                                              VINCENT M. GARVEY
                                               Deputy Branch Director
6

7                                                _s/ Paul E. Ahern_____
                                               PAUL E. AHERN
8                                              Trial Attorney

9                                              U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
10                                             20 Massachusetts Avenue, N.W.
                                               Washington, D.C. 20001
11                                             Phone: (202) 305-0633
                                               Fax: (202) 616-8470
12
                                               *Attorneys for the Government Defendants*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.* **(06-cv-06225-VRW)/(MDL 06-cv-1791-VRW)**                16

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have on this day served this Supplemental Memorandum in Support of Defendants' Motion to Dismiss by causing copies to be electronically mailed, and deposited in the United States mail, addressed to:

Mark E. Guzzi
271 Providence Oaks Circle
Alpharetta, Georgia 30004
(e-mail address omitted)

Dated: February 1, 2010

                                        /s/ *Paul E. Ahern*
                                        Paul E. Ahern