1  MICHAEL F. HERTZ
Deputy Assistant Attorney General
2  JOSEPH H. HUNT
Director, Federal Programs Branch
3  VINCENT M. GARVEY
Deputy Branch Director
4  PAUL E. AHERN
Trial Attorney
5  U.S. Department of Justice
Civil Division, Federal Programs Branch
6  20 Massachusetts Avenue, N.W.
Washington, DC  20001
7  Tel: (202) 305-0633
Fax: (202) 616-8470
8  paul.ahern@usdoj.gov

9  *Attorneys for the Government Defendants*

10

11

12           **UNITED STATES DISTRICT COURT**

13          **NORTHERN DISTRICT OF CALIFORNIA**

14             **SAN FRANCISCO DIVISION**

15

16                                        )   **No. M:06-cv-01791-VRW**
                                         )
17  IN RE NATIONAL SECURITY AGENCY       )
    TELECOMMUNICATIONS RECORDS           )   **EXHIBIT 3 TO SUPPLEMENTAL**
18  LITIGATION                           )   **MEMORANDUM  IN SUPPORT OF**
                                         )   **DEFENDANTS' MOTION TO**
19  _____  )   **DISMISS**
                                         )
20  This Document Relates Solely To:     )   **DEFENDANTS' MEMORANDUM IN**
                                         )   **SUPPORT OF MOTION TO DISMISS**
21  *Guzzi v. Obama et al.*              )
    (Case No. 06-cv-06225-VRW)           )
22  _____  )   Chief Judge Vaughn R. Walker

23

24

25

26

27

28

**Exhibit 3 to Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.*, Case No. 06-cv-06225-VRW (MDL 06-cv-1791-VRW)

Dockets.Justia.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| MARK E. GUZZI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-136 (JEC) |
| v. | ) | |
| | ) | |
| PRESIDENT GEORGE W. BUSH, | ) | |
| LTG KEITH B. ALEXANDER, | ) | |
| NATIONAL SECURITY AGENCY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

## INTRODUCTION

Plaintiff Mark E. Guzzi brings this action against President George W. Bush, Lieutenant Keith B. Alexander, and the National Security Agency ("NSA"), alleging that the President's authorization of the NSA to intercept certain international communications relating to persons linked to al Qaeda or affiliated terrorist organizations exceeds the President's constitutional and statutory authority and violates Plaintiff's constitutional rights. Plaintiff claims he communicates with individuals of middle-eastern descent or who live in the Middle East and that he often discusses terrorism-related topics or criticizes the

President's handling of the global war on terror.  He states that he "fears" that the NSA is undertaking or will undertake unlawful surveillance of his communications and that he consequently has been forced to refrain from communicating candidly about topics that he deems are likely to trigger surveillance in violation of his constitutional rights.

Plaintiff's allegation that the President's acknowledged authorization of certain surveillance activities involving members of al Qaeda or its affiliates — known as the Terrorist Surveillance Program ("TSP") — creates a chilling effect on his communications is insufficient to establish standing.  The Supreme Court has squarely rejected that such a claim of chill rises to the level of standing necessary to pursue a challenge to a government surveillance program.  Thus, because Plaintiff's lack of standing precludes the Court from having jurisdiction over this matter, the complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**BACKGROUND**

A.      **The Terrorist Surveillance Program**

In December 2005, the President explained that, following the devastating events of September 11, 2001, he authorized the NSA to intercept international communications into and out of the United States of persons linked to al Qaeda or

2

related terrorist organizations.[1]  The Attorney General further explained that in order to intercept a communication, there must be "a reasonable basis to conclude that one party to the communication is a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda."[2]  The purpose of these intercepts is to provide the United States with an early warning system to detect and prevent another catastrophic terrorist attack on the United States.  *See* President's Press Conference.  The President has stated that the NSA activities "ha[ve] been effective in disrupting the enemy, while safeguarding our civil liberties."  *Id*.

B.  **Allegations in Plaintiff's Complaint**

Following the President's acknowledgment, Plaintiff filed the instant suit claiming that he fears that the NSA is undertaking or will undertake unlawful surveillance of his communications, in excess of the President's constitutional or statutory authority and in violation of Plaintiff's constitutional rights.  *See generally* Complaint.  Plaintiff recognizes that the President only acknowledged

---

[1] *See* Press Conference of President Bush (Dec. 19, 2005), *available at* http://www.whitehouse.gov/news/releases/2005/12/20051219-2.html ("President's Press Conference").

[2] *See* Press Briefing by Attorney General Alberto Gonzales and General Michael Hayden, Principal Deputy Director for National Intelligence (Dec. 19, 2005), *available at* http://www.whitehouse.gov/news/releases/2005/12/20051219-1.html.

that, after September 11, 2001, he authorized a program that allows the NSA to intercept communications where there is a reasonable belief that at least one party to the conversation is a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda. *See* Complaint ¶ 17-22.

In support of his complaint, Plaintiff states that he has developed relationships with foreign individuals who reside inside and outside the United States, including individuals of middle-eastern descent or who live in the Middle East. *Id.* ¶¶ 42-43. He states that, before and after September 11, 2001, he has engaged in numerous communications with these individuals, via the telephone, cell phone, email, and internet. *Id.* ¶ 43. Plaintiff asserts that during these conversations, he has freely engaged in dialogue concerning terrorist attacks, known terrorist figures, and his "beliefs and opinions concerning the validity and/or effectiveness of terroristic methods, philosophies, strategies, recruitment, targets and other related subjects." *Id.* ¶¶ 44-45. He also discusses the President's response to the events of September 11, 2001, the use of military force in Afghanistan and Iraq, and criticism relating to the President's actions in the global war on terror. *Id.* ¶¶ 46-47.

Plaintiff states that he learned of the alleged program the President authorized in the December 16, 2005 edition of the New York Times. *Id.* ¶ 48.

Since then, he claims that he "fears that if he continues to engage in the aforementioned unfettered dialogue concerning terrorists, terrorist philosophies, terrorist methodologies, terrorist targets and the American responses thereto he has already become or will become a target" of this program. *Id*. ¶¶ 49-50.  He states that he has "been forced to refrain from communicating freely and candidly in his international communications about topics that are likely to trigger electronic monitoring." *Id*. ¶ 51.

Plaintiff claims that this program violates (1) his First Amendment rights to free speech and association; (2) his Fourth Amendment right to be free from unreasonable searches and seizures; (3) constitutional principle of separation of powers; and (4) the President's constitutional duty to ensure that the laws are faithfully executed.  *Id*. ¶¶ 53-56.  He seeks a declaration that the alleged program (1) violates Plaintiff's First and Fourth Amendment rights; (2) exceeds the President's Article II powers; (3) encroaches on the Congress' Article I powers; and (4) violates the Foreign Intelligence Surveillance Act.  *Id*. Prayer for Relief. Plaintiff also seeks a declaration that the President abandoned his Article II duty to take care that the laws be faithfully executed, and he seeks an injunction that enjoins the defendants from implementing the program.  *Id*.

**ARGUMENT**

**PLAINTIFF LACKS STANDING TO BRING HIS CLAIM OF DECLARATORY AND INJUNCTIVE RELIEF.**

A.   <u>Standing Requirements</u>

The jurisdiction of the federal courts is governed by Article III of the U.S. Constitution, which "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). This is a "bedrock requirement." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976); *see also Alabama Power Co. v. U.S. Dep't of Energy*, 307 F.3d 1300, 1308 (11th Cir. 2002).

"Perhaps the most fundamental doctrine that has emerged from the case-or-controversy requirement is that of standing." *Women's Emergency Network v. Bush*, 323 F.3d 937, 943 (11th Cir. 2003); see also *Lujan v. Defenders of Wildlife, et al.*, 504 U.S. 555, 560 (1992) ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article

III"). Even in cases within Article III jurisdiction, the Supreme Court has noted the "deeply rooted commitment not to pass on questions of constitutionality unless adjudication of the constitutional issue is necessary." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11(2004) (internal quotation and citation omitted); *see also Raines v. Byrd*, 521 U.S. 811, 819-20 (1997) ("[O]ur standing inquiry must be especially rigorous when reaching the merits of a dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.").

To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must show (1) that he has suffered an "injury in fact"; (2) that there is a causal connection between the injury complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004). A "deficiency on any one of the three prongs suffices to defeat standing." *US Ecology, Inc. v. U.S. Dep't. of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

The "injury in fact" component of standing is the "[f]irst and foremost" requirement of the doctrine. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83,

103 (1998).  To qualify as an "injury in fact," an "alleged injury must be legally and judicially cognizable."  *Raines*, 521 U.S. at 819; *see also Koziara*, 392 F.3d at 1305.  "This requires, among other things, that the plaintiff have suffered 'an invasion of a legally protected interest which is . . . concrete and particularized.'"  *Raines*, 521 U.S. at 819 (quoting *Lujan*, 504 U.S. at 560).  A particularized injury is one that directly affects a plaintiff  "in a personal and individual way."  *Lujan*, 504 U.S. at 561 n.1; *accord Raines*, 521 U.S. at 819.

A plaintiff requesting declaratory relief or injunctive relief aimed at preventing future acts must demonstrate that harm resulting from such future acts is "actual or imminent, not conjectural or hypothetical . . . .  Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present effects."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation and citation omitted); *Koziara*, 392 F.3d at 1305.  "A threatened injury must be 'certainly impending' to constitute injury in fact."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal citation omitted).

B.     Plaintiff's Allegations Are Insufficient to Establish Standing

 As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing its existence.  *Steel Co. v. Citizens*, 523 U.S. at 104; *Koziara*, 392

F.3d at 1304.  At the pleadings stage, "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke . . . the exercise of the court's remedial powers."  *Renne v. Geary*, 501 U.S. 312, 315 (1991) (internal quotation and citation omitted); *see also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (on a motion to dismiss for lack of subject-matter jurisdiction, plaintiff bears the burden of proof as to jurisdiction).

In describing his alleged injury, Plaintiff claims that he "fears that if he continues to engage in the aforementioned unfettered dialogue concerning terrorists, terrorist philosophies, terrorist methodologies, terrorist targets and the American responses thereto he has already become or will become a target" of this program.  Complaint ¶¶ 49-50.  He states, therefore, that he has "been forced to refrain from communicating freely and candidly in his international communications about topics that are likely to trigger electronic monitoring."  *Id*. ¶ 51.

Plaintiff's claim, however, is foreclosed by *Laird v. Tatum*, 408 U.S. 1 (1972).  In *Laird*, the Supreme Court held that a group of plaintiffs lacked standing to challenge an Army surveillance program designed to gather information about potential domestic civil disturbances.  The Court rejected the plaintiffs' primary claim that existence of the surveillance program had a chilling

effect on the exercise of their First Amendment rights, holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" 408 U.S. at 13-14 (quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)).  The Court noted that in certain cases constitutional violations had been found to arise from the chilling effect of governmental action, but only where such action "was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." *Laird*, 408 U.S. at 11.  In the absence of "actual present or immediately threatened injury resulting from unlawful governmental action," *id*. at 15, the Court refused to grant the plaintiffs what they effectively would have obtained in pursuing the litigation: "a broad-scale investigation, conducted by themselves as private parties armed with the subpoena power of a federal district court and the power of cross-examination, to probe the Army's intelligence-gathering activities," with the district court ultimately determining, in an advisory fashion, the appropriateness of those activities. *Id*. at 14.

Since *Laird*, other courts have held that the plaintiffs lack standing to

10

challenge intelligence-gathering efforts where the primary harm alleged was a chilling effect.  In *Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982), a number of individuals and organizations alleged that they were subject to unlawful surveillance by the NSA, the Central Intelligence Agency, and other agencies due to their opposition to the Vietnam War.  The plaintiffs argued, *inter alia*, that Executive Orders authorizing foreign intelligence surveillance rendered them "likely targets of surveillance," because they were "engaged in political activities . . . in opposition to current United States foreign policies" and were "in contact with foreign organizations and individuals."  *Id*. at 1002 n. 89.  The plaintiffs further alleged that they were "deterred" by the challenged Executive Orders from "continuing such lawful activity."  *Id*.  The Court rejected this claim of chilling effect as a basis for injury, holding that the case was "squarely controlled" by *Laird*.  690 F.2d at 1002-03.

A similar challenge was rejected in *United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984), in which the plaintiffs alleged the chilling of constitutionally protected activities due to the fear that such activities would cause them to be targeted for surveillance.  *Id.* at 1377.  As in *Halkin*, the court held that *Laird* precluded as the basis for standing a chilling effect produced by the fear of being subjected to illegal surveillance and the deference of conducting

11

constitutionally protected activities. *Id*. at 1378. The court noted that all of the Supreme Court cases employing the concept of a chilling effect "involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself." *Id*. The court reached this result even though the plaintiffs claimed that they were currently and previously subjected to unlawful surveillance, that they were in immediate danger of being subject to surveillance, and that their activities (which involved "considerable foreign travel and contact with foreigners") made them particularly susceptible to such surveillance. *Id*. at 1377, 1380. As the court held, the fact that the plaintiffs might be at greater risk of surveillance than the public at large fell "far short" of the genuine threat required to support standing. *Id*. at 1380.

Similarly here, Plaintiff's claim of subjective fear of surveillance falls far short of the injury necessary to establish constitutional standing. His claim of injury is even more speculative than the alleged injuries rejected in *Laird*, *Halkin*, and *United Presbyterian*, and his complaint utterly fails to demonstrate the required harm necessary to establish standing, *i.e.*, "actual present or immediately threatened injury resulting from unlawful government action." *Laird*, 408 U.S. at 11.

Significantly, Plaintiff's claim of chill is patently unreasonable because it

covers a range of communications and activities that are well outside of the alleged scope of the TSP upon which his complaint is based. Plaintiff alleges that the NSA is authorized to intercept international communications into and out of the United States where one party to the communication is reasonably believed to be a member or affiliate of al Qaeda. *See* Complaint ¶¶ 17-22. Plaintiff's alleged fear of surveillance, however, is not limited to such communications; indeed, plaintiff does not even allege that he is in contact with members or affiliates of al Qaeda. Rather, his alleged fear is based on his claim that he has developed relationships with foreign individuals who reside inside and outside the United States, including individuals of middle-eastern descent or who live in the Middle East and that he has had numerous conversations with these individuals involving terrorist-related activities and opinions. *See* Complaint ¶¶ 42-47. As the Supreme Court held in *Laird*, an actionable chilling effect cannot arise "merely from the individual's knowledge that a governmental agency was engaged in certain activities."[3] 408 U.S. at 11. Here, the only facts Plaintiff alleges to suggest that he

---

[3] Rather, as noted, an individual must *actually* be subject to government action that is "regulatory, proscriptive, or compulsory," *Laird*, 408 U.S. at 11, and must suffer some "concrete harm (past or immediately threatened) apart from the 'chill' itself," *United Presbyterian*, 738 F.2d at 1378. Thus, as noted in *Laird*, the Supreme Court found claims involving chilling effects justiciable in cases where a plaintiff was actually denied admission to the bar for refusing to answer a question about her membership in the Communist Party, *see Baird v. State of Arizona*, 401 U.S. 1 (1971), was actually discharged from state employment due to political acts or

(continued...)

might be subject to TSP monitoring are the nature of the people to whom he communicates and the topics of his conversations. *See* Complaint ¶¶ 42-47. This type of speculative fear is plainly insufficient to establish standing on the face of the Complaint. *See Pittman v. Cole,* 267 F.3d 1269, 1284 (11th Cir. 2001) (recognizing that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm") (quoting *Laird*, 408 U.S. at 13-14).

In sum, under *Laird*, *Halkin*, and *United Presbyterian*, plaintiff's speculative claim of fear of surveillance and any subsequent chilling effect fails to establish the requisite standing necessary to challenge the TSP and to seek the requested relief in his Complaint.[4]  His complaint should thus be dismissed in its entirety for lack of subject matter jurisdiction.

---

[3](...continued)
associations, *see Keyishian v. Board of Regents*, 385 U.S. 589 (1967), was actually denied the delivery of mail deemed to be "communist political propaganda," *Lamont v. Postmaster General*, 381 U.S. 301, 302 (1965), and was actually required to take an oath as a condition of state employment, *see Baggett v. Bullitt*, 377 U.S. 360 (1964).

[4] Plaintiff's speculative injury fails to establish standing for all of his constitutional and statutory claims. *See, e.g., United Presbyterian Church*, 738 F.2d at 1377-81 (dismissed constitutional and statutory claims for lack of standing, including claim that Executive Order violated the principle of separation of powers); *Halkin*, 690 F.2d at 1001-02 (dismissed claims for declaratory and injunctive relief relating to foreign intelligence activity under the First and Fourth Amendment for lack of standing).

14

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID E. NAHMIAS
United States Attorney

CARL J. NICHOLS
Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel

 s/ *Renée S. Orleans*
RENÉE S. ORLEANS
ANDREW H. TANNENBAUM
Trial Attorneys
U.S. Department of Justice, Civil Division
P.O. Box 883
20 Massachusetts Avenue, NW
Washington, DC 20044
(202) 514-4504/514-4263 (tel)
(202) 616-8202 (fax)
renee.orleans@usdoj.gov
andrew.tannenbaum@usdoj.gov

DATED: July 18, 2006                    Counsel for Defendants