1   MICHAEL F. HERTZ
    Deputy Assistant Attorney General
2   JOSEPH H. HUNT
    Director, Federal Programs Branch
3   VINCENT M. GARVEY
    Deputy Branch Director
4   PAUL E. AHERN
    Trial Attorney
5   U.S. Department of Justice
    Civil Division, Federal Programs Branch
6   20 Massachusetts Avenue, N.W.
    Washington, DC  20001
7   Tel: (202) 305-0633
    Fax: (202) 616-8470
8   paul.ahern@usdoj.gov

9   *Attorneys for the Government Defendants*

10

11

12                  **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                   **SAN FRANCISCO DIVISION**

15

16                                              )   **No. M:06-cv-01791-VRW**
17   IN RE NATIONAL SECURITY AGENCY            )
     TELECOMMUNICATIONS RECORDS                )   **EXHIBIT 4 TO SUPPLEMENTAL**
18   LITIGATION                                )   **MEMORANDUM  IN SUPPORT OF**
                                               )   **DEFENDANTS' MOTION TO**
19   _____         )   **DISMISS**
                                               )
20   This Document Relates Solely To:          )   **PLAINTIFF'S RESPONSE TO**
                                               )   **MOTION TO DISMISS**
21   *Guzzi v. Obama et al.*                   )
     (Case No. 06-cv-06225-VRW)                )
22   _____         )   Chief Judge Vaughn R. Walker

23

24

25

26

27

28

**Exhibit 4 to Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.*, Case No. 06-cv-06225-VRW (MDL 06-cv-1791-VRW)

ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 1 4 2006

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

MARK E. GUZZI,         :
       :
       Plaintiff        :
       :
       :
       v.        :     Civil Action No. 06-136 (JEC)
       :
PRESIDENT GEORGE W. BUSH,        :
LTG KEITH B. ALEXANDER,        :
NATIONAL SECURITY AGENCY        :
       :
       Defendants        :

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSTION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants have requested that Plaintiff's complaint in the above-captioned matter be dismissed for lack of subject matter jurisdiction. Defendants assert Plaintiff's factual allegations are insufficient to establish that Plaintiff has standing to challenge the illegal and unconstitutional warrantless electronic surveillance program authorized by Defendant Bush following the terrorist attacks of September 11, 2001.

Defendants, in support of their motion, rely exclusively on the proposition that Plaintiff's allegations concerning his injuries establish nothing more than a "subjective chill" to his First Amendment rights to freedom of speech and association. From this singular proposition, Defendants conclude that Supreme

Court precedent forecloses Plaintiff's claims. This singular reliance is fatal to the success of Defendants motion.

Defendants' exclusive reliance on the "subjective chill" proposition is fatal to the success of their motion for three reasons. First, Plaintiff has alleged sufficient facts to establish standing. Second, the Supreme Court precedent that Defendants rely upon is distinguishable from the matter currently before the Court. Such precedent therefore does not preclude Plaintiff's claims as Defendants claim. Third, Defendants' fail to address whether Plaintiff has standing regarding the injuries to Plaintiff's liberty interests that are inherent in Plaintiff's claim that Defendant Bush has violated the separation of powers doctrine. It is for these reasons that Defendants' motion to dismiss must be denied.

## ARGUMENT

I.   PLAINTIFF HAS STANDING TO BRING HIS CLAIM FOR
     DECLARATORY AND INJUCTIVE RELIEF.

A.   Requisites of Standing.

Pursuant to Article III of the U.S. Constitution the judicial power of the federal courts is limited to adjudicating actual cases and controversies. *See* U.S. Const. Art III, §2, cl. 1. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, ___ U.S. ___, 126 S.Ct. 1854, 1860-61 (2006). As the Supreme Court has explained, "'no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional

limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).

An essential and unchanging part of the case-or-controversy requirement of Article III is that a litigant must have "standing" to invoke the authority of a federal court. *See DaimlerChrysler Corp.*, 126 S.Ct. at 1861 *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to satisfy the requirement of standing a plaintiff must allege (1) that he has suffered an injury in fact; (2) that the injury complained of is fairly traceable to the defendant's allegedly unlawful conduct; and (3) that the injury is likely, as opposed to merely speculative, to be redressed by a favorable decision.[1] *Lugan*, 540 U.S. at 560-61; *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004)

The alleged personal injury must be "legally and judicially cognizable." *Raines*, 521 U.S. at 819. "This requires, among other things, that the plaintiff has suffered 'an invasion of a legally protected interest which is . . . concrete and particularized.'" *Id.* at 819 (quoting *Lujan*, 540 U.S. at 560-561). Suffering a particularized injury means that "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 540 U.S. at 560-561 and n.1.

---

[1] Plaintiff notes that Defendants' motion to dismiss rests solely on the argument that Plaintiff's factual allegations are insufficient to establish an injury in fact under the tripartite standing analysis as that factor relates to Plaintiff's First Amendment claim. Plaintiff therefore assumes that Defendants concede that Plaintiff's factual allegations are sufficient to satisfy the second and third factors of the standing analysis as they relate to his First Amendment claim (that the injury to Plaintiff's First Amendment rights is fairly traceable to Defendants' allegedly unlawful conduct; and that the injury is likely, as opposed to merely speculative, to be redressed by a favorable decision).

3

In cases where declaratory and injunctive relief is sought to prevent future injury, plaintiffs must establish that the harm resulting from such future acts is "actual or imminent, not conjectural or hypothetical . . . . Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by an continuing, present effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation and citation omitted); *Koziara*, 392 F.3d at 1305.

B.    Plaintiff has Alleged He has Suffered a Legally and Judicially Cognizable Violation of His First Amendment Rights.[2]

    1.    Plaintiff has alleged sufficient facts to establish that his First Amendment rights to freedom of speech and association have been and continue to be unconstitutionally chilled.

It is beyond dispute that constitutional violations may arise from the deterrent or chilling effect of governmental action that falls short of direct prohibitions against the exercise of First Amendment rights. *See Baird v. State Bar of Arizona*, 401 U.S. 1, (1971); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967); *Lamont v. Postmaster General*, 381 U.S. 301 (1965); *Baggett v. Bullit*, 377 U.S. 360 (1964). However, the foregoing decisions have not undermined the "established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive . . . action he must show that he has

---

[2] For purposes of ruling on a motion to dismiss for want of standing the trial court must accept as true all material allegations of the complaint. *See MWAA v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264 (1991). *See also Made in USA Foundation v. United States*, 242 F.3d 1300, 1307 (11th Cir. 2001) (adding that courts must construe the complaint in favor of the complaining party). Additionally, this portion of the brief addresses only whether Plaintiff may assert a claim of an unconstitutional chilling of his First Amendment rights in federal court. It expresses no view on whether such an argument would be successful.

sustained or *is immediately in danger* of sustaining a direct injury as the result of that action." *See Laird v. Tatum*, 408 U.S. 1, 13 (1972); quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (emphasis added).  Plaintiff has met this burden.

Significantly, Plaintiff does not rest his claim of an unconstitutional chill on his First Amendment rights solely on the mere existence of the warrantless electronic surveillance authorized by Defendant Bush.  Rather, Plaintiff sets forth a comprehensive set of facts that establish he has likely been and is likely to be a continuing target of the warrantless electronic surveillance program authorized by Defendant Bush, and it is that likelihood that has forced Plaintiff to cease engaging in international communications relating to terrorist related topics with persons of middle-eastern descent and those living in the middle-east.

Plaintiff alleges that he fears that his international telephone, cell phone, email, and internet based conversations have been subjected to and will continue to be subjected to the warrantless electronic surveillance program authorized by Defendant Bush. *See Complaint* ¶50.[3]  In support of the foregoing contention Plaintiff averred the following facts:

1.    Defendant Bush issued an Executive Order authorizing the warrantless electronic surveillance of international communications

---

[3] Plaintiff, nor any other person, can aver, in good faith, that their conversations were, in fact, subject to warrantless electronic surveillance given the highly classified nature of the program. To Plaintiff's knowledge, no one that has actually been subjected to warrantless electronic surveillance under the authority of the Executive Order is or can become aware of such surveillance. Under such circumstances, it should suffice, for standing purposes, that Plaintiff has alleged a set of objectively reasonable facts, beyond the mere existence of the program, that provide the basis for his objectively reasonable fear and the resultant unconstitutional chill on his First Amendment rights. It is at this point that the burden of proof on the standing issue should shift to Defendants to affirmatively establish that Plaintiff has not, in fact, been subjected warrantless electronic surveillance under the program. To hold otherwise would render the warrantless electronic surveillance program and the significant constitutional issues it raises immune from judicial scrutiny.

of American citizens shortly after the terrorist attacks of September 11, 2001, *Complaint* ¶17;

2.  Defendant Bush's statements concerning the limited scope of the program are wholly unverifiable by any independent and objective person or entity outside of the executive branch of government, *Complaint* ¶23;

3.  Defendant Bush has acknowledged that the program does not comply with the procedural safeguards of the Foreign Intelligence Surveillance Act, 50 U.S.C. §1801, *et seq.* (FISA) that were specifically designed to protect Plaintiff's First and Fourth Amendment rights, *Complaint* ¶¶19, 32;

4.  The content of Plaintiff's international communications likely triggered surveillance of those conversations under the program, *Complaint* ¶49;

5.  The fact that Plaintiff was communicating with people of middle-eastern descent or that were living in the middle-east likely triggered surveillance of Plaintiff's international communications, *Complaint* ¶49;

6.  The program has and continues to be implemented by Defendant Alexander and the NSA, *See Complaint* ¶¶17, 18;

7.  Since learning of the existence of the warrantless electronic monitoring program Plaintiff has, in fact, been forced to choose between continuing to engage in his First Amendment rights to freedom of speech and association and risk an unconstitutional infringement of his Fourth Amendment right to privacy or of foregoing his First Amendment rights in order to avoid a violation of his Fourth Amendment rights, *Complaint* ¶49; and

8.  Plaintiff has been forced to chose to refrain from communicating freely and candidly in his international communications in order to avoid further infringements of his Fourth Amendment right to privacy in violation of his First Amendment rights.. *Complaint* ¶51.

The foregoing set of facts clearly and objectively establish that Plaintiff has

likely sustained and/or is immediately in danger of sustaining a direct injury if he

exercises his First Amendment rights as the result of Defendants' actions. Due to Defendants' actions Plaintiff was presented with the Hobson's choice of continuing to engage in his First Amendment rights to freedom of speech and association in his international communications and risk infringements to his Fourth Amendment rights to privacy and to be free from unreasonable searches or to refrain from engaging in his First Amendment rights of freedom of speech and association to avoid infringements of his Fourth Amendment rights. In choosing to forego his First Amendment rights out of an objective and reasonable fear that such conversations will unlawfully and unconstitutionally be monitored by government agents Plaintiff has set forth a legally and judicially cognizable injury. Plaintiff has therefore met his burden regarding the injury component of the standing analysis.

  2.  Contrary to Defendants' assertions, the *Laird* decision does not foreclose Plaintiff's claims.

Defendants' reliance on the Supreme Court's decision in *Laird* to support the proposition that Plaintiff lacks standing is misplaced. Upon careful review of the *Laird* decision, it becomes readily apparent that the decision does not foreclose Plaintiff's claim and that Defendants have interpreted *Laird* much to broadly.

For Defendants argument to prevail the *Laird* decision must be read as setting forth a rule for determining whether an action is justiciable or not. Defendants read the *Laird* decision in this manner by pointing out that the *Laird* Court noted that in certain cases constitutional violations had been found to arise

from the chilling effect of governmental action, but only where "such action was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." *Laird* 408 U.S. at 11.[4] This is not the case. Rather, the Court "was merely distinguishing earlier cases, not setting out a rule for determining whether an action was justiciable." *Socialist Workers Party v. Attorney General*, 419 U.S. 1314, 1318 (1974).[5] Therefore, Plaintiff need not, as Defendants claim, allege facts that establish that the governmental action complained of was regulatory, proscriptive, or compulsory in nature, or that Plaintiff was either presently or prospectively subject to such the regulations, proscriptions, or compulsions.

The issue decided in *Laird* was a very narrow one. The issue was limited to whether the plaintiffs failed "to present a justiciable controversy in complaining of a chilling effect on the exercise of their First Amendment rights where such effect [was] allegedly caused ***not by any specific action of the Army against them, [but] only [by] the existence and operation of the intelligence gathering and distributing system***, which [was] confined to the Army and related civilian investigative agencies." *Laird*, 408 U.S. at 3 (internal quotations and citation omitted) (emphasis added). The Court recognized the narrowness of its holding

---

[4] The cases cited in *Laird* included *Baird v. State Bar of Arizona*, 401 U.S.1 (1971); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967); *Lamont v. Postmaster General*, 381 U.S. 301 (1965); and *Baggett v. Bullitt*, 377 U.S. 360 (1964).

when it stated "there is nothing in our Nation's history or in this Court's decided cases, including our holding today, that can properly be seen as giving any indication that actual or threatened injury by reason of *unlawful* activities of the [government] would go unnoticed or unremedied." *Id.* at 16 (emphasis added).

As previously stated, Plaintiff does not rest his claims on the mere existence of the warrantless electronic surveillance program as the cause of the chilling effect on his First Amendment rights. Rather, Plaintiff affirmatively alleges that specific actions are likely to have been taken against him and are likely to continue if he continues to engage in frank and candid discussions concerning terrorists, terrorist philosophies, terrorist methodologies, terrorist targets, and American responses thereto. *Complaint* ¶50.[6] On this basis alone, the holding in *Laird* has no bearing on whether Plaintiff has standing in this case.

---

[5] This case was before Justice Marshall on an application for stay. No other justices participated in this decision.

[6] Plaintiff notes that Defendants attempt to reformulate Plaintiff's claim as being identical to the one asserted in *Laird*, i.e. based on the mere existence of the surveillance program. Defendants attempt this by asserting that Plaintiff has acknowledged that the program limits the warrantless electronic surveillance to international communications into and out of the United States where one party to the communication is reasonably believed to be a member of or affiliated with al Qaeda and that Plaintiff's fear of having been subjected to surveillance in the past and in the future is not limited to such communications. This attempt must be disregarded. While Plaintiff acknowledges *Defendant Bush's* statements regarding the limits on the surveillance to be undertaken, Plaintiff has never asserted that the actual surveillance that is undertaken pursuant to the program is so limited. Quite the contrary. As noted above, Plaintiff has alleged that he fears his conversations have been subject to surveillance under the Executive Order regardless of Defendant Bush's statements concerning the alleged limits of the program. Moreover, Plaintiff has every reason to doubt the veracity of Defendant Bush's statements given the fact that Defendant Bush lied to the American people on the issue of warrantless wiretaps. Defendant Bush offered the following unsolicited comments concerning warrantless wiretaps nearly three years after issuing the Executive Order authorizing warrantless electronic surveillance – "Now, by the way, any time you hear the United States government talking about wiretap, it requires – a wiretap requires a court order. Nothing has changed, by the way. When we're talking about chasing down terrorists, we're talking about getting a court order before we do so." *See* President Bush: Information Sharing, Patriot Act Vital to Homeland Security (April 20, 2004), *available at* http://www.whitehouse.gov/news/releases/2004/04/20040420-2.html.

However, many more factors distinguish Plaintiff's claim from that asserted in *Laird* further rendering the holding in *Laird* of no consequence to the issue of Plaintiff's standing.

The most significant of those distinguishing facts is that the plaintiffs in *Laird* presented no evidence of illegal or unlawful surveillance activities. *Laird*, 408 U.S. at 9. The Court was not presented with facts of any clandestine intrusion perpetrated by government agents. *Id.* Of significance to the Court, the surveillance complained of amounted to "nothing more than what a good newspaper reporter would be able to undertake and gather by attending public meetings and clipping articles from publications available on any newsstand." *Id.* That is hardly the case in the present action.

The surveillance at issue in this case goes well beyond what a good newspaper reporter would be able to undertake. It involves the surreptitious and covert electronic monitoring of private conversations. The surveillance at issue here requires sophisticated and expensive electronic monitoring equipment that enables government agents to secretly intrude upon *private* conversations that take place on *private* telephones, cell phones, and computers. The government agents are not invited to participate in the conversations nor are they invited to listen in on the conversations.

Also of significance to the Court in rendering the *Laird* decision was the fact that the legality and constitutionality of the statute that authorized the type of surveillance undertaken was not an issue in the case. *Id.* at 6. The Court found

10

that the statute specifically authorizing the complained of use of the federal armed forces was constitutionally permitted pursuant to Art. IV, §4 of the Constitution, which provides that "the United States . . . shall protect each of [the individual States] . . . on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic violence." The opposite is true here. Plaintiff has affirmatively alleged that Defendant Bush exceeded his constitutional powers and violated the doctrine of separation of powers in issuing the Executive Order that authorized the warrantless electronic surveillance program. *Complaint* ¶55. Plaintiff has also affirmatively alleged that the warrantless electronic surveillance program violates Foreign Intelligence Surveillance Act, 50 U.S.C. §1801, *et seq.*, which was specifically enacted to protect Plaintiff's First and Fourth Amendment rights with regard to electronic surveillance that is undertaken for national security purposes. *Complaint* ¶32.

Another distinguishing characteristic between the *Laird* decision and the case at bar is that the Court in *Laird* noted that the plaintiffs in that case "left somewhat unclear the precise connection between the mere existence of the challenged system and their own alleged chill' and that the plaintiffs "have also cast considerable doubt on whether they themselves are in fact suffering from any such chill." *Id.* at 15. In this case, Plaintiff has left no doubt that he is suffering from an unconstitutional chill of his First Amendment freedoms. Plaintiff has affirmatively alleged that he no longer engages in international communications concerning terrorist related topics due to the likelihood that his communications

would be surreptitiously and covertly monitored as a result of the warrantless electronic surveillance program. *Complaint* ¶51.

The Court also noted in *Laird* that "what [plaintiffs] appear to be seeking is a broad-scale investigation, conducted by themselves as private parties armed with the subpoena power of a federal district court and the power of cross-examination, to probe into the [government's] intelligence gathering activities, with the district court determining at the conclusion of that investigation the extent to which those activities may or may not be appropriate to the [government's] mission." *Laird*, 408 U.S. at 14. In contrast, Plaintiff is not seeking any type of investigation or probe into the intelligence gathering activities at issue here or to have this Court render an opinion regarding the appropriateness of the government's mission. Plaintiff has forthrightly asserted that "[t]his action does not concern nor does it question the ends sought to be achieved by President Bush in his pursuit of the global war on terror. For the ends are unquestionably valid and fall well within the purview of the Office of the President." *Complaint* at Introduction.

More akin to the standing issue to be decided in this case is the decision that was rendered in *Socialist Workers Party v. Attorney General*, supra. In that case, Socialist Workers Party ("SWP"), the YSA (SWP's youth organization), and several individuals, sought an injunction against various government officials to prevent those officials from monitoring the political activities of the SWP and the YSA. *Socialist Workers Party*, 419 U.S. at 1315. The injunction was sought because the plaintiffs learned that the FBI planned to monitor the YSA national

convention and to use confidential informants to gain information about convention activities. *Id.* The plaintiffs asserted the planned surveillance and other forms of monitoring would chill free participation and debate and may have even discouraged some individuals from attending the convention all together in violation of their First Amendment rights. *Id.* at 1316.

The Government challenged plaintiffs' standing relying on *Laird* contending "that under *Laird*, a 'chilling effect' will not give rise to a justiciable controversy unless the challenged exercise of governmental power is 'regulatory, proscriptive, or compulsory in nature,' and the complainant is either presently or prospectively subject to the regulations, proscriptions, or compulsions that he is challenging. *Id.* at 1318. As stated previously, Justice Marshal rejected this contention and concluded that the government was reading *Laird* to broadly. *Socialist Workers Party*, 419 U.S. at 1318. In deciding that the plaintiffs had standing Justice Marshall noted SWP's and YSA's allegations were much more specific than those alleged in *Laird* and went on to conclude that "the applicants have complained that the challenged investigative activity *will have the concrete effects* of dissuading some YSA delegates from participating actively in the convention." *Id.* at 1319 (emphasis added). Justice Marshall also stated "[w]hether the claimed 'chill' is substantial or not is still subject to question, but that is a matter to be reached on the merits, not as a threshold jurisdictional question. *Id.* Most importantly, Justice Marshall held "[t]he specificity of the

injury claimed by the applicants is sufficient, under *Laird*, to satisfy the requirements of Art. III. *Id.*

Due to the plethora of distinguishing characteristics between the facts alleged in this case and those at issue in *Laird*, the holding in *Laird* does not foreclose Plaintiff's claim in this matter as Defendants' claim. Plaintiff's claim does not rest on the mere existence of the warrantless electronic surveillance program as the claim in *Laird* relied. Plaintiff's claim rests on a comprehensive set of factual allegations that establish that Plaintiff has likely been and is likely to be subject to warrantless electronic surveillance under the program authorized by President Bush and administered by Defendant Alexander and the NSA. Such allegations sufficiently establish that Plaintiff has and continues to suffer from a specified, legally and judicially cognizable injury that affects Plaintiff in a personal and individual way muck like the alleged injury that led Justice Marshall to grant standing to the plaintiffs in *Socialist Workers Party*, supra . Plaintiff has therefore satisfied the case or controversy requirements of Art. III.

      3.    Defendants' reliance on two decisions out of the United States District Court of Appeals for the District of Columbia Circuit to support their assertion that Plaintiff lacks standing is misplaced.

Defendants cite to *Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982) and *United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) in further support of their contention that Plaintiff lacks standing. Once again, Defendants reliance is misplaced.

Defendants' reliance on the *Helms* decision is misplaced because Defendants have conveniently failed to direct this Court's attention to the true basis upon which the *Helms* court decided to deny standing to the plaintiffs in that case.

Critical to the decision in *Helms* to deny plaintiffs standing for injunctive relief and declaratory relief was the fact that the surveillance program that was challenged was no longer in operation and that any current surveillance activities that were being undertaken by the government pursuant to Executive Orders had eliminated any likelihood of future surveillance of the types that plaintiffs alleged had violated their rights.[7]  *Helms*, 690 F.2d at 988.  Due to these critical facts it was noted that "it is apparent that appellants here urge nothing more than a 'generalized grievance' against the intelligence gathering methods sanctioned by the President."  *Id.* at 1001-1002.  It was further noted that "[t]here is no allegation that *any* intelligence has been or is about to be gathered via the means allegedly permitted under the current [Executive Order], much less an allegation of an injury in fact of any immediacy to any appellant."  *Id.* at 1002 (emphasis in the original).  It was for this reason that the court concluded "[t]his claim is squarely controlled by *Laird v. Tatum*."  *Id.* (internal citations omitted).

---

[7] It is important to note that the court did conclude that some of the plaintiffs did have standing to challenge the defunct surveillance program based on a demonstrated injury in fact.  That decision was based on the CIA's conceding that various identified plaintiffs had been subjected to surveillance under the defunct program.  *See Helms*, 690 F.2d at 1003.

Unlike the situation in *Helms*, this case does not involve a defunct surveillance program. The warrantless electronic surveillance program authorized by Defendant Bush and administered by Defendant Alexander and the NSA is up and operational with no termination date in sight. Plaintiff therefore is continually being subjected to a chilling of his First Amendment rights due to the continued likelihood that his international communications will be subjected to warrantless electronic monitoring based on the content of his conversations and the nationalities and geographic locations of the people with whom he wishes to communicate.

Defendants next rely on the decision in *United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) to support their claim of lack of standing. Again, this reliance is misplaced. As in the *Helms* decision, the plaintiffs in *United Presbyterian* were challenging allegedly unlawful surveillance to which they had been subjected to in the past that was not the consequence of presidential action that the plaintiffs sought to challenge before the court. This led the court to conclude "[w]ithout such connection, standing to pursue the present suit does not exist." *United Presbyterian*, 738 F.2d at 1381.[8] Again, as in *Helms*, the court noted that the plaintiffs appeared to be seeking a judicial determination concerning

---

[8] The court further noted that "since many of the appellants allege unlawful activities directed against them before this executive order or either of its predecessors existed, their allegations tend if anything to undermine the notion of a causal link. One of the original purposes of issuing the executive order on this subject was to **eliminate abuses in intelligence and counterintelligence activities that had previously occurred** and that had been brought to public attention." *United Presbyterian*, 738 F.2d at 1381 (emphasis added). The opposite is true in this case. The Executive Order issued by Defendant Bush has resulted in an avoidance of the procedural safeguards that Congress had placed in FISA for the specific purpose of protecting Plaintiff's First and Fourth Amendment rights.

the legality of the entire national intelligence-gathering apparatus. *Id.* This is not what Plaintiff seeks in this case.

Like Defendants, the *United Presbyterian* court seems to have given the *Laird* decision an overly broad interpretation. Like Defendants, the Court seemed to labor under the impression that the *Laird* Court was setting forth a rule for determining whether an action is justiciable or not when the Court noted that in certain cases constitutional violations had been found to arise from the chilling effect of governmental action. This is evidenced by the court's statement that "no part of the challenged scheme imposes or even relates to any direct governmental constraint upon the plaintiffs." *United Presbyterian*, 738 F.2d at 1380. As stated previously *Laird* did not set forth a rule for determining whether an action is justiciable or not. Rather, the Court "was merely distinguishing earlier cases, not setting out a rule for determining whether an action was justiciable." *Socialist Workers Party*, 419 U.S. at 1318.

Finally, it is interesting to note that while the *United Presbyterian* court relied heavily on the *Laird* decision in rendering its own decision it failed to recognize *Laird's* admonition that "there is nothing in our Nation's history or in this Court's decided cases . . . that can properly be seen as giving any indication that actual or threatened injury by reason of unlawful activities of the [government] would go unnoticed or unremedied." *Laird*, 408 U.S. at 16.

In sum, Defendants' reliance on the *Laird*, *Halkin*, and *United Presbyterian* decisions does not support their claim that Plaintiff lacks standing to bring the instant action.  Defendants motion to dismiss should therefore be denied.

II.     PLAINTIFF HAS STANDING TO ASSERT A SEPARATION OF POWERS VIOLATION.

A.     Plaintiff Has a Constitutionally Vested Interested in Ensuring That the Doctrine of Separation of Powers is Not Violated.[9]

The Constitution is specifically designed to secure the blessings of liberty upon Plaintiff.  The Preamble to the U.S. Constitution specifically states, "We the People of the United States, in Order to . . . secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America."  It follows, *a fortiori*, that the governmental structure that is created in Articles I, II, and III of the Constitution is designed to secure the blessings of liberty upon Plaintiff.  It equally follows that any deviation from that constitutionally mandated structure necessarily deprives Plaintiff of the liberty that the Constitution was specifically designed to protect.  The Framers of the Constitution and decisions of the United States Supreme Court support the foregoing contention.

The Framers of the Constitution strongly believed that diffusing governmental power among the three branches of government was the essential element in protecting against a tyrannical regime and securing individual liberty.

---

[9] This portion of the brief addresses only whether Plaintiff may assert a separation of powers argument in federal court. It expresses no view on whether such an argument would be successful.

"The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, selfappointed, or elective, may justly be pronounced the very definition of tyranny." *Federalist No. 47* (Madison). *See also Federalist No. 51* (Madison) ("[A] due foundation for the separate and distinct exercise of the different powers of government . . . is admitted on all hands to be essential to the preservation of liberty.").

The Framers decision to incorporate the separation of powers doctrine into the Constitution was heavily dependent on the reasons put forth by the celebrated political philosopher Baron de Montesquieu, Charles-Louis Secondat of the need for a separation of powers between governmental branches. Montesquieu, "the oracle who is always consulted and cited on the subject," states that "[w]hen the legislative and executive powers are united in the same person or body there can be no liberty, because apprehensions may arise lest THE SAME monarch or senate should ENACT tyrannical laws to EXECUTE them in a tyrannical manner." *See Federalist No. 47* (Madison) *quoting* Montesquieu.

Following in the footsteps of the Framers of the Constitution, the Supreme Court has consistently "given voice to, and has reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Mistretta v. United States*, 488 U.S. 361, 380 (1999). *See also Clinton v. City of New York*, 524 U.S. 417, 450 (1998) ("The conception of liberty embraced by the Framers was not so confined [to the 5[th] and 14[th]

Amendments].  They used the principles of separation of powers and federalism to secure liberty in the fundamental political sense of the term, quite in addition to the idea of freedom from intrusive governmental acts."); *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (noting that the purpose of separation of powers was to "diffuse power the better to secure liberty) (Jackson, J., concurring; *Reid v. Covert*, 354 U.S. 1, 40 (1957) ("Ours is a government of divided authority on the assumption that in division there is not only strength but freedom from tyranny.").

A violation of the doctrine of separation of powers is no less significant to the liberty interests of Plaintiff where the challenged executive conduct is undertaken for purposes "dictated by concern for the Nation's well-being, in the assured conviction that he acted to avert danger." *Youngstown Sheet & Tube Co.*, 343 U.S. at 614 (Frankfurter, J., concurring).  In fact, it is when such purposes are pursued in the name of national security that Plaintiff's liberty interests are in greatest peril.  Our Founding Fathers "knew what emergencies were, knew the pressures they engender for authoritative action, knew, too, how they afford a ready pretext for usurption.  *Id.* at 650 (Jackson, J., concurring).

The fact that Plaintiff may not have been an actual target of warrantless electronic surveillance pursuant to the Executive Order should be of no consequence in resolving the standing issue.  Based on the writings of our Founding Fathers, the language of the Constitution itself, and Supreme Court precedent, the threat to Plaintiff's liberty interests due to a violation of the

separation of powers doctrine is real, immediate, and of a continuing nature

regardless of any actual warrantless wiretapping of his international

communications.  Plaintiff has therefore presented an actual case and controversy

worthy of invoking the authority of this Court.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) should be denied.


Respectfully submitted,


Mark E. Guzzi
*Proceeding Pro Se*
271 Providence Oaks Circle
Alpharetta, Georgia 30004
(770) 754-4959

Dated:  August 14, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

MARK E. GUZZI,                                          :
                                                       :
              Plaintiff                        :
                                                       :
                                                       :
    v.                                               :        Civil Action No. 106-CV-0136 JEC
                                                       :
                                                       :
PRESIDENT GEORGE W. BUSH,                               :
LTG KEITH B. ALEXANDER,                                 :
NATIONAL SECURITY AGENCY                                :
                                                       :
           Defendants                        :

### CERTIFICATE OF SERVICE

I hereby certify that I have this day served the attached Memorandum of

Law in Opposition to Defendants' Motion to Dismiss, prior to filing the same, by

depositing a copy thereof, postage prepaid, in the United States Mail, properly

addressed to the following:

Andrew Tannenbaum
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

Respectfully submitted,

Mark E. Guzzi, Plaintiff
271 Providence Oaks Circle
Alpharetta, Georgia 30004
(770) 754-4959

Dated: August 14, 2006