MICHAEL F. HERTZ
Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
PAUL E. AHERN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: (202) 305-0633
Fax: (202) 616-8470
paul.ahern@usdoj.gov

*Attorneys for the Government Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | No. M:06-cv-01791-VRW  **EXHIBIT 5 TO SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| This Document Relates Solely To:<br>*Guzzi v. Obama et al.*<br>(Case No. 06-cv-06225-VRW) | **DEFENDANTS' REPLY TO MOTION TO DISMISS**<br><br>Chief Judge Vaughn R. Walker |

**Exhibit 5 to Supplemental Memorandum in Support of Defendants' Motion to Dismiss**
*Guzzi v. Obama et al.*, **Case No. 06-cv-06225-VRW (MDL 06-cv-1791-VRW)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| MARK E. GUZZI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-136 (JEC) |
| v. | ) | |
| | ) | |
| PRESIDENT GEORGE W. BUSH, | ) | |
| LTG KEITH B. ALEXANDER, | ) | |
| NATIONAL SECURITY AGENCY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS

## INTRODUCTION

Defendants' Memorandum in Support of the Motion to Dismiss ("Defs.' Mem.) explains that this Court lacks jurisdiction over this matter because Plaintiff has failed to meet his burden of establishing standing to bring his constitutional and statutory challenges to the Terrorist Surveillance Program ("TSP"). That program authorizes the National Security Agency ("NSA") to intercept certain international communications into and out of the United States of persons linked to al Qaeda or its affiliates. Plaintiff's allegations that he fears he is likely to be subjected to this surveillance because he communicates with individuals of middle-eastern descent or who live in the Middle East and because he discusses

terrorism-related topics are plainly insufficient to establish standing to challenge this surveillance program under *Laird v. Tatum*, 408 U.S. 1 (1972).

In response, Plaintiff fails to distinguish his allegations from *Laird* or other relevant case law. Contrary to Plaintiff's claim, *Laird* clearly requires that a plaintiff challenging an alleged surveillance program must assert an actual present or immediately threatened injury that results from unlawful government action. Plaintiff's allegations are based on pure conjecture and cannot form the basis of standing to pursue any of his claims. Thus, his Complaint should be dismissed for lack of jurisdiction.

## ARGUMENT

1.  In his response, Plaintiff first recognizes, as he must, the required elements to establish standing. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plts. Mem.") at 2-5. Citing Supreme Court case law, Plaintiff notes that standing is "an essential and unchanging part of the case-or controversy requirement of Article III"; that "the alleged personal injury must be 'legally and judicially cognizable'"; and that plaintiff must show a harm to "a legally protected interest" that is "concrete and particularized." *Id*. at 2-3. And Plaintiff correctly states that where, as here, declaratory and injunctive relief is sought to prevent future injury, he must show harm that is "actual or imminent,

not conjectural or hypothetical." *Id*. at 4.

Plaintiff's claim, however, that he has met these legal requirements to establish standing is incorrect. He claims that the mere existence of the program acknowledged by the President, his practice of communicating with people of middle-eastern descent or who live in the Middle East, and his alleged forced choice between continuing these communications or likely being surveilled all support a finding that he has standing. *Id*. at 5-6. They do not. While Plaintiff articulates words relating to standing, *see id*. at 5 (claims he has "objectively" established that he has "likely sustained and/or is immediately in danger of sustaining a direct injury"); *id*. at 7 (claims he is forgoing First Amendment rights "out of an objective and reasonable fear" that conversations will be monitored and that he has set forth a "legally and judicially cognizable injury"), his speculative and subjective belief that he may be subjected to the TSP is insufficient as a matter of law to establish standing.[1]

---

[1] Contrary to Plaintiff's assertion, *see* Plts. Mem. at 3, n. 1, Defendants do not concede that Plaintiff has met the other two requirements of standing, *i.e.*, that there is a causal connection between the injury complained of, such that the injury is fairly traceable to the challenged action of the defendant, and that the injury is likely, as opposed to merely speculative that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As Defendants explained, the "injury in fact" component of standing is the "[f]irst and foremost" requirement of standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Plaintiff's failure to meet this requirement dooms the other two.

2.    Plaintiff asserts that *Laird v. Tatum*, 408 U.S. 1 (1972), is a narrow holding, and he spends many pages attempting to distinguish it from his case. *See* Plts. Mem, at 7-14. His efforts must fail. The holding in *Laird* is clear: a plaintiff challenging an alleged surveillance program must assert an "actual present or immediately threatened injury resulting from unlawful government action." 408 U.S. at 15; *see also id.* ("[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'") (quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75 (1947)). Plaintiff claims that he has asserted more than the mere existence of the program and thus *Laird* is inapplicable. However, all Plaintiff offers is his subjective belief that he is being surveilled or may be surveilled under the TSP simply because he communicates with persons of middle-eastern descent or discusses issues relating to terrorism. He presents no allegation that he even fits within the described parameters of the TSP, *i.e.*, that he communicates oversees with members of al Qaeda or its affiliates.[2]

---

[2] Indeed, Plaintiff concedes that he does not know whether he has been subjected to surveillance. He simply claims that it is sufficient for him to allege "a set of objectively reasonable facts, beyond the mere existence of the program, that provide the basis for his objectively reasonable fear and the resultant unconstitutional chill on his First Amendment rights." Plts. Mem. at 5, n. 3. His allegations, however, are not objectively reasonable; simply stating that they are, does not transform subjective beliefs into objective ones. And Plaintiff fails

Under *Laird*, his allegations are legally insufficient.

Plaintiff's other attempts to distinguish *Laird* are irrelevant to the determination of standing. For example, Plaintiff claims that *Laird* differs from his case because *Laird* did not involve allegations of unlawful surveillance, as Plaintiff claims here. *See* Plts. Mem. at 10. This argument was rejected in *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1379 (D.C. Cir. 1984):

> That distinction might be relevant to the merits question of whether the harm consisting of the fear is remediable. But it has nothing to do with the standing question of whether the fear *constitutes* cognizable harm. On the latter point, [*Laird v.*] *Tatum* is clear and categorical: '[a]llegations of a subjective 'chill' are not . . . adequate."

*United Presbyterian Church*, 738 F.2d at 1379 (quoting *Laird*, 408 U.S. at 13-14). Similarly here, Plaintiff's claim that he is alleging unlawful surveillance is irrelevant to whether he has standing to challenge the TSP. The same is true for Plaintiff's claim that the statute at issue in *Laird* was not being challenged as unconstitutional or illegal. *See* Plts. Mem. at 10-11. The plaintiffs in *Laird* were challenging the program's reach as unconstitutional, but, in any event, this issue goes to the merits of the lawsuit, not to standing. Nor is it relevant that Plaintiff

---

to cite any authority for his claim that the burden of establishing standing shifts to Defendant "to affirmatively establish that Plaintiff has not, in fact, been subjected to warrantless electronic surveillance under the program." *Id*. The burden to establish sufficient standing always remains with Plaintiff. *Renne v. Geary*, 501 U.S. 312, 315 (1991) (at the pleading stage, "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke . . . the exercise of the court's remedial powers").

5

claims he is not seeking a broad scale investigation into the TSP, as the Court noted was being sought by the plaintiffs in *Laird*. *See* Plts. Mem. at 12. Regardless of Plaintiff's investigatory intentions, he seeks to have the TSP declared unconstitutional and in violation of the Foreign Intelligence Surveillance Act, where he plainly lacks standing to pursue such a declaration.[3]

    3.    Plaintiff's reliance on *Socialist Workers Party v. Attorney General*, 419 U.S. 1314 (1974), does not support his standing assertion.[4] As Justice Marshall found, the allegations in *Socialist Workers Party* were more concrete than those in *Laird*. In *Socialist Workers Party*, a group alleged that its

---

[3] On August 17, 2006, the district court in *ACLU v. National Security Agency*, __ F. Supp. 2d __, 2006 WL 2371463 (E.D. Mich. Aug. 17, 2006), found that the plaintiffs in that case had standing to challenge the TSP notwithstanding the holding of *Laird*. Defendants believe the Court's assessment of plaintiffs' standing in *ACLU* (as well as its ultimate determination of the merits) is clearly wrong and have appealed that decision. In any event, Plaintiff Guzzi's allegations of injury here are substantially weaker than those of the plaintiffs in *ACLU*. The court in *ACLU* found that plaintiffs had alleged sufficient injury to support their standing, notwithstanding *Laird*, because they claimed to come within the alleged scope of the TSP by speaking with terrorist suspects or terrorist organizations and, as a result, had changed their mode of communications, including by incurring travel costs. *See id*. at **12-14. This finding misapplies *Laird*, since the mere allegation of injury resulting from a *plaintiff's* own subjective reaction to the existence of a program is no different from the circumstances present in *Laird* and does not demonstrate that the alleged injuries were caused by or fairly traceable to a proscriptive regulation actually imposed on the plaintiffs by the government. Also, the mere fact that someone may more likely fall within a surveillance program based on their communications is not sufficient to establish standing. *See United Presbyterian*, 870 F.2d at 522. Nonetheless, Plaintiff Guzzi makes no comparable allegation here of communicating with terrorist suspects nor demonstrates any injury to professional responsibilities comparable to those alleged in *ACLU*.

[4] This decision was not by the majority of the Court. Rather, Justice Marshall, as Circuit Justice, was ruling on an application to stay an order by a Court of Appeals. *See* 419 U.S. 1314.

convention was to be monitored by the FBI.  They sought to enjoin these monitoring activities, including any surveillance.  *See* 419 U.S. at 1314.  The group argued that the challenged investigative activity would have the concrete effects of dissuading some delegates from participating actively in the convention.  *See id*. at 1319.  Justice Marshall decided that these allegations were sufficient to establish standing to challenge the particular FBI's activities towards this group.  *See id*.  Here, in contrast, Plaintiff's speculative allegations do not even fit within the acknowledged surveillance program.[5]

4.      Despite Plaintiff's attempts to distinguish *United Presbyterian Church*, 738 F.2d at 1375, *see* Plts. Mem. at 16-18, that case is most similar to Plaintiff's.  There, the plaintiffs sought to challenge as unconstitutional a number of executive orders applicable to foreign intelligence and counterintelligence activities; they were not defunct programs, as Plaintiff claims.  *See United Presbyterian Church*, 738 F.2d at 1377.  Two type of injuries to support standing were claimed: "(1) the 'chilling' of constitutionally protected activities which they may refrain from pursuing out of fear that such activities would cause them to be targeted for surveillance under the order; and (2) the immediate threat of being

---

[5] And Plaintiff's statement that he thinks the TSP is broader than the President's statements regarding the program, *see* Plts. Mem. at 9, n. 6, makes his claim even more speculative.

targeted for surveillance, and being thereby deprived of legal rights." *Id*.  As for the alleged "chilling effect" — defined as producing the fear of being subjected to illegal surveillance and deterring constitutionally protected activities — the court found that the plaintiffs' claim of standing was foreclosed by *Laird*. *Id.* at 1378 ("[a]llegations of subjective 'chill' are not . . . adequate") (quoting *Laird*, 408 U.S. at 13-14); *id.* at 1380 ("no part of the challenged scheme imposes or even relates to any direct governmental constraint upon the plaintiffs").

Similarly here, Plaintiff's complaint does not show that the challenged scheme — the TSP — "imposes or even relates to any direct governmental constraint upon the plaintiff[]." *Id*.  His claims are based on mere conjecture: that he is being surveilled or may be surveilled because he communicates with individuals of middle-eastern descent and discusses terrorism-related topics, and that he must therefore choose between engaging in these communications or risk being surveilled.  As in *United Presbyterian Church*, his unfounded fear of being subjected to illegal surveillance, and, thereby, feeling deterred from engaging in constitutionally protected activities is insufficient to establish standing.

To the extent Plaintiff is asserting the second kind of harm described in *United Presbyterian Church*, *i.e.*, the immediate threat of being targeted for surveillance, *see, e.g.,* Plts. Mem. at 6-7 ("Plaintiff has likely sustained and/or is

8

immediately in danger of sustaining a direct injury if he exercises his First Amendment rights"), that assertion is insufficient as well.  In *United Presbyterian Church*, the court found inadequate the plaintiffs' claims that they are in immediate threat of being harmed, even though they had been subjected to surveillance in the past and their activities involved considerable foreign travel and contact with foreigners.  738 F.2d at 1380 ("[e]ven if it were conceded that these factors place the plaintiffs at greater risk than the public at large, that would still fall far short of the 'genuine threat' required to support this theory of standing, . . . as opposed to mere 'speculative' harm").[6]  Here, Plaintiff has alleged even less.[7]  *Id*.

---

[6] Contrary to Plaintiff's explanation of *Halkin v. Helms*, 690 F.2d 977, 1002 (D.C. Cir. 1982), that case had a similar holding.  There, the plaintiffs were challenging certain surveillance activities under an active executive order.  Even though they alleged they were engaged in certain political activities that brought them into contact with foreign entities, *id*. at 1002, n. 89, the court held that their "claim is squarely controlled by *Laird*" and dismissed it for lack of standing.

[7] Moreover, even if Plaintiff's allegations adequately fell within the parameters of the TSP, *i.e.,* that he is communicating with members of al Qaeda or its affiliates, it does not necessarily follow from the general authorization of the TSP that Plaintiff's communications with such individuals are being intercepted.  As the D.C. Circuit explained regarding the executive order at issue in *United Presbyterian Church*:

> It must be borne in mind that this order does not *direct* intelligence-gathering activities against all persons who could conceivably come within its scope, but merely *authorizes* them.  To give these plaintiffs standing on the basis of threatened injury would be to acknowledge, for example, that all churches would have standing to challenge a statute which provides that search warrants may be sought for church property if there is reason to believe that felons have take refuge there.  That is not the law.

738 F.2d at 1380 (emphasis in original).

5.      Finally, Plaintiff also lacks standing to pursue his separation of powers claim.  *See* Defs'. Mem. at 14, n. 4.  He states "[t]he fact that Plaintiff may not have been an actual target of warrantless electronic surveillance pursuant to the Executive Order should be of no consequence in resolving the standing issue." Plts. Mem. at 20; *see also id.* ("the threat to Plaintiff's liberty interests due to a violation of the separation of powers doctrine is real, immediate, and a continuing nature regardless of any actual warrantless wiretapping of his international communications").  Plaintiff is mistaken.  Because he has failed to present any justiciable injury, Plaintiff lacks standing for all of his claims.  *See, e.g., United Presbyterian Church*, 738 F.2d at 1377-81 (dismissed constitutional and statutory claims for lack of standing, including the claim that the executive orders at issue violated the principle of separation of powers).

## **CONCLUSION**

For the foregoing reasons as well as those presented in Defendants' Memorandum in Support of the Motion to Dismiss, Plaintiff's complaint should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

                      Respectfully submitted,

                      PETER D. KEISLER
                      Assistant Attorney General

                      CARL J. NICHOLS
                      Deputy Assistant Attorney General

                      JOSEPH H. HUNT
                      Director, Federal Programs Branch

                      ANTHONY J. COPPOLINO
                      Special Litigation Counsel

                      s/ *Renée S. Orleans*
                      RENÉE S. ORLEANS
                      ANDREW H. TANNENBAUM
                      Trial Attorneys
                      U.S. Department of Justice, Civil Division
                      P.O. Box 883
                      20 Massachusetts Avenue, NW
                      Washington, DC 20044
                      (202) 514-4504/514-4263 (tel)
                      (202) 616-8202 (fax)
                      renee.orleans@usdoj.gov
                      andrew.tannenbaum@usdoj.gov
DATED: August 23, 2006      *Counsel for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in L.R. 5.1B (Times New Roman, 14 pt.) for documents prepared by computer.

This 23rd day of August 2006.

           s/ *Renée S. Orleans*
           Renée S. Orleans

## CERTIFICATE OF SERVICE

I certify that I have this day served the, DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS, by causing copies to be deposited in the United States Mail addressed as follows:

    Mark E. Guzzi
    271 Providence Oaks Circle
    Alpharetta, Georgia 30004

This 23rd day of August 2006.

                                       s/ *Renée S. Orleans*
                                          Renée S. Orleans