PAGES 1 - 58

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VAUGHN R. WALKER, JUDGE

AL-HARAMAIN ISLAMIC          )
FOUNDATION, ET AL.,          )
                             )
          PLAINTIFFS,        )
                             )
  VS.                        )          NO. C 07-109 VRW
                             )
GEORGE W. BUSH, ET AL.,      )
                             )
          DEFENDANTS.        )
_____)

                        SAN FRANCISCO, CALIFORNIA
                        WEDNESDAY, SEPTEMBER 23, 2009

                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

FOR PLAINTIFF:          EISENBERG & HANCOCK
                        1970 BROADWAY
                        SUITE 1200
                        OAKLAND, CA  94612
                BY:  **JON B. EISENBERG**
                     **THOMAS HANCOCK**
                     **ATTORNEYS AT LAW**

                        STEVEN GOLDBERG
                        ATTORNEY AT LAW
                        205 S.E. SPOKANE ST.
                        SUITE 300
                        **PORTLAND, OREGON  97202**


            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:            JAMES YEOMANS, CSR #4039, RPR
                        OFFICIAL REPORTER
            COMPUTERIZED TRANSCRIPTION BY ECLIPSE

1   <u>APPEARANCES</u>:  (CONTINUED)

2   FOR PLAINTIFF:          THOMAS HOWARD NELSON
                            ATTORNEY AT LAW
3                           24525 E. WELCHES ROAD
                            WELCHES, OREGON  97067
4


5
    FOR DEFENDANT:          U.S. DEPARTMENT OF JUSTICE
6                           CIVIL DIVISION
                            20 MASSACHUSETTS AVENUE, N.W.
7                           ROOM 6102
                            WASHINGTON, DC  20530
8                     BY:   **ANTHONY JOSEPH COPPOLINO**
                            **TIMOTHY STINSON**
9                           **ATTORNEYS AT LAW**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    WEDNESDAY, SEPTEMBER 23, 2009                    9:00 A.M.

2          THE CLERK:  CALLING MDL NUMBER 06-1791, IN RE NATIONAL

3    SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION.  AND

4    THIS HEARING THIS MORNING RELATES TO THE CASE NUMBER 07-109, AL

5    HERMAN ISLAMIC FOUNDATION VERSUS GEORGE BUSH.

6          APPEARANCES, COUNSEL.

7          MR. EISENBERG:  JOHN EISENBERG FOR AL-HARAMAIN ISLAMIC

8    FOUNDATION.

9          THE COURT:  GOOD MORNING, MR. EISENBERG.

10         MR. EISENBERG:  GOOD MORNING, YOUR HONOR.

11         MR. GOLDBERG:  I'M STEVEN GOLDBERG AND THE OTHER

12   MEMBERS OF OUR TEAM THOMAS NELSON AND WILLIAM HANCOCK.

13         THE COURT:  VERY WELL.  GOOD MORNING, MR. GOLDBERG,

14   AND?

15         MR. COPPOLINO:  GOOD MORNING, YOUR HONOR.

16         ANTHONY COPPOLINO DEPARTMENT OF JUSTICE CIVIL DIVISION

17   OF THE GOVERNMENT, JOINED BY TIM STINSON OFFICE GENERAL COUNSEL

18   NATIONAL SECURITY AGENCY.

19         THE COURT:  GOOD MORNING, MR. COPPOLINO.

20         MR. EISENBERG, WHY DON'T YOU LEAD OFF.  WE HAVE

21   CROSS-MOTIONS, BUT I'D LIKE TO HAVE YOU LEAD OFF.

22         AND IN PARTICULAR YOU MIGHT ADDRESS WHETHER IN THE

23   PUBLIC RECORD THERE IS INFORMATION WHICH NEGATES THE

24   POSSIBILITY THAT THE INFORMATION WHICH WAS DEVELOPED ABOUT YOUR

25   CLIENT WAS THE RESULT OF SOME SURVEILLANCE OR OTHER ACTIVITY

1    OTHER THAN ELECTRONIC SURVEILLANCE.

2          **MR. EISENBERG:**  YES, YOUR HONOR.

3          **THE COURT:**  AND ALSO NEGATES THE POSSIBILITY THAT

4    THERE WAS A FISA WARRANT DIRECTED TO YOUR CLIENT.  AND IS THERE

5    ANYTHING IN THE PUBLIC RECORD THAT YOU POINTED TO THAT'S IN THE

6    RECORD WHICH WOULD NEGATE EITHER OF THOSE, EITHER OR BOTH OF

7    THOSE POSSIBILITIES?

8          **MR. EISENBERG:**  YES, YOUR HONOR.  I'LL SPEAK FIRST TO

9    THE POSSIBILITY OF SOME SURVEILLANCE OTHER THAN ELECTRONIC

10   SURVEILLANCE.

11         WE CAN START WITH ONE UNDISPUTED FACT AND MOVE FROM

12   THERE.  THAT IS, THE FACT THAT THE AL-HARAMAIN ISLAMIC

13   FOUNDATION WAS SURVEILLED DURING THE 2002 INVESTIGATION.

14         THAT FACT WAS UNDISPUTED BECAUSE IT'S POSTED ON THE

15   FBI'S INTERNET WEBSITES.  DEPUTY DIRECTOR JOHN PISTOLE SAID WE

16   USED SURVEILLANCE IN THE 2004 INVESTIGATION OF AL-HARAMAIN.

17         FROM THERE LET ME MOVE TO THE NEXT UNDISPUTED FACT.

18   WENDELL BELEW AND ASIM GHAFOOR SPEAK ON THE TELEPHONE WITH

19   SOLIMAN AL-BUTHI DURING THE PERIOD OF THAT INVESTIGATION.

20         THEY TALK ABOUT THE REPRESENTATION OF AL-HARAMAIN AND

21   A MAN NAMED MOHAMMAD JAMAL KHALIFA IN THE 911 LITIGATION, IN

22   LITIGATION BY VICTIMS AND FAMILY OF THE 911 ATTACKS AGAINST

23   MANY INDIVIDUALS AND ORGANIZATIONS.  MR. KHALIFA WAS OSAMA

24   BIN-LADEN'S BROTHER-IN-LAW.

25         AT THE END OF THE 2004 INVESTIGATION OFAC, THE OFFICE

1    OF FOREIGN ASSETS CONTROL, DECLARED DIRECT LINKS BETWEEN

2    AL-HARAMAIN AND OSAMA BIN-LADEN.  THE DIRECT LINKS EVIDENTLY

3    BEING THE FACT AL-HARAMAIN AND OSAMA BIN-LADIN'S BROTHER-IN-LAW

4    SHARED THE SAME LAWYER AS GHAFOOR.

5            FROM THIS WE GET A REASONABLE INFERENCE AND, I

6    BELIEVE, THE ONLY REASONABLE INFERENCE THAT OFAC RELIED ON

7    SURVEILLANCE OF THOSE TELEPHONE CALLS DURING 2004 TO DECLARE

8    DIRECT LINKS.

9            **THE COURT:**  WERE THESE COMMUNICATIONS THE ONLY

10   COMMUNICATIONS THAT THESE LAWYERS HAD WITH THE INDIVIDUALS YOU

11   IDENTIFIED?

12           THAT IS TO SAY, CAN WE EXCLUDE THE POSSIBILITY THAT

13   THERE WERE COMMUNICATIONS OTHER THAN WIRE AND

14   TELE-COMMUNICATION COMMUNICATIONS?

15           **MR. EISENBERG:**  PERSONAL CONVERSATIONS, PERHAPS?

16           **THE COURT:**  PERSONAL CONVERSATIONS, FACE-TO-FACE

17   MEETINGS?

18           **MR. EISENBERG:**  I DON'T KNOW THE ANSWER TO THAT

19   QUESTION, YOUR HONOR, I NEVER ASKED THEM.

20           IF KNEW SOLIMAN AL-BUTHI PERSONALLY, I PRESUME NOT

21   BECAUSE THE LAWYERS WERE IN WASHINGTON D.C. AND MR. SOLIMAN

22   AL-BUTHI IN SAUDI ARABIA.  I GUESS, IF --

23           **THE COURT:**  ASSUME IT WOULD BE RATHER EASY TO GET THAT

24   INFORMATION, WOULD IT NOT?

25           **MR. EISENBERG:**  IT WOULD BE, BUT I'VE HAD NO REASON

1   TO.  AND THE REASON WHY I HAD NO REASON TO BECAUSE THE

2   GOVERNMENT HAS PRESENTED NO OPPOSING EVIDENCE AT ALL, AND OUR

3   MOTION FOR SUMMARY JUDGMENT THE IMPORT OF THIS REASONABLE

4   INFERENCE IS THAT WE HAVE MADE A PRIMA FACIE CASE OF ELECTRONIC

5   SURVEILLANCE.

6          IT'S REASONABLE TO INFER THAT THE SURVEILLANCE

7   MR. PISTOLE ADMITTED WAS SURVEILLANCE OF THESE TELEPHONE CALLS.

8   THAT'S A REASONABLE INFERENCE, IT CREATES A PRIMA FACIE CASE.

9          THE RESULT OF THAT IS THAT WE'VE SUSTAINED OUR BURDEN

10  ON THE SUMMARY JUDGMENT MOTION.  THE BURDEN SHIFTS TO THE

11  GOVERNMENT TO SHOW GENUINE ISSUE OF TRIABLE FACT, THEY HAVE

12  NOT, THEY HAVE SUBMITTED NO EVIDENCE WHATSOEVER.

13         THIS COURT HAS GIVEN THEM AMPLE OPPORTUNITY TO SUBMIT

14  CLASSIFIED EVIDENCE UNDER SURVEILLANCE CURE CONDITIONS, THEY

15  HAVE NOT AVAILED THEMSELVES OF THAT OPPORTUNITY.  THEY

16  SUBMITTED NO PUBLIC EVIDENCE AT ALL.

17         SO WHAT WE END UP WITH A PRIMA FACIE CASE BEEN

18  UNDISPUTED FACT, UNREBUTTED, NO TRIABLE ISSUE OF FACT AND I

19  BELIEVE, THEREFORE, ENTITLEMENT TO SUMMARY JUDGMENT OF

20  LIABILITY.

21         OF STANDING, EXCUSE ME, THIS GOES TO STANDING.  I

22  BELIEVE THE PROCEDURAL CONTEXT IN WHICH WE ARE NOW HERE IS

23  CRITICAL, WE SUSTAINED OUR BURDEN, THE GOVERNMENT HAS NOT

24  RESPONDED.

25         I SUPPOSE, IT'S POSSIBLE TO ENVISION VARIOUS

1    THEORETICAL SCENARIOS WHEREBY THE SURVEILLANCE OF --

2    MR. PISTOLE ADMITTED WAS NOT ELECTRONIC SURVEILLANCE OF THESE

3    PHONE CONVERSATIONS, BUT WHERE WE STAND RIGHT NOW WITH

4    UNREBUTTED INFERENCE AND THE INFERENCE, THERE IS NOTHING IN THE

5    EVIDENCE THAT WE HAVE PRESENTED THAT RAISES AN INFERENCE THAT

6    SURVEILLANCE WAS OF ANY OTHER SORT, NOTHING.

7            IF THEY WANT TO RAISE THAT COUNTER-INFERENCE THEY MUST

8    PRESENT EVIDENCE, THEY HAVE NOT.  I THINK, THAT'S REALLY

9    CRITICAL.  NOW, WHY HAVEN'T THEY?

10           I CAN ONLY GUESS THEY GOT NOTHING TO PRESENT THAT

11   WOULD REBUT THE INFERENCE.

12           SO NOW LET ME TURN TO THE ISSUE OF WHETHER OR NOT

13   THERE WAS A FISA WARRANT.  I BELIEVE, THAT THE MERE

14   CIRCUMSTANCES OF THE CASE THAT ARE IN THE PUBLIC RECORD RAISE

15   THE INFERENCE THAT THERE WAS NO FISA WARRANT.  THE GOVERNMENT

16   BELIEVES --

17           **THE COURT:**  WHAT ARE THOSE CIRCUMSTANCES?

18           **MR. EISENBERG:**  GOVERNMENT BELIEVES THAT AL-HARAMAIN

19   HAS DIRECT LINKS WITH AL-QAEDA.  THAT TIME THE GOVERNMENT

20   BELIEVED THAT THE GOVERNMENT HAD A PROGRAM FOR WARRANTLESS

21   WIRETAPPING OF PERSONS BELIEVED TO HAVE LINKS WITH AL-QAEDA.

22           IT'S UNFATHOMABLE TO THINK IF THE GOVERNMENT HAD THIS

23   PROGRAM AND THE GOVERNMENT BELIEVED THAT AL-HARAMAIN HAD LINKS

24   WITH AL-QAEDA THAT THEY WEREN'T WIRETAPPING THE PLAINTIFFS

25   WITHOUT A WARRANT.

1          FRANKLY, I MYSELF WOULD BE SHOCKED TO KNOW THAT THE

2    GOVERNMENT THOUGHT THERE WERE TERRORISTS OUT THERE, HAD A

3    PROGRAM FOR WIRETAPPING THEM AND WASN'T WIRETAPPING THEM, THAT

4    WOULDN'T MAKE ANY SENSE AT ALL.

5          IT'S ALL IN THE PUBLIC RECORD.  AGAIN, I BELIEVE THAT

6    RAISES A REASONABLE INFERENCE THAT THERE WAS NO WIRE -- THERE

7    WAS NO FISA WARRANT FOR THIS WIRETAPPING BECAUSE IT HAD TO HAVE

8    BEEN DONE UNDER THIS PROGRAM.

9          THE PROGRAM WAS THERE, THE PROGRAM WAS IN PLACE IN

10   ORDER TO EVADE FISA, THAT WAS THE REASON FOR ITS EXISTENCE.

11   WHY ON EARTH WOULD THEY GET A FISA WARRANT TO PERFORM

12   SURVEILLANCE THAT THEY BELIEVED THEY HAD NO NEED TO GET A FISA

13   WARRANT FOR?

14         AGAIN, I BELIEVE, THAT SHIFTS THE BURDEN.  WE'VE

15   SUSTAINED OUR BURDEN UNDER RULE 56, OF PRESENTING A PRIMA FACIE

16   CASE AND THAT SHIFTS THE BURDEN TO THEM TO SHOW EVIDENCE OF A

17   WARRANT.

18         THERE IS A SEPARATE REASON WHY THEY HAVE THE BURDEN OF

19   PRESENTING EVIDENCE OF A WARRANT, THAT WOULD, I BELIEVE, ARISEN

20   IF WE HADN'T RAISED A REASONABLE INFERENCE, AND THAT IS THE

21   FACT THAT THE EXISTENCE OR NOT OF A FISA WARRANT IS WITHIN

22   THEIR EXCLUSIVE KNOWLEDGE.

23         AND I'VE SAID IT TO THE COURT MANY CASES IT'S

24   ESTABLISHED, A VERY WELL ESTABLISHED AND LONG-STANDING RULE

25   THAT SAYS, WHEN ONE OF THE PARTIES HAS PECULIAR KNOWLEDGE OF

1  THE FACTS TO THE EXCLUSION OF THE OTHER PARTY, THE OTHER PARTY

2  IS REASONABLE TO SHIFT THE BURDEN.

3       **THE COURT:**  WELL, COULD THE GOVERNMENT HAVE,

4  CONSISTENT WITH FISA, DISCLOSED THE EXISTENCE OF A FISA

5  WARRANT?

6       **MR. EISENBERG:**  UNDER SECURE CONDITIONS, YES.  I

7  RECALL THREE YEARS AGO IN JUDGE KING'S COURTROOM IN OREGON

8  TELLING JUDGE KING SOMETHING TO THIS EFFECT.

9       ALL MR. COPPOLINO NEEDS TO DO IS TELL ME, UNDER ANY

10  CONDITIONS THAT HE WISHES, THAT HE HAD A FISA WARRANT AND I'LL

11  BE GONE.  THIS CASE WILL BE OVER.

12       I BELIEVE, I'VE MADE CLEAR SINCE THEN, THAT'S REALLY

13  ALL WE NEED TO KNOW, IF THERE WAS A FISA WARRANT.  I WISH I'D

14  KNOWN THREE YEARS AGO.  I WISH THIS COURT HAD KNOWN THREE YEARS

15  AGO BECAUSE A TREMENDOUS AMOUNT OF WORK COULD HAVE BEEN SPARED.

16       THEY HAVE NOT PRODUCED EVIDENCE OF A FISA WARRANT

17  BECAUSE THEY DID NOT HAVE A FISA WARRANT.  THAT'S GOT TO BE

18  VERY, VERY CLEAR.

19       THEY HAVE PRESENTED REPEATEDLY CLASSIFIED DECLARATIONS

20  IN THIS CASE, I CANNOT BELIEVE THAT IN THOSE CLASSIFIED

21  DECLARATIONS THEY SAID, OH, BY THE WAY, WE HAVE FISA WARRANT

22  FOR THE SURVEILLANCE BECAUSE IF THAT WERE THE CASE I CANNOT

23  BELIEVE I'D BE STANDING HERE TODAY.

24       AND I TRY TO GROUND MYSELF IN THE REAL WORLD IN THIS

25  CASE.  IN THE REAL WORLD IF THEY HAD A FISA WARRANT THE

1    JUDICIARY WOULD HAVE KNOWN IT LONG AGO AND I WOULD HAVE BEEN

2    WORKING ON SOME OTHER CASES RIGHT NOW.  PROBABLY SEVERAL OTHER

3    CASES IN PLACE OF THIS ONE.

4            I'LL SAY IT AGAIN TODAY, 1806F IS THERE, THIS COURT

5    HAS INDICATED TO THE DEFENDANTS THE PROVISIONS OF THIS STATUTE

6    ARE AVAILABLE TO ASSURE YOU, THE GOVERNMENT, THAT YOU CAN

7    PRESENT SENSITIVE INFORMATION TO THE COURT.

8            THAT TWO OF THE PLAINTIFF'S ATTORNEYS WHO HAVE

9    OBTAINED SECURITY CLEARANCE, TOP SECRET SCI SECURITY CLEARANCE

10   CAN SEE, AND YOU CAN BE ASSURED THAT IT WILL NOT BE DISCLOSED

11   TO THE PUBLIC, AND THEY HAVE NOT DONE THAT.

12           THEY HAVE REFUSED WHICH IS WHY WE ARE HERE TODAY

13   PROCEEDING ON NONCLASSIFIED EVIDENCE.  THERE'S A REASON WHY

14   THEY HAVE NOT DONE THAT, THEY DIDN'T HAVE A FISA WARRANT.

15           SO THAT'S HOW I WOULD ANSWER YOUR QUESTION, YOUR

16   HONOR.  WHERE SHALL I GO FROM HERE?

17           **THE COURT:**  WHEREVER YOU WANT TO GO.

18           **MR. EISENBERG:**  I'D LIKE TO GO TO THE MERITS, THAT'S

19   WHAT I'M REALLY INTEREST IN.  THAT'S WHY WE FILED THIS LAWSUIT

20   TO ADJUDICATE THE MERITS AND, I THINK, IT'S TIME.

21           THE STATE SECRETS PRIVILEGE, AS I UNDERSTAND IT, IS

22   NOT IN PLAY NOW, IT'S OUT OF THE PICTURE.  WE'RE NOW PROCEEDING

23   ON NONCLASSIFIED EVIDENCE.  WE PRESENTED --

24           **THE COURT:**  WELL, THAT ASSUMES, OF COURSE, THAT

25   THERE'S VITALITY TO THE STATE SECRETS PRIVILEGE, BUT THAT

1   ASSUMPTION IMPLICATES THE SUBJECT THAT WE WERE JUST DISCUSSING,

2   NAMELY, THAT THERE MIGHT BE SOURCES OTHER THAN ELECTRONIC

3   SURVEILLANCE AND INTERCEPTIONS THAT GAVE RISE TO THE

4   INFORMATION THAT WAS USED TO OBTAIN THE CLASSIFICATION OF YOUR

5   CLIENT.

6          **MR. EISENBERG:**  BUT THE GOVERNMENT HAS CHOSEN NOT TO

7   PROCEED UNDER 1806F.  THEY HAVE CHOSEN NOT TO PRESENT ANY

8   NONCLASSIFIED EVIDENCE, EXCUSE ME, YOUR HONOR, ANY CLASSIFIED

9   EVIDENCE, THAT IS A CHOICE THAT THEY HAVE MADE.

10          IN THE FACE OF THE COURT'S ASSURANCES THAT IT WILL NOT

11  BE DISCLOSED TO THE PUBLIC, IT WON'T GO PAST YOUR HONOR,

12  MR. GOLDBERG AND ME, MR. COPPOLINO AND MR. SIMPSON, THEY'VE

13  CHOSEN NOT TO.

14          OKAY.  SO MY TAKE ON THIS SITUATION RIGHT NOW IS THAT

15  THE STATE SECRETS PRIVILEGE IS OUT OF THE CASE.

16          **THE COURT:**  ONE OF THE SUGGESTIONS THAT YOU MADE,

17  EXCUSE ME FOR INTERRUPTING YOU, YOUR ARGUMENTS ON THE MERITS

18  WHICH I DO WANT TO HEAR.

19          **MR. EISENBERG:**  WE'LL GET THERE.

20          **THE COURT:**  ONE OF THE SUGGESTIONS YOU MAKE IN YOUR

21  PAPERS IS THAT WHATEVER RULING I MAKE I SHOULD BASE IT BOTH ON

22  THE PUBLIC RECORD AND ALSO ON THE CLASSIFIED INFORMATION THAT

23  HAS BEEN SUBMITTED.

24          BUT ASSUME THAT I'M WRONG ABOUT THE FISA PREEMPTION,

25  AND ASSUME FURTHER THAT THERE IS VITALITY TO THE NINTH CIRCUIT

1   STATEMENT IN THE CASE, WHAT WAS THAT NOVEMBER OF 2007, THAT THE

2   PLAINTIFFS CANNOT PROCEED WITHOUT THE SEALED DOCUMENT, WHAT

3   OBLIGATION AM I UNDER WITH RESPECT TO PRESERVING

4   CONFIDENTIALITY OF THAT INFORMATION?

5          AND CAN I RELY UPON IT IN MAKING A DECISION, WHICH IS

6   GOING TO BE A PUBLIC DECISION, THAT WOULD ALLOW A REASONABLE

7   PERSON TO INFER THE CONTENT OF THE SEALED DOCUMENT?

8          **MR. EISENBERG:**  WELL, AT THIS POINT IN THE LITIGATION,

9   THE POSTURE WE'RE IN CURRENTLY, YOUR HONOR HAS RULED THAT FISA

10  PREEMPTS THE PRIVILEGE.

11         **THE COURT:**  BUT ASSUME I'M WRONG.

12         **MR. EISENBERG:**  OKAY.

13         **THE COURT:**  ASSUME THE COURT OF APPEALS SAYS THAT IS

14  AN INCORRECT INTERPRETATION.

15         **MR. EISENBERG:**  HERE'S WHY WE REQUESTED THE

16  ALTERNATIVE RULING.  ASSUME YOUR WRONG ON THAT, ASSUME THE

17  COURT FINDS THE EVIDENCE WE'VE SUBMITTED, NEVER MIND FISA

18  PREEMPTION, I BELIEVE RIGHT NOW FISA PREEMPTION DOESN'T MATTER,

19  AND I BELIEVE THE REASON WHY IS THAT WE'RE PROCEEDING, AT

20  LEAST, SAY FOR THE MOMENT ONLY ON PUBLIC EVIDENCE, THE NINTH

21  CIRCUIT RULED THAT THE VERY SUBJECT MATTER OF THE TERRORIST

22  SURVEILLANCE PROGRAM IS NOT A STATE SECRET.

23         THE IMPORT TO THAT RULING WITHIN THE CONTEXT OF THE

24  STATE SECRETS PRIVILEGE IS THAT WE CAN GO FORWARD WITH

25  NON-CLASSIFIED EVIDENCE TO TRY TO MAKE OUR CASE, AND IF WE CAN

```
1   MAKE OUR CASE WITHOUT USING THE DOCUMENT, WHICH IS SUBJECT TO

2   THE PRIVILEGE IF IT APPLIES, IF WE CAN MAKE OUR CASE WITHOUT

3   USING THE DOCUMENT WE GO FORWARD.

4           THE COURT:  OKAY.

5       MR. EISENBERG:  SO WHAT THAT MEANS IS THAT --

6           THE COURT:  BUT THEN WHY SHOULD I EVEN CONSIDER THE

7   DOCUMENT FOR PURPOSE OF THE DECISION?

8       MR. EISENBERG:  BECAUSE I AM WORRIED ABOUT MY

9   RETIREMENT.  I AM WORRIED THAT WITHOUT A DECISION, AN

10  ALTERNATIVE DECISION CONSIDERING THE DOCUMENT, WE'LL BE BACK

11  HERE AGAIN IN A FEW YEARS FROM NOW.  AND LET ME ELABORATE ON

12  THAT, WITH THE COURT'S INDULGENCE.

13          WHAT I'M ASKING THE COURT TO DO, IS MAKE A COMPLETE

14  RECORD FOR APPELLATE REVIEW.  THIS CASE IS GOING TO THE NINTH

15  CIRCUIT CERTAINLY AND PERHAPS BEYOND, IT'S GOING TO HAPPEN.

16          WHAT I VERY MUCH WOULD LIKE TO SEE IS FOR IT TO GO UP

17  ON APPEAL ONLY ONCE MORE.  THAT'S GENERALLY -- THAT'S THE

18  GENERAL THEORY OF APPELLATE REVIEW ONCE.  YOU DO IT ONCE,

19  APPEAL FROM A FINAL JUDGMENT, NOT PIECEMEAL LITIGATION.  OKAY.

20  SO MY CONCERN IS THAT --

21          THE COURT:  IT'S ALREADY BEEN THERE ONCE.

22      MR. EISENBERG:  I WOULD LIKE THE COURT TO MAKE A

23  COMPLETE RECORD THAT THE NINTH CIRCUIT CAN REFER TO IN THE

24  EVENT THE COURT, THE NINTH CIRCUIT FINDS THAT THE

25  NON-CLASSIFIED EVIDENCE, THE PUBLIC EVIDENCE ISN'T SUFFICIENT.
```

1    I BELIEVE THEY WILL, BUT BEING A VERY NERVOUS

2  APPELLATE TYPE I WORRY ABOUT THAT.  AND IF THEY DON'T FIND THE

3  EVIDENCE SUFFICIENT, I WOULD LIKE THEM TO HAVE A RULING FROM

4  THIS COURT, AN ALTERNATIVE RULING THAT THEY CAN REVIEW WITHOUT

5  THE NEED FOR A REMAND, AND NOW ALTERNATIVE RULING AND THEN

6  ANOTHER TRIP TO THE NINTH CIRCUIT.

7    NOW, I RECOGNIZE THAT FOR THIS COURT TO ISSUE THE

8  RULING PRESENTS AN ODD PROBLEM FROM MY PERSPECTIVE, FROM THE

9  PERSPECTIVE OF THE AL-HARAMAIN PLAINTIFFS AND THEIR COUNSEL.

10    I DON'T WANT US TO GET BACK INTO THE THICKET OF THE

11  1806 SIMPLY BECAUSE MR. COPPOLINO FOUGHT SO HARD DESPITE OUR

12  SECURITY CLEARANCES, DESPITE THE COURT APPEARANCES, HE SAID

13  WE'RE NOT GOING THERE, WE REFUSE TO GO THERE.

14    I DON'T THINK WE NEED TO GO THERE AND I UNDERSTAND THE

15  COURT'S CONCERN.  I APPRECIATE VERY MUCH THAT THE COURT DOES

16  NOT FEEL COMFORTABLE WITH THE PLAINTIFFS LITIGATING WHAT I CALL

17  BLIND, LITIGATING WITHOUT SEEING WHAT THEY'RE UP AGAINST.

18    BUT RECALLING THAT WE HAVE SEEN THE DOCUMENT, SOME OF

19  US, WE DO FEEL COMFORTABLE PLACING IT, THE DECISION IN YOUR

20  HONOR'S HANDS, WITHOUT US HAVING ANY NEED FOR FURTHER ACCESS TO

21  THE DOCUMENT, WHICH MEANS WE DON'T NEED TO CRAWL BACK INTO THE

22  1806F THICKET.

23    WE ARE COMFORTABLE WITH YOUR HONOR ISSUING THE

24  ALTERNATIVE RULING BASED SOLELY ON YOUR HONOR'S REVIEW OF THE

25  DOCUMENT, WITHOUT US HAVING ACCESS TO IT OR PRESENTING FURTHER

1    ARGUMENT ABOUT IT.

2          I WOULD MUCH RATHER PRESENT SOME ARGUMENT BECAUSE I

3    BELIEVE THAT IT WOULD BE HELPFUL, I'LL LEAVE IT AT THAT.  IT

4    WOULD BE HELPFUL, BUT I ALSO BELIEVE A CAREFUL READING WHAT WE

5    PRESENTED ALREADY WOULD ENABLE THE COURT TO UNDERSTAND HOW WE

6    WOULD ARGUE CERTAIN ASPECTS OF THE DOCUMENT.

7          SO ULTIMATELY WHAT I AM LOOKING FOR, WHAT WE ARE

8    LOOKING FOR IS A COMPLETE RECORD TO AVOID ENDLESS LITIGATION IN

9    THIS CASE.

10          **THE COURT:**  ALL RIGHT.  YOUR MERITS ARGUMENT.

11          **MR. EISENBERG:**  WE'RE THERE, FINALLY, AFTER THREE AND

12    A HALF YEARS WE'RE FINALLY THERE.  I NOW GET TO ARGUE THE POINT

13    THAT WE FILED THIS LAWSUIT FOR THREE AND A HALF YEARS AGO.

14          ISN'T THAT WONDERFUL, AND I VERY MUCH LOOK FORWARD TO

15    MR. COPPOLINO'S RESPONSE ON THE MERITS.  I'LL START WITH THE

16    WORDS OF PRESIDENT OBAMA IN 2007.

17          "WARRANTLESS SURVEILLANCE OF AMERICAN CITIZENS IN

18    DEFIANCE OF FISA IS UNLAWFUL AND UNCONSTITUTIONAL."

19          COULDN'T GET MORE CLEARER THAN THAT.  AND THE

20    PRESIDENT WAS RIGHT, EVEN THOUGH HE'S ONLY A SENATOR AT THE

21    TIME, HE WAS STILL RIGHT, HE WAS RIGHT FOR TWO REASONS.

22          THE FIRST REASON IS PECULIAR TO FISA ITSELF.  FISA

23    MAKES IT UNDISPUTED IT'S UNLAWFUL TO CONDUCT ELECTRONIC

24    SURVEILLANCE QUOTE "EXCEPT AS AUTHORIZED BY STATUTE."

25          NO STATUTE AUTHORIZED WHAT THE GOVERNMENT CALLS TSP.

1    NOW, THE BUSH DEPARTMENT OF JUSTICE ARGUED THAT THE TSP WAS

2    AUTHORIZED BY THE 2001 AUTHORIZATION FOR USE OF MILITARY FORCE

3    AGAINST TERRORIST, THAT'S THE AUMF, A-U-M-F, BUT IN OUR MOTION

4    FOR SUMMARY JUDGMENT WE'VE SHOWN MULTIPLE REASONS WHY THE BUSH

5    DOJ WAS WRONG ABOUT THAT.  AND I'LL SUMMARIZE THEM.

6         THE AUMF IS LIMITED TO INSTANCES OF WAR ON THE BATTLE

7    FIELD, THAT DOESN'T COVER THE TSP.

8         THE AUMF DOES NOT ATTEMPT TO ALTER FISA'S WARRANT

9    REQUIREMENT.

10        FISA'S EXCEPTION FOR ELECTRONIC SURVEILLANCE AS

11   AUTHORIZED BY STATUTE WAS INTENDED TO REFER ONLY TO STATUTORY

12   AUTHORIZATION BY FISA, I'M SORRY, BY FISA AND BY TITLE 7 OF THE

13   OMNIBUS TIME CONTROLLING AND SAFE SPEEDS ACT OF 1968.

14        THE AUMF IS A RED HERRING.  SOME MEMBERS OF THE

15   CURRENT OBAMA ADMINISTRATION HAVE CALLED IT, THEY CALLED IT THE

16   AUMF JIG, J-I-G.

17        THE MAIN EVENT HERE IS THE SECOND REASON WHY PRESIDENT

18   OBAMA WAS RIGHT IN 2007.  IT'S THE PRESIDENTIAL POWER ISSUE,

19   IT'S THE HEART OF THIS CASE.  THE QUESTION IS THIS:

20        MAY THE PRESIDENT OF THE UNITED STATES BREAK THE LAW

21   IN THE NAME OF NATIONAL SECURITY?

22        THIS QUESTION IS NOT PECULIAR TO FISA, IT GOES TO THE

23   HEART OF THE CONSTITUTIONAL SEPARATION OF POWERS.  AND WE'RE

24   ASKING THIS COURT TO SAY, NO, THE PRESIDENT OF THE UNITED

25   STATES MAY NOT BREAK THE LAW IN THE NAME OF NATIONAL SECURITY.

1        THIS IS NOTHING NEW IN AMERICAN JURISPRUDENCE, IT'S

2    BEEN SAID BEFORE.  IT WAS SAID IN 1952 IN THE STEEL SEIZURE

3    CASE, YOUNGSTOWN CASE, WHERE JUSTICE JACKSON SAID IN HIS FAMOUS

4    CONCURRING OPINION THIS:  IT'S THIRD PRONG FOR ASSESSING THE

5    EXTENT OF PRESIDENTIAL POWER, HE SAID THIS.

6        "WHEN THE PRESIDENT TAKES MEASURES INCOMPATIBLE WITH

7    EXPRESS OR IMPLIED WILL OF CONGRESS, HIS POWER IS AT ITS LOWEST

8    EBB, WHERE HE CAN RELY ONLY UPON HIS OWN CONSTITUTIONAL POWERS

9    MINUS ANY CONSTITUTIONAL POWERS OF CONGRESS OVER THE MATTER."

10   ONE WOULD THINK THAT WOULD SETTLE THE QUESTION.

11       BUT EVIDENTLY THIS STATEMENT OF CONSTITUTIONALITY

12   NEEDS TO BE SAID AGAIN IN THIS CASE AND WE ARE ASKING THIS

13   COURT TO SAY IT.

14       30 YEARS AGO CONGRESS EXPRESSED ITS WILL IN FISA.

15   CONGRESS SAID DOMESTIC ELECTRONIC SURVEILLANCE, FOREIGN

16   INTELLIGENCE PURPOSES REQUIRES A COURT ORDER, A FISA WARRANT.

17       CONGRESS INTENDED FOR FISA TO PUT PRESIDENTIAL POWER

18   AT ITS LOWEST EBB.  IN THE WORDS OF JUSTICE JACKSON.  IN HAMDAN

19   VERSUS RUMSFELD A FEW YEARS AGO JUSTICE KENNEDY SAID IN HIS

20   CONCURRING OPINION THIS.  AND I'M QUOTING.

21       "CONGRESS IN THE PROPER EXERCISE OF ITS POWER AS AN

22   INDEPENDENT BRANCH OF GOVERNMENT HAS SET LIMITS ON THE

23   PRESIDENT'S AUTHORITY."  IN THAT CASE INVOLVING UNIFORM CODE OF

24   MILITARY JUSTICE.

25       THAT'S WHAT HAPPENED HERE.  CONGRESS HAS SET LIMITS ON

1   THE PRESIDENT'S AUTHORITY TO CONDUCT DOMESTIC ELECTRONIC

2   SURVEILLANCE FOR FOREIGN INTELLIGENCE PURPOSE.  THESE LIMITS

3   ARE BINDING ON THE PRESIDENT OF THE UNITED STATES.

4          IN THE WORDS OF ANOTHER JUSTICE OF THE U.S. SUPREME

5   COURT BURGER IN THE UNITED STATES VERSUS NIXON:

6          "THE PRESIDENT IS NOT ABOVE THE LAW.  THE PRESIDENT

7   MUST FOLLOW NECESSARILY FROM CONGRESS."

8          AS LONG AS I'M QUOTING FAMOUS PEOPLE LET ME QUOTE THE

9   FATHER OF OUR CONSTITUTION JAMES MADISON FEDERALIST NUMBER 47,

10  IF I MAY BE SO POMPOUS.  JAMES MADISON SAID THIS.

11         "THE ACCUMULATION OF ALL POWERS IN THE SAME HANDS MAY

12  JUSTICE BE PRONOUNCED THE VERY DEFINITION OF TYRANNY.  THE VERY

13  DEFINITION OF TYRANNY".  END OF QUOTE.

14         THE THEORY OF PRESIDENTIAL POWER UNDERLYING THE

15  TERRORIST SURVEILLANCE PROGRAM WOULD CONCENTRATE TOO MUCH POWER

16  IN A SINGLE PERSON'S HANDS, THE POWER TO BREAK THE LAW.

17         I THINK, THAT'S REALLY DANGEROUS.  IT'S ACTUALLY

18  MONARCHICAL.  IT'S WHAT THE AMERICAN REVOLUTION WAS ALL ABOUT

19  AND IT'S WHAT OUR CONSTITUTIONAL SYSTEM OF CHECKS AND BALANCES

20  IS INTENDED TO PREVENT, AN IMBALANCE OF GOVERNMENT POWER.

21         LET ME OFFER THE COURT ANOTHER QUOTE.  THE INHERENT

22  POWER THEORY IS HERE, THE QUOTE BEGINS, "PARTICULARLY DANGEROUS

23  BECAUSE IT COMES AT THE EXPENSE OF BOTH CONGRESS' AND THE

24  JUDICIARY, POWER TO DEFEND THE INDIVIDUAL LIBERTIES OF

25  AMERICANS."  END OF QUOTE.

1       THAT'S ACTUALLY FROM THE DEPARTMENT OF JUSTICE.  AT

2   LEAST, ONE OF ITS MEMBERS, ASSOCIATE DEPUTY ATTORNEY GENERAL

3   DONALD VERRILLI IN AMICUS BRIEF I FILED IN THE ACLU VERSUS NSA

4   LITIGATION.

5       LET ME QUOTE SOME MORE FROM THE BRIEF.  I SAID THIS

6   ABOUT THE STEEL SEIZURE CASE.  THE SUPREME COURT -- BEGINNING

7   THE QUOTE "SUPREME COURT ESTABLISH THAT CONGRESS CAN, EVEN

8   DURING TIME OF WAR, REGULATE THE INHERENT POWER OF THE

9   PRESIDENT THROUGH DULY ENACTED LEGISLATION, THAT IS PRECISELY

10  WHAT FISA DOES."  END OF THE QUOTE.

11      AND, FINALLY, THIS FROM MR. VERRILLI, "THE NSA

12  SURVEILLANCE PROGRAM UPENDS THE BALANCE ALONG THE THREE

13  BRANCHES OF GOVERNMENT AND THEREBY THREATENS BEDROCK LIBERTIES,

14  THE CONSTITUTION AND THE BILL OF RATES ARE DESIGNED TO

15  PROTECT."  END OF QUOTE.  AND I CANNOT POSSIBLY SAY IT BETTER

16  THAN THAT.

17      SO I'D LIKE TO MOVE AWAY FROM THE MERITS BACK TO ONE

18  OF THE STANDING ISSUES.  AND THAT'S REALLY THE ONLY NEW ISSUE,

19  I BELIEVE, THE GOVERNMENT HAS PRESENTED IN THEIR OPPOSITION TO

20  OUR MOTION AND IN THEIR CROSS-MOTION.

21      THAT'S THE QUESTION OF THE NINTH CIRCUIT MANDATE.

22  THEY ARGUE THE NINTH CIRCUIT MANDATE FROM BACK IN 2007

23  FORECLOSES AN ADJUDICATION OF STANDING IN THIS CASE.

24      THE CASE LAW SAYS OTHERWISE, ACTUALLY, AND RATHER THAN

25  JUST MOUTHING OFF WHAT I'D LIKE THE LAW TO BE I'LL REPEAT WHAT

1    THE LAW ACTUALLY IS.  NINTH CIRCUIT AUTHORITY.

2         <u>NGUYEN VERSUS UNITED STATES</u>, IT'S N-G-U-Y-E-N, SAYS,

3    "THAT UNLESS THE NINTH CIRCUIT AND THE COURT OF APPEALS SAYS

4    THERE SHALL NOT BE AMENDMENT OF THE COMPLAINT ON REMAND, THERE

5    MAYBE, THIS COURT HAS DISCRETION TO DISMISS WITH LEAVE TO

6    AMEND, WHICH IS PRECISELY WHAT THIS COURT DID, UPON THE REMAND

7    FROM THE COURT OF APPEALS."

8         SECOND CASE <u>CASSETT VERSUS STEWART</u> SAID THAT UNLESS

9    THE APPELLATE COURT DIRECTION A FORUM OF DISMISSAL IT NOT NEED

10   BE, IT NEED NOT BE WITH PREJUDICE, AND THAT'S PRECISELY WHAT

11   THE COURT DID HERE.

12        BACK IN JULY OF 2008 THE COURT SAID I AM DISMISSING,

13   BUT NOT WITH PREJUDICE, I'M DISMISSING WITH LEAVE TO AMEND.

14   NOTHING IN THE NINTH CIRCUIT MANDATE PRECLUDES THE PROCEEDINGS

15   IN WHICH WE ARE NOW ENGAGED IN TODAY, WE CAN GO FORWARD AND WE

16   SHOULD GO FORWARD.

17        **THE COURT:**  I HOPE NOT.

18        **MR. EISENBERG:**  ME, TOO, YOUR HONOR.

19        **THE COURT:**  WE'VE BEEN SPENDING A LOT OF TIME

20   NEEDLESSLY.

21        **MR. EISENBERG:**  I FEEL REALLY CONFIDENT ABOUT THIS,

22   ACTUALLY, IT'S NOT THERE, IT'S JUST SIMPLY NOT THERE.  THESE

23   PROCEEDINGS ARE CONSISTENT NOT ONLY WITH THE NINTH CIRCUIT

24   MANDATE, BUT THE SPIRIT OF ITS MANDATE.

25        MR. COPPOLINO HAS ARGUED IN THE PAST PREVIOUS HEARING

1   BEFORE THIS COURT IT DOESN'T MATTER WHETHER YOU FIND LIABILITY,

2   YOU STILL HAVE THE SAME SECRECY PROBLEMS WITH THE TRIAL OF

3   DAMAGES WHICH, I BELIEVE, WOULD BE OUR NEXT STEP AND I'M HERE

4   TODAY TO TELL YOU, YOUR HONOR, THAT'S SIMPLY NOT TRUE.

5        WE CAN ESTABLISH DAMAGES JUST LIKE WE'VE ESTABLISHED

6   STANDING, ON PURELY PUBLIC INFORMATION.  THAT'S WHAT WE INTEND

7   TO DO.

8        AND I WILL TELL YOU BRIEFLY, YOUR HONOR, HOW WE INTEND

9   TO DO THAT AND GET INTO IT FURTHER, IF YOU WISH, BUT I DON'T

10   THINK THERE'S A NEED FOR IT AT THIS POINT.

11        WHAT WE HAVE, IS WE KNOW THERE WAS SURVEILLANCE

12   BETWEEN THE BEGINNING OF THE 2004 INVESTIGATION OF AL-HARAMAIN,

13   FEBRUARY 2004, FEBRUARY 16TH, I BELIEVE, AND THE END OF IT

14   SEPTEMBER 9TH OF 2004 WHEN OFAC ISSUED ITS TERRORIST

15   DESIGNATION AND DECLARED DIRECT LINKS.

16        THAT'S THE PERIOD AT THIS POINT IN THE LITIGATION

17   THREE AND A HALF YEARS AFTER WE FILED OUR COMPLAINT THAT WE ARE

18   FOCUSING ON FOR OUR DAMAGES PERIOD.

19        **THE COURT:**  WHY ARE YOU FOCUSING ON THAT PERIOD?

20        **MR. EISENBERG:**  WE KNOW FROM PUBLIC EVIDENCE THE

21   REASON WHY IT'S MOST CONVENIENT AND HELPFUL, I BELIEVE, TO THIS

22   COURT TO MOVE THE CASE FORWARD.

23        PERSONALLY I BELIEVE THEY SURVEILLED, I BELIEVE THAT

24   THEY CONDUCTED WARRANTLESS ELECTRONIC SURVEILLANCE OF THESE

25   PLAINTIFFS RIGHT THROUGH THE VERY END OF THE PROGRAM, BUT

1    PROBLEMS OF PROOF, TO THAT EXTENT, WOULD BE PRESENTED.

2            THERE ARE NO SUCH PROBLEMS OF PROOF IF WE USE A FINITE

3    PERIOD, AND IN A MOMENT, I THINK, YOUR HONOR WILL UNDERSTAND

4    WHY THAT'S ESPECIALLY TRUE, WE HAVE THIS FINITE PERIOD.

5            WE KNOW THEY RELIED OR WE INFER, AND THERE'S NO

6    REBUTTAL OF THIS INFERENCE, THAT THEY RELIED ON SURVEILLANCE TO

7    DECLARE DIRECT LINKS.  ONCE THEY DECLARED DIRECT LINKS ON

8    SEPTEMBER 9TH 2004, LET'S STOP THERE JUST FOR THE SAKE OF ALL

9    OF US, FOR THE CONVENIENCE, FOR THE SIMPLICITY OF IT.

10           NOW, LET ME TURN TO THE INSPECTOR GENERAL'S REPORT

11   WHICH PROVIDES A CRUCIAL PUBLIC LINK, THAT HELPS US NAIL DOWN

12   THIS PERIOD AS OUR DAMAGES PERIOD.  IT'S AT PAGE 30 OF THE

13   REPORT AND THAT WOULD BE IN MY SUPPLEMENTAL DECLARATION EXHIBIT

14   CC, PAGE 35.

15           THERE THE INSPECTORS GENERAL STATE PUBLICLY THAT THE

16   TERRORIST SURVEILLANCE PROGRAM WAS TRANSITIONED, THAT'S THE

17   WORD THEY USED, TRANSITIONED TO FISA OVER A TWO-YEAR PERIOD.

18   THAT'S QUOTE FROM THE REPORT, QUOTE "OVER A TWO-YEAR PERIOD"

19   UNQUOTE, AFTER WHICH OR UPON WHICH THE TSP WAS DISCONTINUED ON

20   FEBRUARY 1ST 2007.

21           THAT TELLS US SOMETHING REALLY IMPORTANT, THE

22   TRANSITION DIDN'T OCCUR UNTIL EARLY 2005.  BEFORE THEN NONE OF

23   THE TSP SURVEILLANCE HAD BEEN TRANSITIONED TO THE FISA'S COURT

24   AND OUR DAMAGES PERIOD IS BEFORE THEN, IT IS FEBRUARY TO

25   SEPTEMBER OF 2004, BEFORE THE TRANSITIONING BEGAN.

1              THAT IS A PERIOD FROM WHICH WE CAN STATE WITH GREAT

2      ASSURANCE BASED SOLELY ON THE PUBLIC RECORD WHEN OUR CLIENT

3      WERE SURVEILLED WITHOUT WARRANT UNDER TSP.

4              **THE COURT:**  YOU'RE RELYING, AT LEAST, IN PART OF ON

5      MR. COMEY'S TESTIMONY BEFORE THE SENATE THAT YOU INCLUDE IN THE

6      MATERIALS THAT YOU SUBMITTED?

7              **MR. EISENBERG:**  HE KNEW -- WELL, YES, YES, THEY

8      BELIEVE THE PROGRAM WAS ILLEGAL, NOW WE KNOW WHY THEY BELIEVE

9      THE PROGRAM WAS ILLEGAL.

10             WE LEARN THAT FROM THE INSPECTOR GENERAL'S REPORT THE

11     REASON WHY, ONE OF THE REASONS WHY THERE WAS THIS UPROAR IN

12     MARCH 2004, ONLY ONE OF THE REASONS.

13             **THE COURT:**  THERE WAS A WHAT?

14             **MR. EISENBERG:**  ONE OF THE REASONS WHY UPROAR, THE

15     UPROAR, THE BEDSIDE -- THE HOSPITAL BEDSIDE INCIDENT.  A LOT OF

16     IT REMAINS SHROUDED IN MYSTERY, BUT ONE THING WE KNOW FROM THE

17     INSPECTOR GENERAL'S REPORT IS THAT MR. GOLD SMITH CAME IN

18     REPLACING MR. YOO AS THE HEAD OF LEGAL COUNSEL, AND TOOK A LOOK

19     AT YOO'S MEMO DECLARING THE LEGAL JUSTIFICATION FOR THE TSP,

20     AND THAT LEGAL JUSTIFICATION WAS THE INHERENT POWER THEORY TO

21     WHICH I JUST SPOKE, AND MR. GOLD SMITH DETERMINED THAT THE

22     INHERENT POWER THEORY WAS FATALLY FLAWED, IT DID NOT SUPPORT

23     THE PROGRAM.

24             MR. GOLD SMITH ALONG WITH THE ASSISTANCE OF

25     MR. FILIBON PUT TOGETHER A NEW THEORETICAL JUSTIFICATION FOR

1    THE TERRORIST PROGRAM, IT WAS THE AUMF THEORY.

2         THIS IS ALL IN THE INSPECTOR GENERAL'S REPORT AND WHEN

3    THE PROGRAM WAS RECERTIFIED, I BELIEVE, IT WAS MAY 6TH OF 2004

4    BY THE DOJ, REMEMBER THEY REFUSED TO RECERTIFY IT IN MARCH,

5    WHEN IT WAS RECERTIFIED IT WAS ON THE AUMF THEORY.

6         AND NOW I'VE FORGOTTEN WHY I'M MAKING THIS POINT, YOUR

7    HONOR.

8         **THE COURT:**  WELL, COINCIDE WITH YOUR DAMAGE PERIOD.

9         **MR. EISENBERG:**  YES, YES, THAT'S RIGHT.  THANK YOU

10   VERY MUCH.  SOMETIMES IT FRIGHTENS ME I LOSE MYSELF IN THOUGHT.

11        COINCIDE WITH THE DAMAGE PERIOD.  THEY KNEW DURING OUR

12   DAMAGE PERIOD THAT THIS PROGRAM WAS UNLAWFUL, THAT THE SOLE

13   JUSTIFICATION FOR IT CONCOCTED BY MR. YOO, THE INHERENT POWER

14   THEORY WAS NO GOOD, IT WAS FLAWED.

15        NOW, THE THEORY THEY CAME UP WITH LATER WAS JUST AS

16   TAD, MAYBE EVEN WORSE, THE AUMF THEORY.  BUT DURING THIS PERIOD

17   OF TIME THEY KNEW THAT THE LEGAL UNDISPUTED FACT UNDERPINNINGS

18   FOR THIS CASE WERE BAD.

19        SO WE CAN DO THE NUMBERS, I COME UP WITH 202 DAYS OF

20   SURVEILLANCE THE -- OF THREE PEOPLE AL-HARAMAIN, ASIM GHAFOOR

21   AND WENDELL BELEW.

22        THE STATUTE 50 U.S. CODE SECTION 11810 PROVIDES A

23   HUNDRED DOLLARS A DAY, YOU CAN DO THE MATH, THAT'S 20,000, $200

24   PER PLAINTIFF.  WE CAN TALK ABOUT PUNITIVE DAMAGES, I'M

25   MINDFUL, VERY MINDFUL OF THE GORE CASE, G-O-R-E, WHICH

1    GENERALLY, THINK CAP OF A RATIO OF 10 TO ONE GENERALLY, WILL

2    KEEP THAT IN MIND.

3            WE HAVE A FAIRLY MODEST SUM OF DAMAGES IN THIS CASE

4    AND A VERY FINITE SUM, EXCEPT FOR THE PUNITIVES WHICH, OF

5    COURSE, CAN BE IN THIS COURT'S DISCRETION.  AND ALL OF THAT'S

6    ON -- ALL OF THAT IS ON UNCLASSIFIED INFORMATION.

7            I DON'T BELIEVE WE EVEN NEED CLASSIFIED INFORMATION ON

8    PUNITIVE DAMAGES, ALTHOUGH, AGAIN, IT WOULD BE HELPFUL.  IT

9    WOULD BE NICE TO HAVE, BUT WE WOULD JUST PREFER NOT TO GO THERE

10   FOR THE SAKE OF SIMPLICITY AND WRAPPING UP THIS LITIGATION AND

11   SENDING IT UP ON APPEAL ON A FINAL JUDGMENT.

12           I DON'T BELIEVE WE EVEN NEED AN EVIDENTIARY HEARING ON

13   DAMAGES.  EVERYTHING CAN BE AND, I BELIEVE, SHOULD BE DONE ON

14   DOCUMENTARY EVIDENCE, ON THE RECORD WE'VE ALREADY PRESENTED.

15           NO NEED FOR LIVE TESTIMONY UNLESS THE DEFENDANTS WISH

16   TO PRESENT IT AND THAT I CANNOT IMAGINE.  SO ONCE DAMAGES ARE

17   ADJUDICATED THE CASE OVER, UP WE GO ON APPEAL.

18           **THE COURT:**  LET ME --

19           **MR. EISENBERG:**  HOPEFULLY ONLY ONCE.  NOW, FINALLY LET

20   ME MENTION DEFENDANT ROBERT MUELLER HE'S STILL OUT THERE.

21           YOUR HONOR ALLOWED US TO SERVE HIM WITH, FILE OUR

22   AMENDED COMPLAINT AND SERVE MR. MUELLER INDIVIDUALLY.  WE

23   AGREED TO PUT MR. MUELLER ON THE SHELF FOR THE TIME BEING, HE'S

24   NOT BEEN SERVED.  WE HAVE AGREED THERE WILL BE NO NEED TO SERVE

25   HIM UNTIL THERE'S AN ADJUDICATION OF STANDING.

1        IF THAT WERE TO OCCUR IN THE NEAR FUTURE, WHICH I

2   FERVENTLY DESIRE, IT WILL COME TIME FOR MR. MULLER TO ANSWER.

3   WE'RE IN NO HURRY FOR THAT TO HAPPEN.  WE ARE PREPARED TO WAIT

4   AND WE'LL HAVE TO DISCUSS THIS WITH MR. MUELLER'S ATTORNEYS.

5        I JUST WANTED THE COURT TO KNOW WE ARE PREPARED TO

6   WAIT ON MR. MUELLER UNTIL THE FINAL ADJUDICATION IN THIS CASE,

7   STRAIGHT THROUGH ON APPEAL BECAUSE REALLY AT THIS POINT WE

8   BELIEVE MR. MUELLER IS A COROLLARY WE NEEDN'T GET TO.

9        MR. GOLDBERG REMINDS ME THAT MR. MUELLER HAS ACTUALLY

10  ACCEPTED SERVICE, BUT HE HAS NOT ANSWERED.  SO WE CAN DISCUSS

11  MR. MUELLER FOR WHEN THE TIME COMES, BUT I THOUGHT THE COURT

12  SHOULD BE AWARE THAT RIGHT NOW WE REALLY DON'T SEE ANY NEED TO

13  PURSUE THAT AVENUE.

14       **THE COURT:**  BEFORE YOU CONCLUDE LET ME ASK YOU TO TELL

15  ME THE BACKGROUND AND WHAT OCCURRED, EITHER IN THE PROCEEDINGS

16  IN OREGON OR THE ARGUMENTS BEFORE THE NINTH CIRCUIT, THAT LEAD

17  IN THE NINTH CIRCUIT'S NOVEMBER 16, 2007 DECISION TO STATE THAT

18  AL-HARAMAIN CANNOT ESTABLISH IT'S SUFFERED INJURY, IN FACT, A

19  CONCRETE AND PARTICULARIZED INJURY BECAUSE THE SEALED DOCUMENT

20  WHICH AL-HARAMAIN ALLEGES PROVES THAT ITS MEMBERS WERE

21  UNLAWFULLY SURVEILLED IS PROTECTED BY THE STATES SECRET

22  PRIVILEGE.

23       AT ORAL ARGUMENT COUNSEL FOR AL-HARAMAIN ESSENTIALLY

24  CONCEDED THAT AL-HARAMAIN CANNOT ESTABLISH A STANDING WITHOUT

25  REFERENCE TO THE SEALED DOCUMENTS.  WHAT'S THE BACKGROUND OF

1   THAT?

2          AND WHAT IS THE EFFECT OF THAT STATEMENT FOR PURPOSE

3   OF THE STANDING DETERMINATION HERE?

4          **MR. EISENBERG:**  I MADE THAT STATEMENT A LONG TIME AGO.

5   LET'S SEE, THAT WOULD BE OCTOBER OF 2007, THIS IS NOW -- EXCUSE

6   ME, AUGUST OF 2007 THIS IS NOW SEPTEMBER OF 2009, THE ORAL

7   ARGUMENT.

8          **THE COURT:**  ARGUED ON AUGUST 15.

9          **MR. EISENBERG:**  THANK YOU.

10          **THE COURT:**  AND FILED ON NOVEMBER 16TH.

11          **MR. EISENBERG:**  SO THE STATEMENT I MADE THAT WAS AT

12   ORAL ARGUMENT, IN WHICH SEEMS TO ME ALMOST A DIFFERENT LIFE

13   TIME, MORE THAN TWO YEARS AGO.

14          AT THAT TIME WE HAD THIS DOCUMENT, WE HAD A -- THE

15   OREGON DISTRICT JUDGE SAYING WE CAN USE OUR MEMORIES OF THE

16   DOCUMENT TO ESTABLISH STANDING, AND WE KNEW THAT IF WE COULD DO

17   THAT THAT'S ALL WE NEEDED.

18          WE DIDN'T NEED TO MARSHAL PUBLIC EVIDENCE, WE DIDN'T

19   NEED ANYTHING ELSE, AND THERE WASN'T THAT MUCH PUBLIC EVIDENCE

20   THERE IN THE RECORD AT THE TIME.

21          I ACTUALLY HADN'T REALLY MADE THE EFFORT BECAUSE I SAW

22   NO NEED AND I'LL TELL YOU, YOUR HONOR, IF I MADE THE EFFORT IN

23   THE SUMMER OF 2007 I WOULD NOT HAVE COME UP WITH VERY MUCH.

24          SOME OF WHAT WE PRESENTED TO YOU I HAVE COME UP WITH,

25   BUT THERE'S -- THERE ARE TWO CRITICAL THINGS WE KNEW NOTHING

1   ABOUT IN THE SUMMER OF 2007.

2          **THE COURT:**  LET'S SEE, YOU DIDN'T HAVE PISTOLE'S

3   OCTOBER 22 SPEECH TO THE AMERICAN BANKERS ASSOCIATION AT ORAL

4   ARGUMENT.

5          **MR. EISENBERG:**  RIGHT, WE DID NOT HAVE THAT.  THAT

6   CAME OCTOBER 22ND AT ABOUT THREE WEEKS PLUS BEFORE THE NINTH

7   CIRCUIT ISSUED ITS DECISION.

8          BUT I DIDN'T FIND IT UNTIL . . . AUGUST OF 2008 WHEN

9   WE WERE PUTTING TOGETHER OUR AMENDED COMPLAINT, THAT'S WHEN I

10  FOUND IT.  I ACTUALLY DON'T KNOW WHEN THAT WENT UP ON THE

11  WEBSITE, I SUSPECT IT WAS NOT OCTOBER 22ND.

12         IN ANY CASE, WE DIDN'T HAVE THAT AT THE TIME OF ORAL

13  ARGUMENT, THAT IS CRUCIAL.  THAT'S WHEN I SPOKE TO YOUR HONOR'S

14  FIRST QUESTION AT THE BEGINNING OF THIS HEARING, I STARTED WITH

15  MR. PISTOLE'S ADMISSION THAT THEY SURVEILLED AL-HARAMAIN, WE

16  PROCEED FROM THAT TO OUR ULTIMATE INFERENCE.

17         THE SECOND THING WE DIDN'T HAVE, WE DIDN'T HAVE THE

18  TESTIMONY BY MEMBERS OF THE BUSH ADMINISTRATION BEFORE CONGRESS

19  THAT TOLD US HOW THEY INTERCEPT COMMUNICATIONS, WHICH IS THEY

20  DO IT ON A WIRE FROM ROUTING STATIONS WITHIN THE UNITED STATES,

21  WHICH MAKES IT ELECTRONIC SURVEILLANCE WITHIN THE MEANING OF

22  FISA SECTION 1801 DEFINITION.

23         THAT WAS A REALLY CRITICAL PIECE OF INFORMATION FOR US

24  BECAUSE THAT MADE OUR CASE, THAT THIS WAS ELECTRONIC

25  SURVEILLANCE, THAT THE WAY THEY INTERCEPT COMMUNICATIONS OF THE

1    SORT BETWEEN MR. AL-BUTHI AND THE TWO LAWYERS IN WASHINGTON IS

2    BY TAKING THEM OFF OF A WIRE IN THE UNITED STATES.  WE DIDN'T

3    HAVE THAT IN 2007 AND IT'S REALLY CRITICAL.

4         SO WHEN I WAS ASKED THAT QUESTION IN THE SUMMER 2007 I

5    DID SOMETHING THAT COMES NATURAL TO ME AND THAT, I THINK, EVERY

6    GOOD APPELLATE LAWYER SHOULD DO, BUT SOMETIMES WE LIVE TO

7    REGRET, I WAS HONEST.

8         I TOLD THE COURT WITHOUT THIS DOCUMENT I DON'T HAVE

9    STANDING BECAUSE AT THE TIME I DIDN'T HAVE THE TESTIMONY ABOUT

10   HOW COMMUNICATIONS INTERCEPTED AND I DIDN'T HAVE MR. PISTOLE'S

11   ADMISSION.

12        HAVING THOSE TWO THINGS MAKES IMMENSE DIFFERENCE.  I

13   DON'T BELIEVE THE COURT OF APPEALS COULD HAVE DREAMED THAT

14   WOULD HAPPEN.  WHO WOULD EXPECTED THE DEPUTY DIRECTOR OF THE

15   FBI TO POST ON THE FBI'S WEBSITE AN ADMISSION LIKE THAT.

16        THIS MIND YOU AFTER MR. BONDE (PHONETIC) STOOD UP, THE

17   GOVERNMENT'S APPELLATE ATTORNEY STOOD UP BEFORE THE NINTH

18   CIRCUIT AND SAID IT'S A STATE SECRET WHETHER ANYBODY BEEN

19   SURVEILLED UNDER ANY PROGRAM, WE DON'T CONFIRM OR DENY

20   SURVEILLANCE UNDER ANY PROGRAM.

21        THEN A FEW MONTHS LATER THEY DO IT FOR THE WHOLE WORLD

22   TO SEE ON THE WEBSITE WHICH I FOUND THROUGH GOOGLE.  PRETTY

23   REMARKABLE, ONE OF THE MANY REMARKABLE THINGS ABOUT THIS CASE.

24        SO WHEN I SPOKE IN 2007 I WAS SPEAKING HONESTLY.  AND

25   I WILL TELL THE COURT HONESTLY TODAY TWO YEARS LATER THINGS ARE

1    VERY DIFFERENT.

2            AND, YOUR HONOR, THAT ABOUT WRAPS IT UP FOR ME, UNLESS

3    YOU HAVE ANY QUESTIONS.

4            **THE COURT:**  VERY WELL.  THANK YOU, MR. EISENBERG.

5            MR. COPPOLINO, LET'S START WITH EXACTLY WHERE

6    MR. EISENBERG LEFT OFF.  THAT IS, THE EFFECT OF THE STATEMENT

7    IN THE NINTH CIRCUIT DECISION IN NOVEMBER 2007, THAT

8    AL-HARAMAIN CANNOT ESTABLISH STANDING WITHOUT REFERENCE TO THE

9    SEALED DOCUMENT.

10           ISN'T THAT SIMPLY A CONCESSION FOR PURPOSE OF ARGUMENT

11   THAT COUNSEL MADE AND NOT, IN FACT, A BINDING DETERMINATION BY

12   THE CIRCUIT COURT?

13           **MR. COPPOLINO:**  I DON'T AGREE IT IS JUST A MERE

14   CONCESSION AND NOT A BINDING DETERMINATION.

15           **THE COURT:**  DID THE NINTH CIRCUIT FORECLOSE THE

16   POSSIBILITY OF THE PLAINTIFFS RELYING UPON PUBLIC INFORMATION?

17           **MR. COPPOLINO:**  I BELIEVE THAT THEY DID, YOUR HONOR,

18   FOR THE REASONS --

19           **THE COURT:**  WHERE?

20           **MR. COPPOLINO:**  I WAS ABOUT TO EXPLAIN THAT.  I THINK,

21   THE NINTH CIRCUIT ADDRESSED TWO ISSUES, TWO ISSUES AND

22   DEFINITIVELY RESOLVED ONE.

23           THE VERY LANGUAGE THAT YOU JUST QUOTED OR, AT LEAST,

24   THAT'S ONE OF THE THINGS THAT THEY SAID, THEY SAID, AL-HARAMAIN

25   CANNOT ESTABLISH ITS STANDING WITHOUT THE PRIVILEGED

1   INFORMATION.  AND THEY ALSO SAID THAT ITS CLAIMS MUST BE

2   DISMISSED UNLESS THERE'S FISA PREEMPTION.

3        NOW, I DON'T SEE WHAT IS NOT CLEAR ABOUT THAT.  THE

4   NINTH CIRCUIT IS SAYING YOU LOSE, CASE OVER, UNLESS YOU HAVE

5   THIS FISA PREEMPTION, AND WE'RE GOING TO REMAND THAT TO THE

6   DISTRICT COURT.

7        THAT WAS THE ROAD THAT WAS AVAILABLE TO THEM BECAUSE

8   OTHERWISE THE COURT RULED BASED IN PART ON WHAT MR. EISENBERG

9   SAID AT THE ORAL ARGUMENT.

10       **THE COURT:**  WHERE WAS THE CONSIDERATION OF PUBLIC

11  INFORMATION BY THE NINTH CIRCUIT?

12       **MR. COPPOLINO:**  I THINK, THE PRINCIPLE CONSIDERATION

13  AS THE FACT THEY SPECIFICALLY REQUIRED MR. EISENBERG, ANY OTHER

14  EVIDENCE HE WOULD BRING FORWARD TO ADDRESS THE QUESTION OF

15  WHETHER THAT WOULD IN ANY WAY SUPPORT HIS ARGUMENT.

16       **THE COURT:**  HE'S SAYING HERE NOW THAT AT THAT TIME HE

17  WOULD NOT, BUT A LOT OF INFORMATION HAS DEVELOPED IN THE

18  MEANTIME WHICH HAS CHANGED HIS LITIGATION POSTURE.  WHY ISN'T

19  THAT A PERFECTLY LEGITIMATE POSITION FOR HIM TO TAKE?

20       **MR. COPPOLINO:**  BECAUSE IT'S DISINGENUOUS.

21       **THE COURT:**  DISINGENUOUS NECESSARILY IS NOT A GROUND

22  FOR --

23       **MR. COPPOLINO:**  LET ME POINT OUT --

24       **THE COURT:**  IN OUR BUSINESS, MR. COPPOLINO,

25  DISINGENUOUS IS ALL OVER THE PLACE.

1      **MR. COPPOLINO:**  THIS IS HIS AFFIDAVIT.  THIS IS DOCKET

2   99-1.  EVERY SINGLE ONE THESE EXHIBITS EXCEPT FOR THAT PISTOLE

3   SPEECH, I CAN TELL THERE'S ONE OTHER THE OFAC 2008, OFAC GAVE

4   THEM SOME MATERIAL IN FEBRUARY 2008, EVERY SINGLE ONE OF THESE

5   ITEMS WAS AVAILABLE BEFORE AUGUST 2007.

6      THE ONLY THING THAT HE'S RELYING ON TODAY IS THE

7   PISTOLE SPEECH, THIS IS THE DEPUTY FBI DIRECTOR, THAT'S THE

8   ONLY THING THAT HE IS SAYING IS NEW, SO THAT'S POINT ONE.  WE

9   CAN TALK ABOUT PISTOLE'S SPEECH IN A SECOND.

10      **THE COURT:**  THAT'S ISN'T QUITE ACCURATE, IS IT?

11      **MR. COPPOLINO:**  THREE THINGS I CAN DETECT.  PISTOLE'S

12   SPEECH WAS OCTOBER 2007, THAT'S EXHIBIT S, EXHIBIT R WAS A

13   LETTER TO MR. NELSON AND MS. BURN BY FEBRUARY 6TH 2008, THAT'S

14   EXHIBIT R AND EXHIBIT E.

15      EXHIBIT Z WAS A LETTER -- AS A MEMORANDUM FROM OFAC

16   REGARDING THE REDESIGNATION OF AL-HARAMAIN FEBRUARY 6TH 2008,

17   EVERYTHING ELSE PREDATES THE ORAL ARGUMENT.

18      **THE COURT:**  LET'S LOOK AT THAT EXHIBIT Z, THE FEBRUARY

19   2008 MEMORANDUM.  BATES STAMP 139, I'M SORRY, 130.  IT BEGINS

20   INTERCEPTS, INTERCEPTS, INTERCEPTS DISCLOSED DURING AL-TIMINI'S

21   TRIAL REVEALED A RELATIONSHIP BETWEEN AL-TIMINI AND AL-BUTHE.

22      AL-BUTHE WAS INTERCEPTED IN SOME FOUR CONVERSATIONS.

23   AL-TIMINI IN AN INTERCEPT ON FEBRUARY 1, 2003, AT 1538,

24   AL-TIMINI SPOKE WITH FMULMU SUBSEQUENTLY DETERMINED TO BE

25   SOLIMAN AL-BUTHI.

1        SKIPPING TWO LINES.  DURING THE CONVERSATION FMULMU

2   PROVIDED AL-TIMINI WITH THE FOLLOWING FAX NUMBER (966)

3   120-6331.  DURING THE SAME INTERCEPT FMULMU PASSED THE

4   TELEPHONE TO AHMED MLNU.  AFTER A BRIEF CONVERSATION AL-TIMINI

5   TOLD AHMED MLNU TO ASK SOLIMAN AL-BUTHI TO CALL HIM, AL-TIMINI,

6   THE NEXT DAY, AL-TIMINI COULD DICTATE SOMETHING TO SOLIMAN.

7        THAT SAME DAY AT 1620 AL-TIMINI AGAIN INTERCEPTED

8   SPEAKING TO FMULMU SUBSEQUENTLY TO DETERMINED TO BE SOLIMAN

9   AL-BUTHI.  DURING THE CONVERSATION AL-TIMINI OR THE INDIVIDUAL

10  FMULMU, PROVIDED AL-TIMINI WITH THE FOLLOWING SURVEILLANCE

11  TELEPHONE, PROBABLE FAX NUMBER, (253) 981-9150.

12       AN INTERNET QUERY LINKS THE AFOREMENTIONED TELEPHONE

13  NUMBERS WITH MORE LINK ON HERE, THE LATTER INTERNET ADDRESS FOR

14  INTERNET SEARCH CORRESPONDENCE TO THE INTERNATIONAL COMMITTEE,

15  SUPPORT OF THE FINAL PROJECT IN THE OFFICE OF THE CAMPAIGN TO

16  DEFEND THE PROPHET.  THAT'S ELECTRONIC SURVEILLANCE.

17       **MR. COPPOLINO:**  THAT'S ELECTRONIC SURVEILLANCE OF

18  AL-TIMINI.  THAT WAS ACKNOWLEDGED BY THE GOVERNMENT AT HIS, I

19  BELIEVE, HIS CRIMINAL PROCEEDING.

20       I ACTUALLY THINK THAT EVIDENCE CUTS AGAINST THEM

21  BECAUSE WHAT IT DEMONSTRATES IS THAT THERE WAS AN INTERCEPT OF

22  AN INDIVIDUAL ASSOCIATED WITH AL-HARAMAIN, MR. AL-BUTHI.  THAT

23  WAS BASED ON THE TARGET WHO WAS NOT A PLAINTIFF HERE, BY THE

24  WAY, WHO WAS BASED ON A TARGET OF SOMEONE ELSE.

25       THIS DEMONSTRATES THAT THE SURVEILLANCE THAT MAY HAVE

1    BEEN AT ISSUE IN THIS CASE DID NOT, IN FACT, HAVE TO BE OF AN

2    INDIVIDUAL ASSOCIATED WITH AL-HARAMAIN, COULD HAVE BEEN OF

3    SOMEONE ELSE, COULD HAVE BEEN OTHER SOURCES.

4           AND SO, ACTUALLY, THINK THAT PARTICULAR EXHIBIT

5    DOESN'T DEMONSTRATE, FIRST OF ALL, THAT ANY OF THESE PLAINTIFFS

6    WERE SUBJECT TO SURVEILLANCE, OR ELECTRONIC SURVEILLANCE, OR

7    ELECTRONIC SURVEILLANCE THAT WAS NOT AUTHORIZED BY THE FISA.

8           THAT SURVEILLANCE, FIRST OF ALL, COULD WELL HAVE BEEN

9    AUTHORIZED BY THE FISA.  I ACTUALLY BELIEVE IT WAS.  LET ME

10   JUST SAY, IF THAT WAS ACKNOWLEDGED AT THE PUBLIC TRIAL, WHICH

11   TYPICALLY WOULD BE IF THE GOVERNMENT IS GOING TO USE THE

12   SURVEILLANCE EVIDENCE, SO I THINK THAT EXECUTES AGAINST THEM.

13          YOUR HONOR, YOU KNOW, TO ADDRESS YOUR FIRST QUESTION,

14   IT SEEMS TO ME THAT, AS WE SET FORTH IN OUR PAPERS, THE NINTH

15   CIRCUIT DID CHART TWO COURSES.  YOU CAN EITHER TRY TO PROVE

16   YOUR STANDING THROUGH PUBLIC EVIDENCE OR THERE'S FISA

17   PREEMPTION.

18          AND IT SEEMS TO US THEY SQUARELY ADDRESSED THE

19   PUBLIC -- THE EVIDENTIARY BASIS FOR WHETHER OR NOT THERE WAS

20   STANDING.  THEY CONCLUDED, I THINK, CORRECTLY, THAT PRIVILEGED

21   INFORMATION THAT GOES TO WHETHER OR NOT AL-HARAMAIN WAS

22   SURVEILLED WAS PROPERLY PROTECTED BY THE GOVERNMENT.

23          AND SO IN THE FIRST INSTANCE OUR ARGUMENT TO YOU IS,

24   THAT THE VERY ISSUE OF WHETHER OR NOT AL-HARAMAIN WAS SUBJECT

25   TO SURVEILLANCE WAS RESOLVED BY THE NINTH CIRCUIT, AT LEAST,

1    INSOFAR AS THE STATE SECRETS PRIVILEGE WAS CONCERNED.

2         AND I DON'T THINK YOU CAN HAVE ANY MORE DEFINITIVE

3    STATEMENT THEN TO SAY YOUR CASE IS DISMISSED UNDER THE STATE

4    SECRETS PRIVILEGE, UNLESS THERE'S FISA SECRETS PRIVILEGE

5    PREEMPTION.

6         NOW, ASSUMING ARGUENDO YOU CANNOT GO FORWARD TO A

7    PUBLIC EVIDENCE OPTION, I HAVE A COUPLE JUST GENERAL POINTS TO

8    MAKE ABOUT THAT.

9         WE CERTAINLY HAVE MADE THE POINT THAT THE EVIDENCE IS

10   INSUFFICIENT, AND WE CAN DISCUSS SOME OF THE EVIDENCE, BECAUSE

11   THE EVIDENCE IS FUNDAMENTALLY SPECULATIVE AND CONJECTURAL, IN

12   OUR VIEW.

13        OBVIOUSLY, COURTS WILL EVALUATE THAT EVIDENCE AND MAKE

14   THEIR OWN JUDGMENT, BUT I BELIEVE THAT THE PROPER CONCLUSION

15   LOOKING AT ALL OF THIS EVIDENCE, IS THAT'S SPECULATIVE,

16   CONJECTURAL AND DOES NOT SATISFY THE STANDING REQUIREMENTS OF

17   ARTICLE III.

18        **THE COURT:**  WELL, BUT DOESN'T IT ESSENTIALLY PUT THE

19   BALL IN YOUR COURT, TO COME BACK WITH A RESPONSE THAT REBUTS

20   THE INFERENCE THAT IS LIKELY TO BE DRAWN FROM THIS EVIDENCE?

21        **MR. COPPOLINO:**  I DISAGREE WITH THAT, YOUR HONOR.  IN

22   A NORMAL CASE, ON A NORMAL CASE INVOLVING SUMMARY JUDGMENT, IN

23   RESPONSE TO A SUMMARY JUDGMENT MOTION I RECOGNIZE THAT THE

24   PARTY OPPOSING THE MOTION WOULD EITHER HAVE TO ESTABLISH A

25   GENUINE ISSUE OF FACT OR DEMONSTRATE SOMEHOW IT'S ENTITLED TO

1    JUDGMENT, THAT EVEN IF THERE IS NO ISSUE OF UNDISPUTED FACT,

2    THIS IS OBVIOUSLY NOT A NORMAL CASE.

3         WHAT YOU HAVE IN A STATE SECRETS PRIVILEGE CONTEXT ARE

4    NUMEROUS CASES, AND I'LL TICK SOME OF THEM OFF, HOLDING THAT

5    THE EVIDENCE ESSENTIAL TO PROVE OR DISPROVE A CLAIM IS NOT

6    AVAILABLE, IS PROPERLY WITHHELD IF IT IS NECESSARY TO

7    PLAINTIFFS ESTABLISHING THEIR STANDING, OR PRIMA FACIE CASE, OR

8    RELEVANT TO THE DEFENDANT'S DEFENSE AGAINST THEIR ALLEGATION OF

9    STANDING.

10        THEN THE ANSWER IS NOT THAT THE BURDEN SHIFTS TO THE

11   GOVERNMENT TO PRODUCE PRIVILEGED INFORMATION OR LOSE THE

12   ANSWER, JUST THE OPPOSITE.  THAT IF THE INFORMATION IS

13   NECESSARY TO LITIGATE THE QUESTION THE CASE HAS TO BE

14   DISMISSED.

15        THAT'S, OF COURSE, WHAT AL-HARAMAIN HELD LEAVING ASIDE

16   THE PREEMPTION ISSUE FOR THE MOMENT.  THAT'S WHAT CAZA HELD IN

17   THE NINTH CIRCUIT.  BOTH CASES SAID IF YOU CANNOT PROVE YOUR

18   STANDING OR IF -- AND THE OTHER PART OF THE STANDING OF THE

19   STATE SECRETS DOCTRINE, IF THE GOVERNMENT CAN'T DEFEND, THE

20   CASE GETS DISMISSED.

21        NUMEROUS OTHER CASES HAVE FOLLOWED.  THERE'S TACLU

22   CASE VERSUS NSA IN THE SIXTH CIRCUIT.  AGAIN, THE COURT

23   RECOGNIZED DISMISSAL IS REQUIRED WHERE SAYS SECRET PRIVILEGE

24   PREVENTS THE PLAINTIFF FROM ESTABLISHING WHETHER THEY WERE

25   SUBJECT TO SURVEILLANCE, HERE THE GOVERNMENT FROM GETTING

1    EVIDENCE TO REFUTE THAT ALLEGATION.

2         THE TURKEL CASE JUDGE KINELLI IN CHICAGO DISMISSED

3    ALLEGATIONS REGARDING ALLEGED COMMUNICATIONS, RECORDS

4    COLLECTION BECAUSE HE SAID STATE SECRETS PRIVILEGE FORECLOSED

5    PLAINTIFF FROM ESTABLISHING THEIR STANDARD.

6         **THE COURT:**  I'M QUITE FAMILIAR WITH THAT DECISION, YOU

7    KNOW THE REGARD I HAVE FOR JUDGE KINNELI, HOW I INTERPRET THE

8    LAW IN A DIFFERENT FASHION.

9         **MR. COPPOLINO:**  ELSBERG VERSUS MITCHELL, HOLKIN VERSUS

10   HELMS 1 AND 2 BOTH, ALL THREE OF THOSE CASES UPHELD DISMISSAL

11   BECAUSE THE EVIDENCE NECESSARY TO ESTABLISH STANDING OR TO

12   ADDRESS THE ISSUE WAS NOT AVAILABLE.

13        SO MY POINT TO YOU SIMPLY IS, THAT EVEN IF THERE IS

14   BURDEN SHIFTING IN THE NORMAL CONTEXT, I HAVE YET TO SEE A CASE

15   WHERE THE BURDEN EVER SHIFTED TO THE DEFENDANT TO ESTABLISHING

16   STANDING.

17        AND CERTAINLY THE WEAS CASE THAT THEY CITED, W-E-A-S,

18   DOES NOT HOLD THAT CONCERNING GOVERNMENT OF PERSUASION, IN SOME

19   INSTANCES THE BURDEN TO DISPROVE STANDING TO FALL TO A

20   DEFENDANT, IT'S CERTAINLY NOT CASE THAT OCCURS UNDER THE STATE

21   SECRETS PRIVILEGE, THE LAW IS JUST TO THE CONTRARY.

22        YOUR HONOR, I THOUGHT, I GUESS, I'D LIKE TO STEP BACK

23   JUST FOR A MINUTE AND GIVE YOU KIND OF A THEMATIC POINT.  I

24   RECOGNIZE THAT THROUGHOUT THIS LITIGATION THE GOVERNMENT HAS

25   TAKEN A FAIRLY FIRM POSITION IN THIS CASE, BOTH UNDER THE PRIOR

1    ADMINISTRATION AND UNDER THE CURRENT ADMINISTRATION.

2              WE ARGUED OVER AND AGAIN, I THINK, TO THE ANNOYANCE OF

3    THE COURT, THE PRIVILEGE ASSERTION STILL HOLDS.  WE ARGUED THAT

4    CAN'T BE RE-LITIGATED PURSUANT TO THE MANDATE IN THE NINTH

5    CIRCUIT.

6              WE ARGUED IT'S NOT PREEMPTED BY THE STATE, BY FISA,

7    AND WE ARGUED THEIR EVIDENCE IS INSUFFICIENT TO ESTABLISH

8    STANDING AND THAT THE BURDEN DOESN'T SHIFT TO US.

9              I RECOGNIZE THAT THAT MAY STRIKE THE COURT AS A VERY

10   HARD LINE, BUT THERE'S A REASON FOR THAT.  AND I ASK THE COURT

11   TO CONSIDER IT CAREFULLY IN ITS NEXT DECISION AND TO, PERHAPS,

12   REORIENT YOUR THINKING ABOUT THE CASE.

13             THE REASON WE'VE DONE THAT, NOT ONLY UNDER THE PRIOR

14   ADMINISTRATION, BUT UNDER THIS ADMINISTRATION, IS THAT WHAT IS

15   AT STAKE ARE CORE INTELLIGENCE SOURCES AND METHODS, WHICH IS

16   WHAT IS AT ISSUE WHEN THE QUESTION WHETHER OR NOT YOU

17   SURVEILLED SOMEONE WHO WENT WHERE, HOW, UNDER, BY WHAT METHOD

18   AND SO ON.

19             ALL OF THAT REVEALS, I THINK, THE HAWK INTELLIGENCE

20   CASE DESCRIBED MOST COGENTLY CORE INTELLIGENCE SOURCES, METHODS

21   THE GOVERNMENT HAS CONSISTENTLY PROTECTED GOING BACK YEARS.

22             THESE CASES GO BACK TO THE 70'S AND UNDOUBTEDLY BEFORE

23   THAT, AND THE REASON FOR THAT IS FOREIGN INTELLIGENCE

24   SURVEILLANCE SUCH VITAL IMPORTANCE TO NATIONAL SECURITY, IT'S

25   CRITICAL THE GOVERNMENT BE ABLE TO MAINTAIN SECRECY IN THAT

1    AREA.

2          NOW, THAT'S ESPECIALLY SO IN A CASE SUCH AS THIS WHERE

3    ONE OF THE PLAINTIFFS IS DESIGNATED TERRORIST ORGANIZATION WITH

4    LINKS TO AL-QAEDA, AND CONTRARY TO WHAT MR. EISENBERG SAID HIS

5    OWN RECORD DEMONSTRATE THOSE LINKS TO AL-QAEDA WERE DOCUMENTED

6    YEARS BEFORE 2004.

7          AND IT'S VERY VITAL TO THE GOVERNMENT THAT IN

8    PARTICULAR, GIVEN THE CONTINUING THREATS OF TERRORISM, WE NEED

9    TO PROTECT INFORMATION CONCERNING WHETHER AND METHODS BY WHICH

10   WE SEEK TO DETECT AND PREVENT FURTHER TERRORIST ATTACK.

11         AND COURTS HAVE RECOGNIZED AND ACKNOWLEDGED THAT VERY

12   MUCH OVER THE YEARS AND THAT THIS IS, THEREFORE, A CASE WHERE

13   THE PUBLIC INTEREST AND THE NATIONAL SECURITY INTEREST

14   OUTWEIGHS WHATEVER PRIVATE INTEREST THE PLAINTIFFS HAVE IN

15   PURSUING THEIR CLAIMS.

16         **THE COURT:**  WELL, RECOGNIZING THAT, AND IN NO WAY,

17   AGAIN, SAYING THE IMPORTANCE OF PROTECTING NATIONAL SECURITY

18   AND PROTECTING SOURCES OF INTELLIGENCE INFORMATION, NO QUESTION

19   OF THAT AT ALL.

20         WHAT IS CURIOUS IS THE COURSE THAT THIS LITIGATION HAS

21   TAKEN.  IF THE SOURCES OF INFORMATION ABOUT AL-HARAMAIN WERE

22   OTHER THAN ELECTRONIC SURVEILLANCE THAT WOULD HAVE BEEN QUITE

23   AN EASY PIECE OF INFORMATION TO HAVE DISCLOSED BEFORE.

24         SIMILARLY IF THERE WERE A FISA WARRANT THAT, AS

25   MR. EISENBERG PUTS IT, COULD EASILY HAVE BEEN DISCLOSED AND THE

1   CASE WOULD HAVE BEEN OVER AND DONE WITH.  AND YOU AND I WOULD

2   NOT HAVE GOTTEN TO KNOW ONE ANOTHER AS WELL AS WE HAVE,

3   MR. COPPOLINO.

4          AND YOUR PRINCIPALS WOULD BE ONGOING ONTO THE VERY

5   IMPORTANT WORK OF PROTECTING NATIONAL SECURITY AND THAT YOU

6   JUST DESCRIBED.

7          **MR. COPPOLINO:**  IF I CAN JUST RECOUNT SOME OF THE

8   HISTORY OF THE LAWSUIT WHICH, AGAIN, SET FORTH IN OUR PAPERS.

9   WE SPECIFICALLY PROTECTED NOT ONLY WHETHER THEY WERE SUBJECT TO

10  SURVEILLANCE UNDER THE TERRORIST SURVEILLANCE PROGRAM, BUT

11  UNDER ANY AUTHORITY, INCLUDING IN PARTICULAR THE FISA STATE

12  SECRETS PRIVILEGE.

13         BECAUSE AT THE BEGINNING OF THIS CASE WHEN IT WAS

14  STILL IN OREGON BEFORE JUDGE KING THEY SERVED INTERROGATORIES

15  THAT SPECIFICALLY ASKED US WHETHER OR NOT THEY WERE SUBJECT TO

16  FISA SURVEILLANCE.

17         IN THE RECORD IN CONNECTION WITH MY FOURTH MOTION AND

18  RESPONDED TO, THOSE WITH STATE SECRETS PRIVILEGE ASSERTION BY

19  THE DNI, SPECIFICALLY ASSERTED PRIVILEGE WHETHER THERE WAS ANY

20  FISA SURVEILLANCE, BECAUSE AS YOU OBSERVED FISA SURVEILLANCE

21  WOULD BE JUST AS MUCH A SECRET AS ANY OTHER TYPE OF

22  SURVEILLANCE.

23         THAT, A, WAS COVERED BY OUR PRIVILEGE ASSERTION AND,

24  B, THEREFORE, WOULD BE JUST AS REVEALING OF INTELLIGENCE

25  SOURCES AND METHODS IF WE WERE TO DISCLOSE THAT IN THE PUBLIC

1    RECORD.

2              AND THE PLAINTIFFS ARE SIMPLY SPECULATING AS TO

3    WHETHER, IN FACT, WE HAVEN'T PROVIDED THAT INFORMATION TO THE

4    COURT IN THE EX PARTE MATERIALS.

5              BUT EVEN IF WE HAD, EVEN IF THERE WAS A FISA WARRANT

6    AND WE HAD TOLD THE COURT, WE CANNOT DEFEND ON THE MERITS BY

7    PUBLICLY DISCLOSING THE EXISTENCE OF A STATE SECRET IN ORDER TO

8    PREVAIL IN THE CASE BECAUSE THAT, OF COURSE, WOULD BE -- WOULD

9    RESULT IN THE VERY HARM THAT WE'RE SEEKING TO PREVENT TO

10   NATIONAL SECURITY AND WHICH THE PRIVILEGE REQUIRES BE

11   PREVENTED, SO I THINK --

12             **THE COURT:**  WOULD THAT HAVE REQUIRED A PUBLIC

13   DISCLOSURE?

14             **MR. COPPOLINO:**  I THINK -- WELL, I THINK, WHAT COULD

15   HAPPEN, WHAT SHOULD HAPPEN, IS THAT THE COURT SHOULD LOOK AT --

16             **THE COURT:**  ISN'T THE ANSWER TO THAT NO?

17             **MR. COPPOLINO:**  WHAT -- DEPENDS.  HERE'S THE ANSWER TO

18   THE QUESTION.  YOU COULD LOOK AT THE STATE SECRET PRIVILEGE

19   ASSERTION AS THE NINTH CIRCUIT DNI ESTABLISHED ITS BURDEN,

20   REASONABLE HARM TO NATIONAL SECURITY WOULD RESULT AND,

21   THEREFORE, THE CASE SHOULD BE DISMISSED FOR THAT REASON.

22             I CAN -- YOU DON'T HAVE TO SAY WHY THE CASE IS

23   DISMISSED.  UPON REVIEW OF THE STATE SECRETS PRIVILEGE, IN THE

24   COURT'S MIND IT COULD BE THERE WAS A FISA WARRANT, IN THE

25   COURT'S MIND THERE COULD ALSO BE OTHER HARM TO NATIONAL

1    SECURITY IF INFORMATION UNDERLYING THESE ALLEGATIONS IS

2    DISCLOSED.

3              SO, YEAH, YOU DON'T HAVE TO IDENTIFY THE BASIS FOR THE

4    PRIVILEGE ASSERTION, BUT NEITHER CAN I, IN ARGUING THIS CASE ON

5    THE PUBLIC RECORD, INDICATE THAT WE HAVE A DEAD BANG DEFENSE

6    FISA WARRANT BECAUSE THAT WOULD, OBVIOUSLY, DISCLOSE

7    INFORMATION WE HAVE SUCCESSFULLY PROTECTED PURSUANT TO THE

8    PRIVILEGE ASSERTION.

9              YOUR HONOR, I'LL GO IN WHATEVER DIRECTION YOU WANT

10   WITH THIS, BUT I THINK YOU CAN TELL FROM OUR PAPERS, FIRST OF

11   ALL, WE THINK THAT THE NINTH CIRCUIT'S DECISION GOVERNS AND

12   THAT WE REALLY CANNOT WALK BACK FROM THAT BECAUSE IT'S SO VITAL

13   TO OUR NATIONAL SECURITY INTEREST, NOT ONLY IN THIS CASE BUT IN

14   ANY OTHER CASE.

15             HAVING TAKEN THE PRIVILEGED INFORMATION AND SEALED

16   DOCUMENT OUT OF THESE MOTIONS THESE PLAINTIFFS ARE EFFECTIVELY,

17   IN A SITUATION THAT ANY PLAINTIFF WHO COME INTO COURT AND SAY

18   I'M A PERSON OF INTEREST, PERHAPS, ANOTHER DESIGNATED TERRORIST

19   ORGANIZATION OR AN ENTITY THAT MAY WELL HAVE BEEN UNDER

20   INVESTIGATION FOR ALLEGED LINKS TO TERRORISM, AND SAY I KNOW

21   I'M OF INTEREST TO THE GOVERNMENT REGARDING TERRORISM, I KNOW

22   THE GOVERNMENT SURVEILS PEOPLE, I KNOW THE GOVERNMENT, PERHAPS,

23   UNDERTOOK SURVEILLANCE IN MY INVESTIGATION AT A CERTAIN TIME,

24   BUT I DON'T KNOW IF IT WAS OF ME, AND I DON'T KNOW IF IT WAS

25   ELECTRONIC SURVEILLANCE, I DON'T KNOW IF IT WAS WARRANTLESS

1    SURVEILLANCE OR UNDER THE FISA, I ESTABLISHED ENOUGH OF A PRIMA

2    FACIE CASE, SO I'M GOING TO MOVE FOR SUMMARY JUDGMENT IN

3    FEDERAL DISTRICT COURT, THEN THE BURDEN SHIFTS TO THE

4    GOVERNMENT TO EITHER DISPROVE MY ALLEGATIONS WITH CLASSIFIED

5    EVIDENCE OR LOSE.

6          THAT'S NOT THE LAW AND IF IT WERE THE LAW IT WOULD

7    EVISCERATE THE GOVERNMENT'S ABILITY TO PROTECT INTELLIGENCE

8    SOURCES AND METHODS BECAUSE THIS SCENARIO COULD EASILY BE

9    REPLICATED.

10         SO BEYOND THAT YOU, AS I INDICATED A MOMENT AGO, I

11   DON'T BELIEVE THAT WE'RE PROCEEDING UNDER FISA'S SECRETS

12   PRIVILEGE SECTION 1806F AT THE MOMENT.

13         SO WE ARE ESSENTIALLY BACK TO WHERE THE CASE WAS

14   BEFORE THE NINTH CIRCUIT AND I THINK DISMISSAL IS REQUIRED, BUT

15   IF YOU GO FORWARD AND LOOK AT THIS PUBLIC EVIDENCE AND TRY TO

16   EVALUATE WHETHER IT ESTABLISHES ARTICLE III STANDING, I THINK,

17   IT CLEARLY DOES NOT.

18         AND WE'VE GONE THROUGH IT LINE BY LINE, INCLUDING JUST

19   THIS MORNING'S AL-HARAMAIN MEMO.  BUT BEYOND THAT, I THINK, YOU

20   KNOW, YOU'RE VERY FAMILIAR WITH THE CIRCUMSTANCES OF ARTICLE

21   III STANDING, IT CANNOT BE BASED ON SPECULATION AND CONJECTURE,

22   AND I THINK THE PLAINTIFFS ESSENTIALLY CONCEDE THEY HAVEN'T

23   ACTUALLY PROVED THEIR STANDING.

24         THEY'RE RELYING ON A PROCEDURAL MECHANISM TO PUT THE

25   BURDEN ON US.  THEY UNDERSTAND, AND MR. EISENBERG IN TALKING

1 THIS MORNING HE SAID APPARENTLY THIS MEANS THIS, AND IT HAD TO

2 BE THAT, AND WHY ON EARTH WOULDN'T IT BE THAT.

3      OBVIOUSLY, HE DOESN'T KNOW THE ACTUAL FACTS AND WHAT

4 HE'S TRYING TO DO IS TO PUT THE BURDEN ON US TO SET THE RECORD

5 STRAIGHT TO SOMEHOW PREVAIL ON SUMMARY JUDGMENT.  THAT'S NOT

6 HOW THE PRIVILEGE WORKS.

7      I THINK UNDER THE LAW OF ARTICLE III STANDING THEY

8 HAVE THE BURDEN.  IF THEY CAN'T ESTABLISH THE BURDEN, AND I

9 CONCEDE THEY CAN'T ESTABLISH THEIR BURDEN BECAUSE IT IS

10 INFORMATION UNIQUELY HELD BY THE GOVERNMENT AND PROPERLY

11 PROTECTED AND HAS BEEN PROPERLY PROTECTED IN TWO CASE, THE CASE

12 WOULD HAVE TO BE DISMISSED.

13      MR. EISENBERG WAS ACTUALLY RIGHT IN HIS ORAL ARGUMENT

14 IN 2007.  HE SAID IF HE DOESN'T HAVE PRIVILEGED INFORMATION I

15 CAN'T ESTABLISH MY STANDING, I DON'T THINK IT WAS A BAD DAY, I

16 THINK, HE WAS BEING HONEST.

17      HE WAS ALSO CORRECT ABOUT THAT BECAUSE ULTIMATELY TO

18 PROVE WHETHER OR NOT SOMEONE IS SUBJECT TO SURVEILLANCE HAS TO

19 COME DOWN TO A CONFIRMATION OR DENIAL BY THE GOVERNMENT.  THEY

20 ARE THE ONES THAT POSSESS THAT EVIDENCE AND WE HAVE VALID

21 REASONS FOR PROTECTING THAT WHICH HAVE BEEN RECOGNIZED IN THE

22 CASE.

23      AND SO ABSENT FISA PROCEEDINGS, WHICH WE ARE CERTAINLY

24 NOT INVITING, WE OBJECTED TO THOSE AND HAVE CONCERNS ABOUT

25 THOSE.  AS MR. EISENBERG NOTED, ABSENT THAT, I THINK, YOUR BACK

1    TO ESSENTIALLY WHERE THE NINTH CIRCUIT BROUGHT US, EVEN IF YOU

2    CONSIDER THEIR PUBLIC EVIDENCE.

3            SO I ADDRESSED THAT POINT, I ADDRESSED WHETHER THE

4    BURDEN SHIFTS, IF YOU'D LIKE I CAN DISCUSS SOME OF THE

5    SUFFICIENCY OF THEIR EVIDENCE, BUT I THINK I LAID THAT WELL

6    OUT.  I THINK, IF YOU LOOK AT ALL OF IT --

7            **THE COURT:**  COMES DOWN TO SIMPLY AN ARGUMENT BECAUSE

8    THE TERRORIST SURVEILLANCE PROGRAM EXISTED AND TARGETED

9    AL-QAEDA, AL-HARAMAIN DESIGNATED ASSOCIATED WITH AL-QAEDA, AND

10   BECAUSE PLAINTIFFS HAD A PHONE CALL THAT MENTIONED BEN LADEN

11   ASSOCIATE, THEN LATER THE SEPTEMBER 2004 DESIGNATION REFERRED

12   TO LINKS WITH BEN LADEN.

13           THAT HOW SOMEHOW THESE PROFFERS WERE NOT ONLY SUBJECT

14   TO SURVEILLANCE, BUT ELECTRONIC SURVEILLANCE UNDER THE

15   DEFINITION OF THE FISA STATE SECRETS PRIVILEGE, WARRANTLESS

16   SURVEILLANCE, THAT SIMPLY DOESN'T HOLD.

17           **THE COURT:**  MR. EISENBERG AND HIS COLLEAGUE HAVE

18   RECEIVED SECURITY CLEARANCES, WHAT IS THE GOVERNMENT'S

19   OBJECTION TO DISCLOSURE FOR PURPOSES OF THIS LITIGATION AND

20   PRESUMABLY ANY LITIGATION OF A SEALED DOCUMENT AND ANY OTHER

21   CLASSIFIED INFORMATION?

22           **MR. COPPOLINO:**  WELL, YOUR HONOR, YOU KNOW, WE HAD A

23   LONG BACK AND FORTH ABOUT THAT EARLIER IN THE YEAR.

24           **THE COURT:**  YES, WE DID.

25           **MR. COPPOLINO:**  THERE WAS NO MORE DIRECT ABROGATION OF

1    THE STATE SECRETS PRIVILEGE THEN TO PROVIDE THE VERY

2    INFORMATION SUBJECT TO THE PRIVILEGE TO COUNSEL FOR THE PARTY

3    THAT IS SEEKING IT.

4         OUR VIEW, WHICH WE SET FORTH IN OUR PRIOR PAPERS, IS

5    THAT THERE IS NO NEED TO KNOW, WHERE YOU'RE SEEKING TO SERVE

6    YOUR PRIVATE INTEREST AS A LITIGANT, OTHERWISE IN ANY CASE

7    INVOLVING NATIONAL SECURITY INFORMATION THAT THE GOVERNMENT

8    SEEKS TO PROTECT, A LITIGANT COMES IN AND SAYS I WANT TO FIND

9    OUT WHAT YOU'VE DONE TO ME, WHETHER IT WAS LAWFUL AND I HAVE A

10   NEED TO KNOW.

11        **THE COURT:**  YOU HAVE TO CONCEDE THAT MR. EISENBERG HAS

12   DONE A LOT MORE THAN SIMPLY SAY I WANT THIS INFORMATION.  HE

13   HAS PRESENTED A SUBSTANTIAL ARRAY OF EVIDENCE, PUBLIC EVIDENCE

14   THAT APPEARS TO INDICATE THAT HIS CLIENT WAS, INDEED, THE

15   SUBJECT OF SURVEILLANCE, AND ELECTRONIC SURVEILLANCE.

16        **MR. COPPOLINO:**  BUT I QUESTION, FIRST OF ALL, I

17   QUESTION THE SUFFICIENCY OF THEIR EVIDENCE.

18        BUT, SECONDLY, THERE IS NO LAW THAT I AM AWARE OF IN

19   THIS AREA WHICH SAYS THAT A PARTY IS ENTITLED TO THE ULTIMATE

20   FACTS AT ISSUE IN A STATES SECRET PRIVILEGE IN ORDER TO PROVE

21   OR DISPROVE THEY HAVE STANDING OR WHETHER THEY HAVE A CLAIM ON

22   THE MERITS.  AND SO --

23        **THE COURT:**  WE'RE NOT DEALING WITH STATE SECRETS

24   PRIVILEGE FOR PURPOSE OF THIS PROCEEDING, AT LEAST, AS FAR AS

25   ELECTRONIC SURVEILLANCE IS CONCERNED, THIS IS ALL UNDER FISA.

1          **MR. COPPOLINO:** WELL, IF -- LET'S TALK A LITTLE BIT

2    WHETHER WE SHOULD REVERT BACK TO FISA AND THEN I WOULD JUST

3    REITERATE ARGUMENTS WE HAVE MADE PREVIOUSLY.

4          FIRST OF ALL, WE DO NOT BELIEVE FISA SECRETS PRIVILEGE

5    PREEMPTS THE PRIVILEGE, WE HAVE A DISAGREEMENT ON THAT.

6          SECONDLY, AND MORE IMPORTANTLY, THERE ARE TWO, AT

7    LEAST, TWO ALTERNATIVES IN WHICH YOU CAN PROCEED UNDER FISA

8    ITSELF.  EITHER ONE, IN OUR VIEW, EITHER RISKS OR REQUIRES

9    DISCLOSURE OF THE VERY PRIVILEGED INFORMATION YOU OBSERVED IN

10   YOUR COLLOQUY WITH MR. EISENBERG.

11         HOW COULD YOU RULE ON THE ISSUE OF STANDING BASED ON

12   CLASSIFIED INFORMATION WITHOUT ULTIMATELY DISCLOSING, EITHER

13   DIRECTLY OR INDIRECTLY TO THEM OR ON THE PUBLIC RECORD WHAT THE

14   FACTS ARE IN THIS CASE.

15         BECAUSE, FIRST OF ALL, IF YOU DISCLOSE IT TO THEM THAT

16   IS DIRECT DISCLOSURE.  IT'S ONE TO WHICH THE GOVERNMENT WOULD

17   OBJECT AND, I THINK, ONE TO WHICH WE HAVE AN APPELLATE RIGHT.

18         BUT, SECONDLY, EVEN IF YOU WERE TO PROCEED EX PARTE OR

19   ATTEMPT PROCEED EX PARTE, THE FUNDAMENTAL ISSUE IN THE CASE

20   CONCERNS THE EXISTENCE OF JURISDICTION, THE EXISTENCE OF

21   STANDING, THE EXISTENCE OF AN ALLEGED ACTIVITY IN THIS CASE,

22   ALLEGED SURVEILLANCE OF THE PLAINTIFFS.

23         NOW, IF YOU GO FORWARD EVEN EX PARTE THE MERE EXERCISE

24   OF JURISDICTION WOULD INDICATE YOU HAVE FOUND FACTS SUBJECT TO

25   THE PRIVILEGE ASSERTION.

1        IF YOU WERE TO REACH A JUDGMENT ON THE MERITS THAT

2   WOULD INDICATE THAT, IT COULD EVEN BE A JUDGMENT FOR THE

3   COURT -- GOVERNMENT, IT WOULD INDICATE YOU FOUND THERE WAS

4   JURISDICTION.  YOU FOUND THAT THE MERITS OF THE CLAIM COULD BE

5   REACHED AND THAT ALONE, EVEN IF YOU DON'T DISCUSS THE DETAILS,

6   WOULD REVEAL THE EXISTENCE OF INFORMATION SUBJECT TO PRIVILEGE.

7        IF YOU RULED FOR THE GOVERNMENT HOW DOES THAT, HOW

8   DOES THE PLAINTIFF KNOW THE BASIS OF THAT RULING AND APPEAL?

9        MY VIEW YOU CAN'T HIDE LITIGATION BEHIND THE VEIL OF

10  EX PARTE REVIEW, WHERE THE BASIC FUNDAMENTAL FACTS AS TO

11  WHETHER OR NOT THE CASE COULD EVEN PROCEED OR ITSELF SUBJECT TO

12  THE PRIVILEGE ASSERTION.

13       AS THE NINTH CIRCUIT INDICATED, AS THE SIXTH CIRCUIT

14  INDICATED IN ACLU, IF YOU CANNOT ESTABLISH WHETHER YOU HAVE

15  STANDING WITHOUT THE DISCLOSURE OF INFORMATION THAT THE

16  GOVERNMENT HAS SHOWN WOULD HARM NATIONAL SECURITY, HOW DOES A

17  CASE PROCEED.

18       SO AS A RESULT OUR VIEW IS THAT ANY ATTEMPT TO PROCEED

19  UNDER 1806F IS INHERENTLY RISKY AND IN OUR VIEW WOULD DIRECTLY

20  VIOLATE 1806F, IF YOU WERE TO GIVE THEM THE INFORMATION IN

21  ORDER TO PROCEED.

22       WHAT WE HAVE ARGUED ALL ALONG, YOU SHOULD CERTIFY THAT

23  QUESTION BECAUSE IF YOU ARE WRONG ABOUT THE 1806F ISSUE THE

24  CASE WOULD BE OVER AND THERE WOULD BE NO FURTHER PROCEEDINGS,

25  THERE BE NO BASIS TO ESTABLISH STANDING, IT WOULD BE DISMISSED

1   JUST AS THE NINTH CIRCUIT HAD SAID.

2          SO I DON'T THINK WE'RE REVERTING BACK THE PROPER

3   COURSE, FOR THOSE REASONS, I THINK, THE BETTER COURSE, IF YOU

4   WERE INCLINED TO, WOULD BE TO CERTIFY IT BECAUSE THEN WE GET A

5   RULING DIRECTLY ON THE ISSUE.

6          I CERTAINLY DON'T THINK IT WOULD BE PROPER FOR YOU TO

7   RULE IN THE ALTERNATIVE ON WHETHER THEY HAVE STANDING BASED ON

8   CLASSIFIED EVIDENCE, THAT IS EFFECTIVELY ASKING YOU AS THE

9   DISTRICT JUDGE TO DIRECTLY OR INDIRECTLY REVEAL INFORMATION

10  THAT'S BEEN SUBJECT TO A SUCCESSFUL PRIVILEGE ASSERTION PRIOR

11  TO APPELLATE REVIEW.

12         THAT IS THE KEY ON THAT BECAUSE AS YOU SUGGESTED, AND

13  I THINK YOUR QUITE KEENLY AWARE OF THIS ISSUE, IF YOU'RE NOT

14  CORRECT BY THE FISA SECRETS PRIVILEGE PRESUMPTION ISSUE, THEN

15  PROCEEDING IN ANY WAY WHICH ABROGATES THE PRIVILEGE IN A

16  LIMITED -- BY DISCLOSURE TO THE PLAINTIFFS, OR IN A BROADER WAY

17  BY RULING THAT THERE IS JURISDICTION, OR, IN FACT, THAT THERE

18  ISN'T JURISDICTION BECAUSE WE HAVE, IN FACT, ARGUED YOU CAN'T

19  CONFIRM OR DENY THE EXISTENCE OF STANDING, IS NOT SOMETHING

20  THAT DISTRICT COURT OUGHT TO DO AND WOULD WANT TO BE IN A

21  POSITION OF DOING BEFORE ANY APPELLATE REVIEW.

22         SO, YOUR HONOR, I THINK, I HAVE ADDRESSED THE CRUX OF

23  THE ISSUES THAT MR. EISENBERG HAS RAISED.  NOW, I UNDERSTAND

24  THAT HE WANTS TO REACH THE MERITS OF THIS CASE, BUT WE HAVE SET

25  FORTH, I THINK, NUMEROUS REASONS, AND RECOGNIZING THE COURT

1    DISAGREES WITH SOME OF THESE REASONS, BUT NUMEROUS REASONS WHY

2    WE THINK THAT IS SIMPLY INAPPROPRIATE AND WOULD LEAD TO AN

3    ADVISORY OPINION.  AND AS A RESULT WE URGE THE COURT NOT TO GO

4    DOWN THAT ROAD.

5         YOU KNOW, JUDGE TAYLOR IN MICHIGAN WHO I ADMIRE

6    GREATLY, I LITIGATED THAT CASE BEFORE HER IN DISTRICT COURT,

7    SHE OPTED TO GO THAT ROUTE AND YOU SAW WHAT HAPPENED.  IT WAS

8    REVERSED FOR LACK OF STANDING, CERT WAS DENIED, AND I THINK

9    QUITE PROPERLY SO, BECAUSE THERE AS HERE IF YOU CANNOT

10   ULTIMATELY ESTABLISH STANDING, YOU REALLY HAVE NO BUSINESS

11   REACHING THE MERITS.

12        THE FISA SECRETS PRIVILEGE PREEMPTION ISSUE IS ANOTHER

13   THRESHOLD PROBLEM THAT WOULD FORECLOSE THE COURT FROM REACHING

14   THE MERITS.  WE DON'T THINK THEIR EVIDENCE ESTABLISHES A RIGHT

15   TO HAVE THE MERITS REVIEWED ON ITS OWN.

16        WE DON'T THINK THE BURDEN SHIFTS TO US OR THAT AS A

17   RESULT OF SOME PROCEDURAL CONCLUSION THAT BECAUSE WE HAVEN'T

18   REBUTTED THEIR EVIDENCE ON STATE SECRET GROUND, THEY GET TO

19   HAVE THE MERITS ADJUDICATION.

20        YOU KNOW, I WOULD ADD A COUPLE OF OLD ARGUMENTS IN

21   THERE THAT RERAISED A YEAR AGO, WHICH WAS THAT TERRORIST

22   SURVEILLANCE PROGRAM HAS LAPSED, IT'S DONE, IT'S BEEN

23   SUPPLANTED BY FISA ACT OF AMENDMENT OF 2008, AS A RESULT THEY

24   COULDN'T POSSIBLY ESTABLISH STANDING FROM PERSPECTIVE RELIEF AT

25   THIS POINT.

```
1            OUR VIEW, AGAIN, THERE IS NO BASIS FOR DAMAGES UNDER

2    SECTION 1810, WHICH WE DON'T THINK IS WAIVED.  SOVEREIGN

3    IMMUNITY IF WE'RE RIGHT ON THAT ONE ISSUE ON SECTION 1810, THE

4    CASE IS OVER.

5            SO IN THE FACE OF ALL THIS ARRAY OF JURISDICTIONAL

6    ISSUE AND PROBLEMS AND THRESHOLD JUDICIBILITY PROBLEMS, I DON'T

7    THINK IT WOULD BE APPROPRIATE FOR THE COURT TO REACH THE MERITS

8    OF THE CASE.

9            UNLESS THE COURT HAS FURTHER QUESTIONS, I THINK, I

10   ADDRESSED ALL OF THE ISSUES THAT YOU RAISE AND THAT

11   MR. EISENBERG RAISED.

12           THE COURT:  VERY WELL.  THANK YOU, MR. COPPOLINO.

13           VERY, VERY BRIEFLY, MR. EISENBERG, REBUTTAL.

14           MR. EISENBERG:  YES, YOUR HONOR.  JUST A FEW MINUTES.

15   YOUR INDULGENCE.

16           THE COURT:  I ASSUME, MR. STINSON HAS NOTHING TO

17   OFFER?

18           MR. COPPOLINO:  NO, HE'S JUST MY AGENCY COUNSEL.  NOT

19   JUST, BUT HE'S NOT GOING TO BE MAKING ARGUMENT.

20           THE COURT:  ALL RIGHT.

21           MR. EISENBERG:  I SUPPOSE, I COULD BE DISINGENUOUS AND

22   SAY I CAN'T UNDERSTAND WHY THEY WON'T ADDRESS THE MERITS.  THEY

23   DID IN THEIR WHITE PAPER, THERE'S NO FACTUAL ISSUES.

24           YEAH, I COULD BE DISINGENUOUS, I WON'T BE, WE KNOW WHY

25   THEY WON'T ADDRESS THE MERITS.
```

1        **THE COURT:** WHAT'S THE FUN OF EVER BEING A LAWYER IF

2   YOU CAN'T BE DISINGENUOUS ONCE IN A WHILE.

3        **MR. EISENBERG:** I DO TRY TO AVOID IT, YOUR HONOR, I

4   TAKE THIS LITIGATION VERY SERIOUSLY.

5        **THE COURT:** IT IS SERIOUS, ALL KIDDING ASIDE.  THE

6   ISSUES HERE ARE QUITE SERIOUS AND I APPRECIATE THE VERY ABLE

7   GUIDANCE OF COUNSEL ON BOTH SIDES.

8        **MR. EISENBERG:** THANK YOU, YOUR HONOR.  WE KNOW WHY

9   THEY WON'T ADDRESS THE MERITS BECAUSE THERE'S NOTHING THEY CAN

10  SAY TO JUSTIFY THIS PROGRAM.

11       BRIEFLY, MR. COPPOLINO REFERRED TO THE NINTH CIRCUIT'S

12  DECISION ASSERTING IT'S THE MANDATE FORECLOSE THESE

13  PROCEEDINGS.  LET ME READ QUOTATION FROM THE NINTH CIRCUIT'S

14  DECISION, 507 FED 3D AT 1204.

15       "LITIGATION CAN PROCEED IF PLAINTIFFS CAN PROVE THE

16  ESSENTIAL FACTS OF THEIR CLAIM WITHOUT RESORT TO MATERIAL

17  TOUCHING UPON MILITARY SECRETS."

18       THAT'S OUR CASE.  THAT'S THE SPIRIT OF THE NINTH

19  CIRCUIT'S MANDATE HOW WE'RE PROCEEDING NOW.

20       MR. COPPOLINO ARGUES THAT, WELL, THE SHIFTING OF THE

21  BURDEN OF PROOF THAT'S BEEN -- SOME HUNDRED PLUS YEARS DOESN'T

22  APPLY TO STATE SECRETS CASES, THAT DOESN'T HAPPEN IN STATE

23  SECRETS CASES, THERE'S NO CASE THAT SAYS THAT CERTAINLY.

24       BUT I WOULD ALSO SAY THIS.  FISA PREEMPTION AND THE

25  APPLICATION OF 1806F IS THE VEHICLE FOR THEM TO SUSTAIN THEIR

1    SHIFTED BURDEN OF PROOF.  IT'S THERE, THEY CAN DO IT.

2              UNDER SECURE CONDITION MR. COPPOLINO ARGUES WE HAVE TO

3    TAKE THIS HARD LINE POSITION, WE, THE GOVERNMENT, BECAUSE

4    INTELLIGENCE SOURCES AND METHODS ARE THE RISK OF PUBLIC

5    DISCLOSURE HERE.

6              THAT'S NONSENSE.  UNDER 1806F THE DOCUMENT CAN BE

7    REDACTED TO PREVENT SUCH DISCLOSURE, AND BESIDES THE DOCUMENTS

8    NOT EVEN AN ISSUE IN THIS CASE RIGHT NOW, ALL WE'RE ASKING FOR

9    IS ADJUDICATION OF THE FACT OF OUR CLIENTS' WARRANTLESS

10   ELECTRONIC SURVEILLANCE.

11             I HAVE NO INTEREST WHATSOEVER IN THIS COURT OR ANY OF

12   THE ATTORNEYS IN THIS CASE REVEALING TO THE PUBLIC INTELLIGENCE

13   SOURCES AND METHODS.  AND THIS CASE CAN BE LITIGATED UNDER

14   1806F IN A MANNER THAT DOES EXACTLY WHAT MR. COPPOLINO WANTS TO

15   DO, HE WANTS TO PROTECT THAT INFORMATION.

16             IT CAN BE DONE.  HE SAYS HE CANNOT DISCLOSE ANY DEAD

17   BANG DEFENSE THAT HE HAS LIKE THE EXISTENCE OF A FISA WARRANT,

18   BUT OF COURSE HE CAN UNDER THE PROTECTIONS OF 1806F.

19             MR. COPPOLINO SAID, WELL, IF THEY CAN PROCEED IN THIS

20   CASE THEN ANYBODY CAN DO IT.  THIS IS A QUOTE FROM

21   MR. COPPOLINO.  "THIS SCENARIO COULD EASILY BE REPLICATED."

22   UNQUOTE.

23             WELL, HE CAN'T BE SERIOUS.  THERE WILL NEVER BE

24   ANOTHER CASE LIKE THIS ONE, I ASSURE YOU, WITH THE GAFFS AND

25   PUBLIC ADMISSIONS IN THIS CASE.  THIS CASE IS UNIQUE, IT WILL

```
1    NOT BE REPLICATED AGAIN, AND FOR US TO GO FORWARD UPON A

2    SHOWING OF STANDING TO LITIGATE THE MERITS WILL NOT OPEN THE

3    FLOODGATES.

4            FINALLY, THE REFERENCE TO THEY'RE ONLY SEEKING TO

5    PROMOTE THEIR PRIVATE INTERESTS, AS MR. COPPOLINO PUT IT.  THAT

6    IS NOT TRUE, WE ARE NOT SEEKING TO PROMOTE OUR PRIVATE

7    INTERESTS IN THIS CASE, WE ARE SEEKING TO CHALLENGE THE

8    LEGALITY OF A PROGRAM OF SURVEILLANCE THAT GOES TO THE HEART OF

9    THE CONSTITUTIONAL SEPARATION OF POWERS.

10           AND WE ARE SEEKING TO VINDICATE WHERE JUSTICE ROBERTS

11   SAID IN 1952 AND THAT I THOUGHT I LEARNED WAS THE LAW WHEN I

12   WENT TO LAW SCHOOL AT HASTINGS DOWN THE STREET, THAT THE

13   CONSTITUTION SETS FORTH A DELICATE AND CAREFULLY CRAFTED

14   BALANCE OF POWERS THAT SHOULD NOT BE UPENDED.

15           THAT'S WHY WE FILED THIS LITIGATION, NOT OUT OF OUR

16   OWN PRIVATE INTEREST, BUT TO VINDICATE THE CONSTITUTIONAL

17   SEPARATION OF POWERS.

18           THE COURT:  REFERRING TO JUSTICE JACKSON.

19           MR. EISENBERG:  BARBARA ROBERT JACKSON.  THREE PART.

20           THE COURT:  I THOUGHT YOU SAID JUSTICE ROBERTS.

21           MR. EISENBERG:  I PROBABLY DID.  I'VE BEEN MAKING THAT

22   MISTAKE A LOT LATELY.  I APOLOGIZE.  YES, THANK YOU, JUSTICE

23   JACKSON, NOT ROBERTS.  ALTHOUGH, I WOULD LIKE VERY MUCH FOR

24   JUSTICE ROBERTS, TOO, SOMEWHERE DOWN THE LINE.

25           MR. COPPOLINO:  JUDGE WALKER, I JUST WANTED TO ADDRESS
```

1   PROCEDURAL TYPE ARGUMENT.  YOUR JUNE 5TH ORDER, AS I READ IT,

2   EFFECTIVELY FORECLOSES US FROM SUBMITTING ANYTHING TO YOU EX

3   PARTE, IN CAMERA OR OTHERWISE.

4        IT WOULD TRIGGER A PROTECTIVE ORDER UNDER WHICH THE

5   PLAINTIFFS WOULD OBTAIN ACCESS AND THAT'S, OBVIOUSLY, SOMETHING

6   THAT WE CANNOT AGREE TO AND DO NOT AGREE TO.

7        AND IN GENERAL THE PROBLEM WITH THAT IS THAT IF WE

8   WANT TO PROVIDE THIS COURT INFORMATION, ADDITIONAL INFORMATION

9   ABOUT ANY OF THE ALLEGATIONS IN THIS CASE, WE ARE INHIBITED

10  FROM DOING SO, EVEN IF WE WOULD LIKE THE COURT TO BE AWARE OF

11  IT AND TO REVIEW IT.

12       I WOULD NOTE AS A PRACTICAL EXAMPLE, THEY RAISED AN

13  ISSUE REGARDING INACCURACY THAT HAD BEEN SUBMITTED IN A PRIOR

14  SUBMISSION EARLIER IN THE CASE, AS YOU MAY RECALL IN FEBRUARY I

15  SUBMITTED SEVERAL DECLARATIONS ON THAT ISSUE, THE DNI IN OUR

16  REPLY BRIEF ADDRESSED THE ISSUE, BUT ONLY IN UNCLASSIFIED

17  DECLARATION.

18       AND WE WOULD LIKE TO, AT LEAST, HAVE THE OPPORTUNITY

19  TO PRESENT ADDITIONAL INFORMATION ON THAT, BUT WE CANNOT AGREE

20  TO DO THAT UNLESS THEY WERE SUBMITTED FOR EX PARTE REVIEW,

21  WHICH ASK THE COURT TO CONSIDER THAT.  AND WHICH ALSO JUST

22  POINT OUT, I WANT THE COURT TO BE AWARE THIS, IS INFORMATION

23  THAT WE THINK WE MAY ADVISE THE COURT OF APPEALS OF AS WELL.

24       SO WE WOULD NOT WANT TO HAVE THE SITUATION WHERE YOU

25  WERE NOT AWARE OF INFORMATION THAT THEY MIGHT BE AWARE OF.  SO

1    I WOULD JUST ASK THE COURT TO RECONSIDER THAT.

2         I DON'T THINK THIS IS -- WE'RE NOT GOING TO BE

3    SUBMITTING TO ANYTHING TO WIN ON THE MERITS, WE'RE NOT

4    SUBMITTING IT TO WIN BASED ON THE STATE SECRETS PRIVILEGE

5    ASSERTION, BUT TO ADDRESS THIS ISSUE, AND I WOULD ASK THE COURT

6    TO CONSIDER THAT BECAUSE WE CANNOT SUBMIT IT JUST TO YOU,

7    THAT'S THE PROBLEM FOR US.

8         **THE COURT:**  WHAT'S YOUR POSITION, MR. EISENBERG, ON

9    THIS?

10        **MR. EISENBERG:**  YOUR HONOR, THE QUESTION WHETHER OR

11   NOT THERE'S BEEN A MISREPRESENTATION, I DON'T KNOW WHAT

12   INACCURACY MEANS.  IT SOUNDS TO ME A BIT LIKE

13   MISREPRESENTATION.

14        JUSTICE LAMBERT FORMER JUSTICE WITH THE FISA COURT

15   SITTING IN D.C. DISTRICT COURT RULED RECENTLY IN HORN VERSUS

16   HUDDLE THAT'S A BASIS FOR DECLINING TO GIVE A HIGH DEGREE OF

17   DEFERENCE TO THE GOVERNMENT'S ASSERTION OF STATE SECRET

18   PRIVILEGE, IF THE GOVERNMENT HAS ASSERTED A MISREPRESENTATION

19   TO THE COURT.

20        WE DON'T KNOW WHAT THE INACCURACY IS, WE HAVEN'T SEEN

21   THESE CLASSIFIED DECLARATIONS.  IF MR. COPPOLINO WISHES TO

22   LITIGATE THE POINT, WE WOULD LIKE THE OPPORTUNITY TO LITIGATE

23   IT AS WELL.

24        AGAIN, IT'S NOT FAIR AS A MATTER OF DUE PROCESS TO

25   REQUIRE US TO LITIGATE BLIND.  ON OCCASION WE MAY CHOSE TO DO

1   SO BECAUSE WE FEEL CONFIDENT WE'LL BE OKAY, IN THIS SITUATION I

2   DON'T FEEL ANY SUCH CONFIDENCE AT ALL.

3           I DO NOT FEEL IT WOULD BE FAIR TO US, FOR THIS COURT

4   TO DETERMINE WHETHER THERE'S BEEN A MISREPRESENTATION TO THE

5   COURT, WITHOUT US BEING PRIVY TO THE CLASSIFIED INFORMATION

6   THAT THEY SUBMIT TO YOU TO TRY TO CONVINCE YOU THERE'S BEEN NO

7   MISREPRESENTATION.

8           MR. GOLDBERG AND I HAVE TOP SECRET SCI SECURITY

9   CLEARANCE, I ASSURE YOU, NOT JUST THE FBI BELIEVES WE CAN BE

10  TRUSTED, WE OURSELVES BELIEVE WE CAN BE TRUSTED WITH THIS

11  INFORMATION.

12          IT WOULD BE FAIR TO US, FOR THIS COURT TO MAKE SUCH AN

13  IMPORTANT DETERMINATION, HAS THE GOVERNMENT PERPETRATED A FRAUD

14  ON THIS COURT, A MISREPRESENTATION THAT AMOUNTS TO A FORFEITURE

15  OF THE STATE SECRETS PRIVILEGE.

16          I DO NOT THINK IT WOULD BE FAIR FOR US, FOR THIS COURT

17  TO LITIGATE THIS QUESTION WITHOUT INFORMED INVOLVEMENT.

18          **THE COURT:**  VERY WELL.  I'LL TAKE THAT MATTER UNDER

19  CONSIDERATION AND I APPRECIATE COUNSEL DRAWING THAT TO MY

20  ATTENTION.

21          I MUST SAY, I NOTED THE SUBJECT THAT MR. COPPOLINO

22  RAISED, I APPRECIATE HIM DRAWING ATTENTION TO THAT IN ARGUMENT.

23          ALL RIGHT, COUNSEL, THANK YOU VERY MUCH FOR YOUR VERY

24  ABLE AND HELPFUL ARGUMENTS.

25

1                    (PROCEEDINGS ADJOURNED.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 30TH DAY OF SEPTEMBER, 2009.


/S/  JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR