1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT
7           FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9   IN RE:                              MDL Docket No 06-1791 VRW
10  NATIONAL SECURITY AGENCY
    TELECOMMUNICATIONS RECORDS
11  LITIGATION
    _____
12                                      Case No C 07-0109 VRW
13  This order pertains to:
14  AL-HARAMAIN ISLAMIC
    FOUNDATION, INC, an Oregon
15  Nonprofit Corporation; WENDELL
    BELEW, a United States Citizen
16  and Attorney at Law; ASIM          MEMORANDUM OF DECISION
    GHAFOOR, a Unites States Citizen         AND ORDER
17  and Attorney at Law,
18             Plaintiffs,
    v
19
    BARACK H OBAMA, President of the
20  United States; NATIONAL SECURITY
    AGENCY and KEITH B ALEXANDER,
21  its Director; OFFICE OF FOREIGN
    ASSETS CONTROL, an office of the
22  United States Treasury, and ADAM
    J SZUBIN, its Director; FEDERAL
23  BUREAU OF INVESTIGATION and
    ROBERT S MUELLER III, its
24  Director, in his official and
    personal capacities,
25             Defendants.
    _____/
26
27
28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### SUMMARY OF DECISION

Plaintiffs seek an order finding defendants civilly liable to them under section 1810 of the Foreign Intelligence Surveillance Act ("FISA"), 50 USC §§ 1801-71, for eavesdropping on their telephone conversations without a FISA warrant.  In the course of lengthy proceedings in this court and the court of appeals, described more fully in the decision that follows, this court determined that:  FISA affords civil remedies to "aggrieved persons" who can show they were subjected to warrantless domestic national security surveillance; FISA takes precedence over the state secrets privilege in this case; a prima facie case of unlawful electronic surveillance under FISA requires plaintiffs to present to the court specific facts based on non-classified evidence showing that they are "aggrieved persons"; and plaintiffs have met their burden of establishing their "aggrieved person" status using non-classified evidence.  Because defendants denied plaintiffs' counsel access to any classified filings in the litigation, even after top secret clearances were obtained for plaintiffs' counsel and protective orders suitable for top secret documents proposed, the court directed the parties to conduct this phase of the litigation without classified evidence.  Both plaintiffs' motion for summary judgment of liability and defendants' cross-motions for dismissal and for summary judgment were, therefore, based entirely on non-classified evidence.

The court now determines that plaintiffs have submitted, consistent with FRCP 56(d), sufficient non-classified evidence to establish standing on their FISA claim and to establish the absence of any genuine issue of material fact regarding their allegation of

**United States District Court**
For the Northern District of California

1  unlawful electronic surveillance; plaintiffs are therefore entitled
2  to summary judgment in their favor on those matters.  Defendants'
3  various legal arguments for dismissal and in opposition to
4  plaintiffs' summary judgment motion lack merit:  defendants have
5  failed to meet their burden to come forward, in response to
6  plaintiffs' prima facie case of electronic surveillance, with
7  evidence that a FISA warrant was obtained, that plaintiffs were not
8  surveilled or that the surveillance was otherwise lawful.

9         In the absence of a genuine issue of material fact
10  whether plaintiffs were subjected to unlawful electronic
11  surveillance within the purview of FISA and for the reasons fully
12  set forth in the decision that follows, plaintiffs' motion for
13  summary judgment on the issue of defendants' liability under FISA
14  is GRANTED.  Defendants' motion to dismiss the amended complaint
15  for lack of jurisdiction is DENIED and defendants' cross-motion for
16  summary judgment is DENIED.  Because the court has determined that
17  the sole defendant sued in both official and individual capacities
18  acted wholly in his official capacity and not as an individual, the
19  individual-capacity claims are DISMISSED.

20  \\
21  \\
22  \\
23  \\
24  \\
25  \\
26  \\
27  \\
28  \\

3

United States District Court
For the Northern District of California

## DECISION

Contending that United States government officials acting without warrants intercepted and eavesdropped on their international telephone conversations, plaintiffs Al-Haramain Islamic Foundation, Inc, an Oregon nonprofit corporation ("Al-Haramain"), and Wendell Belew and Asim Ghafoor, individuals who allege they are United States citizens and attorneys for Al-Haramain, seek summary judgment of liability on their FISA claim. Doc #657/099.[1] Defendants, certain high-ranking government officials and associated government agencies, oppose plaintiffs' motion and bring their fourth motion for dismissal and/or summary judgment. Doc #668/103. In compliance with the court's orders of June 3 and June 5, 2009, Doc #643/096, the parties have presented only non-classified evidence to the court in support of these motions. Upon consideration of that evidence and the arguments presented by the parties, the court now GRANTS plaintiffs' motion and DENIES defendants' motions. The court on its own motion dismisses all claims against defendant FBI Director Robert Mueller in his individual capacity.

I

Plaintiffs filed their lawsuit in the United States District Court for the District of Oregon on February 28, 2006. Their complaint alleged that plaintiffs had been subject to warrantless electronic surveillance and sought civil damages under

---

[1] Documents will be cited both to the MDL docket number (No M 06-1791) and to the individual docket number (No C 07-0109) in the following format: Doc #xxx/yyy.

United States District Court
For the Northern District of California

section 1810 of the Foreign Intelligence Surveillance Act, 50 USC §§ 1801-71 (West 2009) ("FISA"). Plaintiffs also alleged violations of the separation of powers principle, the First, Fourth and Sixth Amendments of the United States Constitution and the International Covenant on Civil and Political Rights. Along with their complaint, plaintiffs filed under seal a copy of what has been referred to throughout this litigation as the "Sealed Document," a classified document that had inadvertently been disclosed by defendant Office of Foreign Assets Control ("OFAC") to counsel for Al-Haramain as part of a production of unclassified documents relating to Al-Haramain's designation as a "Specially Designated Global Terrorist" ("SDGT") organization.[2] Al-Haramain Islamic Foundation, Inc v Bush, 451 F Supp 2d 1215, 1218 (D Or 2006). The previous phases of this litigation largely focused on whether plaintiffs could use the Sealed Document.

Defendants filed their first motion for dismissal or for summary judgment, arguing that the Sealed Document could not be used in the litigation and that the common-law state secrets privilege ("SSP") required dismissal of the case. Id at 1217. The Oregon district court (King, J) denied the motion, explaining that "plaintiffs should have an opportunity to establish standing and make a prima facie case, even if they must do so in camera." Id at 1226-27. The court noted that "plaintiffs need some information in the Sealed Document to establish their standing and a prima facie case, and they have no other available source for this

---

[2] Under Executive Order 13224, a SDGT designation authorizes the Department of the Treasury to block assets and prohibit transactions with designated individuals and organizations.

information," id at 1221, and that given defendants' many public acknowledgments of the warrantless electronic surveillance program beginning in 2005, the program itself was not a secret.  Id at 1221-23.  Nonetheless, the court determined that the Sealed Document remained highly classified, ordered plaintiffs to hand over all copies of the Sealed Document to the court, refused media requests to unseal records and plainly contemplated maintaining the secrecy of the Sealed Document while proceeding with the litigation.  Id at 1229, 1232.

The Oregon district court declined to reach the question whether "FISA preempts the [SSP]."  Id at 1229.  The court observed:  "[t]o accept the government's argument that Section 1806(f) is only applicable when the government intends to use information against a party would nullify FISA's private remedy [under section 1810] and would be contrary to the plain language of Section 1806(f)."  Id at 1231.  The court certified its other rulings for interlocutory appeal.  During the pendency of the appeal, this case was reassigned by the Judicial Panel on Multidistrict Litigation (MDL) to the undersigned.

The court of appeals considered three issues on interlocutory review:  (1) whether the very subject matter of the litigation is a state secret; (2) whether Al-Haramain can establish standing to bring suit, absent the Sealed Document; and (3) whether Al-Haramain can establish a prima facie case, and the government can defend against Al-Haramain's assertions, without resorting to state secrets.  In a footnote, the court of appeals observed that the third issue had not been addressed by the district court.  507 F3d at 1197 & n 4.

As to the first issue, the court of appeals held that while Al-Haramain's case involved privileged information, "that fact alone does not render the very subject matter of the action a state secret" and affirmed the district court's denial of dismissal on that basis.  507 F3d at 1201.

The court of appeals determined that defendants had properly invoked the SSP and, based on Al-Haramain's "showing of necessity" or "admittedly substantial need for the document to establish its case," quoting <u>United States v Reynolds</u>, 345 US 1, 10 (1953), conducted an in camera review of the Sealed Document.  507 F3d at 1203.  Based on that review, the court wrote:  "We are satisfied that the basis for the privilege is exceptionally well documented" and that disclosure of "information concerning the Sealed Document and the means, sources and methods of intelligence gathering in the context of this case would undermine the government's capabilities and compromise national security."  507 F3d at 1204.  The court of appeals then held:  "The Sealed Document, its contents, and any individuals' memories of its contents, even well-reasoned speculation as to its contents, are completely barred from further disclosure in this litigation by the common law [SSP]."  Id.

The court of appeals next turned to the question of Al-Haramain's standing and determined that plaintiffs could not establish standing to proceed with their lawsuit without the Sealed Document because they could not establish a "concrete and particularized" injury-in-fact under the principles set forth in <u>Lujan v Defenders of Wildlife</u>, 504 US 555 (1992), unless the courts determined that FISA, rather than the SSP, governed this case:

**United States District Court**
For the Northern District of California

"Al-Haramain cannot establish that it has standing, and its claims must be dismissed, unless FISA preempts the [SSP]."  507 F3d at 1205.  As noted above, the Oregon district court had declined to rule on this complex issue, which now had become pivotal to the fate of the litigation.

On the basis of the rule set forth in <u>Singleton v Wulff</u>, 428 US 106 (1976), that a court of appeals should not ordinarily consider an issue not ruled on in the district court, the court of appeals declined to decide whether FISA preempts the SSP.  Instead, writing that "the FISA issue remains central to Al-Haramain's ability to proceed with this lawsuit," it remanded the case to this court to consider that question "and for any proceedings collateral to that determination."  507 F3d at 1206.  The court of appeals did not comment either on the likely consequences of a determination by this court that FISA preempted the SSP for this litigation in general or for the Sealed Document's role in this litigation in particular.

Following remand, defendants filed a second motion to dismiss plaintiffs' claims (Doc #432/017), asserting, <u>inter alia</u>, that:  FISA did not preempt the SSP; the SSP presented insurmountable obstacles to plaintiffs' action; plaintiffs lacked standing to seek prospective relief; and the doctrine of sovereign immunity barred recovery under FISA's section 1810.  Plaintiffs argued that FISA preempted the SSP and that dismissal would be improper.  By order dated July 2, 2008, the court held that FISA's legislative history unequivocally established Congress's intent that FISA preempt or displace the SSP in cases within the reach of its provisions.  <u>In Re National Security Agency Telecommunications</u>

United States District Court
For the Northern District of California

<u>Records Litigation</u> ("<u>In re NSA Telecom Litigation</u>"), 564 F Supp 2d 1109, 1124 (N D Cal 2008).  The court noted, however, the substantial obstacles facing any litigant hoping to bring an action for damages under FISA's section 1810, which the court described as "not user-friendly."  Id at 1136.

Specifically, the court noted, unlike the electronic surveillance carried out by federal law enforcement agencies under the general wiretap statute, Title III, 18 USC §§ 2510-22, much of the electronic surveillance undertaken for national security purposes does not result in criminal proceedings in which the existence of the surveillance evidence would be disclosed as a matter of course.  Moreover, unlike Title III, FISA does not require that the target of an electronic surveillance ever be informed of its occurrence.  The July 2 order detailed FISA's provisions requiring certain agencies to report periodically to Congress on the number of warrants applied for and other actions taken under FISA. The July 2 order, meanwhile, underscored the absence of any regular legal mechanism by which an individual who had been subject to electronic surveillance within FISA's purview could learn of the surveillance.  564 F Supp 2d at 1125-30.

A further obstacle to litigation under section 1810, the court noted, is "the lack of a practical vehicle for obtaining and/or using admissible evidence * * * sufficient to establish standing to proceed as an aggrieved party and, later, to withstand motions for dismissal and/or summary judgment."  564 F Supp 2d at 1131.  The court, however, noted that FISA's section 1806(f) provides for United States district courts to conduct in camera reviews of "applications or orders or other materials relating to

United States District Court
For the Northern District of California

electronic surveillance" in certain narrowly-defined circumstances "to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."   564 F Supp 2d at 1131 (quoting section 1806(f)).   Hence, section 1806(f) could be used to discover evidence of electronic surveillance for purposes of establishing "aggrieved person" status within the meaning of FISA's section 1801(k) if an individual had a "colorable basis for believing he or she had been surveilled."   564 F Supp 2d at 1133. 50 USC § 1801(k) defines an "aggrieved person" as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance."   The court ruled that plaintiffs "must first establish 'aggrieved person' status without the use of the Sealed Document and may then bring a 'motion or request' under § 1806(f) * * *."   Id at 1134.

Noting that the civil liability provision of Title III (18 USC § 2520) had been in effect for a decade when FISA was enacted and therefore could have served as a model had Congress intended FISA's civil liability provision to resemble Title III's, the court wrote that although "Congress enacted section 1810 in order to provide a private cause of action for unlawful surveillance, section 1810 bears but faint resemblance to 18 USC section 2520.   While the court must not interpret and apply FISA in a way that renders section 1810 superfluous * * * the court must be wary of unwarranted interpretations of FISA that could make section 1810 a more robust remedy than Congress intended it to be."   564 F Supp 2d at 1135. Accordingly, the court determined that among approaches employed within the Ninth Circuit for making out a prima facie case of

electronic surveillance, the more stringent end of the spectrum was
appropriate for FISA cases and that "plaintiffs' showing thus far
with the Sealed Document excluded falls short of the mark." Id at
1134-35.   The court dismissed plaintiffs' complaint with leave to
amend, explaining:   "[t]o proceed with their FISA claim, plaintiffs
must present to the court enough specifics based on non-classified
evidence to establish their 'aggrieved person' status under FISA."
Id.

Plaintiffs timely filed an amended pleading, the First
Amended Complaint ("FAC").  Doc #458/035.  It named generally the
same defendants but replaced one office-holder with his replacement
and specified that plaintiffs were suing one defendant in both his
official and individual capacities.[3]  Id at 1-2 & ¶¶ 7-13.  The FAC
retained the same six causes of action as the original complaint,
including, as relevant here, one cause of action under FISA
encompassing both a request under 50 USC § 1806(g) for suppression
of evidence obtained through warrantless electronic surveillance and
a claim for damages under section 1810.  Doc #458/035 at 14.

The most noteworthy change in the FAC was the ten-fold
expansion of plaintiffs' factual recitation, which newly detailed a
number of public pronouncements by government officials and
publicly-available press reports disclosing post-9/11 warrantless
electronic surveillance activities, as well as events publicly known
about these activities, such as a much-publicized hospital room
confrontation between former Attorney General John Ashcroft and

_____

[3]   Pursuant to FRCP 25(d), President Barack H Obama is now
substituted for former President George W Bush because a suit against
a government official in his or her official capacity is deemed to be
against the current holder of the office.

United States District Court
For the Northern District of California

then-White House counsel (later Attorney General) Alberto Gonzales. Id at 5. The FAC also recited a sequence of events pertaining directly to the government's investigations of Al-Haramain, a sine qua non, in the court's view, to establishing their "aggrieved person" status.

The FAC may be briefly summarized in the following two paragraphs:

Various government officials admitted the existence of a program of warrantless surveillance under which the NSA was authorized by the President to intercept certain international communications in which one party was outside the United States and one party was reasonably believed to be a member or agent of international terrorist network al-Qaeda or an affiliated terrorist organization. FAC ¶¶ 16-18. Al-Haramain's assets were blocked by the Treasury Department in February 2004 pending an investigation of "possible crimes relating to currency reporting and tax laws," but neither OFAC's press release nor March 2004 congressional testimony of a FBI official about the investigation suggested that Al-Haramain had links to al-Qaeda. FAC ¶¶ 24-26, 30. In June 2004, an OFAC official testified in Congress that in investigating terrorist financing, OFAC used classified information sources. FAC ¶ 28.

Between March and June 2004, several phone conversations took place between plaintiffs Belew and Ghafoor in the United States on the one hand and Soliman al-Buthi, a director of Al-Haramain located in Saudi Arabia, on the other; in these conversations, the participants made reference to various individuals associated with Osama bin-Laden, the founder of al-Qaeda. FAC ¶¶ 32-35. In September 2004, OFAC formally designated Al-Haramain as a SDGT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

organization and, in a press release, specifically cited "direct links between the US branch [of Al-Haramain]" and Osama bin-Laden; this was the first "public claim of purported links between [] Al-Haramain and [] bin-Laden."  FAC ¶¶ 30-35, 39-40.  The FBI and the Treasury Department have stated publicly that they relied on classified information, including "surveillance" information, to designate Al-Haramain as a terrorist organization associated with al-Qaeda and bin-Laden.  FAC ¶¶ 36-43.  In testimony before Congress in 2006 and 2007, top intelligence officials including defendant Keith B Alexander stated that a FISA warrant is required before certain wire communications in the United States can be intercepted. FAC ¶ 48.  In a separate criminal proceeding against Ali al-Timimi in 2005, the government disclosed that it had intercepted communications between al-Timimi and Al-Haramain's director al-Buthi.  FAC ¶ 51.

The FAC's allegations also appear in the court's statement of material facts not genuinely at issue in section III B, infra.

On September 30, 2008, the parties filed cross-motions. Plaintiffs moved under FISA's section 1806(f) for discovery of evidence pertaining to the lawfulness of the alleged surveillance. Doc #472/046.  Defendants brought their third motion to dismiss or, in the alternative, for summary judgment.  Doc #475/049.

In support of their motion under section 1806(f), as noted above, plaintiffs submitted evidence substantiating the allegations of their FAC.  In addition to numerous documents drawn from United States government websites and the websites of news organizations (exhibits to Doc #472-1/046-1, passim), plaintiffs submitted the sworn declarations of plaintiffs Belew and Ghafoor attesting to the

1   specifics and contents of the telephone conversations described in

2   paragraphs 32 and 33 of the FAC.  Doc ##472-6/046-6, 472-7/046-7.

3          Defendants' third motion to dismiss (Doc #475/049) largely

4   ignored the court's prior rulings regarding FISA's displacement of

5   the SSP in this case and the necessity of giving effect to Congress'

6   intent in enacting FISA's section 1810.  Instead, defendants

7   reiterated standing arguments made previously (at 16-17), asserted

8   that "the law does not support an attempt to adjudicate whether the

9   plaintiffs are 'aggrieved persons' in the face of the Government's

10  successful [SSP] assertion" (at 27-30) and contended that the

11  adjudication of 'aggrieved person' status for any or all plaintiffs

12  could not be accomplished without revealing information protected by

13  the SSP.  As for the standard required for a plaintiff to establish

14  "aggrieved person" status under section 1810, defendants contended

15  that only the government's frank admission of the unlawful

16  electronic surveillance and active cooperation in the litigation

17  against it under FISA would suffice.  They also requested

18  interlocutory appellate review of the court's orders following

19  remand.  Id at 31.

20         In its order of January 5, 2009, the court ruled that

21  plaintiffs had made out a prima facie case that they are "aggrieved

22  persons" who had been subjected to "electronic surveillance" within

23  the meaning of section 1810.  In doing so, the court employed the

24  analysis and standard for establishing a prima facie case of

25  electronic surveillance used by the Ninth Circuit in <u>United States v</u>

26  <u>Alter</u>, 482 F2d 1016 (9th Cir 1973) (applying 18 USC § 3504(a)(1))

27  and more recently by the DC Circuit in <u>In re Sealed Case</u> (<u>Horn v</u>

28  <u>Huddle</u>), 494 F3d 139 (DC Cir 2007), a case in which, as in <u>Al-</u>

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Haramain, the plaintiff sought damages under FISA's section 1810. In re NSA Telecom Litigation, 595 F Supp 2d at 1083-84.

The court explained that the approach employed in Alter was appropriate in this case arising under FISA's section 1810 given the lack of precedent in the Ninth Circuit because the Alter test's "stringency makes it appropriate in cases arising in the somewhat more restrictive environment where national security dimensions are present."  595 F Supp 2d at 1084.

The court rejected defendants' contention that only when the government has openly acknowledged conducting warrantless electronic surveillance of an individual can that individual establish standing to sue:

> The court declines to entertain further challenges to plaintiffs' standing; the July 2 order gave plaintiffs the opportunity to "amend their claim to establish that they are 'aggrieved persons' within the meaning of 50 USC § 1801(k)."  Plaintiffs have alleged sufficient facts to withstand the government's motion to dismiss.  To quote the Ninth Circuit in Alter, "[t]he [plaintiff] does not have to plead and prove his entire case to establish standing and to trigger the government's responsibility to affirm or deny."  Contrary to defendants' assertions, proof of plaintiffs' claims is not necessary at this stage.  The court has determined that the allegations "are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented."

595 F Supp 2d at 1085 (citations omitted).  The court concluded: "[w]ithout a doubt, plaintiffs have alleged enough to plead 'aggrieved person' status so as to proceed to the next step in the proceedings under FISA's sections 1806(f) and 1810."  Id at 1086.

The January 5 order announced several next steps in the litigation that were designed to prioritize two interests: \\

15

1   "protecting classified evidence from disclosure and enabling

2   plaintiffs to prosecute their action."  Id at 1089.

3        The court announced its intention to review the Sealed

4   Document ex parte and in camera, then to issue an order stating

5   whether plaintiffs could proceed —— specifically, whether the Sealed

6   Document established that plaintiffs were subject to electronic

7   surveillance not authorized by FISA.  The court explained:

8            As the court understands its obligation with regard
             to classified materials, only by placing and
9            maintaining some or all of its future orders in this
             case under seal may the court avoid indirectly
10           disclosing some aspect of the Sealed Document's
             contents.  Unless counsel for plaintiffs are granted
11           access to the court's rulings and, possibly, to at
             least some of defendants' classified filings,
12           however, the entire remaining course of this
             litigation will be ex parte.  This outcome would
13           deprive plaintiffs of due process to an extent
             inconsistent with Congress's purpose in enacting
14           FISA's sections 1806(f) and 1810.

15  595 F Supp 2d at 1089.  The order directed the government to begin

16  processing security clearances for members of plaintiffs' litigation

17  team so that they would be able to read and respond to sealed

18  portions of the court's future orders and, if necessary, some

19  portion of defendants' classified filings.

20       The court also directed defendants to review their

21  classified submissions to date and to determine whether the Sealed

22  Document and/or any of defendants' classified submissions could be

23  declassified.  Upon completion of this review, defendants informed

24  the court that nothing they had filed under seal during the three

25  years in which the case had by then been pending could be

26  declassified.  Doc #577/078.

27       What followed were several months of which the defining

28  feature was defendants' refusal to cooperate with the court's

United States District Court
For the Northern District of California

orders punctuated by their unsuccessful attempts to obtain untimely appellate review. Expressing alarm that the January 5 order would result in the disclosure of privileged information without the opportunity for further review, defendants sought interlocutory and direct appeal. Doc #544/059; 545/060. The court denied defendants' request to certify the case for interlocutory review and the court of appeals dismissed defendants' appeal for lack of jurisdiction because no disclosure of classified information had been ordered by the court. Doc #562/071 and <u>Al-Haramain Islamic Foundation, Inc v Obama</u>, No 09-15266 (9th Cir February 27, 2009).

In response to the court's directive to "inform the court how [they intend] to comply with the January 5 order" (Doc #562/071 at 3), defendants presented three similar-sounding alternatives, all of which appeared geared toward obtaining a stay of this court's proceedings pending review by the court of appeals. Doc #600/084 at 1-2. The court next ordered the parties to meet and confer regarding the entry of an appropriate protective order, noting that the United States District Court for the District of Columbia had successfully used protective orders for highly classified information in the <u>In Re Guantánamo Bay Detainee Litigation</u>, D DC No Misc 08-0442 TFH, and that defendants had given no reason why a such a protective order would not adequately protect the classified information at issue in this case. Id at 2.

Next, after the United States completed suitability determinations for two of plaintiffs' attorneys and found them suitable for top secret/secure compartmented information ("TS/SCI") clearances, government officials in one or more defendant agencies, including defendant Keith B Alexander, refused to cooperate with

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

the court's orders, asserting that plaintiffs' attorneys did not "need to know" the information that the court had determined plaintiffs attorneys would need in order to participate in the litigation.  Declaration of Ariane E Cherlenko [NSA] in Support of Defendants' Motion of Stay Pending Appeal and for Certification of an Interlocutory Appeal, Doc #545-1/060-1 at 5.  Moreover, according to the parties' joint submission regarding a protective order (Doc #626/089 at 35), defendants refused to agree to any terms of the protective order proposed by plaintiffs and refused to propose one of their own.  Doc #630/090 at 3.

The court ordered defendants to show cause why, as a sanction for failing to obey the court's orders:  (1) defendants should not be prohibited, under FRCP 37(b)(2)(ii), from opposing the liability component of plaintiffs' claim under 50 USC § 1810 — that is, from denying that plaintiffs are "aggrieved persons" who had been subjected to electronic surveillance; and (2) the court should not deem liability under 50 USC § 1810 established and proceed to determine the amount of damages to be awarded to plaintiffs.  The court also ordered plaintiffs to submit a memorandum addressing whether it would be appropriate for them to file a motion for summary judgment on their FISA claim.  Doc #630/090 at 3.

After hearing argument on the order to show cause, the court directed plaintiffs to move for summary judgment on their FISA claim relying only on non-classified evidence.  See Doc #643/096.  It further ordered that if and only if defendants were to rely upon the Sealed Document or other classified evidence in response, the court would enter a protective order and produce such

classified evidence to plaintiffs' counsel who have obtained

security clearances.   Id.

The instant cross-motions ensued.

II

Turning first to defendants' motion to dismiss, defendants move under Rule 12(b)(1) for dismissal of plaintiffs' FAC arguing that:  (1) plaintiffs lack standing to obtain prospective declaratory or injunctive relief with respect to alleged warrantless surveillance under the Terrorist Surveillance Program ("TSP") because the TSP lapsed or was terminated in January 2007 and (2) the court lacks jurisdiction to review plaintiffs' claim for retrospective damages against the United States under section 1810 of FISA, because section 1810 assertedly does not expressly waive the sovereign immunity of the United States.

Defendants' first argument for dismissal attacks plaintiffs' non-FISA claims, arguing that these claims seek only "prospective declaratory and injunctive relief against alleged TSP surveillance" and that such relief is not available because the TSP ended in January 2007.  Doc #668/103 at 18-19.  This mootness argument is essentially a re-tread of standing arguments made in March 2008 that were also based on the TSP's purported January 2007 termination.  Doc #432/017 at 17.  Defendants further assert: "declaratory and injunctive relief are equitable and should for similar reasons be denied as a prudential matter."  Doc #668/103 at 19.  But defendants' argument rests on a mistaken premise; plaintiffs' prayer for relief seeks various items of equitable relief, but most are not predicated on the continued existence of

the TSP or other wiretapping activities.  Doc #458/035 at 16.
Plaintiffs seek, for example, a declaration that defendants'
warrantless surveillance of plaintiffs "is" unlawful, which may be
construed to encompass past surveillance; and orders requiring
defendants to turn over to plaintiffs, purge and/or destroy files
and records containing information obtained by means of unlawful
electronic surveillance.  Defendants do not explain what prudential
considerations would prohibit such equitable relief, and the court
is aware of none.

        Defendants' second argument for dismissal is a familiar
one; indeed, defendants admit that they have made it before, noting
that "the Government respectfully and briefly preserves its
position that Section 1810 of the FISA does not waive the sovereign
immunity of the United States."  Doc #668/103.  The court
considered and ruled on this issue in its order of July 2, 2008:

> It is, of course, true that section 1810 does not
> contain a waiver of sovereign immunity analogous to
> that in 18 USC section 2712(a) which expressly
> provides that aggrieved persons may sue the United
> States for unlawful surveillance in violation of Title
> III.  But FISA directs its prohibitions to "Federal
> officers and employees" (see, e g, 50 USC §§ 1806,
> 1825, 1845) and it is only such officers and employees
> acting in their official capacities that would engage
> in surveillance of the type contemplated by FISA.  The
> remedial provision of FISA in section 1810 would
> afford scant, if any, relief if it did not lie against
> such "Federal officers and employees" carrying out
> their official functions.  Implicit in the remedy that
> section 1810 provides is a waiver of sovereign
> immunity.

In re NSA Telecom Litigation, 564 F Supp 2d at 1125.  The court's
view of this issue has not changed.

        Accordingly, the motion to dismiss for lack of
jurisdiction is DENIED.

United States District Court
For the Northern District of California

III

The parties' cross-motions for summary judgment present more substantial questions. Rule 56(a) of the Federal Rules of Civil Procedure provides: "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Rule 56(d)(2) provides: "An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Rule 56(d)(1), moreover, provides that "the court should, to the extent practicable, determine what material facts are not genuinely at issue."

Plaintiffs' motion seeks summary adjudication of two issues: (1) plaintiffs' Article III standing and (2) defendants' liability under FISA's civil liability provision, 50 USC § 1810. Doc #657/099. Defendants cross-move for summary judgment on plaintiffs' FISA claim and "any remaining claim," arguing that: (1) the Ninth Circuit's mandate in this case "forecloses" plaintiffs' motion; (2) plaintiffs' evidence is too conjectural or circumstantial to establish that plaintiffs are "aggrieved persons" for FISA purposes; and (3) all other potentially relevant evidence —— including whether the government possessed a FISA warrant authorizing surveillance of plaintiffs —— is barred from disclosure by operation of the SSP. Doc #668/103.

Of particular note concerning these motions is the principle that: "[W]hen parties make cross-motions for summary judgment, they are not thereby relieved from filing materials in opposition to the other party's motion." William W Schwarzer, Alan Hirsch & David J Barrans, <u>The Analysis and Decision of Summary</u>

<u>Judgment Motions:  A Monograph on Rule 56 of the Federal Rules of</u>
<u>Civil Procedure</u> 74 (Federal Judicial Center 1991).

A

Plaintiffs have submitted twenty-eight public documents
and two declarations as evidence in support of their motion.
Defendants had submitted many of the same documents in support of
their third motion to dismiss and for summary judgment (Doc
#475/049) (see section III B, <u>infra</u>) and plaintiffs had submitted
all but two of the items in support of plaintiffs' motion for
discovery under FISA section 1806(f) (see declaration of Jon B
Eisenberg in support of motion pursuant to 50 USC § 1806(f) to
discover or obtain material relating to electronic surveillance,
Doc #472-1/046-1).  Not previously submitted are the government's
so-called "white paper" by the United States Department of Justice
dated January 19, 2006 under the heading "Legal Authorities
Supporting the Activities of the [NSA] Described by the President"
(Declaration of Jon B Eisenberg ("Eisenberg Decl") Exh AA, Doc
#657-5/099-5) and the amicus brief submitted in <u>ACLU v NSA</u>, 493 F2d
644 (6th Cir 2007), by the Center for National Security Studies and
the Constitution Project (Eisenberg Decl Exh BB, Doc #657-5/099-5).
These new items do not bear specifically on defendants' alleged
surveillance of Al-Haramain.  Plaintiffs also submit the
declarations of plaintiffs Asim Ghafoor and Wendell Belew (Doc ##
657/099-6; 657/099-7).  The substance of these declarations is
identical to that of the Ghafoor and Belew declarations submitted
in support of plaintiffs' motion under section 1806(f).  Doc ##472-
6/046-6; 472-7/046-7.

22

United States District Court
For the Northern District of California

1   The court has already determined, based on the body of

2   evidence submitted with plaintiffs' motion under section 1806(f)

3   (Doc #472/046), that plaintiffs have made out a prima facie case of

4   electronic surveillance under the standard set forth in <u>United</u>

5   <u>States v Alter</u>.  Under <u>Alter</u>, "the burden was then on the

6   government to squarely affirm or deny those charges * * * [with an

7   affidavit that is] factual, unambiguous and unequivocal."  482 F2d

8   at 1027.  In FISA proceedings, 50 USC § 1806(f) provides a

9   procedure by which the government may do this in camera, thus

10   avoiding the disclosure of sensitive national security information.

11   See <u>In Re NSA Telecom Litigation</u>, 564 F Supp 2d at 1131-35.

12   Defendants declined to avail themselves of section 1806(f)'s in

13   camera review procedures and have otherwise declined to submit

14   anything to the court squarely addressing plaintiffs' prima facie

15   case of electronic surveillance.

16   Instead, defendants have interposed three arguments

17   intended to undermine plaintiffs' claim for relief.  All three

18   arguments lack merit.

19

20                                    1

21   First, defendants contend that "the mandate of the Court

22   of Appeals in this case forecloses plaintiffs' motion.  The Ninth

23   Circuit expressly held that the information necessary for

24   plaintiffs to establish their standing has been excluded from this

25   case pursuant to the [SSP]," citing <u>Al-Haramain Islamic Foundation,</u>

26   <u>Inc v Bush</u>, 507 F3d at 1203-05.  The passages to which defendants

27   refer are as follows:

28   Al-Haramain cannot establish that it suffered injury
     in fact, a "concrete and particularized" injury,

23

United States District Court
For the Northern District of California

because the Sealed Document, which Al-Haramain
alleges proves that its members were unlawfully
surveilled, is protected by the [SSP].  At oral
argument, counsel for Al-Haramain essentially
conceded that Al-Haramain cannot establish standing
without reference to the Sealed Document.  When asked
if there is data or information beyond the Sealed
Document that would support standing, counsel offered
up no options, hypothetical or otherwise.  Thus,
Al-Haramain has indicated that its ability to
establish injury in fact hinges entirely on a
privileged document.  It is not sufficient for
Al-Haramain to speculate that it might be subject to
surveillance under the TSP simply because it has been
designated a "[SDGT]."

* * *

Because we affirm the district court's conclusion
that the Sealed Document, along with data concerning
surveillance, are privileged, and conclude that no
testimony attesting to individuals' memories of the
document may be admitted to establish the contents of
the document, Al-Haramain cannot establish that it
has standing, and its claims must be dismissed,
unless FISA preempts the [SSP].

Al-Haramain, 507 F3d at 1205.

Defendants' enthusiasm for these passages is

understandable, but the court does not agree that plaintiffs are

now "foreclosed" from attempting to establish standing without the

Sealed Document.  It is apparent from the opinion that the court of

appeals, having asked plaintiffs' counsel whether the Sealed

Document was necessary for plaintiffs to establish standing, simply

did not contemplate plaintiffs' later attempt, in light of newly-

available public evidence, to build a non-classified evidentiary

basis for their suit.

During oral argument on the instant cross-motions, the

court asked plaintiffs' attorney about the apparent discrepancy

between his representation to the court of appeals in August 2007

that plaintiffs required the Sealed Document to establish standing

24

and his contention in the district court in 2009 that plaintiffs

could establish standing without classified evidence of any kind.

> At oral argument counsel for Al-Haramain
> essentially conceded that Al-Haramain cannot
> establish standing without reference to the Sealed
> Document.  What's the background of that?  And what
> is the effect of that statement for purpose[s] of
> the standing determination here?

RT September 23, 2009, as amended Doc #712/114[4] at 26-27.

Plaintiffs' counsel responded that he had not attempted to marshal

public evidence because the Oregon district court had ruled that

plaintiffs could use the Sealed Document.  Counsel went on to

explain that there were two crucial pieces of public evidence that

he had not discovered as of the August 2007 oral argument:  (1) a

speech given on October 22, 2007 by FBI Deputy Director John S

Pistole to the American Banker's Association stating that, in

developing OFAC's case against Al-Haramain, "we used other

investigative tools —— like records checks, surveillance, and

interviews of various subjects" (see Eisenberg Decl Exh S, Doc

#657-3/099-3 at 51) and (2) "the testimony by members of the Bush

administration before Congress that told us how they intercept

communications, which is they do it on a wire from routing stations

within the United States, which makes it electronic surveillance

within the meaning of FISA * * *."  Doc #712/114 at 28.  Counsel

further expressed doubt that the court of appeals could have

---

[4]    The original transcript of the September 23, 2009 hearing was filed on October 6, 2009 (Doc #711/107).  At the stipulated request of the parties, the transcript was corrected and an amended version of the transcript was filed on February 22, 2010 (Doc #712/114). Citations herein to the record of proceedings at the September 23, 2009 hearing are to the amended transcript.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

anticipated that the FBI would "post on the FBI's website an admission like that." Id at 29.

Simply put, to deem plaintiffs "foreclosed" by part IV of the court of appeals' 2007 opinion from building their case with later-disclosed, publicly-available evidence —— especially in light of defendants' intransigence following the court's January 5, 2009 order and the limited progress made to date along the normal arc of civil litigation —— would violate basic concepts of due process in our system of justice. Defendants' reading of part IV of the court of appeals' opinion fails to account for these circumstances and would lead to a crabbed result the court of appeals could not have contemplated or intended.

2

Defendants' second major contention in opposition to plaintiffs' motion is that defendants cannot —— and therefore should not be required to —— respond to plaintiffs' prima facie case by showing that "plaintiffs' alleged electronic surveillance was authorized by a FISA warrant, or * * * plaintiffs were not in fact electronically surveilled." Doc #668/103 at 10. "[T]his," defendants argue, "is precisely what was precluded by the Ninth Circuit when it squarely held that 'information as to whether the government surveiled [plaintiffs]' is protected by the [SSP] and is categorically barred from use in this litigation." Id, quoting Al-Haramain, 507 F3d at 1203-04. Defendants' reading of the court of appeals' opinion would require the court to impose a result contrary to the intent of Congress in enacting FISA and, indeed,
\\

1   contrary to the court of appeals' interpretation of FISA in Al-
2   Haramain.

3        Under defendants' theory, executive branch officials may
4   treat FISA as optional and freely employ the SSP to evade FISA, a
5   statute enacted specifically to rein in and create a judicial check
6   for executive-branch abuses of surveillance authority.  For
7   example, the House Report on FISA noted:  "In the past several
8   years, abuses of domestic national security surveillances have been
9   disclosed.  This evidence alone should demonstrate the
10   inappropriateness of relying solely on [E]xecutive branch
11   discretion to safeguard civil liberties."  Foreign Intelligence
12   Surveillance Act of 1978, H R Rep No 95-1283 Part I at 21.  See
13   also In Re NSA Telecom Litigation, 564 F Supp 2d at 1117-24.

14        Perhaps sensitive to the obvious potential for
15   governmental abuse and overreaching inherent in defendants' theory
16   of unfettered executive-branch discretion, defendants protest that
17   "the Government does not rely on an assertion of the [SSP] to cover-
18   up alleged unlawful conduct."  Doc #668/103 at 37.  Rather, they
19   assert, it does so because "[d]isclosure of whether or not
20   communications related to al Qaeda have been intercepted, when, how,
21   of who [sic], and under what authority would reveal methods by which
22   the government has or has not monitored certain communications
23   related to that organization."  Id.  By "under what authority,"
24   presumably, defendants mean "whether or not pursuant to a FISA
25   warrant" —— the very heart of the cause of action under 50 USC
26   § 1810.  This fact —— the presence or absence of a FISA warrant ——
27   is something defendants assert may be cloaked by the SSP,
28   notwithstanding this court's July 2008 determination, pursuant to

United States District Court
For the Northern District of California

the court of appeals' remand instructions, that FISA displaces the SSP in cases within the reach of its provisions and that "this is such a case."   In re NSA Telecom Litigation, 564 F Supp 2d at 1124.

In an impressive display of argumentative acrobatics, defendants contend, in essence, that the court's orders of June 3 and June 5, 2009 setting the rules for these cross-motions make FISA inapplicable and that "the Ninth Circuit's rulings on the privilege assertion therefore control the summary judgment motions now before the Court." Doc #672/105 at 6.  In other words, defendants contend, this is not a FISA case and defendants are therefore free to hide behind the SSP all facts that could help plaintiffs' case.  In so contending, defendants take a flying leap and miss by a wide margin.  Defendants forewent the opportunity to invoke the section 1806(f) procedures Congress created in order for executive branch agencies to establish "the legality of the surveillance," including whether a FISA warrant for the surveillance existed.  Rather, in response to plaintiffs' motion under section 1806(f), defendants declined to make the submissions provided for by that section and instead asserted:

> The discretion to invoke Section 1806(f) belongs to the Attorney General, and under the present circumstances — where there has been no final determination that those procedures apply in this case to overcome the Government's successful assertion of privilege and where serious harm to national security is at stake — the Attorney General has not done so.

Doc #499/051 at 26-27 and 595 F Supp 2d at 1088.  Similarly, defendants could readily have availed themselves of the court's processes to present a single, case-dispositive item of evidence at one of a number of stages of this multi-year litigation:  a FISA warrant.  They never did so, and now illogically assert that the

United States District Court
For the Northern District of California

existence of a FISA warrant is a fact within the province of the SSP, not FISA.

But the court of appeals' opinion contemplated that the case would move forward under FISA if FISA were deemed to displace the SSP.  The court of appeals did not contemplate that the judicial process should be intentionally stymied by defendants' tactical avoidance of FISA:

> Under FISA, 50 USC §§ 1801 et seq, if an "aggrieved person" requests discovery of materials relating to electronic surveillance, and the Attorney General files an affidavit stating that the disclosure of such information would harm the national security of the United States, a district court may review in camera and ex parte the materials "as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."  50 USC § 1806(f).  The statute further provides that the court may disclose to the aggrieved person, using protective orders, portions of the materials "where such disclosure is necessary to make an accurate determination of the legality of the surveillance."  Id.  The statute, unlike the common law [SSP], provides a detailed regime to determine whether surveillance "was lawfully authorized and conducted."  Id.
>
> * * *
>
> [T]he FISA issue remains central to Al-Haramain's ability to proceed with this lawsuit.

Al-Haramain, 507 F3d at 1205-06.

At oral argument, plaintiffs' counsel argued that the burden was on defendants to show that they had a warrant because, given that the TSP was in place "in order to evade FISA, * * * why on earth would [defendants] get a FISA warrant to perform surveillance that they believed they had no need to get a FISA warrant for?" and because knowledge of the existence or non-existence of a FISA warrant was "within [defendants'] exclusive

\\

1  knowledge." Doc #712/114 at 8. The court finds merit in these
2  arguments.

3      In summary, because FISA displaces the SSP in cases
4  within its purview, the existence of a FISA warrant is a fact that
5  cannot be concealed through the device of the SSP in FISA
6  litigation for the reasons stated in the court's July 8, 2008
7  order, 564 F Supp 2d 1109. Plaintiffs have made out a prima facie
8  case and defendants have foregone multiple opportunities to show
9  that a warrant existed, including specifically rejecting the method
10 created by Congress for this very purpose. Defendants' possession
11 of the exclusive knowledge whether or not a FISA warrant was
12 obtained, moreover, creates such grave equitable concerns that
13 defendants must be deemed estopped from arguing that a warrant
14 might have existed or, conversely, must be deemed to have admitted
15 that no warrant existed. The court now determines, in light of all
16 the aforementioned points and the procedural history of this case,
17 that there is no genuine issue of material fact whether a warrant
18 was obtained for the electronic surveillance of plaintiffs. For
19 purposes of this litigation, there was no such warrant for the
20 electronic surveillance of any of plaintiffs.

21
22                              3

23     Defendants' third argument is essentially to quarrel with
24 the court's finding that plaintiffs have made out a prima facie
25 case of electronic surveillance, asserting that plaintiffs'
26 "evidence falls far short of establishing that the Government
27 conducted warrantless electronic surveillance under the TSP of
28 \\

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

plaintiffs' conversations in March and April 2004."  Doc #668/103
at 28.

        Because defendants' argument rests on a faulty
understanding of the parties' burdens as discussed in the preceding
section, a lengthy discussion of these points is not warranted.
The following discussion of defendants' handling of certain items
of evidence is included for the sake of completeness and is
intended to be illustrative.  Plaintiffs must —— and have —— put
forward enough evidence to establish a prima facie case that they
were subjected to warrantless electronic surveillance.

        Among plaintiffs' exhibits is a memorandum from Howard
Mendelsohn, Deputy Assistant Secretary at the Department of the
Treasury to defendant Adam J Szubin, Director of OFAC, dated
February 6, 2008.  Eisenberg Decl Exh Z, Doc #657-4/099-4.  This
lengthy, redacted document bearing the words "Top Secret" at the
top has a stated subject of "redesignation of Al-Haramain Islamic
Foundation locations in the United States (AHF-OREGON) and AHF
official Soliman AL-BUTHE pursuant to [Executive Order] 13224."  Id
at 126.  In it, Soliman al-Buthe (referred elsewhere in the record
as "Al-Buthi") is described as "the Treasurer of AHF-OREGON."  Id
at 127.  The document states that "AL-BUTHE was intercepted in some
four conversations with Al-Timimi" on February 1, 2003.  Id at 131.
Al-Buthi, meanwhile, is alleged in the FAC to be a director of Al-
Haramain (Doc #458/035 ¶ 34) and the individual whose conversations
with Ghafoor and Belew plaintiffs allege were intercepted by means
of electronic surveillance in March and April 2004.  Id at ¶¶ 32,
33 and Ghafoor & Belew Decls, Doc ##657-6/099-6, 657-7/099-7.
These documents buttress each other, as does the published speech

31

United States District Court
For the Northern District of California

by John Pistole to the American Bankers' Association admitting "surveillance" of Al-Haramain Oregon.  Eisenberg Decl Exh S, Doc #657-3/099-3.

Defendants attack as insufficient each item of evidence individually, ignoring the cumulative impact of the various documents.  As to the Pistole speech, they quibble:  "The mere statement that 'surveillance [] was used' in investigating the connections between al Qaeda and [Al-Haramain Islamic Foundation's] worldwide activities establishes nothing as to who, where, when, and how any such surveillance was directed."  Doc #668/103 at 32. As to the al-Buthi/al-Timimi intercepts, defendants write:  "That Mr Al-Timimi was the target of interception and was overheard speaking with Mr Al-Buthe * * * does not indicate that any of the named plaintiffs in this case were the target of or subject to surveillance, or where or how any such surveillance had occurred, including whether or not it was warrantless surveillance on a wire in the United States or authorized under FISA."  Id at 32.

This argument ignores that one need not be a target of electronic surveillance to be an "aggrieved person" under FISA's section 1801(k) but may be "any other person whose communications or activities were subject to electronic surveillance."  Section 1801(k) is quoted in section I, supra.  It also ignores that Al-Haramain is the primary plaintiff in this action and surveillance of one of its officers or directors amounts to surveillance of Al-Haramain.  And there is the further point that, even assuming arguendo that al-Timimi was the original target of surveillance, a productive wiretap of al-Timimi's conversations with al-Buthi would have led to separate electronic surveillance of al-Buthi beginning

United States District Court
For the Northern District of California

in early 2003.  This inference lends credence to the allegations of Belew and Ghafoor that their conversations with al-Buthi in 2004 were wiretapped.

At oral argument, defendants' counsel commented rather obliquely about the al-Buthi/al-Timimi intercept memorandum that "[t]his demonstrates that the surveillance that may have been at issue in this case did not, in fact, have to be of an individual associated with Al-Haramain, could have been of someone else, could have been other sources."  Doc #712/114 at 34.  Counsel then asserted "[t]hat surveillance * * * could well have been authorized by the FISA.  I actually believe that it was."  Id.  Further embellishing their attempts to create an aura of uncertainty and mystery around plaintiffs' prima facie evidence, defendants note: "even if the plaintiffs had been subject to surveillance (which itself is not established by the evidence cited), nothing establishes how such surveillance may have occurred."  Doc #668/103 at 29.

Defendants have also attacked plaintiffs' prima facie case by arguing that some of the documents, including the al-Buthi/al-Timimi intercept memorandum, demonstrate that links between Al-Haramain and al-Qaeda were suspected or known well before September 2004, the date on which OFAC designated Al-Haramain as a SDGT organization and publicly announced a connection between it and Osama bin-Laden.  See, for example, Defendants' Third Motion to Dismiss, Doc #475/049 at 23.  But later-disclosed, formerly Top Secret information about secret investigations before 2004 cannot refute plaintiffs' assertion that at no time before September 2004 did the government publicly assert that Al-Haramain

had links to Osama bin-Laden, a fact that suggests recently-acquired information in which the government had great confidence. Alone, no single item of evidence is sufficient, but together the various pieces establish a prima facie case.

Defendants' nit-picking of each item of plaintiffs' evidence, their remarkable insinuation (unsupported by any evidence of their own) that the al-Buthi/al-Timimi intercepts might have been pursuant to a FISA warrant and their insistence that they need proffer nothing in response to plaintiffs' prima facie case do not amount to an effective opposition to plaintiffs' motion for summary judgment.

B

The parties' submissions establish that there is no genuine issue as to the following material facts. These facts, most of which are summarized from plaintiffs' pleadings in the FAC, are annotated with citations to plaintiffs' evidence and, in many cases, with citations to identical evidence previously submitted to the court by defendants with their third motion to dismiss purportedly for calling attention to "the inadequacy of plaintiffs' evidence." Doc #475/049 at 18 n 4. Defendants have not disputed the authenticity or accuracy of the items of evidence they submitted with the motion to dismiss nor the veracity or credibility of any statements in declarations for the truth of any matter asserted therein; rather, they have challenged the inferences that could properly be drawn. The court rejected defendants' legal arguments in its order dated January 5, 2009 (595 F Supp 2d 1077) and above.

34

United States District Court
For the Northern District of California

1.  During or after the fall of 2001, President George W Bush authorized the NSA to intercept international communications into and out of the United States of persons linked to "al-Qaeda or related terrorist organizations."  United States Department of Justice, "Legal Authorities Supporting the Activities of the National Security Agency Described by the President," January 19, 2006 (Eisenberg Decl Exh AA, Doc #657-5/099-5 at 6).

2.  In October 2001, the Treasury Department created "Operation Green Quest" to track financing of terrorist activities, one of the targets of which were foreign branches of the Saudi Arabia-based Al-Haramain Islamic Foundation, a fact admitted by Treasury Department Deputy Secretary Kenneth W Dam in testimony before Congress on August 1, 2002.  FAC ¶ 24.  Exhibit 5 to Defendants' Third Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs' 3rd MTD Exh 5"), Doc #475-2/049-2 at 157, 159.

3.  In April 2002, the FBI created its Terrorist Financing Operations Section ("TFOS"), as admitted by FBI Counterterrorism Division Acting Assistant Director Gary M Bald in testimony before Congress on March 4, 2004; Eisenberg Decl Exh J, Doc #657-3/099-3 at 2; on May 13, 2003, through a Memorandum of Understanding between the Department of Justice and the Department of Homeland Security, the FBI was designated as the lead department to investigate potential terrorist-related

financial transactions; id at 4; the TFOS acquired, analyzed and disseminated data and information, including telecommunications data from a variety of sources, including "Internet Service Providers, the Telecommunications Industry," among others; id at 4; TFOS took over the investigation of Al-Haramain Islamic Foundation "pertaining to terrorist financing;" id at 7; in February 2004, the FBI executed a search warrant on plaintiff Al-Haramain's office in Ashland, Oregon and TFOS provided operational support, including document and data analysis, in the investigation of plaintiff Al-Haramain.  FAC ¶ 25.  Eisenberg Decl Exh J, Doc #657-3/099-3 at 7; Defs' 3rd MTD Exh 6, Doc #475-2/049-2 at 164-66, 168.  Bald's March 4, 2004 testimony included no mention of purported links between plaintiff Al-Haramain and Osama bin-Laden.  FAC ¶ 26.  Eisenberg Decl Exh J, Doc #657-3/099-3 at 7; Doc #475-2 at 168.

4.  TFOS "has access to data and information" from "the Intelligence Community" and has "[t]he ability to access and obtain this type of information in a time sensitive and urgent manner" as admitted by FBI Deputy Director John S Pistole in testimony before Congress on September 25, 2003.  FAC ¶ 27.  Eisenberg Decl Exh L, Doc #657-3/099-3 at 18.

5.  In conducting investigations of terrorist financing, OFAC officers use "classified * * * information sources" as admitted by OFAC Director R Richard Newcomb in testimony before Congress on June 16,

2004.  FAC ¶ 28.  Eisenberg Decl Exh M, Doc #657-3/099-3 at 27; Defs' 3rd MTD Exh 8, Doc #475-2/049-2 at 199.

6.  In 2004 the FBI, under the direction of defendant Mueller, undertook activity using information produced by the NSA through the warrantless surveillance program as admitted by defendant Mueller in testimony before the House Judiciary Committee on July 26, 2007. FAC ¶ 27.  Eisenberg Decl Exh I, Doc #657-2/099-2 at 43; Defs' 3rd MTD Exh 2, Doc #475-2/049-2 at 81.

7.  The FBI's search warrant on Al-Haramain's Ashland, Oregon, office was executed on February 18, 2004.  Eisenberg Decl Exh Z, Doc #657-4/099-4 at 33; Defs' 3rd MTD Exh 19, Doc #475-3/049-3 at 213.  On February 19, 2004, the Treasury Department's OFAC blocked Al-Haramain's assets pending an investigation of possible crimes relating to currency reporting and tax laws as admitted in a press release of that date by the Treasury Department's Office of Public Affairs; the press release contained no mention of purported links between plaintiff Al-Haramain and Osama bin-Laden.  FAC ¶¶ 30-31.  Eisenberg Decl Exh K, Doc #657-3/099-3 at 13; Defs' 3rd MTD Exh 9, Doc #475-2/049-2 at 208.

8.  Soliman al-Buthi was subjected to electronic surveillance by one or more United States government entities during telephone conversations with al-Timimi on February 1, 2003.  Eisenberg Decl Exh Z, Doc #657-4/099-4 at 36-37; Defs' 3rd MTD Exh 19, Doc #475-3/049-3

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

at 216-17.  Soliman al-Buthi was a senior official of
Al-Haramain in 2003.  FAC ¶ 32; Doc #475-3/049-3 at 213.

9.  Soon after the blocking of plaintiff Al-
Haramain's assets on February 19, 2004, plaintiff Belew
spoke by telephone with Soliman al-Buthi on the
following dates:  March 10, 11 and 25, April 16, May 13,
22 and 26, and June 1, 2 and 10, 2004.  Belew was
located in Washington DC; al-Buthi was located in
Riyadh, Saudi Arabia.  During the same period, plaintiff
Ghafoor spoke by telephone with al-Buthi approximately
daily from February 19 through February 29, 2004 and
approximately weekly thereafter.  Ghafoor was located in
Washington DC; al-Buthi was located in Riyadh, Saudi
Arabia.  (The FAC includes the telephone numbers used in
the telephone calls referred to in this paragraph.)  FAC
¶¶ 34-35.  Declarations of Asim Ghafoor, Doc #657-6/099-
6 and Wendell Belew, Doc #657-7/099-7.

10.  In the telephone conversations between Belew
and al-Buthi, the parties discussed issues relating to
the legal representation of defendants, including Al-
Haramain, named in a lawsuit brought by victims of the
September 11, 2001 attacks.  Names al-Buthi mentioned in
the telephone conversations with Ghafoor included
Mohammad Jamal Khalifa, spouse of one of Osama bin-
Laden's sisters, and Safar al-Hawali and Salman al-Auda,
clerics whom Osama bin-Laden claimed had inspired him.
In the telephone conversations between Ghafoor and al-
Buthi, the parties also discussed logistical issues

United States District Court

For the Northern District of California

relating to payment of Ghafoor's legal fees as defense counsel in the lawsuit. Ghafoor & Belew Decls, Doc ##657-6/099-6, 657-7/099-7.

11. In a letter to Al-Haramain's lawyer Lynne Bernabei dated April 23, 2004, OFAC Director Newcomb stated that OFAC was considering designating Al-Haramain as a SDGT organization based on unclassified information "and on classified documents that are not authorized for public disclosure." FAC ¶ 36. Eisenberg Decl Exh N, Doc #657-3/099-3 at 29; Defs' 3rd MTD Exh 10, Doc #475-2/049-2 at 210. In a follow-up letter to Bernabei dated July 23, 2004, Newcomb reiterated that OFAC was considering "classified information not being provided to you" in determining whether to designate Al-Haramain as an SDGT organization. ¶ 37. Eisenberg Decl Exh O, Doc #657-3/099-3 at 31; Defs' 3rd MTD Exh 11, Doc #475-2/049-2 at 212. On September 9, 2004, OFAC declared plaintiff Al-Haramain to be an SDGT organization. FAC ¶ 38. Eisenberg Decl Exh P, Doc #657-3/099-3 at 33; Defs' 3rd MTD Exh 12, Doc #475-2/049-2 at 214.

12. In a press release issued on September 9, 2004, the Treasury Department stated that the investigation of Al-Haramain showed "direct links between the US branch [of Al-Haramain] and Usama bin Laden"; this was the first public claim of purported links between Al-Haramain and Osama bin-Laden. FAC ¶¶ 39-40. Eisenberg Decl Exh P, Doc #657-3/099-3 at 33; Defs' 3rd MTD Exh 12, Doc #475-2/049-2 at 214.

United States District Court
For the Northern District of California

13.   In a public declaration filed in this litigation dated May 10, 2006, FBI Special Agent Frances R Hourihan stated that "the classified document that was inadvertently disclosed by a government employee without proper authorization" (i e, the Sealed Document) "was related to the terrorist designation" of Al-Haramain. FAC ¶ 41.   Eisenberg Decl Exh Q, Doc #657-3/099-3 at 36-37.

14.   FBI Deputy Director Pistole acknowledged that the FBI "used * * * surveillance" in connection with defendant OFAC's 2004 investigation of Al-Haramain but stated that "it was the financial evidence" provided by financial institutions "that provided justification for the initial designation" of Al-Haramain, in a speech delivered by Mr Pistole on October 22, 2007 at a conference of the American Bankers Association and American Bar Association on money laundering, the text of which appears on the FBI's official Internet website. FAC ¶¶ 42-43.   Eisenberg Decl Exh S, Doc #657-3/099-3 at 51; Defs' 3rd MTD Exh 13, Doc #475-3/049-3 at 6.   A court document filed by the United States Attorney for the District of Oregon on August 21, 2007 referred to the February 19, 2004 asset-blocking order as a "preliminary designation" and the September 9, 2004 order as "a formal designation." FAC ¶ 44.   Eisenberg Decl Exh U, Doc #657-4/099-4 at 8.

15.   To allege that the above-referenced telecommunications between al-Buthi and plaintiffs Belew

40

United States District Court
For the Northern District of California

and Ghafoor were wire communications and were
intercepted by defendants within the United States,
plaintiffs cite to several public statements by
government officials that most international
communications today are "on a wire" and therefore
subject to FISA's warrant requirements, including:  July
26, 2006 testimony by defendant Alexander and CIA
Director Michael Hayden (Eisenberg Decl Exh V, Doc #657-
4/099-4 at 12(see also id Exh W at 19-20); Defs' 3rd MTD
Exh 15, Doc #475-3/049-3 at 23); May 1, 2007 testimony
by Director of National Intelligence Michael McConnell
(Eisenberg Decl Exh W, Doc #657-4/099-4 at 16-18); and
September 20, 2007 testimony by McConnell before the
House Select Intelligence Committee:  "[t]oday * * *
[m]ost international communications are on a wire, fiber
optical cable," and "on a wire, in the United States,
equals a warrant requirement [under FISA] even if it was
against a foreign person located overseas."  FAC ¶ 48a-
c.  Eisenberg Decl Exh X, Doc #657-4/099-4 at 24; Defs'
3rd MTD Exh 16, Doc #475-3/049-3 at 60-61.

        16.  A memorandum dated February 6, 2008, to
defendant Szubin from Treasury Department Office of
Intelligence and Analysis Deputy Assistant Secretary
Howard Mendelsohn, which was publicly disclosed during a
2005 trial, acknowledged electronic surveillance of four
of al-Buthi's telephone calls on February 1, 2003.  FAC
¶ 51.  Eisenberg Decl Exh Z, Doc #657-4/099-4 at 32-38;
Defs' 3rd MTD Exh 19, Doc #475-3/049-3 at 216-17.

1    Because defendants have failed to establish the existence

2    of a genuine issue of material fact warranting denial of

3    plaintiffs' motion for summary judgment on the issue of defendants'

4    liability under FISA, plaintiffs' motion must be, and hereby is,

5    GRANTED.   Defendants' motion for summary judgment is DENIED.

6

7                                    IV

8    Among the unresolved minor issues in this litigation is

9    that of the liability of defendant FBI Director Robert S Mueller

10   III in his individual, as opposed to official, capacity.   The

11   original complaint did not specify whether the four individual

12   defendants were sued in their individual, as opposed to official,

13   capacities but plaintiffs later asserted that "a nonspecific

14   complaint may be characterized as alleging both official and

15   personal capacity liability" and sought to serve defendants in

16   their individual capacities some two years after filing the

17   complaint.  Doc #447/030.  In its July 2008 order dismissing the

18   complaint, the court granted plaintiffs leave, if they chose to

19   amend their pleading, to serve "all unserved defendants" with their

20   amended complaint within fifteen days of filing it with the court.

21   564 F Supp 2d at 1137.

22   In the FAC, defendant Mueller is the only individual

23   defendant named "in his official and personal capacities."  Doc

24   #458/035 at 1, 2.  Shortly after the FAC was filed, plaintiffs

25   filed an acknowledgement of service relating to defendant Mueller

26   (Doc #463/041) and counsel appeared for defendant Mueller in his

27   individual capacity (Doc # 460/037).  There were no similar filings

28   relating to the other individual defendants and no subsequent

United States District Court

For the Northern District of California

42

discussion of proceedings against any individual defendant but Mueller in the individual capacity.  Mueller is therefore the only defendant against whom plaintiffs seek to proceed in an individual capacity.

     In a footnote to their moving papers, plaintiffs merely note that their motion does not "address the personal liability of defendant [Mueller], who, by agreement of the parties, has not yet made an appearance in this action."  Doc #657/099 at 39 n 5.  At oral argument, plaintiffs' counsel stated "at this point we believe Mr Mueller is a corollary we needn't get to" and "we really don't see any need to pursue that avenue."  Doc #712/114 at 26.  The court sees no reason to allow this issue to be held open for future proceedings.  The court concludes that the nature of the wrongdoing by governmental actors alleged and established herein is official rather than individual or personal.  See discussion in section II, supra.  The specific factual allegations against defendant Mueller, moreover, plainly concern actions taken in his official capacity: the FAC alleges that Mueller testified before Congress that he had had "serious reservations about the warrantless wiretapping program."  Doc #458/035 at 5.

     Accordingly, the court now DISMISSES without leave to amend all claims in the FAC as to defendant Mueller in his individual capacity.  Defendant Mueller will remain a party to this action only in his official capacity.

                                    V

     Finally, the court turns to plaintiffs' request that the court make two rulings on the substantive matters before it on

**United States District Court**
For the Northern District of California

these cross-motions —— one based on the public evidence presented, and an alternate ruling based on its in camera review of the Sealed Document.  Doc #671/104 at 6.  At oral argument, counsel argued that only with the alternate ruling would the court have made a complete record for appellate review.  Doc #712/114 at 10-15.  While the court recognizes the merit of counsel's argument, it has concluded that including an alternative ruling based on the Sealed Document would complicate the record unduly and, perhaps, be perceived as unfair to defendants (who have refrained from submitting classified evidence in connection with this round of briefing).  Accordingly, the request to consider the Sealed Document in connection with these cross-motions is DENIED.


VI

        Having prevailed on their motion for summary judgment of liability on their FISA claim, plaintiffs now face a decision regarding the course of the remaining proceedings in this case.  They may either:  (1) take steps to prosecute the remaining claims in the FAC or (2) they may voluntarily dismiss those claims in order to take the steps necessary for the entry of judgment on the FISA claim.  Plaintiffs shall advise the court, no later than April 16, 2010 and in the manner set forth below, of their election.

        Should plaintiffs elect the first course —— to pursue their remaining claims in lieu of seeking entry of judgment —— they shall, by April 16, 2010, contact the clerk to obtain a date for a case management conference to be held not later than May 28, 2010.

        Should plaintiffs choose the second course, they shall submit a request for dismissal of their remaining claims together

**United States District Court**
For the Northern District of California

1   with a proposed form of judgment reflecting:  their computation of

2   damages under 50 USC § 1810 consistent with counsel's statements at

3   oral argument (Doc #712/114 at 24-25) and that statute; their

4   entitlement to attorney fees "and other investigation and

5   litigation costs" under section 1810(c); and the items of equitable

6   relief sought in the FAC to which they believe they are entitled

7   under this order.  If plaintiffs believe that further proceedings

8   are required in order for the court to determine the quantum of

9   damages or other specifics of the judgment, they shall so advise

10  the court in a separate written request accompanying their proposed

11  form of judgment.

12       Defendants may submit an alternative proposed form of

13  judgment or a written response to plaintiffs' submissions within

14  fourteen days after plaintiffs file their proposed form of

15  judgment.  Following entry of judgment herein, plaintiffs' motion

16  for attorney fees and costs shall be filed in accordance with FRCP

17  54(d) and Civil Local Rule 54.

18       The parties are admonished that all future submissions to

19  the court shall comply with paragraph 1.4 of the undersigned

20  judge's standing order:  "Chambers copies * * * must include on

21  each page the running header created by the ECF system."

22

23       IT IS SO ORDERED.

24

25

26  _____

27  VAUGHN R WALKER
    United States District Chief Judge

28

45