1 MICHAEL F. HERTZ
Deputy Assistant Attorney General
2 DOUGLAS N. LETTER
Terrorism Litigation Counsel
3 JOSEPH H. HUNT
Director, Federal Programs Branch
4 VINCENT M. GARVEY
Deputy Branch Director
5 ANTHONY J. COPPOLINO
Special Litigation Counsel
6 MARCIA BERMAN
Senior Counsel
7 U.S. Department of Justice
Civil Division, Federal Programs Branch
8 20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
9 Phone: (202) 514-4782  Fax: (202) 616-8460

10 *Attorneys for the Defendants*

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                 **SAN FRANCISCO DIVISION**

14 IN RE NATIONAL SECURITY AGENCY ) **No. M:06-cv-01791-VRW**
15 TELECOMMUNICATIONS RECORDS )
   LITIGATION )  **DEFENDANTS' NOTICE OF MOTION,**
16                                            )  **RENEWED MOTION TO DISMISS OR**
   _____)  **FOR SUMMARY JUDGMENT, AND**
                                              **MEMORANDUM IN SUPPORT**
17                                            )  **THEREOF IN** *Center for Constitutional*
   This Document Relates Only To:             )  *Rights v. Obama (07-1115)*
18                                            )
   *Center for Constitutional Rights v. Obama*, )  Judge:      Hon. Vaughn R. Walker
19 (Case No. 07-1115)                          )  Date:       *(No Hearing Set)*
                                              )  Time:
20                                            )  Courtroom:  6, 17th Floor
                                              )
21 _____)

22        PLEASE TAKE NOTICE that the Government Defendants hereby respectfully move to

23 dismiss this case for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil

24 Procedure, and also move for summary judgment pursuant to Rule 56 of the Federal Rules of

25 Civil Procedure.  The grounds for these motions are set forth in the instant motion and

26 accompanying memorandum of law in support thereof and are summarized below.

27        First, plaintiffs do not have standing to prosecute this action.  Plaintiffs' allegation that

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)

the challenged Terrorist Surveillance Program ("TSP"), which undisputedly no longer exists, chills their ability to communicate with their clients is insufficient to establish standing under *Laird v. Tatum*, 408 U.S. 1 (1972), and its progeny.  Any claim of injury based on plaintiffs actually being surveilled under the TSP is purely speculative and also cannot support plaintiffs' standing.

Second, while the Court need not reach this issue, the Government's state secrets privilege assertion over information concerning whether or not plaintiffs were actually surveilled under the TSP would preclude adjudication of plaintiffs' standing and the merits of their claims and require summary judgment for the Government.

Third, there is no authority for the Court to enter the disclosure and expungement relief that plaintiffs seek.

This motion is supported by the accompanying Defendants' Memorandum in Support of Defendant's Renewed Motion to Dismiss or for Summary Judgment and any prior submissions by defendants cited therein.

Date:  May 27, 2010                    Respectfully Submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director


 *s/ Anthony J. Coppolino*
ANTHONY J. COPPOLINO
Special Litigation Counsel

 *s/ Marcia Berman*
MARCIA BERMAN
Senior Counsel
U.S. Department of Justice

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                    2

1

2

Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782—Fax: (202) 616-8460

3

4

*Attorneys for the Government Defendants*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    3

1  MICHAEL F. HERTZ
   Deputy Assistant Attorney General
2  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
3  JOSEPH H. HUNT
   Director, Federal Programs Branch
4  VINCENT M. GARVEY
   Deputy Branch Director
5  ANTHONY J. COPPOLINO
   Special Litigation Counsel
6  MARCIA BERMAN
   Senior Counsel
7  U.S. Department of Justice
   Civil Division, Federal Programs Branch
8  20 Massachusetts Avenue, NW, Rm. 6102
   Washington, D.C. 20001
9  Phone: (202) 514-4782  Fax: (202) 616-8460

10 *Attorneys for the Defendants*

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                **SAN FRANCISCO DIVISION**

14 IN RE NATIONAL SECURITY AGENCY      )   **No. M:06-cv-01791-VRW**
15 TELECOMMUNICATIONS RECORDS          )
   LITIGATION                          )   **DEFENDANTS' MEMORANDUM IN**
16 _____ )   **SUPPORT OF DEFENDANTS'**
                                       )   **RENEWED MOTION TO DISMISS**
                                       )   **OR FOR SUMMARY JUDGMENT**
17 This Document Relates Only To:      )   **IN** *Center for Constitutional Rights v.*
                                       )   *Obama (07-1115)*
18                                     )
   *Center for Constitutional Rights v. Obama,* )   Judge:     Hon. Vaughn R. Walker
19 (Case No. 07-1115)                  )   Date:      *(No Hearing Set)*
                                       )   Time:
20                                     )   Courtroom: 6, 17th Floor
                                       )
21 _____ )

22

23

24

25

26

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 5

I.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
       THIS CASE BECAUSE PLAINTIFFS DO NOT HAVE STANDING
       TO PROSECUTE THIS ACTION ........................................................................... 5

       A.     Plaintiffs' Allegations of a Subjective Chill Are Insufficient to
              Confer Standing for Their First Amendment Claim ................................. 5

       B.     Any Alleged Injury Based on Any Actual Surveillance of
              Plaintiffs under the TSP Is Purely Speculative .................................... 13

II.    THE STATE SECRETS PRIVILEGE BARS ADJUDICATION OF
       PLAINTIFFS' STANDING AND THE MERITS OF THEIR CLAIMS ...................... 14

       A.     The Government's State Secrets Privilege Assertion .......................... 14

       B.     The State Secrets Privilege Prevents Plaintiffs from Proving,
              and the Government from Rebutting, Plaintiffs' Standing .................. 16

       C.     The State Secrets Privilege Prevents Adjudication of the Merits
              of Plaintiffs' Claims. .......................................................................... 18

III.   THE DISCLOSURE AND EXPUNGEMENT RELIEF THAT
       PLAINTIFFS SEEK IS NOT AUTHORIZED BY FISA, NOR IS IT
       AN APPROPRIATE EXERCISE OF THE COURT'S EQUITABLE
       POWERS ............................................................................................................. 21

CONCLUSION ................................................................................................................. 23

1

## TABLE OF AUTHORITIES

2    <u>CASES</u>                                                                    <u>PAGE(S)</u>

3    *ACLU v. Barr*,
          952 F.2d 457 (D.C. Cir. 1991) ................................................................... 20
4
     *ACLU v. NSA*,
5         493 F.3d 644 (6th Cir. 2007), *cert. denied*, 552 U.S. 1179 (2008) ......................... passim

6    *Al-Haramain Islamic Foundation, Inc. v. Bush*,
          507 F.3d 1190 (9th Cir. 2007) ........................................................... 2, 14, 15
7
     *Al-Haramain Islamic Foundation v. Bush*,
8         564 F. Supp. 2d 1109 (N.D. Cal. 2008) ....................................................... 14

9    *Al-Haramain Islamic Foundation v. Obama*,
          – F. Supp. 2d –, 2010 WL 1244349 (N.D. Cal. Mar. 31, 2010) ...................................... 13
10
     *American Foreign Serv. Ass'n v. Garfinkel*,
11        490 U.S. 153 (1989) ......................................................................... 18

12   *Amnesty International USA v. McConnell*,
          646 F. Supp. 2d 633 (S.D.N.Y. 2009) ................................................... 10, 11, 12
13
     *Baggett v. Bullitt*,
14        377 U.S. 360 (1964) .......................................................................... 8

15   *Baird v. State Bar of Arizona*,
          401 U.S. 1 (1971) ............................................................................ 8
16
     *Baker v. Carr*,
17        369 U.S. 186 (1962) .......................................................................... 6

18   *Bareford v. General Dynamics Corp.*,
          973 F.2d 1138 (5th Cir. 1992) ............................................................... 16
19
     *Center for Biological Diversity v. Lohn*,
20        511 F.3d 960 (9th Cir. 2007) ................................................................ 21

21   *City of Los Angeles v. Lyons*,
          461 U.S. 95 (1983) .................................................................. 5, 6, 16, 21
22
     *Department of Commerce v. United States House of Representatives*,
23        525 U.S. 316 (1999) ......................................................................... 18

24   *Doe v. United States Air Force*,
          812 F.2d 738 (D.C. Cir. 1987) ............................................................... 22
25
     *Ellsberg v. Mitchell*,
26        709 F.2d 51 (D.C. Cir. 1983) ............................................................ 15, 17

27

28   **Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
     *Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                            -ii-

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215 (1990) ........................................................... 6

*Fendler v. United States Bureau of Prisons*,
    846 F.2d 550 (9th Cir. 1988) ........................................ 22

*Fendler v. United States Parole Commission*,
    774 F.2d 975 (9th Cir. 1985) ........................................ 22

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
    528 U.S. 167 (2000) ......................................................... 10

*Gator.com Corp. v. L.L. Bean, Inc.*,
    398 F.3d 1125 (9th Cir. 2005) ........................................ 6

*Golden v. Zwickler*,
    394 U.S. 103 (1969) ......................................................... 21

*Gordon v. Warren Consolidated Bd. of Educ.*,
    706 F.2d 778 (6th Cir. 1983) ........................................ 8

*Halkin v. Helms*,
    598 F.2d 1 (D.C. Cir. 1978) ........................................ 15

*Halkin v. Helms*,
    690 F.2d 977 (D.C. Cir. 1982) .................................... 8, 15

*Hepting v. AT&T*,
    439 F. Supp. 2d 974 (N.D. Cal. 2006) ...................... 2, 4

*Illinois v. McArthur*,
    531 U.S. 326 (2001) ......................................................... 18

*Iron Arrow Honor Society v. Heckler*,
    464 U.S. 67 (1983) ........................................................... 5

*Jabara v. Kelley*,
    476 F. Supp. 561 (E.D. Mich. 1979), *vacated on other grounds*,
    691 F.2d 272 (6th Cir. 1982) ........................................ 19

*Kasza v. Browner*,
    133 F.3d 1159 (9th Cir. 1998) ........................................ 16

*Keyishian v. Board of Regents*,
    385 U.S. 589 (1967) ......................................................... 8

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375 (1994) ......................................................... 5

*Laird v. Tatum*,
    408 U.S. 1 (1972) ..................................................... passim

*Lamont v. Postmaster General*,
    381 U.S. 301 (1965) ........................................................................................ 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 5, 6

*Meese v. Keene*,
    481 U.S. 465 (1987) ...................................................................................... 10

*Ozonoff v. Berzak*,
    744 F.2d 224 (1st Cir. 1984) ........................................................................ 10

*Paton v. LaPrade*,
    524 F.2d 862 (3d Cir. 1975) ......................................................................... 10

*Presbyterian Church v. United States*,
    870 F.2d 518 (9th Cir. 1989) ................................................................... 13, 21

*Pritikin v. Dep't. of Energy*,
    254 F.3d 791 (9th Cir. 2001) .......................................................................... 5

*Rakas v. Illinois*,
    439 U.S. 128 (1978) ...................................................................................... 17

*Reporters Committee for Freedom of the Press v. Am. Tel. & Tel. Co.*,
    593 F.2d 1030 (D.C. Cir. 1978) .................................................................... 19

*Reuber v. United States*,
    750 F.2d 1039 (D.C. Cir. 1984) .................................................................... 22

*Shane v. Greyhound Lines, Inc.*,
    868 F.2d 1057 (9th Cir. 1989) ........................................................................ 6

*Sinclair v. Schriber*,
    916 F.2d 1109 (6th Cir. 1990) ........................................................................ 8

*Spector Motor Service, Inc v. McLaughlin*,
    323 U.S. 101 (1944) ...................................................................................... 18

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ....................................................................................... 5, 6

*United Presbyterian Church v. Reagan*,
    738 F.2d 1375 (D.C. Cir. 1984) ............................................................. 8, 9, 11

*United States v. Mayer*,
    503 F.3d 740 (9th Cir. 2007) ........................................................................ 19

*United States v. Montoya de Hernandez*,
    473 U.S. 531 (1985) ...................................................................................... 19

*United States v. Reynolds*,
    345 U.S. 1 (1953) .................................................................................... 14, 15

*United States v. Smith*,
   940 F.2d 395 (9th Cir. 1991) ........................................................ 22

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................ 6

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ........................................................................ 6

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009) ..................................................... 15, 23

*Zuckerbraun v. General Dynamics Corp.*,
   935 F.2d 544 (2d Cir. 1991) ................................................... 15, 16

## <u>STATUTES</u>

5 U.S.C. § 552 ....................................................................................... 23

18 U.S.C. § 2520(b) ............................................................................... 20

18 U.S.C. § 2707(b) ............................................................................... 20

50 U.S.C. § 1801(k) ............................................................................... 17

50 U.S.C. § 1806(f) ................................................................................ 22

50 U.S.C. § 1806(g) ............................................................................... 22

50 U.S.C. § 1809 .......................................................................... 4, 20, 21

50 U.S.C. § 1810 ............................................................................. 17, 20

50 U.S.C. § 1881a ................................................................................. 10

**INTRODUCTION**

As the opening line of plaintiffs' complaint declares, "[t]his is an action for injunctive relief, seeking an order that would require President George W. Bush and his agents to halt an illegal and unconstitutional program of electronic surveillance of American citizens and other residents of this country." Complaint at ¶ 1 (Dkt. 16-1). But as the Government previously informed the Court, the challenged surveillance program known as the Terrorist Surveillance Program ("TSP") was terminated three years ago, in 2007. As a result of the lapse of the TSP, plaintiffs no longer seek the injunctive relief that motivated their complaint. Plaintiffs now seek only an order requiring defendants to disclose to plaintiffs records of any unlawful surveillance of plaintiffs' communications that was carried out pursuant to the TSP and to destroy any such information and records in defendants' possession.

However, there is no basis for the Court to enter such an order for the fundamental reason that plaintiffs lack standing for their claims. Plaintiffs are lawyers who allegedly represent individuals whom the Government has suspected of being linked to al Qaeda. Based on the Government's public description of the TSP, plaintiffs believe that their telephone conversations and emails with these clients, and with other persons abroad, were subject to surveillance pursuant to the TSP. The essence of plaintiffs' claim that they have been injured for purposes of establishing their standing is that the TSP had a chilling effect on their ability to communicate by phone and email with clients and others whom they believed were subject to surveillance under the TSP. Of course, plaintiffs cannot now be chilled by a surveillance program that no longer exists. Nor are plaintiffs' allegations of a subjective chill coupled with an unwillingness to communicate sufficient to establish injury-in-fact under *Laird v. Tatum*, 408 U.S. 1 (1972), and its progeny. And, to the extent that plaintiffs claim an injury based on actually being surveilled under the TSP, as opposed to the asserted chill injury, they have not come forth with any evidence showing or even suggesting that they were actually surveilled. Any claim that they were surveilled based on their representation of persons suspected by the Government of being linked to al Qaeda is purely speculative.

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)

1    For these reasons, the Court should dismiss plaintiffs' complaint.  Indeed, the Court need

2    not reach the separate issue raised by the Government's prior and renewed dispositive motion –

3    whether the state secrets privilege assertion by the Director of National Intelligence forecloses

4    litigation of this case.  But to the extent that the case is not otherwise dismissed, the

5    Government's state secrets assertion over information concerning whether or not plaintiffs were

6    actually surveilled under the TSP would preclude adjudication of plaintiffs' standing and the

7    merits of their claims.  Finally, even if plaintiffs were to surmount the standing and state secrets

8    hurdles, there is no authority for the Court to enter the remaining requested disclosure and

9    expungement relief.

10                                    **BACKGROUND**

11    Following the September 11, 2001, terrorist attacks, then-President George W. Bush

12    authorized the NSA to conduct a counter-terrorism surveillance program that has come to be

13    known as the Terrorist Surveillance Program ("TSP").  The Government has acknowledged that

14    the TSP included the interception of telephone and email communications where one party to the

15    communication was located outside the United States and the Government had a reasonable basis

16    to conclude that one party to the communication was a member of al-Qaeda or an affiliated

17    group.  *See Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1192 (9th Cir. 2007);

18    *ACLU v. NSA*, 493 F.3d 644, 648 (6th Cir. 2007), *cert. denied*, 552 U.S. 1179 (2008); *Hepting v.

19    AT&T*, 439 F. Supp. 2d 974, 987 (N.D. Cal. 2006).

20    The TSP had a limited life and no longer exists.  On January 17, 2007, the Attorney

21    General sent a public letter to Senate Judiciary Committee Chairman Leahy and Ranking

22    Member Specter (filed with this Court the same day) advising them that "on January 10, 2007, a

23    Judge of the Foreign Intelligence Surveillance Court ["FISC"] issued orders authorizing the

24    Government to target for collection international communications into or out of the United States

25    where there is probable cause to believe that one of the communicants is a member or agent of al

26    Qaeda or an associated terrorist organization."  *See* Dkt. 127-1 (MDL-06-cv-1791-VRW).  As a

27    result of these orders, "any electronic surveillance that was occurring as part of the Terrorist

28

1   Surveillance Program will now be conducted subject to the approval of the Foreign Intelligence

2   Surveillance Court." *See id.  See also ACLU*, 493 F.3d at 651 n. 4.  On February 22, 2007, the

3   United States filed a public Declaration of Lt. Gen. Keith B. Alexander, Director of the NSA,

4   which echoed the Attorney General's statement that any electronic surveillance that was

5   conducted under the TSP would be conducted subject to the approval of the FISA Court and that

6   the TSP was not reauthorized. *See* Dkt. 175 (MDL-1791).[1]

7          Plaintiffs filed their complaint on January 17, 2006, before the lapse of the TSP.

8   Plaintiffs are the Center for Constitutional Rights, a non-profit legal organization, several of its

9   lawyers, and one of its legal workers.  They claim to represent individuals whom the

10  Government has suspected of being linked to al Qaeda.  Based on the Government's description

11  of the TSP, plaintiffs believe that their telephone conversations and emails with these clients, and

12  with other persons abroad, were subject to surveillance pursuant to the TSP.  *See* Complaint at ¶¶

13  3-5 (Dkt. 16-1).  The complaint does not identify which conversations were purportedly

14  surveilled, or when, but vaguely and generally alleges that plaintiffs' "communications,

15  including attorney-client privileged communications and attorney work product, have been and

16  continue to be intercepted" by the TSP.  *Id*. at ¶ 43; *see also id.* at ¶ 5.  Plaintiffs are not suing for

17  the direct harm of allegedly being unlawfully surveilled (compare *Al-Haramain*); their suit is

18  based instead on the chilling effect that the TSP has allegedly had on their communications with

19  clients and others, which has allegedly impaired plaintiffs' ability to vigorously represent their

20  clients. *Id.* at ¶¶ 6, 42.  More specifically, plaintiffs claim that the revelation of the TSP has

21  caused them to institute protective measures to reduce the risk of disclosure of client

22  confidences, including not communicating with certain individuals over the phone or by email

23  and avoiding certain subjects. *Id*. at  ¶ 42.  They claim that they have been forced to travel

24  internationally to avoid the risk that privileged communications will be intercepted.  *Id*.  The

25  complaint seeks a declaration that the TSP was unlawful and an injunction preventing further

26

27          [1]  Also on February 22, 2007, the United States filed a classified declaration by Lt. Gen.
    Alexander for the Court's *in camera, ex parte* review.  *See* Dkt. 176-1 (MDL-1791).
28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    3

1  such unlawful surveillance, but not money damages.  *Id.* at Prayer for Relief.  Plaintiffs allege

2  violations of the FISA, 50 U.S.C. § 1809; the Separation of Powers; the First Amendment; and

3  the Fourth Amendment.  *Id*. at ¶¶ 46-52.

4        In 2006, while this case was pending before the Southern District of New York, the

5  parties filed and argued dispositive motions.  *See* Dkts. 12, 16.  In February, 2007, the case was

6  transferred to this Court by the Judicial Panel on Multidistrict Litigation (*see* Dkt. 1), and the

7  parties subsequently filed supplemental memoranda in support of their dispositive motions.  *See*

8  Dkts. 3, 13, 14.  On August 9, 2007, the Court heard oral argument on the motions (*see* Dkt. 20),

9  and the next day plaintiffs moved to supplement their complaint.  *See* Dkt. 19.  The Government

10  defendants opposed that motion.  *See* Dkt. 22.  On March 31, 2008, the Court terminated

11  plaintiffs' motion to supplement with leave to petition to renew if the circumstances warranted

12  but did not otherwise rule pending the outcome of an appeal in *Hepting v. AT&T*, 439 F. Supp.

13  2d 974 (N.D. Cal. 2006).  *See* Dkt. 438 (MDL-1791).

14        On March 19, 2010, in response to the Court's order of January 20, 2010, the parties

15  submitted a joint status report advising the Court of the status of the case and the parties'

16  positions on proceedings to resolve it.  Plaintiffs' position is that even if the TSP is no longer

17  operative, they are still entitled to an order requiring defendants to disclose to plaintiffs any

18  unlawful surveillance of plaintiffs' communications that was carried out pursuant to the TSP; to

19  turn over to plaintiffs any information and records in defendants' possession relating to plaintiffs

20  that were acquired through the TSP or were the fruit of the TSP; and to destroy any such

21  information and records in defendants' possession.  *See* Joint Status Report (Dkt. 35) at 3-4.

22  This is now plaintiffs' sole request for relief.

23        The Government's position is that the case should be dismissed for lack of standing

24  based on the insufficiency of plaintiffs' allegations of injury.  The state secrets privilege, which

25  the Government previously asserted in this case, also bars the disclosure and expungement relief

26  plaintiffs seek.  In an order entered on March 26, 2010, the Court ordered the parties to renew

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)          4

1    their respective cross-motions.  *See* Dkt. 36.

2                                    **ARGUMENT**

3    **I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS
            CASE BECAUSE PLAINTIFFS DO NOT HAVE STANDING TO
4           PROSECUTE THIS ACTION.**

5            Plaintiffs lack standing to prosecute this case.  Plaintiffs' allegations of a subjective chill

6    and a self-imposed unwillingness to communicate as a result of their subjective apprehension are

7    insufficient to constitute injury-in-fact for purposes of establishing standing for their First

8    Amendment claim.  Moreover, plaintiffs' allegations of injury arising from their actually being

9    surveilled under the TSP are too speculative to confer standing.

10           **A.    Plaintiffs' Allegations of a Subjective Chill Are Insufficient to
                     Confer Standing for Their First Amendment Claim.**

11           Subject matter jurisdiction is not present because plaintiffs do not have standing to bring

12   this suit.  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*

13   *of America*, 511 U.S. 375, 377 (1994).  "[T]hose who wish to invoke the jurisdiction of the

14   federal courts must satisfy the threshold requirements of Article III . . . by alleging an actual case

15   or controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  "[S]tanding is an

16   essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v.*

17   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

18           "To satisfy the Article III case or controversy requirement, a litigant must have suffered

19   some actual injury that can be redressed by a favorable judicial decision."  *Iron Arrow Honor*

20   *Society v. Heckler*, 464 U.S. 67, 70 (1983).  The "irreducible constitutional minimum of standing

21   contains three elements" – (1) the plaintiff must have suffered an injury in fact; (2) the injury

22   must be fairly traceable to the challenged action and not the result of the independent action of

23   some third party not before the court; and (3) it must be likely, as opposed to merely speculative,

24   that the injury will be redressed by a favorable decision from the court.  *Lujan*, 504 U.S. at

25   560-61.  *See also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998);

26   *Pritikin v. Dep't. of Energy*, 254 F.3d 791, 796-97 (9th Cir. 2001).  To satisfy the injury-in-fact

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    5

1   requirement, a plaintiff's alleged injury must be "concrete" and "actual or imminent, not

2   'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (quoting

3   *Lyons*, 461 U.S. at 101-02). Only a plaintiff who identifies this sort of concrete injury-in-fact

4   has "'such a personal stake in the outcome of the controversy' as to warrant his invocation of

5   federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."

6   *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204

7   (1962)).[2]

8        A party who seeks to invoke the jurisdiction of the court bears the burden of establishing

9   Article III standing. *Steel Co.*, 523 U.S. at 104; *Lujan*, 504 U.S. at 561; *FW/PBS, Inc. v. Dallas*,

10  493 U.S. 215, 231 (1990); *Warth*, 422 U.S. at 508. Since the elements of standing "are not mere

11  pleading requirements but rather an indispensable part of the plaintiff's case, each element must

12  be supported in the same way as any other matter on which the plaintiff bears the burden of

13  proof, i.e., with the manner and degree of evidence required at the successive stages of the

14  litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, "general factual allegations of injury

15  resulting from the defendant's conduct may suffice," for on a motion to dismiss the Court may

16  "presume that general allegations embrace those specific facts that are necessary to support the

17  claim." *See id.* In response to a summary judgment motion, however, "the plaintiff can no

18  longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence

19  'specific facts'" establishing their standing. *See id.* Purported evidence that "contains only

20  conclusory allegations, not backed up by statements of fact . . . cannot defeat a motion for

21  summary judgment." *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989).

22        The essence of plaintiffs' First Amendment claim is that the TSP has a chilling effect on

23  their ability to communicate by phone and email with clients and others whom they believed

24

25        [2] Standing requirements apply to actions seeking declaratory relief. "The limitations that

26  Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment

    context." *Gator.com Corp. v. L.L. Bean, Inc.,* 398 F.3d 1125, 1129 (9th Cir. 2005).

27

28

1   were subject to surveillance under the TSP.  Plaintiffs assert that professional ethics rules require

2   them to take reasonable and appropriate measures to reduce the risk of disclosure of client

3   confidences, and that once they learned that the confidentiality of their communications with

4   certain clients and other individuals may have been comprised by the TSP, they were obligated

5   to stop communicating with them by electronic means.  *See* Complaint at ¶ 42; Affirmation of

6   Stephen Gillers at ¶¶ 8-9 (Dkt. 16-6).  They claim that the TSP therefore interferes with their

7   First Amendment right to freely provide legal advice and vigorously advocate for clients.  *See*

8   Complaint at ¶ 52.  Even if the TSP had not been discontinued, plaintiffs would lack standing to

9   pursue their First Amendment "chill" claim because there is no cognizable injury-in-fact.

10  However, the undisputed fact that the TSP was terminated in 2007 makes any claim that

11  plaintiffs' representation of their clients is currently chilled by the TSP untenable.

12      Plaintiffs' allegations of a subjective chill coupled with an unwillingness to communicate

13  are insufficient to establish injury-in-fact under the controlling precedent of *Laird v. Tatum*, 408

14  U.S. 1 (1972).  In *Laird*, the Court held that the plaintiffs lacked standing to challenge Army

15  surveillance pursuant to a program designed to gather information about potential civil

16  disturbances.  The plaintiffs had claimed, just like plaintiffs here, that the exercise of their First

17  Amendment rights was being chilled by the mere existence of the Government's surveillance

18  activity, which they believed was broader than necessary for the accomplishment of a valid

19  governmental purpose.  408 U.S. at 10, 13.  The Court held that  "[a]llegations of subjective

20  'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of

21  specific future harm."  *Id*. at 13-14.  While the Court recognized that it had found in certain cases

22  that constitutional violations may arise from the chilling effect of governmental action, it

23  explained that "[i]n none of these cases, however, did the chilling effect arise merely from the

24  individual's knowledge that a governmental agency was engaged in certain activities or from the

25  individual's concomitant fear that, armed with the fruits of those activities, the agency might in

26  the future take some other and additional action detrimental to that individual.  Rather, in each of

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    7

1   these cases, the challenged exercise of governmental power was regulatory, proscriptive, or

2   compulsory in nature, and the complainant was either presently or prospectively subject to the

3   regulations, proscriptions, or compulsions that he was challenging." *Id*. at 11.  The

4   governmental power exercised in the cases that the Court distinguished included a state's

5   denying a candidate admission to the bar, *Baird v. State Bar of Arizona*, 401 U.S. 1 (1971); a

6   state's discharging teachers from their jobs, *Keyishian v. Board of Regents*, 385 U.S. 589 (1967);

7   a governmental regulation requiring individuals to make a special written request to the Post

8   Office for delivery of political literature addressed to them, *Lamont v. Postmaster General*, 381

9   U.S. 301 (1965); and a governmental requirement of an oath as a condition of government

10  employment, *Baggett v. Bullitt*, 377 U.S. 360 (1964).  *See Laird*, 408 U.S. at 11-12.

11       Lower courts have consistently applied *Laird* to find that plaintiffs lacked standing to

12  challenge intelligence-gathering efforts where the primary harm alleged was a chilling effect,

13  even where the chill had a tangible consequence.  *See, e.g., Sinclair v. Schriber*, 916 F.2d 1109,

14  1115 (6th Cir. 1990) (plaintiffs lacked standing to pursue First Amendment claim based on

15  chilling effect of FBI's surveillance of their communications, including communications with

16  their attorneys; one plaintiff claimed that as a result of being surveilled, he stopped engaging in

17  political activism); *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378-80 (D.C. Cir.

18  1984) (plaintiffs lacked standing to challenge executive orders authorizing intelligence

19  surveillance programs where challenged scheme did not impose or relate to any direct

20  governmental constraint upon plaintiffs; plaintiffs claimed that fear of being subjected to illegal

21  surveillance deterred them from conducting constitutionally protected activities); *Gordon v.*

22  *Warren Consolidated Bd. of Educ.*, 706 F.2d 778, 779-81 (6th Cir. 1983) (high school teachers

23  and students lacked standing to challenge police undercover surveillance in their classrooms

24  under *Laird* where covert operation did not in and of itself result in tangible consequences;

25  plaintiffs claimed that disclosure of the investigation dramatically altered the content and open

26  discussion methodology that had characterized their classes); *Halkin v. Helms*, 690 F.2d 977,

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                      8

1    1002 & n. 89 (D.C. Cir. 1982) (plaintiffs who alleged that they were subjected to unlawful

2    surveillance by the NSA and CIA due to their opposition to the Vietnam War lacked standing to

3    challenge same executive order involved in *Reagan*; plaintiffs claimed that the surveillance

4    program deterred them from engaging in protected speech).

5          And in *ACLU v. NSA*, 493 F.3d 644 (6th Cir. 2007), the court dismissed a First

6    Amendment challenge to the legality of the TSP for lack of standing, relying on *Laird*, based on

7    allegations identical to those presented here.  The plaintiffs included lawyers who regularly

8    communicate with individuals located overseas, who the plaintiffs believed to be the types of

9    people that the NSA suspects of being associated with al Qaeda and therefore likely to be

10   monitored under the TSP.  Like here, the plaintiffs claimed that knowledge of the TSP impaired

11   their ability to communicate with their overseas contacts by phone or email due to their

12   professional ethical obligations to protect the confidentiality of their communications.  493 F.3d

13   at 653-54.  The plaintiffs also claimed that the disclosure of the TSP had a chilling effect on their

14   overseas contacts' willingness to communicate with the plaintiffs by phone or email, which in

15   turn burdened the plaintiffs' performance of their jobs.  *Id*. at 654.

16         Although the Sixth Circuit issued three separate opinions, the judges in the

17   majority—Judges Batchelder and Gibbons—agreed that the plaintiffs could not establish

18   standing for their First Amendment claim.[3]  Analyzing *Laird* and its progeny, Judge Batchelder

19   concluded that plaintiffs' allegations of a "chill" injury in support of their First Amendment

20   claim were insufficient to establish that element of the standing inquiry.  *See id.* at 660-66.

21   Judge Batchelder explained that, under *Laird*, to establish a sufficient injury under the First

22   Amendment, "a plaintiff must establish that he or she is regulated, constrained, or compelled

23   directly by the government's actions, instead of by his or her own subjective chill."  *Id*. at 661.

24

25         [3] Judge Gibbons found that the plaintiffs could not establish standing for any of their

26   claims due to the fact that they failed to provide evidence that they were subjected to

27   surveillance under the TSP.  *ACLU*, 493 F.3d at 688 (Gibbons, J., concurring).

28

Judge Batchelder found that plaintiffs' allegations of injury amounted to "only a subjective apprehension and a personal (self-imposed) unwillingness to communicate, which fall squarely within *Laird*, . . . ." *Id*. at 662. In fact, she found that the alleged injury was even less concrete than the injury in *Laird* because the plaintiffs did not claim that they feared that the Government would use information collected under the TSP against them, as had the plaintiffs in *Laird*. *Id*. at 662-63.[4] Likewise, plaintiffs' alleged injury here is simply their "subjective apprehension" and a "[]self-imposed[] unwillingness to communicate." As in *ACLU*, *Laird* controls this case, which presents the exact same theory of injury.

Arguments for standing similar to those asserted by plaintiffs here were also rejected by the court in *Amnesty International USA v. McConnell*, 646 F. Supp. 2d 633 (S.D.N.Y. 2009) (appeal pending). That case was a constitutional challenge to the FISA Amendments Act of 2008 ("FAA"), 50 U.S.C. § 1881a, brought by attorneys and organizations in the United States

---

[4] Judge Batchelder distinguished cases the plaintiffs had cited, *Meese v. Keene*, 481 U.S. 465 (1987), *Ozonoff v. Berzak*, 744 F.2d 224 (1st Cir. 1984), and *Paton v. LaPrade*, 524 F.2d 862 (3d Cir. 1975), as cases where the plaintiffs were able to show "direct injury because the government did directly regulate, order, or constrain them. These cases certainly do not help the present plaintiffs, who are not subject to any direct government regulation, order, or constraint. Rather, to the extent the plaintiffs claim that they are prevented, required, compelled, or coerced in their actions, it is due not to any direct and immediate order or regulation by the government, but to circumstances stemming from the plaintiffs' own subjective apprehension that (1) their communications will be intercepted by the NSA and (2) that interception will be detrimental to their overseas contacts. This is not a concrete, actual, and imminent injury for purposes of establishing standing." *ACLU*, 493 F.3d at 663-64.

Judge Batchelder also distinguished *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000), on a number of grounds, including (1) that it is an environmental case, and "'environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity,'" *ACLU*, 493 F.3d at 686 (quoting *Laidlaw*, 528 U.S. at 183); and (2) that the *Laidlaw* Court "found a concrete, actual injury based on the plaintiffs' showing that the defendant's unlawful discharge of pollutants into a particular river was ongoing and may reasonably have caused nearby residents to curtail their use of that waterway." *Id.; see also id.* at 689-90 (Gibbons, J., concurring) (distinguishing *Laidlaw*).

---

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                          10

whose work necessitates international communications with people and organizations they believe to be likely targets of surveillance under the FAA.  Like plaintiffs here, the plaintiffs in *Amnesty International* asserted that they have an actual and well-founded fear of surveillance under the FAA and that they have incurred significant costs in taking steps to protect their international communications from surveillance, including traveling long distances to meet personally with individuals instead of communicating with them over the phone or email.  They further asserted that the attorney plaintiffs have an ethical obligation to avoid communicating confidential information about client matters over the phone, fax or email if they have reason to believe that those communications are likely to be intercepted.  Plaintiffs challenged the FAA as unconstitutional under the First Amendment, Fourth Amendment, and the Separation of Powers under Article III of the Constitution.  646 F. Supp. 2d at 634-35, 642.

The court held that the plaintiffs lacked standing to challenge the constitutionality of the FAA.  Following *ACLU* and *United Presbyterian,* the court held that the plaintiffs' fear that their communications would be intercepted under the FAA was insufficient to confer standing.  *See id.* at 647 ("The plaintiffs in this case, like the plaintiffs in *ACLU* and *United Presbyterian*, have not made any showing that they are subject to the surveillance policy they seek to challenge. Without showing that they are subject to the statute they seek to challenge, the plaintiffs' fear that they will suffer harm from that statute is speculative and hypothetical.").  The court further rejected the plaintiffs' attempt to "manufacture a sufficient basis for standing from an insufficient one" by characterizing as an independent basis for standing the allegedly costly and burdensome measures they undertook, as a result of their fear of surveillance, to protect the confidentiality of their international communications.  *Id*. at 653.  The court explained that "because the plaintiffs have failed to show that they are subject to the FAA and that they face a threat of harm from its enforcement, the chilling of their speech that they attribute to the statute is actually the result of their purely subjective fear of surveillance."  A subjective chill of this kind is insufficient to support standing under *Laird*.  *Id*.

1    Plaintiffs' claims of "objective expenditures" are likewise "insufficient to establish

2    standing because they all arise from the plaintiffs' choices to incur expenditures and costs that

3    are not based on a sufficient showing that the [surveillance program] in question was directed at

4    them." *Id*. at 655.  Particularly where the challenged conduct has unquestionably ceased, as

5    here, plaintiffs' allegations of a subjective chill, and all that flows from it, are insufficient to

6    confer standing for their First Amendment claim.

7    It is also unlikely that plaintiffs' alleged injury – their unwillingness to communicate by

8    phone and email with certain clients and others  – is fairly traceable to the TSP.  *See ACLU*, 493

9    F.3d at 668 ("A wiretap is always 'secret' – that is its very purpose – and because of this secrecy,

10   neither the plaintiffs nor their overseas contacts would know, with or without a warrant, whether

11   their communications were being tapped.  Therefore, the NSA's secret possession of a warrant

12   would have no more effect on the subjective willingness or unwillingness of these parties to

13   "freely engage in conversations and correspond via email," [. . .] than would the secret absence

14   of that warrant.")  (citation omitted).  *See also* Gillers Affirmation at ¶ 8 ("[A]s a result of" the

15   knowledge that plaintiffs' communications with their clients or others "have been or will be

16   intercepted by the United States," plaintiffs "may not ethically use . . . [the intercepted]

17   electronic means of communication in exchanging or collecting information about client matters

18   that the New York Code defines as a secret or confidence.").

19   It is further unlikely that the declaratory and injunctive relief that plaintiffs seek will

20   redress their alleged injury.  *See ACLU*, 493 F.3d at 672.  It is hard to understand how the

21   Government's disclosing to plaintiffs whether or not their communications had been obtained

22   pursuant to the TSP (were this not barred by the states secrets privilege) and destroying any such

23   information in the Government's possession would redress their alleged "chill" injury.  At the

24   most, this would let plaintiffs know whether or not their communications over three years ago

25   were intercepted under a now defunct surveillance program, but it would not enable them to

26   determine which communications might be subject to surveillance in the future, under different

27

28

1  authorization, such that they could adjust their methods of communication.

2  **B.    Any Alleged Injury Based on Any Actual Surveillance of
       Plaintiffs under the TSP Is Purely Speculative.**

3

4         To the extent that plaintiffs seek to ground their standing on the claim that their

5  communications were actually surveilled under the TSP, *see Presbyterian Church v. United*

6  *States*, 870 F.2d 518, 520 (9th Cir. 1989) (standing existed where government actually "entered

7  the churches wearing 'body bugs' and surreptitiously recorded church services"), they have not

8  submitted any evidence to substantiate this claim, and even if they had, the state secrets privilege

9  forecloses adjudication of plaintiffs' standing.

10        The sole basis for plaintiffs' belief that they were surveilled under the TSP is that they

11 allegedly represent individuals who the Government has suspected of being linked to al Qaeda or

12 otherwise linked to terrorism, and that the Government has acknowledged that the TSP

13 authorized, but did not require, the interception of communications where one party to the

14 communication was located outside the United States and the Government had a reasonable basis

15 to conclude that one party to the communication was a member of al-Qaeda or an affiliated

16 group. *See* Complaint at ¶¶ 4, 43; Affirmation of Rachel Meeropol at ¶ 1; Affirmation of Maria

17 LaHood at ¶ 1; Affirmation of William Goodman at ¶¶ 6-12; Supplemental Affirmation of

18 William Goodman at ¶ 5. Accordingly, this case is different from *Al-Haramain Islamic*

19 *Foundation v. Obama*, – F. Supp. 2d –, 2010 WL 1244349 (N.D. Cal. Mar. 31, 2010), in which

20 this Court determined that the plaintiffs there submitted sufficient non-classified prima facie

21 evidence that they had been subjected to warrantless surveillance for purposes of establishing

22 standing for their claim for monetary damages under FISA. The Court in *Al-Haramain* noted

23 that plaintiffs submitted twenty-eight public documents and two declarations as evidence in

24 support of their motion and discussed much of that evidence at length. 2010 WL 1244349 at *

25 11, 15-20. In contrast, plaintiffs here have never presented any evidence that they were

26 subjected to surveillance, relying instead on the mere fact that their communications come within

27 the scope of the parameters of the TSP. All that plaintiffs have established is the "possibility"

28

---

that their overseas contacts were subjected to the TSP; thus, "the alternative possibility" remains

that they were not. *ACLU*, 493 F.3d at 655-56. *See also Al-Haramain*, 507 F.3d at 1205 ("It is

not sufficient for Al-Haramain to speculate that it might be subject to surveillance under the TSP

simply because it has been designated a 'Specially Designated Global Terrorist.'"). And, of

course, there is no realistic possibility that plaintiffs' future communications will be subjected to

surveillance under a program that no longer exists.

## II.   THE STATE SECRETS PRIVILEGE BARS ADJUDICATION OF PLAINTIFFS' STANDING AND THE MERITS OF THEIR CLAIMS.

Although it should be unnecessary for the Court to reach this issue given the strength of

the above arguments, the state secrets privilege prevents plaintiffs from establishing, and the

Government from rebutting, that they were actually subjected to surveillance under the TSP.

This precludes a determination of plaintiffs' standing for all of their claims as well as any

resolution of the merits of plaintiffs' claims.[5]

### A.   The Government's State Secrets Privilege Assertion.

"The state secrets privilege is a common law evidentiary privilege that permits the

government to bar the disclosure of information if 'there is a reasonable danger' that disclosure

will 'expose military matters which, in the interest of national security, should not be divulged.'"

*Al-Haramain*, 507 F.3d at 1196 (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)). In

its dispositive motion filed on May 26, 2006, the Government asserted the state secrets privilege

over three categories of information: (1) information regarding the nature of the al Qaeda threat;

(2) information regarding the operation of the TSP; and (3) information concerning whether or

---

[5] We recognize that this Court held in *Al-Haramain* that the *in camera* procedure described in FISA's Section 1806(f) preempts the state secrets privilege "as to matters to which it relates." *Al-Haramain Islamic Foundation v. Bush*, 564 F. Supp. 2d 1109, 1119 (N.D. Cal. 2008). The Government continues to disagree with this decision, but there is no need for the Court to reach the preemption issue in this case in light of plaintiffs' failure to establish that their allegations of a chill injury or of actual surveillance are sufficient to confer standing. In addition, plaintiffs have not established that they are aggrieved persons for purposes of Section 1806(f) proceedings.

---

not plaintiffs have been intercepted by NSA under the TSP. *See* Defs. MSJ Mem. at 24-27 (Dkt. 12); Public Declarations of John D. Negroponte, Director of National Intelligence, ¶ 12 (Dkt. 12-5) and Maj. Gen. Richard J. Quirk, National Security Agency, ¶ 8 (Dkt. 12-6); *In Camera, Ex Parte* Classified Memorandum of the United States (*see* Dkt. 12-7); *In Camera, Ex Parte* Classified Declaration of John D. Negroponte, Director of National Intelligence (*see* Dkt. 12-12); *In Camera, Ex Parte* Classified Declaration of Maj. Gen. Richard J. Quirk, National Security Agency (*see* Dkt. 12-13). The Government demonstrated a reasoned basis that disclosure of this information would cause exceptionally grave damage to the national security and, therefore, that this information should be excluded from this case. Defendants incorporate their previous privilege assertion herein. The Government properly invoked and supported its state secrets privilege assertion, and the Court should uphold it. *See, e.g., Reynolds*, 345 U.S. 1; *Al-Haramain*, 507 F.3d at 1203-04 (holding that information as to whether Al-Haramain was subjected to surveillance under the TSP is protected by the state secrets privilege); *ACLU*, 493 F.3d at 653, 655, 673 (because of state secrets privilege, plaintiffs cannot show that they were ever subject to surveillance under the TSP); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991); *Ellsberg v. Mitchell*, 709 F.2d 51, 53-54 (D.C. Cir. 1983); *Halkin v. Helms*, 690 F.2d 977, 991 (D.C. Cir. 1982) (*Halkin II*); *Halkin v. Helms*, 598 F.2d 1, 8-9 (D.C. Cir. 1978) (*Halkin I*). Indeed, in a related Freedom of Information Act case, attorneys for the Center for Constitutional Rights sought records showing whether the Government had intercepted under the TSP their communications relating to the representation of their detainee clients. The court found that the NSA's affidavits established that nondisclosure of this information "is appropriate – perhaps essential – for reasons of national security and confidentiality." *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (cert. petition pending).

Once found to exist, the state secrets privilege "cannot be compromised by any showing of need on the part of the party seeking the information. . . . The effect of the government's successful invocation of privilege is simply that the evidence is unavailable . . . ." *Al-Haramain*,

1   507 F.3d at 1204 (internal citations and quotations omitted). If the plaintiff cannot make out a

2   prima facie case in support of its claims absent the excluded state secrets, the case must be

3   dismissed. *See Zuckerbraun*, 935 F.2d at 547: *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir.

4   1998). And if the privilege "'deprives the *defendant* of information that would otherwise give

5   the defendant a valid defense to the claim, then the court may grant summary judgment to the

6   defendant.'" *Kasza*, 133 F.3d at 1166 (quoting *Bareford v. General Dynamics Corp.*, 973 F.2d

7   1138, 1141 (5th Cir. 1992) (emphasis in original).

8           **B.      The State Secrets Privilege Prevents Plaintiffs from Proving,
                       and the Government from Rebutting, Plaintiffs' Standing.**

9           The Government's state secrets privilege assertion over information concerning whether

10  or not plaintiffs have been intercepted by NSA under the TSP is fatal to plaintiffs' standing to

11  assert a First Amendment claim based on any direct injury from being surveilled under the TSP.

12  *See ACLU*, 493 F.3d at 692 (Gibbons, J., concurring). It also precludes the specific relief that

13  plaintiffs seek for the alleged violation of their First Amendment rights – that is, requiring the

14  Government to disclose any surveillance of plaintiffs from the TSP and to expunge its records of

15  any such information. Such relief obviously would reveal the very information that is protected.

16          Furthermore, to the extent that any determination as to whether plaintiffs' alleged chill

17  was objectively reasonable "would require additional specific information about the mechanics

18  of the TSP, such as the number of communications being intercepted, the percentage of the total

19  that number represents, the actual selection and screening process, the actual retention,

20  dissemination, and disclosure policy, etc.," that information is protected by the Government's

21  state secrets assertion. *See ACLU*, 493 F.3d at 656 n. 13; *see also id.* at 692-93 (Gibbons, J.,

22  concurring) ("Evidence arguably protected by the state secrets privilege may well be relevant to

23  the reasonableness of the plaintiffs' fear."). Plaintiffs' alleged chill must be objectively

24  reasonable because their injury must be actual or imminent to support Article III standing. *See,*

25  *e.g., Lyons*, 461 U.S. at 101-02.

26          The state secrets privilege also prevents plaintiffs from establishing standing to prosecute

27

28

their Fourth Amendment claim.  They allege that "[d]efendants have carried out unreasonable surveillance of Plaintiffs' private telephone and email communications without probable cause or warrants, in violation of the Fourth Amendment of the United States Constitution." Complaint at ¶ 50.  As the plaintiffs in *ACLU* conceded, "it would be unprecedented . . . to find standing for plaintiffs to litigate a Fourth Amendment cause of action without any evidence that the plaintiffs themselves have been subjected to an illegal search or seizure."  *ACLU*, 493 F.3d at 673-74 (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)).  *See also Ellsberg*, 709 F.2d at 65.  As with plaintiffs' First Amendment claim, the state secrets privilege prevents plaintiffs from proving, and the Government from rebutting, that plaintiffs were actually subjected to unlawful surveillance under the TSP.

Finally, the Government's state secrets assertion precludes plaintiffs from showing, and the Government from rebutting, whether or not plaintiffs were actually surveilled for purposes of establishing whether they were "aggrieved persons" sufficient to confer standing for their FISA claim.  To establish their "aggrieved" status under the FISA, plaintiffs must set forth specific facts establishing that they have suffered an actual personal, concrete, particularized injury – that is, that they were the "target" of warrantless electronic surveillance or that their communications were intercepted, and they were thus "subject to" warrantless electronic surveillance.  *See* 50 U.S.C. §§ 1801(k), 1810.  Again, plaintiffs here have not put forth any publicly available evidence that even arguably raises an inference that they were subjected to surveillance under the TSP.  Their claim rests instead on the sole fact that the Government has suspected certain of their clients of being linked to al Qaeda, but the TSP merely authorized surveillance of such individuals, it did not require it.  Because the facts necessary to adjudicate whether plaintiffs were subjected to surveillance are protected by the state secrets privilege, plaintiffs' standing cannot be adjudicated.  *See ACLU*, 493 F.3d at 682-83.[6]

---

[6]  Again, the Court need not reach in this case whether FISA Section 1806(f) preempts the state secrets privilege because plaintiffs cannot establish that they are aggrieved persons for

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    17

1

### C.   The State Secrets Privilege Prevents Adjudication of the Merits of Plaintiffs' Claims.

2

3       The state secrets privilege also prevents adjudication of the merits of plaintiffs' claims.

4  As an overarching matter, because plaintiffs cannot establish whether or not they have been

5  subject to any surveillance, the Court should not reach the constitutional claims raised in the

6  complaint.  "'If there is one doctrine more deeply rooted than any other in the process of

7  constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality ...

8  unless such adjudication is unavoidable.'" *Department of Commerce v. United States House of*

9  *Representatives*, 525 U.S. 316, 343 (1999) (quoting *Spector Motor Service, Inc v. McLaughlin*,

10  323 U.S. 101, 105 (1944)).  Indeed, in a case that concerned whether Congress could restrict the

11  Executive's authority over national security information, the Supreme Court admonished that the

12  district court "should not pronounce upon the relative constitutional authority of Congress and

13  the Executive Branch unless it finds it imperative to do so."  *American Foreign Serv. Ass'n v.*

14  *Garfinkel*, 490 U.S. 153, 161 (1989).  Rather, the district court was directed to consider whether

15  changed circumstances had affected the Court's jurisdiction in order to avoid a serious

16  constitutional question.  Likewise, this Court should not venture into complex constitutional

17  questions concerning a now lapsed program where an actual case or controversy cannot be

18  established.

19       All of plaintiffs' particular claims would plainly rest on or require the disclosure of

20  information subject to the state secrets privilege.  For example, plaintiffs' Fourth Amendment

21  claim turns not only on whether any surveillance occurred, but also on questions such as (1)

22  whether in the particular facts and circumstances of plaintiffs' case the warrant requirement was

23  impractical, and (2) whether any particular search involving plaintiffs satisfied the Fourth

24  Amendment's "central requirement . . . of reasonableness," *Illinois v. McArthur*, 531 U.S. 326,

25  330 (2001), which "depends upon all of the circumstances surrounding the search or seizure and

26  ─────────────────

27  purposes of that provision if it did apply in this case.

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                          18

1   the nature of the search or seizure itself," *United States v. Montoya de Hernandez*, 473 U.S. 531,

2   537 (1985).  These are inherently factual considerations that would require inquiry into the

3   operation of the TSP, the extent of the al Qaeda threat justifying the TSP, and the facts and

4   circumstances surrounding any actual interception of plaintiffs' communications under the TSP

5   (if any) – areas over which the Government has asserted the state secrets privilege.  Likewise,

6   plaintiffs' separation-of-powers claim would require factual determinations that plaintiffs were

7   subject to the TSP and how that program operated.  In addition, the state secrets privilege

8   prevents the Government from disclosing whether any surveillance of plaintiffs occurred or

9   expunging any records of surveillance, if any, as a remedy for a Fourth Amendment or

10  separation-of-powers violation.

11      Similarly, plaintiffs cannot prove any First Amendment violation without facts subject to

12  the state secrets privilege.  When evaluating Executive Branch investigations that implicate First

13  Amendment rights, the Ninth Circuit requires that "the government must not investigate for the

14  purpose of violating First Amendment rights, and must also have a legitimate law enforcement

15  purpose.  Alternatively, the government can satisfy its burden by showing that its interests in

16  pursuing legitimate law enforcement obligations outweigh any harm to First Amendment

17  interests."  *United States v. Mayer*, 503 F.3d 740, 752 (9th Cir. 2007).  *See also Reporters*

18  *Committee for Freedom of the Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1054 (D.C. Cir.

19  1978) (holding that the First Amendment does not impose substantive or procedural limitations

20  on good faith criminal investigative action above and beyond the limitations imposed by the

21  Fourth and Fifth Amendments); *Jabara v. Kelley*, 476 F. Supp. 561, 572 (E.D. Mich. 1979)

22  ("[T]he first amendment and fourth amendment provide coextensive zones of privacy in the

23  context of a good faith criminal investigation.  Furthermore, the Court believes that this principle

24  applies with equal force to good faith national security investigations which are not strictly

25  criminal in nature."), *vacated on other grounds*, 691 F.2d 272 (6th Cir. 1982).

26      Thus, in order to prove their First Amendment claim, plaintiffs would have to show that

27

28

1    their individual communications were actually intercepted, that the Government intercepted their

2    communications under the TSP for the purpose of violating plaintiffs' First Amendment rights,

3    and that the Government did not have a legitimate national security purpose in intercepting their

4    communications under the TSP.  The Government would of course be entitled to rebut plaintiffs'

5    showing and to show that its interests in intercepting any of plaintiffs' communications

6    outweighed any harm to plaintiffs' First Amendment rights.  All of this would require an

7    exposition of the factual and operational details of the TSP, the facts justifying it, the precise

8    communications of plaintiffs that NSA intercepted (if any), and the reasons for any such

9    interceptions  – all of which is classified and subject to the state secrets privilege.  *See* Public

10   Declaration of John D. Negroponte at ¶¶ 11, 12.

11        Regarding plaintiffs' FISA claim, plaintiffs have not alleged a claim for monetary

12   damages under FISA, only for declaratory and injunctive relief.  But FISA does not authorize

13   declaratory and injunctive relief, only monetary damages.  *See* 50 U.S.C. § 1810; *ACLU*, 493

14   F.3d at 683; *ACLU v. Barr*, 952 F.2d 457, 470 (D.C. Cir. 1991).  *Compare* 50 U.S.C. § 1810 *with*

15   18 U.S.C. § 2520(b) (Wiretap Act cause of action authorizes "equitable relief as may be

16   appropriate"); 18 U.S.C. § 2707(b) (same for Stored Communications Act).  Even if FISA did

17   authorize the relief that plaintiffs seek, their claim would fail because the information needed to

18   prove it is protected by the states secrets privilege.

19        FISA provides that "[a]n aggrieved person . . . who has been subjected to an electronic

20   surveillance or about whom information obtained by electronic surveillance of such person has

21   been disclosed or use in violation of section 1809 of this title shall have a cause of action against

22   any person who committed such violation."  50 U.S.C. § 1810.[7]  Thus, to establish the elements

23

24        [7] Section 1809 of the FISA, on which plaintiffs' cause of action must be based,
25   establishes criminal sanctions against a person "who engages in electronic surveillance under
     color or law except as authorized by statute;" or who "discloses or uses information obtained
26   under color of law by electronic surveillance, knowing or having reason to know that the
     information was obtained through electronic surveillance not authorized by statute."  50 U.S.C.
27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    20

1   of their FISA claim on the merits, plaintiffs must show, *inter alia*, that (i) they are aggrieved

2   persons – *i.e.*, were the target of or subject to electronic surveillance in one of the four

3   circumstances in which that term is defined in the FISA; and (ii) that any such electronic

4   surveillance (or the use of any information derived therefrom) was not authorized by statute in

5   violation § 1809. These areas are protected by the Government's state secrets assertion. For this

6   reason, plaintiffs' FISA claim cannot be adjudicated.

7   **III.    THE DISCLOSURE AND EXPUNGEMENT RELIEF THAT PLAINTIFFS**
        **SEEK IS NOT AUTHORIZED BY FISA, NOR IS IT AN APPROPRIATE**
8       **EXERCISE OF THE COURT'S EQUITABLE POWERS.**

9           Even if plaintiffs were able to surmount the hurdles discussed above, they would not be

10  entitled to the relief that they seek. Plaintiffs seek an order requiring defendants to disclose to

11  plaintiffs any unlawful surveillance of plaintiffs' communications that was carried out pursuant

12  to the TSP; to turn over to plaintiffs any information and records in defendants' possession

13  relating to plaintiffs that were acquired through the TSP or were the fruit of the TSP; and to

14  destroy any such information and records in defendants' possession. *See* Joint Status Report

15  (Dkt. No. 716) at 3-4.[8] They claim that this relief is "necessary to remedy the harms set forth in

16  Plaintiffs' summary judgment papers," *id*. at 3, but they proffer no authority for the Court to

17  order this relief. Indeed, FISA contains none, and the relief requested would be an inappropriate

18  exercise of this Court's equitable powers.

19  _____

20  § 1809.

21      [8] Plaintiffs have no doubt reduced their request for declaratory and injunctive relief to
    the disclosure and expungement relief specified in the Joint Status Report because, given the
22  termination of the TSP, plaintiffs realized there no longer was any basis for the injunctive relief
    they initially sought. Plaintiffs would not have standing now for any declaratory or injunctive
23  relief predicated on the continued existence of the TSP in light of the uncontroverted termination
    of the TSP. Even where a plaintiff alleges that his rights were violated in the past, he lacks
24  standing to obtain prospective declaratory and injunctive relief absent a "real and immediate
    threat" that he will suffer the same injury in the future. *Lyons*, 461 U.S. at 105; *Golden v.*
25  *Zwickler*, 394 U.S. 103, 107-110 (1969); *Center for Biological Diversity v. Lohn*, 511 F.3d 960,
    963-64 (9th Cir. 2007); *Presbyterian Church*, 870 F.2d at 528-29.
26

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    21

1    As noted above, FISA does not authorize declaratory and injunctive relief, only monetary

2    damages.  Nor does FISA authorize the more specific disclosure and expungement injunctive

3    relief that plaintiffs request.  FISA authorizes disclosure of surveillance only where necessary to

4    determine the legality of the surveillance, not as a remedy for a FISA violation.  50 U.S.C.

5    §1806(f).  Section 1806(g) provides for suppression of evidence unlawfully acquired by

6    electronic surveillance of an aggrieved person with standing being used in an ongoing

7    proceeding, however plaintiffs have not sought suppression of any such evidence, nor is there

8    any ongoing proceeding involving the use of such evidence to which § 1806(g) would apply.

9    There is no provision under § 1806(g) for the disclosure or expungement relief that plaintiffs

10   seek.

11       To the extent that plaintiffs rely on the Court's equitable powers as authority for their

12   expungement request, "[f]ederal courts have the equitable power to order the expungement of

13   Government records where necessary to vindicate rights secured by the Constitution or by

14   statute."  *Fendler v. United States Bureau of Prisons*, 846 F.2d 550, 554 (9th Cir. 1988) (internal

15   quotations and citations omitted).  "Courts which have recognized an equitable power to

16   expunge have unanimously observed that it is a narrow power, appropriately used only in

17   extreme circumstances."  *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991). The Court

18   must find that there is a "'real and immediate threat of irreparable harm before it can allow

19   expungement.'"  *Fendler v. United States Parole Commission*, 774 F.2d 975, 979 (9th Cir. 1985)

20   (quoting *Reuber v. United States*, 750 F.2d 1039, 1068 (D.C. Cir. 1984) (Bork, J., concurring)).

21   *See also Fendler*, 846 F.2d at 554-55.  The propriety of an expungement order is determined by

22   applying a balancing test in which the harm caused to an individual by the existence of any

23   records is weighed against the utility to the Government of their maintenance.  *Doe v. United*

24   *States Air Force*, 812 F.2d 738, 741 (D.C. Cir. 1987).

25       Plaintiffs have not alleged or shown that they are facing any threat of irreparable harm,

26   let alone a real and immediate threat of irreparable harm, from the alleged existence of the

27

28

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                                    22

1    allegedly unlawful electronic surveillance in the Government's files and records. As noted

2    above, plaintiffs' request is not made in the context of any ongoing proceeding against them.

3    Plaintiffs' assertion that they have a "duty" to protect their clients' confidences clearly does not

4    meet the standard of demonstrating a "real and immediate threat of irreparable harm," nor does

5    their exceedingly vague claim that "[i]ntercepted communications may be exploited to the

6    disadvantage of clients with no one the wiser." Gillers Affirmation at ¶ 10. Finally, balancing

7    the relevant interests would require disclosure of whether or not plaintiffs were in fact subject to

8    electronic surveillance, whether any information derived from such surveillance exists and what

9    it may indicate – information that is protected by the state secrets privilege.

10        The Government's state secrets assertion clearly covers the information that plaintiffs'

11   disclosure request seeks, to the extent that it exists. Moreover, the proper vehicle for plaintiffs'

12   disclosure request is a request for information under the Freedom of Information Act ("FOIA"),

13   5 U.S.C. § 552. *See, e.g., Wilner*, 592 F.3d 60. The instant suit is not a challenge under the

14   FOIA to the Government's denial of a FOIA request, and plaintiffs should not be permitted to

15   circumvent the FOIA by seeking disclosure of records as an equitable remedy for a constitutional

16   or statutory claim.

17                                           **CONCLUSION**

18        For the foregoing reasons, the Court should grant Defendants' Renewed Motion to

19   Dismiss or for Summary Judgment.

20

21   Date: May 27, 2010                    Respectfully Submitted,

22                                          MICHAEL F. HERTZ
                                            Deputy Assistant Attorney General
23
                                            DOUGLAS N. LETTER
24                                          Terrorism Litigation Counsel

25                                          JOSEPH H. HUNT
                                            Director, Federal Programs Branch
26

27

28

---

**Defendants' Renewed Motion to Dismiss or for Summary Judgment** (M:06-CV-1791-VRW)
*Center for Constitutional Rights v. Obama* (07-CV-1115-VRW)                          23

1   VINCENT M. GARVEY
    Deputy Branch Director
2

3        *s/ Anthony J. Coppolino*
    ANTHONY J. COPPOLINO
4   Special Litigation Counsel

5        *s/ Marcia Berman*
    MARCIA BERMAN
6   Senior Counsel
    U.S. Department of Justice
7   Civil Division, Federal Programs Branch
    20 Massachusetts Avenue, NW, Rm. 6102
8   Washington, D.C. 20001
    Phone: (202) 514-4782—Fax: (202) 616-8460
9
    *Attorneys for the Government Defendants*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28