1   **Jon B. Eisenberg, California Bar No. 88278** (jon@eandhlaw.com)
    **William N. Hancock, California Bar No. 104501** (bill@eandhlaw.com)
2   **Eisenberg & Hancock LLP**
    1970 Broadway, Suite 1200 • Oakland, CA  94612
3   510.452.258l – Fax 510.452.3277

4   **Steven Goldberg, Oregon Bar No. 75134** (steven@stevengoldberglaw.com)
    River Park Center, Suite 300 • 205 SE Spokane St.• Portland, OR 97202
5   503.445-4622 – Fax 503.238.7501

6   **Thomas H. Nelson, Oregon Bar No. 78315** (nelson@thnelson.com)
    P.O. Box 1211, 24525 E. Welches Road • Welches, OR 97067
7   503.622.3123 - Fax: 503.622.1438

8   **Zaha S. Hassan, California Bar No. 184696** (zahahassan@comcast.net)
    P.O. Box 1168• Lake Oswego, OR 97034
9   360.213.9737 - Fax 866.399.5575

10  **J. Ashlee Albies, Oregon Bar No. 051846** (ashlee@sstcr.com)
    **Steenson, Schumann, Tewksbury, Creighton and Rose, PC**
11  815 S.W. Second Ave., Suite 500 • Portland, OR 97204
    503.221.1792 – Fax 503.223.1516
12
    **Lisa R. Jaskol, California Bar No. 138769** (ljaskol@earthlink.net)
13  610 S. Ardmore Ave.• Los Angeles, CA 90005
    213.385.2977 – Fax 213.385.9089
14

15  Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew and Asim Ghafoor

16              **IN THE UNITED STATES DISTRICT COURT**
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17

18  **IN RE NATIONAL SECURITY**          ) MDL Docket No. 06-1791 VRW
    **AGENCY TELECOMMUNICATIONS**        )
19  **RECORDS LITIGATION**               )
                                         ) **PLAINTIFFS' MOTION FOR**
20  This Document Relates Solely To:     ) **ATTORNEY'S FEES**
                                         )
21  *Al-Haramain Islamic Foundation, Inc., et*  )
    *al. v. Obama, et al.* (C07-CV-0109-VRW)     )
22                                       )
    **AL-HARAMAIN ISLAMIC**              )
23  **FOUNDATION, INC., et al.,**        )
                                         )
24                        Plaintiffs,    )
           vs.                           )
25                                       )
    **BARACK H. OBAMA, President of the** )
26  **United States, et al.,**           )
                                         )
27                        Defendants.    )
    _____  )

28

1

**NOTICE OF MOTION**

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3       PLEASE TAKE NOTICE that plaintiffs hereby move this Court for an award of reasonable

4  attorney's fees pursuant to 50 U.S.C. section 1810(c), Fed.R.Civ.P. 54, Civil Local Rule 54-5, and

5  the Court's Orders of March 31, 2010 and June 4, 2010.  This motion is based on the below

6  Memorandum of Points and Authorities and the supporting declarations filed with this motion.

7                      **MEMORANDUM OF POINTS AND AUTHORITIES**

8                                          **INTRODUCTION**

9       In the Orders filed March 31, 2010 and June 4, 2010, this Court directed the plaintiffs to file

10  a motion for attorney's fees and costs under Fed.R.Civ.P. 54(d) and Civil Local Rule 54.  Plaintiffs

11  file this motion pursuant to that directive.  Because the Order of June 4, 2010, setting a briefing

12  schedule, does not provide for a hearing on this motion, plaintiffs have not noticed a hearing date.[1/]

13       The Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1801 *et seq.*, authorizes the

14  Court to award plaintiffs, as "aggrieved persons" within the meaning of FISA, their "reasonable

15  attorney's fees and other investigation and litigation costs reasonably incurred."  50 U.S.C. §

16  1810(c).  By this motion, plaintiffs seek their attorney's fees pursuant to that authorization.

17       Plaintiffs seek attorney's fees for four-and-a-half years of intense and hard-fought litigation

18  in the district courts for Oregon and the Northern District of California as well as the Ninth Circuit.

19  The first part of this memorandum addresses the law applicable to plaintiffs' motion for attorney's

20  fees, explaining the "lodestar" award plaintiffs seek – the number of hours plaintiffs' counsel worked

21  multiplied by hourly rates according to the *Laffey* matrix as adjusted for locality.  The second part

22  of this memorandum explains the legal services plaintiffs' counsel have provided – in detail for the

23  period before the litigation was transferred to this Court from Oregon, and more summarily for the

24  post-transfer period of litigation (with which the Court is well acquainted).

25  //

26  ──────────────

27  [1/]     On June 23, 2010, the undersigned met and conferred by telephone with defendants' counsel
    Anthony Coppolino, pursuant to Civil Local Rule 54-5, for the purpose of attempting to resolve
28  disputed issues relating to attorney's fees.  The attempt was unsuccessful.  *See* Decl. of Jon B.
    Eisenberg, ¶ 15.

1

**ARGUMENT**

2

**I.     ATTORNEY'S FEES TO BE AWARDED**

3

     **A.     The loadstar approach.**

4

     Awards of "reasonable attorney's fees" under federal fee-shifting statutes are commonly

5

calculated based on the lodestar approach, in which the number of hours worked is multiplied by

6

prevailing hourly market rates in the relevant community. *See, e.g., Hensley v. Eckerhard*, 461 U.S.

7

424, 433 (1983); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1669, 1672 (2010). "[T]he lodestar method

8

produces an award that *roughly* approximates the fee that the prevailing attorney would have

9

received if he or she had been representing a paying client who was billed by the hour in a

10

comparable case." *Perdue* at 1672 (emphasis in original).

11

     **B.     The hourly rates.**

12

     The starting point for the lodestar approach is prevailing hourly market rates in the relevant

13

community.  This Court has indicated that its practice is to use the *Laffey* matrix as adjusted for

14

locality, rather than counsel's own stated rates or those customarily charged by law firms, to

15

determine prevailing hourly market rates when awarding attorney's fees under federal fee-shifting

16

statutes. *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005);

17

*accord*, *Martin v. FedEx Ground Package System, Inc.*, 2008 WL 5478576 (N.D. Cal. 2008); *In re*

18

*Portal Software, Inc. Securities Litigation*, 2007 WL 4171201 (N.D. Cal. 2007); *Garnes v.*

19

*Harnhardt*, 2006 WL 249522 (N.D. Cal. 2006).

20

     The Court is not *required* to use the *Laffey* matrix, the reliability of which the Ninth Circuit

21

recently questioned. *See Prison Legal News v. Schwarzenegger*, 2010 WL 2293289, at *6 (9th Cir.

22

June 9, 2010) ("[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does

23

not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000

24

miles away.  It is questionable whether the matrix is a reliable measure of rates even in Alexandria,

25

Virginia, just across the river from the nation's capital. [Citations.]").  Nevertheless, on the

26

assumption that this Court will adhere to its previous practice, plaintiffs ask the Court to calculate

27

the award of attorney's fees, at a minimum, according to the hourly rates prescribed by the *Laffey*

28

matrix as adjusted for locality.

Because this case has been primarily litigated in the Northern District of California, the relevant community for determining counsel's hourly rates is the San Francisco Bay Area, where this Court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."); *accord, Prison Legal News*, 2010 WL 2293289 at *7; *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1977). The *Laffey* matrix for 2009-2010 prescribes attorney's fees at hourly rates of $465 for attorneys with 20-plus years of experience, $410 for attorneys with 11-19 years of experience, $410 for attorneys with 8-10 years of experience, $270 for attorneys with 4-7 years of experience, and $225 for attorneys with 1-3 years of experience. *See* http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.htm. For 2010, the locality pay differentials for Washington D.C. and the San Francisco Bay Area are 24.22 percent and 35.15 percent, respectively. *See* http://www.opm.gov/oca/compmemo/2009/2010PAY_Attach2.pdf. Thus, the *Laffey* matrix as adjusted upward by 8.7989 percent ((135.15-124.22)/124.22 = .087989) for the San Francisco Bay Area yields the following hourly rates for plaintiffs' counsel:

•   $506 for Jon. B. Eisenberg (31 years of experience), William N. Hancock (28 years), Steven Goldberg (35 years), Thomas H. Nelson (37 years), and Lisa Jaskol (22 years).

•   $446 for Zaha S. Hassan (14 years).

•   $294 for J. Ashlee Albies (5 years) and Kenneth A. Kreuscher (4 years).

**C.     The hours worked.**

The other component of the lodestar approach is the number of hours worked. Plaintiffs' counsel have each maintained contemporary time records for the hours they have worked on this case. Pursuant to Civil Local Rule 54-5(b)(2), each declaration filed in support of this motion includes a summary of the time the declarant spent on the case and a statement of the manner in which time records were maintained. At the Court's request, and pursuant to Civil Local Rule 54-5(b)(2), each declarant is prepared to produce his or her contemporary time records or an abstract thereof for *in camera* inspection by the Court, if the Court deems it appropriate.

As set forth in the supporting declarations, each declarant's number of hours worked is as follows:

1    •    Jon B. Eisenberg: 2,497.6 hours.

2    •    William N. Hancock: 235.1 hours.

3    •    Steven Goldberg: 682.2 hours.

4    •    Thomas H. Nelson: 912.7 hours.

5    •    Lisa Jaskol: 284.6 hours.

6    •    Zaha S. Hassan: 343.5 hours.

7    •    J. Ashlee Albies: 467.2 hours.

8    •    Kenneth A. Kreucher: 19.7 hours.

9    **D.    Expenses recoverable within the award of attorney's fees.**

10       FISA provides for an award of "reasonable attorney's fees and other investigation and

11   litigation costs reasonably incurred."  50 U.S.C. § 1810(c).  This fee-shifting provision authorizes

12   recovery of non-taxable expenses (i.e., expenses that are not recoverable as taxable costs under 28

13   U.S.C. § 1920) within the award of attorney's fees – including travel, courier and computerized legal

14   research expenses – if the prevailing practice of attorneys in the relevant community is to bill those

15   expenses separately from hourly rates.  *Grove v. Wells Fargo Financial California, Inc.*, 606 F.3d

16   577, 579-82 (9th Cir. 2010); *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v.*

17   *Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006); *Davis v. City of San Francisco*, 976 F.2d

18   1536, 1556 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345; *Davis v. Mason County*,

19   927 F.2d 1473, 1488 (9th Cir. 1991).

20       Plaintiff seek reimbursement of such expenses within this Court's award of attorney's fees.

21   Each declaration filed in support of this motion describes the type and amount of expenses for which

22   each declarant seeks reimbursement.

23   **II.    EXPLANATION OF LEGAL SERVICES PROVIDED**

24       The main purpose of the following narrative is to acquaint this Court fully with the legal

25   services plaintiffs' counsel provided during the period before December 20, 2006, when the Judicial

26   Panel on Multidistrict Litigation (JPML) transferred this action from the Oregon district court to this

27   Court, as well as to explain certain post-transfer legal services of which the Court might not be fully

28   aware.  The first two sections of this narrative describe the pre-transfer services in detail.  The third

section similarly describes in detail the post-transfer services of which the Court might not be fully aware, and more summarily describes the post-transfer aspects of the litigation with which the Court is already well acquainted.

### A.    Preparation for filing of initial complaint (12/16/05-2/28/06).

Plaintiffs' counsel began work on this case on December 16, 2005, when the New York Times revealed the existence of the so-called "Terrorist Surveillance Program" (TSP).  On that day, Portland attorney Thomas H. Nelson, who had previously represented plaintiff Al-Haramain Islamic Foundation, Inc., realized for the first time that a classified document (the "Sealed Document") inadvertently disclosed to Al-Haramain's attorneys in 2004 was evidence that the government had conducted unlawful warrantless electronic surveillance of communications between Al-Haramain attorneys Wendell Belew and Asim Ghafoor in the Washington D.C. area and Al-Haramain director Soliman al-Buthi in Saudi Arabia.  Nelson contacted Portland civil litigation attorney Steven Goldberg.  Together, the two performed research and analysis and then drafted a complaint.

During the course of drafting the complaint, it was critical for counsel to hold discussions regarding factual background and litigation strategies with Belew, Ghafoor and al-Buthi, the Al-Haramain director who was primarily responsible for corporate decision-making and policy.  Given the information in the New York Times article and government admissions that quickly followed, Nelson and Goldberg concluded that meetings with Belew, Ghafoor and Al-Buthi would have to occur in person rather than by telephone, email or other electronic format, in order to assure that attorney-client confidences would be protected.  Consequently, Nelson was compelled to travel to the Washington D.C. area for personal meetings with Belew and Ghafoor in their capacities as plaintiffs, and to Saudi Arabia for personal meetings with al-Buthi in his capacity as a director of plaintiff Al-Haramain.  (Nelson has continued to travel for such meetings in the Washington D.C. area and Saudi Arabia periodically throughout this litigation.)

Goldberg and Nelson concluded that a legal challenge to the TSP would involve trial and appellate litigation of substantial factual and legal complexity.  Thus, they assembled a team of attorneys to work on the case, including Portland attorneys Zaha S. Hassan and J. Ashlee Albies, with whom Nelson and Goldberg had previously worked on various matters, and Oakland appellate

specialist Jon B. Eisenberg and Los Angeles appellate specialist Lisa Jaskol, with whom Goldberg had previously worked on a 2005 Ninth Circuit appeal challenging the U.S. Army's policy of involuntarily extending military enlistments (the "stop-loss" program). Eisenberg's law partner William N. Hancock joined the team in July 2006 when the two formed their partnership Eisenberg & Hancock LLP.

### B.   Litigation in Oregon (2/28/06-12/20/06).

The complaint was filed on February 28, 2006, along with the Sealed Document. A question immediately arose as to whether plaintiffs should move to disqualify the initially-assigned judge, who had previously served as U.S. Attorney for Oregon. Counsel performed research and analysis on that question, which was ultimately resolved when the case was reassigned to Judge Garr King on March 7, 2006.

On March 17, 2006, the full Al-Haramain legal team met for the first time at Nelson's office in Portland. During that meeting, a Department of Justice (DOJ) attorney telephoned Nelson and advised that the DOJ intended that day to contact Judge King *ex parte* and *in camera* and to have the FBI seize the Sealed Document from him. Plaintiffs' counsel strenuously objected, upon which Judge King held telephonic hearings to determine how the Sealed Document would be handled and how the litigation would proceed. Ultimately, after plaintiffs' counsel spent considerable time researching various issues pertaining to classified information, Judge King determined that the Sealed Document would be stored in a Sensitive Compartmented Information Facility (SCIF), first in Seattle and later in Portland.

Commencing in April 2006, the following litigation activities occurred: Portland's daily newspaper, the Oregonian, moved to intervene in the litigation and to unseal the Sealed Document, necessitating written responses by the parties. Defendants lodged classified materials with the court *ex parte* and *in camera*, to which plaintiffs filed written objections. Defendants also filed a motion to preclude plaintiffs from having access to the Sealed Document, to which plaintiffs filed written opposition. Plaintiffs, for their part, proceeded with discovery, serving interrogatories and requests for production of documents and noticing one of the defendant's depositions, as to which defendants refused to respond and sought a protective order, and upon which plaintiffs moved to compel

1   discovery.  In June 2006, defendants filed a motion for dismissal or alternatively for summary

2   judgment, supported by a memorandum asserting the state secrets privilege, to which plaintiffs filed

3   written opposition.

4        Judge King held a hearing on all pending motions on August 29, 2006.  In his decision filed

5   September 7, 2006, he denied defendants' motion for dismissal or alternatively for summary

6   judgment (with leave to renew), denied plaintiffs' motion to compel discovery (with leave to renew),

7   denied the Oregonian's motion to unseal, and granted defendants' motion to preclude plaintiffs from

8   having access to the Sealed Document.  Among other things, the decision stated that plaintiffs would

9   be permitted to file *in camera* affidavits attesting to the contents of the Sealed Document from their

10  memories, in order to demonstrate standing and make a *prima facie* case.  Judge King certified his

11  decision for an interlocutory appeal under 28 U.S.C. section 1292(b), which the Ninth Circuit

12  accepted.

13       In October 2006, plaintiffs filed a motion for partial summary judgment of liability, which

14  included *in camera* filings that plaintiffs' counsel had prepared in support of the motion, as Judge

15  King's decision had authorized.  Defendants asserted objections to the *in camera* filings and accused

16  plaintiffs' counsel of violating regulations applicable to CIA agents (which plaintiffs' counsel most

17  assuredly are not), requiring plaintiffs' counsel to consult with outside ethics and classified-

18  information experts.  During a telephonic hearing on November 1, 2006, Judge King ruled that

19  plaintiffs' counsel had done nothing wrong, and he ordered the parties to negotiate procedures for

20  future sealed filings and to address defendants' desire to "wipe" from plaintiffs' counsel's computers

21  any classified information of which counsel had written when preparing the motion for partial

22  summary judgment.

23       Meanwhile, in June 2006, defendants requested the JPML to transfer this case to the Northern

24  District of California as a "tag-along" with other consolidated NSA litigation.  This necessitated yet

25  more research, analysis, consultations among co-counsel, and drafting of memoranda in opposition

26  to defendants's request and to a subsequent conditional transfer order by the JPML.  Ultimately, on

27  December 20, 2006, the JPML transferred the case to this Court.

28  //

1

**C.      Litigation in the Northern District of California (12/20/06-7/9/10).**

2      After the JPML transfer to this Court, plaintiffs' counsel performed a variety of tasks

3 pertaining to the pending Ninth Circuit interlocutory appeal, including briefing on defendants'

4 motions in the Ninth Circuit and in this Court to stay proceedings on plaintiffs' summary judgment

5 motion during the pendency of the appeal, briefing on defendants' motion for a stay of appellate

6 proceedings during the pendency of the *Hepting* appeal and then on plaintiffs' motion for

7 reconsideration of and to lift the stay of appellate proceedings, and briefing and oral argument of the

8 appeal itself.  The DOJ compelled plaintiffs' counsel to prepare a sealed brief on the Ninth Circuit

9 appeal under guard in the U.S. Attorney's office in San Francisco, permitting only Eisenberg and

10 Goldberg to prepare the filing and barring Nelson from participating.

11      Meanwhile, throughout the pendency of the appeal, the parties continued to negotiate the

12 computer "wiping" issue, which was eventually resolved when the DOJ's court security officers

13 physically destroyed Eisenberg's laptop computer (in a room adjacent to this Court's chambers) as

14 well as several of the Oregon lawyers' computer hard drives.

15      After the Ninth Circuit remanded the case to this Court with directions to determine whether

16 FISA preempts the state secrets privilege, plaintiffs commenced research and analysis on that issue,

17 resumed preparations for eventually renewing their motion for partial summary judgment, and

18 updated their research and analysis of recent legal and factual developments regarding the TSP.

19 Defendants filed a second motion for dismissal or alternatively for summary judgment, upon which

20 briefing and oral argument ensued, culminating in this Court's decision of July 2, 2008, in which the

21 Court ruled that FISA preempts the state secrets privilege but dismissed the action with leave for

22 plaintiffs to file an amended complaint.

23      During the next few months, plaintiffs prepared their amended complaint, a motion pursuant

24 to 50 U.S.C. section 1806(f), and associated filings.  Defendants filed a third motion to dismiss or

25 alternatively for summary judgment.  Briefing and oral argument ensued on both motions, which this

26 Court adjudicated in its decision of January 5, 2009.

27      Following the January 5, 2009 decision, and pursuant to it, three of plaintiffs' attorneys

28 applied for TS/SCI security clearance.  Additionally, plaintiffs' counsel drafted a proposed protective

1   order for proceedings under 50 U.S.C. section 1806(f) and attempted to negotiate its provisions with

2   defense counsel.  As a result of defendants' conduct regarding these matters, this  Court issued an

3   order to show cause, upon which further briefing and a hearing ensued.

4          Meanwhile, defendants filed a direct appeal from this Court's January 5, 2009 decision, and

5   defendants also requested this Court to certify the decision for an interlocutory appeal pursuant to

6   28 U.S.C. section 1292(b).  Plaintiffs moved successfully in the Ninth Circuit for dismissal of

7   defendants' direct appeal and successfully opposed defendants' request to certify an interlocutory

8   appeal.  During this period, plaintiffs also prepared several case management conference statements

9   addressing various substantive and procedural issues.

10         In April 2009, a settlement overture was made to the DOJ through an independent

11  intermediary, necessitating research, analysis, and travel to Chicago by one of plaintiffs' attorneys.

12  In June 2009, plaintiffs' counsel commenced briefing on plaintiffs' motion for partial summary

13  judgment and in opposition to defendants' fourth motion for dismissal or alternatively for summary

14  judgment, which the Court heard on September 23, 2009 and decided on March 31, 2010.

15         During the interim period between oral argument and decision on the competing summary

16  judgment and dismissal motions, the DOJ requested vacatur of two decisions in another state secrets

17  case, *Horn v. Huddle*, which plaintiffs had cited in briefs filed in this Court.  Plaintiffs' counsel

18  prepared and filed amicus curiae briefs in *Horn v. Huddle* opposing vacatur, for the purpose of

19  protecting the citeability of those opinions in this litigation.  Also during this interim period,

20  defendants filed a classified declaration in the Ninth Circuit pertaining to this litigation, which

21  plaintiffs successfully moved to strike for lack of appellate jurisdiction at that time.

22         Finally, following this Court's decision of March 31, 2010, plaintiffs prepared and filed (and

23  performed various tasks associated with) their proposed judgment, the dismissal of their non-FISA

24  claims, a memorandum on punitive damages, and this motion for attorney's fees and supporting

25  declarations.

26                              **CONCLUSION**

27         Plaintiffs respectfully request this Court to calculate and award reasonable attorney's fees

28  using counsel's hourly rates, produced by the *Laffey* matrix as adjusted for locality, multiplied by

1   the number of hours worked (as described in the declarations filed in support of this motion) as

2   follows:

3       •    Jon B. Eisenberg:  $1,263,785.60, consisting of 2,497.6 hours times $506 per hour.

4       •    William N. Hancock:  $118,960.60, consisting of 235.1 hours times $506 per hour.

5       •    Steven Goldberg:  $345,193.20, consisting of 682.2 hours times $506 per hour.

6       •    Thomas H. Nelson:  $461,826.20, consisting of 912.7 hours times $506 per hour.

7       •    Lisa Jaskol:  $144,007.60, consisting of 284.6 hours times $506 per hour.

8       •    Zaha S. Hassan:  $153,544.50, consisting of 343.5 hours times $446 per hour.

9       •    J. Ashlee Albies:  $137,356.80, consisting of 467.2 hours times $294 per hour.

10      •    Kenneth A. Kreuscher: $5,791.80, consisting of 19.7 hours times $294 per hour.

11      Additionally, plaintiffs respectfully request the Court to award expenses recoverable within

12  the award of attorney's fees (as described in the declarations filed in support of this motion) as

13  follows:

14      •    Eisenberg & Hancock LLP: $4,583.13.

15      •    Steven Goldberg: $1,753.10.

16      •    Thomas H. Nelson: $13,204.18.

17      •    Lisa Jaskol: $758.40.

18      •    Zaha S. Hassan: $467.80.

19      •    J. Ashlee Albies: $1,245.80.

20  DATED this 7th day of July, 2010

21                       /s/ Jon B. Eisenberg

22                       Jon B. Eisenberg, Calif. Bar No. 88278
                      William N. Hancock, Calif. Bar No. 104501

23                       Steven Goldberg, Ore. Bar No. 75134
                      Thomas H. Nelson, Oregon Bar. No. 78315

24                       Zaha S. Hassan, Ore. Bar No. 97062
                      J. Ashlee Albies, Ore. Bar No. 05184

25                       Lisa Jaskol, Calif. Bar No. 138769

26

27                       **Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew, and Asim Ghafoor**

28