1   **Jon B. Eisenberg, California Bar No. 88278** (jon@eandhlaw.com)
    **William N. Hancock, California Bar No. 104501** (bill@eandhlaw.com)
2   **Eisenberg & Hancock LLP**
    1970 Broadway, Suite 1200 • Oakland, CA 94612
3   510.452.2581 – Fax 510.452.3277

4   **Steven Goldberg, Oregon Bar No. 75134** (steven@stevengoldberglaw.com)
    River Park Center, Suite 300 • 205 SE Spokane St.• Portland, OR 97202
5   503.445-4622 – Fax 503.238.7501

6   **Thomas H. Nelson, Oregon Bar No. 78315** (nelson@thnelson.com)
    P.O. Box 1211, 24525 E. Welches Road • Welches, OR 97067
7   503.622.3123 - Fax: 503.622.1438

8   **Zaha S. Hassan, California Bar No. 184696** (zahahassan@comcast.net)
    P.O. Box 1168 • Lake Oswego, OR 97034
9   360.213.9737 - Fax 866.399.5575

10  **J. Ashlee Albies, Oregon Bar No. 051846** (ashlee@sstcr.com)
    **Steenson, Schumann, Tewksbury, Creighton and Rose, PC**
11  815 S.W. Second Ave., Suite 500 • Portland, OR 97204
    503.221.1792 – Fax 503.223.1516
12
    **Lisa R. Jaskol, California Bar No. 138769** (ljaskol@earthlink.net)
13  610 S. Ardmore Ave. • Los Angeles, CA 90005
    213.385.2977 – Fax 213.385.9089
14

15  **Attorneys for Plaintiffs Al-Haramain Islamic Foundation, Inc., Wendell Belew and Asim Ghafoor**

16          **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| 18  **IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION** | ) MDL Docket No. 06-1791 VRW )<br>) |
| 19 | ) **PLAINTIFFS' REPLY TO DEFENDANTS'** |
| 20  This Document Relates Solely To: | ) **OPPOSITION TO PLAINTIFFS' MOTION** ) **FOR ATTORNEY FEES** |
| 21  *Al-Haramain Islamic Foundation, Inc., et al. v. Obama, et al.* (C07-CV-0109-VRW) | )<br>) |
| 22  **AL-HARAMAIN ISLAMIC FOUNDATION, INC., et al.,** | )<br>) |
| 23 | ) |
| 24                 Plaintiffs,<br>          vs. | )<br>)<br>) |
| 25  **BARACK H. OBAMA, President of the United States, et al.,** | )<br>) |
| 26 | ) |
| 27                 Defendants. | )<br>) |
| 28 | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     PLAINTIFFS HAVE PROPERLY PROCEEDED UNDER LOCAL RULE 54-5 . . . . . . 2

       A.     Plaintiffs have provided appropriate time summaries, subject to
              submission of contemporary time records if the Court deems it appropriate . . . . 2

       B.     Production of contemporary time records is unnecessary, but if ordered
              should be for *in camera* inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    THE MOTION FOR ATTORNEY'S FEES IS NOT PREMATURE . . . . . . . . . . . . . . 4

III.   DEFENDANTS' SPECIFIC OBJECTIONS TO COUNSEL'S HOURS ARE
       MERITLESS AND ARE REFUTED BY THE CONTEMPORARY TIME RECORDS . 5

IV.    PROPORTIONALITY IS NOT REQUIRED WHERE, AS HERE, THE LAWSUIT
       VINDICATES IMPORTANT CONSTITUTIONAL AND STATUTORY
       PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.     ALL TASKS FOR WHICH PLAINTIFFS SEEK FEES ARE RELATED TO THE
       SUCCESSFUL FISA CLAIM AND THUS ARE FULLY COMPENSABLE . . . . . . . . 11

VI.    THE *LAFFEY* MATRIX RATES SHOULD BE ADJUSTED FOR THE SAN
       FRANCISCO BAY AREA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII.   THE *LAFFEY* MATRIX RATES SHOULD BE CURRENT RATHER THAN
       HISTORIC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abad v. Williams, Cohen & Gray, Inc.*
  2008 WL 2788093 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ackerman v. Western Elec. Co., Inc.*
  643 F. Supp. 836 (N.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Allen v. Bay Area Rapid Transit District*
  2003 WL 23333580 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bird v. Mahan*
  1990 WL 430733 (N.D. Ind. 1990) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Caldwell v. Leavitt*
  378 F. Supp. 2d 639 (M.D.N.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*California State Foster Parents Assn. v. Wagner*
  2009 WL 4823193 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Camacho v. Bridgeport Fin., Inc.*
  523 F.3d 973 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Riverside v. Rivera*
  477 U.S. 561 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Clarke v. American Commerce Nat. Bank*
  974 F.2d 127 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Connecticut State Department of Social Services v. Thompson*
  289 F. Supp. 2d 198 (D. Conn. 2003), *rev'd on other grounds, Santiago v. Leavitt,*
  2005 WL 2838137 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Copeland v. Marshall*
  641 F.2d 880 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dennis v. Chang*
  611 F.2d 1302 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fair Housing of Marin v. Combs*
  285 F.3d 899 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Horn v. Huddle*
  2010 WL 1222152 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Chiron Corporation Securities Litigation*
  2007 WL 4249902 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re National Security Agency Telecommunications Records Litigation*
   564 F. Supp. 2d 1109 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. Univ. Col. of Univ. of Ala. in Birmingham*
   706 F.2d 1205 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Martin v. FedEx Ground Package System*
   2008 WL 5478576 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McCown v. City of Fontana*
   565 F.3d 1097 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Moreno v. City of Sacramento*
   534 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nadeau v. Helgemoe*
   581 F.2d 275 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*O'Neill, Lysaght & Sun v. Drug Enforcement Admin.*
   951 F. Supp. 1413 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Parents of Student W. v. Puyallup Sch. Dist., No. 3*
   31 F.3d 1489 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Perdue v. Kenny A.*
   130 S.Ct. 1662 (2010)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Prison Legal News v. Schwarzenegger*
   608 F.3d 446 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Royal Travel, Inc. v. Shell Management Hawaii, Inc.*
   2010 WL 167954 (D. Hawaii 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rutgard v. Haynes*
   185 F.R.D. 596 (S.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Satchell v. FedEx Express*
   2006 WL 3507914 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Silva v. Patenaude & Felix*
   2010 WL 2000523 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. Guess*
   390 F. Supp. 2d 979 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*U.S. v. Mazzone*
   782 F.2d 757 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

//

//

//

//

## STATUTES AND RULES

Fed. R. Civ. P. 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

N.D. Cal., Local R. 7-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

N.D. Cal., Local R. 54-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 6

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

31 C.F.R. § 594.201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## MISCELLANEOUS

BLACK'S LAW DICTIONARY (9th ed. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Fed. R. Civ. P. 54 advisory committee's note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 54.151[1] (3d ed. 2010) . . . . . . . 5

Report of the Third Circuit Task Force, Court Awarded Attorney Fees
    108 F.R.D. 237 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## INTRODUCTION

After four-and-a-half years of litigation, some 5,500 hours of plaintiffs' attorney time, and this Court's commensurate devotion to a full and fair adjudication of this case, we at last file this closing brief on the only remaining prejudgment issue: the Court's award of attorney's fees under the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. section 1810.

Defendants, consistent with the manner in which they have litigated this case since its inception, assert a glut of meritless arguments in opposition to plaintiffs' motion for attorney's fees, unsupported by law, logic, or both. Defendants fault us for summarizing our time records in supporting declarations instead of simply handing defendants our attorney-client privileged time records, even though we have proceeded precisely as mandated by this Court's Local Rule 54-5. Defendants fault this Court for soliciting plaintiffs' motion prior to entry of judgment, even though Fed. R. Civ. P. 54(d)(2)(B) authorizes a prejudgment motion. In seven pages of their opposition memorandum augmented by 116 pages of charts and calculations contained in so-called "appendices," defendants undeservedly charge us with overstaffing, unproductive and unnecessary hours, and excessive conferencing – as if we have taken some sort of pleasure in the amount of time it has proven necessary for us to contend with defense counsel's scorched-earth litigation style and obdurate behavior through two presidential administrations. Defendants now propose that we be compensated only for hours we spent on our 2009 motion for partial summary judgment – without any compensation for the thousands of hours we expended during the preceding three-plus years of hard-fought litigation – even though the law quite clearly authorizes our recovery for all of those hours.

This litigation has achieved extraordinary results: this Court's 2008 repudiation of expansive claims of presidential power to ignore FISA, and the Court's 2010 determination that officials of the Bush administration violated FISA many times over in committing domestic warrantless electronic surveillance. That achievement is worthy of the attorney's fees we seek.

//

//

//

**ARGUMENT**

**I.     PLAINTIFFS HAVE PROPERLY PROCEEDED UNDER LOCAL RULE 54-5.**

    **A.     Plaintiffs have provided appropriate time summaries, subject to submission of contemporary time records if the Court deems it appropriate.**

Defendants complain that we have not provided them with our contemporary time records, but have provided only declarations containing "summaries of those records." Defs.' Oppo. at 10, Dkt. #131/746 at 12. Defendants say they "object to this practice." *Id.*

This practice, however, is mandated by Local Rule 54-5 of the Northern District of California, which provides in pertinent part:

> **(b) Form of motion.** Unless otherwise ordered, the motion for attorney fees must be supported by declarations or affidavits containing the following information:

>     *     *     *     *     *

> **(2)** A statement of the services rendered by each person for whose services fees are claimed together with *a summary of the time* spent by each person, and a statement describing the manner in which time records were maintained. Depending on the circumstances, *the Court may require* production of an abstract of or the *contemporary time records* for inspection, *including in camera inspection*, as the Judge deems appropriate . . . .

(Italics added.) Thus, plaintiffs have done precisely what Local Rule 54-5 requires. For defendants to fault plaintiffs for following this Court's local rules is absurd. Unlike defense counsel, who have resisted court orders in the present case, we believe it prudent to comply with court directives.

Local Rule 54-5(b)(2) requires counsel to submit declarations containing "a summary of the time spent by each person" (as have prior versions of this provision dating back to 1988). The legal definition of a summary is an "abridgement" or "[a] short application to a court without the formality of a full proceeding." BLACK'S LAW DICTIONARY 1573 (9th ed. 2009). That is precisely what we have given this Court: an abridgment of counsel's contemporary time records, without the formality of the full records themselves.

We stand ready, of course, to produce the contemporary time records forthwith for this Court's inspection, if the Court deems such production appropriate – again, precisely what Local Rule 54-5(b)(2) requires.

*//*

**B.      Production of contemporary time records is unnecessary, but if ordered should be for *in camera* inspection.**

Defendants ask this Court to require production of our contemporary time records. Defs.' Oppo. at 10-11, Dkt. #131/746 at 12-13. We do not object to that request, but we posit that such production is unnecessary. "[T]here is no requirement that actual time sheets must be provided before an award of fees is proper." *U.S. v. Guess*, 390 F. Supp. 2d 979, 991-92 (S.D. Cal. 2005). "While other circuits require that attorney's fees applicants submit detailed, contemporaneous time records, the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award." *Ackerman v. Western Elec. Co., Inc.*, 643 F. Supp. 836, 863 (N.D. Cal. 1986) (footnote omitted).

In district courts within the Ninth Circuit, a party moving for an award of attorney fees may substantiate the fee request

> *either* by providing actual timesheets, redacted where necessary to protect attorney-client privileges, *or* by providing the declarations of the individuals who performed the tasks sought to be reimbursed, attesting under oath to the time spent, in specified categories of activity . . . , with enough detail to enable the Court to evaluate the reasonableness of the award sought.

*U.S. v. Guess*, 390 F. Supp. 2d at 992 (emphasis added). Thus, for example, in *Dennis v. Chang*, 611 F.2d 1302, 1308 (9th Cir. 1980), affidavits alone were sufficient to support an award of attorney fees because "[e]ach affiant itemized the number of hours he or she expended on the case with a short description of each task performed and the time taken to perform it," and the listings were "sufficiently detailed to enable the court to understand precisely what was claimed, particularly in light of the court's intimate knowledge of the proceedings in the case."

As in *Dennis v. Chang*, the declarations submitted in support of plaintiffs' motion in the present case are sufficient to enable this Court to understand what is being claimed, *particularly in light of this Court's intimate knowledge of the case*. The Court is well-acquainted with defense counsel's scorched-earth (and at times near-contemptuous) litigation strategy, as well as the extraordinary amount of effort it has taken for plaintiffs' counsel to prevail. It should come as no surprise to the Court that some 5,500 hours of attorney time over four-and-a-half years – that is, approximately 1,200 hours per year (which in many law firms is just two-thirds of a single attorney's

1    annual billable time) – have been necessary for plaintiffs to survive the full brunt of the United States

2    Department of Justice's multi-faceted attempts to evade this Court's adjudication of plaintiffs' FISA

3    claim. This Court is well-equipped to judge for itself, without poring over counsel's voluminous

4    time records, whether the expenditures of time summarized in counsel's declarations were

5    reasonable.

6            Defendants also propose that counsel's contemporary time records should be produced not

7    just for *in camera* inspection[1/] as Local Rule 54-5(b)(2) authorizes, but also *to defendants*, who insist

8    that "there is no justification for not producing these records to the Defendants . . . ." Defs.' Oppo.

9    at 10, Dkt. #131/746 at 12. There is, in fact, ample justification for restricting any production of time

10   records to production for *in camera* inspection: the attorney-client privilege. The attorney-client

11   privilege encompasses time records that reveal "litigation strategy, or the specific nature of the

12   services provided, such as researching particular areas of law . . . ." *Clarke v. American Commerce*

13   *Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). A party does not waive the privilege merely by

14   seeking an award of attorney fees. *Rutgard v. Haynes*, 185 F.R.D. 596, 599 (S.D. Cal. 1999).

15   Counsel's time records in the present case are rife with attorney-client privileged information of the

16   sort described in *Clarke*. That is precisely the type of information that Local Rule 54-5(b)(2)'s

17   provision for *in camera* inspection is intended to protect. If this Court deems it appropriate to

18   require production of counsel's time records, the production should only be for *in camera* inspection.

19   **II.      THE MOTION FOR ATTORNEY'S FEES IS NOT PREMATURE.**

20           Defendants contend this motion "is premature" because, although the Court has summarily

21   adjudicated defendants' liability, the Court has not yet rendered its final judgment affording specific

22   relief. *See* Defs.' Oppo. at 6, Dkt. #131/746 at 8. Defendants have overlooked the fact that Fed. R.

23   Civ. P. 54(d)(2)(B) authorizes the prejudgment filing of a motion for attorney's fees. The rule states

24   in pertinent part: "*Unless . . . a court order provides otherwise*, the motion must . . . be filed *no later*

25   *than* 14 days after the entry of judgment . . . ." (Emphasis added.) The phrase "no later than"

26   _____

27   [1/]     Production for "*in camera* inspection" means production for this Court's private

28   consideration, without disclosure to defendants. *See* BLACK'S LAW DICTIONARY 828 (9th ed. 2009)
     (defining "[i]n camera inspection" as "[a] trial judge's private consideration of evidence").

establishes only an *outside time limit* and thus implicitly authorizes a *prejudgment* motion. Moreover, the phrase "[u]nless . . . a court order provides otherwise" authorizes a broad exercise of judicial discretion in setting the filing deadline, without limiting the court to a postjudgment time frame.  Thus, "Rule 54(d) permits the court to require the submission of fee claims *in advance of entry of judgment*."  Fed. R. Civ. P. 54 advisory committee's note (emphasis added).  That is what this Court has done.

A leading treatise on federal civil procedure explains why prejudgment attorney's fees motions are proper:

> Suppose, for example, that the district judge orally grants a motion for summary judgment, in which event there is no reason to require the prevailing party to wait until the oral ruling is memorialized in an actual final judgment.  The victor is clear, the legal work is essentially over, and the movant can probably state or estimate the fee amount.  The movant should therefore be able to submit its fee motion prior to the entry of judgment.

10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 54.151[1] (3d ed. 2010) (footnotes omitted).  Likewise here, it is appropriate for plaintiffs to file their motion before entry of judgment: The Court has issued a *written* ruling summarily adjudicating liability; the parties have briefed the damages issues; "the legal work is essentially over," *id.*; and all that is left is for the Court to assess damages.  *See also infra* at 11 (defendants are not disadvantaged in litigating fees before judgment).

## III.   DEFENDANTS' SPECIFIC OBJECTIONS TO COUNSEL'S HOURS ARE MERITLESS AND ARE REFUTED BY THE CONTEMPORARY TIME RECORDS.

We next address defendants' multi-faceted attack on the number of hours for which plaintiffs seek compensation.  Armed with a mind-numbing 116 pages of charts and calculations contained in multiple appendices, defendants charge plaintiffs' counsel with improper "block-billing," "vague entries," "excessive overstaffing," "excessive conferencing," and "unproductive or unnecessary hours."  *See* Defs.' Oppo. at 9-23, Dkt. #131/746 at 11-25, and Appendices 1-6.

Preliminarily, we note that defendants have violated Local Rule 7-3(a), which states that an opposition to a motion "may not exceed 25 pages of text."  Courts have admonished attorneys for the "subterfuge" of evading page limits by placing substantive material in separately paginated appendices.  *E.g., U.S. v. Mazzone*, 782 F.2d 757, 765 (7th Cir. 1986).  For example, in *Caldwell v. Leavitt*, 378 F. Supp. 2d 639, 642 (M.D.N.C. 2005), the court granted a motion to strike an appendix

of record citations attached to a full-limit brief in opposition to summary judgment, because the appendix was "an extension of Plaintiffs' legal arguments in condensed form and must therefore comply with the page limitations established by this court's local rules." For that reason, and because defendants did not request permission to exceed the 25-page limit, this Court should disregard (if not formally strike) the appendices defendants have submitted.

In any case, defendants' various attacks on counsel's hours are meritless, for the following reasons:

1. *Block-billing and vague entries.* Counsel have not done any improper "block-billing" as defendants charge, *see* Defs.' Oppo. at 9-11, Dkt. #131/746 at 11-13, which will be plainly demonstrated by counsel's contemporary time records if this Court chooses to require their production. Defendants' true complaint is that we have submitted "*declarations* with block summaries." Defs. Oppo. at 12, Dkt. #131/746 at 14 (emphasis added). That is entirely appropriate under Local Rule 54-5(b)(2).

As for defendants' complaint of "billing entries that are unreasonably vague," Defs.' Oppo. at 23, Dkt. #131/746 at 25, to whatever extent there is vagueness in our declarations it is only because of their "summary" nature, which Local Rule 54-5(b)(2) mandates. Our time records are not vague.

2. *Excessive overstaffing.* Evidently defense counsel fail to perceive the irony in their claim of "excessive overstaffing" by plaintiffs' makeshift team of small-firm and solo practitioners – a claim defendants make in a brief to which six Department of Justice attorneys have subscribed, supported by 116 pages of charts and calculations which must have occupied a cohort of unnamed junior attorneys and summer externs. By our count, no fewer than *22 government attorneys* have appeared on briefs and attended hearings in this case.[2] The irony continues, for example, in defendants' insistence that only two attorneys should be compensated for attending hearings, *see*

---

[2]     Those government attorneys include Paul E. Ahern, Marcia Berman, Thomas M. Bondy, Beth S. Brinkmann, H. Thomas Byron III, Paul D. Clement, Anthony J. Coppolino, Andrea Gacki, Gregory G. Garre, Vincent M. Garvey, Alexander K. Haas, Michael F. Hertz, Joseph H. Hunt, Karin J. Immergut, Daryl Joseffer, Peter D. Keisler, Douglas N. Letter, Carl J. Nichols, Timothy Stinson, James L. Sutherland, Andrew H. Tannenbaum, and Andrew A. Yang.

1   Defs.' Oppo. at 15, Dkt. #131/746 at 17, when three or four government attorneys attended many of

2   those hearings.[3]

3        Our time records, if produced on this Court's direction, will demonstrate that we did not, as

4   defendants allege, needlessly duplicate our efforts "on the same activity." Defs. Oppo. at 14, Dkt.

5   #131/746 at 16. Rather, we divided responsibilities among "a team of attorneys," which is "common

6   today for both plaintiff and defense work." *Johnson v. Univ. Col. of Univ. of Ala. in Birmingham*,

7   706 F.2d 1205, 1208 (11th Cir. 1983). Eisenberg took the lead in drafting briefs and memoranda

8   and in presenting oral argument in this Court and the Ninth Circuit, and in scouring the public record

9   for evidence demonstrating plaintiffs' Article III standing. Goldberg supervised the team, assisted

10  with legal analysis, guided preparations for oral argument, and had the lead while the case was in

11  Oregon. Hassan, Albies, and Hancock provided supporting legal research and analysis of legislative

12  history. Jaskol edited the many written submissions. Nelson served as liaison with the clients. All

13  seven lawyers brainstormed together throughout the course of the litigation to guide it to its

14  successful conclusion. That's not overstaffing; it's good team lawyering.[4]

15       The result is that this case is the only one of some four dozen lawsuits in these MDL

16  proceedings where the plaintiffs have prevailed. We could not have accomplished that achievement

17  in any other way.

18       3.  *Excessive conferencing.* The back-and-forth brainstorming among the members of

19  plaintiffs' legal team – which defendants call "excessive conferencing," Defs.' Oppo. at 13, Dkt.

---

21  [3]   *See* Defs.' Appendix 5, Dkt. #131-5/746-5 at 24 (three government attorneys at 4/25/06

22  hearing), 25-26 (four at 6/19/06 hearing), 27-28 (four at 6/27/06 hearing); 29-30 (three at 8/29/06

    hearing); 32-33 (four at 11/1/06 hearing); 34-35 (four at 12/2/08 hearing); 36-37 (three at 1/23/09

23  hearing).

24  [4]   Defendants contend, without citing any authority, that "[n]o compensation should be

25  awarded" for Kenneth Kreuscher's time because he "is not a counsel of record in this case." Defs.'

    Oppo. at 13, Dkt. #131/746 at 15, n.10. A few minutes of legal research, however, yields decisional

26  authority supporting fee awards to attorneys who were not counsel of record but nevertheless worked

    on the case. *See, e.g., Royal Travel, Inc. v. Shell Management Hawaii, Inc.*, 2010 WL 167954, at

27  *5 (D. Hawaii 2010); *Bird v. Mahan*, 1990 WL 430733, at *2 (N.D. Ind. 1990) ("courts considering

    § 1988 fee requests have held that a prevailing party's attorney who is not counsel of record should

28  be awarded attorney's fees for legal work done on behalf of the party").

---

1   #131/746 at 15 – has played a key role in this litigation's success.  Much of the litigation has

2   occurred in uncharted waters where there has been virtually no guiding decisional authority under

3   FISA, the governing statutory scheme.  Resolution of the major legal issues in this case – e.g., FISA

4   preemption, the interplay of the state secrets privilege, sovereign immunity, procedure under FISA

5   section 1806(f), and the level of proof necessary to demonstrate aggrieved person status under

6   section 1806(f) – has required much rumination, testing of ideas within the crucible of internal

7   debate, and team-honed creativity among plaintiffs' counsel, in an effort to assist this Court in

8   negotiating those uncharted waters (an effort in which defense counsel have regrettably refused to

9   participate).  This is truly a case where internal conferencing was vital to the success of the lawsuit.

10  *See, e.g., Satchell v. FedEx Express*, 2006 WL 3507914, at *2 (N.D. Cal. 2006) ("Conferences are

11  necessary to allow counsel to coordinate, communicate ideas, and give and receive instructions.");

12  *Connecticut State Department of Social Services v. Thompson*, 289 F. Supp. 2d 198, 208 (D. Conn.

13  2003) ("Participation by several attorneys on conference calls is often the most effecient means of

14  communicating and of keeping each attorney apprised of developments in the case."), *rev'd on other*

15  *grounds, Santiago v. Leavitt*, 2005 WL 2838137 (2d Cir. 2005).

16          4.      *Unproductive or unnecessary hours*.  Defendants devote seven pages of their

17  opposition memorandum and dozens of pages in their appendices to questioning the efficacy of the

18  hours we have spent on various tasks in this case.  The short answer is that the plaintiffs *prevailed*

19  against the full brunt of a powerful adversary who spared no effort to thwart the adjudication of this

20  case on its merits.  Seldom has a defendant litigated a case so obdurately as has the government here.

21  "The government cannot litigate tenaciously and then be heard to complain about the time

22  necessarily spent by the plaintiff in response."  *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir.

23  1980).  A defendant "cannot prolong the litigation through its own obdurate behavior and then

24  protest that [plaintiffs' counsel] has spent too much time prosecuting the action."  *O'Neill, Lysaght*

25  *& Sun v. Drug Enforcement Admin.*, 951 F. Supp. 1413, 1426 (C.D. Cal. 1996).

26          For defendants to charge plaintiffs' counsel with overworking this case is ludicrous, given

27  its highly contingent nature.  As Judge Kozinski has observed:

28  //

---

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES
MDL DOCKET NO. 06-1791 VRW                              8

1   [L]awyers are not likely to spend unnecessary time on contingency fee cases in the
    hope of inflating their fees. The payoff is too uncertain, as to both the result and the
2   amount of the fee. It would therefore be the highly atypical civil rights case where
    plaintiff's lawyer engages in churning. By and large, the court should defer to the
3   winning lawyer's professional judgment as to how much time he was required to
    spend on the case; after all, he won, and might not have, had he been more of a
4   slacker.

5   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Those words are apt here.

6   Plaintiffs' counsel had no reason to churn this case, and every reason not to.

7       Defendants invoke the test of *California State Foster Parents Assn. v. Wagner*, 2009 WL

8   4823193, *9 (N.D. Cal. 2009) for determining whether a fully compensatory fee award is warranted:

9   "how the relief *sought* compares to the overall result *obtained*" (emphasis in original). *See* Defs.'

10  Oppo. at 16, Dkt. #131/746 at 18. Our reply is that the overall result obtained in this case is

11  extraordinary.

12      This Court's decision of July 2, 2008 was groundbreaking not only in its determination that

13  FISA preempts the state secrets privilege, but also in its application of the third prong of Justice

14  Jackson's concurring opinion in *Youngstown Sheet and Tube* to conclude that FISA restricts

15  presidential power and the President lacks inherent power to disregard FISA:

16  [T]he authority to protect national security information is neither exclusive nor
    absolute in the executive branch. *When Congress acts to contravene the president's*
17  *authority, federal courts must give effect to what Congress has required. . . .*
    Whatever power the executive may otherwise have had in this regard, *FISA limits the*
18  *power of the executive branch to conduct such activities* and it limits the executive
    branch's authority to assert the state secrets privilege in response to challenges to the
19  legality of its foreign intelligence surveillance activities.

20  *In re National Security Agency Telecommunications Records Litigation*, 564 F. Supp. 2d 1109,

21  1121-22 (N.D. Cal. 2008) (emphasis added). With this pronouncement, the Court repudiated

22  expansive claims of presidential power to ignore an Act of Congress in the name of national security

23  – a pronouncement of historic proportions.

24      This Court's subsequent decision of March 31, 2010 made a further adjudication which was

25  inevitable once plaintiffs demonstrated their Article III standing: Officials of the Bush administration

26  violated FISA many times over – violations that were *felonies* as well as grounds for civil liability

27  – in committing warrantless electronic surveillance of the plaintiffs and countless unknown victims.

28  That, too, was historic.

The combined effect of this Court's 2008 and 2010 decisions is for plaintiffs' counsel to have obtained an extraordinary overall result which should be fairly compensated.[5]

## IV. PROPORTIONALITY IS NOT REQUIRED WHERE, AS HERE, THE LAWSUIT VINDICATES IMPORTANT CONSTITUTIONAL AND STATUTORY PRINCIPLES.

Defendants advance a "proportionality" argument – i.e., that in assessing fees the Court must compare the amount of fees sought to the amount of damages awarded. *See* Defs.' Oppo. at 7-8, Dkt. #131/746 at 9-10. The Supreme Court has made clear, however, that the amount of damages is "only one of many factors that a court should consider in calculating an award of attorney's fees." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion). The Supreme Court has expressly rejected the proposition that fee awards "should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Id.*; *see Fair Housing of Marin v. Combs*, 285 F.3d 899, 907-08 (9th Cir. 2002) (affirming award of fees and costs "more than five times the amount of the compensatory and punitive damages awards combined"). The reason is this: "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside* at 574. "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Id.* at 575. Thus, as the Ninth Circuit recently explained, "the district court must consider the excellence of the overall result, not merely the amount of damages won." *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009). "[A] nonmonetary victory may constitute

---

[5]   Defendants also contend that Nelson's expenses for travel and an ethics consultant were unnecessary, and that none of counsel's expenses have been adequately documented. *See* Defs.' Oppo. at 24-25, Dkt. #131/746 at 26-27. As demonstrated by the attached Supplemental Declaration of Thomas H. Nelson, however, Nelson's travel expenses were necessary for him to consult personally with the clients (Belew and Ghafoor and al-Buthi as a director of plaintiff Al-Haramain Islamic Foundation, Inc.), so as "to allow for secure communications so that legal plans and strategies could be developed without defendants' interception," *id.* ¶ 5, and his expenses for the ethics consultant were necessary because the services of an expert were required due to the "unprecedented" ethical issues this case has presented, *id.* ¶ 7. As for adequate documentation of the expenses of all counsel, it exists in the contemporary time records, which we will produce on this Court's direction, along with any proof of payment that the Court deems necessary.

'excellent results' for the purpose of calculating attorney's fees." *Id.* at 1105.

The present litigation has vindicated the privacy rights enshrined in FISA, the curtailing of presidential abuses accomplished by FISA, and the constitutional separation of powers which ensures FISA's efficacy.  Regardless of the amount of damages this Court chooses to award, a fully compensatory award of attorney's fees is justified by the "excellence of the overall result," *McCown* at 1104, in vindicating important constitutional and statutory principles.

Defendants complain that they cannot argue the proportionality factor until they know the amount of damages this Court awards. *See* Defs.' Oppo. at 8, Dkt. #131/746 at 10.  Yet defendants subsequently argue that counsel's full fees on a $612,000 damages award would be "four times the amount of damages," on a $61,200 damages award "would be forty times that amount," and on the $2,000 damages award defendants propose "would be 1300 times the damage award," so that "[i]n any event, a major lodestar reduction is warranted here." Defs.' Oppo. at 16-17, Dkt. #131/746 at 18-19.  Thus, after claiming they cannot presently argue proportionality, defendants manage to do so with no difficulty (albeit unconvincingly).  They have not been disadvantaged by being asked to do so before entry of judgment.

## V.   ALL TASKS FOR WHICH PLAINTIFFS SEEK FEES ARE RELATED TO THE SUCCESSFUL FISA CLAIM AND THUS ARE FULLY COMPENSABLE.

Defendants would have this Court compensate plaintiffs' counsel for nothing more than a portion of the time they spent on their 2009 motion for partial summary judgment plus some associated previous time – as little as 342 hours by defendants' reckoning.  According to defendants' logic, time between February 2006 and November 2007 pertaining to defendants' first dismissal motion should not be compensated because that time "had little bearing on plaintiffs' partial summary judgment victory in 2009," time through July 2008 pertaining to defendants' second dismissal motion should not be compensated because "plaintiffs were found to lack standing in July 2008," and time through June 2009 pertaining to defendants' third dismissal motion should not be compensated because the dispute "ended in no access [to classified information] being granted" and "[i]nstead, the Court directed plaintiffs to seek summary judgment based solely on publicly available information." Defs.' Oppo. at 18-21, Dkt. #131/746 at 20-23.

1    Defendants' overall argument is that counsel are not entitled to fees for discrete tasks as to

2    which plaintiffs "had not prevailed on any issue." Defs.' Oppo. at 18, Dkt. #131/746 at 20. But that

3    is not the applicable test. The pivotal question is whether plaintiffs have "'succeeded on any

4    significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"

5    *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79

6    (1st Cir. 1979)); *accord, Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th

7    Cir. 1994). If that has occurred, counsel may recover fees for time spent on unsuccessful claims that

8    were related to the successful claim, so long as all the claims involved "a common core of facts" or

9    were "based on related legal theories." *Hensley* at 435; *accord, McCown*, 565 F.3d at 1103. In such

10   instances, "the district court should not attempt to divide the request for attorney's fees on a claim-

11   by-claim basis," but instead must "'focus on the significance of the overall relief obtained by the

12   plaintiff in relation to the hours reasonably expended on the litigation.'" *McCown* at 1103 (quoting

13   *Hensley* at 435).

14   Here, plaintiffs have prevailed in an extremely significant way by vindicating important

15   constitutional and statutory principles. All of plaintiffs' claims (including the FISA claim, the

16   constitutional claims, the international law claim, and the individual capacity claim against defendant

17   Mueller) involved a common core of facts and were based on related legal theories. Plaintiffs'

18   ultimately successful FISA claim has achieved the primary benefit that plaintiffs have sought from

19   this litigation – an adjudication that President Bush's warrantless electronic surveillance program

20   was unlawful, and an affirmation of the Nation's constitutional separation of powers. Thus,

21   plaintiffs may recover fees for time spent on *all* of their claims, successful or not.

22   Moreover, as this Court has observed, "[a]n unsuccessful *motion* is not an unsuccessful

23   claim." *Allen v. Bay Area Rapid Transit District*, 2003 WL 23333580, *7 (N.D. Cal. 2003)

24   (emphasis added). A rule precluding recovery of fees for time spent on unsuccessful or undecided

25   motions where the plaintiff ultimately prevailed "would undermine the purpose for which federal

26   fee-shifting provisions were enacted: 'to encourage private enforcement of [ ] statutory substantive

27   rights, whether they be economic or noneconomic, through the judicial process.'" *Id.* (quoting Report

28   of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 250 (3d Cir. 1985)).

Defendants' various arguments against recovery of fees for time spent opposing defendants' first three dismissal motions contravene this Court's observations in *Allen* and should be disregarded.[6]

## VI.   THE *LAFFEY* MATRIX RATES SHOULD BE ADJUSTED FOR THE SAN FRANCISCO BAY AREA.

Defendants insist that this Court should apply the *Laffey* matrix rates "adjusted for the locality in which plaintiffs' counsel operates," Defs.' Oppo. at 24, Dkt. #131/746 at 26, instead of adjusted for the San Francisco Bay Area, where this Court sits. The Ninth Circuit, however, has spoken to this point quite clearly: "'Generally, when determining a reasonable hourly rate, the relevant community is *the forum in which the district court sits.*'" *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) (emphasis added) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)). The relevant community here is the San Francisco Bay Area, where this Court sits.

Defendants completely ignore this controlling Ninth Circuit authority, even though it is cited in plaintiffs' motion. *See* Pls.' Motion at 3, Dkt. #128/738 at 4. Defendants simply cite two district court cases where the court adjusted *Laffey* matrix rates for the cities where plaintiffs' counsel operated. *See* Defs.' Oppo. at 24, Dkt. #131/746 at 26. One of those case, however, predates and is thus superseded by both *Prison Legal News* and *Camacho*. *See In re Chiron Corporation Securities Litigation*, 2007 WL 4249902, *6 (N.D. Cal. 2007). Post-*Camacho* decisions in the Northern District of California have followed *Camacho*. *See Silva v. Patenaude & Felix*, 2010 WL 2000523, *2 (N.D. Cal. 2010); *Abad v. Williams, Cohen & Gray, Inc.*, 2008 WL 2788093, *3-4 (N.D. Cal. 2010).

The other case defendants cite is *sui generis* in that it involved *two actions* pending

---

[6]     The same is true of defendants' attacks on time counsel spent on the Oregonian's unsealing motion and on plaintiffs' motions and oppositions pertaining to discovery, access to the Sealed Document, defendants' first petition for an interlocutory appeal, and the JPML transfer. *See* Defs.' Oppo. at 18-19, Dkt. #131/746 at 20-21. This Court's reasoning in *Allen* makes all of that time compensable. As for defendants' statement that plaintiffs' efforts "to forestall vacatur" in *Horn v. Huddle* were "unsuccessful," Defs.' Oppo. at 23, Dkt. #131/746 at 25, we note that Judge Lamberth, expressly responding to our *amicus curiae* brief opposing vacatur, provided the helpful explanation that, despite the vacatur order, "[t]he reasoning" of the vacated opinions "is unaltered, to the extent it is deemed persuasive by anyone." *Horn v. Huddle*, 2010 WL 1222152, *2 (D.D.C. 2010).

1   simultaneously in San Francisco and Orange County, which were handled by lawyers operating in

2   Chico, San Francisco and Orange County, with the Chico lawyers working on the San Francisco

3   case, the San Francisco lawyers working on the Orange County case, and the Orange County lawyers

4   working on *both* cases. *See Martin v. FedEx Ground Package System*, 2008 WL 5478576, *1-2, 7

5   (N.D. Cal. 2008). In that unique situation, adjusting for the courts' two localities would have been

6   problematic, because it would have required apportioning the Orange County lawyers' work among

7   the two pending cases, which might have been impracticable if not impossible. Here, in contrast,

8   there is only *one* action pending – in the San Francisco Bay Area. According to *Prison Legal News*

9   and *Camacho*, that is the locality for which this Court should adjust the *Laffey* matrix rates.

10  **VII.   THE *LAFFEY* MATRIX RATES SHOULD BE CURRENT RATHER THAN HISTORICAL.**

11

12          Defendants also contend that the Court should use historical *Laffey* matrix rates instead of

13  current rates, because of decisional authority prohibiting the use of current rates to compensate

14  counsel for delayed payment in litigation against the United States. *See* Defs.' Oppo. at 24, Dkt.

15  #131/746 at 26, and n.15. This Court may, however, use current rates for a different reason: as an

16  enhancement to ensure that counsel are adequately compensated for "superior attorney performance"

17  at a rate that "adequately measure[s] the attorney's true market value." *Perdue v. Kenny A.*, 130

18  S.Ct. 1662, 1674 (2010). The Supreme Court has explained:

19              [A]n enhancement may be appropriate where the method used in determining the
                hourly rate employed in the lodestar calculation *does not adequately measure the*
20              *attorney's true market value, as demonstrated in part during the litigation*. This may
                occur if the hourly rate is determined by a formula that takes into account only a
21              single factor (such as years since admission to the bar) or perhaps only a few similar
                factors. In such a case, an enhancement may be appropriate so that an attorney is
22              compensated at the rate that the attorney would receive in cases not governed by the
                federal fee-shifting statutes.

23  *Id.* (emphasis added).

24          Historical *Laffey* matrix rates, by taking into account only a single narrow factor – years since

25  admission to the bar when services were provided – do not adequately measure counsel's true market

26  value in this case, as demonstrated by the extraordinary result they achieved against overwhelming

27  odds. Accordingly, this Court may enhance the fee award to current *Laffey* matrix rates in order to

28  ensure that counsel are compensated at rates they would receive in cases not governed by the federal

fee-shifting statutes. *See* Decl. of Jon B. Eisenberg, Dkt. #128-3/738-3, ¶ 8 (Eisenberg's standard commercial rate of $650 per hour); *Perdue* at 1674 ("the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate").[7]

### CONCLUSION

For the foregoing reasons and for those set forth in plaintiffs' motion and supporting declarations, plaintiffs respectfully request this Court to make an award of attorney's fees that fairly compensates plaintiffs' counsel for their devotion to this extraordinary litigation and the result it has achieved.[8]

DATED this 12th day of August, 2010

　　　　　　　　　　　　　/s/ Jon B. Eisenberg

Jon B. Eisenberg, Calif. Bar No. 88278
William N. Hancock, Calif. Bar No. 104501
Steven Goldberg, Ore. Bar No. 75134
Thomas H. Nelson, Oregon Bar. No. 78315
Zaha S. Hassan, Ore. Bar No. 97062
J. Ashlee Albies, Ore. Bar No. 05184
Lisa Jaskol, Calif. Bar No. 138769

**Attorneys for Plaintiffs Al-Haramain Islamic
Foundation, Inc., Wendell Belew, and Asim
Ghafoor**

---

[7] 　　Finally, we note that although defendants have argued that any award of *damages* to plaintiff Al-Haramain Islamic Foundation, Inc. will be subject to OFAC blocking and licensing requirements, *see* Gov. Defs.' Response in Oppo. to Pls.' Proposed Judgment etc. at 8, Dkt. #119/727 at 13, n. 11, defendants make no similar argument regarding an award of *attorney's fees* to plaintiffs' counsel, and thus defendants have waived any such argument. The waiver is prudent. The applicable regulation states that property interests of a Specially Designated Global Terrorist may not be transferred "[e]xcept as authorized by statute." 31 C.F.R. § 594.201(a). The exception applies here because the award of attorney's fees is authorized by statute – specifically, 50 U.S.C. section 1810.

[8] 　　To our accounting of hours we add the time spent preparing this reply memorandum: Eisenberg 41.3 hours, Hancock 6.7 hours, Goldberg 8.8 hours, Nelson 7.1 hours, Jaskol 7.5 hours, Hassan 4.2 hours, Albies 3.4 hours, and Kreuscher 0.7 hours. We stand ready to submit supporting declarations for those hours on the Court's request.

# CERTIFICATE OF SERVICE

**RE:**   **In Re National Security Agency Telecommunications Records Litigation,**
**MDL Docket No. 06-1791 VRW; and,**
**Al-Haramain Islamic Foundation, Inc., et al. v. Obama, et al.,**
**Docket Number C07-CV-0109-VRW.**

I am a citizen of the United States and employed in the County of San Francisco, State of California. I am over eighteen (18) years of age and not a party to the above-entitled action. My business address is Eisenberg and Hancock, LLP, 180 Montgomery Street, Suite 2200, San Francisco, CA, 94104. On the date set forth below, I served the following documents in the manner indicated on the below named parties and/or counsel of record:

- **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES**

- **SUPPLEMENTAL DECLARATION OF THOMAS H. NELSON**

___   **Facsimile** transmission from (415) 544-0201 during normal business hours, complete and without error on the date indicated below, as evidenced by the report issued by the transmitting facsimile machine.

___   **U.S. Mail**, with First Class postage prepaid and deposited in a sealed envelope at San Francisco, California.

XX   **By ECF:** I caused the aforementioned documents to be filed via the Electronic Case Filing (ECF) system in the United States District Court for the Northern District of California, on all parties registered for e-filing in *In Re National Security Agency Telecommunications Records Litigation*, Docket Number M:06-cv-01791 VRW, and *Al-Haramain Islamic Foundation, Inc., et al. v. Obama, et al.*, Docket Number C07-CV-0109-VRW.

I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service, and said correspondence would be deposited with the United States Postal Service at San Francisco, California that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 12, 2010 at San Francisco, California.

_____/s/ Susan A. Neff_____
SUSAN A. NEFF